IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado Limited Liability Company, and
LINDSAY WINNINGER, an individual,

    Plaintiffs,

v.

VAIL CLINIC, INC., d/b/a VAIL HEALTH, a Colorado nonprofit corporation,

    Defendant.

## DEFENDANT VAIL HEALTH'S MOTION TO DISMISS

Defendant Vail Clinic, Inc., d/b/a Vail Health ("Vail Health") hereby moves to dismiss Counts I and II of Plaintiffs' Amended Complaint and Jury Demand ("Amended Complaint") pursuant to Fed. R. Civ. P. 12(b)(6).

### INTRODUCTION

Nearly two and a half years ago, Plaintiffs Sports Rehab Consulting, LLC ("SRC") and Lindsay Winninger filed a business torts case in Eagle County district court, *Winninger v. Vail Health et al.*, No. 2017CV030102 (the "State Court Action"). After Vail Health determined a former employee who went to work for SRC had taken thousands of files from Vail Health including patient information and reported his actions to the appropriate authorities, Plaintiffs sued Vail Health, asserting claims for defamation, interference with contract, and interference with current and prospective business relations. All of Plaintiffs' claims were based on the same facts alleged here—that, after David Cimino took files when he left Vail Health and went to work for Plaintiffs, Vail Health made disparaging statements to law enforcement and others that

were designed to drive Plaintiffs out of their physical therapy business in Vail. Earlier this summer, the state court dismissed numerous of Plaintiffs' claims, concluding that they lacked either a legal or factual basis, or both. Shortly thereafter, Plaintiffs filed this antitrust lawsuit.

In its Motion to Dismiss or Stay Pursuant to the *Colorado River* Doctrine (Doc. #31), Vail Health has requested the Court to stay or dismiss the case in favor of the parallel State Court Action. Even if the Court does not dismiss on those grounds, however, the case nevertheless must be dismissed for failure to state a claim. This is a business torts and civil theft case between two competitors. Unsurprisingly, Plaintiffs cannot sufficiently plead either a relevant market, or antitrust standing, and their claims must be dismissed.

## STATEMENT OF CONFERRAL

Pursuant to Judge Martinez's Practice Standard III.D.1, on September 17, counsel for Vail Health emailed counsel for Plaintiffs to confer about Vail Health's grounds for a Rule 12(f) motion to strike a number of improper factual allegations, as well as grounds for a Rule 12(b)(6) motion to dismiss. Vail Health raised questions concerning Plaintiffs' reliance on state and federal antitrust statutes, monopolization and attempted monopolization claims, market definition, and the references to Vail Health's lease restrictions. The parties exchanged several emails on these subjects, including the bases and law supporting Vail Health's positions.

In response to this conferral, Plaintiff filed the Amended Complaint addressing some but not all of these issues. On October 9, Vail Health emailed Plaintiffs' counsel to communicate that it planned to move for dismissal based on issues not resolved by the amendments or not capable of being fixed through future amendments, including the issues addressed in this motion. The parties exchanged more emails on these issues, but did not reach a resolution. Vail

Health believes it has made best efforts to allow Plaintiffs to resolve any defects that can be fixed by amendment, and that the grounds asserted here for dismissal are appropriate.

## BACKGROUND

Vail Health is an independent nonprofit hospital that operates physical therapy clinics under the trade name of Howard Head Sports Medicine. (Am. Compl. ¶ 29.) Vail Health operates eight clinics throughout Colorado. (*Id.* ¶ 32.) Vail Health works closely with and leases property to the Steadman Orthopedic Clinic and the associated Steadman Philippon Research Institute (collectively, "Steadman"). (*Id.* ¶ 29.)

Ms. Winninger is a physical therapist who worked in Vail, Colorado until 2012 when she left to become the head physical therapist for the U.S. Women's Ski Team. (*Id.* ¶¶ 19-21.) She eventually became a private physical therapist for professional alpine skier Lindsey Vonn. (*Id.* ¶¶ 23-26.) In 2015, Ms. Winninger returned to Vail, Colorado, and opened SRC. (*Id.* ¶ 24.)

After Ms. Winninger opened SRC, she hired Mr. Cimino, a physical therapist employed by Vail Health. (*Id.* ¶ 102.) On the day before Mr. Cimino left Vail Health, he downloaded Vail Health files, including patient information, to one or more USB devices that he took with him. (*Id.* ¶¶ 105, 116-17.)

