**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation.

      Defendant.

---

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S  RULE 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT**

---

## INTRODUCTION

This case is about numerous exclusionary acts committed by Vail Health that violate § 2 of the Sherman Act.  They are best summarized by a statement made by Vail Health Vice President Luke O'Brien to plaintiff Lindsay Winninger: "***MY JOB IS TO LOOK AT YOU AS COMPETITION AND MY JOB WOULD BE TO ELIMINATE YOU.***"  The factual allegations in Plaintiffs' pleading and as articulated in the pages that follow, do not lend themselves to disposition under Rule 12(b)(6).  The motion should be denied.

## ARGUMENT

**I.      THE STATE COURT'S ORDER ON PARTIAL SUMMARY JUDGMENT IS NULL AND VOID AND HAS NO PRECLUSIVE EFFECT HERE.**

At page four of its motion, Vail Health cites to a state court order granting partial summary judgment on certain defamation claims in the state court action but omits *material* facts about the enforceability of that order in the first instance.  The purported

1

purpose of citing to this order (which is void as a matter of law) is apparently to argue that there is some preclusive effect to that order, as Vail Health seems to imply at pages 13-14 of its motion.  It is thus important to understand the history behind that order, which Plaintiffs also previously discussed in their opposition to Defendant's motion to stay.

In March 2019, the state court granted Plaintiffs' motion to amend to bring a proposed second amended complaint, which included a state antitrust claim.  The order, however, was issued *after* the parties had briefed Defendants' motion for partial summary judgment on the existing pleading.  Over Plaintiffs' multiple objections, the state court refused to order Defendants to refile their summary judgment motion on the seemingly-operative proposed second amended complaint, which the state court now recognizes was a significant mistake.

Apparently recognizing this mistake, on May 28, 2019, the state court reversed its decision on Plaintiffs' motion to amend, denying it because it would delay trial.  With the issuance of that order, the proposed second amended complaint became a nullity.  Inexplicably, three days later the state court issued an order on Defendants' summary judgment motion solely addressing the claims in the inoperative proposed second amended complaint:

> Although this Order is pertaining only to the Second Amended Complaint and Jury Demand, in the interest of efficiency, clarity, and readability, it shall refer to the allegations in the Amended Complaint consistent with the Motion.[1]

To straighten this mess out, on August 21, 2019, the court and all parties, including Vail Health, agree that the proposed Second Amended Complaint is a nullity:

> THE COURT:  So it sounds like everybody agrees that the Court's order to deny the second amended complaint is a valid order….But

---

[1]    Def.'s Ex. 1 at 3 [Order on Summ. J. on Inoperative Second Am. Compl,].

> at least for the—for the law of the case right now, I'm not hearing anybody disagree that the second amended complaint is gone, is a nullity.  Does anyone disagree with?
>
> (No audible response.)
>
> THE COURT:  All right.  Since everybody agrees with that, any claims that were in the second amended complaint are gone.
>
> MR. KILDOW:  Well—
>
> THE COURT:  The order is gone.
>
> MR. KILDOW:  They're a—they're a—they're a nullity.
>
> THE COURT:  *Yeah, they're a nullity…that document is a nullity.*

Because it is undisputed that the proposed pleading is a nullity, and the summary judgment order relates only to that pleading, it cannot be disputed that the summary judgment order is also void and has no force or effect.

Given that the order has no legal effect, it should be unnecessary to point out the numerous inaccuracies in Vail Health's recitation of the state court's findings.  But to avoid any confusion, there are several issues that should be pointed out:  *First,* the Court did not find that Cimino downloaded and sent Vail Health patient files to Winninger.[2]  *Second,* the court had to assume the statements to law enforcement were defamatory to find them privileged.[3]  *Third,* the false statements relating to Steadman were found to be factually supported in the state court action and constituted defamation *per se*.[4]  *Fourth,* the state court did not find that Vail Health conducted a reasonable investigation before petitioning the Vail PD but inexplicably states the false statements were made without malice.[5]

---

[2]   *Compare* Def.'s Mot. at 4 (citing Ex. 1 at 22) *with* Ex. 1 at 18-19 (stating Defendants failed to demonstrate Winninger stole records because Cimino emailed them to her).

[3]   *Compare* Def.'s Mot. at 4 (citing Ex. 1 at 19-23) *with* Ex. 1 at 21 ("Defamatory statements made for the purpose of reporting a crime are matters of public concern.")

[4]   *See, e.g.,* Def.'s Ex. 1 at 6-9, 14, 19.

[5]   *Id.* at 22.

