IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado Limited Liability Company, and
LINDSAY WINNINGER, an individual,

    Plaintiffs,

v.

VAIL CLINIC, INC., d/b/a VAIL HEALTH, a Colorado nonprofit corporation,

    Defendant.

### DEFENDANT VAIL HEALTH'S REPLY IN SUPPORT OF THE MOTION TO DISMISS

Defendant Vail Clinic, Inc., d/b/a/ Vail Health ("Vail Health") submits this reply in support of its motion to dismiss the Amended Complaint filed by Plaintiffs Sports Rehab Consulting, LLC ("SRC") and Lindsay Winninger (collectively, "Plaintiffs").

### ARGUMENT

Plaintiffs' response does not cure their implausible market definition, and as a matter of law, they still lack antitrust standing. Because these problems are dispositive as to both Counts I and II, the Amended Complaint should be dismissed in its entirety.

**I.   PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS FAIL TO PLEAD A PLAUSIBLE MARKET DEFINITION.**

A plausible market definition is an element of both monopolization and attempted monopolization claims under Section 2 of the Sherman Act, 15 U.S.C. § 2. *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009). Contrary to Plaintiffs' arguments, Vail Health applied the correct standard in the motion to dismiss to demonstrate the

implausibility of Plaintiffs' market definition. The Tenth Circuit assesses market definitions by applying the reasonable interchangeability standard, *i.e.*, if a company raised prices, the market is underinclusive if a consumer could reasonably exit the area to find another provider or choose another product. *See Buccaneer Energy (USA) Inc. v. Gunnison Energy Corp.*, 846 F.3d 1297, 1313 (10th Cir. 2017). Other federal circuits and the Federal Trade Commission ("FTC") apply an identical standard called "the hypothetical monopolist," *i.e.*, if a hypothetical monopolist imposed a "small but significant non-transitory increase in price ('SSNIP')," the market is underinclusive if consumers would exit the area to find another provider or choose another product. *See, e.g.*, *FTC v. Penn State Hershey Med. Ctr.*, 848 F.3d 327, 338 (3d Cir. 2016). Plaintiffs' claims must be dismissed because, as a matter of law, the proposed market definition fails to satisfy the reasonable interchangeability standard. *See, e.g.*, *Campfield v. St. Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1118 (10th Cir. 2008) ("[The] failure to allege a legally relevant market requires dismissal of [Plaintiffs'] claims."); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436-37 (3d Cir. 1997) (collecting cases) ("the relevant market is legally insufficient and a motion to dismiss may be granted" where the complaint "clearly does not encompass all interchangeable substitute products").

      A.     **PLAINTIFFS FAIL TO PLEAD A PLAUSIBLE GEOGRAPHIC MARKET.**

The Vail Valley geographic market, as pled by Plaintiffs, is implausible for three independent reasons, each of which warrants dismissal of the Amended Complaint in its entirety.

*First*, this geographic market contradicts Plaintiffs' own Amended Complaint. Plaintiffs assert that they provide "concierge-type physical therapy," where physical therapists treat patients "at any location requested by the patient." (Am. Compl. ¶ 16.) Thus, if a monopolist

raised prices in the Vail Valley, it is implausible that a patient would not hire physical therapists outside the Vail Valley who offer to drive *to* the patient.  Thus, the proposed geographic market does not include all reasonable alternatives and fails as a matter of law.  *See Campfield*, 532 F.3d at 1118 ("If the market described in the complaint fails to include 'reasonably good substitutes' then the plaintiff has not adequately alleged a relevant market.").  Plaintiffs have not addressed this issue in the Amended Complaint or in their response to Vail Health's motion to dismiss.  *See Total Renal Care, Inc. v. W. Nephrology and Metabolic Bone Disease, P.C.*, 2009 WL 2596493, at *7 (D. Colo. 2009) (dismissing complaint that failed to address, for example, "in-home kidney dialysis" as a substitute for dialysis clinics).

*Second*, assuming patients do the driving, it is implausible to suggest that patients would not drive 30 to 68 miles for physical therapy.  Courts have accepted single-county geographic markets only in unique commercial circumstances not present here.  For example, a small geographic market was plausible when the plaintiff alleged that the consumers at issue were "destination skiers *who arrive at the resort by bus or shuttle*."  *Christy Sports, LLC*, 555 F.3d at 1192 (emphasis added).  Plaintiffs have not alleged that this case is about destination skiers who arrive to the Vail Valley by bus or shuttle or are otherwise incapable of traveling to another county for important medical services.

