# EXHIBIT 4

| | |
|---|---|
| DISTRICT COURT, EAGLE COUNTY<br>STATE OF COLORADO<br><br>885 Chambers Avenue<br>Eagle, CO 81631 | DATE FILED: February 22, 2018 2:09 PM<br>FILING ID: BC3495116931C<br>CASE NUMBER: 2017CV30102 |
| **Plaintiffs:** LINDSAY WINNINGER, an individual, and SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,<br><br>v.<br><br>**Defendants:** DORIS KIRCHNER, an individual, and VAIL CLINIC, INC. d/b/a VAIL VALLEY MEDICAL CENTER, a Colorado nonprofit corporation. | ▲   **COURT USE ONLY**   ▲<br>Case No: 2017CV030102<br><br>Div.: 4      Ctrm: 4 |
| **Counter-Plaintiff:** VAIL CLINIC, INC., D/B/A VAIL VALLEY MEDICAL CENTER, a Colorado corporation,<br><br>v.<br><br>**Counter-Defendants:** LINDSAY WINNINGER, an individual, and SPORTS REHAB CONSULTING LLC, a Colorado limited liability company, | |
| **Third-Party Plaintiff:** VAIL CLINIC, INC., D/B/A VAIL VALLEY MEDICAL CENTER, a Colorado nonprofit corporation,<br><br>v.<br><br>**Third-Party Defendant:** DAVID J. CIMINO, an individual. | |
| Elizabeth M. Brama<br>BRIGGS AND MORGAN, P.A.<br>2200 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN  55402-2157<br>Phone Number:   (612) 977-8400; (720) 778-5461<br>FAX Number:      (612) 977-8650<br><br>Attorneys for Plaintiffs/Counter-Defendants LINDSAY WINNINGER and SPORTS REHAB CONSULTING LLC | |
| **VERIFIED AMENDED COMPLAINT AND JURY DEMAND** | |

Plaintiffs Lindsay Winninger and Sports Rehab Consulting LLC for their Amended Complaint against Defendants Doris Kirchner and Vail Clinic, Inc. d/b/a Vail Valley Medical Center n/k/a "Vail Health"  (collectively "Defendants"), by and through their attorneys, state and allege as follows:

## NATURE OF ACTION

1.      Kirchner and Vail Health are prominent members of the Vail Valley medical community, with Kirchner serving as President and Chief Executive Officer of Vail Health.

2.      Since 2016, Kirchner, Chairman of the Board Michael Shannon, and Vail Health employees, including Nico Brown and Luke O'Brien, have repeatedly made false and defamatory statements that Lindsay Winninger stole thousands of patient files from Vail Health.

3.      Additionally, Vail Health's attorney Janet Savage and Vail Health Director of Human Resources Tanya Rippeth made false and defamatory statements about Winninger to the Vail Police Department and Colorado Department of Regulatory Agencies respectively.

4.      Defendants and their employees and agents knew these statements were false when they made the statements and yet continued to maliciously make them in an effort to dissuade orthopaedic clinics, doctors, and patients from using Winninger and her company's physical therapy services.

5.      Defendants' statements were made with the then present intent to drive Winninger and her company out of business to further their monopoly of physical therapy services in the Vail Valley. Defendants' statements were also made as cover— that is, to hide and conceal from regulators, the relevant Vail Health Board of Directors, and the Vail Valley community in general—the fact that Kirchner and the management of Vail Health had negligently failed to institute compliance systems to ensure that Vail Health patients' health records were protected in a manner required by HIPAA and other applicable laws.

6.      Due to Defendants' false and defamatory statements, the Vail Valley medical community has been led to believe that Winninger is a thief engaged in criminal misconduct in violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), as well as other laws.

7.      To achieve these illegal objectives, Defendants embarked upon a scheme and artifice involving false, deceptive, and defamatory statements with the then present intent to destroy Winninger's (and Sports Rehab's) reputation among those medical providers with whom she had contracts, those who provided her with patient referrals, her physical therapy colleagues, her friends, and those who were potential clients.

2

8. Upon learning of the initial false and defamatory statements, Winninger requested that Vail Health provide any evidence supporting Defendants' false statements. Despite Winninger's later and further requests that Vail Health provide such evidence, none was ever given. When no such evidence was provided, Winninger asked Vail Health to retract the statements, which Vail Health refused to do.

9. Because Vail Health refused to retract Defendants' false and defamatory statements, Winninger and her company were left with no other choice but to file this action in an attempt to clear her name, restore her personal and professional reputation and dignity, and recover the lost business and the damages she has suffered.

## PARTIES

10. Plaintiff Lindsay Winninger is an individual who resides in Eagle County, Colorado.

11. Plaintiff Sports Rehab Consulting LLC is a Colorado limited liability company with an office at the Four Seasons Hotel located at 1 Vail Road, Vail, Colorado 81657, and also an office located at 3909 Fox Street, Denver, Colorado 80216. Winninger is a principal member of Sports Rehab.

12. Defendant Doris Kirchner is the President and Chief Executive Officer of Vail Health, and upon information and belief, resides at 34900 Colorado River Road, McCoy, Colorado 80463.

13. Defendant Vail Health is a Colorado nonprofit community hospital with its principal office located at 181 West Meadow Drive, Suite 100, Vail, Colorado 81657.

## JURISDICTION AND VENUE

14. Jurisdiction is proper in this Court under Colo. Rev. Stat. § 13-1-124 because Vail Health has its principal office in Colorado, and upon information and belief, Kirchner resides in Colorado. Further, Winninger and Sports Rehab's injuries, damages, and losses are as a result of Defendants' tortious and defamatory conduct, which occurred in Colorado.

15. Venue is proper in the District Court for the County of Eagle under C.R.C.P. 98(c)(1) and (5) because Winninger and Sports Rehab are located in Eagle County, the events giving rise to this Complaint occurred within Eagle County, and upon information and belief, the Defendants are located in Eagle County.

## GENERAL ALLEGATIONS

### I.    WINNINGER AND SPORTS REHAB.

16.    Winninger founded Sports Rehab in spring 2014, to assist athletes in reaching maximal potential after injury.  Sports Rehab provides a concierge-type physical therapy service that is not generally offered in Vail Valley.  Sports Rehab's physical therapists generally treat a patient for 1-2 hours and at any location requested by the patient.  Additionally, Sports Rehab does not use protocols but offers an individualized rehabilitation program suited to each patient's needs.

17.    Winninger has been a practicing physical therapist for ten years.  She earned her Bachelor's degree in Exercise Science and completed her Master's Degree in Physical Therapy at St. Louis University in St. Louis, Missouri.

18.    She is recognized as a leading sports physical therapist in the evaluation and treatment of hip and knee injuries.

19.    From January 2008 to May 2012, Winninger worked for John Atkins and Topper Hagerman, who maintained a physical therapy practice that did business under the name of Howard Head Sports Medicine, although she was never a Vail Health employee.  While working with Atkins and Hagerman, Winninger was very fortunate to team up with some of the most well-known and well-respected orthopaedic doctors at The Steadman Clinic, including Dr. Richard Steadman, Dr. Marc Philippon, and other orthopaedic physicians who were partners in The Steadman Clinic.

20.    From May 2012 to April 2014, Winninger worked and traveled as the head physical therapist for the U.S. Women's Ski Team for two seasons, including the 2014 Winter Olympic Games in Sochi.

21.    After the 2014 Olympics, Winninger became alpine skiing champion Lindsey Vonn's private, full-time physical therapist for two-and-a-half years.  Vonn has credited Winninger with helping her come back after multiple injuries, including Vonn's arm injury in 2016.

