# EXHIBIT 5

<table>
<tr><td>DISTRICT COURT, EAGLE COUNTY, COLORADO<br>885 Chambers Ave.; P.O. Box 597<br>Eagle, CO 81631<br>Phone: (970) 328-6373</td><td>DATE FILED: May 31, 2019 1:01 PM<br>CASE NUMBER: 2017CV30102</td></tr>
</table>

**Plaintiffs:** LINDSAY WINNINGER, an individual, and SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,

v.

**Defendants:** DORIS KIRCHNER, an individual, and VAIL CLINIC, INC. d/b/a/ VAIL VALLEY MEDICAL CENTER, a Colorado nonprofit corporation;

v.

**Third-Party Defendant:** David J. Cimino, an individual.

▲COURT USE ONLY▲

Case No.: 17CV30102

Div.: 3

## ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' DEFAMATION CLAIMS (COUNTS I – XXIV)

THIS MATTER is before the Court on *Defendants' Motion for Summary Judgment as to Plaintiffs' Defamation Claims (Counts I – XXIV)* submitted by Defendants Vail Clinic, Inc. and Doris Kirchner (individually, "Vail Clinic" and "Kirchner" and collectively, "Defendants"), through counsel, on January 1, 2019 ("Motion"). On February 27, 2019, Plaintiffs Lindsay Winninger and Sports Rehab Consulting LLC (individually, "Winninger" and "SRC" and collectively, "Plaintiffs") submitted, through counsel, *Plaintiffs' Opposition to Defendants' Motion for Summary Judgment on the Defamation Claims* ("Response"). On March 13, 2019, Defendants submitted, through counsel, *Defendants' Reply in Support of Motion for Summary Judgment as to Plaintiffs' Defamation Claims (Counts I – XXIV)* ("Reply"). Having considered

the Motion, Response, and Reply, the Court GRANTS IN PART the Motion and hereby issues the following Order.

## I.   <u>BACKGROUND</u>

Defendants request summary judgment on Counts I through XXIV averring Defamation against them.  As an initial note, the Motion references the *Verified Amended Complaint and Jury Demand* ("Amended Complaint") submitted by Plaintiffs on February 22, 2018.  On March 5, 2019 and after Plaintiffs submitted the Response to the present Motion, the Court granted Plaintiffs' January 21, 2019 *Motion for Leave to File Second Amended Complaint* ("March 5, 2019 Order").   In the Response to the present Motion, Plaintiffs refer to exhibits attached to their January 21, 2019 *Motion for Leave to File Second Amended Complaint*.

After Plaintiffs filed the *Second Amended Complaint*, the Court permitted the parties to amend the Motion and Response to conform to the new complaint.  Neither party chose to do so.  However, Plaintiffs on May 28, 2019 filed *Plaintiffs' Motion for Leave to File a Motion to Dismiss Defendants' Summary Judgment Motion or In the Alternative, to File a Supplemental Opposition With Citations to Pages, Lines, and Second Amended Complaint*. This filing was not timely, by the time it was made, the Reply had been filed, the motion was ripe and this order had been nearly fully drafted so the Court denied the motion.

Defendants affirm in the Reply that the March 5, 2019 Order does not render the Motion moot because the Counts at issue are unaltered by the *Second Amended Complaint and Jury Demand* but for Plaintiffs' addition to each Count their entitlement to an award of damages for Defendants' purported wrongful conduct.[1]

---

[1] Reply, at 3.  The language added to each of the twenty-four (24) Counts is that allegation that "Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial."  *See Second Amended Complaint and Jury Demand* submitted March 22, 2019.

Although this Order is pertaining only to the *Second Amended Complaint and Jury Demand,* in the interest of efficiency, clarity, and readability, it shall refer to the allegations in the Amended Complaint consistent with the Motion.

## II.  STANDARDS OF REVIEW

### A.  Summary Judgment

Summary judgment is designed to avoid unnecessary trials and is proper when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law.  C.R.C.P. 56; *Terrell v. Walter E. Heller & Co.*, 439 P.2d 989, 990-91 (Colo. 1968).  Summary judgment is appropriate "when the pleadings and supporting documents clearly demonstrate that no issues of material fact exist and the moving party is entitled to judgment as a matter of law."  *A.C. Excavating v. Yaht Club II Homeowners Assoc., Inc.*, 114 P.3d 862, 865 (Colo. 2005).  The movant bears the initial burden of demonstrating the lack of a genuine issue of material fact.[2]  *Schultz v. Wells*, 13 P.3d 846, 848 (Colo. App. 2000).  Once the movant demonstrates that there is an absence of a genuine issue, the burden shifts to the nonmovant to show that an issue does exist.  *McCormick v. Union Pac. Res. Co.*, 14 P.3d 346, 349 (Colo. 2000).  The trial court's function is to determine whether any material facts are disputed, not to assess the credibility or weight of the evidence.  *Capitran Inc. v. Great W. Bank*, 872 P.2d 1370, 1376 (Colo. App. 1994).  In determining the existence of a genuine issue of material fact, a court is to grant a non-moving party the benefit of all favorable inferences reasonably drawn from the facts and is to resolve all doubts in favor of a non-moving party.  *Jenkins v. Panama Canal Ry. Co.*, 208 P.3d 238, 241 (Colo. 2009).  However, the nonmoving party "may not rest upon the

---

[2] In those situations in which the movant would not bear the burden of persuasion at trial, the movant's initial burden of production may be satisfied by demonstrating an absence of evidence in the record supporting the nonmovant's case.  *Cont'l Airlines*, 731 P.2d at 712, *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In other words, if a defendant moves for summary judgment, he may argue that the record contains no evidence on which a plaintiff could prevail.

pleadings, but must present specific facts demonstrating the existence of disputed facts." *Snook v. Joyce Homes, Inc.*, 215 P.3d 1210, 1218 (Colo. App. 2009).

Because the threat of protracted litigation could have a chilling effect on the constitutionally protected right of free speech, prompt resolution of defamation actions, by summary judgment or motion to dismiss, is appropriate. *Barnett v. Denver Publ'g Co.,* 36 P.3d 145, 147 (Colo. App. 2001).

### B.  Defamation Per Se

The basic elements of any defamation claim are: (1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication. *Lawson v. Stow*, 327 P.3d 340, 345 (Colo. App. 2014).

