## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation.

      Defendant.

---

### PLAINTIFFS' OPPOSITION TO DEFENDANT'S RENEWED MOTION TO STAY DISCOVERY PENDING ADJUDICATION OF ITS MOTIONS TO DISMISS UNDER RULE 12(b)(6) AND COLORADO RIVER DOCTRINE

---

### <u>INTRODUCTION</u>

This case has been pending since July 2019, and no discovery has taken place (although Plaintiffs served discovery requests in October, but Vail Health never responded). In this district, stays of discovery pending motions to dismiss are generally disfavored except in limited circumstances not at issue here. In deciding this motion, Vail Health requests that the Magistrate weigh the merits of its motions to dismiss to determine whether a discovery stay should be granted. But such a request is inappropriate particularly when the Court has not referred the motions to dismiss to the Magistrate.[1] Vail Health also fails to establish that the *String Cheese* factors weigh in their favor and warrant a stay of discovery. At the very least, the parties should be ordered to engage in phased discovery to move this case forward.

---

[1]     *Estate of Thakuri v. City of Westminster*, Civil Action No. 19-cv-02412-DDD-KLM, at *4 (D. Colo. Dec. 12, 2019).

## **BACKGROUND**

I.     **THE PROCEDURAL BACKGROUND TO THIS MOTION.**

On January 24, 2020, Vail Health filed a "supplement to Colorado River Motion and Renewed Request to Stay Discovery in Light of Upcoming Scheduling Conference" on January 28, 2020.  Vail Health's motion rehashed arguments previously made in its October 10, 2019 "Motion to Dismiss or Stay Pursuant to Colorado River Doctrine, or Alternatively, Stay Discovery."  Vail Health's "supplement" was filed without permission, contrary to Judge Martinez's Practice Standards.  Nor was it a "renewed motion" because the prior motion had never been withdrawn or ruled upon.[2]  The "supplement" raised no new issues and was virtually identical to the October 10, 2019 motion.

The "supplement" purported to "update" the Court with additional facts—many of which were known to Vail Health before October 10 or were known to Vail Health months before it filed the "supplement."  The purpose of the "supplement" was not to update the Court with any relevant facts related to the motion but rather was to further smear Plaintiffs and obtain some tactical advantage at the January 28 scheduling conference.  On January 27, 2020, the Court summarily dismissed Vail Health's "supplement" because it contained no statement of conferral.  Nor could one have been included because Vail Health never conferred with Plaintiffs.

At the January 28, 2020 scheduling conference, the Court gave Vail Health 48 hours to meet and confer and refile the "supplement," which Vail Health filed on January 30, 2020.

---

[2]     A "renewed motion" also known as a "restorative motion" is "[a] motion that renews consideration of a question already disposed of."  BLACK'S LAW DICTIONARY at "restorative motion" and "renewal" (8th ed. 2004).

## II.    THE STATE COURT ACTION.

On April 25, 2017, Plaintiffs filed an action in Eagle County against Doris Kirchner and Vail Health, with Judge Frederick Gannet presiding.  The complaint (as does the amended complaint) includes claims for defamation and tortious interference. Early on, Defendants moved to dismiss a tortious interference claim, which was denied.[3]  Vail Health then filed a counterclaim, accusing Plaintiffs of conspiring with David Cimino (a former Vail Health employee that joined Sports Rehab on January 1, 2016) in stealing thousands of Vail Health patient files in 2015 and using those files to solicit patients, all of which was untrue.  The counterclaim was not the first time that Vail Health asserted that Plaintiffs solicited Vail Health patients.

In about early 2016, Michael Shannon, the then-Board Chairman of Vail Health, led The Steadman Clinic managing partner Dr. Marc Philippon (a key referral source for Plaintiffs) to believe Winninger had solicited Vail Health patients[4] and that Cimino was employed by Sports Rehab and Vail Health simultaneously, which raised a "red flag."[5] Winninger's purported conduct apparently made Dr. Philippon angry."[6]  Despite Shannon's representations, two years later he could not identify a single Vail Health patient that was solicited.[7]  And four years since making that allegation, obtaining Plaintiffs' list of 1,600 patients, and a court order that Vail Health refused to comply with,

---

[3]    Ex. 1 [Order on Mot. to Dismiss].
[4]    Ex. 2 at 96, lines 15-25, at 97, lines 1-25, at 98, lines 1-16 [Drawbaugh Dep.]; Ex. 3 at 177, lines 2-17 [Philippon Dep.].
[5]    Ex. 3 at 19, lines 10-25; at 20, lines 1-21[Philippon Dep.].
[6]    Ex. 2 at 98, lines 2-3 [Drawbaugh Dep.].
[7]    Ex. 4 at 70 lines, 21-25, at 72 lines 3-25, at 73 lines 1-25 [Shannon Dep.].  *See also id.* at 77, lines 11-25 (characterizing questions about identifying purported solicited patients as a "hypothetical").

