# Exhibit 2



## CAPRI COURT REPORTING, INC.
*Certified Court Reporters*
0035 Bobcat Court
Carbondale, Colorado 81623
(970) 510-5131

---

DISTRICT COURT, EAGLE COUNTY, COLORADO
Case No. 2017CV030102

---

**DEPOSITION OF DAN DRAWBAUGH**
August 28, 2018

---

LINDSAY WINNINGER, an individual; and SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,

    Plaintiffs,

v.

DORIS KIRCHNER, an individual; and VAIL CLINIC, INC., d/b/a VAIL VALLEY MEDICAL CENTER, a Colorado nonprofit corporation,

    Defendants.

---

VAIL CLINIC, INC., d/b/a VAIL VALLEY MEDICAL CENTER, a Colorado corporation,

    Counter-Plaintiff,

v.

LINDSAY WINNINGER, an individual; and SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,

    Counter-Defendants.

---

VAIL CLINIC, INC., d/b/a VAIL VALLEY MEDICAL CENTER, a Colorado nonprofit corporation,

    Third-Party Plaintiff,

v.

DAVID J. CIMINO, an individual,

    Third-Party Defendant.

Page 2

```
 1                   Deposition taken pursuant to
 2       the applicable provisions of the Code of Civil
 3       Procedure of the State of Colorado and the Rules
 4       of the Supreme Court thereof, before Kelly
 5       Capri, CCR, RPR, and Notary Public for the State
 6       of Colorado, taken at Fahrenholtz & Wiens LLC,
 7       100 W. Beaver Creek Boulevard, Suite 236, Avon,
 8       Colorado, commencing at 9:31 a.m., on Tuesday,
 9       August 28, 2018.
10
11       PRESENT:
12            SONYA R. BRAUNSCHWEIG, ATTORNEY AT LAW
              5501 Irving Avenue South
13            Minneapolis, Minnesota 55419
              (612) 819-2304
14            sonya.braunschweig@gmail.com
                       and
15            ALAN L. KILDOW, ESQ.
              15204 Wildwood Road
16            Burnsville, Minnesota 55306
              (970) 390-6675
17            alkildow@aol.com
18                 appeared on behalf of the
                   Plaintiffs/Counter-Defendants;
19
              DAVIS GRAHAM & STUBBS LLP, by
20            JANET SAVAGE, ATTORNEY AT LAW
              1550 Seventeenth Street
21            Suite 500
              Denver, Colorado 80202
22            (303) 892-7341
              janet.savage@dgslaw.com
23
                   appeared on behalf of the
24                 Defendants/Counter-Plaintiff;
25
```

Page 3

1  PRESENT (Continued)

2  **MESSNER REEVES, LLP,** by
   **MICHELLE L. HARDEN, ATTORNEY AT LAW**
3  1430 Wynkoop Street
   Suite 300
4  Denver, Colorado 80202
   (303) 623-1800
5  *mharden@messner.com*

6       appeared on behalf of the Deponent.

7  ALSO PRESENT:

8      **DORIS KIRCHNER**
       **MICHAEL SHANNON**
9
                * * * * *
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 7

```
 1                P R O C E E D I N G S
 2                  (WHEREUPON, the deponent
 3                    was duly sworn.)
 4                  DAN DRAWBAUGH,
 5   having been first duly sworn, was examined and
 6   testified as follows:
 7                    EXAMINATION
 8                  BY MR. KILDOW:
 9       Q.   Good morning, Mr. Drawbaugh.  I'm Alan
10   Kildow; and I represent the plaintiffs in the
11   case, Lindsay Winninger and her company, which
12   is called Sports Rehab Consulting, LLC.
13                  As the plaintiffs, we're going
14   to ask you some questions today.  In the event
15   that you don't understand any of my questions,
16   which is highly unlikely, ask me to rephrase it
17   and I'll try to do that.  You can take a break
18   at any time you like, almost.
19       A.   Okay.
20       Q.   And after I conclude, I suspect that
21   Ms. Savage may have some questions for you as
22   well.
23                  First of all, we're not going
24   to go into an in-depth chronology of your
25   personal and professional background, but
```

Page 8

```
 1   currently you're the CEO of The Steadman Clinic;
 2   is that correct?
 3       A.   CEO of The Steadman Clinic and CEO of
 4   The Steadman Philippon Research Institute.
 5       Q.   Okay.  And how long have you maintained
 6   the position as the CEO of Steadman?
 7       A.   Since January 2015.
 8       Q.   And what about with -- could I just
 9   call it SPRI?
10       A.   Yes.
11       Q.   How long with SPRI?
12       A.   The same time period.
13       Q.   Okay.  You know Lindsay Winninger; is
14   that correct?
15       A.   Yes.
16       Q.   How did you get to know her?
17       A.   I met her probably -- probably close to
18   five years ago.  I was invited to Steadman
19   Philippon Research Institute's, SPRI, golf
20   outing, and she was in my foursome.
21       Q.   Do you currently consider her to be a
22   friend?
23       A.   Yes.
24       Q.   Do you socialize with her?
25       A.   Yes.
```

