# Exhibit 3

Transcript of the Testimony of:
# Marc Philippon, M.D.

**Date:** September 27, 2018

Siraaj Al-Baaj v. Doris Kirchner, et al.

Case No. 2017CV030102



14143 Denver West Parkway, Suite 100  •  Golden, Colorado 80401
(303) 202-0210 • contact@milehighreporting.com
www.milehighreporting.com

Deposition of:  Marc Philippon, M.D. - September 27, 2018
Siraaj Al-Baaj v. Doris Kirchner, et al.

DISTRICT COURT, EAGLE COUNTY, STATE OF COLORADO
Case No. 2017CV030102, Division 4

_____

DEPOSITION OF MARC PHILIPPON, M.D.
September 27, 2018

_____

LINDSAY WINNINGER, an individual, and SPORTS REHAB
CONSULTING LLC, a Colorado limited liability company,

          Plaintiffs,

v.

DORIS KIRCHNER, an individual, and VAIL CLINIC, INC.
D/B/A VAIL VALLEY MEDICAL CENTER, a Colorado nonprofit
corporation,

          Defendants.

_____

VAIL CLINIC, INC. D/B/A VAIL VALLEY MEDICAL CENTER, a
Colorado nonprofit corporation,

          Counter-Plaintiff,

v.

LINDSAY WINNINGER, an individual, and SPORTS REHAB
CONSULTING, LLC, a Colorado limited liability company,

          Counter-Defendants.

_____

VAIL CLINIC, INC., D/B/A VAIL VALLEY MEDICAL CENTER, a
Colorado nonprofit corporation,

          Third-Party Plaintiff,

v.

DAVID J. CIMINO, an individual,

          Third-Party Defendant.

_____

Deposition of:  Marc Philippon, M.D. - September 27, 2018
Siraaj Al-Baaj v. Doris Kirchner, et al.

2

1            PURSUANT TO NOTICE, the deposition of

2    MARC PHILIPPON, M.D., called for examination by the

3    Defendants herein, was taken at DoubleTree by Hilton,

4    2211 N. Frontage Road, Vail, Colorado 91657, commencing

5    at 3:46 p.m., on Thursday, September 27, 2018, before

6    Aimee S. Reisinger, a Registered Professional Reporter

7    and Notary Public in and for the State of Colorado.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Deposition of:  Marc Philippon, M.D. - September 27, 2018
Siraaj Al-Baaj v. Doris Kirchner, et al.

3

```
 1    APPEARANCES:
 2            SONYA BRAUNSCHWEIG, ESQ.
              5501 Irving Avenue South
 3            Minneapolis, MN 55419
              612-819-2304
 4            sonya.braunschweig@gmail.com
                   and
 5            ALAN L. KILDOW, ESQ.
              15204 Wildwood Road
 6            Burnsville, MN 55306
              970-390-6675
 7            akildow@aol.com
 8               For the Plaintiff and Counter-Defendants
                    Winninger and Sports Rehab Consulting
 9
              JANET A. SAVAGE, ESQ.
10            Davis Graham & Stubbs LLP
              1550 Seventeenth Street, Suite 500
11            Denver, Colorado 80202
              303-892-9400
12            janet.savage@dgslaw.com
13               For the Defendant Kirchner and Defendant
                    Counter-Plaintiff and Third-Party
14                  Plaintiff Vail Clinic d/b/a VVMC
15            JOHN W. MADDEN, III
              (Appearing telephonically)
16            The Madden Law Firm
              999 18th Street, Suite 1500
17            Denver, Colorado 80202
              303-436-1111
18            madden@themaddenfirm.com
19               For the Third-Party Defendant Cimino
20            MICHELLE L. HARDEN, ESQ.
              Messner Reeves LLP
21            1430 Wynkoop Street, Suite 300
              Denver, Colorado 80202
22            303-623-1800
              mharden@messner.com
23
                 For the Deponent
24
              ALSO PRESENT:  Doris Kirchner, Michael Shannon
25                  and Lindsay Winninger
```

Deposition of:  Marc Philippon, M.D. - September 27, 2018
Siraaj Al-Baaj v. Doris Kirchner, et al.

