# Exhibit 4



**CAPRI COURT REPORTING, INC.**
*Certified Court Reporters*
0035 Bobcat Court
Carbondale, Colorado 81623
(970) 510-5131

```
DISTRICT COURT, EAGLE COUNTY, COLORADO
Case No. 2017CV030102
```

**DEPOSITION OF MICHAEL SHANNON**
**VOLUME 1**
July 25, 2018

```
LINDSAY WINNINGER, an individual; and SPORTS
REHAB CONSULTING LLC, a Colorado limited
liability company,

        Plaintiffs,

v.

DORIS KIRCHNER, an individual; and VAIL CLINIC,
INC., d/b/a VAIL VALLEY MEDICAL CENTER, a
Colorado nonprofit corporation,

        Defendants.
```

```
VAIL CLINIC, INC., d/b/a VAIL VALLEY MEDICAL
CENTER, a Colorado corporation,

        Counter-Plaintiff,

v.

LINDSAY WINNINGER, an individual; and SPORTS
REHAB CONSULTING LLC, a Colorado limited
liability company,

        Counter-Defendants.
```

```
VAIL CLINIC, INC., d/b/a VAIL VALLEY MEDICAL
CENTER, a Colorado nonprofit corporation,

        Third-Party Plaintiff,

v.

DAVID J. CIMINO, an individual,

        Third-Party Defendant.
```

Page 2

1              Deposition taken pursuant to
2    the applicable provisions of the Code of Civil
3    Procedure of the State of Colorado and the Rules
4    of the Supreme Court thereof, before Kelly
5    Capri, CCR, RPR, and Notary Public for the State
6    of Colorado, taken at DoubleTree by Hilton Vail,
7    2211 North Frontage Road West, Vail, Colorado,
8    commencing at 2:22 p.m., on Wednesday, July 25,
9    2018.

10
     PRESENT:
11
         **BRIGGS AND MORGAN, P.A.,** by
12       **SONYA R. BRAUNSCHWEIG, ATTORNEY AT LAW**
         80 South Eighth Street
13       Minneapolis, Minnesota 55402-2157
         (612) 977-8400
14       *sbraunschweig@briggs.com*
                 and
15       **ALAN L. KILDOW, ESQ.**
         15204 Wildwood Road
16       Burnsville, Minnesota 55306
         (970) 390-6675
17       *alkildow@aol.com*

18           appeared on behalf of the
             Plaintiffs/Counter-Defendants;
19
         **DAVIS GRAHAM & STUBBS LLP,** by
20       **JANET SAVAGE, ATTORNEY AT LAW**
         1550 Seventeenth Street
21       Suite 500
         Denver, Colorado 80202
22       (303) 892-7341
         *janet.savage@dgslaw.com*
23
             appeared on behalf of the
24           Defendants/Counter-Plaintiff;

25

```
 1     PRESENT (Continued):

 2        THE MADDEN LAW FIRM, by
          JOHN W. MADDEN, III, ESQ.
 3        999 18th Street
          South Tower/Suite 1500
 4        Denver, Colorado 80202
          (303) 436-1111
 5        madden@themaddenfirm.com

 6            appeared on behalf of the Third-Party
              Defendant.
 7
       ALSO PRESENT:
 8
          LINDSAY WINNINGER
 9        DORIS KIRCHNER

10                     *   *   *   *   *
```

Page 5

1      P R O C E E D I N G S
2              (WHEREUPON, the deponent
3              was duly sworn.)
4           MR. KILDOW:  Good afternoon,
02:22  5   Mr. Shannon.  I'm Alan Kildow.  I
6   represent the plaintiffs in this case.
7              MICHAEL SHANNON,
8   having been first duly sworn, was examined and
9   testified as follows:
10              EXAMINATION
11           BY MR. KILDOW:
12      Q.   You've been deposed before --
13      A.   I have.
14      Q.   -- I think.  So I'm not going to go
02:22  15  through the litany of rules for depositions.
16              I am going to ask you a few
17  questions about your personal background, but
18  I'm not going to ask you where you went to
19  junior high.  I've done a little bit of
02:23  20  research, and so I understand a little bit about
21  your background.  So we'll try to get through
22  that as quickly as we can.
23              You went to the University of
24  Wisconsin as an undergrad?
02:23  25      A.   I did.

