# EXHIBIT 6

DISTRICT COURT, EAGLE COUNTY
STATE OF COLORADO
885 Chambers Avenue
Eagle, CO 81631

DATE FILED: February 17, 2020 4:06 PM
FILING ID: 40A8EBAD12DAB
CASE NUMBER: 2017CV30102

**Plaintiffs:**  LINDSAY WINNINGER, an individual, and SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,

v.

**Defendants:**  DORIS KIRCHNER, an individual, and VAIL CLINIC, INC. d/b/a VAIL VALLEY MEDICAL CENTER, a Colorado nonprofit corporation,

**Counter-Plaintiff:**  VAIL CLINIC, INC., D/B/A VAIL VALLEY MEDICAL CENTER, a Colorado corporation,

v.

**Counter-Defendants:**  LINDSAY WINNINGER, an individual, and SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,

**Third-Party Plaintiff:**  VAIL CLINIC, INC., D/B/A VAIL VALLEY MEDICAL CENTER, a Colorado nonprofit corporation,

v.

**Third-Party Defendant:**  DAVID J. CIMINO, an individual.

▲   COURT USE ONLY   ▲

Case No:  2017CV030102

Div.: 4      Ctrm: 3

Jesse Wiens, Colo. #33903
Fahrenholtz & Wiens LLC
100 West Beaver Creek Boulevard
Suite 236
Avon, CO 81620
Telephone:  (970) 949-6500
E-mail:  fwlawyers@gmail.com

Attorneys for Plaintiffs/Counter-Defendants LINDSAY WINNINGER and SPORTS REHAB CONSULTING LLC

**PLAINTIFFS' OBJECTION TO SPECIAL MASTER'S DENIAL OF MOTION NO. 7—TO ENFORCE FEBRUARY 6, 2018 AND MAY 22, 2018 ORDERS TO PRODUCE THE NATIVE FILE OF EXHIBIT 8**

## OBJECTION AND PROCEDURAL BACKGROUND

Under Rule 37, Plaintiffs moved for an order enforcing Judge Gannett's February 6 and May 22, 2018 Orders to produce the native form of Exhibit 8.  Specifically, this Court (Judge Gannett presiding) ordered that "Vail Health shall provide the independent expert and the parties the Vail Health spreadsheet [identified as VAIL_000041-0000156] in its native Excel format within 7 days of the selection of the independent expert."[1]  This should have been an easy task to accomplish, given that at least one portion of the spreadsheet was saved to the Davis Graham system as document number 411225.[2]  In other words, it could be easily located and produced and belies the notion that the native does not exist.  After making countless requests for the exact native Excel file for Exhibit 8,[3] Defendants still refused to produce it.  Defendants' refusal is inexplicable unless there is something Defendants are trying to hide.

Plaintiffs moved in April and May, 2018[4] for the production of the native form of Exhibit 8, raising several serious evidentiary questions, including:

- ▪ Why do Defendants refuse to produce the exact native form of Exhibit 8 when it is easily identifiable (document number 411225) and producible from their law firm's document management system?  This question is particularly important given that Defendants were ordered by the Court to produce the native form of Exhibit 8 in the February 6, 2018 Forensic Protocol Order (and then then the May 22, 2018 Order).

- ▪ Why was the file path name "Attn VVMC docs from personal computer" omitted from close to 900 documents identified on Exhibit 8?[5]  As Cimino testified, he gathered all documents from his personal computer that had any relation to his time working as a physical therapist, including at his prior

---

[1]     *See* Feb. 6, 2018 Forensic Protocol Order § 10.
[2]     *See* Ex. 1 at VAIL_00000135 [letter and Exhibit 8].
[3]     *See, e.g.,* Ex. 2 (cataloging some of the repeated requests).
[4]     Ex. 3-4 [Pls.' Motions].
[5]     Ex. 5-6 [Cyopsis producing file path name on March 7, 2016; information not provided to Vail PD].

employer RPC-Vail/Proaxis, placed them in a folder, and provided that folder to Vail Health.  Most, if not all, of the documents predated his employment with Vail Health.  And as Defendants' own forensic expert Craig Bernard testified, he had never encountered anyone voluntarily placing documents into a folder addressed to a party's attention before.[6]

- Why did Defendants not inform the Vail PD and Eagle County DA that close to 900 documents contained the file path name "Attn VVMC docs from [Cimino's] personal computer" and had nothing to do with his employment at Vail Health?

