# EXHIBIT 7

DISTRICT COURT, EAGLE COUNTY
STATE OF COLORADO

885 Chambers Avenue
Eagle, CO 81631

DATE FILED: September 18, 2019 6:03 PM
FILING ID: CD13B7E69593E
CASE NUMBER: 2017CV30102

**Plaintiffs:**  LINDSAY WINNINGER, an individual, and SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,

v.

**Defendants:**  DORIS KIRCHNER, an individual, and VAIL CLINIC, INC. d/b/a VAIL VALLEY MEDICAL CENTER, a Colorado nonprofit corporation.

**Counter-Plaintiff:**  VAIL CLINIC, INC., D/B/A VAIL VALLEY MEDICAL CENTER, a Colorado corporation,

v.

**Counter-Defendants:**  LINDSAY WINNINGER, an individual, and SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,

**Third-Party Plaintiff:**  VAIL CLINIC, INC., D/B/A VAIL VALLEY MEDICAL CENTER, a Colorado nonprofit corporation,

v.

**Third-Party Defendant:**  DAVID J. CIMINO, an individual.

▲ COURT USE ONLY ▲

Case No:  2017CV030102

Div.: 4      Ctrm: 4

Jesse Wiens, Colo. #33903
Fahrenholtz & Wiens LLC
100 West Beaver Creek Boulevard
Suite 236
Avon, CO 81620
Telephone:  (970) 949-6500
E-mail:  fwlawyers@gmail.com

Attorneys for Plaintiffs/Counter-Defendants LINDSAY WINNINGER and SPORTS REHAB CONSULTING LLC

**PLAINTIFFS' OBJECTION TO AND APPEAL FROM THE SEPTEMBER 11, 2019 ORAL ORDER OF THE SPECIAL MASTER COMPELLING WINNINGER TO DISCLOSE ALLEGED TRADE SECRET INFORMATION AND PRESERVATION OF OTHER DISCOVERY-RELATED ISSUES**

## **INTRODUCTION**

Plaintiffs file this objection to and appeal from the oral order (the "Oral Order") stated by Special Master W. Terry Ruckriegle at the conclusion of a telephonic hearing on September 11, 2019.  The Oral Order requires the production by plaintiff Lindsay Winninger of certain documents in her possession from the time she was employed by Proaxis.  Winninger left Proaxis in May 2012, which was prior to November 2012, when defendant Vail Health took over the operation of the physical therapy clinic operating under the trade name of "Howard Health Medical Center" from Proaxis.  As of the time of the fling of this objection and appeal, the Special Master has not issued a written order and has not yet heard other motions that alter the ultimate effect of the Oral Order. Nevertheless, out of an abundance of caution, and given the standards for objection set forth in the Court's Order appointing the Special Master, Plaintiffs file this objection and appeal to ensure their legal rights to contest the Oral Order.  Similarly, Plaintiffs assert other objections to preserve their legal right to contest the Special Master's discovery order, but until a written order is issued, they cannot know what those objections are.

The main legal issue presented by this objection and appeal is whether the Special Master abused his discretion and the Oral Order was manifestly erroneous in compelling the production of trade secrets without an analysis of the threshold elements of trade secret ownership or existence, or the harm that disclosure may cause to Winninger.  As this objection and appeal shall demonstrate, the Special Master erred as a matter of law and the Oral Order should be vacated.  In its stead, the Special Master should be required to issue a protective order that is consistent with C.R.C.P. 26(c)(7) and that requires a

hearing as to the essential elements of misappropriation of trade secrets prior to the production of an adverse part's alleged trade secrets.

