**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 19-cv-2075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company, and
LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC., a Colorado nonprofit corporation d/b/a Vail Health,

      Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR STAY**
**PURSUANT TO *COLORADO RIVER* DOCTRINE OR, ALTERNATIVELY,**
**STAY DISCOVERY**

---

This antitrust action is before the Court on Defendant Vail Clinic, Inc.'s ("Vail

Health") Motion to Dismiss or Stay Pursuant to *Colorado River* Doctrine or,

Alternatively, Stay Discovery ("Motion").  (ECF No. 31.)  Plaintiffs Sports Rehab

Consulting LLC ("SRC") and Lindsay Winninger (jointly, "Plaintiffs") responded in

opposition (ECF No. 38), and Vail Health replied (ECF No. 41).  For the reasons

explained below, the Motion is denied.

**I.  BACKGROUND**

The following factual summary is drawn from Plaintiffs' Amended Complaint

(ECF No. 26), except where otherwise stated.  The Court assumes the allegations

contained in the Amended Complaint to be true for the purpose of deciding the Motion.

*See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Lindsay Winninger is a leading sports physical therapist in the evaluation and

treatment of hip and knee injuries.  (ECF No. 26 ¶¶ 10, 18.)  From January 2008 to May 2012, Winninger worked as a physical therapist for Rehabilitation & Performance Center at Vail, LLC in Vail, Colorado.  (*Id.* ¶ 19.)  In May 2012, she resigned to become the head physical therapist for the U.S. Women's Ski Team.  (*Id.* ¶¶ 20–21.)  After the 2014 Winter Olympics, Winninger became professional alpine skier Lindsey Vonn's private, full-time physical therapist. (*Id.* ¶ 22.)

Vail Health is a Colorado nonprofit community hospital, with its principal office in Vail, Colorado.  (*Id.* ¶ 12.)  Through its Howard Head Sports Medicine physical therapy unit ("Howard Head"), Vail Health provides over 80% of the physical therapy services in the Vail Valley physical therapy market.  (*Id.* ¶ 2.)  Howard Head relies on the Steadman Orthopedic Clinic as a significant source of physical therapy patient referrals. (*Id.* ¶¶ 4, 29.)

In 2014, Winninger founded SRC, a concierge-type physical therapy service, and opened a Vail location in December 2015.  (*Id.* ¶¶ 16, 24.)  In 2016, the Steadman Orthopedic Clinic and the Steadman Philippon Research Institute established a consulting relationship with Winninger through which she developed a rehabilitation outcomes database and wellness programs for Steadman patients.  (*Id.* ¶ 27.)

After opening SRC, in late 2015 Winninger hired David Cimino, a physical therapist employed by Howard Head.  (*Id.* ¶ 102.)  Before leaving Howard Head, Cimino downloaded Vail Health files, including patients' health information, to USB devices that he took with him.  (*Id.* ¶¶ 105, 116–17.)  Upon discovering Cimino's actions, Vail Health took various measures in response throughout 2016, including: reporting a breach of

2

patient health information to the U.S. Department of Health & Human Services; posting a public notice and sending letters to patients explaining that their personal health information might have been compromised; reporting Cimino's theft to the Vail Police Department and the Eagle County District Attorney's Office; and responding to a request for information about the data breach from the Colorado Department of Regulatory Agencies.  (*Id.* ¶¶ 106, 109, 112, 119, 134, 138–39.)

In addition, Vail Health, through its attorney, Janet Savage, allegedly made misleading statements to law enforcement about purported felonies in which they asserted that Winninger and SRC were involved, and that Winninger and SRC were aware of Cimino's activities.  (*Id.* ¶¶ 121, 124.)  Vail Health's statements prompted the Steadman entities' decision to end their consulting relationship with Plaintiffs.  (*Id.* ¶¶ 179–81.)  In 2015, Vail Health attempted (but failed) to establish a joint venture with the Steadman Orthopedic Clinic to protects its source of patient referrals and expand its monopoly over the Vail Valley physical therapy market.  (*Id.* ¶¶ 61–74.)

