# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation.

      Defendant.

---

**PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION
TO DEFENDANT VAIL HEALTH**

---

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiffs Sports Rehab Consulting. LLC and Lindsay Winninger request that Defendant Vail Clinic, Inc. ("Vail Health") admit to the following admissions within 30 days from the date of service and according to the following instructions and definitions.

## <u>INSTRUCTIONS</u>

1.    In answering these requests for admission, Defendant is required to furnish all information known by or available to it.  If any of these requests cannot be answered in full, the request shall be answered to the fullest extent possible.

2.    If Defendant wishes to object to a request, it must state the reasons for that objection.  Defendant's answer must specifically deny the matter requested or set forth in detail the reasons why it cannot truthfully admit or deny the matter.  Any denial must fairly meet the substance of the requested admissions, and when good faith requires that

1

Defendant qualifies an answer or denial, Defendant must specify the part of the request that is true and qualify or deny the remainder.

3.    Defendant may not give lack of information or knowledge as a reason for the failure to admit or deny a request unless it states that it has made a reasonable inquiry and that the information known or readily obtainable by it is insufficient to enable Defendant to admit or deny the specific request.

4.    Defendant is further instructed that if a Court determines that any answer does not comply with the requirements of Fed. R. Civ. P. 36, the Court may order either that the matter requested is admitted or that an amended answer be served.  Any matter admitted under Rule 36 is conclusively established unless the Court on motion permits the withdrawal or amendment of the admission.

5.    If Defendant is asked to admit facts related to specific documents that have been produced in this litigation, those documents are identified by Bates number.  If the request makes reference to a document not produced in this litigation, copies of the relevant documents are attached to these requests.

6.    If Defendant claims a privilege or object to providing any specific answer, it must state the privilege or objection with particularity.

7.    Whenever relevant, words in the singular shall include the plural.

8.    Defendant is also under a continuing obligation to amend any answers to these requests for admission if it obtains information upon the basis of which it knows the answer was incorrectly made or that the answer, though correct when made, is no longer true, and the circumstances are such that a failure to amend the answer is in substance a knowing concealment.

**DEFINITIONS**

For purposes of these requests for admission:

1.      "Action" means the above captioned case filed and currently pending in Federal District Court, Denver, Colorado.

2.      "Agreement" means any contract, arrangement, or understanding, formal or informal, oral or written, between two or more parties, including all drafts exchanged between the parties, amendments, modifications, addendums, and exhibits, as well as any communications related to the negotiation of any agreement.

3.      "All" means all documents that can be located by a reasonably diligent search of places you reasonably believe to contain such documents.

4.      "And" shall include "or," and "or" shall include "and."

5.      "Any" means one or more.

6.      "Charge description master" or "chargemaster" means Vail Health's comprehensive listing of items billable to a patient or a patient's health insurance provider during the relevant period and which Brenda Bearisto referenced during the deposition of Vail Health through Bearisto in the Eagle County Action.

7.      "Communication" means any disclosure, transfer, or exchange of information or opinion, formal or informal, however made.

8.      "Complaint" means Plaintiffs' original Complaint and all subsequent amendments in this Action.

9.      "Discovery requests" means all interrogatories, document requests, and requests for admissions served on Defendant in this Action.

10.     "Document" means in its broadest sense documents under F.R.C.P. 34

3

and includes any written, recorded, or graphic material, whether prepared by you or any other person, that is in your possession, custody or control, including memoranda, reports, letters, electronic correspondence, and other communications recorded in any form or medium; notes, minutes, transcripts of conferences, meetings, and telephone or other communications; contracts and other agreements; statements, ledgers, and other records of financial matters or commercial transactions; notebooks and diaries; diagrams, graphs, charts, and other drawings; plans and specifications; publications; photographs, photocopies, microfilm, and other copies or reproductions; tape, disk, and other electronic records; and computer printouts.  The term includes all drafts of a documents; the original document (or a copy therefore if the original is not available); and all copies that differ in any way from the original (including as to any notations, underlinings, or other markings).  The terms also includes information stored in, or accessible through, computer or tother information retrieval systems, together with instructions and all other materials necessary to use or interpret such data compilations.

11.    "Eagle County action" means Winninger et al. v. Kirchner et al., Case No. 2017CV030102, venued in Eagle County District Court, State of Colorado.

12.    "Howard Head Sports Medicine" and "Howard Head" means the physical therapy services provided by RPC-Vail up from 1999 through October 31, 2012 under the trade name Howard Head, as well as Vail Health's operations of the physical therapy unit beginning on November 1, 2012 to the present.  Howard Head includes all employees and locations in which physical therapy services were or are provided, regardless of whether those physical therapy services were on an in-patient or out-patient basis.

4

13.    "Joint venture," "collaboration," or "strategic partnership" means any agreement or discussions between Vail Health, Howard Head, Steadman, or VSO related in any way to physical therapy services from January 1, 2014 to the present. This includes, but is not limited to, the letters of intent entered into by Steadman, Vail Health, and possibly VSO in 2015, as well as related to any facility or services in Frisco, Dillion, Basalt, and Aspen, or any other location in which Vail Health, Howard Head, Steadman, or VSO are contemplating and which offers or will offer physical therapy services.

