# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

    Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation.

    Defendant.

---

**PLAINTIFFS' FIRST SET OF INTERROGATORIES
TO DEFENDANT VAIL HEALTH**

---

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs Sports Rehab Consulting. LLC and Lindsay Winninger request answers to the following interrogatories from Defendant Vail Clinic, Inc., d/b/a Vail Health ("Vail Health"). Defendant is requested to answer these interrogatories within 30 days from the date of service and according to the following instructions and definitions.

**INSTRUCTIONS**

1.    In answering these interrogatories, Defendant is required to furnish all information that is available to it or subject to reasonable inquiry, including information in the possession of their attorneys, accountants, advisors, other persons directly or indirectly employed by or connected with you, or anyone else otherwise subject to your direction or control.

2.    If an interrogatory has subparts, answer each subpart separately and in full and do not limit the answer to the interrogatory as a whole. If these interrogatories cannot

1

be answered in full, answer to the extent possible, specify the reason for the inability to answer the remainder, and state whatever information and knowledge Defendant has regarding the unanswered portion.

3. If Defendant encounters any ambiguity in construing these interrogatories or instructions, set forth the manner deemed "ambiguous" and respond to the interrogatory by indicating the construction chosen and used in responding.

4. If Defendant claims a privilege or object to providing any specific answer, state the privilege or objection with particularity and identify each such answer withheld, together with the reason for withholding such information, a statement as to the factual and legal basis for any claim of privilege, work product, or other ground of nondisclosure, and identify each person to whom the information, or any part thereof, has been disclosed.

5. Defendant is under a duty to seasonably amend any answer to these interrogatories for which it learns that the answer is in some material respect incomplete or incorrect and if additional or corrective information has not otherwise been made known during the discovery process or in writing. Defendant is also under a continuing duty to supplement its answers with respect to any question directly addressed to the identity of persons having knowledge of discoverable matters.

6. No agreement, understanding, or stipulation by Plaintiffs purporting to modify, limit, or otherwise vary these interrogatories shall be valid or binding on Plaintiffs unless confirmed or acknowledged in writing (or made of record in open court) by a duly authorized representative of Plaintiffs.

7. Defendant's answers to these interrogatories must be verified, dated, and signed.

2

## **DEFINITIONS**

For purposes of these interrogatories:

1. "Action" means the above captioned case filed and currently pending in Federal District Court, Denver, Colorado.

2. "Agreement" means any contract, arrangement, or understanding, formal or informal, oral or written, between two or more parties, including all drafts exchanged between the parties, amendments, modifications, addendums, and exhibits, as well as any communications related to the negotiation of any agreement.

3. "All" means all documents that can be located by a reasonably diligent search of places you reasonably believe to contain such documents.

4. "And" shall include "or," and "or" shall include "and."

5. "Any" means one or more.

6. "Charge description master" or "chargemaster" means Vail Health's comprehensive listing of items billable to a patient or a patient's health insurance provider during the relevant period and which Brenda Bearisto referenced during the deposition of Vail Health through Bearisto in the Eagle County Action.

7. "Communication" means any disclosure, transfer, or exchange of information or opinion, formal or informal, however made.

8. "Complaint" means Plaintiffs' original Complaint and all subsequent amendments in this Action.

9. "Discovery requests" means all interrogatories, document requests, and requests for admissions served on Defendant in this Action.

10. "Document" means in its broadest sense documents under F.R.C.P. 34 and includes any written, recorded, or graphic material, whether prepared by you or any other

3

person, that is in your possession, custody or control, including memoranda, reports, letters, electronic correspondence, and other communications recorded in any form or medium; notes, minutes, transcripts of conferences, meetings, and telephone or other communications; contracts and other agreements; statements, ledgers, and other records of financial matters or commercial transactions; notebooks and diaries; diagrams, graphs, charts, and other drawings; plans and specifications; publications; photographs, photocopies, microfilm, and other copies or reproductions; tape, disk, and other electronic records; and computer printouts. The term includes all drafts of a documents; the original document (or a copy therefore if the original is not available); and all copies that differ in any way from the original (including as to any notations, underlinings, or other markings). The terms also includes information stored in, or accessible through, computer or tother information retrieval systems, together with instructions and all other materials necessary to use or interpret such data compilations.

11. "Eagle County action" means *Winninger et al. v. Kirchner et al.,* Case No. 2017CV030102, venued in Eagle County District Court, State of Colorado.

