## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation.

      Defendant.

---

## PLAINTIFFS' OPPOSITION TO MOTION TO QUASH
## PLAINTIFFS' SUBPOENA TO MICHAEL HORWITH

---

### INTRODUCTION

Vail Health's motion is about Plaintiffs' attempt to preserve the testimony of Michael Horwith—a court-appointed forensic computer expert—before he retires and leaves the state. Part of this case involves Vail Health's exclusionary acts where it accused Plaintiffs of receiving Vail Health stolen patient files and trade secrets from David Cimino. Plaintiffs denied those allegations, so in the Eagle County state case, the court appointed a forensic expert, Michael Horwith, to conduct an exhaustive investigation to determine if Cimino transferred those files to Plaintiffs. Over the course of two years at a cost of $75,000, Horwith ultimately found no such documents or files. Horwith recently informed the parties that beginning April 27, 2021, he will be leaving Denver and traveling

for the next five months.[1]  Given that Horwith has not been deposed and there was a continuance of the trial in the state case, Plaintiffs served a subpoena on Horwith so his testimony could be preserved related to his investigation, opinions, and the documents and computer files they involve.  Horwith estimates it will take him two hours to produce the files, and the deposition will likely take 1-2 hours.  Horwith has agreed to comply with the subpoena and has been paid $1,500 in advance for his time.

Vail Health has moved to quash the subpoena on the grounds stated in its papers, but the *real* reasons for the motion are two-fold: *First*, Vail Health does not want Horwith's testimony to be preserved because it is so adverse to its defense.  His conclusions demonstrate that Plaintiffs did not receive any files purportedly stolen by Cimino as Vail Health falsely asserted.  *Second*, as time will show, Vail Health plans to attempt to erase Horwith's two-year, $75,000 investigation in the Eagle County case and start the process all over again here.  It is in the interest of the parties and this Court to deny Vail Health's motion and permit Horwith's testimony to be preserved and the documents produced.

## VAIL HEALTH FAILED TO MEET AND CONFER

Plaintiffs called Vail Health to discuss the Horwith subpoena.[2]  Vail Health did not return Plaintiffs' calls.  Plaintiffs also attempted to schedule a conference call to discuss the Horwith subpoena.[3]  And despite the Court's clear procedures that there must be a conferral before raising discovery issues with the Court, Vail Health has refused to do so.  The Court will likely recall that Plaintiffs specifically raised the meet-and-confer

---

[1]    Ex. 1 at 3-4 [email].
[2]    Exs. 2-3 at 1 [email].
[3]    Ex. 3 at 1 [email]; Ex. 4 at 2 [email].

requirement at the March 30 discovery conference.  Plaintiffs did so because Vail Health had included, at the last minute and without any conferral, the Horwith issue in the Discovery Dispute Chart.  Although the Court stated conferral was required, as the Court's Discovery Dispute Procedures also make clear, Vail Health refused to hold any conferral call.  Vail Health admits it was served with the Horwith subpoena on March 8 and yet did nothing to comply with the Court's Discovery Dispute Procedures.  Instead, Vail Health waited until Friday, April 2—right before the return date of the subpoena *duces tecum* on April 5 and deposition on April 9—to file a motion to quash.

## FACTUAL BACKGROUND

## I.      THE COURT-ORDERED, COMPUTER FORENSIC EXAMINATION.

In the state court action, the court issued a Forensic Protocol Order in February 2018,[4] which ordered, among other things, an examination of the Cimino two USB devices to determine what, if any, purported Vail Health files Cimino transferred to Plaintiffs—the "matches."   The Order governed the scope and procedures to test and inspect Plaintiffs' and Cimino's electronic evidence.  It specified the procedures to be used to acquire, analyze, and report the "matches."   In other words, the protocol let the examiner know where to start the analysis, how to proceed, and when the job was done. Early on, the court instructed the parties to craft a protocol that would identify the "matches" while still protecting Plaintiffs' and Cimino's privacy interests.[5]   This was important because it was their **personal** devices and files at issue, not Vail Health's.

