# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation.

      Defendant.

---

**THE PARTIES' JOINT DISCOVERY DISPUTE CHART**

---

**PLAINTIFFS:** Plaintiffs' dispute with respect to Vail Health's responses to the First Set of Discovery Requests focuses on the objections made by Vail Health.  To that end, Plaintiffs have provided to the Court the following exhibits related to their discovery disputes with Vail Health:

- Exhibit 1:  Plaintiffs' First Set of Requests for Production of Documents;
- Exhibit 2:  Vail Health's Responses to First Set of Requests for Production of Documents

Plaintiffs' dispute does not address the 57 documents produced and the multitude of issues presented by that production.  Plaintiffs have begun addressing those issues separately with Vail Health and, to the extent necessary, will bring those issues to the attention of the Court if they cannot be resolved by way of the conferral process.

1

**VAIL HEALTH:**  Much of this dispute reflects Plaintiffs' attempt to relitigate or rediscover issues that were the subject of extensive litigation and discovery in the State Court Action.  Vail Health refers to the Court's Scheduling Order, specifically Sections 6(e) and (f), which both provide: "without waiving objections as to relevancy or admissibility, the parties have agreed that discovery conducted in the State Court Action may be used in this matter *and should not be duplicated*."  (Doc. 71, at 13 (emphasis added).)  For its part, Vail Health's issues include Plaintiffs' failure to respond to discovery requests and to provide any reason as to why they will not, and Plaintiffs' subpoena to the state court's independent forensic expert, which violates the State Court's orders.

| DISPUTE | PLAINTIFFS' POSITION | VAIL HEALTH'S POSITION | FURTHER CONFERRAL |
|---|---|---|---|
| **Plaintiffs' RFP No. 1—All audited and unaudited annual and quarterly financial statements of Vail Health.  The relevant time period for Request No. 1 is Vail Health fiscal year 2009 to the present.** | Vail Health has objects to production of *any* of the audited financial statements on the basis that the audited financial statements include Vail Health's general hospital services and are not focused on the physical therapy services doing business under the trade name "Howard Head Sports Medicine ("HHSM") since approximately 2000).<br><br>Audited financial statements are a fundamental component of any Sherman Act § 2 case. | (a) With respect to the issue of whether Vail Health must provide <u>audited financial statements</u>, the claims in the Complaint assert Vail Health's alleged monopoly power in the market for physical therapy services, not general hospital services. *See, e.g.*, Pls.' Am. Compl. ¶ 33 ("The history of Vail Health's Howard Head physical therapy unit demonstrates that it maintains remarkable market saturation."); *id.* ¶ 247 ("From and after November 1, 2012 through the present, Vail Health has exercised market power and monopoly power to raise and | **Vail Health's Comments:**<br>Vail Health invites Plaintiffs to explain the relevance of specific documents or information from the period before Plaintiffs entered the market so that the parties can discuss the relevance and associated burdens and try to reach a resolution.<br><br>**Plaintiffs' Comments:**<br>Vail Health incorrectly suggests that it is Plaintiffs who now have the burden to demonstrate the relevance of the audited financial statements.  In doing so, it has |

| DISPUTE | PLAINTIFFS' POSITION | VAIL HEALTH'S POSITION | FURTHER CONFERRAL |
|---|---|---|---|
| | They contain important information, which here includes: Vail Health's possession of monopoly power for general hospital services in the Vail Valley; the relevant geographic market; the contribution of profits of the physical therapy clinic of RPC-Vail to building a monopolistic physical therapy service beginning in 2000, which the audited financial statements beginning in 2009 will provide insight; Vail Health's monopoly financial strength provided it with the ability to eventually launch a hostile takeover of the physical therapy services from RPC-Vail which ended in the termination of RPC-Vail's contract as of October 31, 2012; the methods by which Vail Health has billed the physical therapy services over a long period of time (2009-the present); the market power of Vail Health to increase prices for hospital services generally and physical therapy services in particular; the maintenance monopolistic prices over an extended period of time. | maintain supra-competitive prices for physical therapy services and exclude competitors in the Vail Valley geographic market.") Vail Health's audited financial statements provide no information specific to physical therapy services or Howard Head.  Thus, they have no relevance to Plaintiffs' claims.<br><br>(b) With respect to the <u>time period</u> covered by Plaintiffs' requests, the parties have conferred to some degree, Vail Health agreed to produce documents back to December 2015 because that includes the entire limitations period and because it includes the entire time period that Plaintiffs operated their competing business. (Am. Compl. ¶ 24.) Plaintiffs' cited authorities do not address the scope of discovery or the requirement of FRCP 26(b)(1) that discovery must be relevant and proportional to the needs of the case.  Nor do they bear any factual resemblance to this case.<br><br>Courts that have actually considered the scope of discovery in antitrust cases have rejected | made blanket objections and assertions without specifying its support for its positions.  Under Fed. R. Civ. P. 26(b)(2)(B), Vail Health must "state with specificity the grounds for objecting to the request, including the reasons."  And under Fed. R. Civ. P. 26(2)(C), "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection.  An objection to part of a request must specify the part and permit inspection of the rest."  The purpose of these rules and judicial precedent is to prohibit gamesmanship under the guise of discovery. *Witt v. GC Servs. Ltd. P'ship*, 307 F.R.D. 554, 554 (D. Colo. 2014).  "An evasive or incomplete discovery response will be treated as a failure to answer or respond."  *Id.*  This is why "[d]iscovery requests must be given a reasonable construction, and a responding party is not permitted to conjure up ambiguity where there is none."  "Objections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections."  *Id.* |

| DISPUTE | PLAINTIFFS' POSITION | VAIL HEALTH'S POSITION | FURTHER CONFERRAL |
|---|---|---|---|
| | *U.S. v. Grinnell Corp.*, 384 U.S. 563, 572 (1966) (Analysis of willful acquisition to create a monopoly in violation of Sherman § 2—analysis of the history of monopolistic acquisitions dating back to initial stock purchase in 1906, followed by chronological analysis of acquisitions extending and maintaining monopoly continuing into the 1960s; also, segmentation of services as Vail Health has suggested was not so limited in *Grinnell*: "We see no barrier to combining in a single [service] market a number of different products or services where that combination reflects commercial realities.") | requests for information that pre-dates the plaintiff's entry into the market and/or the relevant limitations period.  *See, e.g., Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, 2016 U.S. Dist. LEXIS 192196, at *19 (D. Minn. July 25, 2016) ("[T]he Court concludes that [plaintiff] has failed to establish the relevance of any information pertaining to [defendant]'s conduct that occurred before [plaintiff] entered the [product] market in 2002."); *Invacare Corp. v. Respironics, Inc.*, 2006 U.S. Dist. LEXIS 7602, at *18-21 (N.D. Ohio 2006) (rejecting plaintiff's effort to obtain discovery for two years before the beginning of the statute of limitations period and reasoning that antitrust cases "do not constitute a wholly separate category of actions where discovery antedating the applicable statute of limitations can be granted without a showing of relevancy"). | In reviewing discovery requests,  the Court broadly construes relevancy, and a request for discovery should be considered relevant if it is possible that the information sought may be relevant to the claim or defense of any party. *Bonanno v. Quizno's Franchise Co.,* 255 F.R.D. 550, 552 (D. Colo. 2009).  When the requested information appears to be relevant, the party objecting to the discovery has the burden to establish the information is irrelevant by demonstrating the information does not come within the scope of relevance as defined by Fed. R. Civ. P. 26(b)(1), or is of such marginal relevance that the harm in producing the information outweighs the presumption in favor of broad disclosure. *Id.*(citing *Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton,* 136 F.R.D. 682, 685 (D.Kan.1991) (stating that a party resisting discovery based on relevancy grounds bears the burden of explaining how "each discovery request is irrelevant, not reasonably calculated to the discovery of admissible evidence, or burdensome" )). The "objecting party cannot 'sustain this burden with boilerplate claims that the |
| | *U.S. v. Microsoft Corp.*, 253 F.3d 34, 50 (D.C. 2001), ("The offense of monopolization has two elements: '(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" The district court and D.C. | There are many unique factors about this case that establish that broader discovery is not proportional to the needs of this case.  The parties have already litigated these issues for more than four years, and Vail Health has | |

| DISPUTE | PLAINTIFFS' POSITION | VAIL HEALTH'S POSITION | FURTHER CONFERRAL |
|---|---|---|---|
| | Circuit analyzed the evolution of Microsoft's market power from the earliest renditions of Windows in 1982 through the time of trial.  In this Sherman Act § 2 case the district court entered 404 separate findings of fact that spanned almost 20 years.   In most monopoly cases, economists and courts analyze the beginning signs of monopolistic behavior over time before the defendant became a monopolist, they determine how and when the defendant attained market power and monopoly power, and what the monopolist did with that power.  Usually, this analysis extends over significant periods of time, often decades.  *See Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985) (chronology of the development of the Aspen skiing market from 1945 to 1960, and an extended analysis of the several business relationships between Aspen Skiing Co. and Aspen Highlands between 1962 and 1979.)  *See also Broadcom Corp. v. Qualcom Inc.*, 501 F.3d 297, 308 (3d Cir. 2007); | already produced nearly 50,000 pages of documents.

