# EXHIBIT 5

1

```
 1                  UNITED STATES DISTRICT COURT
                        DISTRICT OF COLORADO
 2

 3   SPORTS REHAB CONSULTING,      .  Case No. 19-CV-02075-WJM-GPG
     LLC, a Colorado limited       .
 4   liability company, and        .
     LINDSAY WINNINGER, an         .
 5   individual,                   .
                                   .
 6            Plaintiffs,          .
                                   .  Wayne Aspinall Federal Bldg.
 7   vs.                           .  402 Rood Avenue
                                   .  Grand Junction, CO  81501
 8   VAIL CLINIC, INC.             .
     doing business as             .
 9   VAIL HEALTH,                  .
     a Colorado nonprofit          .
10   corporation,                  .
                                   .
11            Defendants.          .  March 30, 2021
     . . . . . . . . . . . . . .      2:01 p.m.
12
            TRANSCRIPT OF PROCEEDINGS HELD BEFORE THE HONORABLE
13        GORDON P. GALLAGHER, UNITED STATES MAGISTRATE JUDGE

14   APPEARANCES:

15   For the Plaintiffs:           Law Office of Allan L. Kildow
                                   By:  Allan L. Kildow
16                                 709 Potato Patch Drive
                                   Vail, CO  81657
17                                 (970) 390-6675

18   For the Defendants:           Davis Graham & Stubbs, LLP
                                   By:  Shannon Wells Stevenson
19                                 By:  Daniel Richards
                                   1550 17th Street
20                                 Suite 500
                                   Denver, CO  80202
21                                 (303) 892-9400

22   Court Recorder:               Clerk's Office
                                   U.S. District Court
23                                 402 Rood Avenue
                                   Grand Junction, CO  81501
24
     Also Present:                 Caitlin Grimmer
25
```

```
                                                                    2

  1  Appearances continued:

  2  Transcription Service:          AB Litigation Services
                                     216 16th Street, Suite 600
  3                                  Denver, CO  80202
                                     (303) 296-0017
  4
     Proceedings recorded by electronic sound recording;
  5  transcript produced by transcription service.

  6

  7

  8

  9

 10

 11

 12

 13

 14

 15

 16

 17

 18

 19

 20

 21

 22

 23

 24

 25
```

```
 1                    (Time noted:  2:01 p.m.)
 2              THE COURT:  All right.  Good afternoon, everybody.
 3   This is Gordon Gallagher, and we are here today in 19-CV-
 4   2075.  This is Sports Rehab, et al versus Vail Clinic, et al.
 5   And the matter comes on for a discovery dispute hearing
 6   today.  I have received and reviewed the discovery dispute
 7   chart, as well as all the attachments.
 8              And let me just make sure that everybody here can
 9   hear me.  I heard that Mr. Kildow was on for the plaintiffs.
10   Can you hear me, Mr. Kildow?
11              MR. KILDOW:  I can, Your Honor.
12              THE COURT:  All right.  Good afternoon.
13              MR. KILDOW:  Good afternoon.
14              THE COURT:  And I heard that Ms. Stevenson and Mr.
15   Richards were on for Vail Clinic.  Can you hear us?
16              MR. RICHARDS:  Yes, Your Honor.  Dan Richards can.
17              THE COURT:  And Ms. Stevenson?
18              MS. STEVENSON:  Yes, Your Honor, I can hear you.
19              THE COURT:  Okay.  And, Ms. Stevenson, or Mr.
20   Richards, does one or both of you intend to be addressing
21   things?  Or are you going to -- do you have any idea at this
22   point how you're going to essentially parse that out between
23   yourselves yet?  Just so I know who to turn to.
24              MS. STEVENSON:  Your Honor, it's Ms. Stevenson.  I
25   will be responding on most of the issues.  Mr. Richards is
```

```
 1  more involved in the state case, and so he may have some
 2  particular issues on which he is better informed.
 3              THE COURT:  Okay.
 4              And, Ms. Grimmer, let me make sure that you can
 5  still hear us when we transferred things over into the
 6  courtroom feed.
 7              THE COURT CLERK:  I can hear you.
 8              THE COURT:  Okay.
 9              All right.  Give me a minute, folks.  I have to
10  update the computer with a new password from this morning and
11  I want to make sure that it populates with what I need from
12  that.
13        (Brief pause)
14              THE COURT:  Okay.  We are set to go.
15              So I have received the, as I noted, discovery
16  dispute chart and attachments, and reviewed it all in detail.
17  Let's start with an overriding issue that needs to
18  essentially get addressed first, that being waiver of
19  objections.
20              Mr. Kildow, if you want to start with any argument
21  that you have one way or the other with regard to objection
22  waivers?
23              MR. KILDOW:  Well, I don't have much beyond, or
24  anything beyond what we have cited in the chart.  It seems
25  that this should be, in this jurisdiction, a waiver of the
```

