IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Gordon P. Gallagher, United States Magistrate Judge

Civil Case No. 19-CV-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company, and
LINDSAY WINNINGER, an individual,

    Plaintiffs,

v.

VAIL CLINIC, INC., a Colorado nonprofit corporation d/b/a Vail Health,

    Defendant.

## MINUTE ORDER

On March 30, 2021, the parties appeared before the Court for a discovery dispute hearing. (D. 101).[1] During the hearing it became clear to this Court that the parties had not sufficiently conferred and disagreed on a large portion of the issues, areas of the law, and issues that solely pertained to the parallel state court case.[2] The Court noted that it would issue a preliminary Order defining a portion of the scope of discovery and instructed the parties to confer again.[3] This Court

---

[1] "(D. 101)" is an example of the stylistic convention used to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] This Court has already detailed this case's procedural history in its prior Order (D. 105) and will not do so here.

[3] The Court's ruling on this matter is nondispositive as it does not remove any claim or defense from this case. Pursuant to 28 U.S.C. § 636 (b)(1)(A), "A judge of the court may reconsider any pretrial matter under subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." Any party may object to this nondispositive Order within fourteen (14) days. Fed. R. Civ. P. 72(a).

1

noted that it would entertain another discovery dispute hearing once the parties had properly conferred. (D. 101, pp. 43-46).

Specifically, this Court noted that the predominant dispute engulfing Plaintiffs' requests for production pertained to the temporal scope of discovery. (D. 101, pp. 9-10). The parties do not dispute that the Plaintiffs entered the market in late 2015. (D. 26, p. 27; D. 101, p. 10). As seen in the attached joint discovery dispute chart, the discovery scope within Plaintiffs' requests ranged from: (1) fiscal year 2009 to present; (2) November 1, 2011 to present; (3) November 1, 2009 to present; (4) January 1, 2015 to present; or (5) May 31, 2012 to present. Defendant's overarching objection was that it has agreed to produce documents dating from December 2015 to the present because: (1) that included the entire limitations period; (2) that included the period when Plaintiffs entered the market and operated a competing business; (3) everything probative to Plaintiffs' allegations before 2015 had been discovered; and (4) obtaining certain records and financial information before 2015 was overly burdensome as Defendant's financial systems had undergone several changes and emails from individuals who were no longer employed by Defendant would be difficult to find. (D. 101, pp. 11-21, 31). In response, Plaintiffs argued that they were entitled to discovery ranging further back than 2009 and were being "charitable" by only requesting discovery from 2009 to the present. (*Id.*, pp. 18, 23). Plaintiffs noted:

> In this case we will prove, and are entitled to prove, that monopoly power was acquired sometime in the mid-2000s and there was a contract that was in place. They entered into a -- Vail Health entered into a written contract. We believe that there was a preceding contract, but we have not found that, or it hasn't been produced.
>
> [. . .]
>
> And so what Vail did on November 1, 2012, is it acquired, for its own account, through its own corporate existence, a monopoly, which makes it a Section 2 monopolization case. And we are entitled to explore that principle of durability and whether or not Vail Health and the predecessor exercised the ability to raise prices

>above what would otherwise have been market prices and exclude competition going back to that period of time.

(*Id.*, pp. 15-16).

Plaintiffs cite *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 610, 105 S. Ct. 2847 (1985), *United States v. Grinnell Corp.*, 384 U.S. 563 (1966), *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001), and *Colorado Interstate Gas Co. v. Nat. Gas Pipeline Co. of Am.*, 885 F.2d 683 (10th Cir. 1989) for the proposition that a twelve-year discovery time frame is appropriate.  Essentially, Plaintiffs, relying primarily on *Colorado Interstate Gas Co.*, argue that they "are entitled to explore [the] principle of durability" and whether Defendant charged supracompetitive prices.  *See Colorado Interstate Gas Co. v. Nat. Gas Pipeline Co. of Am.*, 885 F.2d 683, 695 (10th Cir. 1989).  However, durability is only one method of measuring the degree of market power held by a particular firm.  The Tenth Circuit noted:

>Although most courts do not explicitly discuss the persistence of a firm's ability to charge supracompetitive prices as a measure of a firm's market power, courts indirectly consider the potential longevity of supracompetitive pricing whenever they use market share to evaluate the degree of market power. Market share statistics are a useful measure of market power, in large part, because they indicate the relative durability of supracompetitive pricing capacity. The greater a firm's market share, the longer it will be able to charge monopoly prices because it will take longer for its small competitors to increase their output enough to discipline prices.
>
>The durability of a firm's ability to charge supracompetitive prices also underlies another factor used to evaluate the degree of market power. Barriers to entry are often used by courts to determine whether an alleged monopolist has sufficient market power for purposes of the monopolization offense.

*Colorado Interstate Gas Co.*, 885 F.2d at 696 n.21 (citations omitted).  Plaintiffs argue that the D.C. Circuit, in *Microsoft*, examined nineteen years of the corporation's evolution and growth. However, the D.C. Circuit did not discuss the scope of discovery in that case and even then, it appears that there was a natural temporal scope on which the court could focus its analysis.

