**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

    Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation.

    Defendant.

---

**PLAINTIFFS' OJBECTION AND APPEAL OF THE JUNE 6, 2021 ORDER GRANTING DEFENDANT'S MOTION TO QUASH PLAINTIFFS' SUBPOENA TO MICHAEL HORWITH AND MOTION FOR A PROTECTIVE ORDER**

---

Plaintiffs Sports Rehab Consulting and Lindsay Winninger object to and therefore appeal the Order issued June 6, 2021 by Magistrate Judge Gordon P. Gallagher [ECF No. 105]. The June 6 Order grants Vail Health's motion to quash the Fed. R. Civ. P. 45 document and deposition subpoena served upon Michael Horwith, who was the independent forensic expert appointed by Judge Gannett in the state court action. Horwith examined Plaintiffs' computers and electronic systems to determine whether David Cimino transferred Vail Health documents to Plaintiffs. He found no such documents.

**LEGAL STANDARD ON REVIEW**

In considering objections to non-dispositive rulings by a Magistrate Judge, the Court must adopt the Magistrate Judge's ruling unless it finds that the ruling is "clearly

erroneous or contrary to law."[1]  The clearly erroneous standard requires affirmance unless, on the entire evidence, this Court is left with the definite and firm conviction that a mistake occurred.[2]  The "contrary to law" standard permits "plenary review as to matters of law,"[3] which means Magistrate Judge's order will be set aside if the Magistrate Judge "applied the wrong legal standard or applied the appropriate legal standard incorrectly."[4]

## **PLAINTIFFS' OBJECTIONS**

In January 2021, Horwith informed the Eagle County court and the parties that he was retiring and later confirmed he would be traveling extensively beginning April 27.  When Horwith gave his notice, the forensic review had been complete for almost one year.  Because he was retiring, Horwith stated he would no longer maintain his case file, the parties' devices, and the images he used for his forensic review.

Over the course of two years, Horwith was paid $75,000 by Vail Health to conduct a forensic examination and issue a report.  Given Horwith's impending April 27 departure from Colorado to begin his retirement, Plaintiffs thought it prudent to have Horwith produce the documents underpinning his findings directly rather than through the parties' expert representatives.  By way of a federal subpoena, Plaintiffs sought to lay the evidentiary foundation for his findings relevant to this action.  Plaintiffs estimate that in excess of $500,000 in attorneys' fees were incurred litigating the scope of Horwith's

---

[1]   Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997).
[2]   *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988).
[3]   *Gunn v. Carter,* Civil Action No. 13-cv-02197-WJM-MEH, 2014 WL 7050471, at *1 (D. Colo. Dec. 12, 2014).
[4]   *Id.*

2

investigation, so it made sense, given the work and expense, to preserve the expert's analysis and opinion in the most-cost effective way consistent with Fed. R. Civ. P. 1.

But Vail Health disagreed and indicated multiple times that it would seek to start this expensive and time-consuming forensic review all over again in this action, likely because Horwith's findings do not support Vail Health's case.  Horwith's examination confirms that Vail Health's statements against Plaintiffs were false: none of the documents Vail Health alleged Cimino stole and transferred to Plaintiffs were found on Plaintiffs' computers, in emails, in Sports Rehab's document storage system, or in its medical records.  It is simple: If the expert's opinion does not support your case, get another one, even though a court-appointed expert had already conducted the analysis.

On May 27, Plaintiffs filed a motion seeking this Court's intervention in the discovery process.[5]  The same day, the Magistrate Judge requested the March 30 hearing transcript.[6]  Despite Plaintiffs' request on April 8 for immediate assistance to resolve the Horwith subpoena, the Magistrate Judge apparently decided to "wait approximately sixty days before issuing any Orders in case the parties had come to a mutual agreement after conferring (as they were instructed in the March 2021 hearing) or the Colorado Supreme Court stay was lifted."[7]  On June 6, the Magistrate Judge quashed the subpoena, precluding Plaintiffs from taking a 1-2 hour deposition of Horwith and using the documents he produced on April 7 because the subpoena violated the Scheduling Order.[8]

---

[5]     ECF No. 97.
[6]     ECF No. 99.
[7]     ECF No. 105 at 5.
[8]     *Id.* at 14.

