**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation.

      Defendant.

---

**PLAINTIFFS' OJBECTION AND APPEAL OF JUNE 9, 2021 MINUTE ORDER**

---

Plaintiffs Sports Rehab Consulting and Lindsay Winninger object to and appeal the June 9, 2021 Minute Order[1] issued by Magistrate Judge Gordon P. Gallagher [ECF No. 107]. The Minute Order limits discovery in this § 2 monopolization case from November 1, 2012 to the present, which is when Vail Health now says it took over the physical therapy clinic from Rehabilitation & Performance Center at Vail ("RPC-Vail"). The Minute Order addresses a fundamental issue in this case: the relevant time period for discovery, which was decided on the basis of the Magistrate Judge's *informal* Dispute Resolution Procedures, which precluded Plaintiffs filing any motion as to this issue, thereby violating their due process rights. It is also clearly erroneous and contrary to law for other reasons.

---

[1] It is unclear what is meant by the June 9 Order being characterized as a "Minute Order." A minute order is "[a]n order recorded in the minutes of the court rather than directly on a case docket…When the judge makes an oral order, the only record of that order may be in the minutes" made by a clerk. Black's Law Dictionary (8th ed. 2004).

## LEGAL STANDARD ON REVIEW

In considering objections to nondispositive rulings by a Magistrate Judge, the Court must adopt the Magistrate Judge's ruling unless it finds that the ruling is "clearly erroneous or contrary to law."[2]   The clearly erroneous standard requires affirmance unless, on the entire evidence, this Court is left with the definite and firm conviction that a mistake occurred.[3]   The "contrary to law" standard permits "plenary review as to matters of law,"[4] which means a Magistrate Judge's order will be set aside if the Magistrate Judge "applied the wrong legal standard or applied the appropriate legal standard incorrectly."[5]

## PLAINTIFFS' OBJECTIONS

There are a number of reasons why the June 9 Minute Order is factually and legally erroneous and should be reversed and amended to include three more years, of discovery—from 2009 through the present, as the following identifies:

(1)     Plaintiffs object to the June 9 Minute Order because it violates their due process right to file a motion to have the dispute fully heard and decided on the evidence. The Magistrate Judge's Procedures outline an *informal discovery dispute process* for an *informal discovery conference*.[6]   Parties may not file any motion without participating in the *informal discovery conference*.[7]   As to written discovery, the procedures require "a

---

[2]     Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997).

[3]     *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988).

[4]     *Gunn v. Carter,* Civil Action No. 13-cv-02197-WJM-MEH, 2014 WL 7050471, at *1 (D. Colo. Dec. 12, 2014).

[5]     *Id.*

[6]     Ex. 1 at 1 [Magistrate Judge's Procedures].

[7]     *Id.* at 2.

written discovery dispute chart[8]…with the most persuasive authority included." They do not state that all relevant documents are to be submitted, or that such documents are even allowed. Rather, the Magistrate Judge requires that "the chart, the disputed discovery request, and the response to the disputed discovery request"[9] be emailed to the Magistrate Judge, not filed with the Court.

As Plaintiffs understood this process, if the dispute could not be quickly and informally resolved then a formal discovery motion would be allowed.[10] Plaintiffs never envisioned it would be precluded from filing any motion, particularly when the Magistrate Judge stated that any order would be a "preliminary" one.[11] After that order was issued, the parties were to further confer in hopes of obviating motion practice.[12] Plaintiffs never anticipated that a "preliminary order" emanating from an *informal* discovery conference[13] would be a final order. But the Minute Order is not preliminary in any way. It is final, and Plaintiffs must object to it within 14 days to preserve their rights.[14]

---

[8]    *Id.* (providing exemplar of discovery dispute chart to be submitted).

[9]    *Id.*

[10]    *See id.* at 2 ("before filing any discovery motion…contact…Chambers…to set an informal discovery conference;" chart to be filed if "formal discovery motion follow[s]").

[11]    ECF No. 108-2 at 43; ECF 107 at 1 (stating "preliminary order" was to be issued).

[12]    ECF No. 108-2 at 43-44 [Mar. 30 Tr.] (instructing that after preliminary order was issued, parties were to confer). *See also Leibovic v. United Shore Fin. Servs., LLC*, No. 15-12639, 2017 WL 3704376, at *1 (E.D. Mich. Aug. 28, 2017) ("The Court entered a preliminary order concerning the discovery motions to aid further discussion").

