## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation.

      Defendant.

---

## PLAINTIFFS' RULE 37 MOTION TO COMPEL #1
## RELATING TO RELEVANT GEOGRPAHIC MARKET

---

### INTRODUCTION

Plaintiffs move the Court under Fed. R. Civ. P. 37(a)(3)(B)(iii) and (iv), for an order compelling Vail Health to produce certain documents and answer interrogatories that seek discovery into its clinical business in the relevant geographic market.  The primary legal issue is that in a monopoly case, a plaintiff may be required to prove, either through direct or circumstantial evidence, that the defendant possesses monopoly power in a plausible relevant market.[1]  Whether as a procedural matter a plausible relevant market is necessary to be pled where there is direct evidence of a § 2 violation[2] is not at issue

---

[1]    *Christy Sports LLC, v. Deer Valley Resort Co., Ltd.,* 555 F.3d 1188, 1198 (10th Cir. 2009); *U.S. v. E.I. du Pont de Nemours & Co.,* 353 U.S. 586, 593 (1957).

[2]    *See Christy Sports,* 555 F.3d at 1198. (noting that the Tenth Circuit "has neither accepted nor rejected" the theory" articulated in *Re/Max Int'l, Inc. v. Realty One, Inc.,* 173 F.3d 995, 1018 (6th Cir.1999) that "an antitrust plaintiff is not required to rely on indirect evidence of a defendant's monopoly power, such as high market share within a defined market, when there is direct evidence that the defendant has actually set prices or excluded competition," but in *Tarbishi v. McAlester Regional Hos.,* 951 F.2d 1558, 1569 n.15 (10th Cir.1991) and *Reazin v. Blue Cross & Blue Shield of Kan., Inc.,* 899 F.2d 951,

here but evidence relevant to defining the geographic market is.  The discovery Plaintiffs seek is: (1) patient "in-flow" and "out-flow" data showing the geographic area from which Vail Health's physical therapy patients; (2) the patients' physical therapy and orthopedic procedure codes; and (3) their payor claim and reimbursement records.  All this information exists in Vail Health's patient database as required by Colorado law.[3]

## <u>CERTIFICATE OF CONFERRAL</u>

Plaintiffs have made numerous attempts to resolve this discovery dispute without success.  The parties submitted an informal dispute resolution chart and an informal conference was held before Magistrate Judge Gallagher on March 30, 2021, in which Vail Health's objections to the first document requests were discussed in part.[4]  No orders as to the relevant geographic market were issued.  Since then, Plaintiffs have continued to attempt to confer with Vail Health on discovery deficiencies,[5] which resulted in a call on May 26[6] that lasted little more than an hour and addressed only seven of twenty-five interrogatories; none of which Vail Health would agree to supplement.  Plaintiffs then sent another chart identifying deficiencies in Vail Health discovery responses,[7] and on June 14, 17, 24, and July 1, 14, and 19, 2021, Plaintiffs requested a meet and confer.[8]  On July 19, Vail Health informed Plaintiffs that it would not meet and confer because it would not

---

968 n.24 (10th Cir.1990), the court noted "the possibility that proof of anticompetitive effects rendered definition of a relevant market unnecessary in a § 2 case").

[3]      6 Colo. Code Regs. § 1011-1, chap. 4 § 81.02(2).

[4]      *See* ECF No. 107 at Ex. 1 (filing discovery dispute chart submitted to Magistrate).

[5]      Ex. 1 at attached letter [Pls.' letter on interrogatories]; Ex. 2 at attached chart [Vail Health's response].  When Plaintiffs call to discuss discovery issues, Vail Health does not return Plaintiffs' calls.  *See, e.g.,* Ex. 3 at 1 [email].

[6]      Before May 26, 2021, Plaintiffs requested a meet and confer on May 12, 14, 17, 18, 24, and 25.  *See* Exs. 1-5 [email requests].

[7]      Ex. 6 at attached chart [June 24 chart]; Ex. 10 [Vail Health's response].

[8]      *See* Exs. 6-9, 11 [email requests].

