IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado Limited Liability Company, and
LINDSAY WINNINGER, an individual,

    Plaintiffs,

v.

VAIL CLINIC, INC., d/b/a VAIL HEALTH, a Colorado nonprofit corporation,

    Defendant.

## DEFENDANT VAIL HEALTH'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL #1 RELATING TO RELEVANT GEOGRAPHIC MARKET

Defendant Vail Clinic, Inc., d/b/a Vail Health ("Vail Health") submits this response to Plaintiffs Sports Rehab Consulting LLC's and Lindsay Winninger's (collectively, "Plaintiffs") Motion to Compel #1 Relating to Relevant Geographic Market (Dkt. 127) ("Motion").

### PRELIMINARY STATEMENT

As this Court is aware, the parties have been litigating the underlying facts at issue here for more than four years in the Eagle County state court action. (Dkt. 113, at 4.) The scheduling order in place in this matter provides that "the parties have agreed that discovery conducted in the State Court Action may be used in this matter and should not be duplicated." (Dkt. 71 at 19.) In the State Court analogue, the parties produced more than 65,000 pages of documents regarding the same facts at issue in this matter. (Dkt. 113 at 4-5.) In response to Plaintiffs' requests for production of documents in this matter, Vail Health conducted an extensive search of its documents and produced approximately 6,900 pages of additional documents related to the

4841388.2

antitrust issues that were not at issue in the state case. Vail Health also provided detailed responses to Plaintiffs' 164 Interrogatories and Requests for Admission. Discovery is ongoing, with discovery scheduled to close on November 1, 2021. (Dkt. 126.)

Notwithstanding this background, Plaintiffs claim that Vail Health should be compelled to produce additional documents and provide further responses to written discovery. In their Motion, Plaintiffs argue that Vail Health should be compelled to produce documents falling into three broad categories: documents and information relating to the relevant geographic market, documents and information relating to Vail Health patients, and documents and information relating to Vail Health competitors. Vail Health has appropriately responded to Plaintiffs' written discovery requests and produced responsive documents located through a reasonable search concerning all three categories. Plaintiffs' Motion should be denied.

## ARGUMENT

### I. Vail Health has Produced Documents and Information Relating to the Relevant Geographic Market.

Plaintiffs seek additional discovery concerning two discovery requests related to the relevant geographic market: Interrogatory No. 9 and Request for Production ("RFP") No. 5. Vail Health has fulfilled its discovery obligations with respect to both discovery requests. Vail Health has produced documents relating to the proposed geographic market, examples of which are set forth at Exhibit 1. In addition, Vail Health has produced numerous documents relating to competitors which necessarily include information relating to the geographic market at issue in this case. (Exhibit 2.) There is significant overlap between exhibits relating to competitors and the geographic market.

As a preliminary matter, in an antitrust case, the burden lies with the Plaintiff to prove the existence of any alleged geographic or product market. Companies do not typically create an analysis of an underlying geographic or product market in the ordinary course of business, because a proposed geographic market is artificially created for the purposes of antitrust analysis. To prove the existence of their alleged geographic market, the majority of courts to have considered this issue have concluded that a Plaintiff must rely on expert opinion. *See e.g., Am. Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569 (11th Cir. 1985); *Drs. Steuer & Latham, P.A. v. Nat'l Med. Enters.*, 672 F.Supp. 1489 (D.S.C. 1987). Instead of obtaining an expert opinion, however, Plaintiffs seek to circumvent their obligations and force Vail Health to prove their case. The Court should reject this ploy.

In Interrogatory No. 9, Plaintiffs request that Vail Health "[i]dentify and describe in detail Vail Health's contention as to the correct 'relevant geographic market' underlying the Complaint for antitrust violations and identify all documents by bates number that support or refute those contentions." (Dkt. 128 at 18.) Vail Health's response to Interrogatory No. 9 describes in detail Vail Health's contentions regarding the relevant geographic market, stating in relevant part:

> Vail Health contends that Plaintiffs' proposed geographic market of the Vail Valley from East Vail to Gypsum, Colorado (Am. Compl. ¶ 35) is unduly narrow. The reasons that Plaintiffs' proposed geographic market is unduly narrow include, but are not limited to: (1) patients' willingness to travel to providers outside of the Vail Valley for physical therapy services, such as those in Glenwood Springs and the Frisco/Dillon/Silverthorne area; (2) the willingness of physical therapists, such as those employed by Sports Rehab Consulting LLC ("SRC"), to travel to treat residents of or visitors to the Vail Valley; and (3) the availability of remote physical therapy and at-home treatments as an alternative to in-person physical therapy.

