# EXHIBIT 6

| | |
|---|---|
| DISTRICT COURT, EAGLE COUNTY, COLORADO<br><br>Eagle County Justice Center<br>885 Chambers Avenue<br>Eagle, Colorado 81631 | DATE FILED: August 23, 2021 1:08 PM<br>FILING ID: D641665DD328E<br>CASE NUMBER: 2017CV30102 |
| **Plaintiffs:**<br>LINDSAY WINNINGER, an individual, and SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,<br><br>v.<br><br>**Defendants:**<br>DORIS KIRCHNER, an individual, and VAIL CLINIC, INC. D/B/A VAIL VALLEY MEDICAL CENTER, a Colorado nonprofit corporation, | ☐ COURT USE ONLY ☐ |
| **Counter-Plaintiff:**<br>VAIL CLINIC, INC. D/B/A VAIL VALLEY MEDICAL CENTER, a Colorado nonprofit corporation,<br><br>v.<br><br>**Counter-Defendants:**<br>LINDSAY WINNINGER, an individual, and SPORTS REHAB CONSULTING LLC, a Colorado limited liability company, | Case No. 2017CV030102<br><br>Division 3 |
| **Third-Party Plaintiff:**<br>VAIL CLINIC, INC. D/B/A VAIL VALLEY MEDICAL CENTER, a Colorado nonprofit corporation,<br><br>v.<br><br>**Third-Party Defendant:**<br>DAVID J. CIMINO, an individual. | |

4860745.1

Janet Savage, #11653
Jacqueline V. Roeder, #48046
Daniel A. Richards, #50457
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, Colorado 80202
Telephone:  303.892.9400
Facsimile:  303.893.1379
E-mail:       janet.savage@dgslaw.com
                   jackie.roeder@dgslaw.com
                   daniel.richards@dgslaw.com
*Attorneys for Defendant Doris Kirchner, Defendant, Counter-Plaintiff and Third-Party Plaintiff Vail Clinic, Inc. d/b/a Vail Health*

Daniel M. Reilly, #11468
Clare S. Pennington, #37896
John M. McHugh, #45456
FENNEMORE CRAIG P.C.
1700 Lincoln Street, Suite 2400
Denver, Colorado 80203
Telephone:     303.291.3200
Email:            dreilly@fennemorelaw.com
                      cpennington@fennemorelaw.com
                      jmchugh@fennemorelaw.com
*Attorneys for Defendant Doris Kirchner*

**[JUDGE GRANGER] DEFENDANTS' REVISED REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants Vail Clinic, Inc. ("Vail Health") and Doris Kirchner ("Defendants") submit this revised reply brief in support of their **August 25, 2020 Motion for Summary Judgment** on Plaintiffs' remaining claims—specifically defamation Counts I, II, III, IX, XI, XIX, XXI, XXII, and tortious interference Counts XXV, XXVI, and XXVII of Plaintiffs' First Amended Complaint ("Motion").[1]

## PRELIMINARY STATEMENT

The core flaw in Plaintiffs' opposition brief is that it seeks to replace the "substantial truth" standard that governs defamation claims with one that requires "literal truth." In Plaintiffs' view, a statement is defamatory unless it describes a wrongful act with 100% accuracy. In Plaintiffs' view, minor deviations—*e.g.*, what entity owned property stolen, the date of a crime, whether the actor had the subjective intent required for criminal prosecution—render the statement defamatory. If accepted, Plaintiffs' standard would chill necessary discussion of wrongful acts. If victims, potential victims or witnesses of crimes or civil wrongs were required to speak with the kind of precision Plaintiffs propose—at risk of being forced to defend themselves in a costly defamation trial and being held liable for damages—*they would not speak*. Victims would not inform those impacted by the wrong that it had occurred. Community members would remain ignorant of

---

[1] With the submission of this revised reply brief, briefing on the Motion is complete. Briefing and exhibits concerning the Motion consist of (1) Defendants' August 25, 2020 Motion for Summary Judgment ("Mot.") and exhibits thereto (including Appendices A and B, which Vail Health submitted *in camera* on August 25, 2020 and filed electronically per the Court's order between December 4 and 14, 2020); (2) Plaintiffs' June 21, 2021 Revised Opposition to Defendants' Motion for Summary Judgment ("Opp'n") (which references exhibits and declarations submitted in connection with Plaintiffs' prior opposition brief, dated September 29, 2020) and exhibits thereto; and (3) this August 20, 2021 Defendants' Revised Reply Brief in Support of Their Motion for Summary Judgment and exhibits thereto.

criminal activity afoot. Crimes or other serious wrongs might go unreported. Fortunately, the substantial truth doctrine, not Plaintiffs' invented standard, governs defamation claims. The substantial truth doctrine serves a critical role in ensuring wrongful acts can be discussed and investigated without undue restriction. That is particularly true in this case where it is undisputed that a serious breach of patient privacy occurred, and the allegedly offending statements were made in connection with investigating that breach.

Most of Plaintiffs' opposition brief and accompanying declarations are utterly irrelevant to this Motion. Whether documents *not* containing protected health information ("PHI") are trade secrets or confidential, or whether Lindsay Winninger ("Winninger") had authority to take them, has no bearing on the question for the Court on this Motion: whether Defendants' alleged statements regarding Winninger's theft of documents *containing PHI* are substantially true, and thus not defamatory. As shown in Defendants' opening brief, each of the remaining counts in Plaintiffs' complaint concern alleged statements by Defendants concerning Winninger's theft of *patient* files.

Plaintiffs' opposition brief confirms that the facts necessary to grant Defendants' Motion are undisputed. Plaintiffs admit that Winninger took more than 700 documents containing PHI from Howard Head. (Opp'n at 3 (admitting that Winninger downloaded 746 documents containing PHI); Winninger Decl. ¶ 89 (admitting, "certain files that I took included protected health information").) Plaintiffs admit that Winninger did not own the documents containing PHI that she took. (Opp'n at 15 ("medical records belong to the provider that created them" (internal

quotation marks omitted)).)[2]   And while Plaintiffs contend that Winninger was permitted to download certain of the documents among the more than 9,000 she downloaded from Vail Health's server, Plaintiffs proffer no evidence that Winninger had permission to take documents *containing PHI*.  (*See* Winninger Decl.)  In sum, **Plaintiffs admit that Winninger took PHI that did not belong to her without permission**.   That is what stealing is:  to take the property of another without permission or right.  Thus, the allegedly defamatory statements are substantially true, and not defamatory.  Nor can they be the basis for tortious interference claims.

