**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation.

      Defendant.

---

**PLAINTIFFS' RULE 37 MOTION TO COMPEL #4 RELATING TO
JOINT VENTURES AND OTHER COMBINATIONS**

---

## MOTION AND PROCEDURAL BACKGROUND

      Plaintiffs Sports Rehab Consulting and Lindsay Winninger move the Court pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iii) and (iv), for an order compelling Vail Health to produce documents and answer interrogatories relevant to Vail Health's attempts to form joint ventures or other combinations in violation of § 2 of the Sherman Act.  Before March 30, 2016, Vail Health interposed two primary objections to Request Nos. 7 and 8,[1] but later conceded "we're not withholding any documents based on that objection [regarding attempts to monopolize], or with our objection regarding the word combination."[2]  Vail Health then said "all relevant documents have been produced"[3] in the state court action.  If not, "[c]ertainly if there are any, we will produce them."[4]  It is

---

[1]     Ex. 13 at Request Nos. 7-8 (withholding documents based on objection).
[2]     Ex. 16 at 38: 9-11 [Mar. 30 Hearing Tr.].
[3]     *Id.* at 38:21.
[4]     *Id.* at 38:22; ECF No. 107, Ex. 1 at Request Nos. 7-8 (same).

now evident that responsive documents to Plaintiffs' state court request were not all produced.  Nor has Vail Health produced numerous responsive documents here despite its representation.  Plaintiffs identified Vail Health's discovery deficiencies on June 24[5] and again (in part) on July 19, 2021.[6]  Vail Health, however, still has not produced communications among the collaborators, proposed or finalized agreements, Board documents, and consultant communications and reports for Haverford Healthcare Advisors, Healthcare Transaction Advisors, Hammes Company, Deloitte, and Jornada Partners.  Plaintiffs seek an order compelling Vail Health to respond to this discovery.

## CERTIFICATE OF CONFERRAL

Plaintiffs attempted to resolve this discovery dispute, including a March 30 informal discovery dispute conference with the Magistrate Judge that discussed, in part, certain objections to the first set of document requests.[7]  Plaintiffs have since attempted to confer on Vail Health's deficiencies[8] in a call on May 26[9] that lasted about an hour and addressed only seven of twenty-five interrogatories; none of which Vail Health agreed to supplement.  Plaintiffs later sent another chart identifying deficiencies,[10] and on June 14, 17, 24, and July 1, 14, and 19, 2021, requested a conferral.[11]  On July 19, Vail Health declined, saying it would not "be a productive use of attorney time or clients' time" and that Magistrate Judge Gallagher "indicated" he would permit conferral by email.[12]

---

[5]    Ex. 6 at Chart, Request Nos. 7-8 [June 24 chart].
[6]    Ex. 11 at 1-2, Item Nos. 1-4, 7, 10-12 [email] (identifying missing documents).
[7]    *See* ECF No. 107 at Ex. 1 (filing discovery dispute chart submitted to Magistrate).
[8]    Ex. 1 at attached letter [Pls.' letter on interrogatories]; Ex. 2 at attached chart [Vail Health's response]. Nor will Vail Health return Plaintiffs' calls. *See, e.g.,* Ex. 3 at 1 [email].
[9]    Plaintiffs requested a conferral on May 12, 14, 17-18, and 24-25. *See* Exs. 1-5 [emails].
[10]   Ex. 6 at attached chart [June 24 chart]; Ex. 10 [Vail Health's response].
[11]   *See* Exs. 6-9, 11 [email requests].
[12]   Ex. 11 at 1 [email]. *But see* ECF No. 105 at 12 [June 6 Order] (parties must confer; but by email if "the parties wish," which Plaintiffs did not agree to). *See* Ex. 7 [email].

## ARGUMENT

**I.    RULE 37 MOTION TO COMPEL ADEQUATE DISCOVERY RESPONSES.**

This motion is brought under Fed. R. Civ. P 37(a)(3)(B)(iii) and (iv) to compel Vail Health to produce documents and answer interrogatories.  On October 9, 2019, Plaintiffs served their first set of document requests,[13] which Vail Health responded to a year later.[14]  On March 1, 2021, Plaintiffs served their second set of discovery.[15]  On April 30, 2021, Vail Health served its responses[16] and produced documents on May 28, July 15, and August 6, 2021, which amount to less than 1,500 documents.  In addition to issues identified in March,[17] Plaintiffs addressed Vail Health's discovery deficiencies on May 12, June 24, and July 16.[18] Despite this, Vail Health has not engaged in fulsome discovery.

