IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

    Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation.

    Defendant.

---

**PLAINTIFFS' REPLY TO RULE 37 MOTION TO COMPEL #3
RELATING TO RFP NO. 15 (BOARD DOCUMENTS), INTERROGTORY NOS. 12-13,
20-21, AND 23 (IDENTIFICATION OF POTENTIAL WITNESSES), FAILURE TO
PRODUCE PRIVILEGE LOG, AND REDACTED DOCUMENTS**

---

## INTRODUCTION

Plaintiffs' motion should be granted for many reasons, including:

- The antitrust issues here were not the subject of discovery in the Eagle County case, and Vail Health has not conducted a reasonable search necessary to identify documents responsive to Plaintiffs' RFPs.

- The scope of discovery in antitrust cases is broad, and Vail Health has improperly limited its discovery responses on the basis of its unilateral and limited determinations of relevancy.

- Board documents that undoubtedly reflect deliberations over tens or hundreds of millions of dollars of joint ventures and other combinations should be produced because, among other reasons, they are relevant to the definition of the geographic market and monopoly power.

- Vail Health has asserted baseless objections to interrogatories to avoid the most basic of discovery about witnesses and discussions.

- Vail Health offers no justification for its untimely and deficient privilege log.

Plaintiffs are therefore entitled to their attorneys' fees for bringing this motion.

# ARGUMENT

## I. VAIL HEALTH CLAIMS TO HAVE CONDUCTED AN EXTENSIVE SEARCH, BUT ITS PRODUCTION AND RESPONSES SHOW OTHERWISE.

Vail Health claims that "the **parties** produced more than 65,000 pages of documents in the state court action regarding the same facts at issue in this case."[1] But virtually all do not relate in any way to the antitrust issues presented in Plaintiffs' motions to compel—that is, monopoly power, supracompetitive prices, costs, relevant geographic and product markets, barriers to entry, and illegal combinations. Of the "65,000" pages of documents produced, approximately 300 pages (0.0046%) are arguably relevant to the antitrust issues addressed in Plaintiffs' motions to compel. How Vail Health calculated the 65,000 pages is unknown, but Plaintiffs produced over 17,000 pages (including all its patient medical records), Cimino produced approximately 200-300 pages, and Vail Health produced about 6,000 pages.[2] Vail Health admitted, only recently, that it has "produced approximately 6,900 pages of documents related to *antitrust issues that had not been litigated in the related state case*...."[3] But that amounts to 1,252 documents from five custodians in an antitrust case where the discovery period spans almost a decade:

| Custodian | Description |
| --- | --- |
| Former VP of Howard Head Nicholas Brown | 622 emails/attachments |
| Director of Operations of Howard Head Ellen Broersma | 334 emails/attachments |
| Former CEO Doris Kirchner | 147 emails/attachments |
| CEO Will Cook | 68 emails/attachments |
| Vail Health | 81 documents/contracts, Board minutes, policies |

---

[1] *See, e.g.,* Vail Health Opp'n at 1 [ECF No. 152] (emphasis added).
[2] This excludes the 55,000 pages of documents that David Cimino took when he left Vail Health, the 9,500 documents that Winninger had from her time at RPC-Vail, and the "matching" documents Vail Health produced as to both. None are germane to this motion.
[3] *See* Vail Health Opp'n at 1 [ECF No. 152] (emphasis added).

Vail Health also took a month to produce 62 emails (34 from Brown; 28 from Kirchner) for the time period November 1, 2012 to December 15, 2015,[4] Of those, 13 relate to Steadman, all but one are duplicates.  So Vail Health has not conducted a reasonable search of relevant custodian emails, reviewed Board documents, produced email attachments, and is now withholding some documents under the guise of privilege.[5]

Vail Health also views relevancy narrowly—that is, documents must relate to Howard Head physical therapy in Vail Valley to be relevant.[6] But under Rule 26(b)(1), discovery may be obtained "regarding any nonprivileged matter that is relevant to any party's claim or defense," meaning relevancy is broadly construed for pretrial discovery.[7] "[A] request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party."[8]  "Discovery in an antitrust case is [also] necessarily broad because allegations involve improper business conduct ....Such conduct is generally covert and must be gleaned from records, conduct, and business relationships."[9] As such, "courts have found it not unusual 'to probe matters at the heart of the ***business dealings and competitive relationships*** of the parties' in an antitrust action…."[10]  Plaintiffs are thus entitled to broad discovery of antitrust issues.

