IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

    Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation.

    Defendant.

---

**PLAINTIFFS' REPLY TO RULE 37 MOTION TO COMPEL #2
RELATING TO VAIL HEALTH'S MONOPOLY POWER**

---

## ARGUMENT

**I. VAIL HEALTH'S PRICES AND HOW THEY WERE ESTABLISHED ARE DISCOVERABLE ELEMENTS OF SHERMAN ACT § 2.**

    **A.    Price, Costs, And Customers Are At The Heart Of Any Antitrust Case.[1]**

Plaintiffs' motion explained why, in this Sherman Act § 2 case, they are entitled to know the prices that Vail Health charged physical therapy patients and how those prices were set.[2] To recap: "Monopoly power is the ***power to control prices***"[3] and "charge a price higher than the competitive price…."[4] Price is the *sine qua non* of market power.[5] Although Vail Health cites no cases challenging that principle, it essentially contends that

---

[1]     *Quadrozzi v. City of N.Y.*, 127 F.R.D. 63, 75 (S.D.N.Y. 1989).
[2]     See Pls.' Mot. to Compel #2 at 5-8 [ECF No. 129].
[3]     *United States v. Grinnell Corp.,* 384 U.S. 563, 571 (1966).
[4]     *United States v. Dentsply Int'l Inc.,* 399 F.3d 181, 189 (3d Cir.2005) (emphasizing a monopolist's power "to *maintain* market share") (quoting *United States v. Syufy Enters.,* 903 F.2d 659, 665–66 (9th Cir.1990)).
[5]     IIB Areeda, ¶ 501, at 111.

producing "chargemasters" for 2015-2021 is sufficient.[6]  It also says it has produced other financial information, although it does not identify precisely what that is, for what periods of time, or whether any of it is source data.  According to Vail Health, Plaintiffs should be satisfied with the information they have and "focus on the discovery Vail Health has provided or **tailored** additional information Plaintiffs **really need**…."[7]  But Rule 26 and antitrust law do not authorize parties to unilaterally "tailor" discovery that they have decided their opponents "really need."  Here, established federal antitrust law has already prescribed what is "really needed:"  prices (and how they are set), costs, and profitability.

The chargemaster is important because it is the pricing platform from which patients are ultimately charged.  Since 2010, hospitals have been required by federal law to make public "a list of the hospital's standard charges,"[8] commonly referred to as the "chargemaster." It is an accounting tool that hospitals use as a *starting point* in negotiating reimbursement rates with third-party payers.  Although chargemaster prices are inflated and usually do not reflect the actual end-price paid by patients and third-party payers, they provide a baseline to track the ultimate charges that were set.[9]  By law, Vail Health's chargemasters should available, yet they have not produced those from 2012-2014.

Plaintiffs also seek the rates negotiated with, and reimbursement claims submitted to, healthcare insurers and Medicare, which in most cases reflect the actual charges paid for the medical services.[10]  Although that information too should be readily available, Vail

---

[6]   Vail Health Opp'n at 3-5 [ECF No. 156].
[7]   *Id.* at 2.
[8]   42 U.S.C. § 300gg-18(e).
[9]   *Chargemaster, and What Do Hospital Administrators Need to Know About It?,* The George Washington Univ. Sch. Of Bus. Blog (Dec. 17, 2019), https://healthcare mba.gwa.edu/blog/chargemaster-hospital-administrators-need-to know.
[10]   *F.T.C. v. Penn State Hershey Med. Center*, 838 F.3d 327, 344 (3d Cir. 2016).

Health has not produced any insurer or Medicare claims data for any period after November 1, 2012. Vail Health says it "has agreed to produce certain additional data regarding *private* payer physical therapy transactions,"[11] but that statement says nothing about producing claims submissions to which Plaintiffs are entitled, or for payers such as Medicare and Medicaid. Seven months after service of the document requests, Plaintiffs are entitled to an order and date for production.

Next, Plaintiffs seek the financial information generated in the ordinary course of business to document the collected receipts for Vail Health's physical therapy services, maintained in accounting records such as general ledgers, trial balances, financial statements, and the like. This data is necessary to analyze the entire pricing cycle from the "rack rate" to how much patients and their insurers actually paid—that is, the actual prices. But the data based on how the actual prices were determined must be explained by employees who actually analyzed, negotiated, and made the decisions as to the prices patients would be charged.[12] Curiously, Vail Health says it has thus far been unable to locate any current employees except for one in 2019.[13] A $20 million a year business and Vail Health cannot identify who or how physical therapy pricing is set?

