# Exhibit 29

# Medicare General Information, Eligibility, and Entitlement

## Chapter 5 - Definitions

**Table of Contents**
*(Rev. 120, 11-02-18)*

### Transmittals for Chapter 5

10 - Provider and Related Definitions

    10.1 - Provider Agreements

        10.1.1 - Basic Commitment in Provider Agreement

        10.1.2 - Part A Deductible and Coinsurance

        10.1.3 - Part B Deductible and Coinsurance

        10.1.4 - Blood

        10.1.5 - Services Requested by Beneficiary

        10.1.6 - Provider Charges to Beneficiary Where Provider Customarily Furnishes More Expensive Services Not Requested by Beneficiary

        10.1.7 - Hospitals Participating in State Reimbursement Control Systems or Demonstration Projects

        10.1.8 - Medicare Secondary Payer Involvement of Failure to File Proper Claims

        10.1.9 - Advance Directive Requirements

        10.1.10 - Posting of Signs in Hospital Emergency Departments

    10.2 - Admission of Medicare Patients for Care and Treatment

    10.3 - Under Arrangements

    10.4 - Term of Agreements

        10.4.1 - Agreement with a SNF

        10.4.2 - Agreement with RHC/FQHC

    10.5 - Responsibilities of Participating Provider

    10.6 - Termination of Provider Participation

        10.6.1 - Voluntary Termination

        10.6.2 - Involuntary Termination, Including SNF Agreement Cancellations

        10.6.3 - Expiration and Renewal - Nonrenwal of SNF Term Agreements

        10.6.4 - Determining Payment for Services Furnished After Termination of Provider Agreement

        10.6.5 - Change of Provider Ownership

20 - Hospital Defined

      20.1 - Definition of Emergency Inpatient and Outpatient Services

      20.2 - Definition of an Emergency Services Hospital

      20.3 - Psychiatric Hospital

      20.4 - Certification of Parts of Institutions as Hospital

      20.5 - Part of a Psychiatric Institution as a Psychiatric Hospital

      20.6 - General Hospital Facility of Psychiatric Hospital

      20.7 - Part of a General Hospital as a Psychiatric Hospital

30 - Skilled Nursing Facility Defined

      30.1 - Distinct Part of an Institution as a SNF

      30.2 - Transfer Agreements

      30.3 - Hospital Providers of Extended Care Services

40 - Religious Nonmedical Health Care Institution Defined

50 - Home Health Agency Defined

      50.1 - Subdivisions of Agencies as Home Health Agencies

      50.2 - Arrangements by Home Health Agencies

      50.3 - Arrangements with Parent Agency and Other Entities

      50.4 - Notice of Noncoverage of Services

      50.5 - Rehabilitation Centers

60 - Hospice Defined

      60.1 - Subdivision of Organizations as Hospices

      60.2 - Arrangements by Hospices

70 - Physician Defined

      70.1 - Doctors of Medicine and Osteopathy

      70.2 - Dentists

      70.3 - Doctors of Podiatric Medicine

      70.4 - Physicians in Federal Hospitals

      70.5 - Optometrists

      70.6 - Chiropractors

      70.7 - Interns and Residents

80 - Health Maintenance Organizations (HMOs) Defined

90 - Other Definitions

      90.1 - Supplier Defined

      90.2 - Laboratory Defined

      90.3 - Practitioners Defined

      90.4 - Group Practice Defined

## 10 - Part A Provider and Related Definitions
**(Rev. 1, 09-11-02)**

Section 1866(e) of the Social Security Act defines the term "provider of services" (or provider) as:

(1) A clinic, rehabilitation agency, or public health agency if, in the case of a clinic or rehabilitation agency, such clinic or agency meets the requirements of section 1861(p)(4)(A) (or meets the requirements of such section through the operation of section 1861(g)), or if, in the case of a public health agency, such agency meets the requirements of section 1861(p)(4)(B) (or meets the requirements of such section through the operation of section 1861(g)), but only with respect to the furnishing of outpatient physical therapy services (as therein defined) or (through the operation of section 1861(g)) with respect to the furnishing of outpatient occupational therapy services; and

(2) A community mental health center (as defined in section 1861(ff)(3)(B)), but only with respect to the furnishing of partial hospitalization services (as described in section 1861(ff)(1)).  Definitions of providers, physicians, practitioners, and suppliers, and a description of the requirements that each must meet in order for their services to be considered covered are described in the following sections.

