IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

    Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation.

    Defendant.

---

### PLAINTIFFS' OPPOSITION TO VAIL HEALTH'S MOTION TO PLACE EXHIBITS UNDER FILING RESTRICTIONS

---

### INTRODUCTION

Vail Health's motion to restrict access to the exhibits filed with Plaintiffs' reply to Motion to Compel #2 raises serious issues of the public's common-law right to have access to judicial proceedings and records. The existence of such a right is beyond dispute.[1] Access means more than the ability to attend open court proceedings; it also encompasses the public's right to inspect and to copy judicial records. These principles undoubtedly underlie the high bar set by D.C.COLO.LCivR. 7.2 for a party to obtain a court order restricting public access to documents filed in litigation. Vail Health's motion has met that high bar and should be denied with the few exceptions regarding Exhibit 30.

*First*, Local Rule 7.2(c)(2) requires the moving party to "address the interest to be protected ***and why such interest outweighs the presumption of public access….***" Vail Health's motion merely asserts, in conclusory fashion and without any affidavit,

---

[1] *Nixon v. Warner Comm'ns, Inc.*, 435 U.S. 589, 597 (1978).

declaration, or other evidence, that the documents at issue contain "confidential commercial information."[2] It does not even mention any public interest. This omission is surprising given the statement Plaintiffs filed previously regarding the public, nonprofit nature of Vail Health, where they pointed out that there are significant differences between a nonprofit hospital like Vail Health and commercial firms operating in purely private, profit-driven competitive environment.

As the Colorado Supreme Court observed many years ago: "A hospital, like the plaintiff, whose doors are open to those needing medical and surgical treatment for which no charge is made to those unable to pay, and which depends for its support and maintenance upon the fees of patients and gifts and donations and cares for recipients of public welfare sent to it by the city at reduced rates and is conducted in the interests of the general public and strictly as a non-profit organization, is a public charity. Such a hospital is not conducting a business or commercial enterprise. It is not engaged in industry and trade."[3] As the reasoning of the Colorado Supreme Court suggests, the obligations that Vail Health has to the public alter any purely commercial arguments it might have that it can withhold from public scrutiny information regarding its strategies, prices, and profits that are revealed in this action. Its failure to address the public interest, let alone provide a single argument as to why its "private" commercial interests "heavily outweigh" the public's interest[4] compels denial of the motion for failure to satisfy an essential standard required by Local Rule 7.2(c)(2).

---

[2] Vail Health's Mot. ¶¶ 1-3 [ECF No. 181].
[3] *St. Luke's Hosp. v. Indus. Comm'n of Colo.*, 349 P.2d 995, 998 (Colo. 1960) (quoting *St. Luke's Hosp. v. Labor Relations Comm'n*, 70 N.E.2d 10, 13 (Mass. 1946)).
[4] *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007).

2

*Second*, Local Rule 7.2(c)(2) states that protective orders "alone, are insufficient to justify restriction" yet Vail Health's devotes most of its motion to identifying the sections of the Protective Order under which its documents are purportedly protected.  It does not supply the Court with any reasoned analysis as to why the four documents deserve the designations that Vail Health has affixed to them.  Protective orders provide parties with a procedural mechanism by which they can identify and protect legitimately confidential information.  But without proof, those designations are little more than labels that must withstand the scrutiny of the court.  Here, Vail Health has not provided the Court with any analysis justifying why this outdated information justifies the protections Vail Health contends it deserves.

*Third*, Local Rule 7.2(c)(3) requires the moving party to "identify a clearly defined and serious injury that would result if access is not restricted."  Vail Health's motion asserts that "[i]f the information contained in Exhibits 26-28 and 30 to Plaintiffs' Reply were to be made public, Defendant would be competitively disadvantaged."[5]  In paragraph 14, Vail Health supplies a list of conclusory contentions as to the nature of the harm, but it does not describe with any factual detail as to why this would be so.  Vail Health's motion, therefore, fails to satisfy another essential element of restriction, as set forth in Local Rule 7.2(c)(3), and thus should be denied.

