**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation.

      Defendant.

---

**PLAINTIFFS' REPLY TO RULE 37 MOTION TO COMPEL #4
RELATING TO JOINT VENTURES AND OTHER COMBINATIONS**

---

## <u>INTRODUCTION</u>

      **QUERY:** Why would a small rural hospital hire at least ten lawyers and spend over $5 million in fees to pursue two therapists in litigation?  One returned the documents within weeks of being informed of his mistake; the other had documents not even owned by the hospital.  **QUERY:** How does a 56-bed rural hospital annually put $50 million in profits to the bottom line when two-thirds of all rural hospitals lose money every year?

**QUERY:** What do those questions have in common with the following statements of the hospital's senior management?  "[W]e're going to create a preferred provider network that would directly help things for you guys…**it's align or die**…."[1]  "[T]echnically, my job is to look at you as competition and my job **would be to eliminate you**."[2]  And "[w]e could figure it out **to combine them all with [t]ight non competes**."[3]

---

[1]     Pls.*'* Am. Compl. ¶ 100 (emphasis added).
[2]     *Id.* ¶ 40 (emphasis added).
[3]     Vail Health Ex. 3 at VH_004034 [ECF No. 177-2 at 187] (emphasis added).

**ANSWER:**  Start with a contract designed to conceal Vail Health's illegal billing practices.  Monopolize the market to further charge patients and payers supracompetitive rates.  Attempt to extend the monopoly to medical providers to ensure referrals and tie up the labor force to eliminate competition.  Destroy any competitor that threatens to disrupt the monopolization scheme.  That is this case.

Plaintiffs seek the following documents relevant to that scheme: Vail Health's expansion into Summit County and Aspen/Basalt, including any consultant work; physical therapy joint venture documents, including consultants' fair market value analyses and communications; the MSO joint venture term sheet that Vail Health refuses to produce; lease agreements with Steadman, VSO, and their foundations; other proposed combinations, including Steadman's private equity offering and VSO's request to purchase Avalanche; and Vail Health's "charitable" contributions to Steadman's and VSO's foundations.  Plaintiffs also seek answers to Interrogatory Nos. 11 and 14.

## ARGUMENT

## I.    VAIL HEALTH HAS NOT CONDUCTED A "REASONABLE" SEARCH.

In Vail Health's opposition, it repeatedly asserts that it has conducted a reasonable search for documents responsive to Plaintiffs written discovery.  That issue has been addressed in prior memoranda filed by Plaintiffs and therefore will not be regurgitated here, other than to say that Vail Health has supplied no proof as to what searches have been conducted, and thus its arguments should be rejected.[4]

---

[4]    *See, e.g., Herman v. Marine Midland Bank*, 207 F.R.D. 26, 30 (W.D.N.Y. 2002) (producing no affidavit as to search is insufficient); *Sherwood Brands, Inc. v. Pa. Mfrs. Ass'n Ins. Co.,* No. 08-051ML, 2010 U.S. Dist. LEXIS 150680, at *15 (D.R.I. Sept. 30, 2010) (without an affidavit, there was "no competent basis upon which to conclude…a reasonably diligent search" was conducted).

## II.   VAIL HEALTH INCORRECTLY CONFLATES THE SCOPE OF DISCOVERY WITH THE DEFINITION OF GEOGRAPHIC MARKET.

### A.   Limiting The Geographic Scope Of Discovery Has Been Rejected.

Vail Health's opposition makes a bold legal assertion without citing a single case. It contends that collaborations with Steadman and VSO to expand services to Summit County and Aspen/Basalt are irrelevant because they fall "outside of Plaintiffs' geographic market…."[5]  Stated differently, discovery relevant to a Sherman Act claim may not extend beyond the boundaries of the geographic market alleged by the plaintiff.  Very few defendants have made that flawed argument, but courts addressing that argument reject it:[6] "regardless of how [the] geographic market is eventually defined in this action, the boundaries of that market do not set the geographic limit for discovery."[7]  They have done so because it undercuts numerous fundamental principles of economics and antitrust law.

Of the many principles, Justice Byron White in a § 2 monopolization and attempt to monopolize case summarized it this way: "plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each.  '[T]he character and effect of a conspiracy [to monopolize] are not to be judged by dismembering it and viewing its separate parts, but

---

[5]     Vail Health Opp'n at 1 [ECF No. 176].

