**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation.

      Defendant.

---

### PLAINTIFFS' RULE 37 MOTION TO COMPEL #5
### TO PRODUCE DOCUMENTS ON VAIL HEALTH'S INADEQUATE PRIVILEGE LOG, OR ALTERNATIVELY, *IN CAMERA* REVIEW AT VAIL HEALTH'S COST

---

### <u>INTRODUCTION</u>

This is the second motion that Plaintiffs have had to bring related to Vail Health's privilege log.  Many documents at issue here relate to Vail Health's assertion of privilege over business transactional documents related to the joint ventures between Vail Health, The Steadman Clinic, and Vail-Summit Orthopaedics.  In responding to discovery,[1] Vail Health never explained, as the rules require, that joint venture documents were being specifically withheld on the basis of privilege.[2]  When Plaintiffs repeatedly sought the joint venture documents, and in particular, the term sheets and independent fair market valuations, Vail Health was evasive, did not respond, or said documents have been or would be produced; they were not.  So from October 9, 2020

---

[1]    Ex. 1 at Request Nos. 7-8 [1st RFP].
[2]    Fed. R. Civ. P. 34(b)(2)(C)("An objection must state whether any responsive materials are being withheld on the basis of that objection.")

until Plaintiffs received the privilege log on September 10, 2021 (a month after Plaintiffs moved to compel the log), Vail Health never disclosed that it would withhold joint venture independent valuation documents on the basis of attorney-client privilege.

In addition to valuation documents, there are other deficiencies with respect to the log and Vail Health's invocation of attorney-client privilege.  Plaintiffs therefore request that Vail Health be ordered to produce documents on the log, or that the Court conduct an *in camera* review (at Vail Health's cost if this matter is referred to the Special Master).  Further, Plaintiffs seek their attorneys' fees and costs for this motion.

## CERTIFICATE OF CONFERRAL

As noted in Plaintiffs' Motion to Compel #3,[3] it took five months and a motion to compel before Vail Health finally produced a privilege log on September 10, 2021. On Sunday, September 12, Plaintiffs outlined the log's many deficiencies and requested a conferral on September 13, 14, or 15,[4] and a response by September 14.  Vail Health waited eleven days to respond, then claimed its privilege log was adequate[5] and told Plaintiffs to identify every deficient entry and explain why it was deficient, attempting to shift its burden to ensure the log was compliant onto Plaintiffs.  Even so, Plaintiffs again cataloged the deficiencies.[6]  Vail Health said it would produce a revised log.[7]  Despite Plaintiffs' request (again) for the revised log, Vail Health has not produced it, nor did it even respond.[8]  Plaintiffs have done all they can to obtain Vail Health's compliance.

---

[3]  Pls.' Mot. to Compel #3 at 2 [ECF No. 132].
[4]  Ex. 2 at 3 [deficiency email].
[5]  *Id.* at 2.
[6]  *Id.* at 3-7.
[7]  *Id.* at 1.
[8]  Ex. 3 [email].

## ARGUMENT

**I.   VAIL HEALTH'S UNTIMELY PRIVILEGE LOG IS INADEQUATE, RESULTING IN WAIVER OF ANY PRIVILEGE AS TO CERTAIN DOCUMENTS.**

### A.   This Court's Standard For Privilege Logs.

Fed. R. Civ. P. 26(b)(5)(A) requires a party invoking privilege to "describe the nature of the documents…not produced or disclosed"" in sufficient detail "for a party and the court to ascertain whether a privilege may attach, even without *in camera* review."[9]  "[A]t a minimum, the privilege log must identify the author or origin of the document; any documents or materials attached to the document; all recipients of the document, including addressees and persons or entities receiving copies; the date of origin of the document; and a description of the contents…as to reveal why it is subject to the asserted privilege."[10]  The failure to timely do so can waive any privilege.[11]

### B.   Vail Health's Log Does Not Meet The Minimum Requirements.

Vail Health's September 10, 2021 privilege log is deficient in many ways.

