<table>
<tr><td>DISTRICT COURT, EAGLE COUNTY, COLORADO<br>885 Chambers Ave.; P.O. Box 597<br>Eagle, CO 81631<br>Phone: (970) 328-6373</td><td rowspan="2">DATE FILED: November 4, 2021 11:20 AM<br>CASE NUMBER: 2017CV30102<br><br>▲COURT USE ONLY▲</td></tr>
<tr><td rowspan="2">Plaintiffs: LINDSAY WINNINGER, an individual, and SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,<br>v.<br>Defendants: DORIS KIRCHNER, an individual, and VAIL CLINIC, INC. d/b/a/ VAIL VALLEY MEDICAL CENTER, a Colorado nonprofit corporation;<br><br>v.<br>Third-Party Defendant: David J. Cimino, an individual.</td></tr>
<tr><td>Case No.: 17CV30102<br><br>Div.: 3</td></tr>
<tr><td colspan="2">ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</td></tr>
</table>

THIS MATTER is before the Court on *Defendants' Motion for Summary Judgment* submitted by Defendants Vail Clinic, Inc. ("Vail Health") and Doris Kirchner (collectively, "Defendants"), through counsel, on August 25, 2020 ("Motion"). On June 22, 2021, Plaintiffs Lindsay Winninger and Sports Rehab Consulting LLC ("Sports Rehab") (collectively, "Plaintiffs") submitted, through counsel, *Plaintiffs' Revised Opposition to Defendants' Motion for Summary Judgment* ("Opposition"). On August 23, 2021, Defendants submitted, through counsel, *Defendants' Revised Reply Brief in Support of Their Motion for Summary Judgment* ("Reply"). Having considered the Motion, Opposition, and Reply, the Court GRANTS the Motion and hereby issues the following Order.

## I. INTRODUCTION

Initiated on April 25, 2017, this dispute involves claims for defamation and tortious interference of contract, and current and prospective business relationships. Plaintiffs allege that

Defendant Vail Health, the hospital through which Plaintiff Lindsay Winninger formerly performed physical therapy services, defamed her by stating that she stole or was involved in stealing Vail Health patient files.

Plaintiffs alleged twenty-four counts of defamation; sixteen were previously dismissed by summary judgment.[1] Before the Court is Defendants' request for summary judgment on the remaining eight defamation counts and three claims for tortious interference of contract, and current and future business relationships. Asserting the defense of truth, a complete defense to defamation, Defendants argue that Plaintiffs' defamation claims, and ancillary claims for tortious interference, must be dismissed as a matter of law because the alleged defamatory statements are substantially true and therefore not actionable.

No facts material to the substantial truth inquiry are in dispute. The crux of the issue before the Court is whether the alleged defamatory statements that Winninger stole patient files from Vail Health are substantially true?

## II. FACTS AND PROCEDURAL HISTORY

The following facts are not disputed. Vail Health is a nonprofit community hospital located in Vail, Colorado.[2] In 2004, Vail Health and Rehabilitation & Performance Center at Vail, LLC ("RPC-Vail") entered into a services agreement for the operation of a physical therapy and rehabilitation clinic known as Howard Head Sports Medicine ("Howard Head") located at Vail Health.[3] Winninger worked as a physical therapist for Howard Head from January 2008 through May 2012.[4] From May 2012 to April 2014, Winninger served as the head physical therapist for the

[1] *See Order Granting in Part Defendants' Motion for Summary Judgment as to Plaintiffs' Defamation Claims (Counts I-XXIV)*, filed May 31, 2019.
[2] Am. Compl., filed February 22, 2018, ¶ 13.
[3] *Id*. ¶¶ 31; Defs.' Ex. 3, Physical Therapy Services Agreement, filed August 25, 2020.
[4] Am. Compl. filed February 22, 2018, ¶ 19.

U.S. Women's Alpine Ski Team.[5] In 2014, she founded Sports Rehab.[6]

As pertinent here, when Winninger left her employment at Howard Head in 2012, she downloaded her personal folder from the Howard Head shared network drive onto an external storage device or USB drive.[7] In so doing, she copied 9,826 documents spanning over 17,000 pages.[8] Among these was the Protected Health Information ("PHI") under the Health Insurance Portability and Accountability Act ("HIPAA") of 710 patients.[9]

On April 25, 2017, Plaintiffs filed the *Complaint and Jury Demand* ("Complaint") alleging one count of defamation and three counts of tortious interference with contract, and current and prospective business relationships.[10] On February 22, 2018, Plaintiffs amended the Complaint to add twenty-three counts of defamation.[11]

Plaintiffs claim that in 2016 and 2017, Defendants made defamatory statements that Winninger stole, knew about or participated in downloading, or was involved in stealing patient files from Vail Health.[12] Plaintiffs aver that Defendants made these statements "in an effort to dissuade orthopaedic clinics, doctors, and patients from using Winninger and her company's physical therapy services" and "to drive Winninger and her company out of business to further

---

[5] Am. Compl. filed February 22, 2018, ¶ 20.

[6] *Id*. ¶ 20.

