# Exhibit 1

1

```
 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF COLORADO
 2

 3   SPORTS REHAB CONSULTING,      .   Case No. 19-cv-02075-WJM-GPG
     LLC, a Colorado limited       .
 4   liability company, and        .
     LINDSAY WINNINGER, an         .
 5   individual,                   .
                                   .
 6            Plaintiffs,          .
                                   .   Wayne Aspinall Federal Bldg.
 7   vs.                           .   402 Rood Avenue
                                   .   Grand Junction, CO  81501
 8   VAIL CLINIC, INC.             .
     doing business as             .
 9   VAIL HEALTH,                  .
     a Colorado nonprofit          .
10   corporation,                  .
                                   .
11            Defendants.          .   October 22, 2021
     . . . . . . . . . . . . . .   .   1:06 p.m.
12
```

**TRANSCRIPT OF PROCEEDINGS HELD BEFORE THE HONORABLE**
**WILLIAM T. RUCKRIEGLE, SPECIAL MASTER**

```
14   APPEARANCES:

15   For the Plaintiffs:          Law Office of Allan L. Kildow
                                  By:  Allan L. Kildow
16                                By:  Sonya Braunschweig
                                  709 Potato Patch Drive
17                                Vail, CO  81657
                                  (970) 390-6675
18
     For the Defendants:          Davis Graham & Stubbs, LLP
19                                By:  Shannon Wells Stevenson
                                  By:  Daniel Richards
20                                1550 17th Street
                                  Suite 500
21                                Denver, CO  80202
                                  (303) 892-9400
22
     Court Recorder:              Clerk's Office
23                                U.S. District Court
                                  402 Rood Avenue
24                                Grand Junction, CO  81501

25
```

1   Appearances continued:

2   Transcription Service:          AB Litigation Services
                                    216 16th Street, Suite 600
3                                   Denver, CO  80202
                                    (303) 296-0017

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.

3

1              (Time noted:  1:06 p.m.)

2              SPECIAL MASTER:  I see Ms. Stevenson, Mr.

3   Richards, Ms. Braunschweig.  Do we have Mr. Kildow?

4              MR. KILDOW:  We do Your Honor, but by phone.  I

5   went to the computer doctor this morning.  I spent about 45

6   minutes with him and thought that I had it fixed but I have

7   tried it three times and I still cannot get in.

8              SPECIAL MASTER:  Well we'll be with you on phone.

9              We're ready to proceed with 19CV02075, Sports

10  Rehab Consulting v. Vail Clinic dba but known as Vail Health

11  is how I think most of us address the Defendant.

12             So before we take up motion to compel number three

13  are there any updates or preliminary matters for me?  I think

14  there was going to be -- oh yes, a review of all the material

15  that was provided by Vail Health after 5:00 on Wednesday some

16  time.

17             I'm not pushing that that was actually

18  accomplished as opposed to preparing for these hearings, so

19  just let me know what's the status on that or anything else,

20  Mr. Kildow?

21             MR. KILDOW:  Your Honor, we have gone over the

22  information that was provided and I don't know how much

23  detail you want to get into but it is significantly short of

24  what was asked for and has major holes in it.

25             Vail Health has information that is 95 percent

1   on the record.  I'd like to make the suggestion when you have

2   time.

3           SPECIAL MASTER:  Then we're finished with four,

4   and I would like to get to these other issues, so I guess we

5   could start with that and work backwards to any others, not

6   the least of which is in camera review.  That is number five

7   and all of that.  But I'll let you start, Mr. Kildow, with

8   your suggestion as to a process.

9           MR. KILDOW:  Yes, I have a suggestion.

10          SPECIAL MASTER:  Good.

11          MR. KILDOW:  I would like the Special Master to

12   order the parties to meet and confer.  We identify from the

13   Plaintiff side specifically what we want based on what we

14   have seen, both from a data standpoint and from a scope of

15   time standpoint, and to fill in any holes we have.  Then the

16   parties have the meet and confer on a conference call and

17   hash out what Vail Health has and what they don't have.  But

18   I think that they should have someone from their data

19   processing group available so that they can identify what

20   they have and what they don't have.

