IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC & LINDSAY WINNINGER,

    Plaintiffs,

v.

VAIL CLINIC, INC., d/b/a VAIL HEALTH, a Colorado nonprofit corporation,

    Defendant.

## VAIL HEALTH'S MOTION FOR PROTECTIVE ORDER

Defendant Vail Clinic, Inc., d/b/a Vail Health ("Vail Health") files this Motion for Protective Order ("Motion") pursuant to Fed. R. Civ. P. 26(c), in response to Plaintiffs' November 2, 2021 renewed list of discovery demands. Pursuant to Fed. R. Civ. P. 26(c) and D.C.COLO.LCivR 7.1, counsel for Vail Health conferred with Plaintiffs about this Motion and their overbroad demands for discovery between November 3, 2021 and November 16, 2021. Plaintiffs oppose this Motion. (Ex. 1.)

### INTRODUCTION

At its core, this case concerns the allegations of an individual physical therapist, Plaintiff Lindsay Winninger, that defendant Vail Health defamed her by accusing her of improperly taking patient records. Ms. Winninger initially brought these claims in the Eagle County District Court, where she has been litigating them since early 2017. After years of contentious discovery, the Eagle County District Court has now determined all of Vail Health's alleged statements to be "substantially true," and dismissed all of Ms. Winninger's claims. (Doc. 215.)

Years into their state case, Plaintiffs filed this antitrust case, based on nearly identical allegations. In this case, Plaintiffs have had more than thirteen months to take discovery and prepare to make expert disclosures on their antitrust claims. Vail Health has diligently responded

- 1 -

to Plaintiffs' wildly overbroad discovery requests, and produced extensive documentation on every subject Plaintiffs could need to prosecute their antitrust allegations. Rather than move forward with expert disclosures and summary judgment briefing, however, Plaintiffs seek to prolong discovery by manufacturing discovery dispute after discovery dispute. After filing five motions to compel, and after eight hours of hearings on those motions, Plaintiffs were instructed by the special master to identify what documents they "still request to be produced." In response, Plaintiffs sent Vail Health a 12-page single-spaced chart that not only did not narrow the issues raised in their motions to compel, but purported to raise new issues for the first time. At the same time, Plaintiffs have asked this Court to allow them even more additional time to complete discovery and make expert disclosures. Plaintiffs do not need more time, and they do not need more discovery. Their pattern of generating frivolous discovery disputes to prolong resolution of the case, to engage in fishing expeditions, and to extort Vail Health through burdensome and harassing demands should be terminated. Thus, Vail Health respectfully requests that this Court enter a protective order stating that Vail Health has fulfilled its discovery obligations and that Plaintiffs are not entitled to any further fact discovery.

**FACTUAL BACKGROUND**

I. **The Case Presents a Narrow Dispute Based on Allegations of Defamation By an Individual Physical Therapist.**

In April 2017, Plaintiffs filed suit in *Sports Rehab Consulting LLC & Lindsay Winninger v. Vail Clinic, Inc.*, No. 2017CV30102 (Dist. Ct., Eagle County) ("State Case"). (Ex. 2.) In the State Case, Plaintiffs allege that Vail Health and its then-CEO Doris Kirchner falsely accused Plaintiff Lindsay Winninger, co-owner of Plaintiff Sports Rehab Consulting LLC ("SRC"), of stealing patient files from Vail Health. (Ex. 2 ¶ 2.) Plaintiffs alleged that "Defendants' statements were made with the then present intent to drive Winninger and her company out of business to

- 2 -

further their monopoly of physical therapy services in the Vail Valley." (*Id.* ¶ 5; *see also id.* ¶¶ 110-115.) Plaintiffs asserted 24 defamation claims and three tortious interference claims. (*Id.* ¶¶ 118-399.)

After more than two years of litigation in the State Case, Plaintiffs filed this case. Plaintiffs' amended complaint is based on the exact same alleged conduct as their claims in the State Case. (*See, e.g.*, Doc. 26 ¶¶ 151-158.) Plaintiffs' complaint in this case merely recasts their State Case defamation and tortious interference claims as antitrust claims. Importantly, on November 4, 2021, the state court dismissed all of Plaintiffs' remaining claims in the State Case. (Ex. 3 at 20.)

