# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company, and LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation.

      Defendant.

---

## PLAINTIFFS' RULE 26(a)(1) INITIAL DISCLOSURES

---

Plaintiffs Sports Rehab Consulting LLC and Lindsay Winninger make the following initial disclosures under Rule 26(a)(1) of the Federal Rules of Civil Procedure. These disclosures are based on information presently known and reasonably available to Plaintiffs and which they believe are relevant to the claims and defenses of Defendant Vail Health. Continuing investigation and discovery may cause Plaintiffs to amend these initial disclosures including, but not limited to, identifying other potential witnesses, documents, or other pertinent information. Winninger and Sports Rehab therefore reserve the right to supplement these disclosures.

By providing these disclosures, Plaintiffs do not represent that they are identifying every document, tangible thing, or witness relevant to this action. Additionally, Plaintiffs make these disclosures without waiving their right to object to any discovery request or introduction of evidence at trial on any grounds. Plaintiffs also do not admit that the

disclosed information is relevant or admissible.  Nor are these disclosures an admission by Plaintiffs regarding any matter.  Finally, Plaintiffs state that certain disclosures may be limited to the extent that confidential, proprietary business information, or protected health information is involved, and the parties have not yet entered into a protective order ensuring the confidentiality of that information.

Subject to the following qualifications and limitations, Winninger and Sports Rehab provide the following disclosures:

**A.     Individuals Likely To Have Discoverable Information Relevant To The Claims And Defenses Of Any Party.**

Based upon information reasonably available as of the date of these disclosures, Winninger and Sports Rehab identify the following individuals who may have discoverable information relevant to the claims or defenses of any party.  Individuals employed by Sports Rehab may be contacted through counsel of record for Sports Rehab.

| No. | Name and Contact Information | Area of Knowledge |
|-----|------------------------------|-------------------|
| 1 | Will Cook<br>Chief Executive Officer<br>Vail Health<br>180 South Frontage Road West<br>Vail, CO 81657<br>Phone:  970.476.2451 | Cook is believed to have knowledge of Vail Health's prices, costs, and profit margins over time.  He is believed to have knowledge of Vail Health's overall market power in the relevant geographic market for hospital services generally, and out-patient services such as physical therapy in particular.  Cook is believed to have knowledge of the extent to which patients and health care insurers have alternative medical providers who are capable of competing with Vail Health.  As CEO of Vail Health, Cook is believed to have knowledge of the financial condition of Vail Health, including knowledge of its financial statements such as income statements, balance sheets, statement of cash flow, as well as comparisons of Vail Health's profitability compared with other health care providers.<br><br>Cook is believed to have knowledge of Vail Health's geographic market for hospital services generally and physical therapy services in particular.  He has knowledge that Vail Health's relevant geographic |

| | | market extends no further than about 18-miles, or 30-minutes of diving time East from its Vail Health hospital base in Vail, or alternatively West from the town of Vail to the outer boundaries of Eagle County.<br><br>Cook is also believed to have knowledge of Vail Health's compliance with Medicare, Medicaid, Colorado law and regulations regarding health care services and billing. |
|---|---|---|
| 2. | John Higgins<br>Chief Financial Officer<br>Vail Health<br>180 South Frontage Road West<br>Vail, CO 81657<br>Phone:  970.476.2451 | Higgins is believed to have knowledge of Vail Health's prices, costs, and profit margins over time. He is believed to have knowledge of Vail Health's overall market power in the relevant geographic market for hospital services generally, and out-patient services such as physical therapy in particular.  As CFO of Vail Health, Higgins is believed to have knowledge of the financial condition of Vail Health, including knowledge of its financial statements such as income statements, balance sheets, statement of cash flow, as well as comparisons of Vail Health's profitability compared with other health care providers. |
| 3. | Ted Sirotta<br>Former Chief Financial Officer<br>Vail Health<br>c/o Henry Mayo Newhall Hospital<br>23845 McBean Pkwy<br>Valencia, CA 91381<br>661.200.2000 | As CFO of Vail Health, Sirotta is believed to have knowledge of Vail Health's prices, costs, and profit margins during times relevant to this action. He is believed to have knowledge of Vail Health's overall market power in the relevant geographic market for hospital services generally, and out-patient services such as physical therapy in particular.  As CFO of Vail Health, Sirotta is believed to have knowledge of the financial condition of Vail Health, including knowledge of its financial statements such as income statements, balance sheets, statement of cash flow, as well as comparisons of Vail Health's profitability compared with other health care providers. |
| 4. | Harold Dupper<br>Former Chief Financial Officer<br>Vail Health<br>c/o Portland State University<br>6313 Southwest Harrison St.<br>Portland, OR 97201<br>503.725.3000 | As CFO of Vail Health, Dupper is believed to have knowledge of Vail Health's prices, costs, and profit margins during times relevant to this action.  He is believed to have knowledge of Vail Health's overall market power in the relevant geographic market for hospital services generally, and out-patient services such as physical therapy in particular.  As CFO of Vail Health, Dupper is believed to have knowledge of the financial condition of Vail Health, including knowledge of its financial statements such as income statements, balance sheets, statement of cash flow, as well as comparisons of Vail Health's profitability compared with other health care providers. |
| 5. | Charles W. Crevling | As CFO of Vail Health, Crevling is believed to have knowledge of Vail Health's prices, costs, and profit |

| | | |
|---|---|---|
| | Former Chief Financial Officer<br>Vail Health<br>c/o Valley View Hospital<br>1906 Blake Avenue<br>Glenwood Springs, CO 81601<br>970-945-6535 | margins during times relevant to this action.  He is believed to have knowledge of Vail Health's overall market power in the relevant geographic market for hospital services generally, and out-patient services such as physical therapy in particular.  As CFO of Vail Health, Crevling is believed to have knowledge of the financial condition of Vail Health, including knowledge of its financial statements such as income statements, balance sheets, statement of cash flow, as well as comparisons of Vail Health's profitability compared with other health care providers. |
| 5 | Doris Kirchner<br>Former CEO of Vail Health<br>c/o Jackie Roeder<br>Davis Graham & Stubbs LLP<br>1550 17th Street, Suite 500<br>Denver, CO 80202<br>Phone: 303.892.7341 | Kirchner has direct knowledge of Vail Health's prices, costs, and profit margins over time and how Vail Health has used and continues to use its monopoly power for hospital services generally to enhance its monopoly power specific hospital services such as outpatient care general, and physical therapy in particular.  In other words, Kirchner knows how Vail Health's wholistic monopolistic position is used to strengthen its monopoly position in specific areas of medical care such as physical therapy.  Kirchner has direct and personal knowledge how Vail Health uses anticompetitive conduct to leverage and maximize its market power in the relevant geographic market and prevents insurers from using alternative medical providers from counter its excessive pricing.<br><br>At times relevant to this action, Kirchner held senior management positions and was Chief Executive Officer (the "CEO") of Vail Health.  In those positions, Kirchner would have been required develop significant knowledge of the financial condition and financial statements such as income statements, balance sheets, statement of cash flow, comparisons of Vail Health profitability compared with other health care providers.  And all of that would have included certain knowledge of financial aspects of the physical therapy services performed by RPC-Vail/Proaxis prior to November 1, 2012 and thereafter by Vail Health, and in particular the profitability of those services.<br><br>Kirchner has knowledge of Vail Health's geographic market for hospital services generally and physical therapy services in particular.  She has knowledge that Vail Health's relevant geographic market extends no further than about 18-miles, or 30-minutes of diving time East from its Vail Health hospital base in Vail, or alternatively West from the town of Vail to the outer boundaries of Eagle County. |

As the CEO of Vail Health during the relevant periods of time with respect to this antitrust case, Kirchner also has knowledge of the geographic limitations of its hospital license at relevant points in time.

Kirchner has direct knowledge of Vail Health's contractual relationships with health care insurers and payors such as United Health Care, BlueCross/BlueShield, Kaiser Permanente, and others. She has knowledge of the fraudulent and monopolistic pricing arrangements that Vail Health has had and continues to have with insurers and payors. She has knowledge of the costs of providing the medical services, including physical therapy services, and the supra-competitive profits Vail Health has realized and continues to realize from those arrangements.

Kirchner has knowledge that Vail Health maintains monopoly power for hospital services in general in the Vail Valley geographic market. And she has knowledge that outpatient care in the form of physical therapy constitutes a significant part of Vail Health's revenues and profits, which are above what would be expected in a competitive market. Kirchner knows that Vail Health uses its monopoly for hospital services in general to generate supra-competitive revenues and profits, which are then poured into above-market salaries for physical therapists who are, of course, precluded from terminating their employment with Vail Health by illegal non-compete/non-solicitation covenants in their employment contracts. The combination of the two give Vail Health an illegal anticompetitive advantage that increases its monopoly power and has a deleterious effect on competition.

Kirchner has knowledge and information relating to the contractual relationships Vail Health had with RPC-Vail/Proaxis prior to October 31, 2012, as well as the events that transpired immediately prior to and immediately after the termination of the contractual relationship. She has knowledge of the financial relationships Vail Health had with RPC-Vail/Proaxis, such as billing rates, costs, profitability for relevant periods prior to October 31, 2012. Kirchner is believed to have knowledge of the manner in which Vail Health performed the services of a billing provider for the physical therapy services that RPC-Vail/Proaxis rendered prior to October 31,

2012.  Kirchner has direct and personal knowledge that Vail Health did not render or provide any physical therapy services during the period in which RPC-Vail/Proaxis performed physical therapy services, that is from approximately 1999 to October 31, 2012.

Kirchner is believed to have knowledge as to how Vail Health represented itself on insurance claims forms and/or data to healthcare insurers and payors, including Medicare and Medicaid, for the physical therapy sources provided during the time RPC-Vail/Proaxis performed those services, that is from approximately 1999 to October 31, 2012.  Kirchner is believed to have knowledge as to whether Vail Health complied with Medicare and Medicaid laws, regulations, and guidelines during that time.

Kirchner also has direct and personal knowledge of the fact that RPC-Vail/Proaxis documents at issue in the Eagle County action were created by RPC-Vail/Proaxis, exclusively with its knowledge and expertise in the physical therapy field, at the sole expense of RPC-Vail/Proaxis.  Kircher has knowledge that Vail Health had nothing to do with the creation of that information or those documents.  As such, Kirchner has knowledge that the physical therapy information and documents that Vail Health intentionally and wrongfully designated as "trade secrets" in the state action, all done pursuant to an order of the Eagle County District Court, did not and never could have met the legal standards imposed by the Colorado Uniform Trade Secrets Act ("CUTSA") to qualify as trade secrets.

Upon information and belief, Kirchner has direct knowledge that her attorneys, and in particular Janet Savage, apparently with Kirchner's authority and knowledge, served, filed, and made representations to the Eagle County Court that were knowingly false, and were intended to mislead the Court and Plaintiffs.  These false and misleading representations did, in fact, mislead the Court and Plaintiffs for an extended period of time and were a fraud upon the Court and Plaintiffs.  Kirchner and/or her attorneys have knowledge that the misrepresentations regarding purported "trade secrets" were and are an integral part of sham litigation intended to drive Plaintiffs out of the physical therapy profession.

|  |  | Kirchner has knowledge as to the reasons Vail Health terminated its contractual relationships with RPC-Vail/Proaxis and why those relationships ended on October 31, 2012. Kirchner has knowledge of Vail Health's intent in terminating RPC-Vail/Proaxis as of October 31, 2012 was to create a monopoly in the physical therapy service market in the relevant geographic market. Kirchner was at that time a senior executive officer of Vail Health, and this plan to monopolize was undertaken by Kirchner and others for and on behalf of Vail Health. The specific intent in creating a monopoly was to use Vail Health's market power to raise prices and exclude competition in the physical therapy service market in the relevant geographic market.

In implementing the termination (or "nonrenewal") of the contractual relationships between Vail Health and RPC-Vail/Proaxis, Kirchner has knowledge of her direct involvement in Vail Health's plan to poach physical therapists from RPC-Vail/Proaxis and eliminate RPC-Vail/Proaxis from the relevant markets, thus solidifying monopoly power by precluding competitors from obtaining the licensed physical therapists they needed to compete.

In addition, Kirchner has knowledge and information confirming that Vail Health did not negotiate, purchase, or obtain an assignment of any documents, information, or intellectual property, however characterized, that had been created and owned by RPC-Vail/Proaxis when the relationship between or among the parties ended on October 31, 2012. Kirchner has direct and personal knowledge of that fact that upon termination Vail Health refused to return documents that were on its server and that Vail Health converted those documents to its own use, which Vail Health has repeatedly represented to be "confidential" and "trade secrets" to its own use without permission or authorization of RPC-Vail/Proaxis, and without providing RPC-Vail/Proaxis with any compensation.

It is also believed that Kirchner has information regarding Vail Health's contractual relationships with medical insurers, Medicare, Medicare, and the prices Vail Health charged for physical therapy services, the costs incurred by Vail Health in providing those services, and the illegal anticompetitive, supra-competitive prices for and profits realized by Vail Health, and continues to realize, from physical |

therapy services.

Kirchner has direct knowledge of the illegal employment agreements Vail Health entered into for the period beginning on or about November 1, 2012, and still maintains with its physical therapists. These agreements contain restrictive non-compete or non-solicitation covenants, which are illegal in Colorado, and which were implemented to create and maintain monopoly power for physical therapy services in the relevant geographic market. These agreements have the effect of raising the cost of physical therapy services in the relevant geographic market.

Kirchner has direct and personal knowledge relating the attempts by Vail Health to maintain and enhance its monopoly for hospital services generally and physical therapy services in particular during a period of time believed to be approximately 2014-2017. This attempt to further enhance its monopoly power took the form a joint venture (the "JV") with The Steadman Clinic ("Steadman") and Vail Summit Orthopaedics ("VSO") for the purpose of providing physical therapy services. Vail Health attempted to consummate this combination with the then specific intent to contractually "lock-up" Vail Health's sources for the supply of orthopedic patients for its physical therapy clinic.

It is believed that Kirchner has information relating to the leasing arrangement that Vail Health negotiated and consummated with Steadman in approximately 2017. This lease contains a restrictive covenant that prohibits Steadman from performing physical therapy in the hospital building located West Meadow Drive, Vail. This lease arrangement effectively creates an exclusive dealing arrangement with Steadman to steer physical therapy patients to Vail Health. Kirchner has knowledge of numerous other contractual relationships between Vail Health and Steadman that are intended by Vail Health to stabilize and maintain its monopoly power in the physical therapy market in the relevant geographic market.

Kirchner has personal knowledge of the false statements that she and others at Vail Health made against Winninger and Sports Rehab, the publication of those statements, the complete lack of any investigation as to the truth or falsity of the statements, and the purpose of the false statements,

including the intent to drive Winninger and Sports Rehab out of business; statements made to Philippon after learning Winninger and Sports Rehab intended to open an office in Vail; the purpose of the October 13, 2015 meeting between O'Brien and Winninger; the purpose of the January 8, 2016 meeting between Brown and Winninger; communications with Shannon, Brown, and others related to Winninger and Sports Rehab; the identification and review of information downloaded by Cimino; the failure of Vail Health to maintain secure files and data relating to patient files and HIPAA protected data; the decision to report the information under HIPAA; other breaches of patient health information and actions taken; the purported breach of the letter agreement by Cimino; the purported solicitation of Vail Valley Medical patients by Winninger, Cimino, and Sports Rehab; information provided to the Eagle County District Attorney and the pressure placed to have a criminal complaint filed against Cimino and Winninger; Vail Health's refusal to allow disclosure of the USB devices in the Cimino criminal matter; the market share and market power that Vail Health maintains in the relevant service market; the purpose of the non-solicitation agreements that Vail Health has with its physical therapists; and the defenses in Vail Health's Answer in the Eagle County action.

