# EXHIBIT 29

1

```
 1                  UNITED STATES DISTRICT COURT
                        DISTRICT OF COLORADO
 2

 3   SPORTS REHAB CONSULTING,    .  Case No. 19-cv-02075-WJM-GPG
     LLC, a Colorado limited     .
 4   liability company, and      .
     LINDSAY WINNINGER, an       .
 5   individual,                 .
                                 .
 6            Plaintiffs,        .
                                 .  Wayne Aspinall Federal Bldg.
 7   vs.                         .  402 Rood Avenue
                                 .  Grand Junction, CO  81501
 8   VAIL CLINIC, INC.           .
     doing business as           .
 9   VAIL HEALTH,                .
     a Colorado nonprofit        .
10   corporation,                .
                                 .
11            Defendants.        .  October 22, 2021
     . . . . . . . . . . . . . . .  1:06 p.m.
12
            TRANSCRIPT OF PROCEEDINGS HELD BEFORE THE HONORABLE
13                WILLIAM T. RUCKRIEGLE, SPECIAL MASTER

14   APPEARANCES:

15   For the Plaintiffs:         Law Office of Allan L. Kildow
                                 By:  Allan L. Kildow
16                               By:  Sonya Braunschweig
                                 709 Potato Patch Drive
17                               Vail, CO  81657
                                 (970) 390-6675
18
     For the Defendants:         Davis Graham & Stubbs, LLP
19                               By:  Shannon Wells Stevenson
                                 By:  Daniel Richards
20                               1550 17th Street
                                 Suite 500
21                               Denver, CO  80202
                                 (303) 892-9400
22
     Court Recorder:             Clerk's Office
23                               U.S. District Court
                                 402 Rood Avenue
24                               Grand Junction, CO  81501

25
```

1   so we can move on to the next motion.
2               SPECIAL MASTER:  Now that we're ready to take up
3   four then we'll talk about some of these other issues.  I
4   would suggest that we take a break now and then come back and
5   take it up, and then talk about where we go on these things
6   raised here such as in camera review, and then also rather
7   loosely talk about number five.  Then hopefully we can let
8   everybody out of here a little early.
9               So let's take 15 minutes.  Thank you.
10              (Recess from 2:37 p.m. until 2:51 p.m.)
11              SPECIAL MASTER:  Ready to proceed on Plaintiffs
12  motion to compel number four, which I think we had finally
13  gotten around to identifying that's 157, response 176, reply
14  192.  Mr. Kildow?
15              MR. KILDOW:  Before we go into the depth of this
16  motion this citation was requested before or I mentioned it
17  before.  It is part of motion number four but the request was
18  for Continental Ore Company v. Union Carbide.  It's 370 U.S.
19  690 with a local citation at 699, a 1962 case by the United
20  States Supreme Court.
21              SPECIAL MASTER:  Thank you.
22              MR. KILDOW:  I don't want to drag the State Court
23  proceeding into this but many months ago I suspect you
24  thought I was half crazy talking about the issue of the
25  rendering provider asking for commissions that Vail Health

39

1  made to insurers and to Medicare.  That all raised questions
2  -- it opened a can of worms that is really striking, and it
3  reminds me of All the President's Men and just follow the
4  money.
5           This small hospital in Vail makes lots of money,
6  so we've been kind of following the money for some time,
7  which explains why a small rural hospital would spend so much
8  money chasing a physical therapist who lives in Edwards and
9  drives to Leadville every day for $30.00 an hour.
10          It is what Robert Bork said in his book, The Anti-
11 Trust Paradox, when the conduct of a party makes no economic
12 sense you have to ask why.  Often times the answer is because
13 there is anti-competitive conduct going on.
14          The reason that we have included the first section
15 of our reply brief is that Vail Health has not conducted a
16 reasonable search.  The reason we put that number one and we
17 feel it's so important is that they have not said what they
18 have done to conduct a reasonable search.
19          If we go to page 13 of their response, which is
20 docket 176, again at page 13, the heading is Vail Health does
21 not have the referral information Plaintiff requests in
22 interrogatory number four.  And it says, and I quote, at the
23 bottom of page 13, "Vail Health explained that it does not
24 compile or create the requested referral information --"
25 that is of doctor referrals to physical therapy -- "in the

