# EXHIBIT 39

1

```
 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF COLORADO
 2

 3   SPORTS REHAB CONSULTING,      .   Case No. 19-cv-02075-WJM-GPG
     LLC, a Colorado limited       .
 4   liability company, and        .
     LINDSAY WINNINGER, an         .
 5   individual,                   .
                                   .
 6            Plaintiffs,          .
                                   .   Wayne Aspinall Federal Bldg.
 7   vs.                           .   402 Rood Avenue
                                   .   Grand Junction, CO  81501
 8   VAIL CLINIC, INC.             .
     doing business as             .
 9   VAIL HEALTH,                  .
     a Colorado nonprofit          .
10   corporation,                  .
                                   .
11            Defendants.          .   October 21, 2021
     . . . . . . . . . . . . . . . .   1:12 p.m.
12
             TRANSCRIPT OF PROCEEDINGS HELD BEFORE THE HONORABLE
13                 WILLIAM T. RUCKRIEGLE, SPECIAL MASTER

14   APPEARANCES:

15   For the Plaintiffs:           Law Office of Allan L. Kildow
                                   By:  Allan L. Kildow
16                                 By:  Sonya Braunschweig
                                   709 Potato Patch Drive
17                                 Vail, CO  81657
                                   (970) 390-6675
18
     For the Defendants:           Davis Graham & Stubbs, LLP
19                                 By:  Shannon Wells Stevenson
                                   By:  Daniel Richards
20                                 1550 17th Street
                                   Suite 500
21                                 Denver, CO  80202
                                   (303) 892-9400
22
     Court Recorder:               Clerk's Office
23                                 U.S. District Court
                                   402 Rood Avenue
24                                 Grand Junction, CO  81501

25
```

1          MR. KILDOW:  Correct.  Now one of the points that

2     the Tenth Circuit made was that in the Lantec case the Utah

3     District Court excluded the Plaintiff's expert on the grounds

4     that, among other things, the expert didn't conduct a

5     consumer survey of the patients that were at issue in the --

6     defining the geographic market.

7          Now the Tenth Circuit agreed with the District

8     Court on the fact that the expert did not conduct a consumer

9     survey.  I would note that in this case the two plaintiffs

10    who were deposed here in the Federal case, one Brad

11    Schoenthaler, a German name --

12          SPECIAL MASTER:  I remember.

13          MR. KILDOW:  He was deposed on July 8th of this

14    year.  In that deposition the defendant, Vail Health, asked

15    Mr. Schoenthaler whether the Plaintiff had conducted a survey

16    regarding whether Vail Valley residents would be willing to

17    travel over Vail Pass to the Frisco, Dillon, and Silverthorne

18    area for physical therapy services, and Mr. Schoenthaler

19    answered no.  That was at page 33 of that deposition.

20          Then again on October 7th Lindsay Winninger was

21    deposed and the same question was asked at page 109 whether

22    the Plaintiff had conducted any surveys of the same issues

23    almost verbatim.

24          So that suggests to us that the survey issue is

25    something that Vail Health may bring up at a later point in

1  time pointing now to the Tenth Circuit case and Lantec.  Of

2  course the Plaintiff has long since anticipated that that's

3  an issue for an expert and -- but the expert to conduct the

4  survey needs to have the names and the addresses of the tens

5  of thousands of patients that have visited Vail Health

6  physical therapy clinic, both here in the Vail Valley and in

7  Summit County.

8          We have asked for that information and

9  surprisingly last night at about 5:08 we received some

10  information -- some information although no names or

11  addresses.  I'm going to address that again in just a moment.

12          Plaintiffs are also entitled to under the Lantec

13  case the price of the services at issue and the cost incurred

14  in providing those services.  And the Tenth Circuit dismissed

15  the case because of a lack of analysis in some of these basic

16  areas.  I think it's very clear that these are the required

17  elements more or less for the Tenth Circuit, to which the

18  Plaintiffs are entitled to discovery so they can present

19  evidence in summary judgment and trial of this case.

20          Why Vail Health is withholding that evidence I

21  don't know.  If they're going to seek the Plaintiffs on the

22  relevant geographic market issue they're going to have to do

23  it on the basis of the evidence that the Tenth Circuit has

24  identified in the Lantec case.

25          In responding to Plaintiff's motion number one,

1  the hospital is facing any number of incredibly pressing

2  issues between COVID and vaccines and mental health, and we

3  were getting a lot of push back on the amount of time folks

4  had to spend on this, but we did push it as hard as we could.

