# Exhibit 10

DATE FILED: October 1, 2021 5:43 PM
FILING ID: B7E6FE1A6EEAD
CASE NUMBER: 2017CV30102

DISTRICT COURT, EAGLE COUNTY
STATE OF COLORADO

     885 Chambers Avenue

Eagle, CO 81631

---

**Plaintiffs:** LINDSAY WINNINGER, an individual, and
SPORTS REHAB CONSULTING LLC, a Colorado limited
liability company,

v.

**Defendants:** DORIS KIRCHNER, an individual, and VAIL
CLINIC, INC. d/b/a VAIL VALLEY MEDICAL CENTER,
a Colorado nonprofit corporation.

---

**Counter-Plaintiff:** VAIL CLINIC, INC., D/B/A VAIL VALLEY
MEDICAL CENTER, a Colorado corporation,

v.

**Counter-Defendants:** LINDSAY WINNINGER, an individual,
and SPORTS REHAB CONSULTING LLC, a Colorado limited
liability company,

---

**Third-Party Plaintiff:** VAIL CLINIC, INC., D/B/A VAIL VALLEY
MEDICAL CENTER, a Colorado nonprofit corporation,

v.

**Third-Party Defendant:** DAVID J. CIMINO, an individual.

---

▲   COURT USE ONLY   ▲

Case No: 2017CV030102

Div.: 4      Ctrm: 4

---

Jesse Wiens, Colo. #33903
Fahrenholtz & Wiens LLC
100 West Beaver Creek Boulevard, Suite 236
Avon, CO 81620
Telephone:  (970) 949-6500
E-mail:  fwlawyers@gmail.com

Attorneys for Plaintiffs/Counter-Defendants LINDSAY
WINNINGER and SPORTS REHAB CONSULTING LLC

---

**PLAINTIFFS' REPLY TO REFILED MOTION FOR SUMMARY JUDGMENT
ON VAIL HEALTH'S TRADE SECRETS, CIVIL THEFT, CONVERSION,
AND CONSPIRACY COUNTERCLAIMS**

## **INTRODUCTION**

Vail Health's opposition makes it clear that its counterclaims against Plaintiffs must be dismissed as a matter of law because Vail Health, among other things:

- ▪ Does not dispute that the CUTSA must be construed consistent with the majority of the UTSA jurisdictions, which preempt all statutory and common law claims based on the same facts as the trade secrets claim;

- ▪ Has no civil theft or conversion claim for the taking of patient PHI because private parties do not have a private right of action for HIPAA violations;

- ▪ Does not provide any affidavit or proof that would defeat the statute of frauds requirement of a signed writing to transfer ownership rights to "proprietary" intellectual property created and owned by RPC-Vail;

- ▪ Cannot prove ownership under the Services Agreement because it was an illegal agreement under both state and federal law;

- ▪ Has not proven permanent deprivation or dominion and control to establish its civil theft and conversion claims because Winninger only has copies; and

- ▪ Has abandoned its claim for trade secret misappropriation as to the RPC-Vail documents.

Plaintiffs acknowledge that the CUTSA preemption issue requires some analysis to confirm the correctness of Plaintiffs' strictly legal assertion that the majority of the UTSA states would preempt Vail Health's tort and statutory claims and that this Court must follow that majority.  Plaintiffs have attached, as Exhibit 37, *Greater Education Opportunities Foundation v. Miles*,[1] a case from El Paso County District Court that addresses very similar legal issues involving civil theft and the other tort claims presented here.  *Miles* did not directly address the CUTSA preemption, and it is not precedent that this Court is bound to follow, but the ease with which Judge Prince dissected and ultimately disposed of the issues in that case may be of value here.

---

[1]    Case No. 17CV30700 (Dist. Ct. El Paso Cnty. Jan. 17, 2019), attached as Ex. 37.  All exhibits referenced herein are Plaintiffs' exhibits unless otherwise indicated.

The El Paso court addressed a summary judgment motion involving a former employee who took copies of intellectual property. The employer sued, asserting claims of civil theft, conversion, and trade secret misappropriation. The court was faced with an underlying question about ownership. But unlike here, the court was faced with factual issues about ownership. The plaintiff submitted a conclusory affidavit declaring that the employer owned the intellectual property, which "state[d] little more than the conclusion of continued ownership despite provision to third parties. No agreements for use reserving ownership are identified…."[2] The court chose, however, not to decide the ownership issue, particularly given its decision on the other claims.

*First*, the court addressed civil theft, recognizing that a common element that must be proven is that the liable party "permanently deprived" the owner of the item's use or benefit.[3] The court granted summary judgment because "copying [files] does not satisfy the requirement of permanent deprivation found in Colorado's theft statute. This type of copying is more appropriately governed by applying the contours of a trade secrets claim than a theft claim,"[4] which is what the CUTSA preemption cases are about.

*Second*, the employee also asserted a "copying" argument as to conversion. While recognizing that the standards for civil theft and conversion differ, in that conversion requires only an exercise of dominion and control, the court granted summary judgment on the conversion claim. The court found that the nature of the employer's claim is a "misappropriation of intellectual property not the seizure of a physical item like a car or

---

[2]   *Id.* at 6.
[3]   *Id.* at 7.
[4]   *Id.*

even an intangible like a chose in action."  The employer did not allege that the employee seized key papers to hold them ransom, otherwise keep them, or use physical documents for his own purpose.  "Instead, the allegation is that the value was in the ideas and concepts" and that the former employee allegedly used the ideas and concepts and misused them by copying them.  "This is not a claim for the traditional tort of conversion but a claim for misuse of intellectual property rights.  Colorado has defined the parameters of such a claim within the trade secrets act.  That act governs [the employer's] right to recover, not conversion."[5]  Again, essentially a preemption argument.

*Finally*, as to the misappropriation claim, the court noted that it has "litigated many, many trade secrets cases and has reviewed a large number of descriptions of trade secrets and measure[s] taken to protect secrecy.  None have been as conclusory as presented here."[6]  The one specific claimed trade secret was widely distributed, not prominently labeled as a trade secret, recipients were not actively informed of the secrecy attached to the document, no specific procedures or policies were created to maintain its secrecy, recipients were not required to sign acknowledgments regarding its secrecy, and there was no process for tracking the number and distribution of the trade secrets.  This Court is no longer required to address the 4,000 trade secrets that Vail Health asserted its 2012 claim to be based on because Vail Health has explicitly abandoned that claim.

At all events, the El Paso court found a very straight-forward way to address many issues facing this Court, and Plaintiffs thought *Miles* might be useful.

---

[5]      *Id.*
[6]      *Id.* at 10.

3

## ARGUMENT

### I. ALL OF VAIL HEALTH'S CIVIL THEFT, CONVERSION, AND CONSPIRACY CLAIMS ARE PREEMPTED BY THE CUTSA.

#### A. Vail Health Does Not Dispute That CUTSA Must Be Interpreted To Give Effect To The Legislature's Intent.

In their motion, Plaintiffs outlined the statutory construction rules required by the Colorado Supreme Court in interpreting the CUTSA, which Vail Health does not dispute. It requires looking "first to the plain language of the statute," and if unclear, then a court may "resort to other rules of statutory construction."[7]  In doing so, the court "must consider whether one party's interpretation better comports with the overall statutory scheme" and "the dominant view…decided by courts in other states"[8]—that is, it should be construed to promote uniformity among the states adopting the same statute.

