# EXHIBIT 1

## VAIL HEALTH'S RESPONSE TO PLAINTIFFS' LIST OF DOCUMENT REQUESTS FOR MEET AND CONFER

*Vail Health's Preliminary Statement:*  The Court's Scheduling Order in this matter provided that "discovery conducted in the State Court Action may be used in this matter." (Doc. 71 ¶ 6(f).) Thus, from the outset of this litigation, Plaintiffs have had access to extensive discovery from the State Case. Additionally, Vail Health supplemented its State Case production by producing in this case thousands of pages of additional documents and more than 1 million lines of financial data. The volume of discovery that Plaintiffs have access to would be unusual in nearly any case. In this case—about a single physical therapist who claims she was defamed—it is extraordinary.

Since Plaintiffs filed their initial complaint in April 2017, Vail Health and its counsel have spent thousands of hours searching for and reviewing documents in connection with the State Case. Vail Health will not attempt to itemize the years of document collection, searches, and review by Vail Health, forensic examination, and third-party discovery that led to the extensive State Case document production. However, the result of those efforts is a discovery record of extraordinary breadth: Parties and non-parties have produced more than 70,000 pages of documents. The parties conducted more than 40 depositions. And the parties served more than 40 third party subpoenas.

In addition to the many searches for responsive documents Vail Health performed in the State Case, Vail Health performed searches specifically requested by Plaintiffs. For example, Plaintiffs requested that Vail Health search custodians' emails using the terms "Cimino," "Lindsay," "LW," "Sports Rehab," "SRC," and "Winninger," and Vail Health ran those search terms against the email files of 24 custodians. The breadth of discovery available to Plaintiffs even before they filed their complaint in this case is demonstrated by Plaintiffs' initial disclosures in this case, which identify by name more than 150 individuals likely to have discoverable information, including detailed descriptions of the knowledge those individuals are believed to possess.

Despite the extensive discovery that was available to Plaintiffs from the State Case, Vail Health also responded to each of Plaintiffs' extraordinarily broad and burdensome requests for production ("RFPs"), interrogatories, and requests for admission in this case. In addition to providing detailed written responses (or, where appropriate, objections) to Plaintiffs' 154 interrogatories and requests for admission, Vail Health agreed to produce, *inter alia*, "financial statements, projections, and financial analyses for Howard Head Sports Medicine"; "documents . . . reflecting the prices charged and revenues realized for Howard Head Sports Medicine's physical therapy services"; "documents . . . reflecting [Vail Health's] evaluation of which physical therapy or other service providers Vail Health considered and/or does consider to be competitors of Howard Head Sports Medicine's physical therapy services"; documents concerning contemplated joint ventures with The Steadman Clinic and Vail Summit Orthopaedics; exemplars of Vail Health's employment agreements with physical therapists; and non-privileged portions of Vail Health's board of directors minutes and agendas that relate to Vail Health's Howard Head physical therapy practice in the Vail Valley. After reviewing Vail Health's discovery responses in June 2021, Judge Martinez concluded that Vail Health had provided "detailed responses to nearly all interrogatories" and that "[o]verall, the Court discerns no abusive discovery practices by Vail Health." (Doc. 113 at 5-6.)

Vail Health has followed through with its document production. In this case, Vail Health has produced more than 6,900 additional pages of documents (VAIL_Fed_00000001 - VH_Fed_00006971). Moreover, this number substantially understates the volume of information produced because Vail Health has produced more than 200 Excel files in native format, each of which is reflected by a single bates number, and many of which contain multiple worksheets reflecting enormous volumes of data.

Between the State Case and this case, Vail Health has produced extensive discovery regarding the allegations in Plaintiffs' Amended Complaint, including, *inter alia*:

| |
|---|
| Spreadsheets containing more than 1 million rows of encounter-level data regarding physical therapy services provided by Vail Health in the alleged Vail Valley market, which include patient zip codes and the amount Vail Health was reimbursed for every private payer transaction, for the period November 2013 through September 2021 |
| Monthly Howard Head financial data, including Unique FIN (*i.e.*, patients), Charge, Payment Amount, Direct Cost, Contribution Margin, Indirect Cost, and Net Income, for the period November 2014 through September 2020 |
| Vail Health / Howard Head chargemasters, which reflect Vail Health's standard prices for its services |
| Vail Health's contracts with third-party payers, which reflect the discounts provided to payers from Vail Health's chargemaster prices |
| Vail Health Board minutes and agendas concerning Howard Head |
| Exemplars of all forms of offer letters used for Howard Head physical therapists, as well as employment handbooks and employment policies |
| Documents regarding the contemplated joint ventures between Vail Health and The Steadman Clinic and/or Vail-Summit Orthopedics ("VSO"), including letters of intent, draft term sheets, financial projections, and communications reflecting the parties' negotiations; Plaintiffs also served subpoenas on Steadman and VSO |
| The office lease between Vail Health and Steadman, First Amendment to Office Lease, and communications related thereto |
| Documents and information regarding Vail Health's self-pay system, including adjustment forms and invoices containing pricing information |
| Communications regarding Vail Health's pricing of physical therapy services |
| Analyses of referral sources of Howard Head patients |
| Communications discussing physical therapy providers Vail Health considers to be competitors |

2

While Vail Health's counsel collected many of the above categories of documents from Vail Health personnel without relying on search terms, Vail Health also applied nearly fifty sets of search terms to identify responsive documents from the email files of Vail Health's current CEO, former CEO, current leader of Howard Head, and former leader of Howard Head.

| No. | Request No. | Plaintiffs' Position | Vail Health's Position |
|-----|-------------|----------------------|------------------------|
| 1 | 2, 4 | Income statements/analyses by location and rollup from November 1, 2012, to the present. *See* VH_Fed_01417-20 (producing certain statements modified by Brown to create his own analysis related to the joint venture) | Plaintiffs' RFP 2 requests annual, quarterly, and monthly financial statements/projections/financial analyses of HHSM. Plaintiffs' RFP 4 requests documents related to costs incurred, profits realized with respect to PT services for HHSM, including salary, benefits, administrative and overhead costs. Neither RFP requested this information "by location and rollup."

In response to these RFPs, Vail Health has produced:

- Monthly Howard Head financial data, including Unique FIN (*i.e.*, patients), Charge, Payment Amount, Direct Cost, Contribution Margin, Indirect Cost, and Net Income, for the period November 2014 through September 2020 (Ex. 12 to VH's Motion for Protective Order ("MPO"))

- Spreadsheets containing more than 1 million rows of encounter-level data regarding physical therapy services provided by Vail Health in the alleged Vail Valley market (and specifying the HH location), which include patient zip codes and the amount Vail Health was reimbursed for every private payer transaction, for the period November 2013 through September 2021 (Ex. 11 to MPO (excerpt))

- All responsive documents located in the emails of Vail Health's current CEO (Will Cook), former CEO (Doris Kirchner), current leader of Howard Head (Mary Ellen Broersma) and former leader of Howard Head (Nico Brown) by running more than 50 sets of |

| No. | Request No. | Plaintiffs' Position | Vail Health's Position |
|---|---|---|---|
| | | | search terms |
| | | | Vail Health has repeatedly requested what additional documents Plaintiffs are seeking, but has not received a response. |
| | | | With respect to the individual document Plaintiffs reference (VH_Fed_01417-20, Ex. 19 to Pls.' Motion to Compel #2), the cover emails to the document make clear that it was produced for a specific purpose and does not represent any regularly generated report. 7 Moore's Federal Practice § 34.12 ("A party cannot be compelled to create, or cause to be prepared, new documents solely for their production. Rule 34 only requires a party to produce documents that are already in existence."). |
| | | | Furthermore, Plaintiffs introduced this document at the deposition of Nico Brown, but specifically declined to ask him any questions about it: |
| | | | **Q. (BY MR. KILDOW) Okay. We've got Exhibit 17 up. It's from Harold -- it's an email from Harold Dupper to you dated January 6, 2019; is that correct?** A. Yes, that's correct. **Q. And I am not here today to ask you a number of questions about this exhibit other than to have you identify it and authenticate it. There is a series of emails -- an email string, as we call it, I guess, on pages 1, 2, and 3 of Exhibit 46, and it's -- they're between you and Mr. Dupper. Mr. Dupper was the chief financial officer of Vail Health at that time; is that correct?** A. Yes, that's correct. (N.Brown deposition at p. 176) |
| | | | The fact that Howard Head did not generate monthly financial |

