**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation.

      Defendant.

---

**PLAINTIFFS' PROPOSED ORDER ON PLAINTIFFS' MOTION TO COMPEL # 1
RELATING TO RELEVANT GEOGRAPHIC MARKET**

---

This matter came before the Special Master upon Plaintiffs' Rule 37 Motion to Compel #1 Relating to Relevant Geographic Market. [ECF No. 127]. The Court referred this motion to the Special Master for decision, [ECF No. 135], and a video hearing was held on October 21, 2021. Appearing for Plaintiffs was Alan Kildow and Sonya Braunschweig; appearing for Defendant Vail Health was Shannon Stevenson and Daniel Richards.

Upon consideration of the memoranda and exhibits filed by the parties and the oral hearing among counsel for the parties, the Special Master hereby finds as follows:

**<u>FINDINGS OF FACT</u>**

1.     Here, Plaintiffs have alleged in its Amended Complaint that Vail Health, through its Howard Head Sports Medicine physical therapy unit ("Howard Head"), provides over 80% of the physical therapy services in the Vail Valley market and possesses monopoly power to raise prices and exclude competition. Plaintiffs also assert

that Vail Health has possessed that monopoly power for at least the past four years. [ECF No. 26 ¶¶ 2, 5, 38, 41, 43, 63].

2.      In paragraph 36 of its Answer to the Amended Complaint, Vail Health denies that the relevant geographic market is the Vail Valley.  [ECF No. 63].  It then states "that a person would need to travel about thirty miles to move from Vail to Silverthorne, Colorado and about thirty-seven miles to move from Vail to Breckenridge, Colorado."  And in paragraph 42, Vail Health denies there is a cognizable geographic market compromising the Vail Valley.

3.      On March 1, 2021, Plaintiffs served Interrogatory No. 9, seeking Vail Health to: "Identify and describe in detail Vail Health's contention as to the correct 'relevant geographic market' underlying the Complaint for antitrust violations and identify all documents by bates number that support or refute those contentions."  Vail Health's answer states: "Vail Health contends that Plaintiffs' proposed geographic market of the Vail Valley from East Vail to Gypsum, Colorado is unduly narrow," in part because of the "patients' willingness to travel to providers outside of the Vail Valley for physical therapy services, such as those in Glenwood Springs and the Frisco/Dillon/Silverthorne area."

4.      As of December 5, 2021, Vail Health has not answered Interrogatory No. 9 to inform Plaintiffs as to its definition of what it contends is the correct geographic market. Plaintiffs' motion seeks an order compelling Vail Health to provide an answer to Interrogatory No. 9.

5.      On October 7, 2020, Plaintiffs served Request for Production No. 5, which sought: "All documents concerning Vail Health's contention as to the correct 'relevant geographic market' and 'relevant product or service market' for providing physical therapy

services underlying the Complaint for antitrust violations."  In response, Vail Health stated that it "will produce documents that supports its contention that the geographic and product/service markets in Plaintiffs' Amended Complaint are not plausible."  Vail Health would not, and did not, produce any documents outside the Vail Valley.

6.       On March 1, 2021, Plaintiffs served Request for Production No. 17, seeking "All data identifying all physical therapy patients treated by…Vail Health [from November 1, 2012 to the present], including demographic information for each patient, insurance information (including insurer name, governmental entity such as Medicare Part A or Part B, self-pay etc.), referring and primary physicians, diagnoses based on an ICD9 Code, at what locations the patients were treated and when, and the amounts paid for any services billed for each patient."

7.       In response, Vail Health asserted that it "is willing to meet and confer with Plaintiffs to determine whether it can produce data responsive to a narrowed version of Request for Production No. 17 that protects patient privacy by providing de-identified and/or aggregate information, does not impose an undue burden, and relates to Plaintiffs' claims in this litigation."   Despite Plaintiffs' repeated requests, Vail Health would not participate in a conferral call about this request.  Plaintiffs therefore filed two motions to compel (#1 and #2) seeking production of this data.

8.       Thereafter, Vail Health would not meet and confer about the information Plaintiffs sought in RFP #17.  It was not until October 20, 2021, the night before the hearing with the Special Master, that Vail Health responded with a spread sheet that some of the information requested, although the names and addresses of the Vail Health patients were not included.  The data provided, however, was restricted in such a manner

that it could not be transferred to Plaintiffs' expert and could not be extracted or used by the expert in any way.  It was not until December 3, 2021, that Vail Health permitted that data to be transferred to Plaintiffs' expert for analysis.  The names and addresses of the patients still have not been made available to Plaintiffs.

