IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

    Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation.

    Defendant.

---

**PLAINTIFFS' PROPOSED ORDER ON PLAINTIFFS' MOTION TO COMPEL # 2 RELATING TO VAIL HEALTH'S MONOPOLY POWER**

---

This matter came before the Special Master upon Plaintiffs' Rule 37 Motion to Compel # 2 Relating to Vail Health's Monopoly Power. [ECF No. 129]. The Court referred this motion to the Special Master for decision, [ECF No. 135], and a video hearing was held on October 21, 2021. Appearing for Plaintiffs was Alan Kildow and Sonya Braunschweig; appearing for Defendant Vail Health was Shannon Stevenson and Daniel Richards.

Upon consideration of the memoranda and exhibits filed by the parties and the oral hearing among counsel for the parties, the Special Master hereby finds as follows:

## FINDINGS OF FACT

1. In this motion, Plaintiffs seek basic antitrust discovery going to price, costs, profitability, and customers.

2. On March 1, 2021, Plaintiffs served Interrogatory No. 18, seeking Vail Health to: "Describe in detail how Vail Health developed any chargemasters from

1

November 1, [2012], to the present, and in doing so, identify the chargemaster in use during this period of time, the directors, officers, managers, employees, consultants, and accountants who were involved in setting prices or fees, and identify all components of any prices or charges related in any way to physical therapy services identified on the chargemaster during that same period of time." The chargemaster is used to generate the patient's bill for medical services and contains the prices of all services, goods, and procedures for which a separate charge exists.

3. Vail Health's answer identifies the chargemaster's in use for 2016-2019, identifies three individuals involved in the development of the chargemaster from 2016-2018, and states that "Vail Health continues to investigate and confirm the precise process that was used to develop Vail Health's chargemaster as it relates to physical therapy services for 2016-2018 time period." Other than identifying that in May 2019, six months after the chargemaster was initially set, that prices were set at the 25th percentile price level found withing a software system used by Vail Health, Vail Health has not supplemented this Interrogatory with the information requested from November 1, 2012 through 2015, or from 2020-2021, despite representing that it would do so in its opposition to this motion. Vail Health also has not identified "the precise process used to develop Vail Health's chargemaster as it relates to physical therapy for the [2012]-2018" or 2020-2021 time period, or the components or factors used to set those prices.

4. In Request for Production No. 18, Plaintiffs seek the documents discussing, supporting, or identifying any factors, costs, or expenses associated with pricing physical therapy services in the chargemaster. Given that the chargemaster is set on a yearly basis, Vail Health has not explained why documents have not been produced identifying

2

the factors used to set the various physical therapy services from 2012 to the present. One explanation is that Vail Health searched email accounts of four individuals, none of which were identified in answer to Interrogatory No. 18. In its Initial Disclosure, Vail Health also stated that has "market analyses used to set HHSM's prices," but other than a report issued six months after the 2019 chargemaster was set, no other documents have been identified by Vail Health that are responsive to this request.

5. In October 2019, Plaintiffs served Request for Production No. 2, which seeks annual, quarterly, and monthly financial statements, projections, and financial analyses for Howard Head. During the hearing on October 21, 2021, Vail Health identified one document that summarizes Howard Head's income and revenues. Plaintiffs objected to that summary, arguing that Plaintiffs are entitled to the underlying data and information. Plaintiffs also objected to the "income statements" that were used and modified by Brown for purposes of analyses he conducted related to the joint venture.

6. In the November 29 submission by Vail Health, Vail Health cites to Nicholas Brown's testimony, claiming that income statements are not generated for Howard Head. Because this issue was first raised by Vail Health long after the parties briefed the motion, Plaintiffs submitted Nicholas Brown's testimony related to this issue. In his deposition, Brown testified that he obtained financial information for Howard Head from Karen Hannah, who is in charge of the decision support department of Vail Health.

