**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

    Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation.

    Defendant.

---

**PLAINTIFFS' PROPOSED ORDER ON RULE 37 MOTION TO COMPEL #4
RELATING TO JOINT VENTURES AND OTHER COMBINATIONS**

---

This matter came before the Special Master upon Plaintiffs' Rule 37 Motion to Compel # 4 Relating to Joint Ventures and Other Combinations.  [ECF No. 157].  The Court referred this motion to the Special Master for decision, [ECF No. 161], and a video hearing was held on October 22, 2021. Appearing for Plaintiffs was Alan Kildow and Sonya Braunschweig; appearing for Defendant Vail Health was Shannon Stevenson and Daniel Richards.

Upon consideration of the memoranda and exhibits filed by the parties and the oral hearing among counsel for the parties, the Special Master hereby finds as follows:

## **FINDINGS OF FACT**

    1.    In Request for Production Nos. 7 and 8, Plaintiffs seeks documents relating to any proposed joint venture, merger, or other combination with The Steadman Clinic and its foundation the Steadman Philippon Research Institute ("SPRI"), and Vail-Summit Orthopaedic, and its foundation Vail-Summit Orthopaedics Foundation ("VSOF").

Plaintiffs have identified a number of documents responsive to this request that have not been produced, including term sheets for the proposed second MSO joint venture with Steadman and VSO. Another potential combination involved Vail Health's potential purchase of Avalanche Physical Therapy from VSO, and while it appears that some documents were produced, documents related to the decision on the purchase have not been produced.

2. Plaintiffs have identified other combinations responsive to this request include agreements with Steadman and VSO (or their foundations) related to the expansion in Summit County, Basalt, and Aspen that includes Howard Head physical therapy. Vail Health has not produced any documents related to those combinations. Request Nos. 7 and 8 also includes agreements between Vail Health and Steadman, and Vail Health and VSO related to lease agreements at various locations, including in Vail and other new locations. These lease agreements are relevant because the one Steadman lease that Vail Health has produced restricts Steadman from engaging in physical therapy in that space. Additionally, many joint venture documents, and in particular, the fair market value analyses conducted by independent third parties have not been produced. The Special Master has addressed this issue in its Order on Motion to Compel #5 when it ordered the documents to be produced because they were not privileged in the first instance.

3. In Request for Production No. 24, Plaintiffs seeks documents relating to any charitable contributions or pledges by Vail Health to Steadman's foundation SPRI and VSO's foundation VSOF. In 2015, Vail Health made a significant ten-year commitment of $4.3 million to SPRI, amounting to over $44.3 million. The Vail Health Foundation also

paid SPRI of over $1.3 million in 2017 and over $1.1 million in 2018, characterizing those payments on its tax returns as pass through donations.  The agreements and related communications have not been produced.  SPRI also entered into a lease agreement with Vail Health, in which SPRI does not pay any rent for 5 years and then pays $8/square foot for the next five years.  These agreements were entered into at the same time Steadman/SPRI and Vail Health were discussing a joint venture for physical therapy.  Vail Health was also given two seats on SPRI's Board.  Because "both parties consider[ed] [all agreements as] a package strategic alliance," the Special Master finds that they are relevant here.  Vail Health also proposed a joint venture with Steadman related to a Sports Performance Center, but other than a PowerPoint, no terms sheets, agreements, or other communications were produced.

4. At the same time Vail Health was negotiating a joint venture with VSO, and its foundation VSOF, it entered into lease agreements with VSO and also charitable contribution agreements.  According to publicly-filed tax returns, in June 2015, Vail Health and VSOF partnered to obtain a $62,000 grant.  Other collaborative research agreements were also apparently entered into with Vail Health, but none have been produced.

5. In Interrogatory No. 11, Plaintiffs seek information about Vail Health directors, officers, managers, employees, attorneys, accountants, and any other consultants who participated in discussions related to any joint venture, collaboration, or strategic partnership.  The Special Master finds that Vail Health did not fully answer the Interrogatory related to the joint ventures and other combinations with Steadman, VSO, and Sports Rehab.  Vail Health did not identify where the meetings took place, who attended, summarize what was discussed, identify why no agreements were reached,

and fails (in part) to identify documents relied upon.  Vail Health has also not disclosed why the joint venture for physical therapy was later restructured as a managed services organization ("MSO"), identify the terms of that agreement, or explain why that agreement was not reached.

