**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation.

      Defendant.

---

**PLAINTIFFS' PROPOSED ORDER ON RULE 37 MOTION TO COMPEL #5**
**TO PRODUCE DOCUMENTS ON VAIL HEALTH'S INADEQUATE PRIVILEGE LOG,**
**OR ALTERNATIVELY, *IN CAMERA* REVIEW AT VAIL HEALTH'S COST**

---

This matter came before the Special Master upon Plaintiffs' Rule 37 Motion to Compel #5 to Produce Documents on Vail Health's Inadequate Privilege Log, Or Alternatively, *In Camera* Review at Vail Health's Cost. [ECF No. 195]. The Court referred this motion to the Special Master for decision, [ECF No. 197], which was discussed at the October 22, 2021 hearing before the Special Master. Appearing for Plaintiffs was Alan Kildow and Sonya Braunschweig; appearing for Defendant Vail Health was Shannon Stevenson and Daniel Richards.

Upon consideration of the memoranda and exhibits filed by the parties and the discussion during the October 22 hearing, the Special Master hereby finds as follows:

**<u>FINDINGS OF FACT</u>**

1.      This is the second motion that Plaintiffs have brought related to Vail Health's privilege log.  The first motion sought the production of a privilege log.  Because Vail

Health did not produce a log, on August 12, 2021, Plaintiffs filed a motion to compel a privilege log. [ECF No. 132].  Vail Health produced its privilege log on September 10, 2021.  Vail Health provides no justification for not timely producing the privilege log before Plaintiffs filed their motion to compel.  Given Plaintiffs' objections to the log, Vail Health agreed it would produce a revised log, which was produced on November 2, 2021.

2.      At the October 22 hearing, Plaintiffs noted that an *in camera* review would be necessary.  Vail Health stated that it needed to brief the motion first.  In the Special Master's October 22 Order, which was docketed on October 25 [ECF No. 202], the Special Master specifically ordered that the parties confer about this motion.

3.      On November 29, both parties submitted reports agreeing that an *in camera* review be done to the extent the Special Master deems it is necessary.

4.      Because Plaintiffs' motion addresses the deficiencies in the September 10 log, this Order addresses those issues here.

## CONCLUSIONS OF LAW

5.      Because this case involves the Sherman Act, federal privilege law applies, which protects communications made in confidence between a client and an attorney for purposes of seeking legal advice.  *EEOC v. Outback Steakhouse of Fla.*, 251 F.R.D. 603, 610 (D. Colo. 2008).

6.      The party seeking to invoke the attorney-client privilege—here, Vail Health—must make a clear showing that it applies and that there has been no waiver of any privilege. *In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999).  *See also United States v. Phelan*, 3 Fed. App'x 716, 718 (10th Cir. 2001).  The assertion of privilege is narrowly construed and applied only when necessary to protect client communications essential to

obtain legal, not business, advice.  *Fisher v. United States*, 425 U.S. 391, 403 (1976); *Pownell v. Credo Petroleum Corp.* Civil Action No. 09-cv-01540-WYD-KLM, 2011 U.S. Dist. LEXIS 35869, at *6 (D. Colo. Mar. 17, 2011); *Faloney v. Wachovia Bank, N.A.*, 254 F.R.D. 204, 209 (E.D. Pa. 2008).

7.    "[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege," rather, the communications must relate to legal advice or strategy sought by the client." *Motley v. Marathon Oil Co.,* 71 F.3d 1547, 1550-51 (10th Cir.1995)*; United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998). Although the "status" as lawyer is considered, a court must analyze "the nature of the advice given, the context, content and purpose of the communication.  *Lindley v. Life Investors Ins. Co. of Am.*, 267 F.R.D. 382, 391 (N.D. Okla. 2010).  "The mere showing that the communication was from a corporate client to an attorney is not sufficient to establish existence of an attorney-client privilege."  *In re Diasonics Secs. Litig.*, 110 F.R.D. 570, 573 (D. Colo. 1986).

