IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

    Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation.

    Defendant.

---

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF THEIR MOTIONS TO COMPEL**

---

### INTRODUCTION

At the request of Plaintiffs, the Special Master granted the parties leave to file a ten-page supplemental memorandum regarding Plaintiffs' motions to compel. In granting that leave, the Special Master noted: "It is particularly important to clarify your positions regarding the appropriate geographic area." In response to that request, the geographic markets defined by the parties are:

**Plaintiffs' Expert—Dr. Leslie Schafer:** "It is my opinion that, while it is defensible that the relevant antitrust geographic market is the town of Vail, it is certainly no larger than the Vail Valley."[1] The Plaintiffs' Amended Complaint defines the Vail Valley as running from East Vail, Colorado, to Gypsum, Colorado[2] (referred to as the "Vail Valley").

---

[1]    EFC No. 302-1 at 86 [Schafer Report].
[2]    EFC No. 26 ¶ 230 [Am. Compl.].

**Vail Health's Expert—Dr. Monica Noether:** The report offers no explicit definition of the relevant geographic market for antitrust purposes other than the following: "My own analysis of the residence locations of Howard Head's Vail Clinic patients confirms these travel patterns, with patients from outside of Colorado accounting for approximately 37 percent of patient visits and patients from outside Eagle County accounting for 54 percent of patient visits.  Even focusing just on patients who live in Colorado, the service area from which Howard Head draws 90 percent of its Colorado patients extends east through Denver; west past Rifle (110 minutes from Vail)…."[3]

Even if Vail Health's original objection to limit discovery to the Vail Valley could be credited, Dr. Noether's confirms that data and documents for Summit and Garfield Counties, as well as Basalt, are relevant.  An order compelling Vail Health to produce data and documents outside the Vail Valley is therefore warranted.  A party cannot take a position and then preclude the other side from obtaining data and documents that may refute the party's position.  That is no more true than with experts—Plaintiffs have a right to challenge Dr. Noether's opinions and should be allowed to do so using Vail Health's own documents and data analyzing why it has expanded services into Summit County and Basalt. Thus, Plaintiffs' Motion to Compel # 1 should be granted.

Dr. Noether's opinions regarding Vail Health's profitability also open the door to discovery Vail Health objected to in Plaintiffs' Motion to Compel # 1 and #2.  Although that is not treated in this supplemental motion in as much depth as relevant geographic market, Plaintiffs' request for this discovery should be granted too.

---

[3]   EFC No. 302-2 at 19-20 [Noether Report].

# ARGUMENT

I. **VAIL HEALTH'S ECONOMIC EXPERT RENDERED GEOGRAPHIC MARKET OPINIONS BASED ON PATIENT FLOW OUTSIDE OF THE VAIL VALLEY.**

On February 28, 2022, Vail Health disclosed the rebuttal report of its economics expert, Dr. Monica Noether, which includes opinions about the relevant geographic market. She opines that patient flow data undermine the Plaintiffs' economic expert, Dr. Leslie Schafer, that the town of Vail and no broader than the Vail Valley is the relevant geographic market for Sherman §2 analysis.[4] Plaintiffs foresaw the possibility that Vail Health's expert might abjure from using the now universally-accepted hypothetical monopolist or "SSNIP" model for determining geographic market.[5] Plaintiffs therefore served Interrogatory No. 9 seeking Vail Health's definition of the geographic market. Vail Health objected, claiming Plaintiffs' market was too narrow because, in part, "patients' willingness to travel to providers outside of the Vail Valley for physical therapy services, such as those in Glenwood Springs and the Frisco/Dillon/Silverthorne areas…."[6]

Plaintiffs also served document Request No. 5 seeking "all documents concerning Vail Health's intention as to the correct 'relevant geographic market.…"[7] Here too, Vail Health objected but stated that it "will produce documents that support its contention that [Plaintiffs'] geographic…market[]…[is] not plausible."[8] It never produced any data or

---

[4] *Id.* at 19 [Noether Report.]
[5] *Federal Trade Comm'n v. Advocate Health Care Network,* 841 F.3d 460, 470-76 (7th Cir. 2016). *See also Christou v. Beatport, LLC,* Civil Action No. 10-cv-02912-RBJ-KMT, 2013 U.S. Dist. LEXIS 9034, at *10-12 (D. Colo. Jan. 23, 2013) (denying *Daubert* motion and discussing expert's use of SSNIP test in a nonmerger context).
[6] ECF No. 128-15, Answer to Interrog. No. 9 at 18-19.
[7] ECF No. 127-3 at 5.
[8] *Id.*

documents supporting a conclusion that Summit or Garfield counties or Basalt must be included to make the geographic market definition plausible. Plaintiffs therefore moved to compel more fulsome responses.

