# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC & LINDSAY WINNINGER,

    Plaintiffs,

v.

VAIL CLINIC, INC., d/b/a VAIL HEALTH, a Colorado nonprofit corporation,

    Defendant.

## VAIL HEALTH'S PARTIAL APPEAL OF SPECIAL MASTER'S JANUARY 18, 2022 REPORT TO THE COURT

Pursuant to Fed. R. Civ. P. 53(f)(2), Defendant Vail Clinic, Inc., d/b/a Vail Health ("Vail Health") respectfully submits this partial appeal of the Special Master's January 18, 2022 Report to the Court ("January 18 Order").

**Preliminary Statement**

In October 2021, Vail Health produced two spreadsheets containing detailed data regarding every outpatient private-payer physical therapy procedure provided by Vail Health's Howard Head physical therapy practice in the alleged Vail Valley market from November 1, 2013 through September 22, 2021 ("Howard Head Data"). The Howard Head Data contains more than 17.9 million data points regarding more than 1 million procedures provided to Howard Head patients. Notwithstanding Vail Health's production of the Howard Head Data, Plaintiffs have continued to push for production of additional data, including requesting in a late-December 2021 email to the Special Master that Vail Health be ordered to add three columns to the Howard Head Data. The January 18 Order adopted Plaintiffs' email request for additional data. Vail Health appeals that portion of the January 18 Order because the data requested either (1) has already been provided, (2) was not requested by Plaintiffs during discovery, or (3) does not exist.

1

The January 18 Order also makes certain recommendations regarding the discovery schedule in this matter and Vail Health's pending Motion for Protective Order. Because those issues have not been referred to the Special Master and because there is no basis for further discovery in this matter, the Court should not adopt those recommendations.

## Background

On October 20, 2021, Vail Health produced two excel spreadsheets containing data from its TherapySource, Cerner, and Paragon medical records databases (VH_Fed_00006965 & VH_Fed_00006966). Excerpts from that Howard Head Data are attached as Exhibit 1. Vail Health produced the Howard Head Data in Excel spreadsheets that contain a tab for each fiscal year. The below chart lists, for each tab, (a) the time period covered by the tab and (b) the number of rows of data in the tab.

| Tab | Time Period Covered | Rows of Data |
|---|---|---|
| FY2014 | November 1, 2013 – October 31, 2014 | 142,541 |
| FY2015 | November 1, 2014 – October 31, 2015 | 143,110 |
| FY2016 | November 1, 2015 – October 31, 2016 | 151,324 |
| FY2017 | November 1, 2016 – October 31, 2017 | 153,237 |
| FY2018 | November 1, 2017 – October 31, 2018 | 150,497 |
| FY2019 | November 1, 2018 – October 31, 2019 | 148,592 |
| FY2020 | November 1, 2019 – October 31, 2020 | 116,043 |
| FYTD2021 | November 1, 2020 – September 22, 2021 | 117,518 |
| **Sum of Tabs** | **November 1, 2013 – September 22, 2021** | **1,122,862** |

Each row of data represents a Howard Head procedure provided to a patient. As such, the Howard Head Data contains information regarding more than 1.1 million Howard Head procedures provided between November 1, 2013 and September 22, 2021.

The Howard Head Data provides, for each of the more than 1.1 million rows (each a Howard Head procedure), sixteen pieces of data. As such, the Howard Head Data provides more than 17.9 million data points for the period November 1, 2013 through September 22, 2021.

The data fields provided, which are listed in the column headers, are as follows:

- Facility: Identifies the Howard Head facility at which the procedure was provided.

- DOS: Identifies the date on which Vail Health provided the procedure at issue to the patient.

- PatientID: A unique number assigned to each Vail Health patient.

- Account: Identifies an encounter with a Vail Health patient. An "encounter" includes a recurring encounter—*e.g.*, when a patient receives treatment on multiple days for the same injury.

- CPT: A unique number identifying the specific procedure provided to the patient.

