1

```
 1                    UNITED STATES DISTRICT COURT
                         DISTRICT OF COLORADO
 2

 3   SPORTS REHAB CONSULTING,      .  Case No.  19-cv-02075-WJM-GPG
     LLC, ET AL.,                  .
 4                                 .
                  Plaintiffs,      .
 5                                 .
     vs.                           .
 6                                 .
     VAIL CLINIC, INC.,            .  Alfred A. Arraj Courthouse
 7                                 .  901 19th Street
                  Defendant.       .  Denver, CO  80294
 8                                 .
                                   .  January 28, 2020
 9   . . . . . . . . . . . . . . . .  1:14 p.m.

10         TRANSCRIPT OF PROCEEDINGS HELD BEFORE THE HONORABLE
           GORDON P. GALLAGHER, UNITED STATES MAGISTRATE JUDGE
11
     APPEARANCES:
12
     For the Plaintiffs:          Alan L. Kildow, Attorney at Law
13                                By:  Alan L. Kildow
                                  790 Potato Patch Drive
14                                Vail, CO  81657
                                  (970) 390-6675
15
     For the Defendant:          Davis Graham & Stubbs
16                                  LLP-Denver
                                  By:  Jacqueline Ventre Roeder
17                                By:  Shannon Wells Stevenson
                                  1550 17th Street
18                                Suite 500
                                  Denver, CO  80202
19                                (303) 892-9400

20   Court Recorder:            Clerk's Office
                                U.S. District Court
21                                901 19th Street
                                  Denver, CO  80294
22

23

24

25
```

1   Appearances Continued:

2
    Transcription Service:          AB Litigation Services
3                                   216 16th Street, Suite 600
                                    Denver, CO  80202
4                                   (303) 296-0017

5   *Appearing by telephone.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21  *NOTE: Problem with recording software resulted in "(audio
    cuts out)" instances within this transcript.
22

23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.

1                    (Time noted:  1:14 p.m.)

2              THE COURT:  All right.  We are here this afternoon

3    in *Sports Rehab (audio cuts out) versus Winninger*, and this

4    is 19-cv-2075.

5              If I could go ahead and take the entries starting

6    with the plaintiff, please?

7              MR. KILDOW:  May it please the Court.  Alan

8    Kildow, spelled K-I-L-D-O-W, for the plaintiff, Sports (Audio

9    cuts out) and Lindsay Winninger.

10             THE COURT:  All right.  Good afternoon.

11             MR. KILDOW:  Good afternoon.

12             THE COURT:  And for the defense, please.

13             MS. ROEDER:   Hi.  Jackie Roeder for the

14   defendant.

15             THE COURT:  Okay.  Good (unintelligible).  And who

16   do you have with you, Ms. Roeder?

17             MS. STEVENSON:  And, Your Honor, Shannon Stevenson

18   also for the (unintelligible).

19             THE COURT:  All right.  Good afternoon to both of

20   you all.

21             And the matter comes on this afternoon for a

22   scheduling conference.  And let me start with the motion that

23   was stricken, that was filed at Document 46, which was

24   essentially, kind of alternatively, the motion, kind of an

25   addendum to the motion to dismiss or stay.

1           MS. Roeder, do you anticipate refiling such a

2    motion?

3           MS. ROEDER:  Your Honor, yes, we do.  We conferred

4    with Mr. Kildow yesterday afternoon by email.  Hadn't yet

5    heard, but I presume the motion is opposed just given the

6    (audio cuts out) have had, and the positions that were

7    articulated in the proposed scheduling order before you

8    today.

9           The most stricken for a (audio cuts out) lack

10   statement of conferral.  We hadn't perceived at the time that

11   was necessary, given that it was a continuation in our view

12   of the prior.  But in light of when we have an opposition, we

13   do (audio cuts out) refile it, Your Honor.  And I believe

14   there are some updates in there that we wanted to apprise you

15   of, as well as bring to the front and center to stay

16   discovery in light of the unique circumstances in this case.

17          THE COURT:  Okay.  What do you think your time

18   frame looks like for refiling that?

19          MS. ROEDER:  Your Honor, (audio cuts out) were to

20   do it today, right now.  I think if we are comfortable with

21   the plaintiff's and Mr. Kildow's position that they do oppose

22   the motion, we can insert that statement and have it refiled

23   within the hour.

24          THE COURT:  In looking at it, it's sometimes hard

25   to read the tea leaves with a written minute order, and

1  there's not a lot there, but it looks like perhaps the

2  (unintelligible) was that this isn't really a *Colorado River*

3  motion, it's more of a *String Cheese* analysis that is going

4  into that.  And (audio cuts out) that reason, it's a

5  (unintelligible).

6         With that in mind, Mr. Kildow, do you know what

7  your position on such a motion is going to be at this

8  juncture?  If not, that's fine, too.

9         MR. KILDOW:  We will oppose it.

10         I have a housekeeping question when it's

11  appropriate.

12         THE COURT:  Sure.  Well, go -- I don't know what

13  it is.  I don't know when it might be appropriate, so go

14  ahead.

15         MR. KILDOW:  We haven't conferred on this motion,

16  and one of the questions I have (audio cuts out) if Judge

17  Martinez's minute order wasn't clear enough, what is the

18  Court's position on (audio cuts out) on this matter?

19         THE COURT:  Right.  Well --

20         MR. KILDOW:  What are the requirements of

21  conferral?

22         THE COURT:  Sure.  Well, I can tell you my

23  personal preference (audio cuts out) generally that counsel

24  talk to each other.  I personally am not a huge fan of email

25  because I think a lot gets lost in (audio cuts out), but I

 1  know that maybe that's the modern world and that's where most

 2  conferral occurs.  Beyond that, I think a meaningful

 3  discussion on anything of note is (audio cuts out).

