1

1        UNITED STATES DISTRICT COURT
              DISTRICT OF COLORADO
2

3  SPORTS REHAB CONSULTING,    .  Case No.  19-cv-02075-WJM-GPG
   LLC, ET AL.,                .
4                              .
           Plaintiffs,         .
5                              .
   vs.                         .
6                              .
   LINDSAY WINNINGER, ET AL.,  .  Alfred A. Arraj Courthouse
7                              .  901 19th Street
                               .  Denver, CO  80294
8           Defendants.        .
                               .  October 9, 2020
9  . . . . . . . . . . . . . . .  9:31 a.m.

10

11     **TRANSCRIPT OF PROCEEDINGS HELD BEFORE THE HONORABLE**
         **GORDON P. GALLAGHER, UNITED STATES MAGISTRATE JUDGE**

12

13  APPEARANCES:

14  For the Plaintiff:          Alan L. Kildow, Attorney at Law
                                By:  Alan L. Kildow*
15                              790 Potato Patch Drive
                                Vail, CO  81657
16                              (970) 390-6675

17  For the Defendants:         Davis Graham & Stubbs
                                  LLP-Denver
18                              By:  Shannon Wells Stevenson*
                                1550 17th Street
19                              Suite 500
                                Denver, CO  80202
20                              (303) 892-9400

21  Court Recorder:             Clerk's Office
                                U.S. District Court
22                              901 19th Street
                                Denver, CO  80294

23

24

25

1    Appearances Continued:

2    Transcription Service:          AB Litigation Services
                                     216 16th Street, Suite 600
3                                    Denver, CO  80202
                                     (303) 296-0017
4
     *Appearing by telephone.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.

1          (Time noted:  9:31 a.m.)

2          THE COURT:  All right.  Good morning, everybody.

3  This is Gordon Gallagher.  We are here in 19-cv-2075, *Sports*

4  *Rehab versus Vail Clinic*.  The matter comes on for a

5  continuation today of the scheduling conference.

6          Can I go ahead, please, and take entries of

7  appearance, starting with the plaintiff?

8          MR. KILDOW:  Thank you, Your Honor.  Good morning.

9  Alan Kildow, K-I-L-D-O-W, on behalf of the plaintiffs.

10          THE COURT:  Good morning, Mr. Kildow.

11          MR. KILDOW:  Good morning.

12          THE COURT:  And for the defense, please?

13          MS. STEVENSON:  Your Honor, it's Shannon Stevenson

14  for the defendant, Vail Health.

15          THE COURT:  All right.  Good morning to you, as

16  well.

17          And we are back for a continuation of the

18  scheduling conference.  I have received and reviewed the

19  amendments to the proposed scheduling order filed at Document

20  69.  And first, I appreciate the areas of agreement and

21  tailoring of it that the parties have entered into.  There's

22  still some things to resolve and I'll go through those and we

23  can get orders on all of those and get this out today.

24          Let me check.  I forgot.  Ms. Grimmer, are you on

25  the line, as well?

4

 1           THE COURT CLERK:  I am, Judge.

 2           THE COURT:  Okay.  And so the parties were aware,

 3   Ms. Grimmer is the court's law clerk, but sitting in Denver.

 4   So I want to make sure she's able to hear, as well.

 5           Okay.  Let me pull up Document 69 here and we'll

 6   start on areas that need some resolution.

 7       (Brief pause)

 8           THE COURT:  All right.  I'm going to start with

 9   Page 20 into 21.  I don't know that this bears any further

10   discussion at this point in time, but certainly don't want to

11   preclude the parties from making a record if they feel they

12   need to on the issue of preservation.

13           Plaintiff's position is that there is a, quote,

14   "significant concern" with regard to preservation.  That's on

15   Page 20, at the end of the trailing paragraph from the prior

16   page.

17           On Page 21, the defense position is clearly that

18   they believe they've complied with preservation.

19           At this point, nobody's requesting any court

20   intervention with regard to that.

