## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

Civil Case No. 19-CV-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company, and
LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC., a Colorado nonprofit corporation d/b/a Vail Health,

      Defendant.

---

## REPORT TO THE COURT, DISCOVERY ORDERS, AND RECOMMENDATIONS TO THE COURT REGARDING PLAINTIFFS' MOTION COMPEL #1

---

This matter is before the Special Master on Plaintiffs' Sports Rehab Consulting LLC ("SRC") and Winninger Rule 37 Motion to Compel #1 Relating to Relevant Geographic Market (D. 127, 130), Defendant Vail Health's ("VH") response (D. 154) and Plaintiffs' reply (D. 163). The Special Master also permitted Plaintiffs' Supplemental Memorandum and Defendant's Response thereto. The material Plaintiffs seek is as follows: (1) patient in-flow and out-flow data showing the geographic area from which VH's physical therapy patients come; (2) the patients' physical therapy and orthopedic procedure codes; and (3) their payor claim and reimbursement records.

While the temptation is often for a court or special master to attempt to wax eloquently, there is no need when it has already been accomplished, as in *Kelly v. Advanta Corp.*, No. CV 02-250 LH/LFG, 2003 U.S. Dist. LEXIS 30499 (D.N.M. Mar. 21, 2003):

In balancing one party's right to discovery with the opposing party's right to be free from intrusive and burdensome discovery, the court looks at the requester's need for the information from this particular source; the relevance of the requested information to the litigation; the burden of producing the sought-after material; and the harm or difficulty which may be caused to the party seeking to limit discovery or to protect information. A court may deny the requests altogether, limit the conditions, time, place or topics of discovery, or limit the manner in which discoverable information will be disclosed. *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1238 (10th Cir.), *cert. denied*, 531 U.S. 926 (2000); *Burka v. U.S. Dept. of Health and Human Services*, 87 F.3d 508, 517 (D. C. Cir. 1996). It is with these general principles in mind that the Court considers the pending motions.

The Special Master has reviewed the pending motions, responses, replies, all attachments, the case file, and the applicable case cited and being sufficiently advised in the premises, Finds and Orders as follows: [1]

1.       Plaintiffs SRC and Winninger have alleged that the relevant geographical market in this antitrust case is the Vail Valley and defined that as running from East Vail to Gypsum, Colorado. Plaintiffs' Expert, Dr. Leslie Schafer, stated in her Report "… it is certainly no larger than the Vail Valley."

2.       Defendant VH fairly argues that it is not required to identify what it believes to be the relevant geographic market and has no burden to prove any alleged geographic market. *Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr.*, No. 05-2084 JAP-LFG, 2008 U.S. Dist. LEXIS 41164, at *16 (D. Colo. May 22, 2008) ("The burden of proof is upon Plaintiffs to establish the relevant geographic market.").

3.       Defendant has correctly noted that it is generally established that discovery outside of a plaintiff's alleged geographic market is irrelevant. *See, e.g., Radio Music License Comm., Inc. v. Global Music Rights, LLC*, No. CV 19-3957, 2020 U.S. Dist. LEXIS 243375, at *16 (C.D. Cal.

---

[1] The parties are notified that within 21 days of service of a copy of the Order, Report, or Recommendation, they may file written objections pursuant to Federal Rule of Civil Procedure 53(f)(2). (*See* D. 123, p. 2). All such objections will be resolved by Magistrate Judge Gallagher. If no objections are filed within the twenty-one-day period, the Court may adopt the Order, Report, or Recommendation in whole.

Jan. 2, 2020) ("In an antitrust case, courts generally limit discovery to the ambit of the applicable market."); *Vident v. Dentsply Int'l, Inc.*, No. SA CV 06-1141, 2008 U.S. Dist. LEXIS 110399, at *6-8 (C.D. Cal. Aug. 29, 2008) (finding no abuse of discretion in magistrate judge's ruling that "the definition of the relevant market in [this antitrust] case determines the scope of allowable discovery"); *Bal Seal Eng'g, Inc. v. Nelson Prod., Inc.*, No. 8:13-cv-1880, 2017 U.S. Dist. LEXIS 231324, at *3-4 (C.D. Cal. Oct. 19, 2017) (finding that "the definition of the 'relevant market' defines the scope of relevant discovery"); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164, 2007 U.S. Dist. LEXIS 66159, at *37 (D. Kan. Sept. 6, 2007) (discovery outside the relevant geographic market "not relevant on its face").

