# EXHIBIT 4

| | |
|---|---|
| **From:** | Richards, Daniel |
| **Sent:** | Monday, December 6, 2021 11:18 PM |
| **To:** | 'Terry Ruckriegle' |
| **Cc:** | Stevenson, Shannon; Roeder, Jackie; Alan Kildow; sonya braunschweig |
| **Subject:** | Vail Health Proposed Findings of Fact and Conclusions of Law |
| **Attachments:** | Vail Health Proposed Findings of Fact and Conclusions of Law.DOCX |

Judge Ruckriegle:

Attached to this email is a Word version of Defendant Vail Health's Proposed Findings of Fact and Conclusions of Law Pursuant to the Special Master's November 22, 2021 Order. The Proposed Findings and exhibits referenced therein have been filed with the Court. The exhibits can also be downloaded via the following link:

LINK AND PASSWORD REDACTED

Screenshots of a few of the more than 1 million lines of encounter-level data Vail Health has produced are included as Exhibit 10. Given the size and sensitivity of this data, we have not included it here. However, if the Special Master would like to review complete copies of this data, we are happy to arrange for its delivery to the Special Master.

**DANIEL RICHARDS ▪ Associate**

**D: 303.892.7452 ▪** vcard
**Davis Graham & Stubbs LLP**
1550 17th Street, Suite 500 ▪ Denver, CO 80202

**A LexMundi** Member

1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado Limited Liability Company, and
LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC., d/b/a VAIL HEALTH, a Colorado nonprofit corporation,

      Defendant.

---

**DEFENDANT VAIL HEALTH'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW PURSUANT TO THE SPECIAL MASTER'S
NOVEMBER 22, 2021 ORDER [DOC. 233]**

---

Defendant Vail Clinic, Inc ("Vail Health") respectfully submits these proposed findings

of fact and conclusions of law pursuant to the Special Master's November 22, 2021 Order (Doc.

233).

**PROCEDURAL HISTORY AND SPECIAL MASTER'S AUTHORITY**

1.      On July 20, 2021, Magistrate Judge Gordon Gallagher appointed me as an

"APPOINTED MASTER for the purpose of resolving discovery disputes referred to the Master

by this Court."  (Doc. 123 at 2.)

2.      Between August 5 and October 17, 2021, Plaintiffs Lindsay Winninger and Sports

Rehab Consulting, LLC ("Plaintiffs") filed Motions to Compel #1-5, raising numerous issues.

3.      Magistrate Judge Gallagher has referred each of those Motions to me for

resolution.  (Doc. 135, Doc. 161, Doc. 199.)

4.      On October 21-22, 2021, I held approximately 8 hours of hearings on the issues

raised in Motions to Compel #1-4.  (Doc. 200, 201.)

4890004

5.      On October 25, 2021, I ordered Plaintiffs to identify by November 2, 2021 the "materials they still request to be produced."  (Doc. 202.)

6.      On November 2, 2021, Plaintiffs sent Vail Health a discovery dispute chart that raised numerous discovery disputes.  (Ex. 1.)

7.      On November 3, 2021, Vail Health requested that Plaintiffs "submit in good faith a list of discrete areas on which they seek additional discovery" in compliance with the Special Master's instructions.  (Ex. 2.)  On November 10, 2021, Vail Health reiterated this request.  (*Id.*)  On November 12, 2021, Vail Health informed Plaintiffs, in light of Plaintiffs' failure to narrow the discovery dispute issues, that it would file a motion for a protective order.  (*Id.*)

8.      On November 19, 2021, Vail Health filed its motion for a protective order.  (Doc. 228.)  Plaintiffs filed a response on November 22 (Doc. 237), and Vail Health filed its reply on December 6 (Doc. 252).  Vail Health asserts that its Motion for Protective Order stayed its obligations to respond to Plaintiffs' discovery dispute chart.  D.C.COLO.LCivR 30.2(a) ("Pending resolution of a motion or request for relief under Fed. R. Civ. P. 26(c) . . . , the discovery to which the motion or request is directed shall be stayed . . .").)  Despite this position, Vail Health continued to discuss the issues with Plaintiffs.  (Ex. 3.)

9.      On November 23, 2021, the parties held an oral conferral for approximately one hour.  (Ex. 3.)  On November 24, 2021, Vail Health sent Plaintiffs a chart that responded to each issue raised in their discovery dispute chart. (Ex. 4.)

10.      On November 29, both parties submitted statements regarding the outcome of the conferral process.  (Doc. 245, 246.)

11.     In light of the status of communications between the parties, I will rely on Plaintiffs' November 2 Discovery Dispute Chart and Vail Health's responses thereto, as reflected in Exhibit 4, as identifying the remaining issues for the Special Master to resolve.

## APPLICABLE LEGAL STANDARDS

12.     Fed. R. Civ. P. 37(a)(1) permits a party, on notice to other parties, to "move for an order compelling disclosure or discovery." A party seeking discovery "may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B).

13.     Fed. R. Civ. P. 26(b)(1) permits discovery into relevant, nonprivileged matters "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." "Broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Landry v. Swire Oilfield Servs., LLC*, 323 F.R.D. 360, 376 (D.N.M. 2018).

## PRIOR DISCOVERY IN THIS CASE

14.     The parties to this case have been litigating a related case, *Sports Rehab Consulting LLC & Lindsay Winninger v. Vail Clinic, Inc.*, No. 2017CV30102 (Dist. Ct., Eagle County) ("State Court Action"), since 2017.

15.     The Court's Scheduling Order in this matter provides that "discovery conducted in the State Court Action may be used in this matter." (Doc. 71 ¶ 6(f).)  The Special Master notes that discovery in the State Court Action included more than 70,000 pages of documents, more than 40 depositions, and more than 40 third party subpoenas.  (Doc. 228 at 3-4.)  Vail Health performed searches specifically requested by Plaintiffs, including searching the email files of 24

custodians using the terms "Cimino," "Lindsay," "LW," "Sports Rehab," "SRC," and "Winninger." (Ex. 5.)

16.     In addition to the discovery from the State Court Action, Vail Health also responded to each of Plaintiffs' requests for production ("RFPs"), interrogatories, and requests for admission in this case. Vail Health provided detailed written responses (or, where appropriate, objections) to Plaintiffs' 154 interrogatories and requests for admission. Vail Health also agreed to produce, *inter alia*, "financial statements, projections, and financial analyses for Howard Head Sports Medicine"; "documents . . . reflecting the prices charged and revenues realized for Howard Head Sports Medicine's physical therapy services"; "documents . . . reflecting [Vail Health's] evaluation of which physical therapy or other service providers Vail Health considered and/or does consider to be competitors of Howard Head Sports Medicine's physical therapy services"; documents concerning contemplated joint ventures with The Steadman Clinic and Vail Summit Orthopaedics; exemplars of Vail Health's employment agreements with physical therapists; and non-privileged portions of Vail Health's board of directors minutes and agendas that relate to Vail Health's Howard Head physical therapy practice in the Vail Valley. (Exs. 6, 7, 8.)

17.     In this case, Vail Health has produced more than 6,900 additional pages of documents (VAIL_Fed_00000001 - VH_Fed_00006971). This includes more than 200 Excel files in native format, each of which is reflected by a single bates number, and many of which contain multiple worksheets reflecting substantial volumes of data. (Ex. 5, at 2.)

18.     After reviewing Vail Health's discovery responses in June 2021, Judge Martinez concluded that Vail Health had provided "detailed responses to nearly all interrogatories" and

that "[o]verall, the Court discerns no abusive discovery practices by Vail Health." (Doc. 113 at 5-6.)

19.    Magistrate Judge Gallagher reiterated this conclusion in November 2021, finding that "[d]espite Plaintiffs' allegations that Defendant Vail Health has not fulfilled its discovery obligations…this Court does not discern any abusive discovery practices by Defendant Vail Health. Rather, this Court finds that Plaintiffs have not been diligent in obtaining discovery within the guidelines of the Scheduling Order."  (Doc. 242 at 4.)

## ISSUES NOT PROPERLY BEFORE THE SPECIAL MASTER

20.    Plaintiffs' November 2 Discovery Dispute Chart raises 18 issues related to Plaintiffs' Requests for Production of Documents (RFPs)[1] and 10 issues related to Plaintiffs' Interrogatories.  Many of those issues consist of multiple sub-issues, such that Plaintiffs have raised more than 60 discovery disputes.

21.    Some of the issues Plaintiffs raise are not properly before the Special Master because they were not presented in any of Plaintiffs' Motions to Compel #1-5.  With respect to Plaintiffs' RFPs, these include **issue #2** (Analyses and documents related to pricing as to facility v nonfacility), **issue #5** (Documents and communications related to hiring of Axis employee Kathy Gwin), **issue #12** (Medicare cost reports), and **issue #18** (Doris Kirchner text messages).

22.    Pursuant to the Court's Order, the Special Master is directed to resolve those motions referred to him by the Court.  (Doc. 123 ¶ 3.)  Because these issues have not been

---

[1] Although the rows of this chart are numbered 1-20, Plaintiffs have omitted rows 14-16, and labelled two separate rows as 19 ("Revised privilege log" and "Search terms").

referred to me, I will not decide them at this time.  Should Plaintiffs wish to pursue these issues, they will need to properly raise them with the Court.[2]

**PLAINTIFFS' RFP ISSUE 1 (INCOME STATEMENTS/ANALYSES)**

23.    With respect to this issue, Plaintiffs request "Income statements/analyses by location and rollup from November 1, 2012, to the present."  They assert these documents were requested in their RFPs Nos. 2 and 4.

