**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation.

      Defendant.

---

**PLAINTIFFS' RESPONSE TO VAIL HEALTH'S PARTIAL APPEAL OF
SPECIAL MASTER'S JULY 6, 2022 REPORT TO THE COURT**

---

## INTRODUCTION

      Although Vail Health claims that "[i]t is **well established** that discovery in antitrust cases is limited to the scope of the **alleged** geographic market,"[1] it cites no U.S. Supreme Court or circuit court opinion, or any academic antitrust treatise or journal article supporting that proposition.  It advocates a standard that contradicts fundamental principles of antitrust law and economics on market definition.  And it does so without referencing any Tenth Circuit controlling precedent, such as *Lantec, Inc. v. Novell, Inc.*,[2] which prescribe comparative methodologies for defining relevant geographic market that have been adopted by every circuit court.  Instead, Vail Health miscites a California district court case—*Radio Music License Committee, Inc. v. Global Music Rights, LLC*—by failing to direct this Court to the key language of the opinion that completely changes

---

[1]    Vail Health Appeal at 1 (emphasis added) [ECF No. 365].
[2]    306 F.3d 1003, 1024 (10th Cir. 2002).

the holding Vail Health represents it to be.[3]  When read with the sentences Vail Health omits—which directly follow the quoted language—*Radio Music* merely holds that when both parties agree to the same relevant market, there is no need for further discovery on that issue.  The few other district court cases Vail Health cites are basically the same. It also fails to cite the numerous district court cases cited below that hold the opposite.[4] The Special Master correctly concluded, therefore, that unlike *Radio Music*, in this case the definition of the relevant geographic market is disputed by the parties and therefore Plaintiffs are entitled to discovery outside the Vail Valley.

Vail Health also does not mention Fed. R. Civ. P. 26(b)(1), which the Special Master implicitly recognized, which provides that the scope of discovery encompasses evidence "relevant to any party's claim or defense."  It instead criticizes the Special Master for granting discovery into patient preferences[5] that would be revealed by flows in and out of contiguous counties that Vail Health's own antitrust expert says must be considered.  Courts are not reversed for granting too much discovery, but they may be reversed for precluding a party from relevant discovery that goes directly to a material issue in dispute.[6]  The U.S. Supreme Court has held that market definition is a key issue in a § 2 case.[7]  The Report follows Tenth Circuit precedent and should be adopted.

---

[3]      No.CV 19-3957, 2020 WL 7636281, at *5 (C.D. Cal. Jan. 2, 2020).
[4]      *Infra* n.20.
[5]      Vail Health Appeal at 1 (emphasis added) [ECF No.365.]
[6]      *See, e.g., Weahkee v. Norton*, 621 F.2d 1080, 1083 (10th Cir. 1980) ("Erroneous denial of discovery is ordinarily prejudicial in the absence of circumstances showing it is harmless."); *Shaklee Corp. v. Gunnell*, 748 F.2d 548, 550 (10th Cir. 1984) (same); *Glad-A-Way Gardens v. Lynn Mayer's Great Lakes Glads*, No. 93-16667, 1995 U.S. App. LEXIS 7835, at *15-16 (9th Cir. Apr. 6, 1995) (denying relevant discovery in antitrust suit made it impossible to resist summary judgment and constituted reversible error).
[7]      *See, e.g., Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n. 15 (1992) ("market definition generally determines the result of the case") (citing Robert

## ARGUMENT

**I.      THE SCOPE OF PLAINTIFFS' RESPONSE TO THE APPEAL.**

For Motion to Compel #1, the Special Master was presented with a review of Sherman Act § 2 law that examined the economic and legal principles underlying the methodologies for defining relevant geographic markets.[8]   Vail Health provides this Court with no § 2 background and no context that explains the sound reasoning of the Special Master.  Plaintiffs, as they are entitled to do, respond more broadly than the narrow focus of Vail Health's appeal.  This approach provides the Court with more fulsome explanations and alternative grounds for the recommendations to be adopted beyond the narrow focus of Vail Health's appeal.[9]   This Court, of course, may adopt the recommendations of the Report on any ground that the record sufficiently supports.

