## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company, and LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation.

      Defendant.

---

### PLAINTIFFS' PARTIAL APPEAL OF SPECIAL MASTER'S RECOMMEDATION REGARDING PLAINTIFFS' RULE 37 MOTION TO COMPEL #4 RELATING TO JOINT VENTURES AND OTHER COMBINATIONS

---

### INTRODUCTION

Plaintiffs appeal the determination of the Special Master in his September 15 Report and Recommendation that the information sought in Plaintiffs' Request for Production of Documents #24 "is not relevant and [he] will not require Vail Health the obligation of responding to it."[1]  With due respect for the Special Master, the Report does not provide any analysis regarding exclusionary conduct under Sherman Act §2, particularly regarding joint ventures and business combinations.  This case is an object lesson in the ingenuity of businesspeople to construct complex organizational combinations through which they can engage in exclusionary conduct intended to create or maintain monopoly power in violation of §2.  The United States spends roughly twice as much as other western industrialized nations on healthcare, which harms citizens and

---

[1]     ECF No. 383 at 3.

residents of this country.  The conduct of Vail Health that is at issue here is precisely the type of exclusionary conduct that is the subject of *The Competition and Antitrust Law Enforcement Reform Act* introduced in the U.S. Senate by Amy Klobuchar of the Judiciary Subcommittee on Antitrust. To prove Vail Health's exclusionary conduct, Plaintiffs are entitled to the information sought through Motion to Compel #4.

## PROCEDURAL BACKGROUND

Plaintiffs Sports Rehab Consulting and Lindsay Winninger moved the Special Master under Fed. R. Civ. P. 37(a)(3)(B)(iii) and (iv), for an order compelling Vail Health to produce documents and answer interrogatories relevant to Vail Health's attempts to form joint ventures or other combinations in violation of § 2 of the Sherman Act.  Before March 30, 2016, in the state court action, Vail Health interposed two primary objections to Request Nos. 7 and 8[2] but later conceded "we're not withholding any documents based on that objection [regarding attempts to monopolize], or with our objection regarding the word combination."[3]  Vail Health then said "all relevant documents have been produced"[4] in the state court action.  If not, "[c]ertainly if there are any, we will produce them."[5]  Vail Health did not do so, thus precipitating the filing of Plaintiffs' Motion to Compel #4.

On September 15, 2022, the Special Master issued his Report and Recommendation Regarding Motion To Compel #4 (the "Report"), in which he recommended that the Court issue an order granting Plaintiffs' motion as it pertains to Requests for Production #7 and #8 relating to proposed joint ventures and other combinations between Vail Health and the Steadman Clinic ("Steadman") and The

---

[2]     ECF No. 157-13 at Request Nos. 7-8 (withholding documents based on objection).
[3]     ECF No. 157-16 at 38:9-11 [Mar. 30 Hearing Tr.].
[4]     *Id.* at 38:21.
[5]     *Id.* at 38:22; ECF No. 107, Ex. 1 at Request Nos. 7-8 (same).

Steadman Philippon Research Institute ("SPRI"), Vail Summit Orthopaedics ("VSO") and the VSO Foundation.[6]  The Special Master denied that part of Plaintiffs' motion relating to RFP #24[7] relating to "charitable donations" that Vail Health made or promised to Steadman, SPRI, VSO, and the VSO Foundation.

The Report states: "[T]he Special Master determines that the requested information is not relevant and will not require Vail Health the obligation of responding to it."[8]  It is that portion of the Report that Plaintiffs appeal to Magistrate Judge Gallagher. In *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, the Tenth Circuit held that if a defendant with alleged monopoly power willfully attempts to maintain or extend its monopoly power, or willfully attempts to or excludes competition or potential competition to maintain or extend its monopoly power, it may be liable for violation of § 2 of the Sherman Act.[9]  In *National Collegiate Athletic Association v. Alston*, Justice Gorsuch, writing for the majority, found that a joint venture that enjoys monopoly power may be liable under Sherman § 2 for restrictive agreements that exclude or impair competition.[10] The Court in *NCAA* also confirmed that whether any of the joint venturers are non-profit organization is immaterial.  The only question is whether the alleged restraints affect interstate trade and commerce and are alleged to have violated the Sherman Act.[11]

The portion of the Report that recommends compliance with RFPs #7 and #8 relating to proposed joint ventures and other combinations between Vail Health and the

