**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation.

      Defendant.

---

**PLAINTIFFS' OPPOSITION TO VAIL HEALTH'S MOTION TO PLACE
MOTION AND EXHIBIT [ECF NO. 387] UNDER FILING RESTRICTIONS**

---

**INTRODUCTION**

In a conclusory fashion,[1] Vail Health asserts that Plaintiffs have referred throughout their appeal to "Vail Health's confidential commercial information and confidential information received from third parties, including data regarding Vail Health's financial performance, confidential contract terms, and details regarding confidential contract negotiations."[2]  Vail Health then states that Plaintiffs sourced this information from primarily restricted exhibits, including ECF Nos. 157-13, 157-16, 128-2, 158-8, 158-9, 158-24, 192-2, and 193-3.[3]  Vail Health contends that ECF No. 387-2 should be

---

[1]     *See, e.g., Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 547 (7th Cir. 2002) (denying motions to seal and instructing that "court will in the future deny outright any motion…that does not analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations…Motions that simply assert a conclusion without the required reasoning, however, have no prospect of success.").
[2]     ECF No. 393 at 1.
[3]     *Id.* at 1-2.

restricted too.[4]   Of these nine documents, ECF Nos. 157-13 (objections to document requests), 157-16 (March 30, 2021 Hearing Transcript [ECF No. 101]), and 192-2 (news article) are all publicly filed, so Vail Health's request to restrict based on those exhibits should never have been made and cannot be sustained.   And as to the remainder, Plaintiffs' appeal does not disclose confidential information, and any summarization of the documents is consistent with D.C.COLO.LCivR 7.2(c)(4).

Vail Health then claims that redaction is impractical without justifying why.[5]   But a cursory review of Plaintiffs' appeal reveals that: (1) no "confidential" information is referenced in the Introduction, Procedural Background, or Argument, pages 1-4, 9-15,; (2) references to remunerative benefits to SPRI—the amounts ($x millions)—are a matter of public record, pages 12-14; and (3) as to the Factual Background, pages 4-8, the only part of Plaintiffs' appeal generally cited to,[6] Vail Health put this information into the public domain, did not object when others did, or it is not confidential.

Finally, Vail Health's sole legal basis to restrict is the parties' Stipulated Protective Order.[7]   Vail Health does not address whether its privacy interests outweigh the presumption of public access or identify a clearly defined and serious injury if access is not restricted.   The fact that Vail Health designated certain documents as confidential under the Stipulated Protective Order is insufficient to justify restricted access here.[8]

---

[4]     *Id*. at 2.
[5]     *Id*. at 3.  *See Weinreis Ethanol, Ltd. Liab. Co. v. Kramer*, Civil Action No. 21-cv-03120-CMA-NRN, 2022 U.S. Dist. LEXIS 10707, at *12-13 (D. Colo. Jan. 20, 2022) (denying restriction; refusal to propose redactions undercuts parties' argument to restrict).
[6]     ECF No. 393 at 2.
[7]     ECF No. 76.
[8]     *See* D.C.COLO.LCivR 7.2(c)(2) ("stipulations between the parties or stipulated protective orders with regard to discovery, alone, are insufficient to justify restriction").

## ARGUMENT

**I.    THERE IS A PRESUMPTION OF PUBLIC ACCESS TO COURT RECORDS.**

The public right of access is embedded in our country's history,[9] with some circuit courts also finding a constitutionally protected right under the First Amendment.[10] Regardless, courts have long "recognize[d] a general right to inspect and copy public records and documents, including judicial records and documents."[11]  That is because, as the Kansas federal district court aptly explains, "[w]hen exercising its discretion, the court minds that taxpayers fund court operations.  Our citizens hold a substantial stake in what happens in our courtrooms and the decisions judges make there.  Public access to court decisions and the reasoning behind them inspires confidence in the fairness of the law and judicial proceedings."[12]  But that does not mean the presumption is absolute.

