IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

    Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation,

    Defendant.

---

**PLAINTIFFS' OPPOSITION TO VAIL HEALTH'S PARTIAL APPEAL OF SPECIAL MASTER'S ORDERS REGARDING PLAINTIFFS' MOTION TO COMPEL NOS. 3 AND 4**

---

### FACTUAL BACKGROUND

In 1962, Vail Health started out of one room with a part-time doctor during the ski season.[1] Today, Vail Health is a nonprofit community hospital with close to $1 billion in assets, including $100 million in cash, $346 million in investments, and $365 million in property.[2] How did it get there? It all started when Dr. Richard Steadman, one of the country's top orthopedic surgeons, moved his practice (including his rehab team) to Vail in 1990, which paved the way to where Vail Health is today.[3] Orthopedic surgeries in conjunction with the ancillary physical therapy services through Howard Head Sports Medicine, continue to drive Vail Health's growth and profitability. In Vail Health's 2015 bond offering seeking $100 million for hospital renovations, it disclosed that five of its top

---

[1]     *See* "History," available at https://www.vailhealth.org/about/history.
[2]     *See* Oct. 31, 2021 Vail Health Audited Financial Statement, available at https://emma.msrb.org/P21549524-P21197526-P21616943.pdf.
[3]     *See* "Thank You Dr. Steadman," available at https://www.vailhealth.org/news/thank-you-dr-steadman.

ten physicians came from Steadman and one from VSO, totaling 27% of Vail Health's gross revenue.[4] Howard Head generated $16 million,[5] mostly from doctor referrals.

Vail Health also disclosed its affiliations and joint ventures with Steadman and VSO, claiming that those collaborations provide cost-effective services. Vail Health informed the public its market share could be at substantial risk—52% of Vail Health's gross patient revenues are from Steadman and VSO[6]—if Steadman and VSO opened their own outpatient services[7] for surgery and physical therapy.[8] Steadman confirmed it was considering just that,[9] while VSO acquired its own physical therapy provider.[10] To ameliorate this threat, Vail Health sought to align with Steadman and VSO through various collaborations that included Howard Head physical therapy.[11]

Over the years, Vail Health proposed several physical therapy joint ventures with Steadman and VSO,[12] which Steadman characterized as "opportunities that – where we would leverage Howard Head PT and look at other business ventures together."[13] The proposals evolved over time, ultimately resulting in a combination of economic interests in the Vail Valley,[14] a new $70 million facility in Dillon, and a 62,000 square foot facility in

---

[4] ECF No. 395-2 at A-19, A-22.
[5] *Id.* at A-14, A-22.
[6] *Id.* at Appendix B-1 at 34.
[7] *Id.* at 23-24, A-14-16, A-19.
[8] *See* ECF No. 26 ¶¶ 4-5, 61-63, 67, 160-62, 263-66 [Am. Compl.].
[9] *See id.* ¶¶ 61, 69 [Am. Compl.].
[10] "Vail-Summit Orthopaedics & Neurosurgery brings patients back to full speed" (Mar. 26, 2021), available at https://www.summitdaily.com/news/vail-summit-orthopaedics-neurosurgery-brings-patients-back-to-full-speed-sponsored/; ECF No. 158-4.
[11] ECF No. 26 ¶¶ 63-64, 263-66 [Am. Compl]; ECF Nos. 157-16 to 17; Exs. 1-2.
[12] *See, e.g., id.*
[13] Ex. 3 at 118:7-10, 20-22 [Drawbaugh Dep.].
[14] *See, e.g.,* ECF No. 395-2 at A-9, A-11-12, A-14-15.

Basalt.[15]  Vail Health's expansion included increasing orthopedic operating suite capacity in Vail by 30%[16] and adding four orthopedic operating suites (with room for two more) in both Dillon and Basalt.[17]  Howard Head physical therapy is integral to these collaborations with Steadman and VSO because orthopedic care is Vail Health's "bread and butter."[18]

## ARGUMENT

I.  **THE DISCOVERY STANDARDS AT ISSUE ON THIS APPEAL.**

    A.  **Vail Health Waived Its Objection By Failing To Timely Assert It.**

Vail Health seeks to avoid producing documents responsive to RFP Nos. 7-8 and answer Interrogatory Nos. 11-13, 20(e)-(f), and 21(d)-(e) solely because they seek information "outside the alleged Vail Valley market," which Vail Health says is irrelevant.[19] That is the only ground appealed.[20]  But as to RFP Nos. 5 (relevant market), and 7-8 (combinations), and Interrogatory Nos. 20-21, Vail Health **did not object** on the grounds Plaintiffs sought irrelevant discovery outside the alleged Vail Valley market.[21]  By not including that objection in RFP Nos. 5, 7-8, and Interrogatory Nos. 20-21, Vail Health waived any right to assert it now.[22]  And in the incorporated appeal, Vail Health cites four

