# Exhibit 3



**CAPRI COURT REPORTING, INC.**
*Certified Court Reporters*
0035 Bobcat Court
Carbondale, Colorado 81623
(970) 510-5131

---

DISTRICT COURT, EAGLE COUNTY, COLORADO
Case No. 2017CV030102

---

**DEPOSITION OF DAN DRAWBAUGH**
August 28, 2018

---

LINDSAY WINNINGER, an individual; and SPORTS
REHAB CONSULTING LLC, a Colorado limited
liability company,

       Plaintiffs,

v.

DORIS KIRCHNER, an individual; and VAIL CLINIC,
INC., d/b/a VAIL VALLEY MEDICAL CENTER, a
Colorado nonprofit corporation,

       Defendants.

---

VAIL CLINIC, INC., d/b/a VAIL VALLEY MEDICAL
CENTER, a Colorado corporation,

       Counter-Plaintiff,

v.

LINDSAY WINNINGER, an individual; and SPORTS
REHAB CONSULTING LLC, a Colorado limited
liability company,

       Counter-Defendants.

---

VAIL CLINIC, INC., d/b/a VAIL VALLEY MEDICAL
CENTER, a Colorado nonprofit corporation,

       Third-Party Plaintiff,

v.

DAVID J. CIMINO, an individual,

       Third-Party Defendant.

---

Page 2

```
 1                    Deposition taken pursuant to

 2      the applicable provisions of the Code of Civil

 3      Procedure of the State of Colorado and the Rules

 4      of the Supreme Court thereof, before Kelly

 5      Capri, CCR, RPR, and Notary Public for the State

 6      of Colorado, taken at Fahrenholtz & Wiens LLC,

 7      100 W. Beaver Creek Boulevard, Suite 236, Avon,

 8      Colorado, commencing at 9:31 a.m., on Tuesday,

 9      August 28, 2018.

10

11      PRESENT:

12           SONYA R. BRAUNSCHWEIG, ATTORNEY AT LAW
             5501 Irving Avenue South
13           Minneapolis, Minnesota 55419
             (612) 819-2304
14           sonya.braunschweig@gmail.com
                      and
15           ALAN L. KILDOW, ESQ.
             15204 Wildwood Road
16           Burnsville, Minnesota 55306
             (970) 390-6675
17           alkildow@aol.com

18              appeared on behalf of the
                Plaintiffs/Counter-Defendants;
19
             DAVIS GRAHAM & STUBBS LLP, by
20           JANET SAVAGE, ATTORNEY AT LAW
             1550 Seventeenth Street
21           Suite 500
             Denver, Colorado 80202
22           (303) 892-7341
             janet.savage@dgslaw.com
23
                appeared on behalf of the
24              Defendants/Counter-Plaintiff;

25
```

Page 3

1    PRESENT (Continued)

2        **MESSNER REEVES, LLP,** by
         **MICHELLE L. HARDEN, ATTORNEY AT LAW**
3        1430 Wynkoop Street
         Suite 300
4        Denver, Colorado 80202
         (303) 623-1800
5        *mharden@messner.com*

6            appeared on behalf of the Deponent.

7    ALSO PRESENT:

8        **DORIS KIRCHNER**
         **MICHAEL SHANNON**
9
                    *   *   *   *   *
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 7

1              P R O C E E D I N G S
2                   (WHEREUPON, the deponent
3                   was duly sworn.)
4              DAN DRAWBAUGH,
5    having been first duly sworn, was examined and
6    testified as follows:
7              EXAMINATION
8    BY MR. KILDOW:
9    Q.    Good morning, Mr. Drawbaugh.  I'm Alan
09:31 10   Kildow; and I represent the plaintiffs in the
11   case, Lindsay Winninger and her company, which
12   is called Sports Rehab Consulting, LLC.
13              As the plaintiffs, we're going
14   to ask you some questions today.  In the event
09:31 15   that you don't understand any of my questions,
16   which is highly unlikely, ask me to rephrase it
17   and I'll try to do that.  You can take a break
18   at any time you like, almost.
19   A.    Okay.
09:32 20   Q.    And after I conclude, I suspect that
21   Ms. Savage may have some questions for you as
22   well.
23              First of all, we're not going
24   to go into an in-depth chronology of your
09:32 25   personal and professional background, but

Page 8

1    currently you're the CEO of The Steadman Clinic;
2    is that correct?
3    A.    CEO of The Steadman Clinic and CEO of
4    The Steadman Philippon Research Institute.
09:32 5   Q.    Okay.  And how long have you maintained
6    the position as the CEO of Steadman?
7    A.    Since January 2015.
8    Q.    And what about with -- could I just
9    call it SPRI?
09:33 10   A.    Yes.
11   Q.    How long with SPRI?
12   A.    The same time period.
13   Q.    Okay.  You know Lindsay Winninger; is
14   that correct?
09:33 15   A.    Yes.
16   Q.    How did you get to know her?
17   A.    I met her probably -- probably close to
18   five years ago.  I was invited to Steadman
19   Philippon Research Institute's, SPRI, golf
09:33 20   outing, and she was in my foursome.
21   Q.    Do you currently consider her to be a
22   friend?
23   A.    Yes.
24   Q.    Do you socialize with her?
09:33 25   A.    Yes.

