IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC & LINDSAY WINNINGER,

    Plaintiffs,

v.

VAIL CLINIC, INC., d/b/a VAIL HEALTH, a Colorado nonprofit corporation,

    Defendant.

---

### VAIL HEALTH'S PARTIAL APPEAL OF SPECIAL MASTER'S ORDER REGARDING PLAINTIFFS' MOTION TO COMPEL NO. 5 CONCERNING VAIL HEALTH'S PRIVILEGE LOG

---

Pursuant to Fed. R. Civ. P. 53(f)(2), Defendant Vail Clinic, Inc., d/b/a Vail Health ("Vail Health") respectfully submits this appeal of the Special Master's Report and Recommendation Regarding Plaintiffs' Motion to Compel No. 5 (Doc. 398) ("MTC 5 Order").

### PRELIMINARY STATEMENT

Plaintiffs' Motion to Compel No. 5 (Doc. 195) ("MTC 5") challenged more than 390 entries on Vail Health's privilege log. In response to MTC 5, Vail Health relied upon its detailed privilege log that addressed the basis for privilege with respect to each communication, detailed briefing with ample legal citations, an affidavit from a former Vail Health employee providing additional context regarding a certain category of privileged documents, and the submission of every single communication challenged by Plaintiffs to the Special Master for *in camera* review. Notwithstanding those measures, the MTC 5 Order concluded that Vail Health failed to carry its burden to demonstrate privilege with respect to scores, perhaps hundreds, of documents on Vail Health's privilege log. The Court should reject the MTC 5 Order's unrealistic and unsupported standard for demonstrating privilege, particularly in the circumstances present here, where Plaintiffs challenged privilege with respect to nearly 400 entries on Vail Health's privilege log.

1

The Court should decline to adopt the MTC 5 Order insofar as it rejected Vail Health's claims of privilege.

**BACKGROUND**

In a June 18, 2021 order, the Court cautioned Plaintiffs to refrain from "'multipl[ying] the proceedings . . . unreasonably and vexatiously.'" (Doc. 113 at 4 (quoting 28 U.S.C. § 1927).) On June 29, 2021, the Court issued a second order advising Plaintiffs' counsel to refrain from conduct that unduly multiplies these proceedings. (Doc. 118 at 6.) Between August 5, 2021, and September 7, 2021, Plaintiffs filed four fifteen-page motions to compel raising dozens of discovery issues. (Docs. 127, 129, 132, 157.) As it was briefing Plaintiffs' first four motions to compel, Vail Health served its privilege log on September 10, 2021 ("Initial Privilege Log"). (Ex. 1; Doc. 195-4.) Each entry (*i.e.*, row) on Vail Health's Initial Privilege Log reflected a single communication. (*Id.*) Thus, for example, a three-email chain is reflected by three rows on Vail Health's privilege log. (*Id.*) Each row on Vail Health's Initial Privilege Log provided the following information: Item Number; Production Number; Date; Author; Recipients; Privilege; and Description, which identified the nature of the privilege and subject matter of the document. (*Id.*) The Initial Privilege Log identified each author or recipient who was an attorney or other legal professional with an asterisk. (*Id.*) In total, Vail Health's Initial Privilege Log contained 580 detailed entries. (*Id.* at 81.)

Notwithstanding Vail Health's detailed Initial Privilege Log, Plaintiffs sent Vail Health an email identifying numerous purported deficiencies in the log. (Ex. 2.) In September 2021, the parties engaged in extensive conferral regarding the issues Plaintiffs raised regarding Vail Health's privilege log. (Ex. 3 at 1-7.) While Vail Health maintained that its Initial Privilege Log

2

was sufficient, it nonetheless agreed to produce an amended privilege log addressing many of Plaintiffs' concerns. (*Id.* at 1.)

On November 2, 2021, Vail Health produced an amended privilege log ("Amended Privilege Log"). (Ex. 4; Doc. 396-1.) Vail Health's Amended Privilege Log included the same columns as its Initial Privilege Log but provided more detailed descriptions for certain privilege log entries that Plaintiffs had raised questions about during conferral. (*Id.*) Additionally, Vail Health produced with its Amended Privilege Log an Appendix of Individuals on Vail Health's Privilege Log, which identified the title of each person on Vail Health's Amended Privilege Log. (Ex. 5; Doc. 396-1 at 71; Doc. 213-1.)

