# EXHIBIT 7

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado Limited Liability Company, and
LINDSAY WINNINGER, an individual,

    Plaintiffs,

v.

VAIL CLINIC, INC., d/b/a VAIL HEALTH, a Colorado nonprofit corporation,

    Defendant.

**DECLARATION OF NICHOLAS BROWN PURSUANT TO 28 U.S.C. § 1746**

I, Nicholas Brown, do hereby declare as follows:

1. I am a former employee of the defendant in this case, Vail Clinic, Inc. d/b/a Vail Health ("Vail Health"). From 2019 to 2021, I was Senior Vice President of Howard Head Sports Medicine and Vail Health Business Development. From 2017 to 2019, I was the Senior Vice President of Howard Head Sports Medicine and Vail Health Total Joint Care. From 2012 to 2017, I was the Vice President of Howard Head Sports Medicine Operations.

2. In these roles, I received financial information relating to Howard Head Sports Medicine ("HHSM"), a department of Vail Health, and was responsible for providing updates to Vail Health's CEO and senior executive team and for working on initiatives relating to HHSM.

3. One of these initiatives related to identifying potential joint venture opportunities with other organizations for the provision of physical therapy services.

4. Beginning in 2015, I worked with Vail Health and potential joint venture partners to explore whether a joint venture opportunity was mutually beneficial.

5. As part of this exploration, I worked directly with Vail Health's attorneys at Duane Morris LLP to determine what legal issues were posed by these potential joint ventures, including but not limited to compliance with the Stark Law and the Anti-Kickback Statute.

6. In the course of doing this, I frequently sought and received advice from these attorneys on a variety of legal issues. For example, entry 293 of Vail Health's privilege log is an

email I sent to Matthew Jones, an attorney at Duane Morris, asking for advice on potential regulatory implications raised by a potential joint venture.

7. At the direction of Vail Health's attorneys at Duane Morris, I, on behalf of Vail Health, worked with several appraisal firms to conduct fair market value analyses regarding HHSM. These included Haverford Healthcare Advisors, Deloitte, and Healthcare Transaction Advisors.

8. These fair market value analyses were necessary for Duane Morris to provide legal advice because the Stark Law and Anti-Kickback Statute prohibit certain transactions between a healthcare facility and physician practice unless such transactions are conducted at fair market value. Thus, determining whether a transaction between a healthcare facility and physician practice is lawful often requires an analysis of the fair market value of the asset or services that are the subject of the transaction.

9. When I received draft fair market value analyses from the appraisal firms, I, or the appraisal firm, provided this information to attorneys at Duane Morris so they could assess any legal compliance issues, including those under the Stark Law and Anti-Kickback Statute, after reviewing the fair market value analyses.

10. The purpose of these fair market value analyses was to provide information to the attorneys at Duane Morris so they could advise Vail Health regarding regulatory issues, including compliance with the Stark Act and Anti-Kickback Statute.

11. For example, entry 438 of Vail Health's privilege log is an email from a valuation firm to me and attorneys at Duane Morris, attaching a draft valuation report so that Duane Morris could review the fair market value analysis to assess any regulatory issues.

12. In addition, I, along with other members of Vail Health leadership, would discuss the contents of the fair market value analyses along with the advice provided by Duane Morris so that we could determine what further advice we needed to make a decision about the joint venture while complying with all applicable laws and regulations.

13. For example, entries 440 and 441 of Vail Health's privilege log are email communications where I circulated a draft fair market value analysis to then-CEO Doris Kirchner, then-Board Chair Mike Shannon, and then-Senior Vice President and Chief Financial Officer Ted Sirotta, asking for their thoughts on the draft so that we could approach Vail Health's attorneys with additional compliance questions.

14. Similarly, the email chain labeled VH_Fed_001942-45 is a discussion among me, an appraiser from Healthcare Transaction Advisors (Nicholas A. Newsad), our CEO Doris Kirchner, our CFO Ted Sirotta, and outside counsel Matthew Jones, where we are collectively evaluating whether a different structure for the proposed joint venture would address the legal issues posed by the fair market value requirements.

15. Entry 544 is an email from me to our incoming CEO, Will Cook, providing him fair market value analyses that had been previously generated at the direction of counsel, so that he could understand the history of the prior regulatory issues we had faced when considering past joint venture opportunities.

16. After Vail Health and our attorneys at Duane Morris reviewed the draft fair market value analyses, we would discuss whether there were additional compliance issues based on our understanding of the fair market value analyses.

17. For example, entry 376 of Vail Health's privilege log is an email that I sent to Duane Morris attorneys after discussing the valuation with Doris Kirchner and Ted Sirotta, discussing the impact of the fair market value analysis on compliance of the proposed joint venture with applicable laws.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 8, 2021.                     s/ Nicholas P. Brown
                                                  Nicholas P. Brown