Throughout 2016, Vail Health took remedial measures in response to Mr. Cimino's actions. First, Vail Health reported a breach of personal health information ("PHI") to the U.S. Department of Health & Human Services ("HHS"). (*Id.* ¶ 106.) Second, Vail Health posted a public notice and sent letters to patients explaining that their PHI could be in jeopardy. (*Id.* ¶¶ 109, 112.) Third, Vail Health reported Mr. Cimino's theft to the Vail Police Department ("Vail

PD"). (*Id.* ¶ 119.) And fourth, Vail Health responded to a request for information from the Department of Regulatory Agencies ("DORA"). (*Id.* ¶¶ 138-39.)

Plaintiffs filed the State Court Action shortly thereafter, alleging several business torts against Vail Health. On May 31, 2019, the state court entered its order on summary judgment dismissing numerous of Plaintiffs' claims. (*See* Exhibit 1, Order Granting in Part Ds.' Mot. For Summ. J.)[1] Among other things, the state court found that:

- Mr. Cimino downloaded and sent Vail Health patient files to Ms. Winninger, after she requested them (Ex. 1 at 22);

- Ms. Winninger said to Vail Health, "everyone who leaves takes their files and protocols off the drive" (*id.*);

- Vail Health's statements to law enforcement agencies were not defamatory as a matter of law (*id.* at 19-23);

- Many of Vail Health's alleged statements to Steadman were unsupported by any evidence from Plaintiffs (*id.* at 9-11, 14-17);

- Vail Health obtained reasonable evidence before petitioning to Vail PD (*id.* at 22); and

- Vail Health showed Steadman a draft complaint against Ms. Winninger in good faith, and Plaintiffs' allegations of bad faith were "conclusory and without merit" (*id.* at 23-25).

Relying on many of the same factual allegations already rejected by the State Court, Plaintiffs now assert that Vail Health violated Section 2 of the Sherman Act by allegedly driving Plaintiffs out of the market for physical therapy services in Eagle County, Colorado.

---

[1] When reviewing a motion to dismiss, the Court may take judicial notice of records from a related state case without converting the motion to dismiss into a motion for summary judgment. *See, e.g.*, *Porter v. Ford Motor Co.*, 917 F.3d 1246, 1248 n.2 (10th Cir. 2019); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

## STANDARDS OF REVIEW

Under Rule 12(b)(6), the Court must dismiss a complaint that lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). While "well-pleaded factual allegations" must be taken as true, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Wittner v. Banner Health*, 720 F.3d 770, 774-75 (10th Cir. 2013) (internal citation and quotation marks omitted). Echoing the United States Supreme Court, the Tenth Circuit has cautioned that a decision on whether to dismiss an antitrust case must account for "the high costs and frequent abuses associated with antitrust discovery." *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (internal citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("It is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive.").

## ARGUMENT

**I.   PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS FAIL TO PLEAD A PLAUSIBLE MARKET.**

Identifying the relevant market is an element of both monopolization and attempted monopolization claims under Section 2 of the Sherman Act, 15 U.S.C. § 2. *Christy Sports, LLC*, 555 F.3d at 1192 (citations omitted). Plaintiffs must allege both a plausible geographic market and a plausible product market. *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1071 (10th Cir. 2013). Implausible markets are "cause for dismissal of the claim[s]." *Campfield v. State Farm Mut. Auto Ins. Co.*, 532 F.3d 1111, 1118 (10th Cir. 2008). Here, as a matter of law, Plaintiffs fail to show either a plausible geographic market or a plausible product market.

### A. PLAINTIFFS FAIL TO PLEAD A PLAUSIBLE GEOGRAPHIC MARKET.

Plaintiffs must identify "the terrain in which competition takes place." *See, e.g.*, *Novell, Inc.*, 731 F.3d at 1071. This geographic market must satisfy the criteria of "reasonable interchangeability," *i.e.*, if a company raised prices or reduced quality in the geographic market, a consumer would be unreasonable to exit that geographic market to find an alternate provider. *See Buccaneer Energy (USA) Inc. v. Gunnison Energy Corp.*, 846 F.3d 1297, 1313 (10th Cir. 2017). A market drawn too tightly creates "the illusion of market power where none may exist." *Consul, Ltd. v. Transco Energy Co.*, 805 F.2d 490, 495 (4th Cir. 1986) (collecting cases). The illusion of market power "makes accurate determination of the ultimate question—whether the antitrust laws have been violated—impossible." *Id.*