Finally, the state court's summary judgment order has no preclusive effect here, even if it was a valid order, which it is not.  To have any preclusive effect, there must be a final judgment on the merits, and Plaintiffs must have had a full and fair opportunity to litigate the issues in state court action.[6]  But there is no final judgment, discovery is a long way from completion, and there is no trial date set in the state court.  Further, the manner in which the summary judgment was issued—that is on an inoperative complaint that was never briefed by the parties—means that Plaintiffs were not given a full and fair opportunity to litigate the issues in state court.   And because the state court's order "granting partial summary judgment remains subject to revision at any time before the trial court either enters judgment on all the claims at issue, or certifies its order as final under C.R.C.P. 54(b),"[7] there can be no preclusive effect to the order[8] as Vail Health seems to argue (without any analysis) in its last argument.[9]

## II.   PLAINTIFFS' RELEVANT GEOGRAPHIC MARKET IS CORRECT.

### A.   Relevant Markets Should Not Be Decided Under Rule 12(b)(6).

Vail Health's lead antitrust argument is that Plaintiffs' relevant geographic market is too small and thus "not plausible."[10]   Its introductory paragraph cites cases defining relevant geographic markets for Sherman Act § 2 purposes[11] that Plaintiffs do not contest for the generic legal propositions for which they stand.  *However*, in 2016, Vail Health's theory of the relevant geographic market for hospitals was explicitly rejected by the

---

[6]      *Pomeroy v. Waitkus*, 183 Colo. 344, 350, 517 P.2d 396 (1973).
[7]      *McDonald v. Zions First Nat'l Bank, N.A.*, 348 P.3d 957, 963 (Colo. Ct. App. 2015).
[8]      Def.'s Mot. at 14.
[9]      *See Rantz v. Kaufman*, 109 P.3d 132, 141 (Colo. 2005) (holding that a judgment on appeal is not even final and has no preclusive effect).
[10]     Def.'s Mot. at 6-9.
[11]     *Id.* at 6-7.

country's most distinguished health care antitrust experts (the "*Amici* Economists"), [12] and

three federal circuit courts, a federal district court, and the FTC have rejected it as well.[13]

So it cannot be said that "Plaintiffs' purported geographic market is not supported by

common sense[,] the market is not plausible, and Plaintiffs' claims must be dismissed."[14]

Before plunging into the substantive merits of either the relevant geographic or

product markets, it should be noted that "market definition is a question of fact"[15] and courts

should be cautious in granting Rule 12(b)(6) motions in Sherman § 2 cases.  "[D]ismissal

of an antitrust claim for failure to adequately plead the relevant market can be

problematic."[16]  As then-Judge, now Justice Sotomayer stated in *Todd v. Exxon Corp.*:

"Because market definition is a deeply fact-intensive inquiry, courts hesitate to grant

motions to dismiss for failure to plead a relevant product[17] market."[18]

---

[12]     Consent Brief of *Amici Curiae* Economics Professors in Support of Plaintiffs-Appellants Urging Reversal of District Court's Decision in *FTC v. Penn State Hershey Medical Center*.  See *FTC v. Penn State Hershey Medical Center*, 838 F.3d 323, 340 (3d Cir. 2016).

[13]     *Penn State Hershey*, 838 F.3d at 340-41; *FTC v. Advocate Health Care Network*, 841 F.3d. 460, 475-76 (7th Cir. 2016); *St. Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 784 (9th Cir. 2015); *Sidibe v. Sutter Health*, Case No 12-cv-04854-LB (N.D. Cal., April 12, 2019); *In re Evanston N.W. Healthcare Corp.*, 2007 WL 2286195, at *64 (FTC 20017).

[14]     Def.'s Mot. at 9.

[15]     *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 453 (1992); *E.I. Dupont De Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 443 (4th Cir. 2011); *Penn State Hershey,* 838 F.3d at 335; *Westman Comm'n Co. v. Hobart Int'l, Inc.*, 796 F.2d 1216, 1220 (10th Cir. 1986) ("We recognize that market definition is a question of fact").

[16]     *Dupont*, 637 F.3d at 443.  *See also Found. for Interior Design Educ. Research v. Savannah College of Art Design*, 244 F.3d 521, 531 (6th Cir. 2001) ("Market definition is a highly fact-based analysis that generally requires discovery.").

[17]     The Supreme Court has recognized that "[t]he criteria to be used in determining the appropriate geographic market are essentially similar to those used to determine relevant product market."  *Brown Shoe Co. v. U.S.,* 370 U.S. 294, 336 (1962).

[18]     275 F.3d 191, 199 (2d Cir. 2001).