Plaintiffs then cite a handful of hospital cases from other circuits that do not support their geographic market definition.  *See generally FTC v. Advocate Health Care Network*, 841 F.3d 460 (7th Cir. 2016); *Penn State Hershey Med. Ctr.*, 848 F.3d at 327.  In general, these cases hold that patients are less likely to drive further for hospitals because insurance companies, not patients, feel the effects of a monopolist's price increases.  *See, e.g.*, *Advocate Health Care*

*Network.*, 841 F.3d at 471.  Moreover, these cases recognize that insurance must be the controlling factor because, without insurance, the services are unaffordable.  *Cf. id.* at 338 (describing the services at issue in the hospital cases are "medical and surgical services that require an overnight hospital stay").  Plaintiffs, however, have not alleged that the geographic market here should be analyzed "through the lens of the insurers."  *Penn State Hershey Med. Ctr.*, 848 F.3d at 342.  Nor could they, since the cost of overnight stays at a hospital do not plausibly resemble the cost of physical therapy—indeed, Vail Health offers a self-pay option (Compl. ¶ 38), and Plaintiffs do not even accept insurance (*see* Exhibit 2, Am. Compl. ¶ 25).

Most importantly, these cases regarding general hospital services repeatedly acknowledge that patients *will* travel further for specialty care.  *See, e.g.*, *Advocate Health Care Network*, 841 F.3d at 473-74 (finding small geographic markets inappropriate for specialty hospitals "that attract patients at long distances from throughout the Chicago metropolitan area"); *see also Penn State Hershey Med. Ctr.*, 848 F.3d at 341 (patients will travel more than four counties to obtain services from "a leading academic medical center that provides highly complex medical services").  Meanwhile, Plaintiffs assert that they offer "individualized rehabilitation program[s]" that are "not generally offered in Vail Valley."  (Am. Compl. ¶ 16.)  Thus, contrary to their legal conclusion, Plaintiffs' own allegations illustrate a commercial reality where patients would travel for such services.

*Third*, while Vail Health's service area is generally irrelevant to the geographic market, the geographic market certainly cannot be narrower than Vail Health's service area.  Plaintiffs admit that Vail Health provides physical therapy services in Breckenridge and Silverthorne, Colorado.  (Am. Compl. ¶ 34.)  Yet their proposed geographic market excludes that part of Vail

Health's service area and thus fails as a matter of law.  *See, e.g.*, *Little Rock Cardiology Clinic v. Baptist Health*, 591 F.3d 591, 599-01 (8th Cir. 2009) (holding that the geographic market must be at least the size of defendant's service area, or else "we would be opening the door to creation of geographic markets with narrowness limited only by antitrust plaintiffs' imagination") (citing *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961)); *accord Buccaneer Energy (USA) Inc.*, 846 F.3d at 1318.

For each of these reasons, Plaintiffs have failed to plead a plausible geographic market.

### B.    PLAINTIFFS FAIL TO PLEAD A PLAUSIBLE PRODUCT MARKET.

In its motion, Vail Health demonstrated that the Amended Complaint also fails to plead a plausible product market because it fails to explain why it excludes other reasonable substitutes—like medical treatments, chiropractors, yoga, etc.  (Def's Mot. at 9.)  In their response, rather than justify the product market they actually pled, Plaintiffs attempt to rely on numerous allegations not in their Amended Complaint.

These allegations should not be considered.  *TV Commc'n Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1025 (10th Cir. 1992) (rejecting alleged product market and reasoning that "[t]he amended complaint must stand or fall on its own").  Even if these allegations were considered, however, different licensing requirements or different approaches to healing the body are insufficient reasons why certain services are not interchangeable with physical therapy.  *See, e.g.*, *Leyba v. Renger*, 874 F. Supp. 1229, 1238 (D.N.M. 1994) ("Despite their different training and standards for admission to practice, they satisfy the same consumer needs and therefore, operate in the same product market and are competitors.") (collecting cases); *see also Griffiths v. Blue Cross & Blue Shield*, 147 F. Supp. 2d 1203, 1213 (N.D. Ala.

2001) (holding that the product market was properly pled to include both chiropractors and physical therapists and reasoning that a product market limited to just chiropractors would have been dismissed). Because they have failed to include reasonable product substitutes, or explain why they are not substitutes, Plaintiffs fail to plead a plausible product market.

## II. PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS FAIL TO PLEAD ANTITRUST STANDING.

Antitrust standing is an element of both monopolization and attempted monopolization claims under Section 2 of the Sherman Act, 15 U.S.C. § 2. *Tal v. Hogan*, 453 F.3d 1244, 1253 (10th Cir. 2006). In short, Plaintiffs must allege that their injury was caused by anticompetitive conduct. *Id*. Plaintiffs' response does not resolve the problems that Vail Health identified in the motion to dismiss with respect to each category of alleged anticompetitive conduct, and thus, Plaintiffs lack antitrust standing.