22.    Winninger has treated and rehabbed athletes in the NFL, NHL, NBA, MLB, PGA, WTA, USSA, as well as collegiate and Olympic athletes in various sports.  She has treated many of her patients for well over five years.

23.    Winninger and Sports Rehab have also collaborated with a number of physical therapists from Howard Head, co-treated patients with Howard Head physical therapists, and provided physical therapy services to two members of Vail Health Service's Board of Directors.

24.   While Winninger is located in Vail, she presently has three physical therapists located in Denver.  Each has a strong educational background, holding either Master's or Doctorate degrees.   Each also has a strong professional background working with prominent athletes, including the U.S. Olympic Sports Medicine team, the International Triathlon Union's Sports Development team, NBA, NFL, NHL, PGA, USSA, MLB, and multiple professional ballet companies.

25.   Sports Rehab's services go beyond just physical therapy and include a holistic approach that involves customizing treatment plans tailored to each individual's injury and sport, which includes a patient-specific program of training, rehabilitation, nutrition, and injury prevention.  Sports Rehab is also unique in that it provides physical therapist services not only in a clinic setting (like at its Vail office in the Four Seasons Hotel), but also on location—that is, in homes, offices, gyms, hotels, or wherever (and whenever) a client requests.  Sports Rehab also works on a cash payment system and does not directly contract with insurance companies.

26.   For many years, Winninger and Sports Rehab routinely worked with The Steadman Clinic and other orthopaedic clinics in the Vail Valley.  The Steadman Clinic constituted a significant portion of Winninger's and Sports Rehab's physical therapy referrals.  That significantly changed, however, because of the defamatory statements made by Defendants.

27.   Winninger had the highest reputation for excellence in physical therapy services for significant athletic and sport-related injuries.  She has been called "the best sports physical therapist in the country, if not the world," by a leading orthopaedic surgeon in Vail.  Winninger has earned the respect and admiration of some of the country's other renown orthopaedic surgeons and developed the highest of reputations among world renown athletes.   Through their false and defamatory statements, Defendants have endeavored to destroy that reputation.

28.   In 2016, The Steadman Clinic and the Steadman Philippon Research Institute approached Winninger, seeking to engage her services to provide advice and consulting services specific to developing patient-centered and patient-specific programs for musculoskeletal health and sports injury prevention programs.

29.   By summer 2016, The Steadman Clinic and the Steadman Philippon Research Institute both entered into separate consulting services agreements with Winninger for these consulting services.

II.     **VAIL HEALTH AND HOWARD HEAD SPORTS CLINIC.**

30.     Based on the conduct of Defendants, it appears that Vail Health and Howard Head see Winninger and Sports Rehab as a direct threat and competitor for physical therapy services in Vail and the surrounding areas.

31.     Vail Health is an independent nonprofit hospital, which is now home to Howard Head.  The internationally renowned The Steadman Clinic and the Steadman Philippon Research Institute are separately owned and operated entities that share some operational facilities with Vail Health.

32.     From the 1990s until 2012, Atkins and Hagerman were closely aligned with The Steadman Clinic, which was previously known as the Steadman Hawkins Clinic.  Atkins, Hagerman, and Dr. Steadman assembled one of the first sports medicine teams, integrating orthopaedic medicine, exercise physiology, athletic training, and sports psychology.  While Dr. Steadman pioneered revolutionary surgical techniques, Atkins and Hagerman helped Dr. Steadman's patients by devising cutting-edge rehabilitation concepts.

33.     In late 2012, Vail Health took over Atkins and Hagerman's physical therapy business.  Winninger left Howard Head before Vail Health took over those operations and went out on her own as an independent physical therapist, eventually forming Sports Rehab.

34.     Today, Howard Head employs over 60 physical therapists who provide physical therapy sessions at Howard Head's ten clinic locations.  Howard Head does not provide the personalized, at any location, and patient-specific programs like Winninger and Sports Rehab.  For example, Howard Head physical therapists are scheduled to see patients about every 40 minutes at one of the ten clinic locations and generally do not have the ability to devote the same amount of time, or provide the same personalized, at-home services that Winninger and Sports Rehab offer.

III.    **IN LATE 2015, WINNINGER AND SPORTS REHAB HIRE A HOWARD HEAD PHYSICAL THERAPIST TO JOIN THEIR TEAM.**

35.     In late winter 2015, Winninger and Sports Rehab hired David Cimino ("Cimino") to start employment on or about January 1, 2016.  Before joining Sports Rehab, David Cimino was employed with Howard Head, whom he had been employed with since November 2012.

36.     Upon information and belief, in late November 2015, Cimino provided notice to his supervisor at Howard Head that he was resigning from Howard Head at the end of December.  Upon information and belief, Cimino provided a five-week notice as a courtesy to allow Howard Head adequate time to find his replacement.

37.    On or about January 1, 2016, Cimino began his full-time employment with Sports Rehab.

38.    Upon information and belief, on April 15, 2016, Vail Health posted on its website a "Notice to Vail Valley Medical Center patients regarding Privacy Incident," which is publicly available at https://www.vvmc.com/media/389360/vvmc.pdf.   *See* attached **Exhibit 1**.

39.    The purpose of the Notice was to notify "patients about a potential disclosure of personal health information," which related to certain information that Cimino had apparently accessed while employed at Howard Head.

40.    This was not the only time Vail Health had encountered an issue with a patient's health information being improperly accessed.  Upon information and belief, Vail Health employees had improperly accessed the patient files of a prominent professional athlete.  Upon information and belief, those accessing the files were disciplined, not fired, and no criminal investigation was instituted.

41.    In the Notice, Vail Health stated that on February 16, 2016, it discovered that a former Howard Head physical therapist—(Cimino)—improperly copied physical therapy and occupational therapy records containing patient personal health information onto two USB electronic storage devices and "took those devices with him at the time he was starting with his new employer."  The data apparently "did **NOT** include social security numbers, dates of birth, credit card or bank account information, or addresses."

42.    Importantly, the Notice also states that "[t]o date, VVMC has demanded and obtained the return of both electronic storage devices along with *a signed certification* from the former employee *that he has not retained copies or otherwise provided any of the data to any other person or company*."  (emphasis added).

43.    The Notice further states that on or about April 15, 2016, Vail Health mailed separate letters to each of the patients whose personal health information was purportedly compromised.  Upon information and belief, the letters made the same, or substantially the same, statements as those made in the Notice and were sent to 3,118 Vail Health patients.

44.    Accordingly, by about April 15, 2016, Vail Health had informed the public and its patients that it had demanded and obtained the return of the electronic storage devices from its former employee and that it had obtained a certification from the former employee in which he expressly stated that he had "not retained copies or otherwise provided any of the data to any other person or company."

45.     Even though Vail Health assured the public and its patients that the personal health information had been returned by its former employee and that no other person or company had the patient data, doctors and clinics using Winninger's physical therapy services were told something different.

46.     Many individuals associated with Vail Health, such as its President Doris Kirchner, Chairman of the Board Michael Shannon, and Howard Head employees Luke O'Brien and Nicholas Brown, have made a number of false statements to prominent members of the Vail medical community about Winninger.  These statements include that Winninger "stole over 3,000 patient files" from Vail Health which, if true, would be a serious criminal offense under HIPAA.

47.     Winninger's livelihood depends on her reputation for good character, integrity, and trustworthiness. She works with prominent orthopaedic doctors and clinics on a daily basis, preparing physical therapy programs to serve the doctors' patients. She must abide by HIPAA, as well as other confidentiality requirements.  Any accusation that Winninger or her company stole patient records and violated HIPAA would be devastating to her and her business.