Whether a statement is defamatory is a question of law. *Gordon v. Boyles,* 99 P.3d 75, 79 (Colo.App.2004).   Defamatory statements can be either defamatory *per se* or defamatory *per quod*.   *Han Ye Lee v. Colorado Times, Inc.*, 222 P.3d 957, 961 (Colo. App. 2009).   The distinction between the two is important only to the extent that damages are presumed if a statement is defamatory *per se*, whereas defamation *per quod* requires the pleading of special damages.  *Id*.  A statement is defamatory *per se* if (1) the defamatory meaning is apparent from the face of the publication without the aid of extrinsic proof; and (2) the statement is specifically directed at a particular person.  *Han Ye Lee v. Colorado Times, Inc.*, 222 P.3d 957, 961 (Colo. App. 2009).  The traditional categories of defamation *per se* include imputation of (1) a criminal offense; (2) a loathsome disease; (3) a matter incompatible with the individual's business, trade, profession, or office; or (4) serious sexual misconduct." *Gordon v. Boyles*, 99 P.3d 75, 79 (Colo.

App. 2004).   A statement may be considered defamatory *per se* if it is specifically directed at the person claiming injury and, on its face and without extrinsic proof, is unmistakably recognized as injurious.  *Keohane v. Wilkerson*, 859 P.2d 291, 301 (Colo. App. 1993).

The determination of whether a statement is defamatory *per se* is a question of law. *Keohane*, at 302.   To determine whether a statement is defamatory *per se*, the court must examine the statement alone, without the aid of inducements, colloquialisms, innuendos, and explanatory circumstances.   *Id.*   A claim for defamation requires, at a minimum, the publication of a false statement of a defamatory nature.  *Burns v. McGraw–Hill Broad. Co.,* 659 P.2d 1351, 1360 (Colo.1983).  Publication of a defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed.  *Card v. Blakeslee*, 937 P.2d 846, 850 (Colo. App. 1996) (*citing* Restatement (Second) of Torts § 577 (1977)).

A related question of law for the Court to decide is whether a statement is a matter of opinion, and therefore, not actionable as defamation.  *See Lawson v. Stow*, 327 P.3d 340, 348 (Colo. App. 2014).   A statement is protected as pure opinion if the court determines: (1) the statement is sufficiently factual to be susceptible of being proved true or false and (2) whether reasonable people would conclude that the assertion is one of fact.  *Id.*  In evaluating the second factor, the court should consider (1) how the assertion is phrased; (2) the context of the entire statement; and (3) the circumstances surrounding the assertion, including the medium through which the information is disseminated and the audience to whom the statement is directed. *Keohane*, 882 P.2d at 1299.  A statement prefaced with phrases such as "in my opinion" or "I believe" is not dispositive in the analysis of whether a statement is one of pure opinion.  *Lawson*, 327 P.3d at 348.

"Truth is a complete defense to defamation. However, absolute truth is not required; instead, a defendant need only show substantial truth, that is, 'the substance, the gist, the sting of the matter is true.'" *Gordon v. Boyles,* 99 P.3d 75, 81 (Colo. App. 2004) (quoting *Gomba v. McLaughlin*, 504 P.2d 337, 339 (Colo. 1972)).   The determination of the truth of an alleged defamatory statement is a question of fact for the jury to decide.  *Id*.  In determining whether a challenged statement is substantially true, the inquiry should focus on how an average reader would read the statement.  *Miles v. Ramsey,* 31 F.Supp.2d 869, 875–76 (D. Colo. 1998).  The test is whether the challenged statement produces a different effect upon the reader than that which would be produced by the literal truth of the matter. *Id.*

Finally, because the threat of protracted litigation could have a chilling effect on the constitutionally protected right of free speech, prompt resolution of defamation actions, by summary judgment or motion to dismiss, is appropriate.  *Barnett v. Denver Publ'g Co.,* 36 P.3d 145, 147 (Colo. App. 2001).

## III. <u>ANALYSIS</u>

In the matter before the Court, Counts I through XXIV include the allegation that "Defendants' false and defamatory statements about Winninger involve a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws."[3]  As such, they impute a criminal offense and therefore fall within the purview of defamatory *per se*. In addressing the twenty-four Counts of Defamation alleged against Defendants upon which they seek summary judgment the Court shall include the alleged defamatory statement for each respective Count.

### A.  *Counts I, II, III, IX, XI, XIX (statements allegedly made to Dan Drawbaugh)*

---

[3] *See* Am. Compl. Counts I through XXIV.

Counts I, II, and III aver statements Defendant Kirchner allegedly made to Dan Drawbaugh ("Drawbaugh") in Spring, Summer, and Fall 2016.[4]  Counts IX, XI, and XIX assert statements Michael Shannon ("Shannon") allegedly made to Mr. Drawbaugh in Summer 2016, December 2016, and January 2017.[5]  Plaintiffs do not allege with particularity the purported defamatory statements, respective dates, timing, or manner of publication; rather, they aver that such statements were made in a broad time period, as over the course of a month or within a season.  Defendants argue that the statements were never made.[6]

## Count I

Plaintiffs aver in Count I that "[i]n spring 2016, Kirchner told Dan Drawbaugh of The Steadman Clinic that Winninger had known about and participated in downloading Vail Health patient files."[7]  The deposition testimony of Mr. Drawbaugh proffered by Defendants in the Motion and Plaintiffs in the Response demonstrate that genuine issues of material fact exist which preclude summary judgment.  These include, but are not limited to, whether the alleged defamatory statement was even made and whether Ms. Winninger participated in downloading the Vail Health patient files.

Notwithstanding the Court's determination that a triable issue of fact exists, Defendants assert that Ms. Kirchner's suggestion that Mr. Cimino could have shared the files he downloaded with SRC is true and therefore an absolute defense.[8]  In support, Defendants cite to an excerpt from Mr. Drawbaugh's deposition and generally to the Statement of Facts in the Motion.[9]  As

---

[4] *See id*. ¶¶ 119, 130, and 141.
[5] *See id*. ¶¶ 207, 229, and 317.
[6] Motion, at 14-15.
[7] Am. Compl. ¶ 119.
[8] Mot. at 14-15.
[9] *Id*.

noted above, truth is a complete defense to defamation.  *Gordon v.* Boyles, 99. P.3d 75, 81 Colo. App. 2004).  The alleged defamatory statement in Count I, however, is two-pronged, averring that Ms. Winninger both knew about and participated in the downloading of the Vail Health patient files.  The Court opines that while the undisputed facts in this matter, including Cimino's admission that he transferred files to Ms. Winninger, create a strong inference that Ms. Winninger knew about his downloading of the Vail Health patient files, it does not clearly support that she participated in it.[10]  As such, Defendants' assertion of the truth as an absolute defense is unsupported.