Vail Health only recently identified three patients[8] that Plaintiffs "solicited or **treated**." The Special Master found Vail Health's carefully crafted answer unresponsive and deficient and recently ordered it to identify only the patients that were solicited, not

Contrary to Vail Health's assertion, the state court is not nearly as far along as it represents. The state court action has proceeded very slowly. Virtually nothing was started until spring 2018 because, in large part, it took five months for the entry of a protective order and forensic protocol order. By fall 2018, the parties had engaged in written discovery and most depositions had been taken. (It took over five months to schedule four third-party depositions.) While discovery has been exchanged, there is still a lot in dispute. More importantly, discovery is ongoing and is not duplicative of the discovery that has been served in this action, as Vail Health concedes in its motion.[9]

A substantial amount of time has revolved around the forensic protocol order. Dissatisfied with that order, Defendants filed multiple motions to expand the forensic protocol, the last of which was heard just this month. Even after the forensic order was expanded multiple times, including the use of an unprecedented near dupe analysis,[10] the independent forensic expert has not found the patient files or "trade secret" documents Vail Health repeatedly stated Cimino "stole" and transferred to Plaintiffs.

Causing further delays was Judge Gannett's retirement in late 2018. A number of pending motions were yet undecided. And in December 2018, when Judge Russell Granger took over the case, he ordered the parties to mediate those motions. After that

---

[8]     Two of the three patients were professional athletes who sought out Sports Rehab on their own for physical therapy. The third was a person vacationing in Vail from the United Kingdom who Cimino treated at Vail Health, not Sports Rehab.

[9]     *See* Def.'s Mot. at 11 (discussing the federal court discovery to be done).

[10]    The near dupe analysis used an extremely low 75% match rate to locate documents that have duplicate content but are not necessarily exact duplicates.

failed, the parties refiled their motions, which were still pending when the special master was appointed in July 2019. In March 2019, Judge Granger did, however, grant Vail Health's motion to amend to assert a new counterclaim. Judge Granger also granted Plaintiffs' motion to amend,[11] which included a state antitrust claim, but that order was issued *after* the parties had briefed Defendants' motion for partial summary judgment on the prior Amended Complaint. Over Plaintiffs' objections,[12] Judge Granger did not require Defendants to refile their summary judgment motion on the then-operative Second Amended Complaint, which he now recognizes was a mistake.[13]

In the meantime, on May 28, 2019, Judge Granger reversed his decision on Plaintiffs' motion to amend, denying it based on "delay,"[14] (although discovery still remains open in the state court action). Because the state court declined to hear the antitrust claim, on July 17, 2019, Plaintiffs filed this action here. When Plaintiffs' informed the state court of the filing the following day, the court gladly passed the ball, saying that "if the antitrust had been filed in Federal Court, it's not before me. It's a Federal issue…."[15] With the issuance of the order denying Plaintiffs' motion to amend,[16] the proposed Second Amended Complaint became a nullity having no legal effect. Three days later, Judge Granger issued an order on Defendants' summary judgment motion, which solely addressed the (proposed and inoperative) Second Amended Complaint. [17] Given that the proposed Second Amended Complaint is a

---

11    Ex. 5 [Order granting Mot. to Amend].
12    Ex. 6 [Pls.' Statement]; Ex. 7 [Pls.' Mot. for Leave to Dismiss SJ Mot.].
13    Ex. 8 at 7, lines 4-6 [July 18, 2019 Tr.]; Ex. 9 at 10, lines 1-18 [Aug. 22, 2019 Tr.].
14    Ex. 10 [Order denying Mot. to Amend].
15    Ex. 8 at 6, lines 5-6 [July 18, 2019 Tr.].
16    Ex. 10 [Order denying Mot. to Amend].
17    Ex. 11 [Summ. J. Order on inoperative 2d Am. Compl.].

nullity,[18] the summary judgment order is a nullity as well.