Page 9

```
 1       Q.   Is Lindsay Winninger a friend of your
 2   wife, Sarah?
 3       A.   Yes.
 4       Q.   Okay.  You understand that you're under
 5   oath, and I presume that there's nothing about
 6   your relationship -- your friendship with
 7   Ms. Winninger or that of your wife that would
 8   cause you to tell anything but the truth in this
 9   deposition; is that fair?
10       A.   That's fair.  That's correct.
11       Q.   Okay.  In your relationship with
12   Ms. Winninger, you understand that she has
13   friends other than you and Sarah in the Vail
14   Valley?
15       A.   Yes.
16       Q.   Would you characterize her as a
17   relatively sociable person?
18       A.   Yes.
19       Q.   Do you understand or have you come to
20   understand that Ms. Winninger at one point in
21   time up until about May of 2012 worked for an
22   outfit called Proaxis, which did business as
23   Howard Head?
24            MS. SAVAGE:  Object, calls for
25        speculation.
```

Page 10

```
 1   BY MR. KILDOW:
 2       Q.   You can go ahead and answer.
 3       A.   Oh, I can go ahead and answer.
 4                  I'm not aware of Proaxis.  I
 5   know she worked at Howard Head, but I don't know
 6   Proaxis personally.
 7       Q.   All right.  And did you know that
 8   sometime in 2012, she went to work for the
 9   United States Ski Team as a physical therapist?
10            MS. SAVAGE:  Again, object,
11        speculation.
12   BY MR. KILDOW:
13       Q.   You can go ahead and answer.
14       A.   I don't know if she was with the ski
15   team.  I know that she worked with Lindsey Vonn.
16       Q.   Okay.  And were you aware that at some
17   point in 2015, Ms. Winninger decided to leave
18   Lindsey Vonn as her full-time physical therapist
19   traveling the World Cup circuit and returned to
20   the Vail Valley and established her own physical
21   therapy services company?
22       A.   Yes.  It was -- I think it was 2015 I
23   knew that, late.
24       Q.   What's your understanding as to
25   Ms. Winninger's reputation as a physical
```

Page 95

```
 1   there that she was involved or implicated in the
 2   theft of patient files?
 3        A.   Not that I'm aware of.
 4        Q.   That's curious to me.  I mean, somebody
 5   is accused of a felony that could send them to
 6   prison for ten years, and nobody asked any
 7   questions about what proof --
 8        A.   No, I think --
 9             MS. SAVAGE:  Actually --
10   objection, lack of foundation.
11   BY MR. KILDOW:
12        Q.   You can answer.
13        A.   I think that Kelly and, you know -- I
14   think everyone believed that the, you know --
15   the ongoing process was that Vail Health was
16   doing their due diligence and was thorough on it
17   and it was true.
18        Q.   Did Ms. Kirchner lead you to believe
19   that there was a process that was ongoing and
20   that they were developing proof that she was
21   involved?
22        A.   Yes.
23        Q.   Was her words?
24        A.   Yes.
25        Q.   How about Mike Shannon, the same thing?
```

Page 96

```
 1        A.   Well, I always felt that Mike was
 2   hearing the same things that I was hearing.
 3        Q.   Where were they hearing the same things
 4   from?
 5        A.   Probably the team that was
 6   investigating it.
 7        Q.   And that would be their lawyers, right?
 8             MS. SAVAGE:  Objection; lack of
 9   foundation, calls for speculation.
10        A.   Well, I wasn't thinking -- I was
11   thinking Nico, Luke, probably the IT
12   organization, and the forensics group, is who
13   they would rely upon for information.
14   BY MR. KILDOW:
15        Q.   Did Ms. Kirchner ever tell you that
16   Lindsay Winninger had been involved in the
17   solicitation of Howard Head clients?  Did Doris
18   Kirchner ever tell you, Dan Drawbaugh, that
19   Lindsay Winninger had been involved in the
20   solicitation of Vail Health/Howard Head clients?
21        A.   I don't recall on that.
22        Q.   You don't recall.
23        A.   I know Marc Philippon told me that.
24        Q.   Marc told you that?
25        A.   Yeah, early on.
```