**6**

1      P R O C E E D I N G S
2          MARC PHILIPPON, M.D.,
3   having been sworn by the Reporter, testified as
4   follows:
5          EXAMINATION
6   BY MS. SAVAGE:
7      Q.  Good afternoon, Dr. Philippon.  I'm
8   Janet Savage.
9      A.  Good afternoon.
10     Q.  We met once before.
11     A.  Yep.
12     Q.  Maybe not quite a year ago.
13     A.  Yep.
14     Q.  Okay.  As you know, we're in a case where
15  Lindsay Winninger has -- and SRC has sued Vail Health
16  Hospital and Doris Kirchner.  And so you're here today
17  to answer some questions concerning this case.  Okay?
18     A.  Yes.
19     Q.  And because of the nature of this
20  deposition, I'm not going to get into an extended
21  discussion of your background.  Also, in the interest
22  of saving time, because it's -- I think it's 3:45, so I
23  want to keep this moving.
24          Can you tell me when you joined --
25          MR. KILDOW:  Excuse me, before we begin, I

**7**

1   know you're not a very busy guy.  No, I'm not.
2          THE DEPONENT:  No, I'm not.
3          MR. KILDOW:  So I think that we should
4   determine the time parameters that we have to do your
5   deposition.
6          MS. SAVAGE:  Can you open the door,
7   please?
8          MR. KILDOW:  Where's Michelle?
9          MS. HARDEN:  I'm right here.
10          MR. KILDOW:  What's your time frame?
11          THE DEPONENT:  Well, ideally, I was going
12  to say I close up at 7.  But I'm late, so I can go as
13  long as you need me.  But hopefully by 7:30.
14          MR. KILDOW:  Be careful, you don't have
15  that much time.
16          THE DEPONENT:  I mean, hopefully by 7:30,
17  that would be great.  But I understand you've got a lot
18  of stuff.
19          MR. KILDOW:  Well, we've got 7:30, and I
20  presume that we're going to do one sitting of this
21  deposition.
22          MS. HARDEN:  Correct.
23          MR. KILDOW:  And so since there are three
24  parties, I think we ought to divide the time up
25  equally, then.  Do we have an agreement on that?

**8**

1          MS. SAVAGE:  We don't.
2          MR. KILDOW:  We don't.
3          MS. SAVAGE:  Can we get started, please?
4          MR. KILDOW:  Okay.  You have no -- you
5   will not agree to divide the time?  So you're going to
6   use all the time?
7          MS. SAVAGE:  I don't plan on it.  But
8   you're using all the time right now, so let's not
9   delay, please.  It's already -- what time is it?  I
10  have 3:49.
11          MR. KILDOW:  Well, I think that dividing
12  the time would be fair and equitable.
13          MS. SAVAGE:  Okay.  Let's cross that
14  bridge when we get to it.  We're not there yet.  It's
15  already 3:49 and I haven't yet asked a question.
16          MR. MADDEN:  My questions will only take
17  about 15 minutes.
18          MS. SAVAGE:  Good.
19     Q.  (By Ms. Savage)  So can we get started,
20  Dr. Philippon?
21     A.  Yes.
22     Q.  When did you join The Steadman Clinic?
23     A.  March 1st, 2005.
24     Q.  And did you join specifically to do hip
25  surgeries?