Page 6

1      Q.   When did you graduate?
2      A.   When, did you say?
3      Q.   When did you graduate?
4      A.   1980.
02:23  5      Q.   In '80.  And did you have a major?
6      A.   Business.
7      Q.   Okay.  You got a graduate degree and an
8   MBA from the Kellogg School at Northwestern
9   University, right?
02:23  10     A.   I did.
11     Q.   And you have been in business with
12  George Gillette, and you've been a banker with
13  First Chicago; is that right?
14     A.   In the past, yes.
02:23  15     Q.   Yes.  And you have been an investment
16  banker with First Chicago as well?
17     A.   No.
18     Q.   No?
19     A.   Just as a commercial banker.
02:23  20     Q.   A commercial banker.
21              And you are in private equity
22  at this point in time?
23     A.   Right.
24     Q.   And the name of that company is KSL,
02:24  25  correct?

Page 7

1      A.   KSL Capital Partners.
2      Q.   Okay.  And just for the record, could
3   you just briefly describe what equity
4   investment -- private equity is?
02:24  5      A.   We invest in travel and leisure
6   businesses throughout the world.
7      Q.   How long have you been doing that?
8      A.   Let's see.  Directly or indirectly
9   since 1992.
02:24  10     Q.   You serve on other boards of directors
11  for corporations?
12     A.   I do.
13     Q.   And you also serve on a number of
14  nonprofits; is that right?
02:24  15     A.   I do.
16     Q.   One of them is the University of
17  Wisconsin Foundation; is that right?
18     A.   Yes, University of Wisconsin
19  Foundation.
02:24  20     Q.   What is that?
21     A.   University of Wisconsin Foundation and
22  Alumni Association, I think, is the full name.
23     Q.   You are --
24     A.   -- I'm the vice chairman of that.
02:25  25     Q.   Excuse me.  I didn't mean to interrupt.

Page 8

1      A.   Yes.  I'm sorry.  Yes.
2      Q.   You are a member of the Horatio Alger
3   Association of Distinguished Americans; is that
4   correct?
02:25  5      A.   Yes.
6      Q.   Have you read any of Horatio Alger's
7   books?
8      A.   No.  They keep sending them to me.
9   Just excerpts.
02:25  10     Q.   Well, I have.  You've never read Ragged
11  Dick, Dick (sic) the Match Boy?  No?
12     A.   No.
13     Q.   Struggling Up?
14     A.   No.
02:25  15     Q.   No.
16              What do you understand the
17  major personal characteristics of Horatio
18  Alger's characters -- his primary characters
19  have been?
02:25  20           MS. SAVAGE:  Objection, calls for
21       speculation.
22     A.   I don't know.
23  BY MR. KILDOW:
24     Q.   You don't know?
02:25  25     A.   I could look --

Page 69

1  wasn't there?
2        MS. SAVAGE:  Objection, lack of
3     foundation.
4     A.   I've had numerous discussions with
5  Ms. Kirchner about this case.
6  BY MR. KILDOW:
7     Q.   Okay.  And did you ever talk about
8  Ms. Winninger's alleged theft of patient files
9  with Ms. Kirchner when your attorney wasn't
10 there?
11       MS. SAVAGE:  Object, lack of
12    foundation.
13    A.   I don't recall.  I believe they were
14 set up -- meetings, as the board chair, set up
15 with legal counsel.
16 BY MR. KILDOW:
17    Q.   Well, you know, Mr. Shannon, since
18 you're from Wisconsin, and Wisconsin people are
19 so honest, don't you think that if you alleged
20 that somebody committed a crime that could land
21 them in jail, don't you think you'd remember
22 that?
23       MS. SAVAGE:  I'm going to object,
24    lack of foundation.  It also calls for
25    speculation and vague.

Page 70

1     A.   Please repeat the question.
2  BY MR. KILDOW:
3     Q.   Sure.  If a person alleges that
4  somebody committed a crime and told somebody
5  that this person committed a crime, wouldn't
6  that be something you'd remember?
7        MS. SAVAGE:  Objection, lack of
8     foundation.  It also calls for
9     speculation.
10    A.   We've had numerous discussions about
11 this case with our counsel, some of which
12 Ms. Kirchner has participated in.
13 BY MR. KILDOW:
14    Q.   Okay.  And my question is:  Did you
15 have any conversation about the alleged theft of
16 patient files from Vail Health with Ms. Kirchner
17 when your attorney was not there?
18    A.   I don't recall whether we did.  We
19 tried to have counsel related to this matter
20 each time we had a conversation about it.
21    Q.   Did you do anything to determine
22 whether Ms. Winninger or her company solicited
23 Vail Health or Howard Head clients?
24    A.   Could you please repeat that?
25    Q.   Sure.