- Why did Defendants reformat Exhibit 8 to exclude the title of the document, maintain the document in alpha order, and move around thousands of cells?

- Having relied almost exclusively on Exhibit 8 for over two years (2016 to 2018) why do Defendants refuse to produce the native version of Exhibit 8?

Based on these fundamental questions, Plaintiffs argued that the following reasonable inferences could be drawn from Defendants' repeated refusals to produce the native form of Exhibit 8:

- Exhibit 8 concealed material evidence from the Vail PD and Eagle County DA to make it appear that Cimino "stole" information that he did not, in that it did not disclose that there were thousands of publicly-available published articles, documents obtained from his prior employer RPC-Vail/Proaxis, and physical therapy protocols disseminated to thousands of patients, physical therapists, and doctors around the world, many of which are publicly-available by doing a simple Google search.

- Defendants concealed that evidence so that they could argue that the Eagle County DA should charge Cimino with 3,000 felony counts, apparently to force Cimino to plead to a crime that he did not commit.

- Any plea that Cimino would have entered into with the Eagle County DA would not only have destroyed Cimino, it would have ultimately been used to destroy Winninger right along with him.

On May 22, 2018, Judge Gannett granted Plaintiffs' and Cimino's request and ordered (again) that the native form of Exhibit 8 be produced before the court-ordered

---

[6]         Ex. 7 at 59, lines 18-23, at 148, lines 9-25, at 149 lines 1-25, at 150, lines 1-6 [Bernard Dep.].

deposition of Cyopsis took place.[7]  By granting Plaintiffs' and Cimino's motion to compel the production of the native of Exhibit 8, the Court recognized that the discovery was relevant and could lead to the admission of relevant evidence.  Stated differently, Defendants' tampering or alteration of evidence was to frame Cimino and Plaintiffs.

Because Plaintiffs, Cimino, the Court, the Vail PD, and the Eagle County DA were all led to believe that Cyopsis created Exhibit 8 (as Defendants repeatedly represented), Plaintiffs issued a subpoena for Cyopsis's documents, including the native form of Exhibit 8.  Plaintiffs did so because in answering Interrogatory No. 12, Defendants represented that Cyopsis created Exhibit 8 in February 2018,[8] just as they led the Vail PD to believe  when they pressed for criminal charges to be filed against Cimino.[9]  But neither Cyopsis nor Defendants produced the native form of Exhibit 8 before the deposition, or even since that deposition.

During the deposition of Craig Bernard of Cyopsis, it soon became apparent that Bernard did not actually create Exhibit 8 or that he had the native file matching Exhibit 8,[10] nor could he describe why Exhibit 8 was created, sorted, and presented to the Vail PD in the manner that it was.[11]  In fact, Bernard could not explain how to sort Exhibit 8 to obtain the format it was in.  That is because the only way to recreate an exact match of Exhibit 8 is by taking a prior version of a Cyopsis Excel spreadsheet in native form, delete or hide columns, and manually move thousands of rows, which takes countless hours.  Most

---

[7]     Ex. 8 [May 22, 2018 Min. Order].
[8]     Ex. 9 [Answer to Interrog]; Ex. 10 [Cyopsis February 12, 2016 Excel spreadsheet summarizing contents of Cimino USB devices].
[9]     Ex. 1 at 3 [Apr. 18, 2016 letter to PD].
[10]    Ex. 7 at 21, line 9 [Bernard Dep.] ("I did not prepare Exhibit 8").
[11]    *Id.* at 20-22, lines 1-25; at 24, lines 1-17; at 110, lines 15-18.

notably, Bernard thought it was Davis Graham that created Exhibit 8, as he knew it was not Cyopsis.[12]   Further, Bernard testified that he never intended that the Excel spreadsheet he did create (which formed the basis of Exhibit 8) be used as a report or an exhibit.[13]   In fact, Bernard did not know that Exhibit 8 had been submitted to the Vail PD or represented that it was a Cyposis Excel spreadsheet (which Bernard said it was not) until the day before he was deposed[14]—that is, two years later.  So why would someone go to such great effort to tamper with a Cyopsis investigative report to create Exhibit 8, and then represent to the police that Cyopsis created it?