## **ARGUMENT**

**I.     VAIL HEALTH MUST MAKE A *PRIMA FACIE* DEMONSTRATION OF THE EXISTENCE AND OWNERSHIP OF TRADE SECRETS PRIOR TO PRODUCTION OF THE PROAXIS DOCUMENTS.**

At the end of a telephonic hearing on September 11 regarding Vail Health's motion to compel production of the Proaxis Documents, the Special Master implied that the garden-variety requirements for discovery under Rule 26 compelled disclosure of the alleged trade secrets sought by Vail Health.  Alan Kildow, arguing for Plaintiffs, asserted that the Special Master's analysis was wrong as a matter of law.  After arguing that Vail Health had not established even a colorable claim of ownership, he argued that at a minimum Vail Health is required to identify the trade secrets it claims are discoverable. The Special Master apparently disagreed and ordered production of the Proaxis Documents.  This discovery dispute, therefore, centers on whether Vail Health is entitled to discovery of documents that it has not shown it owns or are trade secrets.

To better understand the issues raised by this discovery dispute it may be helpful to address several legal underpinnings of the controversy.   We begin with the fundamental proposition that "[c]onfidential business information has long been recognized as property,"[1] and of course, if it is property it must have an owner.  "Because of the intangible nature of a trade secret, the extent of the property right therein is defined

---

[1]     *In re Remington*, 952 F.2d 1029, 1032 (8th Cir. 1991), (citing *Carpenter v. United States,* 484 U.S. 19, 26 (1984) (emphasis added).

by the extent to which *the owner* of the secret protects his interest from disclosure to others."[2]  This is necessary because "[p]ublic disclosure of trade secrets extinguishes *the owner's* property rights."[3]   The Colorado Uniform Trade Secrets Act provides that for something to be considered a trade secret, "*the owner* [of the trade secret] must have taken measures to prevent the secret from becoming available to persons other than those selected by *the owner* to have access thereto for limited purposes."[4]  To succeed on its trade secret claim, therefore, Vail Health must first plead and demonstrate a *prima facie* case that it is the owner of each trade secret and will be required to demonstrate the essential elements for each trade secret.

Plaintiffs' understanding of the reasoning of Special Master Ruckriegle in issuing the Oral Order is that discovery of trade secrets is subject to the same standard of relevancy as any other fact discovery.  But, as Mr. Kildow argued, that is not a correct statement of the law.  Colorado Rule of Civil Procedure 26(c) provides a court with the authority to impose conditions on discovery to prevent harassment, undue burden and cost, or abuse of the court's processes.[5]  Under C.R.C.P. 26(c)(7) (and also Fed. R. Civ. P. 26(c)(7)), the party opposing discovery must show that the information is a trade secret.[6]  In this case, that issue is already addressed because it is Vail Health that asserts that the Proaxis Documents are trade secrets.   "The burden then shifts to the party

---

[2]        *Remington*, 952, F.2d at 1032), (citing *Ruckleshouse v. Monsanto Co.*, 467 U.S. 986, 1002 (1984)) (emphasis added).
[3]        *Remington*, 952, F.2d at 1032 (emphasis added).
[4]        C.R.S. § 7-74-102(4) (emphasis added); *Network Telecommunications, Inc. v. Boor-Crepeau*, 790 p.2d 901, 902 (Colo. Ct. App. 1990).
[5]        *Jessee v. Farmers Ins. Exchange*, 147 P.3d 56, 61 (Colo. 2006) (*en banc*).
[6]        *Remington*, 952, F.2d at 1032.

seeking disclosure to show that the information is necessary to prepare the case for trial."[7] "If the party seeking discovery fails to show both relevance of the requested information and the and the need for the material in developing its case, there is no reason for the discovery request to be granted, and trade secrets are not to be revealed."[8]

At least at this point Vail Health cannot show a need for the Proaxis Documents for the many reasons set forth in this objection and appeal.  As shall be shown, Vail Health has not shown that it is the owner of the purported trade secrets and therefore it has no trade secret misappropriation claims so there is no need for disclosure by Winninger.  The same is true with respect to proof of the existence of any trade secrets, as the following paragraphs demonstrate.  Surprisingly, Vail Health is unable to even identify the trade secrets it claims because it has no record of them!  If it cannot identify them and has no record of them, they were not protected and have no value.  So again, Vail Health has no trade secret misappropriation claim and thus there is no need for Winninger to produce documents for which there is no claim.  In summary, the party asserting misappropriation must at least allege the essential elements of its right to ownership of the trade secret and the threshold elements of a trade secret.[9]  A brief explication of the elements of a misappropriation claim proves the point.