In April 2017, Plaintiffs filed an action against Vail Health and its CEO, Doris Kirchner, in Eagle County District Court, Case No. 2017CV30102 ("State Court Action"), alleging that Vail Health and Kirchner falsely stated to various members of the Vail Valley community that Plaintiffs and Cimino stole Vail Health documents and patient records.  (ECF No. 31-2.)  Plaintiffs alleged that Vail Health knew the statements were false but "continued to maliciously make them in an effort to dissuade orthopaedic clinics, doctors, and patients from using Winninger and her company's physical therapy services" and "drive Winninger and her company out of business."  (*Id.* ¶ 2.)  Plaintiffs asserted four causes of action: defamation, tortious interference with contract, tortious

interference with current business relationship, and tortious interference with prospective business relationship.  (*Id.* ¶¶ 73–101.)  In July 2017, Vail Health and Kirchner filed an answer, counterclaims, and a third-party complaint against Cimino.  (ECF No. 31 at 3.)  In 2018, Plaintiffs filed an Amended Complaint and asserted 24 defamation claims and three tortious interference claims.  (ECF No. 31-4.)

In January 2019, Vail Health and Kirchner moved for summary judgment on the defamation claims.  While that motion was pending, Plaintiffs attempted to amend their complaint to add claims for exemplary damages and monopolization claims under the Colorado Antitrust Act.  (ECF No. 31 at 4–5; ECF No. 38-1.)  Ultimately, following a complicated procedural process, the state district court determined it would not permit amendment and, in relevant part, dismissed the state antitrust claims without prejudice.  (ECF No. 31 at 5; ECF No. 38 at 2, 5; ECF No. 38-9; ECF No. 41-1.)  The court granted summary judgment in favor of Vail Health and Kirchner on 16 of the defamation counts (ECF No. 31 at 4; ECF No. 31-5), and the case proceeded.

On July 17, 2019, Plaintiffs filed this lawsuit ("Federal Court Action"), naming Vail Health as the only defendant.  (ECF No. 1.)  On September 27, 2019, Plaintiffs filed an Amended Complaint asserting two causes of action under Section 2 of the Sherman Act, 15 U.S.C. § 2: monopolization and attempt to monopolize.[1]  (ECF No. 26 ¶¶

---

[1] "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony. . . ."  15 U.S.C. § 2.

"'The offense of monopoly under § 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power.'"  *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966)).

"Similarly, an attempt claim must show (1) that the defendant has engaged in predatory

242–73.)

On October 10, 2019, Vail Health filed the Motion, arguing the Court should dismiss or stay the Federal Court Action because the State Court Action is parallel and the *Colorado River* factors weigh in favor of a stay.  (ECF No. 31.)  Plaintiffs respond that the Court cannot dismiss or stay the Federal Court Action because it involves claims under the Sherman Act, over which the Court has exclusive jurisdiction, the cases are not parallel, and the *Colorado River* factors weigh against abstention.  (ECF No. 38.)

## II. LEGAL STANDARD

The *Colorado River* doctrine governs whether a district court should stay or dismiss a federal suit pending the resolution of a parallel state court proceeding.  *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18 (1976).  The Supreme Court has held that federal courts may not use any of the abstention doctrines to refuse to exercise jurisdiction over a suit for non-equitable relief that duplicates an ongoing state litigation.  *See id.* at 813, 816–18.  However, the Supreme Court also concluded that judicial economy concerns may justify deferral of a federal suit when pending state litigation will resolve the issues presented in the federal case.  *See id.* at 817–20.  Under the abstention doctrines, the Court is required to abstain in many circumstances; however, whether to decline to exercise jurisdiction

---

or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power, with the third element requiring consideration of the relevant market and the defendant's ability to lessen or destroy competition in that market." *Id.* (quoting *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993) (internal quotations and alterations omitted)).