14.    "Other locations" means the other facilities established, at least in part, by Vail Health at Vail US Bank Clinic, Edwards Medical Center Shaw Pavilion, Beaver Creek Medical Center, Eagle Healthcare Clinic, Gypsum Recreation Center, Breckenridge Howard Head Sports Medicine, Frisco Howard Head Sports Medicine, Silverthorne Howard Head Sports Medicine, and Keystone Medical Center.

14.    "Other payers" mean those companies or governmental entities identified in the definition of "payer" but excludes Medicare, United Healthcare, and Humana.

"Payer" means any company or governmental entity that pays for an administered medical service and is responsible for processing patient eligibility, enrollment, claims, and payment.  Payer includes the healthcare insurers that Vail Health submits claims to, as well as the Centers for Medicare and Medical Services.  Some of the payers previously identified by Vail Health include Medicare, Medicaid, Humana, United Healthcare, Aetna, Anthem, Blue Cross/Blue Shield, CIGNA, State Farm, Great West, and Zurich.  This list is not meant to be exhaustive but rather representative.

15.    "Payer contract" means the contract between Vail Health and any payer that

5

defines and explains, among other things, a provider's reimbursement arrangement for delivering healthcare services to patients covered by a specific health plan.

"Person" means a natural person, firm, association, organization, partnership, business, trust, corporation, or public entity.

16.    "Physical therapy," "rehabilitation," or "physical therapist" includes both physical therapy and occupational therapy.

17.    "Physical therapy services" means all services provided and all claims submitted and paid related to in-patient and out-patient provided by Howard Head from November 1, 2004 to the present.

18.    "Plaintiffs" means Lindsay Winninger and Sports Rehab Consulting LCC, including all present and former employees, agents, attorneys, consultants, representatives, and all persons acting upon their behalf.

19.    "Proaxis" means the physical therapy clinics that were formed in the late 1990s or early 2000s in South Carolina and which was associated with RPC-Vail, as defined below.  It is believed that Proaxis operated under numerous corporate or limited liability companies in South Carolina, North Carolina, and Colorado whose precise names and jurisdictional origins are unknown to Plaintiffs at this time.  One or more of the Proaxis companies operated under the Howard Head trade name before Vail Health's takeover of the Colorado physical therapy units in November 2012, and includes any and all predecessors and affiliated companies, including RPC-Vail.

20.    "Related to" or "relating to" means discussing, describing, referring to, reflecting, containing, analyzing, studying, reporting on, commenting on, evidencing, constituting, setting forth, considering, recommending, concerning, or pertaining to, in

whole or in part.

21.     "Relevant Period" means from November 1, 2004 to the present unless otherwise indicated.

22.     "Rendering provider" means the entity that provided physical therapy services to patients from 1999 through October 31, 2012, and for which Vail Health has admitted was RPC-Vail (through the licensed physical therapists that RPC-Vail employed as required under the services agreement).

23.     "RPC-Vail" means Rehabilitation and Performance Center at Vail, Inc., Rehabilitation and Performance Center at Vail, LLC, and Proaxis Vail, LLC, which had an independent contractor agreement with Vail Health to provide physical therapy services under the trade name "Howard Head" from 1999 through October 31, 2012. RPC-Vail includes all employees of RPC-Vail from 1999 through October 31, 2012.

24.     "Services agreement" means all versions of the agreement between RPC-Vail and Vail Health, in which RPC-Vail acted as an independent contractor providing physical therapy services from 1999 through October 31, 2012.

25.     "The Steadman Clinic" or "Steadman" means the orthopedic clinic and all its doctors and employees at any location in Vail, Edwards, and Frisco, Colorado during the relevant period.

26.     "Steadman Philippon Research Institute" or "SPRI" means the 501(c)(3) charitable organization and employees during the relevant period that researches the causes, prevention, and treatment of orthopedic disorders.

27.     "Vail Health facilities" means the facility located at 181 West Meadow Drive, Vail, Colorado and other locations.

7

27.    "Vail Summit Orthopaedics and Neurosurgery" or "VSO" means the orthopedic clinic and all its doctors and employees at any location in Vail, Edwards, and Frisco, Colorado during the relevant period.

28.    "You," "yours," "Defendant," and "Vail Health" means "Vail Clinic, Inc." or with its primary location at 180 South Frontage Road West, Vail, Colorado and all predecessors, affiliated entities, or d/b/a's including Vail Valley Medical Center, Howard Head, and includes all of Vail Clinic's in-patient and out-patient locations in Colorado. Vail Clinic also includes its executives, board of directors, employees, and any attorneys, accountants, consultants, representatives, agents, or other persons acting on behalf of or at the direction of Vail Health during the relevant period.

## REQUESTS FOR ADMISSION

### REQUEST FOR ADMISSION NO. 1:

Admit that on or about November 1, 2004, Vail Health entered into the Physical Therapy services agreement with RPC-Vail that addressed the providing of physical therapy services by RPC-Vail at the Vail Health hospital located at 181 W. Meadow Drive, Vail, Colorado.  *See* attached Exhibit 1.