12. "Howard Head Sports Medicine" and "Howard Head" means the physical therapy services provided by RPC-Vail up from 1999 through October 31, 2012 under the trade name Howard Head, as well as Vail Health's operations of the physical therapy unit beginning on November 1, 2012 to the present. Howard Head includes all employees and locations in which physical therapy services were or are provided, regardless of whether those physical therapy services were on an in-patient or out-patient basis.

13. "Joint venture," "collaboration," or "strategic partnership" means any agreement or discussions between Vail Health, Howard Head, Steadman, or VSO related

in any way to physical therapy services from January 1, 2014 to the present. This includes, but is not limited to, the letters of intent entered into by Steadman, Vail Health, and possibly VSO in 2015, as well as related to any facility or services in Frisco, Dillion, Basalt, and Aspen, or any other location in which Vail Health, Howard Head, Steadman, or VSO are contemplating and which offers or will offer physical therapy services.

14. "Payer" means any company or governmental entity that pays for an administered medical service and is responsible for processing patient eligibility, enrollment, claims, and payment. Payer includes the healthcare insurers that Vail Health submits claims to, as well as the Centers for Medicare and Medical Services. Some of the payers previously identified by Vail Health include Medicare, Medicaid, Humana, United Healthcare, Aetna, Anthem, Blue Cross/Blue Shield, CIGNA, State Farm, Great West, and Zurich. This list is not meant to be exhaustive but rather representative.

15. "Person" means a natural person, firm, association, organization, partnership, business, trust, corporation, or public entity.

16. "Physical therapy," "rehabilitation," or "physical therapist" includes both physical therapy and occupational therapy.

17. "Physical therapy services" means all services provided and all claims submitted and paid related to in-patient and out-patient provided by Howard Head from November 1, 2004 to the present.

18. "Plaintiffs" means Lindsay Winninger and Sports Rehab Consulting LCC, including all present and former employees, agents, attorneys, consultants, representatives, and all persons acting upon their behalf.

19. "Proaxis" means the physical therapy clinics that were formed in the late 1990s or early 2000s in South Carolina and which was associated with RPC-Vail, as defined below. It is believed that Proaxis operated under numerous corporate or limited liability companies in South Carolina, North Carolina, and Colorado whose precise names and jurisdictional origins are unknown to Plaintiffs at this time. One or more of the Proaxis companies operated under the Howard Head trade name before Vail Health's takeover of the Colorado physical therapy units in November 2012, and includes any and all predecessors and affiliated companies, including RPC-Vail.

20. "Related to" or "relating to" means discussing, describing, referring to, reflecting, containing, analyzing, studying, reporting on, commenting on, evidencing, constituting, setting forth, considering, recommending, concerning, or pertaining to, in whole or in part.

21. "Relevant Period" means from November 1, 2004 to the present unless otherwise indicated.

22. "Rendering provider" means the entity that provided physical therapy services to patients from 1999 through October 31, 2012, and for which Vail Health has admitted was RPC-Vail (through the licensed physical therapists that RPC-Vail employed as required under the services agreement).

23. "RPC-Vail" means Rehabilitation and Performance Center at Vail, Inc., Rehabilitation and Performance Center at Vail, LLC, and Proaxis Vail, LLC, which had an independent contractor agreement with Vail Health to provide physical therapy services under the trade name "Howard Head" from 1999 through October 31, 2012. RPC-Vail includes all employees of RPC-Vail from 1999 through October 31, 2012.

24. "Services agreement" means all versions of the agreement between RPC-Vail and Vail Health, in which RPC-Vail acted as an independent contractor providing physical therapy services from 1999 through October 31, 2012. A copy of the November 1, 2004 agreement is identified at VAIL_00003426-3461, although it is incomplete.

25. "The Steadman Clinic" or "Steadman" means the orthopedic clinic and all its doctors and employees at any location in Vail, Edwards, and Frisco, Colorado during the relevant period.

26. "Steadman Philippon Research Institute" or "SPRI" means the 501(c)(3) charitable organization and employees during the relevant period that researches the causes, prevention, and treatment of orthopedic disorders.

27. "Vail Summit Orthopaedics and Neurosurgery" or "VSO" means the orthopedic clinic and all its doctors and employees at any location in Vail, Edwards, and Frisco, Colorado during the relevant period.