---

[4]      Vail Health Ex. 6 [Forensic Protocol Order].
[5]      Ex. 5 at 1 [Minute Order].

The parties spent over two months attempting to hammer out a proposed forensic protocol order, which failed because Vail Health repeatedly attempted to gain direct access to Cimino's and Sports Rehab's computers and information so that Vail Health's own forensic computer expert could conduct a forensic analysis.[6]  Given these repeated attempts—including prelitigation—Plaintiffs and Cimino submitted a proposed order, which the court adopted with slight modifications, that protected their privacy interests and ensured that Vail Health could not access their information absent a court order.  It is with that backdrop in mind that Horwith was appointed as the expert in about April 2018.

Dissatisfied that its draft protocol order was not adopted by the court, Vail Health immediately sought to expand the Forensic Protocol Order multiples times over the course of two years, with numerous days-long and hours-long hearings held on many of the same issues over and over.  In the end, the Forensic Protocol Order was expanded multiple times and an exhaustive search conducted, which included:

- ▪ Searching Plaintiffs' computers, email system, and cloud-based system, which included its medical records, administrative files, and employee files;

- ▪ Searching Vail Health's patient names on Plaintiffs' devices, emails, and cloud-based storage system;

- ▪ Requiring Horwith to re-review documents Plaintiffs' expert David Penrod had reviewed prelitgation from Winninger's computer;

- ▪ Searching for specific documents designated by Vail Health even though those documents were not found on Cimino's USB devices;

- ▪ Conducting a "fuzzy" or "near-duplicate" for documents that were 75% similar to the Cimino documents at an estimated cost of $10,000;[7]

---

[6]     Ex. 6 § 3, 7-8 [VH's proposed Forensic Protocol Order].

[7]     Horwith used a third-party e-discovery vendor to conduct a "fuzzy" search, which entails searching for matches of documents by scanning words and phrases.  It is not industry practice to use such a search as part of a forensic exam.

- ▪ Extending the time period from December 1, 2015 to November 1, 2015, weeks before Cimino was even hired by Sports Rehab;

- ▪ Producing legacy documents from Cimino's personal computer, which related to or were created by Cimino's former employer RPC-Vail;

- ▪ Ordering Penrod to produce the operating system files from Winninger's computer (referred to in Vail Health's motion as "connection logs");

- ▪ Ordering Horwith to search for and produce the same operating system files ("connection logs"); and

- ▪ Ordering a search for Vail Health's purported "trade secrets" without any date restrictions.

After two years of conducting the forensic review at a cost exceeding $75,000, Horwith found no evidence that Cimino had transferred the purported files to Plaintiffs:

- ▪ He found no evidence that the two Cimino USB devices were attached to Plaintiffs' computers;

- ▪ Other than the MCL Weekly Rehab Schedule, a document created for a Sports Rehab patient, he found no other Cimino downloaded documents on Plaintiffs' computers;

- ▪ He found no deletion of documents or files, no wiping software, and no evidence of any shredders being used;

- ▪ Using the "fuzzy" search, Horwith identified just *five* documents similar to Cimino's:  a generic rehab protocol, the MCL Weekly Rehab Schedule, Cimino's resumé, a referral form sent to Winninger by Vail Health; and a one-page summary on total joint health on Sports Rehab letterhead; and

- ▪ He found no evidence that Cimino transferred any PHI or purported trade secrets to Plaintiffs.

## II.    HORWITH'S RETIREMENT AND THE FEDERAL SUBPOENA.

Horwith's work in the state court action was completed by no later than March 2020.  Since then, Horwith's only role has been as a custodian of the forensic images, devices, and his file.  In January 2021, Horwith informed the parties that he was retiring and no longer wanted to maintain the files and devices.  As part of the transition

process, Plaintiffs contacted Horwith directly to discuss administrative issues,[8] copying all counsel on the email.  Horwith confirmed with the state court judge that he could communicate directly with the parties' counsel.[9]  Vail Health omits that from its motion.