(c) With respect to the allegation that Vail Health <u>waived its objections</u>, this is frivolous.  As the Court is aware, it entered several different stay orders during the beginning phases of this case while the parties awaited the district court's ruling on Vail Health's *Colorado River* motion. At the January 28, 2020 conference with this Court, Plaintiffs' counsel specifically asked Magistrate Judge Gallagher if Vail Health had to respond to Plaintiffs' discovery requests, and Judge Gallagher responded that Vail Health did not, and that no deadlines would be running until he entered a scheduling order.  When the district court denied the *Colorado River* motion, it ordered the parties to contact the Magistrate Judge to set a new scheduling conference. (Doc. 55.) The scheduling conference was held on October 9, 2020, and the Court entered the scheduling order that same day. (Doc. 71.) Vail Health timely served its discovery responses on that same day, October 9.  In light of the Magistrate Judge's orders | requested discovery is oppressive, burdensome or harassing.'" *Id.* at 552-53. Conversely, when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request. *Id.* at 553.

As to the audited financial statements, "[t]o begin with … there is a general policy of allowing liberal discovery in antitrust cases. *Kellam Energy, Inc. v. Duncan*, 616 F. Supp. 215, 218 (D. Del. 1985) ("The cases clearly establish that the temporal scope of discovery in antitrust suits should not be confined to the limitations period of the antitrust statutes. ") In addition, "the temporal scope of discovery in antitrust cases should not be confined to the limitations period of the antitrust statutes or the damage period." *Arrowpac, Inc. v, Sea Star Linde, LLC.,* J-32, Case No. 3:12-cv-1180-JBT, 2014 WL 12617575 (M.D. Flo. Sept. 11, 2014).

Nor is a monopolist's anticompetitive conduct limited to |

| DISPUTE | PLAINTIFFS' POSITION | VAIL HEALTH'S POSITION | FURTHER CONFERRAL |
|---|---|---|---|
| | *Colorado Interstate Gas Co. v. Natural Gas Pipeline Co. of America*, 888 F.2d 683, 695 (10th Cir. 1989) (holding that a significant issue in Sherman Act § 2 monopolization cases is how long of a period of time a defendant has been able to charge and hold supracompetitive prices and realize supracompetitive profits) ("One measure of the degree of market power is the persistence of a firm's monopoly prices"). Some economists and cases refer to this as the "durability" of the defendant's monopoly power.<br><br>In the present case, the time period that would be relevant cold date back as far as November 1, 2000, although Plaintiffs have limited to time frame for financial statements to 2009 simply because of the likely limited availability of financial statements.  These financial statements will show that Vail Health is by definition a monopoly for general hospital services.  The the aggregate audited financial statements will show that it has used that monopoly power to accumulate | regarding Vail Health's obligations to respond to discovery, Vail Health did not waive any objections.  Fed. R. Civ. P. 34(b)(2)(A) ("A shorter or longer time [to respond to discovery requests] may be . . . ordered by the court."). | the particular product or service market.  "We see no barrier to combining to a single market a number of different products or services where that combination reflects commercial realities." *Grinnell*, <u>384 U.S. at 572.</u>  That principle applies here. Vail Health's prices, costs, and profit margins for hospital services generally over time, and how Vail Health has used and continues to use its monopoly power for hospital services generally to enhance its monopoly power for specific hospital services such as outpatient care general, and physical therapy in particular are relevant because the aggregate financial strength reflected in the audited financial statements of Vail Health reflect the commercial realities of the healthcare services Vail Health delivers, and how its overall monopoly position translates itself to the prices charged for physical therapy services and the profits derived therefrom.  In other words, the audited financial statements show Vail Health's wholistic monopolistic position in the Vail Valley and how it has used that financial strength to expand its monopoly position in specific areas |

| DISPUTE | PLAINTIFFS' POSITION | VAIL HEALTH'S POSITION | FURTHER CONFERRAL |
|---|---|---|---|
| | supracompetitive financial resources that it has used to expand its monopoly into additional service areas such as outpatient physical therapy, all of which began in 2000 and continues to this day.<br><br>Vail Health waived all objections by not responding. *See Munoz v. Citywide Banks of Colorado, Inc.*, Civil Action No. 09-cv-01124-PAB-MEH, at *3 (D. Colo. June 30, 2010) ("a failure to object to requests for production of documents within the time permitted by the federal rules has been held to constitute a waiver of any objection.");*Pham v. Hartford Fire Ins. Co.,* 193 F.R.D. 659, 661 (D. Colo. 2000) (citing cases) (finding that objections first asserted 71 days after service of discovery requests and where no good cause for the delay was articulated were waived).")<br><br>Additionally, the filing of a motion to stay discovery does not automatically relieve the | | of medical care such as physical therapy.<br><br>In addition, the audited financial statements contain specific information as to Vail Health's relevant geographic market.  That is, the Vail Valley as Plaintiffs have defined it.<br><br>Finally, Vail Health has represented to the Colorado Supreme Court that the "Howard Head Sports Medicine clinic was merely a "department" of Vail Health during the relevant period prior to November 1, 2012.  The only way to determine the financial impact of a department on the corporate entity within which the department operates, it through the audited financial statements.  In this case, the audited financial statements will be extremely important.<br><br>**Vail Health's Comments:**<br>(i) With respect to which party carries the burden to demonstrate the relevance of requests for production, Plaintiffs admit that "when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking |

| DISPUTE | PLAINTIFFS' POSITION | VAIL HEALTH'S POSITION | FURTHER CONFERRAL |
|---------|---------------------|------------------------|-------------------|
| | movant from continuing to comply with its discovery obligations.  *See WillemijnHoudstermaatschaapij BV v. Apollo Computer*, *Inc*., 707 F. Supp. 1429, 1441 (D. Del. 1989) ("Defendant's argument assumes that the moment it has filed a motion to stay discovery…it need no longer obey basic discovery rules….Simple logic teaches that…unless and until it is granted a stay, defendant should be required to conduct discovery as if no motion had been filed at all."); *Nat'l Corp. Tax Credit Funds III v. Potashnik*, 2008 WL 11339608 at *1 (C.D. Cal. June 16, 2008) ("That defendants have sought a stay is insufficient to avoid their discovery obligations.") (quoting *Tinsley v. Kemp*, 750 F. Supp. 1001, 1013 (W.D. Mo. 1990) ("by refusing to comply with discovery merely because a motion to stay is pending, a party effectively is granting its own motion to stay — even before the court has ruled. Such a phenomenon would reduce a | | the discovery has the burden to show the relevancy of the request." *Supra*.

Vail Health has provided the specific reasons why this request is irrelevant and why the temporal scope is not within the scope of permissible discovery.  *See* Vail Health's Response at 1(a), (b).