1  objections, particularly given the length of time that they
2  went unresponded to.  That is the written discovery, the
3  request for production of documents, were not timely
4  responded to for a long period of time, even if you consider
5  the stay.
6          But beyond on the authorities of the
7  (unintelligible) I don't have anything to say.
8          THE COURT:  Okay.  All right.  Thank you very
9  much.
10         Let me turn, Ms. Stevenson, to you for anything
11  further that you might have with regard to, first the waiver
12  argument is kind of a predicate matter that we need to get
13  out of the way one way or the other.
14         MS. STEVENSON:  Your Honor, you may recall back at
15  the beginning of this case there was sort of -- sort of fits
16  and starts where I think Your Honor was waiting to see how
17  the District Court ruled on the Colorado River motion and
18  delayed the scheduling conference a few times.  And each time
19  we were on the phone with the Court, Mr. Kildow brought up
20  the issue of discovery requests, and Your Honor was clear
21  that those were not pending and that we did not have to
22  respond until we had that issue of the stay resolved.
23         And then ultimately, you said, you know, no -- you
24  know, I'm going to wait to see how to handle this issue with
25  the stay, and you ended up granting a stay of discovery

1  pending the Court's resolution of the Colorado River motion
2  and said no discovery obligations until, you know, there's a
3  scheduling order entered.  And then as soon as we had our
4  scheduling conference back in the fall, I believe it was the
5  fall of 2020, we immediately provided our responses.  And I
6  believe that was consistent with everything the Court had
7  ordered all along.
8             THE COURT:  All right.  Any response to that, Mr.
9  Kildow, of any sort?
10            MR. KILDOW:  I do, Your Honor.
11            THE COURT:  Okay.  Go ahead.
12            MR. KILDOW:  The response is that they filed, I
13 believe October 7th, were not responsive to Judge Martinez's
14 order.  He lifted the stay on, I believe, August 26th, 27th,
15 28th, at least at the end of August.  So we have a federal
16 judge, federal court judge who has lifted the stay, and they
17 waited about six weeks to respond.  So I believe that they
18 have waived their objections.
19            THE COURT:  All right.  Give me just a moment,
20 please.  I want to take one more look at Exhibit D before
21 issuing an order here from the bench on this.
22        (Brief pause)
23            THE COURT:  All right.  In ruling on the issue of
24 whether there has been a waiver as to the objections here,
25 essentially the idea of an objection to not responding, I've

1  taken into account and incorporate the course of the record
2  made over this case, as well as my review of the specific
3  entries of CMECF, and of Defendant's Exhibit D, attached to
4  the discovery dispute here.
5            On January 28th of 2020, I held a scheduling
6  conference where I addressed discovery, the limits and the
7  deadlines as it pertains to the eventual scheduling order,
8  but I waited to issue a scheduling order until the stay
9  question was decided.  That is memorialized at Docket Entry
10 48.
11           On April the 21st of 2020, I granted a motion to
12 stay discovery pending resolution of Vail Health's pending
13 motion to dismiss pursuant to Rule 12(b)(6) and a motion to
14 dismiss for stay pursuant to the Colorado River doctrine, as
15 noted at Docket Entry 53.
16           And on August the 21st of 2020, the motion to
17 dismiss was denied, as is noted at Docket 55, entered by
18 Judge Martinez, and at that point time referring the matter
19 back to me for a scheduling conference and other appropriate
20 proceedings.
21           Then on October the 9th of 2020, I issued the
22 scheduling order, which is found at Docket Entry Number 71.
23           On October the 7th of 2019, the plaintiff served
24 their first set of requests for production, which is Exhibit
25 1 herein, and there's an argument that Vail Health, made by