3

*Microsoft Corp.*, 253 F.3d at 49 (D.C. Cir. 2001) ("What is somewhat problematic, however, is that just over six years have passed since Microsoft engaged in the first conduct plaintiffs allege to be anticompetitive. As the record in this case indicates, six years seems like an eternity in the computer industry."). And in *Grinnell*, the United States District Court of Rhode Island determined that the Government was entitled to the production of agreements between defendant and competitors on a national level going back to 1907; however, the court limited the scope of the remaining discovery territorially to the United States and Canada and ten years prior to the filing of the complaint. *United States v. Grinnell Corp.*, 30 F.R.D. 358, 360 (D.R.I. 1962). Unlike *Grinnell*, this case does not deal with a large international corporation conducting business on a national level. Furthermore, none of the cases relied upon by Plaintiffs support their argument that the scope of discovery should be so broad as to support a fishing expedition.

Rather a court may place "reasonable limits" on discovery and may set a "reasonable cut-off date" where the evidence "is to be considered too remote to have sufficient probative value to justify burdening the record with it." *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 710 (1962). Indeed, courts typically permit discovery for a reasonable temporal period antedating the filing of a complaint and the beginning of the pertinent statute of limitations. *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-CV-3183(ADM/LIB), 2016 WL 7042117, at *6 (D. Minn. July 25, 2016), objections overruled, No. CV 15-3183 ADM/LIB, 2016 WL 6534394 (D. Minn. Nov. 2, 2016); *see also Quonset Real Est. Corp. v. Paramount Film Distrib. Corp.*, 50 F.R.D. 240, 241 (S.D.N.Y. 1970) (permitting a discovery scope of ten years based on plaintiff's allegations, but permitting defendant MGM to seek a protective order should plaintiff's conduct become harassing or oppressive); *Pappas v. Loew's, Inc.*, 13 F.R.D. 471, 474-

4

75 (M.D. Pa. 1953) (finding that interrogatories requiring defendants to list subsidiaries or name locations of theatres spanning an eighteen-year period were too broad in scope).

And where the plaintiff specifically alleged that anticompetitive conduct occurred in the past, courts have allowed the temporal scope of discovery to be expanded beyond the limitations period or the plaintiff's alleged damages. *Stephens Theatre Corp v. Loew's Inc*, 17 F.R.D. 494, 495 (E.D.N.Y. 1955) ("The plaintiffs should be allowed discovery and production for a period dating back one year prior to its entry into business, as the allegations of conspiracy encompass that period."). Thus, the court must determine whether the temporal scope is reasonable and whether the plaintiff has alleged any facts to support expanding the temporal scope of discovery. *See Cyntegra, Inc. v. IDEXX Lab'ys, Inc*., No. CV 06-4170-PSG(CTX), 2007 WL 9701999, at *5 (C.D. Cal. June 29, 2007) (listing cases) (finding that a twenty-two year scope was not reasonable, but permitting discovery to a period of five years before plaintiff entered into the industry based on the allegations in the complaint and the documents before the court); *Invacare Corp. v. Respironics, Inc.*, No. 1:04CV1580, 2006 WL 2038647, at *5 (N.D. Ohio Feb. 28, 2006) ("Antitrust cases, while subject to an expansive interpretation as to the relevant time period for discovery, also do not constitute a wholly separate category of actions where discovery antedating the applicable statute of limitations can be granted without a showing of relevancy.").

Here, Defendant agreed to produce documents back to December 2015 as that included the entire limitations period and the period that Plaintiffs entered the market and operated their competing business. Plaintiffs allege that Sports Rehab was founded in the spring of 2014. (D. 26, p. 5). From January 2008 to May 2012, Plaintiff Winninger worked as a physical therapist for a company called Rehabilitation & Performance Center at Vail, LLC, which conducted its services under the trade name of Howard Head. (*Id.*, p. 6). Plaintiff Winninger then resigned and became

the head physical therapist for the U.S. Women's Ski Team and maintained this position from May 2012 to April 2014.  (*Id*.).  Plaintiffs allege that Sports Rehab entered the market in Vail in December 2015 and closed the Vail location in September 2018, due to Defendant's allegedly anticompetitive conduct.  (*Id*.).  Plaintiffs allege that Defendant "took over" the physical therapy market on or about November 1, 2012, when it "required physical therapists who had been employed by RPC-Vail and RPC-Denver to sign an employment agreement that contained certain restrictive covenants."  (*Id*., p. 23).  Plaintiffs do not allege anything to support expanding the scope of discovery past November 1, 2012, and fail to show any relevancy for discovery prior to this date.

Accordingly, concerning all discovery requests, the temporal scope is limited from November 1, 2012, to the present (i.e., approximately three years prior to Sports Rehab's entry into the market).  This scope of discovery permits Plaintiffs to examine the issue of durability but also balances the burden placed upon Defendant to produce such records and documents.

During the March 2021 discovery dispute, the parties had not determined, among other things, the scope of the relevant product and geographic markets.  (*See* D. 101, pp. 28-31).  This Court ORDERS the parties to civilly confer and, should there be any further discovery disputes, contact Chambers to reschedule another discovery dispute hearing.


Dated at Grand Junction, Colorado this June 9, 2021.

Gordon P. Gallagher
United States Magistrate Judge