There are a number of reasons why the June 6 Order is factually and legally erroneous and should be reversed and vacated, which are identified as follows:

(1) It makes little or no sense to throw two years of expert analysis and hundreds of thousands of attorneys' and expert fees out the window. But Vail Health's motion and the June 6 Order put all of that at risk. If Plaintiffs had been permitted to depose Horwith before he left Colorado on April 27, the evidentiary foundation for his investigation and the opinions in his report would have been "in the can," so to speak, and preserved. The waste that may result if Horwith remains beyond the subpoena power of this Court, or if he simply cannot be found, results in reversible error.

(2) Beyond this simple common sense, the Order at page 7 quotes *Exum v. U.S. Olympic Committee* for the proposition that quashing discovery, like that here, must involve a balancing of the harms and that the moving party must demonstrate a "clearly defined and serious injury…."[9] Neither Vail Health nor the Magistrate Judge identified any injury that would result from a 1-2 hour deposition laying the foundation for a Rule 706 expert's analysis and opinion,[10] or any harm in Horwith reproducing documents that had not been bates labeled and produced periodically over the course of two years to the parties' representatives. It was more efficient and less costly to have Horwith reproduce those documents (at Plaintiffs' cost) than go through weeks of wrangling with Vail Health to agree to the documents Horwith had produced.[11] If Vail Health faced any harm from

---

[9] 209 F.R.D. 201, 206 (D. Colo. 2002).
[10] The injury to Vail Health, of course is of another kind—Horwith's report wipes out certain of Vail Health's defenses to the predatory conduct allegations.
[11] *See* Fed. R. Civ. P. 1 (noting that rules of civil procedure should be construed "to secure the just, speedy, and inexpensive determination of every action").

the deposition or the reproduction of documents, the Magistrate Judge should have made such findings of fact. He did not and that is a reversible omission.

An obvious explanation for the absence of any balancing analysis is that there is no harm from a 1-2 hour deposition or reproduction of documents. (Horwith actually produced a portion of the documents in less than 2 hours). That Horwith's findings are unfavorable to Vail Health is not relevant to this analysis . The balance on the other side is that the deposition would have preserved the documents and Horwith's findings. If, for some reason, Vail Health felt it had a basis to object, it could have been made it on the record at the deposition or in a motion *in limine* filed before trial. At all events, what we have now is a retired, Rule 706 expert witness roaming the country, and who knows where he is. Any balancing, therefore, tilts in Plaintiffs' favor and the quashing of the subpoena and documents should never have occurred.

(3) The Magistrate Judge recognized that generally "a party has no standing to quash a subpoena served on a third party, except as to claims of privilege or upon a showing that a privacy interest is implicated."[12] The Magistrate Judge concluded Vail Health had standing because it is a party to the state court action, and Horwith agreed to be bound by the state court protective order. The Magistrate Judge did not identify what privilege or privacy interest Vail Health has in Horwith's findings as to **Plaintiffs' documents from Plaintiffs' computers and electronic systems**,[13] which is what is

---

[12]   ECF No. 105 at 8.
[13]   *See Mona Vie, Inc. v. Amway Corp.,* No. 08-CV-02464-WDM-KLM, 2009 WL 524938, at *3 (D. Colo. Mar. 2, 2009) (finding Plaintiffs had "personal right or privilege" (and hence, standing) when subpoena sought nonparty (adverse party in other litigation) to produce Plaintiffs' privileged information subject to protective order in other litigation).

sought to be preserved by the subpoena. If the Magistrate Judge had any doubts, he could have modified the subpoena—rather than quash it—to reflect Plaintiffs' intent.

(4) One principal ground for quashing the subpoena is that the subpoenaed documents were already produced to the parties in the state court action.[14] The Magistrate Judge cites to the ***agreement between the parties*** that discovery ***should*** not be duplicated to conclude that Plaintiffs violated the Scheduling Order when Horwith reproduced some documents from the state court action. But the parties' agreement is permissive,[15] not mandatory,[16] It denotes discretion[17] and recognizes that duplication may occur, particularly when it is more economical and efficient to do so. In fact, both parties here have already reproduced documents produced in the state court action. So to say that a party violates a Scheduling Order and is precluded from using relevant documents because duplicates were produced leads to an absurd result.

(5) Then there is the comity ruling.[18] The Magistrate Judge does not consider the issue of comity on the federal level, the need to adjudicate this case under federal law, and that the state court cannot be adjudicate this Sherman Action § 2 case because it lacks jurisdiction to do so. The procedural history of this issue supports that reasoning.