[13]    *See, e.g., United States v. Univ. of Mass.*, 167 F. Supp. 3d 221, 226 (D. Mass. 2016) (issuing preliminary order but allowing adverse party to file discovery motion); *Markham v. Nat'l States Ins. Co.*, No. CIV-02-1606-F, 2004 WL 3019309, at *6 (W.D. Okla. Dec. 27, 2004) (noting that a preliminary order is just that; "[t]he factual record was not complete, and the parties had not, at that point, had a full opportunity to prosecute and defend the sanctions motion").

[14]    ECF No. 107 at 1 n.3.

The informal process outlined above violates Plaintiffs' Constitutional due process right to be heard.  Fed. R. Civ. P. 7(b), 77(a), and 78 set out a litigant's right to file motions, which is sacrosanct, as the U.S. Supreme Court stated in *Holt v. Virginia,* "[t]he right to be heard must necessarily embody a right to file motions and pleadings essential to present claims and raise relevant issues."[15]  Only in "extraordinary" situations may litigants be prohibited from filing motions.[16]  Here, the Magistrate Judge issued a final order without first allowing Plaintiffs to file a Rule 37 motion.  But "a court has no power to prevent a party from filing pleadings, motions or appeals authorized by the Federal Rules of Civil Procedure,"[17] which would "in effect cut[] the lines of communication between the court and the litigant."[18]  That is what happened here, and Plaintiffs object.

(2)     Plaintiffs also object to the Magistrate Judge's factually incorrect statement that Plaintiffs had not alleged "anything to support expanding the scope of discovery past November 1, to 2012, and fail to show any relevancy for discovery prior to this date."[19] The Minute Order[20] omits key arguments[21] made by Plaintiffs at the March 30 hearing:

MR. KILDOW:  Durability is an essential element of a Section 2 case for two reasons.

One is that the court must test whether the defendant was able to exercise, market, or monopoly power in the relevant geographic and service markets

---

[15]     381 U.S. 131, 136 (1965).

[16]     *Schoenberg v. Shapolsky Publishers, Inc.*, 971 F.2d 926, 936 (2d Cir. 1992).  *See also Am. Bd. of Surgery, Inc. v. Lasko*, 611 F. App'x 69, 8 (3d Cir. 2015) (stating that court must provide notice and opportunity to respond before prohibiting party to file documents); *Parish v. Parish*, 412 N.J. Super. 39, 58 (N.J. Super. 2010) (improper to disallow motions).

[17]     *Richardson Greenshields Secs., Inc. v. Mui-Hin Lau* 825 F.2d 647, 652 (2d Cir. 1987).

[18]     *Schoenberg,* 971 F.2d at 935.

[19]     ECF 107 at 6.

[20]     *Id.* at 2 (citing only pages 8 and 23 of the March 30 hearing transcript).

[21]     ECF No. 108-2 at 13-19 (discussing the importance, legal authority, and facts).

over a period of time. And that period of time depends on the case, but it must be durable over a period of time. Which is one reason that in these antitrust cases you have a much more extended time period in which the defendant's conduct is measured than you do another typical, more typical, civil cases. That market power extends long before the statute of limitations is run, and it also has, actually, nothing to do, or very little to do, it depends on the case, with the plaintiff's entry into the market.

Because, as is the case here, the entity that operated the physical therapy clinic at issue became, or acquired, monopoly power, probably sometime in 2002 or 2004 or 2005. What that principle of durability does is actually a principle that is more favorable to the defendant than it is to the plaintiff, because if a defendant merely has the monopoly power for a short transitory period of time the court would not (unintelligible) that it was a violation -- it was violating Section 2.

In this case we will prove, and are entitled to prove, that monopoly power was acquired sometime in the mid-2000s and there was a contract that was in place. They entered into a -- Vail Health entered into a written contract. We believe that there was a preceding contract, but we have not found that, or it hasn't been produced.

But on November 1, 2004, Vail Health entered into a contract with an outfit we'll just call RPC Vail, which was the entity that is not a department of Vail Health, it's an independent contractor, a separate legal entity, and separately managed entity. They entered into an exclusive dealing contract which allowed Vail Health to capture a percentage of the profits that were realized by that monopoly power.