"be a productive use of attorney time or clients' time" and that Magistrate Judge Gallagher "indicated" he would permit conferral by email.[9]  Vail Health also stated it would respond to Plaintiffs' request (again) for patient data and other documents.[10]  It has not.

## INADEQUATE DISCOVERY RESPONSES

On October 9, 2019, Plaintiffs served their first set of document requests,[11] which Vail Health responded to on October 9, 2020.[12]  Five months later, Vail Health produced 55 documents.  On March 1, 2021, Plaintiffs served a second set of discovery.[13]  On April 30, 2021, Vail Health served its responses[14] and produced documents on May 28 and July 15, 2021.  In addition to issues identified in March,[15] Plaintiffs addressed Vail Health's discovery deficiencies on May 12, June 24, and July 16.[16]  The geographic market discovery has not been produced (and was not at issue in the state court action).  Finally, the relevant time period for this discovery is from November 1, 2012 to the present.[17]

## ARGUMENT

### I.   PLAINTIFFS ARE ENTITLED TO GEOGRAPHIC MARKET DISCOVERY.

#### A.   Rule 37 Motion To Compel.

This motion seeks an order to compel Vail Health to produce documents and answer interrogatories.   Rule 37 provides, in relevant part, that "[a] party seeking

---

[9]     Ex. 11 at 1 [email].  *But see* ECF No. 105 at 12 [June 6, 2021 Order] ("this Court requires counsel to properly comply with the conferral requirements….the parties wish to confer via email to maintain an accurate record of the conversations, this Court will permit it").  Plaintiffs did not agree to confer only by email.  *See, e.g.,* Ex. 7 [email].

[10]    Ex. 11 at 1 [email].  *See also id.* at 1-2 (listing 12 categories of missing documents).

[11]    Ex. 12 [Pls.' 1st RFPs].

[12]    Ex. 13 [Vail Health's Resp. to 1st RFPs].

[13]    Ex. 14 [Pls.' 2d Set of Discovery].

[14]    Ex. 15 [Vail Health's Resp. to 2d Set of Discovery].

[15]    *See* ECF No. 107 at Ex. 1.

[16]    Ex. 1 at attached letter; Ex. 6 at attached chart; Ex. 11 at 1-2 (listing documents).

[17]    *See* ECF No. 107 at 6 (stating relevant time period begins November 1, 2012).

discovery may move for an order compelling an answer, designation, production, or inspection.  This motion may be made if…(iii) a party fails to answer an interrogatory submitted under Rule 33; or…(iv) a party fails to produce documents…as requested under Rule 34."  It also provides that "an evasive or incomplete…response must be treated as a failure to disclose, answer, or respond."[18]  Vail Health has not met its obligations under Rules 33 or 34, thereby necessitating this motion.

**B.**   **Elements Of Sherman § 2 Monopolization And Attempt To Monopolize.**

This is an action under the Sherman Act, 15 U.S.C. § 2, which makes it unlawful for a firm to "monopolize, or attempt to monopolize...any part of the trade or commerce among the several states…."  Although this motion focuses on the relevant geographic market, the issue involves fundamental § 2 principles established by the Supreme Court. A starting point is the definition of a monopoly, which is: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident."[19]  "Monopoly power is the power to control prices or exclude competition."[20]   Definition of the relevant product and geographic markets may be necessary to measure and determine whether a defendant possesses monopoly power.[21]  Market definition is a question of fact.[22]

---

[18]     Fed. R. Civ. P 37(a)(3)(B)(iii)-(iv).
[19]     *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966).  *See also Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1119 (10th Cir. 2014).
[20]     *du Pont,* 351 U.S. at 391.
[21]     *United States Conn. Nat'l Bank,* 418 U.S. 656, 669 (1974).
[22]     *Westman Comm'n Co. v. Hobart Int'l, Inc.,* 796 F.2d 1216, 1220 (10th Cir.1986).