(Dkt. 128 at 18-19.) Vail Health contends that it does not have market power with respect to physical therapy services in *any* geographic market. Thus, the "correct 'relevant geographic market' underlying the Complaint for antitrust violations" referenced in Interrogatory No. 9 simply does not exist. Nonetheless, Vail Health's response to Interrogatory No. 9 accurately "identif[ies] and describe[s]" Vail Health's position regarding Plaintiffs' alleged geographic market, including by describing the reasons Plaintiffs' proposed geographic market is unduly narrow.

As to Plaintiffs' request in Interrogatory No. 9 that Vail Health identify "all documents by bates number that support or refute" Vail Health's contention regarding the alleged geographic market, Vail Health properly objected to identifying all such documents. *See, e.g.*, *Convolve, Inc. v. Compaq Comput. Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004) (holding that a party need not identify in an interrogatory response all documents supporting a contention because "a contention interrogatory is not simply a vehicle for requiring an adversary to regurgitate all factual information obtained in discovery" (internal quotation marks omitted)); *Kelly v. Advanta Corp.*, No. 02-250, 2003 U.S. Dist. LEXIS 30499, at *26 (D.N.M. Mar. 21, 2003) ("When an interrogatory or document request seeks 'any and all' or 'each and every' discussion or document, it is unreasonable on its face."). Vail Health has agreed to produce, and has produced as located through a reasonable search, *inter alia*, "documents that support its contention that the geographic and product/service markets alleged in Plaintiffs' Amended Complaint are not plausible" (Ex. 3 at 6) and documents reflecting "evaluation of which physical therapy or other service providers Vail Health considered and/or does consider to be competitors of Howard Head Sports Medicine's physical therapy services" (*Id.*). Plaintiffs are themselves

capable of assessing which of the documents Vail Health produced bear on the geographic market alleged in Plaintiffs' complaint. Plaintiffs' request that Vail Health identify all documents that "support or refute" (Dkt. 127 at 11) the existence of Plaintiffs' alleged geographic market is nothing but an effort to drive up the costs of discovery by placing burdensome discovery obligations on Vail Health after more than four years of discovery. Plaintiffs' contention that Vail Health's response to Interrogatory No. 9 is inadequate is baseless.

Plaintiffs next argue that Vail Health's document production in response to RFP No. 5 is inadequate. (Dkt. 127 at 11-12.) Plaintiffs' argument is baseless. RFP No. 5 requests the production of "[a]ll documents concerning *Vail Health's contention* as to the correct 'relevant geographic market' and 'relevant product or service market' for providing physical therapy services underlying the Complaint for antitrust violations." (Ex. 3 at 5 (emphasis added).) As noted above, there is no product or service market in which Vail Health has market power with respect to physical therapy services, so there is no "correct" market "underlying the Complaint for antitrust violations." Nonetheless, in response to RFP No. 5, Vail Health agreed to produce "documents that support its contention that the geographic and product/service markets alleged in Plaintiffs' Amended Complaint are not plausible." (*Id*., at 6.) Vail Health has conducted a reasonable search and has produced to Plaintiffs such documents. Attached as Exhibit 1 is a compilation of documents Vail Health has produced that may bear on the implausibility of Plaintiffs' proposed market definition. Attached as Exhibit 2 is a compilation of documents produced by Vail Health discussing competitors of Howard Head, including those outside of Plaintiffs' proposed Vail Valley physical therapy market. There can be no doubt that Vail Health has produced documents responsive to RFP No. 5.

Plaintiffs, however, identify certain other documents purportedly responsive to RFP No. 5 that they claim Vail Health should have produced. (Dkt. 127 at 11-12.) Plaintiffs' contentions are baseless.