Plaintiffs' arguments against summary judgment on the defamation claims are meritless.  First, neither the Colorado Constitution nor the cases Plaintiffs cite support Plaintiffs' argument that the question of substantial truth must be decided by a jury and cannot be decided on summary judgment.  Rather, controlling authority holds otherwise.  Second, Plaintiffs argue that Defendants must establish the elements of a statutory crime to obtain summary judgment on Plaintiffs' defamation claims, but that position is unsupported, as words in defamatory statements are generally assigned their ordinary meaning, rather than a technical, legal meaning.  Third, Plaintiffs argue that Defendants' alleged statements that Winninger stole patient files "from Vail Health" are defamatory because, they argue, Vail Health does not own the patient records at issue.  However, because Winninger concedes that she is not the owner of the PHI at issue, the alleged statements are substantially true regardless of who owned the PHI.  Fourth, even if Defendants were required to establish that Winninger committed a statutory theft crime, they can, since a Colorado statute

---

[2] Winninger does not claim an ownership interest in the documents at issue as a health care provider that created the records.  In fact, Winninger admits that she "did not even know or treat most of the individuals identified in those documents [containing PHI]."  (Winninger Decl. ¶ 89.)

specifically provides that copying medical records without authorization constitutes Theft of Medical Records, even if done unintentionally.  Fifth, Plaintiffs' proposed defamation standard should be rejected because it would unduly restrict discussion of wrongful acts.

With respect to Plaintiffs' three tortious interference claims, Plaintiffs fail to provide any response to the arguments in Defendants' Motion.  Thus, they have conceded those arguments.

In sum, Plaintiffs' opposition brief provides even further support for Defendants' Motion, and the Court should grant summary judgment for Defendants on Plaintiffs' remaining defamation and tortious interference claims.

## ARGUMENT

### I.  THE COURT SHOULD GRANT SUMMARY JUDGMENT FOR DEFENDANTS ON PLAINTIFFS' REMAINING DEFAMATION CLAIMS

#### A.    The Applicable Standard is "Substantial Truth" not "Literal Truth"

In their Opposition, Plaintiffs contend that the "**literal** truth is completely different than the [statements, so the [statements are] not 'substantially true.'"  (Opp'n at 20 (emphasis added).) Plaintiffs' argument completely misstates the applicable standard.  Defendants do not need to show "literal truth;" they merely need to show "substantial truth."  *Gordon v. Boyles*, 99 P.3d 75, 81 (Colo. App. 2004) ("Truth is a completely defense to defamation. However, absolute truth is not required. … [I]nstead, a defendant need only show substantial truth[.]").  Plaintiffs cite no cases in support of their "literal truth" standard and the Court should not adopt this sleight of hand.  As explained below, the only two issues identified by Plaintiffs (whether Defendants can prove Ms. Winninger had criminal *mens rea* and whether Vail Health owned the medical records) are immaterial to the substantial truth defense.  And Plaintiffs utterly fail to present any evidence (as compared to argument) that the differences between the "literal truth" and the

statements go to the central "sting" of the statements. *Gordon*, 99 P.3d at 81.  Instead, the

undisputed evidence is that the relevant audience identified by the Plaintiffs, Steadman Clinic,

would have had the same reaction to being told that Ms. Winninger had taken patient files

containing PHI while employed at RPC-Vail in 2012.  (Mot. at 20-21.)  In light of that evidence,

Plaintiffs' failure to produce contradictory evidence, and decision to rely exclusively on

argument of counsel, is insufficient to avoid summary judgment.  (Opp'n at 20 (arguing without

citation that "a correct statement of the record facts would have made a difference in the minds

of the Steadman management")); *see W. Innovations, Inc. v. Sonitrol Corp.*, 187 P.3d 1155, 1161

(Colo. App. 2008) ("Conclusory statements in a brief are not evidence and therefore cannot

preclude summary judgment."); *Cedar Lane Invs. v. St. Paul Fire & Marine Ins. Co.*, 883 P.2d

600, 602 (Colo. App. 1994) ("Neither may a genuine issue of material fact be raised merely by

the argument of counsel."); *Bauer v. Sw. Denver Mental Health Ctr., Inc.*, 701 P.2d 114, 117

(Colo. App. 1985) ("Counsel cannot raise a genuine issue simply by means of argument; the

contentions must be supported in accordance with the requirements of C.R.C.P. 56.").

### B. The Court Can Decide Substantial Truth on Summary Judgment

Plaintiffs argue that whether Defendants' alleged statements are substantially true cannot

be decided on summary judgment.  (Opp'n at 26-27.)  Plaintiffs' position is baseless.

First, the Colorado Court of Appeals has rejected Plaintiffs' argument.  In *Gordon*, the

plaintiff alleged that the defendant, during a radio interview, stated that the plaintiff had a history

of domestic violence.  99 P.3d at 78.  The defendant introduced evidence that the plaintiff had been

arrested for assault and disturbing the peace in connection with a domestic dispute.  *Id.* at 81.  The

trial court granted summary judgment for the defendant on the basis of substantial truth.  *Id.*  The

Court of Appeals affirmed, reasoning that the alleged statement was substantially true because "the substance, the gist, the sting of the matter is true." *Id.* (internal quotation marks omitted). Clearly, there is no bright-line rule that summary judgment cannot be granted for a defamation defendant on the grounds of substantial truth.