Instead, Vail Health has made "unilateral decisions about production based upon what is, and what is not, in their view, relevant or helpful to the plaintiff's claims."[19]  But "[d]iscovery is not the time to spin the facts; all evidence that is relevant, or likely to lead to the discovery of admissible evidence is fair game…defendants do not get to pick and choose what they will turn over based upon their assessment of what does or does not help the plaintiff's case."[20]   If such conduct is allowed, "the judicial system loses its integrity."[21]   Under these circumstances, sanctions are appropriate.

---

[13]      Ex. 12 [Pls.' 1st RFPs].
[14]      Ex. 13 [Vail Health's Resp. to 1st RFPs].
[15]      Ex. 14 [Pls.' 2d Set of Discovery].
[16]      Ex. 15 [Vail Health's Resp. to 2d Set of Discovery].
[17]      *See* ECF No. 107, Ex. 1 at Request Nos. 7-8.
[18]      Ex. 1 at letter; Ex. 6 at chart; Ex. 11 at 1-2 (listing missing documents).
[19]      *Yahnke v. Cnty. of Kane,* Case No. 12C 5151, 2014 WL 1673739, at *2 (N.D. Ill. Apr. 28, 2014).  *See also Johnson v. Serenity Transp., Inc.*, No. 15-CV-02004-JSC, 2016 WL 6393521, at *2 (N.D. Cal. Oct. 28, 2016) (same).
[20]      *Yahnke,* 2014 WL 1673739, at *2.
[21]      *O'Neal v. McHugh*, C/A No: 3:12-733-CMC-CVH, 2014 WL 3867847, at *4 (D.S.C. July 11, 2014).

## II.    PLAINTIFFS ARE ENTITLED TO DISCOVERY OF VAIL HEALTH'S ATTEMPTS TO MAINTAIN AND EXTEND ITS MONOPOLY BY ILLEGAL "COMBINATIONS."

### A.    The Terms "Combination" And "Combine" Are Broad; Not Ambiguous.

This is an action under the Sherman Act, 15 U.S.C. § 2, which makes it unlawful for a person or firm to "monopolize, or attempt to monopolize...any part of the trade or commerce…."[22] "To prevail on an attempted monopolization claim, a plaintiff must show: (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power."[23] "As a legal matter, Sherman Act § 2 requires that the defendant either have monopoly power or a dangerous probability of achieving it...."[24] Section 1 uses the term "combination" as "any contract, **combination** or conspiracy," and § 2 similarly states: "Every person who shall monopolize, or attempt to monopolize, **or combine with any person or persons, to monopolize**…."[25] The Act's proscriptions therefore cover a wide swath of commerce and encompass a full range of business arrangements.

The leading § 2 case is *United States v. Grinnell*, which involved about 70 years of complicated acquisitions of various business by the company now known as ADT. The Supreme Court noted that "[t]he fact that Holmes [the acquiree] is more nearly local than the others [corporate acquisitions] does not save it, for it is part and parcel of *the combine* presided over and controlled by Grinnell [the monopolizing corporate acquirer]."[26] In *Novell, Inc. v. Microsoft, Corp.*, then Judge Gorsuch said that "anticompetitive conduct

---

22      Am. Compl. ¶¶ 243-73, 34-42.
23      *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456 (1993); *Christy Sports, LLC. v. Deer Valley Resorts Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009).
24      XI Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 1800c5, at 22 (3d ed 2011).
25      15 U.S.C. § 2 (emphasis added).
26      384 U.S. 384, 575-76 (1966).

comes in too many forms and shapes to permit a comprehensive taxonomy."[27]  Its breadth is demonstrated in a June 2021 decision, where now Justice Gorsuch had little difficulty applying the concept of a "combination" to the manner in which the NCAA was characterized as a "joint venture" under Sherman Act § 1 scrutiny.[28]  To inventory the cases (thousands) and types of combinations involving corporations, partnerships, limited liability companies, joint ventures, exclusive dealing contracts, horizontal and vertical competitive restrictions, tying arrangement, etc.) that fall under the Sherman Act is beyond this motion, but the conduct alleged here falls within the scope of the Act.