---

[4] *See* ECF No. 115 at 2 [Motion to modify scheduling order].
[5] *See, e.g.* Ex. 31 (cataloging missing documents from Vail Heath's exhibits); Ex. 32 [Sept. 10, 2021 privilege log].
[6] *See* Vail Health Opp'n at 5 [ECF No. 152]. *But see Dep't of Housing & Urban Dev.*, 199 F.R.D. 168, 172 (D. Md. 2001) ("mistake to argue that no fact may be discovered unless it directly correlates" to factual allegations in complaint).
[7] *Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001) (citations omitted).
[8] *Spacecon Specialty Contractors, LLC v. Bensinger*, Civil Action No. 09-cv-02080-REB-KLM, 2010 WL 4823056, at *4 (D. Colo. Nov. 15, 2010).
[9] *Callahan v. AEV, Inc.*, 947 F. Supp. 175, 179 (W.D. Pa.1996); *United States v. Int'l Bus. Machs. Corp.,* 66 F.R.D. 186, 189 (S.D.N.Y. 1974).
[10] *B-S Steel of Kan. v. Tex. Indus., Inc.*, No. 01-2410-JAR, 2003 WL 21939019, at *3 (D. Kan. July 22, 2003).

## II. VAIL HEALTH SHOULD BE ORDERED TO PRODUCE BOARD DOCUMENTS.

### A. Board Documents Are Relevant To The Monopolistic Agreements Vail Health Entered Into Or Attempted To Enter Into.

Vail Health claims the Board documents have limited value,[11] which is remarkable given a Board's fiduciary duties, Vail Health's $100+ million obligation to its bondholders, and Colorado regulatory oversight. A couple of facts show how improbable that statement is: (1) In 2015-2016, Steadman threatened to let its lease expire in the Vail Health building and move into cheaper space down Valley; (2) build its own ambulatory surgery center; and (3) form its own physical therapy clinic. If that happened, Vail Health would have lost a principal source of surgical business and 60% to 70% of its physical therapy referrals.

The notion that Board documents have limited value suggests that the Board did not know enough about these potentially deleterious events to discuss them or, if they did, did not have the good sense to document the deliberations. It is not credible that the Board's deliberations about Steadman were not recorded. But if they were not, that would be as important as if the facts were copiously documented. It should be assumed, however, that the Board was informed of the facts, hashed out a strategy, and recorded those deliberations. In which case, if there is nothing in the Board documents from which specific intent to maintain a monopoly can be inferred, Vail Health would want to produce them. Or, quite possibly, they reveal a plan to head off a Steadman exodus by combining with it in some joint venture or other combination to maintain Vail Health's monopoly power. Either way, they are relevant and should be produced (unredacted).

Additionally, Vail Health proposed separate joint ventures with Steadman and VSO to provide physical therapy services. Vail Health convinced Steadman to stay in the Vail

---

[11] Vail Health Opp'n at 4-5 [ECF No. 152].

4

Health space and drop the idea of forming its own physical therapy clinic. At the same time, Vail Health also agreed to pay the Steadman Philippon Research Institute $4.3 million a year for ten years—or $43 million—a relationship they valued at over $175 million. And Vail Health passed another $6 million to SPRI that did not show up on Vail Health's books.[12] At the same time, VSO was also seeking contributions from Vail Health for its foundation, and Vail Health was considering purchasing a competing physical therapy group owned by VSO. The full Board documents—and the Board-approved agreements—have not been produced.