Whether a firm has sufficient monopoly power to profitably control prices[14] over the long run is typically analyzed in comparison with the costs incurred in the production of the goods or services produced. That is so because over the long run a firm can only profitably charge an equilibrium price that is greater than marginal cost if the firm has

---

[11]  Vail Health Opp'n at 7 [ECF No. 156] (emphasis added).
[12]  Fed. R. Evid. 803(6)(D); ("A witness may not testify…unless evidence is introduced sufficient to support a finding that the witness has personal knowledge")
[13]  Vail Health Opp'n at 3-4 [ECF No. 156].
[14]  *Colo. Interstate Gas Co. v. Colo. Natural Gas Co.* 885 F.2d 683, 695-96 (10th Cir. 1989).

monopoly power.[15] Vail Health asserts that "Plaintiffs fail to explain what more they want regarding 'actual costs incurred' or how costs are allocated,[16] ignoring the detailed explanation found at pages 5-8 of Plaintiffs' motion.[17] Cost data (general ledgers, financial statements, etc.) should be produced as kept in the usual course of business.[18]

## II.   VAIL HEALTH HAS NOT CONDUCTED A "REASONABLE" SEARCH.

Vail Health claims "the **parties** produced more than 65,000 pages of documents in the state court action regarding the same facts at issue in this case,"[19] of which only 300 pages (0.0046%) are relevant to antitrust issues. Vail Health then admits it only recently "produced approximately 6,900 pages of documents related to ***antitrust issues that had not been litigated in the related state case***,"[20] mostly coming from what could be found in four email accounts. It still refuses to produce key financial documents, the very same documents requested by Haverford Healthcare Advisors in 2015 when it was engaged to conduct a valuation of the physical therapy joint venture with The Steadman Clinic and Vail-Summit Orthopaedics.[21] Haverford provided a two-page list, requesting internal and accountant-prepared financial statements; balance sheets; income statements (it already had 2013-2015), and many other financial documents.[22] Haverford's requests are, logically, very similar to those here, and yet whatever was provided to Haverford, has not been produced here (even the 2013-2014 income statements). Plaintiffs are entitled to the same documents and more.

---

| | |
|---|---|
| 15 | Michael L. Katz and Harvey S. Rosen, *Microeconomics*, at 419 (1998). |
| 16 | Vail Health Opp'n at 8 [ECF No. 156]. |
| 17 | Pls.' Mot. at 5-8 [ECF No. 129]. |
| 18 | Fed. R. Civ. P. 34(E)(i). |
| 19 | *See, e.g.,* Vail Health Opp'n at 1 [ECF No. 152] (emphasis added). |
| 20 | *See* Vail Health Opp'n at 1 [ECF No. 156] (emphasis added). |
| 21 | Ex. 18 [ECF No. 130-1] [Haverford engagement]. |
| 22 | Ex. 26 [Haverford request, first produced on Sept. 10, 2021]. |

### III. PLAINTIFFS ARE ENTITLED TO MONOPOLY POWER DISCOVERY.

#### A. Plaintiffs Are Entitled To Discovery Of How Vail Health Sets Its Prices.

##### 1. Vail Health Answer To Interrogatory No. 18 Is Deficient.

Interrogatory No. 18 seeks information about how Vail Health set physical therapy prices in its chargemaster from 2012 to the present., but Vail Health has not identified employees involved in setting prices from 2012-2015, 2020, or 2021.  Nor has it produced chargemasters for 2012-2014.  Vail Health now says it will supplement its answer for 2012-2015 "to include names of individuals involved in developing the Chargemaster…to the extent that information is reasonably discoverable,"[23] but it has not yet done so.  It said nothing about identifying those individuals for 2020 and 2021, or producing the chargemasters for 2012-2014.  Vail Health should be required to identify all individuals involved in setting chargemaster prices and produce the chargemaster from 2012-2014.  If it cannot do so, it should be ordered to state what it did to investigate and swear under oath that it cannot identify knowledgeable witnesses or locate the chargemasters.

Vail Health claims that the 2019 chargemaster prices were set according to the KnowledgeSource tool provided by third-party vendor nThrive, which was used in about May 2019, six months *after* the 2019 chargemaster was set.[24]  Vail Health does not explain how it set prices at the start of the fiscal year, which began on November 1, 2018.  Nor does Vail Health state how prices were set in 2020 and 2021, and instead states that it does not know how prices were set five to ten years ago.[25]  For those years Vail Health does not know how prices were set, then Vail Health should be ordered to state just that

---

[23] Vail Health Opp'n at 3 [ECF No. 156].
[24] Ex. 27 (nThrive emails without attachments cited in Vail Health's Opp'n but not filed as an exhibit).
[25] Vail Health Opp'n at 3 [ECF No. 156].

identifying each year it does not know.  And as to 2020 and 2021, which are less than a year ago, it should be ordered to disclose how those chargemaster prices were set.