## 10.1 - Provider Agreements

The following provider types must have provider agreements under Medicare:

- Hospitals,
- Skilled nursing facilities (SNFs),
- Home health agencies (HHAs),
- Clinics, rehabilitation agencies, and public health agencies,
- Comprehensive outpatient rehabilitation facilities (CORFs),
- Hospices,
- Critical access hospitals (CAHs), and
- Community mental health centers (CMHCs).

Clinics, rehabilitation agencies, and public health agencies may enter into provider agreements only for furnishing outpatient therapy services as defined in section 10 above. CMHCs may enter into provider agreements only to furnish partial hospitalization services.

The term "provider agreement" is defined in 42 CFR 489.3 as an agreement between CMS and one of these providers specified in this section to provide services and to comply with the requirements of section 1866 of the Act.

A provider which has executed an agreement becomes qualified to participate after the agreement is accepted.  When the agreement is made retroactive, the provider must comply with the terms of the agreement and the provisions of title XVIII and regulations issued thereunder as of the retroactive date.  For payment to be made to the provider for covered items and services it furnishes on or after the effective date of the agreement, the provider must have a record keeping capability sufficient to determine the costs of services furnished to Medicare beneficiaries.

Provider agreements require the providers to comply with regulations.  Therefore, new provider agreements are not made when regulations change.

Providers as defined in this section may also function as suppliers and bill the program for other services provided as suppliers if they meet the applicable requirements for supplying the specific service.

### 10.1.1 - Basic Commitment in Provider Agreement
**(Rev. 58, Issued: 03-06-09, Effective: 06-08-09, Implementation: 06-08-09)**

Section 1866 of the Act and 42 CFR 489 require the provider to agree to the following:

1. To limit its charges to beneficiaries and to other individuals on their behalf to:

- The deductible and coinsurance amounts (see §10.1.2 for details;
- The blood deductible (see §10.1.4 for details); and
- Services requested by the beneficiary. (See §10.1.5)

2. To return any amounts incorrectly collected from a beneficiary or any other person on the beneficiary's behalf;

3. To notify the A/B MAC (A) or (HHH) promptly if it hires an individual who at any time during the preceding year was employed in a managerial, accounting, auditing, or similar capacity by a MAC;

4. In the case of a hospital or a Critical Access Hospital (CAH), either to furnish directly or to make arrangements (as defined in §10.3 of this chapter) for all Medicare-covered services to inpatients of a hospital or a CAH except the following:

- Physicians' services that meet the criteria of 42 CFR 405.550(b) for payment on a reasonable charge basis;

- Physician assistant services, as defined in section 1861(s)(2)(K)(I) of the Act, that are furnished after December 31, 1990;

- Certified nurse-midwife services, as defined in section 1861(ff) of the Act, that are furnished after December 31, 1990;

- Qualified psychologist services, as defined in section 1861(ii) of the Act, that are furnished after December 31, 1990; and

- Services of an anesthetist, as defined in 42 CFR 410.69.

5. In the case of a hospital or CAH that furnishes inpatient hospital services or inpatient CAH services for which payment may be made under Medicare, to maintain an agreement with a PRO for that organization to review the admissions, quality, appropriateness, and diagnostic information related to those inpatient services.  The requirement of this paragraph applies only if, for the area in which the hospital or CAH is located, there is a PRO that has a contract with CMS under Part B of title XI of the Act;

6. To maintain a system that, during the admission process, identifies any primary payers other than Medicare so that incorrect billing and Medicare overpayments can be prevented;

7. To bill other primary payers before billing;

8. If the provider receives payment for the same services from Medicare and another payer that is primary to Medicare, to reimburse Medicare any overpaid amount within 60 days;

9. If the provider receives, from a payer that is primary to Medicare, a payment that is reduced because the provider failed to file a proper claim; to reimburse Medicare any overpaid amount up to the amount that would have been paid had the provider filed a proper claim timely.