---

[5]     Vail Health's Mot. ¶ 12 [ECF No. 181].

## ARGUMENT

**I.    THERE IS A PRESUMPTION OF ACCESS THAT JUDICIAL RECORDS BE MADE AVAILABLE TO THE PUBLIC.**

The public's common-law right to judicial proceedings and records is beyond dispute.[6] Access means more than the ability to attend open court proceedings; it also encompasses the right of the public to inspect and to copy judicial records.[7] The public's exercise of its common-law access right in civil cases promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court.[8] Although our courts recognize a general common-law right to inspect and copy judicial records and documents, the right is not absolute.[9] "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes."[10] Despite the heavy presumption in favor of public access, courts may deny access to judicial records, for example, when they are sources of business information that might harm a litigant's competitive standing.[11]

But in its motion to restrict, Vail Health has made no showing of harm other than asserting in conclusory terms that a document has been designated as "Attorney's Eyes Only" and "Confidential" information, essentially assuming that because it has designated a document as such that means the exhibits here should be restricted from public access.

---

[6] *Nixon*, 435 U.S. at 597.
[7] *United States v. McVeigh*, 119 F.3d 806, 814 (10th Cir. 1997); *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996).
[8] *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985). *See also* 6 J. Wigmore, *Evidence* § 1834 (J. Chadbourne rev. 1976).
[9] *Nixon*, 435 U.S. at 598.
[10] *Id.*
[11] *Id.*

4

But a party's designation as "confidential" or "attorney's eyes only" is not dispositive as to whether those exhibits should be filed as "suppressed" before this Court.[12]  Nor does a district court's protective order limit this Court's ability to decide which exhibits, if any, should be filed as suppressed.[13]

Local Rule 7.2 requires an identification and analysis of the private and public interests at issue, as the U.S. Supreme Court has held: "the task of weighing the interests advanced by the parties in light of the public interest [is a] duty of the courts."[14]  The Tenth Circuit has held that after the "weighing of interests" has been conducted by the court, the private interests, here Vail Health's, must "heavily outweigh the public interests in access."[15]  Vail Health's failure to conduct any sort of balancing of these interests alone should be a sufficient ground to deny the motion.  Nevertheless, Plaintiffs will review the four exhibits in an effort to address the elements required by Local Rule 7.2.

---

[12]  *Helm v. Kan.*, 656 F.3d 1277, 1292 (10th Cir. 2011) ("the parties cannot overcome the presumption against sealing judicial records simply by pointing out that the records are subject to a protective order in the district court. Rather, the parties must articulate a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process. Because the parties have not come close to meeting"); *Small Estates, Inc. v. Round Hill Cellars*, Civil Action No. 10-cv-01999-MSK-CBS, 2011 WL 6152969, at *8 (D. Colo. Dec. 12, 2011) ("the parties' agreement as to the confidentiality of documents for the purpose of discovery is not dispositive"); *XY, LLC v. Trans Ova Genetics, LC*, Civil Action No. 13-cv-00876-WJM-NYW, 2015 WL 7014419, at 2 (D. Colo. Nov. 12, 2015) ("a party seeking to restrict access may not simply point to confidentiality designations with respect to materials produced in discovery and/or state that it 'believes' certain materials are competitively sensitive (without evidentiary support) in an attempt to secure wholesale sealing of entire legal briefs and accompanying exhibits. Whether a party has designated a document 'confidential' or even 'attorney's eyes only' is not dispositive, and may not even be helpful, to the court's analysis.").

[13]  *Helm*, 656 F.3d at 1292 ("Even assuming, however, that the district court's protective order is valid and has continuing effect in that court, the order cannot limit our authority to decide whether the parties may file documents under seal in this Court.").

[14]  *Nixon*, 435 U.S. at 602.

[15]  *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007).