[6]     *In re Loestrin 24 Fe Antitrust Litig.,* No. 1:13-MD-2472-S-PAS, 2017 WL 1491911, at *4 (D.R.I. Mar. 15, 2017) (ordering discovery beyond alleged market and noting court's should not conflate scope of discovery with market definition allegations); *SmithKline Beecham Corp. v. Apotex Corp.,* Nos. 99-CV-4304, 2006 WL 279073, at *3 (E.D. Pa. Jan. 31, 2006) ("broad discovery" applies equally to geographic scope and justifies discovery outside relevant geographic market); *Prudential N.Y. Theatres Co. v. Radio City Music Hall Corp.,* 271 F. Supp. 762, 763 (S.D.N.Y. 1967) ("[c]ourts have been hesitant to restrict plaintiff's inquiries to a limited geographical area").

[7]     *Kellam Energy, Inc. v. Duncan,* 616 F. Supp. 215, 219 (D. Del. 1985).  *See also Am. Key Corp. v. Cole Nat'l Corp.,* 762 F. 2d 1569, 1576-77 (11th Cir. 1985) (noting trial court ordered market discovery beyond Atlanta to southeastern portions of United States).

only by looking at it as a whole.'"[8]  This explains why discovery in an "antitrust case is necessarily broad because allegations involve improper business conduct....Such conduct is generally covert and must be gleaned from records, conduct, and business relationships."[9]  In *Continental Ore*, Justice White and the Court ordered a new trial because of the trial court's "persistent exclusion of evidence relating to the pre-1938 period" when the defendants allegedly engaged in monopolization of the European vanadium market *before* even entering into the U.S.[10]  So the scope of discovery must not be conflated because the economic analyses for defining relevant geographic markets and determining monopoly power require broad discovery into alternative markets.

### B.    Discovery Is Not Limited To Plaintiffs' Alleged Geographic Market.

A relevant geographic market is "the area of effective competition," or an area in which products or services from adjacent areas cannot compete on substantial parity with those offered inside the area because of price, transportation, or customer preferences, etc.[11]  In healthcare cases, the plaintiff generally seeks a narrower geographic market than the defendant, thus presenting dueling definitions,[12] with the fact-finder deciding which side prevails.[13]  But here, Vail Health denies there is a "cognizable" geographic market[14] and even refuses to answer interrogatories on the issue.[15]

---

[8]    *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962).
[9]    *Callahan v. AEV, Inc.*, 947 F. Supp. 175, 179 (W.D. Pa.1996); *United States v. Int'l Bus. Machs. Corp.,* 66 F.R.D. 186, 189 (S.D.N.Y. 1974).
[10]   *Cont'l Ore*, 370 U.S. at 711.
[11]   *Lantec, Inc. v. Novell, Inc.,* 306 F.3d 1003, 1026-27 (10th Cir. 2002).
[12]   *See, e.g., St. Alphonsus Med. Center-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 784 (9th Cir. 2015); *F.T.C. v. Tenet Health Care Corp.*, 186 F.3d 1045, 1052-53 (8th Cir. 1999).
[13]   *Westman Comm'n Co. v. Hobart Int'l, Inc.,* 796 F.2d 1216, 1220 (10th Cir.1986).
[14]   Vail Health Answer ¶¶ 34-36, 38-39 [ECF No. 63].
[15]   *See* Pls.' Mot. to Compel #1 at 10-11 [ECF No. 127].

Analysis of patients' convenience, however, is essential to defining any geographic market[16] and *requires* discovery into different, alternative geographic markets. Here, would patients travel 30-37 miles from Silverthorne or Breckenridge for physical therapy treatment in Vail? If so, how much of a savings would it require to induce a patient to make that trip? Recent statements by Vail Health's CEO Will Cook paints a much different picture than its attorneys do here. He publicly stated that the new Vail Health locations in Summit County and the Roaring Folk Valley are to offer "more affordable" and "convenient" care to patients.[17] Vail Health's former Vice President of Clinical Physical Therapy for Howard Head testified on October 9, 2021 to essentially the same thing.[18]

Against this legal and factual background, Plaintiffs are entitled to discovery of what Vail Health and other medical providers have been doing in Summit County, Basalt, and Aspen. After all, the definition of relevant geographic market is an issue of fact.[19]

### C.    Discovery Of Other Markets Is Relevant to Monopoly Power.

Discovery relating to Vail Health's expansion of its medical service lines, which include physical therapy, into other markets is also relevant to monopoly power. Plaintiffs are entitled to conduct an analysis of Vail Health's production capacity in the Vail Valley as a factor in determining the extent of its monopoly power there.[20] If Vail Health had

---

16    *F.T.C. v. Penn State Hershey Med. Center*, 838 F.3d 327, 338 (3d Cir. 2016); *In the Matter of Evanston N.W. Healthcare Corp.*, F.T.C. No. 9315, 2007 WL 2286195, at *7 (Aug. 6, 2007).