***First***, the log identifies 50 individuals, only one of which is identified by a company name (independent appraiser),[12] which begs the question that information was originally in the log and later removed.  While Plaintiffs has attempted to make an educated guess as to who the individuals might be, the Court does not have that

---

[9]    *Anderson v. Mountain States Mut. Cas. Co.*, Civil Action No. 15-cv-01316-RM-NYW, 2016 U.S. Dist. LEXIS 56733, at *8 (D. Colo. Apr. 28, 2016).
[10]   *Carbajal v. Lincoln Benefit Life Co.*, Civil Action No. 06-cv-00884-EWN-KLM, 2007 U.S. Dist. LEXIS, at *8 (D. Colo. Nov. 13, 2007); *Zander v. Craig Hosp.*, 743 F. Supp. 2d 1225, 1232 (D. Colo. 2010).
[11]   *Lee v. State Farm Mut. Auto. Ins. Co.,* 249 F.R.D. 662, 683 (D. Colo. 2008); *Atteberry v. Longmont United Hosp.,* 221 F.R.D. 644, 649 (D. Colo. 2004); *Pham v. Hartford Fire Ins. Co.,* 193 F.R.D. 659, 662 (D. Colo. 2000) (same).
[12]   Ex. 4 at Item No. 116 [Sept. 10 log].

luxury.  Without the person's title and company, it is impossible to determine the relationship between the author and recipients, and thus whether the attorney-client privilege applies under *Upjohn*.[13]   Vail Health's lack of disclosure is problematic because the log includes many third parties, which raises other issues, including waiver.  Vail Health also uses an (*) to identify "attorneys and legal professionals" but does not identify who is who and whether they can be considered privileged agents.

Correspondingly, Plaintiffs requested the email addresses for Vail Health Board members, which Vail Health has not provided.  Plaintiffs made this request because, from the documents produced, Board members routinely (most likely, exclusively) use their outside business email accounts to address Vail Health Board matters.[14]   Approximately 176 entries on the log involve the former Board Chair[15] several even include what appears to be his outside business administrative assistant, Christie Faires who is, as far as we know, not employed by Vail Health[16] and is not a privileged agent.  Vail Health's decision to allow outside business email accounts to transmit and receive purportedly "confidential" communications raises issues as to the applicability of the attorney-client privilege, which is addressed in more detail below.

---

[13]      *See E.E.O.C. v. Outback Steakhouse of Fla., Inc.,* 251 F.R.D. 603, 610 (D. Colo. 2008) (privilege applies to lower-level employees when: (1) communications made by corporate employees, (2) to counsel for corporation, (3) at direction of corporate superiors, and (4) for purpose of seeking or obtaining legal advice).

[14]      *See* Ex. 5 [email/Board list].  *See also* Ex. 4 at Item Nos. 49-55, 303, 360-61, 363-64, 391, 395, 416 [Sept. 10 log/Kelton; Jarnot].

[15]      *See* Ex. 4 at Item Nos. 1-5, 28, 30-34, 38, 42, 46-56, 61, 63, 65-71, 74-75, 111, 113, 131, 156, 201, 212-13, 215, 218-35, 244-54, 271-79, 300-01, 303-05, 311-17, 321-26, 330-33, 336-39, 343-48, 358-65, 374-75, 385-86, 374-75, 385-86, 388-95, 416-17, 421-26, 441-53, 459, 472, 474, 497, 504, 523-26, 528, 531-33 [Sept. 10 log/Shannon].

[16]      *See id.* at Item Nos. 244-45, 248, 322, 324-25.

***Second***, there are 238 entries on the log that identify an attorney as a recipient, but does not disclose whether the attorney was a direct recipient or merely copied.[17] Thus, it is impossible to ascertain whether Vail Health requested legal advice or not.  Just because an email copied counsel does not render the document subject to privilege, which is why courts often review such documents *in camera.*[18]  It appears Vail Health has invoked privilege for all documents copying an attorney, regardless of whether it meets the standard or not.  Two examples are addressed later.