[7] Defs'. Ex. 2, Winninger Dep. Tr., filed August 25, 2020, 95:24-96:2; 380:3-382:6; Winninger Decl., filed September 29, 2020, ¶¶ 83, 87-91; Pltfs.' Opp'n, filed June 22, 2021, at 3.

[8] Defs.' Ex. 8, Crumbaker Decl., filed August 25, 2020, ¶¶ 3, 7; Pltfs.' Opp'n, filed June 22, 2021, at 3; Winninger Decl., filed September 29, 2020, ¶¶ 87-91.

[9] Defs.' Ex. 8, Crumbaker Decl., filed August 25, 2020, ¶¶ 4, 8; Pltfs.' Opp'n, filed June 22, 2021, at 3; Winninger Decl., filed September 29, 2020, ¶¶ 87-91. On February 6, 2018, the Court granted the parties *Stipulation for Protective Order and HIPAA Qualified Protective Order*. Therein, the parties agreed that Protected Health Information ("PHI") shall have the same scope and definition as set forth in 45 C.F.R. § 160.103 and 164.501:

> PHI includes, but is not limited to, health information, including demographic information, relating to either (a) the past, present, or future physical or mental condition of an individual; (b) the provision of care to an individual; or (c) the payment for care provided to an individual, which identifies the individual or which reasonably could be expected to identify the individual.

*See Stipulation for Protective Order and HIPAA Qualified Protective Order*, filed February 6, 2018, at 4.

[10] *See Verified Complaint and Jury Demand*, filed April 25, 2017.

[11] *See* Am. Compl., filed February 22, 2018.

[12] *Id*.

their monopoly of physical therapy services in the Vail Valley."[13] Plaintiffs allege that "[d]ue to Defendants' false and defamatory statements the Vail Valley medical community has been led to believe that Winninger is a thief engaged in criminal misconduct in violation of [HIPAA], as well as other laws."[14]

On July 18, 2019, the Court determined that the case had significant discovery issues. These issues included alleged discovery violations. The Court also found that the discovery issues would require multiple hearings and large amounts of time and judicial resources. To address the needs of the case, the Court appointed a Special Master to hear and make rulings on discovery related issues.[15]

On November 2, 2018, Vail Health sought production of the documents Winninger downloaded.[16] Upon Plaintiffs' refusal to produce and Defendants' motions to compel, on September 12, 2019, the Special Master entered an order, and again on November 2, 2019, that Plaintiffs produce the documents Winninger downloaded from Howard Head's server.[17]

In November and December 2019, Winninger produced the initial set of disclosures which included 8,363 documents she downloaded.[18] As a healthcare provider, Vail Health is subject to HIPAA which requires it to take certain measures to safeguard PHI, including notifying patients if their PHI has been accessed or otherwise used for an unauthorized purpose.[19] On December 31,

---

[13] Am. Compl., filed February 22, 2018, ¶¶ 4, 5.
[14] *Id.* ¶ 6.
[15] *See Order Appointing Special Master Per C.R.C.P. 53(a)*, filed July 18, 2019.
[16] *See Defendants' Motion to Compel Plaintiffs to Produce Text Messages, Emails, and Other Responsive Documents*, filed November 2, 2018, at 12-13.
[17] *See* Def's Ex. 5, *Vail Health's Response to Plaintiffs' Motion to Compel and Motion for Protective Order*, filed October 4, 2019, at 1-3; *see also Special Master Order Granting Defendants' Motion to Enforce Court's Order Dated August 15, 2018*, filed September 12, 2019*; see also Order on Plaintiffs' Motion to Compel and Prior Order for Lindsay Winninger to Produce Documents Predating May 2012*, filed November 2, 2019.
[18] Defs.' Mot., at 5, fn. 4; *see* Defs.' Ex. 6, Penrod Dep. Tr., filed August 25, 2020, 362:24-364:11; 368:7-372:12; *see also Special Master Order Granting in Part Vail Health's Motion to Compel Plaintiffs to Produce All Documents Testified to By David Penrod and Search SRC's Computers for Relevant Documents*, filed May 15, 2020*;* Defs'. Ex. 8, Crumbaker Decl., filed August 25, 2020, ¶¶ 2-4.
[19] 45 C.F.R. § 164.404.

2019, Vail Health submitted a notice of breach to the U.S. Department of Health and Human Services, Office of Civil Rights, as required by HIPAA, stating that it had "discovered that a physical therapist, at [Howard Head]…improperly acquired electronic [PHI]" and sent letters to those Vail Health patients impacted.[20]

On April 30, 2020, Plaintiffs' forensic expert testified that he had obtained from Winninger's computer 9,537 documents.[21] The Special Master granted Vail Health's motion to compel production of the additional documents observing:

> The Special Master [o]rdered Plaintiffs in fall 2019 to produce the documents Lindsay Winninger testified she took from the Howard Head shared drive when she left Howard Head in 2012. Plaintiffs represented that they complied with that order by producing 8,363 documents in November and December 2019… Plaintiffs had an obligation to produce the 9,537 documents back in 2019 along with the other documents Winninger produced. They represented that they had complied with the Order and produced all responsive documents. It clearly appears that they did not.[22]

In May 2020, Winninger produced a supplemental second set of disclosures and on June 23, 2020, Vail Health filed an addendum to its prior breach notice, sent notification letters to patients impacted, and, because the breach had impacted more than 500 patients, sent media notices, as required, to certain Colorado news organizations.[23]

Now before the Court for its consideration is Defendants' request for summary judgment on Plaintiffs' remaining claims – specifically defamation Counts I, II, III, IX, XI, XIX, XXI, XXII, and tortious interference Counts XXV, XXVI, and XXVI.