21          We do not have an interest in writing motion after

22   motion.  We do not have an interest in making argument after

23   argument.  We are willing to compromise and to narrow what we

24   want and need.  And so we're amenable.  We don't want to see

25   this just go on and on and on, and so we are amenable to

1  doing that.

2          So I think that is the process that should be -- I

3  also think that the Board minutes should be submitted to the

4  Special Master for review.  Ms. Stevenson said we're not

5  talking about an overwhelming number of documents, but that

6  should be done.  Whether we disagree with you or not we'll

7  probably never know, but you have made your decision and you

8  have made your decision as to whether it's relevant or not.

9  I'm confident that it's going to have to go that route when

10 we get to the privilege logs in number five.

11         So that's my suggestion.

12         SPECIAL MASTER:  Let me just follow up on that and

13 ask you said Board minutes.  Are you also talking about the

14 finance committee and the --

15         MR. KILDOW:  Steering committee.

16         SPECIAL MASTER:  Steering.

17         MR. KILDOW:  Yeah, I would put both of those in

18 there too.

19         SPECIAL MASTER:  Well the first one you hit on the

20 head.  I did let the cat out of the bag earlier about the

21 conferring.  But I think I would like to hear from counsel as

22 to this suggestion, and particularly with regard to having

23 someone from data processing, because I can't make -- I can

24 make a decision but I hate to make a decision based on

25 representations as to what Nick Brown or O'Bryan testified

1   to.   I would like to know what the limits are in terms of

2   those searches from somebody that knows what they are hired

3   to do.  So Ms. Stevenson?

4              MS. STEVENSON:  Sure.  Your Honor, I'm amenable to

5   what Mr. Kildow is proposing in certain respects.  I think it

6   would be helpful if they could send a list of things that

7   they wanted.  The reason I say this rather than just saying

8   let's all get on the phone is that I have had the past

9   experience of getting on the phone for something like this

10  and having them ask a bunch of questions, which of course I

11  have to go back to my client to get an answer to, and then

12  being accused of not conferring because I don't know the

13  answer off the top of my head.  So --

14             SPECIAL MASTER:  Well I think --

15             MS. STEVENSON:  -- having it would be helpful.

16             SPECIAL MASTER:  Yeah, I heard him get to that

17  point on my third line here is Plaintiffs need to identify

18  what they need.  They need to restructure this to ask for --

19  first of all there have been -- now there's the privilege log

20  so that doesn't apply in part anyway to the briefing.  And

21  then now there's the production of the 20th.  So they need to

22  identify that and send that to you, then you need to confer.

23  Is that what you were saying?

24             MS. STEVENSON:  Yes, Your Honor.

25             SPECIAL MASTER:  Mr. Kildow?

1          MR. KILDOW:  Yeah.

2          SPECIAL MASTER:  So Ms. Stevenson, go ahead.

3          MS. STEVENSON:  I do resist the notion of having a

4    meeting with Plaintiff's counsel and a data person from Vail

5    Health, because quite frankly the number of systems that they

6    use is very complex and you usually have to talk to multiple

7    people to get some of these answers.

8          And also I just think that's -- you know, Mr.

9    Kildow is entitled to take depositions and ask questions of

10   the people he wants to ask questions of, but I'm not aware of

11   any obligation to just make your in house person available

12   for a free for all.  I would resist doing that outside of the

13   appropriate formal process.  But I'm happy to try to figure

14   out who the right people are and answer those questions.

15         MR. KILDOW:  Could I make one comment, Your Honor?

16         SPECIAL MASTER:  Okay.

17         MR. KILDOW:  Ms. Stevenson said we're entitled to

18   take depositions.  That's true, however there's two problems

19   with that.  Number one, we have a limit of ten depositions

20   total, and we just don't have that many depositions that we

21   can take.  Many of them are non-party, so that's a problem

22   with a limit of ten.