## II.     Plaintiffs Have Received Exorbitant Amounts of Discovery Regarding Their Claims.

The Court's Scheduling Order in this matter provided that "discovery conducted in the State Court Action may be used in this matter." (Doc. 71 ¶ 6(f).) Thus, from the outset of this litigation, Plaintiffs have had access to extensive discovery from the State Case. Additionally, Vail Health supplemented its State Case production by producing in this case thousands of pages of additional documents and more than 1 million lines of financial data. The volume of discovery that Plaintiffs have access to would be unusual in nearly any case. In this case—about a single physical therapist who claims she was defamed—it is extraordinary.

Since Plaintiffs filed their initial complaint in April 2017, Vail Health and its counsel have spent thousands of hours searching for and reviewing documents in connection with the State Case. Vail Health will not attempt to itemize the years of document collection, searches, and review by Vail Health, forensic examination, and third-party discovery that led to the extensive State Case document production. However, the result of those efforts is a discovery record of extraordinary breadth: Parties and non-parties have produced more than **70,000 pages**

**of documents**. The parties conducted **more than 40 depositions**. (Ex. 4 (list of depositions).) And the parties served **more than 40 third party subpoenas**. (Ex. 5 (list of subpoenas).)

In addition to the many searches for responsive documents Vail Health performed in the State Case, Vail Health performed searches specifically requested by Plaintiffs. For example, Plaintiffs requested that Vail Health search custodians' emails using the terms "Cimino," "Lindsay," "LW," "Sports Rehab," "SRC," and "Winninger," and Vail Health ran those search terms against the email files of **24 custodians**. (Ex. 6, at 2.) The breadth of discovery available to Plaintiffs even before they filed their complaint in this case is demonstrated by Plaintiffs' initial disclosures in this case, which identify by name more than 150 individuals likely to have discoverable information, including detailed descriptions of the knowledge those individuals are believed to possess. (Ex. 7 at 2-58.)

**III.   Vail Health Has Produced Voluminous Information On Plaintiffs' Antitrust Claims.**

Despite the extensive discovery that was available to Plaintiffs from the State Case, Vail Health also responded to each of Plaintiffs' extraordinarily broad and burdensome requests for production ("RFPs"), interrogatories, and requests for admission in this case. (Ex. 8; Ex. 9; Ex. 10.) In addition to providing detailed written responses (or, where appropriate, objections) to Plaintiffs' 154 interrogatories and requests for admission, Vail Health agreed to produce, *inter alia*, "financial statements, projections, and financial analyses for Howard Head Sports Medicine"; "documents . . . reflecting the prices charged and revenues realized for Howard Head Sports Medicine's physical therapy services"; "documents . . . reflecting [Vail Health's] evaluation of which physical therapy or other service providers Vail Health considered and/or does consider to be competitors of Howard Head Sports Medicine's physical therapy services"; documents concerning contemplated joint ventures with The Steadman Clinic and Vail Summit Orthopaedics; exemplars of Vail Health's employment agreements with physical therapists; and

non-privileged portions of Vail Health's board of directors minutes and agendas that relate to Vail Health's Howard Head physical therapy practice in the Vail Valley. (Ex. 8 and Ex. 9.) After reviewing Vail Health's discovery responses in June 2021, Judge Martinez concluded that Vail Health had provided "detailed responses to nearly all interrogatories" and that "[o]verall, the Court discerns no abusive discovery practices by Vail Health." (Doc. 113 at 5-6.)

Vail Health has followed through with its document production. In this case, Vail Health has produced more than **6,900 additional pages of documents** (VAIL_Fed_00000001 - VH_Fed_00006971). Moreover, this number substantially understates the volume of information produced because Vail Health has produced more than 200 Excel files in native format, each of which is reflected by a single bates number, and many of which contain multiple worksheets reflecting enormous volumes of data.