Kirchner has information relating to the sham litigation in which Vail Health has engaged against Winninger and Sports Rehab in Eagle County District Court.  Kirchner has direct and personal knowledge of Vail Health's claims that Winninger was involved with the solicitation of Vail Health patients and "stole" Vail Health's trade secrets, confidential information, and patient files, all of which was done without conducting any investigation whatsoever.  In that litigation, Vail Health falsely and maliciously claimed that it owned thousands of "trade secrets" when Kirchner and her attorney and Vail Health's attorneys had actual knowledge that :(1) the information that Vail Health designated as trade secrets did not constitute trade secrets under CUTSA and had long-since been widely disseminated and known throughout the United States and indeed the world. (2) Kirchner and her attorney, along with members of Vail Health management and its attorneys, had actual knowledge that the documents and information that Vail Health claimed in court proceeding were trade secrets never belonged to Vail Health in the first place—they belonged to RPC-

| | | |
|---|---|---|
| | | Vail/Proaxis.  This sham litigation continues to this day for the purpose of illegally excluding Winninger, Sports Rehab and David Cimino from the physical therapy market in the relevant geographic market. |
| 6 | Various members of Vail Health Board of Directors, including, but not limited to:<br> Michael Shannon<br> Dick Cleveland<br> Reg Franciose<br> Jerry Greenberg<br> Chris Jarnot<br> Doris Kirchner<br> Jeff Schroll<br> Wayne Wenzel<br>Vail Health<br>180 South Frontage Road West<br>Vail, CO  81657<br>Phone: 970.476.2451 | Plaintiffs believe that, given the fiduciary obligations imposed upon the members of the Board of Directors of Vail Health by the laws of the state of Colorado, at least some of them at times relevant to this action may have taken those  legal obligations seriously.  If there are Directors who did so, they likely have knowledge and information relating to the contractual relationships Vail Health had with RPC-Vail/Proaxis prior to October 31, 2012, as well as the events that transpired immediately prior to and immediately after the termination of the contractual relationship.  Those directors are believed to have knowledge of the reasons Vail Health decided not to renew its contractual relationship with RPC-Vail/Proaxis.  They are also believed to have knowledge as to why Vail Health decided to take over the physical therapy clinic and perform those services with physical therapists employed by Vail Health.  In other words, the Board members would have knowledge as to the overall business strategy of Vail Health in becoming the operator of the physical therapy clinic that had been doing business under the trade name "Howard Head Sports Medicine."<br><br>It is believed that at least some of the members of the Board of Directors have knowledge of the financial relationships Vail Health had with RPC-Vail/Proaxis, such as billing rates, costs, profitability for relevant periods prior to October 31, 2012.  It is believed that at least certain of the Board members had then and have now knowledge of the manner in which Vail Health performed the services of a billing provider for the physical therapy services that RPC-Vail/Proaxis rendered prior to October 31, 2012.  Board members are believed to have knowledge that Vail Health did not render or provide any physical therapy services during the period in which RPC-Vail/Proaxis performed physical therapy services, that is from approximately 1999 to October 31, 2012.<br><br>Certain of the Board members are believed to have knowledge as to how Vail Health represented itself on insurance claims forms and/or data to healthcare insurers and payors, including Medicare and Medicaid, for the physical therapy sources provided during the time RPC-Vail/Proaxis performed those services, that is from approximately 1999 to October |

| | | |
|---|---|---|
| | | 31, 2012.  Board members are believed to have knowledge as to whether Vail Health complied with Medicare, Medicaid, federal and Colorado state laws, regulations, and guidelines during that time period.<br><br>At times relevant to this action, Board members would have been required acquire knowledge of Vail Health's financial condition and financial statements such as income statements, balance sheets, statement of cash flow, and comparisons of Vail Health profitability compared with other health care providers.  And all of that would have included certain knowledge of financial aspects of the physical therapy services performed by RPC-Vail/Proaxis, and in particularity its profitability. |
| 7. | Nicholas ("Nico") Brown<br>Senior Vice President<br>Vail Health<br>180 South Frontage Road West<br>Vail, CO 81657<br>Phone:  970.476.2451 | Brown has knowledge of Vail Health's prices, costs, and profit margins over time and how Vail Health has used and continues to use its monopoly power for hospital services generally to enhance its monopoly power specific hospital services such as outpatient care general, and physical therapy in particular.  In other words, Brown knows how Vail Health's wholistic monopolistic position is used to strengthen its monopoly position in physical therapy.<br><br>Brown has knowledge of the financial condition and financial statements such as income statements, balance sheets, statement of cash flow of Vail Health as a reporting entity, and knowledge of the financial contributions that the physical therapy clinic makes to Vail Health's overall financial profitability and asset structure.  In his positions as a key executive of Vail Health in charge of physical therapy, Brown has acquired detailed knowledge of the entire physical therapy clinic operation beginning at least as far back as November 1, 2012 and continuing to the present  Brown is believed to have knowledge of how the physical therapy services performed by RPC-Vail/Proaxis prior to November 1, 2012 contributed to Vail Health's profitability and overall financial performance. And why the contract between Vail Health and RPC-Vail/Proaxis was terminated (or "non-renewed").<br><br>Brown has knowledge of Vail Health's geographic market for hospital services generally and physical therapy services in particular.  He has knowledge that Vail Health's relevant geographic market extends no further than about 18-miles, or 30-minutes of diving time East from its Vail Health |

|  |  | hospital base in Vail, or alternatively West from the town of Vail to the outer boundaries of Eagle County. As one of the lead managers of the physical therapy clinic of Vail Health since the spring or summer of 2012.  Brown also has knowledge of the geographic limitations of the hospital's licenses and the licenses required under Colorado law for providing physical therapy services at times relevant to this case.

Brown is believed to have knowledge of Vail Health's contractual relationships with health care insurers and payors such as United Health Care, BlueCross/BlueShield, Kaiser Permanente, and others.  Brown has knowledge of the fraudulent and monopolistic pricing arrangements that Vail Health has had and continues to have with insurers and payors.  He has knowledge of the costs of providing the physical therapy services, and the supra-competitive profits Vail Health has realized and continues to realize from those arrangements.

Brown has direct and personal knowledge that Vail Health maintains monopoly power for physical therapy services in the Vail Valley geographic market, and he is believed to have knowledge of Vail Health's monopoly power for hospital services in general.  He has knowledge that outpatient care in the form of physical therapy constitutes a significant part of Vail Health's revenues and profits, which are above what would be expected in a competitive market.  Brown knows that Vail Health uses its monopoly for hospital services in general to generate supra-competitive revenues and profits, which are then poured into above-market salaries for physical therapists who are, of course, precluded from terminating their employment with Vail Health by illegal non-compete/non-solicitation covenants in their employment contracts.  The combination of the two give Vail Health an illegal anticompetitive advantage that increases its monopoly power, increases its revenues and supra-competitive profitability, and has a deleterious effect on competition.

Brown is believed to have knowledge and information relating to the contractual relationships Vail Health had with RPC-Vail/Proaxis prior to October 31, 2012., as well as after the termination of the contractual relationships.  Brown has knowledge of the financial relationships Vail Health had with RPC-Vail/Proaxis, such as billing rates, costs, |

profitability for the period prior to October 31, 2012. Brown also had direct and personal knowledge of the fact that the RPC-Vail/Proaxis documents at issue in the Eagle County action were created by RPC-Vail/Proaxis, at the sole expense of RPC-Vail/Proaxis, and that Vail Health and its predecessors had nothing to do with the creation of those documents, which Brown fraudulently designated as "trade secrets."   Brown has direct and personal knowledge of the false testimony he gave during the course of a deposition under oath as to whether certain documents constituted "trade secrets" and which entities (RPC-Vail/Proaxis or Vail Health) invested in the creation of the purported "trade secrets," among other factual elements of the existence of trade secrets under CUTSA.

Brown is believed to have knowledge of the reasons Kirchner and the Vail Health Board of Directors terminated is contractual relationship with RPC-Vail/Proaxis as of October 31, 2012.  He knows that the termination was for the purpose of creating a monopoly in the physical therapy service market in the relevant geographic market.  Brown was at that time an officer of Vail Health, and knowingly participated in the plan to monopolize the relevant geographic and in physical therapy market to raise prices and exclude competition.

In addition, Brown has direct and personal knowledge that upon termination of its relationship with RPC-Vail/Proaxis, Vail Health refused to return documents that were on its server.  Brown has knowledge that Vail Health wrongfully and illegally converted those documents to its own use without permission or authorization of RPC-Vail/Proaxis, and in fact against the express demand of RPC-Vail/Proaxis to return the documents.  In addition, Brown knows that Vail Health did not provide RPC-Vail/Proaxis with any compensation for the documents and information that Vail Health converted.  In fact, in the Eagle County action Brown knowingly and with intent to deceive gave false deposition testimony under oath regarding many of those purported "trade secrets" when he knew they were created by RPC-Vail/Proaxis.

Brown has direct knowledge of the employment agreements Vail Health maintained with its physical therapists beginning on or about November 1, 2012 and continuing to the present.  These agreements

contain restrictive non-solicitation covenants, which are illegal in Colorado, and which were implemented to create and maintain monopoly power for physical therapy services in the relevant geographic market.

Brown has direct and personal information relating the attempts by Vail Health in and around 2015-2017 to form a JV with Steadman and VSO for the purpose of providing physical therapy services. Vail Health attempted to consummate this combination with the then specific intent to "lock-up" Vail Health's sources for the supply of orthopedic patients for its physical therapy clinic.

It is believed that Brown has information relating to the leasing arrangement that Vail Health negotiated and consummated with Steadman in approximately 2017. This lease contains a restrictive covenant that prohibits it Steadman from performing physical therapy in the hospital building located at 181 West Meadow Drive, Vail. This lease arrangement effectively creates an exclusive dealing arrangement with Steadman to steer physical therapy patients to Vail Health. Brown has knowledge of numerous other contractual relationships between Vail Health and Steadman that are intended by Vail Health to stabilize and maintain its monopoly power in the physical therapy market in the relevant geographic market.

Brown has personal knowledge of the false statements that he and others at Vail Health made against Winninger and Sports Rehab. Brown has knowledge of the purpose of the October 13, 2015 meeting between O'Brien and Winninger; the purpose of the January 8, 2016 meeting between himself and Winninger; communications with Shannon,, Kirchner, and others related to Winninger and Sports Rehab; the identification and review of information downloaded by Cimino; the failure of Vail Health to maintain secure files and data relating to patient files and HIPAA protected data; the decision to report the information under HIPAA; other breaches of patient health information and actions taken; the purported breach of the letter agreement by Cimino; the purported solicitation of Vail Valley Medical patients by Winninger, Cimino, and Sports Rehab; information provided to the Eagle County District Attorney and the pressure placed to have a criminal complaint filed against Cimino and Winninger; Vail Health's refusal to allow disclosure of

the USB devices in the Cimino criminal matter; the market share and market power that Vail Health maintains in the relevant service market; the purpose of the nonsolicitation agreements that Vail Health has with its physical therapists; and the defenses in Vail Health's Answer in the Eagle County Action.

Brown has information relating to the sham litigation in which Vail Health has engaged against Winninger and Sports Rehab in Eagle County District Court. Brown has direct and personal knowledge of Vail Health's claims that Winninger was involved with the solicitation of Vail Health patients and "stole" Vail Health's trade secrets, confidential information, and patient files, all of which was done without conducting any investigation whatsoever. In that litigation, Vail Health falsely and maliciously claimed that it owned thousands of "trade secrets" when Brown and Vail Health's attorneys had actual knowledge that :(1) the information that Vail Health designated as trade secrets did not constitute trade secrets under CUTSA, and had long-since been widely disseminated and known throughout the United States and indeed the world. (2) Brown, along with members of Vail Health management and its attorneys, had actual knowledge that the documents and information that Vail Health claimed in court proceeding were trade secrets, not only were not "trade secrets" but never belonged to Vail Health in the first place—they belonged to RPC-Vail/Proaxis. This sham litigation continues to this day for the purpose of excluding Winninger, Sports Rehab and David Cimino from the physical therapy market in the relevant geographic

Brown has information regarding the fact that at no time from January 8, 2008 to May 2012, was Winninger ever employed by Vail Health, as its attorneys have repeatedly suggested and implied in court filings. During that period, Winninger was employed by RPC-Vail/Proaxis, as was Brown at relevant times.

Brown has information regarding how RPC-Vail/Proaxis files and documents were created and maintained on the Proaxis shared drive. He has information regarding the degree of confidentiality and protections that RPC-Vail/Proaxis administered with respect to those files and documents, and the approximate number of people who had access to the information. For example, access to documents

and files was not limited to the physical therapy and medical staffs.  Clerical employees such as receptionists, secretaries and administrative staff all had access to the "file folders" of each individual physical therapist.  And Proaxis physical therapists had access to the file folders of every other physical therapist.  So the RPC-Vail/Proaxis file and document keeping system was completely open and all of this was possible because none of the information was password-protected.

As for documents such as patient "protocols," these hard-copy patient handouts were stored in an open cabinet that had multiple physical therapy protocols for as many as 40 different surgeries.  These handouts were widely available to all RPC-Vail/Proaxis physical therapists and were almost universally handed out to RPC-Vail/Proaxis physical therapy patients at the time of surgery.  So literally thousands or tens of thousands of patients were provided this information.  If a patient was inadvertently not provided a particular protocol by a physical therapist, the front-desk or clerical personnel were instructed to provide the patient with the information, either in the form of the hard-copy handout or via e-mailed digital attachment.  In addition to RPC-Vail/Proaxis employees and patients, numerous other categories of people were provided this information.  They included practicing local physicians, visiting physicians, medical professionals, medical residents, practicing local physicians, medical students, and visiting physical therapy faculty from colleges and universities around the country and internationally.  So virtually anyone from outside of RPC-Vail/Proaxis had access to what Vail Health now claims are its "trade secrets," as well as everyone inside RPC-Vail/Proaxis.

Brown has information concerning the fact that a significant portion of RPC-Vail/Proaxis's business had no connection to either the lease, shared computer drive, billing, or anything else associated with Vail Health.  RPC-Vail/Proaxis's offices had their own documents and files that they created, stored and managed.  So as suggested above, the South Carolina and Denver offices were essentially separate from Vail Health.

In short, Brown has information that most of the information in Winninger's RPC-Vail/Proaxis file folder contained information that was generally

| | | |
|---|---|---|
| | | available to the public and the medical and physical therapy communities.  He has knowledge that the information was widely available and/or dispersed among physical therapists and employees throughout the RPC-Vail/Proaxis organization, and there were no special designations on any of the files or documents such as "trade secret," "confidential," etc.<br><br>Brown has information regarding when physical therapists terminated their employment with RPC-Vail/Proaxis it was generally understood that they took their personal file folders with them.  RPC-Vail/Proaxis knew of this practice and did not discourage physical therapists from taking their personal file folders.  Among the reasons for Proaxis's policy is that: (a) the information was widely known and dispersed, (b) the information had no commercial value, and (c) there was no protection that had been placed on the files or documents.<br><br>It is also believed that Brown has information regarding the contractual relationships with insurers, the creation and maintenance of Vail Health's market power and the geographic and product market of physical therapy services, as well as Vail Health's market share of those services. |
| 8. | Michael Shannon<br>100 Saint Paul Street<br>Suit 800<br>Denver, CO 80206<br>(720) 284- | Michael Shannon was a member of the Board of Directors of Vail Health during the period 2012 to approximately 2019 and is believed to have knowledge of the facts disclosed in the section of these Rule 26(a)(1) Disclosures relating to Vail Health Board of Directors generally.  It is believed that in certain instances Shannon much more direct and detailed information that perhaps certain other Board members have.<br><br>It is believed that Shannon has information relating to the contractual relationships Vail Health had with RPC-Vail/Proaxis prior to October 31, 2012., as well as after the termination of the contractual relationship.  He has knowledge of the financial relationships Vail Health had with RPC-Vail/Proaxis, such as billing rates, costs, profitability for the period prior to October 31, 2012.<br><br>Shannon is believed to have knowledge as to the reasons Vail Health terminated its contractual relationships with RPC-Vail/Proaxis and why those relationships ended on October 31, 2012.  As a |

Board member, Shannon has knowledge of the fact that Vail Health's intent in terminating RPC-Vail/Proaxis as of October 31, 2012 was to create a monopoly in the physical therapy service market in the relevant geographic market. The specific intent in creating a monopoly was to use Vail Health's market power to raise prices and exclude competition in the physical therapy service market in the relevant geographic market.