1  ordinary course of business and it would be impractical and
2  burdensome to create this kind of analysis."
3          If you're wondering why we want information on
4  their reasonable search side of things it's because we have
5  recently deposed the two Vice Presidents of Howard Head and
6  Mr. O'Bryan, who testified on the 9th of October, he
7  testified that yes, in fact those referrals are tracked very
8  closely and that Nick Brown is the guy who tracks them.
9          Then Mr. Brown was deposed on Tuesday and he
10 testified oh yes, all of that is tracked very closely.  I
11 track it and I have a system for tracking it.  So what we
12 have is probably the two most knowledgeable witnesses who
13 have testified in the last ten days or so that have both
14 undercut the heading at page 13 of the reply brief.  So we
15 are entitled to the referrals.
16          Ms. Stevenson's contention that we have done
17 reasonable searches is absolutely undercut by the testimony
18 of those two very knowledgeable witnesses.  We are entitled
19 to all of the referral information.
20          It does relate directly to this anti-trust suit.
21 It relates because between Steadman and VSO they had --
22 depending on the time -- about 65 percent of the business of
23 Vail Health.  65 percent.  And in 2016 in December the CEO
24 of Steadman sent a text message to Ms. Kirchner, the CEO of
25 Vail Health, and Ms. Kirchner typed that text into an email

41

1  to Mike Shannon, the Chairman of the Board, and it basically
2  said -- and Mr. Brown testified and confirmed the email in
3  his deposition on Tuesday.  The message basically said just
4  want to give a heads up we are considering going our own
5  independent way when it comes to physical therapy.  We are
6  thinking of going to establish our own physical therapy
7  facility.
8          Now most rural hospitals lose money -- two-thirds
9  of them lose money every year.  This one makes $50 million a
10 year.  What would be the consequences if Vail Health lost its
11 referrals?  It wouldn't just be for physical therapy
12 referrals.  It would be for the use of operating suites
13 because most orthopedic surgery today is done on an
14 ambulatory surgery basis.  Knee surgery used to be two,
15 three, four days in the hospital.  That's not the case today.
16 People walk in and walk out the same day after a knee
17 replacement.  Two-thirds of all knee replacements are done on
18 an ambulatory basis.
19         That means that the surgeons at Steadman and VSO
20 don't need a hospital nearly to the extent that they did
21 before.  What would happen if Steadman walked away?  That
22 really starts the whole -- I'm not going to use the word
23 conspiracy but we'll just say the ball rolling with respect
24 to this anti-competitive activity.
25         So we are entitled to all of the documents

44

1   We don't have anything relating to that.
2              Then finally, we want Vail Health information
3   about Vail Health contributions to SPRI to the tune of $4.3
4   million a year.  It's almost impossible to find out what that
5   $4.3 million was for or is for.  How is it that the $4.3
6   million a year for ten years could possibly have any material
7   value to the hospital?
8              Stem cell research?  Sure, there's stem cell
9   research.  That is pretty much complete.  The technology and
10  the value of it is known.  But one of the things that's not,
11  you can't get stem cell replacement and have insurance pay
12  for it, or Medicare pay for it, or anybody else to pay for it
13  other than out of your pocket.  The author Brown, who wrote
14  many best-selling books was the kind of patient that gets a
15  stem cell injection.  It's not for the people down in Gypsum
16  or Dotsero or Eagle.  It's not for the average guy.  So why
17  is Vail Health spending $4.3 million that is only for the
18  rich?  Maybe it's not because it's for research.  Maybe it's
19  because it is part of a larger deal.
20             Because one of the things that came out of all
21  this is that -- we don't have these but we have enough
22  information to infer that it is -- Steadman has agreed not to
23  compete with Howard Head.  We believe the same thing is true
24  with VSO.  It has agreed not to compete with Howard Head.
25  The information that we have relating to the joint venture,