5          I do regret that it was, you know, yesterday, but

6  we had represented we would provide the information and we've

7  done that.

8          Now I want to speak specifically to the question

9  about patient names and addresses.  This is a tremendous

10  concern to the hospital.  First of all, from the very

11  beginning of responding to this discovery request we had told

12  the Plaintiffs, you know, we don't want to produce what

13  you've provided but we will work with you on providing the

14  information in some sort of de-identified form.  The

15  Plaintiffs actually represented that that would be okay.

16          I think what I hear Mr. Kildow saying now -- and I

17  don't think he's ever raised this until these actual motions

18  -- is that he thinks he needs patient name and address

19  information in order to do consumer surveys.  This is

20  incredibly troubling.

21          I mean what he's saying is he would take this

22  highly sensitive protected health information -- I know you

23  understand the background of the case and the sensitivities

24  to this issue overall -- and use that information to give to

25  an expert who would then reach out to these individuals for

1    purposes of getting information about this case.   That cannot

2    happen.   I think that would be a massive breach of the

3    hospital's -- everyone's obligations with respect to keep

4    this patient health information protected.

5              He's got the zip codes for each and every one of

6    these patients listed, which I think is the information that

7    he actually could conceivably need.  But I want to speak

8    about -- I agree that often times experts will conduct

9    consumer surveys in areas to determine geographic market, but

10   those are not done -- and certainly are not necessarily done

11   by contacting actual -- certainly of a health facility --

12   actual patients.  They're done by using focus group entities

13   and sending out broad surveys in the same way you would do if

14   you were a marketing company or something like that.

15             There's certainly nothing that has prevented him

16   and his expert from undertaking those activities to survey

17   people in the Vail Valley, or Summit County, or anywhere else

18   as to what their preferences would be with respect to seeking

19   physical therapy services.  But the notion that he can use a

20   patient list from the hospital to do that is not something

21   that can be done.

22             I think that really is where our dispute is

23   narrowed down to is patient names and addresses.  Again, for

24   the reasons I've articulated I do not believe that we can

25   produce that information.

1    Court to remain within the absolutely tried and true law when

2    it comes to the definition of geographic market, and what Ms.

3    Stevenson is suggesting is not in any way the Federal law

4    relating to geographic market.

5         SPECIAL MASTER:  I'll go back and re-review that.

6    Here's -- I think I understand pretty clearly because I know

7    what you're saying.  Let me ask you a pointed question.  Why

8    do you need the names and addresses?  Whatever your answer is

9    -- as opposed to just the zip code?  This was my impression

10   when I first read the motion after Judge Gallagher referred

11   them to me.

12        Secondly, do you intend to conduct any survey by

13   contacting those patients?

14        MR. KILDOW:  The answer to the second part is yes.

15   The answer to the first part has to do with survey

16   technology.  What we would do is to focus these survey

17   samples on those people within the patient pool of Vail

18   Health, and we would probably enter into some agreement or

19   stipulation with Vail Health as to the questions that would

20   be asked.  They would not involve things that would be PHI

21   related.

22        What we would -- but the difference is how do you

23   pick out the samples to be surveyed.  We are talking about

24   tens or hundreds of thousands of patients with respect to

25   Vail Health alone, and so to just survey randomly people who

1    have no orthopedic problems, no need for a physical

2    therapist, have never been to a physical therapist, have no

3    idea of what the cost of physical therapy would be would be

4    -- let's just face it, not very meaningful.  You're going to

5    people who are in that market and conduct the survey that

6    way.  And so it's a much better, much more accurate

7    situation.  And the idea of the survey is set forth in the

8    Tenth Circuit case of Lantec.  This is a matter of law.  We

9    are entitled to do that.  The only question is how we do it

10   so we don't breach any PHI rules, and we can do that.

11           Unfortunately I know a little bit about Vail

12   Health and they do patient surveys themselves.  You know, how

13   was your stay, did you find it acceptable.  Were the services

14   okay?  We can do that kind of a survey, you went for physical

15   therapy, would you travel to get that same physical therapy,

16   would you travel to Breckenridge to get it and save $20.00.

17   Vice versa.  Very simple.

18           SPECIAL MASTER:  Well, I considered that thinking

19   ahead too because otherwise -- and we -- this case is all

20   about access to confidential information and breaches of

21   that.  And I anticipated even if I granted you what you're

22   asking for an extremely strict protective order, which

23   according to your response just now would not have allowed

24   that type of survey.

25           By the same token, recognizing that surveys are