Vail Health's analysis of the CUTSA is limited to four sentences in its opposition but boils down to this: "CUTSA only preempts 'civil remedies for misappropriation of a trade secret'" and "does not preempt other civil remedies that are not based upon misappropriation of a trade secret."[9]  Vail Health does not address the definition of "trade secret," but in ¶ 98 of its amended counterclaim it does.  There, it admits that trade secrets under C.R.S. § 7-74-102 include "confidential business or financial information, listing of names, addresses, or telephone numbers, or any other information relating to any business or profession which is secret and of value"[10]—all of which is at issue here.

---

[7]   *In re Marriage of Rose,* 134 P.3d 559, 562 (Colo. Ct. App. 2006) (citation omitted).
[8]   *Id.  See also* C.R.S. § 7-74-109 (stating CUTSA to be construed to make uniform the law).
[9]   Vail Health Opp'n at 8.
[10]   Am. Counterclaim ¶ 98.  Vail Health attempts to recharacterize the documents as "proprietary," but offers no definition.  But BLACK'S LAW defines it as "[i]nformation in which the owner has a protectable interest.  See Trade Secret."  C.R.S. § 7-74-102 defines "trade secrets" to include confidential information, so Vail Health's recasting the documents as "proprietary" is a distinction without a difference.

4

Vail Health does not address *Gognat v. Ellsworth,*[11] which stated that "trade secret" is broadly defined to "***to include all or part of virtually any information that is of value***, whether it be in the nature of…business, financial, or professional information."[12] "[T]there can be little doubt that the combination of these three things—defining a trade secret as…any valuable information intended to be kept confidential; defining misappropriation to include virtually any improper acquisition, disclosure, or use of a trade secret; and defining a single claim for purposes of the limitations period…—*evidences a design, or legislative intent, to discourage the differentiation of various acts of misappropriation*."[13]  Yet, that is exactly what Vail Health seeks the Court to do here.

Nor does Vail Health address that the CUTSA broadly defines "misappropriation" to cover a wide range of conduct, including theft, bribery, misrepresentation, inducement of a breach to maintain secrecy, and unauthorized use and disclosure[14]—the same conduct alleged here.  So under the plain language of § 7-74-108, the legislature provided a statutory remedy for theft or misuse of "confidential" information if it meets the required elements of a trade secret.  As one commentator explains:  "The Restatement of Unfair Competition, following the lead of the Uniform Trade Secrets Act…*eliminates the distinction between information that is a trade secret and other confidential information.* All secret information of economic value falls within the definition of trade secrets. Trade secrets are protected against any misappropriation.[15]

---

[11]     259 P.3d 497, 501 (Colo. 2011).
[12]     *Gognat v. Ellsworth*, 259 P.3d 497, 501 (Colo. 2011) (emphasis added).
[13]     *Id.* (emphasis added).
[14]     C.R.S. § 7-74-102(1)-(2).
[15]     Edmund W. *Kitch, The Expansion of Trade Secrecy Protection and the Mobility of Management Employees: A New Problem for the Law*, 47 S.C. L. Rev. 659, 662 (Summer 1996).

The rationale for preemption is to preserve a single claim for misappropriation and eliminate other claims that may not meet the statutory standard for a trade secret.[16]  If that were not so, it "would undermine the uniformity and clarity that motivated the creation and passage of the Uniform Act,"[17] reducing the UTSA to just another basis for recovery and leaving prior law untouched. So the CUTSA, like the UTSA, displaces a broad swath of claims:  ***"tort, restitutionary, and other law of this state***….[18]  By exempting "contractual remedies, whether or not based upon misappropriation of a trade secret" and "other civil remedies that are not based upon misappropriation of a trade secret"[19] from its preemptive penumbra, only claims for wrongs ***distinct from*** pure information misappropriation survive.  Allowing alternative claims to be pled, renders the preemption provision meaningless, contravening rules of construction[20] and legislative intent.

### B.     Vail Health Does Not Dispute Plaintiffs' Interpretation Is Consistent With The Majority Of States Considering The Preemption Issue.

At pages 9-11 of their motion, Plaintiffs cite fifteen cases that hold in one form or another that: "all free-standing alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade secret status" is preempted.[21]  Vail Health does not dispute that this is the majority view.

---

[16]      *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 637 (D. Del. 1991). *See also Composite Marine Propellers v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir. 1992) (noting preemption under Illinois law includes confidential information; if no misappropriation there can be "no legal wrong").

[17]      *Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 789 (W.D. Ky. 2001).  *See also Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943, 949 (W.D. Mich. 2003) (allowing otherwise displaced tort claims to proceed would defeat UTSA's purpose).

[18]      C.R.S. § 7-74-108(1).

[19]      C.R.S. §7-74-108(2)(a)-(b).

[20]      *Johnson v. Sch. Dist. No. 1 in Cnty. of Denver*, 413 P.3d 711, 716 (Colo. 2018) ("We cannot…interpret statutory provisions so as to render any of their words or phrases meaningless").

[21]      *Hauck Mfg. Co. v. Astec Indus., Inc.,* 375 F. Supp. 2d 649, 655 (E.D. Tenn. 2004).

**C.      Vail Health Does Dispute That The Operative Facts Are ALL The Same.**

At page 12 of their motion, Plaintiffs argued that Vail Health "cannot dispute that the information at issue with respect to its misappropriation and tort claims are the same." Plaintiffs were correct.   Vail Health does not even mention it.   Nor does Vail Health address, and thus concedes, that its damages derive solely from misappropriation of trade secrets.   This is fatal to Vail Health's tort claims.   The majority interprets the UTSA to displace statutory and common law claims arising out of the same operative facts.[22]

Whether the intellectual property is characterized as a "trade secret," "confidential business information," or "proprietary information," makes no difference.   Under the majority view, it is irrelevant whether intellectual property is a trade secret or not.[23] Moreover, Vail Health's admission that the intellectual property is not a trade secret or has any independent value means that Vail Health has no claim.[24]   At page 14 of their motion, Plaintiffs cited *Virtual Cloud Services, Inc. v. CH2M Hill, Inc.,*[25] a case Vail Health does not address, where tort claims were dismissed as preempted because the intellectual property had no value other than as a trade secret.[26]   "[T]here is no remedy for the loss of something to which one has no ownership rights. The ownership

---

[22]      *Hauck,* 375 F. Supp. 2d at 654; *Allied Erecting & Dismantling Co., Inc. v. Genesis Equip. & Mfg, Inc.,* 649 F. Supp. 2d 702, 720 (N.D. Ohio 2009); *BlueEarth,* 123 Haw. at 318.