| No. | Request No. | Plaintiffs' Position | Vail Health's Position |
|---|---|---|---|
| | | | statements was confirmed in the deposition of Vail Health's CFO, Charles Crevling: |
| | | | **MR. KILDOW:** Was an audited financial statement for the physical therapy entity doing business under the name Howard Head Sports Medicine ever prepared during the time that Mr. Crevling was the chief financial officer. |
| | | | . . . |
| | | | A. No. |
| | | | (Crevling Dep.,p. 62) |
| | | | **Q. (By Mr. Kildow) Did you ever create –-strike that. During the time that you were the chief financial officer of Vail Health, did you create income statements or statements of operation or otherwise known as P&Ls, profit and loss statements, for the physical therapy clinic known as Howard Head?** |
| | | | A. Never created a profit and loss statement for Howard Head. We –- |
| | | | **Q. Did you create any kind of an accounting summary or statement for the physical therapy clinic?** |
| | | | **Q. Let me finish, okay, Alan?** |
| | | | **Q. Oh, I'm sorry. I didn't mean to interrupt.** |
| | | | A. No. We're fine because it's just a –you know, we never created an income statement for Howard Head or cardiology or whatever, but we did do financial analysis of programs. That's not the same as creating a P&L or a balance sheet or anything like that. |
| | | | (Crevling Depo. at 72-73.) |
| 2 | 3 | Analyses and documents related to pricing as to facility v nonfacility.  See  VH_Fed_001447 (stating that all revenue and costs associated with patient who will or has had surgery ends up in a service line that is not Howard Head); VH_Fed006605-07 (discussing | Plaintiffs did not raise this issue in their motions to compel; therefore it is not properly before the Special Master.  (Doc. 123, ¶ 3.)<br><br>In addition, RFP 3 seeks documents relating to prices |

| No. | Request No. | Plaintiffs' Position | Vail Health's Position |
|---|---|---|---|
| | | "sensitivity analysis" and calculating effect of billing on nonfacility basis, which was estimated at approximately 33%; John Higgins response was not produced, nor were any other communications regarding this analysis) | charged/revenues realized for PT services provided by HHSM, including contracts, agreements, and documents relating to prices. It does not request pricing as to facility v nonfacility. |
| 3 | 4 | Identification of all direct and indirect costs/expenses (in detail, not aggregate form) associated with Howard Head from November 1, 2012, to the present. See VH_Fed_002460-62 (noting that "Direct Cost Reports" can be run by location in Strata and attaching sample report); VH_Fed_003048 (noting direct costs/expenses include salaries and wages; benefits; total benefits expense; research/residency salary; total salaries and benefits; non labor expense); VH_Fed_00349 (noting indirect expenses include "rent"); VH_Fed_003050 (noting non-labor expenses include professional fees, purchased dept functions; consulting fees; medical and other supplies; repairs and maintenance; advertising and marketing; and utilities) | RFP 4 requests documents related to costs incurred, profits realized with respect to PT services for HHSM, including salary, benefits, administrative and overhead costs.<br><br>In response to this RFP, Vail Health has produced:<br><br>- Monthly Howard Head financial data, including Unique FIN (*i.e.*, patients), Charge, Payment Amount, Direct Cost, Contribution Margin, Indirect Cost, and Net Income, for the period November 2014 through September 2020 (Ex. 12 to VH's Motion for Protective Order ("MPO"))<br><br>- Spreadsheets containing more than 1 million rows of encounter-level data regarding physical therapy services provided by Vail Health in the alleged Vail Valley market (and specifying the HH location), which include patient zip codes and the amount Vail Health was reimbursed for every private payer transaction, for the period November 2013 through September 2021 (Ex. 11 to MPO (excerpt))<br><br>- All responsive documents located in the emails of Vail Health's current CEO (Will Cook), former CEO (Doris Kirchner), current leader of Howard Head (Mary Ellen Broersma) and former leader of Howard Head (Nico Brown) by running more than 50 sets of search terms.<br><br>As Plaintiffs citations indicate, they have received numerous documents responsive to their request. |

| No. | Request No. | Plaintiffs' Position | Vail Health's Position |
|---|---|---|---|
| | | | To the extent Plaintiffs now request "identification" of certain expenses, that is not a proper request in an RFP. 7 Moore's Federal Practice § 34.12 ("A party cannot be compelled to create, or cause to be prepared, new documents solely for their production. Rule 34 only requires a party to produce documents that are already in existence."). |
| | | | Plaintiffs deposed Mr. Crevling (former CFO) and Nico Brown (former leader of Howard Head), and had the opportunity to ask them these questions regarding costs, including relating to the particular documents Plaintiffs reference. (Brown Dep. at 15-16, 20-24, 36-37, 99-100; Crevling Dep. at 73-75.) |
| | | | Mr. Brown confirmed there was no separate cost report for Howard Head:<br><br>**Q. (BY MR. KILDOW) So you ran a 15 to $20 million business, and you didn't have a cost report? Is that what you're saying? You didn't keep track of the costs?**<br>**MR. MCHUGH:** Argumentative.<br>**Q. (BY MR. KILDOW) Is that what your testimony is?**<br>A. No.<br>. . .<br>A. Howard Head did not have a separate cost report.<br><br>(Brown Dep. at 36.) |
| 4 | 5, 15 | Analyses and documents associated with expanding into Summit County and Aspen/Basalt, including Hammes analyses; Board of Director, Finance Committee, Executive Committee, and Steering Committee documents related to those expansions; Howard Head documents related to expansion. | Documents related to Howard Head's physical therapy services outside of the Vail Valley have no bearing on Plaintiffs' claims, which specifically allege that Vail Health has a monopoly on the provision of physical therapy services in the Vail Valley. (Am. Compl., Dkt. 26 ¶ 35 (defining the relevant geographic market as the Vail Valley, which "lies in the somewhat narrow Vail Valley stretching from East Vail to Gypsum, Colorado").) "In an antitrust case, courts generally limit discovery to the ambit of the applicable market." *Radio Music License Comm., Inc. v. Global Music Rights, LLC*, No. CV 19-3957, 2020 U.S. Dist. LEXIS 243375, at *16 (C.D. Cal. |

7

| No. | Request No. | Plaintiffs' Position | Vail Health's Position |
|---|---|---|---|
| | | | Jan. 2, 2020) (collecting cases); *see also Vident v. Dentsply Int'l, Inc.*, No. SA CV 06-1141, 2008 U.S. Dist. LEXIS 110399, at *6-8 (C.D. Cal. Aug. 29, 2008) (finding no abuse of discretion in magistrate judge's ruling that "the definition of the relevant market in [this antitrust] case determines the scope of allowable discovery"); *Bal Seal Eng'g, Inc. v. Nelson Prod., Inc.*, No. 13 CV 1880, 2017 U.S. Dist. LEXIS 231324, at *3-4 (C.D. Cal. Oct. 19, 2017) (finding that "the definition of the 'relevant market' defines the scope of relevant discovery"); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164, 2007 U.S. Dist. LEXIS 66159, at *37 (D. Kan. Sept. 6, 2007) (finding that discovery outside the relevant geographic market "not relevant on its face"). Plaintiffs cannot both (1) narrowly define the alleged geographic and product markets as being limited to physical therapy services in the Vail Valley to make Vail Health appear that it has market power in an artificially defined market and yet (2) seek discovery outside that narrowly defined market merely to increase the discovery burdens on Vail Health.<br><br>Vail Health has already produced Board minutes and agendas related to Howard Head. |
| 5 | 6, 25 | Documents and communications related to hiring of Axis employee (Kathy Gwin) and any discussion or settlement with Axis related to that employee. *See* SHANNON0015 (noting that Meredith Mueller who works at Axis is "one of a handful that [Brown] will look to hire/acquire in near term and know that the JV would help solidify that effort") | Plaintiffs did not raise this issue in their motions to compel; therefore it is not properly before the Special Master. (Doc. 123, ¶ 3.)<br><br>These documents also do not appear to be called for by the cited RFPs, nor is their relevance to the case clear. |
| 6 | 5, 7 | MSO joint venture term sheet with Steadman/SPRI and any documents provided to Steadman/SPRI. *See* VH_Fed003622 (noting meeting on December 16, 2016); VH_Fed006736 (providing Steadman/SPRI term sheet one day prior to December 16, 2016 meeting between SPRI/Steadman and Vail Health) | Plaintiffs' Requests for Production No. 5 and 7 request the production of the following:<br><br>• RFP 5: "All documents concerning Vail Health's contention as to the correct 'relevant geographic market' and 'relevant product or service market' for |