9.      As Vail Health admitted at the October 21 hearing, the data does not include patients treated by Howard Head outside the Vail Valley.  It is also limited to third party insurers and does not include any data related to Medicare and Medicaid.

10.      On October 7, 2020, Plaintiffs served Request No. 5 upon Vail Health, which seeks those documents related to Vail Health's contention as to the correct "relevant geographic market."[1]  Vail Health has not produced any studies or analyses related to the purported geographic markets referenced in Interrogatory No. 9 despite Vail Health's expansion into Frisco/Dillon/Silverthorne (Summit County), as well as into Basalt,[2] which is located, in part, in Eagle County.

11.      In response to a Rule 45 subpoena, The Steadman Clinic produced certain documents that were presented to Vail Health's steering by the Hammes Group relating to the expansion into Summit County and Basalt. The Hammes PowerPoint includes analyses of physical therapy and market share, yet Vail Health refused to produce the Hammes Group documents, including communications, any reports, including the final presented to the Vail Health board, or board approvals.  Additionally, the Hammes documents references a Steering Committee organized by Vail Health to undertake this analysis.  Vail Health has not produced any Steering Committee documents.

---

[1]      Ex. 15 at Request No. 5.
[2]      Ex. 20 at 2 (discussing physical therapy in Dillon); Ex. 21 at 2-4 (Vail Health CEO Cook at Basalt groundbreaking; discussing expansion and physical therapy services).

12.     Vail Health has conducted some type of geographic analysis, which is reflected in a PowerPoint presentation entitled "VVMC Strategic Planning 2016."  A number of slides analyze orthopedic and physical therapy customers, market share based on location and zip code, and migration of certain patients to other providers.  Vail Health has not produced the underlying analysis or data supporting those slides even though this information is relevant to geographic market.

13.     The same presentation also refers to a 2013 Deloitte study related to geographic expansion, which has not been produced, nor has Vail Health produced the underlying data referenced in the PowerPoint or any communications relating to the Deloitte report.

14.     In 2018, Vail Health also hired an outside vendor, One Boston Consulting Group, which conducted an analysis of service line rollup and other data in Summit and Eagle Counties.  Other than the email, Vail Health has not produced One Boston's analysis of Vail Health competitors.  Nor has Vail Health produced any other documents related to One Boston's consulting work, including other communications and analyses.

15.     In Plaintiffs' Request for Production No. 25, Plaintiffs seek elated to competitors of Vail Health, including any plans or strategies.  In a 2017 PowerPoint, apparently presented to the Vail Health Finance Committee, the final of which has not been produced or the Board minutes, Howard Head identified its competitors, including their employee numbers. [Exhibit 26 at VH_Fed0001518].  It took some analysis to create the following list, but Vail Health has not produced documents related to the creation of the list:

```
Summit: now 9 was 11 (Avalanche minus 2)
Breck PT 1
Avalanche 4
Axis 3
Summit Chiro Rehab 1


Eagle: 17 (was 22)
Axis 4 (was 6)
Dave Honda 1 (was 2)
Align vail 1
Jt Works 2
Palic 1
VIMG 2 (was 3)
Movement 1
Ascent 1 (was 2)
Valley View 1
Competitive Edge 1
Ted Weber 1
Lindsey W 1
```

16.     In 2018, a draft PowerPoint presentation analyzes patient demographics—the final of which has not been produced, nor does it appear that Plaintiffs have all the versions either.  [Pls.' Ex. 28].  Moreover, the presentation analyzes Howard Head patient origin, *id.* at VH_Fed0001442, but the underlying data and information used to create the pie charts was not produced.  The presentation also mentions the strategy of "roll[ing] up existing clinics to grow market share," but no such documents were produced, including Vail Health's "rolling up" certain physical therapists from Axis (Kathy Gwinn) that resulted in a settlement with Axis.  That the documents related to Kath Gwinn are relevant and responsive to Plaintiffs' RFP #25 is further demonstrated by Vail Health in its privilege log, Entry Nos. 21, 23-24, in which Vail Health has redacted certain information related to the enforcement of a noncompete clause by a competitor (Axis).