> **Q. (BY MR. KILDOW) The question was: Were financial statements prepared for Howard Head Sports Medicine while you were the vice president of Howard Head?**
> A. Yes. There were a variety of different financial reports that could have been produced through Strata. If you go back to that same document, you can see that that is relative expense per therapeutic exercise for a single clinic. So it is how much salary does it cost you

3

> to produce one CPT code of therapeutic exercise. So you could go and get any level of detail that you wanted in your business.
> **Q. And did you do that?**
> A. I got the information I needed to get in order to run the business, yes.[1]
>
> ***
>
> **Q When it says "HH Income Statement," that relates to the Howard Head department that you ran until you departed in 2021; is that correct?**
> A. Yes, that's correct.
> **Q. Okay. Was there a person that prepared this financial -- this piece of information that's on the screen for you?**
> A. Yes.
> **Q. (BY MR. KILDOW) Who was that?**
> A. It was the decision support department that pulled this information.
> **Q. Do you have the names of anybody that put this together?**
> A. Karen Hannah.
> **Q. Did you work directly with her to put this together?**
> A. Yes.
> **Q. Okay. And would you characterize the body of this in the columns "Actual 2016" and "Actual 21 2017," "Actual 2018" as in a financial statement format?**
> A.      Yes, one could characterize it as a financial statement.
>
> ***
>
> **Q. And these were financial statistics that were maintained in the Vail Health financial accounting system; is that correct?**
> A. This was a rollup -- statement rollup that was produced by decision support for the purpose -- for these purposes.[2]

7.     That Vail Health has the ability to generate financial statements is also supported by a financial statement for 2015 that was provided to one of the independent valuation consultants.  See Pls.' Ex. 18 at VH_Fed002031, 2041.

8.     In Request for Production No. 4, Plaintiffs seeks documents related to the costs incurred and profits realized for Howard Head, including salary, benefits, and administrative, and overhead costs.  At the October 21 hearing, Vail Health showed this summary chart to the Special Master.  See Pls.' Ex. 22 at VH_Fed000764.  None of the

---

[1]     Ex. 1 at 45 [Brown Dep.].
[2]     Id. at 56-58.

4

costs are broken down by location or category, such as $31.6 million in "indirect costs" and $48.1 in "direct costs."

9. In the chart Vail Health submitted on November 29, it includes the testimony of Nicholas Brown, in which Vail Health claims that Howard Head does not have cost reports. But the distinction that Brown drew appears to be the nomenclature used to identify the reports, which Brown called "expense reports" not "cost reports:

> **(BY MR. KILDOW) Any cost incurred in the business of providing physical therapy services by Howard Head.**
> A. Do you mean expense?
>
> **Q. Expense is typically a synonym of cost. I will go with expense, yes. Could you answer that question?**
> A. Direct expense in the -- in labor 11 expense, and sometimes total expense, was noted; but indirect expense, such as an IT department, billing departments, real estate holdings, maintenance, maintenance vehicles, insurance, legal fees, etcetera, would not be included.
> **Q. Okay. And where were they kept? Where were the direct expenses kept?**
> A. Direct expenses were handled by the finance department.[3]
> **(BY MR. KILDOW) -- what was the name of the expense report that you were referring to?**
> A. I don't recall the exact name of the report.
> **Q. (BY MR. KILDOW) What kind of information was in the report?**
> **Q. (BY MR. KILDOW) Was there information relating to salaries?**
> A. Yes.
> **Q. Real estate expense?**
> A. No.
> **Q. Okay. The same things you've talked about before, is that what was in this report?**
> A. Well, I misspoke there. When I said "real estate expense," there -- that's separate from -- that would be specific to owned real estate expense. So maintenance expense for owned real estate There's also real estate expense that one could -- it might be leases, et cetera.
> **Q. Okay. Who is the -- what was the name of the department that was responsible for preparing this expense report?**
> A. Finance department.

---

[3]   *Id.* at 28.

5

> **Q. (BY MR. KILDOW) Would that be under the auspices of the chief financial officer?**
> A. The finance operations of the organization would be under the auspice of the chief operating officer, yes.[4]

Brown also testified that by using the Strata system, which is used by Vail Health for financial purposes, a user "could look at any number of performance metrics, operational ratios, trends over time for a single department, a single site, a single payor type code" and the user could even obtain a report for revenue generated by physical therapists.[5]

10. In Request for Production No. 17, Plaintiffs seek patient information related to the procedures, charges, and paid amounts for physical therapy services—that is, the payer submissions and reimbursements. Vail Health produced one document for the month of November 2019 showing that most of the information requested this information is available in Cerner. *See, e.g.,* Pls.' Ex. 25. Instead of producing the patient data as it is kept in the normal course of business, Vail Health created a new report, which was produced on December 6, 2021. The data is incomplete and does not identify the individual dates of service, the rendering physician, the chargemaster description, the amount charged for each date of service, or the amount reimbursed for each date of service. It also does not include payers, such as Medicaid or Medicare, and excludes patients that were treated outside the Vail Valley. The Special Master therefore finds that the patient data is incomplete.