6. And as to VSO, Vail Health states in very general terms that there were discussions concerning physical therapy services with VSO.  The terms of the proposed MSO agreement are not disclosed, nor was the term sheet produced.  From the documents produced, Vail Health had discussions with PJ Abbott, Richard Cunningham, and Chip Webb of VSO, but they were not even mentioned.  Additionally, Vail Health states that Duane Morris attorneys participated in discussions, but has not disclosed what meetings they attended, with whom, or what was discussed.

7. In Interrogatory No. 14, Plaintiffs seek information related to the number of patients and revenues and profits generated by doctor referrals, which is related to both Steadman's and VSO's relationship with Vail Health.  Vail Health's answer references a summary chart from 2013 through August 2016, but that does not break down the information as requested in Interrogatory No. 14.  The summary is actually derived from a more detailed report generated by Nicholas Brown, former head of Howard Head, that includes a breakdown of the number of referrals by each doctor, as well as the number

of physical therapy units (by doctor) those referrals generated in 2014 and 2015. *See* Pls.' Ex. 44.

## CONCLUSIONS OF LAW

8. This is an action under the Sherman Act, 15 U.S.C. § 2, which makes it unlawful for a person or firm to "monopolize, or attempt to monopolize...any part of the trade or commerce…."

9. "To prevail on an attempted monopolization claim, a plaintiff must show: (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456 (1993); *Christy Sports, LLC. v, Deer Valley Resorts Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009).

10. "As a legal matter, Sherman Act § 2 requires that the defendant either have monopoly power or a dangerous probability of achieving it...." XI Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 1800c5, at 22 (3d ed 2011). Section 1 uses the term "combination" as "any contract, combination or conspiracy," and § 2 similarly states: "Every person who shall monopolize, or attempt to monopolize, or combine with any person or persons, to monopolize…." The Act's proscriptions therefore cover a wide swath of commerce and encompass a full range of business arrangements.

11. The leading § 2 case is United *States v. Grinnell*, 384 U.S. 384 (1966), which involved about 70 years of complicated acquisitions of various business by the company now known as ADT. The Supreme Court noted that "[t]he fact that Holmes [the acquiree] is more nearly local than the others [corporate acquisitions] does not save it,

5

for it is part and parcel of the combine presided over and controlled by Grinnell [the monopolizing corporate acquirer]." *Id.* at 575-76.

12.     In *Novell, Inc. v. Microsoft, Corp.*, 731 F.3d 1064 (10th Cir. 2013), then Judge Gorsuch said that "anticompetitive conduct comes in too many forms and shapes to permit a comprehensive taxonomy."  *Id.* at 1072 (citing *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 767-68 (1984)). Its breadth is demonstrated in a June 2021 decision, where now Justice Gorsuch had little difficulty applying the concept of a "combination" to the manner in which the NCAA was characterized as a "joint venture" under Sherman Act § 1 scrutiny.  *Nat'l Collegiate Athletic Ass'n v Alston*, 141 S. Ct. 2141, 2155 (2021).

13.     This case involves a number of possible combinations between Vail Health, The Steadman Clinic, Vail-Summit Orthopaedics, Sports Rehab.  The elements of various exclusive dealing arrangements, even in a *de facto* context, "are cognizable under the antitrust laws" because "they may be used by a monopolist to strengthen its position, which may ultimately harm competition."  *McWane, Inc. v. F.T.C.*, 783 F.3d 814, 834 (11th Cir. 2015) (quoting *Minn. Mining & Mfg. Co. v. Appleton Papers, Inc.,* 35 F.Supp.2d 1138, 1144 (D.Minn.1999)).  *See also Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 45 (1984) (O' Connor, J., concurring); *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 270 (3d Cir. 2012).

14.     What is important is that § 2 requires a defendant to have either monopoly power or a dangerous probability of achieving it.  XI Areeda & Hovenkamp, *Antitrust Law* ¶ 1800c5, at 22 (3d ed. 2011).  Plaintiffs allege that Vail Health had monopoly power (over 70-80% market share) when it collaborated with Steadman, VSO, Sports Rehab, and

others. So there was a dangerous probability that Vail Health's potential combinations would "strengthen[] or prolong[] [its] market position" and constitute an improper means to maintain monopoly power. IIIB Areeda & Hovenkamp, *Antitrust Law* ¶ 760b7, at 54 (3d ed. 2008); *United States v. Dentsply Int'l., Inc.*, 399 F.3d 185, 187 (3d Cir. 2005).