8.    Additionally, under Fed. R. Civ. P. 26(b)(5)(A), a party invoking privilege must "describe the nature of the documents…not produced or disclosed" in sufficient detail "for a party and the court to ascertain whether a privilege may attach, even without *in camera* review."  *Anderson v. Mountain States Mut. Cas. Co.*, Civil Action No. 15-cv-01316-RM-NYW, 2016 U.S. Dist. LEXIS 56733, at *8 (D. Colo. Apr. 28, 2016).  "[A]t a minimum, the privilege log must identify the author or origin of the document; any documents or materials attached to the document; all recipients of the document, including addressees and persons or entities receiving copies; the date of origin of the document; and a description of the contents…as to reveal why it is subject to the asserted

privilege." *Carbajal v. Lincoln Benefit Life Co.*, Civil Action No. 06-cv-00884-EWN-KLM, 2007 U.S. Dist. LEXIS, at *8 (D. Colo. Nov. 13, 2007); *Zander v. Craig Hosp.*, 743 F. Supp. 2d 1225, 1232 (D. Colo. 2010).  The failure to timely do so can waive any privilege.  *Lee v. State Farm Mut. Auto. Ins. Co.,* 249 F.R.D. 662, 683 (D. Colo. 2008); *Atteberry v. Longmont United Hosp.,* 221 F.R.D. 644, 649 (D. Colo. 2004); *Pham v. Hartford Fire Ins. Co.,* 193 F.R.D. 659, 662 (D. Colo. 2000) (same).

9.     The Special Master first addresses the sufficiency of the log and finds that although waiver may be found, the Special Master will undertake an *in camera* review of the documents on Plaintiffs' privilege log.   These deficiencies include not sufficiently identifying individuals on the log, not identifying entries on the log as to whether an attorney was a direct recipient or simply copied,[1] and not providing an adequate description of "documents" and "information."[2] *See, e.g., E.E.O.C. v. Outback Steakhouse of Fl., Inc.,* 251 F.R.D. 603, 611 (D. Colo. 2008) (log must clearly establish asserted privilege apply by listing specific facts"); *Pownell v. Credo Petrol. Corp.,* Civil Action No. 09-cv-01540-WYD-KLA, 2011 WL 1045418, at *4 (D. Colo. Mar. 17, 2011) (reviewing *in camera* documents copying counsel);  *Enrata, Inc. v. Yardi Sys.,* No. 2:15-cv-00102, 2018 U.S. Dist. LEXIS, 149239, at *9 (D. Utah Aug. 30, 2018) (conducing *in camera* review of

---

[1]     *See* Pls.' Ex. 4 at Item Nos. 35-38, 48-49, 51, 54, 57-60, 62, 64, 69-70, 73, 75, 89, 91, 95, 97-99, 101, 104-06, 108-09, 117, 122-23, 127, 129-36, 141-43, 145-50, 154-56, 158, 162-66, 168, 173-76, 178, 180, 202, 204-06, 208, 214-17, 220-24, 228-35, 237, 241-50, 252-53, 257-58, 265, 267-69, 273, 276, 278-79, 283, 285, 287, 291, 293, 297-98, 300-01, 303-05, 308-11, 313, 317, 320, 326, 329, 334, 341, 353, 355, 359-60, 363, 365, 370-71, 373, 377, 382, 385-86, 391-92, 395, 399, 409, 414, 421, 423, 425, 427-29, 431-33, 435, 437-38, 443-45, 447, 449-50, 452-53, 455-57, 459-67, 478-82, 484, 489-90, 518, 522-26, 533, 535-42, 545, 551-54, 556, 560, 562-63, 565-66, 570-571, 573 [Sept. 10 log].
[2]     Pls.' Ex. 4 at Item Nos. 201, 218-19, 320-21, 326-29, 336-52, 373-76, 382, 388-90, 393-94, 396-401, 417-20, 435-36, 438, 439-41, 456-65, 473, 504, 560, 563, 572.

copied emails to attorney and finding "privilege descriptions" "reflecting legal advice" were business communications); *In re Avantel, S.A.*, 343 F.3d 311, 321 n.11 (5th Cir. 2003) (sending attorneys copies should not be privileged, unless "the email is directed to the attorney or sent by the attorney"); *In re Grand Jury Subpoena*, 246 F.R.D. 673, 679 (D. Kan. 2007) ("business documents sent to attorneys are not automatically protected"); *O'Connor v. Boeing N.A., Inc.*, 185 F.R.D. 272, 280 (C.D. Cal. 1999) (same); *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990) (same).