And in responding to Motion to Compel # 1, Vail Health confirmed its position: "Documents related to Howard Head's physical therapy services outside of the Vail Valley have no bearing on Plaintiffs' claims…."[9] This issue was discussed extensively at the October 21, 2021 hearing before the Special Master. Vail Health continued to argue it had no obligation to further answer to Interrogatory No. 9 or produce any data or documents responsive to Request No. 5 beyond those relating to the Vail Valley.[10]

But during the hearing, the Special Master commented: "If the discovery were limited only to the area that you agree with Plaintiffs as being the relevant geographic market of being the Vail Valley then that would—in my mind if you had objected to providing discovery outside of that area—preclude you and your expert from later coming back and saying anything beyond Vail Valley then you and your expert from later coming back and saying oh no, we think it is bigger than that."[11] Sure enough, Vail Health's expert Dr. Noether indeed came back, saying "we think it is bigger than that."[12] She criticizes Dr. Schafer's definition of the geographic market as too narrow because "it excludes sizable towns that are proximate to the area, including Glenwood Springs to the West and Breckenridge, Frisco, Dillon, and Silverthorne to the East."[13]

---

| | |
|---|---|
| 9 | ECF No. 128 at 5. |
| 10 | ECF No. 274 at 37. |
| 11 | ECF No. 274, at 36. |
| 12 | ECF No. 302-2 at 19, ¶ 41 [Noether Report]. |
| 13 | *Id.* at 18, ¶ 38. |

Dr. Noether's report discusses patient inflow information from outside of the Vail Valley to inside of it (commonly called "import patients"), which is reminiscent of the Elzinga-Hogarty test (E-H test) that was developed in 1973 to define the relevant geographic market for coal and beer.[14]  For example, Dr. Noether asserts that "35 percent of Howard's physical therapy patients originated in Eagle and Summit counties, with 40 percent arriving in Vail from outside of Colorado."[15]  As support for that conclusion Dr. Noether cites in footnote 61 to a document called "VVMC Strategic Planning: 2016."[16]  But that document is a summary prepared by some unknown person derived from unknown sources.  It includes no original patient flow data, and Dr. Noether identifies no data that provides names, addresses, zip codes, dates of admission, discharge, CPT codes, treating physicians, costs, or anything else to support her conclusion.

Neither does Dr. Noerther provide any patient flow analysis regarding Vail Valley residents travelling from the Valley to receive physical therapy in Summit or Garfield counties, Basalt, or any of the hospitals to which she refers in her report (commonly called "export patients").[17]  This is important because to be complete, any patient flow analysis must show how many patients were willing to drive from the Vail Valley over Vail pass to

---

[14]   *Federal Trade Comm'n v. Penn* State *Hershey*, 838 F.3d 327, 340-41 (3d Cir. 2016) (citing Consent Brief of Amicus Economics Professors In Support of Reversal, 2016 WL 3251948, June 6, 2016, where Prof. Elzinga himself later rejected the E-H test in the context of medical services).

[15]   ECF No. 302-2 at 19, ¶ 42 [Noether Report].

[16]   *See* ECF No. 128-2 at VH_Fed_00000772-866 at 791.

[17]   One of the grounds the Third Circuit reversed the geographic market analysis of accepted by the district court was for "ignoring patient outflows [which] created a misleading picture of the relevant geographic market." *Federal Trade Comm'n v. Penn State Hershey Med. Center*, 838 F.3d 327, 341 (3d Cir. 2016).

Frisco or Breckenridge to receive physical therapy, and *why* they would make the trip. This implicates (a) the provider, (b) the location, and (c) the price of the services because in the Tenth Circuit (and in every other circuit) evidence relating to "location," "price," and "convenience" are essential to defining a relevant geographic market.[18] Plaintiffs are therefore entitled to data and documents that would show how many Howard Head patients make such a trip to its Summit County and Basalt locations. Plaintiffs are entitled to prove that rational consumers would not make a 25-mile trip from Vail to Frisco for physical therapy services provided at the same price.