- CPT_Description: A unique description of the specific procedure provided to the patient (e.g., "Therapeutic Procedure," "Manual Therapy Techniques").

- Qty: Identifies (a) for procedures for which the billable unit is minutes on Vail Health's chargemaster, the number of documented minutes of that procedure provided to the patient on a particular date of service and (b) for procedures for which the billable unit is procedures (e.g., "PT Evaluation, Low Complexity," "PT Evaluation, Moderate Complexity," "PT Reevaluation"), the number of procedures.

- Patient Zip: Identifies the zip code of the patient who received the procedure in each row in the Data.

- CDM Number: A unique number that identifies a specific procedure on Vail Health's chargemasters, which Vail Health has produced to Plaintiffs.

- Insurance 1: Identifies the primary payer for services provided to the patient.

3

- Insurance 2: Identifies the secondary payer (if any) for services provided to the patient.

- Insurance 3: Identifies the tertiary payer (if any) for services provided to the patient.

- pat_pay_at: The pat_pay_at ("patient payment") field identifies the amount the patient paid for each encounter (e.g., copays).

- pat_adj_at: The pat_adj_at ("patient adjustment") field identifies any amount that was adjusted by patient financial services against the account (e.g., self-pay discount).

- ins_pay_at: The ins_pay_at ("insurance payment") field identifies the amount the insurer or other payer paid for each encounter.

- ins_adj_at: The ins_adj_at ("insurance adjustment") field identifies any adjustment to the amount owed by the insurer (e.g., a contractually mandated discount).

(*See* Ex. 2 at 2-4.)

Given the extremely large volume of protected health information ("PHI") in the Howard Head Data, Vail Health produced the data to Plaintiffs via an encrypted, password-protected platform. That platform allowed Plaintiffs to view all aspects of the data, including (a) the column headers (i.e., all fields), (b) all rows of data, and (c) all tabs of data. It also allowed Plaintiffs to use Excel functionality, such as searching, sorting the data by any column, and filtering any column. (*Id.* at 5-6.)

However, Vail Health had no intention of limiting Plaintiffs' access to the data to the format in which it was produced on October 20, 2021. Rather, given that the data consisted of

4

PHI and more than 17.9 million data points, Vail Health simply requested that Plaintiffs confirm that the data would be stored on a secure platform before providing the data in downloadable format.  Vail Health's October 20, 2021 cover email stated: "Given the very large volume and highly sensitive nature of this data, it is currently being produced via a secure file-share platform, which will allow Plaintiffs' counsel to view the data.  Before providing the data in a downloadable format, Vail Health would need confirmation that the IT systems or platforms on which this data will be stored are sufficiently secure to protect this data from a potential breach.  Please provide us with details regarding the IT security of the platform where Plaintiffs intend to store this data."  (Ex. 3.)

Plaintiffs waited 43 days before providing a redacted version of their expert's IT security policy.  (Ex. 4.)  On December 3, 2021, one day after Plaintiffs provided a copy of their expert's IT security policy, Vail Health re-produced the Howard Head Data in downloadable format.  (Ex. 5.)

On December 7, 2021 at 3:03 pm, Plaintiffs sent Vail Health a list of eleven questions regarding the Howard Head Data, many with multiple sub-parts.  (Ex. 6 at 2-3.)  On December 8, 2021 at 9:44 am, Vail Health responded to Plaintiffs' email, agreeing to look into Plaintiffs' questions and respond the following week.  (Ex. 6 at 1.)

On December 8, 2021, Plaintiffs sent an email to the Special Master requesting a "conference call with the Special Master and counsel for Vail Health to discuss the patient data in hopes of expediting resolution of this logjam"—even though Vail Health had already agreed to respond to Plaintiffs' questions.  (Ex. 7.)