 4  Primarily, it ultimately saves me a bunch of time later.

 5          Often what I find is that even on motions where

 6  there's going to be opposition (audio cuts out) be some

 7  agreement on some sub points, and that leaves the Court with

 8  less to decide.

 9          Here, while I don't want to speak (audio cuts out)

10  to me like what we're talking about is, you know, certainly

11  Document 31 and Document 32 are looking (audio cuts out) of

12  the entire case.

13          And I know *Colorado River* doesn't always dispose

14  of the entire case.  Sometimes it delays it, but it delays it

15  for a long time while some (audio cuts out) is going on,

16  versus what it sounds to me like what is being asked for in

17  Document 46 and why it needs to be a separate (audio cuts

18  out) with a separate conferral, is it's not asking to dispose

19  of the whole case, it's asking to stay discovery while

20  somebody decides if the prior motion is going to decide the

21  entire (audio cuts out) is the way I read that motion.

22          So conceivably, from a plaintiff's perspective,

23  I'm not suggesting that you should have a different position,

24  but you could have a position, and you do as to Documents 31

25  and 32, which obviously you oppose because you filed the

1    case.

2          So by a (audio cuts out) to me, the more in depth

3    that conferral is the better.  So what I guess I would say is

4    any reason that that can (audio cuts out) and you may be able

5    to file within the hour, but for purposes of meaningful

6    conferral, which really shouldn't occur in front of the Court

7    anyway, any reason 48 hours isn't reasonable to have (audio

8    cuts out) conferral and refile that motion, if that's what

9    you all want to do?

10          MS. ROEDER:  No, Your Honor, that's absolutely

11   reasonable.  And we'll (audio cuts out) understand the

12   Court's position on that, and typically that's our (audio

13   cuts out) as well.

14          We had included in the *Colorado River* motion an

15   alternative request to stay discovery.  So it had been

16   previously discussed, but I understand the position (audio

17   cuts out) some discussion and see if there can be an

18   agreement reached on that point.

19          THE COURT:  And what I can't tell you with a

20   substantive motion like that (audio cuts out) exactly how

21   it's organized in the district judges' chambers in terms of

22   review, but it's possible that none of -- you know, I'm sure

23   he over-read it when it came in, but it's possible that

24   nobody's taken an in-depth look at that until they take an

25   in-depth look at the whole thing.  So they may not have

1    looked at the sub-part of kind of a (audio cuts out) day

2    while they're getting to the longer issue.

3            But maybe they did, I don't know.  But that would

4    at least be logical, so that's why I think a standalone

5    motion makes a lot of sense and (audio cuts out) down the

6    road.

7            So with that in mind, what I'm going to do is go

8    ahead with the rest of the scheduling conference.  What I

9    won't do is I won't issue a (audio cuts out) order today.  I

10   want to at least get an idea of, first, whether that motion

11   is going to get referred to me.  Judge Martinez, generally

12   doesn't refer dispositive motions, but he may very well refer

13   the shorter stay motion, so we may -- if so (audio cuts out)

14   where we can move forward or not on that sooner.

15           So I want to wait on the scheduling order, at

16   least briefly, but I think we can resolve some of the (audio

17   cuts out) within that (audio cuts out) and a scheduling order

18   out within a couple of weeks is my anticipation.

19           I don't want a kind of stay by fiat, but I also

20   don't want to issue something that will immediately be

21   obsolete, either.

22           So let me then look at some of the issues that

23   really need to be addressed moving (audio cuts out).

24           In terms of the issues set forth regarding the

25   (audio cuts out) riding stay or not under *Colorado River*, I'm

1  really not going to address those.  I understand the parties'

2  varying positions on those (audio cuts out) and been referred

3  to me.  And really, that issue, at least right now, doesn't

4  need to be delved into for purposes (audio cuts out)

5  submitting a scheduling order.

6        What needs to be delved into is whether there's

7  going to be a stay until that issue is resolved (audio cuts

8  out) and wait a couple of weeks, see how that pans out.  So I

9  don't -- unless the parties believe there's some other need

10  for argument on that issue, it seems like what really (audio

11  cuts out) that needs to be (audio cuts out).

12        Mr. Kildow, anything further you think we need to

13  address on that issue?

14        MR. KILDOW:  No, Your Honor.  (Audio cuts out)

15  presume that the motion to dismiss and the motion under the

16  *Colorado River* doctrine, which does include, I think, a

17  request for a stay of discovery, as well, as I recall, are

18  before Judge Martinez and --

19        THE COURT:  They are.

20        MR. KILDOW:  -- just await the order of the Court

21  on that.

22        THE COURT:  Right.  And I can't give you (audio

23  cuts out), but guessing it looks like a reply came in mid-

24  November.  So beyond that, I can't give you a good read on

25  (audio cuts out) that an order, so.

1           Ms. Roeder, anything further on kind of that

2  overriding issue that we need to discuss at this point?

3           MS. ROEDER:  No, Your Honor.  Thanks.

4           THE COURT:  Okay.  Then let's move on to some of

5  the stuff that we actually can get to.

6           There is a proposal here for discovery, initial

7  disclosures, and I'm looking (audio cuts out) Page 17 Section

8  D, for initial disclosures, eight days after the scheduling

9  conference.  And then, of course, (audio cuts out) position

10  is to be stayed.

11          So, Ms. Roeder, how does eight days after I issue

12  a scheduling order strike you in terms of initial

13  disclosures?