21           So, Mr. Kildow, other than preserving the argument

22   that you have there, do you think we need to discuss that any

23   further?

24           MR. KILDOW:  We do, Your Honor.  But as I sit here

25   today, I'm not sure how we go about it yet.  I'm sure that we

1  will have a proposal as to how we go about it and whether the

2  defendants will agree to it or not, but we learned yesterday

3  in a deposition in the state court action -- the state court

4  action discovery has now been closed, but there is an issue

5  about how there is a recovery of certain insurance claim

6  data.  And since we just took that deposition yesterday

7  afternoon I don't know quite how we're going to go about it.

8  I think we have to work with the defendants to try to see if

9  they can generate the information that was once there, and I

10 think still is there, but it's how we go about it.

11         And so I do want to preserve and reserve this

12 issue, but I don't know quite how we're going to go about

13 attacking this yet.  I think we have to have further

14 discussions with the defendants on that and we'll get back to

15 you on that.

16         THE COURT:  Okay.  Well, it certainly is

17 preserved.  I understand that the parties, or at least one

18 party, may believe there's an issue.

19         Ms. Stevenson, do you think that this bears

20 further discussion today, or is it something we need to table

21 for potentially a later date?

22         MS. STEVENSON:  Your Honor, I certainly don't

23 think there's anything that's ripe for discussion today.  And

24 I think I would just flag the concept that to the extent

25 there are disputes like this that are being resolved in the

1 | state court, that those resolutions should govern and that we

2 | shouldn't be re-litigating those things in this court.  But

3 | again, I think we'll have to see what the actual dispute, if

4 | any, is before we have that discussion.

5 | THE COURT:  Okay.  Well, I will note that it is

6 | noted.  And then with that, I'll move on.

7 | In terms of depositions and interrogatories, I'll

8 | start on Page 8.  Plaintiff's position is that 15 depositions

9 | and 25 interrogatories is appropriate.  Defendant's position

10 | is that 5 depositions and 10 interrogatories is appropriate

11 | under the circumstances.  But that after the prior hearing, I

12 | determined that 10 discovery depositions, 25 interrogatories,

13 | and 30 additional requests for productions was appropriate.

14 | Anything further by way of record that you think

15 | we need on that, Mr. Kildow, before I make a ruling?

16 | MR. KILDOW:  Yes.  The reason we think that 15 is

17 | the appropriate number is that, first, I want to state for

18 | the record that, as you can see from our list of deponents,

19 | we've only identified two deponents who have previously been

20 | deposed in the state court action.  So we're not talking

21 | about a lot of duplication.

22 | The second thing, and the thing that causes me the

23 | greatest concern, is the number of non-party depositions.

24 | This is an antitrust case, it's a Section 2 *Sherman* case, and

25 | the level of pricing and profitability will be one of the

1   most significant issues in the case, and that will involve

2   gathering information from insurers all over the country, and

3   other witnesses such as Medicare witnesses, insurer

4   witnesses, are just going to -- it's going to make this case

5   like an antitrust case, but it's not going to be all

6   depositions of party witnesses.  That's why we think that 15

7   for depositions is appropriate.

8              THE COURT:  All right.

9              Ms. Stevenson, please.

10             MS. STEVENSON:  A few things, Your Honor.  You

11  know, first is, we had that scheduling conference back in

12  person where we went through all of these issues before and,

13  you know, you had arrived I think as a compromised position,

14  at the 10 depositions.  I know this is an antitrust case,

15  but, again, the amount of discovery and depositions that has

16  already been done on so many of the factual allegations that

17  are, you know, repeated verbatim in this case is just

18  incredibly expensive.

19             You know, I guess one more point I'd like to make

20  is, I know Mr. Kildow has raised the notion that he needs to

21  do a lot of discovery from insurance carriers, but the

22  plaintiff's business in this case was a business that was

23  based on not taking insurance payments.  And so I think that

24  is an issue that may arise during discovery with respect to

25  the relevance of some of this discovery, because they weren't

1   even in the same business as Vail Health.  They, from the

2   outset, never intended to take insurance as part of their

3   business model.