4.      Defendant's expert Monica Noether, Ph.D., observed that her analysis of "the residence of Howard Head's Vail Clinic patients confirms . . . travel patterns . . . outside Colorado accounting for 37% of patients visits and patients from outside Eagle County accounting for 54% of patient visits; and just focusing on patients living in Colorado, the service area from which Howard Head (HH) draws patients who live in Colorado extends east through Denver and west past Rifle (110 miles from Vail)."  Dr. Noether's report appears to reflect data and information from Summit and Garfield counties, which are outside the Vail Valley (Eagle County). Therefore, Defendant shall produce any data, documents, or information provided to or reviewed by Dr. Noether.

5.      As a result of her opinions, Dr. Noether intimates that data and documents for Summit and Garfield counties as well as Basalt are relevant here for discovery purposes of her analysis. The Special Master so finds it relevant, in part for purposes of determining the relevant geographic area and in part to disclose the bases for her opinions challenging Dr. Schafer's Report.

6.      Dr. Noether further opines that patient flow data undermine Dr. Schafer, that the town of Vail and no broader than the Vail Valley is the relevant geographic market for Sherman §2 analysis.

7.      When Plaintiffs propounded Interrogatory No. 9 and document Request No. 5, seeking Vail Health's definition of the geographic market, Vail Health rightfully objected based upon the general rule, but went on to claim  Plaintiffs' market was too narrow because of "patients' willingness to travel to providers outside of the Vail Valley for physical therapy services, such as those in Glenwood Springs and the Frisco/Dillon/Silverthorne areas…."  This raises the question: based on what?

8.      In responding to Motion to Compel # 1, Vail Health objected: "Documents related to Howard Head's physical therapy services outside of the Vail Valley have no bearing on Plaintiffs' claims . . . ."  If the discovery were limited only to the Vail Valley area which Plaintiffs claim as being the relevant geographic market, then it would not be appropriate to allow Defendant and its expert to present evidence or argument opining about the relevant geographic being beyond the Vail Valley such as "we think it is bigger than that."  That is now essentially what has happened.

9.      Dr. Noether has criticized Dr. Schafer's definition of the geographic market as too narrow because "it excludes sizable towns that are proximate to the area, including Glenwood Springs to the West and Breckenridge, Frisco, Dillon, and Silverthorne to the East."

10.      Plaintiffs claim they are now entitled to data and documents that would show how many Howard Head patients make such a trip to its Summit County and Basalt locations. Dr. Noether also fails to provide any patient flow analysis regarding Vail Valley residents traveling from the Valley to receive physical therapy in Summit or Garfield counties, Basalt, or any of the hospitals to which she refers in her report.

11.     Dr. Schafer identifies the relevant geographic market as "no larger than the Vail Valley." Dr. Noether contends that Dr. Schafer fails to define a "valid" geographic market and opines that Dr. Schafer's definition of the geographic market as the Vail Valley is "overly narrow."

12.     Vail Health itself has not proposed a competing definition of the relevant geographic market. In arguing against Plaintiffs' requested discovery, Defendant claims Dr. Noether's report serves only to contradict or rebut positions taken by Dr. Schafer. The Special Master finds her Report not so limited as it also expresses her opinions, which are subject to challenge by SRC.

13.     Vail Health claims that Dr. Noether's report is based on (a) documents produced in the litigation; (b) publicly available information; and (c) data on which Plaintiffs' economist relied. However, it fails to provide anything specifically that backs this up.

14.     In an attempt to urge denial of Plaintiffs' discovery request, Defendant argues that Plaintiffs have not even sought to amend their complaint to assert that Vail Health has market power with respect to physical therapy services in a broader geographic market. They argue that if Plaintiffs expanded their alleged geographic market to include Summit and Garfield Counties, they could not possibly prove that Vail Health has market power. That argument is misguided and not relevant to the discovery issue at hand.