24.    Plaintiffs' RFP No. 2 requests annual, quarterly, and monthly financial statements/projections/financial analyses of Howard Head Sports Medicine (HHSM).  (Ex. 6, at 4.)  Plaintiffs' RFP No. 4 requests "[a]ll documents relating to the costs incurred and profits realized with respect to the physical therapy services provided to patients by Vail Health's physical therapy unit doing business under the trade name 'Howard Head Sports Medicine,'" including salary, benefits, administrative and overhead costs.  (*Id.* at 5.)  Neither RFP requested this information "by location and rollup."

25.    In response to these RFPs, Vail Health has produced:

-    Monthly Howard Head financial data, including Unique FIN (*i.e.*, patients), Charge, Payment Amount, Direct Cost, Contribution Margin, Indirect Cost, and Net Income, for the period November 2014 through September 2020 (Ex. 9.)

-    Spreadsheets containing more than 1 million rows of encounter-level data regarding physical therapy services provided by Vail Health in the alleged Vail Valley market (and specifying the HH location), which include patient zip codes and the amount Vail Health was reimbursed for every private payer transaction, for the period November 2013 through September 2021 (Ex. 10 (excerpt).)

---

[2] Even if these issues were before the Special Master, Vail Health has responded to each issue in its November 24, 2021 discovery dispute chart.  (Ex. 4.)  The Special Master has reviewed Vail Health's responses regarding these issues and agrees with Vail Health's positions.

- All responsive documents located in the emails of Vail Health's current CEO (Will Cook), former CEO (Doris Kirchner), current leader of Howard Head (Mary Ellen Broersma) and former leader of Howard Head (Nicholas Brown) by running more than 50 sets of search terms.  (Ex. 5.)

26.     Plaintiffs have not identified what documents they believe are missing from Vail

Health's production.  Deposition testimony confirms that additional documents do not exist.

Vail Health's former CFO Charles Crevling testified:

> **MR. KILDOW:** Was an audited financial statement for the physical therapy entity doing business under the name Howard Head Sports Medicine ever prepared during the time that Mr. Crevling was the chief financial officer.
> . . .
>
> A. No.

(Ex. 11, Crevling Depo. at 62:14-18, 22.)

> **Q. (By Mr. Kildow) Did you ever create --strike that. During the time that you were the chief financial officer of Vail Health, did you create income statements or statements of operation or otherwise known as P&Ls, profit and loss statements, for the physical therapy clinic known as Howard Head?**
> A. Never created a profit and loss statement for Howard Head. We –
>
> **Q. Did you create any kind of an accounting summary or statement for the physical therapy clinic?**
> A. Let me finish, okay, Alan?
>
> **Q. Oh, I'm sorry. I didn't mean to interrupt.**
> A. No. We're fine because it's just a --you know, we never created an income statement for Howard Head or cardiology or whatever, but we did do financial analysis of programs. That's not the same as creating a P&L or a balance sheet or anything like that.

(Ex. 11, Crevling Depo. at 72:9-73:3.)

27.     With respect to the individual document Plaintiffs reference (VH_Fed_00001417-

20, Ex. 19 to Pls.' Motion to Compel #2), the cover emails to the document make clear that it

was produced for a specific purpose and does not represent any regularly generated report.  To

the extent Plaintiffs are requesting that Vail Health generate reports for them, such a request is

not proper.  7 Moore's Federal Practice § 34.12 ("A party cannot be compelled to create, or

cause to be prepared, new documents solely for their production. Rule 34 only requires a party to

produce documents that are already in existence."); *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No.

01-cv-01644-REB-CBS, 2010 U.S. Dist. LEXIS 17857, *41-42 (D. Colo. Feb. 8, 2010).

     28.    Finally, Plaintiffs introduced this document at the deposition of Nicholas Brown,

but specifically declined to ask him any questions about it:

> **Q. (BY MR. KILDOW) Okay. We've got Exhibit 17 up. It's from Harold -- it's an email from Harold Dupper to you dated January 6, 2019; is that correct?**
>
> A. Yes, that's correct.
>
> **Q. <u>And I am not here today to ask you a number of questions about this exhibit other than to have you identify it and authenticate it.</u> There is a series of emails -- an email string, as we call it, I guess, on pages 1, 2, and 3 of Exhibit 46, and it's -- they're between you and Mr. Dupper. Mr. Dupper was the chief financial officer of Vail Health at that time; is that correct?**
>
> A. Yes, that's correct.

(Ex. 12, Brown Dep. at 176:8-21 (emphasis added).)

     29.    In light of this record, I find and conclude that Vail Health has satisfied its

obligations to produce documents in response to Plaintiffs' RFP Nos. 2 and 4.

### PLAINTIFFS' RFP ISSUE 3 (DIRECT AND INDIRECT COSTS/EXPENSES)

     30.    With respect to this issue, Plaintiffs request "Identification of all direct and

indirect costs/expenses (in detail, not aggregate form) associated with Howard Head from

November 1, 2012, to the present." They assert this information was requested in their RFP No. 4.

31.     RFP No. 4 requests "All documents relating to the costs incurred and profits realized with respect to the physical therapy services provided to patients by Vail Health's physical therapy unit doing business under the trade name 'Howard Head Sports Medicine,'" including salary, benefits, administrative and overhead costs.  (Ex. 6, at 5.)

32.     In response to this RFP, Vail Health has produced:

- Monthly Howard Head financial data, including Unique FIN (*i.e.*, patients), Charge, Payment Amount, Direct Cost, Contribution Margin, Indirect Cost, and Net Income, for the period November 2014 through September 2020 (Ex. 9.)

- Spreadsheets containing more than 1 million rows of encounter-level data regarding physical therapy services provided by Vail Health in the alleged Vail Valley market (and specifying the HH location), which include patient zip codes and the amount Vail Health was reimbursed for every private payer transaction, for the period November 2013 through September 2021 (Ex. 10 (excerpt).)

- All responsive documents located in the emails of Vail Health's current CEO (Will Cook), former CEO (Doris Kirchner), current leader of Howard Head (Mary Ellen Broersma) and former leader of Howard Head (Nicholas Brown) by running more than 50 sets of search terms.  (Ex. 5.)

33.     Deposition testimony confirms that there are no cost reports that Vail Health has failed to produce.  Nicholas Brown, the former head of Vail Health's Howard Head physical therapy practice, testified:

> **Q. (BY MR. KILDOW) So you ran a 15 to $20 million business, and you didn't have a cost report? Is that what you're saying? You didn't keep track of the costs?**
> **MR. MCHUGH:** Argumentative.
>
> **Q. (BY MR. KILDOW) Is that what your testimony is?**
> A. No.

. . .
        A. Howard Head did not have a separate cost report.

(Ex. 12, Brown Dep. at 36:6-13, 18-19.)

      34.     To the extent Plaintiffs now request "identification" of certain expenses, that is not a proper request in an RFP.  7 Moore's Federal Practice § 34.12 ("A party cannot be compelled to create, or cause to be prepared, new documents solely for their production. Rule 34 only requires a party to produce documents that are already in existence."); *Cartel Asset Mgmt.*, 2010 U.S. Dist. LEXIS 17857, *41-42.  However, Plaintiffs deposed Mr. Crevling (former CFO) and Nicholas Brown (former leader of Howard Head) and had the opportunity to ask them these questions regarding costs, including relating to the particular documents Plaintiffs reference in their discovery dispute chart.  (*See, e.g.*, Ex. 12, Brown Dep. at 15-16, 20-24, 36-37, 99-100; Ex. 11, Crevling Dep. at 73-75.)

      35.     In light of this record, I find and conclude that Vail Health has satisfied its obligations to produce documents related to Howard Head's costs in response to Plaintiffs' RFP No. 4.

### <u>PLAINTIFFS' RFP ISSUE 4 (SUMMIT COUNTY AND ASPEN/BASALT)</u>

      36.     With respect to this issue, Plaintiffs request "Analyses and documents associated with expanding into Summit County and Aspen/Basalt, including Hammes analyses; Board of Director, Finance Committee, Executive Committee, and Steering Committee documents related to those expansions; Howard Head documents related to expansion."  They assert these documents were requested in their RFPs Nos. 5 and 15.

      37.     Plaintiffs' RFP No. 5 requests "All documents concerning Vail Health's contention as to the correct 'relevant geographic market' and 'relevant product or service

market' for providing physical therapy services underlying the Complaint for antitrust violations."  (Ex. 6, at 5-6.)

38.     Plaintiffs' Amended Complaint asserts that the relevant geographic market is the Vail Valley, which "lies in the somewhat narrow Vail Valley stretching from East Vail to Gypsum, Colorado."  (Doc. 26, Am. Compl., ¶ 35.)  As the defendant, Vail Health has no burden to plead or prove a relevant geographic market. *Food Lion, LLC v. Dean Foods Co. (In re Southeastern Milk Antitrust Litig.)*, 730 F. Supp. 2d 804, 824 (E.D. Tenn. 2010) ("the burden of establishing the relevant geographic market is on plaintiffs, not [defendants].").  Vail Health has produced, however, documents potentially related to the relevant geographic market for physical therapy services.  Specifically, Vail Health searched the email files of its current and former CEOs (Will Cook and Doris Kirchner), as well as the current and former leaders of Howard Head (Mary Ellen Broersma and Nicholas Brown) using more than 50 sets of search terms, including:

-   "Howard Head" AND market w/30 PT
-   "Howard Head" AND market w/30 therapy
-   HH AND market w/30 PT
-   HH AND market w/30 therapy

Such searches appear likely to retrieve documents related to the relevant geographic market for physical therapy services.