**II.     THE LEGAL DEFINITION OF RELEVANT GEOGRAPHIC MARKET.**

This is an antitrust action under the Sherman Act, 15 U.S.C. § 2, making it unlawful for a person or firm to "monopolize, or attempt to monopolize...any part of the trade or commerce…."[10]   It requires proof of a monopoly, which is "the possession of monopoly power"[11]—that is, "the power to control prices or exclude competition."[12] Exclusion of competition violates § 2 of the Sherman Act when there is an

---

Pitofsky, *New Definitions of Relevant Market and Assault on Antitrust*, 90 Colum. L. Rev. (1990) ("the most important single issue in most actions—because so much depends on it—is market definition").

[8]      *See* ECF Nos. 127, 165, 253 [Pls.' Mot. #1, Reply, Proposed Order].

[9]      *Tarabishi v. McAlester Reg'l Hosp*, 951 F.2d 1558, 1563 n.3 (10th Cir. 1991) (citing *In re Robinson,* 921 F.2d 252, 253 (10th Cir. 1990); *Koch v. City of Hutchinson,* 847 F.2d 1436, 1441 n. 14 (10th Cir.) that party may raise any ground to uphold decision).

[10]     ECF No. 26 ¶¶ 34-42, 243-73 [Am. Compl.].

[11]     *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966); *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1119 (10th Cir. 2014).

[12]     *United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 391 (1945).

anticompetitive effect in a relevant geographic market,[13] which must be defined by facts developed through discovery. Plaintiffs generally claim narrower markets and defendants claim broader markets,[14] so its definition is one of the most hotly contested issues in § 2 antitrust cases.[15] Ultimately, the issue is usually decided by a jury.[16]

A market definition does not end at the preliminary stage of the case as Vail Health's arguments suggest. Although the framework a plaintiff develops for alleging a *prima facie* § 2 case rests on defining a geographic market and showing undue concentration in that market, that definition may change as facts are developed in discovery.[17] A plaintiff may have alternative theories of the anticompetitive harm caused by a defendant, depending on inconsistent market definitions. While on the merits, the plaintiff would have to proceed with only one of those theories, until the facts are fully developed, the market definition alleged in the complaint is not static.[18] Thus, "the relevant market's boundaries are not determined by allegations, but by evidence regarding market realities….[Because] market definition is a highly fact-based inquiry…the definition is dependent on facts revealed during discovery. This non-controversial proposition is black-letter law for antitrust cases."[19]

---

[13] *Id.; Reazin v. Blue Cross & Blue Shield of Kan., Inc.*, 899 F.2d 951, 966 (10th Cir. 1990).
[14] *F.T.C. v. Whole Foods Market, Inc.*, 548 F.3d 1028, 1037-38 (D.C. Cir. 2008).
[15] *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n.15 (1992).
[16] *United States v. Conn. Nat'l Bank,* 418 U.S. 656, 669 (1974); *Lenox,* 762 F.3d at 1123 (citing *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1071 (10th Cir. 2013)); *Lantec,* 306 F.3d at 1024.
[17] *Whole Foods,* 548 F.3d at 1036-37.
[18] *Id.* at 1036 (citing *United States v. Baker Hughes Inc.,* 908 F.2d 981, 982-83 (D.C. Cir. 1990)).
[19] *Health All. Plan of Mich. v. Blue Cross Blue Shield of Mich. Mut. Ins. Co.*, Civil Action No. 14-13788, 2018 U.S. Dist. LEXIS 233332, at *7 (E.D. Mich. Jan. 2, 2018). *See also Foundation For Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 244 F.3d 521, 531 (6th Cir. 2001) ("Market definition is a highly fact-based analysis that

III.   **TENTH CIRCUIT PRECEDENT REQUIRES DISCOVERY OUTSIDE THE AREA PLAINTIFFS ALLEGE IS THE RELEVANT GEOGRAPHIC MARKET.**

A.   **Discovery Is Not Limited To Plaintiffs' Alleged Geographic Market.**

Vail Health claims that "[i]t is well established that discovery in antitrust cases is limited to the scope of the ***alleged*** geographic market"[20] and then asserts that "discovery outside of plaintiff's alleged geographic market is irrelevant."[21]   But neither "well established" nor "irrelevant" are correct.   The sentence in *Radio Music* that Vail Health references is a parenthetical that states: "courts generally limit discovery to the ambit of the ***applicable*** market."[22]   If *Radio Music* was not studied carefully, the cited language would lead one to conclude that, when applied to this case, discovery should be limited to the geographic market defined in Plaintiffs' complaint.   At the October 21 hearing, the Special Master recognized that if a plaintiff says it is "A" and the defendant says it is "B," each side is entitled to discovery regarding each side's position.   This is consistent with *Radio Music* and its holding: "Here, both parties' complaints identify terrestrial radio