---

[6]    ECF No. 383 at 3.
[7]    *Id.* at 4.
[8]    *Id.*
[9]    762 F.3d 1114, 1119 (10th Cir. 2014).
[10]   141 S. Ct. 2141, 2155-56.
[11]   *Id.* at 2158-60.

orthopedic providers and potential physical therapy competitors is consistent with *Lenox* and *NCAA*.  That portion of the Report that recommends that the Court denies Plaintiffs' motion requesting that Vail Health be required to produce discovery relating to payments and promises of payments to the orthopedic providers and potential physical therapy competitors is not consistent with Tenth Circuit or Supreme Court precedent.  Plaintiffs, therefore, object to and appeal the Special Master's analysis and conclusion related to RFP #24 and move the Court to order Vail Health to produce the documents and information requested by Plaintiffs in RFP #24.

## **FACTUAL BACKGROUND**

In 2015, Vail Health and Steadman/SPRI were working to "reset" their relationship. Vail Health is highly dependent on orthopedic clinics because it is the hospital's most profitable service line.  As the former Vail Health CFO Charlie Crevling put it, orthopedic surgeries are the economic engine that drives the physical therapy referrals to Howard Head.[12]  For example, for FY2015, Vail Health's contribution margin for the orthopedic service line was over $65 million,[13] far surpassing any other hospital service line.[14] Integral to Vail Health's profitability are the Vail Valley orthopedic clinics and in particular Steadman, which generated 54% of Howard Head's referrals during FY2015.[15]  Stated differently, of the 197,593 billable units of physical therapy, 106,520 of those units came from Steadman referrals.[16]  In the same fiscal year, Howard Head generated over $16 million in revenue for Vail Health.[17]  So without the orthopedic surgeries and physical

---

[12]  Ex. 1 at 79:16-23 [Crevling Dep.].  *See also* ECF No. 26 ¶¶4-5 [Am Compl.].
[13]  ECF No. 128-2 at VH_Fed_0000805.
[14]  *See id.* at VH_Fed_0000807-13.
[15]  ECF No. 158-24 at 45.
[16]  *Id.*
[17]  ECF No. 130-1 at VH_Fed_00002041.

therapy referrals, Vail Health's financial viability would look much different.  And given that Vail Health was in the midst of a capital campaign to raise over $200 million to improve its facilities, Vail Health could not afford to lose its major orthopedic partners.[18]

So in 2015, Vail Health and Steadman/SPRI began to renegotiate its relationship, which included new lease agreements for Steadman and SPRI, a SPRI research support agreement, a letter of intent for the Howard Head joint venture, modifying the parties' operating agreement for ambulatory surgery services.[19]  These agreements were a package deal, negotiated over the course of many months, the purpose of which was to "reset" the parties' relationship.[20]  An essential component of this "reset" was "the opportunity for [Steadman] physicians to invest in Howard Head" through a joint venture or other combination.[21]

By mid-November 2015, then-Board Chairman Michael Shannon was pushing Steadman/SPRI to finalize all agreements, informing the CEO of Steadman/SPRI, Dan Drawbaugh, that his team would "work 24/7 to get this done."[22]  In response, Drawbaugh confirmed that Steadman/SPRI was committed to resetting the parties' relationship:  "***We have both worked long and hard to get the reset done*** and we are fully committed to getting to the finish-line as quickly as possible.  I do not think it is realistic to sign the lease this week and ***I also think we should sign all the agreements at the same time since***

---

[18]    *See* ECF No. 26 ¶¶ 4, 61-7 [Am. Compl.]; Ex. 1 at 112:6-13, 114:4-116:10 [Crevling Dep.] (stating that there were discussions in the executive suit, including with the CEO Doris Kirchner, about the risk of Steadman leaving the hospital; if it did, "it would have [had] a material negative effect" on Vail Health).

[19]    ECF No. 158-9 at VH_00003936 (discussing various agreements, including "clean up" items for VVSC ambulatory center).

[20]    ECF No. 158-20 at VH_Fed_00004167.

[21]    *Id.* at VH_Fed_00004167.

[22]    ECF No. 158-9 at VH_00003936.