It "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.  The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered."[13]  "So the court must be surgical when sealing.  If parts of the record merit limits on public access, the court must seal only that which deserves protection,"[14] not more.

---

[9]    *United States v. Erie Cnty.*, 763 F.3d 235, 239 (2d Cir. 2014).

[10]   *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1177 (6th Cir. 1983) ("First Amendment and the common law...limit judicial discretion" to seal court documents).  *But see United States v. McVeigh*, 119 F.3d 806, 812 (10th Cir. 1997) (relying on common-law right without deciding First Amendment issue).

[11]   *Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978).

[12]   *Painter v. Midwest Health*, No. 19-2336-DDC, 2021 U.S. Dist. LEXIS 17061, at *2-3 (D. Kan. Jan. 29, 2021).

[13]   *Press-Enter. Co. v. Superior Ct. of Cal.*, 478 U.S. 1, 13-14 (1986).

[14]   *Painter*, 2021 U.S. Dist. LEXIS 17061, at *2-3 (citing *United States v. Walker*, 761 F. App'x 822, 835 (10th Cir. 2019)).

A court is the sentinel for the public, deciding whether the strong presumption favoring public access to judicial records[15] can be overcome by the movant showing "some significant interest that outweighs the presumption."[16]  Here, that means Vail Health has the burden to demonstrate that Plaintiffs' motion and Exhibit 2 contain sources of confidential business information that might harm Vail Health's competitive standing,[17] something that Vail Health has not attempted to do.

Finally, to restrict access in this Court, Vail Health must comply with D.C.COLO.LCivR 7.2)(c) and (1) identify the information to be restricted, (2) address the interest to be protected and explain why it outweighs the presumption of openness of records, (3) identify a clearly defined and serious injury if it is not restricted, (4) explain why no alternative restriction is practicable, and (5) identify the restriction level sought.

## II.    VAIL HEALTH'S RELIANCE ON THE PROTECTIVE ORDER IS MISPLACED.

Three of Vail Health's nine paragraphs in its motion are devoted to discussing the terms of the parties' Stipulated Protective Order, with Vail Health apparently asserting that because it designated documents as protected that means Plaintiffs' motion summarizing and citing to those exhibits should be restricted, along with Exhibit 2.  This case is an object lesson why a party's designation is not the *sine qua non* in deciding whether public access should be granted or not.

---

[15]    *See Daines v. Harrison,* 838 F. Supp. 1406, 1408 (D. Colo. 1993) (noting interests of public "are presumptively paramount"); *ADT Holdings, Inc. v. Michael Harris & Ring Inc.*, No. 2017-0328-JTL, 2017 Del. Ch. LEXIS 719, at *3 (Ch. Sept. 28, 2017) ("real opposition is from the public;" court serves not only litigants but, importantly, public too).

[16]    *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007) (citation omitted).

[17]    *Nixon*, 435 U.S. at 598.

Before turning to the issue of confidentiality, it bears pointing out that the parties' Stipulated Protective Order,[18] which is based on the state court Stipulated Protective Order,[19] is limited to the designation of "*documents*"—defined under § 1(d) as "all materials within the scope of Fed. R. Civ. 34(a)"—as confidential, which includes produced documents, discovery responses, or portions of deposition transcripts, or hearings "but only to protect trade secrets, confidential research development, or commercial information within the scope of Fed. R. Civ. P. 26(c)(G)."[20]  Documents may also be designated attorneys' eyes only to protect competitively sensitive information that would cause irreparable harm if competitors had access it.[21]  But the Protective Order is silent on the use of such documents in motions, pleadings, or court filings.  There is no provision that information derived from protected documents has the same designation.[22]