---

[15]    ECF Nos. 157-16 to 17; Exs. 1-2 [articles].
[16]    *See* "Vail Health East Wing Tour" at minute 1:18-26, available at https://www.youtube.com/watch?v=CuWtgjTVNkg.
[17]    ECF Nos. 157-16 to 17; Exs. 1-2 [articles].
[18]    *See* Ex. 1 at 2 [article].
[19]    ECF No. 386 at 2.
[20]    *Compare* ECF No. 383 at 3 (finding conclusory statement of "burden" insufficient) *with* ECF No. 386 at 2 (relevancy as to geographic market is only issue appealed).
[21]    *See* ECF Nos. 157-13, 158.
[22]    *Brandt v. Individual*, Civil Action No. 15-cv-02785-RM-NYW, 2018 U.S. Dist. LEXIS 245934, at *14 n.3 (D. Colo. May 22, 2018) ("courts will not entertain objections raised in response to a motion to compel that the objecting-party did not assert in response to the discovery requests themselves"); *Port-a-Pour, Inc. v. Peak Innovations, Inc.*, Civil Action No. 13-cv-01511-WYD-BNB, 2014 U.S. Dist. LEXIS 53417, at *3 (D. Colo. Apr. 17, 2014) (refusing to accept new objections).

cases that it claims limits geographic market discovery to the market alleged.[23] Vail Health did not cite those cases in response to Plaintiffs' motion,[24] and thus, it has waived any right to rely on those cases now.[25] Moreover, those cases do not address relevancy in the context of monopoly power; nor do they stand for the proposition Vail Health claims.

> **B.    Even If There Was No Waiver, The Information Sought Is Relevant Under Fed. R. Civ. P. 26(b)(1), The Only Thing At Issue Here.**

Under Fed. R. Civ. P. 26(b)(1), the question is whether the information sought "is relevant to any party's claim or defense," a broad standard meant to allow parties access to information to prove or disprove their case.[26] In antitrust cases, liberal discovery is "necessarily broad because allegations involve improper business conduct" that is often "covert and must be gleaned from records, conduct, and business relationships."[27] Thus, it is black letter law that a party not be precluded from discovery relating to market definition, market and monopoly power, and anticompetitive effects, particularly when, like here, they involve disputed issues of fact.[28]

---

[23] ECF No. 380 at 5-6.
[24] ECF Nos. 154 at 5, 176 at 7.
[25] *See* ECF No. 398 at 19 (stating Plaintiffs waived argument by citing cases in reply).
[26] *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995). *See also Scotsman Indus. v. Broadbent*, Civil Action No. 11-cv-01793-JLK-KLM, 2012 U.S. Dist. LEXIS 126531, at *5-6 (D. Colo. Sept. 6, 2012) ("relevant if there is 'any possibility'"); *RCL Props., Inc. v. United States*, Civil Action No. 08-cv-00055-LTB-KLM, 2008 U.S. Dist. LEXIS 104422, at *4-5, 10 (D. Colo. Dec. 11, 2008) (same).
[27] *Callahan v. A.E.V. Inc.*, 947 F. Supp. 175, 179 (W.D. Pa. 1996). *See also Kellam Energy, Inc. v. Duncan*, 616 F. Supp. 215, 217-18 (D. Del. 1985); *Am. Health Sys., Inc. v. Liberty Health Sys.*, Civil Action No. 90-3112, 1991 U.S. Dist. LEXIS 2612, at *7 (E.D. Pa. Mar. 5, 1991) ("court should be permissive" if in doubt); *Carter-Wallace, Inc. v. Hartz Mtn. Indus.*, 92 F.R.D. 67, 70 (S.D.N.Y. 1981) (discovery outside alleged markets); *Riedel Int'l, Inc. v. St. Helens Invest., Inc.*, 633 F. Supp. 117, 119 (D. Or. 1985) (same).
[28] *Health All. Plan of Mich. v. Blue Cross Blue Shield of Mich. Mut. Ins. Co.*, Civil Action No. 14-13788, 2018 U.S. Dist. LEXIS 233332, at *7, *11 (E.D. Mich. Jan. 2, 2018); *Riedel,* 633 F. Supp. at 119 (differing contentions about markets requires discovery);