Page 9

1    Q.    Is Lindsay Winninger a friend of your
2    wife, Sarah?
3    A.    Yes.
4    Q.    Okay.  You understand that you're under
09:34 5   oath, and I presume that there's nothing about
6    your relationship -- your friendship with
7    Ms. Winninger or that of your wife that would
8    cause you to tell anything but the truth in this
9    deposition; is that fair?
09:34 10   A.    That's fair.  That's correct.
11   Q.    Okay.  In your relationship with
12   Ms. Winninger, you understand that she has
13   friends other than you and Sarah in the Vail
14   Valley?
09:34 15   A.    Yes.
16   Q.    Would you characterize her as a
17   relatively sociable person?
18   A.    Yes.
19   Q.    Do you understand or have you come to
09:35 20   understand that Ms. Winninger at one point in
21   time up until about May of 2012 worked for an
22   outfit called Proaxis, which did business as
23   Howard Head?
24              MS. SAVAGE:  Object, calls for
09:35 25   speculation.

Page 10

1    BY MR. KILDOW:
2    Q.    You can go ahead and answer.
3    A.    Oh, I can go ahead and answer.
4              I'm not aware of Proaxis.  I
09:35 5   know she worked at Howard Head, but I don't know
6    Proaxis personally.
7    Q.    All right.  And did you know that
8    sometime in 2012, she went to work for the
9    United States Ski Team as a physical therapist?
09:35 10              MS. SAVAGE:  Again, object,
11   speculation.
12   BY MR. KILDOW:
13   Q.    You can go ahead and answer.
14   A.    I don't know if she was with the ski
09:36 15   team.  I know that she worked with Lindsey Vonn.
16   Q.    Okay.  And were you aware that at some
17   point in 2015, Ms. Winninger decided to leave
18   Lindsey Vonn as her full-time physical therapist
19   traveling the World Cup circuit and returned to
09:36 20   the Vail Valley and established her own physical
21   therapy services company?
22   A.    Yes.  It was -- I think it was 2015 I
23   knew that, late.
24   Q.    What's your understanding as to
09:36 25   Ms. Winninger's reputation as a physical

Page 115

1   wanted to get a feeling for whether it made
2   sense for The Steadman Clinic to go into this
3   physical therapy business?
4       A.   Correct.
01:51 5     Q.   Okay.  Now, this is dated March 8,
6   2017, right?
7       A.   Correct.
8       Q.   And it's addressed from Mr. Adair to
9   Mr. Shannon, as we've seen, correct?
01:51 10    A.   Correct.
11      Q.   Why was Mr. Adair sending your
12  prospective -- a pro forma for your prospective
13  physical therapy business to Michael Shannon?
14      A.   We were discussing a variety of
01:52 15 business initiatives.
16      Q.   But this business initiative related to
17  physical therapy, right?
18      A.   Correct.
19      Q.   And if -- let me ask it this way:  Was
01:52 20 it contemplated or discussed as to whether
21  The Steadman Clinic would form its own physical
22  therapy operation, and the referrals of the
23  doctors would go to that physical therapy
24  operation as opposed to Howard Head?
01:53 25    A.   Ask me that question again.

Page 116

1       Q.   Was it contemplated that Steadman would
2   create its own physical therapy operation, and
3   the referrals for physical therapy services for
4   Steadman doctors would go to The Steadman
01:53 5  doctors' own physical therapy operation as
6   opposed to Howard Head?
7       A.   We were thinking that way at the time.
8       Q.   Okay.  And so Vail Health, then, with
9   its Howard Head operation, would have been in
01:53 10 competition with the entity that The Steadman
11  Clinic was contemplating forming; is that
12  correct?
13      A.   Correct.
14      Q.   And so if you're thinking about forming
01:53 15 your own operation, why would you be sending a
16  pro forma to the chairman of the competitor at
17  Vail Health?
18      A.   We were discussing a variety of
19  business opportunities with Vail Health at the
01:54 20 time.
21      Q.   Okay.  So the letters of intent may
22  have terminated or expired, but there may
23  further discussions about some type of operation
24  or entity that might include or might not
01:54 25 include Vail Health, right?