On October 17, 2021—after Vail Health had already agreed to produce an amended privilege log—Plaintiffs filed MTC 5. (Doc. 195.) Plaintiffs' MTC 5 argued, *inter alia*, that (a) Vail Health's Initial Privilege Log included inadequate information to assess Vail Health's privilege claims; (b) certain documents concerning valuations were not privileged; (c) Vail Health waived privilege by communicating with Board members who used non-Vail Health email addresses; (d) Vail Health waived privilege by disclosing certain non-privileged documents; and (e) draft documents intended for dissemination to third parties are not privileged. (*Id.*) In total, Plaintiffs' MTC 5 challenged more than **391 of the 580 entries** on Vail Health's privilege log. (*Id.*)

Shortly after Plaintiffs filed MTC 5, the Special Master held two days of hearings on Plaintiffs' Motions to Compel Nos. 1-4 on October 21 and 22, 2022. During the October 22 hearing, the Special Master discussed the possibility of Vail Health submitting the documents Plaintiffs challenged in MTC 5 for *in camera* review. (Ex. 6 at 38:2-8, 71:3-8, 79:13-81:14.)

3

On November 8, 2021, Vail Health filed its response to MTC 5. (Doc. 213.) Vail Health's MTC 5 brief was detailed and well supported, addressing each argument Plaintiffs raised in MTC 5. (*Id.*) It also attached a detailed declaration from Nicholas Brown, the former Senior Vice President of Howard Head Sports Medicine and Vail Health Business Development. (Ex. 7; Doc. 213-3 at 1.) Mr. Brown's declaration explained that he "worked directly with Vail Health's attorneys at Duane Morris LLP to determine what legal issues were posed by [potential joint ventures with local orthopedic practices], including but not limited to compliance with the Stark Law and the Anti-Kickback Statute." (*Id.* at 1.) Mr. Brown explained that he worked at the direction of counsel with several appraisal firms to conduct fair market value analyses regarding Vail Health's Howard Head physical therapy practice. (*Id.* ¶ 7.) Those analyses "were necessary for Duane Morris to provide legal advice because the Stark Law and Anti-Kickback Statute prohibit certain transactions between a healthcare facility and physician practice unless such transactions are conducted at fair market value." (*Id.* ¶ 8.) "Thus, determining whether a transaction between a healthcare facility and physician practice is lawful often requires an analysis of the fair market value of the asset or services that are the subject of the transaction." (*Id.*) Mr. Brown's declaration then described several categories of communications related to this project that Vail Health considered to be privileged. (*Id.* at 2-4.) While Vail Health argued that *in camera* review of the documents Plaintiffs challenged was unnecessary, Vail Health stated that it had "no objection" to providing privileged documents to the Special Master for *in camera* review. (Doc. 213 at 8.) Thus, in response to Plaintiffs' MTC 5, Vail Health offered (a) detailed argument in its brief; (b) a sworn declaration; (c) a detailed, document-by-document privilege log; and (d) submission of documents for *in camera* review.

Plaintiffs filed their reply brief on November 19, 2021. (Doc. 226.) While Plaintiffs reasserted many of the arguments in MTC 5, nowhere did Plaintiffs argue that Vail Health should be subject to a blanket privilege waiver for not discussing individually each of the more than 300 documents Plaintiffs challenged in MTC 5 in its opposition brief and the Brown declaration. (*Id.*)

On December 6, 2021, per the Special Master's order, Vail Health filed its Proposed Findings of Fact and Conclusions of Law regarding Plaintiffs' five Motions to Compel, which referenced and attached as an exhibit Vail Health's Amended Privilege Log. (Doc. 261 ¶¶ 99, 165; Doc. 261-11.)