Plaintiffs assert that the relevant geographic market is Eagle County, Colorado. (Am. Compl. ¶¶ 34-42.) Although Plaintiffs acknowledge that physical therapy services are available in the neighboring cities of Glenwood Springs, Breckenridge, and Silverthorne, they assert that these cities are not part of the relevant geographic market. (*Id.* ¶ 36.) Plaintiffs' reason for excluding these neighboring cities, which they acknowledge are only 30 to 75 miles from Eagle County, is based on the "sheer distance," the possibility of inclement weather, and the fact that recovering surgery patients are unable or unwilling to travel 30+ miles for physical therapy. (*Id.* ¶¶ 36-37.) Even accepting all of Plaintiffs' allegations as true, this geographic market definition is not plausible.

*First*, Plaintiffs' very own description of SRC's business contradicts the proposed geographic market. Plaintiffs assert that they themselves treat patients "at any location requested by the patient." (*Id.* ¶ 16.) With services like this, the patient's ability to drive becomes

irrelevant—it is the physical therapists who do the driving, not the patients. *See, e.g.*, *Total Renal Care, Inc. v. W. Nephrology & Metabolic Bone Disease, P.C.*, 2009 WL 2596493, at *7 (D. Colo. 2009) (dismissing complaint that failed to address, for example, "in-home kidney dialysis" as a substitute for dialysis clinics). And Plaintiffs' own allegation establishes that physical therapists *are* willing to drive to treat patients. (Am. Compl. ¶ 16.)

*Second*, Plaintiffs' assertions are specific to patients seeking physical therapy 1-3 weeks post-surgery and ignores the fact that patients seek physical therapy for all kinds of reasons. (Am. Compl. ¶ 37.) Plaintiffs plead no facts regarding what percentage of physical therapy patients are receiving treatments 1-3 weeks post-surgery, as opposed to pre-surgery, more than three weeks post-surgery, or not related to surgery at all. Plaintiffs' own complaint asserts that Plaintiffs treat "athletes" looking to reach "maximal potential after injury," and that Winninger "has treated many of her patients for well over five years." (*Id.* ¶ 16, 23.) Once again, Plaintiffs' own allegations undercut the plausibility of Plaintiffs' proposed geographic market.

*Third*, the proposition that residents of the Vail Valley would have any significant reservation about driving 30 to 68 miles, even in inclement weather, is not plausible. It is common knowledge that people who live in the mountains on the I-70 corridor routinely and easily travel these distances for services, and the court need not accept Plaintiffs' conclusory assertion. *Farm Credit Servs. v. Am. State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (Federal courts are "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."). Thus, Plaintiffs' proposed geographic market fails as a matter of law. *See Lala v. Frampton*, 2008 WL 4059874, at *3-4 n.4 (D. Colo. 2008) ("The Court also has doubts that 'in and around the Vail Valley' is

sufficient to plead the relevant geographic market, as it does not purport to explain why shuttle services (or other transportation services) operating in adjacent areas could not practicably compete in the Vail Valley."); *Ferguson Med. Group, L.P. v. Mo. Delta Med. Ctr.*, 2006 WL 2225454, at *3-4 (E.D. Mo. 2006) (dismissing plaintiff's claims based on its proposed geographic market where it excluded cities thirty and fifty miles away as alternatives for ambulatory surgical procedures, urgent care, and medical diagnostics).

Plaintiffs attempt to rely on Vail Health's service area to establish the relevant geographic market. (*See, e.g.*, Am. Compl. ¶ 38 ("if Vail Health Controls 80% of the physical therapy revenue in the Vail Valley . . . then Vail Valley is the relevant geographic market for purposes of this action."); *id.* ¶ 39 (Vail Health controls "over 70% of the physical therapy labor in the Vail Valley"); *id.* ¶ 40 (Vail Health does not have an office in Denver and has employees and business relationships in Vail Valley). As federal courts uniformly hold, however, a defendant's service area is not the geographic market. *See, e.g.*, *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1027 (10th Cir. 2002) ("The geographic market is not comprised of the region in which the seller attempts to sell its product, but rather is comprised of the area where his customers would look to buy such a product.") (citations omitted); *Bathke v. Casey's Gen. Stores, Inc.*, 64 F.3d 340, 345 (8th Cir. 1995) ("Evidence of the *competitor's perspective* is not sufficient, however, because a geographic market is determined by inquiring into the commercial realities faced by *consumers*.") (emphasis in the original) (citations omitted). Thus, Plaintiffs' allegations regarding Vail Health's service area are irrelevant to establishing a plausible geographic market.