**B.      Plaintiffs Have Pleaded A Plausible Geographic Market.**[19]

Plaintiffs' relevant geographic market is Eagle County, from East Vail to Gypsum.[20] For the purposes of this motion, the allegation that patients will not travel from the Vail Valley eastward over Vail Pass to Silverthorne or westward through Glenwood Canyon must be taken as true.  This convenience factor was recognized by the Tenth Circuit in *Lantec, Inc. v. Novell, Inc.*: "The size of the relevant geographic market depends on a number of factors, including '[p]rice data and such corroborative factors as transportation costs, delivery limitations, *customer convenience and preference*, and the location of the facilities of other producers and distributors."[21]  The Supreme Court has also found the convenience factor to be particularly true with retail service that are often small, especially when customers are motivated by convenience.[22]

And it is with no small amount of irony that Vail Health's motion repeatedly cites to *Christy Sports, LLC v. Deer Valley Resort Co., LTD*, which relied heavily on the convenience factor to define a *tiny* 2-mile, 5-minute ride as a geographic market:  "we find it not implausible that destination skiers who arrive at the resort by bus or shuttle will find it sufficiently inconvenient to travel into town to rent skis...." [23]   Under that standard, this Court too should "find it not implausible" that injured skiers "will not find it sufficiently inconvenient to travel" 38 miles to Silverthorne.  More to the point, convenience is perhaps the most contested market definition issue when it comes to medical care:  how many

---

[19]      The typical starting point for the geographic market analysis set forth in section C below is the two-part "*Tampa Electric*" standard.  Because Vail Health began its analysis with customer convenience, Plaintiffs will do the same for ease of comparison.

[20]      Am. Compl. ¶¶ 33-41.

[21]      306 F.3d 1003, 1024 (10th Cir. 2002) (emphasis added).

[22]      *U.S. v. Philadelphia Nat'l Bank,* 374 U.S. 321, 361(1963).

[23]      555 F.3d 1199, 1192 (10th Cir. 2009).

medical facilities will a patient drive past to save money on treatment, or more importantly save on their health insurance premiums?  Or, as the Eighth Circuit framed the issue in *Bathke v. Casey's General Stores, Inc.*, what is "the extent to which customers will travel in order to *avoid* doing business" with the defendant competitor.[24]

The consolidation of the hospital industry over the past 10-15 years has been a focal point for Sherman § 2 litigation, generating a cascade of economic literature that should provide guidance here.[25]  The commercial reality in medical care and hospital markets is that patients prefer to receive their care close to home.[26]  In *St. Alphonsus Medical Center-Nampa Inc. v. St. Luke's Health System, Ltd.*, the Ninth Circuit affirmed the district court's conclusion that the relevant geographic market was limited to the small community of Nampa and did not extend the additional 20 miles to Boise.[27]  In *Advocate Health*, the six-day evidentiary hearing on the FTC's motion to enjoin a hospital merger adduced evidence that the Seventh Circuit found persuasive: in the Northern Chicago suburbs "80 percent of patients drove to the hospitals of their choice in 20 minutes or less."[28]  The Seventh Circuit overturned the district court and went with the smaller geographic market on grounds of convenience.[29]

And in *Penn State Hershey*, the Third Circuit held that the FTC had properly defined the market, concluding that York and Lancaster were outside of the Harrisburg

---

[24]    64 F.3d 340, 346 (8th Cir. 1995) (emphasis added).
[25]    *See, e.g.,* Cory Capps, *et al.*, "The Silent Majority Fallacy of the Elzinga-Hogarty Criteria: A Critique and New Approach to Analyzing Hospital Mergers," National Bureau of Economic Research Working Paper (2001); Gregory Vistnes, "Hospitals, Mergers, and Two-Stage Competition," Antitrust L. J. 67(3) (2000).
[26]    *Id*.
[27]    778 F.3d 775, 784 (9th Cir. 2015).
[28]    *Advocate Health*, 841 F.3d at 470.
[29]    *Id.* at 476.

market because hospital patients would not make the 38 mile drive to Lancaster or the 24 mile drive to York.[30]  Accepting the analysis of the *Amici* Economists (who filed an *amici* brief in the case), the Third Circuit held that patient flow is in error because "[t]he [price] constraining effect is non-existent because patient decisions are based mostly on non-price factors, such as location or quality of service."[31]  "We are skeptical that patients who travel to Hershey for these complex services would turn to other hospitals in the area."  Because the hospitals outside Dauphin County would not create sufficient competition to restrain increases in price by a monopolist, they were outside the relevant geographic market.

Here, Plaintiffs allege that physical therapy patients residing on the west side of Vail Pass would not travel the 30 to 68 miles to reach Silverthorne or the 75 miles to reach Breckenridge for cheaper sources of physical therapy services.[32]  Vail Health's argument that patients are willing to travel in and out of Eagle County suggests the same type of "patient flow" analysis that has now been resoundingly rejected by the antitrust economic community.[33]  Non-price factors such as convenience and quality significantly dampen effective price competition, thereby permitting monopolists to capture supra-competitive prices and profits to the detriment of consumers.