### A. A POTENTIAL JOINT VENTURE IS NOT ANTICOMPETITIVE CONDUCT.

Because Vail Health's alleged joint ventures never materialized, they cannot constitute anticompetitive conduct and thus cannot confer antitrust standing. *See, e.g.*, *Christy Sports, LLC*, 555 F.3d at 1192 (holding that even attempted monopolization requires "that the defendant *has engaged* in predatory or anticompetitive conduct") (emphasis added). None of the cases Plaintiffs cite support the proposition that an unconsummated act is condemned under the antitrust laws. Further, Plaintiffs do not explain how such an act could have caused their injury.

### B. THE STEADMAN LEASE IS NOT ANTICOMPETITIVE CONDUCT.

Vail Health did not commit anticompetitive conduct when it allegedly prohibited Steadman from operating a physical therapy clinic inside Vail Health's own property, and thus

the lease restrictions cannot confer antitrust standing.  See *Christy Sports, LLC*, 555 F.3d at 1196.

Plaintiffs argue that this case falls into the exception created by *Aspen Skiing Company v. Aspen Highlands Skiing Corporation*, 472 U.S. 585 (1985).  As an initial matter, the United States Supreme Court has since recognized that "*Aspen* is at or near the outer boundary of § 2 liability."  *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 409 (2004).  According to the Tenth Circuit, *Aspen Skiing*'s exception requires: (1) "a preexisting voluntary and presumably profitable course of dealing between the [alleged] monopolist and rival"; and (2) a discontinuation of that preexisting course of dealing that "suggest[s] a willingness to forsake short-term profits to achieve an anti-competitive end."  *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1074-75 (10th Cir. 2013).  If a plaintiff satisfies the first two elements, the Tenth Circuit "*also* require[s] a showing that the [alleged] monopolist's refusal to deal was part of a larger anticompetitive enterprise."  *Id.* at 1075 (emphasis in original).

Plaintiffs have not alleged that Vail Health previously allowed Steadman to operate a physical therapy clinic within Vail Health's property—by contrast, they acknowledge that Steadman was looking to open its first physical therapy clinic.  (Am. Compl. ¶ 263.)  Even if they did, Plaintiffs have not alleged that Vail Health imposed the lease restriction at a loss.  Thus, as a matter of law, the *Aspen Skiing* exception does not apply.  See *Christy Sports, LLC*, 555 F.3d at 1197-98 (refusing to apply *Aspen Skiing* even where defendant allowed competitor to operate on its property for *fifteen years* because "there is no allegation that [the defendant] was motivated by anything other than a desire to make more money for itself").  Finally, Plaintiffs have also failed to allege how a lease restriction that applies to another company could have caused their injury.  For these reasons, the lease restriction does not confer antitrust standing.

### C. THE NON-SOLICITATION AGREEMENT IS NOT ANTICOMPETITIVE CONDUCT.

In the motion to dismiss, Vail Health noted that it could not find a single case where a non-solicitation clause in an employment agreement amounts to anticompetitive conduct in violation of federal antitrust laws. In their response, Plaintiffs do not cite a single case either. In the absence of any case law suggesting that certain conduct is anticompetitive, the Tenth Circuit generally applies the rule of reason, asking whether the conduct "has little to no value beyond the capacity to protect [an alleged] monopolist's market power[.]" *Novell, Inc.* 731 F.3d at 1072.

Plaintiffs do not refute that Vail Health uses non-solicitation agreements to protect the time and money spent developing relationships with patients. Nor do Plaintiffs argue that Vail Health has been enforcing the non-solicitation agreements at a loss, just to keep competitors out of the market. Thus, the non-solicitation agreements are not anticompetitive conduct as defined by the antitrust laws and cannot confer antitrust standing.

### D. CONDUCT AIMED AT A SINGLE COMPETITOR IS NOT ANTICOMPETITIVE CONDUCT.

The remainder of this case boils down to a single allegation: Plaintiffs assert that Vail Health told Steadman and various government bodies that Ms. Winninger participated in the theft of Vail Health files to drive Plaintiffs out of the market. As a matter of law, statements about a single competitor in response to a single incident are not anticompetitive conduct. *See, e.g.*, *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1127 (10th Cir. 2014) (holding that statements against a single competitor "bear[] only a *de minimis* effect on competition). For two reasons, this is not the "rare" case that "warrant[s] deviating from the general rule" that conduct directed at a single competitor "is not actionable as an antitrust

violation." *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2017 WL 36371, at *8 n.7 (E.D. Pa. 2017).

*First,* it is implausible that these statements were a "widespread and longstanding" effort to injure both competitors and consumers. *Novell, Inc.*, 731 F.3d at 1079-80. A single incident spurred the statements to Steadman, whose own patients may have been at risk, and petitions to the government. Plaintiffs do not allege that Vail Health ever made similar statements about Plaintiffs, Mr. Cimino, or any other competitor with respect to any other incident.