48.     After Winninger was repeatedly questioned about the truth of Defendants' statements, and the effect it was having on her personal and professional reputation in the community, Sports Rehab decided to terminate the former Howard Head physical therapist in October 2016.

49.     This decision, however, did not stop Defendants from continuing to make false and defamatory statements about Winninger, as the following section shows.  In fact, the defamatory statements increased.

**IV.    DEFENDANTS FALSELY ACCUSED WINNINGER OF STEALING VAIL HEALTH PATIENT FILES AND MADE COUNTLESS DEFAMATORY STATEMENTS TO THAT EFFECT.**

50.     After coming to work with Sports Rehab in January 2016, all appeared to be going well until Winninger learned that Cimino was alleged to have downloaded certain protected patient health data from Vail Health.

51.     At no time prior to his employment with Sports Rehab did Winninger discuss taking Vail Health patient files, and Winninger was not aware any patient files had been taken when Cimino started working at Sports Rehab.

52.     After Winninger learned about the allegations relating to patient files, Winninger asked Cimino whether he had downloaded the Vail Health patient files and what information he had taken.

53.     Cimino told Winninger that he did not know what he had downloaded to a USB drive, but he said he never intended to download any Vail Health patient files.

54.     He further stated that if he had done so, he did so by mistake, and in any event, he had returned the USB drives to Vail Health.

55.     Cimino further informed Winninger that he had signed a sworn certificate stating that he did not transfer any of the alleged Vail Health patient files to Winninger.

56.     In fact, he never transferred any patient files that he may have obtained from Vail Health to Winninger or any Sports Rehab employees or associates.

57.     Based on the facts above, Winninger thought the collection of patient information was inadvertent and was not disclosed to anyone by Cimino but returned to Vail Health and therefore Cimino could continue his relationship with Sports Rehab.

58.     But on or about April 18, 2016, Janet Savage, as attorney for Vail Health, made defamatory statements about Lindsay Winninger in a letter sent to Detective Eric Bonta at the Vail Police Department.   Plaintiffs were unaware of the letter or the defamatory statements until January 16, 2018, when they first received the letter as part of Defendants' initial disclosures.  The letter refers to Winninger and Sports Rehab close to two dozen times and makes false and defamatory statements about Winninger when Savage asserts—that is, Vail Health "***knows***"—that Winninger was involved with the purported criminal act of stealing Vail Health documents and patient files.  The statements were false and defamatory and made with the then present intent to induce criminal charges against Winninger.

59.     On July 25, 2016, Vail Health (through Tanya Rippeth) published the same defamatory statements from the April 18, 2016 letter to Andrew Schwab at the Colorado Department of Regulatory Agencies ("DORA").  In that letter, which was sent in response to an investigative inquiry by DORA related to Cimino prompted by two "anonymous" complaints, Vail Health again implicated Winninger and Sports Rehab in conduct violating criminal and licensure laws.  The letter makes false and defamatory statements about Winninger when Rippeth asserts—that is, Vail Health "***knows***"—that Winninger was involved in the purported criminal act of stealing Vail Health documents and patient files.  The statements were false and defamatory and made with the then present intent to induce a regulatory investigation into Winninger's purported misconduct.

60.     At about the same time, others within Vail Health campaigned to ruin Winninger and Sports Rehab's reputation and standing in the Vail Valley community by repeatedly making false and defamatory statements and their involvement in the theft of patient files from Vail Health.

61.     In about March and April 2016, Vail Health informed Howard Head employees about the theft of patient files and told them that Winninger was involved in the theft.  Upon information and belief, Winninger and Sports Rehab assert that Luke O'Brien and Nicholas Brown, as officers of Vail Health, made these statements to Howard Head employees.  Vail Health knew that by making these statements to its employees that the defamatory statements would spread throughout the Vail Valley community, which they did.  Winninger learned of these communications later.

62.     In spring 2016, Winninger learned that Vail Health Chief Executive Officer Doris Kirchner met with The Steadman Clinic Chief Executive Officer Dan Drawbaugh and told him that Winninger had known about and participated in the downloading of Vail Health patient files.

63.     In summer 2016, Kirchner continued to make statements to Drawbaugh. She told Drawbaugh that Winninger had stolen Vail Health patient files.  Kirchner told Drawbaugh that The Steadman Clinic should not be professionally associated with Winninger as the result of theft of the purported patient files.

64.     In fall 2016, Kirchner accelerated her campaign of false and defamatory statements about Winninger and the purported theft of Vail Health patient files when she again stated to Drawbaugh that Winninger had stolen patient files from Vail Health.

65.     Kirchner also made false and defamatory statements to Kelly Adair of The Steadman Clinic and the clinic's managing partner, Dr. Marc Philippon.  In both communications, Kirchner made a point of telling Adair and Dr. Philippon that Winninger was involved in the stealing of patient files.

66.     At one point, The Steadman Clinic asked Kirchner to provide proof of this alleged theft of patient files.  Neither Kirchner nor Vail Health provided The Steadman Clinic with any proof or support for their statements.

67.     Michael Shannon, the Chairman of Vail Health's Board of Directors, also made numerous false and defamatory statements against Winninger and Sports Rehab.

68.     In March 2016, on a private flight with Dr. Philippon, Shannon discussed with Dr. Philippon that patient files had been stolen from Vail Health and that Winninger was involved.  Winninger learned of this conversation later.

69.     Upon information and belief, Shannon also sent text messages to Dr. Philippon in which Shannon implicated Winninger in stealing Vail Health's files.

70.     Shannon also stated to Dr. Philippon that he did not understand why The Steadman Clinic was associating itself with Winninger when she stole patient files from Vail Health.

10

71.     In summer 2016, Shannon told Dan Drawbaugh of The Steadman Clinic that Winninger had stolen thousands of patient files from Vail Health.

72.     During summer 2016, Shannon also told Kelly Adair of The Steadman Clinic that Winninger had stolen thousands of patient files from Vail Health.

73.     In December 2016, Shannon again told Dan Drawbaugh of The Steadman Clinic that Winninger had stolen thousands of patient files from Vail Health.

74.     And in December 2016, Shannon again told Kelly Adair of The Steadman Clinic that Winninger had stolen thousands of patient files from Vail Health.

75.     In addition to making false and defamatory statements about Winninger and Sports Rehab to Howard Head employees, Nicholas Brown also made defamatory statements to Kelly Adair of The Steadman Clinic.

76.     In spring 2016, Brown told Kelly Adair of The Steadman Clinic that Winninger was involved in stealing patient files from Vail Health.

77.     In fall 2016, Brown again told Kelly Adair of The Steadman Clinic that Winninger was involved in stealing patient files from Vail Health.

78.     By late 2016 and into early winter 2017, the false and defamatory statements made by Kirchner, Shannon, Brown, and O'Brien were circulating throughout the Vail Valley medical community, among physicians and staff members of The Steadman Clinic, the Steadman Philippon Research Institute, and upon information and belief, other orthopaedic clinics.

79.     In early January 2017, the false and defamatory statements escalated.

80.     In early January 2017, Kirchner met with Dan Drawbaugh of The Steadman Clinic and showed him a draft complaint that Vail Health asserted was going to be filed against Winninger and Sports Rehab within days, but it was not.  The draft complaint made numerous statements against Winninger and Sports Rehab that they stole patient files from Vail Health and included, among other things, a claim for theft.

81.     Upon information and belief, at the time Kirchner showed Drawbaugh the draft complaint, she told Drawbaugh that The Steadman Clinic should not be professionally associated with Winninger.