For the reasons set forth above, the Court denies Defendants' request for summary judgment on Count I.

## Count II

Plaintiffs aver in Count II that "[i]n summer 2016, Kirchner told Dan Drawbaugh of The Steadman Clinic that Winninger had stolen patient files from Vail Health and that the clinic should not be associated with her because of that."[11]  The Court finds genuine issues of material fact exist which preclude summary judgment.  These include, but are not limited to, whether the statement was made and whether Ms. Winninger stole patient files from Vail Health.

Accordingly, the Court denies Defendants' request for summary judgment on Count II.

## Count III

Plaintiffs allege in Count III that "[i] fall 2016, Kirchner told Dan Drawbaugh of The Steadman Clinic that Winninger had stolen patient files from Vail Health.[12]  The Court finds genuine issues of material fact exist which preclude summary judgment.  These include, but are

---

[10] *See* Ex. 3 to Mot., Deposition of David Cimino, at 174:8-176:13.
[11] Am. Compl. ¶ 130.
[12] *Id.* ¶ 141.

not limited to, whether the statement was made and whether Ms. Winninger stole patient files from Vail Health.

Accordingly, the Court denies Defendants' request for summary judgment on Count III.

## Counts IX, XI and XIX

In Counts IX, XI, and XIX, Plaintiffs allege that in Summer 2016, December 2016, and January 2017, respectively, that Mr. Shannon "spoke to" or "told" Mr. Drawbaugh that "Winninger had stolen thousands of patient files from Vail Health.[13]   The Court finds genuine issues of material fact exist which preclude summary judgment on these Counts.  These include, but are not limited to, whether such statements were made and whether Ms. Winninger stole thousands of patient files from Vail Health.

Accordingly, the Court denies Defendants' request for summary judgment on Counts IX, XI, and XIX.

### B. *Counts IV, X, XII, XV, XVI, XX, XXII (Statements allegedly made to Kelly Adair)*

#### Count IV

Plaintiffs aver in Count IV that "Kirchner discussed with Kelly Adair of The Steadman Clinic that patient files were stolen from Vail Health and stated that Winninger was involved."[14] Defendants note that this allegation is undated and, citing to Mr. Adair's deposition, assert that he does not recall talking to Ms. Kirchner about Ms. Winninger's involvement in the theft of Vail Health patient files.[15]  Defendants add that Ms. Kirchner testified that at a meeting at which Mr. Adair attended to discuss Vail Health's breach, she did not mention SRC or Ms. Winninger.[16]  Having met their burden of demonstrating the absence of a genuine issue of

---

[13] *Id*. ¶¶ 207, 229, and 317.
[14] Am. Compl. ¶ 152.
[15] Mot. at 10-11; Ex. 22 to Mot., Deposition of Kelly Adair, at 25:19:22.
[16] Mot. at 11; Ex. 23, Deposition of Doris Kirchner, at 29:14-32:1.

material fact, the Court turns to whether Plaintiffs have met their burden of showing that a triable issue of fact exists.

Plaintiffs do not offer substantive argument or specifically respond to Defendants' assertion regarding Count IV. Rather, they refer to and include a chart of deposition excerpts for the purpose of "highlight[ing] the record evidence that directly contradicts Defendants' assertion that no defamatory statements were made."[17] The chart does not refer to deposition testimony by Ms. Kirchner, Mr. Adair, or any person which refutes Defendants' assertions and demonstrates that a genuine issue of material fact exists. Plaintiffs have failed to uphold their burden as the nonmovant. As such, Defendants are entitled to summary judgment on Count IV. Accordingly, the Court dismisses Count IV with prejudice.

## Counts X, XII and XX

In Counts X, XII, XX, Plaintiffs allege that in Summer 2016, December 2016, and January 2017, respectively, Mr. Shannon "spoke to" or "told" Kelly Adair that "Winninger had stolen thousands of patient files from Vail Health."[18] Defendants dispute that the statement was made.[19] In support, they cite to the deposition testimony of Mr. Adair and Mr. Shannon which reflect that neither recall a conversation involving Ms. Winninger's involvement in the theft of the Vail Health patient files.[20] Having met their burden of demonstrating the absence of a genuine issue of material fact, the Court considers whether Plaintiffs have met their burden of showing that a triable issue of fact exists.

Plaintiffs neither proffer argument or specifically respond to Defendants' assertion regarding these Counts. Rather, the Response refers to and includes a chart of deposition

---

[17] Response, at 6-10.
[18] Am. Compl. ¶¶ 218, 240, and 328.
[19] Mot. at 11.
[20] Mot. at 11; Ex. 22 to Mot., Deposition of Kelly Adair, at 25:5-18; Ex. 24 to Mot., Deposition of Michael Shannon, at 146:5-18.

excerpts for the purpose of "highlight[ing] the record evidence that directly contradicts Defendants' assertion that no defamatory statements were made."[21]   The chart does not refer to deposition testimony by Mr. Shannon, Mr. Adair, or any person which controverts Defendants' arguments and demonstrates that a genuine issue of material fact exists.  Plaintiffs have failed to satisfy their burden as the nonmovant and Defendants are entitled to summary judgment on Counts X, XII, and XX against them as a matter of law.  Accordingly, the Court dismisses these Counts with prejudice.

## Counts XV, XVI

In Counts XV and XVI, Plaintiffs allege that in Spring 2016, Fall 2016, and January or February 2017, respectively, Nicholas Brown "spoke to" or "told" Kelly Adair that "Winninger was involved in stealing patient files from Vail Health."[22]   Defendants assert that Mr. Brown never told Mr. Adair that Ms. Winninger was involved in the theft of the patient files and cites to Mr. Brown's deposition in support.[23]   Defendants state that Mr. Adair does not even recall speaking to Mr. Brown about Ms. Winninger's involvement with Mr. Cimino's conduct.[24] Having met their burden of demonstrating the absence of a genuine issue of material fact, the Court considers whether Plaintiffs have met their burden of showing that a triable issue of fact exists.

Plaintiffs fail to offer substantive argument or specifically respond to Defendants' assertion regarding these Counts.  Rather, Plaintiffs refer to and include a chart of deposition excerpts for the purpose of "highlight[ing] the record evidence that directly contradicts

---

[21] Response, at 6-10.
[22] Am. Complaint, ¶¶ 273, 284, and 350.
[23] Mot. at 11; Ex. 20 to Mot., Deposition of Nicholas Brown, at 175:24-176:12.
[24] Mot. at 12; Ex. 22 to Mot., Deposition of Kelly Adair, at 25:23-26:1.