In August 2019, Defendants filed a motion to dismiss on procedural grounds—that is, Plaintiffs did not identify claims from the (proposed and inoperative) Second Amended Complaint in a status report.[19]  Through this back door attempt, Defendants sought to dismiss Plaintiffs' state antitrust claim *with prejudice,* likely so that it could assert here that Plaintiffs' antitrust claim was already decided.  The state court rightly refused to do so, and instead dismissed the claims in the proposed Second Amended Complaint *without prejudice* to correct the confusion caused by the court's competing orders.[20]  So as of this filing, Defendants' two motions to dismiss with prejudice have been adversely decided against them.[21]

Michael Shannon and Nicholas Brown who were named in the proposed Second Amended Complaint also filed a motion to dismiss with prejudice on the same grounds.  The state court granted Shannon and Brown's motion in part, dismissing the claims against them but *without* prejudice,[22] which is contrary to Vail Health's representation that it was *with* prejudice.[23]  Although Shannon and Brown's motion was unnecessary given the Court's denial of the motion to amend—that is, they were not a party to the case—the state court awarded certain costs under C.R.S. § 13-16-122 (over Plaintiffs' objections) because Shannon and Brown's motion to dismiss was granted in part.  In other words, the state court held Plaintiffs' accountable for costs even though the

---

[18]     Ex. 9 at 15-16, lines 1-25, at 17, lines 1-8 [Aug. 22, 2019 Tr.].

[19]     Ex. 12 [Mot. to Dismiss].

[20]     Ex. 13 [Order on Mot. to Dismiss].

[21]     *See id.*; Ex. 1 [Order on Mot. to Dismiss].  Plaintiffs filed a motion to dismiss the Amended Counterclaim, but it was denied on the basis of a factual dispute.  Ex. 16 [Order on Mot. to Dismiss Counterclaim].

[22]     *Compare* Ex. 14 [Mot. to Dismiss] *with* Ex. 15 [Order without prejudice].

[23]     Def.'s Mot. at 6.

procedural conundrum was caused by the state court's reversal of its order granting Plaintiffs' motion to amend.

On July 18, 2019, the state court judge appointed a special master to address discovery issues. Although there is currently a March 13, 2020 discovery cut-off date, a hearing with the state court on February 18, 2020 indicates that the discovery cut-off may be extended to late spring, early summer 2020. There is substantial discovery yet to be completed related to Vail Health's amended counterclaim that dates back to 2012. Given the number of open discovery issues, including Vail Health's failure to produce and preserve relevant documents, the state court has not yet set a trial date. So the state court action is not nearly as far along as Vail Health represents.

Finally, Vail Health highlights certain decisions by the special master in the state action, which are immaterial to Vail Health's motion. Although it should be unnecessary to do so, Plaintiffs feel compelled to address the bullet points:

- The September 12 Order relates to a review of Winninger's computer in 2017 by David Penrod before the state court action was filed. Penrod reviewed the system's activity logs using forensic tools but created no reports. The special master ordered Penrod to create the reports, which he produced along with the native files of the logs. Dissatisfied with what the logs show, Plaintiffs agreed to allow the independent expert to review the same logs and produce the same reports.

- In December 2018, Plaintiffs filed a protective order before Schoenthaler's deposition and properly declined to answer basically two questions. The special master ordered Schoenthaler to answer the questions, which he did in a deposition that lasted no more than 10 minutes.

- Plaintiffs also appropriately objected to certain discovery based on Judge Gannett's prior rulings that only overlap patients between Sports Rehab and Vail Health were relevant. The special master reversed that decision, requiring Plaintiffs to produce all patient information, which explains the orders issued on November 4, 2019.

Finally, Vail Health focuses on the documents that Winninger had when she was an employee of RPC-Vail/Proaxis, which operated the physical therapy operations under the trade name Howard Head Sports Medicine.  Winninger was never an employee of Howard Head (a trade name) or Vail Health.  The documents are comprised of documents created or obtained by her former employer, RPC-Vail/Proaxis, not Vail Health, including hundreds of publicly-available articles, close to 6,000 images of exercises, and hundreds of protocols and exercise programs given to thousands of patients, physical therapists, and doctors around the world.  The files also contained a small percentage of documents that included patient information, which Plaintiffs will prove were not properly maintained or stored.  Notably, the summary judgment order that Vail Health relies so heavily on already addressed these documents:

> Defendants assert that Ms. Winninger also took files without permission when she left Howard Head.  In reviewing the testimony of Ms. Winninger offered by Defendants in support, Ms. Winninger testified that Proaxis employees took their files and protocols when they left, clarified that she worked for Proaxis, not Vail Health, and that she did not know what is on Vail Health servers, because she never worked for Vail Health.  The Court finds that Defendants have neither established an absence of a triable issue on this Count nor demonstrated that the alleged statement is true.[24]

Correspondingly, the special master has issued multiple orders requiring Vail Health to do the following:

- ▪ On August 22, 2019, Vail Health was ordered to provide Rule 26(a)(1) disclosures related to the 2012 documents; it did not adequately do so. On February 10, 2020, the special master ordered Vail Health's compliance with its August 22 Order.

- ▪ On October 31, 2019, Vail Health was ordered to supplement its Rule 26(a)(1) disclosures with respect to its original claims.

---

[24]   Ex. 11 at 19 [Order on Summ. J. on inoperative 2d Am, Compl.].

▪   On November 4, 2019, Vail Health was ordered to provide information as to the names of witnesses that had information relevant to certain specified topics.

▪   On November 4, 2019, Vail Health was ordered to produce documents from its files that "matched" the documents produced by Cimino and Winninger.  Vail Health was only able to produce a small fraction of the documents that it claims it purportedly owns, created, and maintains either as trade secrets or confidential information.

▪   On November 4, 2019, Vail Health was ordered to answer an interrogatory detailing the purported trade secrets at issue with respect to the 2012 Winninger documents.

▪   On November 4, 2019, Vail Health was ordered (along with the other parties) to review its confidentiality designations.  In doing so, the 4,000 documents from 2012 that Vail Health initially claimed were its trade secrets on November 27, 2019 (even though many were copyrighted by RPC-Vail/ Proaxis), were ultimately reduced to no trade secrets by January 2020

▪   On January 16, 2019, Vail Health was ordered to supplement its Rule 26(a)(1) damages disclosure for all claims.

▪   On February 6, 2020, Vail Health was ordered to produce its outside counsel on the OCR investigation for deposition.

▪   On February 6, 2020, Vail Health was ordered again to supplement its answers to certain interrogatories, which the state court had previously ordered be done by May 2019 but was not.

▪   On February 10, 2020, Vail Health was ordered to produce documents related to the OCR investigation that had been referenced but not produced.

▪   On February 10, 2020, Vail Health was ordered again to supplement its Rule 26(a)(1) damages disclosure and produce relevant documents.

## <u>ARGUMENT</u>

## I.    THE COURT SHOULD NOT STAY DISCOVERY.

Vail Health makes the same arguments in its October 10 motion as it does in its January 30 motion—that is that discovery should be stayed until there is a ruling on Vail Health's motions under the Colorado River doctrine and Rule 12(b)(6).   Although a

motion to stay discovery may be within the Court's sound discretion,[25] the "[t]he right to proceed in court should not be denied except under the most extreme circumstances."[26] A stay is the exception rather than the rule.[27]   Further, Vail Health fails to mention this Court's long-standing admonition that "a stay of all discovery is generally disfavored in this District."[28]

Instead, Vail Health seeks this Court to consider the merits of its Rule 12(b)(6) motion in considering this stay motion,[29] which is inappropriate.   "[N]o element of the *String Cheese* factors requires that this court make a preliminary determination as to the likelihood of success of either the dispositive motion or the ultimate merits of this case"[30] when considering the appropriateness of a stay.   While courts are more inclined to stay discovery when addressing dismissal motions involving immunity or jurisdictional issues,[31] neither are at issue here.   Other instances in which a stay is often issued by