Page 97

```
 1        Q.   And you don't know where he heard that?
 2        A.   I don't know.  I'm thinking -- I'm
 3   thinking in a discussion, but -- my recollection
 4   is a discussion with Michael.
 5             MS. SAVAGE:  I'm sorry?
 6   BY MR. KILDOW:
 7        Q.   A discussion with what?
 8        A.   With Mike on it.
 9        Q.   With Michael Shannon?
10        A.   Yeah.
11        Q.   He told Marc Philippon that?
12             MS. SAVAGE:  Wait.  I'm not
13   understanding your answer.  I'm sorry,
14   Mr. Drawbaugh.  I'm having trouble
15   hearing you.
16             THE DEPONENT:  I understood Marc
17   called me, Janet, in December of --
18   this would have been -- or January, in
19   that time frame, of '15-'16; and that
20   there were issues with Lindsay -- and
21   I'm repeating myself -- but issues with
22   Lindsay on her hiring of David Cimino;
23   and that there could be patient -- so I
24   knew early on there could be patients
25   that were being recruited out of Howard
```

Page 98

```
 1   Head to Lindsay.  That's what I
 2   understood.  And Marc -- Marc was angry
 3   about that.
 4   BY MR. KILDOW:
 5        Q.   Did you --
 6             THE DEPONENT:  But you would have
 7   to talk to him on that.
 8   BY MR. KILDOW:
 9        Q.   Well, was it your opinion when you
10   heard that, that the solicitation of clients
11   would be a reputational issue, a business ethics
12   issue?
13        A.   Yes, definitely.
14        Q.   And if she did -- if she did that
15   solicitation, that would reflect negatively on
16   her reputation?
17        A.   Correct.
18        Q.   Would you look at Exhibit 87 in your
19   book, and turn to -- turn to page 9.  And in the
20   lower right-hand corner, there are Bates
21   numbers, and this is SRC 067.  And I'd like you
22   to focus on paragraph 37.  It says, "SRC and
23   Cimino have, on information and belief,
24   systematically approached and solicited (based
25   on the use of VVMC/Howard Head confidential
```

Page 239

1  MS. HARDEN: All right. I would
2  ask that we go off the record, Kelly,
3  and you compute how much deposition
4  time we had today, how much actual
05:22 5  testimony time, so that the parties
6  will have that. And I would like to
7  have that information as well.
8  We'll handle signature for
9  Mr. Drawbaugh. You can send the
05:22 10  deposition to me, and I will handle
11  signature with him, and then we'll get
12  it back.
13  MS. SAVAGE: Did you send me an
14  e-mail, Michelle, about Al Perkins.
05:22 15  MS. HARDEN: I did. And it's up
16  to you-all, but I think we can go off
17  the record.
18  (WHEREUPON, the deposition
19  concluded at 5:22 p.m.
20  on this date,
21  August 28, 2018.)
22  * * * * *

Page 240

1  STATE OF COLORADO  )
                     )
2  COUNTY OF E A G L E  )

3  I, KELLY CAPRI, Notary Public
4  for the State of Colorado, a Certified Court
5  Reporter and Registered Professional Reporter,
6  do hereby certify:
7  That previous to the
8  commencement of the examination of the deponent,
9  the deponent was duly sworn to testify the whole
10  truth concerning the matters herein;
11  That the foregoing deposition
12  transcript was reported stenographically by me,
13  was thereafter reduced to typewriting under
14  my personal direction, and constitutes a true
15  record of the testimony given and the
16  proceedings had;
17  That the said deposition was
18  taken before me at the time and place specified;
19  That the said deposition was
20  adjourned as stated herein;
21  That the reading and signing by
22  the deponent of the deposition transcript was
23  agreed upon as stated herein;
24  That I am not a relative or
25  employee or attorney or counsel, nor a relative

Page 241

1  or employee of such attorney or counsel for any
2  of the parties hereto, nor interested directly
3  or indirectly in the outcome of this action.
4  IN WITNESS WHEREOF, I do
5  hereunto set my hand and affix my seal of office
6  at Carbondale, Colorado, on September 4, 2018.

10  _____
    Kelly Capri, CCR, RPR
11  Notary Public for the State of Colorado
    My commission expires: 9/15/2020
12
    RPR Certificate No. 021469

Page 242

1  CERTIFICATE OF DEPONENT
   (Disregard if signature is waived)
3  I have read my deposition, and the same is
4  true and accurate, save and except for changes
5  and/or corrections, if any, as indicated by me
6  on the Errata Sheet hereof.
7  Errata Sheet(s) Attached [ ]  No Changes [ ]

9  _____
10  DAN DRAWBAUGH

11  SUBSCRIBED AND SWORN to before me this _____
12  day of _____, 2018.
13  My commission expires: _____

15  _____
    Notary Public
16  _____
17  Street Address
18  _____
    City, State, Zip

19  Re: *Winninger v. Kirchner, et al.*
20  Deposition of: DAN DRAWBAUGH
    Date of Deposition: August 28, 2018
21  Reported By: Kelly Capri, CCR, RPR
22  Please Return the Executed Certificate to:
23  CAPRI COURT REPORTING
    0035 Bobcat Court
24  Carbondale, Colorado 81623
    (970) 510-5131
25  Kelly@CapriCourtReporting.com