**9**

1      A.  Yeah.  My specialty at the time was sports
2   medicine hip disorders.  So my expertise at University
3   of Pittsburgh was that, but I -- at the time was
4   still doing hip replacement, certain open procedures,
5   and so my emphasis was on the sports medicine/hip
6   disorders, but main focus was hip arthroscopy.
7      Q.  Okay.  And is that still true today?
8      A.  Today, I think I did my last total hip --
9   I don't remember the year, but I was in Switzerland was
10  my last total hip that I formally did probably at least
11  seven years ago, around that time.
12     Q.  Around 2011?
13     A.  Was my last formal total hip that I did.
14  It was not at VVMC.
15     Q.  It was not?
16     A.  It was not.  It was in Switzerland.
17     Q.  So what do you do now?
18     A.  Now I mainly do hip arthroscopy.  I do
19  joint preservation.  Sometime I'll do open hamstring
20  repair -- actually I have a lady from the White House
21  that wants me to do it, so I might do it.  I won't tell
22  you her name, but -- it's an open procedure.  I do a
23  few athletes with open hamstrings still.  But mainly
24  joint preservation through hip arthroscopy.
25     Q.  When did you first start working with

Deposition of:  Marc Philippon, M.D. - September 27, 2018
Siraaj Al-Baaj v. Doris Kirchner, et al.

---

**18**

1 Doris Kirchner about your role with Lindsay Winninger
2 at the Four Seasons?
3      A.  My role? Oh, boy.  Okay.  So I remember
4 we had a discussion with Doris/Ron Davis about rehab.
5 That was before Mr. Shannon was here.
6      Q.  I'm talking about the fall of 2015.  Do
7 you recall any discussions with Doris Kirchner about
8 Lindsay Winninger and the space at the Four Seasons?
9      A.  I have to say I don't remember specific of
10 that discussion.  Might have happened, but I don't
11 remember specifically.
12      Q.  Well, I'm not saying it did, I'm just
13 asking if you recall any discussion of that nature.
14      A.  I just remember meeting with Ron and Doris
15 at one point.
16      Q.  Okay.
17      A.  But it was not necessarily that topic.
18      Q.  Did you become aware at some point during
19 2015 that Lindsay Winninger had hired David Cimino to
20 work for her?
21      A.  I was made aware of it, but I don't
22 remember when.  I know -- actually, to be honest, I
23 don't remember when she hired him.
24      Q.  Did you become aware at some point that
25 David Cimino was working for SRC at Sports Rehab

---

**19**

1 Consulting at the same time as he continued to work at
2 the hospital?
3      MR. KILDOW:  I'm -- withdraw the
4 objection.  I'm not making an objection.
5      A.  So I'm aware of it now, but I can't say I
6 was aware of it back then because I don't think Lindsay
7 was discussing with me her business, per se.  When I
8 spoke with Lindsay, it's mainly for -- it was mainly
9 for patients.
10      So was I aware that David was working with
11 her at the same time as Howard Head?
12      Q.  (By Ms. Savage)  Yes.
13      A.  At -- in 2015?
14      Q.  Yes.
15      A.  That, I can't say.  But I know Mike told
16 me.  Mike Shannon told me.
17      Q.  But you don't remember when he told you
18 that?
19      A.  He told me that -- I know it was -- I
20 don't think it was in 2015.  I don't think so.
21      Q.  Okay.
22      A.  I think it was after that.  But Mike told
23 me.
24      Q.  So Dan Drawbaugh testified that you had
25 expressed concern about the business ethics of

---

**20**

1 Lindsay Winninger using Dave Cimino to work both for --
2 I'll call it SRC, Sports Rehab Consulting --
3      A.  Uh-huh.
4      Q.  -- at the same time as he was still
5 employed at the hospital.  Do you recall expressing
6 concern to him about this?
7      A.  Well, if Mike tells me that an employee of
8 Howard Head is working at a different clinic at the
9 same time and is concerned, I think it's -- I think
10 it's important for us to know.
11      Q.  Did you -- do you recall telling
12 Dan Drawbaugh this at any point in time, that you were
13 concerned about the business ethics?
14      A.  I wouldn't say the business ethic, per se.
15 But I'm concerned if Mr. Shannon tells me that an
16 employee of Howard Head is working at a different
17 clinic at the same time -- I don't know the details of
18 their contract.  That seems to me -- unless he's
19 moonlighting, maybe it's allowed.  But, you know, I
20 just feel that unless -- again, this was brought to my
21 attention, so it raised a flag for me.
22      Q.  Did Lindsay Winninger tell you that she
23 had hired David Cimino?
24      A.  I don't remember who told me, but I knew
25 he was working for her.