Page 71

1        MR. KILDOW:  You can read it back
2     for him.
3           (WHEREUPON, the question
4              was read by the court
5              reporter.)
6     A.   We've had numerous discussions with our
7  legal counsel related to the allegations in this
8  complaint, and they're privileged.
9  BY MR. KILDOW:
10    Q.   Okay.  But I'm asking you:  What did
11 you do, yourself, personally to determine
12 whether Ms. Winninger or her company solicited
13 clients from Vail Health or Howard Head's
14 physical therapy operation?
15    A.   The allegations that are in the
16 criminal complaint --
17       MS. SAVAGE:  It's not a criminal
18    complaint.
19    A.   I'm sorry, the complaint rather.  I'm
20 sorry.
21          The allegations in the
22 complaint were discussed with our legal counsel
23 numerous times.  I do not live in the same town;
24 and so typically, they were phone calls and
25 those types of things.  And I relied on my legal

Page 72

1  counsel to investigate the facts.
2  BY MR. KILDOW:
3     Q.   Okay.  So as you sit here today, can
4  you identify any Howard Head clients that
5  Lindsay Winninger or her company, Sports Rehab
6  Consultants, solicited away from Howard Head?
7     A.   I'm not familiar with the individual
8  patient names.  I am not privy to those names.
9     Q.   Do you know whether any patients or
10 clients were solicited away from Howard Head by
11 Lindsay Winninger or her company?
12    A.   I'm not aware of any specific patient
13 information.
14    Q.   Now, you're aware, aren't you, since
15 you approved the complaint, that Vail Health has
16 countersued Ms. Winninger and her company for
17 soliciting Howard Head clients?
18    A.   I'm aware that we have countersued, and
19 I read the allegations at the time and reviewed
20 them with my legal counsel.
21    Q.   So you are aware that Vail Health has
22 alleged that Ms. Winninger solicited clients
23 from Howard Head; is that true?
24    A.   I'm aware of the counterclaim and read
25 that at the time.  I would have to review each

Page 73

1  of the facts and each of those counterclaims
2  that were filed there.
3      Q.   And have you done that?
4      A.   Pardon?
5      Q.   Have you reviewed any of -- each of
6  those facts?
7      A.   At the time they were filed, I read the
8  counterclaim and was briefed by legal counsel on
9  the facts of the case.
10     Q.   But the counterclaim doesn't say which
11 clients were solicited or identify any client by
12 name; isn't that true?
13     A.   I'm not aware of individual names of
14 any clients that Ms. Winninger had, beyond my
15 friends, like, the Resnicks, who have used them
16 in the past.
17     Q.   Yeah.  And are you aware of the fact
18 that Vail Health was deposed as a corporation
19 recently on certain topics?  Are you aware of
20 that?
21     A.   I'm not aware of any deposition of Vail
22 Health as a corporation.  I'm not sure what the
23 specifics of the case are.
24     Q.   Well, there is a procedure by which
25 corporations can be required to designate

Page 74

1  individuals to testify on behalf of the
2  corporation.  And that was done in this case.
3      A.   Okay.
4      Q.   Were you aware of that?
5      A.   I'm not aware of the specifics you're
6  referring to.
7      Q.   And the two individuals that were named
8  were Luke O'Brien and Nico Brown.  Are you aware
9  of that?
10          MS. SAVAGE:  Objection, lack of
11      foundation.
12     A.   I'm not aware.  I'm not aware of the
13 whole thing you just mentioned.
14 BY MR. KILDOW:
15     Q.   Are you aware that when they testified,
16 they could not identify a single Howard Head
17 client that had been solicited by Lindsay
18 Winninger?  Are you aware of that?
19     A.   I'm not aware of --
20          MS. SAVAGE:  Object, lack of
21      foundation, and also asked and
22      answered.
23     A.   I'm not aware of the testimony.
24 BY MR. KILDOW:
25     Q.   You're not aware of the testimony?