More recently, in an effort to avoid the motion to enforce the Court's February 6 and May 22, 2018 Orders, Defendants represented to Plaintiffs that they had produced the *native* of Exhibit 8—that is, Cyopsis0000077.[15]  But Defendants' assertion is not true, as their own records reflect.  Ten days after Bernard's deposition, Defendants produced an Excel spreadsheet that Bernard created in March 2018—two years after Cyopsis analysis of Cimino's USB devices had been completed and two years after Exhibit 8 had been presented to the Vail PD as evidence of Cimino's (and Winninger's) purported criminal conduct.  The Excel spreadsheet was created by converting Exhibit 8, which is a PDF, into an Excel spreadsheet.[16]   The result is *not* the native of Exhibit 8 but a conversion of a PDF into an Excel spreadsheet.  Plaintiffs never requested that Exhibit 8 be converted into an Excel spreadsheet—they could have done that on their own.  Rather,

---

12      *Id.* at 21, lines 5-9.
13      *Id.* at 28, lines 10-23.
14      *Id.* at 21, lines 10-25; at 22, lines 1-2.
15      Ex. 11 at 1.
16      Ex. 12 at 1 [email].

what has been at issue here is who created the native of Exhibit 8 and why was it substantially modified from the version Cyopsis provided to Defendants?

When the converted PDF/Excel spreadsheet was produced *after* the Bernard deposition, Defendants represented that they would not be producing the native form of Exhibit 8 because it presented the work-product of counsel.[17]  But that belated argument was waived[18]—it was never presented to Judge Gannett, and Defendants never objected to the Court's Order requiring the native form of Exhibit 8 to be produced.  Further, by producing Exhibit 8 as part of this litigation—and in fact as part of its initial disclosures—Defendants waived any right to claim work product.[19]  Nor did they ever argue that the native form of Exhibit 8 did not exist, which is what they attempted to do for the first time on February 10, 2020 before the Special Master.  Further, Defendants cannot now argue that the native form of Exhibit 8 is not relevant.  That train already left the station.  Judge Gannett determined it was relevant and ordered the document to be produced—twice in fact.  The only thing remaining was for the Special Master to enforce Judge Gannett's prior two orders, which he declined to do at the hearing on Plaintiffs' motion held on February 10, 2020.  The Court's appointment of the Special Master did not provide the Special Master authority to reverse prior Court orders.[20]

---

[17]    *Id.*
[18]    *Scott v. Matlack, Inc.*, 39 P.3d 1160, 1172 (Colo. 2002).
[19]    *Fox v. Alfini*, 2018 CO 94, 20 (Colo. 2018) (citing multiple cases and noting that waiver of work product occurs when the disclosure of work product is to an adversary in the litigation).
[20]    *Russell v. Thompson*, 96 Nev. 830, 834 (Nev. 1980) ("Masters are appointed "to aid judges in the performance of specific judicial duties, as they may arise in the progress of a cause," *Ex parte Peterson*, 253 U.S. 300, 312 (1920), and not to place the trial judge into a position of a reviewing court.").

Although the Special Master stated that he was not overturning the prior two orders of Judge Gannett that is exactly what he did.  By ruling that Defendants were not required to produce the native of Exhibit 8, the Special Master expressly overturned Judge Gannett's prior two orders.  And with that denial, Plaintiffs have been precluded from relevant discovery—discovery that Judge Gannett already ruled Plaintiffs and Cimino were entitled to.  Further, the Special Master's denial to enforce two court orders essentially was a grant of a motion *in limine* without any briefing on whether Defendants fabricated evidence.  This involves two substantive legal issues: (1) whether Defendants' abused their conditional First Amendment privilege, and (2) whether the jury would ever be entitled to know *who* the fabricated evidence submitted to law enforcement.  Both of these issues implicate the factual question as to whether Defendants acted with malice or reckless disregard when they made the defamatory statements against Plaintiffs.

## ARGUMENT

I.  **THE FABRICATION OF "FACTS" THAT INCLUDED ALTERED EVIDENCE IS RELEVANT TO DEFENDANTS' ACTUAL MALICE OR RECKLESS DISREGARD FOR THE TRUTH.**

Special Master was in error in failing to require the enforcement of two Court Orders compelling Defendants to produce Exhibit 8 in its native form.  At the February 10 hearing, Defendants argued that Exhibit 8 is no longer an issue in the case in light of Judge Granger's summary judgment order holding that Defendants' false statements to the Vail PD and the Eagle County DA were conditionally privileged.  Although the summary judgment order held that the false statements to law enforcement could not form

the basis of a defamation claim,[21] it did not hold that those false statements were inadmissible to prove actual malice or reckless disregard for the truth.[22]  As demonstrated below, malice and reckless disregard are important legal and factual issues in the case.