It is difficult to define the vast panorama of possible trade secrets, but the following basic elements that are widely recognized by Colorado and most courts throughout the nation include: (1) the extent to which the information is known outside the business, (2)

---

[7]       *Id.; Elections Systems & Software, LLC v. RBM Consulting, LLC,* Case No. 8:11CV438 (D.Neb., March 24, 2015).
[88]      *In re Remington*, 952 F.2d 1029, 1032 (8th Cir. 1991).
[9]       *Remington*, 952 F.2d at 1032.

the extent to which the information is known by those inside the business, such as employees, (3) the precautions taken by the holder of the trade secret to guard against the secrecy of the information, (4) the savings effected and the value to the holder in having the information as against competitors, (5) the amount of effort, time and money expended in obtaining and developing the information, and (6) the amount of time and effort it would take others to acquire and duplicate the information.[10]

In addition to making a *prima facie* showing as to the existence of a trade secret by the party seeking discovery, a trade secret "plaintiff will normally be required to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it is allowed to compel discovery of its adversary's trade secrets."[11]  The reasoning of the federal District of Colorado court in *L3 Communications* for requiring the party seeking disclosure of the trade secrets to first identify and list the trade secrets is as follows::

> This threshold disclosure requirement for discovery in trade secret cases serves several purposes.  First, describing a trade secret with specificity puts the defendant on notice of what it has allegedly misappropriated.  *See Sit–Up, Ltd. v. IAC/Interactive Corp.,* No. 05–cv–9292, 2008 WL 463884, at *11 (S.D.N.Y. Feb. 20, 2008); *see also Leucadia, Inc. v. Applied Extrusion Technologies, Inc.,* 755 F. Supp. 635, 637 (D.Del.1991) ("disclosure of Plaintiff's trade secrets prior to discovery of defendant may be necessary to enable the defendant and ultimately the Court to ascertain the relevance of plaintiff's discovery.") Second, this requirement prevents disclosure of trade secrets that were not misappropriated by the defendant, thereby giving the plaintiff access to trade secret information that it would otherwise be illegal for the plaintiff to misappropriate. *Gentex Corp.,* 2008 WL 5068825, at *1.  Finally, "requiring the plaintiff to state its claimed trade secrets prior to engaging in

---

[10]     *Network Telecommunications,* 790 P.2d at 903 (citing *Porter Industries, Inc. v. Higgins,* 680 P.2d 1339, 1341 (Colo. App. 1984)).

[11]     *Remington,* 952 F.2d at 1032; *L3 Communications Corp. v. Jaxon Engineering, Inc,* 2011 WL 10858409, at 1-2 (D. Colo. 2011).

discovery ensures that it will not mold its cause of action around the discovery it receives." *DeRubeis v. Witten Techs., Inc.,* 244 F. R.D. 676, 681 (N.D.Ga.2007). In this case, the court notes that the fact that the individual defendants were former employees of the plaintiffs does not ameliorate the concerns underlying the last two purposes; in fact, that they were former employees actually increases these dangers.

**To ensure that plaintiffs adequately disclose their trade secrets, courts commonly order a list of trade secrets at the outset of the litigation.** *Dura Global Techs I,* 2007 WL 4303294, at *2. Ultimately, whether a plaintiff has sufficiently disclosed its trade secrets is "a fact-specific question to be decided on a case-by-case basis." *Gentex Corp.,* 2008 WL 5068825, at *1 (quoting *DeRubeis,* 244 F.R.D. at 681).[12]