Under both types of § 2 claims, a plaintiff must plead both power in a relevant market and anticompetitive conduct.  *Id.*

pursuant to *Colorado River* is discretionary.  *Rienhardt v. Kelly*, 164 F.3d 1296, 1303 (10th Cir. 1999).

The Tenth Circuit has warned that the appropriate circumstances for deferral under the *Colorado River* doctrine are "considerably more limited than the circumstances appropriate for abstention" and must be "exceptional."  *Id.* (quoting *Colorado River*, 424 U.S. at 817–18).  Accordingly, the Court's "task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction . . .; rather, the task is to ascertain whether there exist *exceptional circumstances, the clearest of justifications*, that can suffice under *Colorado River* to justify the surrender of the jurisdiction."  *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25–26 (1983)).  Simply stated, "[d]espite the temptation for federal courts to use the [d]octrine as a means of stemming the rising tide of litigation, suits in federal court are not easily swept away by *Colorado River*."  *Id.*

The first step under the *Colorado River* analysis is determining "whether the state and federal proceedings are parallel."  *Allen v. Board of Educ., Unified Sch. Dist., 436*, 68 F.3d 401, 403 (10th Cir. 1995).  Suits are parallel if "substantially the same parties litigate substantially the same issues in different forums."  *Id.*  The court examines "the state proceedings *as they actually exist* to determine whether they are parallel to the federal proceedings, resolving any doubt in favor of exercising federal jurisdiction."  *Id.* (internal citations and quotation marks omitted).  If the cases are not parallel, the federal court must exercise jurisdiction.  *Id*.  If the cases are parallel, the federal court must consider a multitude of other factors in deciding whether to surrender jurisdiction until the conclusion of state court proceedings.  *Id*.

6

The Supreme Court has identified several non-exclusive factors to consider in evaluating whether to decline jurisdiction, including: (1) whether the state or federal court has assumed jurisdiction over property in dispute; (2) the inconvenience to the parties of the federal forum; (3) avoiding piecemeal litigation; (4) the order in which the courts obtained jurisdiction; (5) the vexatious nature of the litigation; (6) whether federal law provides the rule of decision; and (7) the adequacy of the state court proceeding to protect the federal plaintiff's rights.  *See Colorado River*, 424 U.S. at 818.  These factors are not a "mechanical checklist"; rather, the Court should "careful[ly] balanc[e] . . . the most important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."  *Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994).

### III. ANALYSIS

First, the Court examines whether the State Court Action and the Federal Court Action are parallel.  *Fox*, 16 F.3d at 1081.  The parties in both lawsuits are essentially the same: Vail Health is a defendant and Winninger and SRC are plaintiffs in both lawsuits.  That Kirchner is a defendant in the State Court Action is insignificant.  *See CNSP, Inc. v. City of Santa Fe*, 753 F. App'x 584, 589 (10th Cir. 2018) ("We fail to see how inclusion of Infinite Interests as a state-court defendant defeats the determination that the state and federal cases are parallel.").  Thus, the parties are parallel.

Next, the Court addresses whether the parties are litigating "substantially the same issues in different forums."  *Fox*, 16 F.3d at 1081.  Vail Health argues the issues in dispute are substantially the same, and that while the nomenclature of the claims in the cases is different—defamation and tortious interference claims in the State Court

7

Action, and federal antitrust claims in the Federal Court Action—the substance of the claims militates in favor of finding the cases parallel.  (ECF No. 31 at 8–9.)  Specifically, Vail Health asserts that "at its core, Plaintiffs' Federal Court Action alleges that Vail Health abused its alleged market power by making false statements regarding Plaintiffs."  (*Id.* at 9.)  Vail Health further contends that this claim is also the core of the allegations in the State Court Action: that the defendants made defamatory statements to drive Winninger out of business. (*Id.*)  Considering the similarity of the issues, Vail Health argues that a finding that the allegedly defamatory statements were not made or were true in the State Court Action would "gut" or, at a minimum, "materially narrow" Plaintiffs' antitrust claims in the Federal Court Action.  (*Id.* at 11.)  Because the substance of the claims, as opposed to their labels, determines whether the proceedings are parallel, Vail Health argues the Court should find the actions are parallel.