### REQUEST FOR ADMISSION NO. 2:

Admit that RPC-Vail operated the physical therapy unit located at 181 W. Meadow Drive, Vail, Colorado under the trade name "Howard Head Sports Medicine."

### REQUEST FOR ADMISSION NO. 3:

Admit that on or about November 1, 2004, Vail Health entered into a Physical Therapy Services Agreement with RPC-Vail that also addressed the providing of physical therapy services by RPC-Vail at such other locations as Vail Health may establish.  *See* attached Exhibit 1.

### REQUEST FOR ADMISSION NO. 4:

Admit that Vail Health established other locations and that RPC-Vail provided physical therapy services at those other locations under the trade name "Howard Head Sports Medicine."

8

**REQUEST FOR ADMISSION NO. 5**:

Admit that Exhibit 1 is a true and correct copy of the Physical Therapy Services Agreement dated November 1, 2004.

**REQUEST FOR ADMISSION NO. 6**:

Admit that pursuant to the November 1, 2004 Physical Therapy Services Agreement that RPC-Vail was an independent contractor. *See* Exhibit 1.

**REQUEST FOR ADMISSION NO. 7**:

Admit that pursuant to the November 1, 2004 Physical Therapy Services Agreement, from the time of its inception and until October 31, 2012, RPC-Vail employed all of the licensed physical therapists that rendered (provided) the physical therapy services at Vail Health facilities.

**REQUEST FOR ADMISSION NO. 8**:

Admit that pursuant to the November 1, 2004 Physical Therapy Services Agreement, from the time of its inception and until October 31, 2012, RPC-Vail was the "exclusive" provider of physical therapy services at the Vail Health facilities. *See* Exhibit 1.

**REQUEST FOR ADMISSION NO. 9**:

Admit that pursuant to the November 1, 2004 Physical Therapy Services Agreement, from the time of its inception and until October 31, 2012, that RPC-Vail was prohibited from treating individuals requesting physical therapy services unless they were admitted as "patients" of Vail Health.

**REQUEST FOR ADMISSION NO. 10**:

Admit that pursuant to the November 1, 2004 Physical Therapy Services Agreement, from the time of its inception until October 31, 2012, Vail Health did not itself provide any of the physical therapy services at Vail Health facilities other than through RPC-Vail.

**REQUEST FOR ADMISSION NO. 11**:

Admit that pursuant to the November 1, 2004 Physical Therapy Services Agreement, from the time of its inception until October 31, 2012, RPC-Vail provided individuals with physical therapy services at Vail Health facilities.

**REQUEST FOR ADMISSION NO. 12**:

Admit that pursuant to the November 1, 2004 Physical Therapy Services Agreement, from the time of its inception until October 31, 2012, Vail Health provided the billing services for the physical therapy services rendered (provided) by RPC-Vail.

**REQUEST FOR ADMISSION NO. 13:**

Admit that pursuant to the November 1, 2004 Physical Therapy Services Agreement, from the time of its inception until October 31, 2012, Vail Health made claims to Medicare for reimbursement for physical services provided by RPC-Vail.

**REQUEST FOR ADMISSION NO. 14:**

Admit that pursuant to the November 1, 2004 Physical Therapy Services Agreement, from the time of its inception until October 31, 2012, Vail Health made claims to Medicare for reimbursement for physical services provided by RPC-Vail under Vail Health's name, Vail Health's National Provider Number, and Vail Health Tax Identification Number.

**REQUEST FOR ADMISSION NO.15:**

Admit that in submitting claims to Medicare for reimbursement for physical services rendered (provided) by RPC-Vail, Vail Health did not inform Medicare that RPC-Vail was the entity that rendered (provided) the physical therapy services for which Medicare was being requested to pay.

**REQUEST FOR ADMISSION NO. 16:**

Admit that in submitting claims to Medicare for reimbursement for physical services rendered (provided) by RPC-Vail, Vail Health did not identify to Medicare the National Provider Number ("NPI") of the corporate entity of RPC-Vail.

**REQUEST FOR ADMISSION NO. 17:**

Admit that in submitting claims to Medicare for reimbursement for physical services rendered (provided) by RPC-Vail, Vail Health did not identify to Medicare the National Provider Number ("NPI") of any physical therapist employed by RPC-Vail.

**REQUEST FOR ADMISSION NO. 18:**

Admit that to submit claims to Medicare for reimbursement for physical services rendered (provided) by RPC-Vail, RPC-Vail had to enroll as a provider of Medicare.

**REQUEST FOR ADMISSION NO. 19:**

Admit that to submit claims to Medicare for reimbursement for physical services rendered (provided) by the physical therapists employed by RPC-Vail, the physical therapists of RPC-Vail had to enroll as providers of Medicare.

**REQUEST FOR ADMISSION NO. 20:**

Admit that the corporate entity of RPC-Vail did not have a payer contract with Medicare.

10

**REQUEST FOR ADMISSION NO. 21:**

Admit that physical therapists employed by RPC-Vail did not have payer contracts with Medicare.