28. "You," "yours," "Defendant," and "Vail Health" means "Vail Clinic, Inc." or with its primary location at 180 South Frontage Road West, Vail, Colorado and all predecessors, affiliated entities, or d/b/a's including Vail Valley Medical Center, Howard Head, and includes all of Vail Clinic's in-patient and out-patient locations in Colorado. Vail Clinic also includes its executives, board of directors, employees, and any attorneys, accountants, consultants, representatives, agents, or other persons acting on behalf of or at the direction of Vail Health during the relevant period.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify each individual who was involved in discussing, negotiating, drafting, and signing the services agreement, including, but not limited to, the names, addresses, and telephone numbers of each Vail Health director, officer, manager, and employee, as well as each attorney and his or her law firm, each accountant and his or her accounting firm, and each consultant and his or her firm. The individuals to be identified shall also include, but not be limited to, the names, addresses, and telephone numbers of each RPC-Vail shareholder, owner, director, officer, manager, and/or employee, as well as each attorney and his or her law firm, each accountant and his or her accounting firm, and each consultant and his or her firm.

### INTERROGATORY NO. 2:

Describe in detail each and every discussion that any Vail Health director, officer, manager, and employee, as well as each Vail Health attorney and his or her law firm, each Vail Health accountant and his or her accounting firm, and each Vail Health consultant and his or her firm, conducted with RPC-Vail regarding the manner in which Vail Health would bill, charge, invoice, or otherwise request reimbursement from any payer for physical therapy services rendered or provided by RPC-Vail under the services agreement and whether RPC-Vail would be disclosed as the "rendering provider" to the payers.

### INTERROGATORY NO. 3:

Identify each and every individual who attended or participated in each and every discussion, meeting, or other communication *within* Vail Health, including each director, officer, manager, employee, attorney, accountant, consultant, physician, or other agent of Vail Health, relating to the possible nonrenewal of the services agreement, which ended as of October 31, 2012. For each and every such discussion, meeting, or communication:

    (a)    Provide the date and location of the discussion, meeting, or communication;

    (b)    What was communicated among the participants to the discussion, meeting, or communication; and

    (c)    Whether any decision was reached during the discussion, meeting, or communication and the reasons for such nonrenewal of the services agreement.

### INTERROGATORY NO. 4:

Describe in detail each and every reason why Vail Health decided not to renew the services agreement that ended on October 31, 2012.

8

**INTERROGATORY NO. 5:**

Describe in detail each and every reason why, and each and every justification for, Vail Health declining to return the documents, data, and information that RPC-Vail had created prior to October 31, 2012 and were requested to be returned by RPC-Vail upon or after the nonrenewal of the services. Included in your answer to this Interrogatory No. 5, identify each and every individual, including each director, officer, manager, employee, attorney, accountant, consultant, physician, and other agent of Vail Health, who was involved with the decision not to return the documents to RPC-Vail that are referred to in this Interrogatory No. 5.

**INTERROGATORY. 6:**

Leading up to or upon the termination of the services agreement in 2012, Vail Health hired a number of RPC-Vail physical therapists. In doing so, the physical therapists that Vail Health hired signed employment agreements with Vail Health that included noncompetition or nonsolicitation covenants. If you contend that noncompete or nonsolicitation covenants were then, and are now, necessary legal restrictions on the employment of physical therapists employed by Vail Health in its Howard Head physical therapy clinic, to the extent permitted by C.R.S § 8-2-113(d)(2), describe each and every trade secret that justifies the imposition of such restrictive covenants in the employment agreements with Vail Health from May 1, 2012 to the present.

**INTERROGATORY NO. 7:**

If you answered Interrogatory No. 6 in the affirmative, identify and describe in detail each trade secret, as defined under the Colorado Uniform Trade Secrets Act, C.R.S. § 7-74-102(4), that you contend from May 1, 2012 to the present justifies the imposition of a restrictive covenant under C.R.S § 8-2-113(d)(2) and applicable case law, including:

(a) the identity of the person or corporate entity that created the trade secret;

(b) when each such trade secret was developed or created;

(c) the cost to develop each trade secret; and

(d) the measures that Vail Health has taken to protect each such trade secret.