To accommodate Horwith's desire to no longer maintain the files and devices, the parties unsuccessfully attempted to negotiate a transfer of the materials to the state court. During the course of those discussions, Plaintiffs raised the issue of taking Horwith's deposition to preserve his testimony.  In three emails, Vail Health refused to agree to a deposition because Horwith had not been identified in Plaintiffs' disclosures.[10]  When Plaintiffs requested Vail Health's legal support that a court-appointed expert under C.R.E. 706 had to be disclosed, Vail Health provided none.[11]  Although unnecessary, Plaintiffs amended their disclosure to include Horwith.  Vail Health pivoted, asserting it would object to Horwith's deposition because the disclosure was purportedly untimely.[12]

Then, on March 5, 2021, in a motion related to Horwith's files, Vail Health told the court that it would "not agree to having Plaintiffs or Cimino conduct any type of preservation deposition (*since Horwith still maintains a home in Denver*), **but do agree that Horwith's testimony may be drawn in whatever lawful manner as may be available**."[13]  So as of March 5, the basis for objecting to Horwith's deposition had been: (1) He was not identified in disclosures; (2) although identified, the disclosure was

---

8     Ex. 7 at 1 [email].
9     Ex. 8 at 1 [email]
10    Ex. 9 at 1-2, 4 [emails].
11    *Id.* at 2.
12    *Id.* at 3.
13    Ex. 10 at 7 (emphasis added) [Vail Health mot.].

untimely; and ultimately, (3) it was not necessary to depose him because he still maintains a home in Denver.  Importantly, Vail Health never claimed taking Horwith's deposition would violate the Forensic Protocol Order (because it does not).

Because of Horwith's potential unavailability and Plaintiffs need for his testimony in this case, Plaintiffs served a Rule 45 federal subpoena on Horwith, seeking production of documents and his deposition.[14]  The subpoena *duces tecum* seeks the following:

- His written report and all documents referenced in the report;
- All documents found in response to the Special Master's March 3, 2020 Order regarding forensic examination of trade secrets without create dates identified in Vail Health's Exhibit A;
- The event and activity ("connection") logs from the image of Winninger's computer identified in the September 12, 2019 Special Master Order; and
- All invoices and proof of payment.[15]

Although subject to the same Forensic Protocol Order as the parties here, Horwith did not assert that the Order precluded his deposition.  Horwith stated that it would take **two hours** to produce the documents, and Plaintiffs estimate it will take 1-2 hours to depose him.[16]  Plaintiffs paid Horwith for three hours of his time at the requested rate.

## <u>ARGUMENT</u>

## I.    THE MOTION SHOULD BE DENIED FOR FAILURE TO MEET AND CONFER.

On March 8, 2021, Vail Health was served notice of the Horwith subpoena.  The return date for the subpoena is April 5 for the documents and April 9 for the deposition. Vail Health immediately sent two emails (one of which copied Horwith) threatening to file

---

[14]    Vail Health's Ex. 1 [Horwith subpoena].
[15]    *Id.* at Schedule A.
[16]    Ex. 11 at 2 [email/letter]; Ex. 12 at 2-3 [email/letter].

motions in state and federal court,[17] and one stating the issue would be included in the Discovery Dispute Chart.[18]   It was not,[19] likely because there was no conferral.   Vail Health waited until March 22 to send its "objection" to the subpoena,[20] trying then to slide the issue into the March 26 Discovery Dispute Chart.   At the March 30 discovery conference, Plaintiffs raised the conferral issue, which this Court stated is required. Plaintiffs believed some agreement could be reached with a conferral—that is, if Vail Health had actually wanted to work it out.   Plaintiffs tried to hold a conferral call.   Vail Health chose to file this motion instead.