With respect to Vail Health's audited financial statements, those do not provide any information specific to physical therapy services or Howard Head. Plaintiffs attempt to circumvent that fact by arguing that "Vail Health has used and continues to use its monopoly power for hospital services generally to enhance its monopoly power for specific hospital services such as outpatient care general, and physical therapy . . . ."  *Supra*. This allegation appears nowhere in the Complaint, which alleges only monopoly power with respect to physical therapy services.  *See, e.g*., Pls.' Am. Compl. ¶ 33 ("The history of Vail Health's Howard Head physical therapy unit demonstrates that it maintains remarkable market saturation."). |

| DISPUTE | PLAINTIFFS' POSITION | VAIL HEALTH'S POSITION | FURTHER CONFERRAL |
|---|---|---|---|
| | court's orders to useless and senseless formalities.") | | Plaintiffs' reliance on *Grinnell* to suggest that they should be entitled to discovery about the entirety of Vail Health's services is misplaced.  *Grinnell* is not about the scope of discovery. Further, the reason *Grinnell* stated that multiple products or services could be combined into a single product market (*supra*) is because the variety of services at issue were all interchangeable: "But there is here a single use, *i.e.*, the protection of property, through a central station that receives signals.  It is that service, accredited, that is unique and that competes with all the other forms of property protection." 384 U.S. at 572.  Plaintiffs have not (and cannot) suggest that physical therapy is interchangeable with every service that Vail Health provides.  Vail Health's audited financial statements (which reflect highly-sensitive financial information for all services combined) are not relevant. |

| Plaintiffs' RFP No. 2— All annual, quarterly, and monthly financial statements, projections, and financial analyses relating to Vail Health's physical therapy clinic doing business under the trade name "Howard Head Sports Medicine." The relevant time period for Request No. 2 is Vail Health fiscal year 2009 to the present. | Vail Health objects to the production of the HHSM internal accounting documents during the period of January 1, 2009 to December 31, 2015. These financial statements and documents for, among other reasons, Vail Health conducted the billing, set prices, and shared in the profits of RPC-Vail from at least November 1, 2004 to October 31, 2012. The authorities above demonstrate that the persistence of supracompetitive pricing and profitability are relevant to the determination of a defendants' monopoly power. *Colorado Interstate*, 888 F.2d at 695 ("One measure of the degree of market power is the persistence of a firm's monopoly prices").<br><br>Vail Health waived all objections by not responding to No. 2. *See* authorities identified in No. 1. | (a) With respect to the <u>time period</u> covered by Plaintiffs' requests, see Vail Health's response at No. 1(b) above.<br><br>(b) With respect to the allegation that Vail Health <u>waived its objections</u>, see Vail Heath's response at No. 1(c) above. | **Vail Health's Comments:**<br>Vail Health invites Plaintiffs to explain the relevance of specific documents or information from the period before Plaintiffs entered the market so that the parties can discuss the relevance and associated burdens and try to reach a resolution.<br><br>**Plaintiffs: Comments:**<br>Plaintiffs have provided an explanation for the relevance of these financial statements and the time period for which they are relevant. Plaintiff also add that during the period 2004 to November 1, 2012, the physical therapy clinic became a monopoly in the Vail Valley, which is why Vail Health terminated RPC-Vail as of October 31, 2012. This is very much like Grinnell, where there has been a knowing and intentional acquisition of a medical provider that already maintained monopoly power, thereby acquiring/establishing its own monopoly over physical therapy services in Vail Valley. All of these facts together establish a *prima facia* violation of Sherman Act § 2.<br><br>Vail Health's objection on the grounds that Plaintiffs did not enter |

the Vail Health market for physical therapy until 2015 is not relevant. They entered a market that was an established monopoly.  The duration of that monopoly, and its ability to hold monopolistic prices over time is relevant.  The fact that Vail Health engaged in illegal exclusionary conduct beginning in 2016 to eliminate Plaintiffs from the relevant markets is also relevant, but not the only factor under § 2.

Vail Health, on the other hand, under the authorities set forth in the opening paragraph above, Vail Health has not provided any valid reason why the financial statements requested in No. 2 are not relevant.

**Vail Health's Comments:**

(i) With respect to the <u>time period</u> covered by Plaintiffs' requests, see Vail Health's response at No. 1(b) above.  Plaintiffs have not addressed any of the cases Vail Health cites.

(ii) Plaintiffs' analogy to the acquisitions in *Grinnell* is inapposite.  In *Grinnell*, the defendants acquired a series of competitors and, through those acquisitions, increased their market

| DISPUTE | PLAINTIFFS' POSITION | VAIL HEALTH'S POSITION | FURTHER CONFERRAL |
|---|---|---|---|
|  |  |  | share.  Here, in contrast, Vail Health's decision not renew the contract of the company that managed its physical therapy practice had no impact on Vail Health's market share; Vail Health merely decided to provide physical therapy services to its patients directly, rather than indirectly through a third party .  Moreover, unlike *Grinnell*, no acquisition occurred here. |

| | | | |
|---|---|---|---|
| **Plaintiffs' RFP No. 3—All documents relating to the prices charged and revenues realized for the physical therapy services provided to patients by Vail Health's physical therapy unit doing business under the trade name "Howard Head Sports Medicine." Request No. 3 includes all contracts, agreements, and documents relating to prices for which medical insurers, medical plans, third-party health care administrators, and other health care reimbursement mechanisms have agreed to indemnify Vail Health for physical therapy services provided to patients by its** | Vail Health objects to the document requested on the basis of the time frame from 2009 to 2015.  As explained above, the time period of documents requested would do to the profits generated during the period that Vail Health was involved in setting prices for physical therapy, sold physical therapy as part of Vail Health's contracts with healthcare insurers, health plans, payers, and etc. (collectively, "healthcare payers").  These healthcare payers represent healthcare market participants involving a significant part of the market for medical services in general, and physical therapy services in particular.  Thus, the pricing of those services to healthcare payers in effect had a significant impact upon the prices for physical therapy services and Vail Health's suprcompetitive monopolistic profits.  Plaintiffs are unaware of the assertion contained in Vail Health's objection to No. 3 that Plaintiffs stated that they would not accept patients whose physical therapy would be reimbursed by insurance. | (a) With respect to the <u>time period</u> covered by Plaintiffs' requests, see Vail Health's response at No. 1(b) above.<br><br>(b)  With respect to the allegation that Vail Health <u>waived its objections</u>, see Vail Heath's response at No. 1(c) above.<br><br>(c) With respect to Plaintiffs' statement that "Plaintiffs are unaware of the assertion contained in Vail Health's objection to No. 3 that Plaintiffs stated that they would not accept patients whose physical therapy would be reimbursed by insurance," Vail Health points, inter alia, to the following allegations from Plaintiffs' Amended Complaint in the State Court Action, including:<br><br>¶ 25 " . . .<u>Sports Rehab also works on a cash payment system and does not directly contract with insurance companies</u>."<br>¶ 101 "The purported purpose of their meeting was to discuss how Howard Head could collaborate with Winninger as to Steadman and the Institute's needs, creating some kind of preferred provider network. Winninger questioned how this plan could work, given that Winninger and Sports Rehab's | **Vail Health's Comments:**<br>Vail Health's March 8, 2021 document production included several categories of documents related to the prices and revenues for Vail Health's physical therapy services, including:<br><br>- Chargemaster pricing lists created after December 2015;<br>- Financial statements for fiscal years 2015-20;<br>- Third-party payor contracts, dating back before 2009;<br>- Pricing information for indigent patients, self-pay patients, and patients entitled to discounts for various other reasons.<br><br>Vail Health invites Plaintiff to specify what additional documents it needs.<br>**Plaintiffs' Comments:**<br>Vail Health produced a total of 57 documents, none of which were financial statements.  A one page summary created by someone in accounting in November 2020 and with no back up detail does not suffice.  Nor are "summaries" of limited information in PowerPoint Presentations.<br><br>Only a limited set of insurer contracts have been produced. For example, no contracts with Humana, Aetna, BUPA, Great West Medicare, Medicaid, or other |

| DISPUTE | PLAINTIFFS' POSITION | VAIL HEALTH'S POSITION | FURTHER CONFERRAL |
|---|---|---|---|
| **physical therapy unit doing business under the trade name "Howard Head Sports Medicine." Request No. 3 also includes all contracts, agreements, and documents relating to prices charged by Vail Health to patients who do not have medical insurance, a medical plan, or any other payment arrangement with a third-party.  The relevant time period for Request No. 3 is Vail Health fiscal year 2009 to the present.** | VH waived all objections by not responding to No. 3.  *See* authorities identified in No. 1. | business model is different than Howard Head's—that is, <u>Sports Rehab is cash pay only and Howard Head is insurance.</u> . ." (emphasis added). | governmental entities have been produced.  He prices charged by Vail Health to healthcare payers such as insurers and Medicare, the prices is charges to individuals who pay for their own services, all go into the calculus for pricing which, Plaintiffs contend, was done by a monopolist with power to raise prices beyond what they ordinarily would have been in a freely competitive market. These are only a few of the other insurers that we are aware.  Additionally, from the production, there are contractual documents referenced that have not been produced.  We will be cataloging all these deficiencies in a separate log. A one-page summary of the self-pay policy is not responsive to this request.