1   plaintiffs, that Vail Health has waived all objections by not
2   responding.  However, the procedural history that I just set
3   forth factors into that timing in terms of the requests.
4          I've also reviewed *Pham versus Hartford Fire*
5   *Insurance Company*, which is found at 193 F.R.D. 659, a
6   district of Colorado case from 2000, which discusses
7   objections asserted in the first 71 days after service, and
8   also discusses an issue regarding good cause for any delay.
9          Here, I do find specifically that there was good
10  cause for any delay in responses.  That good cause has been
11  shown by the course of this case in the record that the Court
12  just discussed, and based on that, Vail Health has not waived
13  its right to object.  I will proceed with the discovery
14  dispute hearing, the substantive, which we need to now dive
15  into.
16         And let me go back to the chart here and we'll
17  discuss these.  Some of these are ripe for treatment going
18  through one by one, some of these I have specific issues that
19  I want to address as we go forward.  I expect that as to the
20  rest of the discovery dispute issues that I'm going to be
21  dealing with today, the specific discovery disputes, that
22  those will be ruled on by way of a written order which will
23  be forthcoming following this hearing in an appropriate
24  period of time.
25         So let me turn to request for production number

1   one, and those that are associated with it.  Because there's
2   a number of times here where the parties refer back to a
3   response, for example, to a prior discovery dispute hearing,
4   and have essentially the same response.
5              So I will start on that one, Ms. Stevenson, with
6   you, as it is Vail Health's objection, and ask you to address
7   not only number one, but matters that are reasonably
8   associated with it where you would have a similar objection.
9   If you could go with that, please?
10             MS. STEVENSON:  Certainly, Your Honor.  And I
11  think your assumption is that you are focused on the issue
12  related to the time period.
13             THE COURT:  I'm sorry, you --
14             MS. STEVENSON:  -- (unintelligible).
15             THE COURT:  You were you a little bit garbled.
16  You said assumption, and then what you said after that was
17  garbled enough that I think the record wouldn't have picked
18  it up.
19             Ms. Barnes, are you -- yeah, Ms. Barnes is saying
20  the record wouldn't catch that.  So let me have you say
21  everything you said again after "assumption".
22             MS. STEVENSON:  My assumption is that you are
23  focused on the issue related to the time period.
24             THE COURT:  Absolutely.  The temporal scope is, I
25  think, critical to this.  We've got different discussions out

```
 1  definition of combined as a separate topic after that.
 2            MS. STEVENSON:  Well, Your Honor, I might be able
 3  to sweep both of those in together, which is, you know, I
 4  think we have a different view of the law than the plaintiffs
 5  do with respect to what constitutes attempted monopolization.
 6  I don't think our decision to not enter a joint venture with
 7  Steadman Clinic could be -- could be conduct that would form
 8  the basis of a Section 2 claim.
 9            But at the end of the day, we're not -- we're not
10  withholding any documents based on that objection, or with
11  our objection regarding the word combination.  And so as it
12  relates to discovery, I just don't see that these are issues
13  that require any resolution right now.
14            You know, I think the bigger point is that the
15  plaintiff asked for all of these documents in the state court
16  case.  I'll just give you an example, their document request
17  in the state court action was for, "All documents sent to or
18  received from the Steadman Clinic that relate to any
19  potential joint venture for rehabilitation services."
20            So these topics have just been covered, and I
21  think all the relevant documents have been produced.
22            Certainly if there are any, we will produce them.
23  And so I don't -- I don't know that we need a resolution of
24  what things -- you know, whether the decision to not enter a
25  joint venture can or can't support a claim for any
```

39

```
 1   competitive conduct right now.
 2              THE COURT:  Okay.  Do you think from your --
 3              MS. STEVENSON:  And I'm happy to say more if the
 4   Court has any --
 5              THE COURT:  Okay.
 6              MS. STEVENSON:  -- specific questions on that.
 7              THE COURT:  Well, let me -- do you think we need
 8   more, at least at this point, Ms. Stevenson, in terms of the
 9   controlling depth -- well, and actually I'll come back to you
10   on that here in a moment.
11              I want to ask in a couple of minutes, Mr. Kildow,
12   if you want to outline what you're view is of combined or
13   combination.  Looking at the chart it says that you don't
14   want to waste the Court's time with case citations on such a
15   well-known issue, but from the Court's perspective we need to
16   know what you're relying on.  ==So in a couple of minutes, what
17   is your definition of combined or combination as it
18   specifically applies to this circumstance?==
19              MR. KILDOW:  Well, first of all, Section 2
20   specifically uses the language "combined."  And combined in
21   antitrust law means however two separate entities get
22   together; whether it's in a partnership, in a corporate
23   arrangement, in a joint venture, or whatever.  Combination is
24   the ubiquitous term.
25              And I sent, I thought, I thought it was in our
```