---

[14] ECF No. 105 at 13-14.
[15] *Lambert v. Austin Indus.*, 544 F.3d 1192, 1196 (11th Cir.2008) (explaining that "should" "is phrased using permissive, rather than mandatory, language…[and] means 'usually no more than an obligation of propriety or expediency, or a moral obligation'….it does not ordinarily express certainty as `will' sometimes does….courts from other jurisdictions have specifically held that the word 'should' is permissive, and not mandatory.")
[16] *United States v. Maria*, 186 F.3d 65, 70 (2d Cir. 1999) (explaining that "shall" is "used to express a command or exhortation…to express what is mandatory").
[17] *Vance v. Warren Cty. Fiscal Court* , No. 2005-CA-001331-MR, 2006 WL 3231362, at *2 (Ky. Ct. App. Nov. 9, 2006) ("The word 'should'...is not mandatory…it denotes discretion.").
[18] ECF No. 105 at 12-13.

Plaintiffs moved to amend their complaint in the state court case, and in March 2019, Judge Granger granted Plaintiffs' Rule 15(a) motion. Two months later, he reversed himself and *sua sponte* denied leave to amend. Plaintiffs then filed this federal action. If a judge walks away from a case, comity should not be held to extend power to the state court to dictate how a federal court should decide the issue, particularly when Plaintiffs are not collateral litigants as the Magistrate Judge apparently viewed them.

For example, the comity cases cited at pages 12-13 involve collateral litigants in collateral litigation, as the quote to *United Nuclear Corp. Cranford Insurance Co.*[19] shows: "a **collateral litigant** has no right to obtain discovery materials that are privileged or otherwise immune from eventual involuntary discovery in the collateral litigation."[20] But Winninger and Sports Rehab are not collateral litigants—they are Plaintiffs in both cases. It is their computers and electronic information Horwith examined in the state court action, and Vail Health conceded that the relevancy of Horwith's findings about Plaintiffs' documents is not at issue.[21] Nor is this collateral litigation. Plaintiffs and Vail Health agreed in the federal Stipulated HIPAA Qualified and Protective Order that "[a]ll protected information may be used in this action or the Eagle County action."[22]

(6) The Magistrate Judge also believed the state court Stipulated Protective Order and HIPAA Qualified Protective Order required that the subpoena be quashed,[23] but no provision of that protective order was cited supporting that proposition, likely

---

[19] 905 F.2d 1424 (10th Circ. 1990).
[20] *Id.* at 1428 (emphasis added).
[21] *See* ECF No. 95 at 7.
[22] ECF No. 76 at § 2.
[23] ECF No. 105 at 12.

because Vail Health never attached that order as an exhibit to its motion. In fact, the state court protective order was the template for the federal protective order stipulated by the parties here,[24] and the same protections there are incorporated here. For example, § 7 in the state court protective order addresses any "matches" containing PHI found during the Horwith examination, which allows the parties' attorneys to maintain a copy and a party representative to only review the PHI.[25] Those same limitations are incorporated in § 6(b)(3) of the federal protective order.[26] Perhaps more importantly, Vail Health stipulated in the federal order that "[a]ll protected information may be used in this action or the Eagle County action" and with the same confidentiality designations.[27] So the state court and federal court orders protect the same interests in the same way.

(7)     The Magistrate Judge also states that Plaintiffs failed to argue that a deposition of Horwith would not be prohibited under the Forensic Protocol Order.[28] But Plaintiffs explained that the state court adopted the Forensic Protocol Order proposed by Plaintiffs and Cimino.[29] The provision related to the three party representatives conferring with Horwith was for the purpose of the forensic examination itself, ensuring a neutral and independent outcome.[30] Nothing in the Forensic Protocol Order trumped C.R.E. 706, which Plaintiffs also explained. Rather, the Forensic Protocol Order defined the scope of Horwith's forensic examination as required by Rule 706. And under C.R.E. 706, just like

---

[24]   ECF No. 76 § 2 ("A similar protective order was issued in the Eagle County action").
[25]   Ex. 1 § 7. Because this a publicly-filed court document, Plaintiffs provide it here.
[26]   ECF No. 76 § 6(b)(3).
[27]   *Id.* § 2.
[28]   ECF No. 105 at 15.
[29]   ECF No. 85-6 (caption states it is the order proposed by Plaintiffs and Cimino).
[30]   *See infra,* Factual Background, at 12-13.