And eventually, on November 1, 2000 and -- or I'll say October 31, 2012, that -- that exclusive dealing contract expired; it was not renewed. And the actual facts would show that it was really a hostile takeover, but that's not for this hearing.

And so what Vail did on November 1, 2012, is it acquired, for its own account, through its own corporate existence, a monopoly, which makes it a Section 2 monopolization case. And we are entitled to explore that principle of durability and whether or not Vail Health and the predecessor exercised the ability to raise prices above what would otherwise have been market prices and exclude competition going back to that period of time.

***

How a -- how a defendant acquires their monopoly power is a critical component of an antitrust case, and Microsoft is one of the most recent ones, and it's found the most attention. Because it started out -- the court started out with the analysis of the evolution of Windows, which we all, I think, know, in 1982, when Bill Gates and his colleagues started the company. And it went

5

through all of the evolution of the genesis of Windows and all the permutations and the actions of Microsoft as that product developed and whether there were exclusionary acts of Microsoft to exclude competitors from the market.

But in that case the duration of the analysis was 19 years. And so what is important with respect to that principle, and this principle is also more favorable to Defendants than it is to Plaintiffs, if a defendant has acquired monopoly power through its skill and its knowledge and its what's called competition on the merits, then it's conduct as a monopolist will be less likely to be found to be a violation of Section 2. However, if a monopolist simply acquired another monopolist, or acquired market share (unintelligible) acquired for itself a monopoly, then it will be more likely to be violative of Section 2.

So Plaintiffs did summarize at the hearing the anticompetitive "takeover" of the Howard Head predecessor that led directly to Vail Health's acquisition of monopoly power.

(3)   Plaintiffs also object to the characterization that Plaintiffs have not alleged "anything to support expanding the scope of discovery past November 1, 2012." Plaintiffs' Amended Complaint[22] and Vail Health's Answer[23] show otherwise:

**Amended Complaint ¶ 19**:  From January 2008 to May 2012, Winninger worked as a physical therapist for a company called… RPC-Vail, which was owned and managed by John Atkins and Topper Hagerman.  RPC-Vail was engaged in a physical therapy practice and conducted its services under the trade name of Howard Head.  RPC-Vail operated the physical therapy clinic in the Vail Health medical center building in Vail, Colorado.

**Vail Health Answer ¶ 19**:  Vail Health specifically denies the characterization of its services agreement with…RPC-Vail.  Vail Health states that is hired RPC-Vail to operate Vail Health's physical; therapy *department* (Howard Head) and treat *its patients*. (emphasis added).

**Amended Complaint ¶ 30**:  In 2012, Vail Health terminated the lease for the space in which RPC-Vail operated its physical therapy services in the Vail Health medical center and also terminated service contracts with RPC-Vail and RPC-Denver.  At or about the same time, Vail Health solicited virtually all of the physical therapists working for RPC-Vail and its corresponding physical therapy office in Denver ("RPC-Denver") to become physical therapists for Vail Health under the same Howard Head name.

---

22    ECF No. 26.
23    ECF No. 63.

**Vail Health Answer ¶ 30:**  Vail Health states that in 2012, it did not renew its service contract with RPC-Vail.  The allegation that Vail Health "solicited virtually all the physical therapists working for RPC-vail is vague, and therefore Vail Health denies the same.  Vail Health states that after the end of its service contract with RPC-Vail, it broadly posted for physical therapist positions.

**Amended Complaint ¶31:**  Vail Health offered physical therapists additional compensation and a bonus to leave RPC-Vail and RPC-Denver, but they were required to sign a non-solicitation agreement if they were to continue working at the Howard Head facility that would now be run by Vail Health.  Most of the physical therapists in RPC-Vail accepted the offer. Through these actions, Vail Health eviscerated the physical therapy business of RPC-Vail and captured that business for itself.

**Vail Health Answer ¶ 31:**  Vail Health denies that it eviscerated RPC-Vail's business.  Following the end of its service contract with RPC-Vail, Vail Health admits that it offered physical therapists (*i.e.*, those who worked previously for RPC-Vail and other qualified physical therapists) a market-based salary and a one-year retention bonus to work for Vail Health.  Vail Health admits that their employment agreement would include a non-solicitation provision.  Vail Health admits that some of the physical therapists who previously worked for RPC-Vail accepted offers to work at Vail Health, but that others formed their own physical therapy clinics or chose to work elsewhere.