### C.    The Definition Of Relevant Geographic Market.

A § 2 claim may require proof of a plausible relevant geographic market, [23] the definition and scope of which have been exhaustively litigated in thousands of federal cases, leaving no scarcity of guidance.[24]  In *United States v. Philadelphia National Bank*, the Supreme Court explained that the relevant geographic market is "the 'area of effective competition…in which the seller operates, and to which the buyer can practicably turn for supplies'…."[25]  The Tenth Circuit has said that it is "the narrowest market which is wide enough so that products from adjacent areas cannot compete on substantial parity with those included in the market."[26]  Thus, "the geographic market is not comprised of the region in which the seller attempts to sell its product, but rather is comprised of the area where his customers would look to buy such a product."[27]

### D.    Evidence Of Relevant Geographic Market.

When proof of monopoly power requires definition of the relevant geographic market, the most common metric is market share[28]—the extent of a competitor's penetration into the alleged geographic market.  In the Tenth Circuit, a 60% market share would be sufficient to create a presumption of market power, even if market share alone

---

[23]    *Christy Sports,* 555 F.3d at 1198, *supra* footnote 1.

[24]    *Telecor Commc'ns, Inc. v. Sw. Bell Tel. Co.,* 305 F.3d 1124, 1131 (10th Cir. 2002), ("There is no subject in antitrust law more confusing than market definition.  One reason is that the concept…is deliberately an attempt to oversimplify…the very complex economic interactions between a number of differently situated buyers and sellers, each of whom in reality has different costs, needs, and substitutes").

[25]    *United States v. Philadelphia Nat'l. Bank*, 374 U.S. 321, 359 (1963); *Rebel Oil Co. v. Atl. Richfield Co.,*51 F.2d 1421, 1434 (9th Cir. 1993).

[26]    *Westman,* 796 F.2d at 1222.

[27]    *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1027 (10th Cir 2002) (citing *Tunis Bros. Co. v. Ford Motor Co.,* 952 F.2d 715, 726 (3rd Cir.1991)).  *See also Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.,* 924 F.2d 1484, 1490 (9th Cir.1991) (holding where plaintiff company competes does not define the relevant geographic market).

[28]    *Reazin*, 899 F.2d at 968.

is not enough.[29]   Here, Plaintiffs allege that the relevant market for physical therapy is Eagle County and that Vail Health maintains an 80% market share of that market when measured in terms of revenue and a somewhat lesser share if measured by the number of physical therapists it employs.   Vail Health has declined to reveal what it contends should be the correct geographic market, but it may include not only Eagle County, but also Summit and perhaps even Garfield Counties.   If so, then Vail Health's market share might decrease, which explains the parties' contest over evidence that defines the market.

The Tenth Circuit has held that other forms of evidence are relevant in defining geographic market, such as "[p]rice data and such corroborative factors as transportation costs, delivery limitations, customer convenience and preference, and the location and facilities of other producers and distributors."[30]   The relationship between cost and geographic market lies in the ineluctable economic principle that in a functioning market economy, cost is an essential determinant of price and the output of sellers.   For example, if labor costs were 30% lower in Glenwood Springs than in Vail, in a competitive market, economic principles would predict that price would be lower in Glenwood Springs.   And if Glenwood Springs and Vail were both within a correctly defined geographic market and the substitutable good or service was sufficiently elastic, economists would expect consumers to travel from Vail to Glenwood Springs to obtain the lower price.   But if consumers do not travel to capture the lower price, then the defined geographic market may be too large.   Assuming a correct definition, however, these hypothetical facts would

---

[29]    *Id.* at 969-70 (market share of 47% and 62% was sufficient).

[30]    *Lantec,* 306 F.3d at 1027 (citing *T. Harris Young & Assocs., Inc. v. Marquette Elecs., Inc.,* 931 F.2d 816, 823 (11th Cir.1991)).   *See also In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig.,* No. 09-ML-2048-C, 2011 WL 6826813, at *10 (W.D. Okla., Dec. 28, 2011) (citing *Lantec,* 306 F.3d at 1027)).

suggest that the seller enjoyed a certain amount of market or monopoly power.  The costs of Vail Health and its competitors, therefore, are relevant to the price paid, and thus in defining the geographic market.