Plaintiffs contend that Vail Health should have produced documents, including documents concerning an analysis performed by Hammes Group, related to "Vail Health's expansion into Frisco/Dillon/Silverthorne (Summit County), as well as into Basalt." (*Id.* at 11.) Documents related to Howard Head's physical therapy services outside of the Vail Valley have no bearing on Plaintiffs' claims, which specifically allege that Vail Health has a monopoly on the provision of physical therapy services *in the Vail Valley*. (Am. Compl., Dkt. 26 ¶ 35 (defining the relevant geographic market as the Vail Valley, which "lies in the somewhat narrow Vail Valley stretching from East Vail to Gypsum, Colorado").) Plaintiffs cannot both (1) narrowly define the alleged geographic and product markets as being limited to physical therapy services in the Vail Valley to make Vail Health appear that it has market power in an artificially defined market and yet (2) seek discovery outside that narrowly defined market merely to increase the discovery burdens on Vail Health.

Plaintiffs briefly suggest that Basalt is within their alleged geographic market. (Dkt. 127 at 11.) Plaintiffs' complaint belies that contention. Plaintiffs define the alleged geographic market as the "narrow Vail Valley stretching from East Vail to Gypsum, Colorado." (Dkt. 26 ¶ 35.) They further state that "[t]he Vail Valley market has the natural geographic features of Vail Pass (10,577 feet above sea level) on the East end, *Glenwood Canyon on the West end*, and mountains to the South and North." (*Id.* (emphasis added).) They also assert that the "challenges of navigating . . . Glenwood Canyon during the roughly five-month winter or during inclement

weather are simply too difficult to render . . . . Glenwood Springs to the West as viable providers of physical therapy services." (*Id.* ¶ 38.) To drive from Vail to Basalt, one must drive *through Glenwood Canyon* (the purported impassable western boundary of Plaintiffs' proposed geographic market) and *past* Glenwood Springs. Plaintiffs' argument that Basalt is within their alleged geographic market is asserted in bad faith in an effort to subject Vail Health to undue discovery that has no bearing on Plaintiffs' claims.

Plaintiffs acknowledge that Vail Health has produced an analysis of the place of residence of in-state and out-of-state Howard Head customers. (*See* Dkt. 127 at 11-12; Dkt. 128-2 at 23-24.) Plaintiffs, however, request production of "the underlying analyses or data for those slides." (Dkt. 127 at 12.) As described in the next section, Vail Health will produce, to the extent reasonably accessible, data regarding the zip code of each patient treated by Howard Head in the Vail Valley for the pertinent time period. Such data will allow Plaintiffs to perform similar analyses of the place of residence of patients treated at Howard Head in the Vail Valley.

Plaintiffs also request that Vail Health produce a 2013 Deloitte study referenced in the VVMC Strategic Planning 2016 PowerPoint presentation. Vail Health has not located a copy of the 2013 Deloitte study, which appears to have been prepared almost a decade ago, through its search for responsive documents. However, there is no reason to believe that the 2013 Deloitte study related specifically to Howard Head or physical therapy services. The vast majority of the VVMC Strategic Planning 2016 presentation related to Vail Health (then Vail Valley Medical Center) as a whole—not its Howard Head physical therapy practice. Vail Health produced the VVMC Strategic Planning 2016 PowerPoint presentation because it included an analysis of where *physical therapy* patients come from. Physical therapy is but one of many Vail Health

service lines. The allegations in Plaintiffs' complaint and the language of RFP No. 5 are specifically limited to "physical therapy services." Plaintiffs are not entitled to all analyses of Vail Health's market share or strategic plans if such plans and analyses have no relation to physical therapy services or Howard Head. *See*, *e.g.*, *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Pr.*, 2011 LEXIS 80565, *14 (M.D. Pa. Jul. 25, 2011) ("[W]holesale requests for production of financial information related to product lines…that are not alleged to be infringing would be overly-broad and unduly burdensome"); *Certain Syndicate Subscribers v. Lasko Prods.*, 2009 LEXIS 148164, *12 (D.N.M. Jul. 29, 2009) (discovery into fans not at issue denied). . If Vail Health were required to produce all market share analyses or strategic plans for *all service lines in the entire hospital system*, discovery in this case would spiral out of control.

Plaintiffs also acknowledge that Vail Health produced communications reflecting a market share analysis related to Howard Head performed by Boston Consulting Group in 2018. (Dkt. 127 at 12.) They suggest, however, that Vail Health has not produced "One Boston's analysis of Vail Health's competitors." (*Id.*) That is incorrect. (*See* Ex. 4, VH_Fed_00000244 - 245 (PowerPoint slides reflecting "Rehab vs. Total Joint: market share breakdown by county using facility claims in county" and "Rehab vs. Total Joint: market share by geozip").) As to Plaintiffs' contention that there may be unspecified "other" responsive documents related to One Boston's consulting work, Vail Health has not identified such further documents in its search for responsive documents.