Second, contrary to Plaintiffs' contention (Opp'n at 26-27), the Colorado Supreme Court has previously held "judgment of nonsuit [*i.e.*, summary judgment] in civil actions for libel may be directed by the court in like manner as in other civil cases." *Hazy v. Woitke*, 48 P. 1048, 1050 (Colo. 1897); *see also Fry v. Lee*, 408 P.3d 843, 849 (Colo. App. 2013) ("[B]ecause the threat of protracted litigation could have a chilling effect on the constitutionally protected right of free speech, prompt resolution of defamation actions[] by summary judgment . . . is appropriate.").[3] Under Rule 56, Defendants need only show "there is no genuine issue as to any material fact and that [Defendants are] entitled to judgment as a matter of law." C.R.C.P. 56(c).

Ignoring the Colorado Supreme Court's instruction that Rule 56 applies to defamation claims the same as any other civil case, Plaintiffs cite Article 2, Section 10, of the Colorado Constitution (Opp'n at 26), which is titled "Freedom of speech and press" and provides as follows:

> No law shall be passed impairing the freedom of speech; every person shall be free to speak, write or publish whatever he will on any subject, being responsible for all abuse of that liberty; and in all suits and prosecutions for libel the truth thereof may

---

[3] Colorado's special protection for free speech rights, and willingness to dismiss defamation claims early in litigation, is exemplified by its recently enacted anti-SLAPP statute, which provides a defamation defendant a special pre-discovery motion to dismiss where the speech relates to a public issue or an issue of public interest. C.R.S. § 13-20-1101. This Court, in its May 31, 2019 order granting Defendants' summary judgment on certain of Plaintiffs' defamation claims, held that certain of Vail Health's statements reporting Cimino's theft to the authorities related to a "matter of public concern." (Order Granting in Part Ds.' Mot. for Summ. J. as to Ps.' Defamation Claims (Counts I - XXIV) at 21-22 (May 31, 2019).)

6

> be given in evidence, and the jury, under the direction of the court, shall determine the law and the fact.

(Colo. Const. Art. 2 § 10.)  As its language suggests, Article 2, Section 10 protects defamation *defendants*—not plaintiffs.  Colorado courts have long held that "[t]he history of [Article 2, Section 10] shows beyond question that the power conferred upon the jury to determine the law, in cases of libel, is given for the protection of the defendant, *and not to aid a plaintiff*."  *Hazy*, 48 P. at 1049 (emphasis added).  In other words, it protects the rights of speakers, not those spoken about.  *See Churchey v. Adolph Coors. Co.*, 759 P.2d 1336, 1341 (Colo. 1988) ("*One who is alleged to have defamed another* has a constitutional and statutory right to assert the truth of the defamatory statement and to have a jury decide such a defense." (emphasis added, internal citations omitted)).  In any event, nothing in Article 2, Section 10, prohibits granting summary judgment for a defendant on defamation claims if there is no genuine issue of material fact.

Third, the cases Plaintiffs cite in no way hold that a court is prohibited from granting summary judgment for a defendant on substantial truth grounds:

- In *Gomba v. McLaughlin*, 504 P.2d 337 (Colo. 1972), the Colorado Supreme Court reversed entry of summary judgment for the *plaintiff* because the trial court and court of appeals had improperly required literal truth.  In reversing, the Court adopted the substantial truth standard.  Because the question of whether the *defendant* was entitled to summary judgment under substantial truth was not before the Court, the case does not at all support Plaintiffs' claim that "[s]ummary judgment is not an appropriate vehicle for

deciding the truth or substantial truth of a defamatory statement in a case like this." (Opp'n at 26-27.)

- Plaintiffs also cite *Pittman v. Larson Distrib. Co.*, 724 P.2d 1379, 1389 (Colo. App. 1986). (Opp'n at 26-27 & nn.137, 144.) While the Court of Appeals in *Pittman* did reverse a grant of summary judgment for the plaintiff, it did so because evidence presented by the plaintiff created an issue of fact regarding whether the statements were true. 724 P.2d at 1389. Nowhere did the court suggest that Colorado courts are "reluctant" to grant summary judgment for defendants on substantial truth grounds, or that the jury must *always* decide the issue of substantial truth.

- Similarly, in *Churchey*, 759 P.2d 1336 (Opp'n at 26 & n.137), the Court simply concluded that there were "sharp factual conflicts" regarding whether statements that plaintiff was "dishonest" were true. *Id.* at 1341-42. The unremarkable proposition that genuine issues of material fact preclude summary judgment does not at all support Plaintiffs' contention that a court can never grant summary judgment for a defendant on substantial truth grounds.

Fourth, Plaintiffs admit that summary judgment is appropriate "where a plaintiff admits to the material facts that indisputably show the defamatory statement to be true." (Opp'n at 27.) That is the case here. Winninger admits that she took documents containing PHI from Vail Health's server and that those documents did not belong to her. (Winninger Decl. ¶ 89 (admitting, "certain files that I took included protected health information"); Opp'n at 15 ("medical records belong to the provider that created them").) Thus, even under Plaintiffs' proffered standard that summary judgment is only appropriate when material facts are *admitted* (rather than undisputed), summary

8

judgment is warranted.  *But see* C.R.C.P. 56(c) (only requiring a party to show "that there is no genuine issue as to material fact").

In sum, there is no "special rule" in defamation cases that a court may not grant summary judgment for a defendant on substantial truth grounds.  Rather, the standard rules apply:  if undisputed evidence demonstrates that the statements at issue are substantially true, summary judgment for the defendant is warranted.