Given the number of possible combinations between Vail Health, The Steadman Clinic, Vail-Summit Orthopaedics, Sports Rehab, and others, the use of the terms "combination" or "collaboration" cannot be judged by a particular label.  The elements of various exclusive dealing arrangements, even in a *de facto* context, "are cognizable under the antitrust laws"[29] because "they may be used by a monopolist to strengthen its position, which may ultimately harm competition."[30]  What is important is that § 2 requires a defendant to have either monopoly power or a dangerous probability of achieving it.[31] Plaintiffs allege that Vail Health had monopoly power (over 70-80% market share) when it collaborated with Steadman, VSO, Sports Rehab, and others.  So there was a dangerous probability that Vail Health's potential combinations would "strengthen[] or prolong[] [its]

---

[27]     731 F.3d 1064, 1072 (10th Cir. 2013) (citing *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 767-68 (1984)).
[28]     *Nat'l Collegiate Athletic Ass'n v Alston*, 141 S. Ct. 2141, 2155 (2021).
[29]     *McWane, Inc. v. F.T.C.*, 783 F.3d 814, 834 (11th Cir. 2015) (quoting *Minn. Mining & Mfg. Co. v. Appleton Papers, Inc.,* 35 F.Supp.2d 1138, 1144 (D.Minn.1999)).  *See also Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 45 (1984) (O' Connor, J., concurring); *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 270 (3d Cir. 2012).
[30]     *Z.F. Meritor*, 696 F.3d at 270 (citation omitted).
[31]     XI Areeda & Hovenkamp, *Antitrust Law* ¶ 1800c5, at 22 (3d ed. 2011).

market position"[32] and constitute an improper means to maintain monopoly power.[33]  Other combinations may be relevant, including vertical exclusionary agreements involving unnecessary impediments to rivals' ability to compete,[34] but that is beyond this motion.

In sum, anticompetitive combinations come in many different forms and are too dependent upon context for parties, courts, or commentators to enumerate all their varieties.[35]  So as to the illegal combinations here, Vail Health should be ordered to produce documents relating to: (1) the combination's purpose—that is, valid business reasons; (2) the form(s) the combination would take; (3) who would control and manage the new organization; (4) the prices that would be charged; (5) the costs that would be incurred and how those costs would be funded; (5) the potential profits that would be gained or losses incurred; (6) assessments of the net effect that the combination would have on consumer welfare; (7) assessments of the net competitive effects and whether the combination harmed equally efficient rivals; (8) assessments of the procompetitive or efficiencies that would be generated by the combination; and (9) attempts to exclude (potential) competitors or on some basis other than efficiency.  Plaintiffs are entitled to Vail Health's full and complete responses so they can assess these § 2 issues.

## B. The Discovery At Issue Goes Directly To The Elements Of Sherman Act § 2 Monopolization And Attempts to Monopolize.

Vail Health initially objected to Request Nos. 7-8 relating to a joint venture or other combinations because it "seeks information about 'proposed' conduct that is not relevant

---

[32]   IIIB Areeda & Hovenkamp, *Antitrust Law* ¶ 760b7, at 54 (3d ed. 2008).
[33]   *United States v. Dentsply Int'l., Inc.*, 399 F.3d 185, 187 (3d Cir. 2005).
[34]   *Aspen Skiing Corp. v. Aspen Highlands Skiing Corp*, 472 U.S. 585, 605 n.32 (1985); *United States v. Microsoft Corp.*, 253 F.3d 34, 50 (D.C. Cir. 2001).
[35]   *Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1087 (D.C. Cir. 1998).

6

because *it cannot form the basis of anticompetitive conduct*."[36]   Although Plaintiffs repeatedly asked Vail Health to provide legal authority supporting that contention, it did not, which may explain why Vail Health later stated on the record that it would not withhold discovery based on that objection.  In any event, Plaintiffs briefly address that issue now.