Then there is the Summit County and Basalt expansions, which includes Howard Head. The Board approved an initiative that included a new surgical and physical therapy project, even empaneling a special Steering Committee to consider the issue. These facts go directly to relevant geographic market and monopoly power. If Plaintiffs' definition of the geographic market (Eagle County from East Vail to Gypsum) is correct, Vail Health moved into two new geographic markets (Summit County/Basalt) that should not be considered for § 2 market share purposes. Vail Health wanted to grow those businesses and understood that patients would not drive from Summit to the Vail Valley for physical therapy. So for patient convenience,[13] it needed the Frisco location. These facts indicate that Summit County and the Vail Valley are separate geographic markets.[14]

These facts are also relevant to monopoly power. If Vail Health had existing underutilized surgical suites and excess physical therapists in its Eagle County locations,

---

[12]   *See, e.g.,* Vail Health Ex. 4 at VAIL_002879 [ECF No 155-2 at 101].
[13]   *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1027 (10th Cir. 2002) (consumer convenience is geographic market factor to be considered).
[14]   *F.T.C. v. Penn State Hershey Med. Center*, 838 F.3d 327, 338 (3d Cir. 2016).

5

it would have been economically inefficient to open new facilities in Summit County. But if Vail Health did not have underutilized capacity in Eagle County, as its former CFO Charles Crevling testified, that would be direct evidence that Vail Health maintained enough market share to raise prices to supracompetitive levels; restricted output is a factor in determining monopoly power.[15] Vail Health may also attempt to argue that Howard Head has been operating at a $14 million deficit since 2016, although the produced Board documents do not mention that significant fact. All these issues should have been carefully addressed by the Board, and if not, that is relevant as well.

### B.     Redacting Board Minutes Is Improper And Unnecessary.

Vail Health has claimed it properly redacted Board minutes for nonresponsive information[16] and that practice is "widely accepted." But the two cases it cites summarily decide the issue without any legal analysis. Vail Health does not address the majority line of cases cited in Plaintiffs' motion that redacting portions of relevant documents is not permitted.[17] Vail Health's redactions are even more problematic because it redacted the topics discussed, making it impossible for Plaintiffs and the Court to determine whether the redactions contain relevant information, or not. But a court should not have to review "nonresponsive" portions *in camera,* particularly when the protective order addresses any confidentiality concerns. Unredacted Board documents should be produced.

---

[15]    *F.T.C. v. Ind. Fed'n of Dentists*, 476 U.S. 460-61 (2009) (stating proof of actual detrimental effects, like reduced output, can obviate need for inquiry into market power); *Broadcom Corp. v. Qualcom, Inc.*, 501 F.3d 297, 307 (3d Cir. 2007) (direct evidence of market power may include "actual supracompetitive prices and restricted output"); *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995) (same).
[16]    Vail Health Opp'n at 4 [ECF No. 152].
[17]    Pls.' Mot. at 13-14 [ECF No. 127]. *See also Great Southland Ltd. v. Landash Corp.*, Civil Action 2:17-cv-719, 2021 WL 603270, at *3 (S.D. Ohio Jan. 21, 2021) (citing cases and finding rules do not support redacting irrelevant information in minutes).

### III. VAIL HEALTH SHOULD BE COMPELLED TO ANSWER INTERROGATORIES.

#### A. Vail Health Waived The Numerosity Objection.

Vail Health objected to Interrogatory Nos. 10-13, 20-21, 23, and 25 as exceeding the allowable limit, thus Plaintiffs purportedly exhausted their 25 interrogatories at No. 11. But Vail Health not only answered Nos. 10-11, 14, 16-19, 22, and 24 but says it also answered Nos. 12-13 at issue here.[18] When a party believes that another party has asked too many interrogatories, the party "should object to all interrogatories or file a motion for protective order.[19] The responding party should not answer some interrogatories and object to the ones to which it does not want to respond,"[20] as Vail Health did here. Vail Health could also have answered the interrogatories up to the limit and objected to the rest.[21] It did not do either, so Vail Health has waived any numerosity objection.