Interrogatory No. 18 asks Vail Health to identify the components of its prices.  A fundamental principle of market economics is that firms must price their output so that revenues cover costs.[26]  In *Colorado Interstate Gas*, the Tenth Circuit made clear that profitability was an essential element of the ability to charge monopoly prices.[27]  Because profitability can only be determined by comparing revenues to costs, Plaintiffs are entitled to know was costs, or other factors, were built into the chargemaster.  If Vail Health does not know how its prices were set each year, or what factors were built into the chargemasters, then Vail Health should be ordered to state just that.

### 2. Vail Health's Response To Request No. 18 Is Deficient.

Plaintiffs are also entitled to the accounting documents reflecting the revenues and costs that resulted in the level of profitability of Howard Head for the relevant years, which would include general ledgers, financial statements, etc.  And yet, Vail Health has still not produced this information, claiming the request is overly broad[28] and unduly burdensome.  But Vail Health admits that certain financial source data for the one-page spreadsheet summary[29] is available by running reports from Vail Health's financial reporting system.[30]  Vail Health has not supplied any evidentiary support identifying any burden involved in the search, nor identified any unreasonable costs.  Its objection should be overruled.[31]

---

[26]  W. Kip Viscusi, Joseph E. Harrington, Jr., John M. Vernon, *Economics of Regulation and Antitrust*, at 409-11 (4th ed. 2005); Plts.' Mot. to Compel # 2 at -58 [ECF No. 129].
[27]  885 F.2d at 695-96.
[28]  Ex. 1 at 2 [ECF No. 129-1] ("all" means "identified after a diligent search").
[29]  Ex. 22 [ECF No. 130-5].
[30]  Ex. 10 at Spreadsheet Summary [ECF No. 129-10].
[31]  *Klesch Co. v. Liberty Media Corp.,* 217 F.R.D. 517, 524 (D. Colo. 2003).

B.  **Vail Health's Discovery Related To Payer Agreements Is Deficient.**

1.  **Vail Health Admits It Did Not Fully Answer Interrogatory No. 17.**

Interrogatory No. 17 seeks information about each payer that Vail Health had agreements with and submitted reimbursement claims to from November 1, 2012 to now. It admits its answer is limited to private payers from December 2015 to now but does not include Medicare or Medicaid. It should be ordered to fully answer Interrogatory No. 17.

2.  **Vail Health Has Not Fully Complied With Request No. 3.**

Vail Health states that the Tricare agreement was produced at VH_FED001063-96, but that is a 2020 Amendment to the agreement.[32] It does not include Exhibit 1, the rate sheet, and no Tricare agreements from November 1, 2012 to the 2020 amendment were produced. Vail Health should be ordered to produce these documents. It says that it has no agreements with Medicare or Medicaid, although CMS requires them.[33] If it has not agreements, then Vail Health would not be entitled to bill Medicare and Medicaid.

3.  **Vail Health Has Not Responded To Request No. 19.**

Request No. 19 seeks documents relating to changes in payer rates. They are relevant because if Vail Health did not have the ability to control prices (possessed monopoly power), it would have experienced periodic rate changes.[34] If there have not been changes, it would suggest that Vail Health does indeed have monopoly power.[35] Additionally, Kaiser Permanente dropped Vail Health because its pricing was too high. No documents have been produced related to that nonrenewal.

---

[32]  Ex. 28 [Agreement].
[33]  Ex. 29 at 10.1 [CMS manual] (noting that hospitals must have a provider agreement); *id.* at 10.1.1. (outlining terms required in provider agreement).
[34]  *Colo. Interstate*, 885 F.2d at 695-96 (citation omitted).
[35]  *Penn State Hershey*, 838 F.3d at 342-43.

### C. VAIL HEALTH HAS NOT PRODUCED FINANCIAL SOURCE DATA.

Request No. 2 seeks financial statements and analyses, some of the same information requested by Haverford (it actually had statements for 2013-2105). Vail Health says "they [Plaintiffs] have the actual financials."[36] That statement is false. Plaintiffs only have a 2015 income statement because it was attached to Haverford's engagement letter.[37] Vail Health did not even produce the 2013-2014 income statements provided to Haverford.[38] There is a "rollup" Excel spreadsheet created long after the relevant accounting periods and for other purposes,[39] but no other financial statements prepared in the ordinary course of business have been produced.