10. In the State of Oregon, because of a court decision, and in the absence of a reversal on appeal or a statutory clarification overturning the decision, hospitals may bill liability insurers first.  However, if the liability insurer does not pay "promptly," the hospital must withdraw its claim or lien and bill Medicare for covered services;

11. In the case of home health agencies, to offer to furnish catheters, catheter supplies, ostomy bags, and supplies related to ostomy care to any individual who requires them as part of their furnishing of home health services;

12. In the case of hospital emergency department services that provide for medical screening to determine if an emergency medical condition exists, CMS guidelines provided in CFR 42 489.24(d) for transfer of patients to other facilities should be followed;

13. In the case of hospital emergency department services report to CMS or the State Survey Agency any time it has reason to believe it may have received an individual who has been transferred in an unstable emergency medical condition from another hospital in violation of the requirements of CFR 42 489.24(d);

14. In the case of inpatient hospital services for admissions on and after January 1, 1987, to participate in the Tricare program;

15. In the case of inpatient hospital services for admissions on and after July 1, 1987, to admit veterans whose admission is authorized by the VA and to meet related VA admission and payment requirements;

16. In the case of a hospital, to give each beneficiary a notice about his or her discharge rights at or about the time of the individual's admission;

17. In the case of a hospital with an emergency department:

- To post conspicuously in any emergency department or in a place or places likely to be noticed by all individuals entering the emergency department, as well as those individuals waiting for examination and treatment in areas other than traditional emergency departments (that is, entrance, admitting area, waiting room, treatment area), a sign (in a form specified by the Secretary) specifying rights of individuals under Section 1867 of the Act with respect to examination and treatment for emergency medical conditions and women in labor; and

- To post conspicuously information indicating whether or not the hospital or critical access hospital participates in the Medicaid program under a State plan approved under title XIX;

18. In the case of a hospital with an emergency department (including both the transferring and receiving hospitals), to maintain:

- Medical and other records related to individuals transferred to or from the hospital for a period of 5 years from the date of the transfer;

- A list of physicians who are on call for duty after the initial examination to provide treatment necessary to stabilize an individual with an emergency medical condition; and

- A central log on each individual who comes to the emergency department seeking assistance and whether he or she refused treatment, was refused treatment, or whether he or she was transferred, admitted and treated, stabilized and transferred, or discharged.

19. Effective December 1, 1991, in the case of a hospital to comply with the advance directive provisions of 4206 of OBRA 1990.  Hospitals must, in accordance with written policies and procedures, for all adult individuals:

- Inform them, in writing, of State laws regarding advance directives;

- Inform them, in writing, of its policies regarding the implementation of advance directives (including a clear and concise explanation of a conscientious objection, to the extent that State law permits for a hospital or any agent of a hospital that, as a matter of conscience, cannot implement an advance directive);

- Document in the individual's medical record whether the individual has executed an advance directive;

- Not condition the provision of care or otherwise discriminate against an individual based on whether that individual has executed an advance directive (since the law does not require the individual to do so); and

- Educate staff and the community on issues concerning advance directives.

20. Effective October 1, 2007, CMS revised the regulations governing provider agreements that require hospitals to disclose physician ownership information to patients when a referring physician (or his or her immediate family member) has an ownership interest in the hospital.  Pursuant to 42 CFR 489.20(u), hospitals must: (1) furnish written notice to each patient at the beginning of the patient's hospital stay or outpatient visit that the hospital is a physician-owned hospital, in order to assist the patient in making an informed decision regarding his or her care.  The notice must disclose the fact that the hospital meets the Federal definition of a physician-owned hospital and that the list of physician owners or immediate family members of physicians is available upon request and must be provided to the patient at the time of the request; and (2) require each physician who is a member of the hospital's medical staff to agree, as a condition of continued medical staff membership or admitting privileges, to disclose in writing to all patients the physician refers to the hospital any ownership or investment interest in the hospital held by the physician or held by an immediate family member of the physician.  Disclosure must be made at the time of the referral.

Effective October 1, 2008, hospitals that do not have any physician owners who refer patients to the hospital are exempt from the disclosure requirements (See 42 CFR 489.20(v)).  In addition, CMS may deny a provider agreement to a hospital that does not have procedures in place to notify patients of physician ownership in the hospital (See 42 CFR 489.12).

## 10.1.2 - Part A Deductible and Coinsurance
**(Rev. 1, 09-11-02)**

This section is a further explanation of §10.1.1 above.