## II. EXHIBIT 26 WAS NOT CREATED BY VAIL HEALTH AND HAS MINIMAL "CONFIDENTIAL" COMMERCIAL INFORMATION.

Vail Health contends that "Exhibit 26, Dkt. 174-1 is an internal Vail Health document" that contains confidential commercial information including sensitive non-public financial and business information reflecting strategic discussions concerning the formation of Howard Head sports Medicine."[16] Most of those assertions are incorrect, which may explain why Vail Health has not provided an affidavit, declaration, or deposition testimony identifying or laying the foundation as to what the document actually is, who created it, or how it is commercially significant (let alone confidential).

We begin with an examination of the face of Exhibit 26 itself, which was first produced by Vail Health as part of its fifth production on September 10, 2021. There is nothing on the face of the document that indicates that it was created by Vail Heath. In fact, the same information is contained in the November 4, 2015, engagement letter sent to Vail Health CEO Doris Kirchner by William Mitchell, one of the principals of Haverford Healthcare Advisors ("Haverford"), a healthcare consulting firm located in Paoli, Pennsylvania. (The engagement letter was filed as Exhibit 18 to Plaintiffs' motion to compel # 2.) One of the services offered by Haverford is business valuation,[17] which is obviously the subject of the Haverford engagement by Vail Health. Additional evidence of authorship is found in the metadata to Exhibit 28, which shows that it was created by William Mitchell of Haverford,[18] not someone at Vail Heath. The title at the top of the first page of Ex. 26 says "Preliminary Document and Information Checklist for Business Valuation of a *Minority Interest*" (emphasis added), which dovetails with Plaintiffs'

---

[16]   Vail Health Mot. ¶ 1.
[17]   www.haverfordhealthcare.com.
[18]   Ex. 1 [metadata produced with fifth production].

Exhibit 18, the engagement letter for a valuation of the joint venture between Vail Health, The Steadman Clinic, and Vail-Summit Orthopaedics.

Vail Health's motion further represents that Exhibit 26 contains "sensitive non-public financial and business information…."[19]  Even a casual reading of Exhibit 26, however, reveals that there is no financial information—sensitive or nonsensitive, public or nonpublic—contained in Exhibit 26.  Instead, Mr. Mitchell obviously created Exhibit 26 to the financial information that Haverford needed to perform its valuation of the to-be formed joint venture between and among Vail Health, Steadman, and VSO.  Again, the list identifies documents and information Haverford desired to have for its valuation engagement but had not yet received (other than financial statements for 2013 through 2015).  So Exhibit 26 reveals no financial information.  Exhibit 26 further requests certain contracts, personnel and market information, but it reveals none of that (obviously because it did not have any of it, otherwise the list would have been unnecessary).

Vail Health's motion to restrict then asserts that Exhibit 26 contains "business information reflecting strategic discussions concerning *the formation* of Howard Head Sports Medicine."  Vail Health appears to be confused by record facts long ago established both the Eagle County case and this one too.  The original physical therapy clinic that supported Steadman was formed in the 1980s in South Lake Tahoe, California.  The principals of that clinic followed world-renowned orthopedic surgeon Dr. Richard Steadman to Vail in about 1989-1990.  It later began doing business under the trade name "Howard Head Sports Medicine," but the entity that ran the physical therapy clinic was RPC-Vail.  Vail Health took over the physical therapy clinic on November 1, 2012.

---

[19]    Vail Health Mot. ¶ 1.

7

Against those established facts, it could not be said that Exhibit 26 has anything to do with "the formation of Howard Head." That occurred decades earlier.

Against that factual background, there is not much of any commercial information in Exhibit 26, other than that at some point in time, which is not reflected in the document, Vail Health contemplated forming a new company for the physical therapy joint venture. But there is no evidence that the company referred to in Exhibit 26 ever came to fruition. Since it never happened, it is difficult to see how any harm could come to Vail Health if Exhibit 26 became public. Vail Health has not satisfied the standards of Local Rule 7.2.