17    Ex. 46 at 2 [article]; Ex. 47 at 2 [website posting].

18    Ex. 48 at 125:14-126:6 [O'Brien Dep.]

19    *Westman,* 796 F.2d at 1216.

20    *F.T.C. v. Ind. Fed'n of Dentists*, 476 U.S. 460-61 (2009) (stating proof of actual detrimental effects, like reduced output, can obviate need for inquiry into market power); *Broadcom Corp. v. Qualcomm, Inc.*, 501 F.3d 297, 307 (3d Cir. 2007) (direct evidence of market power may include "actual supracompetitive prices and restricted output"); *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995) (same).

underutilized surgical suites and excess physical therapy capacity in the Vail Valley, it would have been economically inefficient to open new facilities in Summit County, Basalt, or Aspen if they fell within the same geographic market.  If that were so, Vail Health would encourage Summit County residents to drive to Vail for treatment.  But if Vail Health did not have underutilized capacity in the Vail Valley, as its former CFO Charles Crevling and former Vice President O'Brien confirmed,[21] that would be direct evidence that Vail Health's productive capacity was sufficiently limited so as to convey enough monopoly power to raise prices.  This is a matter of elementary economics:  restricted output affects the supply available to satisfy demand.  If supply is limited, prices go up.

This discovery is also relevant to "willful acquisition or maintenance" of monopoly power.  The lengths Vail Health would go to tie up Steadman and VSO in noncompetes[22] and other restrictive contracts—not only in Vail Valley but also in other markets—provides direct evidence of specific intent to monopolize.[23]  The tens of millions of "charitable contributions" Vail Health made to Steadman's and VSO's foundations is also relevant to the "willful acquisition or maintenance" of monopoly power.  Vail Health's "charitable" contributions were made at the same time the joint venture was being contemplated and ultimately the leases were being negotiated, those agreements were approved by the Board on the same day.[24]  Both parties viewed the relationship between Steadman, SPRI, and Vail Health as "a package strategic alliance,"[25] so to argue that SPRI is irrelevant is

---

[21]   *See, e.g.,* Ex. 48 at 40:1-9, 123:14-25. 124:11-15, 125:14-20 [O'Brien Dep.].
[22]   *See, e.g.,* Ex. 49 at VSO_Fed005 [2d term sheet produced by VSO].
[23]   *Aspen Skiing Co. v. Aspen Highlands Skiing Corp,* 472 U.S. 585 (1985) (conduct in other markets may be proof that defendant's conduct was "a decision of a monopolist to make an important change in the character of the market").
[24]   Ex. 25 at VailJV00198 [email] [ECF No. 158-7].
[25]   Ex. 27 at VH_Fed003936 [email] [ECF No. 158-9].

contradicted by the documents.  Vail Health also "donated" to SPRI by charging it no rent for the first five years, and thereafter, charging $8/square foot,[26] substantially lower than the fair market value of real estate in Vail.  It also pledged $43 million in donations, valuing the relationship at $173 million.  And at the same time VSO was negotiating the joint venture, it too sought and obtained "donations" for its foundation[27] and moved its offices into Vail Health, likely with a lease restriction prohibiting physical therapy.  If VSOF has a lease with Vail Health at reduced rates ("donations"), or contains restrictions related to physical therapy, that agreement is relevant as well.

## III.    VAIL HEALTH HAS IMPROPERLY WITHHELD VALUATION DOCUMENTS.

Vail Health claims that "much" of the independent appraisers' valuation work for the joint ventures is protected by the attorney-client privilege.[28]  Vail Health's four sentence argument[29] is deficient and does not establish the clear showing necessary to invoke attorney-client privilege.  Nothing supports that the valuations were made in confidence between a client and an attorney[30] for purposes of seeking legal advice.[31] Because healthcare is a highly-regulated industry, providers must comply with at least two federal laws—the "Stark Act" and the "Anti-Kickback" law[32]—when entering into business transactions.  These laws are intended to prevent fraud, self-referrals, and