***Third***, in many instances, Vail Health omits a meaningful description,[19] characterizing documents as "email conveying information and discussing that information for the purposes of seeking legal advice," or "email to legal counsel providing information for purposes of seeking legal advice on forthcoming additional information."[20]   The difficulty in understanding Vail Health's privilege assertion is because Vail Health chose not to disclose the email's subject matter line.  Additionally, multiple entries identify third-parties as senders and recipients, including individuals

---

[17]      *See* Ex. 4 at Item Nos. 35-38, 48-49, 51, 54, 57-60, 62, 64, 69-70, 73, 75, 89, 91, 95, 97-99, 101, 104-06, 108-09, 117, 122-23, 127, 129-36, 141-43, 145-50, 154-56, 158, 162-66, 168, 173-76, 178, 180, 202, 204-06, 208, 214-17, 220-24, 228-35, 237, 241-50, 252-53, 257-58, 265, 267-69, 273, 276, 278-79, 283, 285, 287, 291, 293, 297-98, 300-01, 303-05, 308-11, 313, 317, 320, 326, 329, 334, 341, 353, 355, 359-60, 363, 365, 370-71, 373, 377, 382, 385-86, 391-92, 395, 399, 409, 414, 421, 423, 425, 427-29, 431-33, 435, 437-38, 443-45, 447, 449-50, 452-53, 455-57, 459-67, 478-82, 484, 489-90, 518, 522-26, 533, 535-42, 545, 551-54, 556, 560, 562-63, 565-66, 570-571, 573 [Sept. 10 log].
[18]      *Pownell v. Credo Petrol. Corp.,* Civil Action No. 09-cv-01540-WYD-KLA  2011 WL 1045418, at *4 (D. Colo. Mar. 17, 2011); *W. Res. Inc. v. Union Pac. R.R. Co.,* No. 00-2043-CM, 2002 U.S. Dist. LEXIS 14802, at *10 (D. Kan. July 23, 2002).  *See also Enrata, Inc. v. Yardi Sys.,* No. 2:15-cv-00102, 2018 U.S. Dist. LEXIS, 149239, at *9 (D. Utah Aug. 30, 2018) (conducing *in camera* review of copied emails to attorney and finding "privilege descriptions" "reflecting legal advice" were business communications).
[19]      *See, e.g., E.E.O.C. v. Outback Steakhouse of Fl., Inc.,* 251 F.R.D. 603, 611 (D. Colo. 2008) (log must *clearly* establish asserted privilege apply by listing specific facts").
[20]      *See, e.g.,* Ex. 4 at Item Nos. 201, 218, 339-40, 396-97, 400, 572 [Sept. 10 log].

5

from Healthcare Transaction Advisors, Haverford, Steadman, VSO, and possibly Deloitte.[21]   Vail Health offers no explanation about the attorney-client relationship between these third-parties and Vail Health's attorney Duane Morris.  As to Steadman, it had its own attorneys (Drinker Biddle) at that time.

**Fourth,** multiple log entries do not indicate that the email involved the request for or rendering of any legal advice.  Instead, from the description it appears to be a general business discussion "***concerning valuation*** prepared at the direction of legal counsel in connection with assessing regulatory compliance of the joint venture."[22] The only thing that purportedly transforms it into something privileged is the phrase "prepared at the direction of legal counsel." But that ignores the realities of the joint venture business transaction—that is, the parties' term sheets required a valuation to be done that was then to be shared with the parties, which is discussed below.

**Fifth,** many emails appear to be internal business communications, with an attorney possibly copied at some later point, which Exhibit 33 discussed below in more detail confirms.  And because the log is not chronological[23] and does not identify the strings,[24] times sent, or the subject line, it is difficult to ascertain whether internal emails actually resulted in a communication with counsel.[25]

---

[21]     Ex. 4 at Item Nos. 116, 373, 427-32, 438, 458-67 [HTA]; *id* at Item Nos. 320, 341, 399, 433-36, 456, 560, 563 [Haverford]; *id.* at Item Nos. 322-25, 330, 332-33 [Deloitte]; *id.* at Item Nos. 342 [Steadman/VSO] [Sept. 10 log].

[22]     *See id.* at Item Nos. 427-34, 564 [Sept. 10 log].

[23]     *See, e.g., Bristol-Myers Squibb Co. v. RHÔNE-POULENC Rorer*, 95 Civ. 8833 (RPP), 2002 U.S. Dist. LEXIS 13706, at *49 (S.D.N.Y. July 25, 2002) (deploring litigation tactic to not log chronologically because it makes court's review more difficult).

[24]     *See, e.g., United States ex rel. v. Davita, Inc.*, 301 F.R.D. 676, 685 (N.D. Ga. 2014) (party identified related emails strings).

[25]     *See, e.g., Favors v. Cuomo*, 285 F.R.D.187, 223-24 (E.D.N.Y. 2012) (no good reason accessible metadata like time, subject line, and description of attachments).