---

[20] Defs'. Ex. 8, Crumbaker Decl., filed August 25, 2020, ¶ 5; *see also* Defs' Exs. 10, 11, filed August 25, 2020.
[21] Defs.' Ex. 6, Penrod Dep. Tr., filed August 25, 2020, at 362:24-364:11, 368:7-372:12.
[22] *Special Master Order Granting in Part Vail Health's Motion to Compel Plaintiffs to Produce All Documents Testified to By David Penrod and Search SRC's Computers for Relevant Documents*, filed May 15, 2020.
[23] Defs'. Ex. 8, Crumbaker Decl., filed August 25, 2020, ¶¶ 6-9; *see* Defs' Exs. 12, 13, and 14, filed August 25, 2020.

## III. STANDARDS OF REVIEW

### *A. Summary Judgment*

Summary judgment is designed to avoid unnecessary trials and is proper when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56; *Terrell v. Walter E. Heller & Co.*, 439 P.2d 989, 990-91 (Colo. 1968). The movant bears the initial burden of demonstrating the lack of a genuine issue of material fact. *Schultz v. Wells*, 13 P.3d 846, 848 (Colo. App. 2000). The burden then shifts to the nonmovant to show that an issue does exist. *McCormick v. Union Pac. Res. Co.*, 14 P.3d 346, 349 (Colo. 2000). The trial court's function is to determine whether any material facts are disputed, not to assess the credibility or weight of the evidence. *Capitran Inc. v. Great W. Bank*, 872 P.2d 1370, 1376 (Colo. App. 1994). In determining the existence of a genuine issue of material fact, a court is to grant the non-moving party the benefit of all favorable inferences reasonably drawn from the facts and is to resolve all doubts in favor of the non-moving party. *Jenkins v. Panama Canal Ry. Co.*, 208 P.3d 238, 241 (Colo. 2009). However, the nonmoving party "may not rest upon the pleadings, but must present specific facts demonstrating the existence of disputed facts." *Snook v. Joyce Homes, Inc.*, 215 P.3d 1210, 1218 (Colo. App. 2009).

Because the threat of protracted litigation could have a chilling effect on the constitutionally protected right of free speech, prompt resolution of defamation actions by summary judgment is appropriate. *Fry v. Lee*, 408 P.3d 843, 849 (Colo. App. 2013) (citing *Barnett v. Denver Publ'g Co.,* 36 P.3d 145, 147 (Colo. App. 2001)).

### *B. Defamation*

A claim for defamation requires the publication of a false statement of a defamatory nature. *Fry v. Lee*, 408 P.3d 843, 849 (Colo. App. 2013) (citing *Burns v. McGraw-Hill Broad. Co*., 659

P.2d 1351, 1360 (Colo. 1983)). Substantial truth is an absolute defense to a defamation claim. *Fry v. Lee*, 408 P.3d 848-49 (Colo. App. 2013) (citing *Gomba v. McLaughlin*, 504 P.2d 337, 338 (Colo. 1972); *Gordon v. Boyles*, 99 P.3d 75, 81 (Colo. App. 2004); *Barnett v. Denver Publ'g Co.*, 36 P.3d 145, 147-48 (Colo. App. 2001) (other internal citations omitted)). Accordingly, even if a statement is defamatory, it is not actionable if it is substantially true. *Fry*, at 849 (citing *Gordon*, 99 P.3d at 81). Moreover, "[a] defendant asserting truth as a defense in a libel action is not required to justify every word of the alleged defamatory matter; it is sufficient if the substance, the gist, the sting, of the matter is true." *Fry v. Lee*, 408 P.3d 843, 849 (Colo. App. 2013) (citing *Gomba*, 504 P.2d at 339).

Whether a statement is defamatory is a question of law. *Fry v. Lee,* 408 P.3d 843, 848 (Colo. App. 2013) (citing *Gordon v. Boyles*, 99 P.3d 75, 79 (Colo. App. 2004) (other internal citation omitted)). The determination of the truth of an alleged defamatory statement is a question of fact. *Gordon v. Boyles*, 99 P.3d 75, 81 (Colo. App. 2004) (citing *Gomba v. McLaughlin*, 504 P.2d 337, 339 (1972)). However, if no material issue of fact exists with regard to the truth of the statement, summary judgment is appropriate. *See Gordon*, 99 P.3d at 81. In defamation cases, the existence of a material fact must be established with convincing clarity. *Gordon v. Boyles*, 99 P.3d 75, 78 (Colo. App. 2004) (citing *Reddick v. Craig*, 719 P.2d 340, 343 (Colo. App. 1985)).