23         And then the discovery period ends a week from

24   today, and we're up against the deadline, so that's a

25   problem.  But it seems to me that if we provide you with a

 1   list, you know there may be different areas, you can identify

 2   the people that you need to help you address those issues and

 3   we can do it informally.

 4          SPECIAL MASTER:  Respectfully I really don't want

 5   to hear they can do depositions again.  I mean that's not a

 6   practical solution to these particular problems as I see it.

 7   Maybe you can explain what you meant since you have a puzzled

 8   look on your face, but I just -- that's not going to be my

 9   solution to it is to say well you can take a deposition.

10   Because I am not prepared at this point in time -- even

11   though I've been appointed to address discovery issues -- I'm

12   not prepared to make any recommendation to the magistrate

13   judge or a judge that that be expanded because of the obvious

14   concerns of delay.

15          So I'm open to language as to how you want me to

16   put it.  I mean it starts off with Plaintiffs identifying

17   specifically what they need in terms of their prior discovery

18   requests that have not been produced.  I mean seriously, this

19   is about you conferring and working through this to a 50 or

20   75 percent level in my view, because I can figure it out and

21   you guys are better lawyers than I am.  I'm just a dumb

22   judge, as they say.

23          So I would like for you to use your skills to say

24   here's how we resolve this problem, except for we just

25   disagree about this piece or that piece, and then identify

1   that.  And then -- setting aside the deadline of a week from

2   now because I don't have any doubt that if I convey to either

3   one of the judges -- or if you convey in a request to extend

4   that time -- then that would be verified by me.  The point is

5   to get it done and done right.  Artificial deadlines for

6   discovery are disastrous for reversal at a later point in

7   time and that's everybody's waste of time.

8              So Ms. Stevenson, I heard your objection to having

9   the data processing person present because it may be more

10  than one person, and two, because you don't want them subject

11  to some line of inquiry in an informal way.  I mean that

12  could lead to a problem.  I would hope not.

13             MR. KILDOW:  Your Honor, could I just make a

14  comment real quickly.  Hearsay is a horrible, horrible thing.

15  In the State Court action the first statement was that the

16  claims information were in a warehouse -- that it was in

17  paper form and in a warehouse.  Eventually we got to the

18  deposition of the billing person who said oh no, they've

19  never been in paper.  They're all electronic and we have them

20  but during a limited period of time.

21             So having the data person there -- in that case

22  the billing person -- was enormously beneficial because we

23  cut through what took us months to cut through.  We're not

24  here to go months -- we're very practical in this sense.

25             SPECIAL MASTER:  Well we did have that problem.  I

1   grant you that.  Certainly if counsel didn't know that they

2   do now.  But that was certainly a problem.  That's the kind

3   of thing that I had in mind when I was reflecting on this

4   last night and this morning in terms of how to approach the

5   problem.  Merely ruling doesn't address the problem of

6   producing what can be produced and moving on.

7          MR. KILDOW:  There's also the appellate issue.  I

8   mean if you can force the parties to get into a room and

9   agree then that obviates an appellate issue on both sides.

10          SPECIAL MASTER:  I can be optimistic about that,

11   but that remains -- I would leave that up to you.  As I said,

12   that's part of your --

13          MR. KILDOW:  We would be pleased to have the leave

14   of the Special Master if we could suggest a proposed order,

15   but we would do that in conjunction with opposing counsel and

16   try to submit something to you that would be a practical

17   solution.  If there are certain areas that we cannot come to

18   an agreement on then the Special Master could step in and say

19   well, this is how it's going to go.

20          SPECIAL MASTER:  I'm willing to do that.  I guess

21   with the reminder of the deadline.  I'm not sure what your

22   timing is.  But I want to be clear that I do expect counsel's

23   participation to try to resolve this in the vein that I

24   described here.

25          Before I say you confer about the order what can I

1   answer in terms of any other questions, Ms. Stevenson,

2   besides what you have raised?