Between the State Case and this case, Vail Health has produced extensive discovery regarding the allegations in Plaintiffs' Amended Complaint, including, *inter alia*:

| |
|---|
| Spreadsheets containing more than 1 million rows of encounter-level data regarding physical therapy services provided by Vail Health in the alleged Vail Valley market, which include patient zip codes and the amount Vail Health was reimbursed for every private payer transaction, for the period November 2013 through September 2021 (Ex. 11 (excerpt)) |
| Monthly Howard Head financial data, including Unique FIN (*i.e.*, patients), Charge, Payment Amount, Direct Cost, Contribution Margin, Indirect Cost, and Net Income, for the period November 2014 through September 2020 (Ex. 12) |
| Vail Health / Howard Head chargemasters, which reflect Vail Health's standard prices for its services (Ex. 13, exemplars) |
| Vail Health's contracts with third-party payers, which reflect the discounts provided to payers from Vail Health's chargemaster prices (Ex. 14, exemplars) |
| Vail Health Board minutes and agendas concerning Howard Head (Ex. 15) |
| Exemplars of all forms of offer letters used for Howard Head physical therapists (Ex. 16), as well as employment handbooks and employment policies |

| |
|---|
| Documents regarding the contemplated joint ventures between Vail Health and The Steadman Clinic and/or Vail-Summit Orthopedics ("VSO"), including letters of intent, draft term sheets, financial projections, and communications reflecting the parties' negotiations (Ex. 17 and Ex. 18, representative samples); Plaintiffs also served subpoenas on Steadman and VSO (Ex. 19; Ex. 20) |
| The office lease between Vail Health and Steadman, First Amendment to Office Lease, and communications related thereto (Ex. 21, representative samples) |
| Documents and information regarding Vail Health's self-pay system, including adjustment forms and invoices containing pricing information (Ex. 22, representative samples) |
| Communications regarding Vail Health's pricing of physical therapy services (Ex. 23, representative samples) |
| Analyses of referral sources of Howard Head patients (Ex. 24, representative samples) |
| Communications discussing physical therapy providers Vail Health considers to be competitors (Ex. 25, representative samples) |

While Vail Health's counsel collected many of the above categories of documents from Vail Health personnel without relying on search terms, Vail Health also applied **nearly fifty sets of search terms** to identify responsive documents from the email files of Vail Health's current CEO, former CEO, current leader of Howard Head, and former leader of Howard Head. (Ex. 6, at 24.)

**IV.     In this Case, Plaintiffs Continue to Raise Frivolous Discovery Disputes to Delay Resolution of the Case.**

Despite Vail Health's good faith attempts to respond to Plaintiffs' overbroad discovery requests, Plaintiffs have pursued a pattern of raising multitudes of purported discovery disputes, not designed to help them prosecute their case, but to burden and harass Vail Health. In March 2021, Plaintiffs began this process by alleging scores of discovery disputes regarding 13 of Vail Health's responses to Plaintiffs' then-14 RFPs. (Ex. 26.) Vail Health responded to each one of these, and the resulting discovery dispute chart submitted to Judge Gallagher was 48 pages in length. (*Id.*)

In May 2021, Plaintiffs started this process yet again, sending Vail Health a sixteen-page letter raising multiple purported discovery disputes regarding 24 of Vail Health's 25 interrogatory responses, as well as Vail Health's initial disclosures. (Ex. 27.) Vail Health responded in writing to each issue Plaintiffs raised, in a 20-page discovery dispute chart. (Ex. 28.)

Without seeking to narrow the issues based on Vail Health's response, Plaintiffs then filed five motions to compel, raising dozens of issues, some of which had never been previously identified. These motions were referred to the Special Master who held eight hours of hearing on these issues on October 21-22. At the conclusion of the hearing, the Special Master ordered the parties winnow down the issues: "Well, here's how we'll start. The Plaintiffs will identify what documents and information they need after having had these hearings and the recent productions. They will present that to Vail Health . . . including the reference to which request for production[,] interrogatory it is." (Ex. 29, 10/22/21 Tr. at 81.) The Special Master then ordered that "Plaintiffs specifically identify to Defendant and itemize by reference to prior discovery requests what answers, information, and materials they still request to be produced." (Doc. 202.)