Shannon has direct and personal information relating the attempts by Vail Health in and around 2015-2017 to form a joint venture (the "JV") with Steadman and VSO for the purpose of providing physical therapy services. Vail Health attempted to consummate this combination with the then specific intent to "lock-up" Vail Health's sources for the supply of orthopedic patients for its physical therapy clinic.

Shannon also has information relating to the leasing arrangement that Vail Health negotiated and consummated with Steadman in approximately 2017. This lease contains a restrictive covenant that prohibits Steadman from performing physical therapy in the hospital building located 181 West Meadow Drive, Vail. This lease arrangement effectively creates an exclusive-dealing arrangement with Steadman and is designed to steer Steadman's orthopedic patients who require physical therapy to Vail Health. Shannon has knowledge with respect to numerous other contractual relationships between Vail Health and Steadman that were and are intended by Vail Health to stabilize and maintain its monopoly power in the physical therapy market in the relevant geographic market.

Shannon has knowledge that Vail Health maintains monopoly power for hospital services in general in the Vail Valley geographic market. And he has knowledge that outpatient care in the form of physical therapy constitutes a significant part of Vail Health's revenues and profits, which are above what would be expected in a competitive market. Shannon knows that Vail Health uses its monopoly for hospital services in general to generate supra-competitive revenues and profits, which are then poured into above-market salaries for physical therapists who are, of course, precluded from terminating their employment with Vail Health by illegal non-compete/non-solicitation covenants in their employment contracts. The combination of the

two give Vail Health an illegal anticompetitive advantage that increases its monopoly power and has a deleterious effect on competition.

Shannon has direct and personal knowledge of false and defamatory statements that he, Kirchner and others made against Winninger and Sports Rehab, the publication of those statements, the fact that he conducted no investigation as to the truth or falsity of the statements, including the fact that he has testified under oath that he relied on Janet Savage and her law firm to conduct any investigation that was necessary.  Shannon has knowledge as to the purpose of the defamatory statements, including the intent to drive Winninger and Sports Rehab out of business; communications with Dr. Marc Philippon, Steadman CEO Daniel Drawbaugh, and Steadman Philippon Research Institute ("SPRI") Board member Al Perkins about Winninger and Sports Rehab; the purpose of the October 13, 2015 meeting between O'Brien and Winninger; the purpose of the January 8, 2016 meeting between Brown and Winninger; communications with Kirchner, Brown, and others related to Winninger and Sports Rehab; the defenses in the Eagle County Answer and allegations in the Counterclaim.

Shannon is expected to testify regarding conversations he had with Dr. Philippon of Steadman regarding Winninger.  Specifically, during 2016 and into 2017, Shannon told Dr. Philippon that Winninger had stolen over 3,000 patient files from Vail Health. He further told Dr. Philippon that The Steadman Clinic should not be doing business with Winninger or referring patients to Winninger. Shannon also texted Dr. Philippon about Winninger.  During mid-2017, Shannon also admitted to Drawbaugh that Vail Health did not have any proof that Winninger stole any patient file but continued to assert to Dr. Philippon that she may have done been involved in the theft.

Shannon undertook these acts as the Chairman of the Vail Health Board of Directors and did so to exclude Winninger and Sports Rehab from the physical therapy market in the relevant geographic market to maintain and perpetuate Vail Health's monopoly power in the relevant markets.

Shannon has knowledge that Vail Health maintains a

| | | |
|---|---|---|
| | | monopoly for hospital services in the Vail Valley. |
| 9. | Janet Savage<br>Davis Graham & Stubbs LLP<br>1550 17th Street, Suite 500<br>Denver, CO 80202<br>Phone: 303.892.7341 | Savage has direct and personal knowledge that the reason Vail Health launched its destructive defamatory campaign against Winninger and Sports Rehab was because she and her client, including Nicholas Brown and Michael Shannon, thought that Winninger and Sports Rehab would establish "a second Howard Head" to provide physical therapy services in the relevant geographic market.  Vail Health was concerned that Winninger and Sports Rehab would constitute formidable competition for Vail Health, and thus sought to destroy their reputation and business.  Savage, along with Kirchner, Nicholas Brown, and Michael Shannon was a primary participant in this campaign to destroy Winninger and Sports Rehab.<br><br>Savage supplied fabricated "evidence" to the Vail Police Department and Eagle County District Court Office, including seeking 3,000 felony counts be filed against Cimino; failure to disclose material information to the Vail Police Department and Eagle County District Attorney that Cimino voluntarily produced documents in a folder entitled "Attn VVMC docs from personal computer"; fabrication of evidence that Vail Health owned all RPC-Vail/Proaxis documents; fabrication of evidence that the RPC-Vail/Proaxis documents included trade secrets and confidential information "owned" by Vail Health; and the creation of Exhibit 8 that was provided to the Vail Police Department and Eagle County District Attorney as evidence of the Vail Health files Cimino purportedly stole.<br><br>Savage has been the primary architect of the sham litigation in which Vail Health has engaged against Winninger and Sports Rehab in Eagle County District Court.  Savage has direct and personal knowledge of Vail Health's false and malicious claims that Winninger was involved with the solicitation of Vail Health patients and "stole" Vail Health's trade secrets, confidential information, and patient files, all of which was done without conducting any investigation whatsoever.  Savage's clients—Vail Health and Kirchner, as well as Vail Health officer Brown and Chairman of the Board of Directors Michael Shannon have all testified that they did not conduct any investigation into these false and malicious allegations, but that they relied on Savage to perform the necessary investigation and verification of facts that would be legally necessary. |

As the orchestrator of this sham litigation, Savage has direct and personal knowledge that: (1) Vail Health did not own the "Howard Head" physical therapy clinic before October 31, 2012—RPC-Vail/Proaxis did; (2) Vail Health did not create the documents at issue in the state court case pending in Eagle County—RPC-Vail/Proaxis created them; (3) the documents at issue in the state court case in Eagle County were not "owned" by Vail Health, they were owned by RPC-Vail/Proaxis; (4) the documents at issue in the state court action pending in Eagle County were not "trade secrets" or "confidential"—they were and are possessed by tens of thousands of people around the country and the world; (5) Winninger did not "steal" documents from RPC-Vail/Proaxis—Vail Health illegally converted the documents to its own use; (6) the patients who Winninger treated were those of RPC-Vail/Proaxis—not Vail Health; (7) Vail Health did not render any physical therapy treatment to *any* physical therapy patient before October 31, 2012—it legally could not do so because it was not licensed to practice physical therapy prior to November 1, 2012; (8) Winninger did not steal trade secrets or confidential information—she took educational materials that had been given to her during her employment with RPC-Vail/Proaxis; (9) Winninger did not steal Vail Health PHI—she did not even know that any such documents were among the documents to which she thought she was entitled to take. So virtually all the relevant facts presented to the Eagle County court are knowingly untrue.

Savage has direct and personal knowledge that in representing, arguing, and otherwise advancing these knowingly false statements to the Eagle County court, Savage signed pleading, memoranda and other court documents that were in violation of the Colorado Rules of Civil Procedure. Savage also suborned Nicholas Brown, who was a Rule 30(b)(6) representative deponent on behalf of Vail Health, to testify falsely at the deposition when he was under oath to tell the truth. Savage, personally or at her direction, instructed, persuaded, or otherwise induced Brown to testify falsely that certain documents had been created or owned by Vail Health and constituted trade secrets under CUTSA. In fact, Savage and Brown both knew that the documents did not and could not possibly meet the requirements of CUTSA because many or most of the documents at issue had been created by RPC-

| | | |
|---|---|---|
| | | Vail/Proaxis years or even decades prior to the deposition and had actually been wrongfully converted by Vail Health from RPC-Vail/Proaxis.  In addition, Brown and likely Savage had actual knowledge that the documents to which Brown testified under oath had been widely disseminated to hundreds or even thousands of people around the country and indeed the world.  As a result, those documents could not possibly be construed as being "secret" or "confidential."<br><br>Winninger and Sports Rehab reserve the right to seek disqualification because Savage is a material witness in this case. |
| 10. | Lisa Herota<br>Compliance Officer<br>Finance Department<br>Vail Health<br>180 South Frontage Road West<br>Vail, CO  81657 | Herota is believed to have knowledge of accounting and billing by Vail Health for physical therapy services for the relevant period, including when RPC-Vail/Proaxis rendered physical therapy services.  She is believed to have knowledge of the termination of RPC-Vail/Proaxis, and the transition of those services to Vail Health; any financial reports or documents related to the physical therapy services during the relevant period; all costs associated with physical therapy services during the relevant period; all communications with Medicare, insurers, or any others related to any audits of physical therapy services<br><br>Herota is believed to have knowledge of the storage of billing information and billing databases at Vail Health, including the information relating to the physical therapy services performed during times relevant to this action; all work performed related in any way to documents in Cimino's or Winninger's possession; communications with the U.S. Department of Health and Human Services (including by or through Vail Health's attorney Terry Cipoletti) related to the Office of Civil Rights investigation into Vail Health's HIPAA compliance related to both the Cimino documents and Winninger documents Herota has knowledge relating to her failure, and that of Vail Healthe and its legal counsel, to conduct a search for Medicare and healthcare insurer claims forms and data that was ordered by Special Master Terry Ruckriegle. |
| 11. | Brenda Beairsto<br>Vail Health<br>Billing Department<br>180 South Frontage Road West<br>Vail, CO  81657<br>Phone:  970.476.2451 | Beairsto is believed to have knowledge relating to submissions, maintenance, and storage of billing information, including 835s and 837s, or any other claim submissions to Medicare or any insurer or remittances from Medicare or any insurer; use of billing software and any clearinghouse, process of |

| | | |
|---|---|---|
| | | billing and rates charged, all reports generated for billing, accounting, management, or any other department, all topics relate to physical therapy services during the relevant period including when RPC-Vail/Proaxis rendered physical therapy services during the relevant time period, the termination of RPC-Vail/Proaxis, the transition from RPC-Vail/Proaxis to Vail Health; any audits by Medicare, insurers, or any other person working on their behalf related to insurance claims submitted for physical therapy services during the relevant period |
| 12. | Gretchen Ebbeson Vail Health Billing Department 180 South Frontage Road West Vail, CO 81657 Phone: 970.476.2451 | Ebbeson is believed to have knowledge of the purported search for and storage of billing information and billing databases; all work performed related in any way to documents in Cimino's or Winninger's possession; employment with RPC-Vail/ Proaxis; termination of RPC-Vail/Proaxis and transition from RPC-Vail/Proaxis to Vail Health. |
| 13. | Jeff Montgomery Formerly Vail Health IT Department | Montgomery is believed to have knowledge of storage and billing information and billing databases of Vail Health; maintenance of billing information; methods of production of billing information, all topics of which relate to physical therapy services during the relevant period, which includes when RPC-Vail/Proaxis rendered physical therapy services during the relevant period. |
| 14. | Vail Health Outside Legal Counsel— 2004-2012 | Attorneys who represented Vail Health and drafted the 2004 Service and Use Agreement (the "Service Agreement") between Vail Health and RPC-Vail have direct knowledge as to all of the principal provisions of the Service Agreement, including the ownership of the information generated through the provision of physical therapy services performed by RPC-Vail, the nature of the intangible property and computer services provided to RPC-Vail/Proaxis, etc., and how Vail Health complied with Medicare and Medicare reporting requirements and contracts with health care insurers.

These attorneys would also have knowledge as to how Vail Health documented the storage, maintenance, and/or acquisition of the purported intellectual property, including physical therapy "trade secrets," that have been fraudulently claimed to exist by Vail Health in the state court action pending in Eagle County but were actually created by RPC-Vail/Proaxis long prior to the termination of |

| | | |
|---|---|---|
| | | RPC-Vail/Proaxis, effective October 31, 2012.<br><br>Vail Health is also reported to have outside legal counsel representing it regarding the demand by RPC-Vail/Proaxis to return all intangible property created and owned by RPC-Vail/Proaxis prior to October 31, 2021, and these attorneys would have knowledge of Vail Health's conversion of that property and the reasons for doing so.<br><br>These attorneys may also have knowledge as to how Vail Health accounted for these assets for tax reporting purposes on IRS Form 990.  They would have relevant documents and files relating to their engagement(s) during relevant periods of time.<br><br>Outside attorneys would also have drafted and have knowledge of and would have drafted the employment agreements that Vail Health entered into with physical therapists that it hired beginning in approximately June 1, 2012 and thereafter. |
| 15. | Vail Health Outside Legal Counsel— 2014-2017 | It is believed that Vail Health may have engaged outside legal counsel during the approximate period of 2014 to 2018 regarding a possible creation of a JV with Steadman and VSO.   These attorneys may have knowledge with respect to analyses of and discussions with Vail Health relating to negotiations with Steadman and VSO and/or their attorneys regarding the possible JV to provide physical therapy services.  These discussions and negotiations may have began as early as 2014 (or earlier) and extended through 2017 (or later).  Plaintiffs, however, do not have the precise time parameters relating to the proposed JV as it apparently was never consummated.  Plaintiffs do not know the identity of the attorneys who may have been involved in this process on behalf of Vail Health.<br><br>These attorneys would have relevant documents and files relating to their engagement(s) during relevant periods of time.  Plaintiffs intend to serve subpoenas for documents and information relating these subjects.<br><br>Vail Health may have engaged outside legal counsel during this same period who may also have knowledge as to how Vail Health documented the storage, maintenance, and/or acquisition of any intellectual property, including purported physical therapy "trade secrets," that have been fraudulently |

| | | |
|---|---|---|
| | | claimed by Vail Health but were developed by RPC-Vail/Proaxis prior to the time of the termination of RPC-Vail/Proaxis, effective October 31, 2012. The attorneys may have knowledge as to how Vail Health accounted for these assets for tax reporting purposes on IRS Form 990.<br><br>These attorneys would have relevant documents and files relating to their engagement(s) during relevant periods of time. Plaintiffs intend to serve subpoenas for documents and information relating these subjects. |
| 16. | Vail Health Outside Legal Counsel—2004-2020 | Vail Health likely would have engaged outside legal counsel to provide it with legal advice regarding HIPAA and Medicare Compliance, in addition to the subjects set forth above. These attorneys would have relevant documents and files relating to any such engagement during relevant periods of time.<br><br>Plaintiffs intend to serve subpoenas for documents and information relating these subjects. |
| 17. | Vail Health Auditors, including, but not limited to,<br>Baker Tilly Virchow Krause, LLP<br>7887 E. Belleview Avenue<br>Denver, CO 80111<br>303.725.8898 | The accounting firm(s) who performed the financial audits with respect to Vail Health revenues, expenses and capital accounts and who prepared int financial statements, would have direct knowledge of the accounting methods and practices employed by Vail Health. They would have relevant audit work papers and files relating to the period 2004-2020. These auditors would have relevant documents and files relating to their engagement(s) during relevant periods of time. Plaintiffs intend to serve subpoenas for documents and information relating these subjects. |
| 18. | United Healthcare<br>9900 Bren Road<br>Minnetonka, MN 55343<br>800.328.5975 | One or more representatives of United Healthcare ("UHC") are believed to have knowledge of Vail Health's prices over time. They are believed to have knowledge of Vail Health's overall market power in the relevant geographic market for hospital services generally, and out-patient services such as physical therapy in particular. UHC representatives are believed to have knowledge as to whether there are alternative medical providers to Vail Health in the relevant geographic and product markets.<br><br>UHC and its representatives are believed to have knowledge of, and documents and data pertaining to, billing and claims forms, data, and information relating to the physical therapy services rendered by RPC-Vail/Proaxis prior to November 1, 2012 that |