45

1  the proposed joint venture, is that they were all going to
2  enter into non-compete.  They would all be -- and Vail Summit
3  Orthopedic with its purchase of -- association with Avalanche
4  over -- is -- they're all in a horizontal level of
5  competition.
6            So what it is is Vail Health had an idea that they
7  were going to tie up the entire Valley and Summit County as
8  well from a physical therapy standpoint, which is not
9  divorced from orthopedic surgery.  The former CFO of Vail
10 Health, Charlie Crevling, testified that how surgery went so
11 went physical therapy, and how those orthopedic practices
12 went so went the fortunes of the hospital.  The reason is
13 because the Shaw Cancer Institute is a department they lose
14 money on, the gynecology operation they lose money on, the
15 general surgery department they make no money on.
16            Judge, it's my understanding that you live over in
17 Breckenridge and this is just not rocket science.  If you
18 take Breckenridge and -- what's the other ski area over there
19 up towards the pass?  Between the two ski areas --
20            SPECIAL MASTER:  There's four.
21            MR. KILDOW:  All you have to do if you're a
22 surgeon is go over there to the ski patrol check with an
23 ambulance and tell them that you'll take them in and get them
24 fixed.  It's like a funnel that has 50,000 or more potential
25 orthopedic accidents on the hill every weekend.  The same

46

```
 1   thing over here in Vail.  30,000 to 35,000 on Saturday.
 2   That's why you have these enormous orthopedic practices here
 3   in Vail.
 4              So all of this is a money making operation that
 5   Vail Health intended to tie everything up.  One of the
 6   interesting things about what Ms. Stevenson said, she said
 7   you know this never came about.  Well first of all, even if
 8   it did she has neglected over and over and over again to
 9   acknowledge Colorado Interstate Gas where the Tenth Circuit
10   said that if it doesn't happen that doesn't matter.  The non-
11   consummation of the deal does not obviate liability under
12   Section 2, attempt to monopolize.  That is the law.
13              We've cited those over and over but she still
14   comes back and says this never happened.  Well you know what?
15   First of all the law says even if it didn't happen you're
16   still potentially liable.  But here it did happen and that's
17   where Continental Ore comes into play.  If you look at the
18   whole Vail Health accomplished its anti-competitive objective
19   by keeping Steadman out of the market, which would have had
20   an absolutely devastating financial impact on Vail Health if
21   that had occurred.
22              As an aside, they had to execute Lindsay Winninger
23   along the way because she was going to run Vail Health's
24   already -- or Steadman had approached her as running their
25   physical therapy facility.  When the whole thing looked like
```

```
 1  you think you want to do an in camera review of the
 2  unredacted Board minutes to confirm that the redacted
 3  material is not relevant I think that's fine.  I think we've
 4  -- that is ripe.  I think the privilege issues are not ripe
 5  because we've not finished briefing the motion yet.
 6              SPECIAL MASTER:  Okay.
 7              MS. STEVENSON:  Or we could wait and do it all at
 8  one time after we've finished the motion to compel number
 9  five.
10              SPECIAL MASTER:  The only reason I was thinking
11  about approaching it now was to keep things moving but now
12  that I realize that in the privilege log they're both there
13  I'm slightly reluctant to start digging in to that when I
14  haven't had the briefing completed on number five.
15              Well, here's how we'll start.  The Plaintiffs will
16  identify what documents and information they need after
17  having had these hearings and the recent productions.  They
18  will present that to Vail Health by when, Mr. Kildow or Ms.
19  Braunschweig?  You know, including the reference to which
20  request for production interrogatory it is.
21              MS. BRAUNSCHWEIG: Right.  Right.  Does ten days
22  seem reasonable to you, Judge?
23              SPECIAL MASTER:  It's reasonable to me.
24              MS. BRAUNSCHWEIG:  Okay.
25              SPECIAL MASTER:  All right.  Without counting
```