[23]      *Ethypharm S.A. France v. Bentley Pharms., Inc.*, 388 F. Supp. 2d 426, 433 (D. Del. 2005).   *See also BlueEarth*, 123 Haw. at 328 (preemption decided regardless of whether confidential information is trade secret or not); *Miami Valley Mobile Health Servs., Inc. v. Examone Worldwide, Inc.*, 852 F. Supp. 2d 925, 940 (S.D. Ohio 2012) (same).

[24]      *Cypress Advisors, Inc. v. Davis*, Civil Action No. 16-cv-01935-MSK-MEH, 2019 WL 1242331, at *5 (D. Colo. Mar. 18, 2019); *Hawg Tools, LLC v. Newso Int'l Energy Servs.*, *Inc*., Civil Action No. 14-cv-03011-REB-MJW, 2015 WL 1064519, at *5 (D. Colo. Feb. 23, 2015)

[25]      Civil Action No. 02-cv-01004, 2006 WL 446077 (D. Colo. Feb. 21, 2006).

[26]      *Id.* at *four.   *See also* Gates *Corp. v. CRP Indus., Inc.* No. 16-cv-01145, 2017 WL 5714342, at *6 (D. Colo. Nov. 28, 2017) (noting labor, skill, and money are distinct from trade secrets); *Powell,* 948 F. Supp. at 1474 (dismissing conversion claim for intellectual property but allowing for physical property).

rights…exist only if the software constitutes protectible intellectual property….[27]  So Vail Health's attempt to recharacterize intellectual property as "proprietary" leads to the same result—it either has a trade secret misappropriation claim, or it has no claim at all.

### D.   Vail Health Improperly Seeks The Court To Adopt The Minority View.

Vail Health advocates that it can plead in the alternative but that is the ***minority interpretation of the UTSA preemption***.  It relies on three Colorado federal district court cases.  None are helpful here.  For example, in *Abbott Laboratories v. Finkel,*[28] the court noted the claim was "an example of a claim that may be preempted," but it could not decide that issue at the Rule 12(b)(6) stage because the converted property was not adequately described.[29]   *Gates Corp. v. CRP Industries, Inc.*[30] also agrees with the majority: if the tort claims derive from the same nucleus of operative facts, they are preempted. But unlike here, the plaintiff alleged facts distinct from intellectual property. And *Satcom Solutions & Resources LLC v. Pope,*[31] misconstrued *Cypress Advisors,* which held that items not constituting intellectual property—that is, physical items—were not preempted.[32]   It ignored *Powell Products,* which instructs that "[t]o the extent that plaintiff's claim seeks recovery for defendants' misappropriation of plaintiff's intellectual property, it is seeking to recover for misappropriation of trade secrets."[33]  *Satcom* also did

---

[27]         *Virtual Cloud,* 2006 WL 446077, at *3.
[28]         No. 17-cv-00894, 2017 WL 5517399 (D. Colo. Nov. 17, 2017).
[29]         *Id.* at *3.
[30]         No. 16-cv-00145, 2017 U.S. Dist. LEXIS 195053, at * 20 (D. Colo. 28, 2017) (concluding that "labor, skill, and money" is distinct from misappropriation of trade secrets).
[31]         No. 19-cv-02104, 2020 WL 4511773, at *11-12 (D. Colo. Apr. 20, 2020).
[32]         *Cypress Advisors,* 2019 WL 1242331, at *5 (citing *SBM Site Services*, *LLC v. Garret*, 2012 WL 628619 (D. Colo. Deb. 27, 2012) (because claim includes actual ***physical items***, civil theft claim was not preempted)); *Powell*, 948 F.Supp.2d at 1475 (because claim identifies ***physical items,*** conversion claim preempted as to intellectual property but not physical items).
[33]         *Powell*, 948 F. Supp. at 1475.

not conduct any statutory analysis, analyze how a trade secret is defined, address the CUTSA's uniformity mandate, or determine whether the operative facts were the same.[34]

Vail Health fares no better with cases applying the law of California, Pennsylvania, Virginia, and South Carolina.[35]  California follows the majority position, at least as to this issue,[36] and the other three—unlike Colorado—have no provision mandating that their version of the UTSA "be applied and construed to effectuate its general purpose to make uniform the law…among states enacting it."[37]  Perhaps most importantly, a majority of courts reject the minority view, and Vail Health provides no legal basis to adopt it here. In contrast, in Plaintiffs' motion at page 10, they cited *Wright Medical Technology v. Paragon 28, Inc.,* a case that Vail Health does not discuss, likely because it follows the majority and rejected a plaintiff's attempt to plead in the alternative.[38] Because the claims there—like here—were based on the same facts, the intellectual property had no independent value, and no physical items were stolen, the tort claims were preempted.[39]

Apparently recognizing that its position is on tenuous grounds, Vail Health argues that if the Court follows the majority, only the conversion claim would be preempted.[40]  It cites one case from California for this proposition.  But California law on the scope of the preemption is inapplicable here—California did not adopt the UTSA preemption provision;

---

[34]     *Id.* at 1474-75.
[35]     Vail Health Opp'n at 9 n. 5.
[36]     *See, e.g., Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 239 n.22 (Cal. Ct. App. 2010) (the CUTSA preempts common law claims based on taking valuable information, though not a trade secret).
[37]     *Compare* C.R.S. § 7-74-109 (mandating uniformity) *with* 12 Pa. C.S. § 5301 *et seq.;* Va. Code § 59.1-336 *et seq.*; S.C. Code § 39-8-20 *et seq.* (including no uniformity provision).
[38]     Civil Action No. 18-cv-00691-PAB-STV, 2019 WL 4751807, at *6-7 (D. Colo. Sep. 30, 2019).
[39]     *Id.  See also Cypress Advisors*, 2019 WL 1242331, at *5 n.5 (owner must demonstrate some other legal basis to exclusive use); *Hawg Tools*, (recommending dismissal of tort claims because not "protectable by virtue of anything other than their potential status as trade secrets").
[40]     Vail Health Opp'n at 11.

9

Colorado did.  C.R.S. § 7-74-108 expressly "displaces conflicting **tort, restitutionary, and other law of this state**….[41]  It does not limit the preemption to only "common law claims" but includes "other law of this state," thus encompassing statutory and common law claims.[42]  If not, then "other law of this state" would have no meaning.  Moreover, "civil theft" has been characterized as a "tort,"[43] so it would fall within the "tort" category as well.

Finally, citing no legal authority, Vail Health asserts its conspiracy claim survives even if its other tort claims do not.  But if "acts alleged to constitute the underlying wrong provide no cause of action, then there is no cause of action for the conspiracy itself."[44] Moreover, the majority of courts preempt conspiracy claims based on the same operative facts as the misappropriation claim,[45] which Vail Health confirms is the case here.[46]

## II.   ALL OF VAIL HEALTH'S TORT CLAIMS ARE THINLY-DISGUISED HIPAA VIOLATIONS FOR WHICH THERE IS NO PRIVATE RIGHT OF ACTION.

In its opposition, Vail Health asserts that Plaintiffs' and Cimino stole Vail Health documents containing "PHI," which as ¶ 8 of the amended counterclaim makes clear, is **defined by HIPAA**. After referencing PHI **twenty-two times**,[47] Vail Health says its claims

---

[41]     C.R.S. § 7-74-108(1).