| No. | Request No. | Plaintiffs' Position | Vail Health's Position |
|---|---|---|---|
| | | All documents between Steadman/SPRI and Vail Health referenced in VH_Fed006898. | providing physical therapy services underlying the Complaint for antitrust violations." |
| | | Steadman lease agreements with Vail Health outside of Vail. See VH_Fed004855 (referencing Steadman expansion space and "Basecamp saga" with Steadman) FMV analyses of lease agreements with Steadman. | • RFP 7: "All documents relating to any proposed joint venture, merger, or other combination between The Steadman Clinic and Vail Health relating in any way to providing physical therapy services." |
| | | Steadman agreements and communications with Vail Health and any others related to expansion into Summit County and Aspen/Basalt. See VH_Fed001542 (noting Vail Health was "looking to expand in other markets" and wanted Steadman "involved with the expansion and ability to co-location aligned businesses") | In response to RFP No. 5, Vail Health agreed to produce and did produce documents that support its contention that the geographic and product/service markets alleged in Plaintiff's Amended Complaint are not plausible. |
| | | Documents related to any analyses involving Steadman related to the expansion into Summit County and Aspen/Basalt. | With respect to RFP 7, Vail Health has performed a reasonable search for responsive documents. As stated in Vail Health's November 10, 2021 letter, Vail Health, *inter alia*, used the following search terms to search for responsive documents: |
| | | Haverford joint venture FMV analysis, including underlying documents provided to Haverford as Nicholas Brown testified to and communications with Haverford. See VH_Fed001958-60 (waiving any purported claim of privilege when disclosed portions of Haverford report); VH_Fed006957-60 (documents requested from Vail Health) | • Steadman AND "joint venture"<br>• Steadman AND JV<br>• Steadman AND MSO<br>• Steadman AND "management services organization"<br>• Steadman AND "managed services" |
| | | Healthcare Transaction Advisors joint venture FMV analysis, including engagement letter identified on privilege log, underlying documents provided to HTA, and communications with HTA. Brown also testified that underlying documents were provided to HTA. | • TSC AND "joint venture"<br>• TSC AND JV<br>• TSC AND MSO<br>• TSC AND "management services organization"<br>• TSC AND "managed services" |
| | | Hammes analyses, including engagement letter, underlying documents and communications with Hammes. See STEADMAN002698-2833 (outlining "geographic expansion of service lines" into Summit County and Basalt/Aspen, including physical therapy and noting that "17 submarkets were developed to better understand the needs of each of the unique communities") | • SPRI AND "joint venture"<br>• SPRI AND JV<br>• SPRI AND MSO<br>• SPRI AND "management services organization"<br>• SPRI AND "managed services" |
| | | From the Hammes study, it appears that a geographical | To the extent Plaintiffs request information related to physical therapy services outside of the Vail Valley, those documents are irrelevant. "In an antitrust case, courts generally limit |

9

| No. | Request No. | Plaintiffs' Position | Vail Health's Position |
|---|---|---|---|
| | | and market share analysis was conducted by Hammes in Summit County and for Aspen/Basalt, which had to be based on information provided to Hammes by Vail Health; the report also states that Vail Health had tapped out the Vail Valley market and was looking to other markets for expansion. Deloitte Study 2013. *See* VH_Fed004047 (referencing this study in Board presentation). What has Vail Health done to search for this document in Board-related documents or contact Deloitte for a copy? Deloitte Study 2015. *See* VH_Fed4165-68 (noting Deloitte report to be completed and provided to Steadman) Steadman private equity term sheet and documents evidencing what happened after Howard Head discussed joining the private equity offering. *See* VH_Fed_004614-21; VH_Fed_004536 (noting forwarding term sheet but not produced) Documents related to the Vail Sports Center with Steadman. *See* VH_Fed003478-89 | discovery to the ambit of the applicable market." *Radio Music License Comm., Inc. v. Global Music Rights, LLC*, No. CV 19-3957, 2020 U.S. Dist. LEXIS 243375, at *16 (C.D. Cal. Jan. 2, 2020) (collecting cases); *see also Vident v. Dentsply Int'l, Inc.*, No. SA CV 06-1141, 2008 U.S. Dist. LEXIS 110399, at *6-8 (C.D. Cal. Aug. 29, 2008) (finding no abuse of discretion in magistrate judge's ruling that "the definition of the relevant market in [this antitrust] case determines the scope of allowable discovery"); *Bal Seal Eng'g, Inc. v. Nelson Prod., Inc.*, No. 13 CV 1880, 2017 U.S. Dist. LEXIS 231324, at *3-4 (C.D. Cal. Oct. 19, 2017) (finding that "the definition of the 'relevant market' defines the scope of relevant discovery"); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164, 2007 U.S. Dist. LEXIS 66159, at *37 (D. Kan. Sept. 6, 2007) (finding that discovery outside the relevant geographic market "not relevant on its face"). <br><br> Plaintiffs' RFPs 5 and 7 do not request production of many of the documents identified in Row No. 6. For example, Plaintiffs did not request production of Stedman lease agreements with Vail Health outside of Vail or FMV analyses of leases with Steadman. <br><br> Plaintiffs provide no explanation whatsoever for why the documents Vail Health has already produced are insufficient for Plaintiffs to prosecute their claims. |
| 7 | 5, 8 | MSO joint venture term sheet with VSO/VSOF, which VSO/VSOF produced. <br><br> VSO lease agreements with Vail Health in Vail and anywhere else. *See, e.g.*, VH_Fed_003686 (requesting space in Vail) <br><br> VSO agreements and communications with Vail Health related to expansion into Summit County. <br><br> Any agreements, proposals, or other combinations related to Avalanche Physical Therapy, which is owned | Plaintiffs' Requests for Production No. 5 and 8 request the production of the following: <br><br>• RFP 5: "All documents concerning Vail Health's contention as to the correct 'relevant geographic market' and 'relevant product or service market' for providing physical therapy services underlying the Complaint for antitrust violations." <br><br>• RFP 7: "All documents relating to any proposed joint |

| No. | Request No. | Plaintiffs' Position | Vail Health's Position |
|---|---|---|---|
| | | by VSO. *See* VH_Fed002045 (discussing buying up other PT clinics); VH_Fed004034 (discussing not wanting Centura to buy Avalanche); VH_Fed002604 (discussing sale price for Avalanche and attached valuation) | venture, merger, or other combination between The Steadman Clinic and Vail Health relating in any way to providing physical therapy services.." |
| | | Documents related to any analyses involving VSO related to expansion into Summit County. *See* STEADMAN002698-2833 (discussing VSO's involvement in expansion and noncompete issues in Summit) | In response to RFP No. 5, Vail Health agreed to produce and did produce documents that support its contention that the geographic and product/service markets alleged in Plaintiff's Amended Complaint are not plausible. |
| | | | With respect to RFP 8, Vail Health has performed a reasonable search for responsive documents.  As stated in Vail Health's November 10, 2021 letter, Vail Health, *inter alia*, used the following search terms to search for responsive documents: |
| | | | • VSO AND "joint venture"<br>• VSO AND JV<br>• VSO AND MSO<br>• VSO AND "management services organization"<br>• VSO AND "managed services"<br>• "Vail-Summit Orthopaedics" AND "joint venture"<br>• "Vail-Summit Orthopaedics" AND JV<br>• "Vail-Summit Orthopaedics" AND MSO<br>• "Vail-Summit Orthopaedics" AND "management services organization"<br>• "Vail-Summit Orthopaedics" AND "managed services" |
| | | | To the extent Plaintiffs request information related to physical therapy services outside of the Vail Valley, those documents are irrelevant. "In an antitrust case, courts generally limit discovery to the ambit of the applicable market." *Radio Music License Comm., Inc. v. Global Music Rights, LLC*, No. CV 19-3957, 2020 U.S. Dist. LEXIS 243375, at *16 (C.D. Cal. Jan. 2, 2020) (collecting cases); *see also Vident v. Dentsply Int'l, Inc.*, No. SA CV 06-1141, 2008 U.S. Dist. LEXIS 110399, at *6-8 (C.D. Cal. Aug. 29, 2008) (finding no abuse of discretion in magistrate judge's ruling that "the definition of |