17.     Likewise, in Interrogatory No. 24, Plaintiffs seek information about competitors for physical therapy services, including the name, address, and telephone number of each competitor and any plans or strategies Vail Health considered or

developed.  Other than identifying certain competitor names, Vail Health has not fully answered this interrogatory.  Vail Health identified different competitors in the 2016 and 2017 PowerPoint presentations but now asserts that those it "considered to be competitors" from December 2015 to include:  "Axis Sports Medicine, Panorama Summit Physical Therapy, Jointworx Physical Therapy, Vail Integrative Medical Group, Avalanche Physical Therapy, Vail Physical Therapy, Valley View Physical Therapy, and many other smaller physical therapy practices." Many have offices in Eagle County, Summit County, Garfield County, and the Denver metropolitan area.  For example, Avalanche only has offices in Summit County and Valley View Physical Therapy has offices in Glenwood Springs, Basalt, Silt, and Eagle.  The location of Vail Health's competitors is relevant to the geographic analysis required under antitrust law.

## CONCLUSIONS OF LAW

1.      Plaintiffs assert claims against Vail Health for monopolization and attempt to acquire or maintain monopoly in violation of the Sherman Act, 15 U.S.C. § 2.

2.      A monopoly is: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident."  *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966); *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1119 (10th Cir. 2014).

3.      "Monopoly power is the power to control prices or exclude competition." *United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 391 (1945); *Reazin v. Blue Cross & Blue Shield of Kansas, Inc.*, 899 F.2d 951, 966 (10th Cir. 1990).

4.       To prove that Vail Health possesses monopoly power, Plaintiffs must define and establish the relevant geographic market within which Vail Health's market share and monopoly power may be measured.   *United States v. Conn. Nat'l Bank,* 418 U.S. 656, 669 (1974); *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1123 (10th Cir. 2014), (citing N*ovell, Inc. v. Microsoft Corp*., 731 F.3d 1064, 1071 (10th Cir. 2013), *cert. denied*, 134 S.Ct. 1947 (2014)); *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1024 (10th Cir. 2002).

5.       Relevant geographic market definition is often a significant determinate of the outcome of antitrust cases.   Plaintiffs generally claim narrower markets and defendants' broader markets. *Federal Trade Commission v. Whole Foods Market, Inc.*, 548 F.3d 1028, 1037, -38 (D.C. Cir. 2008).   The definition of the relevant geographic is therefore often one of the most hotly contested issues in § 2 antitrust cases.   *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n.15 (1992).

6.       A plaintiff does not necessarily need to settle on a market definition at a preliminary stage of the case as Vail Health's arguments suggest.   Although the framework a plaintiff develops for alleging a *prima facie* § 2 case rests on defining a geographic market and showing undue concentration in that market, that definition may change as the facts of the case are developed.   *Whole Foods*, 548 F.3d at 1036-37.  A plaintiff may have alternative theories of the anticompetitive harm caused by a defendant, depending on inconsistent market definitions.  While on the merits, the plaintiff would have to proceed with only one of those theories, until the facts are fully developed the market definition alleged in the complaint need not be static.   *Id*. at 1036 (citing *United States v. Baker Hughes Inc.,* 908 F.2d 981, 982-83 (D.C.Cir.1990)).

7.    *"*The geographic market consists of the area of effective competition.*"* *Lantec*, 306 F.3d at 1026 (citing *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 893 (10th Cir.1991)).   The relevant geographic market for purposes of a claim under Section 2 of the Sherman Act is "the narrowest market which is wide enough so that products from adjacent areas cannot compete on substantial parity with those included in the market."   *Id.* at 1026-27 (citing *Westman Comm'n Co. v. Hobart Int'l, Inc.,* 796 F.2d 1216, 1222 (10th Cir.1986) (quotation marks and alterations omitted), *cert. denied,* 486 U.S. 1005 (1988) (quoting *Satellite Television & Associated Resources, Inc. v. Continental Cablevision of Virginia, Inc.,* 714 F.2d 351, 356 (4th Cir.1983), *cert. denied,* 465 U.S. 1027 (1984) (quoting L. Sullivan, *Handbook of the Law of Antitrust* § 12, at 41 (1977)).

8.    The language of *Lantec* and *Westman* for purposes of this motion is important: the geographic market is the *narrowest* market which is *wide enough* so that products from adjacent areas cannot compete on substantial parity with those included in the market."   This is a comparative analysis of the geographic areas within which patients look for physical therapy service and where the parties offer their services.   It is not a static geographic analysis based solely on the alleged definition in a plaintiff's complaint, as Vail Health contends in the present case.   While Tenth Circuit law is controlling on this issue, other courts have similarly rejected the argument Vail Health makes here that Plaintiffs' relevant geographic market limits the scope of discovery.   *See In re Loestrin 24 Fe Antitrust Litig.,* No. 1:13-MD-2472-S-PAS, 2017 WL 1491911, at *4 (D.R.I. Mar. 15, 2017) (ordering discovery beyond alleged market and noting court's should not conflate scope of discovery with market definition allegations); *SmithKline Beecham Corp. v.*