11. In Request for Production Nos. 9 and 10, seek employment records identifying each physical therapist employed by Vail Health, including the employment agreements, start and end dates, as well as any post-employment agreements. Vail

---

[4] *Id.* at 38-39.
[5] *Id.* at 52.

Health produced approximately ten redacted examples of employment agreements but no other documents that allow Plaintiffs to conduct a yearly market-share analysis based on the number of physical therapists employed by Vail Health.

## **CONCLUSIONS OF LAW**

1. Plaintiffs assert claims against Vail Health for monopolization and attempt to acquire or maintain monopoly in violation of the Sherman Act, 15 U.S.C. § 2.

2. A monopoly is: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966); *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1119 (10th Cir. 2014).

3. "Monopoly power is the power to control prices or exclude competition." *United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 391 (1945); *Reazin v. Blue Cross & Blue Shield of Kansas, Inc.*, 899 F.2d 951, 966 (10th Cir. 1990).

4. To prove that Vail Health possesses monopoly power, Plaintiffs must first define and establish the relevant geographic market within which Vail Health's market share and monopoly power may be measured. *United States Conn. Nat'l Bank,* 418 U.S. 656, 669 (1974); *Lenox MacLaren*, 762 F.3d at 1123 (citing N*ovell, Inc. v. Microsoft Corp*., 731 F.3d 1064, 1071 (10th Cir. 2013); *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1024 (10th Cir. 2002).

5. Evidence relevant to proof of monopoly power may be summarized broadly as direct and indirect (circumstantial) evidence. *Lantec,* 306 F.3d at 1027. Direct evidence includes: (a) Structure of the market, which includes those firms the alleged

7

monopolist asserts are competitors, *Reazin,* 899 F.2d at 967, (b) Proof of supracompetitive prices, *Christy Sports LLC, v. Deer Valley Resort Co., Ltd.,* 555 F.3d 1188, 1198 (10th Cir. 2009), (c) Restricted output, *FTC v. Ind. Fed'n of Dentists,* 476 U.S. 447, 460 (1986), *Christy Sports,* 555 F.3d at 1198, and (d) Exclusion of competitors. *Westman Comm'n Co. v. Hobart Int'l, Inc.,* 796 F.2d 1216, 1225 n.3 (10th Cir.1986)); *Forbes Magazine* (Nov. 7. 2017) ("hospitals in most communities have focused on reducing or eliminating competition").   https://forbes.com/sites/robertpearl/2017/hospital.

6.  Indirect evidence includes: (a) Data calculating market share, *Grinnell*, 384 U.S. at 571 (quoting *Am. Tobacco v. United States*, 328 U.S. 781, 797 (1946)); *Colo. Interstate Gas Co. v. Natural Gas Pipeline Co.,* 885 F.2d 683, 693, 696 (10th Cir.1989), *cert. denied,* 498 U.S. 972 (1990); *Reazin,* 899 F.2d at 967; *Shoppin' Bag,* 783 F.2d at 161, (b) Elasticity of supply and demand, *Shoppin Bag, Inc. v. Dillon Co's.*, 783 F.2d 159, 162 (10th Cir. 1986), (c) pricing in excess of marginal or average cost, *Dial Corp. v. News Corp.,* 165 F. Supp.3d 25, 41-42 (S.D.N.Y. 2016), (d) Excessive profitability, and (e) Barriers to entry such as control over an essential resource (such as labor), entrenched buyer preference, among others. *Reazin,* 899 F.2d at 967.

7.  **Direct Evidence.**  Taking the elements of direct evidence that are relevant to proof of monopoly power, Vail Health is required to respond to Plaintiffs' discovery requests as follows:

8.  Vail Health is required to answer Interrogatory No. 24 relating to its competitors. *Reazin,* 899 F.2d at 967.  Vail Health is required to identify those physical therapists or physical therapy groups in the Vail Valley that it contends are or have been competitors of Vail Health's Howard Head physical therapy clinic in the Vail Valley.  Vail

Health must also identify its physical therapy competitors in Summit, Garfield, and Pitkin counties. Vail Health must identify each location for each competitor identified.