15. Anticompetitive combinations come in many different forms and are too dependent upon context for parties, courts, or commentators to enumerate all their varieties. *Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1087 (D.C. Cir. 1998). So as to the illegal combinations here, Plaintiffs seek an order that Vail Health responding to discovery relating to: (1) the combination's purpose—that is, valid business reasons; (2) the form(s) the combination would take; (3) who would control and manage the new organization; (4) the prices that would be charged; (5) the costs that would be incurred and how those costs would be funded; (5) the potential profits that would be gained or losses incurred; (6) assessments of the net effect that the combination would have on consumer welfare; (7) assessments of the net competitive effects and whether the combination harmed equally efficient rivals; (8) assessments of the procompetitive or efficiencies that would be generated by the combination; and (9) attempts to exclude (potential) competitors or on some basis other than efficiency.

16. Vail Health has limited its production to joint venture documents for physical therapy in the Vail Valley. It contends that collaborations with Steadman and VSO to expand services to Summit County and Aspen/Basalt are irrelevant because they fall "outside of Plaintiffs' geographic market…." Stated differently, Vail Health seeks to limit

7

discovery into combinations with Steadman and VSO by claiming that the geographic market limits the relevant discovery into other antitrust issues.

17. Courts addressing that argument have rejected it. .*In re Loestrin 24 Fe Antitrust Litig.,* No. 1:13-MD-2472-S-PAS, 2017 WL 1491911, at *4 (D.R.I. Mar. 15, 2017) (ordering discovery beyond alleged market and noting court's should not conflate scope of discovery with market definition allegations); *SmithKline Beecham Corp. v. Apotex Corp.,* Nos. 99-CV-4304, 2006 WL 279073, at *3 (E.D. Pa. Jan. 31, 2006) ("broad discovery" applies equally to geographic scope and justifies discovery outside relevant geographic market); *Prudential N.Y. Theatres Co. v. Radio City Music Hall Corp.,* 271 F. Supp. 762, 763 (S.D.N.Y. 1967) ("[c]ourts have been hesitant to restrict plaintiff's inquiries to a limited geographical area").

18. As one Court has put it, "regardless of how [the] geographic market is eventually defined in this action, the boundaries of that market do not set the geographic limit for discovery." *Kellam Energy, Inc. v. Duncan,* 616 F. Supp. 215, 219 (D. Del. 1985). *See also Am. Key Corp. v. Cole Nat'l Corp.,* 762 F. 2d 1569, 1576-77 (11th Cir. 1985) (noting trial court ordered market discovery beyond Atlanta to southeastern portions of United States). They have done so because it undercuts numerous fundamental principles of economics and antitrust law.

19. Justice Byron White, in a § 2 monopolization and attempt to monopolize case, summarized it this way: "plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each. '[T]he character and effect of a conspiracy [to monopolize] are not to be judged by dismembering it and viewing its separate parts, but only by looking

at it as a whole.'" *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962).

20. This explains why discovery in an "antitrust case is necessarily broad because allegations involve improper business conduct....Such conduct is generally covert and must be gleaned from records, conduct, and business relationships." *Callahan v. AEV, Inc.*, 947 F. Supp. 175, 179 (W.D. Pa.1996); *United States v. Int'l Bus. Machs. Corp.,* 66 F.R.D. 186, 189 (S.D.N.Y. 1974).

21. In *Continental Ore*, Justice White and the Court ordered a new trial because of the trial court's "persistent exclusion of evidence relating to the pre-1938 period" when the defendants allegedly engaged in monopolization of the European vanadium market *before* even entering into the U.S. *Id.* at 711. So the scope of discovery must not be conflated because the economic analyses for defining relevant geographic markets and determining monopoly power require broad discovery into alternative markets.

22. Additionally, a relevant geographic market is "the area of effective competition," or an area in which products or services from adjacent areas cannot compete on substantial parity with those offered inside the area because of price, transportation, or customer preferences, etc. *Lantec, Inc. v. Novell, Inc.,* 306 F.3d 1003, 1026-27 (10th Cir. 2002). In healthcare cases, the plaintiff generally seeks a narrower geographic market than the defendant, thus presenting dueling definitions, with the fact-finder deciding which side prevails. *See, e.g., St. Alphonsus Med. Center-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 784 (9th Cir. 2015); *Federal Trade*

*Commission v. Tenet Health Care Corp.*, 186 F.3d 1045, 1052-53 (8th Cir. 1999); *Westman Comm'n Co. v. Hobart Int'l, Inc.,* 796 F.2d 1216, 1220 (10th Cir.1986).