10.     Additionally, simply forwarding nonprivileged communications or copying an attorney for informational purposes, does not make those communications privileged. *A.H. v. Evenflo Co.*, Civil Action No. 10-cv-02435-RBJ-KMT, 2012 U.S. Dist. LEXIS 76100, at *15-16 (D. Colo. May 31, 2012); *Moreau v. United States Olympic & Paralympic Comm.*, Civil Action No. 20-cv-00350-PAB-MEH, 2021 U.S. Dist. LEXIS 222306, at *3 (D. Colo. Apr. 12, 2021).  Nor is information privileged "simply because it comes from an attorney.  The mere fact that one is an attorney does not render everything he does for or with the client privileged."  *In re Grand Jury Subpoena*, 246 F.R.D. at 679.

11.     For example, Plaintiffs have identified Item Nos. 478-96, 498-02, 505-17, 519-21, 527, and 530, which appear from the log to be communications from counsel although the log does not identify any legal advice being conveyed.  The Special Master finds that these communications should be reviewed *in camera* as well to determine whether the communication relay factual information or information gathered from third parties, which would not be privileged.  *Doe*, 2021 U.S. Dist. LEXIS 9078, at *21.  *See also Smith v. Scottsdale Ins. Co.*, 40 F. Supp. 3d 704, 727 (N.D.W. Va. 2014) (communications and status updates between attorneys and claims handlers not

privileged); *Women's Interart Ctr., Inc. v. N.Y.C. Econ. Dev.,* 223 F.R.D. 156, 160 (S.D.N.Y. 2004) (status report with handwritten edit notes containing only factual background information not protected); *Universal City Dev. Ptnrs, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 691 (M.D. Fla. 2005) ("reports reflecting the status of litigation and containing purely factual information are not privileged").  *United States v. Bonnell*, 483 F. Supp. 1070, 1077 (D. Minn. 1979) (relaying discussions with third parties are not privileged).

12.  Based on these issues, the Special Master finds that an *in camera* review is warranted.

13.  In motion to compel #3, Plaintiffs argued that certain documents were improperly redacted, including Board minutes, emails, PowerPoint presentations, attachments to emails, and employment agreements.  *See* Plaintiffs' Motion to Compel #3 at Exhibits 15, 25-29.  At the October 22 hearing, Vail Health stated that the redacted documents were identified on the log, so this issue will be addressed here.

14.  As to the Board Minutes, PowerPoint presentations, other emails, and employment agreements, they appear to have been redacted on relevancy grounds.  But "[t]he Federal Rules of Civil Procedure do not recognize irrelevance as a privilege or an objection that warrants redaction." *Medtronic Sofamer Danek, Inc. v. Michelson*, 2002 WL 33003691, at *5 (W.D. Tenn. Jan. 30, 2002).  "There is no express or implied support in either Rule 34 or Rule 1 for a party…to redact[]…irrelevant or non-responsive information" because a document's relevancy is determined once as a single unit. *McNabb v. City of Overland Park*, No. 12-2331, 2014 WL 1152958, at *4 (D. Kan. Mar. 21, 2014); *HR Tech., Inc. v. Imura Int'l, U.S.A., Inc.*, 2010 WL 4792388, at *5 (D. Kan.

Nov. 17, 2010); *Orion Power Midwest, L.P. v. Am. Coal Sales Co.*, 2008 WL 4462301, at *2 (W.D. Pa. Sep. 30, 2008) ("Rule 34 talks about the production of 'documents,' as opposed to the relevant information….There is no express or implied support…in which a party would scrub responsive documents of non-responsive information").  "It is a rare document that contains only relevant information," and purportedly irrelevant information "may be highly useful to providing context for the relevant information."  *Ewalt v. GateHouse Media Ohio Holding II, Inc.*, No. 2:19-CV-4262, 2020 WL 4782860, at *2 (S.D. Ohio Aug. 18, 2020) (quoting *Bartholomew v. Avalon Cap. Grp., Inc.*, 278 F.R.D. 441, 451 (D. Minn. 2011)).  Given this, the Special Master hereby orders Vail Health reproduce any documents in unredacted form that were redacted on relevancy grounds.