If Dr. Noerther had performed that analysis, it would have shown that Summit County and Basalt should not be included as part of the relevant geographic market. If Vail Health and its expert say Summit and Basalt are in the defined market, Plaintiffs are entitled to evidence that those geographic areas are not included and are entitled to evidence that would assist Plaintiffs in explaining why. That means evidence of import *and* export patient-flow for Summit and Garfield counties, as well as Basalt.[19]

Conversely, as the Special Master suggested on October 21, Vail Health and its expert should not be permitted to offer expert opinions that implicate data and documents

---

[18] *Lantec, Inc. v. Novell, Inc.,* 306 F.3d 1003, 1027 (10th Cir. 2002) (quoting *T. Harris Young & Assocs., Inc. v. Marquette Elecs., Inc.*, 931 F.2d 816, 823 (11th Cir. 1991) (price data, costs, customer convenience, location)); *Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 228 (2d Cir. 2006) (same); *Penn State Hershey*, 838 F.3d at 344; *E.I. Du Pont De Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 442-43 (4th Cir. 2011); *Hornsby Oil Co., Inc. v. Champion Spark Plug*, 714 F.2d 1384, 1394 (5th Cir. 1983) (costs, customer convenience); *Kaplan v. Burroughs Corp.*, 611 F.2d 286, 292 (9th Cir. 1979).

[19] In *Penn State Hershey*, the Third Circuit found that the district court erred because "ignoring patient outflows creates a misleading picture of the relevant geographic market." *Penn State Hershey*, 838 F.3d at 341.

related to Summit or Garfield counties, or Basalt, that Vail Health refused to produce. The reasons for this are many.[20]

*First,* if, as Dr. Noether contends, the geographic market includes Frisco, then elementary principles of evidence require Vail Health to produce documents and data showing how many patients from Vail Valley travel there—information Plaintiffs requested in their discovery requests.[21] If Vail Health's patient data show that very few travel to Summit, or that the purpose of opening a $60 million facility in Dillon or multimillion dollar office in Basalt was to expand into other markets, Dr. Noether's opinion of the size of the geographic market is likely incorrect. Thus, the data and documents sought by Plaintiffs regarding Summit County and Basalt are relevant to a proposition that Vail Health now asserts, and that is all that is necessary under Rule 26.

---

[20]   *See Auto Indus. Supplier ESOP v. SNAPP Sys.,* No. 03-74357, 2008 U.S. Dist. LEXIS 105961, at *10-29 (E.D. Mich. Dec. 23, 2008) (excluding expert for failing to "perform any intellectual analysis or review the underlying source documents"). *See also Orthofix Inc. v. Lemanski,* No. 13-11421, 2015 U.S. Dist. LEXIS 130662, at *11 (E.D. Mich. Sept. 29, 2015) (disqualifying expert because failed to analyze underlying data); *BBK Tobacco & Foods LLP v. Skunk Inc.*, No. CV-18-02332-PHX-JAT, 2020 U.S. Dist. LEXIS 160553, at *8-9 (D. Ariz. Sep. 2, 2020) (precluding evidence on summary judgment because defendant failed to produce underlying data).

[21]   *See, e.g., Kellam Energy, Inc. v. Duncan*, 616 F. Supp. 215, 219 (D. Del. 1985) ("regardless of how [the] geographic market is eventually defined in this action, the boundaries of that market do not set the geographic limit of discovery"); *Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.*, 198 Cal. App. 4th 1366, 1383, 131 Cal. Rptr. 3d 519, 532 (2011) (holding trial court erred in limiting discovery to that which defendant requested); *In re Loestrin 24 Fe Antitrust Litig.,* No. 1:13-MD-2472-S-PAS, 2017 WL 1491911, at *4 (D.R.I. Mar. 15, 2017) (court's should not conflate scope of discovery with market definition); *SmithKline Beecham Corp. v. Apotex Corp.,* Nos. 99-CV-4304, 2006 WL 279073, at *3 (E.D. Pa. Jan. 31, 2006) ("broad discovery" as to geographic market); *Prudential N.Y. Theatres Co. v. Radio City Music Hall Corp.,* 271 F. Supp. 762, 763 (S.D.N.Y. 1967).

*Second*, under Rule 26(a)(1), a party must produce a copy of all documents and electronically stored information that it may use to support its claims or defenses. Because Vail Health's expert relies on summaries to assert that the geographic market extends beyond the Vail Valley, Vail Health must now produce the source data supporting that contention.

*Third*, Plaintiffs are entitled to underlying, original source data for any summaries that Vail Health's expert relies so that Plaintiffs can evaluate the validity of Dr. Noether's opinions,[22] including the foundation for those opinions. Without the source data, there is no way to know how the summaries were created, who created them, or what data was used or excluded to create the summaries. Nor is there any way for Plaintiffs to challenge the validity of the summaries—that is, whether the summaries are overstated, understated, or consistent with the underlying data. Correspondingly, Dr. Noether cannot be a proper summary witness under Fed. R. Evid. 1006 if she has not analyzed the underlying source data.[23] And if Dr. Noether actually did review the underlying source data and documents from Summit County and elsewhere, then Vail Health is required to produce that information under Rule 26(a)(2)(B)(ii).