On December 10, 2021, the Special Master held a two-hour conference call with the parties to discuss the issues Plaintiffs raised regarding the Howard Head Data.  During the call,

5

Plaintiffs raised concerns regarding the sufficiency of the data and about how Plaintiffs would authenticate the data. Plaintiffs made several requests regarding the data, including that the Special Master order Vail Health to (a) present employees who are knowledgeable regarding the data for an informal telephonic interview with Plaintiffs' counsel and (b) require Vail Health to identify all fields that are available in Vail Health's medical records databases so that Plaintiffs may choose what additional fields Vail Health should be required to produce.

In a December 13, 2021 minute order, the Special Master issued the following orders:

- "Defendant will advise Plaintiffs and Special Master what 'fields', if any, in the database(s) underlying its Excel Spreadsheet can be identified as soon as possible or by December 15, 2021."

- "Defendant will provide answers to Plaintiffs' '11 questions' by EOB December 17, 2021."

- "Defendant will submit to Plaintiffs and Special Master, as part of discovery, a document of authentication of the information set forth in the Excel Spreadsheet previously prepared and produced by Vail Health."

(Doc. 264 at 1-2.)

On December 15, 2021, Vail Health responded to Plaintiffs' and the Special Master's inquiry regarding whether Vail Health could identify all fields that are available in its Paragon, Cerner, and TherapySource medical records databases. Vail Health determined that doing so was not feasible, explaining in part: "Vail Health's Cerner and Paragon databases are extraordinarily complex systems that handle the workflow of nearly the entire hospital. While the precise number of fields in those databases is difficult to determine, Vail Health personnel estimate that there are at least hundreds of thousands of available fields in Cerner and Paragon.

6

The vast majority of those fields would have no bearing on the issues in dispute between the parties in this litigation, as they are unrelated to physical therapy services." (Ex. 8.)

On December 17, 2021, Vail Health sent to Plaintiffs and the Special Master a thirteen-page letter that described the fields in the Howard Head Data in detail and responded to each of Plaintiffs' eleven questions. (Ex. 2.) Vail Health also attached a stipulation authenticating the Howard Head Data. (Ex. 9.)

On December 23 and 29, 2021, Plaintiffs emailed the Special Master requesting "that Vail Health be ordered to add the following three columns to the spreadsheet provided to Plaintiffs on October 20, 2021:

1. The billable units (not minutes) for physical therapy services provided to patients included in the spreadsheet;

2. The amount charged per billable unit rather than aggregated amounts for services rendered to each patient; and

3. The amount collected for the units of physical therapy rendered to each patient."

(Ex. 10 at 2.)

On January 5, 2022, Vail Health responded to Plaintiffs' email request for production of additional data, copying Special Master Ruckriegle. (Ex. 10 at 1.) Vail Health explained that (1) the Howard Head data already provides information regarding the billable units for physical therapy services provided to patients; (2) Plaintiffs' request for production did not request information regarding "amounts *charged*," only "amounts *paid*"; and (3) Vail Health's medical records systems track payments at the encounter level, not the procedure level. (*Id.*) Vail Health thus requested that the Special Master reject Plaintiffs' email request for production of additional data. (*Id.*)

7

On January 18, 2022, the Special Master issued his Report to the Court. Vail Health does not appeal certain rulings in the January 18 Order and has complied with those orders not appealed. The order required Vail Health to "advise Plaintiffs and Special Master within seven (7) days of this Order, the identity of those individuals who prepared the Excel Spreadsheet that was provided to Plaintiffs on October 20, 2021 [*i.e.*, the Howard Head Data]." (Doc. 274 at 3.) Vail Heath complied with that order on January 25, 2021.[1] (Ex. 11.) The January 18 Order also required Vail Health to "submit for in camera review by the Special Master documents specifically requested and identified in Plaintiffs' Motion to Compel #5," with "[a]ll costs of the Special Master's in camera review . . . to be borne by Plaintiffs." (Doc. 274 at 4.) Vail Health complied with that order by producing on February 8, 2022, the documents corresponding to the 391 privilege log entries that Plaintiffs challenged in Motion to Compel #5.