14          MS. ROEDER:  Well, Your Honor, as I perceive the

15  Court understands, our position here is that discovery should

16  be stayed for all purposes, pending resolution of these

17  motions, as well as, you know, if not that, pending

18  resolution of several recent developments in the state court

19  case, including our filing of a summary judgment motion last

20  night to dispose (audio cuts out) remaining claims in the

21  case.

22          So I think the Court understands our overarching

23  position on that issue.  If however, the Court after review

24  (audio cuts out) the motion to stay discovery, believes that

25  a scheduling order should be entered, I think we would

 1  propose something like 30 days after that scheduling order

 2  for initial disclosure.

 3          THE COURT:  Okay.

 4          Mr. Kildow, in terms of 30 days versus a shorter

 5  time period?  I mean, I guess I didn't understand what the

 6  magic was to eight days.  It would seem pretty quick, given

 7  (audio cuts out) probably looking at discovery.  But eight

 8  days versus 30 days?

 9          MR. KILDOW:  No, Your Honor, eight days is fine.

10  Plaintiffs will be filing their 26(a)(1) report during that

11  time period.

12          THE COURT:  Well, what I'll do is, I think three

13  weeks is appropriate, so -- and that date isn't from today's

14  date.  That'll be from issuing of a (audio cuts out) order.

15  What I'll order is that, and I'll modify the text in here as

16  appropriate, is that 26(a)(1) disclosures, 21 days for the

17  issuance of a scheduling order.  But again, I'm going to sit

18  on the scheduling order for at least a brief time period

19  until we get a read on what that motion is going to look

20  like.

21          So in terms of things, it looks to me -- and what

22  I'm trying to do is, of course, avoid duplication of

23  discovery.  Are the parties (audio cuts out) and I understand

24  the position is that the Sherman Act discovery is going to be

25  substantively different.  In terms of the discovery that

 1   isn't different, are the party (audio cuts out) in fairly

 2   significant accord on not repeating all of that?

 3             MR. KILDOW:  With respect (audio cuts out), Your

 4   Honor, the documents that have been exchanged thus far, and

 5   is (audio cuts out) a lot of (audio cuts out) to go, and the

 6   depositions that have been taken thus far (audio cuts out) be

 7   available in this case.  That would be our feeling.

 8             But the fact of the matter is, for example, I

 9   think we have a total of seven motions, discovery motions,

10   (audio cuts out) that are still outstanding and have not been

11   heard or addressed yet.  But (audio cuts out) the documents

12   exchanged ought to be available in both actions.  But the

13   (audio cuts out) and that includes transcripts, et cetera.

14             However, in answers to interrogatories, requests

15   for (audio cuts out), there are substantial additional and

16   different issues in this federal antitrust case than existed

17   (audio cuts out) state tort action.  And so we don't want to

18   be hamstrung in terms of our ability to have additional

19   depositions.

20             THE COURT:  Sure.  And my question may not have

21   been artful.  So I guess what I'm trying to get at is, do you

22   think we can get (audio cuts out) agreement that from your

23   perspective what you already have, and what you continue to

24   get in the state case, will count for the federal case and

25   find some way of certifying that?

1    And then, of course, everybody can then fight over

2  whatever else they think is appropriate, that's a different

3  -- that's a different fight.  I'm just trying to avoid (audio

4  cuts out) of what everybody already has or what everybody

5  already gets in the state case, because that seems to be a

6  waste of time.

7    MR. KILDOW:  The plaintiffs would (audio cuts

8  out).  However, I just want to make it clear that (audio cuts

9  out) let's just say the deposition of the now former chairman

10  of the Board of Health was taken, but the questions that were

11  asked do not go (audio cuts out) many of them (audio cuts

12  out) antitrust case.  So we would not want to limit the

13  ability --

14    THE COURT:  Right.

15    MR. KILDOW:  -- to take Mr. Shannon (phonetic).

16    THE COURT:  Right.  And I think that's a

17  completely different question and we'll (unintelligible) --

18    MR. KILDOW:  Yes.

19    THE COURT:   Okay.

20    Ms. Roeder, from your perspective, do you think

21  the parties can at least be in agreement on a non-

22  duplication, which is different from an agreement (audio cuts

23  out) whether what you have is enough or not?

24    MR. SCHEID:  Understood, Your Honor.  Yes, I think

25  Defendant, Vail Health, also agrees that what has been

1  discovered in the state case produced and, you know,

2  litigated in many cases now before a special master (audio

3  cuts out) lie in this case, as well.  As many of those issues

4  have, as Mr. Kildow mentioned, gone through extensive

5  briefing and discussion.  So I think Vail Health is amenable

6  to having the state discovery also count in the federal

7  action.

8       There is, of course, a question about depositions

9  and duplicative testimony and questioning, which I

10  understand, so I'll stop there for now.

11       THE COURT:  Okay.  So I think what we're going to

12  need, and maybe the parties can be in consultation about what

13  the most (audio cuts out) way to do this is, but to save

14  problems on the back end, what we probably need is some kind

15  of certification (audio cuts out) where the parties certify,

16  or agree in writing, that the discovery that they have -- you

17  know, I guess what I'm trying to avoid later (audio cuts out)

18  somebody arguing, you know, let's say this matter gets to

19  trial and somebody brings in a piece of evidence arguing,

20  well, that wasn't evidence in this case, it was evidence in

21  that case.  So what I'm looking for is some kind of a

22  certification process that exists where the parties certify,

23  you know, pages 1000 of the state case, or whatever it may

24  be, are -- doesn't mean it's admissible, but are discovery in

25  this case, and deposition transcripts, X, Y, and Z, are

1  discovery in this case, something where, you know,

2  essentially (audio cuts out) putting together a (audio cuts

3  out) of what already exists out there, and the parties are

4  certified that moves from one case to the other.