4            So I think 10 is more than enough, especially just

5   given how much discovery has already been done in this case.

6   I think, you know, Mr. Kildow could always, if there's a real

7   need after the 10 to take five more, we can always have that

8   discussion later.  But I think 10 is a reasonable place to

9   start.

10            THE COURT:  All right.

11            In terms of this, I do find my original order on

12   these amounts to have been appropriate.  The limitation will

13   be 10 depositions, 25 interrogatories, 30 requests for

14   production.  Not just because it splits the baby as it were,

15   but I think that's appropriate based on what I've heard about

16   the nature of this case which will have some, but not

17   complete, overlap.

18            And of course, later, after the parties know more

19   about their case, if there's a necessity of returning and

20   addressing additional depositions that, of course, can be

21   addressed with the good cause standard that would be

22   appropriate.

23            In terms of the length of depositions.  We've

24   addressed this issue before, as well, and I find that my

25   prior ruling on that of four hours for those individuals who

9

1   have previously been deposed is appropriate, because there is

2   going to be some, but not complete, overlap.  With seven

3   hours for those who are not, it sounds like in large part it

4   may not be an issue.  Mr. Kildow's representation right now

5   is that only two of those individuals are overlapping, so

6   most of the deponents will be subjected to the full seven-

7   hour day.

8           In terms of Page 23, Section C.  That has been

9   addressed already with the 30 requests for productions.

10          Let's talk about joinder of parties.  The amount

11  of time, Mr. Kildow, that you're requesting is significantly

12  longer than normal.  It looks to me, just a rough

13  calculation, about six, seven months that you think you might

14  need.  Why is that amount of time appropriate, sir?

15          MR. KILDOW:  Your Honor, we have a one-month trial

16  scheduled in the state court beginning February 1.  And we

17  are now at October, and quite frankly, we're going to get,

18  hopefully, the defendants are going to serve their -- or

19  respond, produce documents with RFPs that we're served on

20  October 7th, 2019.  We'll have those --

21          What is it, Shannon?  Monday, or something like

22  that?

23          MS. STEVENSON:  We'll have our response to you

24  today.

25          MR. KILDOW:  Yeah, today.  Right.

1           And I hope that we'll have the time that we're

2   going to be receiving that written -- or that documentary

3   material very soon.

4           But to answer your question, Judge, I don't think

5   we're going to get as much done before the end of March or

6   the end of February as we would like to, because we're going

7   to be significantly occupied in that trial.  Now, it may be

8   that trial won't happen because of the virus, and I haven't

9   checked with the Eagle County courts to see how they're

10  coming and putting on trials --

11          THE COURT:  Sure.  Well, let me just ask --

12          MR. KILDOW:  -- hopefully that --

13          THE COURT:  Mr. Kildow, are you expecting that --

14  first, is that at least expected to be a jury trial?

15          MR. KILDOW:  Oh, yeah.

16          THE COURT:  Okay.  I mean, sitting here today, it

17  would seem to me almost impossible to imagine that you would

18  get a civil jury trial of that length.  Of course, I'm not

19  speaking for the state judge, but just after observation of

20  this mess, not being pejorative mess in terms of what the

21  pandemic has done to our legal system, it just seems really

22  impossible to think that you're going to get a lengthy civil

23  jury trial early in 2021, whether it's two weeks or a month.

24          So not counting that trial, how long do you need

25  for purposes of joining parties and amending pleadings?

1   Because I don't think you're going to get that trial, and

2   knowing that now, that doesn't seem to be a good basis for

3   continuing those deadlines later.  So let's put in a

4   realistic deadline now, assuming that you won't have that

5   trial.