15.     Vail Health further argues that because Plaintiffs have not pursued a claim that the geographic market is broader than the Vail Valley, discovery from outside the Vail Valley serves no purpose but to impose discovery burdens on Vail Health.  The Special Master finds the purpose is now to allow Plaintiffs to know the bases of Defendant's expert's claim that Plaintiffs' Schafer's definition of the relevant geographic market is "overly narrow."

16.     Dr. Noether also contends that Dr. Schafer fails to define a "valid" geographic market. She indicates problems with Dr. Schafer's definition of the geographic market, including that it is based on nonscientific evidence such as . . . Vail Health's description of its "service area" . . . and that Howard Head likely faces competition from providers in a much broader geographic area. Defendant's Expert is not only identifying flaws, she is extensively criticizing Plaintiffs' expert opinion. It is unclear what data, documents, or information Noether's opinion is based upon. Therefore, anything she referenced, reviewed, or was provided to her in forming her opinion is discoverable.

17.     The Special Master finds that  Dr. Noether's report and opinions cover a multitude of issues- no less than-including relevant geographic market, patient data, residence location of patients, patient flow analysis, competition from other providers, etc.

18.     Whether Dr. Noether has offered opinions that are "inconsistent" with Vail Health's prior positions or not, is not a proper basis for discovery. That itself justifies why Defendant should be required to provide discovery on the underlying basis/data and documents. Such information is discoverable even if not admissible. Fed. R. Evid. 703 and 705; Rule 26(a)(2)(B)(ii).

19.     Vail Health claims it has provided all that is required under Rule 26(a)(2)(B) and Rule 26(a)(1). Rule 26(a)(2)(B)(ii) requires that an expert report contain "the data or other information considered by the witness in forming them" and  Rule 26(a)(2)(B)(iii) "any exhibits that will be used to summarize or support them." Dr. Noether's conclusion that "the service area from which Howard Head draws 90 percent of its Colorado patients extends east through Denver; [and] west past Rifle (101 minutes from Vail)"  belies/demonstrates that Vail Health (through its expert) is relying on information it has claimed to be irrelevant in its briefing. If Dr. Noether's

conclusions are based on any data, documents, or information Vail Health already produced to Plaintiffs, they must specifically be identified, as to when, where, and how.

20.     Defendant argues that Dr. Noether relied upon the extensive data Vail Health produced regarding every private-payer outpatient physical therapy procedure provided to a patient at a Howard Head location in the Vail Valley, which Plaintiffs have had access to "for more than five months." Defendant baldly alleges it has already provided certain discovery, but it does so without specific reference. If it has, then merely identify or reproduce it. Defendant shall submit an Affidavit attesting to all such discovery produced or in the alternative, merely re-produce it within fourteen (14) days.

21.     Plaintiffs claim Dr. Noether's opinions also open the door regarding Vail Health's profitability and profit margins. They requested data and documents relating to financial statements, financial analyses, prices charged, costs, and profitability. Vail Health objected contending : "Vail Health's financial statements . . . show aggregate information across all of Vail Health's business units and do not segregate information specific to Howard Head Sports Medicine . . . ."

22.     Dr. Noether specifically critiques Dr. Schafer's analysis, saying "the only appropriate comparisons of [profitability margins] would be between Howard Head and other hospital-based physical therapy practices, or by comparing aggregate Vail Health margins to the hospital-wide averages that [Dr. Schafer] cites." Dr. Noether opines that Vail Health's financial condition is "considerably worse than the average hospital." It is unclear whether she reviewed Vail Health's audited or unaudited financial statements, or if they were provided, that Vail Health refused to produce. Confusion is created by Noether's opinion concerning Vail Health's financial

condition. Therefore, if she did review, rely on, or was provided with such financial data, documents, or information, it must also be provided.

23.    Because Dr. Noether has rendered opinions regarding Vail Health's financial viability and profit margins, Plaintiffs should be entitled to any financial documents produced to or reviewed by Noether, including audited and unaudited financial statements, Medicare cost reports, source material documenting Vail Health's profitability, prices charged, and indirect and direct costs. *See* FRE 703 and 705.

24.    It can be argued-and is by Defendant- that there is no showing how this information (independent of Dr. Noether's opinion) would be relevant because information about HH cannot be identified or isolated. If so, the Special Master Orders Defendant to submit an affidavit by someone who can confirm such information cannot be identified or isolated, within 14 days.