39.     Vail Health, however, objected to producing documents associated with Howard Head's operations or potential plans to expand into Summit County and Aspen/Basalt.  I find that such documents are not relevant to Plaintiffs' claims, which allege that Vail Health has a monopoly on the provision of physical therapy services in the Vail Valley, which they define to exclude Summit County, as well as Aspen and Basalt. "In an antitrust case, courts generally limit discovery to the ambit of the applicable market."  *Radio Music License Comm., Inc. v. Global*

*Music Rights, LLC*, No. CV 19-3957, 2020 U.S. Dist. LEXIS 243375, at *16 (C.D. Cal. Jan. 2, 2020) (collecting cases); *see also Vident v. Dentsply Int'l, Inc.*, No. SA CV 06-1141, 2008 U.S. Dist. LEXIS 110399, at *6-8 (C.D. Cal. Aug. 29, 2008) (finding no abuse of discretion in magistrate judge's ruling that "the definition of the relevant market in [this antitrust] case determines the scope of allowable discovery"); *Bal Seal Eng'g, Inc. v. Nelson Prod., Inc.*, No. 8:13-cv-1880, 2017 U.S. Dist. LEXIS 231324, at *3-4 (C.D. Cal. Oct. 19, 2017) (finding that "the definition of the 'relevant market' defines the scope of relevant discovery"); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164, 2007 U.S. Dist. LEXIS 66159, at *37 (D. Kan. Sept. 6, 2007) (finding that discovery outside the relevant geographic market "not relevant on its face").

40.     Plaintiffs have failed to explain why such documents are necessary to their claims.  As such, I find that Plaintiffs' request for these documents is not proportional to the needs of this case.

41.     Plaintiffs' RFP No. 15 requests "All agendas, minutes, minutes of action, and all other records of of [sic] the Board of Directors of Vail Health and all committees of the Board of Directors of Vail Health, from January 1, 2004 to the present."  (Ex. 7, at 40.)

42.     Vail Health has already produced Board minutes and agendas related to Howard Head.  (Ex. 17.)

43.     In light of this record, I find and conclude that Vail Health has fulfilled its obligations to respond to RFPs No. 5 and 15.  Documents regarding Howard Head's operations in Summit and Aspen/Basalt are not relevant and proportional given the unambiguous allegations in Plaintiffs' Amended Complaint asserting that the relevant market is limited to the Vail Valley.

## PLAINTIFFS' RFP ISSUE 6 (STEADMAN/SPRI DOCUMENTS)

44.     With respect to this issue, Plaintiffs request a long list of documents related to Vail Health's relationship with The Steadman Clinic ("Steadman" or "TSC") and/or Steadman Philippon Research Institute ("SPRI"). They assert these documents were requested in their RFPs Nos. 5 and 7.

45.     Plaintiffs' RFP No. 5 requests "[a]ll documents concerning Vail Health's contention as to the correct 'relevant geographic market' and 'relevant product or service market' for providing physical therapy services underlying the Complaint for antitrust violations."  (Ex. 6, at 5-6.)  Plaintiffs' RFP No. 7 requests:  "All documents relating to any proposed joint venture, merger, or other combination between The Steadman Clinic and Vail Health relating in any way to providing physical therapy services."  (Ex. 6, at 6.)

46.     Vail Health's response to RFP No. 5 is addressed above.

47.     With respect to RFP No. 7, Vail Health has performed a reasonable search for and produced responsive documents, including by using the following search terms:

> Steadman AND "joint venture"
> Steadman AND JV
> Steadman AND MSO
> Steadman AND "management services organization"
> Steadman AND "managed services"
> TSC AND "joint venture"
> TSC AND JV
> TSC AND MSO
> TSC AND "management services organization"
> TSC AND "managed services"
> SPRI AND "joint venture"
> SPRI AND JV
> SPRI AND MSO
> SPRI AND "management services organization"
> SPRI AND "managed services"

48.     These searches resulted in production of numerous documents regarding the contemplated joint ventures between Vail Health and Steadman, including letters of intent, draft

term sheets, financial projections, and communications reflecting the parties' negotiations. (Ex. 14.)  Plaintiffs also served subpoenas on Steadman for these same documents.

49.    As discussed above, to the extent Plaintiffs request information related to physical therapy services outside of the Vail Valley, those documents are irrelevant to Plaintiffs' claims. Plaintiffs do not explain why the documents Vail Health has already produced are insufficient for Plaintiffs to prosecute their claims.

50.    The Special Master further notes that many of the documents identified in Row No. 6 are not requested in Plaintiffs' RFP Nos. 5 and 7.  For example, Plaintiffs did not request production of Steadman lease agreements with Vail Health outside of Vail or fair market value analyses of leases with Steadman.

51.    In light of this record, I find and conclude that Vail Health has met its obligation to produce documents responsive to Plaintiffs' RFP Nos. 5 and 7 with respect to potential joint ventures with Steadman and SPRI for the provision of physical therapy services.

## PLAINTIFFS' RFP ISSUE 7 (VSO/VSOF DOCUMENTS)

52.    With respect to this issue, Plaintiffs request a long list of documents related to Vail Health's relationship with Vail-Summit Orthopaedics ("VSO") and the Vail Summit Orthopaedics Foundation ("VSOF"). They assert these documents were requested in their RFPs Nos. 5 and 8.

53.    Plaintiffs' RFP No. 5 requests "All documents concerning Vail Health's contention as to the correct 'relevant geographic market' and 'relevant product or service market' for providing physical therapy services underlying the Complaint for antitrust violations."  (Ex. 6, at 5-6.)  Plaintiffs' RFP No. 8 requests "All documents relating to any

proposed joint venture, merger, or other combination between Vail Summit Orthopedics and Vail Health relating in any way to providing physical therapy services." (Ex. 6, at 7.)

54.     Vail Health's response to RFP No. 5 is addressed above.

55.     With respect to RFP No. 8, Vail Health has performed a reasonable search for and produced responsive documents, including by using the following search terms:

> VSO AND "joint venture"
> VSO AND JV
> VSO AND MSO
> VSO AND "management services organization"
> VSO AND "managed services"
> "Vail-Summit Orthopaedics" AND "joint venture"
> "Vail-Summit Orthopaedics" AND JV
> "Vail-Summit Orthopaedics" AND MSO
> "Vail-Summit Orthopaedics" AND "management services organization"
> "Vail-Summit Orthopaedics" AND "managed services"

56.     These searches resulted in production of numerous documents regarding the contemplated joint ventures between Vail Health and VSO, including letters of intent, draft term sheets, financial projections, and communications reflecting the parties' negotiations. (Ex. 13, representative samples). Plaintiffs also served subpoenas on VSO and VSOF. (Ex. 15.)

57.     As discussed above, to the extent Plaintiffs request information related to physical therapy services outside of the Vail Valley, I have determined such discovery is not proportional to the needs of the case. Plaintiffs do not explain why the documents Vail Health has already produced are insufficient for Plaintiffs to prosecute their claims.

58.     The Special Master further notes that many of the documents identified in Row No. 7 are not requested in Plaintiffs' RFP Nos. 5 and 8. For example, Plaintiffs did not request production of lease agreements between Vail Health and VSO.

59.     In light of this record, I find and conclude that Vail Health has met its obligation to produce documents responsive to Plaintiffs' RFP Nos. 5 and 8 with respect to potential joint ventures with VSO for the provision of physical therapy services.

### PLAINTIFFS' RFP ISSUE 8 (HOWARD HEAD EMPLOYEES)

60.     With respect to this issue, Plaintiffs request:

> A list of all Howard Head employees, including Howard Head management, identifying start and end dates of employment, position(s) held, salary, type of employment agreement/offer. Alternatively, the employment files for each Howard Head employee, including management, identifying the above information.

They further request:

> Any employment agreements with Howard Head management, including Luke O'Brien and Nicholas Brown, as well as any post-employment agreements; O'Brien testified he had such an agreement.  Although both Brown and O'Brien treated patients, no exemplars of their agreements have been produced.

Plaintiffs assert these documents were requested in their RFPs Nos. 9 and 10.

61.     Plaintiffs' RFP No. 9 requests "Employment records that identify each physical therapist employed by Vail Health in its physical therapy clinic doing business under the trade name of 'Howard Head Medical Center.'"  (Ex. 6, at 7.)  Plaintiffs' RFP No. 10 requests:

> All employment agreements Vail Health has had with physical therapists, medical staff, directors, officers, managers, administrative staff, and secretarial staff who were employed by and/or associated with Vail Health with respect to the physical therapy clinic doing business under the trade name of "Howard Head Medical Center." Request No. 10 includes any changes in policies, procedures, and/or training related to nonsolicitation, noncompete, trade secrets, and confidentiality with respect to the categories of individuals listed above. This request includes any internet or net learning type of applications in which physical therapists, medical staff, directors, officers, managers, administrative staff, and secretarial staff had to acknowledge or agree to any policy updates or changes related to employment.

(Ex 6, at 7-8.)