---

generally requires discovery."); *In re Loestrin 24 Fe Antitrust Litig.,* No. 1:13-MD-2472-S-PAS, 20)17 WL 1491911, at *4 (D.R.I. Mar. 15, 2017) (ordering discovery beyond alleged market; court's should not conflate scope of discovery with market definition allegations); *SmithKline Beecham Corp. v. Apotex Corp.,* Nos. 99-CV-4304, 2006 WL 279073, at *3 (E.D. Pa. Jan. 31, 2006) ("broad discovery" applies to geographic scope and justifies discovery outside alleged market); *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 574 (D. Kan. 2009) ("discovery requested by plaintiffs, without geographic limits, is relevant to their claims"); *Prudential N.Y. Theatres Co. v. Radio City Music Hall Corp.,* 271 F. Supp. 762, 763 (S.D.N.Y. 1967) ("Courts have been hesitant to restrict plaintiff's inquiries to a limited geographical area"); *Kellam Energy, Inc. v. Duncan,* 616 F. Supp. 215, 219 (D. Del. 1985) ("regardless of how [the] geographic market is eventually defined in this action, the boundaries of that market do not set the geographic limit for discovery"); *In re Waste Mgmt. of Tex., Inc.*, 392 S.W.3d 861, 871 (Tex. Ct. App. 2013) (noting even if relevant market not disputed, information outside market still relevant for comparison purposes).

20   Vail Health's Appeal at 1 (emphasis added) [ECF No.365].
21   *Id*. at 10.
22   2020 WL 7636281, at*5.

licenses as the **applicable** market."[23]   The "applicable" product market was terrestrial radio, and it was not disputed.  There was no need for further discovery on that issue, so *Radio City* does not stand for the proposition upon which Vail Health so heavily relies.

What's more, the intent of Vail Health's failure to point out this critical language might be called into question by the fact that Vail Health cites the "limit discovery" quote to LEXIS page "*16."[24]  It cuts off the further reasoning of the court that Radio City's "own expert in this case asserts that the 'relevant product market for…GMR licenses includes…rights that *radio stations* view as good substitutes for a GMR license."[25]  "GMR agrees that the buyers in the relevant market are terrestrial radio stations."[26]  So Vail Health never alerts this Court to the fact that *Radio City* is about parties that agree on their relevant market, whereas here, as the Special Master correctly found, the parties disagree.  *Radio City* does not support Vail Health's appeal.

The other cases cited in the appeal are equally inapplicable.  *Vident v. Dentsply International, Inc.*[27] involved a case where the relevant markets had already been addressed on appeal so the magistrate judge naturally noted that "in the previous litigation between the United States and Dentsply, the Third Circuit had found that '[t]he relevant market here is the sale of artificial teeth in the United States….'"[28]  With the relevant geographic market already conclusively decided, no further discovery was required.

---

[23]   *Id.* (emphasis added).
[24]   Vail Health Appeal at 10 [ECF No. 365].
[25]   *Radio City*, 2020 WL 7636281, at *5 (emphasis provided).
[26]   *Id.*
[27]   No. SA CV 06-1141, 2008 WL 4384124 PSG (Anx), 2008 WL 4384124, at *3) (C.D. Cal. Aug. 29, 2008).
[28]   *Id.* (citing *United States v. Dentsply, Int'l, Inc.*, 399 F.3d 181, 188 (3d Cir. 2005)).

In *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, the court said that "discovery outside the relevant geographic market is 'not relevant on its face.'" The statement is unremarkable because there, like *Vident,* both parties agreed that the relevant geographic market was Kansas City. Thus, discovery was not necessary to prove facts not in dispute.[29] Likewise, in *Bal Seal Engineering, Inc. v. Nelson Prod., Inc.,* the court noted that "Judge Staton previously ruled, 'Nelson Products has adequately pleaded Bal Seal's monopoly power in the relevant markets, which are connector applications in the United States.'"[30] Although the case is short and cryptic, the statement that the "definition of the 'relevant market' defines the scope of relevant discovery" appears to be in the context of the parties clarifying the definition of the relevant ***product*** market, as the geographic market was not in dispute.