***both parties consider it a package strategic alignment****….*By no means are we dragging our feet.  ***This is a ten year reset.***  We need to get it right and I need a bit of leeway to meet with our folks to make sure all bases are covered.[23]

During the course of the negotiations, draft agreements were exchanged among the parties, along with other documents discussing the terms of the agreements.[24]  Vail Health produced some of those documents, including a draft of the SPRI research support agreement ("donations") to SPRI.[25]  When Vail Health refused to produce the final agreement (or the SPRI lease agreement), Plaintiffs moved to compel their production.

In any event, once the final terms were reached, the agreements were presented to Vail Health's Board in December 2015.  Two PowerPoint slide decks were apparently presented to the Vail Health Board related to the Steadman/SPRI and Vail Health relationship.  One confirmed their strategy was to solidify and grow orthopedics as VVMC's primary service line for the next 10 years.[26]  It noted that competition was coming, orthopedics was the key driver, and posed the most risk to Vail Health.[27]  So Vail Health had to do something or risk losing market share, which had long before reached monopoly levels.[28]  Ways to counterbalance this risk included strengthening and expanding the core orthopedic line, physician relationships, and Howard Head, among other things.[29]

---

[23]   *Id.* (emphasis added).

[24]   *See, e.g.,* ECF No. 158-8 at VH_00004054-57, 4067, 4072, 4075-79; ECF No. 158-20; Ex. 2 [draft agreement].

[25]   Ex. 2 [draft agreement].

[26]   ECF No. 158-8 at VH_00004046.

[27]   *Id.* at VH_00004047.

[28]   *See, e.g., id.*

[29]   *Id.* at VH_00004048-51.  *See also* "*Together The Campaign for a Healthy, Active Tomorrow*" at 23 ("VVMC's Howard Head Sports Medicine is augmented by partnerships with The Steadman Clinic, Vail-Summit Orthopaedics and Steadman Philippon Research

With respect to Steadman specifically, this meant a long-term lease that prohibited Steadman from offering physical therapy services in its space;[30] investments in SPRI with equal ownership;[31] $43 million contribution to expand SPRI and Steadman;[32] no rent for SPRI for five years, with the remaining 5 years at a reduced rate of $8/square foot in Vail, amounting to a total benefit of almost $9 million;[33] $43 million investment in SPRI research over ten years;[34] development of a sports performance center;[35] and access to market and fundraising resources valued at over $11 million over ten years.[36]  Howard Head was expressly identified as one of SPRI's collaborators for this endeavor.[37] The total benefit of this package deal to Steadman/SPRI was estimated to be over $173 million.[38]  And in exchange for its $43 million "donation" to SPRI, Vail Health apparently was to get 25% of the SPRI Board seats as well as veto power over certain material events, including amending bylaws, merging with another entity, changing mission, relocating facilities, and dissolving SPRI.[39]  In contrast, in the eight years proceeding this reset in their relationship,

---

Institute—presenting seamless, top-level care informed by the latest knowledge and innovations."), publicly available at https://www.sprivail.org/pdf/Final_VVMC_CASE.PDF; Dr. Marc Philippon's Hip Post-Procedure ("Physical Therapy is scheduled with Howard Head Sports Medicine," with active link to Howard Head's website, publicly available at https://www.drmarcphilipponmd.com/post-procedure-patient-journey-orthopaedic-hip-surgeon.html.

[30]     *See* ECF No. 26 ¶ [Am. Compl.].
[31]     *See* ECF No. 158-8 at VH_00004054-57.
[32]     *Id.* at VH_00004072.
[33]     *Id.* at VH_00004075-77.
[34]     *Id.* at VH_00004067.
[35]     *Id.* at VH_00004077.
[36]     *Id.* at VH_00004078.
[37]     *Id.* at VH_00004079.  *See, e.g.,* SPRI Golf Sports Medicine Program includes a collaboration with Howard Head, available at *https://www.sprivail.org/departments/golf-sports-medicine*.
[38]     *Id.* at VH_00004081-82.
[39]     Ex. 2 at VH_00003921 [draft agreement].

Vail Health's donations to SPRI amounted to only about $300,000 per year.[40]   By participating in these various strategic alliances, Vail Health has been able to ensure its dominance in the Vail Valley for its orthopedic service line that includes physical therapy.