Parties routinely include a provision addressing the use of protected documents in court papers along the lines of: "[c]onfidential…documents, including deposition transcripts, may be referred to…in motions, and briefs…provided however, that no [such] …document shall be used…unless…the portion of the court paper which discloses the contents of any such document, is appropriately marked and separately filed under seal…."[23]  The parties' decision to not include a similar provision here is significant because "[a] protective order is nothing more than a contract between the parties which

---

18      ECF No. 76.
19      *Id.* § 2.
20      *Id.* § 4.
21      *Id.*
22      *See Systemic Formulas, Inc. v. Kim*, No. 1:07-CV-159 TC, 2009 U.S. Dist. LEXIS 119502, at *4-5 (D. Utah Dec. 23, 2009) (protective order including that provision).
23 *Advanced Nuclear Fuels Corp. v. GE*, No. C89-938R, 1990 U.S. Dist. LEXIS 11746, at *13-14 (W.D. Wash. Jan. 19, 1990).  *See United States v. Nighbert*, No. 08-21-KSF, 2009 U.S. Dist. LEXIS 61653, at *3 (E.D. Ky. July 16, 2009) (similar provision).

has been approved by and is subject to enforcement by the court,"[24] and it "must be construed according to general principles of contract law," which "lies in its plain language" "and the normal usage of terms selected."[25]

Even if the Court assumes that the parties' decision not to include such a provision makes it ambiguous,[26] the parties' course of conduct shows that Vail Health routinely files its motions and other filings as public even when they refer to, summarize, or quote from confidential documents.  It then files the supporting protected exhibits from which that information is derived as "suppressed"[27] in the state court action and "restricted" in this action.[28]  But Vail Health did not take any precautions when it came to the October 2021 discovery hearings.  There, the parties referred to, discussed, and quoted from restricted exhibits.  Vail Health filed no motion to restrict any portion of those transcripts before they were publicly docketed.[29]  Likewise, court orders and special master reports also quote, reference, quote, and summarize documents filed as restricted.[30]  Again, something that Vail Health did not object to then or now.  This background is important because Vail Health seeks to restrict access to information that is already in the public domain.

---

[24]   *Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, Civil Action No. 05-cv-02084-JAP-LFG, 2009 U.S. Dist. LEXIS 113607, at *5-6 (D. Colo. Dec. 7, 2009).
[25]   *SEC v. Merrill Scott & Assocs., Ltd., 60*0 F.3d 1262, 1271-72 (10th Cir. 2010).
[26]   *McFadden v. Meeker Hous. Auth.,* Civil Action No. 16-cv-2304-WJM-GPG, 2018 U.S. Dist. LEXIS 38182, at *11 (D. Colo. Mar. 8, 2018) (Martínez, J.) ("White asserts that the Protective Order unambiguously prohibited Defendants from filing the Rule 35 Motion publicly….Order *is* ambiguous on the question of information included in pleadings.").
[27]   *See, e.g.,* Ex. 1 [Eagle Cnty. Dkt. with Vail Health filings].
[28]   *See, e.g.,* ECF Nos. 102-03, 152-53, 154-55, 157-58, 176-79, 213-14, 228-29, 230-31, 261-62, 317-18.
[29]   *See* ECF Nos. 217-18; Notice of Electronic Availability of Transcripts at § II.F. (permitting motion to court for additional redactions not related to personal identifiers but motion is to be filed within 21 days of filing notice of intent to request redaction).
[30]   *See, e.g.,* ECF Nos. 307, 362, 381-84.

### III.   THE INFORMATION SOUGHT TO BE RESTRICTED IS NOT CONFIDENTIAL.

Vail Health does not identify with any specificity the actual statements at issue. Instead, in passing, it references pages 4-8 of Plaintiffs' appeal,[31] so that is what Plaintiffs focus on here.  To address that the information discussed in the Factual Background is not confidential, a good starting point is Vail Health's $100 million public bond offering in 2015.  The offering memorandum, which is publicly available through the official electronic repository for public bonds,[32] summarizes and discloses Vail Health's financials, addresses Howard Head, and details its relationship with Steadman, SPRI, and VSO.