## II. EVIDENCE OF MONOPOLY POWER SHOULD NOT BE EXCLUDED.

### A. The Joint Ventures Are Evidence Of Barriers To Entry.

Vail Health seeks to exclude evidence from markets outside the Vail Valley on the grounds of the alleged geographic market. Vail Health has not, however, addressed relevancy in terms of monopoly power,[29] and thus waived that argument on appeal.[30]

*Lenox* instructs that "[m]onopoly power involves two factors: market-share and barriers to entry" that includes "entrenched buyer preferences…"[31] *Lenox* recognizes that "establishing credibility naturally seems to be a significant barrier to entry, particularly for an enterprise that depends heavily upon reputation, such as certification of medical specialists."[32] For example, Steadman (as well as VSO) constitutes a significant referral source of physical therapy patients to Howard Head. Given the tens of millions that Vail Health now sends to Steadman/SPRI, the obvious fact question arises whether Steadman physicians would refer patients to a new physical therapy market entrant in the Vail Valley.

Plaintiffs are entitled to discovery of the joint venture combinations in Summit County and Basalt because they unquestionably strengthen and expand Steadman's (and VSO's) entrenched buyer preference for Howard Head (the monopoly at issue). The $174 million package to Steadman/SPRI, and that provided to VSO, included the benefit

---

*United States v. Dentsply Int'l, Inc.*, Civil Action No. 99-5 MMS, 2000 U.S. Dist. LEXIS 6925, at *17 (D. Del. May 10, 2000); *SmithKline Beecham Corp. v. Apotex Corp.*, No. 99-CV-4304, 2006 U.S. Dist. LEXIS 4276, at *9 (E.D. Pa. Jan. 31, 2006).
[29]   *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1071 (10th Cir. 2013).
[30]   See ECF Nos. 157 at 4-7, 192 at 5-7 (arguing relevancy to monopoly power); *Phillips v. Calhoun*, 956 F.2d 949, 954 (10th Cir. 1992) (issues on appeal are waived if not argued in brief); Fed. R. Civ. P. 53(f)(3)-(4) (limiting appeal to issues objected to).
[31]   *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1117, 1125 (10th Cir. 2014); *Lantec, Inc. v. Novell, Inc.*, 146 F. Supp. 2d 1140, 1145 (D. Utah 2001).
[32]   *Lenox*, 762 F.3d at 1126 (quoting *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery*, 185 F.3d 606, 623 (6th Cir. 1999)).

of reduced cost facilities and market collaborations in Summit and Basalt.[33] It was an orthopedic service package (surgery suites and physical therapy) combined with the inducement of geographic expansion. "We're going to take our Vail Valley (monopolistic) model and move it to Summit County and Basalt. Capture the treatment of the orthopedic injuries at Breckenridge, Keystone, and the four Aspen ski resorts. You get the medical facilities you want for orthopedic surgery, and you send your patients to Howard Head for physical therapy." These contractual and financial relationships exploit the physical therapy monopoly power in the Vail Valley by erecting barriers to entry, resulting in Plaintiffs exclusion as competitors and deterring other physical therapy providers from entering the market. This is relevant to the measurement of §2 monopoly power.[34]

### B.     The Joint Ventures Constitute Evidence Of Market Power.

In its appeal, Vail Health fails to address the economic principles that are the bedrock of antitrust law. It does not address, let alone mention, relevancy in the context of capacity, restricted output, or marginal cost and how those principles are relevant to monopoly power. Its failure to do so waives any objection regarding discovery outside the Vail Valley because there are several independent explanations for Vail Health's investments and business in Summit County and Basalt that are relevant here.

*First*, even with the $260 million investment in its Vail facility, Vail Health had reached full capacity for orthopedic and physical therapy services. If this was not the case (assuming Vail Valley and Summit County/Basalt to be a single geographic market), Vail Health would have encouraged Summit County and Basalt physical therapy patients

---

[33]    *See, e.g.,* ECF Nos. 157-16 to 17, 395 at 7-10, 395-2 at A-15; Exs. 1-2.
[34]    *Novell,* 731 F.3d at 1071.

to travel to the Vail Valley to receive physical therapy from Howard Head. In doing so, Vail Health could have used any excess capacity in the Vail Valley, increased Howard Head's physical therapy profits, and obviated any reason to incur significant expenditures in Summit County and Basalt. But Vail Health did none of that. Such evidence would permit the inference that Vail Health was at full capacity, had a high market share, and possessed monopoly power under § 2 of the Sherman Act.