Page 117

1       A.   Correct.
2       Q.   All right.  Did there come a time when
3   you and Dr. Philippon had a dinner with
4   Mr. Shannon and Ms. Kirchner to discuss the
01:54 5  future of the joint venture or the future of any
6   collaboration with respect to physical therapy
7   operations?
8       A.   Yes.
9       Q.   When did that occur?
01:55 10    A.   I don't recall.  I mean, I don't
11  remember the date.
12      Q.   Was it after the letters of intent
13  expired?
14      A.   Yes.
01:55 15    Q.   Using that as a time benchmark,
16  September 1, 2016, how long after the expiration
17  of the letters of intent?
18      A.   Probably -- I don't know -- six months.
19      Q.   Six months?
01:55 20    A.   Yeah, I'm guessing.  I -- yes, I'd say
21  six months.
22      Q.   So if we look at Exhibit 94, and it has
23  a date of March 8, 2017, would that dinner have
24  been before or after March 8, 2017?
01:55 25    A.   I would say after.

Page 118

1       Q.   Okay.  How long after March 8, 2017?
2       A.   I don't know.
3       Q.   What was the purpose of the dinner,
4   other than to eat something, but was there a
01:56 5  discussion during that dinner about physical
6   therapy?
7       A.   There was discussion about a number of
8   business opportunities.
9       Q.   Including physical therapy?
01:56 10    A.   Including physical therapy.
11      Q.   At that dinner did you inform Vail
12  Health through Mr. Shannon and Ms. Kirchner that
13  The Steadman Clinic was no longer interested in
14  a joint venture or whatever you were
01:56 15 contemplating at the time of the dinner?
16      A.   We knew the PT joint venture was over,
17  was past the addendum period of time.
18      Q.   What was the discussion during that
19  dinner with respect to physical therapy?
01:57 20    A.   ==Looking at opportunities that -- where==
21  ==we would leverage Howard Head PT and look at==
22  ==other business ventures together.==
23      Q.   Did there come a time when you advised
24  Vail Health that you were no longer going to
01:57 25 consider any kind of a collaborative effort with

Page 239

1    MS. HARDEN:  All right.  I would
2  ask that we go off the record, Kelly,
3  and you compute how much deposition
4  time we had today, how much actual
05:22 5  testimony time, so that the parties
6  will have that.  And I would like to
7  have that information as well.
8        We'll handle signature for
9  Mr. Drawbaugh.  You can send the
05:22 10  deposition to me, and I will handle
11  signature with him, and then we'll get
12  it back.
13    MS. SAVAGE:  Did you send me an
14  e-mail, Michelle, about Al Perkins.
05:22 15    MS. HARDEN:  I did.  And it's up
16  to you-all, but I think we can go off
17  the record.
18            (WHEREUPON, the deposition
19            concluded at 5:22 p.m.
20            on this date,
21            August 28, 2018.)
22        * * * * *
23
24
25

Page 240

1  STATE OF COLORADO    )
                        )
2  COUNTY OF E A G L E  )

3        I, KELLY CAPRI, Notary Public
4  for the State of Colorado, a Certified Court
5  Reporter and Registered Professional Reporter,
6  do hereby certify:
7        That previous to the
8  commencement of the examination of the deponent,
9  the deponent was duly sworn to testify the whole
10  truth concerning the matters herein;
11        That the foregoing deposition
12  transcript was reported stenographically by me,
13  was thereafter reduced to typewriting under
14  my personal direction, and constitutes a true
15  record of the testimony given and the
16  proceedings had;
17        That the said deposition was
18  taken before me at the time and place specified;
19        That the said deposition was
20  adjourned as stated herein;
21        That the reading and signing by
22  the deponent of the deposition transcript was
23  agreed upon as stated herein;
24        That I am not a relative or
25  employee or attorney or counsel, nor a relative

Page 241

1  or employee of such attorney or counsel for any
2  of the parties hereto, nor interested directly
3  or indirectly in the outcome of this action.
4        IN WITNESS WHEREOF, I do
5  hereunto set my hand and affix my seal of office
6  at Carbondale, Colorado, on September 4, 2018.
7
8
9
10  _____
    Kelly Capri, CCR, RPR
11  Notary Public for the State of Colorado
    My commission expires:  9/15/2020
12
    RPR Certificate No. 021469
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 242

1        CERTIFICATE OF DEPONENT
         (Disregard if signature is waived)
2
3    I have read my deposition, and the same is
4  true and accurate, save and except for changes
5  and/or corrections, if any, as indicated by me
6  on the Errata Sheet hereof.
7    Errata Sheet(s) Attached [ ]  No Changes [ ]
8
9
10  _____
    DAN DRAWBAUGH
11
12  SUBSCRIBED AND SWORN to before me this _____
13  day of _____, 2018.
14  My commission expires:  _____
15
16  _____
    Notary Public
17
    _____
18  Street Address
    _____
19  City, State, Zip
20  Re:  *Winninger v. Kirchner, et al.*
    Deposition of:  DAN DRAWBAUGH
21  Date of Deposition:  August 28, 2018
    Reported By:  Kelly Capri, CCR, RPR
22
    Please Return the Executed Certificate to:
23
    CAPRI COURT REPORTING
24  0035 Bobcat Court
    Carbondale, Colorado 81623
25  (970) 510-5131
    Kelly@CapriCourtReporting.com