On January 18, 2022, the Special Master ordered Vail Health to produce for *in camera* review "documents specifically requested and identified in Plaintiffs' Motion to Compel #5." (Doc. 274 at 4.) On February 8, 2022—after compiling and circulating on January 29, 2022, a list of the documents at issue in MTC 5—Vail Health sent the Special Master a link containing electronic copies of the privileged documents for *in camera* review as well as a copy of Vail Health's Amended Privilege Log. (Doc. 364-5.) On February 21, 2022, per the Special Master's request to receive hard copies, Vail Health shipped to the Special Master binders containing the documents for *in camera* review. (Doc. 364 at 4; Doc. 364-6.) In both the electronic and hard-copy version of the *in camera* submission, Vail Health labeled the documents with a number corresponding to the Item Number on Vail Health's Amended Privilege Log.

On October 21, 2022, the Special Master issued the MTC 5 Order. (Doc. 398.) The MTC 5 Order analyzed approximately 20 privilege log entries individually but ordered production of at least 79, and possibly several hundred. The MTC 5 Order appears to have ordered production of 79 of the 80 documents listed in Footnotes 42, 53, 56, and 59 of MTC 5.

(Doc. 398 at 3 n.4 (identifying Footnotes 42, 53, 56, and 59 of MTC 5); *id.* at 7 (Vail Health "must therefore Disclose each of the items sought by Plaintiffs, *see* n. 4, except as noted below.")). The 80 privilege log entries listed in Footnotes 42, 53, 56, and 59 of MTC 5 are Item Nos. 116, 117, 133, 131, 135, 171, 172, 174, 217, 219, 247, 252, 320, 321, 322, 323, 324, 325, 329, 330, 331, 332, 333, 340, 341, 345, 372, 373, 374, 375, 376, 379, 380, 381, 383, 384, 396, 397, 399, 427, 428, 429, 430, 431, 432, 433, 434, 435, 436, 437, 438, 439, 440, 441, 456, 457, 458, 459, 460, 461, 462, 463, 464, 465, 466, 467, 468, 470, 473, 474, 504, 529, 544, 554, 560, 559, 562, 563, 564, and 571. The MTC 5 Order required all to be produced except Item No. 172. (*Id.* at 7, 8.) Additionally, the MTC 5 Order arguably ordered production of "238 entries on Vail Health's privilege log that involve communications by or to an attorney" for which "Vail Health has not offered a separate analysis justifying its claim of privilege." (*Id.* at 6-7.)[1] In effect, the MTC 5 Order concluded that Vail Health waived privilege by not specifically discussing in its brief or declaration each of the hundreds of privilege log entries in dispute, even though Vail Health provided a detailed privilege log describing the basis for privilege of each of these documents and submitted each for *in camera* review.

---

[1] Footnote 17 of Plaintiffs' MTC 5 identifies "238 entries on the log that identify an attorney as a recipient, but does not disclose whether the attorney was a direct recipient or merely copied." (Doc. 195 at 5.) The privilege log entries identified in that footnote are Item Nos. 35-38, 48-49, 51, 54, 57-60, 62, 64, 69-70, 73, 75, 89, 91, 95, 97-99, 101, 104-06, 108-09, 117, 122-23, 127, 129-36, 141-43, 145-50, 154-56, 158, 162-66, 168, 173-76, 178, 180, 202, 204-06, 208, 214-17, 220-24, 228-35, 237, 241-50, 252-53, 257-58, 265, 267-69, 273, 276, 278-79, 283, 285, 287, 291, 293, 297-98, 300-01, 303-05, 308-11, 313, 317, 320, 326, 329, 334, 341, 353, 355, 359-60, 363, 365, 370- 71, 373, 377, 382, 385-86, 391-92, 395, 399, 409, 414, 421, 423, 425, 427-29, 431-33, 435, 437-38, 443-45, 447, 449-50, 452-53, 455-57, 459-67, 478-82, 484, 489-90, 518, 522-26, 533, 535-42, 545, 551-54, 556, 560, 562-63, 565-66, 570-571, 573. (Doc. 195 at 5 n.17.) Because Vail Health submitted each of these documents for *in camera* review, the Special Master was able to determine, for each, whether an attorney was a direct recipient or copied.