Plaintiffs' purported geographic market is not supported by common sense and is undermined by their own allegations. Thus, the market is not plausible, and Plaintiffs' claims must be dismissed.

**B.     PLAINTIFFS FAIL TO PLEAD A PLAUSIBLE PRODUCT MARKET.**

Plaintiffs' claims should be dismissed for the additional and independent reason that they fail to plead a plausible product market. Plaintiffs' burden is to identify "which products are found to be sufficiently substitutable to fit within the same product market." *Novell, Inc.*, 731 F.3d at 1071. Plaintiffs must satisfy the criteria of "reasonable interchangeability," *i.e.*, if a company raised prices or reduced the quality of a service, a consumer would be unreasonable to switch to another type of service. *Telecor Commc'ns, Inc. v. S.W. Bell Tel. Co.*, 305 F.3d 1124, 1131 (10th Cir. 2002). As a matter of law, Plaintiffs fail to show a plausible product market.

Plaintiffs assert that there are no alternative products or services for physical therapy (Am. Comp. ¶ 44), and then specifically explain why "muscle massage wands" are not a substitute (*id.* ¶¶ 45-46). Plaintiffs fail to address the myriad other substitutes for physical therapy, including medical treatments (such as steroid injections), chiropractors, yoga, massage, and acupuncture—just to name a few. Plaintiffs ignore the fact that people seek physical therapy for a variety of reasons, and focus only on recovery from a torn ACL. (*Id.* ¶ 44.) By failing to address these obvious substitutes for physical therapy, Plaintiffs fail to plead a plausible product market. *See, e.g.*, *Lala*, 2008 WL 4059874, at *3 ("[T]he Amended Complaint fails to supply facts to support the Plaintiff's conclusion that only business entities in that product market are [defendant's shuttle services], to the exclusion of taxicabs, public and private buses, rental cars, and other business that might provide transportation services that are interchangeable.").

For this reason too, Plaintiffs' claims must be dismissed.

## II. PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS FAIL TO PLEAD ANTITRUST STANDING.

Antitrust standing is an element of both monopolization and attempted monopolization claims under Section 2 of the Sherman Act, 15 U.S.C. § 2. *Tal v. Hogan*, 453 F.3d 1244, 1253 (10th Cir. 2006). Here, as a matter of law, Plaintiffs do not establish antitrust standing.

Plaintiffs identify their antitrust *injury* as "being forced out of their physical therapy profession and business[.]" (Am. Compl. ¶ 239.) However, to show antitrust *standing*, Plaintiffs must show that anticompetitive conduct caused that injury. *See Tal*, 453 F.3d at 1253.

Here, Plaintiffs allege four categories of conduct that allegedly caused their injury: (1) Vail Health's consideration of a joint venture with two orthopedic clinics; (2) Vail Health's restrictions in its lease to the Steadman clinic; (3) Vail Health's non-solicitation agreement with its physical therapists; and (4) various statements made by Vail Health to law enforcement and other individuals regarding Mr. Cimino's taking of files when he left his employment with Vail Health. As a matter of law, none of these sufficiently pleads anticompetitive conduct that caused Plaintiffs' antitrust injury, and Plaintiffs' claims must be dismissed.

### 1. A Potential Joint Venture is Not Anticompetitive Conduct.

Plaintiffs assert that Vail Health considered entering joint ventures with two orthopedic clinics that would have given Vail Health exclusive rights to referrals. (Am. Compl. ¶¶ 63-64.) However, these joint ventures never came to fruition. (*Id.* ¶ 74.) Thus, they cannot constitute anticompetitive conduct. Even attempted monopolization requires "that the defendant *has engaged* in predatory or anticompetitive conduct." *Christy Sports, LLC*, 555 F.3d at 1192 (emphasis added). An unconsummated joint venture does not amount to any conduct at all.

Attempted monopolization also requires that the anticompetitive conduct pose a "dangerous probability" of monopolizing the relevant market. *Id.* However, a non-act poses *zero* probability of monopolizing. Similarly, a non-act could not have caused Plaintiffs' injury. Thus, as a matter of law, these potential joint ventures do not confer antitrust standing.