Vail Health's argument incorrectly assumes that a patient will travel through the mountains to receive less expensive physical therapy treatment than that provided by Vail Health.  That is, alternative sources of therapy available in Silverthorne or Glenwood

---

[30]  *Penn State Hershey*, 838 F.3d at 346.
[31]  *Id.* at 341.
[32]  Am. Compl. ¶¶ 35-36.
[33]  *See* Consent Brief of *Amici Curiae* Economics Professors in Support of Plaintiffs-Appellants Urging Reversal June 8, 2016, *Penn State Hershey*, 838 F.3d 327.

Springs provide price competition.  As recognized by the Circuit Courts in *Advocate Health* and *Penn State Hershey*, however, the reality is that most consumers do not directly pay the full cost of medical care, their medical insurers do.  Those patients who have medical insurance are usually not sensitive to retail medical prices, while insurers respond to both prices and their insureds' preferences.[34]  So given the analysis of the Ninth, Seventh, and Third circuits, it does not appear that Plaintiffs' defined geographic market is as implausible as Vail Health suggests.

### C. Plaintiffs Have Pleaded A Plausible Geographic Market As To Where Vail Health Operates And Patients Can Go for Therapy.

Vail Health's final geographic market argument is that "Plaintiffs attempt to rely on Vail Health's service area to establish the relevant geographic market."  Vail Health then implies that Plaintiffs do not allege facts as to where "customers would look to buy such a product."[35]  Actually, the first contention is correct but the second is not.  The standard for determining the relevant geographic market was announced by the Supreme Court in *Tampa Electric Co. v. Nashville Co.*, where it held that "the geographic market should consist of an *area where Defendants operate* and which the [*consumer] can reasonably turn* for supplies."[36]  As to the first factor, Plaintiffs' amended complaint properly addresses where Vail Health operates,[37] the services it offers,[38] the number of physical therapists it employs and its market share,[39] as well as the constraints of the labor market.[40]

---

[34]     *Penn State Hershey*, 838 F.3d at 340-41.  *See also* Vistness, *Hospitals, Mergers, and two-Stage Competition*, 67 Antitrust L. J., 671, 672.
[35]     Def.'s Mot. at 8.
[36]     365 U.S. 320, 365 (1961) (emphasis added).
[37]     Am. Compl. ¶¶ 34-36, 40.
[38]     *Id.* ¶ 37.
[39]     *Id.* ¶ 38.
[40]     *Id.*

As to the second factor, Plaintiffs allege that "within the Vail Valley market there are few competitors of Vail Health that provide physical therapy services.  As of the date of this filing, Plaintiffs calculate there are 80 physical therapists in the Vail Valley market, of which 57 are employed by Vail Health."[41]  Plaintiffs have alleged that there are barriers to entry that significantly restrict alternative supplies of physical therapists: "One of the most significant barriers is that Vail Health has the labor market for physical therapists 'locked up' with non-compete and/or non-solicitation restrictions in employment agreements.  This means that over 70% of the physical therapy labor in the Vail Valley (by headcount) is controlled by Vail Health."[42]

Plaintiffs also allege that "there have been no new competitors entering the market other that Sports Rehab for at least five years.  On the other side, over the past two years, three physical therapy providers—including Sports Rehab—have closed their Vail clinical offices…."[43]  Finally, Plaintiffs allege that there are few patients who would overcome a price increase for physical therapy services by purchasing those services outside of the Vail Valley region.  And, as a *practical matter,* patients cannot purchase their physical therapy services outside the Vail Valley market because of the geographic challenges of the mountains.[44]  Plaintiffs have therefore alleged a geographic market as to not only where patients *actually* go for physical therapy, but where they *could go* to escape Vail Health's supra-competitive prices.  The commercial and geographic reality is that they cannot go very far.  Plaintiffs have, therefore, satisfied the second factor of the *Tampa Electric* standard.

---

[41]     *Id*.
[42]     *Id*. ¶¶ 39-40.
[43]     *Id*. ¶ 49.
[44]     *Id*. ¶¶ 36-49.

III.    **PLAINTIFFS HAVE PLEADED A RELEVANT PRODUCT MARKET.**

As stated above, relevant market definition is most often addressed as a fact issue. Perhaps the granddaddy of relevant product market cases is *United States v. E.I. Dupont de Nemours & Co.*, where the sole legal debate was whether the product market was limited to cellophane or was a larger group of "flexible packaging materials."[45]  There, the relevant product market was not decided until "[a]fter a lengthy trial,"[46] not on a Rule 12(b)(6) motion.  The Supreme Court held that the ultimate determination "of relevant product market depends upon the availability of alternative commodities for buyers: *i.e.*, whether there is a cross-elasticity of demand "between competing products."[47]  "This interchangeability is largely gauged by the purchase of competing products for similar uses considering the price, characteristics and adaptability of the competing commodities."[48] And as Vail Health correctly noted, the test is "*reasonable* interchangeability."