*Second*, this Court need not accept the implausible legal conclusion that Vail Health fabricated Ms. Winninger's participation in the theft of Vail Health files. *See, e.g., id.* at 1079 (only "acts of fraud" against individual competitors can possibly be anticompetitive); *Lenox*, 762 F.3d at 1127 (overcoming the *de minimis* impact on competition requires that the statement be, *inter alia*, "clearly false"); *Reed Const. Data Inc. v. McGraw-Hill Co.*, 49 F. Supp. 3d 385, 421 (S.D.N.Y. 2014) ("[A] plaintiff must do more than prove that the challenged statement is literally false; otherwise the word 'clear' [] would be meaningless."). The state court has already found undisputed facts connecting Ms. Winninger to Mr. Cimino's theft.[1] (*See, e.g.*, Exhibit 1, Order Granting in Part Ds.' Mot. For Summ. J at 8 ("[T]he undisputed facts in this matter, including Cimino's admission that he transferred files to Ms. Winninger, create a strong inference that Ms. Winninger knew about his downloading of the Vail Health patient files[.]"); *id.* at 22 ("[] Ms.

---

[1]   "[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." *Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001); *see also Mason and Dixon Lines Inc. v. Steudle*, 683 F.3d 289, 295 (6th Cir. 2012) (taking judicial notice of "the factual findings of the state court, which the state court determined were not in dispute").

Winninger's texts in the Spring of 2016 in which she asks Mr. Cimino to send the information on the USB drives . . . demonstrate[] that she knew he stole the patient files and yet continued to employ him."); *id.* ("[] Ms. Winninger also minimized the significance of Mr. Cimino's theft by telling Vail Health that 'everyone who leaves takes their files and protocols off the drive.'")). Vail Health's statements therefore are not the kind of clearly false statements against a single competitor that can be considered anticompetitive conduct. At a minimum, if the alleged anticompetitive conduct in this lawsuit boils down to statements made by one competitor against another, the Court should stay this case, pending resolution of the state case.

In addition, the statements to the government are "exempt[] from antitrust liability" under the *Noerr-Pennington* doctrine. *Coll v. First Am. Title Ins., Co.*, 642 F.3d 876, 894 (10th Cir. 2011). For the same two reasons above, the "sham" exception cannot plausibly apply. *See, e.g.*, *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993) (holding that *Noerr-Pennington* applies unless the statements to government are "objectively baseless in the sense that no reasonable [petitioner] could reasonably expect success on the merits"). Further, the sham exception applies only when "persons use the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *GF Gaming Corp. v. City of Black Hawk*, 405 F.3d 876, 884 (10th Cir. 2005) (emphasis in original). Here, Plaintiffs assert that Vail Health petitioned the government in hopes that Ms. Winninger would be charged and convicted of crimes, and her licenses would be revoked. (Am. Compl. ¶ 150.) Because "it was the outcome of defendant['s] [petitioning] . . . rather than the process of that [petitioning] that gives rise to the alleged antitrust injuries," the sham exception is

"inapplicable here." *GF Gaming Corp.*, 405 F.3d at 884.  For these reasons, the petitions to government do not confer antitrust standing.

### III. COUNT II MUST BE DISMISSED BECAUSE, AS A MATTER OF LAW, PLAINTIFFS FAIL TO SHOW ATTEMPTED MONOPOLIZATION.

The motion to dismiss and this reply address why attempted conduct cannot be the sole basis for an attempted monopolization claim, as Plaintiffs allege.  Thus, Count II should be dismissed.

### CONCLUSION

Vail Health requests that Plaintiffs' Amended Complaint be dismissed with prejudice.

Respectfully submitted this 15th day of November, 2019.

*s/ Shannon Wells Stevenson*
Shannon Wells Stevenson
Janet A. Savage
Jacqueline V. Roeder
Daniel A. Richards
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, Colorado, 80202
Telephone:  303.892.9400
Facsimile: 303.893.1379
Email:  shannon.stevenson@dgslaw.com
             janet.savage@dgslaw.com
             jackie.roeder@dgslaw.com
             daniel.richards@dgslaw.com

*Attorneys for Defendant VAIL CLINIC, INC., d/b/a VAIL HEALTH, a Colorado nonprofit corporation.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **DEFENDANT VAIL HEALTH'S REPLY IN SUPPORT OF THE MOTION TO DISMISS** was filed via CM/ECF on this 15th day of November, 2019, which will forward notice to the following:

Jesse Wiens
Fahrenholtz & Wiens LLC
100 West Beaver Creek Blvd., Suite 236
Avon, Colorado 81620
Email: fwlawyers@gmail.com

Alan L. Kildow
790 Potato Patch Drive
Vail, Colorado 81657
Email: akildow@aol.com

*s/Brigid Bungum*