82.     In early January 2017, Shannon met with the managing partner of The Steadman Clinic, Dr. Marc Philippon, for breakfast.  At the breakfast meeting, Shannon showed Dr. Philippon a draft complaint—just as Kirchner had done with Drawbaugh.  Shannon told Dr. Philippon that the complaint was going to be filed against Winninger the next day because of her involvement in stealing files from Vail Health.  The draft complaint made numerous statements against Winninger and Sports Rehab that they stole patient files from Vail Health and included, among other things, a claim for theft.

83.     In January 2017, Shannon also spoke to Adair and Drawbaugh of The Steadman Clinic.  Shannon told both of them that Winninger had stolen thousands of patient files from Vail Health.

84.     On January 25, 2017, Winninger was called in for a meeting with Dr. Marc Philippon and others from The Steadman Clinic.  She was specifically questioned about the statements being made by those associated with Vail Health, and in particular, whether she stole patient files from Vail Health.  Winninger informed Dr. Philippon and the doctors that she was not involved in any theft of patient files and informed them of the steps she had taken to clear her name and reputation, to no avail.

85.     At about the same time, Winninger provided Dan Drawbaugh and Dr. Philippon a signed copy of the sworn certification provided by Cimino to Vail Health, which stated that Winninger did not obtain or have access to the patient files.  Although Winninger had asked Vail Health to provide a copy of the certification, it refused to provide her with the sworn statement.

86.     During the week of February 6, 2017, Shannon had a telephone conversation with Al Perkins, a Board member of the Steadman Philippon Research Institute, during which the Chairman told the Steadman Philippon Board member that Winninger had "stolen 3,000 patient files" from Vail Health.

87.     Given that Defendants had no evidence that Winninger had done anything improper—and actually were in possession of a sworn statement that stated otherwise—Defendants' statements were malicious in nature and were made with the then present intent to destroy Winninger's personal and professional reputation and ultimately force Winninger and Sports Rehab out of business.

88.     To quash the false and defamatory statements being made about her, Winninger voluntarily had her computer forensically reviewed, at her own cost, by a certified forensic computer examiner.  The forensic review found no evidence of Vail Health patient files, or electronic healthcare records on her computer.  Nor was there any evidence that USB thumb drives were attached to Winninger's computer during the relevant time period.  On March 2, 2017, Winninger voluntarily provided this report to Vail Health.

89.    Additionally, Winninger provided Vail Health with a sworn affidavit stating she and Sports Rehab were not involved in any theft of Vail Health patient files, nor did she ever see or use that information.  Winninger also offered to sit for a deposition, but Vail Health did not depose her.

90.    In contrast, Winninger requested that Vail Health provide any evidence that it had demonstrating that Winninger or Sports Rehab accessed Vail Health patient files.  Vail Health never provided any evidence and still has not almost a year later.

91.    In early 2017, Winninger requested that Vail Health retract the statements made by Defendants and inform all Vail Health Board members, as well as the doctors at The Steadman Clinic and Vail Summit Orthopaedics, that Winninger and Sports Rehab did not take any Vail Health patient files.  Vail Health never responded to this request, and upon information and belief, Defendants never retracted their statements.

92.    Despite these efforts, Winninger was unable to undo or mitigate the damage to her professional reputation caused by the false, malicious and defamatory statements of Kirchner and the Vail Health board chairman.  By late fall 2016, physicians at The Steadman Clinic, who formerly referred their patients to her and Sports Rehab, ceased referring patients to Winninger and Sports Rehab.

93.    Although Winninger and Sports Rehab had taken steps to clear her name and provide the results of the forensic review, along with Cimino's certification and Winninger's affidavit, to The Steadman Clinic, the damage had been done.  Because of the defamatory statements made by Kirchner, Shannon, O'Brien, and Brown, The Steadman Clinic formerly ended its relationship with her and Sports Rehab in March 2017.

94.    Some physicians told Winninger directly that they needed to end their professional relationship with her and Sports Rehab until the alleged theft of patient files was "cleared up."   In other words, the physical therapy work would cease until Winninger cleared her name.

95.    Indeed, that is what happened.  The Steadman Clinic doctors have ceased sending Winninger and Sports Rehab orthopaedic physical therapy referrals. Referrals from other clinics have also ceased.  As a result of Kirchner's, Shannon's, O'Brien's, and Brown's false and defamatory statements, Winninger and Sports Rehab have lost substantial portions of their business.

### V. VAIL HEALTH MADE DEFAMATORY STATEMENTS TO MAINTAIN ITS MARKET DOMINANCE AND DRIVE WINNINGER AND SPORTS REHAB OUT OF BUSINESS.

96.     In September 2016, Winninger met with the Four Seasons Hotel to discuss possible rental space for opening a new Sports Rehab location in Vail.  Vail Health and Howard Head apparently learned about this visit because Winninger immediately heard that Vail Health and Howard Head were very concerned that Winninger might be returning to Vail to open her own physical therapy business, which they viewed as competition.  Winninger was told that Luke O'Brien, a Vice President at Howard Head, was very interested in learning more about Winninger's plans in Vail. Winninger reached out to O'Brien and set up a meeting at Yeti's on October 13, 2016.

97.     At the meeting, Winninger told O'Brien that she was looking for space but had not yet signed a lease.  Winninger also explained that she was interested in living in Vail (after traveling for two years) but did not want to work for a traditional physical therapy clinic.  Rather, she wanted to still travel for some for her business but also wanted her own small space in Vail to treat patients.  O'Brien stated, "I'm in a different position than what I used to be.  If I was in your position, I'd love to do it that way.  But I'm not in the same position that I used to be when we worked together.  I'm in charge now, and I have different responsibilities."  Although O'Brien said that he was not concerned about Winninger as a competitor in her first year of business, he said he "would be worried in years 3, 4, and 5."

98.     Winninger and O'Brien also discussed whether it was possible that Howard Head and Winninger could collaborate, but O'Brien appeared to think that was probably not possible.  O'Brien then said, "Competition is healthy, it gives you a chance to step back and evaluate things.  But technically, my job is to look at you as competition and my job would be to eliminate you."  He then explained that "the hospital looks at things differently in terms of numbers and staff," and he again alluded that his responsibilities were different.  When Winninger questioned whether he was kidding about the statements he made, O'Brien responded, "No, the hospital does things differently."  The conversation ended with Winninger and O'Brien considering possible ways of working together, but O'Brien said, "I just don't know how this would work."  In the end, Winninger agreed with O'Brien to "take some time and get back together in a couple of weeks" to discuss things.  Winninger and O'Brien did not meet again.

99.     Upon information and belief, O'Brien continued his quest to find as much information as he could about Winninger's business.  About the time Cimino was set to leave Vail Health, O'Brien met with Cimino.  O'Brien inquired as to why Cimino was leaving Howard Head.  The conversation as to that issue was brief.  O'Brien then turned his attention to Winninger and Sports Rehab, pumping Cimino for information about Winninger and Sports Rehab and their business model.

100.   Instead, on January 8, 2016, Winninger met with Nico Brown, Vice President of Howard Head, at the suggestion of Dan Drawbaugh and Kelly Adair of The Steadman Clinic.  At the time of the meeting, Brown was fully aware of Winninger's relationship with The Steadman Clinic and the Steadman Philippon Research Institute. They specifically discussed those relationships at the meeting and Brown questioned Winninger about the discussions she was having with Steadman and the Institute.