Defendants' assertion that no defamatory statements were made."[25]  With regard to Counts XV and XVI, Plaintiffs have identified no evidence of such statements in Spring 2016 or Fall 2016.[26]  Plaintiffs have failed to satisfy their burden as the nonmovant and Defendants are entitled to summary judgment on Counts XV and XVI against them as a matter of law.  Accordingly, the Court dismisses these Counts with prejudice.

## Count XII

Addressing Count XXII, Defendants argue that the two deposition excerpts of Mr. Adair and Mr. Brown included in Plaintiffs' chart are taken out of context and do not create a triable issue of fact.[27]  They maintain that the excerpt from Mr. Brown's deposition reflects only that Mr. Brown had engaged in discussions with Mr. Adair regarding Ms. Winninger's involvement in the theft of the Vail Health patient files, not that Mr. Brown told Mr. Adair that she was involved, as alleged.[28]  Plaintiffs' excerpt in its entirety is as follows[29]:

> Q: Have you ever had any discussion with Kelly Adair that Lindsay Winninger was involved in the theft of Vail Health patient files?
>
> A: Yes, I have.

Defendants argue that Plaintiffs' excerpt of Mr. Brown's statement is incomplete and assert that Mr. Brown clarified that in such discussions, only SRC was mentioned and in its capacity as Mr. Cimino's employer[30] as follows:

> Q. Did you tell Mr. Adair that Ms. Winninger was involved in the theft of Vail Health patient files?
> A. No. I said she was – Dave stole the files.
> Q. And you said nothing about Ms. Winninger's involvement. Is that your testimony?
> A. No, Dave stole the files and he was working for SRC at the time.

---

[25] Response, at 6-10.
[26] Reply, at 4-5.
[27] *Id.* at 7-8.
[28] *Id.* at 7.
[29] Response, at 7; Ex. 1 attached to Motion to Amend Complaint, Deposition of Nicholas Brown, at 174:23-175:1.
[30] Reply, at 7-8; Ex. 39 to Reply, Deposition of Nicholas Brown, at 175:24-176:3.

Q. Other than that, did you tell Mr. Adair that Ms. Winninger was also involved in the theft of Vail Health patient files?
A. Other than that, no.

Defendants also argue that Plaintiffs fail to establish a triable issue of fact by their excerpt of Mr. Adair's deposition included in the chart wherein the deponent "recall[ed] conversations with Nico Brown that he or she was involved."[31]  Mr. Adair testified that Mr. Brown did not state who "he" or "she" was, how "he" or "she" was involved, and admitted that he did not know who "he" or "she" was.[32]  In reviewing Plaintiffs' chart, the Court notes that Plaintiffs frame the questions and responses within Mr. Adair's deposition excerpt as continuous. This is misleading because they are not continuous and reflect various pages.[33]

The Court determines that Mr. Adair neither named Ms. Winninger as being involved in stealing the Vail Health patient files nor specified what Mr. Brown stated.  The Court also reviewed the remaining excerpts in Plaintiffs' chart.  Mr. Adair was asked if it was "logical" for him to "infer" from what Mr. Brown said that "she" was Ms. Winninger.[34]  Mr. Adair responded that he made an assumption that it was Ms. Winninger. [35]  Mr. Adair's inference or assumption that "she" is Ms. Winninger, the testimony proffered by Plaintiffs does not clearly demonstrate that Mr. Brown told Mr. Adair that Ms. Winninger was involved in stealing Vail Health patient files.  However, the Court must grant a non-moving party, the Plaintiff in this case, the benefit of all favorable inferences reasonably drawn from the facts and is to resolve all doubts in favor of a non-moving party.  *Jenkins v. Panama Canal Ry. Co.*, 208 P.3d 238, 241 (Colo. 2009).  There is no evidence that Mr. Adair's assumption or inference was unreasonable. Although the testimony

---

[31] Reply, at 8; *see* Response, at 6; *see also* Ex. 40 to Reply, Deposition of Kelly Adair, at 196:18-24.
[32] Reply, at 8; Ex. 40 to Reply, Deposition of Kelly Adair, at 197:7-20.
[33] Response, at 7 (citing Ex. 4 of the Motion for Leave to File Second Amended Complaint, at 196, 198-200, 202-03).
[34] Response, at 7.

[35] *Id.*

is questionable, the jury, not the Court, must decide if it is credible. As such, the Court finds the above testimony is thin but adequate to create a triable issue.

Based on the foregoing, the Court finds that Plaintiffs have established a genuine issue of material fact as to whether Mr. Brown named Ms. Winninger as being involved in stealing patient files from Vail Health, as alleged. Accordingly, the Court denies Defendants' request for summary judgment as to Counts XV, XVI and XXII.

**COUNTS V, VI, VII, VIII (*Statements allegedly made to Dr. Marc Philippon*)**

**<u>Count V</u>**

Plaintiffs allege in Count V that "Kirchner discussed with Dr. Philippon of The Steadman Clinic that patient files were stolen from Vail Health and stated that Winninger was involved."[36] Defendants assert that Dr. Philippon does not recollect this conversation and cite his deposition testimony in support.[37] The Court finds that Defendants have met their burden as the movant and turn to Plaintiffs to determine whether they have established a genuine issue of material fact thereby precluding summary judgment. Plaintiffs proffer no response to Defendants' argument through argument of counsel or their deposition excerpt chart. Therefore, the Court determines that Plaintiffs have failed to uphold their burden and the Court grants Defendants request for summary judgment. Accordingly, the Court dismisses Count V with prejudice.

**<u>Count VI</u>**

Plaintiffs aver in Count VI that "[i]n March 2016, Michael Shannon told Dr. Marc Philippon of The Steadman Clinic that patient files had been stolen from Vail Health and that Winninger was involved. Winninger learned of this conversation later."[38] In support of their request for summary judgment, Defendants refer to the testimony of Mr. Shannon who denies

---

[36] Am. Compl. ¶ 163.
[37] Mot. at 12; Ex. 25 to Mot., Deposition of Dr. Marc Philippon, at 122:3-11.
[38] Am. Compl. ¶ 174.

telling Dr. Philippon that Ms. Winninger was involved in the theft.[39]  Dr. Philippon's testimony reflects that he does not recall Mr. Shannon making the statement and acknowledges that the general "topic might have [come] up about Lindsay and David Cimino."[40]  Defendants assert and the Court agrees that this does not evince a defamatory statement as alleged.[41]  Defendants have met their burden as the movant and the Court turns to Plaintiffs to determine whether they have established a genuine issue of material fact thereby precluding summary judgment.