---

[25]     *Landis v. N. Am. Co.*, 299 U.S. 248, 254-255 (1936).
[26]     *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt.,* 713 F.2d 1477, 1484 (10th Cir. 1983).
[27]     *Gold, Inc. v. H.I.S. Juveniles, Inc.*, Civil Action No. 14-cv-02298-RM-KMT, at *2 (D. Colo. Apr. 8, 2015).
[28]     *Wason Ranch Corp. v. Hecla Mining Co.,* No. 07-cv-00267-EWN-MEH, 2007 WL 1655362, at *1 (D. Colo. June 6, 2007); *Chavez v. Young Am. Ins. Co.*, No. 06-cv-02419-PSF-BNB, 2007 WL 683973, at *2 (D. Colo. Mar. 2, 2007).
[29]     *See, e.g.,* Def.'s Mot. at 12 (arguing that "[t]he Court should not permit discovery to proceed on plainly frivolous claims when pending motions will resolve those claims entirely").
[30]     *Church Mut. Ins. Co. v. Coutu*, No. 17-CV-00209-RM-NYW, 2017 WL 3283090, at *3 (D. Colo. Aug. 2, 2017).
[31]     *See*, *e.g.*, *String Cheese Incident, LLC v. Stylus Shows, Inc.,* No. 02-cv-01934-LTB-PAC, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006) (finding a thirty-day stay of discovery appropriate while motion to dismiss for lack of jurisdiction was pending). *Burkitt v. Pomeroy*, No. 15-CV-02386-MSK-KLM, 2016 WL 696107, at *1 (D. Colo. Feb. 22, 2016) (staying discovery pending decision on Rule 12 motion involving immunity); *Morrill v. Stefani*, No. 17-CV-00123-WJM-KMT, 2017 WL 1134767, at *2 (D. Colo. Mar. 13, 2017) (staying discovery pending outcome of Rule 12 motion on personal jurisdiction and improper venue); *Sallie v. Spanish Basketball Fed'n*, No. 12-CV-01095-REB-KMT, 2013 WL 5253028, at *2 (D. Colo. Sept. 17, 2013) (same).

this Court is when the plaintiff moves for the stay, the plaintiff does not oppose the stay, or when the parties jointly move for a stay.  Again, those are not the facts here.

Defendants cite only two Colorado district court cases to assert that a stay is appropriate here:  *Davidson v. Bank of America, N.A.* and *String Cheese Incident, LLC v. Stylus Shows, Inc.*  In *Davidson,* however, the plaintiff did not oppose the stay and in *String Cheese,* the motion to dismiss was based on lack of personal jurisdiction.  The other three cases Vail Health cites are contrary to the general standards applied by this Court under *String Cheese.*  It is curious that Vail Health would rely on cases from other jurisdictions when *String Cheese* has been cited and discussed in over 500 cases issued by this Court.   In any event, the cases Vail Health cites are easily distinguishable.  In *Nankivil,* the Florida federal district court specifically noted that "it is helpful, and often necessary, to " take a preliminary peek" at any pending dispositive motions to see if the motions appear to be meritorious and " truly case dispositive." [32] This Court does not generally apply that standard,[33] particularly when the motion to stay discovery is decided by the magistrate and the district court judge decides the motion to dismiss.[34]  Similarly, the two other cases Vail Health's cites are not helpful either.[35]

---

[32]     *Nankivil v. Lockheed Martin Corp.*, 216 F.R.D. 689, 692 (M.D. Fla. 2003).

[33]     *See, e.g., Church Mut. Ins. Co. v. Coutu*, No. 17-CV-00209-RM-NYW, 2017 WL 3283090, at *3 (D. Colo. Aug. 2, 2017).

[34]     *See, e.g., Estate of Thakuri v. City of Westminster*, Civil Action No. 19-cv-02412-DDD-KLM, at *4 (D. Colo. Dec. 12, 2019) (stating magistrate should not review the merits of a motion to dismiss on a motion to stay because it "would essentially require adjudication of the dispositive motion at the same time, thus negating the entire purpose of the motion to stay and inappropriately usurping the District Judge's authority").

[35]     *See, Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2005) (applying a similar analysis as *Nankivil*); *Vivid Techs., Inc. v. Am. Scl. & Eng'g, Inc.*, 200 F.3d 795, 803-04 (Fed. Cir. 1999) (approving stay of discovery during claim construction because it involved an objective standard of review).

As is evident from Plaintiffs' proposed scheduling order, Plaintiffs have an interest in proceeding expeditiously with this matter. Vail Health asserts that Plaintiffs waited years before filing their antitrust suit in federal court but overlooks the fact that Plaintiffs filed a motion to amend their state complaint to add an antitrust claim in January 2019, which the state court ultimately denied. A month after the denial, Plaintiffs filed their claim in federal court, so there was no delay. And even if there was, this Court previously refused to issue a discovery stay even though a party waited five years to file suit.[36] Additionally, Plaintiffs already served discovery (which Vail Health has not responded to) and have sought an aggressive scheduling order. Finally, any further delay could result in degradation of evidence, including witness recollections.