---

**21**

1      Q.  Okay.  Did anyone from SRC ever get in
2 touch with you to tell you that David Cimino had joined
3 SRC?
4      A.  Anybody from SRC.  I don't remember.
5      Q.  Are you saying that you don't recall
6 whether Lindsay Winninger told you that she had hired
7 David Cimino or that you recall she did not tell you
8 that?
9      A.  No, what I'm saying is that someone
10 probably told me.  I don't remember if it was Lindsay,
11 if it's Doris, Mike, I don't know who told me.  That's
12 what I mean.
13      Q.  Okay.  Did you become aware at some point
14 that there was an issue with David Cimino taking
15 hospital materials when he left the hospital, or while
16 he was still -- while he was working at SRC?
17      A.  Well, I'm aware of that now.  Now, when I
18 was made aware of that, I don't remember.
19      Q.  Okay.
20      (Deposition Exhibit 145 was marked for
21 identification.)
22      Q.  Dr. Philippon, I've handed you what --
23      MS. BRAUNSCHWEIG:  You don't have a copy?
24      MS. HARDEN:  Right here.
25      MS. SAVAGE:  I gave one for her to give to

---

Deposition of:  Marc Philippon, M.D. - September 27, 2018
Siraaj Al-Baaj v. Doris Kirchner, et al.

**174**

1    Q.  Now, has -- and Mr. Shannon in his
2  discussions with you -- and I think you testified to
3  this earlier today -- he said that one of the things
4  that Vail Health was waiting for in all this was the
5  forensics.  In other words, for some computer expert to
6  come back and say whether the downloaded files were
7  ever transferred to Ms. Winninger or not.  Do you
8  recall that?
9    A.  I recall that -- yeah, that part of the
10  investigation was that -- to comb the computer, yes.
11    Q.  Has Mr. Shannon or Ms. Kirchner or anybody
12  from Vail Health come back to you and said that
13  recently the court-appointed independent forensic
14  expert has come back with his analysis of
15  Ms. Winninger's computer and found that there are zero
16  Vail Health documents on it?
17    MS. SAVAGE:  Objection; lack of
18  foundation.
19    MR. KILDOW:  I'm just asking --
20    MS. SAVAGE:  You're trying to inject, once
21  again, false evidence into the record, Mr. Kildow.
22  It's inappropriate.
23    MS. BRAUNSCHWEIG:  Would you like me to
24  pull up the email?
25    MS. WINNINGER:  That's not false.

**175**

1    MS. SAVAGE:  You know what, let's pull up
2  the emails where you object to him actually doing the
3  right search.  Let's pull up those emails.
4    MS. WINNINGER:  We've got a few reports
5  here now.
6    MS. SAVAGE:  You need to stop it,
7  Ms. Winninger, or else you need to leave.  If you can't
8  control yourself, you need to leave.  Just like your
9  attorney will need to leave if he can't control
10  himself.
11    MR. KILDOW:  Let's focus --
12    MS. SAVAGE:  Show Dr. Philippon the email
13  where you object to having this expert do a search --
14    MS. WINNINGER:  A neutral one.
15    MS. SAVAGE:  -- of Ms. Winninger's
16  computer --
17    MS. WINNINGER:  A neutral one.
18    MR. KILDOW:  Lindsay.
19    MS. SAVAGE:  -- that uses near-dupe
20  information.  Go ahead.  Show Dr. Philippon that before
21  you inject false information into the record.
22    MR. KILDOW:  That, Ms. Savage, is an
23  absolute, utter, bald-faced lie.
24    MS. SAVAGE:  No, what you're saying is an
25  absolute, bald-faced lie.  Don't you dare call me a