Page 75

1      A.   No.
2      Q.   Well, they testified that they couldn't
3  identify any solicited clients.  You're not
4  aware of that?
5          MS. SAVAGE:  I'm going to object;
6      lack of foundation, mischaracterizes
7      the testimony.
8      A.   Yeah, I'm not aware of the testimony;
9  so I can't comment on it.
10 BY MR. KILDOW:
11     Q.   You know, it's been 2 1/2 years since
12 Ms. Savage here sent a letter to Ms. Winninger
13 alleging that she was soliciting files -- or
14 soliciting clients.  After 2 1/2 years of being
15 unable to identify a single client that was
16 solicited, when is Vail Health going to come up
17 with some evidence to prove that allegation?
18          MS. SAVAGE:  Is there a question
19      there?
20          MR. KILDOW:  Yeah.
21          MS. SAVAGE:  Well, it sounds like
22      an argument to me.  So why don't you
23      ask a proper question of the witness.
24 BY MR. KILDOW:
25     Q.   Would you answer the question?

Page 76

1          MS. SAVAGE:  Can you answer that
2      question as it's phrased?
3          THE DEPONENT:  I can't.
4  BY MR. KILDOW:
5      Q.   You've alleged that Ms. Winninger
6  solicited clients from Howard Head, right?
7          MS. SAVAGE:  Objection, lack of
8      foundation.
9  BY MR. KILDOW:
10     Q.   Right?
11          MS. SAVAGE:  He's not a party to
12      this case.
13     A.   I'm aware of the allegations in the
14 complaint.
15 BY MR. KILDOW:
16     Q.   Okay.  Good.  Now, when are you going
17 to tell Ms. Winninger and us, as her legal
18 counsel, which clients were solicited away?
19          MS. SAVAGE:  Objection, not a
20      proper question.  This is -- is this
21      argument?  What is this?  "When are you
22      going to tell us?"
23 BY MR. KILDOW:
24     Q.   Yeah, when are you going to tell us?
25          MS. SAVAGE:  Is that a question

Page 77

1 for this witness, when is he going to
2 tell you?
3          MR. KILDOW:  It is.
4 BY MR. KILDOW:
5     Q.   When are you going to tell us --
6          MS. SAVAGE:  Do you know when
7     you're going to tell them anything,
8     Mr. Shannon?
9     A.   I'm not a futurist.
10 BY MR. KILDOW:
11     Q.   Well, we're not talking about in the
12 future.  We're talking for the past 2 1/2 years,
13 Vail Health has not been able to identify a
14 single client that has been solicited away.
15 When are we going to find out --
16          MS. SAVAGE:  The same objection.
17     I think he's already --
18 BY MR. KILDOW:
19     Q.   -- about the truth of the allegations
20 that were made 2 1/2 years ago?
21          MS. SAVAGE:  I think he's already
22     answered this question.
23 BY MR. KILDOW:
24     Q.   Can you answer that question?
25     A.   No.  It's a hypothetical.

Page 78

1          THE DEPONENT:  If you will excuse
2     me for a minute.
3          MS. SAVAGE:  This is a good time
4     to go off the record.  I need to take a
5     break too.
6               (WHEREUPON, a break was
7                 taken.)
8          MR. KILDOW:  Exhibit 87.
9               (WHEREUPON, Deposition
10                Exhibit No. 87 was marked
11                for identification.)
12          MR. KILDOW:  Back on the record.
13 BY MR. KILDOW:
14     Q.   Mr. Shannon, I'm showing you a document
15 that has been marked as Exhibit 87.  And the
16 first page is an e-mail from Suzie Anderson to
17 Lindsay Winninger from the Davis Graham & Stubbs
18 law firm.  The second page -- and that is marked
19 SRC 057 in the lower right-hand corner.
20     A.   Fine.
21     Q.   And the next document is a January 3,
22 2017, transmittal letter to Ms. Winninger from
23 Ms. Savage identified by SRC Bates 058.  And
24 then what follows is a complaint and jury demand
25 that runs from Bates SRC 059 through Bates SRC