As a procedural matter, Plaintiffs have been significantly prejudiced by the procedural manner in which this discovery dispute has been adjudicated by the Special Master.  Plaintiffs' motion to compel was limited to five pages and they were not permitted to file any reply to Defendants' response to their motion.  At the February 10 hearing, Defendants primarily argued the legal relevance of Exhibit 8, to which Plaintiffs were unable to present any reply argument as to the facts or law argued, both of which are simply wrong.  Nor should they have had to address that issue because Judge Gannett, after extensive briefing by the parties, already determined that the native of Exhibit 8 was relevant, and he ordered Defendants to produce it on two separate occasions.  Exhibit 8 raises not only a serious evidentiary issue but also a substantive legal issue that should not have been decided by the Special Master.

---

[21]    Plaintiffs do not agree that the Court's summary judgment order is correct or enforceable.  The Order relates exclusively to Plaintiffs' proposed Second Amended Complaint, which as the Court and the parties all agreed was a nullity once Plaintiffs' motion to amend was denied.  Additionally, the Court prematurely decided the summary judgment motion at a time when discovery was still open and there were multiple discovery issues outstanding, which is directly in contrast to the Court's holding in abeyance any decision on the summary judgment motion because Defendants claimed they needed additional discovery.

[22]    *Gordon v. Boyles*, 9 P.3d 1106, 1118 (Colo. 2000) ("For instance, in a media defamation case the information about the reliability of the declarant's sources may be relevant to the significant issue of the reporter's state of mind about the truth or falsity of his broadcasts. The less credible the sources, the more likely the declarant acted with malice or a reckless disregard of the truth by broadcasting the information they provided. Hence, the identities of these persons and what they said reflects directly on the declarant's state of mind with respect to the truth or falsity about the information he broadcast. *See Phillip Morris Cos.*, 23 Media L. Rptr. at 1438-39. Alternatively, even if there exists sufficient proof of actual malice, the identities of the declarant's sources may be relevant for the plaintiff to prove, for instance, that the statement was false or to overcome the affirmative defense of truth.").

Plaintiffs have alleged and offered evidence that Exhibit 8 was deliberately altered to create a false impression with the Vail PD and Eagle County DA to induce them to indict Third Party Defendant David Cimino for 3,000 felony counts for the theft of medical records.   Through Exhibit 8, Defendants factually misrepresented to the Vail PD and Eagle County DA that Cimino took far more information than he had actually taken and that he "stole" documents exclusively from Vail Health.   Through Exhibit 8, Defendants factually misrepresented to the Vail PD and Eagle County DA that Cimino took Vail Health trade secrets that were in fact created and owned by RPC-Vail/Proaxis.   In other words, Defendants misrepresented that a significant portion of the property that Vail Health argues it owned and was stolen, was in fact that property was owned by a predecessor legal entity and is property to which Vail Health had and has no legal right.   Through Exhibit 8, Defendants factually misrepresented to the Vail PD and Eagle County DA that Cimino and Plaintiffs used the information catalogued on Exhibit 8 to assert that Cimino and Plaintiffs were using the information to illegally solicit Vail Health patients.

Plaintiffs have alleged and have now proven that Defendants made statements against Plaintiffs that they engaged in criminal "theft" with respect to the information depicted on Exhibit 8.   As has now been proven though the Report of Independent Forensic Expert Michael Horwith, those statements have proven false.   Plaintiffs have alleged and argued that Exhibit 8 is a piece of fabricated evidence used by Defendants to "frame" Cimino and Plaintiffs as criminals for the purpose of destroying their reputations.   Defendants' motive in fabricating Exhibit 8 as a tool to defame Cimino and Plaintiffs was to the financial gain of Vail Health.   To overcome the evidence of defamatory

8

statements, Defendants argued in support of their 2019 motion for summary judgment that malice is an essential element that Plaintiffs must prove to defeat Defendants' qualified privilege defense.