This rationale applies doubly to the case at bar. *First*, Vail Health seeks documents that it has alleged are trade secrets, but its Counterclaim does not mention that it is the owner of the trade secrets. *Second,* it seeks invasive discovery into what it alleges are trade secrets, yet Vail Health itself has done nothing to comply with the disclosure requirements of Rule 26(a)(1). *Third,* Vail Health has not provided any explanation as to what it did to protect the secrecy of the purported trade secrets prior to October 30, 2012, when Proaxis was the operator of the physical therapy clinic, or how it could possibly have done so when the clinic was operated by Proaxis. *Fourth,* Vail Health has not provided any information as to whether one, two, or all of the alleged trade secrets were widely known inside of Vail Health or outside of it. *Fifth*, the time and expense Vail Health expended in developing the trade secrets, or how that would have worked given the fact that is was just the hospital and Proaxis was the entity providing the physical therapy services. *Sixth,* Vail Health has not explained how Winninger could have had an

---

[12]     *Id.*

6

obligation of trust or confidence to Vail Health when, as it now admits, she was never employed by Vail Health, nor did she have any employment agreement with Vail Health that restricted her access to or disclosure of confidential documents.[13]

As for the harm to Winninger, Vail Health is announcing publicly that she "stole" documents from her prior employer Proaxis. This public allegation, which emanates from ¶ 49 of its Counterclaim, embarrasses, harasses, causes undue expense and delay, when Vail Health and its legal counsel know full-well that there is no truth to the allegation. Vail Health is simply using the Eagle County legal process to continue (or complete) its character assassination of Winninger. The Special Master should have, and may well have full opportunity to do so, imposed conditions upon such discovery pursuant to Rule 26(c)(7). The conditions should be that prior to the discovery of the Proaxis Documents:

---

[13]     *See, e.g., Boggild v. Kenner Products, Div. of General Mills*, 576 F. Supp. 533, 537 (S.D. Ohio 1983) ("The holder of a trade secret is protected against the disclosure or unauthorized use of the trade secret by those to whom it has been confided on condition that the secret not be disclosed."); *American Nursing Care of Toledo v. Leisure*, 609 F. Supp. 419, 432 (N.D. Ohio 1984) ("The Court finds that to require plaintiffs to turn over their employee and customer lists to defendants would work a forfeiture of their businesses. These lists are not trade secrets. Plaintiffs, not defendants, developed them."); *Flotec, Inc. v. Southern Research, Inc., (S.D.Ind. 1998)*, 16 F. Supp. 2d 992, 1004-5 (S.D. Ind. 1998) ("The basic problem for Flotec in this case is that it did not take even the most elementary steps to protect the technical drawings it provided to SRI. The drawings did not bear a legend that they were confidential. Flotec did not ever tell SRI that it considered the information confidential, let alone obtain a confidentiality agreement when it provided the information to SRI, and Flotec never sought assurances from SRI that it would keep the information confidential. There also is no evidence that SRI ever gave Flotec any indication that it believed the information was confidential or that it intended to keep the information confidential."); *Zemco Manufacturing, Inc. v. Navistar International Transportation Corp.*, 759 N.E.2d 239, 250 (Ind. Ct. App. 2001) ("Although Zemco took some measures within its own company and with its own employees to protect the information contained in its shackle machines, it did very little, if anything at all, to protect the information from outside sources. Under these circumstances, the trial court could have found as a matter of law that Zemco had not taken reasonable steps to maintain the secrecy of its proprietary information, and therefore the information did not constitute a trade secret protected by the Trade Secrets Act."); *Coleman v. Vukovich*, 825 N.E.2d 397, 406 (Ind. Ct. App. 2005) ("The lax security at IMI and its haphazard approach to confidentiality agreements were insufficient to confer trade secret status on the customer information at issue in this case. Although Coleman may have subjectively believed that the customer information he gathered over his years in the magnet business constituted trade secrets, his and IMI's actions did not reflect that belief. Coleman and IMI took insufficient actions to protect the secrecy of the customer information to accord trade secret status to the information.").