Vail Health acknowledges that the Sherman Act claims fall within the exclusive jurisdiction of the federal courts.  (ECF No. 31 at 9.)  However, it contends that does not preclude a finding of parallelism because proceedings are parallel where a prerequisite to a finding of liability in the federal lawsuit is being adjudicated in the state lawsuit.  (*Id.* (citing *Vail Servs. Grp., LLC v. Dines*, 2018 WL 3069525, at *2 (D. Colo. June 21, 2018)).

In response, Plaintiffs argue *Colorado River* abstention is improper when, as here, a plaintiff raises a nonfrivolous claim which is within the exclusive jurisdiction of

the federal court.[2]  (ECF No. 38 at 6–7.)  Regarding whether the cases are parallel,

Plaintiffs concede the cases have parties and certain facts in common.  (ECF No. 38 at

2.)  But Plaintiffs underscore a crucial difference: the lack of antitrust claims in the State

Court Action.  Plaintiffs argue that while factual overlap exists regarding Vail Health's

allegedly false statements to Plaintiffs' business associates, most facts relevant to the

federal antitrust claims will never be part of the State Court Action, such as legal and

factual issues of relevant product and geographic markets, Vail Health's market share,

barriers to entry and resulting monopoly power, Vail Health's anticompetitive

exclusionary conduct, antitrust injury, harm to competition, and the applicability of the

*Noerr-Pennington* doctrine.  (*Id.*)  As such, Plaintiffs argue resolution of the State Court

Action will not effectively dispose of the claims in the Federal Court Action, and the

Court should therefore decline to stay or dismiss the Federal Court Action under

*Colorado River*.  For the following reasons, the Court agrees.

While Vail Health advocates for a stay or dismissal of the Federal Court Action

despite the presence of federal antitrust claims that fall within federal courts' exclusive

jurisdiction, whether the Court may do so is far from clear.  "Courts analyzing this issue

have split."  *Gerbino v. Sprint Nextel Corp.*, 2013 WL 2405558, at *4 (D. Kan. May 31,

2013).  Some courts have found the federal and state actions may still be parallel,

despite the presence of a claim reserved for the exclusive jurisdiction of federal courts.

*See, e.g., Klein v. Walston & Co.*, 432 F.2d 936, 937 (2d Cir. 1970); *Krieger v. Harris*

---

[2] The parties agree that the Sherman Act claims fall within the exclusive jurisdiction of
the federal courts. (ECF No. 31 at 9; ECF No. 38 at 2.) *See* 15 U.S.C. § 15 ("any person who
shall be injured in his business or property by reason of anything forbidden in the antitrust laws
may sue therefor in any district court of the United States in the district in which the defendant
resides or is found or has an agent . . .").

*Teeter Supermarkets, Inc.*, 2013 WL 5304847, at *4 (W.D.N.C. Sept. 19, 2013); *Gerbino*, 2013 WL 2405558, at *4;  *Calleros v. FSI Int'l, Inc.*, 892 F. Supp. 2d 1163, 1170–71 (D. Minn. 2012); *In re Novell*, *Inc. S'holder Litig.*, 2012 WL 458500, at *7 (D. Mass. Feb. 10, 2012); *McCreary v. Celera Corp.*, 2011 WL 1399263, at *4 (N.D. Cal. Apr. 13, 2011); *Int'l Jensen Inc. v. Emerson Radio Corp.*, 1996 WL 494273, at *4 (N.D. Ill. Aug. 27, 1996); *Lorentzen v. Levolor Corp.*, 754 F. Supp. 987, 994–95 (S.D.N.Y. 1990); *One Up, Inc. v. Webcraft Techs., Inc.*, 1989 WL 118725, at *5 (N.D. Ill. Sept. 22, 1989).