**REQUEST FOR ADMISSION NO. 22:**

Admit that as the billing provider for RPC-Vail, that Vail Health knew that RPC-Vail did not have a payer contract with Medicare.

**REQUEST FOR ADMISSION NO. 23:**

Admit that as the billing provider for RPC-Vail, that Vail Health knew that the physical therapists employed by RPC-Vail did not have payer contracts with Medicare.

**REQUEST FOR ADMISSION NO. 24:**

Admit that Vail Health represented to Medicare that RPC-Vail was a department of Vail Health.

**REQUEST FOR ADMISSION NO. 25:**

Admit that pursuant to the November 1, 2004 Physical Therapy Services Agreement, from the time of its inception until October 31, 2012, Vail Health made claims to United Healthcare for reimbursement for physical services provided to United Healthcare insureds by RPC-Vail.

**REQUEST FOR ADMISSION NO. 26:**

Admit that in submitting claims to United Healthcare for reimbursement for physical services rendered (provided) by RPC-Vail/Proaxis, Vail Health did not inform United Healthcare that RPC-Vail rendered (provided) the physical therapy services for which United Healthcare was being requested to pay.

**REQUEST FOR ADMISSION NO. 27:**

Admit that in submitting claims to United Healthcare for reimbursement for physical services rendered (provided) by RPC-Vail, Vail Health did not identify to United Healthcare the NPI of RPC-Vail.

**REQUEST FOR ADMISSION NO. 28:**

Admit that in submitting claims to United Healthcare for reimbursement for physical services rendered (provided) by RPC-Vail, Vail Health did not identify to United Healthcare the NPI of any physical therapists employed by RPC-Vail.

**REQUEST FOR ADMISSION NO. 29:**

Admit that the corporate entity RPC-Vail did not have a payer contract with United Healthcare.

11

**REQUEST FOR ADMISSION NO. 30:**

Admit that physical therapists employed by RPC-Vail did not have payer contracts with United Healthcare.

**REQUEST FOR ADMISSION NO. 31:**

Admit that as the billing provider for RPC-Vail, that Vail Health knew that RPC-Vail did not have a payer contract with United Healthcare.

**REQUEST FOR ADMISSION NO. 32:**

Admit that as the billing provider for RPC-Vail, that Vail Health knew that the physical therapists employed by RPC-Vail did not have payer contracts with United Healthcare.

**REQUEST FOR ADMISSION NO. 33:**

Admit that Vail Health represented to United Healthcare that RPC-Vail was a department of Vail Health.

**REQUEST FOR ADMISSION NO. 34:**

Admit that pursuant to the November 1, 2004 Physical Therapy Services Agreement, from the time of its inception until October 31, 2012, Vail Health made claims to Humana for reimbursement for physical services provided to Humana insureds by RPC-Vail.

**REQUEST FOR ADMISSION NO. 35:**

Admit that in submitting claims to Humana for reimbursement for physical services rendered (provided) by RPC-Vail, Vail Health did not inform Humana that RPC-Vail rendered (provided) the physical therapy services for which Humana was being requested to pay.

**REQUEST FOR ADMISSION NO. 36:**

Admit that in submitting claims to Humana for reimbursement for physical services rendered (provided) by RPC-Vail, Vail Health did not identify to Humana the NPI of RPC-Vail.

**REQUEST FOR ADMISSION NO. 37:**

Admit that in submitting claims to Humana for reimbursement for physical services rendered (provided) by RPC-Vail, Vail Health did not identify to Humana the NPI of any physical therapists employed by RPC-Vail.

**REQUEST FOR ADMISSION NO. 38:**

Admit that the corporate entity RPC-Vail did not have a payer contract with Humana.

12

**REQUEST FOR ADMISSION NO. 39:**

Admit that physical therapists employed by RPC-Vail did not have payer contracts with Humana.

**REQUEST FOR ADMISSION NO. 40:**

Admit that as the billing provider for RPC-Vail, that Vail Health knew that RPC-Vail did not have a payer contract with Humana.

**REQUEST FOR ADMISSION NO. 41:**

Admit that as the billing provider for RPC-Vail, that Vail Health knew that the physical therapists employed by RPC-Vail did not have payer contracts with Humana.

**REQUEST FOR ADMISSION NO. 42:**

Admit that Vail Health represented to Humana that RPC-Vail was a department of Vail Health.

**REQUEST FOR ADMISSION NO. 43:**

Admit that pursuant to the November 1, 2004 Physical Therapy Services Agreement, from the time of its inception until October 31, 2012, Vail Health made claims to other payers for reimbursement for physical services provided by RPC-Vail.

**REQUEST FOR ADMISSION NO. 44:**

Admit that pursuant to the November 1, 2004 Physical Therapy Services Agreement, from the time of its inception until October 31, 2012, Vail Health made claims to other payers for reimbursement for physical services provided by RPC-Vail under Vail Health's name, Vail Health's National Provider Number, and Vail Health Tax Identification Number.