**INTERROGATORY NO. 8:**

Identify the name and address (if known) of each and every Howard Head physical therapist and his or her executive or management duties from May 1, 2012 to the present that you contend fall within the exception to the C.R.S. § 8-2-113(2)(d) regarding the validity of noncompetition or nonsolicitation agreements under § 8-2-113(2). That is, identify each Howard Head physical therapist whose noncompetition or nonsolicitation agreement was *not* invalid because the physical therapist was "[e]xecutive and management personnel and officers and employees who constitute professional staff to executive and management personnel."

9

**INTERROGATORY NO. 9:**

Identify and describe in detail Vail Health's contention as to the correct "relevant geographic market" underlying the Complaint for antitrust violations and identify all documents by bates number that support or refute those contentions. The relevant time period for this Request No. 9 is January 1, 2004 to the present.

**INTERROGATORY NO. 10:**

Identify and describe in detail Vail Health's contention as to the correct the product market (here, the service market) underlying the Complaint for antitrust violations. To the extent that Vail Health contends that there are alternative treatments or therapies to physical therapy, as discussed in Vail Health's Motion to Dismiss in this action, describe in detail each such treatment, how each such treatment provides alternative remedies to or benefits for the physical ailments that physical therapy provides, and identify all documents by bates number that support or refute those contentions. The relevant time period for this Request No. 10 is January 1, 2004 to the present.

**INTERROGATORY NO. 11:**

Identify each and every individual, including each Vail Health director, officer, manager, employee, attorney and his or her law firm, accountant and his or her accounting firm, and consultant and his or her firm, who participated in discussions, meetings, or negotiations related to any joint venture, collaboration, or strategic partnership. For each and every such discussion, meeting, and communication:

(a) Identify the subject matter of the joint venture, collaboration, or strategic partnership discussed, including the proposed location and services to be provided;

(b) The date and location of where each discussion, meeting, or communication was held;

(c) Whether any understanding or agreement was reached, whether that be preliminary or final; and if so, the terms of such understanding or agreement.

(a) And if no understanding or agreement was reached, the reasons why no such understanding or agreement was reached; and

(b) Identify by bates number all documents referred to or relied upon in answering this interrogatory.

10

**INTERROGATORY NO. 12:**

Identify each and every individual, including each Vail Health director, officer, manager, employee, attorney and his or her law firm, accountant and his or her accounting firm, or consultant and his or her firm, who participated in discussions, meetings, or negotiations related to prices, pricing, price increases or decreases, costs, profits, terms and conditions, or Medicare or medical insurance reimbursement for physical therapy treatment relating to any joint venture, collaboration, or strategic partnership. For each and every such discussion, meeting, and communication:

    (a)    Identify the subject matter of the joint venture, collaboration, or strategic partnership discussed, including the proposed location and services to be provided;

    (b)    The date and location of where each discussion, meeting, or communication was held;

    (c)    Whether any understanding or agreement was reached, whether that be preliminary or final; and if so, the terms of such understanding or agreement.

    (d)    And if no understanding or agreement was reached, the reasons why no such understanding or agreement was reached; and

    (e)    Identify by bates number all documents referred to or relied upon in answering this interrogatory.

**INTERROGATORY NO. 13:**

Identify each and every individual, including each Vail Health director, officer, manager, employee, attorney and his or her law firm, accountant and his or her accounting firm, or consultant and his or her firm, who participated in discussions, meetings, or negotiations relating to legal or regulatory issues relating to any joint venture, collaboration, or strategic partnership, including antitrust issues such as those prohibited by the Sherman Act, 15 U.S.C. § 2; kickback issues such as those prohibited under the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b); or physician referral issues, such as those prohibited by the Stark Law, 42 U.S.C. § 1395nn. For each and every such discission, meeting and communication:

    (a)    Identify the subject matter of the joint venture, collaboration, or strategic partnership discussed, including the proposed location and services to be provided;

    (b)    The date and location of where each discussion, meeting, or communication was held;

11

(c) Whether any understanding or agreement was reached, whether that be preliminary or final; and if so, the terms of such understanding or agreement;

(d) And if no understanding or agreement was reached, the reasons why no such understanding or agreement was reached; and

(e) Identify by bates number all documents referred to or relied upon in answering this interrogatory.

**INTERROGATORY NO. 14:**

Identify by year and each doctor group, including, but not limited to Steadman and VSO, the number of patients and the amount of revenues and profits that were generated by doctor referrals to Howard Head for each year from November 1, 2004 to the present, and in doing so, identify whether those referrals, revenues, or profits were realized by RPC-Vail or Vail Health.