Vail Health failed to comply with Local Rule 7.1, which requires counsel to confer in good faith in an attempt to resolve discovery disputes before involving the Court. Vail Health also refused to follow the required Discovery Dispute Procedures.   First and foremost, Vail Health would not participate in a conferral call to discuss the specific issue and the relief.   Having not done so, the parties did not, and could not, jointly contact the Court to inquire about setting an informal discovery conference.   And finally, the Court could not address the issue at a discovery conference.   Vail Health's motion should be denied because it failed to meet and confer.

## II.   THE MOTION SHOULD BE DENIED BECAUSE IT IS UNTIMELY.

Under Fed. R. Civ. P. 45(2)(B), the person commanded to produce documents in response to a subpoena must object before the earlier of the time specified for compliance

---

[17]   Ex. 13 at 1 [email].  *See also* Ex. 14 at 1 [email response].
[18]   Ex. 15 at 1 [email].
[19]   Ex. 16 at 2 [email/chart].
[20]   Vail Health's Ex. 2 [objection].

or 14 days after the subpoena is served.  Horwith—the third-party witness served with the subpoena—is prepared to produce documents and be deposed (so long as he is compensated).  Vail Health, on the other hand, waited until the eve of the return date to file a motion to quash.  The motion was filed Friday, April 2, and the document production is scheduled for Monday, April 5. Vail Health planned this all along, as is evident by the communications Vail Health had with Horwith on March 22 and 31,[21] when it signaled to a third-party, court-appointed expert not to comply with the subpoena:

> Meanwhile, on the subpoena in the federal case…**we will be filing a motion to quash the subpoena no later than Friday**. We will send you a copy of the motion to quash or otherwise communicate with you regarding the withdrawal of the subpoena. **In any event, I don't expect that Michael will need to produce documents or show up for a deposition next week,** but will keep you informed as to any rulings, motions or agreements.[22]

On April 5, Vail Health's counsel then advised Horwith directly that "he should not produce documents or appear for his deposition this week until the court rules on this."[23]

Vail Health has not explained why—given that it knew as of March 9 that it intended to file a motion to quash—it waited until Friday, April 2 to file a motion.  There is but one reason.  Vail Health is fully aware that Horwith will be leaving on April 27 and will be gone for at least five months.[24]  Under the normal briefing schedule, this motion would not be

---

[21]     Ex. 1 at 1-3 [email].
[22]     *Id.* at 1.
[23]     Ex. 17 at 1-2 [Bernard/Savage email].  *Biocore Med. Techs., Inc. v. Khosrowshahi*, 181 F.R.D. 660, 667 (D. Kan. 1998) (noting counsel has an ethical obligation not to interfere with a subpoena's valid enforcement); *Desanzo v. AHS S.W. Hosp. Inc.*, Case No. 18-CV-353-JED-FHM, 2019 WL 2341666, at*4 (N.D. Okla. June 3, 2019) (noting it was improper for counsel advise nonparty not to comply with subpoena).
[24]     Ex. 1 at 3-4 [email].

fully briefed until May 10, 2021, long after Horwith has departed.  So even if the Court would deny its motion, its gambit would have paid off—Plaintiffs would be precluded from relevant evidence that is prejudicial to Vail Health for at least five months. Vail Health appears to gain some kind of tactical advantage through a motion to quash.

As the Nevada Federal District Court explained in *Nationstar Mortgage, LLC v. Flamingo Trails No. 7 Landscape Maintenance Association,* "[i]t is useful to reiterate a settled and universally recognized proposition: a party is not empowered to grant itself, *de facto*, the relief it seeks from the Court by delaying in filing a motion to such an extent that it cannot be resolved prior to the scheduled event."[25]  "When an attorney knows of the existence of a dispute and unreasonably delays in bringing that dispute to the Court's attention until the eleventh hour…the request for relief may be denied outright."[26]

Vail Health had ample time to confer with Plaintiffs and follow the Court's Discovery Dispute procedures.  Vail Health's behavior is in direct contrast to that addressed in *Carbajal v. Serra*,[27] where this Court recognized that a motion to quash was timely when it gave the Court sufficient time—there at least 11 days—to decide the motion.[28]  Courts have had no problem denying a party's motion to quash for undue delay when filed at the least minute and even when no tactical advantage was being sought, unlike what Vail Health seeks to do here.[29]

---

[25]    316 F.R.D. 327, 336 (D. Nev. 2016)

[26]    *Cardoza v. Bloomin' Brands, Inc.*, 141 F. Supp. 3d 1137, 1143 (D. Nev.2015).