**Vail Health's Comments:**

(i) At the beginning of this document, Plaintiffs explicitly state that this dispute relates to Vail Health's objections, not its production.  Disputes about production are not ripe. |

| | | | |
|---|---|---|---|
| **Plaintiffs' RFP No. 4—All documents relating to the costs incurred and profits realized with respect to the physical therapy services provided to patients by Vail Health's physical therapy unit doing business under the trade name "Howard Head Sports Medicine." Request No. 4 includes, but is not limited to, the salary, benefits, and administrative and overhead costs incurred by Vail Health with respect to its physical therapy unit doing business under the trade name "Howard Head Sports Medicine." The relevant time period for Request No. 4 is Vail Health fiscal year 2009 to the present.** | Vail Health objects on the grounds of relevance of documents relating to period 2009 to 2015.  The relevance of the time period is explained above of and authorities cited above.<br><br>VH waived all objections by not responding to No. 4.  *See* authorities identified in No. 1. | (a) With respect to the <u>time period</u> covered by Plaintiffs' requests, see Vail Health's response at No. 1(b) above.<br><br>(b)  With respect to the allegation that Vail Health <u>waived its objections</u>, see Vail Heath's response at No. 1(c) above. | **Vail Health's Comments:**<br>Vail Health invites Plaintiffs to explain the relevance of specific documents or information from the period before Plaintiffs entered the market so that the parties can discuss the relevance and associated burdens and try to reach a resolution.<br><br>**Plaintiffs' Comments:**<br>No documents responsive to this request were produced.  A one page summary created in November 2020 without any underlying detail is not responsive. This includes all documents relevant to the budgets set for each year, the revenues generated, the direct costs and indirect costs by each category.  Vail Health is required to maintain this information and report it to the federal government.<br><br>**Vail Health's Comments:**<br>With respect to document production, *see* Vail Health's response at No. 3(i) above. |

| | | | |
|---|---|---|---|
| **Plaintiffs' RFP No. 5—All documents concerning Vail Health's contention as to the correct "relevant geographic market" and "relevant product or service market" for providing physical therapy services underlying the Complaint for antitrust violations.  The relevant time period for Request No. 5 is November 1, 2011 to the present.** | It appears that Vail Health agrees to produce documents that support its theories of the relevant geographic and product/service markets, although the production of documents supporting *its* theories of these essential antirust terms is insufficient under Fed. R. Civ. P. 26 and 34.  Vail Health is obligated to produce all documents responsive to No. 5, whether the documents support Vail Health's theories of relevant markets or whether the documents support Plaintiffs' theories of the relevant markets. Vail Health's objection is somewhat unique in that if that legal contention were correct, a party would never be required to produce any documents that did not support their theory of a case.  We know, however, that that is not correct.<br><br>In any event, discovery into relevant markets is an essential element of any antitrust case. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 453 (1992); *E.I. Du Pont De Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 443 (4th Cir. 2011); *Penn State Hershey*, 838 F.3d at 335; | (a) With respect to the scope of Vail Health's obligation to produce documents related the relevant markets, Vail Health states that it will produce documents related to the relevant product and geographic markets from December 2015 to the present.<br><br>(b)  With respect to the allegation that Vail Health <u>waived its objections</u>, see Vail Heath's response at No. 1(c) above. | **Plaintiffs' Comments:**<br><br>When will these be produced?<br>There are a number of issues with the production that will be outlined in a separate document.<br><br>**Vail Health's Comments:**<br><br>With respect to document production, *see* Vail Health's response at No. 3(i) above. |

| DISPUTE | PLAINTIFFS' POSITION | VAIL HEALTH'S POSITION | FURTHER CONFERRAL |
|---------|---------------------|------------------------|-------------------|
|  | *Westman Comm'n Co. v. Hobart Int'l, Inc.*, 796 F.2d 1216, 1220 (10th Cir. 1986) ("We recognize that market definition is a question of fact").<br><br>Vail Health waived all objections by not responding to No. 5. *See* authorities identified in No. 1. |  |  |

| DISPUTE | PLAINTIFFS' POSITION | VAIL HEALTH'S POSITION | FURTHER CONFERRAL |
|---|---|---|---|
| **Plaintiffs' RFP No. 6— All documents concerning Vail Health's identification, analysis of, and any mention of the physical therapy providers that it has considered and/or does consider to be competitors of its physical therapy unit doing business under the trade name "Howard Head Sports Medicine." The relevant time period for Request No. 6 is November 1, 2011 to the present.** | Vail Health objects on the grounds of relevance of documents relating to period 2009 to 2015.  The relevance of the time period is explained above of and authorities cited above.<br><br>In addition, which physical therapists and physical therapy clinics Vail Health considers as competitors will be a fact to consider in determining what is the relevant geographic market. For example, if Vail Health does not consider a physical therapy clinic from Glenwood Springs to be a competitor, then Glenwood Springs is likely outside of the geographic market.<br><br>Vail Health waived all objections by not responding to No. 6. *See* authorities identified in No. 1. | (a) With respect to the <u>time period</u> covered by Plaintiffs' requests, see Vail Health's response at No. 1(b) above.<br><br>(b)  With respect to the allegation that Vail Health <u>waived its objections</u>, see Vail Heath's response at No. 1(c) above. | **Plaintiffs' Comments:**<br>What documents have you produced responsive to this request?  Are there any others?<br><br>**Vail Health's Comments:**<br>With respect to document production, *see* Vail Health's response at No. 3(i). |

| | | | |
|---|---|---|---|
| **Plaintiffs' RFP No. 7— All documents relating to any proposed joint venture, merger, or other combination between The Steadman Clinic and Vail Health relating in any way to providing physical therapy services.  The relevant time period for Request No. 7 is November 1, 2011 to the present.** | Vail Health objects to No. 7 on numerous grounds.  *First,* the term "combination" when used in antitrust law is an elementary, ubiquitous statutory term that is known by even novice antitrust practitioners.  If Vail Health has interposed this objection in good faith, this will indeed be a long and arduous discovery process.  This is so because § 2 of the Sherman Act makes it unlawful for any person to "monopolize, or attempt to monopolize, *or combine* or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several states…." 15 U.S.C. § 2.  We will not burden the Magistrate with the recitation of case law to defining one of the most famous terms in antitrust law any further.  *Second* Vail Health objects on the basis of the time period for the request; that is, going back to 1 year before its hostile takeover of the physical therapy clinic from RPC-Vail that became effective on November 1, 2012.   Vail Health did not consider terminating the 20 plus year relationship with nearly 22-year relationship it had with | (a) With respect to Vail Health's objection to the term "combination," Vail Health states that it has not combined its physical therapy unit with any person, including the Steadman Clinic, nor does it understand that Plaintiffs' Amended Complaint makes any such an allegation.  Thus, Vail Health has not withheld any documents on this basis.  (b) With respect to the <u>time period</u> covered by Plaintiffs' requests, see Vail Health's response at No. 1(b) above.  In addition, Vail Health states that documents responsive to this request that pre-date December 2015 to the extent they exist have already been produced in the State Court Action.  Plaintiffs make several arguments based on Vail Health's non-renewal of its relationship with RPC-Vail. It is not clear how these relate to this discovery request, which asks for documents related to a proposed joint venture with Steadman.  (c) With respect to the objection regarding "proposed conduct," Judge Martinez has made no substantive ruling on that issue | **Vail Health's Comments**:  Vail Health believes all documents regarding the proposed joint venture with the Steadman clinic have been or will be produced.  If Plaintiffs believe there are documents that have not been produced, please specify what they are.  **Plaintiffs' Comments:**  Vail Health's comments suggest that an attempted combination that fails to be consummated cannot be a violation of Sherman § 2.  We must remember that § 2 o makes it unlawful for any person to "to monopolize."  Vail Health made this very argument to Judge Martinez in one of its Rule 12 motions, although those motions were denied and should not be revisited in the guise of a discovery dispute now.  Vail Health has also cited *Spectrum Sports*, 506 U.S. at 459, somehow suggesting that the case precluded discovery in this case because the joint venture between Vail Health and Steadman was not consummated and therefore does not violate § 2.  Vail Health correctly noted that a plaintiff in a § 2 claim must prove, *inter alia,* "that |