1  chart, but maybe it wasn't, I sent the defendant something
2  that, I think it was the (unintelligible) case that where a
3  combination was used, the word was used five times, or six
4  times, in a -- in one paragraph.
5          But to combine means to get together.  To create a
6  business organization under which they are both operating
7  together.  It is a combination.  I mean, I can -- I can give
8  you 150 cases that -- on that point, but I guess I didn't --
9  I didn't really -- it's in Section 1 and Section 2 of the
10 Sherman Act.
11         And the joint, the combination of the Steadman
12 Clinic and Vail Health was a very, very big deal.  And the
13 reason that it's relevant here is because the exclusionary
14 conduct, the predatory conduct that Ms. Winninger and her
15 company had (unintelligible) is a direct result of that
16 combination.  Vail Health thought that --
17         THE COURT:  All right.
18         MR. KILDOW:  -- Ms. Winninger was going to form
19 her own Howard Head with the Steadman Clinic.
20         The lead attorney on this case, or maybe it was
21 Ms. Stevenson, (unintelligible) Janet Savage admitted that,
22 that they thought that Ms. Winninger was going to go off and
23 form a second Howard Head.  And that's why all of this
24 happened, why all of this money is being spent.  And there's
25 more.

1                 But it is two entities combining that trigger the
2    threshold elements of the Sherman Act, as they just set forth
3    in the *Spectrum* case, *Spectrum Sports*, and as we have
4    received in the *Bright versus Moss* case, so -- and that --
5    that cites the *Reazin* case, also, which was the subject of
6    discussion in the (unintelligible).
7                 So that's part of this case.  And we have almost
8    every element required under *Spectrum* and under the *Bright*
9    *versus Moss* case, and *Reazin*.
10                THE COURT:  All right.  Thank you, Mr. Kildow.
11                Ms. Stevenson, any response with regard to that?
12                MS. STEVENSON:  Your Honor, again, I disagree with
13   Mr. Kildow's factual characterization of what Ms. Winninger
14   was proposing to do with Steadman.  And I've seen all the
15   documents on it, because they've already been produced, both
16   from Vail Health and from Steadman.  And so, again, I just,
17   I'm not sure what the dispute here is.
18                They've asked for all the documents regarding any
19   proposed joint venture of any kind with Steadman, and we've
20   agreed that we've already produced to them, or to the extent
21   there's anything that hasn't been produced we will produce
22   it.
23                But, again, I think this issue has just been
24   thoroughly litigated in the state court action.
25                MR. KILDOW:  Well, we're not in the state court

```
 1  action right now, and they weren't fully litigated in the
 2  state court action.  And Steadman wasn't even asked to
 3  produce any documents relating to this in the state court
 4  action.  You weren't there, Ms. Stevenson --
 5            THE COURT:  All right.  Well --
 6            MR. KILDOW:  -- I was.  It wasn't -- I wasn't
 7  requested.
 8            THE COURT:  All right.  Thank you.
 9            Give me a moment here and I will come back to the
10  parties in just a minute.  I'm going to take about a two-
11  minute recess and I'll be back with -- I'll be back with the
12  parties here in just a moment.
13            MR. KILDOW:  Thank you.
14       (Brief pause)
15            THE COURT:  Okay.  And we are back on the record
16  after a brief recess.  Oh.
17            THE COURT CLERK:  Your Honor, (unintelligible).
18            THE COURT:  Ms. Grimmer left.  She's going to call
19  back, so I don't know if she's back on yet or not.
20            MS. GRIMMER:  Caitlin Grimmer.
21            THE COURT:  All right.  I think, Ms. Grimmer, that
22  you can probably hear me.  But are you back on?
23            MS. GRIMMER:  I am back on, Judge.
24            THE COURT:  Okay.  Fantastic.  Thank you.
25            All right.  We took a brief recess and I needed to
```