Fed. R. Evid. 706, a party may depose a court-appointed expert and call that expert at trial, which routinely happens with forensic experts.[31]  This is an important right, as the Sixth Circuit has explained: "The rule simply does not condition a party's doing so on the district court's approval, nor does it maintain merely that the district court 'may allow either party to call the witness.'"[32]  So the Magistrate Judge erred in not addressing Rule of Evidence 706 in the context of a court-appointed expert and how that expert's testimony—who made findings about **Plaintiffs' computers and electronic systems**—might factor into Plaintiffs' claims of Vail Health's predatory conduct under § 2 of the Sherman Act.

(8) Plaintiffs also object to the characterization of the discovery dispute process outlined at page 4, in which the Magistrate Judge stated that "[t]his Court noted that it would entertain another discovery dispute hearing once the parties had properly conferred." After addressing some of the discovery issues but not all,[33] the Magistrate Judge stated he would issue "a preliminary order" "as quickly as possible," "defining some of the scope and other terms that are out there…."[34]  Once that preliminary order was issued, the Magistrate Judge instructed how the process would then proceed: *First*, an exchange between the parties as to what has been produced in the state and federal

---

[31] *See, e.g., Trigon Ins. Co. v. United States*, 234 F. Supp. 2d 592, 593 (E.D. Va. 2002) (deposition of court-appointed forensic expert about deleted files); *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp. Inc*., 671 F. Supp. 2d 1203, 1224-25 (D. Nev. 2009) (deposition of court-appointed forensic examiner); *Krumweide v. Brighton Assocs., LLC*, No. 05-cv-3003, 2006 WL 1308629, at *3-5 (N.D. Ill. May 8, 2006) (right to depose court-appointed expert about report on destruction of files from laptop computer).
[32] *Nemir v. Mitsubishi Motors Corp.,* 381 F.3d 540, 556 (6th Cir. 2004).  *See also Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1311 n. 10 (11th Cir. 1999) ("FRE 706 requires the experts…are subject to depositions").
[33] Ex. 2 at 44 [Mar. 30 Tr.].
[34] *Id.* at 43.

9

action; *second*, a conferral with respect to the preliminary order as to what still needs to be still needs to be produced or not; *third*, then a further hearing as to the objections that were not addressed on March 30; and *finally*, follow-on discussions as to other disputes.[35] Given the August 1 discovery deadline, Plaintiffs voiced their concerns about the time frame and the drawn-out procedures outlined by the Magistrate Judge.[36]

(9) Because of Vail Health's refusal to hold conferral calls, Plaintiffs sought confirmation at the March 30 hearing that a discussion was required, which the Magistrate Judge confirmed.[37] As to the Horwith subpoena, Vail Health represented "absolutely, we should confer about Mr. Horwith and what we can do about that. I'm happy to do that."[38] After making that representation, Vail Health would not return Plaintiffs' calls or schedule a conference call.[39] The Magistrate Judge did not address Vail Health's refusal to hold that call, and yet he later characterizes Plaintiffs' counsel as "ultimately non-responsive."[40]

So instead of requiring Vail Health to comply with its discovery obligations and discuss these matters, the Magistrate Judge now states that he will permit exchanges by email. Permitting email exchanges only, which Plaintiffs oppose, further emboldens Vail Health to continue to drag out the discovery process and run Plaintiffs into the August 1 discovery deadline, as Plaintiffs explained when they sought the Court's intervention in the discovery process. Instead of ordering Vail Health to participate in telephone

---

35     *Id.* at 43-44.
36     *Id.*
37     *Id.* at 46.
38     *Id.* at 47.
39     ECF No. 89-3 at 1; 89-4 at 2.
40     ECF No. 105 at 10-11.

conferrals or be subject to sanctions, the Magistrate Judge stated he would consider appointing a special master for any conferral calls. In other words, Plaintiffs would be financially penalized for Vail Health's refusals to hold meet-and-confer discussions. Plaintiffs object to that as well.

(10) Although these issues are moot, it is worth noting that the Magistrate Judge did not timely address Vail Health's motion for an extension of time to respond to Plaintiffs' second tranche of written discovery served on March 1, 2021, so he granted the motion on June 7, apparently effective *pro nun tunc*, giving Vail Health until June 17.[41] Altogether then, Vail Health was given a total of 108 days to respond, whereas the rules allow 30. Similarly, Plaintiffs served its first set of discovery in October 2019, which Vail Health did not respond to until a year later, even though a court-ordered stay was only in place from April to August 2020. Despite this, the Magistrate Judge determined that Vail Health had "good cause" to not respond to discovery during the 8 months in which there was no stay, including after this Court lifted the stay on August 21, 2020, when it denied Vail Health's motion to dismiss.[42]

The last two items in paragraphs 10-11 are instructive. The Magistrate Judge has been extraordinarily tolerant and generous to Vail Health, giving them everything they ask for (and more), but Plaintiffs' subpoena to take a 1-2 hour deposition to preserve the trial testimony of a retired, court-appointed expert is another matter altogether.