These paragraphs relate to the Physical Therapy Services Agreement that RPC-Vail and Vail Health entered into in 2004,[24] which was renewed until Vail Health terminated it effective October 31, 2012.  (There was apparently a 1999 agreement, which has not been produced).  It was an exclusive dealing contract that Vail Health argues in its Answer to ¶ 19 made RPC-Vail a "department" of Vail Health,[25] although that contention is contradicted by its Answer to ¶¶ 30 and 31, where it is admitted that the physical therapist were employees of RPC-Vail, which was the exclusive medical provider.  Vail Health was the entity billing for RPC-Vail's services.[26]  In the Eagle County

---

[24]     Ex. 2.  The Agreement is a publicly-filed document per the Colorado Supreme Court's April 21, 2021 Order.
[25]     *Id.* at VAIL_00003441, § 22; VAIL_00003426, "WHEREAS."
[26]     *Id.* at VAIL_00003428, § 2.1; VAIL_00003433, § 3.1.

action, Vail Health produced billing data for approximately 40 patients from approximately 2009 through 2012, when RPC-Vail provided physical therapy services.  As reflected by Plaintiffs' answer to Interrogatory No. 8,[27] this information, along with data from 2016-2020, shows that the charge for physical therapy services was at a supracompetitive rate—over two times higher than the $140 alleged in the Amended Complaint:

|  | 2009 | 2010 | 2011 | 2012 | 2016 | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| Manual Therapy/hr | 288.60 | 288.60 | 306.20 | 315.00 | 289.20 | 314.80 | 326.80 | 368.00 | 368.00 |
| Therapeutic Exercise/hr | 323.00 | 323.00 | 342.60 | 352.60 | 323.80 | 352.00 | 366.40 | 376.00 | 376.00 |

By imposing a November 1, 2012, cut off in a virtual vacuum—without Plaintiffs' relevant evidence—the Magistrate Judge committed clear error.  For example, a case cited in the Minute Order, *Inline Packaging, LLC v. Graphic Packaging International, Inc.,* confirms the importance of allowing Plaintiffs to present relevant evidence:

> The Court's review of the case law indicates that courts have been more inclined to establish the temporal scope of discovery as being significantly earlier than the filing of the complaint of the extent of the statute of limitations period ***where there are specific factual allegations or other specific indications in the record indicating that the anti-competitive conduct occurred further in the past***.[28]

There, the Magistrate Judge permitted a 14-year discovery lookback. Here, in contrast, Plaintiffs were precluded from presenting specific factual information obtained since the filing of the Amended Complaint in September 2019, both in the state and federal cases.

Discovery in this case would show that the service charges were all set by Vail Health, even when RPC-Vail was the provider of those services from 2004, if not before.

---

[27]     Ex. 3 at Answer to Interrog. No. 8.

[28]     Court File No: 15-cv-3183 (ADM/LIB), 2016 WL 7042117, at *6 (D. Minn. July 25, 2016) (citing *Pappas v. Loew's Inc.*, 13 F.R.D 471, 472 (M.D. Pa. 1953)) (emphasis added).

RPC-Vail was not compensated on the amount charged for those services but was paid under a complicated formula that included profitability.[29]  Since February 2021, Plaintiffs have learned that prices were set based upon fraudulent and illegal accounting methods that permitted Vail Health to charge supracompetitive prices.  Further, discovery here would further confirm that the Service Agreement was an illegal contract that violated § 2, resulting in Vail Health reaping a significant portion of the supracompetitive prices for at least eight years before its hostile takeover on November 1, 2012, the discovery cutoff date imposed by the Minute Order.  If Plaintiffs had been permitted to present this and other evidence in a Rule 37 motion, this objection may have been unnecessary.

19.      Foregoing the motion practice under Rule 37 and instead utilizing a "dispute chart" has also made it difficult to drive home the law.  For example, Rule 26 favors liberal discovery,[30] but courts generally allow even broader discovery in § 2 antitrust cases— that is, discovery is not confined to the antitrust statute of limitations period,[31] or the damages period.[32]  Instead, plaintiffs are generally permitted to discover a defendant's activities "for a 'reasonable period' of time antedating the earliest possible date of the

---

[29]      Ex. 2 VAIL_00003433, § 3.