In healthcare antitrust cases, courts sometimes use patient "in-flow" and "out-flow" data to determine whether a firm could exercise monopoly power in a particular geographic market.[31]   Relevant evidence includes patient addresses and the medical procedures performed, from which it can be determined how many patients residing within the proposed geographic market were willing to travel outside the proposed market (and how far) to receive particular medical care at a lower price ("out-flow").  *Vicé versa*, the fact finder would want to know how many patients outside the proposed geographic market were willing to travel to receive treatment in that market for a particular medical procedure even if at a higher price ("in-flow").  Wrapped in this analysis is whether the evidence shows that the medical service is price inelastic and thus not a primary determinative of patient preference.  If that were so, economists would say that the extent of the inelasticity would be evidence that a firm could charge monopolistic prices higher than would otherwise be anticipated in a functioning competitive market.[32]  The extent of price elasticity on the demand for a medical service, therefore, is a measure of a firm's monopoly power within the geographic market.

These economic factors may also implicate health insurers regarding their choices of medical providers needed for successful provider networks and the substitutability of

---

[31]     *California v. Sutter Health Sys.*, 84 F.Supp.2d 1057, 1072 (N.D. Cal. 2002).

[32]     David N. Hyman, *Microeconomics* 144 (4th ed. 1997); Fed. Trade Comm'n & U.S. Dep't of Justice, *Improving Health Care: A Dose of Competition*, Ch. 4 at 4-21 (2004). *See also* ABA Section of Antitrust Law, *Market Definition in Antitrust: Theory and Case Studies* 282-89 (2012) (discussing definition of hospital geographic markets).

different medical providers, distances between them, and travel time. In choosing hospitals to include in their networks, health plans must consider their members' hospital preferences, as well as the hospitals their members would choose if members' preferred hospitals were not included in the network. In *Evanston Northwestern Healthcare Corp.*, the Federal Trade Commission ("FTC") found that health-plan "demand for hospital services is partially a derived demand based on patient preference, and the percentage of patients in a given area who use a hospital can, in certain circumstances, provide some rough indication of the [health-plan] preference when they form a network." [33] Here, Plaintiffs are entitled to information where Vail Health's physical therapy patients come from geographically, such as Summit or Garfield Counties (as examples), and of course Eagle County. The same for how many physical therapy patients come from out-of-state or from foreign countries. This information will likely provide relevant evidence as to how patients' preferences for physical therapy are driven, and to what extent are they driven by convenience and to what extent by price. If the preferences are not influenced by price (*i.e.*, are inelastic), that would suggest that monopolistic forces are in play in the market.

As noted above, the Tenth Circuit considers price to be a significant factor in defining a relevant geographic market.[34] A common method employed by courts to measure the effect of price on the definition of the relevant geographic market is the hypothetical monopolist test. Under the *Horizontal Merger Guidelines* issued by the U.S. Department of Justice's Antitrust Division and the FTC, if a hypothetical monopolist could impose a small but significant nontransitory increase in price ("SSNIP") in the proposed

---

[33]    144 F.T.C. 1, 500-01, 2007-2 Trade Cas. (CCH) ¶ 75,814, 2007 WL 2286195 (2007).
[34]    *Lantec*, 306 F.3d at 1027.

market, the market is properly defined.[35]  But if consumers would respond to a SSNIP by purchasing the product from outside the proposed market, thereby making the SSNIP unprofitable, the proposed market definition is too narrow.[36]  To consider the commercial realities of the relevant markets, the Third Circuit has held that this elasticity analysis involves insurer price sensitivity, as well as the sensitivity of the patient, which is why Vail Health must also produce its healthcare payor claim and reimbursement information.[37]

## II.   VAIL HEALTH'S INADEQUATE DISCOVERY RESPONSES.

**Interrogatory No. 9** seeks Vail Health to describe its "relevant geographic market" and identify by bates number the documents supporting or refuting its contention.[38] Plaintiffs assert that the relevant geographic market is the Vail Valley—from East Vail to Gypsum, which is due in part to the natural geographic features of Vail Pass and Glenwood Canyon.[39]   In Vail Health's 2013 Community Health Needs Assessment ("CHNA")[40]—a publicly-available document on Vail Health's website[41] that it has not produced[42]—Vail Health confirms what Plaintiffs state—that is, that the geographic market "is largely determined by local geography.  The primary campus sits to the west of the Vail Pass…Mountainous terrain exists throughout Eagle County…To this day travel within Eagle County remains challenging in the winter months, as snow and ice related events can significantly slow or restrict driving.  It is not uncommon for portions of I-70 to