The Court should reject Plaintiffs' baseless contention that Vail Health's discovery responses and production related to the geographic market are inadequate.

**II.     Vail Health has Produced, or Will Produce, Documents and Information Relating to Patient Location and Charges.**

Plaintiffs next claim that Vail Health has failed to produce documents responsive to RFP No. 17, which requests "[a]ll data identifying all physical therapy patients treated by RPC-Vail or Vail Health from November 1, 2004 to the present, including demographic information for each patient, insurance information (including insurer name, governmental entity such as Medicare Part A or Part B, self-pay etc.), referring and primary physicians, diagnoses based on an ICD9 Code, at what locations the patients were treated and when, and the amounts paid for any services billed for each patient." (Dkt. 128 at 43.)

Vail Health has already produced extensive information related to Vail Health's charges for physical therapy services. Vail Health has agreed to produce and has already produced "financial statements, projections, and financial analyses for Howard Head Sports Medicine" and "documents . . . reflecting the prices charged and revenues realized for Howard Head Sports Medicine's physical therapy services." (Dkt. No. 102 at 8). Further, Vail Health has produced "chargemasters," reflecting the prices Vail Health charges for each individual physical therapy procedure, as well as contracts with private payers that provide discounts from chargemaster prices. (Dkt. 102 at 8.) In short, Vail Health has already produced the bulk of the information that Plaintiffs now seek to compel.

Further, in response to RFP No. 17, Vail Health stated that it is "willing to meet and confer with Plaintiffs to determine whether it can produce data responsive to a narrowed version of Request for Production No. 17 that protects patient privacy by providing de-identified and/or aggregate information, does not impose an undue burden, and relates to Plaintiffs' claims in this litigation." (Dkt. 128 at 43.) Given the extraordinarily large number of purported discovery

disputes Plaintiffs have raised, the parties have not yet conferred in detail regarding whether Vail Health can produce a subset of the data Plaintiffs requested that would be acceptable to all parties.

However, Vail Health will produce data regarding patient treatment and location comprising a subset of the data requested by Plaintiffs, and its personnel are actively working to pull such data. Specifically, Vail Health will produce the following data regarding private payer physical therapy transactions from Howard Head Vail Valley locations to the extent such data remains reasonably accessible:

- A unique patient identification number
- Patient zip code
- Service date
- A unique encounter identification number
- Chargemaster number
- Chargemaster description
- Code identifying service (e.g., CPT/HCPCS/ICD9 code)
- Quantity of procedure provided (i.e., reflecting if the patient received multiple of the same procedure)
- Charge for procedure
- Payer / insurance company
- Facility where service provided
- Reimbursement to Vail Health for each encounter (or other unit on which reimbursement is tracked)
- Primary or referring physician (if available)

Pulling this data will require extensive work by the client, as Vail Health personnel will have to pull data from multiple electronic medical records systems that have been in place since November 2012. Vail Health will produce this data as soon as possible and well in advance of the November 1, 2021 discovery cutoff.

Plaintiffs' request for data regarding patient identities is unwarranted. Vail Health will produce data sufficient to identify the zip code (*i.e.*, the residence location) of each patient covered by the data produced. However, there is no reason Plaintiffs need identifying information such as names, addresses, social security numbers, or phone numbers of all patients Howard Head treated in the Vail Valley for a nearly decade-long period. While there is a protective order in place, producing such data for thousands of patients would create an unacceptable risk of a security breach.[1] Indeed, in the discovery dispute chart produced by Plaintiffs, they agreed "that the patient can be deidentified for each patient" and have conceded they are not seeking social security numbers or addresses for patients. (Dkt. 127 at 55). If Plaintiffs' counsel's electronic systems were breached, Vail Health could be forced to undergo yet another[2] costly and damaging breach response. 45 C.F.R. § 164.304; 45 C.F.R. § 164.308(a) (requiring a covered entity to implement policies to prevent and correct security violations). Before Vail Health produces large volumes of PHI to its partners, it performs a security audit to ensure that its partners' IT systems are sufficiently protected from intrusion. There is reason to doubt that Plaintiffs' counsel's IT systems are sufficiently secure to host large volumes of PHI,

---

[1] It is also important to note that the underlying facts in the Eagle County state court action involved Plaintiff Lindsay Winninger's theft of PHI from Vail Health. Vail Health should not be compelled to reward the same behavior that has resulted in years of costly litigation by providing Plaintiffs with yet more PHI.