### B.   Vail Health Does Not Need to Establish the Elements of Civil Theft for Defendants to Obtain Summary Judgment on Plaintiffs' Defamation Claims

Based on their made-up "literal truth" standard, Plaintiffs argue that the Motion must be denied unless Defendants can establish all elements of Vail Health's civil theft claim or Colorado's Theft of Medical Records statute.  (Opp'n at 28-31.)  Plaintiffs' argument completely misinterprets and mischaracterizes Defendants' Motion.  The Motion does not relate to Defendants' civil theft claims; rather, it relates to Plaintiffs' defamation claims.  For a defendant to prevail on a defamation claim, it must prove only substantial truth based on the ordinary meaning of the words used—rigorous adherence to technical legal definitions is not required.  Words in allegedly defamatory statements are interpreted according to their ordinary, commonly accepted meaning. *See, e.g.*, *Fry*, 408 P.3d at 850 (holding that allegedly defamatory words should be assigned their "plain and ordinary meanings"); *Knapp v. Post Printing & Pub. Co.*, 144 P.2d 981, 985 (Colo. 1943) ("In construing words alleged to be libelous we . . . must confine ourselves to the natural, ordinary and commonly-accepted meaning of the words themselves.").  Thus, "the meaning of an allegedly defamatory statement is *not determined by legal research*, but by the plain and ordinary meaning of the word." *Anderson v. Cramlet*, 789 F.2d 840, 844 (10th Cir. 1986) (applying Colorado law) (emphasis added, internal quotation marks and citation omitted). "To determine the

plain and ordinary meanings of words in the context of defamation claims, Colorado courts commonly and properly rely on lay dictionary definitions."  *Fry*, 408 P.3d at 850 (citing *NBC Subsidiary (KCNC-TV), Inc. v. Living Will Ctr.*, 879 P.2d 6, 13-14 (Colo. 1994)); *Knapp*, 144 P.3d at 985).

Thus Vail Health need not prove the elements of civil theft or Theft of Medical Records to obtain summary judgment on Plaintiffs' defamation claims on the basis of substantial truth.  *See Russin v. Wesson*, 2008 VT 22, ¶ 6, 949 A.2d 1019, 1021 (Vt. 2008) (holding that statement that a person was "a thief" was substantially true, even though the defamation defendant could not establish that he "acted with the necessary mens rea—i.e., some guilty knowledge or intent"); 2 D. Dobbs, The Law of Torts § 410, at 1148 (2001) ("Statements about crimes are often technically incorrect but substantially true.  To laypersons, 'theft' may mean *any wrongful taking . . . .*" (emphasis added)); *see also Anderson*, 789 F.2d at 844 (10th Cir. 1986) (granting summary judgment for defamation defendant based on substantial truth where wife stated that her informally separated husband had "kidnapped" child by taking child to another state without permission, even though husband had not technically violated kidnapping statute); *Simonson v. United Press Int'l, Inc.*, 654 F.2d 478, 482-83 (7th Cir. 1981) (affirming summary judgment for defamation defendant where statement described conduct at issue as "rape" whereas it was actually second-degree sexual assault).

The alleged statements at issue here claim that Winninger had "download[ed] patient files" or "stolen patient files."  (*See* Mot. at 10.)  The plain, ordinary meaning of "steal" is "[t]o take (the property of another) without right or permission."  (Opp'n. Ex. 32, The American Heritage Dictionary; *see also* Opp'n. Ex. 33, Dictionary.com (defining "steal" as "to take (the property of

another or others) without permission or right . . . ”).)[4]  Winninger admits that this is precisely

what she did here.  Winninger admits that she “downloaded” files that contain PHI.  (*See, e.g.*,

Winninger Decl. ¶ 87 (“I downloaded this information periodically to work at home.”); *id.* ¶ 96

(“I downloaded documents from my shared drive folder when I left my employment with RPC-

Vail/Proaxis.”); Opp’n at 3 (admitting that among the documents Winninger downloaded were 81

“Surgical Forms containing PHI” and 665 other documents containing PHI).)  Winninger also

admits that she “took” the documents at issue containing PHI.  (Opp’n at 18; Winninger Decl. ¶ 89

(conceding that “certain files that I took included protected health information”).)  And Plaintiffs

admit that Winninger did not own the documents containing PHI.  (Opp’n at 15 (“medical records

belong to the provider that created them” (internal quotation marks omitted)); Winninger Decl. ¶

89 (admitting that she “did not even know or treat most of the individuals identified in those

documents [containing PHI]”).)[5]  While Plaintiffs submit a series of self-serving declarations that

they contend suggest that Winninger was permitted to take certain documents among the more

than 9,000 she downloaded, Plaintiffs have not submitted a single piece of evidence that she was

---

[4] Plaintiffs incorrectly suggest that the common definition of “steal” requires “knowledge on the part of the individual that he or she has wrongfully taken property belonging to another.” (Opp’n at 31.)  Even the dictionary definitions Plaintiffs cite do not support that proposition, requiring only taking property without permission and “without intending to return it” or “with intent to keep.”  (*Id.*)  Plaintiffs have presented no evidence that Winninger intended to return the PHI documents, and the fact that she secretly retained them for years demonstrates otherwise.

[5] Plaintiffs’ citation to the deposition testimony of Victoria Bartel provides Plaintiffs no support.  (Opp’n at 8.)  While Ms. Bartel testified that she took certain materials with her when she left Howard Head, she specifically testified that she took no PHI and did not believe she was permitted to take PHI.  (Opp’n Ex. 1 at 58:15-24.)  Plaintiffs also suggest that a former physical therapy director took one document containing PHI (Opp’n at 8), but they provide no evidence about whether the patient authorized him to access that information.  In any event, misconduct by others does not excuse Winninger’s misconduct.

permitted to take *PHI*.  Nor could she, as Winninger would be required to show that each patient authorized her to take PHI.  45 C.F.R. § 164.508.  Thus, based on the plain meaning of the terms "download" and "steal," and Winninger's concessions that she took PHI, it is undisputed that Winninger had "download[ed] patient files" or "stolen patient files."

### C.   Plaintiffs' Concession That the PHI at Issue Did Not Belong to Winninger is Fatal to Their Defamation Claims

Plaintiffs argue that summary judgment for Defendants on Plaintiffs' defamation claims is inappropriate because, they contend, Vail Health did not own the patient records at issue.  (Opp'n at 10-17.)  Specifically, they contend that the 665 Howard Head documents (*e.g.*, physical therapy protocols) containing PHI belonged to RPC-Vail.  (*Id.* at 15 ("Medical records belong to the provider that created them, which here was RPC-Vail.").)  Plaintiffs' argument is a significant concession:  **Defendants and Plaintiffs agree that the PHI at issue *does not belong to Winninger*.**  In other words, Plaintiffs concede that she took something that did not belong to her— *i.e.*, that she stole.