Section 2's "attempt to monopolize" language is unambiguous.  It has survived for over a century without amendment because its meaning is clear: "An attempted monopolization claim necessarily involves conduct which has *not yet succeeded*; otherwise, the plaintiff would bring an actual monopolization claim."[37]  The principle that a proposed transaction need not have been finalized is supported by *United States v. American Airlines, Inc.*, which held that "the government need not allege or prove an agreement to monopolize in order to establish an attempted joint monopolization under section 2 of the Sherman Act"—that is, "an agreement is not an absolute prerequisite for the offense for the attempted joint monopolization…."[38]  Most importantly, the Tenth Circuit adopted *American Airlines* in *Colorado Interstate Gas Company v. Natural Gas Pipeline Company of America*:  "it is no defense to an attempted monopolization charge that the defendant's attempt to monopolize proved to be unsuccessful….The capacity of the defendant to monopolize must be evaluated at the commencement of the predatory scheme."[39]  *Colorado Interstate* is controlling here, so there was no legal basis justifying Vail Health's objection.

---

[36]   Ex. 13 at Request Nos. 7-8; Ex. 15 at Interrog. Nos. 11-12 (emphasis added).
[37]   *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 474-75 (5th Cir. 2000) (emphasis added); *Multiflex v. Samuel Moore & Co.*, 709 F.2d 980, 990 (5th Cir. 1983) (noting attempted monopolization "is usually defined as an unsuccessful attempt").
[38]   743 F.2d 1114, 1117, 1122 (5th Cir. 1984).
[39]   885 F.683, 695-96, n.21 (10th Cir. 1989).

## III.   VAIL HEALTH'S FAILURE TO RESPOND TO WRITTEN DISCOVERY.

**Request Nos. 7 and 8** seeks documents relating to any proposed joint venture, merger, or other combination with The Steadman Clinic and its foundation the Steadman Philippon Research Institute ("SPRI"), and Vail-Summit Orthopaedic, and its foundation Vail-Summit Orthopaedics Foundation ("VSOF").[40]   Many produced emails refer to documents at issue here, but Vail Health produced email strings that did not include the attachments, perhaps to avoid producing relevant documents.

For example, a term sheet was provided to VSO regarding the physical therapy joint venture.[41]  But neither the underlying email nor the term sheet were produced. The communications regarding the physical therapy joint venture end in early 2017, with Brown representing that the joint venture was in "a holding pattern."[42]  But no produced documents explain why it was put on hold, or what occurred thereafter.   Another combination involved Vail Health's potential purchase of Avalanche Physical Therapy from VSO,[43] which acquired Avalanche in about 2017.  While some communications were produced, Vail Health produced no documents as to its decision about this acquisition.

Other combinations responsive to this request include agreements with Steadman and VSO (or their foundations) related to the expansion in Summit County, Basalt, and Aspen that includes Howard Head physical therapy.[44]  No agreements or communications related to those combinations were produced, despite also being relevant to geographic market and damages.  Request Nos. 7 and 8 also includes agreements between Vail

---

[40]      Ex. 13 at Request Nos. 7-8 [1st RFPs].
[41]      Ex. 17 at VH_Fed001973 [email] (asking questions about JV term sheet).  *See also* Ex. 18 at VH_Fed006376 [email] (term sheet attached to email but not produced).
[42]      Ex. 19 at VH_Fed001687 [email].
[43]      Ex. 20 [email].
[44]      *See, e.g.,* Exs. 21-22 (opening offices in Basalt and Dillon with Steadman).

Health and Steadman, SPRI, VSO, VSOF related to lease agreements at various locations, including in Vail and other new locations.  In an email from CEO Will Cook to Brown, Cook sent an attachment related to the Steadman lease at Frisco Basecamp, which has not been produced, despite Steadman apparently "agree[ing] to exclusivities in Basecamp."[45]  No documents related to these "exclusivities" was produced despite also being relevant to geographic market and anticompetitive conduct.  The only lease agreement produced was for Steadman's space in Vail, which shows that Vail Health restricted Steadman from engaging in physical therapy in that space.  It is anticipated that similar anticompetitive restrictions were placed in other lease agreements with Steadman (*e.g.*, in Summit and Basalt), SPRI, VSO, and VSOF.