#### B. Vail Health Has Not Sustained Its Burden As To Other Objections.

In any event, the subparts to Interrogatory Nos. 12-13, 20-21, and 23 are not improper, and Vail Health cites no case otherwise. Nos. 12-13 are similar to Nos. 3 and 11,[22] which Vail Health *did not* object to on numerosity grounds. All four request factual information about witnesses who participated in discussions about specific topics, which

---

[18] *See* Ex. 33 at Interrog. Nos. 11-12 (stating No. 11 incorporated into Nos. 12-13).
[19] *See, e.g, Walker v. Meyer*, Civil Action No. 08-cv-01911-REB-KLM, 2008 WL 4787569, at *2 (D. Colo. Oct. 30, 2008) ("proper way" is to seek protective order).
[20] *Allahverdi v. Regents of Univ. of N.M.*, 228 F.R.D. 696, 698 (D.N.M. 2005); *Munoz v. Citywide Banks of Colo., Inc.*, Civil Action No. 09-cv-01124-PAB-MEH, 2010 WL 2650042, at *3 n.3 (D. Colo. June 30, 2010) (discussing *Allahverdi;* by objecting to discrete subparts and not answering, party did not waive that objection but other untimely objections waived); *Bachman v. Bachman*, 8:19CV276, 2020 WL 2020 WL 6784194, at *6 (D. Neb. Nov. 18, 2020) (selectively responding is impermissible).
[21] *C.R., Bard, Inc. v. Smiths Med. ASD, Inc.*, No. 2:12-cv-00036-RJS-DAO, 2020 WL 4050455, at *5 (D. Utah July 20, 2020) (citing Moore's that "responding party [should] answer the…interrogatories [in numerical order], and object to the remainder").
[22] *Compare* Ex. 13 at Interrog. Nos. 3 and 11 *with* Interrog. Nos. 12-13 [ECF No. 133].

are to "be treated as a single interrogatory even though it requests the time, place, persons present, and contents be stated separately for each such communication."[23]

For example, No. 12 seeks the identification of Vail Health's employees and agents who participated in business planning discussions involving physical therapy. References to pricing, services, costs, etc. are the types of items that would be discussed to open a medical practice. No. 13 seeks the identification of Vail Health's employees and agents about legal or compliance discussions involving physical therapy. Nos. 20-21 and 23[24] seek the identification of potential witnesses on specific topics. Nos. 20(e)-(f) and 21(d)-(e) seek the name, address, and telephone number of Vail Health attorneys and accountants, internal and external, involved in discussions about physical therapy services. No. 23(d)-(e) seeks the name, address, and telephone number of third-party consultants and vendors related to physical therapy and billing. It should not have been necessary to file a motion to compel names of potential witnesses—it is basic discovery.

Vail Health also asserts that the interrogatories are "wildly" and "incredibly over broad,"[25] claiming that the use of "each and every" means that it does not have to answer. But as Plaintiffs clarified in their May 14 letter and at the May 26 conferral, the term "each and every" has the same meaning as "all" in Plaintiffs' RFPs—"that is, information that can be identified after a reasonably diligent search is conducted by Vail Health."[26] In passing, Vail Health also claims that No. 12 is unduly burdensome and seeks information

---

[23]  Fed. R. Civ. P. 33(a), 1993 amendment cmt. (a). *See also See Carbajal v. Warner*, Civil Action No. 10-cv-02862-REB-KLM, 2015 WL 4456190, at *3 (D. Colo. July 21, 2015) ("subparts…eliciting details concerning a common theme…considered a single question").
[24]  Ex. 13 at Interrog. Nos. 20-21, 23 [ECF No. 133].
[25]  Vail Health's Opp'n at 8-9 [ECF No. 152].
[26]  Ex. 1 at 2 [email and deficiency letter] [ECF No. 132].

disproportionate to the needs of the case.[27]  But Vail Health cannot assert "'boilerplate claims that the requested discovery is oppressive [or] burdensome"[28] but "must specifically show in its response…how each request for production or interrogatory is objectionable."[29]  "The blanket assertion that Interrogatory No. 12 is…burdensome, without sufficient justification, does not satisfy [its] burden."[30]  Vail Health should be ordered to answer Interrogatory Nos. 12-13, 21(d)-(e), and 23(d)-(e).