The one-page summary that Vail Health relies upon as "sufficient" financial information, allocates millions of dollars a year in indirect or sunk costs to Howard Head, unbeknownst to Howard Head management. When former Howard Head Vice President Brown discovered this in early summer 2018, he wrote: "HHSM leadership is not comfortable with this data…." "HH believes this data…is not representative of the HH business…."[40] Brown's objection is based on the fact that hospital management attributed fixed, sunk costs to a vibrant and profitable service line, physical therapy, to cover the losses being incurred by other departments of the hospital, such as cancer and obstetrics. This is why Plaintiffs are entitled to original source data,[41] including all direct and indirect costs, because it will be required for their experts' analyses.[42]

---

[36] Vail Health Opp'n at 9.
[37] Ex. 18 [Haverford engagement] [ECF No. 130-1].
[38] Ex. 26 [Haverford List].
[39] Ex. 19 [roll up] [ECF No. 130-2].
[40] Ex. 30 at VH_Fed001440-41 [presentation].
[41] Fed. R. Evid. 901(b)(1).
[42] Fed. R. Evid. 702(b).

### D. Vail Health Has Not Produced Patient Data, And Improperly Limits What It Says It Will Produce.

Request No. 17 seeks patient information related to the procedures, charges, and paid amounts for physical therapy services—that is, the payer submissions and reimbursements. Vail Health now says it will produce limited information for *private payers*, which does not include patient names and addresses. As noted in Plaintiffs' reply, patient names and addresses are relevant and should be produced. Medicare and Medicaid are relevant as well and should be produced because that is the basis for the costs upon which third-party payers determine their rates. Despite this, Vail Health apparently will not produce the Medicare and Medicaid data.

### E. Vail Health Has Not Produced Relevant Employment Information.

In Request Nos. 9 and 10, Plaintiffs seek the employment agreements that are relevant to barriers to entry and exclusionary conduct. Rather than produce the documents requested, Vail Health produced a smattering of physical therapist offer letters, albeit in redacted form from 2015 to 2020, claiming it had no obligation to produce anything further because those documents "are sufficient to determine what non-solicitation and other employment terms Howard Head physical therapists were subject to."[43] But even then, Vail Health has not produced any examples of employment agreements from 2012 to 2014 and 2021, even under its narrow view of relevancy. But Vail Health overlooks that the terms of the employment agreements are just one component of the monopolistic behavior alleged here. Plaintiffs also need employment information for the start and end dates for each physical therapist for a market share analysis based on the number of physical therapists. Plaintiffs are also entitled to any

---

[43] Vail Health Opp'n at 10 [ECF No. 156].

post-employment agreements, particularly for individuals who may be witnesses in this case, such as Nicholas Brown, Luke O'Brien, and Thomas Olson.

To avoid this production, Vail Health contends—without any evidentiary support—that "Plaintiffs' counsel has a history of harassing former Vail Health employees by repeatedly contacting them" and that Plaintiffs request for this information "seems a further effort to engage in such conduct."[44] Vail Health's counsel has now retracted the "harassment" statement.[45] Vail Health should be ordered to produce the employment files of the Howard Head employees.

## IV. PLAINTIFFS ARE ENTITLED TO AN AWARD OF ATTORNEY'S FEES.

Under Rule 37(a)(5), if a party moving to compel discovery is successful, the court "must" award the moving party its reasonable attorney's fees. Plaintiffs repeatedly made good faith efforts to resolve the dispute through numerous communications and repeated requests for conferrals. Vail Health's decision to only produce a fraction of the documents that are responsive after the motion to compel was filed (which has not yet been done), its refusal to produce, five-month delay in even agreeing to produce some insurer data (which has not yet been produced), warrants the award of attorneys' fees.

## CONCLUSION

Plaintiffs respectfully request that the Court grant Plaintiffs' motion in its entirety.

---

[44] Vail Health Opp'n at 10 [ECF No. 156].
[45] Ex. 31 [Roeder email].

Dated:  September 23, 2021

*s/Alan L. Kildow*
Alan L. Kildow, MN# 0143133
790 Potato Patch Drive
Vail, CO 81657
Telephone: (970) 390-6675
E-mail:  alkildow@aol.com

Jesse Wiens, Colo.# 33903
Fahrenholtz & Wiens LLC
100 West Beaver Creek Boulevard
Suite 236
Avon, CO 81620
Telephone: (970) 949-6500
E-mail:  fwlawyers@gmail.com

Sonya R. Braunschweig, MN# 0290292
5501 Irving Avenue South
Minneapolis, MN 55419
Telephone: (612) 819-2304
E-mail:  sonya.braunschweig@gmail.com

Attorneys for Plaintiffs Lindsay Winninger and Sports Rehab Consulting LLC

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2021, I served a true and correct copy of Plaintiffs' Reply to Rule 37 Motion to Compel #2 Relating To Vail Health's Monopoly Power, including exhibits, some of which are filed as restricted under the protective order issued in this case, via the Court's ECF system on:

Shannon Stevenson
Janet A. Savage
Jackie Roeder
Daniel Richards
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO  80202

Counsel for Defendant

   *s/ Alan L. Kildow*
Alan L. Kildow