Comparing the *diminimus* commercial information in Exhibit 26 with the public interest, the public's interest in access should win-out. Taking the evidence (as it now exists), Exhibit 18 and Exhibit 26 together show that at some time in 2015, Vail Health intended to form a joint venture relating to its physical therapy clinic doing business under the trade name Howard Head Sports Medicine. Exhibit 26 indicates that a valuation consultant was necessary to value the minority owner's interest and the rate to be charged for physical therapy services. This piece of evidence is only a piece of a complex puzzle that the residents of Eagle County and Colorado, and certainly the press, have an interest in knowing. When combined with the cumulative body of evidence Plaintiffs are attempting to gather, it will assist in showing that Vail Health had specific intent to enter into a combination with other potential competitors to maintain and strengthen its monopoly in the Vail Valley. Vail Health certainly has not established that its interest in the confidentiality of Exhibit 26 "heavily outweigh[s] the public interests in access"[20] to it.

---

[20]   *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007).

### III. EXHIBIT 27 INVOLVES COMMUNICATIONS CONCERNING CHARGEMASTER PRICES THAT ARE REQUIRED BY LAW TO BE PUBLIC.

Vail Health contends that "Exhibit 27, Dkt. 174-1, is a complication of emails which contain confidential commercial information including sensitive non-public financial and business information reflecting discussions about Vail Health's pricing strategies."[21] The communications are between and among Howard Head Sports Medicine, former Vice President Nicholas Brown, many other Vail Health employees, and a third-party vendor regarding "chargemaster" prices. Vail Health claims that the 2019 chargemaster prices were set according to the KnowledgeSource tool provided by a third-party vendor known as "nThrive," and those are the e-mails contained within Exhibit 27. In this case, Vail Health essentially contends "chargemaster" prices are the basis for the prices at issue in this case.

Although Plaintiffs would be happy to accept an assertion that chargemaster prices are the basis for determining whether Vail Valley prices are supracompetitive for Sherman Act purposes, in the end, Plaintiffs surmise that Vail Health will not agree that that is the case. Nevertheless, the chargemaster is important because it is the pricing platform from which patients are ultimately charged. In fact, since 2010, hospitals have been required by federal law to make public "a list of the hospital's standard charges,"[22] commonly referred to as the "chargemaster." It is an accounting tool that hospitals use as a *starting point* in negotiating reimbursement rates with third-party payers. Although chargemaster prices are inflated and usually do not reflect the actual end-price paid by patients and

---

[21]   Vail Health Mot. ¶ 2.
[22]   42 U.S.C. § 300gg-18(e).

9

third-party payers, they provide a baseline to track the ultimate charges that are set.[23] By law, Vail Health's chargemasters should be available, although Vail Health has not yet produced the 2012-2014 chargemasters in this case.

Vail Health has argued in this case that in setting its chargemaster prices in 2019, it used nThrive, a hospital pricing advisory service. The e-mails set forth in Exhibit 27 reflect communications between Vail Health and nThrive regarding the methodology this vendor used for 2019. The second page of Exhibit 27 states: "Thank you all for meeting with us this afternoon as we get the Price Transparency project underway."[24] This reference to "transparency" likely stems from Vail Health's CEO Will Cook's efforts to reform Vail Health's pricing and to make the process more "transparent." The third page of Exhibit 27 states: "Please see attached. I went ahead included the list in the second tab as a part of the Version 3 Pricing Detail report."[25] But there is no "Pricing Detail" attached to Exhibit 27. The same page in the e-mail dates July 24, 2019, states: "Please see attached for the Version 3 results. The Assumptions document lists the additional parameters that were applied for this version."[26] Those pricing assumptions, however, are not attached to Exhibit 27. Going through the remainder of Exhibit 27 demonstrates that it not only does not reveal any pricing, but it does not even reveal the pricing assumptions. Thus, no confidential commercial information is revealed in Exhibit 27 other than to say that Vail Health *apparently* used an outside vendor to assist with setting the prices in its chargemaster for 2019, which is already a matter of public record.