---

26      Ex. 26 at VH_Fed004076 [presentation] [ECF No. 158-8].
27      Ex. 50 at VH_Fed003686, 3689 [email].
28      Vail Health Opp'n at 8 [ECF No. 176].
29      *See Hebert v. Raemisch*, Civil Action No. 13-cv-00259-WJM-NYW, 2015 WL U.S. Dist. LEXIS 94082, at *9 (D. Colo. July 17, 2015) (offering nothing more than attorney argument is insufficient to establish privilege); *Bohannon v. Honda Motor Co.,* 127 F.R.D. 536, 539 (D. Kan. 1989) (bare conclusions, unsupported by affidavit or other specific explanation does not establish privilege).
30      *EEOC v. Outback Steakhouse of Fla.*, 251 F.R.D. 603, 610 (D. Colo. 2008).
31      *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998); *In the Matter of Grand Jury Subpoena*, 697 F.2d 277, 278 (10th Cir. 1983).
32      42 U.S.C. § 1395nn; 42 U.S.C. § 1320a-7b.

financial kickbacks, among other things.  To be compliant, health care systems must ensure that their business transactions are commercially reasonable and consistent with fair market value[33] so as to insulate hospitals and physicians from running afoul of healthcare laws.[34]  The fair market value analyses here, however, had nothing to do with any Stark analysis conducted by Vail Health's attorneys and shared with both Steadman and VSO.[35]  The Stark analysis related to an exemption for health care services in a rural area based on Vail Health's internal patient data, which was done months before the appraisers completed their valuations.[36]

Instead, the independent appraisers undertook a fair market analysis of the minority interest shares (that is, Steadman's and VSO's buy-in) and of the proposed rate to be charged for physical therapy services.  The consultants were not engaged to analyze Stark, antikickback laws, or to assist counsel with any regulatory analysis. Rather, they were nonattorney valuation consultants required under the term sheets[37] to provide a fair market value analysis that was required to be shared with all parties.  Courts routinely find that those valuations are not subject to attorney-client privilege.[38]  That the

---

[33]     *See, e.g.,* 42 U.S.C. § 1395nn(e)(7).

[34]     *See, e.g., United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 165-66 (3d Cir. 2019) (noting many innocuous and common billing relationships run afoul of Stark Act and healthcare providers generally bearing the burden to show reasonable compensation at "fair market value").

[35]     Ex. 53 [Stark analysis shared with Steadman and VSO].

[36]     *Id.*

[37]     *See, e.g.,* Ex. 51 at VH_Fed003565 [1st term sheet] (identifying Haverford as independent appraiser); Ex. 49 at VSO_Fed006 [2d term sheet] (stating independent appraiser to complete fair market value analysis).

[38]     *United States ex rel. Rembert v. Bozeman Health Deaconess Hosp.*, No. CV 15-80-BU-SEH, 2018 WL 2320645, at *2-3 (D. Mont. May 22, 2018) ("Court determined [thrice] that the [FMV] documents filed were not protected by the attorney-client privilege or work-product protection"); *United States ex. rel. Baklid-Kunz v. Halifax Hosp. Med. Center,* Case No. 6:09-cv-1002-Orl-31DAB, 2012 WL 5415108, at *8-9 (M.D. Fla. Nov. 6,

underlying valuation analysis and reports may have been shared with Vail Health's counsel who used them in contract negotiations, or to provide its client advice, does not transform those business documents into privileged documents.[39]  But this is not unique to the health care industry, courts have also held that independent business valuations are not privileged,[40] nor are the factual document relied upon by the appraisers.[41]  Thus, Vail Health should be ordered to produce the communications with Haverford and HTA, the documents sent to and received from them, including draft reports and workpapers.

## IV.   VAIL HEALTH HAS NOT FULLY ANSWERED INTERROGATORIES.

**Interrogatory No. 11:**  Vail Health did not address, and thus concedes, that it did not disclose anything about the MSO joint venture, including the terms of the proposed agreement.  Vail Health now states that Brown and VSO had in-person meetings on December 16 and 28, 2016 and calls in late January 2017,[42] none of which was disclosed.

---

2012) (compelling disclosure of documents and communications related to FMV determinations); *Heartland Surgical Specialty Hosp. LLC v Midwest Div.,* No. 05-2164-MLB-DWB, 2007 WL 2122440, at 4, n.5 (D. Kan. 2007) (accountant's work for hospital not privileged); *Shahbahian v. Trihealth, Inc.,* Case No. 1:18-cv-790, 2019 WL 4958114, at *6 (S.D. Ohio Oct. 8, 2019) (FMV data and correspondence not subject to attorney-client privilege).