*Sixth*, 70 entries identify that Vail Health circulated "documents" and "information" internally and to counsel.  But no description of what those actual documents and information are—factual information is not protected by the attorney-client privilege.[26]  One entry does make clear, however, that historical documents related to the joint venture (2015-2017) were sent by Nicholas Brown, the former Vice President of Howard Head to CEO Cook.  Vail Health asserts that documents enabled "new CEO to obtain further legal advice on new proposed joint venture"[27] but that is not the type of historical documents that the attorney-client privilege protects.

*Seventh*, there are 42 entries on the log that are notable for what they do not say.  Vail Health claims that "email[s] providing weekly summary documentation concerning legal matters including joint venture," "Steadman lease," "SPRI lease," "MSO," "VSO/HH joint venture," "with attached attorney summary" are protected by the attorney-client privilege.[28]  Unlike its other entries, Vail Health does not identify any legal advice requested or obtained as to these summaries.[29]  Nor has Vail Health identified what "documents" other than an attorney summary were attached.  If Vail Health's counsel just relayed facts about third-party negotiations with Steadman and VSO, or were administrative in nature, those communications are not protected.[30]

---

[26]     Ex. 4 at Item Nos. 201, 218-19, 320-21, 326-29, 336-52, 373-76, 382, 388-90, 393-94, 396-401, 417-20, 435-36, 438, 439-41, 456-65, 473, 504, 560, 563, 572.
[27]     *Id.* at Item No. 544.
[28]     *Id.* at Item Nos. 478-93, 494-96, 498-02, 505-17, 519-21, 527, 530.
[29]     *See Sterling Const*. *Mgmt*., *LLC v*. *Steadfast Ins*. *Co*., No. 09-CV-02224-MSK-MJW, 2011 WL 3903074, at *14 (D. Colo. Sept. 6, 2011) (privilege does not protect administrative-type discussions); *Church Mut. Ins. Co. v. Coutu*, Civil Action No. 17-cv-00209-RM-NYW, 2017 U.S. Dist. LEXIS 156347, at *22 n.4 (D. Colo. Sept. 25, 2017) (privilege does not shield all information divulged to attorney, or vice versa).
[30]     *Mac-RayCorp. v. Ricotta*, No. 03 Civ. 524 (WMS)(LGF), 2004 WL 1368857, at *2 (W.D.N.Y June 16, 2004) (reiteration of basic facts not privileged); *GenOn Mid-Atl., LLC*

C.    **Because Of The Unjustified Delays, Waiver Should Be Found.**

Despite Plaintiffs giving Vail Health more than ample time to address its deficient privilege log, it has not.  While waiver may be a harsh sanction, it is warranted here based on Vail Health's repeated and unjustified delays.  Vail Health provided no explanation why it served its log many weeks *after* Plaintiffs filed a motion to compel.  Nor has Vail Health offered any reason for the delay in serving its revised log.  In *SEC v. McNaul*,[31] the Kansas district court affirmed a magistrate's ruling that such delays waived any claim of privilege.  The same should apply here as well.[32]

II.    **VAIL HAS NOT ESTABLISHED THAT ALL DOCUMENTS ARE PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE.**

A.    **The Attorney-Client Privilege Under Federal Law.**

Even if Vail Health had timely produced its revised log, Vail Health could still not meet its burden that the documents are privileged.[33]  Because this case involves the Sherman Act, federal privilege law applies,[34] which protects communications made in confidence between a client and an attorney for purposes of seeking legal advice.[35]  The party seeking to invoke the attorney-client privilege—here, Vail Health—must make a

---

*v. Stone & Webster, Inc.*, No. 11 Civ. 1299(HB)(FM), 2011 WL 5439046, at *9 (S.D.N.Y. Nov. 10, 2011) (discussing project management and status not privileged).

[31]    277 F.R.D. 439, 448 (D. Kan. 2011).

[32]    *See id.* (citing *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200, 2006 WL 3694862, at *3 (D. Kan. Dec. 13, 2006) (finding waiver when privilege log was produced after court was asked to rule on the issue)).

[33]    *See, e.g.*, *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 103-04 (S.D.N.Y. 2003) (noting difference between providing basic information in log and meeting the substantive burden for asserting privilege).

[34]    *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (10th Cir.1995) (mere fact attorney involved in communication does not automatically render it privileged).