## IV. ANALYSIS

The Court shall first address Defendants' request for summary judgment on Plaintiffs' defamation claims followed by the tortious interference claims. In the remaining eight defamation counts, Plaintiffs allege the following defamatory statements:

Count I: "In spring 2016, [Doris] Kirchner [Vail Health's CEO] told Dan Drawbaugh of The Steadman Clinic that Winninger had known about and participated in downloading Vail

Health patient files."[24]

Count II: "In summer 2016, Kirchner told Dan Drawbaugh of The Steadman Clinic that Winninger had stolen patient files from Vail Health and that the clinic should not be associated with her because of that."[25]

Count III: "In fall 2016, Kirchner told Dan Drawbaugh of The Steadman Clinic that Winninger had stolen patient files from Vail Health."[26]

Count IX: "In summer 2016, Michael Shannon told Dan Drawbaugh of The Steadman Clinic that Winninger had stolen thousands of patient files from Vail Health."[27]

Count XI: "In December 2016, Michael Shannon told Dan Drawbaugh of The Steadman Clinic that Winninger had stolen thousands of patient files from Vail Health."[28]

Count XIX: "In January 2017, Michael Shannon spoke to Dan Drawbaugh of The Steadman Clinic and told Drawbaugh that Winninger had stolen thousands of patient files from Vail Health."[29]

Count XXI: "During the week of February 6, 2017, Michael Shannon spoke to Al Perkins, a Board Member of the Steadman Philippon Research Institute, and told him that Winninger had stolen 3,000 patient files from Vail Health."[30]

Count XXII: "In or about January or February, 2017, Nicholas Brown spoke to Kelly Adair of The Steadman Clinic and stated that Winninger was involved in stealing patient files from Vail Health."[31]

---

[24] Am. Compl., filed February 22, 2018, ¶ 119.
[25] *Id*. ¶ 130.
[26] *Id*. ¶ 141.
[27] *Id*. ¶ 207.
[28] *Id*. ¶ 229.
[29] Am. Compl., filed February 22, 2018, ¶ 317.
[30] *Id*. ¶ 339.
[31] Am. Compl., filed February 22, 2018, ¶ 350.

*A. The Defense of Truth and Substantial Truth Inquiry*

Asserting the defense of truth, Defendants argue that summary judgment is warranted on Plaintiffs' defamation claims because they are substantially true.

As noted *supra*, "[t]ruth is a complete defense to defamation. However, absolute truth is not required; instead, a defendant need only show substantial truth, that is, 'the substance, the gist, the sting of the matter is true.'" *Gordon v. Boyles*, 99 P.3d 75, 81 (Colo. App. 2004) (citing *Gomba v. McLaughlin,* 504 P.2d 337, 339 (1972)). "It is not necessary to establish the literal truth of the precise statement made. Slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance." *Anderson v. Cramlet,* 789 F.2d 840, 844 (10th Cir. 1986) (quoting *Restatement (Second) of Torts*, § 581A comment f). "The truth of a defamatory imputation of fact must be determined as of the time of the defamatory publication." *Restatement (Second) of Torts*, § 581A comment f.

The meaning of allegedly defamatory words is a question of law. *Fry v. Lee*, 408 P.3d 843, 849 (Colo. App. 2013) (citing *Knapp v. Post Printing & Publ'g*, 144 P.2d 981, 984 (Colo. 1943)). In determining whether a challenged statement is substantially true, the inquiry focuses on how an average reader would read the statement. *Fry v. Lee*, 408 P.3d at 849 (internal citation omitted). That is, "in considering a defamation claim, a court must determine how the publication would have been understood by a reasonable or average lay reader." *Fry*, 408 P.3d at 850-51 (internal citations omitted). "[T]he meaning of an alleged defamatory statement is not determined by legal research, but 'by the plain and ordinary meaning of the word.'" *Anderson v. Cramlet*, 789 F.2d 840, 844 (10th Cir. 1986) (internal citation omitted). "To determine the plain and ordinary meanings of words in the context of defamation claims, Colorado courts commonly and properly rely on lay dictionary definitions." *Fry v. Lee*, 408 P.3d 843, 850 (Colo. App. 2013) (citing *NBC*

*Subsidiary (KCNC-TV), Inc. v. Living Will Ctr.*, 879 P.2d 6, 13-14 (Colo. 1994); *Knapp v. Post Printing & Publ'g*, 144 P.2d 981, 985 (Colo. 1943) (relying on dictionary to define challenged word in affirming judgment dismissing libel claim for failure to state a claim); *see Anderson v. Cramlet*, 789 F.2d 840, 844 (10th Cir. 1986) (relying on *Webster's Dictionary* in a defamation claim to determine the "common usage" of the word "kidnapping")).

B. *Whether the alleged defamatory statements in Counts II, III, IX, XI, XIX, and XXI that Winninger "had stolen patient files from Vail Health," "had stolen Vail Health patient files," and "had stolen thousands of patient files from Vail Health" are substantially true?*

The Court considers whether the alleged statements that Winninger "had stolen patient files from Vail Health," "had stolen Vail Health patient files," and "had stolen thousands of patient files from Vail Health" are substantially true.