3           MS. STEVENSON:  Your Honor, I'm not -- I don't

4   think I have any questions right now.  I mean I do think, you

5   know, this is one of these things that as you work through it

6   there may be questions that arise, but I think it's going to

7   depend a lot on what specifically Plaintiffs are asking for

8   and --

9           SPECIAL MASTER:  So what is your suggestion?  I

10  think I just heard Mr. Kildow saying that you guys confer

11  about a joint order.  But the other would be that they

12  provide to you the Plaintiff's list of information needed in

13  conjunction with what has been produced since -- what was

14  produced and has been since the time of the original

15  pleadings here.

16          I almost hate to formalize it in that I would

17  rather that you work sincerely to accomplish the end goal of

18  production, as I said what can be and needs to be, and then

19  I'll decide what doesn't need to be.

20          But you are in a much better position -- this is

21  one of those things that having lived in this case and other

22  Special Master cases I've learned as we've had, you know,

23  motions and arguments develop --

24          MR. KILDOW:  Judge, I probably jumped to the idea

25  of an order too quickly and I don't mean to.  What I suggest

1   we do is not put it in the form of an order but just a list

2   of things that we need and the parameters.  And we'll submit

3   that to them and they can tell us what we can do and what we

4   can't, and then we can sit down and talk about the --

5                SPECIAL MASTER:  Okay, Ms. Stevenson?

6                MS. STEVENSON:  I think that seems fine.

7                SPECIAL MASTER:  And I would be copied on that

8   just so that I'm up to speed from time to time about your

9   progress.

10               MR. KILDOW:  We can do that.  We certainly can.

11               SPECIAL MASTER:  You have an objection to that?

12               MS. STEVENSON:  Not at all.

13               SPECIAL MASTER:  Well, I think that is it on that

14  particular issue.  Then do we want to tackle the issue of in

15  camera review now?  I don't want to develop any response to

16  number five and opportunity to argue that but we could maybe

17  reduce that.

18               MS. STEVENSON:  Your Honor, two quick things.  One

19  with respect to this list of documents that Plaintiffs think

20  they should get.  It would be helpful to me to have it -- to

21  have whichever discovery request they're referring back to

22  included in the list.

23               Then with respect to the -- if you're referring to

24  the motion to compel number five, we haven't even filed our

25  response to that yet.

1          SPECIAL MASTER:  That's what I'm saying.  I know,

2    yeah.  I wasn't trying to cut you off of that.  I was just

3    trying to say I do -- because I did not read it because I

4    knew we were having this proceeding, and then two, that you

5    hadn't filed a response.  So I was holding off on that and I

6    had already recognized in this process that some form of in

7    camera review with regard to -- before I even knew the

8    privilege log had in part at least been produced, I just

9    anticipated that we were getting there.

10          So if you want to forego that for now, but my

11   thought was in order to not delay maybe we should start --

12          MS. STEVENSON:  Are we talking about the Board

13   minutes?  That was my understanding of the in camera review.

14          SPECIAL MASTER:  Two different things.  There was

15   the privilege log and then there was the Board minutes he was

16   asking for.  He asked for that specifically.

17          MS. STEVENSON:  Just to be clear, we actually put

18   -- the redactions from the Board minutes, they're not for

19   privilege, they're for relevance, but we did log them in our

20   privilege log.

21          SPECIAL MASTER:  Well I'm still -- yes, talking

22   about some form of in camera review relating to the privilege

23   log.  Though I haven't seen the privilege log so I didn't

24   realize that you had put that in there as well.

25          MS. STEVENSON:  Well if we're talking about -- if

1  you think you want to do an in camera review of the

2  unredacted Board minutes to confirm that the redacted

3  material is not relevant I think that's fine.  I think we've

4  -- that is ripe.  I think the privilege issues are not ripe

5  because we've not finished briefing the motion yet.

6           SPECIAL MASTER:  Okay.

7           MS. STEVENSON:  Or we could wait and do it all at

8  one time after we've finished the motion to compel number

9  five.

10          SPECIAL MASTER:  The only reason I was thinking

11  about approaching it now was to keep things moving but now

12  that I realize that in the privilege log they're both there

13  I'm slightly reluctant to start digging in to that when I

14  haven't had the briefing completed on number five.