On November 2, Plaintiffs provided their list of disputes remaining after the conference. The list was a 32-row, 12-page, single-spaced chart listing more than 60 purported discovery disputes, including issues that were not even addressed in any of Plaintiffs' motions to compel or mentioned at the Special Master Hearings, as well as issues that have already been discussed extenisvely between the parties. (Ex. 30.) Vail Health promptly informed Plaintiffs that this was not in the spirit of the Special Master's Order, that Plaintiffs needed to focus their requests, and that Vail Health would file this motion for protective order if the Plaintiffs did not do so. (Ex. 31.) The following week, Vail Health also provided Plaintiffs with a letter outlining the details of

- 7 -

its document productions from the state and federal case, including document custodians, documents specially collected, and search terms run against custodian email files. (Ex. 6.) Plaintiffs refused to narrow their requests; rather, they demanded that Vail Health's attorneys "set aside the entirety of one day" for a meet-and-confer. (Exs. 1, 32.)

### V. Plaintiffs Have Demonstrated a Pattern of Manufacturing Discovery Disputes to Delay the Resolution of Their Claims.

Plaintiffs' efforts to raise voluminous discovery disputes just before the discovery deadline to delay expert discovery and adjudication of dispositive motions is consistent with Plaintiffs' strategy in the State Case, where they repeatedly raised discovery disputes at the last minute to avoid adjudication of dispositive motions. For example, Plaintiffs sought and obtained at least ten extensions of time to respond to Vail Health's motion for summary judgment in the State Case, delaying the completion of briefing on that motion for more than a year. (Ex. 33.) Plaintiffs' repeated motions for extension in the State Case caused the State Court to observe in September 2020 that "Plaintiff has had far more extensions than most or possibly any other case." (Ex. 34.) Given the State Court's dismissal of all Plaintiffs' claims, we now know that none of the discovery that was the subject of Plaintiffs' repeated last-minute motions for extension had any bearing on their case—the sole purpose was delay.

Nearly every judge involved in this dispute has observed that the discovery and motion practice that has occurred seems disproportionate to the limited nature of the dispute. In the State Case, Judge Granger observed in his summary judgment order that "this dispute has unfortunately evolved into a highly contentious, voluminous, and protracted litigation." (Ex. 3 at 20.) In a related C.A.R. 21 proceeding, the Colorado Supreme Court observed, "[f]or reasons that are not abundantly clear from the record before us, the dispute below, which began as a seemingly straightforward claim for defamation and tortious interference with contract, has

ballooned into a massive litigation, comprising twenty-seven claims, five counterclaims, six third-party claims, and over 1,100 filings in the district court." *Winninger v. Kirchner*, 488 P.3d 1091, 1093 (Colo. 2021). And this Court has observed that "Plaintiffs and Vail Health have been litigating the same facts at issue in this case in Eagle County District Court for over four years," that the State Case docket sheet "is over 350 pages long," and that there has been a "prodigious amount of discovery already produced" in the State Case. (Doc. 113 at 5.)

Vail Health respectfully submits that the primary reason discovery concerning this dispute has struck multiple courts as being disproportionate to the relatively narrow nature of the dispute is because Plaintiffs have weaponized the discovery process. Plaintiffs seek unreasonably broad discovery; raise repeated, burdensome discovery disputes; leverage the existence of those discovery disputes to extend the discovery period or delay adjudication of dispositive motions; and use the extended discovery period to seek more discovery and raise more discovery disputes. At this point, Plaintiffs have received an overwhelming amount of discovery on their claims that have now been dismissed by the State Court. Allowing them more time to pursue additional discovery that is—at best—of marginal value will serve no purpose but further delay and unwarranted burdens on Vail Health.

## ARGUMENT

### I.  There is Good Cause for a Protective Order Terminating Fact Discovery.

Federal Rule of Civil Procedure 26(c) authorizes the Court, for good cause, to "issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense." Such an order may forbid discovery, or specify terms, including the allocation of expenses, for discovery. Fed. R. Civ. P. 26(c)(1)(A), (B). "Broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Landry v. Swire Oilfield Servs., LLC*, 323 F.R.D. 360, 376 (D.N.M. 2018).