| | | were submitted to UHC for payment. |
|---|---|---|
| 19. | Anthem/BlueCross and BlueShield of Colorado<br>P.O. Box 105187<br>Atlanta, GA 30348-5182 | One or more representatives of Anthem/BlueCross of Colorado("Anthem/BC") are believed to have knowledge of Vail Health's prices over time. Anthem/BC representatives are believed to have knowledge of Vail Health's overall market power in the relevant geographic market for hospital services generally, and out-patient services such as physical therapy in particular.  Anthem/BC representatives are believed to have knowledge as to whether there are alternative medical providers to Vail Health in the relevant geographic and product markets.<br><br>Anthem/BC and its representatives are believed to have knowledge of, and documents and data pertaining to, billing and claims forms, data, and information relating to the physical therapy services rendered by RPC-Vail/Proaxis prior to November 1, 2012 that were submitted to Anthem/BC for payment. |
| 20. | Humana, Inc.<br>500 West Main Street<br>Louisville, KY | One or more representatives of Humana, Inc. ("Humana") are believed to have knowledge of Vail Health's prices over time.  Humana representatives are believed to have knowledge of Vail Health's overall market power in the relevant geographic market for hospital services generally, and out-patient services such as physical therapy in particular.  Humana representatives are believed to have knowledge as to whether there are alternative medical providers to Vail Health in the relevant geographic and product markets.<br><br>Humana and its representatives are believed to have knowledge of, and documents and data pertaining to, billing and claims forms, data, and information relating to the physical therapy services rendered by RPC-Vail/Proaxis prior to November 1, 2012 that were submitted to Humana for payment. |
| 21. | Kaiser Permanente<br>Ordway Building<br>One Kaiser Plaza<br>Oakland, CA 94612 | One or more representatives of Kaiser Permanente ("Kaiser") are believed to have knowledge of Vail Health's prices over time.  Humana representatives are believed to have knowledge of Vail Health's overall market power in the relevant geographic market for hospital services generally, and out-patient services such as physical therapy in particular.  Kaiser representatives are believed to have knowledge as to whether there are alternative medical providers to Vail Health in the relevant geographic and product markets. |

| | | Kaiser and its representatives are believed to have knowledge of, and documents and data pertaining to, billing and claims forms, data, and information relating to the physical therapy services rendered by RPC-Vail/Proaxis prior to November 1, 2012 that were submitted to Kaiser for payment. |
|---|---|---|
| 22. | Aetna, Inc.<br>151 Farmington Avenue<br>Hartford, CT 06156 | One or more representatives of Aetna, Inc. ("Aetna") are believed to have knowledge of Vail Health's prices over time.  Aetna representatives are believed to have knowledge of Vail Health's overall market power in the relevant geographic market for hospital services generally, and out-patient services such as physical therapy in particular.  Aetna representatives are believed to have knowledge as to whether there are alternative medical providers to Vail Health in the relevant geographic and product markets.<br><br>Aetna and its representatives are believed to have knowledge of, and documents and data pertaining to, billing and claims forms, data, and information relating to the physical therapy services rendered by RPC-Vail/Proaxis prior to November 1, 2012 that were submitted to Aetna for payment. |
| 23. | Rocky Mountain Health Plans<br>2775 Crossroads Boulevard<br>Grand Junction, CO 81506-8712<br>970.244.7798 | One or more representatives of Rocky Mountain Health Plans ("RMPH") are believed to have knowledge of Vail Health's prices over time.  RMPH representatives are believed to have knowledge of Vail Health's overall market power in the relevant geographic market for hospital services generally, and out-patient services such as physical therapy in particular.  RMPH representatives are believed to have knowledge as to whether there are alternative medical providers to Vail Health in the relevant geographic and product markets.<br><br>RMPH and its representatives are believed to have knowledge of, and documents and data pertaining to, billing and claims forms, data, and information relating to the physical therapy services rendered by RPC-Vail/Proaxis prior to November 1, 2012 that were submitted to RMPH for payment. |
| 24. | John Hannigan<br>Regional Administrator<br>Centers for Medicare and Medicaid Services<br>1961 Stout Street<br>Suite 8148<br>Denver, CO 80294<br>303.844.7118 | One or more representatives of Medicare are believed to have knowledge of Vail Health's prices over time.  Medicare representatives are believed to have knowledge of Vail Health's overall market power in the relevant geographic market for hospital services generally, and out-patient services such as physical therapy in particular.  Medicare representatives are believed to have knowledge as to whether there are alternative medical providers to Vail Health in the relevant geographic and product |

| | | markets.<br><br>Medicare and its representatives are believed to have knowledge of, and documents and data pertaining to, billing and claims forms, data, and information relating to the physical therapy services rendered by RPC-Vail/Proaxis prior to November 1, 2012 that were submitted to Medicare for payment. Medicare representatives are believed to have documents and knowledge relating to Vail Health's compliance with the statutes, regulations, and guidelines governing health care providers participating in Medicare and Medicaid programs. |
|---|---|---|
| 25. | Novitas Solutions, Inc.<br>Medicare Administrative Contactor, Region JH<br>532 Riverside Avenue<br>Jacksonville, FL 32202 | Novitas Solutions, Inc., is the current Medicare Administrative Contractor for Colorado, which is within Medicare Region JH (the "MAC") and is believed to have historical and current data, information, and knowledge of Vail Health's prices over time.  Representatives of the MAC are believed to have information and knowledge of Vail Health's overall market power in the relevant geographic market for hospital services generally, and out-patient services such as physical therapy in particular.  Representatives of the MAC are believed to have data, information, and knowledge as to whether there are alternative medical providers to Vail Health in the relevant geographic and product markets.<br><br>MAC and its representatives are believed to have data knowledge of, and documents and data pertaining to, billing and claims forms, data, information, and knowledge relating to the physical therapy services rendered by RPC-Vail/Proaxis prior to November 1, 2012 that were submitted to Medicare for payment.  The MAC is believed to have data, information and knowledge relating to Vail Health's compliance with the statutes, regulations, and guidelines governing health care providers participating in Medicare and Medicaid programs. |
| 26. | Meghana Shah<br>Office Of Civil Rights<br>1560 Broadway,<br>Suite 825<br>Denver, CO 80202<br>303.894.2997 | Ms. Shah has knowledge of the investigation of Vail Health's computer and software security systems conducted by the Office of Civil Rights ("OCR") and Vail Health's non-compliance with security protocols and rule of HIPAA. |
| 27. | Terry Cipoletti<br>Caplan & Earnst | Cipoletti has knowledge of the investigation of Vail Health's computer and software security systems |

| | | |
|---|---|---|
| | Suite 100<br>3107 Iris Avenue<br>Boulder, CO 80301<br>303.443.8010 | conducted by the OCR and Vail Health's chronic and long-standing non-compliance with security protocols and rule of privacy under HIPAA. |
| 28. | Daniel Drawbaugh<br>Chief Executive Officer<br>The Steadman Clinic<br>181 West Meadow Drive<br>Vail, Co 81657<br>970.476.2453 | Drawbaugh is believed to have knowledge of Vail Health's prices, costs, and profit margins over time, including those statistics for physical therapy services. Drawbaugh has knowledge as to how Vail Health uses anticompetitive conduct to leverage and maximize its market power in the relevant geographic market.<br><br>Drawbaugh has knowledge of Steadman's geographic market for orthopedic medical services and Vail Health's geographic market for hospital services generally and physical therapy services in particular. He has knowledge that Vail Health's relevant geographic market extends no further than about 18-miles, or 30-minutes of diving time East from its Vail Health hospital base in Vail, or alternatively West from the town of Vail to the outer boundaries of Eagle County.<br><br>Drawbaugh has direct and personal knowledge relating the attempts by Vail Health to maintain and enhance its monopoly for hospital services generally and physical therapy services in particular during a period of time believed to be approximately 2014-2017. This attempt to further enhance its monopoly power took the form a JV Steadman and VSO for the purpose of providing physical therapy services. Vail Health attempted to consummate this combination with the then specific intent to contractually "lock-up" Vail Health's sources for the supply of orthopedic patients for its physical therapy clinic.<br><br>Drawbaugh has direct knowledge of the 2017 leasing arrangement that Steadman negotiated with Vail Health and Steadman has documents relating to that leasing arrangement. This lease contains a restrictive covenant that prohibits Steadman from performing physical therapy in the hospital building located 181 West Meadow Drive, Vail. This lease arrangement prohibits competition and effectively creates an exclusive dealing arrangement with Steadman to steer physical therapy patients to Vail Health, and for Vail Health to steer orthopedic patients to Steadman physicians. Drawbaugh has knowledge of numerous other contractual relationships between Vail Health and Steadman that are intended by Vail Health to stabilize and maintain |

| | | |
|---|---|---|
| | | its monopoly power in the orthopedic and physical therapy markets in the relevant geographic market.<br><br>Drawbaugh has knowledge of the false and defamatory statements made by Kirchner and other directors, officers, and employees of Vail Health about Winninger and Sports Rehab; the actions taken by Steadman and SPRI in response to those statements; Winninger's reputation and standing as a physical therapist in the Vail Valley.<br><br>More specifically with respect to defamatory statements, Drawbaugh is expected to testify about statements that were made to him by Doris Kirchner regarding Winninger.  Kirchner told him that Sports Rehab was taking Vail Health physical therapy patients from it illegally. Kirchner told him that Winninger had stolen over 3,000 patient files from Vail Health.  Drawbaugh is expected to testify that he asked Kirchner to provide him with proof that Winninger stole Vail Health patient files, although Kirchner never supplied him or anyone else at Steadman Clinic with proof that any such theft occurred.<br><br>Drawbaugh is expected to further testify that in light of Vail Health's allegations, physicians at Vail Health determined that they should discontinue their practice of referring patients to Winninger and Steadman withdrew from its consulting contracts with Winninger regarding health initiative.<br><br>Drawbaugh will also testify to the development and decision not to proceed with the Wellness Program given the false statements that Kirchner and others had made against Winninger.<br><br>Drawbaugh is also expected to testify that in mid-2017, Shannon admitted to that Vail Health did not have any proof that Winninger stole any patient files but continued to assert to Drawbaugh that she may have done been involved in the theft. |
| 29. | Marc J. Philippon, M.D.<br>The Steadman Clinic<br>181 West Meadow Drive<br>Vail, Co 81657<br>970.476.2453 | Dr. Philippon has knowledge of Steadman's geographic market for orthopedic medical services and Vail Health's geographic market for hospital services generally and physical therapy services in particular.  He has knowledge that Vail Health's relevant geographic market extends no further than about 18-miles, or 30-minutes of diving time East |

|  |  | from its Vail Health hospital base in Vail, or alternatively West from the town of Vail to the outer boundaries of Eagle County.<br><br>Dr. Philippon has direct and personal knowledge relating the attempts by Vail Health to maintain and enhance its monopoly for hospital services generally and physical therapy services in particular during a period of time believed to be approximately 2014-2017.  This attempt to further enhance its monopoly power took the form a JV with Steadman and VSO for the purpose of providing physical therapy services.  Vail Health attempted to consummate this combination with the then specific intent to contractually "lock-up" Vail Health's sources for the supply of orthopedic patients to be funneled to its physical therapy clinic.<br><br>Dr. Philippon is believed to have knowledge of and Steadman has documents relating to the leasing arrangement that Vail Health negotiated and consummated with Steadman in approximately 2017.  This lease contains a restrictive covenant that prohibits Steadman from performing physical therapy in the hospital building located 181 West Meadow Drive, Vail.  This lease arrangement effectively creates an exclusive dealing arrangement with Steadman to steer physical therapy patients to Vail Health.  Dr. Philippon has knowledge of numerous other contractual relationships between Vail Health and Steadman that are intended by Vail Health to stabilize and maintain its monopoly power in the physical therapy market in the relevant geographic market.<br><br>Dr. Philippon has knowledge of the false and defamatory statements made by Michael Shannon and perhaps associated with Vail Health about Winninger and Sports Rehab; the actions taken by Steadman and SPRI in response to those statements; Winninger's reputation and standing as a physical therapist in the Vail Valley. |
| 29. | The Steadman Clinic<br>c/o Daniel Drawbaugh<br>Chief Executive Officer<br>181 West Meadow Drive<br>Vail, CO 81657<br>970.476.2453 | Steadman has filed and documents relating to it relationships with Vail Health with respect to the subjects identified above.  Plaintiffs have produced to Vail Health those files and documents that were produced to Plaintiffs by Steadman in the state court action pending in Eagle County. |
| 30. | Michael Horwith | Mr. Horwith has knowledge, files and documents relating to the forensic analysis he performed as the |

| | | interdependent court-appointed forensic expert in the state court action pending in Eagle County.  He has knowledge that neither Lindsay Winninger, nor anyone associated with Sports Rehab received any of the documents that Cimino downloaded from Vail Health in December 2015. |
|---|---|---|
| 31. | Davis Graham & Stubbs LLP<br>David, Graham & Stubbs<br>1550 17th Street, Suite 500<br>Denver, CO  80202<br>Phone:  303.892.7341 | ThIs law firm has relevant documents and files relating to the representation of Vail Health and other Defendants with respect to its investigation of the truth of the facts the underpinned the false statements made by Doris Kirchner and Michael Shannon, who testified that they were relying upon the investigation of the truth by Janet Savage and other David, Graham & Stubbs lawyers.  Davis Graham also has information about the creation of Exhibit 8, which it provided to the Vail Police Department and the Eagle County District Attorney on behalf of Vail Health as evidence of the Vail Health documents purportedly stolen by Cimino, as well as the failure to disclose that Cimino voluntarily returned documents from his computer that he obtained during his employment with RPC-Vail/Proaxis.  Plaintiffs intend to serve a subpoena for documents and information relating these subjects. |
| 32. | John McHugh<br>Reilly LLP<br>1700 Lincoln Street, Suite 2400<br>Denver, CO 80203 | In the Eagle County action, McHugh, in representing Kirchner, argued and was a co-equal participant with Savage, in falsely and maliciously claiming that Vail Health owned thousands of "trade secrets" when McHugh, Kirchner, Brown and Savage had actual knowledge that :(1) the thousands of documents that Vail Health designated and represented to the Eagle County District Court as trade secrets did not constitute trade secrets under CUTSA, and had long-since been widely disseminated and known throughout the United States and indeed the world. (2) McHugh and his client Kirchner had actual knowledge that the documents and information that Vail Health claimed in the Eagle Count District Court proceedings were trade secrets could never have qualified as trade secrets under CUTSA, and they never belonged to Vail Health in the first place—they belonged to RPC-Vail/Proaxis.  McHugh was a direct participant in that sham litigation, which continues to this day for the purpose of excluding Winninger, Sports Rehab and David Cimino from the physical therapy market in the relevant geographic market.<br><br>A very significant lie was made last fall when McHugh participated with Savage in representing to the Special Master that Winninger must be compelled to produce the 2012 documents because |

| | | Defendants needed to confirm the purported "trade secrets" that were allegedly "stolen" by Winninger. McHugh and his co-counsel knew these representations about supposed "trade secrets" were false.  They knew that Vail Health did not "own" the "trade secrets McHugh knew that there were no trade secrets at all.  This is but another example of Defendants sham litigation in which McHugh participated. |
|---|---|---|
| 33. | David Cimino<br>Vail, CO | Cimino has knowledge of the letter agreement between Cimino and Vail Health; Cimino's resignation and Vail Health's response; the information on the USB devices; the certification Cimino provided; the falsity of Vail Health's statements, particularly that Cimino provided patient or confidential information to Winninger or others at Sports Rehab; the location of the information downloaded by Cimino and Vail Health's security protocols; Vail Health's practice of allowing  physical therapists to see patients after hours; communications with physical therapists, including O'Brien, about Winninger and Sports Rehab |
| 34. | Luke O'Brien<br>Formerly Vice President Therapy Operations<br>Vail Health<br>His precise home address is unknown, but he is believed to live in<br>The Vail Valley<br>Phone:  970.476.2451 | O'Brien has knowledge of Vail Health's prices, costs, and profit margins over time and how Vail Health has used and continues to use its monopoly power for hospital services generally as to enhance its monopoly power specific hospital services such as outpatient care general, and physical therapy in particular.  In other words, O'Brien knows how Vail Health's wholistic monopolistic position is used to strengthen its monopoly position in physical therapy.<br><br>O'Brien has knowledge of the financial condition and financial statements such as income statements, balance sheets, statement of cash flow of Vail Health as a reporting entity, and knowledge of the financial contributions that the physical therapy clinic makes to Vail Health's overall financial profitability and asset structure.  In his positions as a key manager of Vail Health's physical therapy clinic, O'Brien has detailed knowledge of all aspects of the physical therapy clinic since at least November 1, 2012, and it is believed that he has knowledge of how the physical therapy services performed by RPC-Vail/Proaxis prior to November 1, 2012 contributed to Vail Health's profitability and overall financial performance.<br><br>O'Brien has knowledge of Vail Health's geographic market for hospital services generally and physical |

therapy services in particular.  He has knowledge that Vail Health's relevant geographic market extends no further than about 18-miles, or 30-minutes of diving time East from its Vail Health hospital base in Vail, or alternatively West from the town of Vail to the outer boundaries of Eagle County.  As one of the lead managers of the physical therapy clinic of Vail Health since the spring or summer of 2012.  O'Brien also has knowledge of the geographic limitations of the hospital's licenses and the licenses required under Colorado law for providing physical therapy services at times relevant to this case.