[42]     *See, e.g., FinancialApps, LLC v. Envestnet, Inc.,* Civil Action No. 19-1337-CFC-CJB, 2020 U.S. Dist. LEXIS 118946, at *30 (July 6, 2020) (preempting Deceptive Trade Practices Act claim); *3A Composites USA, Inc. v. United Indus.,* Case No: 5:14-cv-5147, 2015 U.S. Dist. LEXIS 122745, at *22 2015 WL 5437119 (W.D. Ark. Sept. 15, 2015) (same).  *See also Hauck*, 375 F. Supp. 2d at 654 (statutory and common law preempted); *Allied Erecting & Dismantling Co., Inc. v. Genesis Equip. & Mfg, Inc.*, 649 F. Supp. 2d 702, 720 (N.D. Ohio 2009) (same); *BlueEarth,* 123 Haw. at 318 (same).

[43]     *See, e.g., Bermel v. BlueRadios, Inc.*, 440 P.3d 1150, 1157 (Colo. 2019) (indicating that civil theft "would appear to amount to a tort in Colorado"); *Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186, 1190 (Colo. Ct. App. 2009) (characterizing civil theft as intentional tort).

[44]     *Double Oak Constr. L.L.C. v. Cornerstone Dev. Int'l, L.L.C.* 97. P.3d 140, 146 (Colo. Ct. App. 2003).

[45]     *Stolle Mach. Co. v. Ram Precision Indus.,* 605 Fed. Appx. 473, (6th Cir. 2015) (conspiracy preempted); *CDC Restoration & Constr., LC v. Tradesmen Constrs. LLC,* 274 P.3d 317, 33 3 (Utah Ct. App. 2012) (same); *Hauck,* 375 F. Supp. 2d at 661 (same); *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 898 (Del. 2002) (same).

[46]     Vail Health Opp'n at 12-13 (stating that conspiracy claim is for "unlawful theft, use, and disclosure of Vail Health's confidential information, proprietary information and trade secret information").

[47]     Vail Health Opp'n at 1, 3-4, 6, 12-13, 15, 20-21, 27-28, 31, 35.

do not involve HIPAA-protected PHI,[48] despite repeatedly touting "Lindsay Winninger's Theft of PHI."[49]  To avoid that its PHI claims are obvious HIPAA claims, for which there is no private right of action, Vail Health makes a conclusory statement that its claims are actually premised on "patient medical records and other proprietary documents."  But as Vail Health's now head of IT Ryan Kolczak confirmed, medical records were stored in Cerner and Therapy Source,[50] a separate medical record systems required by law[51] and separate from where Winninger and other RPC-Vail therapists stored their documents.

Additionally, Vail Health has not authenticated any of the PHI or purported medical records.  It submitted no sworn affidavit or provided any other evidentiary proof that the PHI documents are "medical records," that Vail Health "owned" the records, or that the PHI documents came from Cerner or Therapy Source (they did not).  It provides no foundational or evidentiary proof that the documents are what Vail Health claims them to be and fails to meet the requirements of C.R.C.P. 56(e) and C.R.E. 901(a).  Therefore, its unsubstantiated and unverified medical records argument may not be considered. Summary judgment should be granted as to Vail Health's thinly-disguised HIPAA claims.

## III.   SUMMARY JUDGMENT IS APPROPRIATE ON THE CIVIL THEFT OF MEDICAL RECORDS CLAIM UNDER C.R.S. § 18-4-412.

Despite the Colorado Supreme Court's Order, Vail Health states that summary judgment is not warranted.  Ironically, Vail Health moved for summary judgment on that claim, which has not been withdrawn.  Plaintiffs are entitled to summary judgment.

---

[48]   *Id.* at 13.
[49]   *Id.* at 1.
[50]   Ex. 38 at 12:5-13:1-2, 13:21-14:18 [Kolczak Dep.].
[51]   6 Colo. Code Regs. § 1011-1-04-8.104.

## IV.    SUMMARY JUDGMENT IS APPROPRIATE BECAUSE VAIL HEALTH DID NOT, AND COULD NOT, OWN THE RPC-VAIL DOCUMENTS.

### A.    Vail Health Does Not Dispute It Must Own The RPC-Vail Documents.

At pages 17-18 of their motion, Plaintiffs asserted that a fundamental element of Vail Health's misappropriation, civil theft, conversion, and conspiracy claims is that Vail Health must prove it owned the RPC-Vail documents at the time Winninger took them in May 2012.  Vail Health does not dispute that it must prove ownership.

### B.    Vail Health Has Not Shown It Owned The RPC-Vail Educational And Training Materials And Protocols Before November 1, 2012.

Vail Health does not dispute that from November 2019 until February 2021, Plaintiffs repeatedly sought Vail Health to produce documents proving it owned the RPC-Vail documents.  Despite claiming that 4,000 RPC-Vail documents were Vail Health trade secrets,[52] it produced no evidence of ownership.   In their motion, Plaintiffs offered the testimony of Victoria Bartel, the head of RPC-Vail's residency program, who testified it was "common knowledge" that RPC-Vail employees could take that information.[53]  Vail Health offers no evidence to the contrary.  Plaintiffs also asserted, which is undisputed, that Vail Health did not invest anything to create the documents,[54] and there was no agreement with RPC-Vail prior to, or even after Vail Health's takeover, that assigned to Vail Health ownership rights in the RPC-Vail documents.  (In fact, RPC-Vail/Proaxis later sold those rights to another physical therapy group, ATI.)[55]  Vail Health also did not dispute that the protocols and exercises are based on generally-recognized standards in

---

[52]    Exs. 12-13 [Suppl. Answer to Interrog. No. 1 and certification designation was true and correct].
[53]    Ex. 19 at 61:9-18 [Bartel Dep.]
[54]    Ex. 2 ¶¶ 7-8, 11, 14, 22 [Hagerman Aff.].
[55]    Ex. 20 ¶ 34 and Ex. N [Schoenthaler Decl.].

the industry[56] and publicly available.[57]   So even if Vail Health "owned" them, it has no basis to claim that the documents were ever confidential.

Vail Health attempts to deflect by claiming Plaintiffs failed to identify the documents constituting educational and training materials.  It apparently did not read the declarations of Winninger and her partner, Brad Schoenthaler, or the affidavit of RPC-Vail's owner Topper Hagerman.  Those sworn statements describe the various documents, attaching as exhibits a voluminous number of protocols, exercises, and training and educational materials that were distributed to hundreds, if not thousands, of people.  Many are found on the Internet.[58]  And as Victoria Bartel confirmed, no restrictions were placed on any of the documents—none were confidential or trade secrets.[59]  Winninger and Schoenthaler agree.[60]  This evidence is uncontroverted.  It is Vail Health that has not identified the documents it purportedly "owned."   Does it include RPC-Vail employment records,[61] residency program materials,[62] or exercise photos, protocols, journal articles, etc.?[63]  And when did Vail Health acquire them?  In 2004, when the Services Agreement was signed, three years later when it was renewed, or three years after that?