| No. | Request No. | Plaintiffs' Position | Vail Health's Position |
|---|---|---|---|
| | | | the relevant market in [this antitrust] case determines the scope of allowable discovery"); *Bal Seal Eng'g, Inc. v. Nelson Prod., Inc.*, No. 13 CV 1880, 2017 U.S. Dist. LEXIS 231324, at *3-4 (C.D. Cal. Oct. 19, 2017) (finding that "the definition of the 'relevant market' defines the scope of relevant discovery"); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164, 2007 U.S. Dist. LEXIS 66159, at *37 (D. Kan. Sept. 6, 2007) (finding that discovery outside the relevant geographic market "not relevant on its face"). Notably, nearly all of the documents Plaintiffs identify in this chart related to areas outside their alleged geographic market.<br><br>Plaintiffs' RFPs 5 and 8 do not request production of many of the documents identified in Row No. 7. For example, Plaintiffs did not request production of lease agreements between Vail Health and VSO.<br><br>Plaintiffs provide no explanation whatsoever for why the documents Vail Health has already produced are insufficient for Plaintiffs to prosecute their claims.<br><br>As Plaintiffs note, Plaintiffs have access to the term sheet between Vail Health and VSO concerning a prospective physical therapy joint venture. |
| 8 | 9, 10 | A list of all Howard Head employees, including Howard Head management, identifying start and end dates of employment, position(s) held, salary, type of employment agreement/offer.<br><br>Alternatively, the employment files for each Howard Head employee, including management, identifying the above information.<br><br>Any employment agreements with Howard Head management, including Luke O'Brien and Nicholas Brown, as well as any post-employment agreements; O'Brien testified he had such an agreement. Although | In response to RFPs 9 and 10, Vail Health has produced exemplars of all forms of offer letters used for Howard Head physical therapists (Ex. 16 to MPO), as well as employment handbooks and employment policies.<br><br>Vail Health has objected to providing the names or individual employment files of its physical therapists, as it is invasive of their privacy, and Plaintiffs have failed to articulate what relevance these documents have to their claims.<br><br>Vail Health has also objected producing the employment |

| No. | Request No. | Plaintiffs' Position | Vail Health's Position |
|---|---|---|---|
| | | both Brown and O'Brien treated patients, no exemplars of their agreements have been produced. | agreements of management level employees. While the terms of a physical therapist's employment arguably relates to Plaintiffs' claims regarding non-solicitation clauses, the terms of management employees' agreements do not.<br><br>To the extent Plaintiffs seek "post-employment" agreements, that was not requested in these RFPs. |
| 9 | 15 | Finance Committee minutes, agendas, and presentations. See VH_Fed0015524-34, VH_Fed0015512-23 (noting presentations were being presented to the Finance Committee); VH_Fed004058-59 (noting Board and Finance Committee approved SPRI and Steadman agreements); VH_Fed002010 (recommending joint venture process and price range be presented to Finance Committee after discussion with Haverford)<br><br>Steering Committee minutes, agendas, and presentations related to expansion plans. See STEADMAN002698-2833 (noting expansion plans included physical therapy for Summit County and Aspen/Basalt)<br><br>Board of Directors and Executive Committee minutes, agendas, presentations, and other documents. See VH_Fed_004058-59; VAILJV00198 (noting Board approved Steadman and SPRI leases, agreement related to joint venture, and SPRI donation agreement all approved on the same day, and yet final agreements not produced); VH_Fed003711 (noting Brown to present before Board in April 2016 related to joint venture)<br><br>Board provided Executive Committee with authority to explore and to approve joint venture related to physical therapy; no documents produced with respect to Executive Committee. See VH_Fed004058-59<br><br>Howard Head Strategic Analysis, the final was not produced nor were there any documents as to who the presentation was made to. See VH_Fed001432-46 | RFP 15 requests all agendas, minutes, minutes of action, and all other records of the Board of Directors of Vail Health.<br><br>Vail Health objected to this RFP as overbroad but agreed to produce board minutes and agendas related to Howard Head's business in the Vail Valley, which it has done. (Ex. 15 to MPO.)<br><br>In addition, Vail Health has produced:<br><br>- Documents regarding the contemplated joint ventures between Vail Health and The Steadman Clinic and/or Vail-Summit Orthopedics ("VSO"), including letters of intent, draft term sheets, financial projections, and communications reflecting the parties' negotiations (Ex. 17 and Ex. 18 to MPO, representative samples); Plaintiffs also served subpoenas on Steadman and VSO (Ex. 19, Ex. 20)<br><br>- All responsive documents located in the emails of Vail Health's current CEO (Will Cook), former CEO (Doris Kirchner), current leader of Howard Head (Mary Ellen Broersma) and former leader of Howard Head (Nico Brown) by running more than 50 sets of search terms.<br><br>Plaintiffs have failed to identify any material likely to be uncovered in other board related documents that would not be duplicative of material already produced, or have anything |

| No. | Request No. | Plaintiffs' Position | Vail Health's Position |
|-----|-------------|----------------------|------------------------|
| | | Executive Session presentation related to joint venture, final presentation or documents approved not produced. See VH_Fed002988<br><br>The Board, Executive, and Finance Committee minutes are also relevant for what they do not say. Vail Health will likely contend that Howard Head has been operating on a negative margin since FY 2016. If so, then the minutes of the Board, Executive, and Finance Committees should reflect that Howard Head was a losing operation. To the extent Howard Head is not mentioned, that supports Plaintiffs' position that Howard Head generated substantial revenues for Vail Health. | more than marginal relevance to their antitrust claims. |
| 10 | 17 | Patient data from November 1, 2012 to the present. Data produced on October 20, 2021 does not provide the information requested or what Vail Health agreed to produce. Instead, it was "created" by Vail Health in September and October 2021; report did not include patient names, each date of visit, each charge submitted to each payor, the amount paid by each payor, or identify the rendering physician. It also does not include 2012, 2013, and 2021 data, patients treated outside the Vail Valley, and any patients where the payor was a governmental entity like Medicare. To the extent a patient was first seen in emergency, that information is required as well.<br><br>Patient data is available in various reports that provides the information requested by Plaintiffs, so there was no need to "create" reports. See VH_Fed006832 at Tab 100619-101219 (notably, it took Gretchen Ebbeson less than a week to produce this report and she apologized for that delay and several of these reports were produced in the federal action); VH_Fed003094-96 (data from Cerner)<br><br>While these reports contain a patient name, it should not be difficult to run a report for patient addresses. Vail Health had to have that basic information to seek reimbursement from payors, which would be in the | In RFP No. 17, Plaintiffs requested "All data identifying all physical therapy patients treated by RPC-Vail or Vail Health from November 1, 2004 to the present, including demographic information for each patient, insurance information (including insurer name, governmental entity such as Medicare Part A or Part B, self-pay etc.), referring and primary physicians, diagnoses based on an ICD9 Code, at what locations the patients were treated and when, and the amounts paid for any services billed for each patient." Vail Health objected to Plaintiffs' RFP No. 17 as, *inter alia*, overly broad and unduly burdensome but stated that it is "willing to meet and confer with Plaintiffs to determine whether it can produce data responsive to a narrowed version of Request for Production No. 17 that protects patient privacy by providing de-identified and/or aggregate information, does not impose an undue burden, and relates to Plaintiffs' claims in this litigation."<br><br>Limited subsequent conferrals were not productive with respect to reaching agreement on the precise scope of data Vail Health would produce. Accordingly, Vail Health produced to Plaintiffs, for the period November 1, 2013 through September 22, 2021, extensive procedure-level and encounter-level data regarding physical therapy services provided to Howard Head patients. See VH_Fed_00006965, |