*Apotex Corp.,* Nos. 99-CV-4304, 2006 WL 279073, at *3 (E.D. Pa. Jan. 31, 2006) ("broad discovery" applies equally to geographic scope and justifies discovery outside relevant geographic market); *Prudential N.Y. Theatres Co. v. Radio City Music Hall Corp.,* 271 F. Supp. 762, 763 (S.D.N.Y. 1967) ("[c]ourts have been hesitant to restrict plaintiff's inquiries to a limited geographical area").  As one oft-cited case has put it, "regardless of how [the] geographic market is eventually defined in this action, the boundaries of that market do not set the geographic limit for discovery."  *Kellam Energy, Inc. v. Duncan,* 616 F. Supp. 215, 219 (D. Del. 1985).  *See also Am. Key Corp. v. Cole Nat'l Corp.,* 762 F. 2d 1569, 1576-77 (11th Cir. 1985) (noting trial court ordered market discovery beyond Atlanta to southeastern portions of United States).  They have done so because it undercuts numerous fundamental principles of economics and antitrust law.

9.    **The Hypothetical Monopolist Test.**   The Tenth Circuit's reliance in *Westman* upon *Satellite Television* is important for another reason.  It is where the Fourth Circuit adopted the "hypothetical monopolist" or "SSNIP" test (Small but Significant and Non-transitory Increase in Price) for defining, among other things, the relevant geographic market.  This test became crystalized in antitrust scholarship and eventually was adopted as the sole basis for the U.S. Department of Justice's 1982 Merger Guidelines.  The hypothetical monopolist test is now the predominant methodology for defining geographic markets in federal circuit case law.  The legal genesis of the test is the *Handbook of the Law of Antitrust*, 1978, by Lawrence A. Sullivan, and the quotation from his treatise that is found in *Westman* ("the geographic market is the *narrowest* market which is wide enough").

10.     The hypothetical monopolist test begins by defining a narrow market and asking whether a hypothetical monopolist in the defined market could profitably implement a SSNIP—which is usually measured as a 5% price increase for one year.  If the hypothetical monopolist (here, Vail Health) could profitably sustain the 5% price increase, then it possesses monopoly power.   If, however, sufficient numbers of consumers move their business to a different geographic market to purchase the service they seek so that the price increase is unprofitable, the hypothetical monopolist lacks the power to raise and maintain price over the long run.  The hypothetical monopolist test that is derived from the Sullivan text has been quoted in cases in the First, Third, Fifth, Eighth, Ninth, Tenth, Eleventh, and D.C. Circuits and has become a dominant economic methodology for defining relevant geographic markets.  *Federal Trade Commission. v. Penn State Hershey*, 838 F.3d 327, 336 (3d Cir. 2016); *Federal Trade Commission v. Advocate Health Care Network*, 841 F.3d 460, 2016 (7th Cir. 2016).

11.     In quoting the language of *Satellite Television*, the Tenth Circuit, like the other federal Circuits, also adopted the hypothetical monopolist as an accepted methodology for defining relevant geographic markets.   To conduct the hypothetical monopolist test, Plaintiffs are entitled to reliable data from Vail Health to enable Plaintiffs' experts to address the question of the hypothetical 5% price increase and whether it would result in an unprofitable reduction in the utilization of Vail Health's physical therapy services.  Would such a price increase be large enough that Vail Health would not find it profitable to impose such an increase in price because so many patients would travel to Summit County or some other place?  If Vail Health could not sustain the price, then it is not a monopolist.  But if it could maintain the price increase, as Plaintiffs contend, then

Vail Health maintains monopoly power, which is the essence of a Sherman Act § 2 case. *Grinnell*, 384 U.S. at 570-71; *Lenox*, 762 F.3d at 1119.

12.     The Special Master concludes that the hypothetical monopolist test adopted by the Tenth Circuit entitles Plaintiffs to discovery into Vail Health's historical data and documents for physical therapy services.  This data (and/or documents) includes unit prices for physical therapy services charged and received, physical therapist utilization statistics, and revenues generated by the services rendered.  It entitles Plaintiffs to discovery into the historical total costs (fixed, direct, and variable) that Vail Health incurred in providing physical therapy services.  And it entitles Plaintiffs to discovery into historical data/documents as to the profits that Vail Health has in the past realized for providing physical therapy services.  The Special Master further concludes that although Vail Health has within its information systems the data and information that would be required to conduct the hypothetical monopolist test, it has not provided that information to Plaintiffs.