9. Plaintiffs requested the production of documents concerning Vail Health's physical therapist employment statistics. Request Nos. 9 and 10. The Special Master concludes that Plaintiffs' requests are relevant for a number of reasons. The employment agreements at issue contain the following or similar restrictive covenant:

> Non Solicitation
>
> During the term of your employment and for a period of one year thereafter you shall not…directly or indirectly solicit, divert, or take away, or attempt to solicit divert, or take away any business the Medical Center **has enjoyed or solicited prior to the date hereof** or at any time during your employment with the Medical Center. This provision however shall not be construed to require Employee to violate any law forbidding anti-competitive practices or any law regarding anti-trust. (emphasis added.)

10. Plaintiffs allege that this restrictive covenant is void under C.R.S. § 8-2-113(2), which provides that "[a]ny covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer shall be void…." (emphasis added.) C.R.S. § 8-2-113(2)(d) provides that the prohibition on covenants "shall not apply to...[e]xecutive and management personnel and officers and employees who constitute professional staff to executive and management personnel."

11. The employment agreements are also relevant to the issue of the exclusion of competitors. *Westman,* 796 F.2d at 1225 n.3. The restrictive covenants are relevant because they could be construed to have an unnecessarily adverse effect on competition. *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 604 (1985).

12. The employment agreements are relevant because they can be considered

a barrier to entry, which "are relevant to the analysis of market or monopoly power." *Reazin,* 899 F.2d at 968. This labor restriction is relevant because through those employment restrictions Vail Health has "control over an essential…resource." *Id.* The Special Master will therefore order production of each of the physical therapist's employment agreements.

13. The physical therapist costs and the anticompetitive employment restrictions are also relevant to the structure of the physical therapy market, and in particular the labor market. *Id.* at 968. And the labor costs incurred by Vail Health in providing the Howard Head physical therapy services are also relevant because they comprise a significant component of its overall and variable costs of the Howard Head clinic, which are relevant to, among other analyses, the data required to conduct a demand sensitivity and marginal cost analysis. *Dial,* 165 F. Supp.3d at 41-42.

14. Much of this information should be contained in the financial data that Vail Health is being ordered to produce with respect to Plaintiffs Motion to Compel #1. With respect to the specific employment and cost information, Vail Health is required to provide Plaintiffs with a certified spreadsheet detailing the employment data for each physical therapist employed by Vail Health during the period November 1, 2012, to the present. The spreadsheet shall contain the start dates and end of employment dates (if relevant), salaries, bonuses, and costs of benefits for each physical therapist.

15. Vail Health is required to produce data and documents for each year detailing the unit price and the associated dollar volume it has generated in providing physical therapy services. It is also required to produce cost information incurred and profitability realized from providing the physical therapy services. This includes, but is not

limited to, price data, physical therapist utilization statistics, revenue data and reports, cost data and reports, financial statements, and financial analyses.

16. As to another factor in identifying direct evidence of monopolization, Vail Health has made substantial payments to Steadman that Plaintiffs allege were designed to achieve sole-source status for physical therapy to Steadman's patients. Because Plaintiffs allege that Vail Health was a dominant firm with over 70% market share, Vail Health could be considered to have paid for exclusionary rights by sharing part of Vail Health's gains from the exercise of market power. In other words, the Steadman relationship is relevant because it may be evidence of the exclusion of a competitor (Steadman) from the physical therapy market in the Vail Valley. Plaintiffs, therefore, are entitled to, and Vail Health must produce, all documents relating to its relationship with Steadman relating in any way to physical therapy from November 1, 2012, to the present. *U.S. v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001); *LePages Inc. v. 3M Co.*, 324 F.3d 141, 149 (3d Cir. 2003); *Conwood Co. v. U.S. Tobacco Co.,* 290 F.3d 768, 782-82 (6th Cir. 2002); *U.S. v. Microsoft Corp.,* 253 F.3d 34 (D.C. Cir. 2001)*.*

17. **Indirect Evidence.**  Taking each of the elements of indirect evidence that are relevant to proof of monopoly power, Vail Health is required to respond to Plaintiffs' discovery requests as follows:

18. Plaintiffs have defined the Vail Valley as the relevant geographic market. As the Special Master ordered in with respect to Motion to Compel #1, if Vail Health contends that the relevant geographic market extends further to other areas, such as Summit, Garfield, and Pitkin counties, it must produce discovery relevant to market share in those geographic areas as well.