23. Analysis of patients' convenience, however, is essential to defining any geographic market and *requires* discovery into different, alternative geographic markets. *Federal Trade Commission v. Penn State Hershey Med. Center*, 838 F.3d 327, 338 (3d Cir. 2016); *In the Matter of Evanston N.W. Healthcare Corp.*, F.T.C. No. 9315, 2007 WL 2286195, at *7 (Aug. 6, 2007). Here, that raises the question of whether patients travel 30-37 miles from Silverthorne or Breckenridge for physical therapy treatment in Vail? If so, how much of a savings would it require to induce a patient to make that trip? Recent statements by Vail Health's CEO Will Cook indicate that the new Vail Health locations in Summit County and the Roaring Folk Valley are to offer "more affordable" and "convenient" care to patients. Vail Health's former Vice President of Clinical Physical Therapy for Howard Head testified on October 9, 2021, to essentially the same thing.

24. Against this legal and factual background, the Special Master therefore concludes that Plaintiffs are entitled to discovery of what Vail Health and other medical providers have been doing in Summit County, Basalt, and Aspen. After all, the definition of relevant geographic market is an issue of fact. *Westman,* 796 F.2d at 1216.

25. Discovery relating to Vail Health's expansion of its medical service lines, which include physical therapy, into other markets is also relevant to monopoly power. Plaintiffs are entitled to conduct an analysis of Vail Health's production capacity in the Vail Valley as a factor in determining the extent of its monopoly power there. *Federal Trade Commission v. Ind. Fed'n of Dentists*, 476 U.S. 460-61 (2009) (stating proof of actual detrimental effects, like reduced output, can obviate need for inquiry into market

power); *Broadcom Corp. v. Qualcom, Inc.*, 501 F.3d 297, 307 (3d Cir. 2007) (direct evidence of market power may include "actual supracompetitive prices and restricted output"); *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995) (same).

26. Discovery into Vail Health's expansion into Summit County and other locations is relevant because, if Vail Health had underutilized surgical suites and excess physical therapy capacity in the Vail Valley, it would have been economically inefficient to open new facilities in Summit County, Basalt, or Aspen if they fell within the same geographic market. If that were so, Vail Health would encourage Summit County residents to drive to Vail for treatment. But if Vail Health did not have underutilized capacity in the Vail Valley that would be direct evidence that Vail Health's productive capacity was sufficiently limited so as to convey enough monopoly power to raise prices. This is a matter of elementary economics: restricted output affects the supply available to satisfy demand. If supply is limited, prices go up.

27. This discovery is also relevant to the issue of "willful acquisition or maintenance" of monopoly power. The lengths Vail Health would go to tie up Steadman and VSO in noncompetes and other restrictive contracts—not only in Vail Valley but also in other markets—provides direct evidence of specific intent to monopolize. *Aspen Skiing Co. v. Aspen Highlands Skiing Corp,* 472 U.S. 585 (1985) (conduct in other markets may be proof that defendant's conduct was "a decision of a monopolist to make an important change in the character of the market").

28. The tens of millions of "charitable contributions" Vail Health made to Steadman's and VSO's foundations is also relevant to the "willful acquisition or maintenance" of monopoly power. Vail Health's "charitable" contributions were made at

11

the same time the joint venture was being contemplated and ultimately the leases were being negotiated, those agreements were approved by the Board on the same day. Both parties viewed the relationship between Steadman, SPRI, and Vail Health as "a package strategic alliance," so to argue that SPRI is irrelevant is contradicted by the documents. Vail Health also "donated" to SPRI by charging it no rent for the first five years, and thereafter, charging $8/square foot, substantially lower than the fair market value of real estate in Vail.  It also pledged $43 million in donations, valuing the relationship at $174 million.

29.  And at the same time VSO was negotiating the joint venture, it too sought and obtained "donations" for its foundation and moved its offices into Vail Health, likely with a lease restriction prohibiting physical therapy.  If VSOF has a lease with Vail Health at reduced rates ("donations"), or contains restrictions related to physical therapy, that agreement is relevant as well.

30.  Included within the combination documents are the independent fair market appraisals conducted for the physical therapy joint venture with Steadman and VSO. Vail Health claims that much of the independent appraisers' valuation work is protected by the attorney-client privilege.  The Special Master addresses that issue in the Order on that motion, but for purposes of this motion the Special Master finds that the valuation work is not protected by attorney-client privilege, and Vail Health is ordered to produce those documents being withheld on that basis.

31.  As to Interrogatory No. 11, Vail Health did not address, and thus concedes, that it did not disclose anything about the MSO joint venture, including the terms of the proposed agreement.  Vail Health has also not identified the collaborations between

12

Steadman, VSO, and Vail Health in Summit County (which includes Hammes), and in Aspen/Basalt.  As to Duane Morris law firm, Vail Health asserts that documents are privileged, but that does not preclude it from disclosing what meetings Duane Morris attended, with whom, what was discussed with any third parties, and as to Vail Health, the subject matter of the discussion.  The Special Master therefore orders Vail Health to supplement its answer to Interrogatory No. 11 and fully disclose the combinations with Steadman and VSO related to physical therapy.