15.     Further, the Special Master finds that certain documents between third parties are not privileged as a matter of law, or any asserted privilege has been waived. As to those documents, the Special Master orders the following to be produced.

16.     Approximately 70 entries on Vail Health's privilege log[3] relate to valuations conducted by independent appraisers for a proposed joint venture for physical therapy services between Vail Health, Steadman, and VSO.  Vail Health claims that documents provided to or received from the appraisers, and the valuations themselves are protected by the attorney-client privilege because they were done "at the direction of counsel," purportedly to address "regulatory compliance" issues.  No evidence in the record supports Vail Health's contention that independent fair market valuations were made in confidence between a client and an attorney for purposes of seeking legal advice.  *See*

---

[3]     *See, e.g.,* Pls.' Ex. 4 at Item Nos. 116-17, 133, 131, 135, 174, 217, 219, 247, 252, 320-25, 329-30, 332-33, 340-41, 373, 374-76, 383, 396, 397, 399, 427-29, 431-41, 456-68, 470, 473-74, 504, 529, 544, 554, 560, 559, 562-64, 571 [Sept. 10 privilege log].

*EEOC v. Outback Steakhouse of Fla.*, 251 F.R.D. 603, 610 (D. Colo. 2008); *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998).

17.     Because healthcare is a highly-regulated industry, providers must comply with at least two federal laws—the "Stark Act," 42 U.S.C. § 1395nn, and the "Anti-Kickback" law, 42 U.S.C. § 1320a-7b—when entering into business transactions with other providers.  These laws are intended to prevent fraud, self-referrals, and financial kickbacks, among other things.  To be compliant, healthcare entities must ensure that their business transactions are commercially reasonable and consistent with fair market value, which helps to insulate hospitals and physicians from running afoul of healthcare laws.  *See, e.g.,* 42 U.S.C. § 1395nn(e)(7); *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 165-66 (3d Cir. 2019) (noting many innocuous and common billing relationships run afoul of Stark Act; healthcare providers bear burden to show "fair market value" of transaction).

18.     According to the joint venture term sheets and draft appraisals that have been produced, the independent appraisers were hired to provide a fair market value analysis for the proposed physical therapy joint venture and were not engaged to analyze Stark, antikickback laws, or to assist counsel with any regulatory analysis.  The Special Master therefore finds that independent third-party appraisers were nonattorney valuation consultants required under the term sheets to provide an independent fair market value analysis that was to be shared with all parties to the transaction.

19.     Vail Health attempts to characterize these third parties, such as Healthcare Transaction Advisors, Haverford, and Deloitte, as Vail Health's agents.  But the cases Vail Health cites do not support that conclusion.  In *Phillips,* the Kansas District Court

addressed the common interest doctrine, which applies when parties have an identical interest in securing legal advice when there is "actual or potential litigation against a common adversary…." *KATZ v. AT& T Corp.*, 191 F.R.D. 433, 437 (E.D. Pa. 2000); *Sawyer v. Sw. Airlines* , Nos. 01-2385-KHV, 01-2386-KHV, 2002 U.S. Dist. LEXIS 25111, at *17 (D. Kan. Dec. 23, 2002) (citing *Strougo v. BEA Assoc.*, 199 F.R.D. 515, 525 (S.D.N.Y. 2001) (party must show communications were made in joint defense effort or that clients share common legal interest and that statements were designed to further common effort); *Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 348 (N.D. Ohio 1999) (parties must have a common legal, as opposed to commercial, interest and show that the communications are made in the course of formulating a common legal strategy).  Vail Health has not identified any interest of the independent appraisers in the joint venture between Vail Health, Steadman, and VSO, or explain how the common-interest doctrine is relevant in this context.