So no matter how one cuts it, Vail Health is obligated to produce the data and documents Plaintiffs have requested under Rule 34 for physical therapy patients (not including occupational therapy) treated at: (a) each Vail Health location, including all of

---

[22] *See, e.g., Little Hocking Water Ass'n v. E.I. du Pont de Nemours & Co.*, No. 2:09-cv-1081, 2013 U.S. Dist. LEXIS 22374, at *94 (S.D. Ohio Feb. 19, 2013) (granting motion to compel production of underlying data so that party could evaluate report's validity).

[23] *SNAPP,* 2008 U.S. Dist. LEXIS 105961, at *26 ("to understand SNAPP's damages in the Rule 702 context, Ford must be given the source documents").

Eagle County, Summit County, and all other Vail Health facilities not previously included; (b) at the claim level—that is, by each patient and date of service, including patient identification and claim number; demographic information by zip code; therapy units (not in minutes); billed charge for each CPT and encounter/account level; allowed and paid amount for each claim entry; payer identification; financial class; and network status.

## II. VAIL HEALTH'S ECONOMIC EXPERT RENDERS OPINIONS REGARDING PROFIT MARGINS THAT IT REFUSES TO PRODUCE.

Plaintiffs' RFP # 1-4 request data and documents relating to financial statements, financial analyses, prices charged, costs, and profitability.[24] Vail Health objected to each request. Of particular note here is its objection to RFP # 1 that asks for audited financial statements: "Vail Health's financial statements, however, show aggregate information across all of Vail Health's business units and do not segregate information specific to Howard Head Sports Medicine…..Vail Health states that it will not produce the requested documents."[25] It did not. Now, however, Dr. Noether criticizes Dr. Schafer's analysis, saying "the only appropriate comparisons of [profitability margins] would be between Howard Head and other hospital-based physical therapy practices, or by comparing aggregate Vail Health margins to the hospital-wide averages that [Dr. Schafer] cites."[26]

Using American Hospital Directory ("AHD") as the source of financial data for her profit-margin comparison, Dr. Noether says that Vail Health's financial condition is considerably worse than the average hospital.[27] She does not say, however, whether she

---

[24]  ECF No. 127-11, at 3-5.
[25]  *Id.*
[26]  ECF No. 302-2 at 43.
[27]  *Id.* at 44.

also reviewed Vail Health's audited or unaudited financial statements that Vail Health refused to produce. What we do know is that the AHD hospital financial data based on annual Medicare Cost Reports—another data set Vail Health refused to produce. Although "[t]he MCR requires hospitals to submit financial data that should mirror what is reported on a hospitals' financial statements…the standard format does not allow hospitals to sufficiently detail some other their expenses and revenues, which makes it difficult to determine what is patient-care related and nonoperating related, or may not allow a hospital to fully detail a large donation or grant received that impacts the bottom line."[28]

Because Dr. Noether renders opinions about Vail Health's financial viability and profit margins, Plaintiffs are entitled to basic financial documents, such as the audited and unaudited financial statements and analyses, Medicare cost reports, source material documenting Vail Health's profitability, prices charged, and indirect and direct costs.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs request that their motions to compel be granted and that Vail Health be ordered to produce basic information required under controlling antitrust law.

---

[28] *See* The Financial Health of Hospitals at 21 and data for Vail Health at 112 available at https://cha.com/wp-content/uploads/2017/10/Financial-Health-of-Colorado-Hospitals-10-6-2017-S.pdf.

Dated:  March 29, 2022

*s/Alan L. Kildow*
Alan L. Kildow, MN# 0143133
790 Potato Patch Drive
Vail, CO 81657
Telephone: (970) 390-6675
E-mail:  alkildow@aol.com

Jesse Wiens, Colo. #33903
Jesse Wiens Law
0069 Edwards Access Road, Suite 8
Edwards, Colorado 81632
Telephone: (970) 855-0078
E-mail:  jesse@jessewienslaw.com

Sonya R. Braunschweig, MN# 0290292
5501 Irving Avenue South
Minneapolis, MN 55419
Telephone: (612) 819-2304
E-mail:  sonya.braunschweig@gmail.com

Attorneys for Plaintiffs Sports Rehab
Consulting LLC and Lindsay Winninger

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2022, I served a true and correct copy of Plaintiffs' Supplemental Memorandum in Support of Their Motions to Compel, via the Court's ECF system on:

Shannon Stevenson
Janet A. Savage
Jackie Roeder
Daniel Richards
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO  80202

Counsel for Defendant

                                         *s/ Alan L. Kildow*
                                         Alan L. Kildow