However, Vail Health appeals herein certain other orders and recommendations in the January 18 Order, namely:

- The order that Vail Health "provide the following by January 31, 2022, to the October 20, 2021, Excel Spreadsheet: the billable units (not minutes) for physical therapy patients; the amount charged per billable unit rather than the aggregated

---

[1] While the January 18 Order acknowledged that Vail Health's provision of a stipulation of authentication regarding the Howard Head Data was "consistent with the phrase in the [December 13, 2021] minute order for a document of authentication," it concluded that Vail Health had failed to comply with an oral order during the December 10, 2021 conference call to identify a Vail Health employee knowledgeable regarding the Howard Head Data. (Doc. 274 at 2-3.) While Vail Health understood in good faith that the December 13, 2021 minute order (Doc. 264) reflected the final orders of the Special Master arising out of the December 10 conference call, Vail Health accepts the Special Master's clarification that he intended his oral order during the December 10 conference call to supplement the December 13 minute order.

amounts for services rendered to each patient; and the amount collected for the units of physical therapy rendered to each patient" (Doc. 274 at 3-4);[2]

- The recommendation that the "Court deny those pending Motions for Protective Order and in Opposition to Extending Fact Discovery by Defendant" (*id.* at 4); and

- The recommendation that the "Court permit fact Discovery to be allowed to continue either a date certain to be determined by the Court or until the Special Master resolves all discovery issues pending, particularly in Motions to Compel #s 1-5." (*Id.*)

## Legal Standard

Rule 53 permits a court to appoint a Special Master to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C). The Court's Order Appointing Master for Discovery provides that "Magistrate Judge Gallagher will review each discovery motion to determine in his discretion whether the dispute should be referred to the Master and will refer appropriate discovery motions to the Master." (Doc. 123 at 2.) Judge Gallagher referred to the Special Master Motions to Compel No. 1-5, but did not delegate supervision of all discovery matters to the Special Master.

"In acting on a master's order, report, or recommendations, the court must give the parties notice and an opportunity to be heard; may receive evidence; and may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." Fed. R.

---

[2] Vail Health informed the Special Master of its intention to appeal this portion of the January 18 Order. (Ex. 12.)

9

Civ. P. 53(f)(1). In reviewing an objection to a Special Master's order, the Court "must decide de novo all objections to findings of fact . . . [and] all objections to conclusions of law made or recommended by a master." Fed. R. Civ. P. 53(f)(3), (4). "[T]he court may set aside a master's ruling on a procedural matter only for an abuse of discretion." Fed. R. Civ. P. 53(f)(5).

## Argument

**I.   Appeal of Order Regarding Howard Head Data**

The January 18 Order required Vail Health to add to the Howard Head Data "the billable units (not minutes) for physical therapy patients; the amount charged per billable unit rather than the aggregated amounts for services rendered to each patient; and the amount collected for the units of physical therapy rendered to each patient." (Doc. 274 at 3-4.) Vail Health respectfully objects to that portion of the January 18 Order and requests that it be vacated.

**A.   The Howard Head Data Already Provides Data Regarding "Billable Units"**

In ordering Vail Health to add to the Howard Head Data a column reflecting the "the billable units (not minutes) for physical therapy patients," the January 18 Order requires Vail Health to "add" to the spreadsheets data that is already included therein.

As explained in Vail Health's December 17, 2021 letter, "[t]he Howard Head Data includes detailed information regarding every outpatient private-payer physical therapy procedure provided by Vail Health's Howard Head physical therapy practice in the alleged Vail Valley market from November 1, 2013 through September 22, 2021." (Ex. 2 at 1.) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

10

███████████████████████████████████████████

████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████

If a column were added to the Howard Head Data reflecting the number of units of physical therapy reflected by each row, that column would read "1" for all of the more than 1.1 million rows—*i.e.*, it would be completely superfluous.