5       I know that's going to take a bit of work, but it

6  won't take nearly as (audio cuts out) being the discovery

7  wheel in this case, and then we can move forward.

8       Do the parties think that they can kind of craft

9  some kind of procedure for that within say (audio cuts out)?

10      MR. KILDOW:  I think so, Your Honor.

11      THE COURT:  (Audio cuts out) surprise me if

12 somebody out there has already crafted a very nice procedure

13 for that, because this isn't an unprecedented circumstance

14 where there's multiple litigation over (audio cuts out)

15 somebody's (audio cuts out) with a much more clever way than

16 I have of thinking about how to do that, so.  And you all may

17 already have that in your files, which would even better.

18      All right.  Let me take other items.  I think that

19 would also include the ESI, certainly, that has already been

20 exchanged.  And (audio cuts out) new ESI we can talk about

21 here moving forward.

22      In terms (audio cuts out) let me turn next to

23 depositions.  And again, I'll go back (audio cuts out)

24 counting new issues, is the plaintiff in agreement with

25 essentially what I read is Defendant's (audio cuts out) that

1   depositions shouldn't recover areas already addressed?  Which

2   I think is -- and I'm not asking you in any way to commit

3   (audio cuts out) to not (audio cuts out) people who have

4   already been deposed, because I understand Plaintiff's

5   position is that there are entirely new topics raised by this

6   lawsuit, but I think that's a different issue from re-

7   deposing individuals on subjects where they've already been

8   questioned.

9         MR. KILDOW:  As a general proposition, we would

10  (audio cuts out) agree with that.  Sometimes there's

11  transitions that, moving from one area to the next.  But we

12  have -- we have no great desire to relive the discovery that

13  we've already engaged in.  So I'd say as a general

14  proposition, that is -- that is something that the

15  plaintiff's will agree (audio cuts out).

16        THE COURT:  All right.  And, Mr. Kildow, why do

17  you think ten's the right number versus the defendant's

18  proposition of five (audio cuts out)?  And while we're on it,

19  we'll just talk about depositions and interrogatories.  Why

20  do you think 10 and 25 are the appropriate number at this

21  juncture?

22        MR. KILDOW:  Because the deponents we've listed

23  have information relating to the business (audio cuts out)

24  what we argue exclusionary conduct of Vail Health (audio cuts

25  out) issues have not been, the exclusionary issues, have not

1  been covered.  And the people that are associated with Vail

2  Health that we have (audio cuts out) we believe have

3  information about those subjects.

4          And there will (audio cuts out) undoubtedly non-

5  party depositions, as well.  Probably insurers with whom Vail

6  Health has arrangements, or had arrangements, for

7  reimbursement of medical expenses relating to its physical

8  therapy clinic.  And those will be depositions that will

9  (audio cuts out) side of the district.

10          THE COURT:  In terms of amount of time for

11  depositions, for those people that you have (audio cuts out),

12  how much time do you realistically need, think that you need,

13  for additional depositions of people you've already deposed?

14          MR. KILDOW:  Seven hours.

15          THE COURT:  Okay.  And why do you need seven hours

16  for those individuals, for the more limited topics that

17  exist?  I'm not saying they're small topics, but they're

18  certainly not recreating the deposition wheel of going back

19  giving the person notice.

20          MR. KILDOW:  No.  But, Your Honor, this isn't --

21  this is not a more limited (audio cuts out) this is a more

22  (audio cuts out) case.

23          The issues, if you've looked at the complaint, the

24  issues involve the business practices across the board of

25  Vail Health, and the pricing of Vail Health, and the

1   profitability of Vail Health.

2           As the governor's task force has indicated (audio

3   cuts out) is one of the most (audio cuts out) states in the

4   country when it comes to healthcare.  And Vail Health is

5   probably the most expensive hospital in the country when it

6   comes to (audio cuts out) healthcare.

7           And that is certainly true with respect to the

8   Howard Head physical therapy operation, and we need to know

9   why and how it (audio cuts out) that monopoly position.

10          And so we are not going to be going back and

11  covering old ground.  (Audio cuts out) believe (audio cuts

12  out) I have no desire to do that.  We can introduce

13  deposition transcripts that have already been taken, happy to

14  do so.  We will not be regurgitating questions that related

15  to the past depositions.

16          These are (audio cuts out) tough, very important

17  subject matter.  And I could tick them off if the Court

18  chooses, but they involve the arrangements they had with

19  insurers, the pricing they had with insurers, the (audio cuts

20  out) that they have with non-insured patients, the

21  arrangements that they had with their physical therapists in

22  terms of non-compete (audio cuts out), the arrangements they

23  had as far as the payment of their physical therapists, the

24  relevant geographic market and why it is what we argue it is,

25  the practical impediment (audio cuts out) travel outside of

1   the Vail Valley to receive the medical care at issue, the

2   alternatives available (audio cuts out) in the product

3   market, the service market, if you will.  These are all

4   substantial (audio cuts out) that have put to the management

5   of Vail Health.

6             THE COURT:  Okay.

7             Ms. Roeder, what's your position on that?  Or what

8   -- I guess I know what your position is.  What else do you

9   want to say?

10            MS. ROEDER:  Yes, Your Honor.  You know, looking

11  down this list of individuals that plaintiffs have suggested

12  they want to depose, each of them, with the exception of the

13  insurance companies, and, you know, the relevance of that is

14  (audio cuts out) a slightly different question.  They've each

15  been deposed in the state's case (audio cuts out) a 30(b)(6)

16  representative and in their individual capacity.  Those

17  depositions covered many of the topics that Mr. Kildow was

18  (audio cuts out) their relationship with orthopedic clinics,

19  the proposed joint venture, which is described at length in

20  the complaint.  So there's a good amount of ground that has

21  been (audio cuts out).