6          MR. KILDOW:  Well, they do have that trial

7   scheduled for that time.  The court system has on its docket

8   that the one courtroom in Eagle County is set aside for one

9   month before Judge Granger.  So, you know, I'm just --

10   whatever they tell me to do, I'll do.  But they do have that

11   set aside.

12          THE COURT:  Yeah.  And I'm not disputing that they

13   don't have it set aside.  I just know how many trials they

14   have backed up in the criminal system with speedy trial

15   deadlines and it would seem that, you know -- and maybe you

16   get lucky and you go.  But it would seem that when push comes

17   to shove, civil trials are going to have to get bumped

18   because they've got speedy trial problems, like everybody

19   does, because we haven't tried substantial numbers of

20   criminal trials for six or eight months.

21          So it would seem at least likely that you're

22   getting bumped, and maybe not.  But I'd like to pick a date

23   that's not dependent upon that, given that that might not

24   happen.

25          MR. KILDOW:  Well, the other important thing on

1   that day and what I had in mind in pushing that out, is that

2   we are going to be serving numerous subpoenas on insurers,

3   and I think it's going to take, you know, several months

4   before we get, you know, much in the way of a response from

5   those subpoenas.  And so -- and these will be a fair number

6   of documents.  So that's why I've pushed it out to that date.

7          I think we could probably live with, let's say,

8   February 1, would be the earliest, I think.

9          THE COURT:  All right.

10          Ms. Stevenson, as to the proposal of essentially

11   February 1, which if I'm calculating (unintelligible) is

12   about a month longer than you were thinking, or not even

13   that, was needed.  You were saying 90 days, which gets us to

14   somewhere in mid-January, anyway.

15          Do you have a problem with February 1?

16          MS. STEVENSON:  That's fine, Your Honor.

17          THE COURT:  All right.

18          February 1 is the date for joinder of parties and

19   amendments of pleading.

20          All right.  Fact disclosure dates, or fact

21   discovery deadline date.  Plaintiff proposes October of 2021.

22   Defense is proposing 150 days.  Given the nature of what I

23   have heard so far, I realistically think that this is a case

24   that needs 9 or 10 months for discovery.

25          Let me take a look at where that would land us.

1           MS. STEVENSON:  Your Honor, can I just make one

2   clarification on that issue?

3           THE COURT:  Absolutely.

4           MS. STEVENSON:  So I do think that this deadline

5   is just for fact discovery, not expert discovery.  Because I

6   agree with you, I think 9 to 10 months total, including

7   experts, would be reasonable, but, sort of given, again, not

8   to sound like a broken record, but how much discovery has

9   already been done, 9 to 10 months just for the fact piece of

10  the -- of the discovery seems long to me.

11          THE COURT:  Okay.

12          MS. STEVENSON:  But I wasn't sure whether you were

13  talking about fact discovery in (unintelligible).

14          THE COURT:  Yeah.

15          MR. KILDOW:  And I want to -- if I may interject,

16  Your Honor?

17          THE COURT:  Sure.

18          MR. KILDOW:  I am not going to be -- I'm not

19  interested in reinventing the wheel or revisiting discovery

20  that has already been concluded.  I'm not being paid by the

21  hour in this case and I have no real interest in working to

22  do things over and over again.  And so the discovery that I'm

23  talking about is all new discovery on new issues with mostly

24  third parties.

25          So I could agree to cut, you know, a month or two

1  off that date of October and then push it back to, let's say,

2  you know, the 1st of September, or something like that, of

3  2021.

4         THE COURT:  Sure.  And from the close of

5  discovery, are you realistically thinking that -- and this is

6  what it appeared to me from the proposal, was that you

7  thought you would need about two months for disclosing your

8  experts once you're done with discovery?

9         MR. KILDOW:  Yeah.  I mean, we'll have our --

10  we'll have our experts on board pretty quickly.