25.    Defendant also contends that 1) Plaintiffs' objection to Dr. Noether's reliance on the document called VVMC Strategic Planning: 2016 and 2) Plaintiffs' argument that Dr. Noether's patient flow analysis is inadequate. Those arguments are not relevant to Plaintiffs' motions to compel and can be properly raised in a motion in limine or on cross-examination of Dr. Noether. That suggestion itself displays a willingness to become more entangled in the litigation process, which the Special Master will not accommodate.

26.    Plaintiffs also maintain that they are entitled to "financial documents, such as the audited and unaudited financial statements and analyses, Medicare cost reports, source material documenting Vail Health's profitability, prices charged, and indirect and direct costs" regarding the entire Vail Health hospital system. That request in and of itself has not been shown to be relevant. It is also burdensome and overly broad. Defendant argues that Dr. Noether's reliance on such information provides no basis for the production of additional financial data. The Special

Master finds that position to lack merit. Dr. Noether cited American Hospital Directory data regarding Vail Health and also opined on Plaintiffs' expert comparison of Howard Head's margins to the margins of other hospitals. However, Dr. Noether's rebuttal opinions reference that the margins of the entire Vail Health hospital system (as opposed to its HH physical therapy unit) are relevant to this dispute. Therefore, the Special Master finds only that any of the information provided to, reviewed by, or relied upon by Dr. Noether shall be produced.

27.     Defendant points out that Dr. Schafer includes a section discussing where she compares margins of Howard Head (a single service line within a hospital system) with margins for "Colorado's for-profit and non-profit hospitals." In responding to Dr. Schafer's margin comparison, Dr. Noether explained: Dr. Shafer opined in part that "the only appropriate comparisons would be between Howard Head and other hospital-based physical therapy practices, or by comparing aggregate Vail Health margins to the hospital-wide averages that she cites. Making the latter comparison, I find that Vail Health's financial condition is considerably worse than the average hospital."

28.     Dr. Noether goes on to specifically compare the national median hospital operating margin of 2.6 % cited by Dr. Shafer to that of Colorado hospitals at 2.6 % in 2019, in contrast to Vail Health's operating of negative 6 % that year. That, in and of itself, does not open the door to such an expansive request as propounded by Plaintiffs. However, the Special Master finds that any and all of the information provided to, reviewed by, or relied upon by Dr. Noether other than her reference to Dr. Shafer's Report should be produced to plaintiffs.

29.     Plaintiffs Motion to Compel # 1 restates Interrogatory No. 24 claiming Defendant has "not fully answered" it. They specifically request VH be required to 1) identify each competitor

including "many other smaller . . . practices," which would include ones like SRC; and 2) identify each actual location that was or is a competitor for the relevant period.

30.     Defendant's response to Interrogatory No. 24 objected as containing improper subparts, being overbroad, unduly burdensome, and disproportionate to the needs of the case because it sought several different types of information over a seventeen-year period. VH in its response to Interrogatory No. 10 commented that the "identities and contact information" are publicly available. It went on to commit to producing performed analyses through a "reasonable search" without definition. Defendant went on to identify some physical therapy providers "with physical locations in Vail" and "surrounding communities." The Special Master commends VH for its productions, particularly about its identification of physical therapy services,  and will rely on their representations of productions having been made. The Special Master will refer Defendant to the findings above regarding Dr. Noether's Report and opinions as further directions for follow-up production.

31.     Plaintiffs' minimal reply noted VH's information about the VSO proposal but requested specific information about the outcome, which is absolutely appropriate and to be provided within 14 days. SRC did also identify VH referencing another potential acquisition of Axis, which the Special Master will also direct be produced. Once again, based upon Dr. Noether's comments and opinions beyond the Vail Valley, the Special Master will require Defendant to produce any other discussions or plans to acquire or consolidate with other competitors. Lastly, plaintiffs referenced "Interrogatory No. 23" and complained that VH didn't ones it had previously identified in "business records."  The Special Master would note that Fed. R. Civ. P. 33(d) allows for information obtained from such business records to suffice.