62.     In response to these RFPs, Vail Health has produced exemplars of all forms of offer letters used for Howard Head physical therapists (Ex. 16), as well as its employment handbooks and employment policies.  Vail Health has objected to providing the names or individual employment files of its physical therapists, as it is invasive of their privacy, and Plaintiffs have failed to articulate what relevance these documents have to their claims.

63.     Plaintiffs have asserted that Vail Heath's use of non-solicitation provisions in its employment agreements with physical therapists is an aspect of its anti-competitive conduct. (Am. Compl., Doc. 26, ¶¶ 31, 39, 53, 77 - 92.)  Vail Health has produced examples of each type of agreement that it has used to employ physical therapists, as well as its employment handbooks and employment policies.  Given the privacy interests of Vail Health's employees—who are not parties to this lawsuit—I find that production of their employment files or other details of their employment is of marginal relevance and disproportionate to the needs of this case.  *See, e.g.*, *Nichols v. Denver Health & Hospital Authority*, No. 19-cv-02818-DDD-KLM, 2020 U.S. Dist. LEXIS 167381, at *26, 29 (D. Colo. Sep. 14, 2020) (refusing to compel production of the personnel file of an employee of defendant who "played no role in the decision to terminate Plaintiffs' employment"); *Bottoms v. Liberty Life Assurance Co.*, Civil Action No. 11-cv-01606-PAB-CBS, 2011 U.S. Dist. LEXIS 143251, at *17-18 (D. Colo. Dec. 13, 2011) (refusing to compel production of "complete personnel files" for each person "who was in any way involved in the handling, processing or denial of Plaintiff's claim for benefits," which the court found "swept too broadly"); *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1034 (9th Cir. 1990) (rejecting plaintiff's request that defendant police department produce all personnel files for the entire department); *Acton v. Target Corp.*, No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at

- 17 -

*11 (W.D. Wash. 2009) (denying plaintiff's request that defendant produce "dozens" of defendant's employees' personnel files as "strikingly overbroad"); *Professional Recovery Services, Inc. v. General Electric Capital Corp.*, 2009 U.S. Dist. LEXIS 3889, at *4 (D.N.J. 2009) (rejecting plaintiff's request that a defendant produce the personnel file of a non-party employee of defendant); *Coker v. Duke & Co., Inc.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998) (rejecting plaintiff's request that defendant produce "the personnel files of . . . any . . . employees or agents of [defendant] who were terminated by or departed from employment with [defendant] at any time," primarily because "the burden and expense of the production plainly outweighs its benefit"); *Tolz v. Geico General Insurance Co.*, No. 08-80663-CIV, 2010 U.S. Dist. LEXIS 3775, at *8-9 (S.D. Fla. Jan. 19, 2010) (rejecting as overly broad a plaintiff's request that a defendant produce "the entire personnel files of all Geico personnel . . . who handled or supervised" plaintiff's insurance claim).

64.     Vail Health has also objected to producing the employment agreements of executive level employees.  While the terms of a physical therapist's employment arguably relate to Plaintiffs' claims regarding non-solicitation clauses, the terms of executive-level employees' agreements do not.

65.     Finally, to the extent Plaintiffs seek "post-employment" agreements, that was not requested in Plaintiffs' RFPs Nos. 9 and 10.

## PLAINTIFFS' RFP ISSUE 9 (VAIL HEALTH BOARD DOCUMENTS)

66.     With respect to this issue, Plaintiffs request a long list of documents related to Vail Health's Board of Directors and its subcommittees.  Plaintiffs assert these documents were requested in their RFP No. 15.

67.     Plaintiffs' RFP No. 15 requests "All agendas, minutes, minutes of action, and all other records of of [sic] the Board of Directors of Vail Health and all committees of the Board of Directors of Vail Health, from January 1, 2004 to the present."  (Ex. 7, at 40.)

68.     Vail Health objected to this RFP as overbroad but agreed to produce board minutes and agendas related to Howard Head's business in the Vail Valley, which it has done. (Ex. 17.)  In addition, Vail Health has produced:

- Documents regarding the contemplated joint ventures between Vail Health and The Steadman Clinic and/or Vail-Summit Orthopedics, including letters of intent, draft term sheets, financial projections, and communications reflecting the parties' negotiations (Ex. 13 and Ex. 14, representative samples);

- All responsive documents located in the emails of Vail Health's current CEO (Will Cook), former CEO (Doris Kirchner), current leader of Howard Head (Mary Ellen Broersma) and former leader of Howard Head (Nicholas Brown) by running more than 50 sets of search terms.  (Ex. 5.)

69.     Plaintiffs have failed to identify any material likely to be uncovered in other board related documents that would not be duplicative of material already produced, or have anything more than marginal relevance to their antitrust claims.

70.     Plaintiffs have also complained that Vail Health has produced certain Board minutes and agendas that have redacted information that does not relate to Howard Head or physical therapy.  (Doc. 132 at 5-7.)  The Special Master notes that Howard Head is a small part of the entire business of the Vail Health hospital system.  Given the substantial amount of sensitive information in the Vail Health Board minutes and agendas that has no relevance to this case, I find it is appropriate for Vail Health to produce only those portions of those documents that relate to physical therapy and/or Howard Head.  *Ajuba Int'l LLC v. Saharia*,  No. 11-cv-12936, 2014 U.S. Dist. LEXIS 134873, *9 (E.D. Mich. Sept. 25, 2014) (permitting

nonresponsive information to be redacted from board minutes); *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, No. 2179, 2011 U.S. Dist. LEXIS 158660, *5 (E.D. La. July 1, 2011) (same).

71.    On this record, I conclude that Vail Health has satisfied its obligations with respect to RFP No. 15, and that Plaintiffs' additional requests are not proportionate to the needs to the case.

## PLAINTIFFS' RFP ISSUE 10 (VAIL HEALTH PATIENT DATA)

72.    With respect to this issue, Plaintiffs request certain details with respect to patient data, including patient names and referring physicians.  Plaintiffs assert these documents were requested in their RFP No. 17.

73.    Plaintiffs' RFP No. 17 requests:

> All data identifying all physical therapy patients treated by RPC-Vail or Vail Health from November 1, 2004 to the present, including demographic information for each patient, insurance information (including insurer name, governmental entity such as Medicare Part A or Part B, self-pay etc.), referring and primary physicians, diagnoses based on an ICD9 Code, at what locations the patients were treated and when, and the amounts paid for any services billed for each patient.

(Ex. 7, at 42.)

74.    Vail Health objected to Plaintiffs' RFP No. 17 as, *inter alia*, overly broad and unduly burdensome but stated that it is "willing to meet and confer with Plaintiffs to determine whether it can produce data responsive to a narrowed version of Request for Production No. 17 that protects patient privacy by providing de-identified and/or aggregate information, does not impose an undue burden, and relates to Plaintiffs' claims in this litigation." (*Id.*)

75.    Subsequent conferrals were not productive with respect to reaching agreement on the scope of data Vail Health would produce.  Accordingly, Vail Health produced to Plaintiffs,

for the period November 1, 2013 through September 22, 2021, extensive procedure-level and encounter-level data regarding physical therapy services provided to Howard Head patients. *See* VH_Fed_00006965, VH_Fed_00006966 (Ex. 10, excerpts.). The data produced consisted of over 1 million rows of data (each a procedure provided to a patient) and included the following columns: Facility; Date of Service; Account Number; CPT (Current Procedural Terminology) Code; CPT Description; Quantity; Patient Zip, CDM Number; Insurance 1; Insurance 2; Insurance 3; Patient Payment; Patient Adjustment; Insurance Payment; and Insurance Adjustment.

76.      From the data Vail Health produced, Plaintiffs can determine, *inter alia*, what Vail Health was paid by private payers for each patient encounter, the specific procedures provided during those encounters, at which Howard Head location the service was provided, and the residence location of those patients based on zip code data provided.

77.      Plaintiffs claim that no data was provided for 2021. Plaintiffs are mistaken. VH_Fed_00006966 contains a tab titled "FYTD2021," which contains more than 117,000 rows of data through September 22, 2021.

78.      Plaintiffs also claim that the data should be "produced for each visit, not in aggregate numbers." As reflected in VH_Fed_00006965 and VH_Fed_00006966, Vail Health has produced data for each patient visit. With respect to Plaintiffs' contention that Vail Health produced "aggregate" data, that is incorrect. Vail Health tracks reimbursement data on the encounter level (rather than the procedure level), and it has produced data at that level of granularity.

79.      Plaintiffs also complain that, although they have patient zip codes, they do not have patient names and addresses. RFP No. 17 does not clearly request such information and

Vail Health has objected to providing it.  Plaintiffs have asserted that they need patient names and addresses to conduct a "survey."  However, if Plaintiffs' counsel or their expert directly contacted Vail Health patients, the Special Master finds this would be harassing, violate this Court's Protective Order, and violate HIPAA.  In addition, Plaintiffs had previously agreed that they did not require patient names and addresses to conduct a consumer survey, and represented that de-identified data would be acceptable. (Ex. 18, at 11.)  For these reasons, I conclude that production of patient names and addresses would not be proportional to the needs of this case.

80.     Plaintiffs also complain that the data produced does not include the period November 2012 through October 2013.  Vail Health objects to producing such data as unreasonably burdensome and disproportionate to the needs of the case because it would require pulling data from an archived database from which pulling data requires substantial manual, time-consuming work by Vail Health personnel.  Vail Health personnel spent more than 60 hours pulling and validating more than 1 million rows of encounter-level data from systems from November 2013 through the present from Vail Health's current and more recent legacy medical records systems. (Ex. 19, ¶ 8.)