Vail Health did not cite Tenth Circuit cases because they do not support the argument that discovery is limited to the market defined in a complaint. For example, in *Tarabishi v. McAlester Regional Hospital,*[31] the Tenth Circuit upheld the district court's determination that the plaintiff had not met its burden to prove his definition of the relevant geographic market because his "expert focused only on doctors within [the] McAlester [hospital service area] itself. He did not consider doctors within the radius who did not practice in McAlester. A recurring theme in his testimony was that [the plaintiff's expert] *focused solely upon the Clinic and the City of McAlester.*"[32] In other words, the Tenth Circuit held it was error for the plaintiff's expert not to conduct economic analyses of

---

[29]     No. 05-2164, 2007, 2007 WL 2668742, at *11 (D. Kan. Sept. 6, 2007).
[30]     No. 8:13-cv-01880-JLS-KESx, 2017 U.S. Dist. LEXIS 231324, at *6 (C.D. Cal. Oct. 19, 2017).
[31]     951 F.2d 1558 (10th Cir. 1991).
[32]     *Id.* at 1568 (emphasis added).

geographic territories outside (or inside) the area plaintiffs have alleged.

As discussed below, *Lantec* and *Westman* require comparative analyses of the geographic areas where consumers look for products or services.  It is not a static analysis based solely on a plaintiff's complaint.  In virtually all antitrust cases, especially those involving healthcare, the defendant contends that the relevant geographic market is broader than the one defined by the plaintiff's complaint.[33]  The process generates hotly contested economic theories between experts[34] that rarely lend themselves to resolution under Rule 56 unless an expert fails to present sufficient facts and analysis to support his or her opinions.[35]  Tenth Circuit law instructs that adopting Vail Health's argument and precluding discovery into other competing territories would be the wrong approach.

In *Lantec*, the district court entered JNOV for the defendant on several grounds, including that the plaintiffs' expert testified that the relevant market was determined by consumer purchasing patterns that revealed consumer preferences.[36]  That would have required a comparative measurement of consumer preferences in the competing markets by patient flow data and econometric analysis, or direct evidence to define "the area of effective competition."[37]  A summary of recognized economic methodologies follows.

---

[33]     *See F.T.C. v. Penn State Hershey Med. Center*, 838 F.3d 338-39 (3d. Cir. 2016); *In re Evanston N.W. Healthcare*, No. 9315, 2007 WL 2286195, at *64 (F.T.C. Aug. 6, 2007).
[34]     *See St. Alphonsus Med. Center-Nampa Inc. v. St. Luke's Health Sys., Ltd*., 778 F.3d 775, 784 (9th Cir. 2015); *F.T.C. v. Tenet Health Care Corp*., 186 F.3d 1045, 1052-53 (8th Cir. 1999).
e[35]     *Westman Comm'n Co. v. Hobart Int'l, Inc.,* 796 F.2d 1216, 1220 (10th Cir.1986).
[36]     *Lantec,* 306 F.3d at 1025.  The Tenth Circuit likely suggested a consumer survey because the geographic market is the area where customers would look to buy such a product.  *Tunis Bros. Co. v. Ford Motor Co.,* 952 F.2d 715, 726 (3rd Cir.1991). *See also Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.,* 924 F.2d 1484, 1490 (9th Cir.1991) (where plaintiff competes does not define the relevant market).
[37]     *Id.* at 1027.

**B.     The Hypothetical Monopolist Test To Define Geographic Markets.**

Although Vail Health argued in a discovery motion that a "cognizable" geographic market cannot be defined in this case,[38] the Tenth Circuit offers a straightforward definition for doing so—it is "the narrowest market which is wide enough so that products from adjacent areas...cannot compete on substantial parity with those included in the market."[39]  This statement finds its genesis in Prof. Lawrence A. Sullivan's *Handbook of the Law of Antitrust* § 12, at 41 (1977), which resulted in economists formulating an econometric test that came to be known as the "hypothetical monopolist" or "SSNIP"[40] test.  It involves analyzing what economist call demand (buyer) substitution—that is, analyzing the buyer's preference for a product or geographic market that would be "reasonably interchangeable by consumers for the same purpose."[41]  It is the most widely-accepted method,[42] endorsed not only by the Tenth Circuit,[43] but by every other circuit.[44]

Under the hypothetical monopolist test, if a SSNIP increase of 5% or more would cause patients to travel outside the geographic market alleged by Plaintiffs, thereby making the price increase unsustainable, the geographic market is too narrow.[45]  In that

---

[38]     ECF No. 63 ¶¶ 34-36, 38-39 [Answer].