Another important orthopedic clinic to Vail Health is VSO, which generated 15% of Howard Head's referrals during FY2015,[41] which equates to 29,094 billable units of physical therapy.[42]   (Combined with Steadman, close to 70% of Vail Health's physical therapy referrals came from these two orthopedic clinics alone.   As to VSO, it too sought and obtained "donations" for its foundation[43] and moved its offices into Vail Health, likely with a lease restriction prohibiting physical therapy (but we do not know because Vail Health refuses to produce that lease).   And if VSO's foundation has a lease with Vail Health at rates like those given to SPRI, or contains restrictions related to physical therapy, that agreement would be relevant as well.

Finally, Vail Health's agreements with SPRI and VSO's foundation are relevant for another independent reason.   In December 2016, Vail Health proposed a second joint venture for physical therapy similar to its first proposal, but this time, its members were to be SPRI and VSO's foundation with Steadman appointed the medical director.[44]

---

[40]     *See* Vail Health's 990s at *Grants and Other Assistance to Domestic Organizations*, publicly available at https://www.coloradosos.gov/ccsa/pages/public /form990s.xhtml (FY 2007 was $355,000; 2008 and 2010 was $325,000; FY 2009, 2012-2014 was $300,000; FY 2011 was $260,000).

[41]     ECF No. 158-24 at 41.

[42]     *Id.*

[43]     ECF No. 193-3 at VH_Fed003686, 3689 [email].

[44]     ECF No. 193-2 at VH_Fed001-2 [term sheet].

## ARGUMENT

I. **PLAINTIFFS ARE ENTITLED TO DISCOVERY OF VAIL HEALTH'S ATTEMPTS TO MAINTAIN AND EXTEND ITS MONOPOLY AND EXCLUDE COMPETITION THROUGH RESTRICTIVE ARRANGEMENTS WITH JOINT VENTURERS.**

This is an action under the Sherman Act, 15 U.S.C. § 2, which makes it unlawful for a person or firm to "monopolize, or attempt to monopolize...any part of the trade or commerce…."[45]   The Tenth Circuit has held that the required elements of a §2 monopolization claim are "(1) monopoly power in the relevant market; (2) willful acquisition or maintenance of this power through exclusionary conduct; and (3) harm to competition."[46]   "To prevail on an attempted monopolization claim, a plaintiff must show: (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power."[47]   "As a legal matter, Sherman Act §2 requires that the defendant either have monopoly power or a dangerous probability of achieving it...."[48]   Section 1 uses the term "combination" as "any contract, **combination** or conspiracy," and § 2 similarly states: "Every person who shall monopolize, or attempt to monopolize, **or combine with any person or persons, to monopolize**…."[49]   The Act's proscriptions therefore cover a wide swath of commerce and encompass a full range of business arrangements.

The leading § 2 case is *United States v. Grinnell*, which involved about 70 years of complicated acquisitions of various business by the company now known as ADT.   The Supreme Court noted that "[t]he fact that Holmes [the acquiree] is more nearly local than

---

[45]   ECF No. 26 ¶¶ 34-42, 243-73 [Am. Compl].
[46]   *Lenox*, 762 F.3d at 1114.
[47]   *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456 (1993); *Christy Sports, LLC. v, Deer Valley Resorts Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009).
[48]   XI Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 1800c5, at 22 (3d ed 2011).
[49]   15 U.S.C. § 2 (emphasis added).

the others [corporate acquisitions] does not save it, for it is part and parcel of **the combine** presided over and controlled by Grinnell [the monopolizing corporate acquirer]."[50]   In *Novell, Inc. v. Microsoft, Corp.*, then Judge Gorsuch said that "anticompetitive conduct comes in too many forms and shapes to permit a comprehensive taxonomy."[51]  Its breadth is demonstrated in a June 2021 decision, where now Justice Gorsuch had little difficulty applying the concept of a "combination" to the manner in which the NCAA was characterized as a "joint venture" under Sherman Act § 1 scrutiny.[52]   The types of business arrangements that fall under the umbrella of "combinations" include corporations, partnerships, limited liability companies, joint ventures, exclusive dealing contracts, horizontal and vertical competitive restrictions, tying arrangement, etc.