For example, Phase 1 of the facility plan was to provide a new larger space for Steadman, SPRI, and Howard Head, at an estimated cost of **$56 million**.[33]  Vail Health disclosed it has an ambulatory surgical center relationship with Steadman and VSO, highlighting terms of that relationship.[34]  It detailed its relationship with Steadman/SPRI, identifying the surgeries performed, SPRI's **research affiliation agreement**,[35] Vail Health's seats on **SPRI's Board**,[36] Vail Health's donations **to SPRI**, and Steadman/SPRI's **10-year leases with Vail Health**.[37]  As to VSO, Vail Health disclosed that **25% of VSO's** orthopedic procedures are done at Vail Health, VSO's foundation has a **research affiliation agreement** (not produced), and both have **8-year leases** with Vail Health.[38]

---

[31]   ECF No. 393 at 2.
[32]   *See* Colorado Health Facilities Authority Hospital Revenue Bonds (Vail Valley Medical Center Project) Series 2015 (CO), attached as Ex. 2, available at https://emma.msrb.org/IssueView/Details/ER371882.
[33]   *Id.* at A-2.
[34]   *Id.* at A-9, A-14.
[35]   *Id.* at A-15; ECF No. 387-2 [draft agreement].
[36]   *Id.* at A-15. *See also* SPRI Board of Directors, available at https://www.sprivail.org/about-us/board-of-directors (identifying Vail Health participants).
[37]   *Id.* at A-11-12, A14-15.
[38]   *Id.* at A-14-15.

But that is not all.  Vail Health then discusses the financial relationship it has with Steadman and VSO.  Based on the number of surgical procedures, which it disclosed, in FY 2014, **Steadman** represented **five of the top ten** physicians by charges, accounting for **25% of Vail Health's gross revenue**.  **One VSO physician** was in the **top ten physicians by charges**, accounting for approximately **2% of Vail Health's gross revenue**."[39]  And in Vail Health's Consolidated Financial Statement, Vail Health disclosed that **52% of its gross patient revenue** came from Steadman and VSO.[40]  And as to Howard Head, Vail Health stated that in FY2014, Howard Head generated approximately **$16 million in gross revenue** and accounted for **68,000 patient visits**.[41]

In 2017, the *Vail Daily* published much of the same thing.[42]  Then CEO Doris Kirchner is reported as stating that **Vail Health depends greatly on its association with orthopedics clinics, primarily Steadman and VSO, for its operating margins.**[43]  As the *Vail Daily* reported, **five of Vail Health's 10 highest revenue producers are orthopedic specialists**.[44]  The article then says "[l]ocal skeptics point to large margins between revenues and expenses and wonder what Vail [Health] is doing with all that money and why it can't use that cash to lower costs.  In **2015, revenues totaled $231 million and expenses were $197 million—a $34 million margin, or 15 percent**

---

[39]    *Id.* at A-19, A-22.
[40]    *Id.* Appendix B-1 at 34.
[41]    *Id.* at A-14, A-22.
[42]    *Rollag v. Cowen Inc.*, No. 20-CV-5138 (RA), 2020 U.S. Dist. LEXIS 152994, at *8-9 (S.D.N.Y. Aug. 24, 2020) ("'countervailing privacy interest...cannot defeat the strong presumption of public disclosure where the material it seeks to seal is already in the public domain' due to media coverage"); *Miller v. City of Ithaca*, No. 3:10-cv-597, 2013 U.S. Dist. LEXIS 207883, 2013 WL 12310675, at *1 (N.D.N.Y. Feb. 15, 2013) (denying seal when press articles show information was already in public domain).
[43]    Ex. 3 at 1 [*Vail Daily* article].
[44]    *Id.*