*Second*, and alternatively, if Vail Health was not at full capacity, its investment in Summit County and Basalt may be explained by its recognition that those locations are separate geographic markets from the Vail Valley.[35] Because of this, Summit County and Basalt physical therapy patients are not inclined to drive to the Vail Valley; Vail Valley patients are not inclined to drive to Summit County or Basalt. Thus, patient preference and convenience dictate that these are separate geographic markets for antitrust purposes.

*Third*, Vail Health possessed market power because it was incurring fixed cost before reaching zero marginal cost. Marginal cost may be defined in its simplest terms as the cost of producing one additional unit of a product or service. The revenue generated by that last unit of output, minus the marginal cost incurred in producing that last unit, is called marginal revenue. If the margin of contribution to fixed cost is positive, economists would expect a rational producer in a competitive market to continue producing additional units of the product or service until marginal revenue reaches zero before expending further funds on capital expenditures. Here, discovery has demonstrated that the Howard Head clinic generated significant marginal revenue (as did the hospital as a whole), yet it proceeded with a $70 million investment in a new Dillon

---

[35]   *See, e.g.,* ECF No. 158-17 at STEADMAN-0002693, 2699-700.

facility and millions in Basalt immediately after it invested $260 million in its Vail Valley facilities. Fundamentals of economics teach that a rational competitor would not make such investments in the absence of the supracompetitive prices it was charging its Howard Head patients and monopolistic profits it was realizing in the Vail Valley.

The information sought by RFP Nos. 7-8 and Interrogatory Nos. 11-13, and 20-21 are directly relevant to Vail Health's possession of monopoly power, and Vail Health's appeal—which does not address this issue—should be rejected on this basis alone.

**III.   GEOGRAPHIC MARKET EVIDENCE SHOULD NOT BE EXCLUDED.**

Vail Health asks this Court to render an insupportable decision to exclude evidence on a disputed issue of fact regarding geographic market definition on grounds of relevancy—one of the most critical issues in determining whether business conduct resulted in anticompetitive effects in violation of the Sherman Act.[36] "The purpose [of defining] the relevant geographical market is to find the area or areas to which a potential buyer may rationally look for the goods or services that he seeks."[37] Within that market, the defendant's monopoly power is then measured.[38] Plaintiffs' economist (Dr. Schaefer) says the area to which potential physical therapy patients look is no larger than the Vail Valley. The Special Master found that Vail Health's economist (Dr. Noether) says the areas to which potential buyers look include the Vail Valley but extends beyond as well.[39] The Special Master correctly concluded there is a factual dispute as to the geographic

---

[36] *Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 469 n.15 (1992); Robert Pitofsky, *New Definitions of Relevant Market and the Assault on Antitrust*, 90 Colum. L. Rev. 1805, 1807 (1990).
[37] *United States v. Grinnell*, 384 U.S. 563, 588 (1966) (citation omitted)).
[38] *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1119 (10th Cir. 2014); *Lantec, Inc. v. Novell, Inc.*, 146 F. Supp. 2d 1140, 1150 (D. Utah 2001).
[39] ECF No. 362 at 3-4. *See also id.* at 16 (creating material issue of fact in dispute).

market definition, and thus Plaintiffs are entitled to evidence from the wider areas (Summit County and Basalt) that would support or undercut a broader geographic market. In weighing this issue, it must be "recognize[d] that market definition is a question of fact."[40]

In asking this Court to reject the Special Master's reasoning, Vail Health is also asking the Court to reject controlling Tenth Circuit law[41] and commit reversible error. In *Westman*, the court adopted—by quoting verbatim—the analysis of Prof. Lawrence A. Sullivan in his landmark treatise *Handbook of the Law of Antitrust* § 12, at 41 (1977): "[T]he outer boundary of the relevant product market is reached, if one were to raise the price of the product or limit its volume of production, while demand held constant, and supply from other sources beyond the boundary could not be expected to enter promptly enough and in large enough quantities to restore the old price or volume."[42] This economic analysis is known as the "hypothetical monopolist" or "SSNIP"[43] test based on a fundamental economic theory called "demand (buyer) substitution," which analyzes the buyer's preference for a product or geographic market that is "reasonably interchangeable by consumers for the same purpose."[44] It is the most widely-accepted method,[45] endorsed not only by the Tenth Circuit[46] but by every other circuit.[47]