**LEGAL STANDARD**

Rule 53 permits appointment of a Special Master to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C). The Court's appointment order provides that "Magistrate Judge Gallagher will review each discovery motion to determine in his discretion whether the dispute should be referred to the Master and will refer appropriate discovery motions to the Master." (Doc. 123 at 2.) Judge Gallagher referred to the Special Master MTC 5 but did not delegate supervision of all discovery matters to the Special Master. (*Id.*)

"In acting on a master's order, report, or recommendations, the court must give the parties notice and an opportunity to be heard; may receive evidence; and may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1). In reviewing an objection to a Special Master's order, the Court "must decide de novo all objections to findings of fact . . . [and] all objections to conclusions of law made or recommended by a master." Fed. R. Civ. P. 53(f)(3), (4). "[T]he court may set aside a master's ruling on a procedural matter only for an abuse of discretion." Fed. R. Civ. P. 53(f)(5).

**ARGUMENT**

**I.  Because Vail Health Carried Its Burden of Demonstrating Privilege, the MTC 5 Order's Finding of Blanket Privilege Wavier Must Be Reversed.**

The MTC 5 Order concluded that Vail Health waived attorney client privilege regarding scores, and possibly hundreds, of documents on its privilege log by not discussing individually each of the more than 300 documents Plaintiffs challenged in MTC 5. (Doc. 398.)[2] Essentially,

---

[2] It is unclear whether the MTC 5 Order required production of the 238 privilege log entries referenced in passing on pages 6-7 of the MTC 5 Order. (Doc. 398 at 6-7.) The last sentence of that paragraph orders Vail Health to disclose only 79 of the 80 documents referenced in Footnote 4 of the MTC 5 Order. (*Id.* at 7.) To the extent the MTC 5 Order is interpreted to

the MTC 5 Order concluded that, even where a party submits a detailed privilege log and submits the disputed documents for *in camera* review, it cannot demonstrate privilege unless it repeats the description of the basis for privilege of each individual document in its motion to compel briefing and sworn declarations. (*Id.*) Because that is not the law, the Court should decline to adopt the MTC 5 Order.

Rule 26 describes a party's burden to demonstrate privilege:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A). "The standard for testing the adequacy of the privilege log is whether, as to each document, it sets forth specific facts that, if credited, would suffice to establish each element of the privilege that is claimed." *Robinson v. De Niro*, 2022 U.S. Dist. LEXIS 42101, at *7 (S.D.N.Y. Mar. 9, 2022). Privilege logs must contain "the author or origin of the document; any documents or materials attached to the document; all recipients of the document, including addresses and persons or entities receiving copies; the date of the origin of the document; and a description of the contents of the document in sufficient detail as to reveal why it is subject to the asserted privilege." *Wildearth Guardians v. United States Forest Serv.*, 713 F. Supp. 2d 1243, 1266 (D. Colo. 2010) (internal citations omitted). For each communication, Vail Health's Amended Privilege Log identified the date, author, recipients

---

require production of the 238 communications between Vail Health and its outside counsel at Duane Morris referenced in Footnote 17 of MTC 5, Vail Health appeals that order.

8

(including copied recipients), any attachment, and the subject matter of the communication and nature of the privilege sufficient to evaluate Vail Health's privilege claim. (Doc. 261-11.) It also identified each attorney or legal professional with an asterisk and included a table listing the employer and title of each individual on Vail Health's privilege log. (*Id.*) Vail Health's privilege log complied with Fed. R. Civ. P. 26(b)(5)(A), and thus carried Vail Health's burden.

However, Vail Health did not rely solely on its privilege log. It also (a) voluntarily submitted all of the more than 390 communications at issue in MTC 5 for *in camera* review (Doc. 364-5; Doc. 364 at 4) and (b) submitted a detailed declaration from Nicholas Brown on the one privilege issue where additional context was helpful in assessing Vail Health's privilege claims (communications concerning valuations prepared in connection with assessing regulatory compliance of the proposed physical therapy joint venture) (Ex. 7; Doc. 213-3.). Submission of a detailed privilege log and submission of documents for *in camera* review, even without a sworn declaration, is sufficient to demonstrate privilege. *See, e.g.*, *High Point Sarl v. Sprint Nextel Corp.*, 2012 U.S. Dist. LEXIS 8435, at \*30, 43-44 (D. Kan. Jan. 25, 2012) (finding that although party's affidavits did not address "every part of every document" it asserted was privileged, the party sufficiently supported its privilege claims through submission of a privilege log that asserted "for each document withheld that it was created for the purposes of legal advice or for the provision of legal advice"); *GE v. Johnson*, 2007 U.S. Dist. LEXIS 8275, at \*51-52 (D.D.C. Feb. 5, 2007) (finding that declaration addressing 48 representative documents out of more than 800 was sufficient to establish privilege when viewed together with "the separate privilege log, as well as the Court's own *in camera* review of a sample document"); *Robinson*, 2022 U.S. Dist. LEXIS 42101 (denying motion to compel, in part, based on submission of privilege log and documents for *in camera* review).