### 2. The Steadman Lease is Not Anticompetitive Conduct.

Plaintiffs assert that Vail Health leased property to Steadman with a restriction that prohibited Steadman from operating a physical therapy clinic inside Vail Health's own property. (Am. Compl. ¶¶ 75-76.) This lease restriction is not anticompetitive conduct. In *Christy Sports*, a company leasing property to a competitor restricted the competitor from conducting business on the property, and the Tenth Circuit flatly held that "it is not anticompetitive to refuse to grant access to competitors." 555 F.3d at 1196. Prohibiting such restrictions thwarts competition, rather than promotes it. *See, e.g.*, *Four Corners Neophrology Assoc., P.C. v. Mercy Med. Ctr. of Durango*, 582 F.3d 1216, 1221 (10th Cir. 2009) ("Without some confidence that they can control access to their own property, real or intellectual, how many firms would be deterred from undertaking the risks associated with, say, a significant new endeavor or facility?").

Here, the lease imposes the same type of restriction as in *Christy Sports*, and thus it cannot be anticompetitive conduct. Further, the lease restriction in *Christy Sports* applied to the plaintiff, so the plaintiff had plausible grounds to suggest it was being injured by the restriction. *Id.* at 1191. By contrast, the lease restriction that applies to Steadman could not have caused Plaintiffs' injury. Thus, as a matter of law, the Steadman lease does not confer antitrust standing.

### 3. The Non-Solicitation Agreement is Not Anticompetitive Conduct.

Plaintiffs assert that Vail Health's employment contract with Mr. Cimino included a non-

solicitation agreement, prohibiting him from soliciting Vail Health patients for one year after he ended his employment with Vail Health.  (Am. Compl. ¶ 90.)  Vail Health has not been able to identify a single federal case holding that a non-solicitation agreement in an employment contract amounts to anticompetitive conduct in violation of federal antitrust laws.

Although "anticompetitive conduct comes in too many forms and shapes to permit a comprehensive taxonomy," courts can identify anticompetitive conduct by asking whether the conduct "has little to no value beyond the capacity to protect [a] monopolist's market power[.]" *Novell, Inc.*, 731 F.3d at 1072.  In assessing the value of the conduct at issue, courts should be reluctant to find anticompetitive conduct where the result forces a company to share the fruits of its investments.  *Id.* at 1072.  In applying this reasoning, at least one federal court has held that a non-compete agreement in an employment contract did not constitute anticompetitive conduct. *See BRFHH Shreveport, LLC v. Willis Knighton Med. Ctr.*, 176 F. Supp. 3d 606, 625-26 (W.D. La. 2016).  The court noted, "There is no allegation, for instance, that [the defendant] does not need the physicians subject to the non-compete agreements and keeps them at a loss just for the sake of ensuring that other hospitals do not have access to them."  *Id*.

Here, Vail Health uses non-solicitation agreements to protect the time and money spent developing relationships with patients.  There is no allegation here that Vail Health has been enforcing the non-solicitation agreements at a loss, just to keep competitors out of the market. In fact, the Amended Complaint identifies only a single instance of enforcement, when Vail Health asserted a third-party claim against Mr. Cimino after it was sued by Plaintiffs.  (Am. Compl. ¶ 89.)  Finally, it is implausible that these non-solicitation agreements could have caused injury to Plaintiffs, since they were not subject to the non-solicitation agreements and allege they

did not solicit any of Vail Health's clients. (*Id.* ¶ 105.) Thus, as a matter of law, the single non-solicitation agreement and single instance of enforcement cannot confer antitrust standing.

        4.       The Petitions to Regulatory and Enforcement Agencies are Not Anticompetitive Conduct.

Plaintiffs allege that Vail Health engaged in anticompetitive conduct when it reported Mr. Cimino's taking of files from Vail Health to HHS and the Vail PD and when it responded to a request from DORA for information about this incident. (*See, e.g.*, Am. Compl. ¶¶ 107-08, 119, 139.) As a matter of law, these communications do not constitute anticompetitive conduct.

First, the State Court has already held as a matter of law that such statements cannot support a claim for defamation because Vail Health conducted reasonable investigations and obtained reasonable evidence before making them. (*See, e.g.*, Ex. 1 at 22-23.) For instance, the State Court specifically rejected the contention that Vail Health acted with malice in making statements to Vail PD. (*Id.* at 22.) Yet Plaintiffs ignore that decision and make the same allegation here. (Am. Compl. ¶ 119.) Plaintiffs also assert that Vail Health made substantially the same statements in response to DORA's request for information. (Am. Compl. ¶ 139.) Thus, those statements were based on reasonable evidence as well. These statements cannot constitute anticompetitive conduct.