Without *any* analysis, Vail Health assumes that the services that physical therapists provide are interchangeable with chiropractic care, yoga, massage, and acupuncture.  But unlike cars, taxicabs, buses, and rental cars—which are all vehicles—these types of service are not reasonably interchangeable.   Physical therapists diagnose and treat physical disabilities and bodily injuries[49] and must be licensed to do so.  Yoga instructors and masseuses are not licensed and do not diagnose physical disabilities or injuries in anywhere near the scope or extent that physical therapists do.  Chiropractors heal on "the premise that disease is attributable to the abnormal functioning of the human ***nervous***

---

45      351 U.S. 377, 379-80 (1956).
46      *Id*. at 379.
47      *Id.*
48      *Id*. at 381.
49      C.R.S. § 12-285-104 (6)(a)(I).

*system*," primarily the spine.[50]  The Colorado legislature requires acupuncturists to be licensed[51] but recognizes that acupuncture is "a system of health care based upon traditional and modern oriental medical concepts…."[52]  Acupuncturists treat just about every malady: relief from acute and chronic pain, fertility, menopause, anxiety, depression, insomnia, addiction and health concerns of all types.[53]  So contrary to Vail Health's assumptions, these services are not "reasonably interchangeable" with physical therapy.

## IV.    PLAINTIFFS HAVE STANDING TO SUE VAIL HEALTH.

Vail Health next argues that Plaintiffs have not pleaded facts showing that they have antitrust standing because they have not pleaded "anticompetitive conduct that caused that injury."[54]  To have antitrust standing, a plaintiff must prove the existence of "antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flow from that which makes defendants' acts unlawful."[55]  "[T]o run afoul of Section 2 a defendant must be guilty of illegal conduct 'to foreclose competition, to gain competitive advantage, *or to destroy a competitor*."[56]  But conduct that might otherwise be lawful may be impermissibly exclusionary under antitrust law when practiced by a monopolist. Indeed, "a monopolist is not free to take certain actions that a company in a competitive…market may take, because there is no market constraint on a monopolist's behavior."[57]

---

50    C.R.S. § 12-215-103 (4).
51    C.R.S. § 12-200-106.
52    C.R.S. § 12-200-103.
53    *See, e.g.,* http://www.vailvalleywellness.com.
54    Def.'s Mot. at 10 (citing *Tal v. Hogan*, 453 F.3d 1244, 1253 (10th Cir. 2006)).
55    *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat., Inc.*, 429 U.S. 477, 489 (1977)).
56    *E.I. Dupont De Nemours & Co. v. Kolan Indus., Inc.*, 537 F.3d 435, 440 (4th Cir. 2011).
57    *LePage's, Inc. v. 3M*, 324 F.3d 141, 151-52 (3d Cir. 2003) (citing *Aspen Skiing*, 472 U.S. 585, 601-04 (1985)).

The anticompetitive conduct that Plaintiffs have pleaded against Vail Health include the following exclusionary and predatory acts:

- Exclusionary agreements that reduce demand for competitors' products or services;[58]

- Exclusionary agreements that reduce consumer choice for products or services;[59]

- Disparagement of the monopolist's competitors;[60]

- Deceptive acts and misrepresentations to referrals (the "distributors");"[61]

- Misrepresentations and misuse of law enforcement and regulatory processes;[62]

- Sham litigation and Vail Health's counterclaims.[63]

Each of these exclusionary acts caused direct injury to Plaintiffs.

## A. The Potential Joint Venture Is An Attempt To Monopolize.

Plaintiffs allege that Vail Health attempted to create a joint venture to combine with orthopedic clinics to intentionally expand its already robust physical therapy monopoly.[64] Because they never came to fruition, Vail Health asserts that "they cannot constitute anticompetitive conduct."[65]  That argument assumes that attempts to monopolize must be successful. But that is incorrect. "Section 2 of the Sherman Act…forbids *an attempt* to monopolize as well as monopolization."[66]  "Attempted monopolization employs 'methods,

---

[58]     Am. Compl. ¶¶ 60-75; *U.S. v. Microsoft*, 253 F.3d 34, 60-62 (D.C. Cir. 2001).

[59]     Am. Compl. ¶¶ 72, 76-92; *Microsoft,* 253 F.3d at 65.

[60]     Am. Compl. ¶¶ 150-57, 162-76; *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114,1127 (10th Cir. 2014).

[61]     Am. Compl. ¶¶150-57, 162-76, 181-82, 191-92; C*onwood,* 290 F.3d at 783-88.

[62]     Am. Compl. ¶¶ 118-49, 194-98, 221-24; *Caribbean Broad.,* 148 F.3d at 1087.

[63]     Am. Compl. ¶¶ 199-224.  *See, e.g., Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 174 (1965) ("enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act").

[64]     Am. Compl. ¶¶ 60-73.

[65]     Def.'s Mot. at 10 (citation omitted).