101.   The purported purpose of their meeting was to discuss how Howard Head could collaborate with Winninger as to Steadman and the Institute's needs, creating some kind of preferred provider network.  Winninger questioned how this plan could work, given that Winninger and Sports Rehab's business model is different than Howard Head's—that is, Sports Rehab is cash pay only and Howard Head is insurance.  She also mentioned that she had just hired Dave Cimino and that it was important that there be a place for him as well.  Brown was very interested in how Winninger's physical therapy travel service worked and the amount she charged for that service.  He also (inexplicably) wanted to review her agreements.   Brown also acknowledged that Winninger and Sports Rehab's business model was different from Howard Head's, especially in the concierge and niche area, which Brown apparently saw as "a nice compliment" to Howard Head's business.  Brown saw Winninger's business as "that missing piece that we've always looked at in this big picture thing."

102.   Part way through the meeting, Brad Schoenthaler of Sports Rehab participated by way of a conference call.  Brown told Winninger and Schoenthaler, "I've got great respect for you guys.  I think you guys are doing some great stuff and how do we collaborate and make the pie bigger for everybody in terms of we're going to create a preferred provider network that would directly help things for you guys…it's align or die, and so I'd like to see what sort of things could play out and what scenarios have you thought about and that sort of thing.  Because I know you guys have been thinking about it."  The parties then discussed possible ways they could collaborate.

103.   Brown raised the possibility that Winninger and Sports Rehab's employees would become Howard Head employees.  That was news to Winninger, who had never heard that proposed before.  Brown also questioned Winninger about her physical therapy travel service—again, pressing her to disclose her agreements. Schoenthaler responded that he did not have a problem providing those agreements once it was decided how the parties would collaborate.  Brown continued to press that their agreements should be provided to Howard Head, but Winninger and Schoenthaler declined that request.

104.   At one point, the conversation shifted to Dave Cimino.   Winninger explained that Cimino had left Howard Head because he wanted to do something a little bit different—that is, he wanted more freedom in treating patients based on the patients' needs.  In response, Brown stated, "In the future, I would say if employees come to you with that sort of thing, come talk to me….I would appreciate that because those are the

15

sorts of things we can collaborate on proactively.  I would say I'm going to have to do some damage control here….there's some relationships in the Vail clinic that were hurt a little bit by all of this"—that is, Cimino wanting to join Sports Rehab.  Brown also expressed that "Dave is one of my favorite people.  I will take care of him.  I wouldn't be here without Dave."

105.    Throughout the conversation, Brown led Winninger to believe that he wanted to collaborate and work with Winninger and Sports Rehab.  He said things like, "I want to help you."  "I'd like you to be part of this journey."  I am "committed to working with you guys."  He even confirmed that there would be a place for Cimino in the plan.  But none of that turned out to be actually true.

106.    In the end, Brown said that he needed to consult with Vail Health's CEO, Doris Kirchner, and Board Chair, Mike Shannon.  Brown stated that he hoped to meet again with Winninger the following week.  But that meeting never took place.

107.    Shortly after the January 8, 2016 meeting, Brown apparently told people at Vail Health and Howard Head that he had no intention of collaborating with Winninger and Sports Rehab.  He had obtained the information that he needed from the meeting and concluded that if Howard Head wanted to provide the services offered by Winninger and Sports Rehab, Howard Head could do it on its own.  In sum, the January 8 meeting was nothing more than a ruse to obtain information from Winninger and Sports Rehab about the services they provide, the cost of those services, their business model, and Cimino.

108.    Exactly one week after the meeting, Vail Health sent cease-and-desist letters to both Cimino and Winninger.  Both Kirchner and Brown were copied on the letters.

109.    The main purpose of Vail Health's interest in Winninger and Sports Rehab's business stems from her relationship with The Steadman Clinic and Dr. Philippon.  Upon information and belief, The Steadman Clinic provides a majority of Howard Head's physical therapy referral business.

110.    Further, Vail Health, through its Howard Head physical therapy services unit, monopolizes physical therapy services in the Vail area geographic market.  Vail Health, through Howard Head, now provides at least 70% of the physical therapy services in these relevant geographic and product markets and possesses dominant market penetration and power in these relevant markets.

111.    Given Vail Health's and Howard Head's dominant market penetration, it must be presumed, and Winninger and Sports Rehab affirmatively allege, that Vail Health and Howard Head have sufficient market power to affect competition and cause antitrust injury in the relevant geographic and product markets.

16

112.    To gain this market power and realize its goal to monopolize physical therapy services in the relevant market, Vail Health and Howard Head have used nonsolicitation agreements (and now noncompete agreements) that they require their physical therapists, such as Cimino, to sign.  Kirchner and Vail Health implemented these agreements with the then present intent to monopolize the relevant market in violation of C.R.S. § 6-4-105.

113.    To further this illegal monopolization scheme, Kirchner, Shannon, O'Brien, Brown, and other agents of Vail Health and Howard Head engaged in tortious, unfair, and deceptive trade practices, and in particular made false and defamatory statements about Winninger and Sports Rehab.  Kirchner, Shannon, O'Brien, and Brown told executives and physicians of The Steadman Clinic that Winninger had stolen approximately 3,000 Vail Health patient files and that they should no longer be working with her.  Put differently, Kirchner, Shannon, O'Brien, and Brown spread statements throughout the Vail Valley that Winninger and Sports Rehab had committed felonies under both state and federal law.  This, of course, constitutes defamation *per se.*

114.    Kirchner, Shannon, O'Brien, and Brown and  other Vail Health agents and employees made these false and defamatory statements with the then present intent to drive Winninger and Sports Rehab from the Vail area physical therapy services market to further consolidate its monopoly.  Vail Health and Howard Head Vice President Luke O'Brien stated, "***my job is to look at you as competition and my job would be to eliminate you***."  And that is precisely what they have done.

115.    The monopoly power of Vail Health and Howard Head and the tortious, unfair, and anticompetitive conduct alleged have had an actual, deleterious, and anticompetitive effect on competition for physical therapy services in the Vail area. Patients are being deprived of specialized and higher quality physical therapy services offered by Winninger and Sports Rehab.  Patients are being deprived of special services such as in-home care, more time-intensive and experienced care that Winninger and Sports Rehab offer and that Vail Health and Howard Head cannot, or do not, offer.  If Vail Health's and Howard Head's monopoly power and unfair and anticompetitive conduct as alleged are permitted to continue, competition in the relevant geographic and product market will continue to be injured.

116.    As the direct and proximate result of the false and defamatory statements of Defendants alleged above, Winninger and Sports Rehab have been damaged in an amount to be proven at trial.

117.    On December 6, 2017, Defendants asserted that Plaintiffs did not adequately plead the allegedly defamatory statements as separate causes of action. Since then, Plaintiffs have identified the defamatory statements in answers to interrogatories (at least as they are known to date).  To avoid any further issue, Plaintiffs have set out each defamatory statement as a separate claim as Defendants requested.

## CAUSES OF ACTION

### COUNT I—DEFAMATION
### *(Against All Defendants)*

118.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 117 as if set forth fully herein.

119.    In spring 2016, Kirchner told Dan Drawbaugh of The Steadman Clinic that Winninger had known about and participated in downloading Vail Health patient files.

120.    The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

121.    Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

122.    Defendants' false and defamatory statement about Winninger was broadcasted to Drawbaugh and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

123.    The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

124.    Defendants' false and defamatory statement is not privileged.

125.    At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

126.    Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

127.    Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

128.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources.

## COUNT II—DEFAMATION
### *(Against All Defendants)*

129.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 128 as if set forth fully herein.

130.    In summer 2016, Kirchner told Dan Drawbaugh of The Steadman Clinic that Winninger had stolen patient files from Vail Health and that the clinic should not be associated with her because of that.

131.    The false and defamatory statements were precisely and intentionally directed to Winninger in her trade or profession.

132.    Defendants' false and defamatory statements about Winninger involve a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

133.    Defendants' false and defamatory statements about Winninger were broadcasted to Drawbaugh and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

134.    The false and defamatory statements made by Defendants about Winninger and her professional integrity have ruined Winninger and her company's reputation within the Vail community.