Plaintiffs proffer no argument in response.  The Court reviewed Plaintiffs' deposition excerpt chart.  The testimony of Dr. Philippon included within does not support the allegation in this Count.  Dr. Philippon testified that as Mr. Cimino worked for Ms. Winninger, there was some implication that she might be connected to the records issue.[42]  The Court determines that Mr. Philippon's impression of an implication is not sufficient to satisfy Plaintiffs' burden of establishing a genuine issue of fact as to the allegation that Mr. Shannon stated to Dr. Philippon that Vail Health patient files has been stolen and Ms. Winninger was involved.  The Court deems it appropriate to grant Defendants' request for summary judgment and dismisses Count VI with prejudice.

## Count VII

In Count VII, Plaintiffs aver that "Michael Shannon sent text messages to Dr. Marc Philippon of The Steadman Clinic again implicating Winninger in the stealing of Vail Health patient files.  Plaintiffs assert that the dates of these texts are unknown because Defendants, rather than Plaintiffs, have not produced evidence of the defamatory statements or the text

---

[39] Mot. at 12: Ex. 24 to Mot., Deposition of Michael Shannon, at 97:8-98:9.
[40] Mot. at 12; Ex. 25 to Mot., Deposition of Dr. Marc Philippon, at 115:22-117:10.
[41] Mot. at 12.
[42] Resp. at 7-8.

messages.[43]    However, Defendants assert that such evidence or text messages have not been produced because it does not exist.[44]  They state that Mr. Shannon testified that he never sent a text message to Dr. Philippon about Ms. Winninger.[45]  Defendants note that they served a subpoena duces tecum on Dr. Philippon requesting "any and all other documents relating to Winninger, SRC and/or Cimino from January 1, 2015 through the present."[46]  Dr. Philippon did not produce any such text message in response to the subpoena and also testified that he did not recall any such text.[47]  Defendants have met their burden as the movant and turn to Plaintiffs to determine whether they have established a genuine issue of material fact thereby precluding summary judgment on this Count.

Plaintiffs do not proffer argument in the response. Rather, they state in their deposition excerpt chart that Dr. Philippon testified that he receives "a lot of text messages" from Mr. Shannon yet Defendants have not produced a text message between Mr. Shannon and Dr. Philippon or anyone associated with Vail Health and The Steadman Clinic.[48]  As such, Plaintiff admits that they can produce no evidence of any defamatory text messages between Mr. Shannon and Mr. Philippon.  The Court determines that Plaintiffs have failed to satisfy their burden of establishing a genuine issue of material fact as to whether Mr. Shannon sent a defamatory text to Dr. Philippon as alleged.  Accordingly, the Court grants Defendants' request for summary judgment and dismisses with prejudice Count VII.

## Count VIII

---

[43] Am. Compl. ¶ 185.
[44] Mot. at 12.
[45] *Id.*; Ex. 24 to Mot., Deposition of Michael Shannon, at 105:20-106:3.
[46] Mot. at 12-13; Ex. 27 to Mot.
[47] Mot. at 13; Ex. 25 to Mot., Deposition of Dr. Marc. Philippon, at 141:24-142:9.
[48] Resp. at 8; *see* Ex. 3 to Motion for Leave to File Second Amended Complaint, at 139.

Plaintiffs allege in Count VIII that "Michael Shannon stated to Dr. Marc Philippon of The Steadman Clinic that he did not understand why The Steadman Clinic was associating with Winninger when she had stolen patient files from Vail Health."[49]  Defendants argue that this statement was never made.  In support, they proffer the testimony of Mr. Shannon who stated that "[a]t no time did I say she stole documents from us" and Dr. Philippon whose testimony reflects that he does not recall Mr. Shannon making the alleged statement.[50]  Defendants have met their burden as the movant and the Court turns to Plaintiffs to determine whether they have established a genuine issue of material fact thereby precluding summary judgment.

Plaintiff proffers no argument in response and their deposition excerpt chart does not address this Count. The Court determines that Plaintiffs have failed to uphold their burden of establishing a triable issue of fact on the alleged defamatory statement.  Accordingly, the Court grants Defendants' request for summary judgment and dismisses Count VIII with prejudice.

### Counts XIII and XIV: (Statements allegedly made to Howard Head employees)

Plaintiffs aver in Counts XIII and XIV that in March 2016 and April 2016, respectively, "Vail Health (upon information and belief Nicholas Brown and Luke O'Brien) told Howard Head employees about the theft of Vail Health patient files and that Winninger was involved in the theft.  Winninger learned of these communications later."[51] Defendants argue that there is no admissible evidence that these statements were ever made.[52]  In support, Defendants offer the testimony of Mr. Brown who stated that he never told the Howard Head leadership team that Ms.

---

[49] Am. Compl. ¶ 196.
[50] Mot. at 13; Ex. 26 to Mot., Deposition of Michael Shannon, at 315:24-317:9; Ex. 25 to Mot., Deposition of Dr. Marc Philippon, at 110:15-111:7.
[51] Am. Compl. ¶¶ 251, 262.
[52] Mot. at 13.

Winninger stole Vail Health patient files.[53]  Defendants note that Mr. O'Brien was not asked at his deposition whether he made the alleged statements to Howard Head employees.[54]

Plaintiffs neither argue nor mention these Counts in their Response nor does their deposition excerpt chart address them.  The Court determines that Plaintiffs have failed establish a triable issue of fact on the alleged defamatory statement in these two Counts.  Accordingly, the Court grants Defendants' request for summary judgment and dismisses Counts XIII and XIV with prejudice.

### COUNT XXI (*Statement allegedly made to Al Perkins*)

In Count XXI, Plaintiffs allege that "[d]uring the week of February 6, 2017, Michael Shannon spoke to Al Perkins, a Board Member of the Steadman Philippon Research Institute, and told him that Winninger had stolen 3,000 patient files from Vail Health."[55]  Defendants cite to the deposition of Mr. Shannon, who does not recall such conversation taking place.[56]  Defendants acknowledge that Mr. Perkins recalls Mr. Shannon stating that Winninger "had stolen records from Vail Health" but assert that the statements were true.[57]  Plaintiffs' deposition excerpt chart cites to the same testimony of Mr. Perkins proffered by Defendants.