Vail Health also claims that it likely will be burdened with "costly and protracted" discovery If a stay is not issued. Beyond citing *Twombly,* a Supreme Court case characterizing antitrust discovery as costly, Vail Health does not provide any specific arguments regarding how or why that may be so.[37] It acknowledges that some of the discovery in the state action is relevant here and that there will need to be additional discovery on issues not addressed in the state court action—namely, the relevant geographic and product markets and Vail Health's market power, as well as third-party discovery.[38] Vail Health also concedes that discovery is continuing in the state action,

---

[36]   *Gold*, *Inc.* v. *H.I.S. Juveniles*, *Inc.*, 14-cv-02298-RM-KMT, 2015 WL 1950900, at *2 (D. Colo. Apr. 8, 2015) (finding five-year delay between sending cease-and-desist letter and filing suit insufficient to rebut plaintiff's interest in proceeding with discovery); *Nelson v. Csajaghy*, Civil Action No. 14-cv-02617-CMA-KLM, at *2-3 (D. Colo. Mar. 24, 2015) (declining to issue stay even though plaintiffs have spent the past four years litigating against Sun River and its counsel, the Defendants here").

[37]   *Christou v. Beatport*, *LLC* No. 10-cv-02912-CMA-KMT, 2011 WL 650377, at *2 (D. Colo. Feb. 10, 2011) (finding *String Cheese* factor did not weigh in favor of stay when defendant did not explain why discovery would be "unusually expensive and protracted").

[38]   Def.'s Mot. at 10.

which belies the notion that discovery will be any more complex or expensive here, particularly when the parties have already engaged in two years of discovery.  And while discovery burdens all litigants, the burden on Vail Health here is not in any way out of the ordinary.  As this Court recognized in *Webb v. Brandon Express Inc.,*[39] "[p]arties always are burdened by discovery and the other requirements for the preparation of a case.  That is a consequence of our judicial system and the rules of civil procedure."[40]  There is no special burden warranting any further stay of discovery.

Finally, Vail Health does not maintain that the court lacks jurisdiction over Plaintiffs' claims or that it is entitled to immunity.  Rather, Vail Health simply moves to dismiss Plaintiff's claims for failure to state a claim under Rule 12(b)(6), which is not enough.[41]  Granting a stay of discovery under these circumstances would suggest that a stay is appropriate nearly any time a defendant files a motion to dismiss.[42]  That result would not only be contrary to the disfavored status of stays in this district,[43] but it would also make the court's docket thoroughly unpredictable and, hence, unmanageable.[44]  This case was filed in July 2018 and has not moved progressed at all.[45]  "It is not

---

[39]     No. 09-cv-00792-WYD-BNB, 2009 WL 4061827 (D. Colo. Nov. 20, 2009).

[40]     *Id.* at *2.

[41]     *See Nelson v. Csajaghy*, Civil Action No. 14-cv-02617-CMA-KLM, at *5 (D. Colo. Mar. 24, 2015) ("pendency of dispositive motions is fairly common and Defendants' arguments that they will be prejudiced if the case proceeds with discovery…does not outweigh the potential prejudice Plaintiffs may suffer.")

[42]     *SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, No. 11-cv-01468-WJM-BNB, 2011 WL 4018207, at *2 (D. Colo. Sep. 8, 2011) (noting, absent special circumstances, civil procedure rules presume discovery may proceed despite filing motion to dismiss).

[43]     *Bustos v. U.S.*, 257 F.R.D. 617, 623 (D. Colo. 2009).

[44]     *Sanaah v. Howell*, 08-cv-02117, 2009 WL 980383, at *1 (D. Colo. Apr. 9, 2009).

[45]     *Webb v. Brandon Express Inc.*, Civil Action No. 09-cv-00792-WYD-BNB, at *3 (D. Colo. Nov. 20, 2009) ("[T]he average time from the filing of a dispositive motion to its determination in this district exceeds six months. Consequently, essentially staying a case while the defendants' motions to dismiss are pending could substantially delay the ultimate resolution of the matter with injurious consequences.").

convenient for the Court to have stale cases cluttering its docket."[46]   Further, Vail Health's reference to the number of entries on state court docket is a *non sequitur.*   The case is not in any way close to being tried; fact discovery is still ongoing, expert discovery has not started, and dispositive motions still need to be filed and decided. The state court action therefore provides no reason to stay all discovery pending the resolution of Vail Health's motions to dismiss, particularly when here, as Vail Health itself acknowledges, this action involves antitrust issues that are not at issue in the state action and which will require additional party and third-party discovery.[47]   Moreover, no decision by the state court has any preclusive effect because there has been no final judgment on the merits.[48]

In contrast, public interest favors the prompt and efficient handling of cases, which augers in favor of this case proceeding, particularly when, like here, "Plaintiffs have alleged violations of the Sherman Act §§ 1 and 2 and specifically pleaded harm to the public."[49]   These violations are ongoing and therefore the public interest is best served by denying the stay.