**176**

1  liar.
2    MR. KILDOW:  I just did.
3    MS. SAVAGE:  Yes.  And you know what, I'm
4  going to have this again brought up to the Court, your
5  abusive and bullying tactics.  We need the search done
6  correctly, and you are obstructing it again.
7    MR. KILDOW:  I'm not going to get into the
8  whys and the wherefores of that, which is false.
9    Q.  (By Ms. Savage)  But did anybody tell you
10  that, Hey, we there didn't find anything on
11  Ms. Winninger's computer?
12    MS. SAVAGE:  Objection; lack of
13  foundation.  Mischaracterizes the evidence.
14    A.  Mike or Doris never told me that, no.
15    Q.  (By Mr. Kildow)  And one of the things --
16  did Dan Drawbaugh, or did -- let me ask this -- strike
17  that.  Let me ask it this way.
18    Did Mike Shannon ever say that
19  Lindsay Winninger had been out there soliciting Vail
20  Health clients away from Vail Health?
21    A.  I don't think Mike has ever told me that
22  directly.
23    Q.  Did Dan Drawbaugh tell you that, that that
24  was the allegation?
25    A.  I -- I don't remember that.  I don't think

**177**

1  Dan told me that directly like that.
2    Q.  Did -- in looking at the complaint, did
3  you ever come to the understanding that Vail Health was
4  alleging that Ms. Winninger had solicited Vail Health
5  patients away from Vail Health?
6    A.  I mean, one thing that I know is because
7  David was working at the clinic, Lindsay's clinic, of
8  course, it's like -- I remember one time there was a
9  patient of Howard Head who went to Lindsay's clinic,
10  and I think Mike told me about that after.  It was a
11  patient at Howard Head that went to Lindsay's clinic.
12  And that was not the right thing to do.
13    Q.  All right.
14    A.  But I remember one patient.  He told me
15  about one patient like that.
16    Q.  Do you remember the name of the patient?
17    A.  No, I don't.
18    Q.  Okay.  Has anybody ever told you that now
19  that they have had two and a half years since this
20  occurred, that they have not been able to identify --
21  Mr. Shannon or Ms. Kirchner or Nico Brown or Luke
22  O'Brien -- none of them have been able to identify a
23  single patient of Vail Health that was solicited away
24  by Lindsay Winninger?
25    MS. SAVAGE:  Object; lack of foundation.

Deposition of:  Marc Philippon, M.D. - September 27, 2018
Siraaj Al-Baaj v. Doris Kirchner, et al.

**186**

1  behalf.  Some surgeons don't pay as much attention to
2  it, but, for me, it's very focused, yes.
3          MS. SAVAGE:  I have nothing else.  Thank
4  you.
5          MS. HARDEN:  We'll handle signature.
6          (The deposition concluded at 8:14 p.m.
7  after 3 hours 53 minutes on the record.)
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**187**

1                  AFFIDAVIT
2          I have read my deposition and it is true
3  and accurate, except for any changes or corrections now
4  indicated by me on the Amendment sheet.
5          Amendment sheet attached   ( )
6          No changes to testimony    ( )
7
8  _____
   MARC PHILIPPON, M.D.
9  SUBSCRIBED AND SWORN to before me this
10 date, _____.
11
12 My commission expires _____
13
   _____
   NOTARY PUBLIC
14
   _____
15 STREET ADDRESS
16 _____
   CITY, STATE, ZIP
17
18
19
   Return to:  MILE HIGH COURT REPORTING & VIDEO, INC.
20         14143 Denver West Parkway
   Suite 100
21         Golden, Colorado 80401
22
23
24
25

**188**

1                  CERTIFICATE
2          I, Aimee S. Reisinger, RPR, Notary Public of
3  the State of Colorado, certify that before the
4  deposition the witness was sworn by me to testify to
5  the truth, and that the foregoing is a true transcript
6  of the questions asked, testimony given, and
7  proceedings had.
8          I further certify that I am not related to
9  any party herein, nor their counsel, and have no
10 interest in the result of this litigation.
11
12
   _____
   Aimee S. Reisinger, RPR, CSR
13 My Commission expires 9/16/2020
   Notary No. 19964015065
14
15
16
17
18
19
20
21
22
23
24
25

Mile High Court Reporting and Video, Inc.  303-202-0210
contact@milehighreporting.com