Page 79

1 076.  Do you see that, Mr. Shannon?
2     A.   I do, 0596 -- something or other.
3     Q.   Yeah.
4     A.   Is that 70-something -- 76?
5     Q.   Yes.
6     A.   Yes, I see it.  I have them in my
7 possession.
8     Q.   Now, I'll just represent for the record
9 that the second -- that the e-mail and the
10 transmittal letter dated January 3, 2017, were
11 sent by the Davis Graham & Stubbs law firm to
12 Ms. Winninger on or about January 3, 2017.  Now,
13 at that point in time, the Davis Graham & Stubbs
14 law firm represented Vail Health; is that
15 correct?
16     A.   January 3?
17     Q.   Yes.
18     A.   I presume so, yes.
19     Q.   Yes.  I mean, if we look at this
20 transmittal letter, Ms. Savage would not have
21 sent this letter if she didn't have the
22 authority of Vail Health to do that, correct?
23     A.   I presume that's right.
24     Q.   Okay.  Just take a moment to look at
25 this complaint.  And after you've had a chance

Page 80

1 to do that, tell me whether this is the
2 complaint that you approved, as you testified to
3 earlier this afternoon.
4          Have you had a chance to look
5 at Exhibit 87?
6     A.   Yes.
7     Q.   Do you recognize this as the complaint
8 that was approved by you in the executive
9 committee of Vail Health, as you previously
10 testified?
11     A.   I believe it's similar to the one I
12 approved.
13     Q.   Okay.  And do you recall when you
14 approved it?
15     A.   I don't recall.
16     Q.   There is an entry on the privilege log
17 that your attorneys have filed in this lawsuit.
18 And as Entry No. 425, it says there is a date of
19 December 27, 2016, and the author is Janet
20 Savage, and the recipients are Mike Shannon,
21 Doris Kirchner, Rick Smith, Nicholas Brown, and
22 Suzie Anderson.  And it says, "E-mail
23 transmitting document drafted by legal counsel
24 reflecting legal advice regarding possible
25 lawsuit."

Page 181

1    all, and I have agreed to put mine off.
2    And I anticipate it will be 15 to
3    20 minutes max.  And we're going to
4    reconvene.
5              (WHEREUPON, the deposition
6                adjourned at 6:16 p.m.
7                on this date,
8                July 25, 2018.)
9              * * * * *

Page 182

1    STATE OF COLORADO    )
                          )
2    COUNTY OF E A G L E  )

3              I, KELLY CAPRI, Notary Public
4    for the State of Colorado, a Certified Court
5    Reporter and Registered Professional Reporter,
6    do hereby certify:
7              That previous to the
8    commencement of the examination of the deponent,
9    the deponent was duly sworn to testify the whole
10   truth concerning the matters herein;
11             That the foregoing deposition
12   transcript was reported stenographically by me,
13   was thereafter reduced to typewriting under
14   my personal direction, and constitutes a true
15   record of the testimony given and the
16   proceedings had;
17             That the said deposition was
18   taken before me at the time and place specified;
19             That the said deposition was
20   adjourned as stated herein;
21             That the reading and signing by
22   the deponent of the deposition transcript was
23   agreed upon as stated herein;
24             That I am not a relative or
25   employee or attorney or counsel, nor a relative

Page 183

1    or employee of such attorney or counsel for any
2    of the parties hereto, nor interested directly
3    or indirectly in the outcome of this action.
4              IN WITNESS WHEREOF, I do
5    hereunto set my hand and affix my seal of office
6    at Carbondale, Colorado, on July 31, 2018.

10   _____
     Kelly Capri, CCR, RPR
11   Notary Public for the State of Colorado
     My commission expires:  9/15/2020
12
     RPR Certificate No. 021469

Page 184

1         CERTIFICATE OF DEPONENT
         (Disregard if signature is waived)

3    I have read my deposition, and the same is
4    true and accurate, save and except for changes
5    and/or corrections, if any, as indicated by me
6    on the Errata Sheet hereof.
7    Errata Sheet(s) Attached [ ]  No Changes [ ]

9    _____
10   MICHAEL SHANNON

11   SUBSCRIBED AND SWORN to before me this _____
12   day of _____, 2018.
13   My commission expires:  _____

15   _____
     Notary Public
16   _____
17   Street Address
18   _____
     City, State, Zip
19
20   Re:  *Winninger v. Kirchner, et al.*
     Deposition of:  MICHAEL SHANNON, Volume 1
     Date of Deposition:  July 25, 2018
21   Reported By:  Kelly Capri, CCR, RPR
22   Please Return the Executed Certificate to:
23        CAPRI COURT REPORTING
          0035 Bobcat Court
24        Carbondale, Colorado 81623
          (970) 510-5131
25        Kelly@CapriCourtReporting.com