Plaintiffs will not attempt to catalogue here all of the factual grounds that may constitute actual malice or grounds for a finding of reckless disregard for the truth, but fabrication of a story or evidence can certainly be a strong factor is such a finding.  In *Kuhn v. Tribune-Republican Publishing*, the Colorado Supreme Court held that "if an investigation is grossly inadequate," "the finder of fact could infer actual malice."[23]  The *Kuhn* Court noted that in that case the reporter's "[f]ailure to verify statements made in the article meant that many of the 'facts' about the ski passes 'exposed" by the article were essentially, fabrications.  ***Fabrication of the facts in a newspaper report does not enjoy First Amendment protection***."[24]  That the fabrication of a story or evidence can satisfy the actual malice or reckless disregard standard is supported by the U.S. Supreme Court case of *St. Amant v. Thompson*,[25] which held that*:*

> Professions of good faith will be unlikely to prove persuasive, for example, where a story is [1] fabricated by the defendant, is [2] the product of his imagination, [3] or is based wholly on an unverified anonymous telephone call….[R]ecklessness may be found where there are obvious reasons to doubt the veracity of the informant or his reports."  "***The finder of fact must determine whether the publication was indeed made in good faith.***"[26]

---

[23]     637 P.2d 315, 319 (Colo. 1981) (*en banc*) (emphasis added) (citing *Curtiss Publ'ing Co. v. Butts*, 388 U.S. 130 (1967)).

[24]     *Id.* (citing *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968)); *Garrison v. La.*, 379 U.S. 64, 75 (1964); *Gertz v. v. Robert Welch, Inc.,* 418 U.S. 323, 327 (1974).

[25]     390 U.S. at 732.

[26]     *St. Amant*, 390 U.S. at 732.

That the fabrication of a story or of evidence is relevant to prove actual malice has been reiterated in too many cases to be recited here.  As an example, however, in *Biro v. Conde' Nast, of Advance Magazine Publishers, Inc.*, the Second Circuit noted: "For example, a plaintiff may allege that 'a story [was] fabricated by the defendant' if the defendant provides no source for the allegedly defamatory statements or if the purported source denies giving the information."[27]   Another such case is *Sindi v. El-Moslimany*, where, in an e-mail, the defendant was found by the jury, among other things, to have fabricated a false statement that the plaintiff had "fraudulently obtained her Ph.D. from Cambridge University."   The First Circuit applied the rule that fabrication may be found to constitute actual malice. [28]   Moreover, the *Sindi* court also applied the settled rule that "a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence, see *Herbert v. Lando*, 441 U.S. 153, 160 (1979)…and it cannot be said that evidence concerning motive or care never bears any relation to the actual malice inquiry."[29]

## II.   THE NATIVE FORM OF EXHIBIT 8 IS RELEVANT TO THE CHAIN OF CUSTODY OF THE DOCUMENT AND DEFENDANTS' GROSSLY INADEQUATE INVESTIGATION INTO THE FACTS UNDERLYING THEIR FALSE STATEMENTS ABOUT PLAINTIFFS.

The *Kuhn* Court held that "if an investigation is grossly inadequate," "the finder of fact could infer actual malice." [30]   Exhibit 8 will be an exhibit that Plaintiffs intend to introduce at trial to prove a number of facts, among them that Defendants conducted

---

[27]      807 F.3d 541, 545 (2d Cir. 2015) (citing *St. Amant*, 390 U.S. at 732).
[28]      No. 162347 at 5 (1st Cir. July 11, 2018) (citing *Levesque v. Doocy*, 5660 F.3d 82, 90 (1st Cir. 2009)).
[29]      *Id.*at 6 (citing *St. Amant*, 390 U.S. at 732).  *See also Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989).
[30]      *Kuhn*, 637 P.2d at 319, citing *Curtiss Publishing Co. v. Butts*, 388 U.S. 130 (1967).

virtually no investigation into the facts underpinning their false statements about Plaintiffs. Exhibit 8 is inaccurate although Defendants have repeatedly represented to the Court that it constitutes the "universe" of documents to be searched under the forensic protocol order.[31]  It is the operative document that underpins Vail Health's defense of "truth" as to what evidence it claims Plaintiffs "stole," and it is a fundamental basis for Vail Health's counterclaims of misappropriation of trade secrets, civil theft, and conversion.