1. Vail Health must fully and completely—without evasion—provide Plaintiffs with its C.R.C.P. 26(a)(1) disclosures with respect to the allegations contained in ¶ 49 of its Amended Counterclaim that Winninger stole trade secrets or other documents prior to her departure as an employee of Proaxis in May 2012;

2. Vail Health must identify with particularity each trade secret within the Proaxis Documents that it contends were misappropriated from Vail Health by Winninger prior to May 31, 201;.[14]

3. An evidentiary hearing at which live testimony is heard by the Court to be held prior to any production of Proaxis Documents, wherein Vail Health must present *prima facie* showing of the threshold issues establishing the existence of a trade secret, which shall include:

    (a) That Vail Health was the medical provider (*i.e.*, owner of the patient medical records[15]) of the physical therapy treatment provided to patients during the time that Proaxis operated the physical therapy clinic doing business under the trade name "Howard Head Medical Center;"

    (b) The time and expense Vail Health invested in the development of the trade secrets prior to May 31, 2012 (the "Proaxis Trade Secrets");

    (c) The information contained in the alleged trade secrets was not generally available to the public; [16]

    (d) The procedures employed and the extent to which Vail Health, as purported owner of the Proaxis Trade Secrets, protected the secrets from disclosure to others.[17]

4. Vail Health must provide *prima facie* proof that Winninger was an employee of Vail Health and owed a duty of trust and confidence to Vail Health.[18]

For these reasons and more, the Special Master's Oral Order is manifest error and should be vacated.

---

[14]     *Remington*, 952 F.2d at 1032.
[15]     *Treece, Alfrey, Musat & Bosworth, P.C. v. Dep't of Finance*, 298 P.3d 993, 999 (Colo. Ct. App. 2011).
[16]     *Remington*, 952 F.2d at 1032.
[17]     *Ruckleshouse v. Monsanto Co.*, 467 U.S. 986, 1002 (1984).
[18]     *Gates Rubber Co. v. Brando*, 9 F.3d 823 (10th Cir. 1993).

**II.    RULE 26(c) SHOULD PRECLUDE THE DISCLOSURE OF OTHER DOCUMENTS THAT VAIL HEALTH ALLEGES WINNINGER "STOLE" BECAUSE IT HAS NOT DEMONSTRATED ANY OWNERSHIP INTEREST IN THE DOCUMENTS.**

As to the civil theft claim, Colorado's civil theft statute is "part of an extensive theft statute whose origins predate the turn of the century"[1] that limits its application to those who are owners of the property allegedly stolen:

> Rights in Stolen Property.   All property obtained **by theft, robbery, or burglary** shall be restored to the **owner**, and no sale, whether in good faith on the part of the purchaser or not, shall divest the **owner** of his right to such property.  The **owner** may maintain an action not only against the taker thereof but also against any person in whose possession he finds the property.  In any such action, the **owner** may recover….[1]

In addition to the obvious plain language of the statute, the Colorado Supreme Court has emphasized that "the action described in § 18-4-405 allows an **owner** to regain property obtained by 'theft, robbery, or burglary' rather than property that has been 'wrongfully taken or detained.'"[1]  ""[T]he statute allows a **rightful owner** to reacquire stolen property, but says nothing of the **owner's rights** to property or proceeds for which the stolen property may have been exchanged.  The **owner has the right to the property** 'against any person in whose possession he finds *the property*.'"[19]

---

[19]      *In re the Marriage of Pamela Allen,* 724 P.2d 651, 656 (Colo. 1986).  *See also West v.* Roberts, 143 P.3d 1037, 1040 (Colo. 2006) ("the owner must prove")*; Michaelson,* 923 P. 2d at 241; *Huffman v. Westmoreland Coal Co.*, 205 P.3d 501, 509 (Colo. Ct. App. 2009) (§ 18-4-405 "provides independent civil remedies to the owner of stolen property"); *Cedar Lane Inv. v. Am. Roofing Supply of Colo. Springs, Inc.*, 919 P.2d  879, 882 (Colo. Ct. App. 2000) (emphasizing the need for "rightful ownership," although the "property may be recoverable even if the person in possession is a bona fide purchaser for value").  *Steward Software, LLC v. Kopch,* 275 P.3d 702, 709-10 (Colo. App. 2010).  "[S]ection 18-4-405 allows for the recovery of the stolen property itself and, in some cases, for treble damages…."[19]  Colorado's civil theft statute "provides independent remedies to the **owner** of stolen property in circumstances specifically described in the statute."[19]  Vail Health is not the owner of the medical records of Proaxis because prior to October 31, 2012, Proaxis was the medical provider and thus the owner of the records.  *Treece, Alfrey, Musat & Bosworth, P.C. v. Dep't of Finance*, 298 P.3d 993, 999 (Colo. App. 2011).