Other courts have held that, subject to very limited exceptions, the cases may not be parallel as a matter of law when the federal case contains a claim with exclusive federal jurisdiction.  *See, e.g., Medema v. Medema Builders, Inc.*, 854 F.2d 210, 215 (7th Cir. 1988) ("where a plaintiff's nonfrivolous claim invokes the exclusive jurisdiction of federal courts, the *Colorado River* stay is not appropriate"); *Andrea Theatres, Inc. v. Theatre Confections, Inc.*, 787 F.2d 59, 62 (2d Cir. 1986) (abstention "clearly improper when a federal suit alleges claims within the exclusive jurisdiction of the federal courts"); *Silberkleit v. Kantrowitz*, 713 F.2d 433, 436 (9th Cir. 1983).

 While the Tenth Circuit has not explicitly considered this issue, in analyzing whether *Colorado River* abstention was appropriate, it noted that "exclusive federal jurisdiction over patent-infringement claims would necessarily result in some degree of piecemeal litigation," suggesting a tendency against abstention in cases involving issues reserved for federal jurisdiction.  *See Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1189 (10th Cir. 2015); *see also Shepard's McGraw-Hill, Inc. v. Legalsoft Corp.*, 769 F. Supp. 1161, 1166 (D. Colo. 1991) ("[A]bstention under *Colorado*

*River* is clearly inappropriate here, where the claims are within the exclusive jurisdiction of the federal courts.").

Although Vail Health cites cases supporting the argument that the Court may stay the Federal Court Action despite the presence of Sherman Act claims under certain circumstances, those cases are distinguishable, and more importantly, those circumstances are not present here.  Unlike the instant actions, the cases on which Vail Health relies involved antitrust claims pending in the state action or claims in the state action which were essentially outcome-determinative in the federal action. *See Gerbino*, 2013 WL 2405558, at *3 (staying federal action where federal securities claims would be "effectively disposed of" by rulings in state court but recognizing "substantial," "well-reasoned" authority exists to support an opposite ruling); *Ricky's Diesel Serv., Inc. v. United Diesel, L.L.C.*, 2003 WL 21939775, at *1 (E.D. La. Aug. 12, 2003) (staying federal action asserting Sherman Act claims when state action asserted claims under Louisiana antitrust statute); *Brown v. First State Bank of Harvard*, 1995 WL 756858, at *2 (N.D. Ill. Nov. 27, 1995) (dismissing with prejudice a federal action asserting federal antitrust claims based on *Colorado River* factors and the conclusion that state foreclosure law governed the essence of the dispute); *Allied Mach. Serv., Inc. v. Caterpillar, Inc.*, 841 F. Supp. 406, 408–11 (S.D. Fla. 1993) (staying federal action asserting federal antitrust claims when state action asserted virtually same antitrust violations based on the state antitrust statute); *Pirkle v. Ogontz Controls Co.*, 1987 WL 19882, at *2 (E.D. Pa. Nov. 12, 1987), *aff'd*, 852 F.2d 1293 (Fed. Cir. 1988) (staying federal action where issue of patent ownership being litigated in state court was "very pertinent" to the plaintiffs' ability to satisfy federal antitrust injury requirement); *Kartell v.*

11

*Blue Shield of Mass., Inc.*, 592 F.2d 1191, 1195 (1st Cir. 1979) (remanding federal action asserting Sherman Act claims with instructions to retain jurisdiction and to abstain "pending resolution of state law questions by the Massachusetts courts").

Here, where there are Sherman Act claims pending in the Federal Court Action, coupled with the fact that in the State Court Action there are no pending state antitrust claims, or other claim which would effectively dispose of the federal action, the Court anticipates that the Tenth Circuit would find deferral under *Colorado River* an abuse of discretion. Regardless, even if the Court had discretion to stay the case despite the federal antitrust claims, as explained below, the cases being presently litigated by the parties are in fact not parallel.