**REQUEST FOR ADMISSION NO. 45:**

Admit that in submitting claims to other payers for reimbursement for physical services rendered (provided) by RPC-Vail, Vail Health did not inform the other payers that RPC-Vail was the entity that rendered (provided) the physical therapy services for which those payers were being requested to pay.

**REQUEST FOR ADMISSION NO. 46:**

Admit that in submitting claims to other payers for physical services rendered (provided) by RPC-Vail, Vail Health did not identify to those payers the National Provider Number ("NPI") of the corporate entity of RPC-Vail.

13

**REQUEST FOR ADMISSION NO. 47**:

Admit that in submitting claims to other payers for reimbursement for physical services rendered (provided) by RPC-Vail, Vail Health did not identify to those other payers the National Provider Number ("NPI") of any physical therapist employed by RPC-Vail.

**REQUEST FOR ADMISSION NO. 48**:

Admit that the corporate entity of RPC-Vail did not have a payer contract with other payers.

**REQUEST FOR ADMISSION NO. 49**:

Admit that physical therapists employed by RPC-Vail did not have payer contracts with other payers.

**REQUEST FOR ADMISSION NO. 50:**

Admit that as the billing provider for RPC-Vail, that Vail Health knew that RPC-Vail did not have a payer contract with other payers.

**REQUEST FOR ADMISSION NO. 51:**

Admit that as the billing provider for RPC-Vail, that Vail Health knew that the physical therapists employed by RPC-Vail did not have payer contracts with other payers.

**REQUEST FOR ADMISSION NO. 52:**

Admit that Vail Health represented to other payers that RPC-Vail was a department of Vail Health.

**REQUEST FOR ADMISSION NO. 53:**

Admit that during the period November 1, 2004 to October 31, 2012, the corporate entity of RPC-Vail did not have a National Provider Identifier ("NPI") number.

**REQUEST FOR ADMISSION NO. 54:**

Admit that as the billing provider for RPC-Vail under the November 1, 2004 Physical Therapy Services Agreement, Vail Health knew that the corporate entity of RPC-Vail did not have a NPI number.

**REQUEST FOR ADMISSION NO. 55**:

Admit that Vail Health used its payer contract with Medicare to submit reimbursement claims for physical therapy services rendered (provided) by RPC-Vail.

**REQUEST FOR ADMISSION NO. 56**:

Admit that Vail Health used its payer contracts with United Healthcare to submit reimbursement claims for physical therapy services rendered (provided) by RPC-Vail.

14

**REQUEST FOR ADMISSION NO. 57**:

Admit that Vail Health used its payer contracts with Humana to submit reimbursement claims for physical therapy services rendered (provided) by RPC-Vail.

**REQUEST FOR ADMISSION NO. 58**:

Admit that Vail Health used its payer contracts with other payers to submit reimbursement claims for physical therapy services rendered (provided) by RPC-Vail to the insureds of those other payers.

**REQUEST FOR ADMISSION NO. 59**:

Admit that in submitting reimbursement claims to other payers for physical services rendered (provided) by RPC-Vail, Vail Health did not identify to other payers that RPC-Vail rendered (provided) the physical therapy services for which the other insurers were being requested to pay.

**REQUEST FOR ADMISSION NO. 60**:

Admit that in submitting reimbursement claims to other payers for physical services rendered (provided) by RPC-Vail, Vail Health did not identify to those insurers the NPI of RPC-Vail.

**REQUEST FOR ADMISSION NO. 61**:

Admit that Vail Health declined to renew the services agreement, and as of October 31, 2012, the services agreement between Vail Health and RPC-Vail came to an end.

**REQUEST FOR ADMISSION NO. 62**:

Admit that Vail Health declined to return documents, data, and information that RPC-Vail had created prior to October 31, 2012, and which RPC-Vail requested be returned to it.

**REQUEST FOR ADMISSION NO. 63**:

Admit that Lindsay Winninger was never an employee of Vail Health.

**REQUEST FOR ADMISSION NO. 64**:

Admit that sometime before the termination of the services agreement on October 31, 2012, Vail Health offered physical therapists, who had been employed by RPC-Vail, with job offers to be employed by Vail Health as physical therapists at Howard Head.

**REQUEST FOR ADMISSION NO. 65**:

Admit that those physical therapists who agreed to become employees of Vail Health as part of the Howard Head Sports Medicine Center were provided additional compensation and a bonus.

**REQUEST FOR ADMISSION NO. 66**:

Admit that upon becoming employees of Vail Health, the physical therapists who were previously employed by RPC-Vail were required to sign employment agreements that included a noncompete or a nonsolicitation clause to become employed by Vail Health and work at Howard Head.

**REQUEST FOR ADMISSION NO. 67**:

Admit that as of July 17, 2019, Vail Health, through Howard Head, employed over 50 physical therapists at eight clinic locations in the Vail Valley, as that geographic market is defined in Plaintiffs' Amended Complaint.

**REQUEST FOR ADMISSION NO. 68**:

Admit that someone at the law firm of Davis Graham revised the Excel spreadsheets identifying the files on the two Cimino USB devices that Cyposis initially created and that Exhibit 8—which was submitted to the Vail Police Department and as described in the Amended Complaint—reflects the revisions made by someone at Davis Graham.