**INTERROGATORY NO. 15:**

Identify by year the two doctor groups of Steadman and VSO, the number of patients, revenues, and profits that were generated by referrals from each of them to Howard Head as a percentage of the total number of patients, revenues, and profits that were generated by RPC-Vail and Vail Health from November 1, 2004 to the present.

**INTERROGATORY NO. 16:**

During the approximate period of 2016-2018, Vail Health and Steadman signed a lease (the "Lease") with a term of approximately ten (10) years, whereby Steadman would continue to occupy its clinical facilities in the Vail Health medical building located at 181 W. Meadow Drive, Vail, Colorado. The Lease contains a provision that prohibits Steadman from providing physical therapy services within the space provided under the Lease. Explain in detail Vail Health's reasons for inserting the clause in the Lease that precludes Steadman from providing physical therapy services, whether that clause or one similar had been included in any prior leases, and identify by bates number all documents referred to or relied upon in answering this interrogatory.

**INTERROGATORY NO. 17:**

Identify each and every payer that Vail Health has had provider contracts with during the period from November 1, 2004 to the present and for which Vail Health has submitted reimbursement claims for physical therapy services.

**INTERROGATORY NO. 18:**

Describe in detail how Vail Health developed any chargemasters from November 1, 1999 to the present, and in doing so, identify the chargemasters in use during this period of time, the directors, officers, managers, employees, consultants, and accountants who were involved in setting prices or fees, and identify all components of any prices or charges related in any way to physical therapy services identified on the chargemaster during that same period of time.

**INTERROGATORY NO. 19:**

Identify each and every Vail Health director, officer, manager, or employee who has knowledge of Vail Health's provider contracts and pricing with healthcare insurers and payers such as Aetna, United Healthcare, Anthem, BlueCross/BlueShield, Humana, Medicare, and others from November 1, 2004 to the present related in any way to physical therapy services.

**INTERROGATORY NO. 20:**

Identify each and every attorney (in-house or outside counsel), together with the name, address, and telephone number each attorney and his or her law firm, who was employed or engaged by Vail Health for the purpose of providing advice, counselling, planning, negotiating, litigation, and/or any other legal services to Vail Health with respect to each of the following subject matters:

(a) The planning, discussions, negotiations, or signing of any services agreements between Vail Health and RPC-Vail from January 1, 1999 to October 31, 2012;

(b) Legal, regulatory, or compliance issues or questions arising from the methodology used by and manner in which Vail Health billed, charged, invoiced, or otherwise requested reimbursement from payers for physical therapy services provided by RPC-Vail from January 1, 1999 to October 31, 2012;

(c) The planning, discussions, negotiations, or any agreements relating to the nonrenewal of any services agreements between Vail Health and RPC-Vail from January 1, 2012 to December 31, 2013; and

(d) Vail Health's refusal to return to RPC-Vail those documents referenced in Interrogatory No. 5 from January 1, 2012 to December 31, 2013;

(e) The planning, discussions, negotiations, or any agreements relating to any joint venture, collaboration, or strategic partnership related in any way to physical therapy services from January 1, 2014 to the present; and

(f) Legal, regulatory, or compliance issues relating any joint venture, collaboration, or strategic partnership related in any way to physical therapy services from January 1, 2014 to the present.

**INTERROGATORY NO. 21:**

Identify each and every Vail Health accountant (such as Vail Health's Chief Financial Officers), together with the name, address, and telephone number of each and every accountant (such as public accountants) and his or her accounting firm, who was employed or engaged by Vail Health for the purpose of providing advice, counselling, planning, negotiating, or any other accounting, financial, or compliance services to Vail Health with respect to each of the following subject matters:

(a) The planning, discussions, negotiations, or signing of any services agreements between Vail Health and RPC-Vail from January 1, 1999 to October 31, 2012;

(b) Accounting, financial, regulatory, or compliance issues or questions arising from the methodology used by and manner in which Vail Health billed, charged, invoiced, or otherwise requested reimbursement from payers for physical therapy services provided by RPC-Vail from January 1, 1999 to October 31, 2012;

(c) The planning, discussions, or negotiations relating to the nonrenewal of any services agreement between Vail Health and RPC-Vail from January 1, 2012 to December 31, 2013; and

(d) The planning, discussions, negotiations, or any agreements relating to any joint venture, collaboration, or strategic partnership related in any way to physical therapy services from January 1, 2014 to the present; and

(e) Legal, regulatory, or compliance issues relating any joint venture, collaboration, or strategic partnership related in any way to physical therapy services from January 1, 2014 to the present.