[27]    Civil Action No. 10-cv-02862-REB-KLM, 2012 WL 2215677, at *2 (D. Colo. June 15, 2012).

[28]    *Id*.

[29]    *See, e.g., Joplin Schs. v. P1 Group, Inc.,* Case No. 3:15-CV-05026-DGK, 2016 WL 3512262, *1 (W.D. Mo. June 22, 2016) (denying motion to quash when party raised issue

### III.   VAIL HEALTH PROVIDES NO GROUNDS TO QUASH THE SUBPOENA.

#### A.   There Is No Basis Under Fed. R. Civ. P. 45(d)(3) To Quash.

Horwith did not object or move to quash the subpoena.  That was Vail Health, and it has no standing under Rule 45(d)(3) to do so.[30]  Horwith was given a reasonable time to comply, the subpoena is not outside the geographical limits specified in Rule 45(c), and the subpoena seeks court-ordered files Horwith generated or identified as the court-appointed expert.  Horwith himself admits there is no undue burden—it will take two hours to produce the documents, and a 1-2 hour deposition is reasonable, especially when he is being paid $500/hour to comply with the subpoena.  Vail Health has failed to identify any basis under Rule 45(d)(3) to quash the subpoena, and its motion should be denied.

#### B.   Horwith's Report, Files, And Testimony Are Relevant.

This antitrust case involves allegations Vail Health's exclusionary conduct to acquire and maintain a monopoly, and its *attempts* to acquire and maintain a monopoly, in violation of § 2 of the Sherman Act.[31]  Horwith's two-year engagement, at a cost of

---

of deponent's unavailability three days before deposition); *Allstate Ins. Co. v. Nassiri*, 2:08-CV-369 JCM (GWF), 2011 WL 4905639, at *1 (D. Nev. Oct. 14, 2011) (overruling objections finding motion to quash subpoena was untimely when three-weeks' notice provided and motion filed three days before); *In re Hanford Nuclear Reservation Litig.*, No. CV-91-3015-WFN, 2006 WL 543879, at *1 (E.D. Wash. Feb. 22, 2006) (finding motion untimely when no time to address it); *Delmonte-Wright v. GEICO Cas. Co.*, Case No.: 2:19-cv-00921-APG-NJK, at *3 (D. Nev. Nov. 7, 2019) (refusing to reconsider order that found motion untimely brought four business days before deposition).

[30]      *See Wyatt v. Kozlowski*, 19-CV-159W(F), 2019 2WL 3729262, at *2 (W.D.N.Y. Aug. 8, 2019) ("Undue burdensomeness may be raised as an objection only by the non-party recipient"); *Colonial Funding Network, Inc. v. Genuine Builders, Inc.*, 326 F.R.D. 206, 212 (D.S.D. 2018) (noting that only subpoena recipient has standing to file a motion to quash based on undue burden, other parties do not).

[31]      15 U.S.C. § 2.

$75,000, conducting an exhaustive and comprehensive search, confirms that Vail Health Cimino did not transfer Vail Health patient files or trade secrets to Plaintiffs and that certain of Vail Health's acts were undertaken to exclude a competitive rival from the relevant markets.  Vail Health does not object to the Horwith subpoena or deposition on the grounds of relevancy.  This is about preserving a court-appointed expert's testimony who is now retired and traveling extensively.