RPC-Vail on the basis of a 30, 60, or 90 day notice.  The termination of the contract with RPC-Vail was a well thought out strategic initiative to eliminate a business entity with which Vail Health had a lengthy relationship.  It took managerial strategic planning, board of director approval, financial and accounting input, and legal advice to effectuate.  All of this was done long-before the November 1, 2012, termination date.  Plaintiffs at this point in the discovery process do not have the information to know when that process began and on what grounds the contract was "not renewed."  But Plaintiffs are entitled to that information.

*Third*, the hostile take-over was an intentional, illegal act to acquire an on-going business that maintained a monopoly position in the relevant geographic and service markets.  The acquisition was prohibited by Sherman § 2 and is relevant just like the acquisitions in *Grinnell* were relevant in that precedent establishing case by tye U.S. Supreme Court.  That case,

(Doc. # 54) and Plaintiffs' position is refuted by the law.  *See, e.g., Spectrum Sports v. McQuillan*, 506 U.S. 447, 459 (1993) (to demonstrate attempted monopolization, a plaintiff must prove, *inter alia*, "that the defendant *has engaged* in predatory or anticompetitive conduct . . . .") (emphasis added).  Regardless, Vail Health states it has not withheld any documents on these grounds.

(d) Vail Health describes in its response to this RFP the discovery that occurred on this issue in the state court action.  It is unclear why Plaintiffs think the relevant documents were not produced in the state court action.

(e)  With respect to the allegation that Vail Health waived its objections, see Vail Heath's response at No. 1(c) above.

the defendant *has engaged* in predatory or anticompetitive conduct . . . .").  But the predatory (exclusionary) conduct that Vail Health engaged in against Plaintiffs is precisely what this case is all about!  During its negotiations with Steadman to form a new physical therapy joint venture it concluded that Plaintiffs could upset the deal and therefore conducted its exclusionary campaign against Plaintiffs.  But *Spectrum Sports* does not stand for the proposition that a plaintiff is barred from an attempted monopolization claim if the deal does not close.

In *Du Pont v. Kolon*, 637 F.3d at 453-54, the Fourth Circuit also cited *Spectrum Sports* but came to a very different conclusion as to its meaning than Vail Health has here.  There, the court held that ""[a]ttempted monopolization employs 'methods, means and practices which, though falling short, nevertheless approach so close as to create a dangerous probability of it."  The Fourth Circuit held that an attempted monopoly, even when it was not consummated, triggered the potential of § 2 liability when the requisite elements have been pled.  There, like here, the "allegation of

among many others, is controlling here.

*Fourth*, Vail Health objects on the basis of "'proposed' conduct, which is not relevant because it cannot form the basis of anticompetitive conduct." That argument was made by Vail Health as part of its Rule 12(b)(6) motion to dismiss, which was denied by Judge Martinez. Thus, it is not a proper objection to discovery now. Regardless, the legal basis underlying the objection is incorrect: as a matter of law: "Section 2 of the Sherman Act…forbids *an attempt* to monopolize as well as monopolization." *E.I. Du Pont De Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 453 (4th Cir. 2011)("Attempted monopolization employs, 'methods, means and practices which would, if successful, accomplish monopolization, and which, though falling sort, nevertheless approach so close as to create a dangerous probability of it."); *see also Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993); *Advanced Health-Care Servs., Inc. v. Radford Cmty.*

dominant market share coupled with exclusionary conduct sufficient to withstand motion to dismiss monopolization and attempted monopolization claims." In any event, the time for such a Rule 12(b) argument has long since passed.

As was discussed with Ms. Roeder, this request is not limited to just the proposed joint venture in which letters of intent were entered into. This includes Aspen, Frisco, Dillion, as well as the letters of intent. The only documents produced in the Eagle County action were the letters of intent for the PT joint venture. No communications with Steadman were produced regarding the joint venture and no documents have been produced related to Aspen, Frisco, or Dillon.

Vail Health states above "or will be produced." What does that mean? Are additional documents being produced? When?

No documents other than a letters of intent were produced. We have no email communications regarding the negotiation of the letters of intent, email communications regarding the terms of any final agreement, the

*Hosp.*, 910 F.2d 139, 147 (4th Cir. 1990).

*Fifth,* the Eagle County state court action Vail Health did not come close to producing all of the documents.  That is incorrect and will undoubtedly be the subject of future appearances before the Magistrate Judge.

Vail Health waived all objections by not responding to No. 7.  *See* authorities identified in No. 1.

structure of the joint venture, issues related to the joint venture, termination of the letters of intent, etc.  Nor do we have any documents related to the Dillon, Aspen, and Frisco.

**Vail Health's Comments:**

(i) With respect to the ruling by Judge Martinez, *see* Vail Health's Response at No. 7(c).  Further, Plaintiffs' citation to *Du Pont* merely confirms that unconsummated conduct cannot be the basis for an attempted monopolization claim.  In *Du Pont*, the plaintiff alleged that the defendant actually entered into exclusive, anticompetitive agreements, so the Court concluded that the plaintiff "cleared the bar as to the first element— *anticompetitive conduct.*"  637 F.3d at 453 (emphasis added).  The question is not whether a defendant came dangerously close to anticompetitive conduct—it is whether the defendant's actual anticompetitive conduct came dangerously close to monopolization.  *Id.* (The elements are "(1) the *use* of anticompetitive conduct, (2) with specific intent to monopolize, and (3) a dangerous

| DISPUTE | PLAINTIFFS' POSITION | VAIL HEALTH'S POSITION | FURTHER CONFERRAL |
|---------|---------------------|------------------------|-------------------|
| | | | probability of success.") (emphasis added).<br><br>(ii) Without waiving the objection, Vail Health has not (and will not) withhold documents on the basis of this objection.  Once the Court and the parties determine the scope of what is to be produced, Vail Health will produce such documents (in addition to those already produced in the State Court Action). |

| DISPUTE | PLAINTIFFS' POSITION | VAIL HEALTH'S POSITION | FURTHER CONFERRAL |
|---|---|---|---|
| **Plaintiffs' RFP No. 8—All documents relating to any proposed joint venture, merger, or other combination between Vail Summit Orthopedics and Vail Health relating in any way to providing physical therapy services. The relevant time period for Request No. 8 is November 1, 2011 to the present.** | *See* analysis regarding No. 7, above.<br><br>VH waived all objections by not responding No. 8. *See* authorities identified in No. 1. | (a) See analysis regarding No. 7 above.<br><br>(b)  With respect to the allegation that Vail Health <u>waived its objections</u>, see Vail Heath's response at No. 1(c) above. | **Vail Health's Comments:**<br>Same discussion above.<br><br>**Plaintiffs' Comments:**<br>Same discussion as above. |