For these reasons, the June 6 Order should be reversed and vacated.

---

[41] ECF No. 104.
[42] ECF No. 55 at 14.

## FACTUAL BACKGROUND

**I. THE EAGLE COUNTY COURT ORDERED AN INDEPENDENT COMPUTER FORENSIC EXAMINATION.**

In February 2018, the state court issued a Forensic Protocol Order[43] for the examination of the computers of Winninger and Sports Rehab's present and former employees to determine what, if any, purported Vail Health files had been transferred to Plaintiffs—the "matches." The Order governed the scope and procedures to test and inspect Plaintiffs' and Cimino's electronic evidence. It specified the procedures to be used to acquire, analyze, and report the "matches"—that is, the protocol let the examiner know where to start, how to proceed, and when the job was done. The court did not draft the order, instead, the court instructed the parties to craft a protocol that would identify the "matches" while still protecting Plaintiffs' and Cimino's privacy interests.[44]

The parties spent over two months hammering out a proposed forensic protocol order, which failed because Vail Health repeatedly attempted to gain direct access to Winninger's and Sports Rehab's computers and information so that Vail Health's own forensic computer expert could conduct a forensic analysis.[45] Given these repeated attempts—including prelitigation—Plaintiffs and Cimino submitted a proposed order,[46] including with respect to §§ 2-3, which provides the designation of each party's computer forensic expert, whose task was to select the expert and communicate with the independent expert *about the forensic examination*. No one knows better than

---

[43] ECF No. 85-6 [adopting Plaintiffs' and Cimino's proposed Forensic Protocol Order].
[44] ECF No. 89-5 at 1 [Minute Order].
[45] ECF No. 89-6 §§ 3, 7-8 [VH's proposed Forensic Protocol Order].
[46] ECF No. 85-6 (caption identifies order as Plaintiffs' and Cimino's proposed order).

Plaintiffs and Cimino why they included that provision. It made sense to have qualified forensic experts—not attorneys—address any technical issues. It also avoided any issue of an attorney advocating or influencing the independent expert ***during the forensic examination***. Plaintiffs and Cimino wanted the examination to be as independent and neutral as possible. The state court adopted Plaintiffs' and Cimino's proposed order with slight modifications, which are identified in bold and italics as coming from Vail Health's proposed draft order.[47] So the provisions in §§ 2-3 related to communications about **conducting the forensic exam** and not with a party's right under Rule of Evidence 706 to call a court-appointed expert to testify by way of deposition or at trial.

As to § 3, Plaintiffs proposed that the bit-stream images of the computers and devices, or information from those images, ***could only be disclosed if authorized by court order or by the parties***. This provision was included for one specific reason—at that time, the parties had dueling proposed orders before the court. Vail Health wanted direct access to Plaintiffs' and Cimino's devices/images to conduct its own examination. By including § 3, Plaintiffs and Cimino ensured that the court-appointed expert understood that Vail Health could not obtain access to their devices/images unless the court ordered it, which it never did despite Vail Health's repeated attempts that it do so.

Horwith was selected as the court-appointed forensic examiner, and he spent two years conducting the forensic review at a cost exceeding $75,000. On May 30, 2019, Horwith issued his report stating that he had found no evidence that Cimino had transferred the purported files to Winninger or Sports Rehab's employees.

---

47     ECF No. 85-6 at 7-8 [Forensic Protocol Order].

## II. HORWITH'S RETIREMENT AND THE FEDERAL SUBPOENA.

By no later than March 2020, Horwith's work in the state court action was complete and since then, his only role has been as a custodian of the forensic images, devices, and his case file. In January 2021, Horwith informed the parties and the court that he was retiring and no longer wanted to maintain his files and devices/images. As part of the transition process, Plaintiffs contacted Horwith directly to discuss administrative issues,[48] copying all counsel on the email. Horwith confirmed with the state court judge that he could communicate directly with the parties' counsel.[49] To accommodate Horwith's desire to no longer maintain the files and devices, the parties attempted to negotiate a transfer of the materials to the state court, but the parties could not reach a final agreement. Before the transfer of Horwith's files and devices could be addressed by the state court, the Colorado Supreme Court imposed a complete stay of the state action when it accepted a C.A.R. 21 Petition filed by Plaintiffs, which is still pending.