[30]      *In re: Am. Med. Sys., Inc.*, MDL No. 2325, 2016 WL 3077904, at *4 (S.D.W. Va. May 31, 2016)("it remains true that relevancy in discovery is broader than relevancy for purposes of admissibility at trial" and "notwithstanding Rule 26(b)(1)'s recent amendment placing an emphasis on the proportionality of discovery, the discovery rules, including Rule 26, are still to be accorded broad and liberal construction").

[31]      *Kellam*, 616 F. Supp. at 218; *Empire Volkswagon, Inc. v. World-Wide Volkswagon Corp.*, 95 F.R.D. 398, 399 (S.D.N.Y. 1982) ("discovery in antitrust cases routinely go beyond the statutory period").

[32]      *Maritime Cinema Serv. Corp. v. Movies En Route, Inc.*, 60 F.R.D. 587, 561 (S.D.N.Y. 1973) ("Discovery in antitrust cases routinely goes beyond the damage period, particularly where it is necessary to establish intent or the pattern of a conspiracy").

actionable wrong."[33]   This standard is important because "broad discovery may be needed to uncover evidence of invidious design, pattern, or intent,"[34] which of course, is in the hands of the alleged monopolist.  These factors were not considered here.

Rather than uphold these antitrust principles, the Minute Order at page 4 attempts to distinguish the Supreme Court's decision in *United States v. Grinnell Corp.*[35]  *Grinnell* confirmed the essential elements of § 2 as "possession of monopoly power in the relevant market" and "the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."[36]  To establish those elements, *Grinnell* permits a plaintiff to reach back in time to determine when and how the defendant achieved, by merit or acquired by purchase, its monopoly power.  *Grinnell* was decided in 1966 and exhaustively recounts Grinnell's acquisition of competitors and potential competitors from 1907 on.  When the government was permitted a look back of 55 years, the Supreme Court did not characterize it as a "fishing expedition," as the June 9 Minute Order suggests for the period 2009 to 2012.  Rather, the lookback was integral to the Supreme Court's opinion.

The Minute Order acknowledges *Grinnell's* 55-year lookback by referencing the district court's decision on discovery.[37]  There, the government requested all documents dating back to 1907 (remember, the motion to compel was filed in 1962). The court held

---

[33]     *Quonset*, 50 F.R.D. at 241.
[34]     *United States v. Dentsply Int'l, Inc.*, No. Civ. A 99-5 MMS, 2000 WL 654286, at *5 (D. Del. May 10. 2000) (citing *Kellam*, 616 F. Supp. at 217).
[35]     384 U.S. 563 (1966).
[36]     *Grinnell*, 384 U.S. at 570-71.
[37]     ECF No. 107 at 4 (citing *United States v. Grinnell,* 30 F.R.D. 358, 360 (D.R.I. 1962)).

that "[s]ince this and subsequent agreements…may be the basis for the alleged violation of antitrust laws, the motion as to all agreements entered into between the defendants, either amongst themselves or with competitors, since 1907, is allowed"[38]—that is, for 55 years.  The Magistrate Judge is correct that all other documents and records were limited to a 10-year lookback from the filing of the complaint.   If *Grinnell* had been followed, Plaintiffs would be entitled to discovery of all anticompetitive contracts as far back as they go and all other records from July 17, 2009, almost the date Plaintiffs requested.

The Magistrate Judge apparently found *Grinnell* inapplicable: "Unlike *Grinnell*, this case does not deal with a large international corporation conducting business on a national level."[39]  True enough, but since 1966, *Grinnell* has been cited 3,192 times, and its fundamental monopolization principles have never been overturned or materially distinguished.  And its § 2 principles have never been altered on the basis of the size of the parties (except here).   The antitrust tenets espoused in *Grinnell* apply equally to individuals, small businesses, and multinationals, as evidenced by *Bright v. Moss Ambulance Services*,[40] where the Tenth Circuit quoted *Grinnell* for the elements of § 2 monopolization.  *Bright* involved a "mom-and-pop" ambulance service that sued the City of Ogden, Utah, and several local private ambulance service competitors under §§ 1 and 2 of the Sherman Act.  In quoting *Grinnell*, the Tenth Circuit did not limit its applicability to international corporations doing business on a national basis, but rather applied those principles without question to small, local Ogden businesses as well.