---

[35]    *DOJ Merger Guidelines*, § 4, at 7–8; *F.T.C. v. Penn State Hershey Med. Center*, 838 F.3d 327, 338 (3d Cir. 2016).
[36]    *Id.*
[37]    *Id. at* 342-43.
[38]    Ex. 15 at Interrog. No. 9 [Vail Health's Resp. to 2d Set of Discovery]. .
[39]    Am. Compl. ¶¶ 34-42.
[40]    Ex. 15 at 17 [Vail Health's Resp. to 2d Set of Discovery]..
[41]    Ex. 16 [2013 CHNA excerpts].
[42]    Ex. 10 at 2 of chart.  *See also* Ex. 17 at 4 [Vail Health's Initial Disclosure] (stating CHNAs would be produced).

be closed following moderate to severe weather events….For these reasons, [Vail Health] serves primarily Eagle County residents and guests along with providing acute care services to travelers passing through the county."[43]   Similarly, Vail Health's 2016 Community Health Plan also identifies Eagle County as its service market—another publicly-available document on Vail Health's website that it will not produce.[44]  Vail Health has also not produced the 2016 CHNA report, which is identified on Vail Health's website but is no longer available there.[45]   And the 2019 CHNA report, which Vail Health has produced, states that the 2019 report builds on the 2013 and 2016 reports,[46] yet Vail Health has not produced the 2013 or 2016 CHNAs, likely because they support Plaintiffs.

Instead, Vail Health states in its answer to Interrogatory No. 9 that Plaintiffs' market (the Vail Valley) is too narrow.[47] Vail Health does not identify what it contends to be the relevant geographic market, nor identifies any documents supporting or refuting its position.  Instead, it asserts that "[t]he reasons that Plaintiffs' proposed geographic market is unduly narrow include, **but are not limited to**: (1) patients' willingness to travel to providers outside of the Vail Valley for physical therapy services, such as those in Glenwood Springs, Frisco/Dillon/Silverthorne area," travel services, and remote physical therapy and at-home treatments.[48]  Vail Health admits it did not answer this interrogatory when it states that it "has never defined and is not required to define any relevant geographic market.  Plaintiffs' alleged geographic market is limited to the Vail Valley;

---

[43]   Ex. 16 at 6 [2013 CHNA excerpts].
[44]   Ex. 18 [2016 CHIP] (identifying Eagle County as service area); Ex. 10 at 2 of chart.
[45]   Ex. 19 [Vail Health website].
[46]   Ex. 20 [2019 CHNA excerpts].
[47]   Ex. 15 at 17 [Answer to Interrog. No. 9].
[48]   *Id.* at 17-18 (emphasis added).

therefore that is the relevant scope of discovery."[49]  But Plaintiffs are entitled to know Vail Health's what evidence, if any, Vail Health intends to present to rebut Plaintiffs' position. Vail Health should be required to answer Interrogatory No. 9, identify the geographic market it claims is relevant, and identify the documents that support or refute its position.

**Request No. 5** seeks those documents related to Vail Health's contention as to the "relevant geographic market."[50] Vail Health has not produced any studies or analyses related to the purported geographic markets referenced in Interrogatory No. 9 despite Vail Health's expansion into Frisco/Dillon/Silverthorne (Summit County), as well as into Basalt,[51] which is located, in part, in Eagle County.  In response to a Rule 45 subpoena, The Steadman Clinic produced presentations to Vail Health's Steering Committee by the Hammes Group relating to Vail Health's expansion into Summit County and Basalt.[52] The PowerPoint includes analyses of physical therapy and market share, but Vail Health has not produced any Hammes Group documents, including communications, reports, or the final report presented to the Vail Health Board, as well as any other Board documents.[53]