[2] When Vail Health discovered that Plaintiff Lindsay Winninger downloaded more than 700 documents containing PHI from Vail Health's server, it was required by HIPAA to notify the public of the breach of patient privacy Ms. Winninger caused. Vail Health's motion for summary judgment seeking dismissal of Plaintiffs' remaining defamation and tortious interference claims based on Ms. Winninger's theft of patient files is fully briefed in the state case. (Ex. 5; Ex. 6.) Judge Granger has indicated that he intends to prioritize adjudication of Vail Health's summary judgment motion on Plaintiffs' remaining claims over all other briefing and motions. (Ex. 7.)

as they are both solo practitioners who use "aol.com" and "gmail.com" email addresses. Whatever the disputes between Vail Health and Plaintiffs, there is no reason to compromise the privacy of Vail Health's patients' PHI in furtherance of those disputes.

Additionally, there is no reason for the production of documents related to claims Vail Health submitted to Medicaid and Medicare. Plaintiffs allege that Vail Health's prices are supracompetitive. However, each similarly situated hospital is reimbursed exactly the same amount under Medicare and Medicaid—such identical reimbursement rates are by definition not supracompetitive. *See*, *e.g.*, 42 U.S.C. § 1396a (setting forth the requirements for a state Medicaid plan); *Wal-Mart Stores, Inc. v. Knickrehm*, 101 F.Supp.2d 749, 750-51 (E.D. Ark. 2000) (under The Medicaid Act, "[e]ach state determines what it will pay for services provided to Medicaid recipients so long as the payments are consistent with federal requirements. Payments are made directly by the state to those furnishing the services to Medicaid beneficiaries."); *Lefler v. United Healthcare of Utah*, 72 Fed. Appx. 818, 821 (10th Cir. 2003) ("Medicare pays the hospital a reduced fee set by government regulation and tied to a provider's reasonable cost."); *Urdinaran v. Aarons*, 115 F.Supp.2d 484, 489 (D.N.J. 2000) ("Because medical fees are largely dictated by health insurance companies, Medicaid, and Medicare, courts have looked also at other indicia of anticompetitiveness.").

Because Vail Health has already produced the majority of the information Plaintiffs now seek to compel and because Vail Health is in the process of producing de-identified PHI, Plaintiffs' Motion should be denied.

### III. Vail Health has Produced Documents and Information Relating to Competitors.

Plaintiffs contend that Vail Health should be required to produce information relating to competitors "of Vail Health"—notwithstanding the fact that Vail Health has agreed to produce and has already produced significant amounts of information relating to Howard Head competitors. Plaintiffs' argument suffers from the same flaw as their argument related to the geographic market: they seek the production of competitive analyses related to the entire Vail Health hospital system—not just Howard Head or physical therapy services. Vail Health has produced documents located through a reasonable search reflecting Vail Health's analyses of Howard Head competitors. For the Court's reference, Vail Health has attached examples of produced documents containing such analyses as Exhibit 2.

Plaintiffs also argue that Vail Health should be compelled to identify, in response to Interrogatory No. 24, every single competitor of Howard Head, including myriad "smaller physical therapy practices" and to provide the address and telephone number, along with any strategies Vail Health considered or developed, and to identify each location that Vail Health contends was a competitor. Vail Health's interrogatory responses provide a detailed discussion of Howard Head's competitors. For example, in its response to Interrogatory No. 10, Vail Health identified a detailed list of products and services that, depending on a broad range of circumstances, can be competitive with in-person physical therapy services: "injections, such as steroid injections; chiropractic care; remote physical therapy; physician-directed and/or self-guided physical therapy; acupuncture; massage; medication; surgical care; fitness classes, such as yoga and pilates; personal training and/or gym membership; aquatic therapy; at-home massage or percussive devices, such as Theragun; at-home compression devices, such as RecoveryAir; at-

home cryotherapy devices, such as Polar Products Active Ice; at-home electrical stimulation devices, such as PowerDot; and at-home fitness equipment." Vail Health further explained in its response to Interrogatory No. 24:

> Vail Health states that competitors of its physical therapy practice include all providers of the goods and services identified in Vail Health's response to Interrogatory No. 10. That likely constitutes at least hundreds of competitors. The identities and contact information of those competitors are publicly available and, as such, are equally available to Plaintiffs. To the extent that Vail Health has performed analyses of competitors of its physical therapy practice, Vail Health will produce such analyses as located through a reasonable search, to the extent not already produced. (See, e.g., VH_Fed_00000772.) Physical therapy providers with physical locations in Vail, Colorado, or surrounding communities that Vail Health has considered to be competitors include, but are not limited to, Axis Sports Medicine, Panorama Summit Physical Therapy, Jointworx Physical Therapy, Vail Integrative Medical Group, Avalanche Physical Therapy, Vail Physical Therapy, Ascent Physical Therapy, Valley View Physical Therapy, and many other smaller physical therapy practices.

(Dkt. 128, at 18-19, 38-40.) Vail Health's responses to Interrogatory Nos. 10 and 24 fully comply with its obligation to state its contention regarding products, services, and providers that compete with Howard Head's physical therapy services. Plaintiffs' request that Vail Health identify "each competitor"—information that is equally available to Plaintiffs—is unduly burdensome and improper. *Kelly*, 2003 U.S. Dist. LEXIS 30499, at *26 ("When an interrogatory or document request seeks 'any and all' or 'each and every' discussion or document, it is unreasonable on its face.").

### IV. Plaintiffs are not Entitled to an Award of Attorneys' Fees.

Finally, Plaintiffs contend that they are entitled to attorneys' fees because they "made a good faith effort to resolve this discovery dispute through the informal discovery dispute process, numerous communications, and repeated requests for conferrals." (Dkt. 127 at 15.) This is not so. By way of example, Plaintiffs have demanded information from Vail Health pursuant to

F.R.C.P. 26(a)(1) that Vail Health has explained does not support Vail Health's defenses, including the Community Health Needs Assessments that it now seeks to compel in the guise of geographic market data. (Dkt. 127 at 10, 106).

Further, as is set forth above, Vail Health has not refused to produce the information requested by the Plaintiffs. Vail Health has produced numerous documents relating to competitors and has agreed to produce and did produce numerous documents relating to Vail Health's contention that the Plaintiffs' geographic market is implausible. Vail Health is currently working to produce de-identified data related to patient information requested by Plaintiffs. That Plaintiffs are unsatisfied with this production does not mean that Vail Health has failed to comply with its obligations. In short, Plaintiffs are not entitled to their attorneys' fees in bringing this motion.

## CONCLUSION

As is set forth above, Vail Health has diligently worked to respond in good faith to Plaintiffs' burdensome discovery requests and has produced 6,900 pages of documents in response to these requests. Vail Health has produced numerous documents which tend to disprove Plaintiffs' unduly narrow geographic market, including providing the identities of competitors. In addition, Vail Health has agreed to produce de-identified patient information in a narrower format than Plaintiffs' demand. That Plaintiffs believe Vail Health should have more documents does not mean that these documents exist. Vail Health has complied in good faith with its discovery obligations, especially given the extensive discovery that has already occurred regarding the facts at issue in this litigation. The Court should deny Plaintiffs' Motion.

Respectfully submitted this 2nd day of September, 2021.

   *s/ Daniel A. Richards*
Shannon Wells Stevenson
Janet A. Savage
Jacqueline V. Roeder
Daniel A. Richards
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, Colorado, 80202
Telephone:  303.892.9400
Facsimile: 303.893.1379
Email:  shannon.stevenson@dgslaw.com
       janet.savage@dgslaw.com
       jackie.roeder@dgslaw.com
       daniel.richards@dgslaw.com

*Attorneys for Defendant VAIL CLINIC, INC., d/b/a VAIL HEALTH, a Colorado nonprofit corporation*

## CERTIFICATE OF SERVICE

  I hereby certify that a true and correct copy of the foregoing VAIL HEALTH'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL #1 RELATING TO RELEVANT GEOGRAPHIC MARKET was filed via CM/ECF on this 2nd day of September, 2021, which will forward notice to the following:

| | |
|---|---|
| Jesse Wiens | Alan L. Kildow |
| Fahrenholtz & Wiens LLC | 790 Potato Patch Drive |
| 100 West Beaver Creek Blvd., Suite 236 | Vail, Colorado 81657 |
| Avon, Colorado 81620 | Email: akildow@aol.com |
| Email: fwlawyers@gmail.com | |

               *s/ Sandra Abram*
               Sandra Abram