As explained in the Motion (Mot. at 14-15), a statement is substantially true if "the substance, the gist, the sting of the matter is true."  *Gordon*, 99 P.3d at 81.[6]  A statement that Winninger stole documents from Vail Health has precisely the same "sting" as a statement that she stole from the Vail Health server documents that belonged to RPC-Vail.  What matters is that Winninger had an obligation to safeguard patient information and, at a minimum, was wildly reckless in that regard.  According to Winninger's account, she downloaded nearly 10,000

---

[6] Defendants' Motion cited numerous cases from around the country that have granted summary judgment on defamation claims on the basis of substantial truth in circumstances similar to those present here.  (Mot. at 13-14.)  Plaintiffs make no effort to distinguish those cases.

documents *from a hospital* without even reviewing the documents she downloaded, including copying files from a folder containing protocols for Dr. Millet's patients. (*See* Winninger Decl. ¶ 96 ("I actually did not know until very recently that this protected health information was found in my folder. The first time that I saw any of those documents was at my deposition in spring 2020."); *id.* ¶ 90 ("I copied Dr. Millet's protocol folder").)[7] Winninger's reputation is impacted in exactly the same manner whether the documents she took from Vail Health's server belonged to Vail Health or another healthcare provider. Thus, Plaintiffs' concession that the more than 700 documents containing PHI that Winninger downloaded did not belong to her is fatal to Plaintiffs' defamation claims.

In any event, none of the allegedly defamatory statements claim that Vail Health "owned" the patient files at issue. Seven of the eight alleged statements assert that Winninger downloaded patient files "from Vail Health." (Mot. at 10.) That is a literally true statement. It is undisputed that Winninger downloaded documents containing PHI from Vail Health's server while at a Vail Health facility, as RPC-Vail had no IT infrastructure or physical facilities aside from Vail Health's. (Mot. Ex. 3 at VAIL_00003426 ("[Vail Health] shall operate and maintain an appropriately equipped Department which shall be known as the 'Howard Head Sports Medicine Center' which shall have physical facilities at the Hospital . . . ."); *id.* at VAIL_00003427 ("Access to Hospital's computer network services shall be provided . . . ."); Mot. Ex. 8, Crumbaker Decl. ¶¶ 2, 6; Winninger Decl. ¶ 87 ("I copied the materials that I stored on the shared drive."); *id.* ("I

---

[7] While Defendants do not rely on this fact for purposes of this Motion, Defendants' forensic expert found that Winninger had accessed in 2015, 2016, and 2017 numerous documents she downloaded from Vail Health's server. (Ex. 38, Cyopsis Forensic Analysis Report at 22-23 (April 24, 2020).)

downloaded this information periodically to work at home.").)  The eighth alleged statement asserts that Winninger downloaded "Vail Health patient files."  (Mot. at 10.)  By Plaintiffs' own admission, Vail Health was a "custodian" of patient records and had "authorized possession for claims processing . . . and billing purposes."  (Opp'n at 14-15 (internal quotation marks omitted).)  Thus, even accepting Plaintiffs' characterization of Vail Health's ownership interest in the patient files at issue, they can be fairly characterized as "Vail Health patient files," given that they were properly within its custody.  Thus, the alleged statements that Winninger downloaded patient files "from Vail Health" or "Vail Health patient files" are not only substantially true but also literally true.[8]

### D. Even if Defendants Had to Prove that It Is Undisputed that Winninger's Conduct Satisfied All Elements of a Colorado Theft Statute—Which They Do Not—Defendants Meet That Burden

As noted above, because allegedly defamatory statements are evaluated by the common meaning of the terms used, Defendants need not establish the technical elements of Colorado's civil or criminal theft statutes to obtain summary judgment on Plaintiffs' remaining defamation claims.  (*See supra*.)  However, even if Defendants were required to establish that Winninger's conduct violated a Colorado theft statute, as Plaintiffs appear to contend (Opp'n at 28-32),

---

[8] The alleged statements are not defamatory because they are substantially true regardless of whether Vail Health or RPC-Vail owned the documents and literally true because, *inter alia*, Winninger took the documents "from Vail Health."  For those reasons, among others, this Court need not reach Plaintiffs' bizarre and convoluted arguments that (1) RPC-Vail, rather than Vail Health, owned the patient files (Opp'n at 10-17) and (2) that Vail Health improperly billed Medicare, thereby voiding the Physical Therapy Services Agreement (*id.* at 21-25).  Plaintiffs' allegations regarding Vail Health's billing practices—with are a complete *non sequitur* to the current motion, which relates to Defendants' alleged statements regarding *Winninger's* (not Vail Health's) conduct—appear to be nothing but a vexatious litigation tactic.  Vail Health strongly disagrees that its billing practices were improper, and there is no evidence that any regulator has accepted Plaintiffs' novel theories regarding Vail Health's billing practices.

Defendants can do so because her conduct violated Colorado's Theft of Medical Records or Medical Information statute, C.R.S. § 18-4-412 ("Theft of Medical Records").  None of the allegedly defamatory statements at issue claim that Winninger committed "civil theft."  As such, even if defamation were evaluated with reference to statutory elements—which, again, it is not—Winninger would have "stolen" patient files if she violated the criminal Theft of Medical Records statute.

Colorado's Theft of Medical Records statute provides as follows:

> Any person [a] who, without proper authorization, knowingly obtains a medical record or medical information with the intent to appropriate the medical record or medical information to his own use or to the use of another, [b] who steals or discloses to an unauthorized person a medical record or medical information, or [c] who, without authority, makes or causes to be made a copy of a medical record or medical information commits theft of a medical record or medical information.

Colo. Rev. Stat. § 18-4-412(1) (bracketed letters added for clarity).  As most relevant here, a person "**who, without authority, makes or causes to be made a copy of a medical record or medical information commits theft of a medical record or medical information**." *Id.* (emphasis added). "Medical record" is defined broadly to include "the written or graphic documentation, sound recording, or computer record pertaining to medical, mental health, and health care services . . . performed at the direction of a physician or other licensed health care provider . . . ." *Id.* § 18-4-412(2)(a).  Proper authority includes written authorization signed by the patient; a court order; possession pursuant to law or regulation for claims processing, medical audit, consulting physician work, or possession by hospital personnel for record-keeping or billing purposes; possession pursuant to certain statutory provisions not applicable here; and possession by law enforcement personnel. *Id.* § 18-4-412(c).  "Copy" means "any facsimile, replica, photograph, sound recording,

magnetic or electronic recording, or other reproduction of a medical record and any note, drawing, or sketch made of or from a medical record." *Id.* § 18-4-412(d).