Board minutes reflect approved leasing and other agreements with SPRI and Steadman in July 2015,[46] which have not been produced.  And in December 2015, the Board approved the revised SPRI and Steadman lease agreements.[47]  While the Steadman lease for Vail was produced, the lease with SPRI was not.  At the same time the Board approved the lease agreements, it approved a charitable contribution agreement with SPRI, providing SPRI $43 million in funding over a ten-year period.  Vail Health was given two seats on SPRI's Board, likely to protect its $75 million investment in SPRI.[48]  The SPRI and Steadman agreements are thus inseparable:  "both parties consider[ed] [all agreements as] a package strategic alliance."[49]  Vail Health also produced 2012 Board minutes reflecting an agreement between Steadman and Vail

---

[45]     Ex. 23 at VH_Fed004855 [email].
[46]     Ex. 24 at VH_002228 [Board minutes].
[47]     Ex. 25 [email].
[48]     Ex. 26 at VH_004081 [Presentation].
[49]     Ex. 27 at VH_Fed003936 [email].

Health seeking to partner on building an apartment complex, but no agreements, communications, or anything else was produced.  Vail Health also proposed a joint venture with Steadman related to a Sports Performance Center, but other than a PowerPoint,[50] no terms sheets, agreements, or other communications were produced.

Vail Health also engaged multiple consultants to analyze various combinations with Steadman, SPRI, VSO, and VSOF.  Haverford conducted a valuation analysis for the physical therapy joint venture between Vail Health, Steadman, and VSO. Only the Haverford engagement letter was produced[51] even though there are draft and final reports, work papers[52] and other communications referenced in emails.  Likewise, Healthcare Transaction Advisors conducted a valuation analysis for the physical therapy joint venture.  While Vail Health produced some communications and draft reports,[53] the engagement letter, documents sent to HTA, and the final report were not.  No Board minutes were produced related to these consultants either.

Additionally, Hammes Company proposed a collaboration between itself, Steadman, and Vail Health, which included physical therapy.  Vail Health produced no Hammes documents.  Plaintiffs only know about this combination because Steadman produced a PowerPoint in response to a Rule 45 subpoena but that production was incomplete.[54]  Vail Health also engaged Jornada Partners[55] to assist with a combination for physical therapy related to Steadman's private equity offering, but only limited and

---

50  *See* Ex. 28 [PowerPoint].
51  Ex. 29 [Haverford engagement letter].
52  Exs. 30-33 (excerpting report; referencing and attaching workpapers, none produced).
53  *See, e.g.,* Ex. 34 [HTA Draft report].
54  Ex. 35 [Hammes PowerPoint].
55  Ex. 36 [email].

select communications were produced.   No documents about the outcome of this proposed collaboration have been produced, nor was the term sheet that was attached to one produced email.[56]   Likewise, Deloitte was engaged in about 2013 and 2015 to conduct certain analyses related to the Steadman relationship,[57] but none of Deloitte's communications or reports have been produced.

Finally, Vail Health relies on its production in the state court action, which relates to the negotiations of Vail Health and Steadman related to letters of intent and the 2015 joint venture for physical therapy services.   Many are redacted,[58] purportedly because they contain confidential and irrelevant information.[59] Plaintiffs moved to compel the unredacted documents, which the state court ordered be reviewed *in camera*.[60]   While the Special Master has not yet issued an order as to those documents, the Steadman joint venture documents are directly relevant here and should be produced in unredacted form.   "The Federal Rules of Civil Procedure do not recognize irrelevance as a privilege or an objection that warrants redaction."[61]   Nor can Vail Health claim the redactions protect confidentiality—the protective order adequately addresses any such concern.[62]

**Request No. 24** seeks documents relating to any charitable contributions or pledges by Vail Health to Steadman, SPRI, VSO, or VSOF.   As noted above, Vail Health