## IV. VAIL HEALTH PROVIDES NO EXCUSE FOR ITS DELAY IN PRODUCING A PRIVILEGE LOG, WHICH IS DEFICIENT.

After stating it would produce a privilege log on May 28, then on July 25, then in its September 2 opposition, Vail Health finally produced a 580-entry privilege log on September 10, almost a month after Plaintiffs' motion was filed.  Vail Health attempts to justify its delay by claiming counsel was on vacation and had to respond to Plaintiffs' motions to compel (*both in August*) but does not explain why a log was not produced from November 2020 (when Vail Health first said its document production would be made) until September 10.  Vail Health also appears to contend the untimely production is justified because Plaintiffs' produced their 10-entry log in August.[31]  But Plaintiffs' compliance is not a factor in whether Vail Health timely produced a privilege log.[32]

---

[27]   Vail Health's Opp'n at 7-8 [ECF No. 152].
[28]   *Klesch Co. v. Liberty Media Corp.,* 217 F.R.D. 517, 524 (D. Colo. 2003).
[29]   *Medcorp, Inc. v. Pinpoint Techns., Inc.*, Civil Action No. 08-cv-00867-MSK-KLM, 2009 WL 1049758, at *2 (D. Colo. Apr. 20, 2009).  *See also Bottoms v. Liberty Life Assurance Co. of Boston*, Civil Action No. 11-cv-01606-PAB-CBS, 2011 WL 6181423, at *7 (D. Colo. Dec. 13, 2011) (noting party must show undue burden or expense that is unreasonable and provide affidavit or other evidentiary proof of time or expense involved).
[30]   *Medcorp,* 2009 WL 1049758, at * 2.
[31]   Vail Health Ex. 7 (identifying 10 entries; 6 relate to draft complaint) [ECF No. 154].
[32]   *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 954 (10th Cir. 2002) ("Generally, a court should 'not excuse non-compliance with Rule 26 by one party for the reason that the other party may not have fully complied'….the[] recourse was a motion to compel.") (citations omitted).

9

Even then, Vail Health's September 10 privilege log is deficient, as outlined in Plaintiffs' September 12 email,[33] which includes apparently seeking to protect factual documents and third-party documents under the protection of attorney-client privilege. Plaintiffs also requested a meet and confer to discuss the log and provided several alternative dates. Vail Health has not responded to that email, either to set a conferral call or to address any of the issues outlined in the email. Nor has it informed Plaintiffs whether it will supplement or not, despite that being a straightforward issue. Vail Health has provided no justifications for its untimely and deficient privilege log.

## V. PLAINTIFFS ARE ENTITLED TO AN AWARD OF ATTORNEY'S FEES.

Under Rule 37(a)(5), if a party moving to compel discovery is successful, the court "must" award the moving party its reasonable attorney's fees. Plaintiffs repeatedly made good faith efforts to resolve the dispute through numerous communications and repeated requests for conferrals. Vail Health's decision to only produce a privilege log a month after the motion to compel, its refusal to produce unredacted Board documents, refusal to even search for other Board documents, such as with respect to the Executive Committee, Steering Committee, and Finance Committee, as well as objecting to basic interrogatories without justification, warrants the award of attorneys' fees.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion to compel in its entirety.

---

[33] Ex. 34 [email].

10

Dated:  September 16, 2021

*s/Alan L. Kildow*
Alan L. Kildow, MN# 0143133
790 Potato Patch Drive
Vail, CO 81657
Telephone: (970) 390-6675
E-mail:  alkildow@aol.com

Jesse Wiens, Colo. #33903
Fahrenholtz & Wiens LLC
100 West Beaver Creek Boulevard
Suite 236
Avon, CO 81620
Telephone: (970) 949-6500
E-mail:  fwlawyers@gmail.com

Attorneys for Plaintiffs Lindsay Winninger and Sports Rehab Consulting LLC

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2021, I served a true and correct copy of Plaintiffs' Reply to Rule 37 Motion to Compel #3 Relating to RFP No. 15 (Board Documents), Interrogatory Nos. 12-13, 20-21, and 23 (Identification of Potential Witnesses), Failure to Produce Privilege Log, and Redacted Documents, including exhibits, via the Court's ECF system on:

Shannon Stevenson
Janet A. Savage
Jackie Roeder
Daniel Richards
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO  80202

Counsel for Defendant

*s/ Alan L. Kildow*
Alan L. Kildow