---

[23]   *Chargemaster, and What Do Hospital Administrators Need to Know About It?,* The George Washington Univ. Sch. Of Bus. Blog (Dec. 17, 2019), https://healthcarembra.gwa.edu/blog/chargemaster-hospital-administrators-need-to know.
[24]   Ex. 27 at VH_Fed_00004935.
[25]   *Id.* at VH_Fed_00005048.
[26]   *Id.*

In comparing Vail Health's private interests to the interests of the public, federal law requires pricing information to be publicly available. The fact that Vail Health ostensibly sets its chargemaster prices on the basis of information provided by a third-party vendor would be of interest to the public, particularly since the prices of Vail Health are very high relative to the prices charged by other physical therapy providers. Paragraph 14 of its motion states: "Further, the public disclosure of the confidential commercial information is likely to harm Vail Health's ability to operate and compete in the marketplace by providing this information to Vail Health's competitors and to the general public."[27] How could Exhibit 27 possibly influence competitors' pricing decisions when the chargemaster prices are already required by law to be publicly available? And what is the "harm' "to the general public" to knowing that a vendor assists Vail Health in establishing its prices? Vail Health's motion as it pertains to Exhibit 27 fails to satisfy the requirements of Local Rule 7.2 and should therefore be denied.

**IV.    EXHIBIT 28 IS A STANDARD GOVERNMENTAL FORM CONTRACT THAT IS WIDELY USED BY COLORADO HOSPITALS AND HEATHCARE PROVIDERS.**

Vail Health contends that "Exhibit 28, Dkt. 174-3, contains confidential commercial information including sensitive non-public financial and business information–namely, payor contracts which contain language specific to the contract between Vail Health and the payor." Vail Health does not point out that the information in this exhibit is public. TriWest Healthcare Alliance Corp. ("TriWest") is a Medicare-like program sponsored by the U.S. federal government, including specifically the Department of Veterans Affairs. If provides healthcare coverage for armed-forces veterans. Exhibit 28 is a required amendment to the original contract, which can be found in the forms section of

---

[27]    Vail Health Mot. ¶ 14.

www.joinournetwork.triwest.com/Forms/AddP.aspx.  There, the contract, the terms of the amendment, and the handbook covering the provisions in Exhibit 28 is available there.  There is no confidentiality as to pricing and reimbursement system because it is the same as Medicare.  All providers for the TriWest program are subject to the same terms and conditions.  There is nothing confidential or proprietary about it.  Vail Health has not provided information or testimony as to how it would be harmed if this contract—which is like other medical provider's contracts participating in the program—were to become publicly known.  Vail Health's motion as to Exhibit 28 should therefore be denied.

## V.   EXHIBIT 30 CONTAINS MOSTLY GENERIC, NONCONFIDENTIAL INFORMATION.

Vail Health contends that "Exhibit 28, Dkt. 174-4, is the same internal Vail Health and Howard Head strategic analysis filed by plaintiff at DKt. 128-6, which the Court granted Level 1 Restrict Access on August 26, 2021 (Dkt. 147).  This document contains sensitive financial and non-public information including potential locations for expansion, service lines, market share, competitors, volume trends, and payor mix information."[28]  Although some of that is correct, Plaintiffs do not agree that there is very much "sensitive financial and non-public information" in Exhibit 30, but a few pages can be easily redacted if the Court accepts Vail Health's characterization.  Moreover, most of this "strategic' assessment involves old information concerning Vail Health/Howard Head initiatives that have already come to pass, so they are public and not sensitive.

For example, page 3 of Exhibit 30 discusses the 2018 objective to "[e]valuate locations in Summit, Pitkin, Garfield Counties."[29]  Vail Health has now expanded into

---

[28]   Vail Health Mot ¶ 4.
[29]   Ex. 30 at VH_Fed_00001434.

12

Summit and Pitkin Counties and those expansions have been publicly announced, so they are no longer "sensitive" or "non-public." It also discusses the objective of "[a]lign expansions with other medical groups to capture market simultaneously." That would be characterized as an objective of virtually every medical provider; there is nothing unique or confidential about it. The next item on page 3 is "SafeFit, SafeHealth, and Performance growth." Those service lines have been initiated by Vail Health and publicly announced, so this is old news that Vail Health has itself promoted to the public. The remainder of the objectives found on this page are similarly not sensitive competitive information. Vail Health has not explained how it could be harmed by this document.