[39]    *See, e.g., Waters v. Drake,* No. 2:14-CV-1704, 2015 WL 8281858, at *4 (S.D. Ohio Dec. 8, 2015) (noting that when dominant purpose of communications is not to secure legal advice but to make policy or business decisions, communication cannot be insulated from discovery just by sending a copy to lawyer); *Neuder v. Battelle Pac. N.W. Nat'l Lab.,* 194 F.R.D. 289, 295 (D.D.C. 2000) ("documents prepared by non-attorneys and addressed to non-attorneys with copies routed to counsel are generally not privileged").

[40]    *See, e.g., Am. Health Sys., Inc. v. Liberty Health Sys.,* Civil Action No. 90-3112, 1991 U.S. Dist. LEXIS 3675, at *12-13 (E.D. Pa. Mar. 26, 1991) (accountant's analysis of proposed hospital joint venture not privileged); *Williams v. Big Picture Loans, LLC,* 303 F. Supp. 3d 434, 437 (E.D. Va. 2018) (communications with accountant providing business valuation services not privileged); *United States v. Richey,* 632 F.3d 559, 567 (9th Cir. 2011) (appraisal documents related to valuing property not privileged).

[41]    *See, e.g.,* Ex. 54 at VH_Fed006957 [Haverford document request] (stating that 2013-2015 income statements sent to Haverford; only 2015 was produced here).

[42]    Vail Health Opp'n at 5-6 [ECF No. 176].

Nor has Vail Health identified the collaborations between Steadman, VSO, and Vail Health in Summit County (which includes Hammes), and in Aspen/Basalt.  As to Duane Morris, Vail Health asserts that **documents** are privileged, but that does not preclude it from disclosing what meetings Duane Morris attended, with whom, what was discussed with any third-parties, and as to Vail Health, the subject matter of the discussion.

> **Interrogatory No. 14:**  Vail Health claims that it does not "compile or create" doctor referral reports in the ordinary course of business.  But as former Vice President Luke O'Brien testified, Vail Health has this data "in a server" that Brown and his assistant used to generate reports.[43]  In *Crocs, Inc. v. Effervescent,*[44] a case strikingly similar, the defendant argued it too was unable to locate existing sale reports.  This Court noted: "[w]ith respect to database storage of information, the law does not support [defendant's] verbal sleight of hand.  In fact, the court finds that this argument comes alarmingly close to deceit.  Courts considering the issues of dynamic database data have held that if information is stored in a database, requiring reports be run from the database is not the creation of new evidence or discovery."[45]  Vail Health's objections are meritless.

## V.  PLAINTIFFS ARE ENTITLED TO AN AWARD OF ATTORNEY'S FEES.

Plaintiffs should be awarded attorneys' fees for Vail Health's legally unjustified refusals to produce relevant documents.

---

[43]     Ex. 48 at 52:7-54:22 [O'Brien Dep.].

[44]     Civil Action No. 06-cv-00605-PAB-KMT, 2017 U.S. Dist. LEXIS 184498 (D. Colo. Feb. 8, 2017).

[45]     *Id.* at *10-12 (citing *Apple Inc. v. Samsung Elecs. Co.,* Case No.: 12-CV-0630-LHK (PSG), 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013); *In re eBay Seller Antitrust Litig.* Case No. C 07-1882 JF(RS), 2009 WL 3613511, at *1 (N.D. Cal. Oct. 28, 2009); *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 683 (N.D. Cal. 2006)).

Dated:  October 14, 2021

*s/Alan L. Kildow*
Alan L. Kildow, MN# 0143133
790 Potato Patch Drive
Vail, CO 81657
Telephone: (970) 390-6675
E-mail:  alkildow@aol.com

Jesse Wiens, Colo. #33903
Fahrenholtz & Wiens LLC
100 West Beaver Creek Boulevard
Suite 236
Avon, CO 81620
Telephone: (970) 949-6500
E-mail:  fwlawyers@gmail.com

Sonya R. Braunschweig (MN# 0290282)
5501 Irving Avenue South
Minneapolis, MN  55419
Telephone:  (612) 819-2304
E-mail:  sonya.braunschweig@gmail.com

Attorneys for Plaintiffs Lindsay Winninger and
Sports Rehab Consulting LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2021, I served a true and correct copy of Plaintiffs' Reply to Rule 37 Motion to Compel #4 Relating to Joint Ventures and Other Combinations, including exhibits, some of which are filed restricted under the protective order, via the Court's ECF system on:

Shannon Stevenson
Janet A. Savage
Jackie Roeder
Daniel Richards
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO  80202

Counsel for Defendant


_s/ Alan L. Kildow_
Alan L. Kildow