[35]    *EEOC v. Outback Steakhouse of Fla.*, 251 F.R.D. 603, 610 (D. Colo. 2008).*United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998).

clear showing that it applies and that there has been no waiver of any privilege.[36]  The assertion of privilege is narrowly construed and applied only when necessary to protect client communications essential to obtain legal advice;[37] not business advice.[38] "[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege,"[39] rather, the communications must relate to legal advice or strategy sought by the client."[40]  Although the "status" as lawyer is considered, a court must analyze "the nature of the advice given, the context, content and purpose of the communication.[41]

### B. Vail Health Improperly Invokes "Privilege" As To Fair Market Valuations Used For Business Transactions.

Approximately 70 entries on Vail Health's privilege log,[42] if not more, relate to valuations conducted by independent appraisers for a proposed joint venture for physical therapy services between Vail Health, Steadman, and VSO.  Vail Health claims that documents provided to or received from the appraisers, and the valuations themselves are protected by the attorney-client privilege because they were done "at the direction of

---

[36]      *In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999). *See also United States v. Phelan*, 3 Fed. App'x 716, 718 (10th Cir. 2001).")

[37]      *Fisher v. United States*, 425 U.S. 391, 403 (1976).

[38]      *Pownell v. Credo Petroleum Corp.* Civil Action No. 09-cv-01540-WYD-KLM, 2011 U.S. Dist. LEXIS 35869, at *6 (D. Colo. Mar. 17, 2011); *Faloney v. Wachovia Bank, N.A.*, 254 F.R.D. 204, 209 (E.D. Pa. 2008).

[39]      *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (10th Cir. 1995);

[40]      *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998); *See In re Diasonics Securities Litig.*, 110 F.R.D. 570, 573 (D. Colo. 1986) ("The mere showing that the communication was from a corporate client to an attorney is not sufficient to establish existence of an attorney-client privilege.").

[41]      *Lindley v. Life Investors Ins. Co. of America*, 267 F.R.D. 382, 391 (N.D. Okla. 2010)

[42]      *See, e.g.,* Ex. 4 at Item Nos. 116-17, 133, 131, 135, 174, 217, 219, 247, 252, 320-25, 329-30, 332-33, 340-41, 373, 374-76, 383, 396, 397, 399, 427-29, 431-41, 456-68, 470, 473-74, 504, 529, 544, 554, 560, 559, 562-64, 571 [Sept. 10 privilege log].

counsel," purportedly to address "regulatory compliance" issues.  Nothing supports that the valuations were made in confidence between a client and an attorney[43] for purposes of seeking legal advice.[44]

Because healthcare is a highly-regulated industry, providers must comply with at least two federal laws—the "Stark Act" and the "Anti-Kickback" law[45]—when entering into business transactions.  These laws are intended to prevent fraud, self-referrals, and financial kickbacks, among other things.  To be compliant, healthcare systems must ensure that their business transactions are commercially reasonable and consistent with fair market value[46] so as to insulate hospitals and physicians from running afoul of healthcare laws.[47]  But the Stark analysis conducted by Vail Health's attorneys long before the appraiser's work was completed related to an exemption for healthcare services in a rural area using Vail Health's *internal patient data*, which Vail Health then shared with both Steadman and VSO.[48]

Rather, the independent appraisers undertook a fair market analysis of the minority interest shares (that is, Steadman's and VSO's buy-in) and of the proposed rate to be charged for physical therapy services.  The consultants were not engaged to analyze Stark, antikickback laws, or to assist counsel with any regulatory analysis.  They were nonattorney valuation consultants required under the term sheets[49] to provide a fair

---

[43]   *EEOC v. Outback Steakhouse of Fla.*, 251 F.R.D. 603, 610 (D. Colo. 2008).
[44]   *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998).
[45]   42 U.S.C. § 1395nn; 42 U.S.C. § 1320a-7b.
[46]   *See, e.g.,* 42 U.S.C. § 1395nn(e)(7).
[47]   *See, e.g., United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 165-66 (3d Cir. 2019) (noting many innocuous and common billing relationships run afoul of Stark Act; healthcare providers bearing burden show "fair market value" transaction).
[48]   Ex. 6 [Stark analysis shared with Steadman and VSO].
[49]   *See* Ex. 7 at VH_Fed03565 [1st term sheet]; Ex. 8 at VSO_Fed06 [2d term sheet].