The Court first addresses the meaning of the terms "Vail Health patient files" or "patient files from Vail Health." The parties dispute whether the patient files belonged to or were owned by Vail Health or RPC-Vail. Defendants assert that the files of patients treated at Howard Head belonged to Vail Health per the *Physical Therapy Services Agreement* ("Agreement") between Vail Health and RPC-Vail. The Agreement provides, in relevant part, that "[a]ll persons who receive Services at a Health Facility shall be regarded as and shall be registered as patients of [Vail Health] or the respective Facility at which the service is provided."[32] Defendants argue, however, that even if the patient files at issue did not belong to Vail Health, the alleged statements are still substantially true because whether the patient files are considered those of Vail Health or RPC-Vail, the substance, the gist, the sting of the matter, that Winninger stole patient files containing statutorily protected health information, is the same.

---

[32] Defs.' Ex. 3, Physical Therapy Services Agreement, filed August 25, 2020. "Hospital" is defined in the Agreement as Defendant Vail Health; specifically, "Vail Clinic, Inc., d/b/a Vail Valley Medical Center."

Plaintiffs argue in their Opposition that the patient files belonged to RPC-Vail. They assert that Vail Health was merely a custodian of the medical records and had "authorized possession for claims processing…and billing purposes," but not ownership of the patient files.[33] Propounding that medical records belong to the provider that created them, Plaintiffs maintain that RPC-Vail owned the patient files at issue because it was the "exclusive provider of physical therapy services."[34] Plaintiffs acknowledge that the Agreement provided RPC-Vail with "[a]ccess to [Vail Health's] computer network services," but does not mention ownership.[35]

A reasonable or average lay reader would understand "Vail Health patient files" or "patient files from Vail Health" to be files created for patients for services rendered in a Vail Health facility, which is the case here. Plaintiffs aver that Vail Health is "home to Howard Head" and the Agreement provided that Howard Head facilities are located at Vail Health and other locations that Vail Health may establish.[36] Vail Health also provided access to its computer network services for patient care and in its sole discretion. Paragraph 1.1(b) of the Agreement states in full:

> 1. Obligations of [Vail Health]:
> (b) Access to [Vail Health's] computer network services shall be provided as needed and necessary for patient care as determined by [Vail Health] in its sole discretion. The degree of such access shall be determined by [Vail Health] and shall be consistent with all rules, regulations, and practices pertaining to the protection of personally identifiable health information and consistent with all standards to insure secure transmission and storage of electronic healthcare data.

Finally, it is undisputed that the Agreement states that all persons who receive physical therapy and rehabilitation at a Howard Head facility shall be regarded as and shall be registered as

[33] Pltfs.' Opp'n, filed June 22, 2021, at 14-15.
[34] *Id*. at 15 (citing *Treece, Alfrey, Musat & Bosworth PC v. Dep't of Finance*, 298 P.3d 993, 999 (Colo. App. 2011)).
[35] Pltfs.' Opp'n, filed June 22, 2021, at 16. Plaintiffs raise in the Opposition that the Agreement is an unenforceable illegal contract and "Defendants' assertions that the physical therapy patients were those of Vail Health because the [] Agreement says so cannot be the basis for summary judgment." Pltfs.' Opp'n, filed June 22, 2021, at 25. The Court does not address the legality or enforceability of the Agreement as it is not the basis for the Court's determination.
[36] Am. Compl., filed February 22, 2018, ¶ 31; *see also* Defs.' Ex. 3, Physical Therapy Services Agreement, filed August 25, 2020, § 1.1.

patients of Vail Health.[37]

The Court finds that the patient files at issue can be properly considered as "Vail Health patient files" or those "from Vail Health." However, ownership of the patient files is not determinative; that is, the substance, the gist, the sting of the matter, that Winninger stole patient files, is the same whether the patient files at issue are considered those of RPC-Vail or Vail Health.

In assessing whether it is substantially true that Winninger stole the patient files at issue, the Court relies on the Merriam Webster Dictionary definition of "steal," also referred to by Plaintiffs in their Opposition. It is defined as "to take or appropriate without right or leave and with intent to keep or make use of wrongfully."[38]

The Court considers whether Winninger took the patient files without right or leave to do so. It is undisputed that when Winninger left her employment at Howard Head in 2012, she downloaded her personal folder from the shared drive, copied it onto her USB drive, and "certain files that [she] took included protected health information."[39] Defendants assert that Winninger was not authorized to download the patient files as they included statutorily protected information. They proffer the notices sent by Vail Health which state that Winninger's downloading of the PHI of 710 patients was an "Unauthorized Access/Disclosure" breach due to "improperly acquired electronic [PHI]" in violation of HIPAA.[40] Defendants also present Winninger's deposition wherein she acknowledged that the contents of her personal folder were not hers; specifically, Winninger testified that employees "weren't allowed to delete [their personal folders] off the drive,

---

[37] Defs.' Ex. 3, Physical Therapy Services Agreement, filed August 25, 2020, § 2.1.