15          Well, here's how we'll start.  The Plaintiffs will

16  identify what documents and information they need after

17  having had these hearings and the recent productions.  They

18  will present that to Vail Health by when, Mr. Kildow or Ms.

19  Braunschweig?  You know, including the reference to which

20  request for production interrogatory it is.

21          MS. BRAUNSCHWEIG:  Right.  Right.  Does ten days

22  seem reasonable to you, Judge?

23          SPECIAL MASTER:  It's reasonable to me.

24          MS. BRAUNSCHWEIG:  Okay.

25          SPECIAL MASTER:  All right.  Without counting

1   numbers I think it's November 1st.

2            MS. BRAUNSCHWEIG:  Could we make it November 2nd?

3            SPECIAL MASTER:  That's fine.  Sure.

4            MS. BRAUNSCHWEIG:  Thank you.

5            SPECIAL MASTER:  Are we then in general

6   concurrence that I won't tackle any partial in camera review

7   at this time?

8            MR. KILDOW:  Well from Plaintiff's standpoint we'd

9   like to get going on it.  I think that there are one or two

10  legal questions that have to be addressed such as if you send

11  a copy to an attorney does the whole document then become

12  privileged.

13           SPECIAL MASTER:  Yes, well that's why I wouldn't

14  tackle those yet.  And so -- but I think --

15           MR. KILDOW:  I would like to get going on it if we

16  could because then things keep moving.

17           SPECIAL MASTER:  Yeah I know.  Well I would too

18  except for what am I going to do, brief that separately as

19  opposed to just wait for the --

20           MR. KILDOW:  No, I understand.

21           SPECIAL MASTER:  All right, so that's in abeyance.

22           MS. STEVENSON:  Your Honor, just in the -- to be

23  fully candid here, Plaintiffs have asked a couple of weeks

24  ago, you know, our position on filing a motion to extend

25  discovery and expert disclosure deadlines, and I hear what

1  you're saying about that.

2        We did inform that we would oppose that motion.

3  We've been doing discovery in this case alone for 13 months,

4  and I understand that you know we may or may not win that

5  issue or may win in part or not, but I'm happy to continue to

6  follow up on issues that they think are unresolved from our

7  discovery responses.  I just wanted to be clear I didn't want

8  to stipulate to some sort of wholesale extension of

9  discovery.

10        SPECIAL MASTER:  I have been involved 13 months.

11  I'm speaking from my perspective of trying to actually

12  resolve all of this in a reasonably short period of time, but

13  as we just discussed with number five and in camera review,

14  that really can't be accomplished by next Friday.

15        MS. STEVENSON:  Of course.  I wouldn't expect it

16  to be and I don't have any objection to us completing all the

17  outstanding issues that have been raised in these motions.

18        SPECIAL MASTER:  That might be one way of

19  addressing it, so I'll let you confer about that if you can

20  come to an agreement, if you can't it's -- I mean I was

21  trying to focus on getting these to resolution.

22        That refreshes my recollection.  In one of these

23  pleadings there was reference to something in the State case

24  that the Special Master had not yet ruled on.  I know there's

25  costs and attorney's fees that were awarded and then the case

 1   went up to the Supreme Court and back, and COVID, and this

 2   and that and the other and I haven't gotten back to it.  Then

 3   in the meantime Judge Gallagher and Judge Martinez appointed

 4   me in this case.

 5            What is that that I need to try and identify?  I

 6   apologize for taking your counsel time here --

 7            MR. KILDOW:  It's a bill of cost issue.  We

 8   resubmitted our bill of cost.  I've got it on my -- Ms.

 9   Braunschweig of course has prepared it and we have it ready

10   to submit to you.  We can have it to you --

11            MS. BRAUNSCHWEIG:  No, Allan --

12            SPECIAL MASTER:  I know that is pending.  There

13   was a reference about ruling on --

14            MS. BRAUNSCHWEIG:  Yeah, there was redacted

15   document ordered to be reviewed in camera related to the

16   Steadman documents.  And then that issue was presented to you

17   and the last communication that we had is that you were going

18   to pick up the document from Terry Farney to review that.