### A. Plaintiffs' Demands Impose Undue Burdens and Expense and Are Not Proportional to the Needs of the Case.

A protective order under Rule 26(c) is warranted when the requested discovery is disproportionate to the needs of the case "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b). Here, those factors weigh heavily in favor of precluding further discovery.

*Importance of the Issues*: This antitrust case is actually a simple commercial dispute between a hospital and a single alleged competitor in the purported market for physical therapy services. Plaintiffs' core allegation in this case and the State Case is that Vail Health sought to drive them out of business by making false statements that Ms. Winninger stole patient files from Vail Health. The State Court has now found Plaintiffs' core allegation to be meritless because the alleged statements by Vail Health were substantially true—*i.e.*, Ms. Winninger in fact stole patient files. (Ex. 3.) Any remaining issues in this case, if any, are ancillary.

*Amount in Controversy*: Following the State Court's summary judgment order, the amount in dispute is *de minimis*. According to Plaintiffs' initial disclosures, all or nearly all of Plaintiffs' damages in this case are based on Vail Health's "defamatory conduct." (*See, e.g.*, Ex. 7 at 60 (claiming "[p]ast loss of revenue that translates into loss of profit for Sports Rehab as the result of Defendants' *defamatory conduct* during the period from January 15, 2016 to December 31, 2019" (emphasis added)); *id.* at 61 (claiming "[p]ast increased costs to Sports Rehab in the form of sunk costs caused by Defendants' *defamatory conduct*" (emphasis added).) Under the State Court's summary judgment order, all damages that Plaintiffs attribute to "defamatory conduct" were actually caused by truthful statements regarding Ms. Winninger's

misconduct, which cannot be the basis for an antitrust claim. *See, e.g.*, *Duty Free Am., Inc. v. EstEe Lauder Cos.*, 2014 U.S. Dist. LEXIS 43673, at *32 (S.D. Fla. Mar. 31, 2014) (truthful statements not anticompetitive).

Nor do Plaintiffs have any damages resulting from the limited additional categories of conduct alleged in Plaintiffs' Amended Complaint—namely, unconsummated joint ventures with Steadman and VSO; a restriction in the Steadman lease regarding the provision of physical therapy services; and Vail Health's non-solicitation agreements. Brad Schoenthaler, SRC's co-owner, admitted that none of this conduct caused any damages to Plaintiffs. (*See, e.g.*, Ex. 35, Schoenthaler Dep. Tr. 80:24-81:8, 81:25-82:5 (admitting that proposed joint venture between Vail Health and Steadman caused SRC no damages); *id.* at 82:14-22, 82:25-83:5 (admitting that proposed joint venture between Vail Health and VSO caused SRC no damages); *id.* at 83:23-84:10 (admitting that the restriction in the Steadman lease caused SRC no damages); *id.* at 73:6-10, 74:23-75:1 (admitting that SRC did not have difficulty hiring qualified physical therapists).

*The Parties' Relative Access to Information*: Given the extensive information produced in the State Case and this case, Vail Health and Plaintiffs have relatively equal access to information regarding Vail Health's Howard Head physical therapy practice. This is demonstrated by Plaintiffs' initial disclosures regarding individuals likely to have discoverable information, which identify more than 150 persons by name and include 57 pages of detailed descriptions of the information Plaintiffs believe these individuals possess. (Ex. 7 at 2-58.) In the State Case, the parties conducted more than 40 depositions and served more than 40 third party subpoenas. To the extent Plaintiffs need information from third parties (*e.g.*, Howard Head competitors) to prove their claims, that information is equally available to Plaintiffs.