O'Brien is believed to have knowledge of Vail Health's contractual relationships with health care insurers and payors such as United Health Care, BlueCross/BlueShield, Kaiser Permanente, and others.  O'Brien has knowledge of the fraudulent and monopolistic pricing arrangements that Vail Health has had and continues to have with insurers and payors.  He has knowledge of the costs of providing the physical therapy services, and the supra-competitive profits Vail Health has realized and continues to realize from those arrangements.

O'Brien has direct and personal knowledge that Vail Health maintains monopoly power for physical therapy services in the Vail Valley geographic market, and he is believed to have knowledge of Vail Health's monopoly power for hospital services in general.  He has knowledge that outpatient care in the form of physical therapy constitutes a significant part of Vail Health's revenues and profits, which are above what would be expected in a competitive market.  O'Brien knows that Vail Health uses its monopoly for hospital services in general to generate supra-competitive revenues and profits, which are then poured into above-market salaries for physical therapists who are, of course, precluded from terminating their employment with Vail Health by illegal non-compete/non-solicitation covenants in their employment contracts.  The combination of the two give Vail Health an illegal anticompetitive advantage that increases its monopoly power, increases its revenues and supra-competitive profitability, and has a deleterious effect on competition.

O'Brien as information relating to the contractual relationships Vail Health had with RPC-Vail/Proaxis prior to October 31, 2012., as well as after the

termination of the contractual relationships.  O'Brien has knowledge of the financial relationships Vail Health had with RPC-Vail/Proaxis, such as billing rates, costs, profitability for the period prior to October 31, 2012.  O'Brien also had direct and personal knowledge of the fact that the RPC-Vail/Proaxis documents at issue in the Eagle County action were created by RPC-Vail/Proaxis, at the sole expense of RPC-Vail/Proaxis, and that Vail Health and its predecessors had nothing to do with the creation of those documents,

O'Brien has information regarding how RPC-Vail/Proaxis files and documents were created and maintained on the shared drive.  He has information regarding the degree of confidentiality and protections that RPC-Vail/Proaxis administered with respect to those files and documents and the approximate number of people who had access to the information.  For example, access to documents and files was not limited to the physical therapy and medical staffs.  Clerical employees such as receptionists, secretaries and administrative staff all had access to the "file folders" of each individual physical therapist.  And RPC-Vail/Proaxis physical therapists had access to the file folders of every other physical therapist.  So the RPC-Vail/Proaxis file and document keeping system was completely open and all of this was possible because none of the information was password-protected.

As for documents such as patient "protocols," these hard-copy patient handouts were stored in an open cabinet that had multiple physical therapy protocols for as many as 40 different surgeries.  These handouts were widely available to all RPC-Vail/Proaxis physical therapists and were almost universally handed out to RPC-Vail/Proaxis physical therapy patients at the time of surgery.  So literally thousands or tens of thousands of patients were provided this information.  If a patient was inadvertently not provided a particular protocol by a physical therapist, the front-desk or clerical personnel were instructed to provide the patient with the information, either in the form of the hard-copy handout or via e-mailed digital attachment.  In addition to RPC-Vail/Proaxis employees and patients, numerous other categories of people were provided this information.  They included practicing local physicians, visiting physicians, medical professionals, medical residents, practicing local physicians, medical students, and visiting physical

| | | |
|---|---|---|
| | | therapy faculty from colleges and universities around the country and internationally.  So virtually anyone from outside of RPC-Vail/Proaxis had access to what Vail Health now claims are its "trade secrets," as well as everyone inside RPC-Vail/Proaxis.<br><br>O'Brien has information concerning the fact that a significant portion of Proaxis's business had no connection to the RPC-Vail/shared computer drive, billing, or anything else associated with Vail Health. RPC-Vail/Proaxis's offices had their own documents and files that they created, stored and managed.  So as suggested above, the South Carolina and Denver offices were essentially separate from Vail Health.<br><br>In short, O'Brien has information that most of the information in Winninger's RPC-Vail/Proaxis file folder contained information that was generally available to the public and the medical and physical therapy communities.  He has information that the information was widely available and/or dispersed among physical therapists and employees throughout the RPC-Vail/Proaxis organization, and there were no special designations on any of the files or documents such as "trade secret," "confidential," etc.<br><br>O'Brien has information regarding when physical therapists terminated their employment with RPC-Vail/Proaxis it was generally understood that they took their personal file folders with them.  RPC-Vail/Proaxis knew of this practice and did not discourage physical therapists from taking their personal file folders.  Among the reasons for RPC-Vail/Proaxis's policy is that: (a) the information was widely known and dispersed, (b) the information had no commercial value, and (c) there was no protection that had been placed on the files or documents. |
| 35. | Tonya Rippeth<br>Director of Human Resources<br>Vail Health<br>180 South Frontage Road West<br>Vail, CO  81657<br>Phone:  970.476.2451 | Policies and procedures related to employee handbook, including recent changes; implementation of a new compete agreement after the alleged data breach; exit interview protocol; the practice to allow physical therapists to see patients after hours and take certain information with them.<br><br>Her purported investigation and representations made to DORA related to Cimino and Winninger, which is set out more fully in her deposition.<br><br>Rippeth has information regarding the fact that at no |

|   |   | time from January 8, 2008 to May 2012, was Winninger ever employed by Vail Health, as its attorneys have repeatedly suggested and implied in court filings.  During that period, Winninger was employed by RPC-Vail/Proaxis. |
|---|---|---|
| 36. | Kathleen Gwinn<br>Physical Therapist<br>Vail Health<br>180 South Frontage Road West<br>Vail, CO  81657<br>Phone:  970.476.2451 | Nonsolicitation agreement; knowledge of Vail Health's and the physical therapy unit's attempts to monopolize the physical therapy service market in the relevant geographic and service markets; Vail Health's illegal raiding of competing physical therapy providers such as Axis Sports Medicine to further monopolize the market |
| 37. | Matt Mymern<br>Physical Therapist<br>Vail Health<br>180 South Frontage Road West<br>Vail, CO  81657<br>Phone:  970.476.1225 | Statements made by physical therapists including O'Brien, about Cimino, Winninger, and Sports Rehab; the practice to allow physical therapists to see patients after hours |
| 38. | Meghan Gallegos<br>Physical Therapist<br>Vail Health<br>180 South Frontage Road West<br>Vail, CO  81657<br>Phone:  970.476.1225 | Communications with O'Brien about Winninger and Sports Rehab's intent to open in Vail; defamatory statements made against Winninger and Sports Rehab and the publication of those statements |
| 39. | Jenna Jones<br>Physical Therapist<br>Vail Health<br>180 South Frontage Road West<br>Vail, CO  81657<br>Phone:  970.476.1225 | Communications with O'Brien about Winninger and Sports Rehab's intent to open a physical therapy practice in Vail; defamatory statements made against Winninger and Sports Rehab and the publication of those statements |
| 40. | Joseph Pharez<br>Former Vail Health Physical Therapist<br>PT Sands Corp.<br>Los Angeles, CA | RPC-Vail/Proaxis's practice to allow physical therapists to see patients after hours and take certain information with them; Winninger's reputation and standing as a physical therapist |
| 41. | Dirk Kokmeyer<br>Former Vail Health Physical Therapist and Vail clinic manager<br>Director of Rehabilitation and Performance<br>Maine Medical Center<br>Portland, ME | RPC-Vail/Proaxis's and Vail Health's<br><br>practice to allow physical therapists to see patients after hours and take certain information with them |
| 42. | Ryan Kolczak<br>Vail Health IT/Security Director<br>180 South Frontage Road West<br>Vail, CO  81657<br>Phone:  970.476.2451 | Kolczak has detailed information regarding the Vail Health computer system during times relevant to this action.  He has knowledge of outside security and computer/software vendors retained by Vail Health, such as Applied Trust and others, which advised Vail Health as early as 2013 that its information security system was inadequate and that Vail Health did not have secure systems for protected health information ("PHI"). |
| 43. | Darrell Messersmith | Messersmith has detailed information regarding the |

| | | |
|---|---|---|
| | Vail Health IT Director<br>c/o Vail Health<br>180 South Frontage Road West<br>Vail, CO  81657<br>Phone:  970.476.2451 | Vail Health computer system during times relevant to this action.  He has knowledge of outside security and computer/software vendors retained by Vail Health, such as Applied Trust and others, which advised Vail Health as early as 2013 that its information security system was inadequate and that Vail Health did not have secure systems for protected health information ("PHI"). |
| 44. | Various other representatives<br>Vail Health<br>180 South Frontage Road West<br>Vail, CO  81657<br>Phone:  970.476.2451 | Without discovery, Winninger and Sports Rehab are unable to identify all individuals at Vail Health who may have information relevant to the claims or defenses of any party |
| 45. | Matthew Provencher, M.D.<br>The Steadman Clinic<br>181 West Meadow Drive, Suite 400<br>Vail, CO  81657<br>Phone:  970.476.1100 | Defamatory statements made by Kirchner and members of Vail Health about Winninger and Sports Rehab; the actions taken by The Steadman Clinic and the Steadman Philippon Research Institute in response to those statements; Winninger's reputation and standing as a physical therapist.<br><br>Dr. Provencher has information relating to the cancellation of the contract between Winninger and The Steadman Clinic; the development and decision not to proceed with the Wellness Program given the allegations that Winninger was involved in the theft of patient files. |
| 46. | Peter Millett, M.D.<br>The Steadman Clinic<br>181 West Meadow Drive, Suite 400<br>Vail, CO  81657<br>Phone:  970.476.1100 | Defamatory statements made by Kirchner and members of Vail Health about Winninger and Sports Rehab; prior referral source before defamatory statements were made; Winninger's reputation and standing as a physical therapist the decision not to proceed with the Wellness Program given the allegations that Winninger was involved in the theft of patient files; |
| 47. | Robert LaPrade, M.D.<br>The Steadman Clinic<br>181 West Meadow Drive, Suite 400<br>Vail, CO  81657<br>Phone:  970.476.1100 | Defamatory statements made by O'Brien and members of Vail Health about Winninger and Sports Rehab; Winninger's reputation and standing as a physical therapist; the decision not to proceed with Wellness Program given the allegations that Winninger was involved in theft of patient files |
| 48. | Thos Evans, M.D.<br>The Steadman Clinic<br>181 West Meadow Drive, Suite 400<br>Vail, CO  81657<br>Phone:  970.476.1100 | Winninger's reputation and standing as a physical therapist; the decision not to proceed with the Wellness Program given the allegations that Winninger was involved in the theft of patient files |
| 49. | Randy W. Viola, M.D.<br>The Steadman Clinic<br>181 West Meadow Drive, Suite 400<br>Vail, CO  81657<br>Phone:  970.476.1100 | Winninger's reputation and standing as a physical therapist; the decision not to proceed with the Wellness Program given the allegations that Winninger was involved in the theft of patient files |
| 50. | Tom Hackett, M.D.<br>The Steadman Clinic | Winninger's reputation and standing as a physical therapist; the development and decision not to |

| | 181 West Meadow Drive, Suite 400<br>Vail, CO  81657<br>Phone:  970.476.1100 | proceed with the Wellness Program given the allegations that Winninger was involved in the theft of patient files |
|---|---|---|
| 51. | Greg Paschke<br>Chief Financial Officer<br>The Steadman Clinic<br>181 West Meadow Drive, Suite 400<br>Vail, CO  81657<br>Phone:  970.476.1100 | The financial information and analysis related to the Steadman Wellness Program. |
| 52. | John Gray<br>The Steadman Clinic<br>181 West Meadow Drive, Suite 400<br>Vail, CO  81657<br>Phone:  970.476.1100 | The financial information and analysis related to the Steadman Wellness Program. |
| 53. | Michael B. Ellman, M.D.<br>Formerly at The Steadman Clinic<br>Panorama Orthopedics & Spine Center<br>660 Golden Ridge Road, Suite 250<br>Golden, CO  80401<br>Phone:  303.233.1223 | Knowledge of Steadman fellows being given physical therapy protocols, including those of Dr. Philippon, and how they are not considered trade secrets |
| 54. | Al Perkins<br>Chairman Emeritus<br>Steadman Philippon Research Institute<br>181 West Meadow Drive, Suite 1000<br>Vail, CO  81657<br>Phone:  970.479.9797 | Defamatory statements made by Shannon and members of Vail Health about Winninger and Sports Rehab |
| 55. | Lyndsay Young<br>Former Physical Therapist<br>US Ski Team<br>USSA Center of Excellence<br>1 Victory Lane<br>Park City, UT  84060<br>Phone:  435.649.9090 | Request to Winninger and Sports Rehab to provide physical therapy services to injured U.S. Ski Team member; Winninger's reputation and standing as a physical therapist |
| 56. | Lindsay Winninger<br>Owner,<br>Sports Rehab Consulting LLC<br>3909 Fox Street<br>Denver, CO 80216<br>Phone:  855.437.6444<br>Phone:  855.437.6444 | False statements made against Winninger and Sports Rehab that they stole patient files from Vail Health; the falsity of the statements, particularly that Cimino provided no patient or confidential information to Winninger or Sports Rehab; the October 13, 2015 meeting with O'Brien; the January 8, 2016 meeting with Brown; general information about the operation, marketing, and administration of Sports Rehab; agreements Winninger entered into with The Steadman Clinic and the Steadman Philippon Research Institute; effect of the false statements on Winninger and Sports Rehab's business and Winninger and Sports Rehab's attempts to mitigate those effects; the physical therapy market in the Vail area; damage suffered by Winninger and Sports Rehab by the false statements; information related to the claims in the Amended Complaint. |

More specifically with respect to false statements, Winninger is expected to testify about statements that were made to her by a number of witnesses. She will testify that Dan Drawbaugh, the CEO of The Steadman Clinic, informed her from spring 2016 through summer 2017, that members of The Steadman Clinic had been contacted by Doris Kirchner, Michael Shannon, and Nico Brown, who told Drawbaugh, Dr. Marc Philippon, and Kelly Adair that Winninger had stolen over 3,000 patient files. Kirchner and Shannon also told The Steadman Clinic, and in particular, Drawbaugh and Dr. Philippon, that it should not be working with Winninger.