Instead, Vail Health points to, for the first time in almost ten years, a 2011 Vail Health "policy" as evidence of ownership, but it produced no proof that RPC-Vail ever received the policy, agreed to it, and distributed it to RPC-Vail physical therapists, and

---

[56]   Ex. 2 ¶ 11 [Hagerman Aff.].
[57]   Ex. 3 ¶¶ 44-79 and Exs. M-QQ [Winninger Decl.]; Ex. 20 ¶¶ 20-35 and Exs. A-O [Schoenthaler Decl.].
[58]   Ex. 3 ¶¶ 51, 62 [Winninger Decl.]; Ex. 20 ¶¶ 29-32 [Schoenthaler Decl.].
[59]   Ex. 19 at 19:16-20:18, 27:22-28:20 [Bartel Dep.].
[60]   Ex. 3 ¶¶ 28, 46, 52 [Winninger Decl.]; Ex. ¶¶ 22-24 [Schoenthaler Decl.].
[61]   Ex. 39 at 14:19-21, 26:22-28:20, 33:17-34:5 [Rippeth Dep.] (stating RPC-Vail had its own HR director and RPC-Vail maintained employment records for RPC-Vail employees).
[62]   Ex. 19 at 64:21-65:12 [Bartel Dep.].
[63]   Ex. 3 ¶¶ 51, 62 [Winninger Decl.]; Ex. 20 ¶¶ 29-32 [Schoenthaler Decl.].

specifically Winninger and Cimino.  Vail Health submitted no affidavits or sworn testimony that Vail Health and RPC-Vail agreed in writing that RPC-Vail's intellectual property was owned by Vail Health.  It produced no written agreement despite not disputing that there must be one to comply with Colorado's Statute of Frauds.[64]  The Services Agreement that Vail Health relies so heavily on contains no provision giving it any ownership rights.

Vail Health could have entered into an agreement with RPC-Vail at the start, which assigned to Vail Health any intellectual property created by RPC-Vail.  Universities and research facilities routinely use these agreements.[65]  Or Vail Health could have entered into an agreement with RPC-Vail to purchase RPC-Vail's intellectual property, which would have identified the property purchased; defined the scope of the assets, rights, and liabilities, including representations and warranties; and, of course, the consideration to be paid.[66] Vail Health quotes several provisions from the Services Agreement; none relate to any of these issues.[67]  Vail Health provided no evidence that RPC-Vail transferred any ownership rights to Vail Health, so its counterclaims fail as a matter of law.

**C.    Vail Health Could Not Own The Patients Or Their PHI Because Vail Health Was Only A Billing Provider, Not A Licensed Provider.**

**1.    The Services Agreement Is An Illegal Contract Under State Law.**

Vail Health continues the pretense that it owns patient documents because the Services Agreement says RPC-Vail's patients had to be registered with Vail Health.  But Vail Health admits that it was the billing provider for RPC-Vail and that RPC-Vail employed

---

[64]    C.R.S. § 4-2-201.
[65]    *See, e.g.,* Ex. 40 [Assignment example].
[66]    *See, e.g.,* Ex. 41 [Purchase agreement example].
[67]    Vail Health Opp'n at 19-20.

all of the licensed physical therapists, who had the medical provider-patient relationship. Because Vail Health was not licensed to provide physical therapy services, Vail Health cannot "own" patient records for services it could not legally perform, nor records it could not legally create.  Vail Health is attempting to persuade this Court that the Services Agreement provided it with rights that Colorado law forbids it to exercise, which makes that portion of the contract, as well as others, illegal, unenforceable, and void *ab initio*.

Vail Health says that Plaintiffs' argument is convoluted. Indeed, that is precisely what Vail Health intended the Services Agreement to be!  So convoluted in its complexity that it would disguise Vail Health's illegal pass-through billing arrangement from governmental and private payers.  That discussion is beyond the page limitations here, but two readily understood elements demonstrate the illegality of this contract.

It is well-established under Colorado law, "that where a licensing statute or ordinance is enacted for the protection of the public…a contract made without having procured the required license creates no right of action which a court of justice will enforce."[68]  Thus, "[w]here a statute designed for the protection of the public prescribes a penalty, that penalty is equivalent to an express prohibition, and a contract in violation of its terms is void."[69]  Here, under C.R.S. § 12-285-109, the legislature permits only licensed physical therapists to treat patients, which is a police regulation to protect the public. C.R.S. § 12-285-128 imposes penalties for anyone who practices without a license, which under § 12-20-407(1)(a), is a class 2 misdemeanor for the first offense.

---

[68]  *Benham v. Heyde*, 122 Colo. 233, 241 (Colo. 1950)
[69]  *Id.*

Although Vail Health admits that it was only the billing provider, it represented to governmental and private payers it was the provider,[70] obtaining fees for medical services it did not perform.  The Services Agreement is thus an illegal and unenforceable contract as a matter of law.  "The reason is obvious. Valid contracts may not arise out of transactions forbidden by law. The illegality inhering at the inception of such contracts taints them throughout and effectually bars enforcement."[71]

In a case similar to this one,[72] one that Vail Health does not mention, a New York state court was faced with a facility claiming that it owned patient information.  Like here, the facility did not quarrel with the proposition that the practice of medicine requires a license.  The court found that "the patients who are, in essence, the subject matter of this lawsuit, have a patient-physician relationship with the physicians who treat or have treated them…not with the plaintiff entity which is not authorized to practice medicine."[73] The court then held that the facility—which was not a licensed provider of the medical services at issue—had no legal claim to any of the patient treated at the facility.[74] Because the facility was not licensed to provide treatment, the court held that the contract relied upon to assert ownership was illegal and unenforceable.  The facility could "not seek the aid of the courts in its effort to enforce such an illegal contract….It is the settled law of this State (and probably of every other State) that a party to an illegal contract…cannot ask a court of law to help him carry out his illegal object, nor can such

---

[70]     Ex. 34 at 18:1-19, 21:16-19, 30:10-13, 26:13-22 [Beairsto Dep.]; Ex. 42 [Billing records].
[71]     *Benham v. Heyde*, 122 Colo. at 241.
[72]     *United Calendar Mfg. v. Huang*, 94 A.D.2d 176, 179 (N.Y. App. Div. 1983).
[73]     *Id.*
[74]     *Id.* at 180.

a person plead or prove in any court a case in which he, as a basis for his claim, must show forth his illegal purpose."[75]   The same holds true here.   Vail Health was not the licensed medical provider for physical therapy services, and so it cannot rely on an illegal contract that is void *ab initio* to assert ownership rights over RPC-Vail patients.   Under *Treece,* patient records belong to RPC-Vail and its physical therapists, who created the records as part of the provider-patient relationship,[76] not Vail Health.