14

| No. | Request No. | Plaintiffs' Position | Vail Health's Position |
|---|---|---|---|
| | | electronic billing submissions made to payors for reimbursement.<br><br>Billing department or General Ledger information from should be available to generate reports related to the amounts paid by insurers, including any adjustments for each service. This data should be produced for each visit, not in aggregate numbers as the October 20, 2021 report has been done, which is not how payors are billed or Vail Health is paid.<br><br>The data should also be for the complete time period, including 2021. Vail Health has provided no explanation as to why data is missing, particularly for 2021. | VH_Fed_00006966. The data produced consisted of over 1 million rows of data (each a procedure provided to a patient) and included the following columns: Facility; Date of Service; Account Number; CPT (Current Procedural Terminology) Code; CPT Description; Quantity; Patient Zip, CDM Number; Insurance 1; Insurance 2; Insurance 3; Patient Payment; Patient Adjustment; Insurance Payment; and Insurance Adjustment. From the data Vail Health produced, Plaintiffs can determine, *inter alia*, what Vail Health was paid by private payers for each service provided and the residence location of those patients based on zip code data provided.<br><br>Vail Health did not "create" any data in September and October 2021. Rather, it exported the data from multiple databases into Excel format so it could be accessed by Plaintiffs. Plaintiffs cannot both request that Vail Health run reports that were not created in the ordinary course of business and then complain because Vail Health created such reports (with existing data) recently.<br><br>Plaintiffs appear to have not reviewed the data provided carefully. For example, Plaintiffs claim that no data was provided for 2021. VH_Fed_00006966 contains a tab titled "FYTD2021," which contains more than 117,000 rows of data through September 22, 2021.<br><br>Vail Health objects to providing patient names. The only explanation Plaintiffs have provided for why they need these names is so they can conduct a "survey." Plaintiffs' counsel or their expert directly contacting Vail Health patients would be harassing, violate the Protective Order, and violate HIPAA.<br><br>As to data for the period November 2012 through October 2013, Vail Health objects to producing such data as unreasonably burdensome and disproportionate to the needs of the case because it would require pulling data from a |

| No. | Request No. | Plaintiffs' Position | Vail Health's Position |
|---|---|---|---|
| | | | legacy database. |
| | | | Plaintiffs fail to explain why the data provided is not sufficient to prosecute their claims. |
| 11 | 18 | Vail Health chargemasters have not been produced for November 1, 2012 to 2014; nor have any documents been produced identifying how charges were set for physical therapy.  Brown and Kirchner both testified they had no idea how physical therapy charges were set, nor could either identify any individual who could. | Plaintiffs are incorrect.  Vail Health has produced chargemasters for 2012-2014.  See VAIL_00037227; VH_Fed_00006961.<br><br>Plaintiffs are also incorrect that Vail Health has not produced any documents identifying how charges were set for physical therapy services.  See, e.g., VH_Fed_00004361, VH_Fed_00004362, VH_Fed_00004363, VH_Fed_00004934, VH_Fed_00004936, VH_Fed_00005048, VH_Fed_00005050, VH_Fed_00005051, VH_Fed_00005054, VH_Fed_00005055, VH_Fed_00005057, VH_Fed_00006627, VH_Fed_00006628, VH_Fed_00002701, VH_Fed_00002702.<br><br>Additionally, Vail Health's April 30, 2021 response to Interrogatory No. 18 identified by name the individuals Vail Health believes were involved in setting the prices in Vail Health's chargemasters, including Angela Parham, Cindy Lansdowne, Becky Puhl, and Ashley Yeo.  Plaintiffs chose not to notice or subpoena any of those individuals for deposition.  Nor did Plaintiffs notice a 30(b)(6) deposition of Vail Health related to Vail Health's pricing. |
| 12 | 22 | No Medicare costs reports have been produced or the underlying data necessary to certify the nature of the costs. | Plaintiffs did not raise this issue in their motions to compel; therefore it is not properly before the Special Master.  (Doc. 123, ¶ 3.)<br><br>In addition, RFP 22, which requests documents relating to Vail Health's reporting of Medicare costs including annual/periodic reports, books/documents/records of VH/RPC-Vail necessary to certify the nature of the costs |

| No. | Request No. | Plaintiffs' Position | Vail Health's Position |
|-----|-------------|----------------------|------------------------|
| | | | associated with any PT services, has no apparent relevance to Plaintiffs' antitrust claims as pled in their complaint, but appears to be an overbroad fishing expedition into the overall finances of the entire hospital. |
| 13 | 24 | SPRI lease agreements with Vail Health.  See VH_Fed_003794 (referencing "contribution" to SPRI in the form of no rent for five years and reduced rent of $8 sq/ft for following five years); VH_Fed_004057-58 (board resolution approving SPRI documents)<br><br>SPRI agreement with Vail Health in 2013 related to charitable contribution.  See VH_Fed_003908 (referencing 2013 agreement)<br><br>SPRI agreement with Vail Health in which Vail Health agreed to contribute $4.3 million over the course of 10 years. See VH_Fed_003908-26 (draft agreement produced); VH_Fed_003785 (referencing $43.3 million donated to SPRI); VH_Fed_004058-59 (board resolution approving SPRI agreements)<br><br>Vail Health's donation of resources, including marketing, event & development, and fundraising estimated at $11.2 million over 10 years. See VH_Fed_003796, 3799<br><br>SPRI Innovation & commercialization fund, with Vail Health investing $3 million in one or more installments. See VH_Fed003798<br><br>Vail Health's contribution of $45 million for the expansion of SPRI and Steadman space.  See VH_Fed_003790<br><br>Vail Health's commitment to build additional research space for SPRI at below-market lease rates.  See VH_Fed_004066<br><br>SPRI yearly written reports required by agreement. See VH_Fed_003920<br><br>VSOF lease agreements with Vail Health.<br><br>VSOF agreement with Vail Health for charitable | Plaintiffs' RFP No. 24 requests "All documents related to any charitable contributions or pledges by Vail Health to SPRI, Steadman, or VSO from November 1, 2012 to the present, including, but not limited to, the amount of any contributions or pledges, the date the contribution or pledge was made, and whether the contribution or pledge was given for a specific purpose." Vail Health objected to RFP No. 24 as overly broad, unduly burdensome, and disproportionate to the needs of the case and as irrelevant to Plaintiffs' antitrust claims.  The documents requested in RFP No. 24 are irrelevant to Plaintiffs' antitrust claims and are beyond the scope of this matter. Plaintiffs' Amended Complaint relates to an alleged monopoly on the part of Vail Health relating to physical therapy services. Plaintiffs are not entitled to broad information relating to any and all charitable donations made by Vail Health—wholly unrelated to physical therapy services. Plaintiffs apparently believe that because charitable donations might have been made by Vail Health generally to SPRI, those donations necessarily relate to physical therapy services. Plaintiffs provide no support for this proposition, which would expand the scope of this matter far beyond physical therapy services. |

| No. | Request No. | Plaintiffs' Position | Vail Health's Position |
|---|---|---|---|
| | | contributions. See VH_Fed_003689-97(requesting contribution); VSOF tax return (evidencing contribution was provided by Vail Health) | |
| 17 | 25 | VH_Fed00196263 (CHA market share presentation and Vail Valley full comparisons document attached but not produced) | It is unclear what Plaintiffs request in this row to be produced. RFP No. 25 requests the production of "[a]ll documents referencing or relating in any way to competitors of Vail Health, Howard Head, or RPC-Vail related in any way to physical therapy services from November 1, 2004 to the present." Vail Health agreed to produce documents "discussing or identifying competitors of Vail Health with respect to physical therapy and any plans or strategies with respect to those competitors." It has done so, including by using the following search terms:<br>• "Howard Head" AND competit* w/30 therapy<br>• "Howard Head" AND competit* w/30 PT<br>• HH AND competit* w/30 therapy<br>• HH AND competit* w/30 PT<br><br>Attached as Exhibit 25 to Vail Health's Motion for Protective Order are some representative examples of the documents response to RFP No. 25 that Vail Health has produced. |
| 18 | 7, 8, 11, 25 | On October 28, Doris Kirchner testified that she had produced text messages to Vail Health's counsel. Despite multiple references in emails produced in the federal action that references some of those texts, Vail Health produced no text messages involving Kirchner in the federal or state court action. See VH_Fed003698, VH_Fed003970, VH_Fed003975 (emails referencing text messages sent to and received from Steadman) Plaintiffs addressed this issue with Mr. Richards on October 29, but because that item was not identified in Plaintiffs' October 28 email, Mr. Richards insisted that Vail Health could not address that issue and a separate meet and confer would be required, which is scheduled for November 4. | Plaintiffs did not raise this issue in their motions to compel; therefore it is not properly before the Special Master. (Doc. 123, ¶ 3.)<br><br>Furthermore, none of these RFPs make any specific reference to text messages or Ms. Kirchner. Ms. Kirchner was a named defendant in the State Court Action and Plaintiffs have been aware of her key role in this litigation since 2016. Yet they waited until the last day of discovery to raise this issue for the first time.<br><br>Vail Health has already searched Ms. Kirchner's email files against 50 sets of relevant search terms. Plaintiffs offer no explanation for what additional information of any possible |