13.     Based upon the authorities cited above, which the Special Master finds controlling, the statistical operational and financial data, documents, and information referred to above shall include not only the Vail Valley, but also Summit, Garfield, and Pitkin counties, and any other territories that Vail Health contend constitute the relevant geographic market.  The hypothetical monopolist test referred to in *Lantec* and *Westman* requires discovery into and analysis of alternative geographic markets if Vail Health disagrees with Plaintiffs' proposed geographic market definition.  The Special Master, therefore, orders the production of the discovery sought.

14.     **Patient Flow Analysis.**  There is another test for defining relevant geographic market that the Special Master concludes the Tenth Circuit entitles Plaintiffs

to conduct.  This analysis is premised upon the principle that "the geographic market is not comprised of the region in which the seller attempts to sell its product, but rather is comprised of the area where his customers would look to buy such a product."  *Lantec*, 306 F.3d at 1027 (citing *Tunis Bros. Co. v. Ford Motor Co.,* 952 F.2d 715, 726 (3rd Cir.1991); *Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.,* 924 F.2d 1484, 1490 (9th Cir. 1991)).

15.     The methodology used to determine where the patients look for care has been referred to as the "Elzinga-Hagarty" method.  It is based on the economic concept that if a particular geographic market imports little of its health care, it can be deemed a market from the demand perspective, as few individuals see the need to leave the area to be treated.  But if an area exports little of its health care, it can be determined a market from the supply perspective.  Using this conceptual framework, all that is required for producing a market using this method are patient utilization statistics consisting of patient origin and destination, which is what Plaintiffs have been requesting Vail Health to produce since October 7, 2019.  *California v. Sutter Health Syst.*, 84 F.Supp.2d 1057, 1072 (N.D. Cal. 2002); *Federal Trade Commission v. Evanston N.W. Healthcare Corp.*, 144 F.T.C. 1, 500-01, 2007-2 Trade Cas. (CCH) ¶ 75,814, 2007 WL 2286195 (2007).

16.     *Lantec* and the Tenth Circuit authorities cited above permit Plaintiffs to discovery of Vail Health data, documents, and information as to the geographic territory where (a) patients look to receive their physical therapy, and (b) where Plaintiffs, Vail Health, and other physical therapy providers offer their services.  That is, patient utilization statistics consisting of patient origin and destination.

17.    The Special Master concludes that the methodologies for geographic market definition that have been authorized by the Tenth Circuit envision going beyond a limited, single geographic market defined in a plaintiff's complaint, as argued by Vail Health.  These methodologies require discovery and analysis into wider geographic areas as identified above.  And because market definition is a question of fact, the facts of these wider markets must be developed during the course of discovery.  *Lenox*, 762 F.3d at 1120; *Telecar Comm'ns, Inc. v. Sw. Bell Tel. Co.*, 305 F.3d 1124, 1131 (10th Cir. 2002); *Westman,* 796 F.2d at 1220.  The Special Master therefore rejects Vail Health's argument that discovery is limited to the Vail Valley.

18.    **Patient Survey.**  *Lantec* also instructs that consumer preferences are relevant to the definition of the relevant geographic market.  Another methodology that *Lantec* authorizes Plaintiffs to conduct is a patient-preference survey.  *Lantec*, 306 F.3d at 1027.  This would be conducted from a sample derived from Howard Head orthopedic patients and individuals who were not Howard Head patients.  But the names and addresses of the Howard Health patients are required to conduct the survey, and Vail Health refuses to provide Plaintiffs with the patient names and addresses.  The Special Master concludes that under *Lantec* Plaintiffs are entitled to the names, addresses, zip codes, medical treatment/procedures, and dates of procedures, dates of admittance and discharge, and will orders Vail Health to produce that information to Plaintiffs.

19.    **Cases Cited By Vail Health.**  Despite the abundance of controlling Tenth Circuit law on the issue of geographic market definition, at the October 21 hearing, Vail Health provided to the Special Master and Plaintiffs a case that at it contends stands for the opposite legal proposition: "In an antitrust case, courts generally limit discovery to the

ambit of the applicable market." *Radio Music License Comm., Inc. v. Global Music Rights, LLC,* 19- No. CV 3957, 2020 U.S. Dist. LEXIS 243375, at *16 (C.D. Cal. Jan. 2, 2020). There are a number of points that should be made with respect to Vail Health's use of the *Radio Music* case.