19. Applied to the present case, evidence of Vail Health's market share will be comprised of, and the discovery to which Plaintiffs are entitled, data and documents as to the volume of physical therapy business that Vail Health provided to patients in the geographic markets referenced above. The volume of business at any given time will be evidenced by:

    a. The number of Vail Health physical therapists employed,

    b. The number of patient physical therapy visits,

    c. The number of units of physical therapy care rendered,

    d. The utilization rates for Vail Health's physical therapists,

    e. The price charged for each unit of physical therapy, and

    f. The dollar volume of physical therapy provided to patients.

20. With data relating to the volume of physical therapy business that Vail Health has generated in the relevant geographic market, Plaintiffs' experts may then proceed to calculate the market share, that is the percentage of business Vail Health has achieved, in the relevant geographic market. Of course, to the extent that Vail Health has information relating to its competitors with respect to any of the factors set forth in the preceding paragraph, that information must also be produced.

21. As the Tenth Circuit pointed out in *Reazin*, if the defendant's market share exceeds about 50%, monopoly power may be presumed. *Reazin,* 899 F.2d at 967. But market share is not enough. The market share must be proven to be "durable." *Id.* at 268. That means that the alleged monopolist must have been able to profitably maintain its above-market prices for an extended period of time. And that is where analysis of elasticity of demand and supply and marginal cost analysis come into play. *Shoppin Bag*,

783 F.2d at 162.

22. Put in its most simplistic form, the price cross-elasticity of demand measures the relative responsiveness of quantity demanded to a given product or service to changes in the price of a related product or geographic market. Elasticity is calculated on the basis of the price of a given volume demanded and the elasticity is expressed as a percentage change in the quantity demanded for a given change in price. So the analysis is: if the price of a service increases by 2%, what will be the impact on demand? Michael L. Kitz and Harvey S. Rosen, *Microeconomics* 3d. ed. (1998), at 75. To perform the analysis authorized by the Tenth Circuit, however, the economist needs to know the unit price of the service and the historical volumes produced at given prices, as well as the costs involved in generating the service volumes.

23. The Special Master concludes that the Tenth Circuit entitles Plaintiffs' economic expert to perform a demand elasticity analysis as an economic tool to determine whether and to what extent Vail Health possesses monopoly power. To enable their expert to perform this analysis, Plaintiffs are entitled to Vail Health financial information with respect to unit price, volume, costs, and profitability for its physical therapy services. Vail Health, therefore, must produce financial information detailing those elements, and that includes financial statements and financial analyses for the physical therapy services that were rendered by Howard Head from November 1, 2012, to the present.

24. **Attorney Fees.** Rule 37(a)(5) provides that if a party moving to compel discovery is successful, the court "must" award the moving party its reasonable attorney fees. But the court "must not" order this payment if: (i) the movant filed the motion before

13

attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's response or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.

25. Here, Plaintiffs' Motion to Compel # 2 was filed only after an extended period of time was spent with numerous efforts to resolve the dispute. This process involved numerous emails and requests for conferrals by Plaintiffs, the joint preparation of an extensive informal discovery dispute chart, and a hearing before Magistrate Judge Gallagher. The Special Master finds that Rule 37(a)(5)(i) does not exempt Vail Health from the requirement to pay Plaintiffs' attorney fees for bringing Motion to Compel #2.

26. With respect to whether Vail Health's objections to Plaintiffs' discovery, and its refusal to answer certain interrogatories or produce certain data and documents, the Special Master finds that Rule 37(a)(5)(ii) does not exempt Vail Health from the requirement to pay Plaintiffs' attorney fees for bringing Motion to Compel #2. Vail Health's objections with respect to the issues raised in this motion were not substantially justified for the following reasons:

27. *First*, Vail Health incorrectly represented in its objections to written discovery propounded by Plaintiffs, as well as its response to Motion to Compel #2, that antitrust issues presented to this federal Court here were litigated in the Eagle County action. Those representations were certainly incorrect with respect to the definition of the relevant geographic market. The record and the briefing with respect to Motion to Compel # 2 demonstrate that in this federal antitrust action Plaintiffs have raised basic § 2 issues and principles regarding relevant geographic definition that were never even mentioned in the Eagle County action. Nor were any facts relevant to geographic market even raised

14

in the Eagle County action.