32.   In answering Interrogatory No. 14, Vail Health claims that it does not "compile or create" doctor referral reports in the ordinary course of business.  But as former Vice President Luke O'Brien testified, Vail Health has this data "in a server" that Brown and his assistant used to generate reports.  Plaintiffs showed the Special Master at the October 22 hearing the types of referral reports that can be generated from Vail Health's system.  Regardless of whether those reports were generated in the ordinary course of its business is immaterial.  Because Vail Health has the data, Interrogatory No. 14 must be answered by Vail Health.  In *Crocs, Inc. v. Effervescent,* Civil Action No. 06-cv-00605-PAB-KMT, 2017 U.S. Dist. LEXIS 184498 (D. Colo. Feb. 8, 2017), a case strikingly similar, the defendant argued it too was unable to locate existing sale reports. This Court noted: "[w]ith respect to database storage of information, the law does not support [defendant's] verbal sleight of hand.  In fact, the court finds that this argument comes alarmingly close to deceit.  Courts considering the issues of dynamic database data have held that if information is stored in a database, requiring reports be run from the database is not the creation of new evidence or discovery." *Id.* at *10-12 (citing *Apple Inc. v. Samsung Elecs. Co.,* Case No.: 12-CV-0630-LHK (PSG), 2013 WL 4426512, at *3

(N.D. Cal. Aug. 14, 2013); *In re eBay Seller Antitrust Litig.* Case No. C 07-1882 JF(RS), 2009 WL 3613511, at *1 (N.D. Cal. Oct. 28, 2009); *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 683 (N.D. Cal. 2006)).

33. Given the documents that Vail Health has produced in this action regarding doctor referrals, which include billable units by each physician, the Special Master finds that Vail Health's objections cannot be sustained.

34. Rule 37(a)(5) provides that if a party moving to compel discovery is successful, the court "must" award the moving party its reasonable attorney fees. But the court "must not" order this payment if it was filed without a good faith effort to obtain the discovery, the objection was substantially justified, or an award of expenses would be unjust. Those factors are not present here, so an award of attorney's fees is appropriate, particularly given the number of deficiencies in Vail Health's production.

## **ORDER**

Within 14 days from the date of this Order, Vail Health shall produce the following:

1. The time period for the documents and information ordered to be produced shall be from November 1, 2012 to the present.

2. Documents with The Steadman Clinic and/or its foundation SPRI, including lease agreements, charitable contribution agreements, agreements related to expanding services in Summit County and Aspen/Basalt, as well as communications related to those issues and physical therapy services.

3. Documents with Vail-Summit Orthopaedics and/or its foundation VSOF, including lease agreements, charitable contribution agreements, agreements related to expanding services in Summit County, discussions related to any other collaboration with Vail Health or Howard Head, as well as communications related to those issues and physical therapy services.

4. Communications and documents exchanged with Vail Heath (including its attorneys) and any third-party independent consultant related to any joint venture or other combination for physical therapy services.

5. Communications and documents related to the expansion into Summit County and Aspen/Basalt, including documents sent to or from Hammes Company, as well as any documents created by Hammes Company.

6. Vail Health shall fully answer Interrogatory No. 11 without any limitation as to geographic market.

7. Vail Health shall produce a doctor referral summary in answering Interrogatory No. 14, which includes all back up detail for the number of referrals and billable units for physical therapy services similar to the form set out in Plaintiffs' Ex. 44, HHSM Referral Source Analysis, VH_Fed_00002009.

8. Plaintiffs may submit a request for attorneys' fees and costs within 14 days from the date of this Order.

IT IS SO ORDERED.          BY THE COURT:


Dated: December ___, 2021          _____
                                    W. Terry Ruckriegle
                                    Special Master

## CERTIFICATE OF SERVICE

    I hereby certify that on December 6, 2021, I served a true and correct copy of Plaintiffs' Proposed Order On Rule 37 Motion to Compel #4 Relating To Joint Ventures And Other Combinations, via the Court's ECF system on:

>Shannon Stevenson
>Janet A. Savage
>Jackie Roeder
>Daniel Richards
>Davis Graham & Stubbs LLP
>1550 17th Street, Suite 500
>Denver, CO  80202
>
>Counsel for Defendant

                           *s/ Alan L. Kildow*
                           Alan L. Kildow