20. And in *Austin v. City and County of Denver,* a hired consultant was found to be the functional equivalent of an employee, and in *United States v. Kovel,* 296 F.2d 918, 922 (2d Cir. 1961), the court determined that an accountant employed by a law firm who interpreted the client's information to assist the attorney in providing legal advice was privileged.  Vail Health has not identified any facts consistent with *Austin* or *Kovel.*

21. In contrast, the Court of Federal Claims in *Securitypoint Holdings, Inc. v. United States*, No. 11-268C, 2019 U.S. Claims LEXIS 341, at *12 (Fed. Cl. Apr. 16, 2019). directly addressed the agency issue raised by Vail Health here and found an independent, third-party appraiser's valuation of stock was not protected by the attorney-client privilege. The court held that the third-party appraiser was not an agent of the company, nor was

the third party a conduit of information between counsel and client.  The court also held that any privileged information provided to the independent consultant was waived.  *Id.* at *13.   Like in *Security Point,* the independent appraisers here were hired to use their professional judgment to assess the fair market value of the joint venture and were not the functional equivalent of an employee, which is confirmed by Haverford in its engagement letter when stating that it had "no present or prospective interest in the property that is the subject of this proposal…and…have no personal interest…in…or use of, this appraisal with respect to the parties involved."

22.     Courts have routinely found that independent consultant hired to conduct a fair market valuation, even for Stark and antikickback purposes, is not privileged.  For example, in *Shahbahian v. Trihealth, Inc.,* Case No. 1:18-cv-790, 2019 WL 4958114 (S.D. Ohio Oct. 8, 2019), the issue was whether fair market valuations of physician compensation made by nonattorney accounting and valuation consultants at the request of counsel were privileged.  *Id.* at *10.   There, like here, an independent, third-party valuation was done to set reasonable compensation, as defined by the Stark Act and Anti-Kickback law.  *Shahabian* held that the factual valuation data, fair market valuations, and correspondence between the appraiser and the company/counsel were not subject to the attorney-client privilege because the predominant purpose of the independent valuation was for a business purpose.  The court therefore ordered the documents exchanged between the third-party consultant and the company and its counsel to be produced.

23.     *Shahabian* is consistent with other court's that have reached the same conclusion in similar contexts.   *United States ex rel. Rembert v. Bozeman Health Deaconess Hosp.*, No. CV 15-80-BU-SEH, 2018 WL 2320645, at *2-3 (D. Mont. May 22,

2018) (determining three times that FMV documents not privileged); *United States ex. rel. Baklid-Kunz v. Halifax Hosp. Med. Center,* Case No. 6:09-cv-1002-Orl-31DAB, 2012 WL 5415108, at *8-9 (M.D. Fla. Nov. 6, 2012) (compelling disclosure of documents related to FMV determinations); *Heartland Surgical Specialty Hosp. LLC v Midwest Div.,* No. 05-2164-MLB-DWB, 2007 WL 2122440, at 4, n.5 (D. Kan. 2007) (accountant's work for hospital not privileged).

24.    And in other contexts, courts have also similarly held that other types of independent business valuations are not privileged, nor are the factual documents appraisers rely upon privileged.  *See, e.g., Am. Health Sys., Inc. v. Liberty Health Sys.,* Civil Action No. 90-3112, 1991 U.S. Dist. LEXIS 3675, at *12-13 (E.D. Pa. Mar. 26, 1991) (accountant's analysis of hospital joint venture not privileged); *Williams v. Big Picture Loans, LLC,* 303 F. Supp. 3d 434, 437 (E.D. Va. 2018) (accountant providing business valuation not privileged); *United States v. Richey,* 632 F.3d 559, 567 (9th Cir. 2011) (appraisal documents not privileged).