In fact, Vail Health provided *more detailed* information regarding the quantity of physical therapy services to Howard Head patients than requested by Plaintiffs and ordered by the Special Master. Included in the Howard Head data is a "Qty" (Quantity) column. As explained in Vail Health's December 17 letter, the Quantity field identifies "for procedures for which the billable unit is minutes on Vail Health's chargemaster, the number of documented minutes of that procedure provided to the patient on a particular date of service." (Ex. 2 at 3.) In other words, the Howard Head data provides not only information about the units of physical therapy provided but also *more granular* information regarding the documented *minutes* of physical therapy provided.

Vail Health respectfully requests that the Court find that Vail Health has already provided data regarding the units of physical therapy provided to Howard Head patients and vacate the Special Master's order requiring Vail Heath to add a column to the Howard Head Data reflecting "the billable units (not minutes) for physical therapy patients."

11

B.  Plaintiffs Requested Data Regarding Amounts *Paid* for Physical Therapy Services, Not Amounts *Billed*

The Special Master's order requiring Vail Health to add to the Howard Head data "the amount *charged* per billable unit" requires Vail Health to produce data that Plaintiffs did not request.

Plaintiffs' request for production ("RFP") demanding production of patient-level data is RFP 17, which is as follows:

> All data identifying all physical therapy patients treated by RPC-Vail or Vail Health from November 1, 2004 to the present, including demographic information for each patient, insurance information (including insurer name, governmental entity such as Medicare Part A or Part B, self-pay etc.), referring and primary physicians, diagnoses based on an ICD9 Code, at what locations the patients were treated and when, and the **amounts paid** for any services billed for each patient. The data should be produced in Excel format.

(Ex. 13 at 42 (emphasis added).)[3]  RFP 17 specifically requests data regarding "amounts *paid*" for physical therapy services, not "amounts *charged*."  Because Plaintiffs specifically requested an Excel spreadsheet containing data regarding payments for physical therapy services, that is what Vail Health provided. Vail Health is under no obligation to create reports or documents at all, much less with information that Plaintiffs did not even request.

In any event, Vail Health has produced extensive documents and information regarding the amount it charges for physical therapy services.  Vail Health has produced, *inter alia*, its chargemasters for the relevant period, which reflect Vail Health's standard prices for its services; contracts with third-party payers, which reflect the discounts provided to payers from Vail Health's chargemaster prices; documents and information regarding Vail Health's self-pay

---

[3] While Vail Health objected to certain portions of RFP 17, including identifying by name "all physical therapy patients," it agreed to "meet and confer with Plaintiffs to determine whether it can produce data responsive to a narrowed version of Request for Production No. 17 that protects patient privacy by providing de-identified and/or aggregate information, does not impose an undue burden, and relates to Plaintiffs' claims in this litigation."  (Ex. 13 at 42.)

12

system, including adjustment forms and invoices containing pricing information; and communications regarding Vail Health's pricing of physical therapy services. (Doc. 228 5-6 (summary of Vail Health's document production in Motion for Protective Order).) Given that discovery, requiring the creation of additional reports reflecting the "the amount charged per billable unit" would be unreasonably cumulative or duplicative. Fed. R. Civ. P. 26(b)(2)(C)(i).

        C.       <u>Vail Health Does Not Track Payments at the Procedure Level</u>

The January 18 Order also requires Vail Health to add a column to the Howard Head Data reflecting "the amount collected for the units of physical therapy rendered to each patient." That order should be vacated because Vail Health does not maintain such data in the ordinary course of business.

As explained in Vail Health's December 17, 2021 letter, "Vail Health's databases do not track the amount Vail Health was ultimately reimbursed for each individual procedure—*i.e.*, Vail Health does not 'line item post.'" (Ex. 2 at 4.) Rather, Vail Health's Cerner database (which covers the period from November 10, 2018 through the present) and Paragon database (which covers the period November 1, 2013 through November 9, 2018) track the amount Vail Health was paid for each patient encounter. (Ex. 2 at 4.) Accordingly, the Howard Head Data provides data regarding payments to Vail Health for each patient encounter, not each procedure. Vail Health cannot be compelled to create documents that it does not maintain in the ordinary course of business. *See* 7 Moore's Federal Practice § 34.12 ("A party cannot be compelled to create, or cause to be prepared, new documents solely for their production. Rule 34 only requires a party to produce documents that are already in existence."); *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-cv-01644-REB-CBS, 2010 U.S. Dist. LEXIS 17857, *41-42 (D. Colo. Feb. 8, 2010) ("It is well-settled that a responding party's obligations under Rule 34 do not extend to non-existent materials.").