22            You know, it may be that we need to address this

23  on an individual deponent basis to understand what's old and,

24  you know, what's new to be covered.  But (audio cuts out)

25  these individuals need to sit for another full seven-hour

1  deposition after many of them have done so twice, on very

2  similar topics, seems excessive.  So I think that a time

3  restriction (audio cuts out) subject restriction on the

4  individuals that have previously been deposed makes sense in

5  light of the overlap and the testimony that's already been

6  taken.

7          You know, as for the total number of (audio cuts

8  out) it does seem that we can be efficient about that.  But,

9  you know, I'm amenable to a compromise on the total number of

10  depositions.  (Audio cuts out) it sounds like (audio cuts

11  out) third-party discovery that plaintiffs are thinking needs

12  to happen, and so we can discuss that.

13          But for the folks that have already been deposed,

14  there really is a lot of ground that has already been covered

15  at a (audio cuts out) that's an entirely, you know, that's a

16  fresh deposition, essentially.  And where we've covered those

17  topics previously, I think that's excessive and very

18  burdensome to those individuals.

19          THE COURT:  In terms of the number of

20  interrogatories?

21          MS. ROEDER:  Yes, Your Honor.  The number of

22  interrogatories, I believe Plaintiff's position was 25.

23  (Audio cuts out) position was -- well, I think --

24          MR. KILDOW:  Ten.

25          MS. ROEDER:  Ten.  Thank you, Mr. Kildow.

1            Again, you know, this is a -- this relates to the

2    fact that we have such overlapping subject matters.  There

3    have been multiple rounds of interrogatories propounded in

4    the state court case that cover the relationship (audio cuts

5    out) Vail Health's relationship with Steadman, that have

6    covered some of the market issues that Mr. Kildow was

7    discussing.  They certainly addressed (audio cuts out)

8    alleged anti-competitive conduct, which is primarily the

9    defamatory statements that are alleged.

10            And so, again, you know, in light of the (audio

11    cuts out) between this case and the state court case, to

12    have, you know, essentially what would be a full set of

13    discovery in this case, does seem both excessive (audio cuts

14    out) and result in, you know, over overburdening both

15    parties.

16            THE COURT:  Okay.

17            All right.  Well, here's what I'm going to do.

18    I'll limit the interrogatory, because that one, at least in

19    the Court's mind, is a bit easier call, because it

20    essentially isn't done on the fly in a deposition (audio cuts

21    out).  For that (audio cuts out) allow 25 interrogatories,

22    but they need to be new.  We're not going to be going back

23    and rehashing news.

24            I understand that there may be some argument about

25    what that means, but the reason I'm less concerned about that

1   than the deposition is (audio cuts out) if somebody propounds

2   an interrogatory that isn't new, the other party's going to

3   be aware of that pretty quickly, and we can address that with

4   the Court (audio cuts out) and the problems inherent in

5   dealing with that in depositions.

6           With regard to depositions, I am going to allow

7   (audio cuts out), but with regard to anybody who has already

8   been deposed, absent further leave of the court, it's going

9   to be a limitation of four hours.

10          Mr. Kildow, if you think you (audio cuts out) --

11  could apply to either party, but it sounds like it's really

12  Mr. Kildow's issue.  If you think you need more than four

13  hours, then that'll need to be addressed in advance with

14  either by consultation (audio cuts out) opposing counsel

15  agrees, so be it.  And if not, with the Court ahead of time,

16  in terms of why more time is needed for a specific witness.

17  But at this juncture, I don't think I have enough to kind of

18  start parsing through this witness or that witness needing or

19  not needing more time (audio cuts out) at this point.

20          In terms of requests for production, I'll leave

21  that at 30, with the same limitations that if there's (audio

22  cuts out) that can be addressed with the Court, and it's not

23  to duplicate prior efforts in terms of (audio cuts out)

24  order.  Clearly that's coming here.  What I'd ask the parties

25  to do is, sooner rather than later, get me a stipulated

1   protective order, and hopefully it'll (audio cuts out).  That

2   doesn't usually seem to be an issue, but let's get that

3   entered so that that doesn't hold up discovery later.

4             In terms of this plan and schedule, I'm going to

5   come back to that, to those specific dates after I look at

6   that stay motion.  But let me just kind of talk about some of

7   them in concept.

8             Realistically, Mr. Kildow, from (audio cuts out)

9   date, I said if I do enter a scheduling order, do you think

10  150 days is enough for a discovery cutoff, or do you need

11  more time than that?   So we're looking at five months.

12            MR. KILDOW:  Five months is fine.

13            THE COURT:  Okay.

14            And then I'm going to jump ahead a bit to (audio

15  cuts out) deadlines.  It looked to me, you know, if I'm just

16  looking at (audio cuts out) issue.

17            MR. KILDOW:  Before you go on, Your Honor.

18            THE COURT:  Sure.

19            MR. KILDOW:  May I interrupt?

20            THE COURT:  Sure.

21            MR. KILDOW:  The discovery (audio cuts out)

22  months.  Is that five months from today?  Five months from

23  the date (audio cuts out) the order of Judge Martinez's

24  issued?   When does that begin?

25            THE COURT:  Sure.  (Audio cuts out) orders are

1    from today.