11         THE COURT:  All right.

12         MR. KILDOW:  But, yeah.  I mean, because they will

13  -- we still need to analyze the data and come to those

14  conclusions.  And there are -- there are a number of areas,

15  as I'm sure you know, in an antitrust case, geographic

16  markets, product markets --

17         THE COURT:  Sure.

18         MR. KILDOW:  -- the level of profitability, all

19  that kind of thing.  So whether it be (unintelligible)

20  stifled competition, et cetera.

21         So the expert discovery component of an antitrust

22  case is very important, so we need to have plenty of time for

23  that.

24         THE COURT:  All right.  Well, given what I am

25  seeing here, it appears to me that a fact discovery close of

1  August the 1st is appropriate, and I'll come back to my

2  reasoning here in a moment, which would trigger realistically

3  an expert disclosure date for Plaintiff's experts of

4  September the 27th.  All of these are 2021 dates.  And then a

5  defense disclosure, or rebuttal expert disclosure date, about

6  six weeks later.  So I'd be looking at November the 15th of

7  2021.

8          And, Ms. Gilda -- I'm sorry, Ms. Stevenson, this

9  probably affects you more than Mr. Kildow, but not

10 necessarily.  If you have rebuttal experts done on November

11 the 15th of 2021, how far out from that do you realistically

12 think you need for filing of dispositive motions?  In other

13 words --

14         MS. STEVENSON:  Well, Your Honor, I think the one

15 thing we have to build in time there for is expert

16 depositions.

17         THE COURT:  Uh-huh.

18         MS. STEVENSON:  Which I would think we could

19 reasonably complete by the end of the year 2021.  And then I

20 think probably -- I think that if we're on that schedule then

21 the dispositive motions deadline proposed by the plaintiff of

22 February 1 is, you know, is even tight, but doable.

23         THE COURT:  Okay.

24         Mr. Kildow, any issue with that?  Dispositive

25 motions of February -- I think it's, you know, I think some

1  of the things were figured a little differently, but it gets

2  you to about the same deadline for a dispositive motion

3  deadline.

4           MR. KILDOW:  No, I think that works, actually.

5           THE COURT:  Okay.

6           All right.  I think the only thing that that

7  leaves that I'm seeing is with regard to numbers of experts.

8  I generally like to have a number that is inclusive of

9  rebuttal experts.  Looking at the numbers, it appeared to me

10 that six might be the appropriate number, adding up what

11 everybody wants for affirmative experts and then assuming

12 that there's going to be a little bit, not complete, overlap.

13          Mr. Kildow, do you think you can live with six

14 retained experts, including rebuttal experts?

15          MR. KILDOW:  Yeah.  We can't even afford six, so

16 six is fine.

17          THE COURT:  All right.

18          Ms. Stevenson, how about from your perspective?

19          MS. STEVENSON:  Yeah.  Six seems abundant.

20          THE COURT:  Okay.

21          Other than that, and I believe I have stated these

22 things before, but frankly, I don't recall, so I'll go back

23 and state them again, so I apologize for any repetition.

24          If there are discovery disputes, my discovery

25 dispute procedures are on the website.  If the parties want

 1   me to engage in a neutral evaluation at some point in time

 2   and that desire is unanimous, or some other settlement

 3   vehicle, let us know and we'll get something like that

 4   scheduled as appropriate.

 5              Other than that, Mr. Kildow, what else do you

 6   think I need to address today?

 7              MR. KILDOW:  I've been with a large law firm for

 8   most of my life and had plenty of tools to work with, but I'm

 9   a semi-retired ski bum living in Vail, Colorado now.  I don't

10   have all those gizmos, and so I anticipate that we'll have

11   plenty of discovery disputes, and I don't have -- the way I

12   read your discovery dispute procedure that when a -- the

13   parties are not in agreement and have a dispute they should

14   together get on the phone with your chambers and schedule a

15   time to talk.  I don't have the ability to do multiple calls.

16   I have -- I have a conference call number, but -- and I guess

17   that's the way we'd have to do it, maybe.

18              THE COURT:  Sure.  And I expect that --

19              MR. KILDOW:  But am I correct in the way I read

20   your procedure?