Discovery Orders of the Special Master re Motion to Compel # 1

Initially, the Special Master would point out *Kelly v. Advanta Corp.*, No. CV 02-250 LH/LFG, 2003 U.S. Dist. LEXIS 30499 (D.N.M. Mar. 21, 2003): which exhaustively addressed various issues relating to Motions to Compel, including relevance to claims and defenses, often balanced with burdens, difficulty, expense, and privacy interests. *Id*. ("When an interrogatory or document request seeks "any and all" or "each and every" discussion or document, it is unreasonable on its face."); *see also Franzon v. Massena Memorial Hosp.*, 189 F.R.D. 220, 222 (N.D.N.Y. 1999) (finding request overbroad and not reasonably calculated to lead to the discovery of admissible evidence as request provides no meaningful limitations).

INTERROGATORY NO. 9:

Identify and describe in detail Vail Health's contention as to the correct "relevant geographic market" underlying the Complaint for antitrust violations and identify all documents by bates number that support or refute those contentions. The relevant time period for this Request No. 9 is January 1, 2004, to the present.

Based upon the preceding findings, the Special Master grants in part and denies in part Plaintiffs' Motion to Compel # 1 as to Interrogatory No. 9. In its overall form, the interrogatory is denied as being overbroad and vague.  Plaintiffs have not set forth any authority, specifically or generally, requiring a defendant to provide in discovery something that is itself an element they must prove, as the note to be "underlying the Complaint." However, as noted above, Defendant has set forth arguments in its briefing and statements regarding the relevant geographic market. More particularly, Defendant's expert Dr. Noether has expressed numerous opinions surrounding the issue of the relevant geographic market and the service area or market. Therefore, as noted above, Defendant is ordered to identify and describe all documents regarding the relevant

geographic market, by bates number or otherwise, that support their contention(s), or that were provided to, submitted, shared, or referenced by Dr. Noether relating to her opinions or Report. The Response shall be provided within fourteen (14) days of this order.

REQUEST FOR PRODUCTION NO. 5

All documents concerning Vail Health's contention as to the correct "relevant geographic market" and "relevant product or service market" or providing physical therapy sessions underlying the Complaint for antitrust violations.  The relevant time period for Request No. 5 is November 1, 2011, to the present.

Similar to the findings and ruling above, Vail Health has not, and is not required to identify any actual "relevant geographic market." Plaintiffs have framed it as a Vail Health "contention" regarding the "correct relevant geographic market" for providing physical therapy services "underlying the Complaint for antitrust violations."  Therefore, in its overall form, the RFP No. 5 is denied. However, Defendant's expert Dr. Noether has expressed numerous opinions surrounding the issue of the relevant geographic market and the service area/market. Therefore, as noted above, Defendant is ordered to identify and describe all documents by bates number or otherwise that support their contention(s), or that were provided, submitted, shared, or referenced to Dr. Noether relating to her opinions or Report. In light of the time this request has been pending, the Response shall be provided within fourteen (14) days of this order.

INTERROGATORY NO. 24:

Identify each and every company or individual that Vail Health has considered a competitor for physical therapy services from November 1, 2004, to the present, and in doing so, identify the company or individual by name, address, and telephone number, as well as the reasons why the company or individual is or was viewed as a competitor, and any plans or strategies that Vail

Health considered or developed with respect to those competitors, including, but not limited, communicating with doctors at Steadman or VSO regarding those competitors.

Initially, the Special Master would sustain Defendant's objection as being overbroad, unduly burdensome, and disproportionate to the needs of the case because it sought several different types of information over a seventeen-year period, and therefore deny it in general. However, the Special Master finds that a period of 10 years back, to and including 2012, is reasonable and appropriate. Furthermore, the Special Master orders, pursuant to Rule 26 (a)(1) that VH must produce all data, documents, and electronically stored information that it may use to support its claims or defenses. Once again, in light of the above-referenced findings, comments, and opinions expressed by Dr. Noether regarding summaries, VH must produce any underlying or source data provided to or relied on by their expert to allow Plaintiffs to evaluate the validity of the expert's report. *See Little Hocking Water Ass'n. v. E.I. du Pont de Neumours & Co.*, 2013 U.S. Dist. LEXIS22374 (S.D. Ohio 2013).