81.     Patient data from November 2012 to October 2013 may have some marginal relevance to Plaintiffs' contentions regarding the relevant geographic market or Vail Health's pricing of physical therapy services.  However, Plaintiffs already have pricing data from this period because they have Vail Health's chargemasters, as well as Vail Health's third-party payer contracts.  I further note that Plaintiffs did not enter the market until 2015.  Judge Martinez recently observed that information from prior to 2015 is of marginal relevance to this case, observing, "[h]ad this matter been before the undersigned in the first instance, he might well have not given Plaintiffs as lengthy a discovery period as did Judge Gallagher."  (Doc. 247 at 8.)

In light of this, I find that this data would be of minimal relevance and would impose substantial burdens on Vail Health to produce.  I therefore conclude that it is not proportional to the needs of the case.[3]

### PLAINTIFFS' RFP ISSUE 11 (VAIL HEALTH CHARGEMASTERS)

82.     With respect to this issue, Plaintiffs assert claims regarding Vail Health's chargemasters as requested in RFP. No. 18.

83.     Plaintiffs' RFP No. 18 requests "All documents related to any chargemaster used during the relevant period, including each chargemaster that was in use, as well as all documents discussing, supporting, or identifying any factors, costs, or expenses associated with any physical therapy services identified in any chargemaster."  (Ex. 7, at 43.)

84.     In response to RFP No. 18, Vail Health has produced all of its chargemasters, as well as extensive documentation regarding how its prices for physical therapy were set. (Ex. 20, exemplars; Ex. 21, Communications regarding Vail Health's pricing of physical therapy services, representative samples.)

85.     Plaintiffs claim that "Vail Health chargemasters have not been produced for November 1, 2012 to 2014."  This appears to be an oversight. Vail Health has produced chargemasters for 2012-2014.  (Ex. 20.)

86.     Plaintiffs also complain that two witnesses, Doris Kirchner and Nicholas Brown, did not know at their deposition how physical therapy charges were set.  This complaint appears unrelated to Plaintiffs' request for production of documents, but in any event, this information

---

[3] The burden of pulling data from the November 2012 through October 2013 time period was not the subject of the briefing regarding any of Plaintiffs' motions to compel.  If the Special Master is inclined to conclude that such data is discoverable, Vail Health requests an opportunity to brief the issue of the substantial burdens associated with pulling this data.

has been provided by Vail Health.  Vail Health's response to Interrogatory No. 18 identified by name the individuals involved in setting the prices in Vail Health's chargemasters, including Angela Parham, Cindy Lansdowne, Becky Puhl, and Ashley Yeo.  (Ex. 7, at 30-31.)  Plaintiffs have not sought to depose any of these individuals.

87.     On this record, I find and conclude that Vail Health has satisfied its obligations with respect to RFP No. 18.

### PLAINTIFFS' RFP ISSUE 13 (SPRI/STEADMAN/VSO/VSOF DOCUMENTS)

88.     With respect to this issue, Plaintiffs request a long list of documents related to Vail Health's relationship with SPRI, Steadman, VSO, and VSOF.  Plaintiffs assert these documents were requested in their RFP No. 24.

89.     Plaintiffs' RFP No. 24 requests "All documents related to any charitable contributions or pledges by Vail Health to SPRI, Steadman, or VSO from November 1, 2012 to the present, including, but not limited to, the amount of any contributions or pledges, the date the contribution or pledge was made, and whether the contribution or pledge was given for a specific purpose."  (Ex. 7, at 40.)

90.     Vail Health objected to RFP No. 24 as overly broad, unduly burdensome, and disproportionate to the needs of the case and as irrelevant to Plaintiffs' antitrust claims.

91.     As an initial matter, I note that many of the documents requested do not arguably fall within the scope of this RFP No. 24.  For example, lease agreements with SPRI or VSOF are not called for by this RFP.

92.     I further find that Plaintiffs request documents of tenuous and unclear relevance to their claims.  Plaintiffs' Amended Complaint alleges a monopoly on the part of Vail Health relating to physical therapy services.  Plaintiffs are not entitled to broad information relating to

any and all charitable donations made by the Vail Health hospital that are unrelated to physical therapy services.  Because these requests are not reasonably proportional to the needs of the case, I find Vail Health has satisfied its obligations with respect to RFP No. 24.

### PLAINTIFFS' RFP ISSUE 17 (VH_Fed_00001962-63)

93.     With respect to this issue, Plaintiffs appear to request attachments to a single document they assert was requested in their RFP No. 25.

94.     Plaintiffs' RFP No. 25 requests "[a]ll documents referencing or relating in any way to competitors of Vail Health, Howard Head, or RPC-Vail related in any way to physical therapy services from November 1, 2004 to the present."  (Ex. 7, at 49.)

95.     In response to RFP No. 25, Vail Health searched the email files of its current and former CEOs, and the current and former leaders of Howard Head with the following search terms:

> "Howard Head" AND competit* w/30 therapy
> "Howard Head" AND competit* w/30 PT
> HH AND competit* w/30 therapy
> HH AND competit* w/30 PT

96.     This search generated numerous communications and presentations discussing physical therapy providers Vail Health considers to be competitors (Ex. 22, representative samples).  Vail Health also answered Interrogatory No. 24, describing who it believes its competitors are.

97.     As is apparent from the document the Plaintiffs reference, the attachments related to market share for hospitals, not for physical therapy services.  Thus, the documents are not responsive to RFP No. 25 or relevant to this case.

98.     On this record, I find that Vail Health has fulfilled its obligations with respect to RFP No. 25 and I find no reason to challenge the assertion that any attachments to this document are not responsive to RFP No. 25.

**PLAINTIFFS' RFP ISSUE 19 (REVISED PRIVILEGE LOG)**

99.     Vail Health produced its privilege log to Plaintiffs on September 10, 2021. In response to Plaintiffs' request, Vail Health provided a revised privilege log on November 2, 2021.  (Ex. 25.)  Plaintiffs assert that the revised log does not set out who was a primary recipient versus a "cc" on each email, "making it impossible to determine whether an attorney was simply copied or could have provided legal advice that would be protected by the attorney-client privilege."

100.    The Special Master finds that Vail Health's initial and revised privilege log provide sufficient information to evaluate Vail Health's claims of privilege.  There is no requirement that a privilege log identify whether recipients of an email were in the "to" field or the "cc" field, given that such placement is often arbitrary.  *See, e.g.*, *ePlus Inc. v. Lawson Software, Inc.*, 2012 U.S. Dist. LEXIS 177616, *25-26 (E.D. Va. Dec. 14, 2012) (emails carbon copying attorney were privileged); *Santrade, Ltd. v. GE*, 150 F.R.D. 539, 545 (E.D.N.C. 1993) ("document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds").

101.    Plaintiffs also request *in camera* review of documents identified on the privilege log, but they have not identified what specific documents they wish Vail Health to submit for in camera review.  Thus, I deny the request for *in camera* review.

102.    For the foregoing reasons, I find and conclude that Vail Health timely produced an adequate privilege log.

**PLAINTIFFS' RFP ISSUE 19 (SEARCH TERMS)**

103.    With respect to this issue, Plaintiffs request certain information regarding search terms and custodians Vail Health used to guide its document production.

104.    On November 10, Vail Health addressed these issues in great detail in a letter to Plaintiffs.  Plaintiffs have not raised any further questions or issues regarding search terms. (Ex. 5.)

105.    Thus, I find Vail Health has met its obligations to provide Plaintiffs with a description of its search terms.

**PLAINTIFFS' RFP ISSUE 20 (ADDITIONAL CUSTODIANS)**

106.    Plaintiffs request that Vail Health search the email files of Vail Health's current CFO, three former Vail Health CFOs, as well as another employee, Karen Hannah, who works in Decision Support—five additional custodians.  The CFOs and Ms. Hannah have responsibilities for the entire hospital and thus any involvement with Howard Head was a very small portion of their work.

107.    In the State Court Action, Vail Health searched files of 24 custodians using Plaintiffs' requested search terms.  In this action, Vail Health ran a set of more than 50 search terms and has already produced all responsive documents located in the emails of Vail Health's current CEO (Will Cook), former CEO (Doris Kirchner), current leader of Howard Head (Mary Ellen Broersma) and former leader of Howard Head (Nicholas Brown).  (Ex. 5.)

108.    When Vail Health produces documents to Plaintiffs, it provides metadata showing the custodian of each document.  Plaintiffs did not request additional custodians until the last month of discovery in this case. Because collecting documents from five additional custodians would delay this matter for weeks or months, and because Plaintiffs delayed raising the issue of

additional custodians until just before the close of discovery, Plaintiffs waived their right to request collection from additional custodians.

109.    In any event, Plaintiffs have not identified what significant additional information might be discovered by including these additional employees.  I find that the likelihood of finding relevant, non-duplicative material in the email files of these additional individuals is slim and disproportionate to the needs of the case.

## PLAINTIFFS' INTERROGATORY ISSUES 1-10

110.    Plaintiffs next raise a number of issues regarding Vail Health's responses to Plaintiffs' interrogatories.

111.    Before addressing each individual issue Plaintiffs raise regarding Vail Health's interrogatory responses, I note that Judge Martinez has reviewed Vail Health's interrogatory responses in connection with prior motion practice and concluded that Vail Health "provided substantive, detailed responses to nearly all interrogatories." (Doc. 113 at 6.)