[39]     *Westman*, 796 F.2d at 1222 (quoting *Satellite Television & Associated Res., Inc. v. Cont'l Cablevision of Va., Inc.,* 714 F.2d 351, 356 (4th Cir.1983).

[40]     "SSNIP" is the acronym for "small but significant increase in price," usually measured in terms of a sustainable price increase of 5% or more.

[41]     *E.I. du Pont de Nemours*, 351 U.S. at 392-95.

[42]     Werden, Gregory J., *The 1982 Merger Guidelines and the Ascent of the Hypothetical Monopolist Paradigm*, 71 Antitrust Law Journal No. 1 (2003) at 253-75.

[43]     *Lantec*, 306 F.3d at 1026-27 (citing *Westman,* 796 F.2d at 1222).  *See also SCFC ILC, Inc. v. Visa USA*, 36 F.3d 958, 966 (10th Cir. 1994).

[44]     *See, e.g.*, *Penn State Hershey*, 838 F.3d at 338.

[45]     U.S. Dep't of Justice & Fed. Trade Comm'n, 1992 Horizontal Merger Guidelines §1.11 at 20,571 (revised April 8, 1997), 4 Fed. Trade Reg. Rep. (CCH ¶13,104, at 20,569 (hereinafter referred to as the "Horizontal Merger Guidelines").

case, the candidate market is expanded by adding the next-best substitute, the new candidate market is tested to determine whether it constitutes a relevant antitrust market, and so on.[46]   In this case, Plaintiffs' economist (Dr. Leslie Schaefer) performed the hypothetical monopolist test for the Vail Valley and determined that physical therapy patients would not travel outside the Vail Valley market even if Vail Health raised its prices for Howard Head physical therapy by 5% or more.[47]   Thus, she opines, the correct relevant geographic market is not broader than the Vail Valley.  On the other hand, Vail Health's expert (Dr. Monica Noether) did not conduct a hypothetical monopolist test, yet she opines that residents of the Vail Valley would travel outside the Vail Valley for physical therapy patients to clinics in Summit and Garfield, as well as Basalt.[48]

Dr. Schafer, however, could not track the subset of physical therapy patients residing in zip codes within the Vail Valley to Vail Health's clinics in Summit County and Basalt because Vail Health refused to produce that data.  It would not produce it, no doubt, because it would show that Vail Valley residents do not drive over the Vail pass for physical therapy.  Pricing data should also be required to be produced to determine whether Howard Head prices are cheaper by 5% or more in those clinics and that the lower prices would induce Vail Valley residents to travel across Vail Pass to achieve the cost savings.  Without using the term hypothetical market test, the Special Master found that "the purpose is now to allow Plaintiffs to know the bases of Defendant's expert's claim

---

[46]     Malcolm B. Coate & Jeffrey H. Fischer, *A Practical Guide to the Hypothetical Monopolist Test for Market Definition* 6 (Potomac Papers in Law and Economics Working Paper 06-01, October 2006), available at www.http://ssrn.com/abstract+940667.
[47]     Schaefer Report ¶¶ 173-75 [ECF. No. 365-2].
[48]     Noether Report ¶¶ 41, 43 [ECF. No. 365-1].

that Plaintiff's Shaefer's definition is 'overly narrow.'"[49]   The information recommended to be ordered by this Court will permit Plaintiffs to run an analysis against Vail Health's proposed markets of Summit County and Basalt.   That will go directly to whether Dr. Schaefer's definition of Vail Valley as the relevant market is correct or Dr. Noether's opinions that Vail Valley is too narrow is correct.   The Special Master's recommendation falls squarely within the comparative geographic market methodology endorsed by the Tenth Circuit in *Westman*[50] and *Lantec*.[51]

> ### C.   Patient In-Flow & Outflow Analysis For Defining Geographic Markets.