Given the number of possible combinations between Vail Health, Steadman, SPRI, VSO and its foundation, Sports Rehab, and others, the use of the terms "combination" or "collaboration" cannot be judged by a particular label.  The elements of various exclusive dealing arrangements, even in a *de facto* context, "are cognizable under the antitrust laws"[53] because they may be used by a monopolist to strengthen its position and exclude or harm competition.[54]  Plaintiffs allege that Vail Health had monopoly power (over 70-80% market share) when it collaborated with Steadman, VSO, Sports Rehab, and others.  So there was a dangerous probability that Vail Health's potential combinations would

---

[50]     384 U.S. 384, 575-76 (1966).
[51]     731 F.3d 1064, 1072 (10th Cir. 2013) (citing *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 767-68 (1984)).
[52]     *Nat'l Collegiate Athletic Ass'n v Alston*, 141 S. Ct. 2141, 2155 (2021).
[53]     *McWane, Inc. v. F.T.C.*, 783 F.3d 814, 834 (11th Cir. 2015) (quoting *Minn. Mining & Mfg. Co. v. Appleton Papers, Inc.,* 35 F.Supp.2d 1138, 1144 (D.Minn.1999)); *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 270 (3d Cir. 2012).
[54]     *Z.F. Meritor*, 696 F.3d at 270 (citation omitted).

"strengthen[] or prolong[] [its] market position"[55] and constitute an improper means to maintain monopoly power.[56]   Other combinations may be relevant, including vertical exclusionary agreements involving the exclusion of competitors or the unnecessary impediments to rivals' ability to compete.[57]

## II.   VAIL HEALTH'S $173 MILLION IN PAYMENTS AND REMUNERATIVE PROMISES TO STEADMAN EVIDENCE A SPECIFIC INTENT TO EXCLUDE A POTENTIAL COMPETITOR TO MAINTAIN ITS MONOPOLY POWER.

The Report states: "The Plaintiffs appear to be asserting that Vail Health used charitable contributions to entities like Steadman and VSO to 'sweeten the pot' on proposed joint ventures or mergers with these entities, in hopes that the contributions would further encourage the entities to agree to Vail Health's request."[58]   Although Plaintiffs might disagree with that description, the Special Master is essentially correct. The Report goes on to state, however, that "the suggestion that Vail Health offered hidden inducements to those entities to consummate those joint ventures adds little probative value to the fact that the joint venture was proposed in the first instance."[59]

On this important issue, the Report essentially makes a legal conclusion, and it is incorrect.  In addressing this relevancy issue, it should be remembered that the scope of discovery under Rule 26(b) is broad and "applied as liberally as possible."[60]   The Rule permits discovery of "any nonprivileged matter that is relevant to any party's claim or

---

[55]    IIIB Areeda & Hovenkamp, *Antitrust Law* ¶ 760b7, at 54 (3d ed. 2008).
[56]    *United States v. Dentsply Int'l., Inc.*, 399 F.3d 185, 187 (3d Cir. 2005).
[57]    *Aspen Skiing Corp. v. Aspen Highlands Skiing Corp*, 472 U.S. 585, 605 n.32 (1985); *United States v. Microsoft Corp.*, 253 F.3d 34, 50 (D.C. Cir. 2001).
[58]    ECF No. 383 at 4.
[59]    *Id.*
[60]    *Herman v. PBIA & Co.*, No. 1:19-cv-00584-PAB-GPG, 2020 U.S. Dist. LEXIS 260241, at *17 (D. Colo. Mar. 3, 2020) (quoting *Hickman v. Taylor,* 239 U.S. 496, 506 (1947)).

defense," while proportional needs of the case serve as guardrails to tailor the scope of discovery if necessary.[61]  Thus, "a request for discovery should be considered [relevant] if there is any possibility that the information sought may be relevant to the claim or defense of any party."[62] "Relevance in the discovery context is broader than admissibility of evidence at trial."[63]  Applied to the instant case, Plaintiffs believe that Vail Health's payments to Steadman are relevant to their exclusionary conduct claims against Vail Health.  Vail Health has argued that $173 million in payments and remunerative benefits provide no relevant information for determining Plaintiffs' claims. These differing views constitute a factual dispute that neither party can prove or disprove at this point.  It is a factual dispute that goes to the merits of the case and should not be resolved on a discovery motion by the Special Master, but only by the District Court on summary judgment or at trial.[64]  Plaintiffs should be provided the information requested in RFP #24.