….Altogether, Vail [Health] has enough money in reserves to fund the hospital for **539 days**….Doris Kirchner says Vail [Health] has **enough money in reserve to finish its $300 million expansion**."[45]   Vail Health's financial information is periodically filed to support its $100 million bond offering, including quarterly and audited financial statements and other disclosures that are available through the official electronic repository.[46]

Vail Health also publicly touts its relationship with the Vail Valley community, claiming that it "has been a cornerstone of this incredible community for over 50 years,… proud of [its] contributions, not only to the health and well-being of…locals and guests, but in supporting those who share [its] goal of making Eagle County a great place to be. [It is] dedicated to reinvesting in health care services…in Eagle County, where locals live, play and need them most, donating **$18 million** to local charities including SPRI.[47]  But it is SPRI that has received the most recognition (and donations).[48]

In 2016, Vail Health and Steadman/SPRI aligned to promote the first ever capital campaign to raise over $75 million to renovate and expand the hospital.[49]  Then Board Chair Michael Shannon characterized it as a groundbreaking collaboration.   Public campaign dollars flowed directly to SPRI to fund stem cell research, a new BioMotion

---

[45]    *Id.* at 2.
[46]    Ex. 4 [List].  *See* Vail Health Audited Financial Statements for 2015 and 2014, Consolidated Statements of Operations, available at https://emma.msrb.org/ER944759-ER738793-ER1140454.pdf; Annual Operating Data for Year Ended 10/31/2018, available at  https://emma.msrb.org/ER1197138-ER937094-ER1338128.pdf  (reporting reserves and patients visits, including for Howard Head).
[47]    See *"Giving Back,"* available at https://www.vailhealth.org/about/giving-back.
[48]    *See* Vail Clinic Form 990 for 2018 (disclosing $4.3 million paid to SPRI), available at https://www.coloradosos.gov/ccsa/pages/public/form990s.xhtml.
[49]    *See* "*Vail Valley Medical Center and Steadman Philippon Research Institute Launch Capital Campaign*" (Dec. 19, 2016), available at  https://www.vailhealth. org/news/vail-valley-medical-center-and-steadman-philippon-research-institute-launch-capital-campaign.

Lab, biomedical engineering research program, imaging technology, and the Center for Outcomes-Based Orthopaedic Research.   SPRI Board Co-Chair/Steadman Managing Director Dr. Marc Philippon said, "The capital campaign will enable us to take our research to the next level…In this case, one plus one isn't two. One plus one equals four."[50]

Vail Health is proud of this collaboration, publicly disclosing on its website that it has committed $43 million to SPRI.[51]   Vail Health and SPRI also publish similar information in their public financial documents.  In FY 2015-2018, Vail Health reported it gave SPRI **$16.5 million** (≈**$4.3 million/year**);[52] and in FY 2016-2018, Vail Health's foundation passed **$2.5 million** to SPRI.[53]  SPRI publicly reports the same (along with its lease payments to Vail Health) in its financial statements posted on SPRI's website.[54] In SPRI's 2015 and 2016 Consolidated Financial Statement, SPRI disclosed Vail Health's **$4.3 million/year** contribution commitment, along with SPRI's leasing arrangement with Vail Health, which amounted to approximately **$250,000/year**.[55]

Vail Health's and Steadman/SPRI's public discussions about their collaboration, including amounts donated, is outlined in the draft research affiliation agreement that Vail

---

[50]   *Id.*

[51]   *See* "*Vail Health Receives 2020 Press Ganey Guardian of Excellence Award*" (Sept. 30, 2020), available at https://www.vailhealth.org/news/vail-health-receives-2020-press-ganey-guardian-of-excellence-award.

[52]   *See* Vail Clinic Form 990s, available at https://www.coloradosos.gov/ccsa/pages/public/form990s.xhtml.

[53]   *See* Vail Health Services Form 990s, available at https://www.coloradosos.gov/ccsa/pages/public/form990s.xhtml.

[54]   *See* SPRI Annual Reports, available at https://www.sprivail.org/publications/annual-reports.