---

[40] *Westman Commc'n Co. v. Hobart Int'l, Inc.,* 796 F.2d 1216 (10th Cir.1986).
[41] *Id.*; *Lantec, Inc. v. Novell, Inc.,* 306 F.3d 1003 (10th Cir. 2002); *Lenox*, 762 F.3d 1114.
[42] *Westman,* 796 F.2d at 1222.
[43] "SSNIP" is the acronym for "small but significant increase in price," usually measured in terms of a sustainable price increase of 5% or more.
[44] *United States v. United States v. E.I. Du Pont de Nemours & Co., 35*1 U.S. 377, 392-95 (1956).
[45] Werden, Gregory J., *The 1982 Merger Guidelines and the Ascent of the Hypothetical Monopolist Paradigm*, 71 Antitrust Law Journal No. 1 at 253-75 (2003).
[46] *Lantec*, 306 F.3d at 1026-27 (citing *Westman*, 796 F.2d at 1222). *See also SCFC ILC, Inc. v. Visa USA*, 36 F.3d 958, 966 (10th Cir. 1994).
[47] *See F.T.C. v. Penn State Hershey Med. Center*, 838 F.3d 338-39 (3d. Cir. 2016).

Of particular importance here is the statement in *Westman* following the Sullivan quote: "Thus, in defining the geographic market, the trier of fact should have considered all [providers] who compete to supply [goods or services to the market at issue]."[48] Meaning, if Vail Health contends the Vail Valley is too narrow, then Plaintiffs are entitled to evidence of a broader market.  Vail Health admits that its Howard Head clinic provides physical therapy services in Summit County and Basalt; Vail Health (through Dr. Noether) says providers outside of the Vail Valley must be considered.[49]  The Special Master's recommendation that discovery outside of the Vail Valley is relevant for discovery purposes is consistent with *Westman* and *Lantec*.[50]

In *Lantec*, the Tenth Circuit reconfirmed that the geographic market "is comprised of the area where…customers would look to buy such a product [or service],"[51] which includes "customer convenience and preference."[52]  As Plaintiffs previously discussed,[53] in *Evanston Northwestern Healthcare Corp.*,[54] the F.T.C. found that health-plan demand for hospital services is partially derived from patient preferences; the percentage of patients who use a hospital can, in certain circumstances, provide a rough indication of the health-plan preference when forming a network.[55]  The discovery recommended by the Special Master is thus consistent with *Lantec*.  Vail Health's argument that the discovery is not relevant to geographic market should be rejected as well.

---

| | |
|---|---|
| 48 | *Westman*, 796 F.2d at 1222. |
| 49 | *See, e.g.,* ECF 362 at 3-6. |
| 50 | ECF No. 383 at 3 (stating scope of discovery is broader than admissibility). |
| 51 | *lan*306 F.3d at 1027. |
| 52 | *Id.* at 1025-27. |
| 53 | ECF No. 375 at 2, 8-12. |
| 54 | 144 F.T.C. 1, 2007 FTC LEXIS 210, 2007 WL 2286195 (2007). |
| 55 | *Id.* at 2007 FTC LEXIS at *211-12, 2007 WL 2286195 at *66. |

Dated:  October 25, 2022                     *s/Alan L. Kildow*
                                             Alan L. Kildow, MN# 0143133
                                             790 Potato Patch Drive
                                             Vail, CO 81657
                                             Telephone: (970) 390-6675
                                             E-mail:  alkildow@aol.com

                                             Jesse Wiens, Colo. #33903
                                             Jesse Wiens Law
                                             0069 Edwards Access Road, Suite 8
                                             Edwards, Colorado 81632
                                             Telephone: (970) 855-0078
                                             E-mail:  jesse@jessewienslaw.com

                                             Sonya R. Braunschweig (MN# 0290282)
                                             5501 Irving Avenue South
                                             Minneapolis, MN  55419
                                             Telephone: (612) 819-2304
                                             E-mail: sonya.braunschweig@gmail.com

                                             Attorneys for Plaintiffs Lindsay Winninger and
                                             Sports Rehab Consulting LLC

11

## CERTIFICATE OF SERVICE

      I hereby certify that on October 25, 2022, I served a true and correct copy of Plaintiffs' Opposition to Vail Health's Partial Appeal of Special Master's Orders Regarding Plaintiffs' Motions to Compel 3 and 4, including exhibits, via the Court's ECF system on:

    Shannon Stevenson
    Janet A. Savage
    Jackie Roeder
    Daniel Richards
    Davis Graham & Stubbs LLP
    1550 17th Street, Suite 500
    Denver, CO  80202

    Counsel for Defendant

                                        *s/ Alan L. Kildow*
                                        Alan L. Kildow