Vail Health has not located a case where a Court required a party to submit a brief or declaration discussing individually hundreds of privileged communications or face a blanket waiver of privilege. Such a rule would unduly burden the Court and the parties and be inconsistent with the purpose of the Federal Rules. *See* Fed. R. Civ. P. 1 ("[The Federal Rules of Civil Procedure] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). It would also encourage unscrupulous litigants to challenge scores or hundreds of an opposing party's privilege log entries to impose significant burdens on the opposing party.

Even if the Court were to determine that Vail Health should have included document-by-document analysis regarding the nearly 400 communications Plaintiffs challenged in MTC 5, a broad finding of waiver is not warranted. "Waiver of the privilege . . . is the most extreme sanction that a court can impose for failure to follow the required procedure. . . . [W]aiver is reserved for cases of unjustifiable delay, inexcusable conduct, and bad faith in responding to discovery requests." 6 Moore's Federal Practice - Civil § 26.90 (2022). In fact, "some courts have found that the '*failure to provide a privilege log* alone does not warrant a waiver of the attorney-client privilege.'" *Robinson*, 2022 U.S. Dist. LEXIS 42101 (emphasis added) (quoting *Pem-America, Inc. v. Sunham Home Fashions*, 2007 U.S. Dist. LEXIS 80548, at *5 (S.D.N.Y. Oct. 30, 2007)). Vail Health has proceeded in good faith by submitting detailed, legally supported briefing, a detailed privilege log, all disputed documents for *in camera* review, and a detailed declaration from Mr. Brown contextualizing communications related to the valuations prepared to assist Vail Health's outside counsel assess regulatory compliance.

In sum, the MTC 5 Order incorrectly concluded that Vail Health waived privilege by failing to discuss individually hundreds of documents in its briefing and declaration.

10

**II.      Valuation-Related Documents Were Prepared at the Request of Counsel, Necessary To Assist Counsel in Rendering Legal Advice, and Are Privileged.**

In addition to finding a blanket waiver of privilege as to potentially hundreds of documents, the MTC 5 Order concluded that nearly all communications related to valuations prepared at the direction of outside counsel to assess regulatory compliance of proposed joint ventures were nonprivileged. (Doc. 398 at 3-17.) The Court should overrule that conclusion.

Third party recipients do not void privilege where, as here, third parties such as Healthcare Transaction Advisors and Haverford acted as Vail Health's or its counsel's agent in connection with obtaining or providing legal advice. *United States v. Kovel,* 296 F.2d 918, 923 (2d. Cir. 1961); *Phillips v. Boilermaker-Blacksmith Nat'l Pension Trust,* 2021 U.S. Dist. LEXIS 186381, *13-14 (D. Kan. Sept. 29, 2021); *Austin v. City & Cnty. of Denver,* 2006 U.S. Dist. LEXIS 32048, *15-18 (D. Colo. May 19, 2006).

The documents and communications identified by Plaintiffs and ordered produced in the MTC 5 Order fall into four broad categories. First, there are **attorney-client communications**. This includes entries 117, 131, 133, 135, 174, 217, 247, 252, 293, 329, 376, 383, 437, 457, 473, and 571. (Ex. 7, Declaration of Nicholas Brown ¶ 6; Ex. 4.) These documents are privileged. They are communications from a client to an attorney seeking legal advice. *In re Qwest Comm'ns. Int'l*, 450 F.3d 1179, 1185 (10th Cir. 2006). By way of example, entry 252 is an email from Nicholas Brown to Matthew Jones, one of Vail Health's attorneys, then-CEO Doris Kirchner, and then-Board Chair Michael Shannon, seeking legal input on a draft presentation. (Ex. 4 at 28.) Similarly, entry 376 is an email from Nicholas Brown to Matthew Jones, seeking legal advice on the Stark Law after an internal discussion about a valuation. (Ex. 4 at 45; Ex. 7 ¶ 17).