Second, because these were reasonable statements to government agencies, they have immunity from antitrust liability under the *Noerr-Pennington* doctrine. *See Calif. Motor Trans. Co. v. Trucking Unlim.*, 404 U.S. 508, 510 (1972) (stating that *Noerr-Pennington* doctrine protects petitions to "all departments of the Government"); *Coll v. First Am. Title Ins., Co.*, 642 F.3d 876, 894 (10th Cir. 2011) (The *Noerr-Pennington* doctrine "exempts from antitrust liability" petitions by private individuals to the government.); *see also Venetian Casino Resort,*

*LLC v. NLRB*, 793 F.3d 85, 90 (D.C. Cir. 2015) (holding that *Noerr-Pennington* protects petitions to police, in line with two other circuits that have considered the question). These statements cannot constitute anticompetitive conduct.

Finally, conduct targeted at a single competitor cannot be anticompetitive conduct. *See, e.g.*, *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 225 (1993) ("Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws."). It is axiomatic that "the antitrust laws protect competition, not competitors." *JetAway Aviation, LLC v. Bd. of Cnty. Comm'rs*, 754 F.3d 824, 834 (10th Cir. 2014) (Holmes, J., concurring) (collecting cases). Plaintiffs do not advance their case by showing "aggressive business practices, or even conduct that is otherwise illegal[.]" *Id.*; *see also Watkins & Son Pet Supplies v. Iams Co.*, 254 F.3d 607, 608 (6th Cir. 2001) ("[W]hile a contract or tort claim might lie, an antitrust claim does not[.]").

For all of these reasons, as a matter of law, these petitions do not confer antitrust standing.

        5.    <u>The Statements to Steadman Regarding Plaintiffs are Not Anticompetitive Conduct.</u>

Plaintiffs assert that Vail Health engaged in anticompetitive conduct when it made statements regarding Plaintiffs to Steadman. As a matter of law, these statements do not constitute anticompetitive conduct.

To note, Plaintiffs have reasserted in the Amended Complaint that Chairman of Vail Health Board Michael Shannon made statements to Steadman, but the State Court has already determined that Plaintiffs failed to come forward with any evidence that those statements were made. (*Compare* Am. Compl. ¶ 157 *with* Ex. 1 at 14-16.) Assuming Vail Health did make statements to Steadman, even if malicious or illegal, conduct directed at a single competitor is

not anticompetitive.  *See Novell, Inc.*, 731 F.3d at 1072 ("The Supreme Court and this one, however, have long and emphatically rejected this approach, realizing that the proper focus of section 2 isn't on protecting competitors but on protecting the process of competition, with the interests of consumers, not competitors, in mind.").  Thus, as a matter of law, these alleged statements made to a single source of referrals in response to a single incident about a single competitor cannot confer antitrust standing.

### III.  COUNT II MUST BE DISMISSED BECAUSE PLAINTIFFS FAIL TO SHOW ATTEMPTED MONOPOLIZATION AS A MATTER OF LAW.

Plaintiffs support their attempted monopolization claim with only Vail Health's unconsummated joint ventures with two orthopedic clinics.  (Am. Compl. ¶¶ 256-73.)  As discussed, attempted monopolization does not condemn potential conduct.  As a matter of law, Plaintiffs fail to show attempted monopolization as a matter of law, and Claim II should be dismissed.

### CONCLUSION

WHEREFORE, Vail Health request that Counts I and II be dismissed in their entirety.

Respectfully submitted this 11th day of October, 2019.

    *s/ Shannon Wells Stevenson*
Shannon Wells Stevenson
Janet A. Savage
Jacqueline V. Roeder
Daniel A. Richards
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, Colorado, 80202
Telephone: 303.892.9400
Facsimile: 303.893.1379
Email: shannon.stevenson@dgslaw.com
       janet.savage@dgslaw.com
       jackie.roeder@dgslaw.com
       daniel.richards@dgslaw.com

*Attorneys for Defendant VAIL CLINIC, INC., d/b/a VAIL HEALTH, a Colorado nonprofit corporation.*

- 17 -

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFENDANT VAIL HEALTH'S MOTION TO DISMISS was filed via CM/ECF on this 11th day of October, 2019, which will forward notice to the following:

Jesse Wiens
Fahrenholtz & Wiens LLC
100 West Beaver Creek Blvd., Suite 236
Avon, Colorado 81620
Email: fwlawyers@gmail.com

Alan L. Kildow
790 Potato Patch Drive
Vail, Colorado 81657
Email: akildow@aol.com

*s/Brigid Bungum*
Brigid Bungum