[66]     *MM Med. Supplies Servs., Inc v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 166 (4th Cir. 1992) (emphasis added).

means and practices which would, *if successful*, accomplish monopolization, and which *though falling short, nevertheless approaches so close as to create a dangerous probability of it.*"[67]   Moreover, "[i]f a firm has been 'attempting to exclude rivals on some bases other than efficiency,' it is fair to characterize its behavior as predatory."[68]

Attempted monopolization under Sherman Act § 2 consists of: (1) the use of anticompetitive conduct; (2) with specific intent to monopolize; and (3) a dangerous probability of success.[69]   Plaintiffs have pleaded all those elements.   (1) Vail Health's attempt to form a combination with Steadman and Vail Summit Orthopedics was illegal because a merged entity that controls an "undue percentage share" of the market and that "results in a significant increase in the concentration of firms in that market" is "inherently likely to lessen competition substantially."[70]   That combination would be presumptively illegal "in the absence of evidence clearly showing that the merger is not likely to have such anticompetitive effects."[71]   Thus, with the alleged 80% market share of Vail Health,[72] a combination with the two orthopedic clinics is presumed to be illegal.   (2) Specific intent is shown by Vail Health Vice President Luke O'Brien's statement to Winninger: "***MY JOB IS TO LOOK AT YOU AS COMPETITION AND MY JOB WOULD BE TO ELIMINATE YOU.***"[73]   (3) If the joint venture had been successful, Vail Health's "market share…had the dangerous probability of reaching 90%."[74]   Plaintiffs, therefore, satisfy their pleading requirements.

---

[67]     *Dupont*, 637 F.3d at 453 (emphasis added).
[68]     *Aspen Skiing*, 472 U.S. at 605.
[69]     *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993); *Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp*., 910 F.2d 139, 147 (4th Cir. 1990).
[70]     *Philadelphia Nat'l Bank*, 374 U.S. at 362-63.
[71]     *Id.*
[72]     Am. Compl. ¶ 34.
[73]     *Id*. ¶ 40.
[74]     *Id*. ¶ 66.

### B.      The Steadman Lease Constitutes Anticompetitive Conduct.

Steadman signed a ten-year lease with Vail Health that precludes the orthopedic clinic from providing physical therapy services.[75]  Vail Health argues that it can do what it wants with its property.  In support of that proposition, Vail Health cites *Christy Sports,*[76] which was dismissed on a Rule 12(b)(6) motion, and *Four Corners Neophrology Assoc., P.C. v. Mercy Med. Ctr. Of Durango,*[77] which was dismissed on summary judgment.  But in *Aspen Skiing,* the Supreme Court held that "[t]he high value that we have placed on the right to refuse to deal with other firms does not mean that the right is unqualified."[78]  "Its exercise as a purposeful means of monopolizing interstate commerce is prohibited by the Sherman Act."[79]   Even *Four Corners* recognizes that *Aspen* is an exception: "In the absence of any purpose to create or maintain a monopoly, the act does not restrict the long recognized right…[to deal] with whom he will deal."[80]   In *Four Corners,* the Tenth Circuit recognized that a monopolist's right to refuse to deal with a competitor "[is] unlawful [only where] accompanied by an element of anticompetitive *conduct.*"[81]

Here, the lease restriction should be viewed against the broad array of anticompetitive exclusionary conduct alleged in the pleading that are temporally related to the lease restriction.  It is one more tool in Vail Health's tool box and there can be little doubt that "[t]he restrictive covenant in [the] Steadman lease is unquestionably intended

---

[75]      Am. Compl. ¶¶ 74-75.

[76]      Def.'s Mot. at 11 (citing *Christy Sports v. Deer Valley Resort Co., Ltd*, 555 F.3d 1188, 1196 (2009).

[77]      *Id.* (citing *Four Corners Neophrology Assoc., P.C. v. Mercy Med. Ctr. Of Durango*, 582 F.3d 1216, 1221 (10th Cir. 2009).

[78]      *Aspen Skiing*, 472 U.S. at 601.

[79]      *Id.* at 602.

[80]      *Id.*

[81]      *Four Corners*, 582 F.3d at 1223 (quoting *Verizon Commc'ns Inc. v. Law Offices of Curtis v. Trinko, LLP*, 540 U.S. 398, 407 (2004)).

to reduce competition and has the effect of further enhancing Vail Health's monopoly power."[82]  The Court, therefore, should not dismiss ¶¶ 74-75 of the amended complaint, particularly at this stage of the case.