135.    Defendants' false and defamatory statements are not privileged.

136.    At the time Defendants made the false and defamatory statements, they knew the statement were false or acted with reckless and wanton disregard as to the truth or falsity of the statements.

137.    Defendants' false and defamatory statements were made in bad faith and were made with actual malice and reckless disregard as to the truth of the statements. Further, the statements were not made for a legitimate business purpose but were made to destroy Winninger and Sports Rehab and eliminate them as competitors.

138.    Defendants have failed to issue a retraction of the false and defamatory statements and have rejected Plaintiffs' request to do so.

139.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources.

19

## COUNT III—DEFAMATION
### *(Against All Defendants)*

140.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 139 as if set forth fully herein.

141.   In fall 2016, Kirchner told Dan Drawbaugh of The Steadman Clinic that Winninger had stolen patient files from Vail Health.

142.   The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

143.   Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

144.   Defendants' false and defamatory statement about Winninger was broadcasted to Drawbaugh and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

145.   The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

146.   Defendants' false and defamatory statement is not privileged.

147.   At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

148.   Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

149.   Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

150.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources.

## COUNT IV—DEFAMATION
### *(Against All Defendants)*

151.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 150 as if set forth fully herein.

152.    Kirchner discussed with Kelly Adair of The Steadman Clinic that patient files were stolen from Vail Health and stated that Winninger was involved.

153.    The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

154.    Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

155.    Defendants' false and defamatory statement about Winninger was broadcasted to Adair and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

156.    The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

157.    Defendants' false and defamatory statement is not privileged.

158.    At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

159.    Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

160.    Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

161.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources

## COUNT V—DEFAMATION
### *(Against All Defendants)*

162.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 161 as if set forth fully herein.

163.   Kirchner discussed with Dr. Philippon of The Steadman Clinic that patient files were stolen from Vail Health and stated that Winninger was involved.

164.   The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

165.   Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

166.   Defendants' false and defamatory statement about Winninger was broadcasted to Dr. Philippon and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

167.   The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

168.   Defendants' false and defamatory statement is not privileged.

169.   At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

170.   Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

171.   Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

172.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources.

## COUNT VI—DEFAMATION
### (Against All Defendants)

173.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 172 as if set forth fully herein.

174.    In March 2016, Michael Shannon told Dr. Marc Philippon of The Steadman Clinic that patient files had been stolen from Vail Health and that Winninger was involved.  Winninger learned of this conversation later.

175.    The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

176.    Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

177.    Defendants' false and defamatory statement about Winninger was broadcasted to Dr. Philippon and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

178.    The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

179.    Defendants' false and defamatory statement is not privileged.

180.    At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

181.    Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

182.    Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

183.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources.

23

## COUNT VII—DEFAMATION
### *(Against All Defendants)*

184.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 183 as if set forth fully herein.

185.    Upon information and belief, Michael Shannon sent text messages to Dr. Marc Philippon of The Steadman Clinic again implicating Winninger in the stealing of Vail Health patient files.  Winninger and Sports Rehab do not have the dates of these texts because Defendants have not produced them.

186.    The false and defamatory statements were precisely and intentionally directed to Winninger in her trade or profession.

187.    Defendants' false and defamatory statements about Winninger involve a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

188.    Defendants' false and defamatory statements about Winninger were broadcasted to Dr. Philippon and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

189.    The false and defamatory statements made by Defendants about Winninger and her professional integrity have ruined Winninger and her company's reputation within the Vail community.

190.    Defendants' false and defamatory statements are not privileged.

191.    At the time Defendants made the false and defamatory statement, they knew the statements were false or acted with reckless and wanton disregard as to the truth or falsity of the statements.

192.    Defendants' false and defamatory statements were made in bad faith and were made with actual malice and reckless disregard as to the truth of the statements. Further, the statements were not made for a legitimate business purpose but were made to destroy Winninger and Sports Rehab and eliminate them as competitors.

193.    Defendants have failed to issue a retraction of the false and defamatory statements and have rejected Plaintiffs' request to do so.

194.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources.

24

## COUNT VIII—DEFAMATION
### *(Against All Defendants)*

195.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 194 as if set forth fully herein.

196.    Michael Shannon stated to Dr. Marc Philippon of The Steadman Clinic that he did not understand why The Steadman Clinic was associating with Winninger when she had stolen patient files from Vail Health.

197.    The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

198.    Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

199.    Defendants' false and defamatory statement about Winninger was broadcasted to Dr. Philippon and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

200.    The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

201.    Defendants' false and defamatory statement is not privileged.

202.    At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

203.    Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

204.    Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

205.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources.

## COUNT IX—DEFAMATION
### *(Against All Defendants)*

206.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 205 as if set forth fully herein.

207.    In summer 2016, Michael Shannon told Dan Drawbaugh of The Steadman Clinic that Winninger had stolen thousands of patient files from Vail Health.

208.    The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

209.    Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

210.    Defendants' false and defamatory statement about Winninger was broadcasted to Drawbaugh and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

211.    The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

212.    Defendants' false and defamatory statement is not privileged.

213.    At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

214.    Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

215.    Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

216.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources.

## COUNT X—DEFAMATION
### *(Against All Defendants)*

217.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 216 as if set forth fully herein.

218.    In summer 2016, Michael Shannon told Kelly Adair of The Steadman Clinic that Winninger had stolen thousands of patient files from Vail Health.

219.    The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

220.    Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

221.    Defendants' false and defamatory statement about Winninger was broadcasted to Adair and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

222.    The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

223.    Defendants' false and defamatory statement is not privileged.

224.    At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

225.    Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

226.    Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

227.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources.

## COUNT XI—DEFAMATION
### *(Against All Defendants)*

228.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 227 as if set forth fully herein.

229.   In December 2016, Michael Shannon told Dan Drawbaugh of The Steadman Clinic that Winninger had stolen thousands of patient files from Vail Health.

230.   The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

231.   Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

232.   Defendants' false and defamatory statement about Winninger was broadcasted to Drawbaugh and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

233.   The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

234.   Defendants' false and defamatory statement is not privileged.

235.   At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

236.   Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

237.   Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

238.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources.

## COUNT XII—DEFAMATION
### *(Against All Defendants)*

239.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 238 as if set forth fully herein.

240.    In December 2016, Michael Shannon told Kelly Adair of The Steadman Clinic that Winninger had stolen thousands of patient files from Vail Health.

241.    The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

242.    Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

243.    Defendants' false and defamatory statement about Winninger was broadcasted to Adair and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

244.    The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

245.    Defendants' false and defamatory statement is not privileged.

246.    At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

247.    Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

248.    Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

249.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources.

## COUNT XIII—DEFAMATION
### *(Against All Defendants)*

250.  Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 249 as if set forth fully herein.

251.  In about March 2016, Vail Health (upon information and belief Nicholas Brown and Luke O'Brien) told Howard Head employees about the theft of Vail Health patient files and that Winninger was involved in the theft.  Winninger learned of these communications later.

252.  The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

253.  Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

254.  Defendants' false and defamatory statement about Winninger was broadcasted to Howard Head employees to destroy Winninger and Sports Rehab's relationship with Howard Head physical therapists, to end any further patient referrals to Winninger and Sports Rehab, and to ensure the statement was repeated to others.

255.  The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

256.  Defendants' false and defamatory statement is not privileged.

257.  At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

258.  Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

259.  Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

260.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources.

## COUNT XIV—DEFAMATION
### *(Against All Defendants)*

261.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 260 as if set forth fully herein.