As previously discussed, truth is a complete defense to defamation and Defendants argue that Ms. Winninger did in fact steal records from Vail Health because Mr. Cimino emailed them to her.[58]  They offer Exhibits 33 and 34 in support.  However, Plaintiffs explain in the Response that Exhibit 33 is a proposed exercise program that Mr. Cimino created for a sports rehab client and does not contain a Howard Head logo.[59]  Plaintiffs also clarify that Exhibit 34 is Ms.

---

[53] *Id.*; Ex. 20, Deposition of Nicholas Brown, at 176:18-178:7.
[54] Mot. at 13.
[55] Am. Compl. ¶ 339.
[56] Mot. at 19-20; Ex. 24, Deposition of Michael Shannon; at 146:19-152:8.
[57] Mot. at 20; Ex. 32 to Mot., Deposition of Al Perkins, at 16:4-13.
[58] Mot. at 20; Exs. 33 and 34.
[59] Resp. at 17.

Winninger's response to Mr. Cimino in which she instructs him to revise the exercise program.[60] Plaintiffs emphasize that the exercise program does not contain any HIPAA information.[61] Defendants assert that Ms. Winninger also took files without permission when she left Howard Head.[62]   In reviewing the testimony of Ms. Winninger offered by Defendants in support, Ms. Winninger testified that Proaxis employees took their files and protocols when they left, clarified that she worked for Proaxis, not Vail Health, and that she did not know what is on Vail Health servers, because she never worked for Vail Health.[63]   The Court finds that Defendants have neither established an absence of a triable issue on this Count nor demonstrated that the alleged statement is true.

The Court determines that Plaintiffs have met their burden of establish that a genuine issue of material fact exists thereby precluding summary judgment on this Count.  Accordingly, the Court denies Defendants' request for summary judgment on Count XXI.

## COUNT XXIII (*Statements made to Law Enforcement*)

Plaintiffs aver in Count XXIII that "[o]n or about April 18, 2016, Janet Savage, as attorney for Vail Health, made defamatory statements about Winninger in a letter sent to Detective Eric Bonta at the Vail Police Department. (Plaintiffs were unaware of the letter or the defamatory statements until January 16, 2018).  The letter refers to Winninger and Sports Rehab close to two dozen times and makes false and defamatory statements about Winninger when Savage asserts—that is, Vail Health 'knows'—that Winninger was involved with the purported criminal act of stealing Vail Health documents and patient files."[64]

---

[60] *Id.*
[61] *Id.* at 17-18.
[62] Mot. at 20; Ex. 12 to Mot., Deposition of Lindsay Winninger, at 172:10-175:23.
[63] Ex. 12 to Mot., Deposition of Lindsay Winninger, at 173:6-174:22.
[64] Am. Compl. ¶ 361.

Defendants assert that the aforementioned letter sent by Vail Health to the Vail Police Department is subject to a qualified privilege because it was made to law enforcement and is a matter of public concern.[65]  In support, they state that the HIPAA breach constitutes a matter of public concern as it involved over 3,100 patients to whom Vail Health was required to provide notice of the breach pursuant to federal law.[66]  Defendants add that this matter was reported in the newspaper, a criminal investigation was opened, and the Department of Regulatory Affairs (DORA) and the Department of Health and Human Services opened investigations.

Colorado law recognizes a qualified, but not an absolute, privilege for communications by a party with a legitimate interest to persons having a corresponding interest and communications promoting legitimate individual, group, or public interests.  *Burke v. Greene*, 963 P.2d 1119, 1122 (Colo. App. 1998).  To recover for such claims, a plaintiff must prove that a defendant made the alleged statements with malice; that is, with knowledge that they were false or with reckless disregard for whether they were true or false.  *Id*.  Therefore, Vail Health's statements to the Vail Police Department are privileged unless Plaintiffs can show that they were made with malice.

The question of whether a matter is of public concern is one of law.  *McIntyre v. Jones, 194 P. 3d 519*, 525 (Colo. App. 2008).  Generally, a matter is of public concern whenever it embraces an issue about which information is needed or is appropriate, or when the public may reasonably be expected to have a legitimate interest in what is being published.  *McIntyre*, at 25 (quotations and citations omitted).  The boundaries of public concern cannot be readily defined, but must be determined on a case-by-case basis.  *Id*.  A matter is of public concern when it involves an issue about which the public may reasonably be expected to have a legitimate

---

[65] Mot. at 22-23.
[66] *Id.* at 24.

interest in what is being published. *Id.* More specifically, a matter is of public concern when "it can be fairly considered as relating to any matter of political, social, or other concern to the community." *Id.* One alternative basis for deeming a matter of public concern is reports of criminal activity to law enforcement or regulatory agencies. Defamatory statements made for the purpose of reporting a crime are matters of public concern. *Lawson v. Stow*, 327 P.3d 340, 347 (Colo. App. 2014).

If the defamatory statement involves a matter of public concern, the burden of proof requires a plaintiff to prove falsity of the statement as well as publication with actual malice by clear and convincing evidence. *McIntyre v. Jones*, 194 P.3d 519, 524 (Colo. App. 2008). Further, a plaintiff must establish actual damages, even if the statements were found to be defamatory *per se. Id.*

Plaintiffs concur that the subject letter sent by Vail Health to the Vail Police Department is subject to a qualified privilege.[67] However, while they acknowledge that whether the matter is of public or private concern is a matter of law, they argue that the "legal determination is not readily susceptible of determination until the 'whole record' of evidence has been laid out in a trial."[68] The Court disagrees - evidence to support or refute a Motion for Summary Judgment must be presented to the Court in the summary judgment pleadings. Argument that more evidence may be produced at trail is ineffective.

As noted *infra*, the question of whether a matter is of public concern is one of law. *McIntyre v. Jones,* 194 P. 3d 519, 525 (Colo. App. 2008). The Court finds that the letter is a matter of public concern and subject to a qualified privilege and as such, heightened scrutiny. Therefore, Plaintiffs must prove that Defendants made the alleged statements with malice; that

---

[67] Resp. at 22.
[68] *Id.* at 28.

is, with knowledge that they were false or with reckless disregard for whether they were true or false.  *Burke v. Greene*, 963 P.2d 1119, 1122 (Colo. App. 1998).