Because Vail Health has failed to identify "extreme circumstances" to warrant a stay of discovery, this Court should deny that request.

---

[46]      *Patterson v. Santini*, Civil Action No. 11-cv-01899-RM-KLM, at *5 (D. Colo. Jan 31, 2014).

[47]      Def.'s Mot. at 11.

[48]      *Pomeroy v. Waitkus*, 183 Colo. 344, 350, 517 P.2d 396 (1973); *Rantz v. Kaufman*, 109 P.3d 132, 141 (Colo. 2005) (holding that a judgment on appeal is not even final and has no preclusive effect).

[49]      *Christou v. Beatport, LLC,* Civil Action No. 10-cv-02912-CMA-KMT (D. Colo. Feb. 10, 2011) (denying request for stay in antitrust case).   Over a year later, this Court denied the motion to dismiss the antitrust case addressing some of the very same arguments that Vail Health makes in its Rule 12(b)(6) motion.   *See Christou v. Beatport, LLC,* 849 F. Supp. 2d 1055 (D. Colo. 2012).

## II.    ALTERNATIVELY, THE COURT SHOULD ORDER PHASED DISCOVERY.

Vail Health concedes that the discovery in this case is not wholly duplicative of the discovery in the state court action.  Given that the Court in *Christou* did not issue a decision until a year after the stay of discovery was denied, Plaintiffs propose an alternative, phased discovery process that furthers this case along while the parties await the decision on Vail Health's motions to dismiss.  Plaintiffs' propose that written and third-party discovery proceed in the three specific areas:

- Relevant antitrust markets (geographic and product);

- The Steadman Clinic and Vail Health joint venture; and

- Vail Health's financial-related information requested in Plaintiffs' First Request for Production of Documents served in October 2019.

This should include Rule 26(a)(1) initial disclosures on these topics as well.

Other issues outside of those identified above, depositions, and expert disclosures could then be added to the discovery process after the Court denies Vail Health's motions to dismiss under Rule 12 motion the Colorado River doctrine.

In this way, the Court addresses the needs of proceeding expeditiously with the action and the public's interest in the harm associated with Vail Health's monopolistic conduct,  At the same time, the Court can limit the costs associated with discovery related to other discovery issues, depositions, and expert work.  This phased approach is consistent with the Court's approach in other cases.[50]

---

[50]    *See, e.g., Church*, 2017 WL 3283090; *Crumpton v. Finnin*, Civil Action No. 05-cv-00653-MSK-KLM, at *4 (D. Colo. Jan. 23, 2008) (despite granting 60-day stay, the Court allowed plaintiff limited discovery "to disputed factual issues regarding the actual events underlying [plaintiff's] claims").

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Vail Health's motion in its entirety, or alternatively, to allow discovery to proceed on a phased basis as proposed by Plaintiffs.

Dated:  February 20, 2020                     *s/ Alan L. Kildow*

Alan L. Kildow, MN# 0143133
790 Potato Patch Drive
Vail, CO 81657
Telephone: (970) 390-6675
E-mail:  alkildow@aol.com

Jesse Wiens, Colo. #33903
Fahrenholtz & Wiens LLC
100 West Beaver Creek Boulevard
Suite 236
Avon, CO 81620
Telephone: (970) 949-6500
E-mail:  fwlawyers@gmail.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 19, 2020, I served a true and correct copy of Plaintiffs' Opposition to Defendant's Renewed Motion to Stay Discovery Pending Adjudication of its Motions to Dismiss Under Rule12(b)(6) and Colorado River Doctrine, including exhibits, through the Court's e-filing system on:

> Janet A. Savage
> Shannon Stevenson
> Jacqueline V. Roeder
> Daniel Richards
> Davis Graham & Stubbs LLP
> 1550 17th Street, Suite 500
> Denver, CO  80202
> Counsel for Defendant

_s/ Alan L. Kildow_
Alan L. Kildow