Who created Exhibit 8, who can lay the foundation for the document and that data depicted in it, how it is organized, the manner in which it was created, and the key information missing from the document—that is, that Cimino voluntarily produced to Vail Health Proaxis files that he had on his computer by placing them in a folder marked "Attn VVMC docs from personal computer"—are all relevant to Vail Health's counterclaim in this action.  Craig Bernard cannot testify to this issue—he did not even know at the time that his preliminary analysis of the USB devices had been modified by Davis Graham or that the document had been produced to the Vail PD as evidence of a purported crime.[32] In fact, he testified that he would not have provided that document to the police department in the form that it was in.[33]

The Northern District of Illinois addressed a similar situation in *Fields v. City of Chicago*.[34]  There, a plaintiff attempted to obtain information about chain of custody of certain documents by first seeking that information through an interrogatory, and the city objected.  Even after the court ordered the city to answer, it repeated its objections

---

[31]    *See, e.g.,* Ex. 2 {email].
[32]    Ex. 7 at 21, lines 10-25; at 22, lines 1-2 [Bernard Dep.].
[33]    *Id* at 28, lines 10-23.
[34]    No. 10 C 1168 (N.D. Il.. Oct. 15, 2015).

including the baseless attorney-client privilege objection.  The plaintiff then took the deposition of a police officer, who would not disclose the information related to the chain of custody either.   The plaintiff moved again for the information related to the chain of custody, and the court ordered the city to make a full  and complete disclosure of the information requested by interrogatory without interposing any objection.  To the extent the answer was not sufficient, the court indicated that it may order the depositions of the city's attorney and paralegal.

Like the plaintiff in *Fields,* Plaintiffs have attempted to obtain the information through an interrogatory, a deposition, and two court orders.  Defendants refuse to provide the information that they were ordered to produce and have even gone to such lengths to assert that the native of Exhibit 8 is a spreadsheet that was created by converting Exhibit 8 into an Excel spreadsheet during the course of this action and shortly after the Court ordered the native of Exhibit 8 to be produced.  Such manipulations of evidence should not be countenanced.

Judge Gannett's prior two orders should be enforced.  The Court should reverse the Special Master's order denying Plaintiffs access to this relevant evidence and order Defendants to produce the native form of Exhibit 8 including all metadata, which is the reason the document was ordered to be produced (twice) in native form.

## **CONCLUSION**

There is no justifiable reason for Defendants to refuse to produce the native form of Exhibit 8.  Plaintiffs should be allowed to discover who created Exhibit 8 as presented to the Vail PD and was the basis for the claims and defenses initially asserted in this case,

which is what Judge Gannett previously ordered.  The Court should order Defendants to produce the native file of Exhibit 8 with all metadata, and to the extent they refuse to do so, Plaintiffs should be allowed to depose Defendants' counsel regarding Exhibit 8, which is how the Illinois federal district court in *Fields v. City of Chicago* indicated the issue should be addressed when a party refuses to comply with a court order on production of documents.

Dated:  February 17, 2020        *s /Alan L. Kildow*
        Jesse Wiens, Colo. #33903
        Fahrenholtz & Wiens LLC
        100 West Beaver Creek Boulevard
        Suite 236
        Avon, CO 81620
        Telephone: (970) 949-6500
        E-mail:  fwlawyers@gmail.com

        Sonya R. Braunschweig (admitted *pro hac vice*)
        5501 Irving Avenue South
        Minneapolis, MN  55419
        Telephone:  (612) 819-2304
        E-mail:  sonya.braunschweig@gmail.com

        Alan L. Kildow (admitted *pro hac vice*)
        15204 Wildwood Road
        Burnsville, MN 55306
        Telephone:  (970) 390-6675
        E-mail:  alkildow@aol.com

        Attorneys for Plaintiff and Counter-Defendants
        Lindsay Winninger and Sports Rehab Consulting LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2020, I served a true and correct copy of Plaintiffs' Objection to Special Master's Denial of Motion No. 7—To Enforce February 6, 2018 and May 22, 2018 Orders To Produce the Native File of Exhibit 8, including exhibits, through the Court's e-filing system on:

> Janet A. Savage
> Jacqueline Roeder
> Daniel Richards
> Davis Graham & Stubbs LLP
> 1550 17th Street, Suite 500
> Denver, CO  80202
> Counsel for Defendants/Counter-Plaintiff
>
> Daniel Reilly
> John McHugh
> Reilly Pozner LLP
> 1700 Lincoln Street, Suite 2400
> Denver, CO 80203
> Counsel for Defendant Doris Kirchner
>
> John W. Madden, III
> The Madden Law Firm
> 999 18th Street
> Suite 1500 South
> Denver, CO  80202
> Counsel for Third-Party Defendant

_s/ Jesse Wiens_
Jesse Wiens