For very similar reasons to those that apply to trade secrets issue, the Special Master should condition Vail Health's access to the allegedly "stolen" documents until it first provides a *prima facie* showing of ownership to the documents it alleges Winninger "stole."

## III.   RULE 26(c) SHOULD CONDITION PRODUCTION OF THE PROAXIS DOCUMENTS BECAUSE THEY ARE SOUGHT FOR AN IMPROPER PURPOSE.

Winninger is entitled to the protections afforded by Rule 26(c) because Vail Health seeks their production for an improper purpose: to cause her to incur additional cost and expense in this litigation, to harass her and they seek to use the court system to reach an improper result.  After three years of defamatory rhetoric and assertions in this Court that Winninger "stole" 3,116 Vail Health patient files, the Independent Expert Michael Horwith found that David Cimino had sent her an e-mail after he left Vail Health of a single 1-page document that was not a trade secret and did not disclose any HIPAA protected information.  The document has *zero* value.  After three years of defamatory rhetoric and assertions in Court that Winninger improperly solicited Vail Health patients, Vail Health still cannot identify a single patient that Winninger or Cimino solicited.  Coming up dry on such serious accusations and facing liability for its tortious conduct, Vail Health has now pivoted to make the same allegations of misappropriation of trade secrets, civil theft, conspiracy, etc. with respect to documents relating to her employment with Proaxis that ended in May 2012.  Against that record, Winninger is entitled to the protections afforded by Rule 26(c).

## IV.   PLAINTIFFS OBJECT TO MANY OF THE OTHER DISCOVERY-RELATED ISSUES WITH RESPECT TO DEFENDANTS' MOTION TO COMPEL.

Out of an abundance of caution, Plaintiffs object to many other discovery issues related to Defendants' motion to compel.  There is no written order yet issued on these issues, but Plaintiffs' and Defendants' understanding about the instructions provided by the Special Master are different.  Plaintiffs will not know whose interpretation is correct—if any—until the Special Master issues its discovery order.  The parties have attempted to negotiate a proposed joint order but that was not possible.  At the eleventh hour, however, Defendants provided a proposed order, which they sent to the Special Master that is materially different from the last version exchanged by the parties.  Plaintiffs requested additional time to consider the latest version, but in any event, the Special Master still has not yet determined the order that will be adopted.  Until the Special Master issues his order, Plaintiffs cannot object because there is no final order.  But to ensure they have preserved these issues, Plaintiffs outline the disputes between the parties, as well as Plaintiffs' other discovery objections:

- ▪ Defendants have asserted that they are entitled to all emails and texts, regardless of whether they are relevant to the claims or defenses or their requests for production of documents.  Plaintiffs dispute that this is what the Special Master intended.

- ▪ Defendants have stated that Plaintiffs must log all nonrelevant documents on a log and that the Special Master must review that log and the documents withheld.

- ▪ Defendants claim the relevant period of time begins on October 1, 2015, although Judge Gannett ruled the time period is November 1, 2015.

▪  Defendants appear to assert that Plaintiffs must produce all emails for all Sports Rehab employees, even though the production in this case was limited to those employees who were employed by Sports Rehab at the time Cimino was employed.

▪  Defendants contend that an order needs to be issued with respect to documents already produced;

▪  Defendants scope of relevant documents has gone beyond Rule 26 and their discovery requests.  Correspondingly, Defendants identification of nonrelevant documents has been extremely limited and essentially seeks all information regardless of relevancy or not.