At first blush, it appears as though the factual basis and issues in the State Court Action and the Federal Court Action are overwhelmingly the same. Both lawsuits arise out of Vail Health's alleged attempts to exclude Plaintiffs from the Vail Valley physical therapy market. But the lawsuits are critically different. In the State Court Action, Plaintiffs have asserted defamation and tortious interference claims; their antitrust claims were dismissed. By contrast, in the Federal Court Action, Plaintiffs have asserted two federal antitrust claims. As Plaintiffs point out, issues relevant to antitrust claims—such as the proper definition of relevant geographic and product markets, whether Vail Health possesses monopoly power, and whether Vail Health's attempt to monopolize through joint venture agreements created § 2 liability—will not be decided in the State Court Action. (ECF No. 38 at 9.)

While there is undeniably some overlap in the issues present in both lawsuits, as Plaintiffs emphasize, even if a jury in the State Court Action found some of the false

statements were not made, there are other grounds for § 2 liability.  Plaintiffs have alleged other examples of Vail Health's anticompetitive conduct in addition to the defamatory statements, such as Vail Health's placement of anticompetitive restrictions in the Steadman Clinic lease and in physical therapists' employment agreements, and its consideration of a joint venture with Steadman.  (ECF No. 26 ¶¶ 61–93.)

A federal court may enter a stay under the *Colorado River* doctrine only if it has "full confidence" that the parallel state litigation will end the parties' dispute.  *See Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988).  Had the state antitrust claims survived in the State Court Action, the result here may very well have been different.  However, in determining whether cases are parallel, the Court looks at the state case as it actually exists; it does not consider how the state proceedings could have been brought in theory.  *Fox*, 16 F.3d at 1081.  As currently postured, while resolution of the claims in the State Court Action may narrow the scope of the Federal Court Action, it is far from certain that it will "effectively dispose of" the federal antitrust claims.[3]  *See Gerbino*, 2013 WL 2405558, at *5.  As such, the Court finds that the actions are not parallel.

Given the finding that the lawsuits are not parallel, *Colorado River* abstention does not apply, and the Court need not address whether the *Colorado River* factors

_____

[3] In its reply, Vail Health only states there is a "substantial likelihood that resolution of factual issues in the State Court Action will render litigation of the claims in the Federal Court Action unnecessary" (ECF No. 41 at 8) and "staying this action . . . will . . . likely leave this Court with nothing further to do" (ECF No. 41 at 9).  But, considering the presence of antitrust claims within the federal courts' exclusive jurisdiction, the Court concludes that "substantial likelihood" is not enough.  To justify *Colorado River* abstention, the Court must "necessarily contemplate that . . . [it] will have nothing further to do in resolving any substantive part of the case."  *Fox*, 16 F.3d at 1081–82.

13

weigh in favor of a stay.  *See United States v. City of Las Cruces*, 289 F.3d 1170, 1182 (10th Cir. 2002) ("[A] finding of parallel proceedings is a threshold condition for engaging in the *Colorado River* analysis.").  Similarly, Vail Health's request that the Court stay discovery pending resolution of the Motion (ECF No. 31 at 13–15) is moot.

## IV. CONCLUSION

For the reasons set forth above, it is ORDERED that:

1.     Defendant's Motion to Dismiss or Stay Pursuant to *Colorado River* Doctrine or, Alternatively, Stay Discovery (ECF No. 31) is DENIED;

2.     The stay of discovery (ECF No. 53) is LIFTED; and

3.     The parties are DIRECTED to contact the chambers of Magistrate Judge Gordon P. Gallagher by no later than August 25, 2020 in order to promptly set a Scheduling Conference, or such other proceeding Judge Gallagher deems appropriate to move this case forward.

Dated this 21st day of August, 2020.

BY THE COURT:

William J. Martínez
United States District Judge

14