**REQUEST FOR ADMISSION NO. 69**:

Admit that an anonymous complaint was submitted to and filed with the Colorado Department of Regulatory Agencies ("DORA") on or about April 18, 2016 (the "DORA Complaint I"), that was drafted or submitted to DORA by an employee of Vail Health.

**REQUEST FOR ADMISSION NO. 70**:

Admit that the DORA Complaint I was drafted or submitted to DORA by Vail Health director, officer, and employee Doris Kirchner.

**REQUEST FOR ADMISSION NO. 71**:

Admit that the DORA Complaint I was drafted or submitted to DORA by Vail Health officer and employee Nicholas Brown.

**REQUEST FOR ADMISSION NO. 72**:

Admit that the DORA Complaint I was drafted or submitted to DORA by Vail Health officer and employee Luke O'Brien.

16

**REQUEST FOR ADMISSION NO. 73**:

Admit that the DORA Complaint I was drafted or submitted to DORA by Vail Health officer and employee Tonya Rippeth

**REQUEST FOR ADMISSION NO. 74**:

Admit that the DORA Complaint I was drafted or submitted to DORA by Vail Health Risk Manager and employee Margie Lim-Morrison.

**REQUEST FOR ADMISSION NO. 75**:

Admit that the DORA Complaint I was drafted or submitted to DORA by Vail Health employee Rick Anderson.

**REQUEST FOR ADMISSION NO. 76**:

Admit that the DORA Complaint I was drafted or submitted to DORA by a partner, attorney, or employee of the law firm of Davis Graham & Stubbs, LLP, Denver, Colorado ("DGS").

**REQUEST FOR ADMISSION NO. 77**:

Admit that the DORA Complaint I was drafted or submitted to DORA by DGS partner and attorney Janet Savage.

**REQUEST FOR ADMISSION NO. 78**:

Admit that the DORA Complaint I was drafted or submitted to DORA by DGS attorney Rick Lee.

**REQUEST FOR ADMISSION NO. 79**:

Admit that the DORA Complaint I was drafted or submitted to DORA by an expert retained by Vail Health, including Craig Bernard of Cyopsis.

**REQUEST FOR ADMISSION NO. 80**:

Admit that on or about April 27, 2016, a second anonymous complaint was submitted to and filed with DORA by some unidentified and undisclosed person ("DORA Complaint II"), that was drafted or submitted to DORA by an employee of Vail Health.

**REQUEST FOR ADMISSION NO. 81**:

Admit that information contained in the DORA I and DORA II Complaint contains information about when Cimino downloaded documents and the types of devices that he used that was unknown outside of Vail Health.

**REQUEST FOR ADMISSION NO. 82**:

Admit that the DORA Complaint II was drafted or submitted to DORA by Vail Health director, officer, and employee Doris Kirchner.

17

**REQUEST FOR ADMISSION NO. 83**:

Admit that the DORA Complaint II was drafted or submitted to DORA by Vail Health officer and employee Nicholas Brown.

**REQUEST FOR ADMISSION NO. 84**:

Admit that the DORA Complaint II was drafted or submitted to DORA by Vail Health officer and employee Luke O'Brien.

**REQUEST FOR ADMISSION NO. 85**:

Admit that the DORA Complaint II was drafted or submitted to DORA by Vail Health officer and employee Tonya Rippeth.

**REQUEST FOR ADMISSION NO. 86**:

Admit that the DORA Complaint II was drafted or submitted to DORA by Vail Health Risk Manager and employee Margie Lim-Morrison.

**REQUEST FOR ADMISSION NO. 87**:

Admit that the DORA Complaint II was drafted or submitted to DORA by Vail Health employee Rick Anderson.

**REQUEST FOR ADMISSION NO. 88**:

Admit that the DORA Complaint II was drafted or submitted to DORA by a partner, attorney, or employee of DGS.

**REQUEST FOR ADMISSION NO. 89**:

Admit that the DORA Complaint II was drafted and/or submitted to DORA by DGS partner and attorney Janet Savage.

**REQUEST FOR ADMISSION NO. 90**:

Admit that the DORA Complaint II was drafted or submitted to DORA by DGS attorney Rick Lee.

**REQUEST FOR ADMISSION NO. 91**:

Admit that the DORA Complaint II was drafted or submitted to DORA by an expert retained by Vail Health, including Craig Bernard of Cyopsis.

**REQUEST FOR ADMISSION NO. 92**:

Admit that Exhibit 2 is a true and correct copy of the report issued by the court-appointed independent forensic examiner in the Eagle County action.

**REQUEST FOR ADMISSION NO. 93**:

Admit that in Exhibit 2, the independent expert states that there is no evidence that the two Cimino USB devices were attached to any of the Sports Rehab computers.

**REQUEST FOR ADMISSION NO. 94**:

Admit that in Exhibit 2, the independent expert did not identify any documents containing protected health information on the Sports Rehab computers that matched the documents downloaded by Cimino and which contained protected health information.