**INTERROGATORY NO. 22:**

Describe in detail the formula or methodology used in accounting for and distributing revenues or profits generated by the physical therapy services rendered or provided by RPC-Vail from 1999 until October 31, 2012, including any changes in the methodology over the same time period.

**INTERROGATORY NO. 23:**

Identify each and every third-party vendor, healthcare consultant, strategic planning consultant, marketing consultant, or Medicare compliance consultant or expert, together with the name, address, and telephone number of each of their firms (such as McKinsey & Assoc.) that were employed or engaged by Vail Health during the period beginning January 1, 1999, and continuing to the present, for the purpose of providing billing services, healthcare consulting, strategic planning, healthcare analysis, financial analysis, marketing advice, counselling, planning, negotiating, consulting, or any other

14

advisory or Medicare and compliance services to Vail Health, with respect to each of the following subject matters:

 (a) Healthcare marketing, financial, accounting, reporting, regulatory, or compliance issues relating to the planning, discussions, negotiations, or signing of the services agreement between Vail Health and RPC-Vail;

 (b) Healthcare, marketing, financial, accounting, reporting, regulatory, or compliance issues arising from the methodology used by and manner in which Vail Health billed, charged, invoiced, and/or otherwise requested reimbursement from payers for physical therapy services provided by RPC-Vail;

 (c) Healthcare, marketing, financial, accounting, reporting, regulatory, and/or compliance issues arising from the planning, discussions, and/or negotiations relating to the nonrenewal of any services agreement between Vail Health and RPC-Vail;

 (d) Healthcare, marketing, financial, accounting, reporting, regulatory, or compliance issues arising from the planning, discussions, drafting, and/or negotiations relating to any joint venture, collaboration, or strategic partnership related in any way to physical therapy services; and

 (e) Third-party vendors providing any type of billing service, such as clearinghouses, Medicare Administrator Contractors, and billing software vendors.

**INTERROGATORY NO. 24:**

Identify each and every company or individual that Vail Health has considered a competitor for physical therapy services from November 1, 2004 to the present, and in doing so, identify the company or individual by name, address, and telephone number, as well as the reasons why the company or individual is or was viewed as a competitor, and any plans or strategies that Vail Health considered or developed with respect to those competitors, including, but not limited, communicating with doctors at Steadman or VSO regarding those competitors.

**INTERROGATORY NO. 25:**

If your response to Plaintiffs' Requests for Admission was anything other than an unqualified admission, for each such response, describe the facts upon which you base your response, including the reasons why you deny it or cannot admit it and each person who has knowledge of such facts.

| | |
|---|---|
| Dated: March 1, 2021 | *s/ Alan L. Kildow* <br> Alan L. Kildow, MN# 0143133 <br> 790 Potato Patch Drive <br> Vail, CO 81657 <br> Telephone: (970) 390-6675 <br> E-mail:  alkildow@aol.com <br><br> Jesse Wiens, Colo. #33903 <br> Fahrenholtz & Wiens LLC <br> 100 West Beaver Creek Boulevard <br> Suite 236 <br> Avon, CO 81620 <br> Telephone: (970) 949-6500 <br> E-mail:  fwlawyers@gmail.com <br><br> Attorneys for Plaintiff Sports Rehab Consulting LLC and Lindsay Winninger |

16

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2021, I, Sonya Braunschweig, for and on behalf of Plaintiffs' Sports Rehab Consulting, LLC and Lindsay Winninger, at the direction of Alan L. Kildow, counsel of record for Plaintiffs in this action, served a true and correct copy of Plaintiffs' First Set Of Rule 33 Interrogatories To Defendant Vail Clinic, d/b/a Vail Health. The Interrogatories were served by U.S. Mail pursuant to Rule 33, upon the following counsel of record for Defendant:

>Shannon Stevenson
>Jacqueline Roeder
>Janet Savage
>Daniel Richards
>Davis Graham & Stubbs LLP
>1550 17th Street, Suite 500
>Denver, CO 80202
>Counsel for Defendant Vail Clinic, Inc., d/b/a Vail Health

>*s/Sonya R. Braunschweig*
>Sonya R. Braunschweig

17