### C.     THE FORENSIC PROTOCOL ORDER CONFIRMS THE SUBPOENA IS APPROPRIATE.

The opening recital of the Forensic Protocol Order sets out its purpose and the "***parameters of the forensic examination***."[32]  All provisions in the Order must be read within that context.  Several are relevant to this discussion.

**Sections 2-3** provides the designation of each party's computer forensic expert, whose task was to communicate with the independent expert ***about the forensic examination***.  It made sense to have qualified forensic experts—not attorneys—to address any technical issues.  It also avoided any issue of an attorney advocating or influencing the independent expert ***during the forensic examination***.  The parties wanted the examination to be as independent and neutral as possible.

Vail Health has cited nothing in the Forensic Protocol Order that strips a party's fundamental right to depose a court-appointed expert, or call that expert at trial, under Rule of Evidence 706.  Depositions are fairly routine, particularly in the context of forensic examinations.[33]  These depositions are considered so important that the Sixth Circuit in

---

[32]     Vail Health's Ex. 6 at 1 [Forensic Protocol Order].

[33]     *Trigon Ins. Co. v. U.S.*, 234 F. Supp. 2d 592, 593 (E.D. Va. 2002) (deposition of

*Nemir v. Mitsubishi Motors Corp.*[34] held that it was reversible error for a trial court to preclude a party from calling a court-appointed expert to testify: "The rule simply does not condition a party's doing so on the district court's approval, nor does it maintain merely that the district court 'may allow either party to call the witness.'"[35]

Section 3 made it clear that the bit-stream images, or information from those images, *could only be disclosed if authorized by court order or by the parties*. This provision was included for one specific reason—at that time, the parties had dueling proposed orders before the court. Vail Health wanted direct access to Plaintiffs' and Cimino's devices/images so that it could conduct its own examination. By including this paragraph in § 3, Plaintiffs and Cimino wanted it to be clear that Vail Health could not gain access conduct its own analysis of their devices unless the court allowed, which it did not.

Vail Health claims that the "connection logs," or system logs as they are more appropriately called, identified in the subpoena violate the Forensic Protocol Order. But it was Vail Health itself that requested those logs be produced, first by Plaintiffs' expert[36] and then by Horwith.[37] Vail Health then agreed that Horwith could extract those files from

---

court-appointed forensic expert about deleted files report to "avoid additional litigation over the manner in which that effort was conducted"); *G.K. Las Vegas Ltd. P'ship v Simon Prop. Grp. Inc.*, 671 F. Supp. 2d 1203, 1224-25 (D. Nev. 2009) (deposition of court-appointed forensic examiner and noting that "one of the principal reasons for the court to appoint an expert witness is to obtain impartial testimony to aid the court or the jury in resolving a scientific issue"); *Krumweide v. Brighton Assocs., LLC*, No. 05-cv-3003, 2006 WL 1308629, at *3-5 (N.D. Ill. May 8, 2006) (right to depose court-appointed third-party neutral expert about report on destruction of files from laptop computer).

[34]     381 F.3d 540 (6th Cir. 2004).
[35]     *Id.* at 556.  *See also Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1311 n. 10 (11th Cir. 1999) ("FRE 706 requires the experts…are subject to depositions").
[36]     Ex. 18 [Order].
[37]     Ex. 7 at 4 [email/Order].

the image of Winninger's computer provided by Penrod,[38] but not before attempted to expand the court's order by telling Horwith to produce *all* connection logs, which Horwith refused to do.[39]  Plaintiffs were charged $1,200 for that work, and Vail Health does not explain how the production of operating system files from Winninger's computer—files that Vail Health wanted, obtained, and agreed to—in any way violates the Forensic Protocol Order.  In fact, it complies with § 3 of the Forensic Protocol Order in that a court ordered the production, and Vail Health agreed to the production.

Finally, Vail Health curiously devotes close to 4 pages of its argument focusing on protective orders.  The documents sought in the subpoena come from two sources—Plaintiffs and Cimino.  While Cimino may not be a party here, his documents (and Plaintiffs) are subject to virtually the same protective order here as in the state action.