| | | | |
|---|---|---|---|
| **Plaintiffs' RFP No. 9— Employment records that identify each physical therapist employed by Vail Health in its physical therapy clinic doing business under the trade name of "Howard Head Medical Center." The relevant time period for Request No. 9 is November 1, 2009 to the present.** | Vail Health objects to No. 9 with respect to the time period going back to 2009.  Since Vail Health admits in its objection that it did not employ any physical therapists between November 1, 2009 and 2012, there should be no objection based on the time period.  A proper answer would be: "We did not employ any physical therapist during that time period, and therefore we have no employment records for physical therapists during that time period."<br><br>But Vail Health expands the objection, stating that it will not produce and Vail Health physical therapist employment records at all, even after December 31, 2015.  It provides no explanation or rationale for that objection.  But this is an antitrust case where the monopoly power of Vail Health under Sherman § 2 is at issue, and monopoly power begins with an analysis of the market share in the relevant geographic market.  And the standard for determining the relevant geographic market was announced by the Supreme Court in *Tampa Electric Co. v. Nashville Co.*, 365 U.S. 320, | (a) With respect to the time period covered by Plaintiffs' requests, see Vail Health's response at No. 1(b) above.  In addition, Vail Health states that it did not employ any physical therapists between November 1, 2009 and October 31, 2012 (when the services agreement with RPC-Vail expired), and therefore does not have employment records for physical therapists during that time period.<br><br>(b) Plaintiffs appear to argue that the number of physical therapists employed by Vail Health is relevant.  Vail Health is willing to provide that number.  However, Vail Health asserts that the specific employment records of individual physical therapists have no relevance to the claims asserted and would be disproportionately burdensome to obtain.<br><br>(c)  With respect to the allegation that Vail Health waived its objections, see Vail Heath's response at No. 1(c) above. | **Plaintiffs' Comments:**<br>How are they disproportionately burdensome?  Mr. Brown asked HR to send Cimino's employment file to him, which was done immediately by email.<br><br>DORA also requested Cimino's employment records and Vail Health had no issue producing them to DORA.  The documents appear to be maintained electronically by employee in Human Resources and so all that is required is to produce the records from Human Resources.  There is a protective order in place that covers these records.<br><br>Ms. Rippeth testified that the employment records contain new hire paperwork, confidentiality agreements, nonsolicitation agreements, any employment agreements if they have one, other than an offer letter, job descriptions, scope of practice, any promissory agreements, relocation and sign-on bonuses, licensures and certifications, onboarding checklists that orient employees to policies and procedures.<br><br>There are also eLearning transcripts, some in paper form that were field in employee files specific to the employee.  To the |

365 (1961), where it held that "the geographic market should consist of an area where Defendants operate and which the [consumer] can reasonably turn for supplies." Thus, in this service case the analysis is how many physical therapists Vail Health had and still has in the relevant geographic market compared with the number of alternative physical therapists are available. The employment records of Vail Health are therefore relevant.

VH waived all objections by not responding to No. 9. *See* authorities identified in No. 1.

extent Vail Health stores licensure information for physical therapists and had that data when RPC-Vail ran the physical therapy unit that information is responsive as well. Additionally, any exit interviews with employees are also relevant as to the protections Vail Health purportedly took to protect confidential and proprietary information.

Finally, Ms. Rippeth already testified that Vail Health does not maintain any employment records for RPC-Vail employees that did not join Vail Health, so the number is not as large as Vail Health appears to contend.

**Vail Health's Comments:**

(i) On relevance, Plaintiffs' sole allegation is that Vail Health's employment agreements contain unnecessarily restrictive covenants. *See, e.g.*, Pls.' Am. Compl. ¶ 93. There is no relevance in the overbroad and sensitive information that Plaintiffs seek, which apparently includes the identity of each physical therapist that Vail Health has employed since 2012 (or 2015), their "job descriptions, scope of practice, [] promissory agreements,

| DISPUTE | PLAINTIFFS' POSITION | VAIL HEALTH'S POSITION | FURTHER CONFERRAL |
|---------|----------------------|------------------------|-------------------|
| | | | relocation and sign-on bonuses, licensures and certifications, onboarding checklists that orient employees to policies and procedures . . . eLearning transcripts . . . and exit interviews." Rather than relevant discovery, this will result in unnecessary harassment of third parties.  As discussed in Vail Health's Response to No. 10, Vail Health will produce examples of the employment agreements (offer letters) with physical therapists sufficient for Plaintiffs to review the covenants therein.<br><br>(ii) As to the burden, producing one employment record is far less burdensome than producing employment records for every physical therapist that Vail Health has employed since 2012 (or even 2015).  Doing so is unduly burdensome, particularly given the lack of relevance. |

| Plaintiffs' RFP No. 10—All employment agreements Vail Health has had with physical therapists, medical staff, directors, officers, managers, administrative staff, and secretarial staff who were employed by and/or associated with Vail Health with respect to the physical therapy clinic doing business under the trade name of "Howard Head Medical Center." Request No. 10 includes any changes in policies, procedures, and/or training related to nonsolicitation, noncompete, trade secrets, and confidentiality with respect to the categories of individuals listed | Vail Health objects to No. 10 on numerous grounds, most of which have been covered in the sections above and include citations to authorities justifying this discovery.  As to the employment agreements sought, Plaintiffs' Amended Complaint alleges that "within the Vail Valley market there are few competitors of Vail Health that provide physical therapy services.  As of the date of this filing, Plaintiffs calculate there are 80 physical therapists in the Vail Valley market, of which 57 are employed by Vail Health." Am. Compl. ¶ 38.  Plaintiffs have alleged that there are barriers to entry that significantly restrict alternative supplies of physical therapists: "One of the most significant barriers is that Vail Health has the labor market for physical therapists 'locked up' with non-compete and/or non-solicitation restrictions in employment agreements.  This means that over 70% of the physical therapy labor in the Vail Valley (by headcount) is controlled by Vail Health.  *Id.* ¶¶ 39-40.  This means, of course, that Vail Health has a monopoly in the physical therapy labor market in | (a) As stated above, Vail Health is willing to provide the number of physical therapists it employs.  It has also produced or will produce employment policies relevant to its physical therapists and examples of the offer letters used to hire its physical therapists.  Employment agreements for officers or employees who are not physical therapists have no relevance to this case.  It is unclear what additional documents Plaintiffs are requesting.  Judge Martinez did not make a substantive ruling on any issue presented in Vail Health's Rule 12(b)(6) motion.  (Doc. # 54.)

(b) With respect to the <u>time period</u> covered by Plaintiffs' requests, see Vail Health's response at No. 1(b) above.

(c)  With respect to the allegation that Vail Health <u>waived its objections</u>, see Vail Heath's response at No. 1(c) above. | **Vail Health's Comments:** See discussion above.

**Plaintiffs' Comments:** Employment agreements with officers and employees are relevant as to the competitiveness of the market.  The differences in the agreements are also relevant, as well as any agreements related to employees being terminated.  Further, some managers still treat patients and therefore they are relevant for that reason as well.  The allegation is that the agreements are used for anticompetitive purposes and so it is therefore necessary to identify each agreement signed by each individual employee, including any amendments or new agreements that may have been signed over the course of employment.

In *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 605 n. 32 (1985), the Court held that the determination as to whether conduct is "exclusionary" under § 2 ultimately depends not only on its effect on the excluded rival, but also on "its impact on consumers and whether it has ***impaired competition in an unnecessarily restrictive way***." |

28

| | | | |
|---|---|---|---|
| **above. This request includes any internet or net learning type of applications in which physical therapists, medical staff, directors, officers, managers, administrative staff, and secretarial staff had to acknowledge or agree to any policy updates or changes related to employment. The relevant time period for Request No. 10 is November 1, 2009 to the present.** | the Vail Valley. *Tampa Electric*, 365 U.S. at 365. Vail's objection is based upon an argument it raised in its Rule 12(b)(6) motion that was denied by Judge Martinez. The objection, therefore, is not appropriate to block relevant discovery.<br><br>VH waived all objections by not responding No. 10. *See* authorities identified in No. 1. | | Given the restrictions on the labor market at issue, Vail Health's extraordinarily high concentration of power in the labor market "does not benefit consumers." As noted above, the inability of Vail Health's competitors to adequately compete for physical therapists results in an increase in Vail Health's price to consumers. Krattenmaker & Salop, *Anticompetitive Exclusion*, 96 YALE L.J. at 234-38 ("foreclosure of [input] supply can raise rivals' costs"). Plaintiffs have alleged that Vail Health has maintained a 70% market share that conveys "market power to raise and maintain supra-competitive "prices by as much as 50% over a competitive market rate." That is harm to consumers. And finally, Vail Health's objection does not articulate why its employment agreement are not unnecessarily restrictive, thereby violating *Aspen Skiing*.<br><br>**Vail Health's Comments:**<br>As to employment agreements for managers or executives who also provide physical therapy, Vail Health previously stated: "Employment agreements for officers or employees *who are not physical therapists* have no relevance to this case." Vail Health |