## III. PROCEDURAL BACKGROUND RELATED TO THE HORWITH SUBPOENA.

After learning that Horwith was retiring and would be traveling, Plaintiffs sought to preserve his testimony. Plaintiffs served a subpoena issued through this Court, which was done on March 8, with a return date for document production on Monday, April 5, and a return date for the deposition on Friday, April 9.[50] In late March, Plaintiffs learned that Horwith planned to leave Denver on April 27 and would be gone for at least five

---

[48] ECF No. 89-7 at 1 [email].
[49] ECF No. 89-8 at 1 [email].
[50] ECF No. 85-1 [Horwith subpoena].

months.[51] On March 22, Vail Health sent its objection to the Horwith subpoena[52] and filed a motion to quash on Friday, April 2. Vail Health instructed Horwith to "not produce documents or appear for his deposition this week until the court rules on [the motion to quash]"[53]—a communication Vail Health did not send to Plaintiffs—despite the fact that a motion to quash does result in an automatic stay. On Monday, April 5, Plaintiffs filed their opposition. On Wednesday, April 7, Horwith produced documents subject to the subpoena,[54] and later that day, Vail Health filed a motion for a protective order to obtain an automatic stay under D.C.Colo.LCivR 30.2(a). A day later, Plaintiffs filed its opposition to the motion for a protective order and requested the Magistrate Judge's immediate assistance to resolve the Horwith subpoena.[55] At the request of the Magistrate Judge, the parties were prepared to participate in a hearing on April 8, but the Magistrate Judge instead issued an order, finding that Vail Health's motion for a protective order as to the documents was untimely. The Magistrate Judge, however, stayed the deposition until the motions were resolved.[56] On June 6, the Magistrate Judge issued an order quashing the subpoena in its entirety, which is the subject of this objection.

---

[51] ECF No. 89-1 at 3-4 [email].
[52] ECF No. 85-2 [objection].
[53] *See* ECF No. 89-17 at 1-2 [Bernard/Savage email]; *Biocore Med. Techs., Inc. v. Khosrowshahi*, 181 F.R.D. 660, 667 (D. Kan. 1998) (noting counsel has an ethical obligation not to interfere with a subpoena's valid enforcement); *Desanzo v. AHS S.W. Hosp. Inc.*, Case No. 18-CV-353-JED-FHM, 2019 WL 2341666, at*4 (N.D. Okla. June 3, 2019) (noting it was improper for counsel to advise nonparty not to comply with subpoena).
[54] ECF No. 89-3 at 3 [email]. The production was provided to Vail Health before the motion for protective order was filed. *See* ECF No. 89-4 [email/production].
[55] ECF No. 94 at Ex. A (attaching email from Plaintiffs requesting the Magistrate Judge's immediate involvement).
[56] ECF No. 94 at 2.

## **CONCLUSION**

Plaintiffs' therefore respectfully request that the Court reverse and vacate the June 6 Order quashing the Horwith subpoena.

Dated: June 10, 2021

*s/ Alan L. Kildow*
Alan L. Kildow, MN# 0143133
790 Potato Patch Drive
Vail, CO 81657
Telephone: (970) 390-6675
E-mail: alkildow@aol.com

Jesse Wiens, Colo. #33903
Fahrenholtz & Wiens LLC
100 West Beaver Creek Boulevard
Suite 236
Avon, CO 81620
Telephone: (970) 949-6500
E-mail: fwlawyers@gmail.com

Attorneys for Plaintiff Sports Rehab Consulting LLC and Lindsay Winninger

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2021, I served a true and correct copy of Plaintiffs' Objection and Appeal of the June 6, 2021 Order Granting Defendant's Motion to Quash Plaintiffs' Subpoena to Michael Horwith and Motion for a Protective Order, including exhibits, through the Court's ECF system, on the following:

Janet Savage
Jacqueline V. Roeder
Shannon Wells Stevenson
Daniel A. Richards
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO 80202
janet.savage@dgslaw.com
jackie.roeder@dgslaw.com
shannon.stevenson@dgslaw.com
daniel.richards@dgslaw.com

Counsel for Defendant Vail Clinic, Inc.

                                         *s/ Alan L. Kildow*
                                         Alan L. Kildow