---

[38]     *Grinnell,* 30 F.R.D. at 360.
[39]     ECF No. 107 at 4.
[40]     824 F.2d 818, 823 (10th Cir. 1987).

The Minute Order at page 3 also includes a statement suggesting a degree of confusion about the concept of monopoly power: "However, durability is only one method of measuring the degree of market power held by a particular firm."[41]  It then cites a passage from *Colorado Interstate Gas Co. v. National Gas Pipeline Co. of America,* which harkens back to *Grinnell* and the required showing of "the possession of monopoly power."[42]  But *Colorado Gas* identifies a number of factors which, in different combinations, may be used to measure monopoly power, such as percentage of market share, degree of market share over time, realization and duration of supracompetitive prices, barriers to entry, and whether those barriers persist over time.  They are not alternatives as the Minute Order suggests.  Plaintiffs are entitled to discovery on each factor that may be tested over time—back to when monopoly power was acquired or achieved.  *Colorado Gas* buttresses Plaintiffs' right to discovery back to 2009.

Over the past two decades, *United States v. Microsoft Corp.* has been one of the most cited and relied upon § 2 antitrust cases, but the Minute Order at page 4 dispenses with it in a parenthetical that has nothing to do with the temporal scope of discovery.[43] The D.C. Circuit pondered the difficulties courts face in fashioning remedies and restoring competition when technology changes every six years.  The Minute Order overlooks that *Microsoft* cited *Grinnell* for the required elements of § 2 and indeed allowed a 19-year lookback to trace every step of the evolution of Microsoft's monopolization of the relevant markets.  *Microsoft* does not support the conclusions of the Minute Order.

---

[41]    ECF 107 at 3.
[42]    *Grinnell*, 348 U.S. at 590.
[43]    253 F.3d 34, 49 (D.C. Cir. 2001).

The Minute Order at page 4 cites one short sentence at the end of *Continental Ore Co. v. Union Carbide and Carbon Corp.*[44] but ignores that the Supreme Court overturned the case because the trial court erred in its persistent exclusion of evidence relating to the pre-1938 period, which the plaintiffs sought to introduce at trial that related to alleged monopolization occurring in the early 1930's.  The Supreme Court held that plaintiff should have been permitted to reach back 19 years for evidence of exclusionary conduct, which refutes the position taken in the Minute Order.

The Magistrate Judge also cites *Quonset Real Estate Corp. v. Paramount Film Distributing Corp.,*[45] which is not supportive of the Minute Order either.  There, the court permitted the plaintiff to obtain discovery for 10 years antedating the earliest possible wrong.  The court reasoned that "[w]hile at first blush this period may appear excessive or remote to the conspiracy charged, where intent is a vital element in the allegations the Court is reluctant to deny plaintiff the opportunity to gather evidence of a course of conduct existing over a period of many years which may manifest an intent to monopolize.[46]  *Quonset* points out the danger in a court rendering definitive Rule 12(b)(6)-type decisions without the benefit of a factual record and full briefing, like was done here. In *Spectrum Sports, Inc. v. McQuillan*, the Supreme Court held: "To prevail on an attempted monopolization claim, a plaintiff must show: (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) *a specific intent to monopolize*

---

[44]    370 U.S. 690 (1962).
[45]    50 F.R.D. 240, 241 (S.D.N.Y. 1970).
[46]    *Id.* at 241-42.

and (3) a dangerous probability of achieving monopoly power."[47]   Precluding Plaintiffs from discovering facts confirming that Vail Health had specific intent to monopolize before November 1, 2012 is unsupported by Supreme Court precedent.

The Minute Order at pages 4-5 quotes *Pappas v. Lowe's, Inc.*, where the court held that interrogatories requiring defendants to list subsidiaries or name locations of theaters over an eighteen-year period were too broad.[48]   But the Minute Order omits the critical language of *Pappas* that confirms what has been asserted above: "The asserted history of the conspiracy and not the scope of plaintiffs' damage provide the boundary for discovery…."[49]   The court went on to reframe the interrogatories in a less burdensome manner, but it still gave the plaintiffs the 18-year lookback.