Vail Health also previously conducted some type of geographic analysis, which is reflected in a PowerPoint, "VVMC Strategic Planning 2016."  A number of slides analyze orthopedic and physical therapy customers, market share based on location and Zip Code, and migration of certain patients to other providers.[54]  Vail Health has not produced

---

49    Ex. 10 at 4 of chart.
50    Ex. 15 at Request No. 5 [Vail Health's Resp. to 2d Set of Discovery].
51    Ex. 20 at 2 [article] discussing physical therapy in Dillon); Ex. 21 at 2-4 [article] (Vail Health CEO at Basalt groundbreaking; discussing expansion and physical therapy).
52    Ex. 22 [Hammes PowerPoint] (identifying multiple meetings and discussions).
53    *Id.* at Steadman-0002833.  This information is also relevant to Request Nos. 7-8, which will be addressed in a separate motion.
54    Ex. 23 at VH_Fed_0000791-801 [2016 PowerPoint].

the underlying analyses or data for those slides even though relevant to geographic market.  The same presentation also refers to a 2013 Deloitte study[55] on geographic expansion, which has not been produced.  Vail Health should be ordered to produce the presentations' underlying data, as well other-related documents and communications.

In 2018, Vail Health also hired an outside vendor, One Boston Consulting Group, who conducted an analysis of service-line rollup and other data in Summit and Eagle Counties.[56]  Other than the email, Vail Health has not produced One Boston's analysis of Vail Health competitors, although one is referenced in the email.[57]  Nor has Vail Health produced any other documents related to One Boston's consulting work, including other communications and analyses, and it should be ordered to do so.

**Request No. 17** seeks patient information, including demographic information for each patient, insurer, referring and primary physicians, diagnoses code, location of treatment and dates of treatment, and amounts billed and paid for those services.[58]  Vail Health produced one document for the month of November 2019 that shows that this information is available in Cerner,[59]  Vail Health's medical record system.  Although the November 2019 report does not include patient addresses, we know that Vail Health must maintain this information, by law, for 10 years.[60]  And it recently used its patient contact information to provide HIPAA breach notices to patients for physical therapy services rendered in 2009, so Vail Health has this information.  Other than the one month of data,

---

[55]    *Id.* at VH_Fed00000852.  The Deloitte Study is also relevant to Request No. 25 seeking strategies related to competition.
[56]    Ex. 24 [One Boston].
[57]    *Id.* at VH_Fed_0001430.
[58]    Ex. 15 at Request No. 17 [Vail Health's Resp. to 2d Set of Discovery].
[59]    Ex. 25 [Nov. 2019 patient data].
[60]    6 Colo. Code Reg. 1011-1, chap. 4 § 81.02(2).

Vail Health has not produced the requested patient data here or in the state court action.[61] Further, the HIPAA Qualified Protective Order issued in this action protects patient information, so there can be no issue in producing this information on the basis of privacy concerns.  Vail Health should be ordered to produce its patient data.

**Request No. 25** seeks information related to competitors of Vail Health, including any plans or strategies.[62]  The 2013 Deloitte report above, which addresses geographic expansion, falls within this request.  In a 2017 PowerPoint, apparently presented to the Vail Health Finance Committee, the final of which has not been produced or the Board minutes,[63] Howard Head identified its competitors, including their employee numbers:[64]

It took some analysis to create the list, but Vail Health has not produced documents or emails about the list, so Plaintiffs do not know who created it or what was relied upon.

---

[61]   Vail Health produced limited patient information for 40 patients in the state court action but that *predated* November 1, 2012.
[62]   Ex. 15 at Request No. 25 [Vail Health's Resp. to 2d Set of Discovery].
[63]   *See* Ex. 14 at Request No. 15 [Pls.' 2d Set of Discovery].
[64]   Ex. 26 at VH_Fed0001518 [2017 PowerPoint].