The undisputed facts demonstrate that Winninger committed Theft of Medical Records. By Winninger's own admission, she copied more than 700 documents containing PHI—*i.e.*, "computer record[s] pertaining to medical, mental health, and health care services." (Opp'n at 3 (admitting that Winninger downloaded 746 documents containing PHI); Winninger Decl. ¶ 89 (admitting, "certain files that I took included protected health information"); *id.* (admitting that she "cop[ied]" "surgical forms for Dr. Sterret (sic) at The Steadman Clinic [that] were found in [her] files"); *id.* ¶ 90 (admitting that she "copied protected health information when [she] copied Dr. Millet's protocol template file").)[9]

Defendants' Motion demonstrated that Winninger was not authorized to copy the medical records at issue (*see, e.g.*, Mot. Ex. 10), and Winninger has failed to introduce any evidence to the contrary. While Plaintiffs submit several self-serving declarations that they claim support the proposition that Winninger was permitted to take certain educational materials and treatment protocols, Plaintiffs have submitted *no evidence whatsoever that she was authorized to take the PHI at issue*. As Winninger admits, she "did not even know or treat most of the individuals identified in those documents." (Winninger Decl. ¶ 90.)

Plaintiffs contend that Vail Health cannot establish that Winninger committed Theft of Medical Records (and thus, in Plaintiffs' view, cannot obtain summary judgment on Plaintiffs'

---

[9] Winninger asserts that the PHI she downloaded "had no value to me or anyone else." (Winninger Decl. ¶ 90.) Colorado's civil theft statute expressly rejects that position. Colo. Rev. Stat. § 18-1-901(3)(r) (defining "thing of value" to include "medical records information, and any rights of use or enjoyment connected therewith").

defamation claims) because purportedly Winninger "never intended to copy the 700 patient documents with PHI." (Opp'n at 9.) That is irrelevant. The applicable statutory language quoted above contains no requirement that Winninger "intended" to copy medical records. Colo. Rev. Stat. § 18-4-412(1) ("Any person . . . who, without authority, makes or causes to be made a copy of a medical record or medical information commits theft of a medical record or medical information."). Rather, where, as here, "[n]either the plain and ordinary meaning of the statutory language nor the legislative intent represented by the statutory scheme requires a culpable mental state," the offense is strict liability. *See, e.g.*, *People v. Manzo*, 144 P.3d 551, 556-57 (Colo. 2006). For a strict liability offense, the evidence must demonstrate only that the person "voluntarily" committed the proscribed acts. *Id.* Here, there can be no doubt that Winninger acted voluntarily when she downloaded files from the Howard Head shared drive. Moreover, even if Vail Health were required to prove that Winninger intended to download documents from Vail Health's server, it is undisputed that Winninger intentionally did so. (*See, e.g.*, Winninger Decl. ¶ 87 ("I copied the materials that I stored on the shared drive.").)

Plaintiffs argue that a culpable mental state of "knowingly" applies to the prohibition of copying medical records without authorization. (Opp'n at 28-30.) The statutory text provides no support for Plaintiffs' position. Colo. Rev. Stat. § 18-4-412(1) proscribes three types of conduct: "obtain[ing]" medical records; "steal[ing]" or "disclos[ing]" medical records; and "cop[ying]" medical records. While the Legislature imposed an intent requirement on the provision relating to "obtaining" medical records—specifically, "knowingly" and "with the intent to appropriate the medical record or medical information to his own use or to the use of another"—the Legislature placed no such intent requirement on "copying." Each of the three prohibitions in C.R.S. § 18-4-

412(1) is preceded by the word "who." C.R.S. § 18-4-412(1). The term "knowingly" appears only in the first prohibition, after the word "who." The Legislature's decision to repeat the word "who" at the beginning of each prohibition makes clear that the mental state in the first prohibition does not apply to the second and third. In light of the Legislature's clear statutory text, the general common law rules Plaintiffs cite (Opp'n at 28) are inapplicable.

### E. Plaintiffs' Defamation Theory Would Muzzle Victims of Theft and Other Crimes

The convoluted and irrelevant arguments in Plaintiffs' opposition brief (*see, e.g.*, Opp'n at 10-17, 21-25) demonstrate precisely why the substantial truth doctrine exists and allegedly defamatory statements are evaluated based on their plain meaning rather than compliance with detailed statutory or regulatory requirements. *See Anderson*, 789 F.2d at 844 (holding that "the meaning of an allegedly defamatory statement is not determined by legal research, but by the plain and ordinary meaning of the word" and that "technical errors in legal terminology" do not render a statement defamatory (internal quotation marks and citation omitted)). Detailed (though in Plaintiffs' case, incomplete and deeply flawed) legal research of the nature Plaintiffs propose is simply not required before speaking. Were it otherwise, free speech would be chilled. *See Barnett v. Denver Publ'g Co.*, 36 P.3d 145, 147 (Colo. App. 2001) (recognizing that the substantial truth doctrine and prompt summary judgment in defamation actions are necessary because "the threat of protracted litigation could have a chilling effect upon constitutionally protected rights of free speech").

A simple example demonstrates the absurdity of Plaintiffs' position. Imagine a person ("Jill") sitting on her front porch with her car parked on the street nearby with the keys in the ignition. A person from the neighborhood ("Jack") walks up to the car and drives away. In

addition to reporting the theft to the police, Jill tells those potentially impacted by the theft of the car—*e.g.*, her friends, family, a person scheduled to borrow the car—"Jack stole my car."  In this hypothetical, under Plaintiffs' view of defamation law, absurd results follow.