---

[56]   Ex. 37 at VH_Fed004536 [email] (term sheet attached; not produced).
[57]   *See* Ex. 26 at VH_Fed004047 [Presentation]; Ex. 38 at VH_Fed004168, No. 6.
[58]   Ex. 39 (compiling redactions).
[59]   Ex. 40 at 3 [State court statement].
[60]   *Id.*
[61]   *Medtronic Sofamer Danek, Inc. v. Michelson*, 2002 WL 33003691, at *5 (W.D. Tenn. Jan. 30, 2002).
[62]   *In re iPhone/ iPad Application Consumer Privacy Litig.*, No. 11-MD-2250, 2013 WL 843833, at *6 (N.D. Cal. Mar. 6, 2013) (holding party not "entitled to redact 'incredibly sensitive and highly confidential' irrelevant information" when the party could " not explain why the protective order to which it agreed…[wa]s insufficient").

made a significant ten-year commitment of $4.3 million to SPRI beginning in 2015. Limited communications were produced, but the agreement was not. The Vail Health Foundation also paid SPRI of over $1.3 million in 2017 and over $1.1 million in 2018, characterizing those payments on its tax returns as pass through donations. The agreements and related communications have not been produced.

As to VSOF, according to publicly-filed tax returns, in June 2015, Vail Health and VSOF partnered to obtain a $62,000 grant. Other collaborative research agreements were also apparently entered into with Vail Health. None have been produced.

**Interrogatory No. 11** seeks information about Vail Health directors, officers, managers, employees, attorneys, accountants, and any other consultants who participated in discussions related to any joint venture, collaboration, or strategic partnership.[63] Vail Health's discussions were not limited to a joint venture with Steadman, VSO, and Sports Rehab—the three identified in the answer. The documents produced reflect proposed (or consummated) partnerships with Steadman,[64] SPRI, VSOF, Hammes Company, Aspen Valley Hospital, the Town of Avon, the Town of Vail, Eagle County, Eagle County Public Schools, Sonnenalp Properties, Vail Resorts, and Vail Valley Surgery Center. None of these were disclosed in Vail Health's answer to Interrogatory No. 11. Nicholas Brown, former head of Howard Head, also confirmed there were "a lot of different conversations over the years with various providers on ways in order to collaborate. There's various nondisclosure agreements surrounding those."[65] Yet, those collaborations were not disclosed, nor the nondisclosure agreements produced.

---

[63]   Ex. 15 at Interrog. No. 11.
[64]   Ex. 28 [Proposed joint venture with Steadman for Sports Performance Center].
[65]   Ex. 41 at 190:9-13 [Brown Dep.].

As to what Vail Health did disclose with respect to Steadman, VSO, and Sports Rehab, Vail Health's answer is incomplete.  Vail Health does not identify where the meetings took place, who attended, summarize what was discussed, identify why no agreements were reached, and fails (in part) to identify documents relied upon.[66]

As to Steadman, Vail Health refers to limited documents produced in the state court action.  But VAILJV000001-198 relates to the 2015 Steadman term sheet and letters of intent for the 2015 joint venture.  Plaintiffs do not seek further supplementation as to subsection (a) and (c) as to those documents.  Vail Health also cites testimony of Brown and Doris Kirchner,[67] but their testimony does not answer Interrogatory No. 14. Vail Health also cites to VAIL_003482-3569 and specifically eight documents;[68] some are nonresponsive while others simply demonstrate Vail Health's lack of disclosure.

For example, VAIL_003481 and 3544 relate to Cimino[69] and are nonresponsive. VAIL_003489 and 3521 reference *upcoming* meetings but do not identify who actually attended those meetings or what was discussed.[70]  As to the former, it mentions a meeting on April 1, as well as one March 24, 2016 (*see also* VAIL_03517) in which a confidential draft valuation (Haverford report) was discussed and questions raised,[71] but the answer does not summarize those discussions, identify who attended, or where the meetings were held.  In the latter email, Drawbaugh states he anticipates "a substantial amount of due diligence will be required to mutually align the PT and Hammes business,"[72] but Vail

---

[66]  Ex. 15 at Interrog. No. 11, and subsections (a) and (b).
[67]  *See id.*
[68]  *Id.*; Ex. 42 (compilation of 8 documents).
[69]  Ex. 42 at VAIL_003481, 3544.
[70]  *Id.* at VAIL_003489, 3521.
[71]  *Id.* at VAIL_003489.
[72]  *Id.* at VAIL_3521.