Page 4 of Exhibit 30 merely identifies a group of industry and market descriptions that can be found in any variety of publications and is widely available on the internet.[30] As to HHSM's percentage of outpatient services, that information is found in its bond offering documents publicly-available on the internet.

Page 6 of Exhibit 30 states a generic description of physical therapy that is publicly available on the internet and is not confidential in any way.[31]

Page 7 and 9-15 of Exhibit 30 can be redacted to shield information that Vail Health contends is confidential,[32] although the data is now at least three years old.

Page 8 of Exhibit 30 is little more than a description of nonconfidential, publicly known and available facts and is not confidential in any way.[33]

---

[30] *Id.*
[31] *Id.* at VH_Fed_00001437.
[32] *Id.* at VH_Fed_00001438, 1440-46.
[33] *Id.* at VH_Fed_00001439.

13

**CONCLUSION**

Plaintiffs respectfully request that Vail Health's motion to limit access to exhibits be denied, with the possible exceptions of the pages indicated above in Exhibit 30, on the grounds that Vail Health has failed to make the requisite showing that significant privacy interests outweigh the public disclosure of these exhibits, or that it will suffer any harm if the exhibits are made public.

Dated: October 13, 2021   *s/Alan L. Kildow*
Alan L. Kildow, MN# 0143133
790 Potato Patch Drive
Vail, CO 81657
Telephone: (970) 390-6675
E-mail: alkildow@aol.com

Jesse Wiens, Colo. #33903
Fahrenholtz & Wiens LLC
100 West Beaver Creek Boulevard
Suite 236
Avon, CO 81620
Telephone: (970) 949-6500
E-mail: fwlawyers@gmail.com

Sonya R. Braunschweig, MN# 0290282
5501 Irving Avenue South
Minneapolis, MN 55419
Telephone: (612) 819-2304
E-mail: sonya.braunschweig@gmail.com

Attorneys for Plaintiffs Lindsay Winninger and Sports Rehab Consulting LLC

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 13, 2021, I served a true and correct copy of Plaintiffs' Opposition to Vail Health's Motion to Place Exhibits Under Filing Restriction, via the Court's ECF system on:

>Shannon Stevenson
>Janet A. Savage
>Jackie Roeder
>Daniel Richards
>Davis Graham & Stubbs LLP
>1550 17th Street, Suite 500
>Denver, CO  80202
>
>Counsel for Defendant

                                      *s/ Alan L. Kildow*
                                      Alan L. Kildow

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 13, 2021, I served a true and correct copy of Plaintiffs' Opposition To Vail Health's Motion To Place Exhibits Under Filing Restriction, including exhibits, via the Court's ECF system on:

    Shannon Stevenson
    Jackie Roeder
    Daniel Richards
    Janet A. Savage
    Davis Graham & Stubbs LLP
    1550 17th Street, Suite 500
    Denver, CO  80202

    Counsel for Defendant

                      *s/ Alan L. Kildow*
                      Alan L. Kildow

    I hereby certify that on April 19, 2021, I served a true and correct copy of Petitioners' Opposition to Respondents' Motion to Limit Access to Certain Exhibits to Their Response to Show Cause Pursuant to District Court's Protective Order through the Court's e-filing system on the following:

    Janet A. Savage
    Jacqueline Roeder
    Daniel Richards
    Davis Graham & Stubbs LLP
    1550 17th Street, Suite 500
    Denver, CO  80202
    Telephone:  (303) 892-9400
    Facsimile:  (303) 893-1379

Daniel Reilly
John McHugh
Reilly LLP
1700 Lincoln Street, Suite 2400
Denver, CO 80203
Telephone:  (303) 893-6100
Facsimile:   (303) 893-6110

John W. Madden, III
The Madden Law Firm
999 18th Street
Suite 1500 South
Denver, CO  80202
Telephone:  (303) 436-1111

*s/ Jesse Wiens*
Jesse Wiens