market value analysis that was required to be shared with all parties.  Courts routinely find that those valuations are not subject to attorney-client privilege.[50]  That the underlying valuation analysis and reports may have been shared with Vail Health's counsel who used them in contract negotiations, or to provide its client advice, does not transform those business documents into privileged documents.[51]  But this is not unique to the healthcare industry, courts have also held that independent business valuations are not privileged,[52] nor are the factual documents appraisers rely upon.  So Vail Health's claim they were conducted "at the direction of counsel" rings hollow. The appraisals were integral to the business transaction and required to be provided to Steadman and VSO.

Additionally, Vail Health asserts internal communications about the valuations are privileged.[53]  To the extent Vail Health claims documents are protected because the valuation was conducted "at the direction of counsel," that objection is without merit.  For

---

[50]     *United States ex rel. Rembert v. Bozeman Health Deaconess Hosp.*, No. CV 15-80-BU-SEH, 2018 WL 2320645, at *2-3 (D. Mont. May 22, 2018) (determining three times that FMV documents not privileged); *United States ex. rel. Baklid-Kunz v. Halifax Hosp. Med. Center,* Case No. 6:09-cv-1002-Orl-31DAB, 2012 WL 5415108, at *8-9 (M.D. Fla. Nov. 6, 2012) (compelling disclosure of documents related to FMV determinations); *Heartland Surgical Specialty Hosp. LLC v Midwest Div.,* No. 05-2164-MLB-DWB, 2007 WL 2122440, at 4, n.5 (D. Kan. 2007) (accountant's work for hospital not privileged); *Shahbahian v. Trihealth, Inc.,* Case No. 1:18-cv-790, 2019 WL 4958114, at *6 (S.D. Ohio Oct. 8, 2019) (FMV data and correspondence not subject to attorney-client privilege).

[51]     *See, e.g., Waters v. Drake,* No. 2:14-CV-1704, 2015 WL 8281858, at *4 (S.D. Ohio Dec. 8, 2015) (when dominant purpose is not to secure legal advice but to make policy or business decisions, communication are not insulated just by sending copy to lawyer).

[52]     *See, e.g., Am. Health Sys., Inc. v. Liberty Health Sys.,* Civil Action No. 90-3112, 1991 U.S. Dist. LEXIS 3675, at *12-13 (E.D. Pa. Mar. 26, 1991) (accountant's analysis of hospital joint venture not privileged); *Williams v. Big Picture Loans, LLC,* 303 F. Supp. 3d 434, 437 (E.D. Va. 2018) (accountant providing business valuation not privileged); *United States v. Richey,* 632 F.3d 559, 567 (9th Cir. 2011) (appraisal documents not privileged).

[53]     *See, e.g., id.* at Item Nos. 116, 219, 321-25, 331-32, 345, 374-75, 430, 434, 439-41, 458, 468, 470, 474, 396-97, 456, 504, 529, 544, 559, 564 [Sept. 10 log].

example, on September 21, Vail Health sought to claw back Exhibit 33[54] to Plaintiffs' Motion to Compel #4, which is an email string sent by one appraiser to Vail Health. Vail Health recipients then internally discussed the valuation, compared it to Haverford's analysis, and confirmed that the valuations were to set a rate for physical therapy services and minority share interests.[55] Vail Health's counsel was copied on the email; he did not respond. No legal advice was requested; none was given. It is not privileged.

Many other internal communications on the log mimic the privilege asserted for Exhibit 33—that is, valuations were discussed for purposes of seeking legal advice.[56] But those documents could only be privileged if Vail Health actually sought legal advice.[57] Exhibit 33 makes clear using phrases "for purposes of seeking legal advice" or "obtaining legal advice" are artfully drawn to make it appear that documents are privileged. For example, VSO sent an email to Doris Kirchner and Nicholas Brown stating that VSO would not engage in any joint venture with Centura in Eagle County, and likewise would find it difficult to engage in a joint venture in Summit County.[58] Nothing VSO said touches on Vail Health's need to seek legal advice, and yet that is the claimed privilege. Finally, Vail Health claims meeting invitations are privileged[59] but they are not.[60]