[38] Merriam Webster Online, Dictionary (October 28, 2021, 4:25PM (MST)), https://www.merriam-webster.com/dictionary/steal?utm_campaign=sd&utm_medium=serp&utm_source=jsonld; Pltfs.' Opp'n, filed June 22, 2021, at 31.

[39] Defs.' Ex. 2, Winninger Dep. Tr., filed August 25, 2020, 95:24-96:2; 380:1-382:6; Winninger Decl., filed September 29, 2020, ¶ 89. Winninger admitted, *inter alia*, that she "copied protected health information when [she] copied Dr. Millet's protocol template file." Winninger Decl., filed September 29, 2020, ¶ 90.

[40] Defs.' Exs. 10, 11, and 12, filed August 25, 2020.

it had to stay on the drive because...that was property of [RPC-Vail]."

Defendants have met their burden of demonstrating that no genuine issue of material fact exists as to whether Winninger had the right or leave to take the patient files.

Plaintiffs argue that Winninger had the right or leave to take the patient files because it was common knowledge and practice for employees who left Howard Head to take their materials with them. They assert that RPC-Vail gave physical therapists unlimited access to documents and never informed them that they were prohibited from taking their materials.[41] Proffering Winninger's declaration, Plaintiffs maintain that it was her understanding that there were no restrictions on downloading her personal folder when she left.[42] Winninger stated that she "never thought these materials, which [she] had accumulated over the course of many years, could not be taken when [she] left."[43] Plaintiffs also offer the deposition testimony of Victoria Bartel, a RPC-Vail physical therapist and director of RPC-Vail's residency program, who "confirmed that she took similar materials, that it was 'common knowledge' that such materials could be taken, and that during the course of her employment, which overlapped with Winninger, no one told her that any documents were confidential or trade secret.[44]

While Plaintiffs present a persuasive argument as to Winninger's understanding of what employees were permitted to take when they left employment at Howard Head, they fail to provide any evidence demonstrating a triable issue that Winninger had the right or leave to take PHI. Winninger's understanding of what was permitted, even if taken as true, does not sufficiently support her taking the patient files at issue. Moreover, Bartel's testimony controverts rather than

---

[41] Pltfs.' Opp'n, filed June 22, 2021, at 6.
[42] Winninger Decl., filed September 29, 2020, ¶¶ 83-84.
[43] Winninger Decl., filed September 29, 2020, ¶ 87.
[44] Pltfs.' Opp'n, filed June 22, 2021, at 8; Pltfs. Ex. 1, Bartel Dep. Tr., filed September 30, 2020, at 64:24-65:12; 61:3-18; 19:15-20;18; 89:11-15.

supports Plaintiffs' position. In a deposition excerpt relied upon by Plaintiffs *supra*, Bartel was asked if anyone from Howard Head or RPC-Vail told her she was permitted to take documents to which she responded, "They had informed us that we were open to taking information, Howard-Head-related [] information for us, yes. Not client information, just stuff that we had worked on."[45] She also testified that it was her understanding that she was not permitted to take PHI and that she did not take PHI when she left her employment.[46] Bartel further testified, "I would have felt it was okay to take educational materials, dot sheets, binders. I don't think I would have taken any personal client information."[47]

Plaintiffs have failed to meet their burden of establishing that a genuine issue of material fact exists as to whether Winninger had the right or leave to take Vail Health patient files. She did not. Winninger admitted that her personal folder on the shared drive was not her property and Plaintiffs have not presented sufficient evidence demonstrating that she had the right or leave to take the patient files which included PHI. Furthermore, as statutorily protected health information under HIPAA, it is axiomatic that Winninger had neither the right nor leave to take them.

The Court next addresses whether Winninger had the intent to keep the patient files. Defendants assert that Winninger demonstrated this intent by downloading, copying, and taking her personal folder from the shared network drive containing over 17,000 pages of documents which included the PHI of 710 patients onto her USB drive when she left her employment at Howard Head.[48]

Defendants have met their burden of demonstrating a lack of a genuine issue of material fact as to Winninger's intent to keep the patient files.

---

[45] Pltfs.' Opp'n, filed June 22, 2021, at 8; Pltfs. Ex. 1, Bartel Dep. Tr., filed September 30, 2020, 61:3-18.
[46] Pltfs. Ex. 1, Bartel Dep. Tr., filed September 30, 2020, 58:15-59:19.
[47] *Id*. at 60:17-25.
[48] Winninger Decl., filed September 29, 2020, ¶ 87 ("I copied the materials that I stored on the shared drive").

In their Opposition, Plaintiffs raise Defendants' counterclaims for theft of medical records or medical information under C.R.S. § 18-4-412 and civil theft under C.R.S. § 18-4-401.[49] They argue that under these statutes and the Merriam Webster definition of "steal," Defendants must, and have failed to, demonstrate for the defense of substantial truth that Winninger had the requisite culpable mental state of "knowingly;" that is, that she knowingly took PHI documents.[50] They maintain that Winninger "had no idea that she took any such documents" and "did not know until this litigation and [her] review of the files that certain files that [she] took included protected health information."[51] They also assert that Winninger "merely took copies of the documents in question" and Vail Health's system did not allow anyone to delete the folders from the shared drive.[52] Plaintiffs maintain that genuine issues of fact regarding Winninger's knowledge of what she took, as well as her intent, preclude summary judgment based on substantial truth.