19            SPECIAL MASTER:  Well email me.

20            MS. BRAUNSCHWEIG:  Okay.

21            SPECIAL MASTER:  I have lost track of that.  I

22   thought I had cleaned up all except for this.

23            MS. BRAUNSCHWEIG:  Oh, and there was a -- there's

24   also -- maybe I shouldn't raise this but there was another

25   one related to an in camera review of the documents that Ms.

1    Haroda had in her files and they were redacted.  That came

2    through the billing part of the case.  The issue of billing

3    documents and --

4            SPECIAL MASTER:  Well email me, copy counsel

5    there.  Do not copy this court, needless to say.  Not that

6    you would for that but I want to try to clean that up.  I did

7    not -- I looked at it briefly.  What's the trial date?

8            MS. BRAUNSCHWEIG:  We don't have one yet.

9            SPECIAL MASTER:  You don't have one.

10           MS. BRAUNSCHWEIG:  Not yet.

11           SPECIAL MASTER:  All right.  4:30 on the nose.

12   Anybody have anything else?

13           MR. KILDOW:  Not from Plaintiff.

14           SPECIAL MASTER:  Okay.  Any clarification on

15   anything that I -- that we just went over?

16           MS. BRAUNSCHWEIG:  Yeah, I do have a question.  In

17   terms of the timing if we get them our list within ten days

18   or eleven days what should their response be in terms of

19   timing?  That would be helpful. Then the conferral that needs

20   to happen.  That gives us -- helps us with our expectation.

21           SPECIAL MASTER:  I know the standard answer on

22   that is it depends on how long your list is but in light of

23   what we've discussed here, what sort of time frame?

24           MS. STEVENSON:  Well Your Honor, I would go about

25   it two ways.  I mean it seems to me that two weeks is

1  probably -- I would hope -- a reasonable amount of time to

2  get a response certainly to the great bulk of issues.

3  Alternatively we could wait and see what the list looks like

4  and then give you an estimate as soon as we get it.

5       SPECIAL MASTER:  I'd rather set a limit now, and

6  two weeks is not unreasonable but since they've had ten days

7  -- you know, you're responding to their list and then a

8  conferral.  Let me say November 12th.  Are you going to

9  complain about that?  If you do I'll go to the 15th.

10      MS. STEVENSON:  Either one is fine.  I mean I

11 think we'll be working to get it done as quickly as we can

12 and if it's -- there's one or two issues that are outstanding

13 I will give an explanation for that.

14      SPECIAL MASTER:  Thank you.  And then if that's

15 done what's the conferral deadline?  The 22nd?  If it's not

16 then we lose a week automatically with Thanksgiving.

17      MR. KILDOW:  I would say the 22nd at the latest,

18 yeah.  I would say the week of the 15th to the 19th.

19      MS. STEVENSON:  I think the 19th would be fine.

20      SPECIAL MASTER:  Good.  That's reasonable.  Thank

21 you.  Okay, anything else?

22      MR. KILDOW:  None from Plaintiff, Judge.

23      SPECIAL MASTER:  Thanks for bringing that up.

24 That is helpful to make sure that we've got some solid

25 deadlines.  Okay.

1          MR. KILDOW:  Thank you, Judge.

2          SPECIAL MASTER:  Thank you, everybody.  Have a

3     good weekend.

4          MS. STEVENSON:  Thank you.  Have a nice weekend.

5          MS. BRAUNSCHWEIG:  You too.

6          SPECIAL MASTER:  We'll be in recess.

7                    (Time noted:  4:33 p.m.)

8                         *  *  *  *  *

9                         CERTIFICATE

10       I, RANDEL RAISON, certify that the foregoing is a

11    correct transcript from the official electronic sound

12    recording of the proceedings in the above-entitled matter, to

13    the best of my ability.

14

15

16    _____        November 12, 2021

17    Randel Raison

18

19

20

21

22

23

24

25