*Parties' Resources*: Vail Health is a nonprofit community hospital. (Ex. 36, Herota Decl. ¶ 2.) Vail Health's mission is to provide high-quality medical services to residents and visitors to Colorado mountain communities. (*Id.* ¶ 3.) Physical therapy is just one of many services offered by Vail Health and its affiliates, which include behavioral health, cancer diagnosis and care, cardiovascular care, dermatology, emergency services, endocrinology, family medicine, vaccinations, gastroenterology, medical imaging, neurosurgery, OB-GYN, ophthalmology, orthopaedics, pediatrics, primary care, pulmonology, respiratory care, and urology—among others. (*Id.* ¶ 4.) Vail Health does not have an in-house legal department. (*Id.* ¶ 5.) Thus, each request for discovery, particularly requests that involve pulling data from Vail Health's medical records and financial systems, require removing Vail Health employees from their important mission of ensuring quality and innovative medical care is provided to patients. (*Id.* ¶ 6.) Since Ms. Winninger and SRC filed their initial complaint in April 2017, Vail Health employees have spent countless hours assisting counsel in responding to discovery requests of Ms. Winninger and SRC. (*Id.* ¶ 7.) For example, Vail Health personnel spent more than 60 hours pulling and validating more than 1 million rows of encounter-level data from systems from November 2013 through the present from Vail Health's current and legacy medical records systems. (*Id.* ¶ 8.) The team tasked with pulling this data had to delay projects directly relevant to patient care, including multiple application implementations and data reporting projects regarding behavioral health, suicide ideation reports, immunization data reporting, and medical imaging. (*Id.* ¶ 8.)

In contrast, Plaintiffs' counsel seems to have nearly unlimited resources when the task at hand involves imposing burdens on Vail Health. As discussed above, Plaintiffs repeatedly have raised myriad discovery disputes and sought extraordinarily broad discovery that bears little relationship to Plaintiffs' claims. As just one of many examples, in a sixteen-page letter dated

May 12, 2021, Plaintiffs' counsel raised more than 50 issues regarding 24 of Vail Health's 25 interrogatory responses. (Ex. 27.) Yet the Court subsequently found that Vail Health had "provided substantive, detailed responses to nearly all interrogatories." (Doc. 113 at 6.) Even after the Court admonished Plaintiffs' counsel in June 2021 to refrain from "multiply[ing] the proceedings" or engaging in actions that are "vexatious and unreasonable" (Doc. 113 at 4; Doc. 118 at 6), Plaintiffs' conduct continued.[1] Plaintiffs subsequently, *inter alia*, filed five motions to compel, each raising scores of discovery disputes, and refused to narrow their list of discovery disputes following eight hours of hearings before the Special Master.

*Weighing Burdens and Benefits*: Here, the burden and expense of additional discovery outweighs the potential benefits. As discussed, Plaintiff have extraordinarily detailed information regarding the allegations in Plaintiffs' Amended Complaint. For example, Plaintiffs have detailed information regarding Vail Health's prices and the amount Vail Health was reimbursed for each private-payer physical therapy encounter. Any additional information and communications Plaintiffs seek regarding Vail Health's pricing would be of marginal value, if any. As another example, Plaintiffs recently demanded that Vail Health search the email files of four of Vail Health's current and former CFOs, who have responsibility for the entire hospital system, not just Howard Head. (Ex. 30 at 10.) The chances that some important fact regarding Howard Head would be discovered in the emails of Vail Health's CFOs that was not discovered

---

[1] One possible reason that Plaintiffs' counsel has continued to multiply these proceedings is that counsel did not ensure that Plaintiffs themselves read this Court's June 2021 orders advising Plaintiffs and their counsel to refrain from such conduct. SRC's co-owner, Brad Schoenthaler, testified that he had never read this Court's June 2021 orders and was unaware of the Court's admonishments or that Plaintiffs had served their discovery responses and initial disclosures four months late. (Ex. 35 at 8:1-24:11.) In October 2021, Ms. Winninger testified that she was "not sure" whether she had read the Court's June 2021 orders and did not know that her counsel had served discovery responses and initial disclosures four months late. (Ex. 37 at 15:19-16:8, 24:2-9, 25:13-26:8; *see also id.* at 9:4-35:11.)

in Vail Health's searches of its current and former CEOs and current and former Howard Head leaders is remote.