Winninger will further testify that Mark Ryan, who at the time was working at Vail Health, informed her that he could no longer work with her because of the issues involving the patient files.  Winninger will testify that John Cole told her that AXIS physical therapy asked Cole to "lock up" all AXIS records stored at Ski Club Vail because Winninger had been involved in the theft of Vail Health patient files.  She will also testify to statements made to her about the theft of patient files by current and former physical therapists and the impact that those false statements have had in the Vail Valley medical community.

Winninger will testify about her knowledge of RPC-Vail/Proaxis's physical therapists and after-hours care demonstrating a culture at Vail Health versus straight policy and procedure.

In addition to the areas set forth above, Winninger has knowledge and information concerning the impact of Vail Health's monopolistic conduct on the physical therapy business of Sports Rehab and her personal contracts with The Steadman Clinic and Steadman Philippon Research Institute. Including the Wellness Program.  She also has knowledge of the personal and psychological destruction that she has experienced has the result of Vail Health's exclusionary misconduct.

To that end, Winninger has knowledge and information concerning Plaintiffs' damages.  She has knowledge and information relating to the financial assumptions underlying Plaintiffs' claimed damages. The information includes assumptions relating to the number of clinics/offices that Sports Rehab anticipated operating *but for* Vail Health's antitrust conduct, as well as the number of physical therapists

in each office, the number hours it was anticipated they would bill clients, as well as their rates, revenues and profit margins.  In short, Ms. Winninger has information regarding Sports Rehab's lost profits.

Winninger also has information regarding her lost income as the result of the termination/discontinuance of her contracts with The Steadman Clinic and the Steadman/Philippon Research Institute.  The lost income from the loss of these contracts is an issue that Winninger is expected to testify to as part of her personal damages, as well as how her work in the wellness business would have continued far into the future and generated additional income.

Lindsay Winninger has information concerning numerous false statements made by Kirchner and the Vail Health management against Winninger and Sports Rehab.  Specifically, the false statements that Winninger and Sports Rehab stole patient files from Vail Health that allegedly included trade secrets, HIPAA-protected documents and confidential or proprietary information belonging to Vail Health.  All this happened, according to ¶ 49 of Vail Health's amended counterclaim in the Eagle County action, prior to her departure from her employment with Rehabilitation & Performance Center at Vail, LLC (sometimes hereinafter referred to as "RPC-Vail/Proaxis").

Winninger has information regarding the fact that at no time from January 8, 2008 to May 2012, was she ever employed by Vail Health, as its attorneys have repeatedly suggested and implied in court filings.  During that period, she was employed by Proaxis and she never signed an employment agreement with Vail Health or Proaxis.

Winninger has information concerning how RPC-Vail/Proaxis files and documents were created and maintained on the shared drive.  She has information regarding the lack of confidentiality and protections that RPC-Vail/Proaxis administered with respect to those files and documents, and the approximate number of people who had access to the information.  For example, access to documents and files was not limited to the physical therapy and medical staffs.  Clerical employees such as receptionists, secretaries and administrative staff all had access to the "file

folders" of each individual physical therapist.  And RPC-Vail/Proaxis physical therapists had access to the file folders of every other physical therapist.  So the RPC-Vail/Proaxis file and document keeping system was completely open and all of this was possible because none of the information was password-protected.

As for documents such as patient "protocols," these hard-copy patient handouts were stored in an open cabinet that had multiple physical therapy protocols for as many as 40 different surgeries.  These handouts were widely available to all RPC-Vail/Proaxis physical therapists and were almost universally handed out to RPC-Vail/Proaxis physical therapy patients at the time of surgery.  So literally thousands or tens of thousands of patients were provided this information.  If a patient was inadvertently not provided a particular protocol by a physical therapist, the front-desk or clerical personnel were instructed to provide the patient with the information, either in the form of the hard-copy handout or via e-mailed digital attachment.  In addition to Proaxis employees and patients, numerous other categories of people were provided this information.  They included practicing local physicians, visiting physicians, medical professionals, medical residents, practicing local physicians, medical students, and visiting physical therapy faculty from colleges and universities around the country and internationally.  So virtually anyone from outside of RPC-Vail/Proaxis had access to what Vail Health now claims are its "trade secrets," as well as everyone inside P RPC-Vail/Proaxis.

Winninger has information concerning the fact that a significant portion of RPC-Vail/Proaxis's business had no connection to either the lease, shared computer drive, billing, or anything else associated with Vail Health.  RPC-Vail/Proaxis offices had their own documents and files that they created, stored and managed.  So as suggested above, the South Carolina and Denver offices were essentially separate from Vail Health.

As Winninger testified in her deposition, when she left RPC-Vail/Proaxis in May 2012, she copied her personal file folder so she would have it in the event she later needed the information to consult about a particular patient.  Winninger will testify that she never provided or transmitted this information to any

| | | |
|---|---|---|
| | | other party.  Having said that, however, she did not know or believe that documents she kept in her personal file folder at RPC-Vail/Proaxis were trade secrets or contained confidential or proprietary information.<br><br>In short, Winninger has information that most of the information in her RPC-Vail/Proaxis file folder contained information that was generally available to the public and the medical and physical therapy communities.  She has information that the information was widely available and/or dispersed among physical therapists and employees throughout the RPC-Vail/Proaxis organization, and there were no special designations on any of the files or documents such as "trade secret," "confidential," etc.<br><br>Winninger has information that when physical therapists terminated their employment with RPC-Vail/Proaxis it was generally understood that they took their personal file folders with them.  RPC-Vail/Proaxis knew of this practice and did not discourage physical therapists from taking their personal file folders.  Among the reasons for RPC-Vail/Proaxis's policy is that: (a) the information was widely known and dispersed, (b) the information had no commercial value, and (c) there was no protection that had been placed on the files or documents. |
| 57. | Brad Schoenthaler, Owner, Managing Partner, and Physical Therapist<br>Sports Rehab Consulting LLC<br>3909 Fox Street<br>Denver, CO 80216<br>Phone:  855.437.6444 | Schoenthaler has overall knowledge concerning the operation and administration of Sports Rehab; the falsity of the statements, particularly that Cimino or Winninger provided patient or confidential information to Schoenthaler or Sports Rehab; the effect of the defamatory statements, including decrease in referrals and business; portions of the January 8, 2016 meeting between Winninger, Brown, and Schoenthaler.<br><br>In addition to the areas set forth above, Schoenthaler has knowledge and information concerning the impact of Vail Health's misconduct on the physical therapy business of Sports Rehab and the personal and psychological destruction that Winninger has experienced has the result of that misconduct.<br>Brad Schoenthaler became employed by RPC-Vail/Proaxis in 2008.  Based on his discussions with Topper Hagerman and others and knowledge gained from working at RPC-Vail/Proaxis, he has second-hand knowledge that RPC-Vail/Proaxis began providing physical therapy services beginning in |

approximately 1993, when Dr. Richard Steadman moved his orthopedic practice from South Lake Tahoe, California to Vail, Colorado.  John Atkins (formerly associated with the U.S. Ski Team) and Topper Hagerman moved with Dr. Steadman to Vail to support his practice with physical therapy services.  They were the founders and owners and managers of RPC-Vail. /Proaxis  At some point in time, Schoenthaler believes in the 1990s, Head Ski Company founder Howard Head made a charitable donation to the hospital now known as Vail Health. In his honor, the physical therapy clinic was given the trade name of "Howard Head Sports Medicine," which RPC-Vail/Proaxis licensed.  Schoenthaler does not have direct knowledge of that licensing agreement.

Based on Schoenthaler's accumulated knowledge, RPC-Vail was successful due largely to its close relationship with the Steadman Clinic, which later became the Steadman Hawkins Clinic.  In the late 1990s, Dr. Hawkins moved his practice to Greenville, South Carolina and he took Sean McEnroe with him to run a physical therapy clinic there to support his orthopedic medical practice.  The combined clinics became known as Proaxis Physical Therapy ("Proaxis") and its chief executive officer was Sean McEnroe, who officed out of South Carolina—not Vail, Colorado.

Proaxis eventually grew to a total of 25 clinical offices: about 15-16 in South Carolina; an unknown number in North Carolina, 3 offices in Denver, Colorado; and numerous offices in Summit County and Eagle County.  Those offices may have been organized under a number of corporate or limited liability companies that collectively came to be known as "Proaxsis.  (For ease of reference, RPC-Vail and the other corporate entities will be referred to collectively herein as "RPC-Vail/Proaxsis.")  In June, 2015, RPC-Vail/Proaxis was sold to a national physical therapy organization called ATI Physical Therapy, whose headquarters are in Bolingbroke, Illinois.

Schoenthaler was the Denver Clinic Director and a Regional Managing Director for RPC-Vail/Proaxis until he and Lindsay Winninger formed Sports Rehab in 2015.  Given his positions at RPC-Vail/Proaxis, Schoenthaler has information concerning its information technology systems and the development of rehabilitation protocols for patients.

Of importance is that contrary to the allegations and arguments of Vail Health, beginning with the opening of the South Carolina offices Proaxis operated off of multiple shared computer servers (called "shared drives" here), not the single Vail Health shared drive that Vail Health argues housed (houses?) the Pre-October 31, 2012 Proaxis "trade secrets" that it now claims it owns.

Most, but not all, of the many Proaxis offices had access to the shared drives of the other offices, so there was access to whatever files and documents the other offices had.  For example, the Greenville office had access to the Vail office and visa versa.  That was not true with respect to Denver, because it did not have access to either the Greenville shared drive or the Vail shared drive.  The Denver physical therapists did not even have work computers—they were compelled conduct their physical therapy practices from their own personal computers.  The RPC-Vail/Proaxis documents, no matter what shared server they were on, were open to all RPC-Vail/Proaxis employees.

To fulfill their physical therapy duties in Denver, employees and managers such as Schoenthaler had to contact either Greenville or Denver to have those documents sent from the shared server in either one of those servers directly to their personal computers.  When Schoenthaler sought to have a document sent from Vail he would contact someone in Vail, often someone in human resources, and they would send the document to his personal computer.  Most of the time, however, Schoenthaler had documents sent to him from the Greenville shared drive to his personal computer.  So if a few RPC-Vail/Proaxis documents have shown up on his personal computer, it is because he obtained them during the course of his work as a physical therapist and manager of Proaxis, not because he stole them from Vail Health, as Vail Health seems to allege.

To summarize, most of the documents on the Vail shared drive were also on the South Carolina drive and these documents were again available to all staff of RPC-Vail/Proaxis regardless of region and shared freely.  Both entities contributed to information/documents available on the drive, however a majority of the published research came from the South Carolina Ph.D-PT's—Ellen Shandley and Chuck Thigpen.  As many of the documents

| | | |
|---|---|---|
| | | were created from Proaxis outside of Vail, specifically in another region altogether, they have no relation or ownership in relation to Vail Health. At no point in Schoenthaler's employment with Proaxis was he discouraged from having any documents on his personal computer.<br><br>Schoenthaler has information concerning the fact that a significant portion of Proaxis's business and resulting files and documents had no corporate or geographic connection to Vail or Vail Health. So a significant part of Proaxis's files and documents had nothing to do with the service agreement(s), the trade name arrangement, the lease of the real estate in Vail, the shared computer drive, billing, or any other possible relationships between RPC-Vail and Vail Health. So for a significant part of Proaxis's offices, they had their own documents and files that they created, stored and managed in offices in South Carolina and Denver, by a completely different corporate entity than Vail Health had any contractual relationship with.<br><br>Schoenthaler left Proaxis in 2015 after Vail Health chose not to renew its contract with .RPC-Vail/Proaxis in 2012. It is important to note that at all times prior to establishing Sports Rehab with Winninger in 2015, Schoenthaler received his paycheck from RPC-Vail. Schoenthaler has information regarding the fact that at no time from January 8, 2008 to May 2012, was Winninger ever employed by Vail Health, as its attorneys have repeatedly suggested and implied in court filings. |
| 58. | Kirsten Stangel<br>Physical Therapist<br>2150 Stadium Drive<br>Boulder, CO 80309<br>Phone: 218.340.4859 | Conversations with O'Brien regarding the business model of Winninger and Sports Rehab that they intended to pursue in 2015; impact of the defamatory statements by Kirchner and others associated with Vail Health upon Winninger and Sports Rehab; the falsity of the defamatory statements, particularly that Cimino or Winninger provided patient or confidential information to Stangel or Sports Rehab; she is believed to have knowledge and information concerning the impact that the defamatory statements made by Kirchner and other Vail Health directors and officers had on the volume of business that Sports Rehab was able to generate—that is, the impact on the reputation of Sports Rehab in the Vail Valley medical community translated into a deleterious effect on the volume of Sports Rehabs' physical therapy business; it is unknown whether Ms. Stangel has sufficient knowledge concerning the |

| | | quantification of the diminution in business resulting from Vail Health's misconduct |
|---|---|---|
| 59. | Meredith Mueller<br>Avon Clinic Director<br>Axis Sports Medicine<br>142 Beaver Creek Boulevard, Unit 109<br>Avon, CO 81620<br>Phone: 970.790.9600 | Mueller is believed to have knowledge of the relevant product/service market and relevant geographic market for physical therapy services in the Vail Valley. She has knowledge that the relevant geographic market extends no further than about 18-miles East from the center of Vail, or 30-minutes of driving time East from Vail, and West from the town of Vail to the outer boundaries of Eagle County. |
| 60. | Dr. William Sterrett<br>Vail Summit Orthopedics<br>108 South Frontage Road,<br>Suite 206<br>Vail, Colorado 81657<br>Phone: 970.476.7220 | Dr. Sterrett is believed to have knowledge of the Vail Health's attempt to form a joint venture or other similar arrangement related to physical therapy provided by Vail Health at any location.. |
| 61. | Representatives from Eagle County District Attorneys' Office, including<br>    Bruce Brown<br>    Joseph Kirwan<br>Eagle County Justice Center Annex<br>955 Chambers Avenue<br>Eagle, CO 81631<br>Phone: 970.328.6947 | Criminal investigation of Cimino, charges and dropping of charges against Cimino; the original USB devices and Cimino's work computer; Vail Health's decision not to provide certain evidence; information provided by Vail Health; communications with Vail Health, its attorneys, or any other agents including seeking 3,000 felony charges be filed against Cimino and the misrepresentations that Cimino (and Winninger) were involved in the theft of Vail Health files identified on Exhibit 8 when in actuality the files were owned by RPC-Vail/Proaxis and which Vail Health misappropriated omissions that Cimino voluntarily returned documents and that he did not access the documents on February 5, 2016; misrepresentations that Exhibit 8 was created by Cyopsis |
| 62. | Representatives from Vail Police Department, including<br>    Eric Bonta<br>    Christopher Botkins<br>    Luke Causey<br>    Justin Dill<br>    Annette Dopplick<br>    Jesse Rector<br>75 South Frontage Road West<br>Vail, CO 81657<br>Phone: 970-479-2201 | Criminal investigation of Cimino, charges and dropping of charges against Cimino; the original USB devices and Cimino's work computer; Vail Health's decision not to provide certain evidence; information provided by Vail Health; communications with Vail Health, its attorneys, or any other agents, including the misrepresentations that Cimino (and Winninger) were involved in the theft of Vail Health files identified on Exhibit 8 when in actuality the files were owned by RPC-Vail/Proaxis and which Vail Health misappropriated, omissions that Cimino voluntarily returned documents and that he did not access the documents on February 5, 2016; misrepresentations that Exhibit 8 was created by Cyopsis and Vail Health's misrepresentations related to Cimino's voluntary return of information obtained by him during his employment with RPC-Vail/Proaxis |
| 63. | Craig Bernard | The files and records created by Cyposis from the |