## 2.   The Services Agreement Is An Illegal Contract Under Federal Law.

To get around this illegality, Vail Health asserts that RPC-Vail was a "managed service organization"[77] ("MSO"), which is different than representing in the Services Agreement (and before the courts) that RPC-Vail was a Vail Health "department."   More on that later.   But Vail Health does not explain what an MSO is or how it operates.   MSOs are used to assign nonmedical, administrative tasks—such as billing, compliance issues, electronic health records, leasing of office space and equipment, training and other services and items—to an outside agency.[78]   So here, it is Vail Health (not RPC-Vail) that provided the nonmedical administrative services under the Services Agreement.   Even if the Agreement could be interpreted otherwise, MSO arrangements must comply with the Federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b.   To fall within the safe harbor of that statute, the MSO relationship must be in writing, last longer than one year, and the

---

[75]     *Id.*
[76]     298 P.3d 993, 999 (Colo. Ct. App. 2011).
[77]     Vail Health Opp'n at 22.
[78]     *See* Bhagwan Satiani, "*A Critical Appraisal of Physician-Hospital Integration Models,* 51:4 J. of Vascular Surgery 1046-53 (Apr. 1, 2010) ("The MSO provides access to accounting, billing, coding, legal advice, collections, and payroll resources.").

payments for office space, equipment, and services are to be set based on fair market value.[79]   The Services Agreement violates the Anti-Kickback Statute in material ways.

*First*, RPC-Vail did not have any lease agreement with Vail Health, and thus, was not charged any rent on a fair market value basis.[80]   *Second*, RPC-Vail did not pay for any equipment rental on a fair market value basis[81] because Vail Health provided that.[82] *Third*, RPC-Vail did not pay Vail Health compensation for the billing services "consistent with fair market value in arm's-length transactions…."[83]   In fact, the Services Agreement does not mention any amounts to be paid to Vail Health for its billing services.[84]   *Finally*, the only compensation referenced in the Agreement relates to Vail Health's billing and collection *for the professional physical therapy services rendered by RPC-Vail*.[85]   The compensation paid to RPC-Vail involved a complex calculation; nothing indicates it was based on "fair market value." More importantly, § 3.6 of the Agreement expressly includes payment and adjustments based on "volumes" of business in direct violation of the Anti-Kickback Statute.[86]   So as a matter of law, the purported "MSO" violates federal law.

Additionally, Vail Health essentially concedes in its opposition that RPC-Vail was not a "department" of Vail Health.[87]   It tries to say it complied with CMS No. 100-02, "220.1–Therapy Services Furnished Under Arrangements With Providers," because the Services Agreement includes provisions indicating a supervisory role over RPC-Vail.  But

---

[79]     42 C.F.R. § 1001.952.
[80]     42 C.F.R. § 1001.952(b).
[81]     42 C.F.R. § 1001.952(c).
[82]     Ex. 29 at §§ 1.2-1.3 [Services Agreement].
[83]     42 C.F.R. § 1001.952(d)(1)(iv).
[84]     Ex. 29 at § 3 [Compensation, Fees, and Charges].
[85]     *Id.*
[86]     42 C.F.R. § 1001.952.
[87]     Vail Health Opp'n at 22.

what the Agreement says is immaterial.  Plaintiffs submitted evidence that Vail Health undertook no supervisory role over RPC-Vail. [88]  Vail Health produced no proof or any affidavits controverting Plaintiffs' evidence.[89]  So it is undisputed that Vail Health did not comply with CMS No. 100-02 and could not bill RPC-Vail's services as if it were its own.  And just like Colorado, a contract that violates federal statutory or regulatory law is unenforceable.[90]  "[O]ne who has…participated in an illegal act cannot be permitted to assert…any right founded upon or growing out of the illegal transaction."[91]  The contract is void.[92]  As a matter of law, the Services Agreement cannot prove ownership.

## V.    SUMMARY JUDGMENT IS ALSO APPROPRIATE ON VAIL HEALTH'S CIVIL THEFT AND CONVERSION CLAIMS BECAUSE WINNINGER HAS COPIES OF RPC-VAIL DOCUMENTS, NOT ORIGINALS.

### A.    Vail Health Does Not Dispute That Winninger Copied The RPC-Vail Documents And Did Not Delete Them.

Vail Health does not dispute that Winninger and Cimino copied documents, did not delete any documents, and that Vail Health continued to have access to use them

### B.    The Civil Theft Claim Should Be Dismissed Because Having Copies Of Documents Does Not Establish Permanent Deprivation.

Vail Health claims that Winninger "surreptitiously" copied "proprietary documents" and "medical information" without authorization, which constitutes civil theft.[93]  Vail Health

---

[88]    Ex. 2 ¶¶ 24-25, 27 [Hagerman Aff.] Ex. 3 ¶¶ 81-82 [Winninger Decl.]; Ex. 19 at 71:2-72:24 [Bartel Dep.].
[89]    *See Todd v. Hause*, 371 P.3d 705, 709 (Colo. Ct. App. 2015) ("Once this initial burden is met, the burden shifts to the nonmoving party to show that a disputed issue of material fact exists….When the nonmoving party presents no affidavits or other counterevidence to contradict the moving party's initial showing, a court must conclude that no genuine issue of material fact exists.").
[90]    *See Comdisco, Inc. v. United States*, 756 F.2d 569, 576 (7th Cir. 1985).
[91]    *Jackson Purchase Rural Elec. Coop. Ass'n v. Local Union 816, Int'l Brotherhood of Elect. Workers*, 646 F.2d 264, 267 (6th Cir. 1981) *United States v. Miss. Valley Generating Co.*, 364 U.S. 520, 563 (1961).
[92]    *See Resolution Trust Corp. v. Home Sav. of Am.*, 946 F.2d 93, 96 (8th Cir. 1991) (citing *Community Fed. Savings Loan Ass'n v. Fields,* 128 F.2d 705, 707 (8th Cir. 1942), contract violation regulation is void)).
[93]    Vail Health Opp'n at 23.

does not define "proprietary" documents and provides no affidavit or other evidentiary proof that Winninger's taking of RPC-Vail protocols, training materials, and the like was not permitted by RPC-Vail.  It provides no evidence contrary to Victoria Bartel, the head of RPC-Vail's residency program, who testified it was "common knowledge" that RPC-Vail employees were permitted to take those materials.[94]  Nor does Vail Health dispute that RPC-Vail told its employees before the Vail Health takeover that they were open to take documents from the RPC-Vail shared drive.[95]  So there is no factual dispute that Winninger took the educational and training materials she was allowed to take.

Vail Health then asserts that Plaintiffs misconstrue the civil theft statute, so the starting point must be with C.R.S. § 18-4-405, which states, in pertinent part:

> All *property* obtained by theft, robbery, or burglary shall be restored to the *owner,* and no sale, whether in good faith or on the part of the purchaser or not, shall divest the *owner* of his right to such *property*. *The owner* may maintain an action not only against the taker thereof but also against any person in whose possession he finds the *property*.[96]

The statute refers to the "owner" and "property" of the "owner."  Nowhere in § 18-4-405 did the legislature use the phrase "thing of value," which is defined in § 18-1-901(r). C.R.S. § 18-1-901(a) makes clear that "[d]efinitions set forth in any section…apply wherever **the same term is used**…."[97]  So Vail Health's reliance on § 18-901(r) to define "property" as a "thing of value" is contrary to the legislature's intent, as evident by § 18-4-401(1.5). There, the legislature stated that "[f]*or purposes of this section*, a thing of value is that of "another" if anyone other than the defendant [in the criminal case] has a possessory or

---

94   Ex. 19 at 61:17-61:18 [Bartel Dep.].
95   *Id.* at 61:9-10.
96   C.R.S. §18-4-405 (emphasis added).
97   C.R.S. § 18-1-901(a).

proprietary interest in same."[98]  As the Colorado federal district court held, a court cannot define "property" in § 18-4-405 by applying the definition of "thing of value" in § 18-4-401.[99]  "Property" and "thing of value" are not interchangeable.