| No. | Request No. | Plaintiffs' Position | Vail Health's Position |
|---|---|---|---|
| | | | significance might be uncovered in her text messages. |
| 19 | Revised privilege log | At the October 20 hearing before the Special Master, Vail Health represented that a revised log would be complete in a few days.  On October 28, Plaintiffs sought a meet and confer about the privilege log, which Vail Health stated was unnecessary.  At the October 30 meet and confer, Plaintiffs did discuss with Mr. Richards the need to have the revised log early on November 1. Mr. Richards represented that he would be working on the log over the weekend and while he could not provide an exact time the revised log would be produced, he stated that it would not come "late in the evening" of November 1.  On November 2, at 1:30 pm, Vail Health produced the revised log.  Given that the log was not redlined, it will take some time to analyze before Plaintiffs can fully address the deficiencies.  One notable issue is that the revised log still does not set out who was copied on an email, making it impossible to determine whether an attorney was simply copied or could have provided legal advice that would be protected by the attorney-client privilege.  A cursory review of the log indicates that a few words were added here and there, and the log was reformatted, but those minor changes do not resolve the issues identified in Plaintiffs' motion #5.  Along with the log, Vail Health also produced a few documents that were not privileged. Given the late production of the initial and revised logs, Plaintiffs believe that an *in camera* review is not only necessary but is more than warranted here.  Plaintiffs request for *in camera* review also includes many documents that have been redacted, some on relevancy grounds and others related to claims of privilege. Plaintiffs reserve the right to supplement this chart after it has had a chance to fully review the revised log. | Vail Health's initial and revised privilege log provide more than sufficient information to evaluate Vail Health's claims of privilege.  The only purported issue with Vail Health's privilege log that Plaintiffs identify in the chart is their request that Vail Health identify "To:" recipients and "CC:" recipients separately in the log.  This proposition ignores the reality of business e-mail practice, where the placement of a recipient as a direct recipient versus a carbon copy is virtually meaningless. The location of an attorney's name on an email does not strip the email of its privileged nature. *ePlus Inc. v. Lawson Software, Inc.*, 2012 U.S. Dist. LEXIS 177616, *25-26 (E.D. Va. Dec. 14, 2012) (emails carbon copying attorney were privileged); *Santrade, Ltd. v. GE*, 150 F.R.D. 539, 545 (E.D.N.C. 1993) ("document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds").\n\nPlaintiffs fail to identify what specific documents they wish Vail Health to submit for *in camera* review.  Plaintiffs must pay for any *in camera* review they request. |

| No. | Request No. | Plaintiffs' Position | Vail Health's Position |
|-----|-------------|---------------------|------------------------|
| 19 | Search terms | At the October 22 hearing before the Special Master, Vail Health represented it would provide the search terms used in the federal action.  On October 27, Plaintiffs inquired about when the search terms used for the four custodians produced in the federal action would be produced.  Vail Health did not respond.  On October 28, Plaintiffs requested a meet and confer on the search terms, which was held on October 29.  During the conference, Mr. Richards represented that Vail Health was "putting together a list," which meant that a search term list was not initially created.  It also became apparent that Vail Health intended not to provide a search term list or identify the custodians in the federal action but to include the searches conducted in the state court action as well, which has almost nothing to do with the antitrust issues in the motions to compel.  When Plaintiffs previously requested the search terms and custodians searched in the state court action, Vail Health informed Plaintiffs that they were seeking discovery on discovery and that it would not provide that information.  During the conferral, Plaintiffs made clear that what it was seeking was the identification of custodians searched and the search terms used in the *federal* action. Plaintiffs also requested, to the extent Vail Health went beyond that and identified the searches conducted in the state action, Plaintiffs requested that the search terms used in each action be identified separately.  Plaintiffs also stated that they needed this information by November 1, so that Plaintiffs could address this issue in the November 2 list ordered by the Special Master.  Mr. Richards stated that he understood Plaintiffs' position and took it under advisement.  To the extent a search term list is provided, Plaintiffs reserve the right to supplement this chart. | Vail Health has provided this information in great detail to Plaintiffs. (Ex. 6 to MPO.) |
| 20 | Additional | At the October 22 hearing before the Special Master, | Vail Health has provided this information in great detail to |

| No. | Request No. | Plaintiffs' Position | Vail Health's Position |
|---|---|---|---|
| | custodians | Vail Health stated that Plaintiffs could request additional custodians to be searched. On October 27, Plaintiffs requested Vail Health identify the search terms used for each of the four custodians in the *federal* action. Because Vail Health has not confirmed the custodians searched for the federal action, Plaintiffs reserve the right to identify additional custodians. Plaintiffs do, however, request that each of the CFOs emails be searched from November 1, 2012, to the present, including Charles Crevling (before and after he was CFO), Ted Sirotta, Harold Dupper, and John Higgins, as well as Karen Hannah who worked with Brown related to Howard Head. Plaintiffs reserve the right to identify additional search terms once it knows the terms Vail Health used to search custodians. | Plaintiffs. (Ex. 6 to MPO.) Furthermore, every document Vail Health produces contains custodian metadata, so Plaintiffs have had this information all along. In light of the fact that Vail Health (1) searched files of 24 custodians in the State Case using Plaintiffs' requested search terms, and has already produced all responsive documents located in the emails of Vail Health's current CEO (Will Cook), former CEO (Doris Kirchner), current leader of Howard Head (Mary Ellen Broersma) and former leader of Howard Head (Nico Brown) by running more than 50 sets of search terms, the likelihood of finding relevant, non-duplicative material in the email files of these additional individuals is marginal. The CFOs and Ms. Hannah have responsibilities for the entire hospital and thus any involvement with Howard Head was a very small portion of their work. |

## PLAINTIFFS' NOVEMBER 2, 2012 LIST OF INTERROGATORIES FOR MEET AND CONFER

| No. | Interrog. No. | Plaintiffs' Position | Vail Health's Position |
|---|---|---|---|
| 1 | 9 | Vail Health has not identified what it contends to be the relevant geographic market. Nor has it identified the documents that support or refute its position as to the relevant geographic market. | Vail Health maintains its objection that it is Plaintiffs' burden to plead and prove a relevant geographic market. Plaintiffs cannot compel Vail Health to do the legal and factual analysis that Plaintiffs and their experts are required to do. |
| 2 | 11 | Identification of potential witnesses involved in discussions or meetings related to any joint venture, collaboration, or strategic partnership. This relates to the first physical therapy joint venture with Steadman and VSO, the second MSO joint venture with Steadman/SPRI and VSO/VSOF, the private equity proposed venture with Steadman, expansion into Summit County with Steadman and VSO, and expansion into Aspen/Basalt with Steadman. All involved Howard Head and the terms of any proposed or consummated agreements, discussions, etc. should have | Judge Martinez has reviewed Vail Health's interrogatory responses and concluded that Vail Health "provided substantive, detailed responses to nearly all interrogatories." (Doc. 113 at 6.) Plaintiffs' Interrogatory No. 11 was extraordinarily broad, requesting that Vail Health: Identify each and every individual, including each Vail Health director, officer, manager, employee, attorney |