20.     *First*, Vail Health did not mention *Radio Music* in its responsive brief, it raised it for the first time during the hearing on October 21, so Plaintiffs did not have a chance to address it in their reply brief or respond to it at the hearing.   *Second*, *Radio Music* is a district court case from California that the Special Master is not required to follow.   *Third*, Vail Health's responsive brief does not mention or address any of the Tenth Circuit or Supreme Court cases cited in Plaintiffs' motion and as set forth above.   As a result, it has not presented any explanation as to why the Special Master should follow a district court from California or why *Lantec*, *Westman*, and the other Tenth Circuit cases are not applicable and controlling here.

21.     *Finally*, the Special Master finds *Radio Music* distinguishable, inapplicable, and thus declines to follow it.   There, the product market in the complaint was "the terrestrial radio market," (that is, old fashioned radio stations that broadcast through the airwaves from ground-based stations).   *Id.* LEXIS 243375, at *1.   Most importantly, the court pointed out that "[h]ere, both parties' complaints identify terrestrial radio licenses as the applicable market."   *Id.* at *5.   As part of the *Radio City* plaintiff's Rule 37 motion to compel, it sought "dealings with entities other than broadcast radio stations."   *Id.* at *5. The plaintiff in *Radio Music* was seeking discovery from "nonradio entities" such as internet broadcasters, a product market that the plaintiff did not even assert was part of the product market giving rise to the defendant's alleged antitrust liability.   *Id.*   The

"applicable" product market in *Radio Music* was terrestrial radio market, which both the plaintiff and defendant agreed upon, and therefore the court found that there was no reason why discovery should extend into a market that was not at issue.

22.     The other cases that were only recently cited by Vail Health in its November 29, 2021 chart (almost three months after its response was filed) are equally inapplicable to this case.  [ECF No. 246-2 at 11-12.].  For example, *Vident v. Dentsply International, Inc.,* No. SA CV 06-1141, 2008 WL 4384124 (C.D. Cal. Aug. 29, 2008), involved a case that had been addressed on appeal and "the Third Circuit had [already] found that "[t]he relevant market here is the sale of artificial teeth in the United States both to laboratories and to the dental dealers."  *Id.* at *3 (citing *United States v. Dentsply, Int'l, Inc.*, 399 F.3d 181, 188 (3d Cir. 2005)).  A careful reading of *Vident* shows that the parenthetical quote in *Radio Music* that the magistrate judge's ruling in *Vident* was that "the definition of the relevant market in [this antitrust] case determines the scope of the allowable discovery."  *Radio Music*, LEXIS 243375, at 2.  But that quote is incorrect because it was what the defendant, Dentsply, argued was the magistrate judge's error. It is not what the magistrate judge said or held.  He merely held that "in the previous litigation between the United States and Dentsply, the Third Circuit had found that "[t]he relevant market here is the sale of artificial teeth in the United States both to laboratories and to the dental dealers."  *Vident,* 2008 WL 4384124, at *3.  *Vident*, therefore, does not stand for the proposition for which it is asserted by Vail Health.

23.     Another case recently identified by Vail Health is *Bal Seal Engineering, Inc. v. Nelson Prod., Inc.,* No. 13 CV 1880, 2017 WL 10311212 (C.D. Cal. Oct. 19, 2017), which is an order requiring the parties to meet and confer on a number of discovery

issues.  In providing the parties guidance for the meet and confer, the court specifically noted that: "Judge Staton previously ruled, 'Nelson Products has adequately pleaded Bal Seal's monopoly power in a relevant market. Nelson Products alleges that the relevant product market is the canted coil spring manufacturing market, especially for connector applications, and the relevant geographic market is the United States.'"  *Id.* at *3. Although the case is so short and cryptic that its procedural history is not readily apparent, from what can be gleaned, it appears that in the plaintiff's amended counterclaim, it may have suggested its definition of the product market may have been expanded and thus the counterclaim defendant sought discovery to clarify the product market definition.  The counterclaim plaintiff responded by saying no, the product market is co-extensive with the canted coil springs that it manufactures.

24.      While *Bal Seal* states that the "definition of the 'relevant market' defines the scope of relevant discovery," that appears to be in the context of the parties clarifying the definition of the relevant product market, as there was no dispute about the geographic market being the United States.  *See id.* at*6 ("If the relevant market is the United States, why are documents about other geographic locations relevant?").  The magistrate judge therefore asked the counterclaim plaintiff to consider answering an interrogatory explaining the extent of its relevant product market and respond to certain requests for production of documents to clarify the counterclaim defendant's "legitimate confusion." He then sent the parties off to meet and confer about the issues.