28.     *Second*, prior to the filing of this motion Plaintiffs presented numerous controlling Tenth Circuit cases dealing with these antitrust basic principles.  Vail Health did not take issue with any of those authorities in responding to the motion and presented no countervailing authority.

29.     *Third*, Vail Health possesses the data in its computer system to provide Plaintiffs with the information their expert needed to conduct the economic analyses discussed above.  This information includes patient data, physical therapists employment data, costs, pricing, and revenues.  The patient data that Vail Health produced on December 6, 2012 is not only incomplete, it was created for purposes of this litigation and does not provide the detail that Vail Health maintains in the ordinary course of its business, as reflected in some limited reports that Vail Health has produced in this action.  The delay in obtaining even this limited data justifies the award of attorneys' fees.

30.     Against this factual background, under Rule 39(A)(iii) there are no other countervailing grounds that would justify exempting Vail Health from paying the attorney fees incurred in bringing Motion to Compel # 2.  Vail Health will be ordered to pay the reasonable attorney fees counsel for Plaintiffs have expended with respect to Motion # 2.

### PROPOSED ORDER

PLAINTIFFS' MOTION TO COMPEL #2 IS HEREBY GRANTED AS FOLLOWS:

Within 14 days from the date of this Order, Vail Health shall produce the following:

1.  The period of discovery to which Vail Health shall respond shall be from November 1, 2012, to the present.

2.  Vail Health shall answer Interrogatory No. 24 relating to its competitors in the Vail Valley, as well as those it contends are or have been competitors of Vail Health's Howard Head physical therapy clinic and in Summit, Garfield, and Pitkin counties. Each competitor will be identified by location.

3. Vail Health shall produce each of the Vail Health physical therapist's employment agreements in unredacted form.

4. Vail Health shall provide Plaintiffs with a certified spreadsheet detailing the employment data for each physical therapist employed by Vail Health during the period November 1, 2012. The spreadsheet shall contain the start and end dates of employment, salaries, bonuses, and costs of benefits for each physical therapist.

5. Vail Health shall produce data and documents to Plaintiffs for each year detailing the unit price and the associated dollar volume it has generated by providing physical therapy services.

6. Vail Health shall produce to Plaintiffs cost information incurred and profitability realized from providing the physical therapy services. This includes, but is not limited to, price data, physical therapist utilization statistics, revenue data and reports, cost data and reports, financial statements, and financial analyses.

7. Vail Health shall produce documents relating to its relationship with Steadman and SPRI regarding physical therapy, and all payments or contributions, however characterized, to SPRI from November 1, 2012 to the present.

8. Vail Health shall produce to Plaintiffs the volume of business at any given time will be evidenced by:

   a. The number of Vail Health physical therapists employed,

   b. The number of patient physical therapy visits,

   c. The number of units of physical therapy care rendered,

   d. The utilization rates for Vail Health's physical therapists,

   e. The price charged for each unit of physical therapy, and

   f. The dollar volume of physical therapy provided to patients.

9. Plaintiffs have defined the Vail Valley as the relevant geographic market. As the Special Master ordered with respect to Motion to Compel #1, if Vail Health contends that the relevant geographic market extends further to other areas, such as Summit, Garfield, and Pitkin counties, it must produce discovery relevant to market share in those geographic areas as well.

10. Applied to the present case, evidence of Vail Health's market share will be comprised of, and the discovery to which Plaintiffs are entitled, data and

documents as to the volume of physical therapy business that Vail Health provided to patients in the geographic markets referenced above.

11. Plaintiffs are awarded their reasonable attorney fees for bringing this Motion To Compel #1 and shall file a request for payment within fourteen days of this Order.

IT IS SO ORDERED.                    BY THE COURT:

Dated:  December __, 2021

_____
W. Terry Ruckriegle
Special Master

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2021, I served a true and correct copy of Plaintiffs' Proposed Order on Plaintiffs' Motion To Compel #2 Relating to Vail Health's Monopoly Power, via the Court's ECF system on:

> Shannon Stevenson
> Janet A. Savage
> Jackie Roeder
> Daniel Richards
> Davis Graham & Stubbs LLP
> 1550 17th Street, Suite 500
> Denver, CO  80202
>
> Counsel for Defendant

*s/ Alan L. Kildow*
Alan L. Kildow