25.    According to the joint venture term sheets, the independent appraisers work was to be disseminated to Steadman and VSO so that Steadman and VSO could make its own assessment about the joint venture.  Additionally, there were term sheets for the second proposed joint venture with Steadman and VSO, which was characterized as a managed services organization ("MSO") joint venture.  VSO produced its MSO term sheet, but Vail health has not produced the MSO term sheet for Steadman and VSO, claiming they are attached to emails from counsel and thus protected.  "The attorney-client privilege does not apply to communications that are intended to be disclosed to third parties—especially when they are on opposite sides of the negotiating table—or that

in fact are so disclosed." *Medline Indus. v. Wypetech, LLC*, 20 CV 4424, at *4 (N.D. Ill. Nov. 12, 2020). *See also United States v. Bump,* 605 F.2d 548, 550-51 (10th Cir. 1979); *Entrata, Inc. v. Yardi Sys., Inc.*, No. 2:15-cv-00102, 2018 U.S. Dist. LEXIS 185743, at *19 (D. Utah Oct. 29, 2018) (following *Bump* and concluding that documents intended to be provided to third party are not privileged); *United States v. (Under Seal) (In re Grand Jury 83-2 John Doe No. 462),* 748 F.2d 871, 875 (4th Cir. 1984) ("if a client communicates information to his attorney with the understanding that the information will be revealed to others, that information as well as the details underlying the data" are not privileged); *United States v. Lawless,* 709 F.2d 485, 487 (7th Cir. 1983) (same); *Republican Party v. Martin,* 136 F.R.D. 421, 428 (E.D.N.C. 1991) (documents intended to be published to third parties lack confidentiality); *United States v. White*, 970 F.2d 328, (7th Cir. 1992) (attorney-client privilege did not apply to documents that clients intended be transmitted to third parties); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 319 F.R.D. 100, 105 (S.D.N.Y. 2017) (privilege not applicable to "business-orientated communications" that "obviously were not intended to be kept confidential…[and] virtually by definition…were meant to be conveyed to third parties"); *United States v. Willis*, 565 F. Supp. 1186, 1207 (S.D. Iowa 1983) (same). Vail Health did not address this issue and has thus concedes that documents to be given to third parties are not privileged.

26.     The Special Master therefore finds that Vail Health has not met its burden of proof as to the assertion of privilege as to the valuation documents and the joint venture documents that were to be provided to Steadman and VSO. The Special Master further finds that the communications between the independent, third-party consultants and Vail Health/its attorneys are not privileged, nor are the valuations, workpapers, etc. or the

underlying data and information provided to the independent valuation consultants.  The Special Master sees no need to review those documents *in camera* given that they are not privileged in the first instance.

27.    Vail Health asserts internal communications about the valuations are privileged.  The Special Master will review those documents *in camera.*

28.    An additional issue was raised about one internal communication that Vail Health produced and now seeks to claw back, which is Exhibit 33 to Plaintiffs' Motion to Compel #4, and Plaintiffs attached as Exhibit 9 to this motion.  On September 21, 2021, Vail Health sent Plaintiffs a letter seeking to claw back Exhibit 33, which is an email string sent by one independent consultant, Healthcare Transaction Advisors, to Vail Health.  At page 9 footnote 8 of its opposition, Vail Health describes Exhibit 33 as Vail Health and its counsel "collectively evaluating whether a different structure for the proposed joint venture would address the legal issues posed by the fair market value requirements."  That explanation is not consistent with the email itself, and even if it were, it would not be privileged for the reasons set forth above related to independent valuations.

29.    In Exhibit 33, Healthcare Transaction Advisors sent exhibits to the valuation report to Brown and Vail Health's counsel.  The email summarizes some of the independent consultant's conclusions.  Brown then forwarded the valuation documents to CEO Doris Kirchner and CFO Ted Sirotta, excluding the outside attorney from that email communication.  CEO Kirchner then asked Brown how the second valuation compared with the first, to which Brown stated he was still reviewing it.  Later that day, Brown responded to CEO Kirchner and CFO Sirotta with a comparison of the two valuations, essentially concluding that the Healthcare Transaction Advisors valuation was

better for Vail Health's bottom line.  Brown copied that email to counsel.  CFO Sirotta then responded, seeking clarification about some information—the attorney was not copied on CFO Sirotta's reply to Brown.