13

The portion of the January 18 Order requiring Vail Health to add a column to the Howard Head data reflecting "the amount collected for the units of physical therapy rendered to each patient" should be vacated.

## II.  Appeal of Recommendations to the Court Regarding Protective Order and Fact Discovery Schedule

The January 18 Order also includes several broad Recommendations to the Court regarding discovery in this case.  The Court should not adopt those Recommendations.

The January 18 Order recommends that the Court "deny . . . [the] Opposition to Extending Fact Discovery by Defendant."  (Doc. 274 at 4.)  This appears to be a reference to Vail Health's brief in opposition to Plaintiffs' October 29, 2021 Motion to Modify Scheduling Order ("Motion to Modify").  (Doc. 206 (motion); Doc. 230 (opposition brief).)  However, the Court has already decided the Motion to Modify, denying the motion in part and ordering only a limited extension of the fact discovery deadline through December 20, 2021.  In so holding, the Court found, *inter alia*, "Plaintiffs have not been diligent in obtaining discovery within the guidelines of the Scheduling Order" and "delayed progress in the case by four months."  (Doc. 242 at 4.)  Because the Motion to Modify has already been decided, the Special Master's recommendation regarding that motion is moot.

The January 18 Order also recommends that the Court deny Vail Health's Motion for Protective Order and "permit fact Discovery to be allowed to continue either [until] a date certain to be determined by the Court or until the Special Master resolves all discovery issues pending, particularly in Motions to Compel #s 1-5."  (Doc. 274 at 4.)  For the reasons stated in Vail Health's Motion for Protective Order (Doc. 228; Doc. 252), the Court should not adopt the Special Master's recommendation.  No motion regarding the discovery schedule has been referred to the Special Master.  Fact discovery has been closed for more than a month, the parties have served their initial

14

expert disclosures, the parties will serve their rebuttal expert disclosures this month, and the dispositive motion deadline is March 7, 2022. Reopening fact discovery would reward Plaintiffs for their delays and vexatious strategy of raising a multitude of frivolous discovery disputes, potentially require re-submission of expert reports, and delay final resolution of this dispute—which has been ongoing for nearly five years.[4]

## Conclusion

For the reasons stated herein, the Court should vacate the Special Master's orders regarding the Howard Head Data and decline to adopt the January 18 Order's recommendations regarding the discovery schedule.

---

[4] Vail Health respectfully disagrees with the description of conferral between Vail Health and Plaintiffs in Paragraph 3 on Page 2 of the January 18 Order. Vail Health filed its Motion for Protective Order only after Plaintiffs refused to narrow the issues in dispute following eight hours of hearings before the Special Master. (Doc. 228 at 6-8.) Vail Health conferred orally with Plaintiffs on November 23, 2021 and submitted a report regarding the results of that conferral on November 29, 2021. (Doc. 246.)

Respectfully submitted this 8th day of February, 2022.

    *s/ Daniel A. Richards*
Shannon Wells Stevenson
Janet A. Savage
Jacqueline V. Roeder
Daniel A. Richards
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, Colorado, 80202
Telephone: 303.892.9400
Facsimile: 303.893.1379
Email:  shannon.stevenson@dgslaw.com
       janet.savage@dgslaw.com
       jackie.roeder@dgslaw.com
       daniel.richards@dgslaw.com

*Attorneys for Defendant VAIL CLINIC, INC., d/b/a VAIL HEALTH, a Colorado nonprofit corporation*