2              MR. KILDOW:   Okay.

3              THE COURT:   That would be five months from when I,

4    if I enter a scheduling order, it'll be -- and I'm not saying

5    I'm not going to, (audio cuts out) what the motion to stay is

6    going to look like, I don't know if it's going to get

7    referred to me or reserved by Judge Martinez.   But once that

8    stay motion is (audio cuts out) and I know it's come pretty

9    quick, then if I issue a scheduling order my idea is to

10   trigger all of these dates from the entry of the scheduling

11   order.

12             So, of course, if the parties want to cooperate in

13   some informal discovery between now and then, I suppose they

14   can.   But absent that, we're looking at the race getting

15   going (audio cuts out) order issues.

16             MR. KILDOW:   Thank you.

17             THE COURT:   That'll be the same for the expert

18   disclosure dates and/or the dispositive motions date.   In

19   terms of the dispositive motion date here, it looks like the

20   parties -- well, defense position is 250 days.   So

21   essentially, 100 days (audio cuts out) discovery closes.

22             So, Mr. Kildow, from your perspective, is three

23   months after the close of discovery enough time, (audio cuts

24   out) too much time for dispositive motions?

25             MR. KILDOW:   Did you say three months?

1          THE COURT:  Yeah.

2          MR. KILDOW:  Ninety days?

3          THE COURT:  They've got it at 100 days, so I'm

4  just kind of roughly rounding to three months, or

5  approximately.

6          MR. KILDOW:  Sixty days, it seems to me, should be

7  enough.

8          THE COURT:  Yeah.

9          Ms. Roeder, I usually have 30 to 45 days, so I'm

10 just -- and I don't know what the dispositive motions in this

11 matter look like.  Frankly, the discovery period is shorter

12 than I would normally see, particularly for a case like this.

13 So I'm just kind of wondering what the 100 days (audio cuts

14 out) that comes from.

15         MS. ROEDER:  Your Honor, if I can maybe back up a

16 step?

17         THE COURT:  Sure.

18         MS. ROEDER:  We might be able to work forward that

19 way.

20         THE COURT:  Sure.

21         MS. ROEDER:  I think we just talked about 150 days

22 for fact discovery, and that's (audio cuts out), as well.  I

23 do think in a case like this if we're proceeding with

24 discovery we probably need realistically a little more time

25 for expert discovery.  You know, in an antitrust case

1   discovery can be very intensive, and so I would advocate for

2   a subsequent deadline after fact discovery for expert

3   disclosures, and then key the dispositive (audio cuts out)

4   off of the (audio cuts out) expert disclosures.

5           THE COURT:  Sure.  And I don't like to have

6   dispositive until (audio cuts out).  You know, sometimes I

7   see that we're the expert disclosures are after the

8   dispositive motions.  That always seems to be a mess to me.

9           MS. ROEDER:  Agreed.

10          THE COURT:  How much time do you think

11  realistically expert disclosures and reports would be after

12  the 150 days?  What's reasonable (unintelligible)?

13          MS. ROEDER:  I would suggest in this case a

14  staggered schedule where we have affirmative disclosures and

15  then rebuttal disclosures.  And so I would (audio cuts out)

16  maybe an additional 60 to 90 days after the close of fact

17  discovery, and then maybe a 45 or 60 day (audio cuts out)

18  after that for rebuttal.

19          THE COURT:  Mr. Kildow, from your perspective for

20  after the 150 day discovery, if that's the way (audio cuts

21  out), how much time do you think you need for affirmative

22  experts and then rebuttal experts?

23          MR. KILDOW:  Well, (audio cuts out) to me the

24  expert discovery -- disclosure and discovery period ought to

25  be accomplished within 60 (audio cuts out) and that within 60

1    days after the expert discovery is completed, dispositive

2    motions (audio cuts out).   That is what seems likely to me,

3    or appropriate to me.

4              I think we would argue that the (audio cuts out)

5    should be simultaneous and each side can then file a rebuttal

6    expert or rebuttal report after that.

7              THE COURT:   All right.   And correct me if I'm

8    wrong, Ms. Roeder, but what I'm hearing is that to the extent

9    that you're suggesting that either side is using affirmative

10   (audio cuts out) those would be simultaneous, whatever date I

11   pick.   And you're suggesting somewhere between 60 and 90.

12   And then everybody's rebuttal would also be (audio cuts out)

13   for another 60.

14             So, I guess following the close of discovery, Mr.

15   Kildow, how long do you think you need for expert disclosure

16   -- affirmative expert disclosures?

17             MR. KILDOW:   Sixty days.

18             THE COURT:   Okay.   And then how long after that do

19   you think you need for rebuttal disclosures?

20             MR. KILDOW:   Thirty days.

21             THE COURT:   Ms. Roeder?

22             MS. ROEDER:   I'd say for rebuttal I'd probably

23   push that a bit to 45.   Just given the nature of this type of

24   case, I think that may be more realistic.   But (audio cuts

25   out) would be my preference.

 1          THE COURT:  All right.

 2          Well, in terms of that, I find a 60-day

 3 affirmative expert disclosure entirely (audio cuts out) given

 4 the request, which I think seems reasonable, for five

 5 experts, I'm going to go (audio cuts out) day time period

 6 rather than the 30, because it just seems everybody's going

 7 to get buried if they're responding to five (audio cuts out)

 8 in a 45-day time period, that leaves very little time.  So

 9 that's 105 days.

10          So what I'll then order is that dispositive

11 motions are due 100 and -- well, Ms. Roeder, how quickly

12 after the 105 days do you think you can incorporate that and

13 have dispositive motions ready?  I'm coming to you first

14 because I think it seems more likely that you (audio cuts

15 out), but maybe not.