21              THE COURT:  Yeah.  I mean, essentially, so first,

22   as is no surprise to anybody who's done any research about

23   me, I also maintain a very small private practice, because my

24   position here is part-time, and I don't have those resources

25   either.  There are a significant number of really easy, free

1    resources out there, and I'm not advocating for any company

2    or not, but there's a lot of them, including AT&T and Free

3    Conference Call dot com, where it's pretty easy to set up a

4    free conference call without having to have the in-house

5    resources that a big firm might have.  And it's pretty

6    technically easy, as well.

7             In terms of my procedures the idea behind it is

8    that, you know -- and I'm of course not saying that anybody

9    here would do this, but what I'm trying to prevent is one

10   party in a discovery dispute running to the court and saying

11   that there's a dispute but the other party won't get

12   involved.  So if there is a discovery dispute the parties are

13   to contact Ms. Barnes.  It doesn't have to be by phone, it

14   can be by a joint email chain.  In fact, she probably would

15   prefer that just because then she can email back some dates

16   that are available.  Ms. Barnes will respond to you with some

17   dates.

18            There's a requirement that the parties submit a

19   discovery dispute chart to me.  My reasoning behind that in

20   my experience of almost a decade of this is that in the

21   course of preparing the chart it's amazing how often the

22   parties resolved the dispute or some part of the dispute.  So

23   you submit a chart to me and we have a discovery hearing and

24   we try to get it fixed.  But, you know, it doesn't require so

25   much in the way of technological resources.

1           And then for almost all of those, particularly

2   during COVID, but even before that, we did all of those by

3   audio or video anyway so that nobody had to put in money to

4   get here.  I would rather not expend people's resources

5   having to come see me, unless you really want to come

6   mountain bike here or something.

7           MR. KILDOW:  That's helpful.  If we can do it by

8   -- if we can just send you a joint email, that's good.  I do

9   have the teleconferencing capabilities, so I -- we can handle

10  it that way.

11          THE COURT:  Sure.  And --

12          MR. KILDOW:  Okay.  That's very helpful.

13          THE COURT:  Okay.  And those emails don't come to

14  me, though, just so we're clear.  They go to Ms. Barnes so

15  that I'm not in any way --

16          MR. KILDOW:  Right.

17          THE COURT:  -- involved in it until we get on the

18  record all together and everybody is there and knows what's

19  going on.

20          All right.  Mr. Kildow, anything else from you

21  before I turn then to Ms. Stevenson?

22          MR. KILDOW:  Yes.  We have -- we have, I think,

23  come to resolution on a protective order which we'll be

24  submitting to you.  If we haven't already done that, we'll be

25  submitting that to you forthwith.

20

 1                    THE COURT:  Let me look.  I don't recall seeing it

 2    come in.

 3                    MR. KILDOW:  I don't think it -- I don't think it

 4    has.

 5                    THE COURT:  Yeah.  It hasn't.  Okay.  I will look

 6    for that.  And I suspect strongly that that will be referred

 7    to me by Judge Martinez as soon as it comes.

 8                    All right.  Ms. Stevenson, anything else that you

 9    think I need to address?

10                    MS. STEVENSON:  Nothing for Vail Health, Your

11    Honor.

12                    THE COURT:  All right.  Well, have a great

13    weekend, everybody.  I will get a scheduling order out to you

14    here before the end of the day and we'll get moving forward

15    on this.  Take care, everybody.

16                    MR. KILDOW:  Thank you.

17                    MS. STEVENSON:  Thank you.

18                         (Time noted:  9:59 a.m.)

19                              * * * * *

20

21

22

23

24

25

1                           CERTIFICATE

2        I, RANDEL RAISON, certify that the foregoing is a

3   correct transcript from the official electronic sound

4   recording of the proceedings in the above-entitled matter, to

5   the best of my ability.

6

7

8   _____        May 9, 2022

9   Randel Raison

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25