REQUEST FOR PRODUCTION NO. 17:

All data identifying all physical therapy patients treated by RPC-Vail or Vail Health from November 1, 2004 to the present, including demographic information for each patient, insurance information (including insurer name, governmental entity such as Medicare Part A or Part B, self-pay etc.), referring and primary physicians, diagnoses based on an ICD9 Code, at what locations the patients were treated and when, and the amounts paid for any services billed for each patient. The data should be produced in Excel format.

Plaintiffs requested leave to file a Supplemental Memorandum in support of their Motions to Compel, which the Special Master granted, and they filed on March 29, 2022. On March 30, 2022, Judge Gallagher issued his Order Granting in Part and Reversing in Part the Special Master's

Report. In the order, the Court Overruled Defendant's main objections regarding the Special Master's order to provide: (1) "billable units"; (2) "amount charged per billable unit"; and (3) "amount collected for the units of physical therapy" as requested in RFP 17 and RFP 3. The Court ordered Defendant to provide the data. The Court also Overruled Defendant's objection regarding the amount charged per billable unit rather than aggregated amounts for services rendered and found that the information sought was not unreasonably cumulative or duplicative. and the Special Master had not been advised to the contrary. The Court did Sustain Defendant's objection that it does not track data regarding the amount collected for the units rendered to each patient and allowed Defendant to submit an affidavit confirming Vail Health does not maintain such data. That was done in the form of a Declaration of Christine Clark filed on April 14, 2022.

In its Response to the Motion to Compel # 1, VH committed to producing data regarding patient treatment and locations. Those included: A unique patient identification number • Patient zip code • Service date • A unique encounter identification number • Chargemaster number • Chargemaster description • Code identifying service (e.g., CPT/HCPCS/ICD9 code) • Quantity of procedure provided (i.e., reflecting if the patient received multiple of the same procedure) • Charge for procedure • Payer / insurance company • Facility where service provided • Reimbursement to Vail Health for each encounter (or other unit on which reimbursement is tracked) • Primary or referring physician (if available). If that has not been done, it is so ordered to be done within 14 days. In light of Dr. Noether's comments, opinions and report, such production shall include in other locations outside the Howard Head Vail Valley location including Basalt, Summit, and Garfield counties.

REQUEST FOR PRODUCTION NO. 25:

All documents referencing or relating in any way to competitors of Vail Health, Howard Head, or RPC-Vail related in any way to physical therapy services from November 1, 2004, to the present. This request includes, but is not limited to, the identification of any competitors and any plans or strategies related to those competitors.

First of all, the Special Master finds that the time frame is excessive, overbroad, and burdensome. A period of 10 years back, to and including 2012, is reasonable and appropriate. Secondly, the Special Master also finds that Plaintiffs' demand for "smaller physical therapy practices" is excessive, overbroad, and burdensome, and does not have to be produced. The exception is that if VH considered a purchase or consolidation with a much smaller competitor, that would have to be produced.  Vail Health contends that it has agreed to produce and has produced a significant amount of information relating to Howard Head competitors, which the Special Master has confirmed in its responses. The Special Master sustains VH's objection to producing "every single competitor of Howard Head."  In light of Dr. Noether's comments, opinions, and report, such production shall include in other locations outside the Howard Head Vail Valley location including Basalt, Summit, and Garfield counties. Lastly, VH is only required to identify such a competitor by their location in these areas, since the remaining information could be publicly obtained.

In light of the myriad of requests made by Plaintiffs in their Motion to Compel #1, any other such requests are hereby Denied. Any time frame referenced for the compliance with and production of materials not otherwise noted shall be fourteen (14) days after the issuance of this Order.

Recommendations to the Court

1.     That the Court adopt and confirm the above Orders of the Special Master.

2.     The Court permit discovery to continue only so long as necessary to accomplish/comply with the Special Master and Court Orders set forth.

3.     The Special Master recommends that the Plaintiffs' request for Attorney Fees be deferred or denied.

4.     The Special Master recommends that the Court defer or deny any request to make any determination at the time as to the relevant geographic market in light of there being genuine issues of material fact remaining to be proven or resolved. In the alternative, the Court could preliminarily determine that the Vail Valley running from East Vail to Gypsum, Colorado is the relevant geographic market.


Dated at Grand Junction, Colorado this July 6, 2022.


W. Terry Ruckriegle
Special Master