## PLAINTIFFS' INTERROGATORY ISSUE 1

112.    Plaintiffs first contend, in Interrogatory Issue 1, that Vail Health failed to adequately respond to Plaintiffs' Interrogatory No. 9.

113.    Interrogatory No. 9 requests that Vail Health "[i]dentify and describe in detail Vail Health's contention as to the correct 'relevant geographic market' underlying the Complaint for antitrust violations and identify all documents by bates number that support or refute those contentions."

114.    Vail Health's response to Interrogatory No. 9 describes in detail Vail Health's contentions regarding the relevant geographic market, stating in relevant part:

> Vail Health contends that Plaintiffs' proposed geographic market of the Vail Valley from East Vail to Gypsum, Colorado (Am.

> Compl. ¶ 35) is unduly narrow.  The reasons that Plaintiffs'
> proposed geographic market is unduly narrow include, but are not
> limited to: (1) patients' willingness to travel to providers outside of
> the Vail Valley for physical therapy services, such as those in
> Glenwood Springs and the Frisco/Dillon/Silverthorne area; (2) the
> willingness of physical therapists, such as those employed by
> Sports Rehab Consulting LLC ("SRC"), to travel to treat residents
> of or visitors to the Vail Valley; and (3) the availability of remote
> physical therapy and at-home treatments as an alternative to in-
> person physical therapy.

(Ex.  7, at 17-18.),

115.     Vail Health contends that it does not have market power with respect to physical therapy services in any geographic market.  (Doc. 152 at 4.)  Thus, the "correct 'relevant geographic market' underlying the Complaint for antitrust violations" referenced in Interrogatory No. 9 simply does not exist, in Vail Health's view.  Nonetheless, Vail Health's response to Interrogatory No. 9 "identif[ies] and describe[s]" Vail Health's position regarding Plaintiffs' alleged geographic market, including by describing the reasons Vail Health contends Plaintiffs' proposed geographic market is unduly narrow.  Vail Health has no obligation to prove a relevant geographic market; that burden lies solely with Plaintiffs.  *Food Lion, LLC v. Dean Foods Co.*, 730 F. Supp. 2d 804 (E.D. Tenn. 2010) ("[T]he burden of establishing the relevant geographic market is on plaintiffs, not [defendant], and [defendant] is not required to provide expert testimony as to a different geographic market.").  Interrogatory No. 9 is a contention interrogatory, and the Special Master finds that Vail Health has appropriately responded by describing its contention regarding Plaintiffs' alleged geographic market.

116.     As to Plaintiffs' request in Interrogatory No. 9 that Vail Health identify "all documents by bates number that support or refute" Vail Health's contention regarding the alleged geographic market, Vail Health properly objected to identifying all such documents.  *See, e.g.*, *Convolve, Inc. v. Compaq Comput. Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004) (holding

- 29 -

that a party need not identify in an interrogatory response all documents supporting a contention because "a contention interrogatory is not simply a vehicle for requiring an adversary to regurgitate all factual information obtained in discovery" (internal quotation marks omitted)); *Kelly v. Advanta Corp.*, No. 02-250, 2003 U.S. Dist. LEXIS 30499, at *26 (D.N.M. Mar. 21, 2003) ("When an interrogatory or document request seeks 'any and all' or 'each and every' discussion or document, it is unreasonable on its face.").  Vail Health has produced, *inter alia*, "documents that support its contention that the geographic and product/service markets alleged in Plaintiffs' Amended Complaint are not plausible" and documents reflecting "evaluation of which physical therapy or other service providers Vail Health considered and/or does consider to be competitors of Howard Head Sports Medicine's physical therapy services."  (Ex. 22; Ex. 23.) Because Plaintiffs are themselves capable of assessing which of the documents Vail Health produced bear on the geographic market alleged in Plaintiffs' complaint, requiring Vail Health to identify "all documents by bates number that support or refute" its contention regarding the alleged geographic market would serve no purpose other than to impose burdens on Vail Health.

## PLAINTIFFS' INTERROGATORY ISSUE 2

117.    Plaintiffs next claim that Vail Health failed to adequately respond to Interrogatory No. 11.  Interrogatory No. 11 is as follows:

> Identify each and every individual, including each Vail Health director, officer, manager, employee, attorney and his or her law firm, accountant and his or her accounting firm, and consultant and his or her firm, who participated in discussions, meetings, or negotiations related to any joint venture, collaboration, or strategic partnership. For each and every such discussion, meeting, and communication;
>
> (a) Identify the subject matter of the joint venture, collaboration, or strategic partnership discussed, including the proposed location and services to be provided;

        (b) The date and location of where each discussion, meeting, or communication was held;

        (c) Whether any understanding or agreement was reached, whether that be preliminary or final; and if so, the terms of such understanding or agreement.

        (d) And if no understanding or agreement was reached, the reasons why no such understanding or agreement was reached; and

        (e) Identify by bates number all documents referred to or relied upon in answering this interrogatory.

(Ex. 7, at 19.)

118.    Interrogatory No. 11 is extraordinarily broad and burdensome.  *See Kelly*, 2003 U.S. Dist. LEXIS 30499, at *26. For example, it requests information regarding any joint venture, collaboration, or strategic partnership, even if unrelated to physical therapy services. It also likely constitutes multiple interrogatories, given its extremely broad subject matter and multiple sub-parts, which violates the scheduling order limiting Plaintiffs to 25 interrogatories.

119.    Nonetheless, Vail Health provided a detailed response that (a) identified by bates number documents that had already been produced concerning prospective physical therapy joint ventures; (b) identified the dates meetings took place regarding those prospective joint ventures, with reference to the bates numbers of documents reflecting the occurrence of those meetings; and (c) identified by name thirteen individuals who were involved in discussions concerning those prospective joint ventures.  I find that Vail Health's response represents a good faith effort to provide potentially relevant information in response to an interrogatory of stunning scope. Vail Health has satisfied its discovery obligations with respect to Interrogatory No. 11.

120.    To the extent Plaintiffs' request information regarding physical therapy services provided outside of the alleged Vail Valley Market, they seek information outside the scope of permissible discovery in this case, as discussed above.

121.     Moreover, as discussed above, Vail Health has performed a reasonable search for documents concerning the prospective joint ventures between Vail Health and the Steadman Clinic or VSO concerning physical therapy and has produced those documents.  Plaintiffs have the information they need to pursue their claims regarding those potential transactions.

## PLAINTIFFS' INTERROGATORY ISSUE 3

122.     Plaintiffs also claim that Vail Health failed to adequately respond to Interrogatory No. 12.  Interrogatory No. 12 is as follows:

> Identify each and every individual, including each Vail Health director, officer, manager, employee, attorney and his or her law firm, accountant and his or her accounting firm, or consultant and his or her firm, who participated in discussions, meetings, or negotiations related to prices, pricing, price increases or decreases, costs, profits, terms and conditions, or Medicare or medical insurance reimbursement for physical therapy treatment relating to any joint venture, collaboration, or strategic partnership. For each and every such discussion, meeting, and communication:
>
> (a) Identify the subject matter of the joint venture, collaboration, or strategic partnership discussed, including the proposed location and services to be provided;
>
> (b) The date and location of where each discussion, meeting, or communication was held;
>
> (c) Whether any understanding or agreement was reached, whether that be preliminary or final; and if so, the terms of such understanding or agreement.
>
> (d) And if no understanding or agreement was reached, the reasons why no such understanding or agreement was reached; and
>
> (e) Identify by bates number all documents referred to or relied upon in answering this interrogatory.

(Ex. 7, at 23-24.)

123.    Interrogatory No. 12 is extraordinarily broad and burdensome.  *See Kelly*, 2003 U.S. Dist. LEXIS 30499, at *26.  It also likely constitutes multiple interrogatories, given its extremely broad subject matter and multiple sub-parts, which violates the scheduling order limiting Plaintiffs to 25 interrogatories.

124.    Vail Health objected to Interrogatory No. 12, but also incorporated its detailed response to Interrogatory No. 11 into its response to Interrogatory No. 12.

125.    Vail Health also identified in its response to Interrogatory No. 18 the individuals involved in development of Vail Health's chargemaster pricing, namely Angela Parham, Cindy Lansdowne, Becky Puhl, and Ashley Yeo.  Plaintiffs have not requested the depositions of any of those individuals.

126.    Moreover, as discussed above, Vail Health has performed a reasonable search for documents concerning the prospective joint ventures between Vail Health and the Steadman Clinic or VSO concerning physical therapy and has produced those documents.  Plaintiffs have the information they need to pursue their claims regarding those potential transactions.

127.    The Special Master finds that Interrogatory No. 12 is overly broad and unduly burdensome.  The Special Master also finds that Vail Health has satisfied its discovery obligations regarding Interrogatory No. 12.