In healthcare antitrust cases, courts sometimes use patient data to determine whether a firm could exercise monopoly power in a particular geographic market.[52] Relevant evidence includes patient addresses, price, and medical procedures from which it can be determined how many patients residing within the proposed geographic market are willing to travel outside the proposed market ("out-flow"), and how far, to receive medical care. *Vice versa*, evidence includes how many patients are unwilling to travel from outside the proposed geographic market to receive treatment.   Do the statistics show that the price of the medical service is price inelastic and therefore is not a primary determinative of patient preference?   If that were the evidence, economists would infer that the inelasticity permits the monopolist to charge prices that are higher than could be able to charge in a competitively functioning market—that is, monopoly power exists.

---

[49]   Special Master Report ¶ 15 and at 14 [ECF No. 362].
[50]   796 F.2d at 1222.
[51]   306 F.3d at 1026-27.
[52]   *California v. Sutter Health Syst.*, 84 F.Supp.2d 1057, 1072 (N.D. Cal. 2002).

In *Evanston Northwestern Healthcare Corp.*,[53] the F.T.C. found that health-plan "demand for hospital services is partially a derived demand based on patient preferences, and the percentage of patients in a given area who use a hospital can, in certain circumstances, provide some rough indication of the [health-plan] preference when they form a network."[54]  The discovery recommended by the Special Master would likely show how many Vail Valley residents travel over Vail Pass to Summit County or through Glenwood Canyon to Garfield County or Basalt to receive physical therapy.  Dr. Noether has opined that they do, although she provides no data to support that opinion.  Plaintiffs contend that the Vail Health data and information, if produced, would not support the outflow of Vail Valley residents.  Because a dispute about this material issue exists, the Special Master correctly concluded that Howard Head patient in-flow and out-flow data and information is discoverable.  That conclusion too, is squarely supported by *Lantec*.

### C.   Price, Cost, and Profit Analyses For Defining Geographic Markets.

In *Lantec*, the Tenth Circuit identified additional relevant factors for defining the relevant geographic market, such as "[p]rice data and such corroborative factors as transportation costs, delivery limitations, customer convenience and preference, and the location and facilities of other producers and distributors."[55]  The reason for this is based on the economic principle that in a functioning market, cost is a determinant in the output of sellers and the price paid by buyers.  For example, if the price of physical therapy labor was 30% lower in Glenwood Springs than in Vail, the price buyers paid for physical therapy may be lower in Glenwood Springs.  If Glenwood Springs and Vail were both

---

[53]    144 F.T.C. 1, 500-01, 2007-2 Trade Cas. (CCH) ¶ 75,814, 2007 WL 2286195 (2007).
[54]    *Id.* at *66.
[55]    *Lantec,* 306 F.3d at 1026.

within a correctly defined geographic market and the substitutable physical therapy was sufficiently elastic, economists would expect consumers to travel from Vail to Glenwood Springs to take advantage of the lower price *if* quality and convenience were comparable. Consistent with *Lantec,* the Special Master recommended this discovery be produced.[56]

## IV.   GEOGRAPHIC MARKET DEFINITION IS A FACT ISSUE REQUIRING DISCOVERY AUTHORIZED BY FED. R. CIV. P. 26(b)(1).

Rule 26(b)(1) provides, in relevant part, "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense…."  "The scope of discovery 'is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues."[57]   Generally, "a request for discovery should be considered [relevant] if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."[58]  This broad interpretation of relevance advances Rule 26's liberal purpose of permitting the parties to develop the facts, theories, and defenses of the case[59] and is particularly appropriate in antitrust cases.[60]  When the

---

[56]     Special Master Report at 14 [ECF No. 362].

[57]     *Rose Banks v. Jackson*, Civil Action No. 20-cv-02074-KMT, 2021 U.S. Dist. LEXIS 163420, at *8-9 (D. Colo. Aug. 27, 2021) (quoting *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir.1995)).

[58]     *Id.* (quoting *Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co.*, 300 F.R.D. 678, 683 (D. Colo. 2014).

[59]     *Hickman v. Taylor*, 329 U.S. 495, 501 (1947) (discovery allows plaintiff to develop facts supporting claims, allows defendant to develop facts supporting defenses, allows plaintiff to pin down defendant's defenses, and defendant to pin down plaintiff's theories of liability); *Oppenheimer Fund,* 437 U.S. at 351.