In their Amended Complaint, Plaintiffs allege that Vail Health's proposed joint venture and combinations with Steadman and SPRIC were intended to induce Steadman and SPRI to desist from establishing their own physical therapy clinic in the relevant geographic and product markets.[65]  The facts alleged have now been proven true through discovery to date, as described above.  Vail Health's conduct constitutes exclusionary and predatory acts that were designed and specifically intended to maintain and/or extend

---

[61]    Fed. R. Civ. P. 26(b)(1).
[62]    *Flaherty v. Brighthouse Life Ins. Co.*, No. 20-cv-00460-REB-GPG, 2002 U.S. Dist. LEXIS 30810, at *4-5 (D. Colo. Apr. 29, 2022) (citation omitted).
[63]    *Seabron v. Am. Family Mut. Ins. Co.*, Civil Action No. 11-cv-01096-WJM-KMT, 2011 U.S. Dist. LEXIS 133131, at *2 (D. Colo. Nov. 17, 2011).
[64]    *In re NFLs Sunday Ticket Antitrust Litig.*, No. 15-ML-02668 PSG (JEMx), 2022 U.S. Dist. LEXIS 17358, at *28-29 (C.D. Cal. Jan. 20, 2022).
[65]    ECF No. 26 ¶¶ 60-73 [Am. Compl.].

Vail Health's monopoly, and therefore violated § 2 of the Sherman Act.[66]  As we now know, the alleged proposed joint venture evolved into restrictive agreements with Vail Health, whereby Steadman and SPRI were effectively precluded them from competing in the physical therapy market.  In return, Vail Health agreed to make $43 million in payments to be funneled through SPRI as well as numerous other remunerative benefits that Steadman valued at $172 million.  By entering into these complex contractual arrangements, Vail Health was assured of at least two extremely important facts: (1) Steadman/SPRI were excluded as a potential competitor in the physical therapy market, and (2) Steadman would continue and possibly increase its patient referrals to Vail Health's Howard Head physical therapy clinic.  In short, the contracts and lucrative payments resulted in the exclusion of a formidable and potentially existential competitor. This constituted predatory conduct by any other definition.[67]

The extraordinarily large "charitable donations," as Vail Health describes them, must be examined in the context of the economic effects of the challenged conduct on consumers, competitors, and Vail Health itself.[68]  The physician referral information that the Special Master has recommended that the Court order Vail Health to be produced under RFP ## 7 and 8 will confirm the continued high level of referrals Steadman sends to Howard Head.  It will also show the extent of the exclusive dealing that exists between Steadman and Howard Head that has resulted from these combinations.  The amounts

---

[66]     *Advanced Health-Care Services, Inc. v. Radford Community Hospital*, 910 F.2d 139, 147-48 (4th Cir. 1990).
[67]     *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585 (1985); *SmithKline Corp. v. Eli Lilly & Co.,* 575 F.2d 1056 (3d Cir.), *cert denied,* 439 U.S. 838 (1978).
[68]     *Aspen Skiing*, 472 U.S. at 605.

and terms of the "charitable donations" would be relevant to show that Vail Heath is making short-term financial sacrifices that make no economic sense in a competitive market unless Vail was and is seeking long-term gains through the exercise of monopoly power.[69]   At this stage of the proceedings, therefore, it is fair to infer that Vail Health's payments and promises to pay enabled it to successfully deter Steadman/SPRI from starting a physical therapy clinic in direct competition with Vail Health, constituted illegal exclusionary conduct designed exclude Steadman and SPRI, thus enabling Vail Health to retain patients despite dramatically higher prices.   The amounts and terms of these payments and promises to pay are therefore relevant to Plaintiffs' Sherman §2 claims.

## III.   VAIL HEALTH WAIVED ANY OBJECTION OF RELEVANCY BY PRODUCING DOCUMENTS RESPONSIVE TO REQUEST NO. 24.

Although it disputed the relevancy of Plaintiffs' RFP #24, Vail Health produced some responsive documents, including the draft agreement in which Vail Health pledged $43 million to SPRI over 10 years.[70]   This production effectively waived Vail Health's "relevancy objection because objecting and producing at the same time is inherently contradictory.  Documents are either relevant or not, and only relevant documents need be produced."[71]

---

[69]      *M & M Medical Supplies and Service, Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 166 (4th Cir. 1992); *Advanced Health-Care*, 910 F.2d at 148.

[70]      *See* Ex. 2 [draft agreement].