[55]   *See* SPRI Consolidated Financial Statements (2015-16) at 15, 17-18, available at https://www.sprivail.org/files/pluginfiles/item_61/field_318/2016-SPRI-Financial-Statements.pdf.

Health seeks to restrict because it is purportedly confidential.[56]   But identifies no confidentiality provision, likely because § 5, addressing publicity, says the opposite.[57]

Additionally, at the bottom of pages 5-6, Plaintiffs quote an email exchange between Vail Health and Steadman/SPRI.  Vail Health fails to show what is confidential or proprietary about that email.  It is a general business discussion in 2015 about how the parties saw their relationship and the logistics to finalize agreements.[58]  Similarly, general references to two PowerPoint presentations from 2015 do not disclose any *current* business strategies.[59]  What economic value depends on secrecy and what competitive harm will result if Plaintiffs' motion is filed unrestricted?[60]  Vail Health does not say.

Vail Health's conclusory requests to restrict appear to stem from its desire to "shield prejudicial information…from the public.  This desire, however, cannot be accommodated by courts without seriously undermining the tradition of an open judicial system.  Indeed, common sense tells us that the greater the motivation a corporation has to shield its operations, the greater the public's need to know."[61]

---

[56]     *See* ECF No. 393 at 2; ECF No. 387-2 at § 5.

[57]     ECF No. 387-2 § 5.  *See also Bell v. Sorin CRM USA, Inc.*, Civil Action No. 17-cv-01807-MSK-STV, 2018 U.S. Dist. LEXIS 240345, at *3-4 (D. Colo. Mar. 1, 2018) (holding general statements that agreement contains "confidential business information" that would harm party was too "imprecise and insufficient" to restrict).

[58]     *St. Alphonsus Med. Ctr.-Nampa, Inc. v. St. Luke's Health Sys.*, No. 1:12-CV-00560-BLW, 2014 U.S. Dist. LEXIS 93985, at *12 (D. Idaho July 3, 2014) (refusing to seal negotiations occurring five years earlier); *Apple, Inc. v. Samsung Elecs. Co., No.: 11-CV-01846-LHK*, 2012 U.S. Dist. LEXIS 153877, 2012 WL 5289493, at *1 (N.D. Cal. Oct. 25, 2012) (affirming denial to seal "negotiation history" information).

[59]     *RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, No. 16-CV-01301-PAB-GPG, 2020 U.S. Dist. LEXIS 259164, at *22 (D. Colo. Sep. 30, 2020) ("A party seeking to protect outdated information must make a specific showing of present harm.").

[60]     *See In re Epipen Epinephrine Injection*, No. MDL 2785, 2020 U.S. Dist. LEXIS 40975, at *38 (D. Kan. Mar. 10, 2020) (declining to restrict 10-year-old business information that did not disclose current specific business strategies or sensitive data).

[61]     *Brown & Williamson*, 710 F.2d at 1180.

Finally, the conduct at issue is set out in Plaintiffs Amended Complaint[62] and is derived from depositions of Vail Health and Steadman that neither deemed confidential. The same holds true with the October 2021 hearings before the Special Master, where the parties relied upon information in restricted documents.  Vail Health did not move to restrict the transcripts before they were docketed months ago,[63] including that:

- SPRI received **$43 million** in "charitable contributions" from Vail Health;[64]
- The SPRI relationship was valued at **$175 million**;[65]
- $6 million in direct costs to generate **$16 million** in revenues;[66]
- Vail Health generates **$50 million/year** in profits while most lose money;[67]
- About **65%** of Vail Health's business comes from Steadman and VSO;[68]
- Steadman referrals to Howard Head were **54%**; adding VSO, total is **70%**;[69]
- **30,000 billable units** of PT came from one Steadman doctor alone.[70]

Given the publication of this information—both by Vail Health and its partners—Vail Health has failed to establish that it has any privacy interest in this information.  The genie is out of the bottle; it cannot be put back.[71]