Second, there are **client-client communications**. This includes entries 219, 321, 331, 340, 374, 375, 396, 397, 436, 439, 440, 441, 468, 470, 474, 504, 529, 544, 559, and 564. These documents are privileged because they discuss legal advice provided or are discussing information for the purpose of obtaining legal advice. *Graff v. Haverhill North Coke Co.*, 2012 U.S. Dist. LEXIS 162013, *25-28 (S.D. Oh. Nov. 13, 2012); *White*, 586 F. Supp. 2d at 1269 (corporate communications privileged where communication was for primary purpose of obtaining legal advice); *Williams*, 238 F.R.D. at 640. By way of example, entries 440 and 441 are communications from Nicholas Brown to Ted Sirotta, then-Senior Vice President and CFO at Vail Health, and to Doris Kirchner and Michael Shannon, providing a copy of the latest draft valuation for their review so that Vail Health could approach its attorneys with further questions about regulatory compliance. (Ex. 4 at 53; Ex. 7 ¶ 13).

Third, there are **attorney-client-appraiser communications.** These include entries 320, 341, 373, 399, 427, 428, 429, 430, 431, 432, 433, 435, 438, 459, 460-67, 554, 560, 562, and 563. These communications are privileged because the appraisers were retained for the purposes of assisting Vail Health's attorneys in providing legal advice. Ex. 7 ¶¶ 6-8; *Valley Forge,* 2016 U.S. Dist. LEXIS 201652, at *9-10; *Kovel,* 296 F.2d at 923 (2d. Cir. 1961); *Austin,* 2006 U.S. Dist. LEXIS 32048, at *15-18. Healthcare is a highly regulated industry, and healthcare providers are required to comply with the Stark Law and the Anti-Kickback Statute. 42 U.S.C. § 1395nn; 42 U.S.C. § 1320a-7b. Vail Health, under the direction of counsel, engaged appraisal firms to conduct valuations to enable their attorneys to assess regulatory risks associated with these laws. (Ex. 7 ¶¶ 6-8.) These valuations were critical to that assessment because transactions between hospitals and physicians must generally occur at fair market value. 42 U.S.C. § 1395nn(e)(7) (requiring group practice arrangements to be compensated at fair market value); *Heartland*

*Surgical Specialty Hosp. LLC v. Midwest Div. Inc.,* 2007 U.S. Dist. LEXIS 53217, *19 n.5 (D. Kan. July 20, 2007) ("to avoid violations of Stark and anti-kickback laws physician compensation must be based on the fair market value of the services performed"). These valuations were undertaken on the advice of counsel and were then provided to counsel for the purposes of obtaining legal advice regarding regulatory risks. *Graff*, 2012 U.S. Dist. LEXIS 162013, at *25-28 (audit documents requested by legal counsel, for the purpose of providing legal advice were privileged); *Boehringer*, 180 F. Supp. 3d at 31; Ex. 7 ¶ 8. By way of example, entry 435 is an email from an appraisal firm to Doris Kirchner, then-Vail Health CEO, at the request of Vail Health's attorneys, and entry 438 is an email from an appraisal firm to Mr. Brown and Vail Health's attorneys, providing a draft valuation report. (Ex. 4 at 53; Ex. 7 ¶ 11.)

Finally, there are **appraiser-client communications,** including entries 116, 322-325, 330, 332, 333, 434, 456, and 458. These communications are privileged for the same reason as above—the appraiser was retained to assist Vail Health's attorneys in providing legal advice relating to regulatory compliance. By way of example, entry 116 is an email from an appraisal firm providing a draft valuation, which was prepared to enable counsel to assess regulatory implications. (Ex. 4 at 13.) Entry 116 was then internally circulated to other Vail Health employees, along with a discussion of a call that Nicholas Brown had with Vail Health attorneys about regulatory concerns. (*Id.* at 14, entry 117.) These communications were required to be kept confidential and were not disclosed to third parties. (*See, e.g.*, Doc. 214, Haverford Engagement Letter at page 8, discussing confidentiality.) These are privileged communications.