### C.    The Nonsolicitation Agreements Are Anticompetitive.

Vail Health's states that "Plaintiffs assert that Vail Health's employment contract with Mr. Cimino included a non-solicitation agreement"[83] and then states that "the single non-solicitation agreement and single instance of enforcement cannot confer antitrust standing."[84]  But this is not a case about one person, it is about locking up an entire labor force!. In considering this issue, it is important to carefully analyze the allegations of the pleading:  "As a monopolist, Vail Health's practice of tying up 70% of [the] physical therapy labor pool with illegal nonsolicitation covenants is exclusionary and unnecessarily restrictive."[85]  It must be remembered that "a monopolist is not free to take certain actions that a company in a competitive…market may take, because there is no market constraint on a monopolist's behavior."[86]

To determine whether the restrictive covenant that Vail Health imposes on 70% of the physical therapy labor market is exclusionary requires consideration of "its impact on consumers and whether it has impaired competition in an **unnecessarily** restrictive way. If a firm has been 'attempting to exclude rivals on some basis other than efficiency,' it is fair to characterize its behavior as predatory."[87]  Plaintiffs have pleaded that the restrictive

---

[82]    Am. Compl. ¶ 75.
[83]    Def.'s Mot. at 11-12.
[84]    *Id*. at 13.
[85]    Am. Compl. ¶ 89.
[86]    *Aspen Skiing*, 472 U.S. at 601.
[87]    *Id*. at 605 n.32 (quoting 3 P. Areeda & D. Turner, *Antitrust Law* 78 (1978)) (emphasis added).

covenant: (1) has an adverse effect on consumers,[88] (2) has impaired competition,[89] and (3) is *unnecessarily* restrictive.[90]   *Aspen Skiing*, which was decided only after a jury trial,[91] determined that the exclusion of Aspen Highlands from the lift ticket program was monopolistic in large part because it was "unnecessary."   Vail Health's nonsolicitation agreements are unnecessarily restrictive and restraint of trade.

The motion should also be denied because C.R.S. § 8-2-113(2) provides that "[a]ny covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer ***shall be void***…."[92]   Under Colorado law, nonsolicitation agreements are deemed to be anticompetitive and a restraint of trade.[93]   It must be accepted as true that Vail Health physical therapists are not executives or management and do not fall within the exemption of C.R.S. § 8-2-113(2).[94] And the nonsolicitation clause here is not the type of employment agreement saved by the trade secret exception under § 8-2-113(2)(b) either, particularly when the two provisions are not tied together like here.[95]   Vail Health's nonsolicitation agreements are illegal and therefore provide no pro-competitive justification.

---

[88]    Am. Compl., ¶¶ 88-90.

[89]    *Id.* ¶¶ 86-90, 92.

[90]    *Id.* ¶¶ 80-89.

[91]    *Aspen Skiing*, 472 U.S. at 587.

[92]    C.R.S. § 8-2-113(2) (emphasis added).

[93]    *See, Phoenix v Dowell,* 176 P.3d 835, 844 (Colo. Ct. App. 2008) ("The core policy underlying the unenforceability of noncompetition provision is a prohibition on the restraint of trade").

[94]    *See* Am. Compl. ¶ 78.

[95]    Am. Compl. ¶ 79.  *See Colo. Accounting Machs., Inc. v. Mergenthaler* 609 P.2d 1125 (Colo. Ct. App. 1980) (holding that the sole purpose behind the restrictive covenant is to prohibit all competition and "[c]onsequently, the trade secret provision is valid; the restrictive covenant is not"); *Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 528 (Colo. Ct. App. 2009) (stating that a "naked" covenant restricting all competition is invalid); *Dresser Indus., Inc. v. Sandvick*, 732 F.2d 783, 788 (10th Cir. 1984) ("A naked covenant not to compete is void under the statute").

**D.     Vail Health's Sham Petitions To Regulatory And Law Enforcement Agencies Are Not Protected by Noerr-Pennington.**

Vail Health argues that its communications about Plaintiffs with the Vail Police Department ("Vail PD") and the Colorado Department of Regulatory Affairs ("DORA") "[a]s a matter of law…do not constitute anticompetitive conduct."[96]   As we shall see, the statements and conduct alleged in the pleading are not only anticompetitive, but are not protected by Noerr-Pennington.[97]   Noerr provides broad protections but fraudulent statements made to the Patent Office "may be violative of § 2 of the Sherman Act" and not protected by Noerr;[98] immunity may be refused to defendants who have filed false information before a regulatory agency;[99] "sham objections to a government licensing agency to protect its monopoly" constitute anticompetitive conduct that are not protected by Noerr;[100] repeated groundless administrative proceedings and lawsuits may also constitute anticompetitive exclusionary acts that are not immunized by Noerr.[101]

Plaintiffs' pleading alleges that Vail Health made knowingly false statements to the Vail PD and DORA that included the submission of false and fabricated evidence.[102] Accepting these allegations as true, as the Court must at this stage, Plaintiffs have pleaded violations of § 2 through the predatory conduct.