262.    In about April 2016, Vail Health (upon information and belief Nicholas Brown and Luke O'Brien) told Howard Head employees about the theft of Vail Health patient files and that Winninger was involved in the theft.  Winninger learned of these communications later.

263.    The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

264.    Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

265.    Defendants' false and defamatory statement about Winninger was broadcasted to Howard Head employees to destroy Winninger and Sports Rehab's relationship with Howard Head physical therapists, to end any further patient referrals to Winninger and Sports Rehab, and to ensure the statement was repeated to others.

266.    The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

267.    Defendants' false and defamatory statement is not privileged.

268.    At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

269.    Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

270.    Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

271.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources.

## COUNT XV—DEFAMATION
### *(Against All Defendants)*

272.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 271 as if set forth fully herein.

273.    In spring 2016, Nicholas Brown told Kelly Adair of The Steadman Clinic that Winninger was involved in stealing patient files from Vail Health.

274.    The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

275.    Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

276.    Defendants' false and defamatory statement about Winninger was broadcasted to Adair and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

277.    The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

278.    Defendants' false and defamatory statement is not privileged.

279.    At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

280.    Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

281.    Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

282.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources.

## COUNT XVI—DEFAMATION
### *(Against All Defendants)*

283.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 282 as if set forth fully herein.

284.    In fall 2016, Nicholas Brown told Kelly Adair of The Steadman Clinic that Winninger was involved in stealing patient files from Vail Health.

285.    The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

286.    Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

287.    Defendants' false and defamatory statement about Winninger was broadcasted to Adair and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

288.    The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

289.    Defendants' false and defamatory statement is not privileged.

290.    At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

291.    Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

292.    Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

293.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources.

## COUNT XVII—DEFAMATION
### *(Against All Defendants)*

294.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 293 as if set forth fully herein.

295.   In early January 2017, Kirchner showed Dan Drawbaugh of The Steadman Clinic a draft complaint that included countless statements that Winninger and Sports Rehab had "stolen thousands of patient files" from Vail Health.  At the same time, Kirchner told Drawbaugh that the clinic should not be associated with Winninger.

296.   The false and defamatory statements were precisely and intentionally directed to Winninger in her trade or profession.

297.   Defendants' false and defamatory statements about Winninger involve a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

298.   Defendants' false and defamatory statements about Winninger were broadcasted to Drawbaugh and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

299.   The false and defamatory statements made by Defendants about Winninger and her professional integrity have ruined Winninger and her company's reputation within the Vail community.

300.   Defendants' false and defamatory statements are not privileged.

301.   At the time Defendants made the false and defamatory statements, they knew the statements were false or acted with reckless and wanton disregard as to the truth or falsity of the statements.

302.   Defendants' false and defamatory statement were made in bad faith and were made with actual malice and reckless disregard as to the truth of the statements. Further, the statements were not made for a legitimate business purpose but were made to destroy Winninger and Sports Rehab and eliminate them as competitors.

303.   Defendants have failed to issue a retraction of the false and defamatory statements and have rejected Plaintiffs' request to do so.

304.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources.

## COUNT XVIII—DEFAMATION
### *(Against All Defendants)*

305.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 304 as if set forth fully herein.

306.    In early January 2017, Michael Shannon showed Dr. Marc Philippon of The Steadman Clinic a draft complaint that included countless statements that Winninger and Sports Rehab had "stolen thousands of patient files" from Vail Health. Shannon told Dr. Philippon that the complaint was going to be filed the next day because of Winninger's involvement in stealing files from Vail Health.

307.    The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

308.    Defendants' false and defamatory statements about Winninger involve a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

309.    Defendants' false and defamatory statements about Winninger were broadcasted to Dr. Philippon and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

310.    The false and defamatory statements made by Defendants about Winninger and her professional integrity have ruined Winninger and her company's reputation within the Vail community.

311.    Defendants' false and defamatory statements are not privileged.

312.    At the time Defendants made the false and defamatory statements, they knew the statements were false or acted with reckless and wanton disregard as to the truth or falsity of the statements.

313.    Defendants' false and defamatory statement were made in bad faith and were made with actual malice and reckless disregard as to the truth of the statements. Further, the statements were not made for a legitimate business purpose but were made to destroy Winninger and Sports Rehab and eliminate them as competitors.

314.    Defendants have failed to issue a retraction of the false and defamatory statements and have rejected Plaintiffs' request to do so.

315.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources.

## COUNT XIX—DEFAMATION
### *(Against All Defendants)*

316.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 315 as if set forth fully herein.

317.   In January 2017, Michael Shannon spoke to Dan Drawbaugh of The Steadman Clinic and told Drawbaugh that Winninger had stolen thousands of patient files from Vail Health.

318.   The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

319.   Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

320.   Defendants' false and defamatory statement about Winninger were broadcasted to Drawbaugh and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

321.   The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

322.   Defendants' false and defamatory statement is not privileged.

323.   At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

324.   Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

325.   Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

326.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources.

## COUNT XX—DEFAMATION
### *(Against All Defendants)*

327.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 326 as if set forth fully herein.

328.   In January 2017, Michael Shannon spoke to Kelly Adair of The Steadman Clinic and told Adair that Winninger had stolen thousands of patient files from Vail Health.

329.   The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

330.   Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

331.   Defendants' false and defamatory statement about Winninger were broadcasted to Adair and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

332.   The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

333.   Defendants' false and defamatory statement is not privileged.

334.   At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

335.   Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

336.   Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

337.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources.

## COUNT XXI—DEFAMATION
### *(Against All Defendants)*

338.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 337 as if set forth fully herein.

339.    During the week of February 6, 2017, Michael Shannon spoke to Al Perkins, a Board Member of the Steadman Philippon Research Institute, and told him that Winninger had stolen 3,000 patient files from Vail Health.

340.    The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

341.    Defendants' false and defamatory statement about Winninger involve a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

342.    Defendants' false and defamatory statement about Winninger was broadcasted to Perkins and the Institute to destroy Winninger and Sports Rehab's relationship with the Institute and to end any further relationship with Winninger and Sports Rehab.

343.    The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

344.    Defendants' false and defamatory statement is not privileged.

345.    At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

346.    Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

347.    Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

348.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources.

## COUNT XXII—DEFAMATION
### *(Against All Defendants)*

349.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 348 as if set forth fully herein.

350.    In about January or February, 2017, Nicholas Brown spoke to Kelly Adair of The Steadman Clinic and stated that Winninger was involved in stealing patient files from Vail Health.

351.    The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

352.    Defendants' false and defamatory statement about Winninger involve a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

353.    Defendants' false and defamatory statement about Winninger was broadcasted to Adair and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the Institute and to end any further relationship with Winninger and Sports Rehab.

354.    The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

355.    Defendants' false and defamatory statement is not privileged.

356.    At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

357.    Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

358.    Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

359.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources.

## COUNT XXIII—DEFAMATION
### *(Against All Defendants)*

360.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 359 as if set forth fully herein.

361.    On or about April 18, 2016, Janet Savage, as attorney for Vail Health, made defamatory statements about Winninger in a letter sent to Detective Eric Bonta at the Vail Police Department.  (Plaintiffs were unaware of the letter or the defamatory statements until January 16, 2018.)  The letter refers to Winninger and Sports Rehab close to two dozen times and makes false and defamatory statements about Winninger when Savage asserts—that is, Vail Health "***knows***"—that Winninger was involved with the purported criminal act of stealing Vail Health documents and patient files.

362.    The false and defamatory statements were precisely and intentionally directed to Winninger in her trade or profession.

363.    Defendants' false and defamatory statements about Winninger involve a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

364.    Defendants' false and defamatory statements about Winninger were broadcasted to the Vail Police Department so that criminal charges would be brought against Winninger.