Defendants assert that Plaintiffs cannot demonstrate a genuine issue of material fact as to whether the statements were knowingly false or made in reckless disregard of the truth because Ms. Winninger in fact was involved in Mr. Cimino's behaviors.[69]  They state that the letter and statements within were reasonable based on the evidence available to Vail Health at the time.[70]  Such evidence includes Ms. Winninger's texts in the Spring of 2016 in which she asks Mr. Cimino to send the information on the USB drives.  This demonstrates that she knew he stole the patient files and yet continued to employ him.[71]  Defendants add that Ms. Winninger also minimized the significance of Mr. Cimino's theft by telling Vail Health that "everyone who leaves takes their files and protocols off the drive." [72]  The Court finds that Defendants have met their burden as the movant and the Court turns to Plaintiffs to determine whether they have established a genuine issue of material fact as to whether Defendants made the statements in the letter to the Vail Police Department with malice thereby precluding summary judgment.

Plaintiffs present no evidence in response to Defendants' argument that establishes a genuine issue of material fact on this issue.  Plaintiffs note that because the Counts relating to the "draft complaint" discussed *supra*, and letter to the Vail Police Department are both subject to a qualified privilege, the Response shall address them together.[73]  However, while the Response directly addresses Defendants' arguments on the Counts associated with the alleged statements made within the draft complaint, Plaintiffs fail to controvert Defendants' argument as to the alleged defamatory statements in the letter to the Vail Police Department.  They argue that the

---

[69] Mot. at 24.
[70] *Id.* at 23.
[71] *Id.* at 24-25, Ex. 10 to Mot.
[72] Mot. at 25; Ex. 15 to Mot.
[73] Resp. at 22.

facts section of their Response and accompanying deposition excerpt chart establish genuine issues of material fact and refer generally to their summary of such facts.[74]   Plaintiffs do not direct the Court to a specific deposition excerpt or other evidence in support of their assertion. Upon the Court's own review of the summary, the excerpt of Ms. Kirchner's deposition mentions the letter to the Vail Police Department sent April 18, 2016.[75]   Ms. Kirchner testified that she did not have information at the time the letter was sent that Ms. Winninger was involved and that Defendants were still trying to determine that.[76]   The testimony reflects that Defendants were investigating whether Ms. Winninger had any involvement in the theft.   The excerpt does not support or establish a triable issue as to whether Defendants acted with malice in sending the letter with the alleged defamatory statements to the Vail Police Department.

The Court finds that Plaintiffs have failed to meet their burden of establishing a genuine issue of material fact as to whether Defendants acted with malice in making the alleged statements in the letter sent to the Vail Police Department on April 18, 2016.   Accordingly, the Court grants Defendants' request for summary judgment and dismisses Count XXIII with prejudice.

### COUNTS XVII and XVIII (*Statements relating to contemplated legal proceedings*)

### Counts XVII and XVIII

In Count XVII, Plaintiffs allege that "[i]n early January 2017, Kirchner showed Dan Drawbaugh of The Steadman Clinic a draft complaint that included countless statements that Winninger and Sports Rehab had 'stolen thousands of patient files' from Vail Health.   At the same time, Kirchner told Drawbaugh that the clinic should not be associated with Winninger."[77]

---

[74] Resp. at 24-25.
[75] *Id.* at 25.
[76] *Id.* at 26.
[77] Am. Compl. ¶ 295.

In Count XVIII, Plaintiffs aver that "[i]n early January 2017, Michael Shannon showed Dr. Marc Philippon of The Steadman Clinic a draft complaint that included countless statements that Winninger and Sports Rehab had 'stolen thousands of patient files' from Vail Health. Shannon told Dr. Philippon that the complaint was going to be filed the next day because of Winninger's involvement in stealing files from Vail Health."[78]

Defendants argue that they are entitled to summary judgment on Counts XVII and XVIII because statements in a draft complaint are absolutely privileged and cannot form the basis of a defamation claim.[79]

"A party to a private litigation . . . is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding . . . if the matter has some relation to the proceeding."  Restatement (Second) of Torts § 587.  "Generally, statements made in the course of judicial or quasi-judicial proceedings, even if the remarks are false or defamatory and made with knowledge of their falsity, are absolutely privileged if they bear some relation or reference to the subject of the inquiry."  *Dep't of Admin. v. State Pers. Bd.*, 703 P.2d 595, 597-98 (Colo. App. 1985) (citing Restatement (Second) of Torts § 587).  The "litigation privilege exists to encourage and protect free access to the courts for litigants and their attorneys."  *Begley v. Ireson*, 399 P.3d 777, 780 (Colo. App. 2017).  Thus, this privilege is broad, and "protects a party to a private litigation . . . from liability for defamation irrespective of his purpose in publishing the defamatory matter, of his belief in its truth or even his knowledge of its falsity."  Restatement (Second) of Torts § 587 cmt. a.

The litigation privilege extends to communications made before the initiation of a lawsuit so long as the litigation is contemplated in good faith.  "Communications preliminary to a

---

[78] *Id*. ¶ 306.
[79] Mot. at 16.

judicial proceeding are protected by absolute immunity only if they have some relation to a proceeding that is actually contemplated in good faith." *Begley*, 399 P.3d 777, 781 (Colo. App. 2017). The *Begley* court noted that "[w]hether this privilege is characterized as absolute or qualified is beside the point. Instead, what matters is that the privilege attaches only if the prelitigation statement is (1) related to prospective litigation and (2) the prospective litigation is contemplated in good faith." *Id*.

Defendants posit that their showing of the draft complaint in early January 2017 is privileged because it directly relates to the present proceeding and was contemplated in good faith.[80] They assert that such good faith is demonstrated by the fact that they both contemplated the claims within the draft complaint and subsequently brought or filed such claims on July 27, 2017.[81] Defendants emphasize that the draft complaint in January 2017 is very similar to the counterclaims and third-party complaint filed by Vail Health on July 27, 2017.[82] The Court has reviewed both and finds them to be substantially similar.