Additionally, there are items in the proposed discovery order that have not yet been discussed with the Special Master due to time constraints, although the Special Master requested that the parties try to reach agreement on those issues.  The parties have not reached agreement, which include:

▪  The scope of patient information that needs to be produced.  Judge Gannett previously limited this information to the overlap patients—that is, those patients that are common between the Sports Rehab and Vail Health.  The Special Master has indicated that he no longer believes that to be the appropriate scope.  Plaintiffs have technical difficulties in producing the information requested by Defendants due to the limitation in how the medical records are stored—that is, they do not have a software system that easily generates the types of reports that Defendants request. Moreover, there are over 1,000 patients, and Defendants' request is not proportional to the needs of the case, particularly when Defendants have made no showing of even one patient by Plaintiffs.

▪  Plaintiffs also object to the requirement that they create a log of emails, texts, and documents in which patient treatment information is discussed. This log and the associated documents, according to Defendants, is to be provided to the Special Master and he will review them to determine whether they were properly withheld.  Plaintiffs object to this process as time consuming, irrelevant, and burdensome, and costly.  There has been no rationale provided as to why this is necessary, particularly when Defendants themselves have said that they do not seek treatment information.

Finally, Plaintiffs are not a big corporation with a lot of attorneys, staff, and financial resources to complete such onerous tasks.  Defendants are fully aware of this, and the process proposed fails to take into account the proportionality factors in C.R.C.P. 26(b)(1), which include:   "the importance of the issues at stake," "the amount in controversy," " "the parties' resources," and "whether the burden or expense of the proposed discovery outweighs its likely benefit."  None of these factors auger in favor of the expansive discovery that Defendants seek.

Plaintiffs therefore reserve the right to file its objections to the written order on discovery that will soon be forthcoming from the Special Master.  But until that order is issued, Plaintiffs cannot know exactly what their objections, if any, will be.  By filing this objection now, they seek to preserve any objections to the forthcoming written order from the Special Master.

## CONCLUSION

For the foregoing reasons, the Special Master's Oral Order should be vacated as to the Order on the Proaxis documents.  Further, Plaintiffs seek to preserve any other discovery-related issues that may be set out in the discovery order to be issued by the Special Master on Defendants' motion to compel.

Dated:  September 18, 2019

s /Alan L. Kildow
Jesse Wiens, Colo. #33903
Fahrenholtz & Wiens LLC
100 West Beaver Creek Boulevard
Suite 236
Avon, CO 81620
Telephone: (970) 949-6500
E-mail:  fwlawyers@gmail.com

Sonya R. Braunschweig (admitted *pro hac vice*)
5501 Irving Avenue South
Minneapolis, MN  55419
Telephone:  (612) 819-2304
E-mail:  sonya.braunschweig@gmail.com

Alan L. Kildow (admitted *pro hac vice*)
15204 Wildwood Road
Burnsville, MN 55306
Telephone:  (970) 390-6675
E-mail:  alkildow@aol.com

Attorneys for Plaintiff and Counter-Defendants
Lindsay Winninger and Sports Rehab Consulting LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2019, I served a true and correct copy of Plaintiffs' Objection to and Appeal From the September 11, 2019 Oral Order of the Special Master Compelling Winninger to Disclose Alleged Trade Secret Information and Preservation of Other Discovery-Related Issues, through the Court's e-filing system on:

Charles L. Casteel
Jacqueline V. Roeder
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO 80202
Counsel for Defendants/Counter-Plaintiff

Daniel M. Reilly
Clare S. Pennington
John M. McHugh
1700 Lincoln Street, Suite 2400
Denver, Colorado 80203
Counsel for Defendant Kirchner

John W. Madden, III
The Madden Law Firm
999 18th Street
Suite 1500 South
Denver, CO 80202
Counsel for Third-Party Defendant

_s/ Jesse Wiens_
Jesse Wiens