**REQUEST FOR ADMISSION NO. 95**:

Admit that in Exhibit 2, the independent expert did not find any deletion of documents on the Sports Rehab computers.

**REQUEST FOR ADMISSION NO. 96**:

Admit that in Exhibit 2, the independent expert did not find any wiping software on the Sports Rehab computers.

**REQUEST FOR ADMISSION NO. 97**:

Admit that in Exhibit 2, the independent expert did not find that any shredders were used on the Sports Rehab computers.

**REQUEST FOR ADMISSION NO. 98**:

Admit that the independent expert, Michael Horwith, was ordered by the court in the Eagle County Action to conduct subsequent searches of the Sports Rehab computers using a "fuzzy" search.

**REQUEST FOR ADMISSION NO. 99**:

Admit that the independent expert in the Eagle County Action, Michael Horwith, using a "fuzzy" search found no documents containing protected health information on the Sports Rehab computers that matched the documents downloaded by Cimino that contained protected health information.

**REQUEST FOR ADMISSION NO. 100**:

Admit that of the 3,116 individuals that received notice of the Cimino data breach, no documents related to those individuals were found on the Sports Rehab computers by the independent expert, Michael Horwith, in the Eagle County action.

19

**REQUEST FOR ADMISSION NO. 101**:

Admit that in the Eagle County action you asserted that prior to the time Plaintiff Lindsay Winninger resigned from her employment with RPC-Vail in May 2012, she had "stolen" over 4,000 documents that Vail Health designated as "trade secrets" (hereinafter referred to as the "Designated Trade Secrets").

**REQUEST FOR ADMISSION NO. 102**:

Admit that in the Eagle County action Vail Health represented to the Special Master that it "owned" the Designated Trade Secrets.

**REQUEST FOR ADMISSION NO. 103**:

Admit that in the Eagle County action Vail Health later removed the trade secret designations from the Designated Trade Secrets.

**REQUEST FOR ADMISSION NO. 104**:

Admit that the Designated Trade Secrets were created on or before May 31, 2012.

**REQUEST FOR ADMISSION NO. 105**:

Admit that the Designated Trade Secrets were not created by Vail Health.

**REQUEST FOR ADMISSION NO. 106**:

Admit that the Designated Trade Secrets were created by RPC-Vail or its predecessors.

**REQUEST FOR ADMISSION NO. 107**:

Admit that the Designated Trade Secrets do not constitute "trade secrets" within the definition of a "trade secret" under C.R.S. § 7-74-102(4).

**REQUEST FOR ADMISSION NO. 108**:

Admit that the Designated Trade Secrets were never purchased from RPC-Vail or Proaxis by Vail Health.

**REQUEST FOR ADMISSION NO. 109**:

Admit that Vail Health dropped any claim for misappropriation of the Designated Trade Secrets against Winninger in about January 2020.

**REQUEST FOR ADMISSION NO. 110**:

Admit that Vail Health never had any claim for misappropriation of the Designated Trade Secrets against Sports Rehab.

**REQUEST FOR ADMISSION NO. 111**:

Admit that in or about 2015, Vail Health was engaged in discussions with Steadman regarding the extension of the Steadman lease covering office and clinical space within the Vail Health facilities located at 181 W. Meadow Drive, Vail, Colorado.

**REQUEST FOR ADMISSION NO. 112**:

Admit that in or about 2015, Steadman informed Vail Health that it was considering opening its own physical therapy clinic that would be separate and apart from the physical therapy clinic operated by Vail Health under the Howard Head trade name.

**REQUEST FOR ADMISSION NO. 113**:

Admit that because referrals from physicians at Steadman to Vail Health's Head Sports Medicine Center constitute a significant portion of the revenues generated by the Howard Head physical therapy clinic, the management of Vail Health became concerned that physical therapy services referral from Steadman would decrease if Steadman did not renew the lease.

**REQUEST FOR ADMISSION NO. 114**:

Admit that at some point during the period from approximately January 1, 2014 to December 31, 2016, Vail Health proposed a joint venture to form a partnership (or other legal entity) with Steadman or its physicians, whereby the joint venture would provide the physical therapy services to patients then provided by Vail Health's Howard Head.

**REQUEST FOR ADMISSION NO. 115**:

Admit that at some point during the period from approximately January 1, 2014 to December 31, 2016, Vail Health proposed a joint venture to form a partnership (or other legal entity) with VSO or its physicians, whereby the joint venture would provide the physical therapy services to patients then provided by Vail Health's Howard Head.

**REQUEST FOR ADMISSION NO. 116**:

Admit that Vail Health and Steadman signed a letter of intent that was extended and eventually expired in the fall 2016.

**REQUEST FOR ADMISSION NO. 117**:

Admit that at some point between 2016 and 2018, Vail Health and Steadman signed a ten-year lease (the "Lease"), whereby Steadman would remain in its clinical facilities in the Vail Health medical building located at 181 W. Meadow Drive, Vail, Colorado.

21

**REQUEST FOR ADMISSION NO. 118**:

Admit that the Lease prohibits Steadman from providing physical therapy services in the space that Vail Health leased to Steadman.