### D.    THE SUBPOENA DOES NOT SEEK DUPLICATIVE DISCOVERY.

Finally, there is no duplication.  Horwith was not deposed in the state court action. The state court trial was originally set for February 2021, and Horwith would have been called as a witness then.  Due to COVID 19, the trial was cancelled.  Since then, Horwith has stated he is retiring and will be gone for five months starting April 27.

Plaintiffs subpoenaed Horwith to produce the "matching" documents, his report, and other searches he conducted—under court order—and did so to avoid any dispute regarding the actual documents subject to his forensic review.  As is evident from the 1,100 filings in the state case, which Vail Health characterized six months ago as

---

38    Ex. 19 at 1, 4, 10-11 [email].
39    *Id.* at 1, 4.

consisting of 80 motions, including 30 discovery motions and 8 dispositive motions, the parties cannot agree on anything.  For the parties, it would likely take months, going back and forth, to try to identify and compare the documents he produced in an effort to reach an agreement.  In the end, the parties would not be able to agree on exactly what Horwith produced, and the parties will be right back before the Court on that issue.[40]

The Horwith production is also necessary because the documents were not produced directly to the parties but through the parties' expert representatives.  The documents were not bates labeled, were produced at differing times, and include many duplicates.  Nor have documents containing protected health information been labeled "Attorneys' Eyes Only Protected Health Information," which is mandated by the HIPAA Qualified Protective Orders issued in both cases. Horwith states that it will take him two hours to produce the documents, which he can do by giving access to Plaintiffs and Vail Health at the same time..  Once produced, Plaintiffs will bates label and apply appropriate confidentiality designations (at Plaintiffs' cost) to further streamline the process and avoid any issues about the documents going forward.  No burden is placed on Vail Health.

Finally, as to Horwith's invoices and payments, the time Horwith expended is basic information a jury may consider in determining what weight to give his analyses, which is why Fed. R. Civ. P. 26(b)(4)(C)(i) requires an expert's compensation be disclosed.  In fact, Vail Health demanded Plaintiffs produce the same information.[41]  In producing this information now, the parties will not be able to dispute this issue later.

---

[40]     *See* Vail Health Ex. 4 (proposing long, drawn-out process for Horwith's documents).
[41]     Ex. 20 at 1 [email].

## **CONCLUSION**

For the foregoing reasons, Vail Health's motion to quash should be denied for failing to meet and confer, for the delay caused in raising the issue and the prejudice Plaintiffs will suffer if the deposition and production does not proceed.  Finally, Vail Health has failed to meet its burden to show that a federal subpoena issued to a court-appointed forensic expert was in any way improper or outside the parameters of Rule 45.

Dated: April 5, 2021                                     *s/ Alan L. Kildow*
Alan L. Kildow, MN# 0143133
790 Potato Patch Drive
Vail, CO 81657
Telephone: (970) 390-6675
E-mail:  alkildow@aol.com

Jesse Wiens, Colo. #33903
Fahrenholtz & Wiens LLC
100 West Beaver Creek Boulevard
Suite 236
Avon, CO 81620
Telephone: (970) 949-6500
E-mail:  fwlawyers@gmail.com

Attorneys for Plaintiff Sports Rehab Consulting
LLC and Lindsay Winninger

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 5, 2021, I served a true and correct copy of Plaintiffs' Opposition to Motion to Quash Plaintiffs' Subpoena to Michael Horwith, including exhibits, through the Court's ECF system, on the following:

Janet Savage
Jacqueline V. Roeder
Shannon Wells Stevenson
Daniel A. Richards
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO 80202
janet.savage@dgslaw.com
jackie.roeder@dgslaw.com
shannon.stevenson@dgslaw.com
daniel.richards@dgslaw.com

Counsel for Defendant Vail Clinic, Inc.

                    _s/ Alan L. Kildow_____
                    Alan L. Kildow