| DISPUTE | PLAINTIFFS' POSITION | VAIL HEALTH'S POSITION | FURTHER CONFERRAL |
|---|---|---|---|
| | | | will produce examples of employment agreements with its physical therapists. The example agreements will capture all the differences in Vail Health's agreements with physical therapists.  Otherwise, Plaintiffs make a blanket statement that agreements with executives and managers are relevant "to the competitiveness of the market"— Plaintiffs make no such allegation in their Amended Complaint, which instead focuses exclusively on the "labor pool" of physical therapists. *See, e.g.*, Pls.' Am. Compl. ¶ 93 ("Vail Health's practice of requiring its *physical therapists* to sign such unnecessarily restrictive employment agreements constitutes anticompetitive conduct intended to exclude labor from the market . . . ."). |

| **Plaintiffs' RFP No. 11— All documents relating to and/or mentioning Lindsay Winninger, Brad Schoenthaler, and/or any other physical therapist or employee of Sports Rehab, as well as Sports Rehab as a business entity. The relevant time period for Request No. 11 is January 1, 2015 to the present.** | Vail asserts many of the same objections that have been addressed above, and those will not be rehashed again here, but are incorporated as to the objection to No. 11.  As to that request, however, Vail Health asserts an objection based upon the attorney client privilege with respect to documents referring to Plaintiff Lindsay Winninger and Sports Rehab.  That objection has been waived for all attorney-client communications prior to the filing of the Eagle County state case as of the date of filing of Plaintiffs' Complaint in April 2017. | (a) Vail Health has demanded that Plaintiffs remove these allegations from this chart.  Plaintiffs' allegations regarding Vail Health's attorneys are vicious, false, inflammatory, harassing, and have already been rejected as lacking factual and/or legal basis by the Eagle County District Court. Plaintiffs can have no other purpose by including these except to attempt to improperly prejudice the court against Vail Health and harass Vail Health's counsel. Plaintiffs should be sanctioned for making these allegations.<br><br>(b) Vail Health has not waived the attorney-client privilege. Plaintiffs filed a motion in the State Court Action making this argument, but then withdrew their motion.<br><br>(c) With respect to the allegation that Vail Health waived its objections, see Vail Heath's response at No. 1(c) above. | **Plaintiffs' Comments:**<br> |





**Vail Health's Comments:**







| DISPUTE | PLAINTIFFS' POSITION | VAIL HEALTH'S POSITION | FURTHER CONFERRAL |
|---------|----------------------|------------------------|-------------------|
|  | | | |

| | | | |
|---|---|---|---|
| **Plaintiffs' RFP No. 12— All contracts, agreements, and documents that relate to the non-renewal and/or termination of Vail Health's contractual and business relationship with the physical therapy clinics in Colorado that were operated by RPC-Vail and/or Proaxis that engaged in business under the trade name "Howard Head Sports Medicine." The relevant time period for Request No. 12 is November 1, 2009 to the present.** | Vail Health objects to No. 12 on the grounds that the documents that are responsive to this request have already been produced in the state court action.  That is completely untrue and all documents relevant to the request must be produced.<br><br>VH waived all objections by not responding to No. 12.  *See* authorities identified in No. 1. | (a) Vail Health's response to this RFP details the discovery that has already occurred on this exact issue in the state court.<br><br>(b) With respect to the allegation that Vail Health <u>waived its objections</u>, see Vail Heath's response at No. 1(c) above. | **Vail Health's Comments:**<br>If Plaintiffs believe there are documents that have not been produced, please specify what they are.<br>**Plaintiffs' Comments:**<br>Vail Health still maintains and has previously accessed RPC-Vail employee emails.  Please confirm whether any searches were conducted of those emails related to the termination of RPC-Vail.  Please also identify the RPC-Vail employee email accounts that you still maintain as well as identify whether (and when) you destroyed any email accounts or transferred those accounts to someone else.  There is clearly PHI in those email accounts so Vail Health would have had to ensure the accounts were appropriately destroyed or transferred.<br><br>**Vail Health's Comments:**<br>As stated, Vail Health's response to RFP No. 12 details the discovery that has already occurred on this exact issue.  It cannot be duplicated here according to the Scheduling Order.<br><br>Plaintiffs do not identify a single document they believe has not |

| DISPUTE | PLAINTIFFS' POSITION | VAIL HEALTH'S POSITION | FURTHER CONFERRAL |
|---------|---------------------|------------------------|-------------------|
|  |  |  | been produced.  Instead, they seek "discovery about discovery" that occurred in the State Court Action—such inquiries are generally inappropriate and irrelevant.  *See, e.g.*, *Pandeosingh v. Am. Med. Response, Inc.*, 2016 U.S. Dist. LEXIS 12191 (D. Colo. Feb. 2, 2016) (finding "discovery about discovery" to be  "fraught with peril" and rejecting such a request where the party could not identify what information might be missing and how it might be relevant). |

| | | | |
|---|---|---|---|
| **Plaintiffs' RFP No. 13— All documents related to the maintenance, modification, deletion, or restructuring of the Vail Health shared drive from May 2012 to the present.  This request includes, but is not limited to, all files and folders that were in the Vail Health shared drive from May 31, 2012 to the present (including Lindsay Winninger's folder), the preservation of the Vail Health shared drive as it existed before any changes were made by Vail Health in 2016 and 2017, communications about the restructuring, locking down, deleting, or moving | Vail Health objects to No. 13 on the grounds that the documents that are responsive to this request have already been produced in the state court action.  That is completely untrue and all documents relevant to the request must be produced.<br><br>VH waived all objections by not responding to No. 13.  *See* authorities identified in No. 1. | (a) Vail Health's response to this RFP details the discovery that has already occurred on this exact issue in the state court.<br><br>(b) With respect to the allegation that Vail Health <u>waived its objections</u>, see Vail Heath's response at No. 1(c) above. | **Vail Health's Comments:**<br>If Plaintiffs believe there are documents that have not been produced, please specify what they are.<br><br>**Plaintiffs' Comments:**<br>In 2014, there was a system change.  No documents have been produced related to that change.  In 2016, Vail Health undertook a systemwide review of its drives, which required forms to be filled out to identify and handle PHI.  Only a limited number of forms have been produced related to the physical therapy unit.  No logs related to destroyed files/documents have been produced, including PHI files.  No documents have been produced related to the files that were purportedly archived from the shared drive.  IT can easily generate an Excel spreadsheet of the files and all metadata.  At this point, Plaintiffs do not need the underlying documents, just the spreadsheet of the archived documents.<br><br>**Vail Health's Comments:**<br>As stated, Vail Health's response to RFP No. 13 details the discovery that has already occurred on this |

| DISPUTE | PLAINTIFFS' POSITION | VAIL HEALTH'S POSITION | FURTHER CONFERRAL |
|---|---|---|---|
| **files and folders stored on the Vail Health shared drive, and all documents related to any investigation, inquiry, or review related to the contents of the Vail Health shared drive.  The relevant time period for Request No. 13 is May 31, 2012 to the present.** | | | exact issue.  The Scheduling Order prohibits that it be duplicated here. |

| | | | |
|---|---|---|---|
| **Vail Health's RFPs Nos. 1-12**<br><br>**Vail Health's Int. Nos. 1-9**<br><br>**Vail Health's RFAs Nos. 1-2**<br><br>**(attached as Exhibit A (cover email) and B (requests))** | | Vail Health served its first Discovery Requests on Plaintiffs on November 6, 2020, making Plaintiffs' responses and objections due on December 7, 2020.  Plaintiffs have not served any objections or responses to the Requests nor requested an extension.  When Vail Health raised this failure, Plaintiffs stated that they were unaware of the discovery because it had been served by Paige Finnell, a legal assistant who was unknown to Plaintiffs.  **(Exhibit C, at 4.)** Ms. Finnell has a "dgslaw.com" email address; the subject line of the email was "Sports Rehab Consulting, LLC, et al. v. Vail Health - First Set of Discovery Requests to Plaintiffs"; Ms. Finnell had previously served numerous other documents in this case on Plaintiffs; and all attorneys of record for both SRC and Vail Health were copied on Ms. Finnell's email.<br><br>As Vail Health has continued to raise this issue, Plaintiffs stated they did not think the discovery was served in accordance with Fed. R. Civ. P. 5.  Vail Health responded that the discovery was served as required by D.C.Colo.LCivR 5.3(c).:  "Except in prisoner cases or unless otherwise | |