The Minute Order at page 5 cites *Stephens Theatre Corp. v. Loew's Inc.*,[50] where the court held that plaintiffs were entitled to discovery as far back as the anticompetitive conspiracy was in existence.   That is consistent with *Grinnell*—that is, as far back "to show knowledge, intent or purpose of the defendants" to commit their anticompetitive acts."   The court also held that "[t]he six-year statute of limitations is not a limitation on the use of pre-trial discovery."   *Stephens* does not support the Minute Order either.

The Minute Order at page 5 cites *Cyntenegra, Inc. v. IDEXX Lab's, Inc.*, which explicitly followed *Grinnell*: "[P]laintiff is entitled to discovery any of defendant's standard form distributorship agreements that contain a provision or provisions requiring the

---

[47]   506 U.S. 447, 456 (1993).
[48]   13 F.R.D. 471, 474-75.
[49]   *Id.*
[50]   17 F.R.D. 494, 495 (E.D.N.Y. 1945)

14

distributor to market only defendant's products"[51] (an exclusive dealing contract).  Like *Grinnell*, *Cyntenegra* does not support the Minute Order's limitation of discovery to 2012.

Finally, the Minute Order at page 5 cites *Invacare Corp. v. Respironics, Inc.*, which holds that to obtain discovery beyond the statute of limitations period, the party seeking the discovery must demonstrate its relevancy.  As discussed above, the Magistrate Judge erred in concluding that Plaintiffs have not pled or demonstrated relevancy because Plaintiffs were not allowed to file Rule 37 motions to compel, which would have articulated the relevancy of the discovery in a fulsome manner.

20.    Plaintiffs object to the characterization that the Magistrate Judge stated "it would entertain another discovery dispute hearing once the parties had properly conferred."[52]  The Magistrate Judge stated he would issue "a preliminary order," with a conferral to follow, another hearing, and follow-on discussions about other disputes.[53] Plaintiffs voiced their concerns about the Magistrate Judge's drawn-out procedures.[54]

21.    Finally, Plaintiffs object to the Magistrate's Judge's statement that "[d]uring the March 2021 discovery dispute, the parties had not determined, among other things, the scope of the relevant product and geographic markets."[55]  But that issue was raised only in the context of temporal scope.[56]  Plaintiffs have since addressed the substantive issues with respect to the relevant market and will be addressing that issue shortly.

---

[51]    No. CV 06-470-PS6 (CYX), 2007 WL 9701999, at * 5 (C.D. Cal. June 29, 2007).
[52]    ECF No. 1-2.
[53]    *Id.* at 43-44.
[54]    *Id.*
[55]    ECF No. 107 at 6.
[56]    ECF No. 108-2 at 28, 31 [Mar. 30 Tr.].

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiffs respectfully request that the Court reverse

and amend the June 11 Minute Order and extend the lookback to 2009.

Dated: June 15, 2021                          *s/ Alan L. Kildow*
                                                   Alan L. Kildow, MN# 0143133
                                                   790 Potato Patch Drive
                                                   Vail, CO 81657
                                                   Telephone: (970) 390-6675
                                                   E-mail:  alkildow@aol.com

                                                   Jesse Wiens, Colo. #33903
                                                   Fahrenholtz & Wiens LLC
                                                   100 West Beaver Creek Boulevard
                                                   Suite 236
                                                   Avon, CO 81620
                                                   Telephone: (970) 949-6500
                                                   E-mail:  fwlawyers@gmail.com

                                                   Attorneys for Plaintiff Sports Rehab Consulting
                                                   LLC and Lindsay Winninger

## **CERTIFICATE OF SERVICE**

       I hereby certify that on June 15, 2021, I served a true and correct copy of Plaintiffs' Objection and Appeal of June 9, 2021 Minute Order, including exhibits, through the Court's ECF system, on the following:

       Janet Savage
       Jacqueline V. Roeder
       Shannon Wells Stevenson
       Daniel A. Richards
       Davis Graham & Stubbs LLP
       1550 17th Street, Suite 500
       Denver, CO 80202
       janet.savage@dgslaw.com
       jackie.roeder@dgslaw.com
       shannon.stevenson@dgslaw.com
       daniel.richards@dgslaw.com

       Counsel for Defendant Vail Clinic, Inc.

                           *s/ Alan L. Kildow*
                           Alan L. Kildow