In 2018, a draft PowerPoint presentation analyzes patient demographics[65]—the final of which has not been produced, nor does it appear that Plaintiffs have all the versions either.  Nor do Plaintiffs know who this was prepared for or presented to. Moreover, the presentation analyzes Howard Head patient origin,[66] but the underlying data and information to create the pie charts have not been produced.  Vail Health should be ordered to produce the final version, any other drafts, communications identifying who this was presented to and when, and the underlying data relied upon.  The presentation also mentions the strategy of "roll[ing] up existing clinics to grow market share," but no such documents were produced, including Vail Health's "rolling up" certain physical therapists from Axis that apparently resulted in some type of settlement with Axis.

**Interrogatory No. 24** seeks information about competitors for physical therapy services, including the name, address, and telephone number of each competitor and any plans or strategies Vail Health considered or developed.[67]  Other than identifying certain competitor names, Vail Health has not fully answered this interrogatory.  Vail Health identified different competitors in the 2016 and 2017 PowerPoint presentations[68] but now asserts that those it "considered to be competitors" from December 2015 to include:  "Axis Sports Medicine, Panorama Summit Physical Therapy, Jointworx Physical Therapy, Vail Integrative Medical Group, Avalanche Physical Therapy, Vail Physical Therapy, Valley View Physical Therapy, and many other smaller physical therapy practices."[69]  Many have

---

[65]     Ex. 27 [2018 PowerPoint].
[66]     *Id.* at VH_Fed_00001442.
[67]     Ex. 15 at Interrog. No. 24 [Vail Health's Resp. to 2d Set of Discovery].
[68]     Ex. 23 at VH_Fed0000833 [2016 PowerPoint]; Ex. 26 at VH_Fed0001518 [2017 PowerPoint].
[69]     Ex. 15 at Interrog. No. 24.

offices in Eagle County, Summit County, Garfield County, and the Denver metropolitan area.  Vail Health should be required to identify each competitor, including the "many other smaller physical therapy practices," which would include Sports Rehab, and identify each location that Vail Health contends was or is a competitor for the relevant time period.

## III.   PLAINTIFFS ARE ENTITLED TO AN AWARD OF ATTORNEY'S FEES.

Rule 37(a)(5) provides that if a party moving to compel discovery is successful, the court "must" award the moving party its reasonable attorney fees.  But the court "must not" order this payment if: (i) the motion was filed without a good faith effort to obtain the discovery; (ii) the opposing party's response or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.  Here, Plaintiffs repeatedly made a good faith effort to resolve this discovery dispute through the informal discovery dispute process, numerous communications, and repeated requests for conferrals.

In contrast, Vail Health's refusal to confer or produce basic, and unquestionably relevant, patient information that goes to patient-flow data (and pricing) is not in any way justified.  It is like saying the principles of relevant markets articulated by the Supreme Court in *Grinnell*[70] are not controlling, or that evidence of relevant geographic markets articulated by the Tenth Circuit in *Lantec*[71] does not apply.  An award of attorney's fees is therefore warranted here.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion to compel in its entirety.

---

[70]   384 U.S. at 570-71.  *Grinnell* has been cited as controlling law in 1,262 cases as of this writing and cited by 3,677 law review and other scholarly articles.
[71]   *Lantec,* 306 F.3d at 1027.

Dated:  August 5, 2021                 _s/Alan L. Kildow_____
                                       Alan L. Kildow, MN# 0143133
                                       790 Potato Patch Drive
                                       Vail, CO 81657
                                       Telephone: (970) 390-6675
                                       E-mail:  alkildow@aol.com

                                       Jesse Wiens, Colo. #33903
                                       Fahrenholtz & Wiens LLC
                                       100 West Beaver Creek Boulevard
                                       Suite 236
                                       Avon, CO 81620
                                       Telephone: (970) 949-6500
                                       E-mail:  fwlawyers@gmail.com

                                       Attorneys for Plaintiffs Lindsay Winninger and
                                       Sports Rehab Consulting LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 5, 2021, I served a true and correct copy of Plaintiffs' Rule 37 Motion to Compel #1 Relating to Relevant Geographic Market, including exhibits, some of which are filed as restricted under the protective order issued in this case, via the Court's ECF system on:

Shannon Stevenson
Janet A. Savage
Jackie Roeder
Daniel Richards
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO  80202

Counsel for Defendant

_s/ Alan L. Kildow_____
Alan L. Kildow