- If the car was leased by Jill, and was thus actually owned by the bank rather than Jill, Jack would have a defamation claim against Jill because she falsely asserted that the car stolen was "my car."  (*See* Opp'n at 10-16 (arguing that RPC-Vail, rather than Vail Health, owned the medical records to support Plaintiffs' defamation claims such that Vail Health could not assert the records were stolen); *Id.* at 14-15 (admitting that Vail Health was authorized to possess the medical records for claims processing purposes).)

- If Jill had misrepresented her income on her car loan application, thereby rendering the contract giving her title "void and unenforceable," Jack would have a defamation claim against Jill because she did not own the car.  (Opp'n at 21-25 (arguing that the purported flaws in Vail Health's billing procedures rendered the Physical Therapy Services Agreement "void and unenforceable," thereby voiding Vail Health's ownership of the patient files at issue).)

- If Jack actually intended to return the car, though he took it without permission, and Jill failed to perform legal research before speaking to determine whether the criminal theft statute actually required "specific intent to *permanently* deprive the owner of the benefit of property," Jack would have a defamation claim against Jill.  (Opp'n at 31 (emphasis added).)

Those absurd conclusions necessarily flow from Plaintiffs' proposed defamation standard. Plaintiffs' claim here that Defendants defamed them is equally absurd.  The Court should decline

Plaintiffs' invitation to abrogate the substantial truth doctrine given the important purposes it serves in facilitating discussion of wrongful conduct.

***

For the reasons described above, there is no genuine issue of material fact concerning Plaintiffs' defamation claims, and thus summary judgment should be granted for Defendants on those claims.[10]

## II. SUMMARY JUDGMENT SHOULD BE GRANTED FOR DEFENDANTS ON PLAINTIFFS' TORTIOUS INTERFERENCE CLAIMS

Defendants' Motion set forth three grounds upon which summary judgment should be granted for Defendants on Plaintiffs' three tortious interference claims: (1) Plaintiffs cannot show improper conduct by the Defendants because the alleged statements were substantially true, (Mot. at 18-20); (2) Steadman and SPRI would not have contracted with Winninger if they knew of her theft of PHI, (Mot. at 20-22); and (3) Sports Rehab cannot assert tortious interference claims because it was not a party to the contracts, (Mot. at 22-23.)  Plaintiffs' opposition brief fails to address any of these arguments and, instead, merely points to a single alleged statement by Mike Shannon (that Winninger "had stolen records from Vail Health") and testimony that Mike Shannon was told of the contemplated agreements as evidence of the alleged tortious interference.  (Opp'n

---

[10] Summary judgment is particularly warranted for Defendant Kirchner, Vail Health's former CEO, who is the alleged speaker of just three purportedly defamatory statements (Counts I, II, and III), one of which alleges only that Winninger "download[ed]" patient files—which is indisputably true.

at 35.)[11]   None of this addresses Defendants actual arguments for summary judgment. Thus, as discussed below, summary judgment is warranted.

> **A.**   **Plaintiffs Do Not Dispute That If the Allegedly Defamatory Statements Are Substantially True, Plaintiffs' Tortious Interference Claims Fail**

Defendants' Motion demonstrated that if the allegedly defamatory statements are substantially true, Plaintiffs cannot satisfy the "improper conduct" element of all three of their tortious interference claims (Counts XXV, XXVI, and XXVII).  (Mot. at 18-20.)  Plaintiffs make no effort to rebut that legal conclusion.  Moreover, they do not identify any allegedly improper conduct aside from defamatory statements.  (Opp'n at 35.)  Thus, Plaintiffs have conceded that if the Court grants summary judgment for Defendants on Plaintiffs' defamation claims, it must grant summary judgment for Defendants on Plaintiffs' three tortious interference claims as well.  *See, e.g.*, *McCants v. Correct Care Sols., LLC*, No. 16-2787, 2018 U.S. Dist. LEXIS 90382, at *13 (D. Kan. May 31, 2018) ("[W]hen a party fails to respond to arguments made to support a motion for summary judgment, the party, in effect, abandons that claim.").

> **B.**   **Plaintiffs Concede That Plaintiffs' Tortious Interference with Contract Claims Cannot Succeed Because Steadman and SPRI Would Not Have Contracted with Winninger If They Knew of Her Theft of PHI**

Defendants' Motion demonstrated that Winninger's false representations to Steadman and SPRI in the Amendments that she had never obtained unauthorized access to patient records are fatal to Plaintiffs' tortious interference with contract claims (Counts XXV and XXVI).  (Mot. at

---

[11] This court has held Ms. Kirchner cannot be held liable for statements allegedly made by other people, including Mr. Shannon.  (May 31, 2019 Order at 28-29 ("[C]orporate officers are not liable for torts committed by the corporation's employees or agents.").)  Despite the Court's clear prior ruling, Plaintiffs continue to try and hold Ms. Kirchner liable for statements made by other people.

20-22.)  Specifically, because Winninger committed a material breach when she signed the Amendments, Steadman and SPRI were entitled to terminate the contracts at any time, and their alleged suspension or termination of the contracts was not a breach.  (*Id.*)  Moreover, even if there were a breach by Steadman or SPRI (which there was not), it was caused by Winninger's own conduct and/or fraudulent inducement, not any action by Defendants.  (*Id.*)  Notably, this basis for summary judgment is not dependent on the Court granting summary judgment on Plaintiffs' defamation claims on the basis of substantial truth, as Defendants need only prove that Winninger obtained unauthorized access to PHI.  (Mot. Ex. 27 at SRC002326, SRC002328.)