Health provides no information about Hammes or that discussion.  In VAIL_003495 and 3503, two PowerPoint presentations were purportedly presented,[73] but where the meetings took place, who attended, and what was discussed have not been disclosed. In VAIL_003513, Brown and Drawbaugh had a discussion at a September 22, 2016 "event,"[74] but Vail Health provides no other information about that discussion, or the following week's meeting.[75]  Vail Health has also not disclosed why the joint venture for physical therapy was later restructured as a managed services organization ("MSO"), identify the terms of that agreement, or explain why that agreement was not reached.

And as to VSO, Vail Health states in very general terms that there were discussions concerning physical therapy services with VSO.  The terms of the proposed MSO agreement are not disclosed, nor was the term sheet produced.[76]  From the documents produced, Vail Health had discussions with PJ Abbott, Richard Cunningham, and Chip Webb of VSO, but they were not even mentioned.  Additionally, Vail Health states that Duane Morris attorneys participated in discussions, but has not disclosed what meetings they attended, with whom, or what was discussed.  Nor has Vail Health produced any documents involving Duane Morris.

Vail Health should be ordered to fully answer Interrogatory No. 11.

**Interrogatory No. 14** seeks information related to the number of patients and revenues and profits generated by doctor referrals, which is related to both Steadman's and VSO's relationship with Vail Health.  Vail Health's answer references a summary

---

[73]   *Id.* at VAIL_003495, 3503.
[74]   *Id.* at VAIL_003513.
[75]   *Id.*
[76]   Exs. 17-18 (referencing term sheet that was not produced).

chart from 2013 through August 2016,[77] but that does not break down the information as requested in Interrogatory No. 14.  The summary is actually derived from a more detailed report generated by Nicholas Brown, former head of Howard Head, that includes a breakdown of the number of referrals by each doctor, as well as the number of physical therapy units (by doctor) those referrals generated in 2014 and 2015.[78]  That the data and reports requested in Interrogatory No. 14 are available to Vail Health is evident from the Referring Physician Billing Audit page of that report, which shows the "Report Run by: SOURCEMED/brownn."  Vail Health should be ordered to produce the reports detailing the referral breakdown by doctors and units of physical therapy for 2012-2013 and 2016 to the present just as Brown generated for 2014 and 2015.

## IV.   PLAINTIFFS ARE ENTITLED TO AN AWARD OF ATTORNEY'S FEES.

Rule 37(a)(5) provides that if a party moving to compel discovery is successful, the court "must" award the moving party its reasonable attorney fees.  But the court "must not" order this payment if it was filed without a good faith effort to obtain the discovery, the objection was substantially justified, or an award of expenses would be unjust.  Those factors are not present here, so an award of attorney's fees is appropriate, particularly given the number of deficiencies in Vail Health's production.  Vail Health's refusal to produce all attachments to produced emails evidences a strategic decision to "pick and choose" only those documents it deems beneficial to its case, which is not permitted.

## <u>CONCLUSION</u>

Plaintiffs request that the Court grant Plaintiffs' motion to compel in its entirety.

---

[77]   Ex. 15 at Interrog. No. 14; Ex. 43 at VH_Fed_00875.
[78]   Ex. 44 at Excel spreadsheets [Doctor referrals].

Dated:  September 7, 2021

*s/Alan L. Kildow*
Alan L. Kildow, MN# 0143133
790 Potato Patch Drive
Vail, CO 81657
Telephone: (970) 390-6675
E-mail:  alkildow@aol.com

Jesse Wiens, Colo. #33903
Fahrenholtz & Wiens LLC
100 West Beaver Creek Boulevard
Suite 236
Avon, CO 81620
Telephone: (970) 949-6500
E-mail:  fwlawyers@gmail.com

Attorneys for Plaintiffs Lindsay Winninger and
Sports Rehab Consulting LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 7, 2021, I served a true and correct copy of Plaintiffs' Rule 37 Motion to Compel #4 Relating To Joint Ventures And Other Combinations, including exhibits, some of which are filed as restricted under the protective order issued in this case, via the Court's ECF system on:

> Shannon Stevenson
> Janet A. Savage
> Jackie Roeder
> Daniel Richards
> Davis Graham & Stubbs LLP
> 1550 17th Street, Suite 500
> Denver, CO  80202
>
> Counsel for Defendant

> *s/ Alan L. Kildow*
> Alan L. Kildow