---

54  Ex. 9 [Ex. 33]; Ex. 10 [email/letter].
55  Ex. 9 at VH_Fed001942 [Ex. 33].
56  *Compare* Ex. 4 at Item Nos. 372-73, 379-81, 84 *with* Item. Nos. 321, 374-75, 468.
57  *See, e.g., Doe v. Intermountain Health Care, Inc.*, No. 2:18-CV- 807-RJS-JCB, 2021 U.S. Dist. LEXIS 9078, at *6 (D. Utah Jan. 16, 2021) (party must prove each email and attachment seeks or conveys legal advice to be privileged).
58  Ex. 11 at VH_Fed004020.
59  Ex. 4 at Item Nos. 171-72, 554 [Sept. 10 log]..
60  *Kovacs v. Hershey Co.*, Civil Action No. 04-cv-01881-WYD-BNB, 2006 U.S. Dist. LEXIS 77777, at *4 (D. Colo. Oct. 25, 2006) (substance of communication privileged; not fact there was a communication); *In re Universal Serv. Fund Tele. Billing Practices Litig.*, 232 F.R.D. 669, 675 (D. Kan. 2005) (subject matter of attorney meetings, persons present, location and arrangement of meetings not protected).

**B.  Vail Health Has Not Met Its Burden Showing That The Privilege Has Not Been Waived As To Certain Documents.**

**1.  Privilege Has Been Waived As To Board Members.**

To remain privileged, a communication must be made *in confidence* and *kept confidential*.  "It is well-settled that when privileged communications are voluntarily disclosed to a third-party, the privilege is waived."[61]  "This is true even if the disclosure is inadvertent."[62]  The Tenth Circuit has instructed, "the confidentiality of communications covered by [a] privilege must be jealously guarded by the holder of the privilege lest it be waived.  The courts will grant no greater protection to those who assert the privilege than their own precautions warrant."[63]  Thus, it is the proponent of the privilege—here, Vail Health—that bears the burden of establishing nonwaiver.[64]

As to the 180 emails sent by or received from Vail Health Board members, Vail Health has the burden to prove there has not been any waiver of the attorney-client privilege.  From limited emails produced, Vail Health did not communicate with Board members through Vail Health's email system, personal emails, or through a Board portal.  Instead, Vail Health communicated with certain Board members using their business email accounts.  As this Court explained in *L-3 Commc'ns Corp. v. Jaxon Engineering & Maintenance, Inc.*, a party can waive privilege by using business emails to transmit confidential and privileged communications.  Vail Health also waived any privilege as to those communications in which former Board Chair Michael Shannon included his outside

---

[61]  *Beltran v. InterExchange, Inc.*, Civil Action No. 14-cv-03074-CMA-CBS, 2018 U.S. Dist. LEXIS 22564, at *1 (D. Colo. Feb. 12, 2018).
[62]  *United States v. Ryans*, 902 F.2d 731, 741 n.13 (10th Cir. 1990).
[63]  *Id.*
[64]  *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, No. 10-cv-02868-MSK-KMT, 2014 WL 3732943, at *5 (D. Colo. July 29, 2014).

assistant—who is not employed by Vail Health—on purported privileged communications. "[If a client wishes to preserve the privilege, it must treat the confidentiality of attorney-client communications like jewels—if not crown jewels."[65] Vail Health did not do that here.

### 2. Intentionally Producing Some But Not All Appraisal Documents Waives Any Purported Privilege.

By intentionally producing some documents to or from the appraisers about the joint venture, Vail Health waived privilege related to the same subject matter. Vail Health cannot produce some but not all documents related to Healthcare Transaction Advisors. Subject matter waiver should apply equally to the Haverford's documents too, as they were created for the same purposes—that is, to provide a fair market value of the proposed joint venture. Vail Health's attempt to gain a tactical advantage by producing some documents as to one appraiser and none as to the other. is not supported by Fed. R. Evid. 502(a).[66] Subject matter waiver should be applied to both, and all valuation documents and communications should be produced.