Plaintiffs' position is misplaced. Defendants' counterclaims are not presently before the Court for its consideration. The issue before the Court is not whether Winninger is guilty of a theft crime. The issue is whether it is substantially true that Winninger "stole" as that term is commonly used. Therefore, the requisite statutory elements, including the culpable mental state of "knowingly," are not necessary to establish the defense of substantial truth on Plaintiffs' defamation claims. Moreover, the term "steal" as defined in Merriam Webster does not have the same knowledge and intent requirements as the statutes. Its intent requirement is only "to keep."

As noted *supra*, in defamation cases, the existence of a material fact must be established with convincing clarity. *Gordon v. Boyles*, 99 P.3d 75, 78 (Colo. App. 2004). Plaintiffs have failed to meet this burden. While Winninger's knowledge of what she took or whether she

---

[49] *See* Pltfs.' Opp'n, filed June 22, 2021, at 28-34.
[50] Pltfs.' Opp'n, filed June 22, 2021, at 31.
[51] *Id*. at 31-32; Winninger Declaration, filed September 29, 2020, ¶¶ 89-91.
[52] Pltfs.' Opp'n, filed June 22, 2021, at 33.

knowingly took PHI may be a disputed issue, it is neither material nor relevant to the substantial truth inquiry before the Court. The determinative question is whether Winninger's actions in downloading her personal folder onto a USB drive from the Howard Head shared drive then not returning it demonstrates her intent to keep the patient files at issue.

Plaintiffs attempt to diminish the gravity of Winninger's actions by stating that she "merely took copies of the documents in question" and did not delete them from the shared drive. However, Plaintiffs acknowledge that the offense of theft of medical records includes the copying of medical information. Therefore, Plaintiffs' assertion is contradictory and without merit.[53]

Winninger stated that each Howard Head employee was given her own personal folder to store whatever she needed and would routinely copy documents to that folder.[54] She also explained that patients' medical information was not stored on the shared drive; it was initially stored in paper charts and then to an electronic system called Therapy Source.[55] Plaintiffs admit that none of the 710 patient files at issue came from the paper charts or Therapy Source.[56] The undisputed facts show that in downloading and copying her personal folder from the shared drive onto her personal USB drive, which included more than 17,000 documents, Winninger also downloaded and copied the statutorily protected health information of 710 patients. In choosing to do so, particularly upon leaving her employment at Howard Head, evinces Winninger's intent to keep them.

The Court finds that the alleged statements that Winninger "had stolen patient files from Vail Health" and "had stolen Vail Health patient files" are substantially true. The Court includes

[53] Pltfs.' Opp'n, filed June 22, 2021, at 30.
[54] *Id*. at 5; Winninger Decl., filed September 29, 2020, ¶ 92.
[55] Pltfs.' Opp'n, filed June 22, 2021, at 5; Winninger Decl., filed September 29, 2020, ¶ 92.
[56] Pltfs.' Opp'n, filed June 22, 2021, at 5 (Plaintiffs argue that the patient files were improperly stored on the shared drive, which Winninger unknowingly copied and took when she left in 2012); Winninger Decl., filed September 29, 2020, ¶¶ 89-92.

in its determination those statements alleging that Winninger "had stolen thousands of patient files from Vail Health" and "had stolen 3,000 patient files from Vail Health." As noted *supra*, "[i]t is not necessary to establish the literal truth of the precise statement made. Slight inaccuracies of express are immaterial provided that the defamatory statement is true in substance." Restatement 2nd, § 581 A comment f. A defendant need only show substantial truth, that is, the substance, the gist, the sting of the matter is true. *Gordon v. Boyles*, 99 P.3d 75, 81 (Colo. App. 2004). The test is whether the challenged statement produces a different effect upon the reader than that which would be produced by the literal truth of the matter. *Fry v. Lee*, 408 P.3d 843, 849 (Colo. App. 2013). Applying this reasoning, statements that Winninger had stolen patient files, 3,000 patient files, or thousands of patient files, would have the same effect on a reader because the substance, the gist, the sting of the matter, that Winninger stole patient files, is true.

For the foregoing reasons, the Court grants Defendants' request for summary judgment on Plaintiffs' Defamation Counts II, III, IX, XI, XIX, and XXI.

*C. Whether the alleged defamatory statements in Counts I and XXII that Winninger "had known about and participated in downloading Vail Health patient files and "was involved in stealing patient files from Vail Health" are substantially true?*

The alleged statements in Plaintiffs' defamation Counts 1 and XXII are that Winninger "had known about and participated in downloading Vail Health patient files and "was involved in stealing patient files from Vail Health." It is undisputed that Winninger downloaded and took patient files from Vail Health; the Court has determined that in so doing, the alleged statements that Winninger stole patient files from Vail Health are substantially true. It is therefore indisputable that Winninger knew about and participated in downloading Vail Health patient files and was involved in stealing patient files from Health.