  **B. Plaintiffs' Requests for Further Discovery Are Designed to Annoy, Embarrass, Oppress, and Cause Undue Burden or Expense.**

  Further discovery will only prolong these already protracted proceedings and impose annoyance, embarrassment, and oppression on Vail Health and its attorneys. <u>First</u>, Plaintiffs have clearly stated their motivation to use discovery as a fishing expedition to further multiply these proceedings. When Plaintiffs conferred regarding their recent motion to extend the discovery deadlines, they indicated that they intended to add new claims, but refused to identify the nature of the claims. (Ex. 38.) Plaintiffs also informed the Special Master that discovery in this matter had "opened a can of worms" and that Plaintiffs intend to "follow the money" and investigate the finances of the entire hospital. (Ex. 29 at 38:22-41:24, 44:2-19, 45:6-15, 46:4-24.) Where a plaintiff "first pleads its allegations in entirely indefinite terms, without in fact knowing of any specific wrongdoing by the defendant, and then bases massive discovery requests upon those nebulous allegations, in the hope of finding particular evidence of wrongdoing, that plaintiff abuses the judicial process." *Koch v. Koch Indust.*, 203 F.3d 1202, 1238 (10th Cir. 2000).

  <u>Second</u>, despite the Court's protective order, Plaintiffs have stated their intention to make public Vail Health's competitively sensitive financial and other commercial information, including by releasing it to "the press." (Doc. 146, 191.) Continuation of discovery in this matter will only provide Plaintiffs further opportunities to leverage threatened public disclosure of sensitive information for strategic gain.

  <u>Third</u>, Plaintiffs also stated their intention to use the identities and addresses of Howard Head patients to contact those patients under the guise of conducting a market "survey." (Ex. 39 at 11:24-12:7; *see also id.* at 29:16-30:4.) The Special Master asked Plaintiffs' counsel whether

he would use any Vail Health patient information to contact those patients, and he responded "yes." (*Id.* at 42:5-43:10.) In addition to violating HIPAA, such a "survey" would be statistically useless and intended only to harm Vail Health's business and harass its patients.

Finally, Plaintiffs' harassing conduct extends to Vail Health's attorneys. Plaintiffs' counsel routinely makes unfounded, unprofessional, and demeaning comments to Vail Health's counsel, including for example, (a) accusing in pleadings and their initial disclosures Vail Health's attorneys of "suppl[ying] fabricated 'evidence' to the Vail Police Department," "suborn[ing] [a witness] to testify falsely," and pursuing "sham litigation" in the State Case (*e.g.*, Ex. 26 at 33-34, 37); (b) threatening Vail Health's attorney with Rule 11 sanctions based on Vail Health's assertion of the banal legal position that an unconsummated joint venture did not provide a legal basis for a claim of attempted monopolization (Ex. 41); (c) allowing Plaintiff to curse at the attorney taking her deposition (Ex. 37 at 92:3-4 ("don't feed me sh*t"), 96:17-22 ("bullsh*t question")); (d) engaging in unprofessional written communications, including accusing one attorney of being "subject to the spell" of another attorney (Ex. 42); and (e) repeatedly using oral conferrals to disparage, including suggesting that an associate attorney must have a partner secretly present because they would not let him "out of [his] cage."

If Plaintiffs are permitted to further extend discovery, there is no reason to believe that they will modify their pattern of unreasonable conduct, subjecting Vail Health to further harassment and undue burden.

## CONCLUSION

For the reasons set forth above, Vail Health requests that its Motion for Protective Order be granted, and Plaintiffs be prohibited from seeking any further discovery in this matter.

Respectfully submitted this 19th day of November, 2021.

   *s/ Shannon Stevenson*
Shannon Wells Stevenson
Janet A. Savage
Jacqueline V. Roeder
Daniel A. Richards
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, Colorado, 80202
Telephone: 303.892.9400
Facsimile: 303.893.1379
Email: shannon.stevenson@dgslaw.com
       janet.savage@dgslaw.com
       jackie.roeder@dgslaw.com
       daniel.richards@dgslaw.com

*Attorneys for Defendant VAIL CLINIC, INC., d/b/a VAIL HEALTH, a Colorado nonprofit corporation*