| | Cyopsis | two USB devices, including identification of documents that were in a folder entitled "Attn VVMC docs from personal computer" and which was not presented to the Vail Police Department or Eagle County District Attorney; testimony that he did not create Exhibit 8 as provided to the Vail Police Department and Eagle County District Attorney |
|---|---|---|
| 64. | David J. Penrod<br>PenrodEllis Forensic Data Discovery<br>8400 East Crescent Parkway, Suite 600<br>Greenwood Village, CO  80111<br>Phone:  303.691.0047 | Review and forensic examination of Winninger's computer; forensic report issued on March 2, 2017 and his expert disclosure in the Eagle County case |
| 65. | Sean McEnroe<br>ATI Physical Therapy<br>Shore Capital Partners<br>1 East Wacker Drive<br>Suite 2900<br>Chicago, IL 60601<br>312-348-7580 | Sean McEnroe has knowledge that RPC-Vail began providing physical therapy services beginning in approximately 1993, when Dr. Richard Steadman moved his orthopedic practice from South Lake Tahoe, California to Vail, Colorado.  John Atkins (formerly associated with the U.S. Ski Team) and Topper Hagerman moved with Dr. Steadman to Vail to support his practice with physical therapy services.  They were the founders and owners and managers of RPC-Vail.  It is also believed that McEnroe has information as to the licensing arrangement for the trade name "Howard Head Sports Medicine" between RPC-Vail and Proaxis and Vail Health.<br><br>McEnroe has knowledge that RPC-Vail was successful due largely to its close relationship with the Steadman Clinic, which later became the Steadman Hawkins Clinic.  In the late 1990s, Dr. Hawkins moved his practice to Greenville, South Carolina and he took McEnroe with him to run a physical therapy clinic there to support his orthopedic medical practice.  McEnroe became the chief executive officer of Proaxis and officed out of South Carolina—not Vail, Colorado.<br><br>McEnroe has knowledge that Proaxis eventually grew to a total of 25 clinical offices: about 15-16 in South Carolina; an unknown number in North Carolina, 3 offices in Denver, Colorado; and numerous offices in Summit County and Eagle County.  McEnroe has knowledge concerning how those offices were organized under different corporate or limited liability companies that collectively came to be known as "Proaxis.  In June, 2015, Proaxis was sold to a national physical therapy organization called ATI Physical Therapy, whose headquarters are in Bolingbroke, Illinois. |

McEnroe has knowledge concerning the Proaxis information technology systems and the development of rehabilitation protocols for patients. Of importance is that contrary to the allegations and arguments of Vail Health, beginning with the opening of the South Carolina offices, Proaxis operated off of multiple shared computer servers (called "shared drives" here), not the single Vail Health shared drive that Vail Health argues housed (houses?) the pre-October 31, 2012 Proaxis "trade secrets" that it now claims it owns.

It is believed that McEnroe has knowledge that most, but not all, of the many Proaxis offices had access to the shared drives of the other offices, so there was access to whatever files and documents the other offices had.  For example, the Greenville office had access to the Vail office and visa-versa.

McEnroe has knowledge concerning the fact that a significant portion of Proaxis's business and resulting files and documents had no corporate or geographic connection to Vail or Vail Health.  So a significant part of Proaxis's files and documents had nothing to do with the service agreement(s), the trade name arrangement(s), the lease of the clinical office space in Vail, the shared computer drive, billing, or any other possible relationships between RPC-Vail and Vail Health.  So for a significant part of Proaxis's offices, they had their own documents and files that they created, stored and managed in offices in South Carolina and Denver, by a completely different corporate entity than Vail Health had any contractual relationship with.

McEnroe has knowledge that it was Proaxis that incurred expense and invested in any physical therapy research and protocols that might plausibly be characterized as "trade secrets" (none fit that definition), not Vail Health.  McEnroe has information relating to the fact that Vail Health did not impose any restrictions on access of employees and others to files or documents either in Vail or on the Vail shared drive, or on access of employees and others to files or documents in Greenville or on the Greenville shared drive.  Thus, the information possessed by McEnroe demonstrates that Vail Health has no argument that it owned any documents generated or maintained by Proaxis in Vail or on the Vail shared drive, or in any other office of Proaxis.

| | | |
|---|---|---|
| | | It is believed that McEnroe has information relating to the termination or non-renewal of the contractual relationships between Vail Health and Proaxis, and in particular those contractual relationships that ran directly to RPC-Vail.  It is believed that McEnroe has information confirming that Vail Health did not negotiate or purchase or obtain an assignment of any intellectual property of Proaxis or RPC-Vail when the relationship between or among the parties ended in 2012.<br><br>McEnroe may have knowledge of Vail Health's market power in the relevant service market and its anticompetitive activities to further solidify and expand their illegal monopoly of physical therapy services in the relevant geographic market. |
| 66. | Topper Hagerman<br>Eagle, Colorado | Topper Hagerman has information relating to RPC-Vail, which he founded with John Atkins in approximately 1993, when Dr. Richard Steadman moved his orthopedic practice from South Lake Tahoe, California to Vail, Colorado.  Atkins and Hagerman moved with Dr. Steadman to Vail to support his practice with physical therapy services. At some point in time in the early 1990s, Head Ski Company founder Howard Head made a charitable donation to the hospital now known as Vail Health. In his honor, the physical therapy clinic was given the trade name of "Howard Head Sports Medicine," which RPC-Vail licensed.  It is believed that Hagerman has direct knowledge of that licensing agreement.<br><br>Hagerman has information that RPC-Vail was successful due largely to its close relationship with the Steadman Clinic, which later became the Steadman Hawkins Clinic.  In the late 1990s, Dr. Hawkins moved his practice to Greenville, South Carolina and he took Sean McEnroe with him to run a physical therapy clinic there to support his orthopedic medical practice.  The combined clinics became known as Proaxis Physical Therapy ("Proaxis") and its chief executive officer was McEnroe, who officed out of South Carolina—not Vail, Colorado.<br><br>Hagerman has information that Proaxis eventually grew to a total of 25 clinical offices: about 15-16 in South Carolina; an unknown number in North Carolina, 3 offices in Denver, Colorado; and numerous offices in Summit County and Eagle County.  Those offices may have been organized |

under a number of corporate or limited liability companies that collectively came to be known as "Proaxsis."  In June, 2015, Proaxis was sold to a national physical therapy organization called ATI Physical Therapy, whose headquarters are in Bolingbroke, Illinois.

Hagerman has information concerning RPC-Vail's and Proaxis's information technology systems and the development of rehabilitation protocols for patients.  Of importance is that contrary to the allegations and arguments of Vail Health, beginning with the opening of the South Carolina offices Proaxis operated off of multiple shared drives, not the single Vail Health shared drive that Vail Health argues housed (houses?) the pre-October 31, 2012 Proaxis "trade secrets" that it now claims it owns.

Hagerman has information that most, but not all, of the many Proaxis offices had access to the shared drives of the other offices, so there was access to whatever files and documents the other offices had.  For example, the Greenville office had access to the Vail office and visa-versa.  That was not true with respect to Denver, because it did not have access to either the Greenville shared drive or the Vail shared drive.  The Denver physical therapists did not even have work computers—they were compelled conduct their physical therapy practices from their own personal computers.  The Proaxis documents, no matter what shared server they were on, were open to all Proaxis employees.

Hagerman has information that has information concerning the fact that a significant portion of Proaxis's business and resulting files and documents had no corporate or geographic connection to Vail or Vail Health.  So a significant part of Proaxis's files and documents had nothing to do with the service agreement(s), the trade name arrangement, the lease of the real estate in Vail, the shared computer drive, billing, or any other possible relationships between RPC-Vail and Vail Health.  So for a significant part of Proaxis's offices, they had their own documents and files that they created, stored and managed in offices in South Carolina and Denver, by a completely different corporate entity than Vail Health had any contractual relationship with.

Hagerman has information relating to the termination

51

| | | |
|---|---|---|
| | | or non-renewal of the contractual relationships between Vail Health and RPC-Vail and Proaxis, and in particular those contractual relationships that ran directly to RPC-Vail.  Hagerman has information confirming that Vail Health did not negotiate or contractually purchase or obtain an assignment of any intellectual property of Proaxis or RPC-Vail when the relationship between or among the parties ended in 2012. |
| 67. | Steve Stalzer<br>Managing Partner<br>Axis Sports Medicine<br>142 Beaver Creek Place, Suite109<br>Avon, CO  81620<br>Phone:  970.790.9600 | Stalzer has information that RPC-Vail was successful due largely to its close relationship with Steadman, which later became the Steadman Hawkins Clinic. In the late 1990s, Dr. Hawkins moved his practice to Greenville, South Carolina and he took Sean McEnroe with him to run a physical therapy clinic there to support his orthopedic medical practice. The combined clinics became known as RPC-Vail/Proaxis Physical Therapy and its chief executive officer was that McEnroe, who officed out of South Carolina—not Vail, Colorado.<br><br>Stalzer has information RPC-Vail/Proaxis eventually grew to a total of 25 clinical offices: about 15-16 in South Carolina; an unknown number in North Carolina, 3 offices in Denver, Colorado; and numerous offices in Summit County and Eagle County.  Those offices may have been organized under a number of corporate or limited liability companies that collectively came to be known as RPC-Vail/Proaxis.  In June, 2015, RPC-Vail/Proaxis was sold to a national physical therapy organization called ATI Physical Therapy, whose headquarters are in Bolingbroke, Illinois.<br><br>Stalzer has information relating to RPC-Vail/Proaxis and has direct knowledge of that Use and Licensing Agreement between RPC/Vail and Vail Health.<br><br>Stalzer has information concerning RPC-Vail's and RPC-Vail/Proaxis's information technology systems and the development of rehabilitation protocols for patients.  Of importance is that contrary to the allegations and arguments of Vail Health, beginning with the opening of the South Carolina offices RPC-Vail/Proaxis operated off of multiple shared drives, not the single Vail Health shared drive that Vail Health argues housed (houses?) the pre-October 31, 2012 RPC-Vail/Proaxis "trade secrets" that it now claims it owns. |

Stalzer has information that most, but not all, of the many RPC-Vail/Proaxis offices had access to the shared drives of the other offices, so there was access to whatever files and documents the other offices had.  For example, the Greenville office had access to the Vail office and visa-versa.  That was not true with respect to Denver, because it did not have access to either the Greenville shared drive or the Vail shared drive.  The Denver physical therapists did not even have work computers—they were compelled conduct their physical therapy practices from their own personal computers.  The RPC-Vail/Proaxis documents, no matter what shared server they were on, were open to all Proaxis employees.

Stalzer has information concerning the fact that a significant portion of RPC-Vail/Proaxis's business and resulting files and documents had no corporate or geographic connection to Vail or Vail Health.  So a significant part of RPC-Vail/Proaxis's files and documents had nothing to do with the agreement with Vail Health, the trade name arrangement, the real estate arrangement in Vail, the shared computer drive, billing, or any other possible relationships between RPC-Vail and Vail Health.  So for a significant part of RPC-Vail/Proaxis's offices, they had their own documents and files that they created, stored and managed in offices in South Carolina and Denver, by a completely different corporate entity than Vail Health had any contractual relationship with.

Stalzer has information relating to the termination or non-renewal of the contractual relationships between Vail Health and RPC-Vail/Proaxis.  Stalzer has information confirming that Vail Health did not negotiate or contractually purchase or obtain an assignment of any intellectual property of RPC-Vail/Proaxis when the relationship between or among the parties ended in 2012.  He has knowledge of the fact that RPC-Vail/Proaxis demanded the return of the documents and information that are at issue in this case but Vail Health refused to return that property.

Stalzer has direct knowledge of RPC-Vail/Proaxis' prices, costs, and profit margins over time and how Vail Health used moneys from its relationship with RPC-Vail/Health to fund the monopoly it created when it took over the physical therapy clinic in

| | | |
|---|---|---|
| | | November 2012.  Stalzer has knowledge as to how Vail Health uses anticompetitive conduct to leverage and maximize its monopoly power in the relevant geographic market and prevents insurers from using alternative medical providers from counter its excessive pricing.<br><br>At times relevant to this action, Stalzer a held senior management positions with RPC-Vail/Proaxis.  In those positions, Stalzer acquired significant knowledge of the financial condition and financial statements such as income statements, balance sheets, statement of cash flow, comparisons of the RPC-Vail/Proaxis profitability compared with other physical therapy providers. Stalzer.  He may also have acquired knowledge of the financial impact of the "billing" of RPC-Vail/Proaxis physical therapy services had on Vail Health's financial condition.<br><br>Stalzer is believed to have knowledge of the relevant product/service market and relevant geographic market for physical therapy services in the Vail Valley.  He has knowledge that the relevant geographic market extends no further than about 18-miles East from the center of Vail, or 30-minutes of driving time East from Vail, and West from the town of Vail to the outer boundaries of Eagle County. |
| 68 | Victoria Bartel<br>2931 Mashie Circle<br>Castle Rock, CO 80109<br>970.471.6031 | Bartel has information concerning how RPC-Vail/Proaxis files and documents were created and maintained on the shared drive.  She has information regarding the degree of confidentiality and protections that RPC-Vail/Proaxis administered with respect to those files and documents, and the approximate number of people who had access to the information.  For example, access to documents and files was not limited to the physical therapy and medical staffs.  Clerical employees such as receptionists, secretaries and administrative staff all had access to the "file folders" of each individual physical therapist.  And RPC-Vail/Proaxis physical therapists had access to the file folders of every other physical therapist.  So the RPC-Vail/Proaxis file and document keeping system was completely open.<br>As for documents such as patient "protocols," these hard-copy patient handouts were stored in an open cabinet that had multiple physical therapy protocols for as many as 40 different surgeries.  These handouts were widely available to all RPC-Vail/Proaxis physical therapists and were almost universally handed out to RPC-Vail/ Proaxis physical |

therapy patients at the time of surgery.  So literally thousands or tens of thousands of patients were provided this information.  If a patient was inadvertently not provided a particular protocol by a physical therapist, the front-desk or clerical personnel were instructed to provide the patient with the information, either in the form of the hard-copy handout or via e-mailed digital attachment.  In addition to RPC-Vail/Proaxis employees and patients, numerous other categories of people were provided this information.  They included practicing local physicians, visiting physicians, medical professionals, medical residents, practicing local physicians, medical students, and visiting physical therapy faculty from colleges and universities around the country and internationally.  So virtually anyone from outside of RPC-Vail/Proaxis had access to what Vail Health now claims are its "trade secrets," as well as everyone inside RPC-Vail/Proaxis.

Bartel's information concerning the fact that a significant portion of RPC-Vail/Proaxis's business had no connection to either the lease, shared computer drive, billing, or anything else associated with Vail Health.  RPC-Vail/Proaxis's offices had their own documents and files that they created, stored and managed.  So the South Carolina and Denver offices had no relationship to Vail Health.

Bartel has information stored on the shared drive contained information that was generally available to the public and the medical and physical therapy communities.  She has information that the information was widely available and/or dispersed among physical therapists and employees throughout the RPC-Vail/Proaxis organization, and there were no special designations on any of the files or documents such as "trade secret," "confidential," etc.