The Colorado Supreme Court drew a similar distinction in *Winninger v. Kirchner.* "The fact that the crime of theft under section 18-4-401 involves the taking of a 'thing of value,' however, does not persuade us that the theft of medical records or medical information is necessarily included within 'theft' under section 18-4-401. If it was, then section 18-4-412 would be superfluous. *Moreover, we note that the definition of "thing of value" also encompasses intangible property like trade secrets and services like cable service, but as noted above, the theft of such 'things' does not support a civil theft claim under section 18-4-405.*"[100]  Vail Health's assertion that "the legislature's clear intent to include misappropriation of intangible intellectual property within the scope of the civil theft statute" is contrary to the plain language of the statute and *Winninger v. Kirchner.*

Vail Health goes on to assert that "Plaintiffs ignore that C.R.S. § 18-4-401(1) requires only intent to deprive plaintiff of the 'use or benefit' of the property."[101]  But that is not what the statue says or the case law supports.  Rather, Vail Health must prove Winninger acted "intentionally or knowingly in ways that deprived [Vail Health]….of the property **permanently.**"[102]  Nowhere in its motion does Vail Health address "permanent"

---

[98]      C.R.S. § 18-4-405(1.5) (emphasis added).
[99]      *LaRiviere, Grubman & Payne, LLP v. Phillips*, 2010 U.S. Dist. LEXIS 45657, *16-17, 2010 WL 1380245 (D. Colo. Mar. 31, 2010).
[100]     2021 CO 47, 20-21 (Colo. 2021) (emphasis added).
[101]     Vail Health Opp'n at 25.
[102]     C.R.S. § 18-4-401(1)(a); *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 608 (Colo. 2016). *See also Brightspot Sols. v. A+ Prods., Inc.*, Civil Action No. 20-cv-03335-MEH, 2021 WL 1251512, at *11 (D. Colo. Apr. 5, 2021) (same); *Seale v. Peacock*, Civil Action No. 19-cv-03559-KMT, 2020 WL 5076749, at *2 (D. Colo. Aug. 27, 2020) (same).

deprivation.  A good place to start is *Steward Software Company v. Kopcho*,[103] which Vail Health says is "controlling authority" holding that "**taking a copy** of an electronic document constitutes civil theft."[104]  But one must compare Vail Health's representation to what the Colorado Supreme Court actually said:

| Vail Health's Representation | Court's Statement |
| --- | --- |
| According to the Court, because the software code was "***saved on electronic memory***," it constituted "***a material embodiment of the work***" and ***thus a thing of value***.[105] | "Holonyx wrote the code and saved it in electronic memory. The code ***saved in electronic memory*** is a ***material embodiment of the work***, in fact the ***original embodiment***. This ***original embodiment was the "software" that Steward Software claimed was stolen***. That is, ***Steward Software contended that it owned the original embodiment*** of the software code and that, by ***refusing to hand over the code, Kopcho committed civil theft***."[106] |

*Steward Software* did not address, let alone hold, that copying a document constitutes civil theft.  Rather, it was the ***original*** software that was at issue, which the defendant had copyrighted and then claimed to own.[107]  *Steward Software* is not controlling here.

*Bermel v. Blueradios, Inc.*[108] is distinguishable as well.  There, the trial court stated that "[i]t is unclear from the evidence whether Bermel intended to permanently deprive BlueRadios of the use of the proprietary and confidential information contained within the emails he forwarded to his Gmail account."[109]  But Bermel had "violated the Court's preliminary injunction order; the integrity of the Gmail account was not maintained"[110]—that is, Bermel had accessed and deleted a majority of documents in violation of a court

---

[103]     266 P.3d 1085 (Colo. 2011) (emphasis added).
[104]     Vail Health Opp'n at 25 (emphasis added).
[105]     *Id.* at 26.
[106]     *Steward Software*, 266 P.3d at 1088.
[107]     *Id.* at 1086.
[108]     No. 2014CV032139, 2015 WL 10013672 (Colo. Dist. Ct. Dec. 7, 2015)
[109]     *Id.* at *4.
[110]     *Id.*

order, which could have included originals.[111]  It was thus impossible to know whether all documents were copies.  The trial court awarded BlueRadios $1 for the civil theft claim. In contrast, in *WSI International v. Fields,*[112] the same court later held that taking copies of electronic documents did not establish civil theft; there was no evidence of deletion or permanent deprivation.[113]  And in *Greater Education Opportunities Foundation v. Miles,* the El Paso court similarly agreed that copying intellectual property "does not satisfy the requirement of permanent deprivation found in Colorado's theft statute."[114]  Summary judgment on the civil theft claim should be granted on this basis as well.

## C.    Having Copies Of Documents Does Not Constitute Conversion.

Colorado federal courts have held that copying intellectual property "is insufficient to show actual dominion of property sufficient to establish a conversion claim."[115]  In *Stauffer v. Stegemann*,[116] the Colorado Court of Appeals agreed.  *Stauffer* involved the copying of a document during discovery, which was authorized.  The court could have ended its analysis there, but it did not.  Instead, it held that "[***i]n addition***, the allegations of the complaint fail to demonstrate that defendants had improperly exercised dominion and control over other information maintained by plaintiffs."[117]

---

[111]    *Id.*

[112]    No. 2016CV031912, 2018 WL 5663875 (Colo. Dist. Ct. May 29, 2018).

[113]    *See id.* at *14 ("the evidence demonstrated that these documents were not deleted or removed from the vault but rather a copy was retained on the WSI vault. There was no evidence that Fields…intended to permanently deprive WSI of the information, because WSI retained the information.").

[114]    Ex. 37 at 7 [*Miles* Order].

[115]    *Builder MT LLC v. Zybertech Construction Software Serv*, Civil Action No. 08-cv-00435-LTB, 2008 WL 4724146, at *6 (D. Colo. Oct. 24, 2008); *Internet Archive v. Shell*, 505 F. Supp. 2d 755, 763 (D. Colo. 2007); *W. Star, LLC v. Marketsoup, Inc.*, Civil Action No. 17-cv-02785-RBJ, 2018 WL 3069556, at *7 (D. Colo. June 21, 2018) (maintaining copies, not the originals, of intellectual property, modules of computer software, is insufficient to state a claim for conversion).

[116]    165 P.3d 713 (Colo. Ct. App. 2007).

[117]    *Id.* at 717 (emphasis added).

Vail Health attempts to disregard the overwhelming authority cited by Plaintiffs,[118] but does not cite any contrary law. Further, Vail Health provides no evidence that Winninger had dominion or control, she only had copies, and it does not assert any facts or provide any proof—other than a conclusory statement in the amended counterclaim[119]—that Vail Health was deprived of anything.  It did not know Winninger had RPC-Vail documents until six years later.  The conversion claim should be dismissed.