| No. | Interrog. No. | Plaintiffs' Position | Vail Health's Position |
|---|---|---|---|
| | | been disclosed. The request includes any directors, officers, managers, employees, attorneys, accountants, and consultants. | and his or her law firm, accountant and his or her accounting firm, and consultant and his or her firm, who participated in discussions, meetings, or negotiations related to any joint venture, collaboration, or strategic partnership. For each and every such discussion, meeting, and communication:<br>(a) Identify the subject matter of the joint venture, collaboration, or strategic partnership discussed, including the proposed location and services to be provided;<br>(b) The date and location of where each discussion, meeting, or communication was held;<br>(c) Whether any understanding or agreement was reached, whether that be preliminary or final; and if so, the terms of such understanding or agreement.<br>(d) And if no understanding or agreement was reached, the reasons why no such understanding or agreement was reached; and<br>(e) Identify by bates number all documents referred to or relied upon in answering this interrogatory.<br><br>Despite the extreme overbreadth of Interrogatory No. 11, Vail Health provided a detailed response. Vail Health stands by its response to Interrogatory No. 11. |
| 3 | 12 | This is like Interrogatory No. 11 but seeks identification of potential witnesses and meetings in which prices, profits, reimbursement was discussed related to the joint venture, collaboration, or strategic partnership. | Plaintiffs' Interrogatory No. 12 was extraordinarily broad, requesting that Vail Health:<br>Identify each and every individual, including each Vail Health director, officer, manager, employee, attorney and his or her law firm, accountant and his or her accounting firm, or consultant and his or her firm, who participated in discussions, meetings, or negotiations related to prices, pricing, price increases or decreases, costs, profits, terms and conditions, or Medicare or medical insurance reimbursement for physical therapy treatment relating to any joint venture, collaboration, or strategic partnership. For each and every such discussion, meeting, and |

| No. | Interrog. No. | Plaintiffs' Position | Vail Health's Position |
|---|---|---|---|
| | | | communication:<br>(a) Identify the subject matter of the joint venture, collaboration, or strategic partnership discussed, including the proposed location and services to be provided;<br>(b) The date and location of where each discussion, meeting, or communication was held;<br>(c) Whether any understanding or agreement was reached, whether that be preliminary or final; and if so, the terms of such understanding or agreement.<br>(d) And if no understanding or agreement was reached, the reasons why no such understanding or agreement was reached; and<br>(e) Identify by bates number all documents referred to or relied upon in answering this interrogatory<br><br>Vail Health properly objected to Interrogatory No. 12 as constituting multiple interrogatories and as unduly burdensome, overly broad, and disproportionate to the needs of the case. *See, e.g., Convolve, Inc. v. Compaq Comput. Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004) (holding that a party need not identify in an interrogatory response all documents supporting a contention because "a contention interrogatory is not simply a vehicle for requiring an adversary to regurgitate all factual information obtained in discovery" (internal quotation marks omitted)); *Kelly v. Advanta Corp.*, No. 02-250, 2003 U.S. Dist. LEXIS 30499, at *26 (D.N.M. Mar. 21, 2003) ("When an interrogatory or document request seeks 'any and all' or 'each and every' discussion or document, it is unreasonable on its face."). |
| 4 | 13 | This is like Interrogatory Nos. 11-12 but relates to identification of witnesses and meetings involving any legal compliance issues related to any joint venture, collaboration, or strategic partnership. | Judge Martinez has reviewed Vail Health's interrogatory responses and concluded that Vail Health "provided substantive, detailed responses to nearly all interrogatories." (Doc. 113 at 6.)<br><br>Plaintiffs' Interrogatory No. 13 was extraordinarily broad, |

| No. | Interrog. No. | Plaintiffs' Position | Vail Health's Position |
|-----|---------------|----------------------|------------------------|
|     |               |                      | requesting that Vail Health: |
|     |               |                      | Identify each and every individual, including each Vail Health director, officer, manager, employee, attorney and his or her law firm, accountant and his or her accounting firm, or consultant and his or her firm, who participated in discussions, meetings, or negotiations relating to legal or regulatory issues relating to any joint venture, collaboration, or strategic partnership, including antitrust issues such as those prohibited by the Sherman Act, 15 U.S.C. § 2; kickback issues such as those prohibited under the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b); or physician referral issues, such as those prohibited by the Stark Law, 42 U.S.C. § 1395nn. For each and every such discussion, meeting and communication:<br><br>(a) Identify the subject matter of the joint venture, collaboration, or strategic partnership discussed, including the proposed location and services to be provided;<br>(b) The date and location of where each discussion, meeting, or communication was held;<br>(c) Whether any understanding or agreement was reached, whether that be preliminary or final; and if so, the terms of such understanding or agreement;<br>(d) And if no understanding or agreement was reached, the reasons why no such understanding or agreement was reached; and<br>(e) Identify by bates number all documents referred to or relied upon in answering this interrogatory.<br><br>Vail Health properly objected to Interrogatory No. 13 as constituting multiple interrogatories and as unduly burdensome, overly broad, and disproportionate to the needs of the case. *See, e.g., Convolve, Inc. v. Compaq Comput. Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004) (holding that a party need not identify in an interrogatory |

| No. | Interrog. No. | Plaintiffs' Position | Vail Health's Position |
|---|---|---|---|
| | | | response all documents supporting a contention because "a contention interrogatory is not simply a vehicle for requiring an adversary to regurgitate all factual information obtained in discovery" (internal quotation marks omitted)); *Kelly v. Advanta Corp.*, No. 02-250, 2003 U.S. Dist. LEXIS 30499, at *26 (D.N.M. Mar. 21, 2003) ("When an interrogatory or document request seeks 'any and all' or 'each and every' discussion or document, it is unreasonable on its face."). |
| 5 | 14-15 | Doctor referral information back-up detail, including identified by billable units from November 1, 2012, through FY2013 and FY2016-2021. *See* VH003060 (providing individual referral and billable units for FY 2014-15)<br><br>Appears that certain revenues tied to doctor referrals may be available through Management Responsibility Report *See* VH_Fed003061 (identifying doctor billable units and payor mix by clinic for FY2014-15) | Interrogatories No. 14 and 15 request, *inter alia*, analyses of profits attributable certain referral sources, which Vail Health does not maintain in the ordinary course of business. 7 Moore's Federal Practice § 34.12 ("A party cannot be compelled to create, or cause to be prepared, new documents solely for their production. Rule 34 only requires a party to produce documents that are already in existence.").<br><br>Vail Health has produced analyses of referral sources created in the ordinary course of business. For example, just VH_Fed_00002225 alone provides analysis of referral sources, as well as substantial backup, for FY2012 through FY2018. It is unclear what additional information Plaintiffs contend they need. |
| 6 | 18 | The former CEO Doris Kirchner and former SVP and head of Howard Head could not testify as to how prices for physical therapy services were set on the Chargemaster for any year in question. Neither deponent could identify who set the prices. If Vail Health does not know how it set the physical therapy rates in the chargemaster for the years in question, it should so state. Otherwise, it needs to provide the information requested. | Interrogatory 18 requested Vail Health describe in detail how Vail Health developed any chargemasters.<br><br>In addition to producing the chargemasters and all relevant pricing documents obtained through searches, Vail Health identified Ashley Yeo as the individual who developed the 2019 Chargemaster and described how she did so.<br><br>Vail Health further identified former employees Angela Parham, Cindy Lansdowne, and Becky Puhl as the individuals in charge of developing the Chargemasters from 2016 – 2018. In addition, former CFO Charles Crevlig testified about this process. |

| No. | Interrog. No. | Plaintiffs' Position | Vail Health's Position |
|---|---|---|---|
| 7 | 20(e)-(f) | This is like Interrogatory No. 11 and seeks the identification of any in-house or outside counsel engaged to assist with any joint venture, collaborations, or strategic partnerships related to physical therapy in terms of agreements and regulatory compliance issues. This is basic identification of potential witnesses. | Plaintiffs have not sought to depose any of the individuals identifies as having knowledge or the hospital itself on this topic.<br><br>Judge Martinez has reviewed Vail Health's interrogatory responses and concluded that Vail Health "provided substantive, detailed responses to nearly all interrogatories." (Doc. 113 at 6.)<br><br>Interrogatory No. 20 is extremely overly broad, requesting that Vail Health:<br><br>Identify each and every attorney (in-house or outside counsel), together with the name, address, and telephone number each attorney and his or her law firm, who was employed or engaged by Vail Health for the purpose of providing advice, counselling, planning, negotiating, litigation, and/or any other legal services to Vail Health with respect to each of the following subject matters:<br>(a) The planning, discussions, negotiations, or signing of any services agreements between Vail Health and RPC-Vail from January 1, 1999 to October 31, 2012;<br>(b) Legal, regulatory, or compliance issues or questions arising from the methodology used by and manner in which Vail Health billed, charged, invoiced, or otherwise requested reimbursement from payers for physical therapy services provided by RPC-Vail from January 1, 1999 to October 31, 2012;<br>(c) The planning, discussions, negotiations, or any agreements relating to the nonrenewal of any services agreements between Vail Health and RPC-Vail from January 1, 2012 to December 31, 2013; and<br>(d) Vail Health's refusal to return to RPC-Vail those documents referenced in Interrogatory No. 5 from January 1, 2012 to December 31, 2013;<br>(e) The planning, discussions, negotiations, or any |