25.      Also cited in its November 29 chart is *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164, 2007, 2007 WL 2668742, at *11 (D. Kan. Sept. 6, 2007).  Vail Health asserts that its stands for the proposition that "discovery outside the

relevant geographic market is 'not relevant on its face."  Vail Health Chart at 10.  The *Heartland* court's statement is unremarkable because there, like the *Vident* case, the plaintiff and the defendant were both in agreement that the relevant geographic market was Kansas City.  Discovery would obviously not be necessary to prove facts that both parties agree upon.

26.     The present case is different than *Radio Music* and the other cases referred to above because here Vail Health denies that the relevant geographic market is the Vail Valley.  And although it disagrees with Plaintiffs' definition, thus far Vail Health has been evasive in stating what it contends definition of the relevant geographic market should be.  Although it remains opaque, Vail Health appears to suggest that the geographic market includes Summit County, Aspen/Basalt, and perhaps other areas.

27.     This inference is reasonable given that Vail Health does not dispute that it provides physical therapy services in Summit County and other areas beyond the Vail Valley (as defined in Plaintiffs' amended complaint).  This case has been pending since July 17, 2019, and discovery is nearing its end.  After 2½ years it is now time for Vail Health to disclose its contention as to the definition of the geographic market.  Like the court in *Bas Seal*, therefore, the Special Master concludes that Vail Health must answer Plaintiffs' Interrogatory No. 9 to identify what it contends is the definition of the relevant geographic market.

28.     If Vail Health agrees with Plaintiffs and stipulates that the relevant geographic market is the Vail Valley, then it must say so and that "definition of the 'relevant market' (Vail Valley) [would] define[] the scope of relevant discovery."  But if Vail Health contends that the geographic market is larger than the Vail Valley and includes

counties such as Summit, Garfield, or Pitkin—where some of Vail Health's purported competitors provide physical therapy services—then Vail Health must say so and provide a definition as to what it contends the geographic territory should be included.  If Vail Health answers Interrogatory No. 9 in a manner that the geographic market is larger than Vail Valley, then it must further respond to the other discovery ordered by the Special Master, and do so in a manner that is consistent with scope of geographic territory analysis defined by the Tenth Circuit, as set forth herein.

29.     **Attorney Fees.**  Rule 37(a)(5) provides that if a party moving to compel discovery is successful, the court "must" award the moving party its reasonable attorney fees.  But the court "must not" order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's response or objection was substantially justified;  or  (iii) other circumstances make an award of expenses unjust.

30.     Here, Plaintiffs' motion was filed only after an extended period of time was spent with numerous efforts to resolve the dispute.  This process involved numerous emails and requests for conferrals by Plaintiffs, the joint preparation of an extensive informal discovery dispute chart, and a hearing before Magistrate Judge Gallagher.  The Special Master finds that Rule 37(a)(5)(i) does not exempt Vail Health from the requirement to pay Plaintiffs' attorney fees for bringing this motion.

31.     With respect to whether Vail Health's objections to Plaintiffs' discovery, and its refusal to answer certain interrogatories or produce certain data and documents, the Special Master finds that Rule 37(a)(5)(ii) does not exempt Vail Health from the requirement to pay Plaintiffs' attorney fees for bringing this motion.  Vail Health's

objections with respect to the relevant geographic market issues were not substantially justified for the following reasons:

32.     *First*, Vail Health incorrectly represented in its objections to written discovery propounded by Plaintiffs, as well as its response to Motion to Compel #1, that antitrust issues presented to this federal Court here were litigated in the Eagle County action.  Those representations were certainly incorrect with respect to the definition of the relevant geographic market.  The record and the briefing with respect to Motion to Compel # 1 demonstrate that in this federal antitrust action Plaintiffs have raised basic § 2 issues and principles regarding relevant geographic definition that were never even mentioned in the Eagle County action.  Nor were any facts relevant to geographic market even raised in the Eagle County action.

33.     *Second*, prior to the filing of this motion, Plaintiffs presented numerous controlling Tenth Circuit cases dealing with the definition of relevant geographic markets.  Vail Health did not take issue with any of those authorities in responding to the motion.  It was not until the first hearing on October 21, 2021, that Vail Health referenced a district court case from California—*Radio Music*—and brought it to the attention of Plaintiffs and the Special Master.  Thus, Vail Health did not submit any purportedly countervailing authority for 2½ months after Plaintiffs' August 2 Motion to Compel # 1 was filed.  As the Special Master has concluded above, neither *Radio Music* nor any of the other cases belatedly provided on November 29, overcome the Tenth Circuit authorities that must guide the definition of relevant geographic market in this case.  There can be no justification for Vail Health's failure to cite or acknowledge controlling Tenth Circuit law.