30.     The email string in Exhibit 33 discusses the valuations from a business perspective.  No legal advice was sought; none was given. The attorney did not respond. *See, e.g., Bruno v. Equifax Info. Servs., LLC* , No. 2:17-cv-327-WBS-EFB, 2019 U.S. Dist. LEXIS 24502, at *16-17 (E.D. Cal. Feb. 14, 2019) (although attorneys copied on email, nothing suggested they received emails to facilitate the rendering of legal advice; none requested legal advice and no indication attorneys responded); *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 630 (D. Nev. 2013) ("merely copying or 'cc-ing' legal counsel, in and of itself, is not enough to trigger the attorney-client privilege. Instead, each element of the privilege must be met when the attorney-client privilege is being asserted."); *United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1075 (N.D. Cal. 2002) (same).

31.     The Special Master therefore finds that Exhibit 33 to Motion to Compel #4, which is attached as Exhibit 9 to Motion to Compel #5, is not a privileged communication.

32.     The Special Master now turns to the issue of waiver.

33.     To remain privileged, a communication must be made in confidence and kept confidential.  "It is well-settled that when privileged communications are voluntarily disclosed to a third-party, the privilege is waived."  *Beltran v. InterExchange, Inc.*, Civil Action No. 14-cv-03074-CMA-CBS, 2018 U.S. Dist. LEXIS 22564, at *1 (D. Colo. Feb. 12, 2018). "This is true even if the disclosure is inadvertent."  *United States v. Ryans*, 902 F.2d 731, 741 n.13 (10th Cir. 1990).  The Tenth Circuit has instructed, "the confidentiality of communications covered by [a] privilege must be jealously guarded by the holder of

the privilege lest it be waived.  The courts will grant no greater protection to those who assert the privilege than their own precautions warrant." *Id.*  Thus, it is the proponent of the privilege—here, Vail Health—that bears the burden of establishing nonwaiver. *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, No. 10-cv-02868-MSK-KMT, 2014 WL 3732943, at *5 (D. Colo. July 29, 2014).

34.     As to the 180 emails sent by or received from Vail Health Board members, Vail Health has the burden to prove there has not been any waiver of the attorney-client privilege.  Vail Health does not dispute that it communicated with its Board members by using the Board members outside business email accounts.  To establish that there was no waiver, Vail Health must prove it had a reasonable expectation of privacy when it chose to use unrelated, outside workplace email accounts to conduct Vail Health Board business.  Vail Health must present evidence on the following: "(1) does the corporation maintain a policy banning personal or other objectionable use, (2) does the company monitor the use of the employee's computer or e-mail, (3) do third parties have a right of access to the computer or e-mails, and (4) did the corporation notify the employee, or was the employee aware, of the use and monitoring policies?" *United States v. Hudson*, No. 13-20063-01-JWL, 2013 U.S. Dist. LEXIS 126655, at *31 (D. Kan. Sep. 5, 2013) (citing leading case on this issue, *In re Asia Global Crossing, Ltd.,* 322 B.R. 247, 257 (Bankr. S.D.N.Y. 2005)).

35.     Applying these factors in *In re WeWork Litigation* Civil Action No. 2020-0258-AGB, 2020 Del. Ch. LEXIS 368, at *5-11 (Ch. Dec. 22, 2020)*,* the Delaware Court of Chancery held that a company's communications with outside directors were not protected by attorney-client privilege because the company failed to prove there was a

reasonable expectation of privacy in using outside workplace emails. Like in *In re WeWork,* Vail Health has not met its burden of proof establishing that the use of outside email accounts was reasonable in or that there was any expectation of privacy or confidentiality. Therefore*,* the privilege has been waived as to the Board emails using outside business accounts. *Id.* at *7 ("lack of evidence does not work in SBG's favor because it bears the burden of proving that the privilege applies").