16          MS. ROEDER:  Your Honor, I think I would probably

17 say again, a 45 or 60-day window to incorporate all of the

18 experts, if there are five, reasonable.

19          THE COURT:  And, Mr. Kildow, from the end of

20 expert discovery, affirmative and rebuttal, (audio cuts out)

21 is reasonable for dispositive motions?

22          MR. KILDOW:  Sixty days.

23          THE COURT:  Okay.  So --

24          MS. ROEDER:  Your Honor?

25          THE COURT:  Yes?

```
 1              MS. ROEDER:  I apologize for interrupting.  I

 2    thought that (audio cuts out) is we'll also need to do

 3    depositions of these experts, so we probably need to build in

 4    a little time for that.  And so perhaps it would be, you

 5    know, a period where there's -- I don't know, it depends on

 6    how many there are.  If there are 10 experts, it's going to

 7    be a busy season.  But, you know, at close of expert

 8    discovery, 45 or 60 days after, and then dispositive motions

 9    (audio cuts out).

10              And my aim here, really, is to set a realistic

11    schedule, because otherwise I think we're going to be back in

12    front of you.

13              THE COURT:  For that, too.

14              So (audio cuts out) experts (audio cuts out), Mr.

15    Kildow, after the rebuttal reports come in, how long do you

16    think you need?  Because I'm assuming nobody's going to want

17    to go spend money on depositions until you've got your

18    rebuttal reports.

19              MS. ROEDER:  Right.

20              MR. KILDOW:  Well, then I would argue that rather

21    than have the disclosures due (audio cuts out) after the

22    close of discovery, that should be 30 days.  And then 45 days

23    (audio cuts out) the depositions of all of the experts, after

24    the rebuttal disclosures.

25              THE COURT:  Okay.
```

1          All right.  I'm going to stick with the (audio

2   cuts out) 45, plus another 45 for depositions.  And the

3   reason that I'm doing that is, you know, from the little bit

4   (audio cuts out) the Court hear about -- well, first, 150

5   days for discovery, particularly given the nature of this

6   case (audio cuts out) a relatively short discovery window.

7          And frankly, had so much not been done, of course

8   (audio cuts out) the Sherman Act issues, I would find that

9   that was unreasonable and would change it now.  Because I

10  would think what's going to happen is the parties would be

11  coming back to me with (audio cuts out) time invariably

12  later.  But the parties know their case and they know what

13  they've got so far, so I can live with 150 days, even though

14  it's (audio cuts out) end of three -- from the short end of

15  discovery for a slip and fall case.

16         But with that being said, whatever comes in,

17  particularly the (audio cuts out) trust information, the

18  experts are going to have to incorporate that into their

19  opinions.  If they don't get it until the end of discovery,

20  they're going to need to incorporate that.  So I see -- I

21  think shortening affirmative experts below the 60 days is

22  just asking for trouble later.   Forty-five days is a

23  reasonable (audio cuts out).  Forty-five days for depositions

24  after that is reasonable.  And then I'll have a 60-day

25  dispositive motion deadline after that.

1          And when it comes time to put together a

2   scheduling order, I don't like 60, 45, and (audio cuts out)

3   scheduling orders because I think it -- somebody has to sit

4   down and calculate it later.  So when I -- when I go to put

5   it together, I'll put a firm date to what each of those

6   (audio cuts out) and try not get a holiday or a weekend, to

7   the extent I can figure out what all of the holidays are

8   coming up in the next year or so.  But I'll calculate it off

9   of those dates within a (audio cuts out) one way or the other

10  so that everybody's got some firm dates that they can put in

11  their calendars.

12          All right.  Moving on to (audio cuts out).  What I

13  like to do is have a number that is inclusive of rebuttal

14  experts.

15          So, Mr. Kildow, with five, do you think that five

16  (audio cuts out), do you think that number needs to be bumped

17  up if I'm including rebuttal experts?

18          MR. KILDOW:  (Audio cuts out).  The plaintiffs are

19  going to have a heck of a (audio cuts out) being able to

20  afford five.  So I don't think we're going to have anything

21  -- any experts other than those who have been designated to

22  serve the affirmative experts on a particular subject.  So I

23  think that it would be highly doubtful that we would have

24  somebody beyond (audio cuts out) there's something completely

25  unforeseen that we don't see now.

1            THE COURT:  Okay.

2            Ms. Roeder, from your perspective, is five

3    including rebuttal, or do you think you need more on top of

4    that?

5            MS. ROEDER:  That's about right.

6            THE COURT:  Okay.  Then that'll be the number.

7    That may be the easiest thing we did all day.

8            All right.  (Audio cuts out) I am not sure.  I

9    mean, there's some other dates in here.  All of those I will

10   come back, you know, such as interrogatories and other (audio

11   cuts out) that I will come, and -- well, let me -- I'm trying

12   to figure out if the parties are really -- it looks to me,

13   for example with the interrogatory (audio cuts out) Plaintiff

14   asks for March 30th, Defense is asking for 90 days after the

15   stay, and it looks like that's relatively in pretty

16   significant accord.  It's about three (audio cuts out).

17           The same thing with requests for production.  I

18   mean, do the parties need me to do anything other than, say,

19   I'll hit 90 day (audio cuts out) after I issue a scheduling

20   order, because that sounds about what everybody is asking

21   for?