## PLAINTIFFS' INTERROGATORY ISSUE 4

128.    Plaintiffs also claim that Vail Health failed to adequately respond to Interrogatory No. 13.  Interrogatory No. 13 provides as follows:

> Identify each and every individual, including each Vail Health director, officer, manager, employee, attorney and his or her law firm, accountant and his or her accounting firm, or consultant and his or her firm, who participated in discussions, meetings, or negotiations relating to legal or regulatory issues relating to any joint venture, collaboration, or strategic partnership, including

antitrust issues such as those prohibited by the Sherman Act, 15 U.S.C. § 2; kickback issues such as those prohibited under the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b); or physician referral issues, such as those prohibited by the Stark Law, 42 U.S.C. § 1395nn. For each and every such discussion, meeting and communication:

(a) Identify the subject matter of the joint venture, collaboration, or strategic partnership discussed, including the proposed location and services to be provided;

(b) The date and location of where each discussion, meeting, or communication was held;

(c) Whether any understanding or agreement was reached, whether that be preliminary or final; and if so, the terms of such understanding or agreement;

(d) And if no understanding or agreement was reached, the reasons why no such understanding or agreement was reached; and

(e) Identify by bates number all documents referred to or relied upon in answering this interrogatory.

(Ex. 7, at 24-25.)

129. Interrogatory No. 13 is extraordinarily broad and burdensome. *See Kelly*, 2003 U.S. Dist. LEXIS 30499, at *26. For example, it requests information related to "any joint venture" of Vail Health, even those that are unrelated to physical therapy services. It also constitutes multiple interrogatories, given its extremely broad subject matter and multiple sub-parts, which violates the scheduling order limiting Plaintiffs to 25 interrogatories.

130. Vail Health objected to Interrogatory No. 13, but also incorporated its detailed response to Interrogatory No. 11 into its response to Interrogatory No. 13. Vail Health's response to Interrogatory No. 11 identified by name "Matthew C. Jones and Donald R. Auten of Duane Morris LLP" as attorneys who were involved with analyzing legal and regulatory compliance of the contemplated physical therapy joint ventures. Vail Health's detailed privilege

log similarly provides extensive information regarding attorneys from whom Vail Health has received legal advice.

131.     Moreover, as discussed above, Vail Health has performed a reasonable search for documents concerning the prospective joint ventures between Vail Health and the Steadman Clinic or VSO concerning physical therapy and has produced those documents.  Plaintiffs have the information they need to pursue their claims regarding those potential transactions.

132.     The Special Master finds that Interrogatory No. 13 is overly broad and unduly burdensome.  The Special Master also finds that Vail Health has satisfied its discovery obligations regarding Interrogatory No. 13.

## PLAINTIFFS' INTERROGATORY ISSUE 5

133.     Plaintiffs claim that Vail Health failed to adequately respond to Interrogatories Nos. 14 and 15.

134.     Interrogatory No. 14 requests that Vail Health "[i]dentify by year and each doctor group, including, but not limited to Steadman and VSO, the number of patients and the amount of revenues and profits that were generated by doctor referrals to Howard Head for each year from November 1, 2004 to the present, and in doing so, identify whether those referrals, revenues, or profits were realized by RPC-Vail or Vail Health." (Ex. 7, at 25.)

135.     Interrogatory No. 15 requests that Vail Health "[i]dentify by year the two doctor groups of Steadman and VSO, the number of patients, revenues, and profits that were generated by referrals from each of them to Howard Head as a percentage of the total number of patients, revenues, and profits that were generated by RPC-Vail and Vail Health from November 1, 2004 to the present." (Ex. 7, at 26.)

136.     In response, Vail Health agreed to produce, per Fed. R. Civ. P. 33(d), "documents maintained in the ordinary course of business summarizing referral sources of Vail Health's physical therapy patients in the Vail Valley."  Vail Health's response to Interrogatory No. 14 referenced by bates number an analysis of referral sources for 2013 through August 2016 that had already been produced as of the date of Vail Health's response.  For example, VH_Fed_00002225 alone provides analysis of referral sources, as well as substantial backup, for FY2012 through FY2018.  (Ex. 24.)  It is unclear what additional information Plaintiffs contend they need.

137.     Vail Health is not required to create analyses for Plaintiffs that it does not maintain in the ordinary course of business.  7 Moore's Federal Practice § 34.12 ("A party cannot be compelled to create, or cause to be prepared, new documents solely for their production."); *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, 2010 U.S. Dist. LEXIS 17857, *41-42 (D. Colo. Feb. 8, 2010).

138.     Vail Health has satisfied its discovery obligations regarding Interrogatories Nos. 14 and 15.

## PLAINTIFFS' INTERROGATORY ISSUE 6

139.     Plaintiffs next claim that Vail Health has failed to adequately respond to Interrogatory No. 18, which requests that Vail Health "[d]escribe in detail how Vail Health developed any chargemasters from November 1, 1999 to the present, and in doing so, identify the chargemasters in use during this period of time, the directors, officers, managers, employees, consultants, and accountants who were involved in setting prices or fees, and identify all components of any prices or charges related in any way to physical therapy services identified on the chargemaster during that same period of time." (Ex. 7, at 30.)

140.    As discussed above, Vail Health has produced its chargemasters spanning the discovery period.

141.    Additionally, in Vail Health's interrogatory response, it identified Ashley Yeo as the Vail Health employee who managed the development of Vail Health's 2019 Chargemaster. It also described how Vail Health developed the Chargemaster, specifying that "Vail Health used the KnowledgeSource tool provided by third-party vendor nThrive to develop the 2019 chargemaster.  Because of the highly competitive nature of physical therapy practices and patients' ability to comparison shop among providers, Vail Health set the prices for physical therapy services in its 2019 chargemaster at the 25th percentile price level found within nThrive's KnowledgeSource tool."  Plaintiffs made no efforts to notice the deposition of Ashley Yeo or subpoena nThrive.

142.    With respect to years prior to 2019, Vail Health identified by name the three former employees who Vail Health believes were involved in preparation of Vail Health's chargemasters, Angela Parham, Cindy Lansdowne, and Becky Puhl.  Plaintiffs have not followed up by subpoenaing any of these former employees for deposition.

143.    Plaintiffs have extensive discovery regarding Vail Health's chargemasters, who developed them, and how they were developed.  Vail Health has satisfied its obligations regarding Interrogatory 18.

**PLAINTIFFS' INTERROGATORY ISSUE 7**

144.    Plaintiffs also argue that Vail Health failed to adequately respond to Interrogatory No. 20.  Interrogatory No. 20 provides as follows:

> Identify each and every attorney (in-house or outside counsel), together with the name, address, and telephone number each attorney and his or her law firm, who was employed or engaged by Vail Health for the purpose of

providing advice, counselling, planning, negotiating, litigation, and/or any other legal services to Vail Health with respect to each of the following subject matters:

(a) The planning, discussions, negotiations, or signing of any services agreements between Vail Health and RPC-Vail from January 1, 1999 to October 31, 2012;

(b) Legal, regulatory, or compliance issues or questions arising from the methodology used by and manner in which Vail Health billed, charged, invoiced, or otherwise requested reimbursement from payers for physical therapy services provided by RPC-Vail from January 1, 1999 to October 31, 2012;

(c) The planning, discussions, negotiations, or any agreements relating to the nonrenewal of any services agreements between Vail Health and RPC-Vail from January 1, 2012 to December 31, 2013; and

(d) Vail Health's refusal to return to RPC-Vail those documents referenced in Interrogatory No. 5 from January 1, 2012 to December 31, 2013;

(e) The planning, discussions, negotiations, or any agreements relating to any joint venture, collaboration, or strategic partnership related in any way to physical therapy services from January 1, 2014 to the present; and

(f) Legal, regulatory, or compliance issues relating any joint venture, collaboration, or strategic partnership related in any way to physical therapy services from January 1, 2014 to the present.

(Ex. 7, at 32.)

145.    The Special Master finds that Interrogatory No. 20 constitutes at least six interrogatories.  As such, it violates the Scheduling Order, which limits Plaintiffs to 25 interrogatories.

146.    The Special Master also finds that Interrogatory No. 20 is unreasonably broad, unduly burdensome, and disproportionate to the needs of the case.

147.    Plaintiffs belatedly seek to narrow Interrogatory No. 20 to seek information regarding attorneys involved in joint venture negotiations regarding the prospective joint ventures concerning physical therapy with The Steadman Clinic and VSO.  Vail Health has identified those attorneys in its response to Interrogatory No. 11, as well as its privilege log.

148.    The Special Master sustains Vail Health's objections to Interrogatory No. 20 and finds that Vail Health, through its interrogatory responses and document production, has satisfied its obligations with respect to Interrogatory No. 20.

## PLAINTIFFS' INTERROGATORY ISSUE 8

149.    Plaintiffs next claim that Vail Health failed to adequately respond to Interrogatory No. 21(c) – (d). Interrogatory No. 21(c) – (d) is as follows:

> Identify each and every Vail Health accountant (such as Vail Health's Chief Financial Officers) together with the name, address, and telephone number of each and every accountant (such as public accountants) and his or her accounting firm, who was employed or engaged by Vail Health for the purpose of providing financial advice, counselling, planning, negotiating, or any other accounting, financial or compliance services to Vail Health with respect to each of the following subject matters:
>
> (c) The planning, discussions, or negotiations relating to the nonrenewal of any services agreement between Vail Health and RPC-Vail from January 1, 2012 to December 31, 2013; and
>
> (d) The planning, discussions, negotiations, or any agreements relating to any joint venture, collaboration, or strategic partnership related in any way to physical therapy services from January 1, 2014 to the present.

(Ex. 7, at 33.)