[60]     *Health All. Plan of Mich.* 2018 U.S. Dist. LEXIS 233332, at *7; *In re Plastics Additives Antitrust Litig.*, No. Civ. A. 03-2038, 2004 U.S. Dist. LEXIS 23989, 2004 WL 2743591, at *14 (E.D. Pa. Nov. 29, 2004) ("It is well-settled that courts presiding over antitrust cases generally take a liberal view of relevance in determining scope of discovery."); *In re Intel Corp. Microprocessor Antitrust Litig.*, No. 05-1717-JJF, 2007 U.S. Dist. LEXIS 3407, 2007 WL 137152, at *5 (D. Del. Jan. 12, 2007) (same).

discovery appears relevant,[61] the party resisting the discovery has the burden to establish lack of relevancy.[62]  Although Vail Health says that discovery outside the Vail Valley is "irrelevant,"[63] Dr. Noether and the Special Master's Report confirms otherwise.

For example, Dr. Noether's Report raises the following issues: Page 3, ¶ 7b: "Defining a market for antitrust purposes requires assessing the preferences of consumers, *i.e.*, its asks what products or services consumers view as substitutes."  Page 3, ¶ 7c: "Plaintiffs' expert ignores evidence that point to broader produce and geographic markets…." Page 18, ¶ 37: "[G]eographic market definition considers whether a sufficient number of customers would travel outside the area to obtain services as to make a price increase within the area unprofitable.  If so, the geographic market needs to be expanded." These issues require a comparison of (a) information from the market defined by Plaintiffs, and (b) information from the "service area" that Vail Health contends are outside the Plaintiffs' defined market.  The Special Master correctly concluded that, as in almost all antitrust cases, when the parties disagree as to the relevant geographic market, discovery is not limited to only the market alleged in the complaint.

So what Vail Health seeks to do is preclude Plaintiffs from obtaining relevant evidence that would show Vail Health's expansion into Summit, Garfield, and Basalt is proof that those are separate and distinct geographic markets for antitrust purposes.  For example, according to documents produced by The Steadman Clinic, Vail Health and Steadman engaged the Hammes Co. as an expert health care consultant to analyze

---

[61]    *But see Int'l Bhd. of Teamsters, Airline Div. v. Frontier Airlines, Inc.*, Civil Action No. 11-cv-02007-MSK-KLM, 2012 U.S. Dist. LEXIS 57678, at *18 (D. Colo. Apr. 24, 2012) (noting that when relevancy is not apparent, proponent has burden).
[62]    *Id.* at *17.
[63]    Vail Health Appeal at 10 [ECF No. 365].

expansion into other markets, including for physical therapy.[64]  Vail Health, along with Steadman and at times Vail Summit Orthopaedics, expanded services into these markets, admittedly for the convenience of their patients.[65]  These documents, which Vail Health refuses to produce, are relevant to a geographic definition.[66]

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court adopt, in their entirety, the recommendations set forth in the July 6. 2022 Report of the Special Master.

Dated:  August 10, 2022

*s/Alan L. Kildow*
Alan L. Kildow, MN# 0143133
790 Potato Patch Drive
Vail, CO 81657
Telephone: (970) 390-6675
E-mail:  alkildow@aol.com

Jesse Wiens, Colo. #33903
Fahrenholtz & Wiens LLC
100 West Beaver Creek Boulevard
Suite 236
Avon, CO 81620
Telephone: (970) 949-6500
E-mail:  fwlawyers@gmail.com

Sonya R. Braunschweig (MN# 0290282)
5501 Irving Avenue South
Minneapolis, MN  55419
Telephone:  (612) 819-2304
E-mail:  sonya.braunschweig@gmail.com

Attorneys for Plaintiffs Lindsay Winninger and
Sports Rehab Consulting LLC

---

[64]     ECF No. 128-1 [Hammes].
[65]     ECF Nos. 127-19, 127-20 [Newspaper articles].
[66]     *See* Special Master Report ¶¶ 10-12, 18, 31 and at 12 [ECF No. 362].

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 10, 2022, I served a true and correct copy of Plaintiffs' Response to Vail Health Partial Appeal of Special Master's July 6, 2022 Report to the Court, via the Court's ECF system on:

      Shannon Stevenson
      Jackie Roeder
      Daniel Richards
      Davis Graham & Stubbs LLP
      1550 17th Street, Suite 500
      Denver, CO  80202

      Counsel for Defendant


                 *s/ Alan L. Kildow*
                 Alan L. Kildow