[71]      *In* re *AutoHop Litig.*, No. 12-CV-4155 (LTS)(KNF), 2014 U.S. Dist. LEXIS 155975, at *22-23 (S.D.N.Y. Nov. 3, 2014).  *See also W. Side Cmty. Hosp., Inc. v. Am. Healthnet, Inc.*, No. 4:04CV3210, 2005 U.S. Dist. LEXIS 53995, at *3 (D. Neb. May 17, 2005) ("Sacred Heart's objections will be deemed waived, however, because Sacred Heart has produced responsive documents over its own objections. This waiver shall be deemed to encompass Sacred Heart's duty to supplement its responses."); *Perry v. Schumacher Grp. of La.*, No. 2:13-cv-36-FtM-29DNF, 2014 U.S. Dist. LEXIS 191961, at *8 (M.D. Fla. Feb. 25, 2014) (ordering requests to be fully responded to when party objected and then chose to produce some responsive documents).

**IV.     VAIL HEALTH DID NOT PROVIDE ANY EVIDENCE OF BURDEN, AND SO THE SPECIAL MASTER'S "BURDEN" FINDING SHOULD BE OVERRULED.**

In its response, Vail Health limited its objection to Request No. 24 on relevancy grounds.[72]  Vail Health made no attempt to argue or provide any proof by way of affidavit or otherwise that searching for the documents would be in anyway burdensome.[73]  How could it?  It produced some of the documents already.[74]  Further, Plaintiffs seek discrete business documents that Vail Health is required to maintain for tax purposes.

Plaintiffs therefore request that the Special Master's Report as to this issue be overruled and not adopted, and that Vail Health be required to produce the final executed agreements between Vail Health and Steadman's foundation SPRI, as well as agreements between Vail Health's foundation VSOF, in which Vail Health pledges a payment directly or provides other benefits, such as providing services or leases at reduced or at no cost.

**CONCLUSION**

Plaintiffs request that the Court grant the relief requested by Plaintiffs in its entirety.

---

[72]     ECF No. 176 at 10.

[73]     *MedCorp, Inc. v. Pinpoint Techs., Inc.*, Civil Action No. 08-cv-00867-MSK-KLM, 2009 U.S. Dist. LEXIS 38022, at *7 (D. Colo. Apr. 20, 2009) ("It is the objecting party's burden to show why a discovery request is objectionable"); *Klesch & Co. v. Liberty Media Corp.,* 217 F.R.D. 517, 524 (D. Colo. 2003) (stating it is not enough to make "boilerplate claims that the requested discovery is…burdensome"); *Sonnino v. Univ. of Kan. Hosp. Auth.,* 221 F.R.D. 661, 670 (D. Kan. 2004) ("When a party files a motion to compel and asks the Court to overrule certain objections, the objecting party must specifically show in its response…, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable.").

[74]     *See, e.g.,* ECF No. 158-8 at VH_00004054-57, 4067, 4072, 4075-79; ECF No. 158-20; Ex. 2 [draft agreement].

15

Dated:  September 29, 2022       *s/Alan L. Kildow*
                                       Alan L. Kildow, MN# 0143133
790 Potato Patch Drive
Vail, CO 81657
Telephone: (970) 390-6675
E-mail: alkildow@aol.com

Jesse Wiens, Colo. #33903
Fahrenholtz & Wiens LLC
100 West Beaver Creek Boulevard
Suite 236
Avon, CO 81620
Telephone: (970) 949-6500
E-mail: fwlawyers@gmail.com

Sonya R. Braunschweig (MN# 0290282)
5501 Irving Avenue South
Minneapolis, MN  55419
Telephone: (612) 819-2304
E-mail: sonya.braunschweig@gmail.com

Attorneys for Plaintiffs Lindsay Winninger and
Sports Rehab Consulting LLC

## **CERTIFICATE OF SERVICE**

       I hereby certify that on September 29, 2022, I served a true and correct copy of Plaintiffs' Partial Objection and Appeal of the Special Master's Report and Recommendation Regarding Motion to Compel #4 Relating To Joint Ventures And Other Combinations, including exhibits, some of which are filed as restricted under the protective order issued in this case, via the Court's ECF system on:

       Shannon Stevenson
       Janet A. Savage
       Jackie Roeder
       Daniel Richards
       Davis Graham & Stubbs LLP
       1550 17th Street, Suite 500
       Denver, CO  80202

       Counsel for Defendant

                                 *s/ Alan L. Kildow*
                                   Alan L. Kildow