## IV.    PUBLIC INTEREST HERE TRUMPS ANY PURPORTED PRIVACY INTEREST.

Vail Health provides no analysis of the public's interest in accessing court records, particularly in a case involving a community hospital that is alleged to have engaged in

---

[62]    *See generally* ECF No. 26 ¶¶ 5-6, 35, 38, 61-76 [Am. Compl.].
[63]    *TriQuint Semiconductor, Inc. v. Avago Techs. Ltd.*, 2012 U.S. Dist. LEXIS 58227, *8 (D. Ariz. Apr. 25, 2012) (denying after-the-fact request to seal hearing transcript).
[64]    *See* ECF No. 218 at 8:7-12, 34:11-16, 44:3-7.
[65]    *See id.*
[66]    *See* ECF No. 217 at 87:17-20, 88:10.
[67]    *See* ECF No. 218 at 41:9-10.
[68]    *Id.* at 40:21-23.
[69]    *Id.* at 66:4-8.
[70]    *Id.* at 66:19-21.
[71]    *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004).

anticompetitive conduct that resulted in overbilling the community it is supposed to serve. One of the most vital public interests is public health,[72] including its accessibility and ever-rising cost.  Vail Health does not address that: (1) it is a community hospital that is there to serve the medical needs of Eagle County residents, (2) it claims to be a "cornerstone" of the Vail Valley community for over 50 years, (3) it is proud of its financial contributions to the community, (4) it obtained $100 million in public bond financing, and (5) it raised another $100-200 million from the public and community for its building projects.  Given this, Vail Health has not explained why an unsubstantiated privacy interest trumps the public's right to access court records.  Two newspaper articles, one from the *Vail Daily* that was previously discussed, and the *Denver Post,* show the issues presented here involve a matter of significant public interest.

Among other hospitals, the *Denver Post* singled out Vail Health, contrasting how in in 2007, Vail Health lost money; "[n]ow the hospital is a profit-making juggernaut with operations spread among eight locations in the Vail Valley.  The 58-bed hospital made a profit of $100 million last year [2017], with net revenues coming in 20 times higher than the loss reported in 2007.  Vail Health last year generated a **36 percent profit margin**, among the highest for a hospital in the state and the nation."[73]  The *Denver Post* further reported that Vail Health had nearly $411 million in investments (excluding property), in contrast to $55 million in 2000.  One Anthem executive was reported as saying: "'They've expanded, …And I would argue that has happened at the expense of the community.  Instead of

---

[72]    *In re Gee*, No. 19-30953, 2019 U.S. App. LEXIS 40309, at *6 (5th Cir. Nov. 27, 2019); *Does v. Mills*, 16 F.4th 20, 37 (1st Cir. 2021); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir. 2021); *Electra-Med Corp. v. United States*, 140 Fed. Cl. 94, 107 (2018).
[73]    Ex. 5 at 15 [*Denver Post* article].

lowering the cost as they bring in more profits, the dollars they take keep getting bigger and bigger and bigger and they keep expanding and expanding.'"[74]

That is precisely what Plaintiffs' antitrust action seeks to address.  The inequities resulting from monopolistic conduct that harms the community Vail Health claims to serve. "America's democracy—and America's economy—should work for everyone, not just the privileged few.  This is an economy that works extremely well for the wealthy but leaves so many American families and working people behind...."[75]  "America's antitrust laws, as originally designed, were intended to decrease such inequality....Indeed, if the antitrust laws are vigorously enforced, Americans will once again be in a better to confront the challenges of wealth and income inequality."[76] Thus, antitrust is an important policy tool to address this inequality, making it undoubtedly a matter of public concern.[77]

And as the Colorado Supreme Court has explained, "[a] hospital,…whose doors are open to those needing medical and surgical treatment…which depends for its support and maintenance upon the fees of patients and gifts and donations…is conducted in the interests of the general public…."[78]  As a nonprofit charitable organization, which presents itself as providing valuable services to the general public and Eagle County community, it is unclear how Vail Health can dispute that the public has a right to know how Vail Health

---

[74]    *Id*. at 16.