In rejecting the above conclusions, the MTC 5 Order interpreted *Kovel* in an overly narrow manner as applying only when a third-party was "simply translat[ing] information." (MTC 5 Order at 14.) In fact, communications with a third party are protected by the attorney-

13

client privilege when "a third party . . . assists a lawyer in giving legal advice, and where the third party's participation was required to enable the attorney to render legal advice." *Valley Forge Ins. Co.*, 2016 U.S. Dist. LEXIS 201652, at *9-10 (internal quotations marks omitted). Here, because the attorneys at Duane Morris are not valuation experts, and offering a legal opinion about the regulatory compliance of the proposed joint venture required an assessment of fair market value (Ex. 7 ¶ 8), the valuation experts' work was *necessary* for Duane Morris to provide legal advice. Also, the MTC 5 Order's analogy to an incident report prepared after receiving advice from an attorney to prepare one is inapt. (MTC 5 Order at 12 n.11.) Here, Vail Health was not only directed by counsel to engage a valuation expert to prepare a valuation report; that valuation report was prepared at the direction and under the supervision of counsel and provided to counsel so counsel could render legal advice. Reports prepared under such circumstances are privileged, even if factual in nature. *See Austin*, 2006 U.S. Dist. LEXIS 32048, at *6, 16-18 (holding reports prepared by third-party consultant that included "factual and non-factual findings" were privileged if intended to "inform the legal guidance").

The MTC 5 Order erred by concluding that nearly all communications concerning the work of the valuation consultants were nonprivileged.

### III. Vail Health's Board Member Did Not Waive Privilege By Including His Assistant on Privileged Communications.

The MTC 5 Order found that the then-Chair of Vail Health's Board of Directors, Michael Shannon, waived the attorney-client privilege by copying his executive assistant on a limited number of otherwise privileged communications. (Doc. 398 at 19-20.) It is undisputed that Mr. Shannon, as an outside director of Vail Health, is an agent of Vail Health whose communications can be protected by the attorney-client privilege, and the MTC 5 Order upheld the privilege regarding communications between Mr. Shannon and counsel, even though he used

14

a non-Vail Health email address. (*Id.* at 17-19.) However, the MTC 5 Order erred by then concluding that Mr. Shannon waived privilege by including his administrative assistant on certain emails. The "agency exception" permits a person within the scope of the privilege to share a privileged communication with his or her agent without waiving privilege. *See In re Murphy*, 2018 Bankr. LEXIS 4330, at *6-7 (Bankr. M.D. Fla. Jan. 18, 2018) ("[A] communication that is shared with the client's agent does not destroy the attorney-client privilege when it is 'in furtherance of the rendition of legal services to the client' and to '[t]hose reasonably necessary for the transmission of the communication.'"). Because administrative assistants are commonly recognized as necessary to a senior executive or board member's performance of his or her duties, disclosure of otherwise privileged communications to administrative assistants does not waive privilege. *See id.* (finding that communications between principal of corporation, attorney, and principal's administrative assistant were privileged under the "agency exception"); *Am. Ship Bldg. Co. v. Coca-Cola Bottling Co.*, 1986 U.S. Dist. LEXIS 22955, at *8-9 (N.D. Ga. July 10, 1986) (finding legal memorandum was privileged even though CFO's administrative assistant stored memo in his files, because "a top-level corporate executive cannot be expected to keep track of all the information that comes across his desk and maintain his own files without the aid of an assistant"). The MTC 5 Order erred in concluding that Mr. Shannon waived privilege by including his assistant on communications.

## CONCLUSION

The Court should decline to adopt the MTC 5 Order to the extent it rejected Vail Health's privilege claims.

Respectfully submitted this 11th day of November, 2022.

    *s/ Daniel A. Richards*
Shannon Wells Stevenson
Janet A. Savage
Jacqueline V. Roeder
Daniel A. Richards
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, Colorado, 80202
Telephone: 303.892.9400
Facsimile: 303.893.1379
Email:  shannon.stevenson@dgslaw.com
       janet.savage@dgslaw.com
       jackie.roeder@dgslaw.com
       daniel.richards@dgslaw.com

*Attorneys for Defendant VAIL CLINIC, INC., d/b/a VAIL HEALTH, a Colorado nonprofit corporation*