---

[96]     Def.'s Mot. at 13.
[97]     *E. R.R. Conference v. Noerr Motor Freight,* 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965).
[98]     *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 174 (1965).
[99]     *Woods Exploration & Producing Co. v. Aluminum Co. of Am.*, 438 F.2d 1286, 1295 (5th Cir. 1971).
[100]    *Caribbean Broad.,* 148 F.3d at 1087.
[101]    *Cal. Motor Transpor14-14 Co. v. Trucking Unlimited*, 404 508, 512 (1972); *Hanover 3201 Realty, LLC. v. Village Supermarkets, Inc.*, 806 F.3d 162, 183 (3d Cir. 2015).
[102]    Am. Compl. ¶¶ 118-125, 127, 133-49.

### E.    False Statements To Steadman Are Anticompetitive.

In essentially one paragraph near the end of its motion, Vail Health makes the curious statement that "as a matter of law" Plaintiffs' allegations of false statements by Vail Health to Steadman "do not constitute anticompetitive conduct."[103]  It then cites to an amended complaint in the Eagle County action and a summary judgment order in that case, neither of which have any bearing on this case, as explained earlier.

The reference to Vail Health Board Chairman Shannon at page 14 of its motion predates his deposition and those of the Steadman witnesses that confirmed Shannon's false statements and which are set forth in the amended complaint in this case. [104]  For example, ¶ 177 alleges: "During the week of February 6, 2017, Shannon called SPRI Board member Al Perkins [at which time] Shannon [told] Perkins that 'he did not know why [Steadman CEO] Dan Drawbaugh was hanging around [Winninger] because she wasn't a good person and she had stolen records from Vail Health to start her own business.' Shannon told him that the theft involved 2,500 to 3,000 patient records.  (Perkins Dep. at 15-23)."   Whether or not Shannon's false statements were available at the time the February 2018 complaint was filed in Eagle County (they were not), they are alleged in detail here.   And the summary judgment order did not adjudicate the February 2018 complaint cited by Vail Health, it was the proposed pleading filed on January 21, 2019, which the state court has ruled—and Vail Health has stipulated—is a nullity.

Vail Health then makes the even curiouser statement that even "[a]ssuming Vail Health did make statements to Steadman...conduct directed to a single competitor is not

---

[103]    Def.'s Mot.. at 14-15.
[104]    Am. Compl. ¶¶ 153, 156, 158, 163-77.

anticompetitive."[105]   Its citation to *Novell* is misplaced because it does not support the contention for which it is cited.  Page 1072 may be summarized broadly as standing for the proposition that there are many types of exclusionary conduct, and a plaintiff must allege that the particular conduct at issue must have an effect on the competitive process. Plaintiffs' pleading has an entire section devoted to the impact of Vail Health's anticompetitive conduct on competition and consumers.[106]   The contention that Vail Health's false statements do not constitute anticompetitive conduct was addressed *Lenox*: false statements—whether denominated as trade disparagement or defamation—can constitute anticompetitive behavior giving rise to § 2 liability.[107]   Plaintiffs have pleaded each and every factor for such liability.

## V.   PLAINTIFFS HAVE PLEADED A § 2 ATTEMPT TO MONOPOLIZE.

Vail Health's final argument that "Plaintiffs fail to show attempted monopolization as a matter of law" has already been addressed in this opposition.[108]

## <u>CONCLUSION</u>

For the foregoing reasons, Vail Health's motion to dismiss should be denied in its entirety.

---

[105]   Def.'s Mot. at 14-15 (citing *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1072 (10th Cir. 2013)).

[106]   Am. Compl. ¶¶ 228-39.

[107]   *Novel,* 62 F.3d at 1127.  *See also Conwood,* 290 F.3d at 783-88; *Caribbean Broad,* 148 F.3d at 1087.

[108]   *Supra* at 13-14.

Dated:  November 1, 2019                    *s/ Alan L. Kildow*
                                            Alan L. Kildow, MN# 0143133
                                            790 Potato Patch Drive
                                            Vail, CO 81657
                                            Telephone: (970) 390-6675
                                            E-mail:  alkildow@aol.com

                                            Jesse Wiens, Colo. #33903
                                            Fahrenholtz & Wiens LLC
                                            100 West Beaver Creek Boulevard
                                            Suite 236
                                            Avon, CO 81620
                                            Telephone: (970) 949-6500
                                            E-mail:  fwlawyers@gmail.com

                                            Attorneys for Plaintiffs Sports Rehab
                                            Consulting LLC and Lindsay Winninger

**CERTIFICATE OF SERVICE**

     I hereby certify that on November 1, 2019, I served a true and correct copy of Plaintiffs' Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss Amended Complaint, through the Court's e-filing system on:

     Janet A. Savage
     Shannon Stevenson
     Jacqueline V. Roeder
     Daniel Richards
     Davis Graham & Stubbs LLP
     1550 17th Street, Suite 500
     Denver, CO  80202
     Counsel for Defendant

                     *s/ Alan L. Kildow*
                     Alan L. Kildow