365.    The false and defamatory statements made by Defendants about Winninger and her professional integrity have ruined Winninger and her company's reputation within the Vail community.

366.    Defendants' false and defamatory statements are not privileged.

367.    At the time Defendants made the false and defamatory statements, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statements.

368.    Defendants' false and defamatory statements were made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statements were not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

369.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources.

## COUNT XXIV—DEFAMATION
### *(Against All Defendants)*

370.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 369 as if set forth fully herein.

371.    On July 25, 2016, Tanya Rippeth, Vail Health's Director of Human Resources, published the defamatory statements from the April 18, 2016 letter to Andrew Schwab at the Colorado Department of Regulatory Agencies ("DORA").  In that letter, Vail Health implicated Winninger and Sports Rehab in conduct violating criminal and licensure laws.  The letter makes false and defamatory statements about Winninger when Rippeth asserts—that is, Vail Health "***knows***"—that Winninger was involved in the purported criminal act of stealing Vail Health documents and patient files.

372.    The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

373.    Defendants' false and defamatory statements about Winninger involve a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws, as well as her fitness to hold a physical therapy license.

374.    Defendants' false and defamatory statements about Winninger were broadcasted to DORA to induce a regulatory investigation into Winninger's purported misconduct and the revocation of physical therapy license.

375.    The false and defamatory statements made by Defendants about Winninger and her professional integrity have ruined Winninger and her company's reputation within the Vail community.

376.    Defendants' false and defamatory statement is not privileged.

377.    At the time Defendants made the false and defamatory statement, they knew the statements were false or acted with reckless and wanton disregard as to the truth or falsity of the statements.

378.    Defendants' false and defamatory statements were made in bad faith and were made with actual malice and reckless disregard as to the truth of the statements. Further, the statements were not made for a legitimate business purpose but were made to destroy Winninger and Sports Rehab and eliminate them as competitors.

379.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources.

## COUNT XXV—TORTIOUS INTERFERENCE WITH CONTRACT
### *(Against All Defendants)*

380.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 379 as if set forth fully herein.

381.   Winninger has valid contracts with The Steadman Clinic and the Steadman Philippon Research Institute relating to physical therapy services and research services.

382.   Defendants had knowledge of these valid contracts, as is evident by the fact that they made repeated defamatory statements to administrators, staff, and doctors with The Steadman Clinic and the Steadman Philippon Research Institute.

383.   Defendants, acting without authorization or privilege, and with knowledge of these contracts, have, as a result of the actions described above, wrongfully interfered with these contracts.

384.   As a result of Defendants' interference and defamatory statements, The Steadman Clinic and the Steadman Philippon Research Institute have suspended or terminated their contracts with Winninger.

385.   Defendants' intentional and unjustified conduct was motivated by ill will and malice and interfered with and caused breaches of Winninger's contracts.

386.   As a direct and proximate result of Defendants' intentional and improper interference, Sports Rehab has suffered substantial economic injury, loss of goodwill, harm to their personal and business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, including loss of referrals and referral sources.

## COUNT XXVI—TORTIOUS INTERFERENCE WITH CURRENT BUSINESS RELATIONSHIP
### *(Against All Defendants)*

387.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 386 as if set forth fully herein.

388.   Plaintiffs have had valid business relationships with orthopaedic clinics, research institutes, and doctors, including The Steadman Clinic, Vail-Summit Orthopaedics, and Howard Head.

389.   Defendants had knowledge of these business relationships, as is evident by which orthopaedic clinics, research institutes, doctors, and Howard Head employees that Defendants spoke with about Winninger.

390.    Through the use of repeated defamatory statements made about Winninger and Sports Rehab, the orthopaedics clinics stopped referring physical therapy patients to Winninger and Sports Rehab.   Additionally, Howard Head employees were told to no longer refer any physical therapy patients to Winninger or Sports Rehab, including its Denver location.

391.    Defendants, acting without authorization or privilege, and with knowledge of these business relationships, have, as a result of the actions set forth above, wrongfully interfered with these business relationships.

392.    Defendants' intentional and unjustified conduct was motivated by ill will and malice and interfered with and caused breaches of Plaintiffs' business relationships.

393.    As a direct and proximate result of Defendants' intentional and improper interference, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their personal and business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, including loss of referrals and referral sources.

## COUNT XVII—TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIP
### *(Against All Defendants)*

394.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 393 as if set forth fully herein.

395.    Plaintiffs have valid expectations of prospective business relationships with other orthopaedic clinics and doctors in Vail Valley.

396.    Defendants had knowledge of these valid expectations of prospective business relationships.

397.    Defendants, acting without authorization or privilege, and with knowledge of these prospective business relationships, have, as a result of the actions described above, wrongfully interfered with these prospective business relationships.

398.    Defendants' intentional and unjustified conduct was motivated by ill will and malice and interfered with and caused breaches of Plaintiffs' prospective business relationships.

399.    As a direct and proximate result of Defendants' intentional and improper interference, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their personal and business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, including loss of referrals and referral sources.

43

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Lindsay Winninger and Sports Rehab Consulting LLC request the following relief:

      (a)    Judgment in favor of Plaintiffs and against Defendants on all of Plaintiffs' claims for relief;

      (b)    Award of compensatory, noncompensatory, and all other allowable damages to Plaintiffs and against Defendants in an amount to be determined at trial plus interest;

      (c)    Costs and reasonable attorneys' fees incurred in this matter, including expert witness fees; and

      (d)    All other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues so triable.


Dated:  February 22, 2018

                *s/ Elizabeth M. Brama*
                Elizabeth M. Brama, Colo. #48634
                Sonya Braunschweig (*pro hac vice*)
                BRIGGS AND MORGAN, P.A.
                2200 IDS Center
                80 South Eighth Street
                Minneapolis, MN  55402-2157
                Telephone:  (612) 977-8400; (720) 778-5461
                E-mail:  ebrama@briggs.com

                Alan L. Kildow (admitted *pro hac vice*)
                15204 Wildwood Road
                Burnsville, MN 55306
                Telephone:  (970) 390-6675
                E-mail:  alkildow@aol.com

                Attorneys for Plaintiff and Counter-Defendants
                Lindsay Winninger and Sports Rehab Consulting LLC

**Address of Plaintiffs:**
Lindsay Winninger
Sports Rehab Consulting LLC
1 Vail Road
Vail, Colorado  81657

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of February, 2018, I served a true and correct copy of Plaintiffs Lindsay Winninger and Sport Rehab Consulting LLC's Verified Amended Complaint and Jury Demand through the Court's e-filing system on:

Janet A. Savage
Richard F. Lee
Michael Kotlarczyk
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO  80202
Counsel for Defendants/Counter-Plaintiff

John W. Madden, III
The Madden Law Firm
999 18th Street
Suite 1500 South
Denver, CO  80202
Attorney for Third-Party Defendant David J. Cimino

_s/ Sandra Cambronne_
Sandra Cambronne

## VERIFICATION

I, LINDSAY WINNINGER, one of the Plaintiffs and a principal member of Plaintiff Sports Rehab Consulting LLC, declare under penalty of perjury under the laws of the State of Colorado that I have read the Verified Complaint and Jury Demand and that all the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief as of today's date.

Date:  February 22, 2018

Lindsay Winninger

STATE OF COLORADO
COUNTY OF EAGLE

Subscribed, sworn to, and acknowledged to me on this 22nd day of February, 2018.

My Commission Expires:  12 | 13 | 2020

Caleb Gregory Prichett
Notary Public

CALEB GREGORY PRICKETT
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20164047182
MY COMMISSION EXPIRES DECEMBER 13, 2020

10546928v2