In response, Plaintiffs fail to proffer evidence demonstrating that Defendants' draft complaint was not contemplated in good faith. They argue that the Court cannot make a determination of good faith on summary judgment as it is a jury question.[83] However, questions of good faith are not exempt from summary judgment if Plaintiffs fail to produce evidence creating a genuine issue of material fact as to good faith. *See Knappenberger v. Shea*, 874 P.2d 498, 501-02 (Colo. App. 1994).[84] While Plaintiff argues that the determination of good faith is a jury question, they assert that the fact section within the Response and various citations to

---

[80] Mot. at 18.
[81] *Id.*
[82] *Id.* at 18; *see* Ex. 29 and *Defendants' Answer and Defendant Vail Clinic, Inc.'s Counterclaims, Third-Party Complaint and Jury Demand* filed on July 27, 2017.
[83] Resp. at 22, 24 (citing *Pittman v. Larson Distributing Co.*, 724 P.2d 1379, 1386 (Colo. App. 1988).
[84] Reply, at 12 (citing *Knappenberger v. Shea*, 874 P.2d 498, 501-02 (Colo. App. 1994).

deposition excerpts support that a triable issue of fact exists.[85]  The fact section restates alleged defamatory statements and cites parenthetically to the respective deponent who purportedly made such statements.[86]   However, Plaintiffs neither cite to the page(s) or line(s) of the depositions nor specify how each statement establishes a genuine issue of material fact with regard to whether Defendants acted in bad faith in showing the draft complaint.[87]   Plaintiffs' summary includes arguments of Defendants' "bad faith motive."[88]   Plaintiffs assert without support that Defendants wanted Ms. Winninger "out of the picture" because The Steadman Clinic intended to form a competitive physical therapy clinic.[89]   Plaintiffs maintain that Defendants never seriously intended to file the draft complaint; rather, its purpose was only to "scare off" The Steadman Clinic from any business relationship with Ms. Winninger or SRC.[90] The Court finds the above arguments to be conclusory and without merit.

The Court finds that Plaintiffs have failed to meet their burden of establishing a genuine issue of material fact as to whether Defendants acted in bad faith in showing the draft complaint. Accordingly, the Court grants Defendants' request for summary judgment and dismisses XVII and XVIII with prejudice.

**COUNT XXIV** *(Statements made in response to subpoena issued by DORA)*

Plaintiffs allege in Count XXIV that "[o]n July 25, 2016, Tanya Rippith, Vail Health's Director of Human Services, published defamatory statements form the April 18, 2016 letter to Andrew Schwab at the Colorado Department of Regulatory Agencies ("DORA").  In that letter, Vail Health implicated Winninger and Sports Rehab in conduct violating criminal and licensure

---

[85] Resp. at 24-25.
[86] *Id.* at 25-26.
[87] *Id.*
[88] *Id.* at 26.
[89] *Id.* at 25-26.
[90] *Id.* at 26.

laws.  The letter makes false and defamatory statements about Winninger when Rippeth asserts –

Vail Health **"knows"** – that Winninger was involved in the purported criminal act of stealing

Vail Health documents and patient files.[91]

On June 30, 2016, DORA subpoenaed Vail Health for records.[92]  Vail Health responded

on July 25, 2016.[93]  Defendants assert that the alleged defamatory statements within its response

letter to DORA are absolutely privileged.[94]   Colorado courts have held that the rule of absolute

privilege applicable to statements in judicial proceedings extends to statements made in

connection with state regulatory inquiries, provided the communication bears a reasonable

relationship to the subject of the action.  *MacLarty v Whiteford*, 496 P.2d 1071 (Colo. App.

1972).[95]  Defendants maintain that the statements in their response letter to DORA concerning

the data breach, including who was involved, were directly related to the subject of DORA's

inquiry and are therefore absolutely privileged.[96]

Plaintiffs do not respond with regard to the controlling law provided above.  Rather, they

assert that summary judgment on this Count is premature and that what is important is that

Defendants "have objected to any attempt to inquire into the background and genesis of the

DORA letter and the 'anonymous' complaint that precipitated it."[97]   Plaintiffs argue without

support that an 'anonymous complaint' was "planted with DORA by someone closely associated

with Vail Health."[98]   Plaintiffs also make the conclusory argument that "Defendants' attorney

---

[91] Am. Complaint, ¶ 371 (emphasis in original).
[92] Mot. at 18-19; Ex. 30 to Mot.
[93] Mot. at 18; Ex. 31 to Mot.
[94] Mot. at 18.
[95] *Id.*
[96] *Id.* at 18-19.
[97] Resp. at 33.
[98] Resp. at 33.

even went so far as to instruct a witness not to answer questions about the DORA letter and anonymous complaint."[99]   The Court finds Plaintiffs arguments unsupported and meritless.

The Court determines that Defendants' letter in response to DORA's subpoena is absolutely privileged.   Plaintiffs have failed to establish a genuine issue of material fact as to whether the alleged defamatory statements in such letter bear a reasonable relationship to the subject of the matter presently before the Court.   Accordingly, the Court grants Defendants' request for summary judgment and dismisses COUNT XXIV with prejudice.

### Ms. Kirchner's liability on Counts VI-XVI and XVIII-XXIV

Finally, Ms. Kirchner is named as a Defendant on all Defamation counts.[100]   Defendants assert that Ms. Kirchner is entitled to summary judgment with respect to any statements not made by her, specifically Counts VI through XVI and XVIII through XXVI.   They assert that as CEO, she cannot be liable for the torts of the corporation.[101]

"A corporate employee typically acts on behalf of the corporation, not its owner or officer."   *Meyer v. Holley*, 537 U.S. 280, 286 (2003).   Accordingly, corporate officers are not liable for torts committed by the corporation's employees or agents. *Id.*   While Plaintiffs concede that the controlling law stated above is "generally true", they argue that Ms. Kirchner participated directly in the entire factual situation regarding the data breach.[102]   Plaintiffs cite to her deposition which reflects that she knew, for example, of Mr. Cimino's hiring and his employment contract with Vail Health, and approved the letter to the Vail Police Department.[103]   However, these are both corporate activities and do not support her liability for statements made by others.

---

[99] *Id*.
[100] *See* generally, *Am. Complaint*.
[101] Mot. at 25-26.
[102] Resp. at 34.
[103] *Id*. at 34-35.

Plaintiffs have failed to establish a triable issue as to Defendants' Kirchner's liability on Counts VI-XVI and XVIII-XXIV.   Accordingly, the Court determines that Ms. Kirchner is entitled to summary judgment on Counts VI-XVI and XVIII-XXIV.

## VI.  <u>ORDER</u>

 IT IS ORDERED:

The Court hereby GRANTS IN PART the Motion.

1. The Court GRANTS summary judgment in favor of Defendants and against Plaintiffs on the following Counts and dismisses each with prejudice: Count IV, V, VI, VII, VIII, X, XI, XIII, XIV, XV, XVI, XVII, XVIII, XX, XXIII, and XXIV.

2. The Court DENIES summary judgment on the following Counts: Counts I, II, III, IX, XI, XIX, XXII, XXI, and XXII.

3. Counts VI through XVI and XVIII through XXIV as against Ms. Kirchner are dismissed with prejudice.

So Ordered this 31st day of May, 2019.


By the Court:


_____
Russell H. Granger,
District Court Judge