**REQUEST FOR ADMISSION NO. 119**:

Admit that in reporting the 2015 Cimino breach to the U.S. Department of Health and Human Services, Office of Civil Rights (the "OCR"), Vail Health described it as an "Unauthorized Access/Disclosure"—not a "theft" as set forth below:

| Breach Report Results | | | | | | |
|---|---|---|---|---|---|---|
| Expand All | Name of Covered Entity ⇕ | State ⇕ | Covered Entity Type ⇕ | Individuals Affected ⇕ | Breach Submission Date ⇕ | Type of Breach | Location of Breached Information |
| 0 | Vail Clinic, Inc. dba Vail Valley Medical Center, and dba Howard Head Sports Medicine | CO | Healthcare Provider | 3118 | 04/15/2016 | Unauthorized Access/Disclosure | Laptop, Network Server |

**REQUEST FOR ADMISSION NO. 120**:

Admit that in making the submission to the OCR, Vail Health attested under federal law that the information provided to the OCR in the breach report was accurate.

**REQUEST FOR ADMISSION NO. 121**:

Admit that Vail Health has never told any investigator at the OCR that Cimino stole documents from Vail Health.

**REQUEST FOR ADMISSION NO. 122**:

Admit that on April 15, 2016, Vail Health provided notice (the "Notice") to its patients, the press, and on its website about the December 2015 Cimino breach, but in those communications did not state that the data was "stolen" or that there was a "theft" of any information.

**REQUEST FOR ADMISSION NO. 123**:

Admit that the Notice also stated that it "obtained the return of both electronic storage devices along with a signed certification from the former employee that he has not retained copies or otherwise provided any of the data to any other person or company."

**REQUEST FOR ADMISSION NO. 124**:

Admit that in the Notice, Vail Health stated that on February 16, 2016, it discovered that a former Howard Head physical therapist improperly copied physical therapy and occupational therapy records containing patient personal health information onto two USB electronic storage devices and "took those devices with him at the time he was starting with his new employer."

**REQUEST FOR ADMISSION NO. 125**:

Admit that the Notice also states that "[t]o date, VVMC has demanded and obtained the return of both electronic storage devices along with a signed certification from the former employee that he has not retained copies or otherwise provided any of the data to any other person or company."

**REQUEST FOR ADMISSION NO. 126**:

Admit that on April 18, 2015, three days after reporting the breach to the OCR, Vail Health—through its attorney Janet Savage—informed the Vail Police Department and Eagle County District Attorney's Office that Cimino was involved in the "theft of Protected Health Information" from Vail Health, "[h]e stole documents and patient information from the VVMC shared drive," and that Winninger "has been actively involved in these behaviors."

**REQUEST FOR ADMISSION NO. 127**:

Admit that Janet Savage, as legal counsel for Vail Health, informed the Eagle County Deputy District Attorney that Cimino should be prosecuted for 3,000 felonies.

**REQUEST FOR ADMISSION NO. 128**:

Admit that prior to the C.R.C.P. 30(b)(6) deposition of Vail Health representative deponent Nicholas Brown, neither Vail Health nor any of its attorneys had ever contacted a current or former Vail Health patient to determine whether any of them had been solicited by Plaintiff Sports Rehab, Lindsay Winninger, or David Cimino.

**REQUEST FOR ADMISSION NO. 129**:

Admit that prior to the issuance of the Report of Court-Appointed Forensic Expert Michael Horwith on or about May 31, 2019, neither Vail Health nor any of its attorneys had ever determined that Lindsay Winninger or any Sports Rehab physical therapist or employee had ever received any of the documents, data, and/or information that David Cimino had downloaded from Vail Health in December 2015.

Dated: March 1, 2021                    *s/ Alan L. Kildow*

Alan L. Kildow, MN# 0143133
790 Potato Patch Drive
Vail, CO 81657
Telephone: (970) 390-6675
E-mail:  alkildow@aol.com

23

Jesse Wiens, Colo. #33903
Fahrenholtz & Wiens LLC
100 West Beaver Creek Boulevard
Suite 236
Avon, CO 81620
Telephone: (970) 949-6500
E-mail:  fwlawyers@gmail.com

Attorneys for Plaintiff Sports Rehab Consulting
LLC and Lindsay Winninger

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 1, 2021, I, Sonya Braunschweig, for and on behalf of Plaintiffs' Sports Rehab  Consulting, LLC and Lindsay Winninger, at the direction of Alan L. Kildow, counsel of record for Plaintiffs in this action, served a true and correct copy of Plaintiffs' First Set Of Requests for Admissions To Defendant Vail Clinic, d/b/a Vail Health.  The Request for Admissions were served by U.S. Mail pursuant to Rule 36, upon the following counsel of record for Defendant:

> Shannon Stevenson
> Jacqueline Roeder
> Janet Savage
> Daniel Richards
> Davis Graham & Stubbs LLP
> 1550 17th Street, Suite 500
> Denver, CO  80202

> Counsel for Defendant Vail Clinic, Inc., d/b/a Vail Health

*s/Sonya R. Braunschweig*
Sonya R. Braunschweig