| DISPUTE | PLAINTIFFS' POSITION | VAIL HEALTH'S POSITION | FURTHER CONFERRAL |
|---------|---------------------|------------------------|-------------------|
| | | ordered, written discovery requests and responses shall be exchanged by private e-mail or other non-paper means." **(E-mail, Exhibit D.)** Plaintiffs have not provided any further response. <br><br> Vail requests the court order Plaintiffs to respond to these discovery requests immediately, and order that Plaintiffs have waived any objections. *See Munoz v. Citywide Banks of Colorado, Inc.*, Civil Action No. 09-cv-01124-PAB-MEH, at *3 (D. Colo. June 30, 2010) (""a failure to object to requests for production of documents within the time permitted by the federal rules has been held to constitute a waiver of any objection." *Pham v. Hartford Fire Ins. Co.,* 193 F.R.D. 659, 661 (D. Colo. 2000) (citing cases) (finding that objections first asserted 71 days after service of discovery requests and where no good cause for the delay was articulated were waived).") | |

| | | | |
|---|---|---|---|
| **Plaintiffs' Subpoena to Michael Horwith** | | Plaintiffs served a subpoena on Michael Horwith seeking documents and a deposition. Michael Horwith is forensic expert appointed by the court in the State Court Action.  He has custody of the parties' devices as well as the images of those devices.  His appointment and duties are governed by the terms of the forensic protocol order entered by the state court.   Among other things, that protocol does not allow the parties to have access to Horwith's data, devices and images.  It also does not allow parties to have direct communication with Horwith.  Vail Health had filed a motion with the state court seeking guidance on these issues.   However, because Plaintiffs filed a Rule 21 petition with the Colorado Supreme Court on an unrelated issue, the State Court Action is temporarily stayed and it is not clear when it will be able to address this issue. | **PLAINTIFFS' COMMENTS"** After learning that Horwith, the court-appointed computer forensic expert in the Eagle County action, intended to retire and travel, Plaintiffs served a deposition notice and *subpoena duces tecum* for the report and documents he produced to the parties in the Eagle County action per the Forensic Protocol Order and subsequent modifications to the Order.  Attached as **Exhibit 3** is the Subpoena. The Eagle County action has been stayed by the Colorado Supreme Court pursuant to a Rule 21 Petition filed by Plaintiffs and Cimino.  Vail Health attempted to lift the stay but that was denied.  Given Horwith's intention to retire and travel, the deposition is necessary to preserve his testimony.  No deposition was taken of Horwith in the Eagle County action, so there is no duplication. The restriction on communication with the expert related solely to the forensic exam, which has been completed for over a year.  To avoid any dispute as to the actual report and documents produced by Horwith to the parties, Plaintiffs |

<table>
<tr><td></td><td></td><td></td><td>requested he reproduce the same information already produced in the Eagle County action.  The purpose of the deposition is to authenticate his report and corresponding documents and preserve his testimony.  In an objection served on March 22, Vail Health asserts that it would be improper to depose Horwith because the Forensic Protocol Order prohibits direct communications with Horwith—but that is about the forensic examination itself, not his authentication of the documents he has already produced.  But that directly contradicts C.R.E. 706, which expressly allows any party to take a deposition of a court-appointed expert.  A deposition could be avoided if Vail Health stipulates to the authentication and admissibility of Horwith's report and documents produced in the action.<br><br>The report and documents Horwith has already produced in the Eagle County action shows that Cimino did not transfer any of the documents Vail Health alleged he had transferred to Winninger and Sports Rehab, which is directly relevant to the allegations in this</td></tr>
</table>

| | | | |
|---|---|---|---|
| | | | action, including sham litigation and Vail Health's false statements.<br><br>Vail Health appears to object to one set of files in particular, those are the connection logs from Winninger's computer.  Connection logs provide data about devices that may have been attached to a computer.  The connection logs from Winninger's computer were already produced to the parties in native format and in spreadsheet form by Plaintiffs' forensic expert, David Penrod.  So the production of the connection logs from the image of Winninger's computer that Penrod provided to Horwith is no different.  All parties—through their expert representatives—agreed that Horwith should produce those logs. |
| | | | Further, the Eagle County court permitted Horwith to correspond with the parties, and in particular, Plaintiffs' counsel to discuss issues related to an unpaid invoice. |
| | | | In serving the federal subpoena, Horwith sent a letter to all counsel and the Eagle County court claiming that he is entitled to $1500 for three hours of his time gathering the documents already produced and sitting for a one hour |

| | | | deposition.  Plaintiffs have corresponded with Horwith regarding the fee issue, and all parties were provided a copy of that communication.  *See a*ttached Exhibit 4<br><br>**Vail Health's Comments:**<br><br>Horwith, his work, and the images he collected are squarely within the scope of discovery in the State Court Action, where they have been the subject of extensive litigation and multiple court orders and protocols.  Vail Health has already moved the State Court to enforce the forensic protocol which prohibits Plaintiffs from enforcing their subpoena.  That motion must be adjudicated before Plaintiffs may proceed (or not) with their subpoena.<br><br>As addressed in that motion, the State Court's orders prohibit Horwith from communicating directly with the parties and their attorneys (*i.e.*, during the deposition Plaintiffs seek) and from disclosing images of the parties' devices to the parties (i.e., the components of the image that Plaintiffs request in their subpoena).  Plaintiffs here attempt to reshape those orders and |

| DISPUTE | PLAINTIFFS' POSITION | VAIL HEALTH'S POSITION | FURTHER CONFERRAL |
|---|---|---|---|
| | | | mitigate the problems with their subpoena—those arguments are for the State Court to decide.<br><br>Furthermore, the Scheduling Order prohibits duplicating state court discovery here.  For instance, Plaintiffs appear to want to relitigate their false statement that Cimino did not transfer any documents to Winninger, when Horwith's report, Cimino's and Winninger's own testimony, and their experts' testimony all *confirm* that fact. |
| **Deadline for Vail to respond to Plaintiffs' second discovery requests** | | Vail requests an extension to April 30 to respond to Plaintiffs' discovery requests that were served on March 1, 2021. | **PLAINTIFFS' COMMENTS:**<br>This is the first time Plaintiffs have heard anything about an extension and therefore this is not the time or place for such a discussion. |
| **Vail's second discovery requests to Plaintiffs** | | Vail is concerned that Plaintiffs will try to claim they did not receive Vail's second discovery requests, which were served on plaintiffs on March 1, 2021.  Vail requests Plaintiffs confirm they will respond to those requests. | This is not something that Plaintiffs can even respond to at this point. |

Dated: March 26, 2021                    *s/ Alan L. Kildow*
                                         Alan L. Kildow, MN# 0143133
                                         790 Potato Patch Drive
                                         Vail, CO 81657
                                         Telephone: (970) 390-6675
                                         E-mail:  alkildow@aol.com

                                         Jesse Wiens, Colo. #33903
                                         Fahrenholtz & Wiens LLC
                                         100 West Beaver Creek Boulevard
                                         Suite 236
                                         Avon, CO 81620
                                         Telephone: (970) 949-6500
                                         E-mail:  fwlawyers@gmail.com

                                         Counsel for Plaintiffs Lindsay Winninger and
                                         Sports Rehab Consulting LLC

Dated:  March 26, 2021                   *s/ Shannon Wells Stevenson*
                                         Janet Savage
                                         Jacqueline V. Roeder
                                         Shannon Wells Stevenson
                                         Daniel A. Richards
                                         Davis Graham & Stubbs LLP
                                         1550 17th Street, Suite 500
                                         Denver, CO 80202
                                         janet.savage@dgslaw.com
                                         jackie.roeder@dgslaw.com
                                         shannon.stevenson@dgslaw.com
                                         daniel.richards@dgslaw.com

                                         Counsel for Defendant Vail Clinic, Inc.