Plaintiffs' opposition brief completely ignores this basis for summary judgment on Plaintiffs' tortious interference with contract claims.  (Opp'n at 33-34.)  They have thus conceded the argument.  *See, e.g.*, *McCants*, 2018 U.S. Dist. LEXIS 90382, at *13.[12]

Moreover, numerous concessions in Plaintiffs' opposition brief and supporting declarations further demonstrate that Winninger breached her agreements with Steadman and SPRI as soon as she executed the Amendments.  For example, Plaintiffs admit that Winninger took more than 700 documents containing PHI from Howard Head prior to executing the Amendments.  (Opp'n at 3; Winninger Decl. ¶ 89 (admitting, "certain files that I took included protected health information").)  Plaintiffs admit that Winninger did not own the documents containing PHI that she took.  (*See* Opp'n at 15 ("medical records belong to the provider that created them" (internal

---

[12] Winninger states in her declaration that the representations in the Amendments were true because she "did not intend to copy protected health information." (Winninger Decl. ¶ 95.) However, Winninger's intent is irrelevant to this basis for summary judgment because the Amendments represent that Winninger had never obtained unauthorized access to PHI, not that she never did so intentionally.  (Mot. Ex. 27 at SRC002326, SRC002328.)

quotation marks omitted)); Winninger Decl. ¶ 89 (admitting that she "did not even know or treat most of the individuals identified in those documents [containing PHI]").)   And nowhere do Plaintiffs suggest that Winninger had authorization to take the PHI at issue.   Thus, Plaintiffs' opposition provides even further support for summary judgment for Defendants on Plaintiffs' tortious interference with contract and tortious interference with current business relationship claims.

### C.   Plaintiffs Also Concede That Defendants Are Entitled to Summary Judgment on Sports Rehab's Tortious Interference Claims Because Sports Rehab Was Not a Party to the Steadman or SPRI Agreements

Defendants' Motion also demonstrated that summary judgment should be granted for Defendants on the tortious interference with contract and tortious interference with current business relationship claims of Sports Rehab Consulting LLC ("Sports Rehab") for the additional reason that Sports Rehab was not a party to, and had no financial interest in, either agreement. (Mot. at 22-23.)   Plaintiffs ignore this basis for summary judgment as well, and thus concede it. *See, e.g.*, *McCants*, 2018 U.S. Dist. LEXIS 90382, at *13.

## III.   DEFENDANTS ARE ENTITLED TO THEIR FEES AND COSTS UNDER § 13-17-102

Defendants' Motion demonstrated that they are entitled to an award of attorneys' fees under C.R.S. Section 13-17-102, which permits the Court to award "reasonable attorney fees against any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification."   The recent disclosure by Plaintiffs of nearly 10,000 documents that Winninger took from Vail Health's server while she was working at Howard Head Sports Medicine, including documents containing the PHI of more than 700 patients, demonstrates the frivolous and groundless nature of Plaintiffs' defamation and wrongful

interference claims.  For years, Plaintiffs claimed that Defendants were wrongfully associating her with Cimino's actions of downloading PHI from Vail Health's server.  However, both she and Schoenthaler, the owners of Sports Rehab, knew before they filed this lawsuit that she had taken documents from Vail Health's server.  Also, according to Winninger's own declaration, she never even reviewed the documents she downloaded to see if she, too, had downloaded documents containing PHI before accusing Defendants of falsely accusing her of doing so.  (*See* Winninger Decl. ¶ 96 ("I actually did not know until very recently that this protected health information was found in my folder.  The first time that I saw any of those documents was at my deposition in spring 2020.").)  That kind of reckless, factually groundless assertion of claims is precisely the type of conduct C.R.S. Section 13-17-102 is intended to remedy.  Moreover, Plaintiffs' complete failure to defend against summary judgment on certain claims is evidence that the claims lacked substantial justification.

In any event, other than arguing against summary judgment, Plaintiffs fail to respond to Defendants' request for a fees award in any manner.  Thus, if summary judgment is granted for Defendants on Plaintiffs' defamation and/or tortious interference claims, Plaintiffs have conceded that an award of fees is warranted.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant summary judgment for Defendants with respect to all remaining defamation and tortious interference counts of the First Amended Complaint (defamation Counts I, II, III, IX, XI, XIX, XXI, XXII, and tortious interference Counts XXV, XXVI, and XXVII), and award Defendants reasonable attorneys' fees and costs incurred in defending this action.

Dated: August 20, 2021

DAVIS GRAHAM & STUBBS LLP

  *s/Janet Savage*
Janet Savage, #11653
Jacqueline V. Roeder, #48046
Daniel A. Richards, #50457

*Attorneys for Defendant Doris Kirchner and Defendant, Counter-Plaintiff and Third-Party Plaintiff Vail Clinic, Inc. d/b/a Vail Health*


FENNEMORE CRAIG P.C.
Daniel M. Reilly, #11468
Clare S. Pennington, #37896
John M. McHugh, #45456

*Attorneys for Defendant Doris Kirchner*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing **DEFENDANTS' REVISED REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** was filed via Colorado Courts E-Filing on this 20th day of August, 2021, which will serve notice to the following:

John W. Madden, III
THE MADDEN LAW FIRM
999 18th Street, Suite 1500 South
Denver, Colorado 80202
Telephone: 303.436.1111
Email: madden@themaddenfirm.com

*Counsel for Third-Party Defendant David Cimino*

Jesse Wiens
FAHRENHOLTZ & WIENS, LLC
P.O. Box 1988
Avon, Colorado 81620
Telephone: 970.949.6500
Facsimile: 970.331.0794
Email: fwlawyers@gmail.com

*Counsel for Plaintiffs/Counter-Defendants Lindsay Winninger and Sports Rehab Consulting, LLC*

Daniel M. Reilly, #11468
Clare S. Pennington, #37896
John M. McHugh, #45456
FENNEMORE CRAIG P.C.
1700 Lincoln Street, Suite 2400
Denver, Colorado 80203
Telephone:    303.291.3200
Email:         dreilly@fennemorelaw.com
                cpennington@fennemorelaw.com
                jmchugh@fennemorelaw.com
*Counsel for Defendant Doris Kirchner*

<u>Copy emailed to:</u>

Sonya Braunschweig (admitted pro hac vice)
5501 Irving Avenue South
Minneapolis, Minnesota 55419
Telephone: 612.819.2304
E-mail: sonya.braunschweig@gmail.com

Alan L. Kildow (admitted pro hac vice)
15204 Wildwood Road
Burnsville, Minnesota 55306
Telephone: 970.390.6675
E-mail: alkildow@aol.com

*Counsel for Plaintiffs/Counter-Defendants Lindsay Winninger and Sports Rehab Consulting, LLC*

_____
                    *s/ Brigid Bungum*
                   Brigid Bungum