### C. Documents Intended To Be Disseminated To Third Parties Are Not Shielded By The Attorney-Client Privilege.

Vail Health provided VSO with a term sheet for the MSO joint venture; VSO produced the term sheet under a subpoena.[67] Yet, Vail Health still refuses to produce

---

[65]    *In re Sealed Case,* 877 F.2d 976, 980 (D.C. Cir. 1989). *See also United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir. 1990) (citing *In re Sealed Case* with approval).
[66]    *See, e.g., In re Urethane Antitrust Litig.,* No. 04-MD-1616-WJL, 2011 U.S. Dist. LEXIS 9923, at *39-42 (D. Kan. Jan. 31, 2011) (ordering related "privileged" documents to be produced "to prevent a selective and misleading presentation of evidence," which would be unfair); *Silverstein v. Fed. Bureau of Prisons,* Civil Action No. 07-cv-02471-PAB-KMT, 2009 U.S. Dist. LEXIS, 121753, at *38-39 (D. Colo. Dec. 14, 2009) (same); *Roda Drilling Co. v. Siegal,* No. 07-CV-400-GKF-FHM, 2009 U.S. Dist. LEXIS, at *8-9 (N.D. Okla. Aug. 11, 2009) (same);
[67]    Ex. 8 [2d Term Sheet produced by VSO].

the term sheet, claiming it is privileged[68]   Vail Health also refuses to confirm whether Steadman was given a similar term sheet at the December 16, 2016 meeting,[69] despite this information being relevant to Interrogatory No. 11.[70]   The same holds true with the independent valuations.  The term sheets required the dissemination of those appraisals. Despite the term sheets and appraisals being drafted with the specific purpose of disclosing them to Steadman and VSO,[71] Vail Health refuses to produce them.  Vail Health's claims of privilege should be rejected because the documents were never intended to be privileged from the inception of the business transaction.

## III.    PLAINTIFFS ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES.

Rule 37(5)(A) states that if the requested discovery is provided after the motion is filed, the Court "must, after giving an opportunity to be heard, require the party…whose conduct necessitated the motion, the party or attorney advising that conduct or both, to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  This is the second motion Plaintiffs have had to bring about Vail Health's privilege log.  The unnecessary delays in first producing a log and then not revising the log after representing it, warrants the award of attorneys' fees.

---

[68]    Ex. 12 at 2 [email].
[69]    *Id.*
[70]    *See* Pls.' Mot. to Compel #4 at 12-14 [ECF No. 157].
[71]    *United States v. Bump,* 605 F.2d 548, 550-51 (10th Cir. 1979)  *See also Entrata, Inc. v. Yardi Sys., Inc.*, No. 2:15-cv-00102, 2018 U.S. Dist. LEXIS 185743, at *19 (D. Utah Oct. 29, 2018) (following *Bump* and concluding that documents intended to be provided to third party are not privileged); *United States v. (Under Seal) (In re Grand Jury 83-2 John Doe No. 462),* 748 F.2d 871, 875 (4th Cir. 1984) ("if a client communicates information to his attorney with the understanding that the information will be revealed to others, that information as well as the details underlying the data" are not privileged); *United States v. Lawless,* 709 F.2d 485, 487 (7th Cir. 1983) (same); *Republican Party v. Martin,* 136 F.R.D. 421, 428 (E.D.N.C. 1991) (documents intended to be published to third parties lack confidentiality).

15

Dated:  October 17, 2021

*s/Alan L. Kildow*
Alan L. Kildow, MN# 0143133
790 Potato Patch Drive
Vail, CO 81657
Telephone: (970) 390-6675
E-mail:  alkildow@aol.com

Jesse Wiens, Colo. #33903
Fahrenholtz & Wiens LLC
100 West Beaver Creek Boulevard
Suite 236
Avon, CO 81620
Telephone: (970) 949-6500
E-mail:  fwlawyers@gmail.com

Sonya R. Braunschweig, MN# 0290292
5501 Irving Avenue South
Minneapolis, MN 55419
Telephone: (612) 819-2304
E-mail:  sonya.braunschweig@gmail.com

Attorneys for Plaintiffs Lindsay Winninger and
Sports Rehab Consulting LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 17, 2021, I served a true and correct copy of Plaintiffs' Rule 37 Motion to Compel #5 to Produce Documents On Vail Health's Inadequate Privilege Log, Or Alternatively, *In Camera Review* At Vail Health's Cost**,** including exhibits, some of which are filed restricted under the protective order, via the Court's ECF system on:

Shannon Stevenson
Janet A. Savage
Jackie Roeder
Daniel Richards
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO  80202

Counsel for Defendant

*s/ Alan L. Kildow*
Alan L. Kildow