For the reasons set forth above and discussed *supra*, the Court finds these statements are

substantially true. Therefore, the Court grants Defendants' request for summary judgment on Plaintiffs' Defamation Counts I and XXII.

*D. Whether summary judgment is warranted on Plaintiffs' three claims for tortious interference?*

Plaintiffs aver three claims that are also the subject of this Motion: tortious interference with contract (Count XXV), tortious interference with current business relationship (Count XXVI), and tortious interference with prospective business relationship (County XXVII).[57] Plaintiffs allege that through "repeated defamatory statements," Defendants wrongfully interfered with and caused breaches of Winninger's existing contracts, Plaintiffs' current business relationships, and Plaintiffs' prospective business relationships.[58]

Defendants argue that these claims fail as a matter of law because the alleged wrongful interference is predicated on alleged defamatory statements which are substantially true.[59] Colorado courts have employed this reasoning to dismiss ancillary claims in defamation cases. *Fry v. Lee*, 408 P.3d 843, 855-56 (Colo. App. 2013) (affirming dismissal of ancillary claims where the underlying conduct was an alleged defamatory news article found to be substantially true); *Jefferson Cnty. School Dist. v. Moody's Investor's Serv. Inc.*, 175 F.3d 848, 858 (10th Cir. 1999) (affirming dismissal of tortious interference claims where the underlying conduct was a statement of opinion and thus not defamatory); *Buckhannon v. US West Communications, Inc.*, 938 P.2d 1331, 1335 (Colo. App. 1996) (affirming dismissal of claims for tortious interference based on allegedly defamatory statements because they were privileged and therefore not actionable)).

Defendants have met their burden of establishing that no genuine issue of material fact

[57] Am. Compl., filed February 22, 2018, ¶¶ 380-399.
[58] *Id*.
[59] Defendants assert additional grounds for summary judgment in their favor on Plaintiffs' tortious interference claims. The Court has considered but does not address them because it may determine summary judgment on these claims as they are ancillary to Plaintiffs' defamation claims.

exists concerning Plaintiffs' tortious interference claims.

Plaintiffs do not address Defendants' arguments in their Opposition. Rather, they assert that Defendants' request for summary judgment on Plaintiffs' tortious interference claims should be denied because of a single alleged statement by Vail Health Board Chairman Mike Shannon that Winninger "had stolen records from Vail Health."[60] Plaintiffs state that "[w]ith this statement alone, Plaintiffs have proven that Defendants made a statement intended to direly disrupt Plaintiffs' contractual relations."[61] Plaintiffs also assert that "contrary to Defendants' assertions, they were fully aware of Steadman's impending agreements with Winninger" and "[t]he motion should be denied on this issue as well." [62]

Plaintiffs have failed to meet their burden of establishing a triable issue as to Plaintiffs' tortious interference claims. They neither dispute Defendants' arguments nor present evidence of wrongful interference by Defendants apart from the alleged defamatory statements. The Court has determined that summary judgment is warranted on Plaintiffs' defamation claims as the alleged statements are substantially true. As ancillary to Plaintiffs' defamation claims, the Court finds that summary judgment is warranted on Plaintiffs' claims for tortious interference.

For the reasons set forth above, the Court grants Defendants' request for summary judgment on Plaintiffs' claims for tortious interference with contract (Count XXV), tortious interference with current business relationship (Count XXVI), and tortious interference with prospective business relationship (County XXVII).

## V. CONCLUSION

The Colorado Court of Appeals has observed that "[b]ecause the threat of protracted

[60] Pltfs.' Opp'n, filed June 22, 2021, at 35.
[61] *Id.*
[62] *Id.*

litigation could have a chilling effect on the constitutionally protected right of free speech, prompt resolution of defamation actions by summary judgment is appropriate." *Fry v. Lee*, 408 P.3d 843, 849 (Colo. App. 2013).

Initiated in 2017, this dispute has unfortunately evolved into a highly contentious, voluminous, and protracted litigation. The Court's resolution of Plaintiffs' defamation and ancillary claims for tortious interference through this grant of summary judgment is therefore appropriate and consistent with the higher court's pronouncement.

## VI. ORDER

IT IS ORDERED: The Court hereby GRANTS the Motion.

1. The Court GRANTS summary judgment in favor of Defendants and against Plaintiffs on the following Counts and dismisses each with prejudice: Counts I, II, III, IX, XI, XIX, XXI, XXII, XXV, XXVI, and XVII.
2. The Court DENIES Defendants' request for attorney fees and costs brought pursuant to C.R.S. § 13-17-102. The Court may consider such request once all matters in this case are resolved.
3. The Court is aware of the significance of this Order and its impact on this case. As such, the Court ORDERS the parties to mediate within 60 days to discuss and possibly resolve any pending matters.

So Ordered this 4th day of November, 2021.

BY THE COURT:

Russell H. Granger
District Judge