Bartel also has information related to RPC-Vail/Proaxis employees taking their educational and training materials with them, including protocols, just as she did when she left RPC-Vail/Proaxis.  Bartel also has knowledge of RPC-Vail/Proaxis instructing its employees to take materials off the shared drive right before Vail Health took over the operations of the physical therapy unit doing business as Howard Head

Bartel also has information about the residency program that was developed by RPC-Vail/Proaxis, as well as its licensure

Bartel's area of knowledge is also set out in her deposition taken in the Eagle County case

| 69. | Former RPC-Vail/Proaxis employees, including the following:<br>Kristin Schwarck<br>Barbara Thomas<br>Amy Heflin<br>Christina Black<br>Mary Dixon<br>Salem Shaffer<br>Brady Baker<br>Carly Baker<br>Jonathan Kemptom<br>Robyn Ritsch<br>Andrea Sauer<br>Ted Weber<br>Shayna Meka<br>Gretchen Ebbeson<br>Britney Huntimer<br>Christine Hasselbach<br>Stephanie Drew<br>Lori Myers<br>Jeffrey Russel<br>CJ Cebul<br>Christina Russell<br>Julie Ehmann<br>Jessica Sheeley<br>Will Kruger<br>Jennifer Gotantas<br>Kathi Thomson<br>Christine Rost<br>Eric Dube<br>Mary Leone<br>Molly O'Rourke Scanlon<br>Alison Cofer<br>Ami Doyle<br>Terri Stashick<br>Lauren Johnson<br>Jill Sorensen<br>Andy Almonte<br>Scott Bartel (same contact info as Victoria Bartel)<br>Paul Bersagel<br>Sarah Bollwitt<br>Emma Cannata<br>Meghan Curley<br>Sarah Elliott<br>Amanda Gonzales<br>Kate Gregg<br>Jenna Hodge<br>Ana Jeronimus<br>Kate Johnson<br>Chelsea McMillin<br>Meredith Mueller<br>Matt Mymern | These former employees have information concerning how RPC-Vail/Proaxis files and documents were created and maintained on the shared drive.  They have information regarding the degree of confidentiality and protections that RPC-Vail/Proaxis administered with respect to those files and documents, and the approximate number of people who had access to the information.  For example, access to documents and files was not limited to the physical therapy and medical staffs.  Clerical employees such as receptionists, secretaries and administrative staff all had access to the "file folders" of each individual physical therapist.  And RPC-Vail/Proaxis physical therapists had access to the file folders of every other physical therapist.  So the RPC-Vail/Proaxis file and document keeping system was completely open and all of this was possible because none of the information was password-protected.<br><br>As for documents such as patient "protocols," these hard-copy patient handouts were stored in an open cabinet that had multiple physical therapy protocols for as many as 40 different surgeries.  These handouts were widely available to all RPC-Vail/Proaxis physical therapists and were almost universally handed out to RPC-Vail/ Proaxis physical therapy patients at the time of surgery.  So literally thousands or tens of thousands of patients were provided this information.  If a patient was inadvertently not provided a particular protocol by a physical therapist, the front-desk or clerical personnel were instructed to provide the patient with the information, either in the form of the hard-copy handout or via e-mailed digital attachment.  In addition to RPC-Vail/Proaxis employees and patients, numerous other categories of people were provided this information.  They included practicing local physicians, visiting physicians, medical professionals, medical residents, practicing local physicians, medical students, and visiting physical therapy faculty from colleges and universities around the country and internationally.  So virtually anyone from outside of RPC-Vail/Proaxis had access to what Vail Health now claims are its "trade secrets," as well as everyone inside RPC-Vail/Proaxis.<br><br>These former employees have information concerning the fact that a significant portion of RPC-Vail/Proaxis's business had no connection to either the lease, shared computer drive, billing, or anything else associated with Vail Health.  RPC-Vail/Proaxis's |

| | | |
|---|---|---|
| | Alison Nading<br>Luke O'Brien<br>Thomas Olson<br>Joe Pharez<br>Bobby Poehling<br>Meredith Pollaro<br>Kelly Schrader<br>Laura Jean Shane<br>Danielle Sockolosky<br>Michael Wahoff<br>Jennifer Wilde<br>Emma Kellner<br>Brook Magstadt<br>Laura Olderog<br>Mark Ryan<br>Erin Schmitt<br>Paul Westgard<br>Laurie Wohlt<br>John Egge<br>Meghan Sheeran<br>Allie Hammond<br>Erin Harding<br>Courtney Zolin<br>Ashley Dentler<br>Susan Brown<br>Zak Pramik<br>Will Place (Eagle, CO)<br>Christy Madison<br>Katheryn Baker<br>Kathy Gwin<br>Shannon Irish<br>Molly Bureta<br>Dina Proietti<br>Dirk Kokmeyer<br>Megan Taylor<br>Lisa Perry<br>Sarah Oaks<br>Teresa Schuemann<br>Zach Chandler<br>Eileen Yuskewich<br>Neil Masters<br>Gentian Nuzzo<br>Marsha Messervey<br>Some of the individuals identified here may also be current employees of Vail Health, or identified individually above, and therefore Vail Health has the contact information.  To the extent additional contact information is discovered, Plaintiffs will produce that information. | offices had their own documents and files that they created, stored and managed.  So as suggested above, the South Carolina and Denver offices were essentially separate from Vail Health.<br><br>These former employees have information that most of the information stored on the shared drive contained information that was generally available to the public and the medical and physical therapy communities.  They have information that the information was widely available and/or dispersed among physical therapists and employees throughout the RPC-Vail/Proaxis organization, and there were no special designations on any of the files or documents such as "trade secret," "confidential," etc.<br><br>These former employees have information that when physical therapists terminated their employment with Proaxis it was generally understood that they took their personal file folders with them.  Proaxis knew of this practice and did not discourage physical therapists from taking their personal file folders.  Among the reasons for Proaxis's policy is that: (a) the information was widely known and dispersed, (b) the information had no commercial value, and (c) there was no protection that had been placed on the files or documents. |
| 70. | Any individual disclosed by any other party in this action or the Eagle County action | |

| 71. | Any individual identified in any document produced in this action or the Eagle County action | |
| 72. | Any individual identified in any document produced by any party in this action or the Eagle County action | |
| 73. | Any witness needed for rebuttal, authentication, foundation, or impeachment | |

## B.    Documents That May Be Used To Support Claims Or Defenses

Based upon information reasonably available to Winninger and Sports Rehab at this time, described below are categories of documents, electronically-stored information, and tangible things that are in their possession, custody, or control that may be relevant to the claims or defenses of any party.

- All discovery responses and documents produced by Plaintiffs and their experts to Vail Health in the Eagle County state court action;

- Affidavits of Topper Hagerman and Sean McEnroe produced by Plaintiffs to Vail Health in the Eagle County state court action;

- All discovery responses and documents produced by Defendants to Plaintiffs in the Eagle County state court action; and

- All pleading, motions, memoranda, documents, and orders filed by the parties, the Court, and the Special Master in the Eagle Country state action.

Plaintiffs and Defendants have possession of all of these documents, although discovery disputes continue in the Eagle County state court action which, upon resolution, may reveal additional documents that are relevant to this action.

**C.      Categories Of Damages.**

Winninger and Sports Rehab have not yet fully computed its damages, and therefore they reserve the right to alter, amend, increase or decrease any category or specific amounts of damages.  Plaintiffs have not yet undertaken their damage analysis in this federal court antitrust case with an expert that will testify at trial, and therefore changes in some or all of the categories of damages set forth in this initial disclosure may change, and Plaintiffs reserve the right to do so.  This disclosure will be supplemented when the Plaintiffs' experts(s) has (have) completed the damage analysis and witnesses have testified regarding damages in this action.   Finally, certain damages are unquantifiable until the jury and Court render their decisions, and documents required to support those awards will be produced at the appropriate time.

In the Eagle County state court case Winninger and Sports Rehab may seek some or all of the following damages from Kirchner and Vail Health.  Because Plaintiffs have filed an action for defamation *per se*, under Colorado law they are not required to prove or even seek actual compensatory damages.  To the extent that such damages are actually sought and presented to the jury in the state court case, they will not be sought in this federal antitrust case to ensure that there is no double-recovery of damages.  If Plaintiffs' do not seek recovery for certain damages in the Eagle County state court case, and they are not precluded from recovering in this federal antitrust case on principles of res judicate or collateral estoppel, the damages set forth above will be sought in the federal court case.

***Treble Damages Pursuant to 15 U.S.C. § 15(a).*** To the extent that any category pursuant to 15 U.S.C. § 15 in this federal court antitrust action on grounds of res judicata and collateral estoppel.

***Attorney's Fees and Costs Incurred By Plaintiffs In Eagle County Case.*** In addition to the damages set forth below, Plaintiffs seek to recover the attorney's fees and costs incurred by them in defense of the sham counterclaims asserted by Vail Health in the Eagle County state court case. At this time, Plaintiffs estimate that those damages will exceed $4,000,000, which constitute damages over and above those calculated b.

***Economic Damages.*** Winninger and Sports Rehab are each entitled to economic damages in the following categories:

(1)   Past loss of revenue that translates into loss of profit for Sports Rehab as the result of Defendants' defamatory conduct during the period from January 15, 2016 to December 31, 2019. The calculation assumes the following:

- Full time licensed physical therapists billing 33 hours per week.

- Physical therapists working 48 weeks per year.

- Sports Rehab realization of 27% net profit before taxes.

- Present value discount rate of 3%.

The following chart depicts the number of physical therapists that would have been added by location in each year, exclusive of Lindsay Winninger, so there is no offset for her mitigation of her damages.

**SPORTS REHAB ANTICIPATED GROWTH**
**ADDITIONAL PHYSICAL THERAPISTS HIRED BY YEAR**

| CITY | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | TOTAL |
|------|------|------|------|------|------|------|------|------|-------|
| Denver | | 1@$80 | 1@$90 | | | | | | 2 |

| Vail | 2@$120 | 1@$125 | | | | 1@$145 | | | 4 |
|---|---|---|---|---|---|---|---|---|---|
| Aspen | 1@125 | | | | 1@$140 | | | | 2 |
| Boulder | | | 1@$95 | | | 1@$110 | | | 1 |
| Steamboat | | | 1@$110 | | | 1@$125 | | | 2 |
| Total | **3** | **2** | **3** | **0** | **1** | **3** | **0** | **0** | **12** |

### SPORTS REHAB TOTAL LOST PROFITS
### BY YEAR (2017-2024)

| CITY | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| Denver | 0 | $134,640 | $285,120 | $300,960 | $316,800 | $498,960 | $522,720 | $546,480 | $2,605,680 |
| Vail | $380,160 | $594,000 | $617,760 | $641,520 | $665,280 | $918,720 | $950,400 | $982,080 | $5,749,920 |
| Aspen | $190,080 | $198,000 | $205,930 | $213,840 | $443,520 | $459,360 | $475,200 | $491,090 | $2,677,020 |
| Boulder | 0 | 0 | $150,480 | $158,400 | $166,320 | $348,480 | $364,320 | $380,160 | $1,568,160 |
| Steamboat | 0 | 0 | $174,240 | $182,160 | $190,080 | $396,000 | $411,840 | $427,680 | $1,782,000 |
| T'l Rev | $570,240 | $926,000 | $1,433,530 | $1,496,880 | $1,782,000 | $2,621,520 | $2,725,480 | $2,827,490 | **$14,382,780** |
| NP@27% | $153,965 | $250,020$ | $387,053 | $404,157 | $481,140 | $707,810 | $735,880 | $763,422 | **$3,883,447** |
| NPV@3% | $153,965 | $250,020 | $387,053 | $404,157 | $467,126 | $667,178 | $673,434 | $678,290 | **$3,681,223** |

(2)   Past increased costs to Sports Rehab in the form of sunk costs caused by Defendants' defamatory conduct during the period from September 1, 2019 to December 31, 2018 is the amount of rent and related cost associated with the Four Seasons in an amount estimated to be $3,240, based upon the $810 per month rent.

(3)   Sports Rehab owners' loss of future fair market value of Sports Rehab as an on-going business entity. The reduction of revenues associated with the destruction of on-going business value caused by the loss of revenue and associated profits is calculated by Plaintiffs' damages expert Arthur H. Cobb.

(4)   Winninger's agreements with The Steadman Clinic and the Steadman Philippon Research Institute, Winninger should have been earning at least $7,200 per month for consulting services over the course of at least 5 years. The estimated loss is approximately $700,000.

(5)   Winninger's estimated loss of future fair market value on the wellness business due to the destruction of her wellness business as a result of Defendants' tortious conduct is estimated on the basis of the following:

| YEAR | WELLNESS PROFIT | WINNINGER 10% | NPV @ 10% |
|---|---|---|---|
| 2018 | $500,000 | $50,000 | $50,000 |

| YEAR | WELLNESS PROFIT | WINNINGER 10% | NPV @ 10% |
|------|-----------------|---------------|-----------|
| 2019 | $600,000 | $60,000 | $60,000 |
| 2020 | $700,000 | $70,000 | $70,000 |
| 2021 | $800,000 | $80,000 | $79,200 |
| 2022 | $900,000 | $90,000 | $74,376 |
| | **Total** | **$350,000** | **$333,576** |

Damages for loss of reputation, inconvenience, emotional stress, humiliation, embarrassment, indignity, and public disgrace will be presented through the testimony of witnesses. To the extent Plaintiffs identify documents supporting these damages, this disclosure will be supplemented and the relevant documents produced.

***Treble Damages, Attorneys Fees, And Interest.*** Pursuant to 15 U.S.C. § 15(a), Plaintiffs are entitled to treble damages and attorneys fees in the event that they prevail against Vail Health in this action. They are also entitled to recover simple interest pursuant to 15 U.S.C. § 15(a). After the jury rules in Plaintiffs' favor, documents and information supporting the attorney fees, interest, and costs.

***Documents.*** Documents relevant to the damage analysis have been previously produced by Defendants and Plaintiffs in the Eagle County state court action and include the following:

- The contracts Winninger had with both The Steadman Clinic and SPRI;

- The Wellness Program presentation, emails with vendors and communications with The Steadman Clinic about the program, and emails with Greg Paschke related to the financial aspects of the Wellness Program, analyses of costs of program;

- Nico Brown's testimony regarding Howard Head rates and financial analysis Vail Health developed for joint venture negotiations with The Steadman Clinic;

- The Steadman Clinic's response to Vail Health's analysis related to The Steadman Clinic's profitability if it provided its own physical therapy services;

- Luke O'Brien's testimony regarding rates;

- Doris Kirchner's testimony regarding rates and joint venture with The Steadman Clinic;

- Mike Shannon's testimony regarding rates and joint venture with The Steadman Clinic;

- Vail Health's May 5, 2020 production of the STAR Archive Demand Bill for a sampling of patients

Plaintiffs also incorporate by reference all documents referenced and identified in the Expert Report of Arthur Cobb submitted in the Eagle County state court action.


Dated:  February 15, 2021          *s/Alan L. Kildow*_____
                                   Alan L. Kildow (admitted *pro hac vice*)
                                   15204 Wildwood Road
                                   Burnsville, MN 55306
                                   Telephone:  (970) 390-6675
                                   E-mail:  alkildow@aol.com

                                   Jesse Wiens, Colo. #33903
                                   Fahrenholtz & Wiens LLC
                                   100 West Beaver Creek Boulevard
                                   Suite 236
                                   Avon, CO 81620
                                   Telephone: (970) 949-6500
                                   E-mail:  fwlawyers@gmail.com

                                   Attorneys for Plaintiffs Lindsay Winninger and Sports Rehab Consulting LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 15, 2021 I served a true and correct copy of Plaintiffs' Rule 26(a)(1) Disclosures via e-mail on:

Shannon Stevenson
Janet A. Savage
Jackie Roeder
Daniel Richards
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO  80202
Counsel for Defendants/Counter-Plaintiff

*s/ Alan L. Kildow*
Alan L. Kildow