### D.    Vail Health Has No Conversion Claim For Intangible Property.

At page 28 of its motion, Vail Health admits that its conversion claim is based on intangible, intellectual property.[120]  Vail Health cites several cases; none stand for the proposition that intellectual property standing alone is sufficient for conversion.[121]  Rather, Colorado courts allow a conversion claim when the intangible property is merged with tangible property, and three cases cited by Vail Health show that.[122]  Vail Health does not mention *Treece,*[123] which held that medical records are intangible property because they

---

[118]    *See, e.g., FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 303-04 (7th Cir. 1990).  *See also Corbis Corp. v. Stone*, No. 64505-6-I, 2012 WL 1020250, at *15 (Wash. Ct. App. Mar. 26, 2012) ("The overwhelming weight of authority holds that a copy of a document cannot be converted") (citing *Fire Protection Dist. of St. Louis Cnty., Missouri v. Freedom Consulting & Auditing Servs., Inc.*, 678 F. Supp. 2d 927, 944 (E.D. Mo. 2009)); *Furash Co., Inc. v. McClave*, 130 F. Supp. 2d 48, 58 (D.D.C. 2001); *Pearson v. Dodd*, 410 F.2d 701, 706 (D.C. Cir. 1969), *cert. denied*, 395 U.S. 947 (1969) (holding no conversion for copying files even when two employees of Senator Thomas Dodd broke into his office and took documents from his files, copied them overnight, and returned the originals shortly thereafter).

[119]    Am. Counterclaim ¶ 109.

[120]    *Steward Software*, 275 P.3d at 707 ("Intellectual property rights include, among other things, such intangible property as copyrights…and trade secrets.").

[121]    *Hawg Tools, LLC v. Newsco Int'l Energy Servs., Inc.* 411 P.3d 1126, 1128-29 (Colo. Ct. App. 2016) (court did not address issue); *Bermel v. Blueradios, Inc.,* No. 2014CV032139, 2015 WL 10013672, at *4-5 (Colo. Dist. Ct. Dec. 7, 2015) (same).

[121]    298 P.3d 993 (Colo. Ct. App. 2011).

[122]    *See, e.g., McLaughlin v. Clementi* 144 Colo. 34, 40-41 (Colo. 1960) (without the trucking permit, the trucking company could not transport goods); *Am. Multi-Cinema, Inc. v. City of Aurora,* 471 P.3d 1139, 1146 (Colo. Ct. App. 2020) (motion pictures delivered via digital files were inseparable from licensing and copyright agreements); *Davis Bros., Inc. v. United Bank of Littleton,* 701.P.2d 642, 643-44 (Colo. Ct. App. 1985) (without financing statement party had no legal right to recover prescription records).

[123]    298 P.3d 993 (Colo. Ct. App. 2011).

cannot be resold or freely transferred and can be discarded after yielding "their intangible component."[124]   It is the idea encapsulated that has value.   Other courts confirm that medical records are not convertible.[125]   Thus, "[t]he consensus in American jurisdictions is that conversion claims must usually be directed at tangible property,"[126] and as the El Paso County Court held, intangible, intellectual property standing alone is not enough.[127]

## VI.    VAIL HEALTH HAS ABANDONED ITS TRADE SECRET CLAIM.

Vail Health concedes that it has abandoned its trade secrets claim as to the RPC-Vail documents.   Summary judgment should be awarded to Plaintiffs.

## VII.    WITHOUT A TORT CLAIM, VAIL HEALTH HAS NO CLAIM FOR CONSPIRACY.

Vail Health's conspiracy claim is based on the same conduct alleged for its civil theft and conversion claims, and yet, it asserts the claim survives even if the other tort claims are dismissed.   But a conspiracy claim cannot stand alone; it should be dismissed.

## VIII.    VAIL HEALTH HAS NO CLAIM AGAINST SPORTS FOR WINNINGER'S ACTS.

It is undisputed Winninger took the RPC-Vail documents two years before Sports Rehab existed, she stored them on her personal computer, and never transferred any to Sports Rehab or its employees.[128]   Vail Health did not make any demand for the return of the RPC-Vail documents.   It did not even know she had them.   Dismissal is warranted.

---

[124]    *Id.* at 999.
[125]    *See, e.g.*, *Vavro v. Albers,* Civil Action. No. 05-321, 2006 U.S. Dist. LEXIS 101069, at *53-(W.D. Pa. Aug. 1, 2006) (holding medical record intangible property not subject to conversion); *Rao v. Verde*, 222 A.D.2d 569, 635 N.Y.S. 2d 660, 661 (N.Y. App. Div. 1995) (same); *Waldron v. Ball Corp.*, 210 A.D.2d 611, 619 N.Y.S. 2d 841, 843 (N.Y. App. Div. 1994) (same); *Hanson v. Hancock County Mem'l Hosp.*, 938 F. Supp. 1419, 1438 (N.D. Iowa 1996) (same).
[126]    *Flores v. Bank of Am., N.A.*, 2019 U.S. Dist. LEXIS 99190, *39-40, 2019 WL 2470923, at *15 (D. Colo. June 13, 2019). *See also Virtual Cloud.*, 2006 WL 446077, at *4.
[127]    *See* Ex. 37 at 8 [*Miles* Order] (dismissing conversion claim based on intellectual property).
[128]    Ex. 3 ¶¶ 87-88 [Winninger Decl.].

Dated:  October 1, 2021

                              *s/ Jesse Wiens*
                              Jesse Wiens, Colo. #33903
                              Fahrenholtz & Wiens LLC
                              100 West Beaver Creek Boulevard
                              Suite 236
                              Avon, CO 81620
                              Telephone:  (970) 949-6500
                              E-mail:  fwlawyers@gmail.com

                              Sonya R. Braunschweig (admitted *pro hac vice*)
                              5501 Irving Avenue South
                              Minneapolis, MN  55419
                              Telephone:  (612) 819-2304
                              E-mail:  sonya.braunschweig@gmail.com

                              Alan L. Kildow (admitted *pro hac vice*)
                              15204 Wildwood Road
                              Burnsville, MN 55306
                              Telephone:  (970) 390-6675
                              E-mail:  alkildow@aol.com

                              Attorneys for Plaintiffs and Counter-Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2021, I served a true and correct copy of Plaintiffs' Reply to Refiled Motion for Summary Judgment on Vail Health's Trade Secrets, Civil Theft, Conversion, and Conspiracy Counterclaims, including exhibits, through the Court's e-filing system on:

Janet A. Savage
Jacqueline Roeder
Daniel Richards
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO  80202
Counsel for Defendants/Counter-Plaintiff

Daniel Reilly
John McHugh
Fennemore Craig P.C.
1700 Lincoln Street, Suite 2400
Denver, CO 80203
Counsel for Defendant Doris Kirchner

John W. Madden, III
The Madden Law Firm
999 18th Street
Suite 1500 South
Denver, CO  80202
Counsel for Third-Party Defendant

_s/ Jesse Wiens_
Jesse Wiens