26

| No. | Interrog. No. | Plaintiffs' Position | Vail Health's Position |
|---|---|---|---|
| | | | agreements relating to any joint venture, collaboration, or strategic partnership related in any way to physical therapy services from January 1, 2014 to the present; and<br><br>(f) Legal, regulatory, or compliance issues relating any joint venture, collaboration, or strategic partnership related in any way to physical therapy services from January 1, 2014 to the present.<br><br>Plaintiffs' belated effort to narrow Interrogatory No. 20 is improper. *See, e.g., Convolve, Inc. v. Compaq Comput. Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004) (holding that a party need not identify in an interrogatory response all documents supporting a contention because "a contention interrogatory is not simply a vehicle for requiring an adversary to regurgitate all factual information obtained in discovery" (internal quotation marks omitted)); *Kelly v. Advanta Corp.*, No. 02-250, 2003 U.S. Dist. LEXIS 30499, at *26 (D.N.M. Mar. 21, 2003) ("When an interrogatory or document request seeks 'any and all' or 'each and every' discussion or document, it is unreasonable on its face."). |
| 8 | 21(c)-(d) | This is like Interrogatory Nos. 11 and 20(e)-(f) but seeks the identification of any Vail Health accountants or public accountants related to the same topic areas identified in No. 20(e)-(f). This is basic identification of potential witnesses. | Judge Martinez has reviewed Vail Health's interrogatory responses and concluded that Vail Health "provided substantive, detailed responses to nearly all interrogatories." (Doc. 113 at 6.)<br><br>Plaintiffs' Interrogatory No. 21 is extremely overly broad, requesting that Vail Health:<br><br>Identify each and every Vail Health accountant (such as Vail Health's Chief Financial Officers), together with the name, address, and telephone number of each and every accountant (such as public accountants) and his or her accounting firm, who was employed or engaged by Vail Health for the purpose of providing advice, counselling, planning, negotiating, or any other accounting, financial, or compliance services to Vail Health with respect to each of the following subject matters: |

27

| No. | Interrog. No. | Plaintiffs' Position | Vail Health's Position |
|---|---|---|---|
| | | | (a) The planning, discussions, negotiations, or signing of any services agreements between Vail Health and RPC-Vail from January 1, 1999 to October 31, 2012; (b) Accounting, financial, regulatory, or compliance issues or questions arising from the methodology used by and manner in which Vail Health billed, charged, invoiced, or otherwise requested reimbursement from payers for physical therapy services provided by RPC-Vail from January 1, 1999 to October 31, 2012; (c) The planning, discussions, or negotiations relating to the nonrenewal of any services agreement between Vail Health and RPC-Vail from January 1, 2012 to December 31, 2013; and (d) The planning, discussions, negotiations, or any agreements relating to any joint venture, collaboration, or strategic partnership related in any way to physical therapy services from January 1, 2014 to the present; and (e) Legal, regulatory, or compliance issues relating any joint venture, collaboration, or strategic partnership related in any way to physical therapy services from January 1, 2014 to the present<br><br>Plaintiffs' belated effort to narrow Interrogatory No. 21 is improper. See, e.g., Convolve, Inc. v. Compaq Comput. Corp. 223 F.R.D. 162, 173 (S.D.N.Y. 2004) (holding that a party need not identify in an interrogatory response all documents supporting a contention because "a contention interrogatory is not simply a vehicle for requiring an adversary to regurgitate all factual information obtained in discovery" (internal quotation marks omitted)); Kelly v. Advanta Corp., No. 02-250, 2003 U.S. Dist. LEXIS 30499, at *26 (D.N.M. Mar. 21, 2003) ("When an interrogatory or document request seeks 'any and all' or 'each and every' discussion or document, it is unreasonable on its face."). |

28

| No. | Interrog. No. | Plaintiffs' Position | Vail Health's Position |
|-----|---------------|---------------------|------------------------|
| 9 | 23(d)–(e) | This is like Interrogatory Nos. 11, 20(e)–(f), and 21(c)–(d) but seeks the identification of any consultants or third parties related to the same topic areas identified in No. 20(e)–(f). This is basic information of potential witnesses. | Judge Martinez has reviewed Vail Health's interrogatory responses and concluded that Vail Health "provided substantive, detailed responses to nearly all interrogatories." (Doc. 113 at 6.)<br><br>Plaintiffs Interrogatory No. 23 is extremely overly broad, requesting that Vail Health:<br><br>Identify each and every third-party vendor, healthcare consultant, strategic planning consultant, marketing consultant, or Medicare compliance consultant or expert, together with the name, address, and telephone number of each of their firms (such as McKinsey & Assoc.) that were employed or engaged by Vail Health during the period beginning January 1, 1999, and continuing to the present, for the purpose of providing billing services, healthcare consulting, strategic planning, healthcare analysis, financial analysis, marketing advice, counselling, planning, negotiating, consulting, or any other advisory or Medicare and compliance services to Vail Health, with respect to each of the following subject matters:<br>(a) Healthcare marketing, financial, accounting, reporting, regulatory, or compliance issues relating to the planning, discussions, negotiations, or signing of the services agreement between Vail Health and RPC-Vail;<br>(b) Healthcare, marketing, financial, accounting, reporting, regulatory, or compliance issues arising from the methodology used by and manner in which Vail Health billed, charged, invoiced, and/or otherwise requested reimbursement from payers for physical therapy services provided by RPC-Vail;<br>(c) Healthcare, marketing, financial, accounting, reporting, regulatory, and/or compliance issues arising from the planning, |

29

| No. | Interrog. No. | Plaintiffs' Position | Vail Health's Position |
|---|---|---|---|
| | | | discussions, and/or negotiations relating to the nonrenewal of any services agreement between Vail Health and RPC-Vail; (d) Healthcare, marketing, financial, accounting, reporting, regulatory, or compliance issues arising from the planning, discussions, drafting, and/or negotiations relating to any joint venture, collaboration, or strategic partnership related in any way to physical therapy services; and (e) Third-party vendors providing any type of billing service, such as clearinghouses, Medicare Administrator Contractors, and billing software vendors.<br><br>Plaintiffs' belated effort to narrow Interrogatory No. 23 is improper. *See, e.g., Convolve, Inc. v. Compaq Comput. Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004) (holding that a party need not identify in an interrogatory response all documents supporting a contention because "a contention interrogatory is not simply a vehicle for requiring an adversary to regurgitate all factual information obtained in discovery" (internal quotation marks omitted)); *Kelly v. Advanta Corp.*, No. 02-250, 2003 U.S. Dist. LEXIS 30499, at *26 (D.N.M. Mar. 21, 2003) ("When an interrogatory or document request seeks 'any and all' or 'each and every' discussion or document, it is unreasonable on its face."). |
| 10 | 24 | Vail Health has identified "competitors" in Vail, Colorado and "surrounding communities," but it does not provide the address information of the "competitors." Nor does it identify the "many other smaller physical therapy practices" that Vail Health has viewed as a competitor from November 1, 2012, to the present. | Vail Health has thoroughly responded to Interrogatory 24, and has also produced numerous documents reflecting the identity of its competitors. (Ex. 25 to MPO, representative samples.) It is not Vail Health's obligation to research every physical therapy practice in the Vail Valley or to provide the addresses for these entities, when this information is equally available to Plaintiffs. |