34.     *Third*, Vail Health possessed the data in its computer system to provide Plaintiffs with the information their expert needed to conduct the economic analyses discussed above to define the relevant product market.  Vail Health waited until the evening of October 20, 2021—long after Plaintiffs' motion was filed—to produce some of this data, but even then, the data does not conform to what Vail Health stated would be produced.  Not only was the data incomplete, but it was restricted in a manner that it could not be produced to Plaintiffs' experts, and the data could not be extracted or used by the experts until Vail Health finally produced it on December 3, 2021.

35.     Against this factual background, under Rule 39(A)(iii) there are no other countervailing grounds that would justify exempting Vail Health from paying the attorney fees incurred in bringing Motion to Compel # 1.  Vail Health will be ordered to pay the reasonable attorney fees counsel for Plaintiffs have expended with respect to Motion # 1.

## **PROPOSED ORDER**

PLAINTIFFS' MOTION TO COMPEL #1 IS HEREBY GRANTED AS FOLLOWS:

Within 14 days from the date of this Order, Vail Health shall produce the following:

1.     The period of discovery to which Vail Health shall respond shall be from November 1, 2012, to the present.

2.     Vail Health shall answer Plaintiffs' Interrogatory No. 9 regarding its proposed definition of the relevant geographic market in this case.

3.     Vail Health shall answer Plaintiffs' Interrogatory No. 24 and identify the competitors and the locations that Vail Health contends compete with it.

4.     Vail Health shall produce data and documents regarding its physical therapy services that are responsive to Plaintiffs' Request for Production Nos. 5, 17, and 25, concerning the relevant geographic market, including Summit, Garfield, and Pitkin counties, as follows:

5.     Financial statements (however prepared), financial analyses, data and/or reports available in Vail Health's computer system related to physical therapy.

6.      Unit prices for physical therapy services, physical therapist utilization statistics, and revenues generated by the services rendered for Howard Head.

7.      Reimbursement claims submitted by Vail Health to payers such as medical insurers (United Healthcare, BlueCross/Blue Shield, etc.), Medicare, Medicaid, and other governmentally funded medical reimbursement programs for physical therapy services.

8.      Total costs (fixed, direct, and variable) that Vail Health incurred in providing physical therapy services.

9.      Profits (excess of revenues over costs) realized for physical therapy services.

10.     Emails, mobile telephone text messages, letters, memoranda, and notes to or among Vail Health board members, management, employees, or agents relating to the relevant geographic market.

11.     Patient demographic data that shall include the patient's name, address, zip code, medical treatment/therapy, referring and primary physicians, diagnoses based on an ICD9 Code, the locations where the patients were treated, payer (medical insurers or governmental entity such as Medicare Part A or Part B, self-pay etc.), address, and amounts paid for any services billed for each patient.

12.     Hammes Group data and documents provided to or received by Vail Health's Steering Committee regarding expansion into Summit County, Aspen/Basalt, or other areas considered.  These documents shall include all Hammes' reports, presentations, and documents provided to Hammes regarding Vail Health's physical therapy market share, and all Hammes documents provided to the Vail Health board of directors.

13.     Deloitte reports prepared in 2013 and 2017, including a PowerPoint apparently presented to the Vail Health Finance Committee.

14.     PowerPoint presentation prepared in 2018 that analyzes patient demographics and Vail Health shall also produce the data underlying the PowerPoint and emails relating to the PowerPoint.

15.     Documents related to the hiring of the Axis physical therapist (Kathy Gwinn), communications with Axis about her noncompete, and any settlement to resolve a dispute about Gwinn's noncompete.

16.     Plaintiffs are awarded their reasonable attorney fees for bringing this Motion To Compel #1 and shall file a request for payment within 14 days of this Order.

IT IS SO ORDERED.

BY THE COURT:

Dated:  December __, 2021

_____

W. Terry Ruckriegle
Special Master

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2021, I served a true and correct copy of Plaintiffs' Proposed Order on Plaintiffs' Motion To Compel #1 Relating to Relevant Geographic Market, via the Court's ECF system on:

> Shannon Stevenson
> Janet A. Savage
> Jackie Roeder
> Daniel Richards
> Davis Graham & Stubbs LLP
> 1550 17th Street, Suite 500
> Denver, CO  80202
>
> Counsel for Defendant

> *s/ Alan L. Kildow*
> Alan L. Kildow