36. Likewise, the former outside Board Chair, Michael Shannon, included KSL Capitol Partners executive assistant, Christie Faires, on communications he sent from his KSL business email account. Vail Health provides no legal or factual support as to why a KSL employee was included on Vail Health emails. The cases it relies upon relate to *the client or attorney* using agents functionally equivalent to employees, but even then, the agents must further the client's interest or be reasonably necessary to the purpose of the consultation. Vail Health has made no showing Faires was the functional equivalent of a Vail Health employee, or she in any way necessary to the consultation. *See, e.g., Giannullo v. City of New York,* 322 F.3d 139, 142 (2d Cir. 2003) (assertions of fact in memorandum "is not evidence at all"); *United States v. Bill Harbert Int'l Constr. Co..,* No. 95-1231 (RCL), 2007 WL 915235, at *2-3 (D.D.C. Mar. 27, 2007) (presence of *client's* assistant did not waive privilege when assistant witnessed documents and ensured record of their creation). *Shopify Inc. v. Express Mobile, Inc.*, No. 20-mc-80091-JSC, 2020 U.S. Dist. LEXIS 147101, at *18 (N.D. Cal. Aug. 14, 2020) (noting individual must be functional equivalent of employee and assist attorneys in providing legal advice). The Special Master hereby finds that by including Ms. Faires on email communications related to Vail Health business, any purported attorney-client privilege has been waived.

37.     Further, by producing some third-party consultant documents but not others, the Special Master finds that Vail Health has waived any purported privilege on the same subject matter.  Vail Health cannot produce some but not all documents related to Healthcare Transaction Advisors and none as to other independent consultants, particularly when they were created for the same purpose—that is, to provide a fair market value of the physical therapy proposed joint venture.  For this reason as well, the Special Master orders that any documents exchanged between Vail Health and the independent consultants are to be produced.  *See, e.g., In re Urethane Antitrust Litig.,* No. 04-MD-1616-WJL, 2011 U.S. Dist. LEXIS 9923, at *39-42 (D. Kan. Jan. 31, 2011) (ordering related "privileged" documents to be produced "to prevent a selective and misleading presentation of evidence," which would be unfair); *Silverstein v. Fed. Bureau of Prisons,* Civil Action No. 07-cv-02471-PAB-KMT, 2009 U.S. Dist. LEXIS, 121753, at *38-39 (D. Colo. Dec. 14, 2009) (same).

38.     Rule 37(5)(A) states that if the requested discovery is provided after the motion is filed, the Court "must, after giving an opportunity to be heard, require the party…whose conduct necessitated the motion…to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  The Special Master hereby finds that an award of attorneys' fees is warranted for Vail Health untimely and deficient privilege log.  Vail Health provided no justification for the delay in producing the log after Plaintiffs filed a motion to compel.  For the same reasons, the Special Master further finds that the fees associated with conducting an *in camera* review shall also be borne by Vail Health.

## **ORDER**

PLAINTIFFS' MOTION TO COMPEL #5 IS HEREBY GRANTED AS FOLLOWS:

Within 14 days from the date of this Order, Vail Health shall produce the following:

1.      The emails and attachments between any independent valuation consultant and Vail Health that is identified on the privilege log.

2.      The attachments to any emails that were to be provided to third parties, such as Steadman and VSO.

3.      The emails and attachments in which the Board member sent or received any communications using an outside business email address.

4.      The emails and attachments in which Christie Faires of KSL Capitol Partners is identified as a sender or recipient.

5.      A revised privilege log identifying the documents that have been produced in accordance with this Order, which shall be served on Plaintiffs and provided to the Special Master.

6.      The remaining documents, identified specifically by Item No. from the privilege log, shall be produced to the Special Master for *in camera* review.

7.      The Special Master's fees and costs in conducting the *in camera* review shall be borne by Vail Health.

8.      Plaintiffs are granted their attorneys' fees and may submit a request for any attorneys' fees and costs within 14 days from the date of this Order.

IT IS SO ORDERED.                   BY THE COURT

Dated:  December ___, 2021          _____
                                    W. Terry Ruckriegle
                                    Special Master

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 6, 2021, I served a true and correct copy of Plaintiffs' Proposed Order On Rule 37 Motion to Compel #5 to Produce Documents On Vail Health's Inadequate Privilege Log, Or Alternatively, *In Camera Review* At Vail Health's Cost**,** via the Court's ECF system on:

Shannon Stevenson
Janet A. Savage
Jackie Roeder
Daniel Richards
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO  80202

Counsel for Defendant

*s/ Alan L. Kildow*
Alan L. Kildow