22           MR. KILDOW:  Well, if I may respond to that, Your

23   Honor?

24           THE COURT:  Sure.

25           MR. KILDOW:  If one of the questions that I have

1   is we have interrogatories that have been outstanding since

2   after our Rule 26 conference.  And so we feel that we should

3   be able to serve written discovery now (audio cuts out) will

4   get us going.  Otherwise, from the time that the suit was

5   filed in July, July 17, we're closing in on February, to wait

6   further we're going to be waiting for (audio cuts out) before

7   anything can be done.  So we feel that we should be able to

8   at least serve written discovery on --

9           THE COURT:  Okay.  And I'm at least --

10          MR. KILDOW:  And vice-a-versa.

11          THE COURT:  Sure.  And I'm at least temporarily

12  denying that at this point in time, because I'm not going to

13  enter a scheduling order today.  I'm (audio cuts out) done

14  soon.  I don't want to delay this anymore.  I understand that

15  time period going on and the desire to move forward, but I am

16  going (audio cuts out) until I see that stay motion.

17          Once that is done and I issue a scheduling order,

18  you know, we're looking at an outside time period.  Can you

19  live with the 90 days as an outside time period?  That you,

20  doesn't you can't --

21          MR. KILDOW:  Is that 90 days to serve

22  interrogatories?

23          THE COURT:  Right.  I mean, we're looking at the

24  deadline for (audio cuts out) interrogatories.

25          MR. KILDOW:  The deadline.

1            THE COURT:  The outset.  Yeah, you can --

2            MR. KILDOW:  So in other words, you're looking at

3    it as though the response has to be due within 90 days.

4            THE COURT:  Well, I think the (audio cuts out).

5    I'd have to pull the rule back out.  I think the response is

6    due based on when it gets --

7            MR. KILDOW:  Thirty days.

8            THE COURT:  -- when it goes.

9            MR. KILDOW:  Yes.

10           THE COURT:  So not on -- I mean, so that's your

11   outside window.  So 90 (audio cuts out) are going to get a

12   response at, what, day 120?

13           MR. KILDOW:  That's what I understood, Judge.

14   Sure.

15           THE COURT:  You know, I don't think there's -- I

16   mean, once I issue a scheduling order if you are ready on day

17   one to file your (audio cuts out).

18           MR. KILDOW:  Yes.

19           THE COURT:  You know, you can go for it.

20           MR. KILDOW:  Yes.

21           THE COURT:  I mean, so --

22           MR. KILDOW:  Yes.

23           THE COURT:  All right.  So can everybody live with

24   a 90-day outside for RFPs and interrogatories?

25           MR. KILDOW:  Yes, I can, Your Honor.

1            MS. ROEDER:  That's fine, Your Honor.

2            THE COURT:  Okay.

3            All right.  This clearly seems to be a matter that

4   is going to need future conference.  I'm going to (audio cuts

5   out) set that here as, once a scheduling order is issued.

6   And frankly, I may set a couple in this matter.  (Audio cuts

7   out) in non-evidentiary hearings I'm generally okay with

8   phone appearances for the parties.

9            Ms. Barnes has some specific language (audio cuts

10  out) she put orders for those so that we get everybody on the

11  line in the same time and in the same way so that we get the

12  best sound quality (audio cuts out) courtroom.  And of

13  course, anybody can always come out here that wants to and

14  visit us, but I know it's not always terribly convenient.  So

15  for those things where we can do it in that fashion, we will.

16            Also, for certain hearings I'm amenable to holding

17  them in Denver, and I generally have a day, at least a one

18  day a month in Denver, although they get filled really

19  quickly because it's only a day a month.

20            So in terms of my discovery dispute procedures,

21  those are on the website and I'd encourage (audio cuts out)

22  those so you know what you're looking at.

23            In terms of some kind of settlement, I'm certainly

24  willing to be involved at any point in a neutral evaluation.

25  I don't necessarily think that it needs to be early.  I think

1   it's more -- well, and here early might make sense, but often

2   (audio cuts out) know enough about their case yet for me to

3   call it an early neutral evaluation.  Here, I think that

4   probably isn't true.  (Audio cuts out) in fact, the opposite

5   is true (audio cuts out) for the whole lot, already.

6          In terms of consent to my jurisdiction.  If the

7   parties unanimously want to consent at some point reasonable,

8   please let us know.  There are some forms that the 10th

9   Circuit requires.  Of course if it's not unanimous, please

10  don't engage us in that discussion.  And if there is consent,

11  at that point I generally personally get involved in a

12  neutral evaluation or a settlement conference, but we can

13  always get somebody else from the magistrate judge bench to

14  do that.

15         All right.  Mr. Kildow, let me come back to you.

16  What else do you think I need to address today, sir?

17         MR. KILDOW:  I think that covers it, Your Honor.

18         THE COURT:  Okay.

19         Ms. Roeder, ma'am, what about from your

20  perspective?

21         MS. ROEDER:  All set.  Thank you, Your Honor.

22         THE COURT:  Thank you all for coming out.  I hope

23  the driving, or whatever it was, didn't turn out too badly

24  today.  So maybe that better than it would have --

25         MS. ROEDER:  We have a beautiful day, at least.

1      THE COURT:  Yeah.  Better than yesterday, at

2  least.

3      (Audio cuts out) Thank you all.  And I will be

4  looking for that motion here shortly, and then we'll address

5  the scheduling order immediately after that gets addressed,

6  too, so that we can get everybody moving (audio cuts out).

7      Have a good afternoon, everybody.

8      MS. ROEDER:  Thank you, Your Honor.  You, too.

9      MR. KILDOW:  Thank you, Your Honor.

10      (Time noted:  2:01 p.m.)

11      * * * * *

12      CERTIFICATE

13      I, RANDEL RAISON, certify that the foregoing is a

14  correct transcript from the official electronic sound

15  recording of the proceedings in the above-entitled matter, to

16  the best of my ability.

17

18

19  _____      April 25, 2022

20  Randel Raison

21

22

23

24

25