150.    Interrogatory No. 21 is extraordinarily broad and burdensome.  *See See Kelly*, 2003 U.S. Dist. LEXIS 30499, at *26.  It also constitutes multiple interrogatories, given its

extremely broad subject matter and multiple sub-parts, which violates the scheduling order limiting Plaintiffs to 25 interrogatories.

151.    Vail Health objected to Interrogatory No. 21 but incorporated its detailed responses to Interrogatories No. 1, 2, 3, 4, 5, 11, and 13, and Request for Production No. 21 in its response to Interrogatory No. 21.

152.    Plaintiffs' belated effort to narrow Interrogatory No. 21 is improper.

153.    The Special Master sustains Vail Health's objections to Interrogatory No. 21. The Special Master also finds that Vail Health has satisfied its discovery obligations regarding Interrogatory No. 21.

## PLAINTIFFS' INTERROGATORY ISSUE 9

154.    Plaintiffs next claim that Vail Health failed to adequately respond to Interrogatory No. 23(d) – (e).  Interrogatory No. 23(d) – (e) is as follows:

> Identify each and every third-party vendor, healthcare consultant, strategic planning consultant, marketing consultant, or Medicare compliance consultant or expert, together with the name, address, and telephone number of each of their firms (such as McKinsey & Assoc.) that were employed or engaged by Vail Health during the period beginning January 1, 1999 and continuing to the present, for the purpose of providing billing services, healthcare consulting, strategic planning, healthcare analysis, financial analysis, marketing advice, counselling, planning, negotiating, consulting, or any other advisory or Medicare and compliance services to Vail Health with respect to each of the following subject matters:
>
> (d) Healthcare, marketing, financial, accounting, reporting, regulatory, or compliance issues arising from the planning, discussions, drafting, and/or negotiations relating to any joint venture, collaboration, or strategic partnership related in any way to physical therapy services; and

> (e) Third-party vendors providing any type of billing service, such as clearinghouses, Medicare Administrator Contractors, and billing software vendors.

(Ex. 7, at 36-37.)

155.    Interrogatory No. 23 is extraordinarily broad and burdensome.  *See Kelly*, 2003 U.S. Dist. LEXIS 30499, at *26.  For example, it requests information related to "any type of billing service" of Vail Health, even those that are unrelated to physical therapy services.  It also constitutes multiple interrogatories, given its extremely broad subject matter and multiple sub-parts, which violates the scheduling order limiting Plaintiffs to 25 interrogatories.

156.    Vail Health objected to Interrogatory No. 23, but also incorporated its detailed response to Interrogatory Nos. 1, 2, 3, 4, 5, 11, and 13 into its response to Interrogatory No. 23.  As above, Vail Health's response to Interrogatory No. 11 identified by name "Matthew C. Jones and Donald R. Auten of Duane Morris LLP" as attorneys who were involved with analyzing legal and regulatory compliance of the contemplated physical therapy joint ventures.

157.    Plaintiffs' belated effort to narrow Interrogatory No. 23 is improper.

158.    The Special Master finds that Interrogatory No. 23 is overly broad and unduly burdensome.  The Special Master sustains Vail Health's objections to Interrogatory No. 23 and finds that Vail Health has satisfied its discovery obligations regarding Interrogatory No. 23.

**PLAINTIFFS' INTERROGATORY ISSUE 10**

159.    Plaintiffs' next claim that Vail Health has failed to properly respond to Interrogatory No. 24. Interrogatory No. 24 requests that Vail Health "Identify each and every company or individual that Vail Health has considered a competitor for physical therapy services" and in doing so, identify the company or individual by name, address, and telephone number, as well as the reasons why the company or individual is or was viewed as a competitor,

- 41 -

and any plans or strategies that Vail Health considered or developed with respect to those competitors, including, but not limited, (sic) communicating with doctors at Steadman or VSO regarding those competitors." (Ex. 7 at 36.)

160.     Interrogatory No. 24 is extraordinarily broad and burdensome.  *See Kelly*, 2003 U.S. Dist. LEXIS 30499, at *26. It also constitutes multiple interrogatories, given its extremely broad subject matter and multiple sub-parts, which violates the scheduling order limiting Plaintiffs to 25 interrogatories.  In addition, it is improper because it seeks information equally available to the Plaintiffs. Information about physical therapy providers is publicly available, and Plaintiffs have not explained why they were unable to locate this information. Further, once Vail Health identified competitors by name, Plaintiffs had equal access to information about their address and telephone number.

161.     Vail Health objected to Interrogatory No. 24 but nonetheless incorporated its detailed response to Interrogatory No. 10 into its response to Interrogatory No. 24. Additionally, Vail Health agreed to produce and has produced documents relating to analyses of competitors. (Ex. 22.) Further, Vail Health identified numerous physical therapy practices that it considers to be competitors.

162.     As discussed above, Vail Health has conducted a reasonable search for responsive documents and has produced responsive documents. Plaintiffs have the information they need to assess who Vail Health considered to be competitors.

163.     The Special Master sustains Vail Health's objections to Interrogatory No. 24 and finds that Vail Health has complied with its discovery obligations as to Interrogatory No. 24.

## PLAINTIFFS' MOTION TO COMPEL #5

164.     Plaintiffs' Motion to Compel #5 (Doc. 195) raises additional issues regarding Vail Health's privilege log.  The Motion acknowledges that Vail Health had informed Plaintiffs that it would provide an amended log (*id.* at 2), but Plaintiffs proceeded to file the Motion without awaiting the amended log.

165.     Vail Health provided Plaintiffs an amended log on November 2.  (Ex. 25.)  As noted above, both Vail Health's original log and amended log provided sufficient detail to establish privilege for the relevant documents.  Thus, to the extent the Motion raises general complaints about the privilege log, those are rejected.

166.     The Motion also asserts that Vail Health has improperly asserted privilege as to certain documents reflecting fair market valuations of Howard Head.  (Doc. 195 at 9-12.)  Vail Health describes in detail the basis for the assertion of privilege for each of these documents. (Doc. 213 at 8-12.)  Vail Health also provided a declaration from Nicholas Brown, the former Senior Vice President of Howard Head Sport Medicine, explaining that the fair market valuations at issue were obtained at the direction of counsel for purposes of allowing counsel to advise Vail Health regarding regulatory issues, including compliance with the Stark Act and Anti-Kickback Statute.  (Doc. 213-3.)  Such communications are subject to attorney-client privilege.  *United States v. Kovel*, 296 F.2d 918, 923 (2d. Cir. 1961) (third party communication to obtain legal advice made in confidence privileged); *Austin v. City & Cnty. of Denver*, 2006 U.S. Dist. LEXIS 32048, *15-18 (D. Colo. May 18, 2006).

167.     Vail Health has offered to make these documents available for *in camera* review. (Doc. 213 at 8.)  I do not find this necessary.  The affidavit of Mr. Brown amply supports the assertion of privilege with respect to these documents.

168.     Finally, the Motion asserts that Vail Health has waived the privilege as to documents sent to Vail Health Board members.  I find no factual or legal support for this contention, and it is denied.

## PLAINTIFFS' REQUESTS FOR SANCTIONS AND ATTORNEYS' FEES

169.     If a motion filed under Fed. R. Civ. P. 37 is granted, the court must "require the party…whose conduct necessitated the motion… to pay the movant's reasonably expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). However, the court "must not order this payment" if "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Substantially justified does not mean "'justified to a high degree,' but rather has been said to be satisfied if there is a 'genuine dispute.'" *Pierce v. Underwood*, 487 U.S. 552, 566 (1988); *Lester v. City of Lafayette*, 639 Fed. Appx. 538, 542 (10th Cir. 2016) (substantially justified "connotes 'not justified to a high degree, but rather justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person.'") (internal citations omitted).

170.     Plaintiffs have requested their attorneys' fees and costs associated with bringing Motions to Compel Nos. 1-5.

171.     Because, however, I am denying Plaintiffs' Motions to Compel Nos. 1-5, Plaintiffs are not entitled to an award of their attorneys' fees or costs.

172.     If a motion filed under Fed. R. Civ. P. 37 is denied, "the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party…who opposed the

motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B). Like Fed. R. Civ. P. 37(a)(5)(A), a court must deny "this payment if the motion was substantially justified or other circumstances make an award of expenses unjust." *Id.*

173.    Because I am denying Plaintiffs' Motions to Compel Nos. 1-5 in full, I find that Vail Health is entitled to its reasonable attorneys' fees and costs incurred in defending these motions. I find that Plaintiffs' Motions were not substantially justified and that no circumstances make this award of expenses unjust.

174.    Pursuant to Fed. R. Civ. P. 37(a)(5)(B), Vail Health is instructed to submit an affidavit outlining its expenses and attorneys' fees incurred in defending against Plaintiffs' Motions to Compel Nos. 1-5 within fourteen days of the entry of this Order.

SO ORDERED:


_____

Hon. Terry Ruckriegle

Respectfully submitted this 6th day of December, 2021.

*s/ Shannon Stevenson*
_____
Shannon Wells Stevenson
Janet A. Savage
Jacqueline V. Roeder
Daniel A. Richards
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, Colorado, 80202
Telephone:  303.892.9400
Facsimile:  303.893.1379
Email:  shannon.stevenson@dgslaw.com
        janet.savage@dgslaw.com
        jackie.roeder@dgslaw.com
        daniel.richards@dgslaw.com

*Attorneys for Defendant VAIL CLINIC, INC.,*
*d/b/a VAIL HEALTH, a Colorado nonprofit*
*corporation*