[75]    AMY KLOBUCHAR, ANTITRUST: TAKING ON MONOPOLY POWER FROM THE GILDED AGE TO THE DIGITAL AGE 187 (First Vintage Books ed. 2022).

[76]    *Id*. at 229.

[77]    *See Georgia v. Pa. R.R.*, 324 U.S. 439, 450-51 (1945) (conspiracy in violation of antitrust laws is a wrong "of grave public concern"); *Pearl Brewing Co. v. Jos. Schlitz Brewing Co.*, 415 F. Supp. 1122, 1130 (S.D. Tex. 1976) ("important public concern in combatting an antitrust violation in the courts is the damage that such a violation wreaks upon the competitive market system. Private enforcement is thus premised…on a theory of protecting the desired market status and thereby vindicating the public interest").

[78]    *St. Luke's Hosp. v. Indus. Comm'n of Colo.*, 349 P.2d 995, 998 (Colo. 1960).

has used the hundreds of millions it receives from patient fees and public donations.  In *E.E.O.C. v. National Children's Center,*[79] the U.S. Court of Appeals for D.C. refused to seal documents involving a nonprofit organization that treated and cared for disabled children.  The nonprofit argued that if they were not sealed, it could impact the nonprofit's public support and funding.  But that argument cut against, rather than for, sealing the record: "The public should be able to learn how the money it has contributed to a charitable organization is being spent,"[80] which Vail Health itself acknowledges.

In the 2015 bond offering, Vail Health reported that, as a 501(c)(3), it must provide detailed public disclosure about "compensation practices, corporate governance, loans to management and others, joint ventures and other types of transactions….community benefit information…[and] tax exempt bonds…."[81]  This enhanced transparency is important because, as Vail Health itself represents, it "can result in enhanced enforcement from the IRS and other stakeholders, including state attorneys general, unions, plaintiff's class action attorneys, public watchdog groups and others."[82]

So even if the purported confidential information here had not been publicly disclosed by Vail Health and others, the public interest far outweighs any privacy interest of Vail Health.  When "a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case."[83]  So too here.

## CONCLUSION

Plaintiffs respectfully request that Vail Health's motion be denied in its entirety.

---

[79]   98 F.3d 1406 (D.C. Cir. 1996).
[80]   *Id.* at 410.
[81]   Ex. 2 at 33 [Bond offering].
[82]   *Id.*
[83]   *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992).

Dated:  October 17, 2022        *s/Alan L. Kildow*
                                        Alan L. Kildow, MN# 0143133
                                        790 Potato Patch Drive
                                        Vail, CO 81657
                                        Telephone: (970) 390-6675
                                        E-mail: alkildow@aol.com

Jesse Wiens, Colo. #33903
Fahrenholtz & Wiens LLC
100 West Beaver Creek Boulevard
Suite 236
Avon, CO 81620
Telephone: (970) 949-6500
E-mail: fwlawyers@gmail.com

Sonya R. Braunschweig (MN# 0290282)
5501 Irving Avenue South
Minneapolis, MN  55419
Telephone: (612) 819-2304
E-mail: sonya.braunschweig@gmail.com

Attorneys for Plaintiffs Lindsay Winninger and
Sports Rehab Consulting LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 17, 2022, I served a true and correct copy of Plaintiffs' Opposition to Vail Health's Motion to Place Motion and Exhibit [ECF No. 387] Under Filing Restrictions, including exhibits, via the Court's ECF system on:

Shannon Stevenson
Janet A. Savage
Jackie Roeder
Daniel Richards
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO  80202

Counsel for Defendant

*s/ Alan L. Kildow*
Alan L. Kildow