# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02209

DISH NETWORK L.L.C.,

       Plaintiff,

       v.

MULTICULTURAL NETWORK
CORPORATION, a Delaware corporation;
and MBC FZ, L.L.C., a United Arab Emirates
corporation

       Defendants.

## MOTION TO RESTRICT PUBLIC ACCESS TO RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION AND ACCOMPANYING EXHIBITS

In accordance with its contractual obligations, Defendants Multicultural Network Corporation and MBC FZ, L.L.C. respectfully submit this Motion to Restrict Access at Level 1 to Defendants' Response to DISH's Motion for Preliminary Injunction and accompanying exhibits [ECF No. 30], pursuant to D.C. Colo. LCivR. 7.2.

Defendants seek restricted access but cannot argue in good faith that pursuant to Local Rule 7.2 the entire Agreement at issue, and all references to any term of the Agreement, should be restricted from the public. *See, Boatman v. U.S. Racquetball Ass'n*, 33 F. Supp. 3d 1264, 1276–77 (D. Colo. 2014) (considering a defendant's motion to restrict access to its filings where defendant did not believe the documents were confidential but was obligated to file the motion to restrict under agreement with the plaintiff).

DMEAST #42031061 v4

Redacted and publicly available versions of Defendants' Response to DISH's Motion for Preliminary Injunction and supporting Declaration of Marc Antoine d'Halluin are attached to this Motion as Exhibit 1 [ECF No. 31-1] and Exhibit 2 [ECF No. 31-2], respectively. Exhibits A, B, C, D, and E to the d'Halluin Declaration are restricted in their entirety as part of the International Affiliation Agreement and amendments thereto, and are therefore only attached as cover sheets.

## D.C. COLO. LCIVR 7.1(A) CERTIFICATE OF CONFERRAL

Counsel for Defendants conferred with counsel for Plaintiff DISH regarding this Motion. DISH contends that the International Affiliation Agreement (the "Agreement"), and all references thereto, should be sealed. Ex. A ("Conferral E-mail").

## STATEMENT OF POSITION

"Courts have long recognized a common-law right of access to judicial records." *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007). Although this right is not absolute, courts have recognized that "secret court proceedings," without sufficient justification, "are anathema to a free society." *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996). Under D.C. Colo. LCivR 7.2, "[a] party seeking to restrict access must":

> (1) identify the specific document for which restriction is sought; (2) it must identify the interest to be protected and the reasons why that interest outweighs the presumption of public access; (3) it must identify a clear injury that would result if access is not restricted; and (4) it must explain why alternatives to restricted access—such as redaction, summarization, stipulation, or partial restriction—are not adequate.

*W Convenience Stores, Inc. v. Suncor Energy U.S.A., Inc.*, 970 F. Supp. 2d 1162, 1191 (D. Colo. 2013) (citing D. Colo. LCivR 7.2(B)(1)–(4)).

2

Here, Defendants have contractually agreed that the Agreement is confidential. However, Defendants cannot argue in good faith that these filings meet the requirements of LCivR 7.2(B) because: (1) there is no interest of the parties that overcomes the strong public interest in access to the Agreement and references to its terms, especially given that the Agreement is at the heart of this action and it will be discussed at length during the hearing on DISH's Motion for Preliminary Injunction; (2) no "clear injury" would result from disclosure of the Agreement and reference to its terms; and (3) no justification exists for wholesale sealing.

**I.      Defendants Cannot Argue That the Parties' Business Interest in Secrecy Overcomes the Presumption of Public Access.**

In exercising its discretion to restrict documents from public access, a court "weigh[s] the interests of the public, which are presumptively paramount, against those advanced by the parties." *JetAway Aviation*, 754 F.3d at 826 (quoting *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011)). "To overcome this presumption against sealing, the party seeking to seal records 'must articulate a real and substantial interest that justifies depriving the public of access to the records that inform [a court's] decision-making process.'" *Id.* (quoting *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1135–36 (10th Cir. 2011)). "[A] generalized allusion to confidential information is woefully inadequate to meet [a movant's] 'heavy burden'" to restrict access of a document from the public. *Id.* (citing *Helm*, 656 F.3d at 1292).

Here, Defendants do not believe there is a real and substantial interest sufficient to warrant sealing for at least three reasons.

3

First, the presumption of public access to a document is particularly high where that document is "significan[t] in evaluating the Court's reasoning" in ruling on a motion. *Suncor Energy*, 970 F. Supp. 2d at 1192); *Peru v. T-Mobile USA, Inc.*, 897 F. Supp. 2d 1078, 1083 (D. Colo. 2012) (denying motion to restrict where the documents "entail matters that go to the heart of the case"). Here, the entire lawsuit and Motion for Preliminary Injunction turn on the terms of this Agreement, and it would be impossible for the Court to publicly rule without referring to the contents and actual words of the Agreement. *See Gubricky v. Ellis*, 255 F. Supp. 3d 1119, 1122 n.1 (D. Colo. 2017) ("[T]he Court finds that the presumption of public access—and, in particular, the public's right to understand a court's reasons for deciding the way that it has—outweighs any private confidentiality interest asserted by the parties in this lawsuit."). For this reason, sealing access to the Agreement is almost pointless because the Agreement will necessarily become a party of the public record.

Second, DISH's requested preliminary injunction would have the effect of denying consumers access to Arabic language entertainment (show, movies, etc.). DISH seeks a preliminary injunction because it believes its own subscribers—who would not lose access to the programming in the absence of a preliminary injunction—will feel "disappoint[ed] and alienate[d]" if Defendants also provide access to the programming. [ECF No. 2-1 ¶ 39]. In other words, DISH is asking for a preliminary injunction that will impact consumers' rights, based on purported harms that DISH subscribers would allegedly feel.

4

Finally, contrary to DISH's suggestion [ECF No. 21 at 5], the fact that a document is marked "confidential" or contains a confidentiality provision does not create a presumption that the document should be restricted from public access. *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1241–42 (10th Cir. 2012).

## II. Defendants Cannot Argue That a Clear Injury Would Result if Access to the Public Is Not Restricted.

Local Rule 7.2(c) requires a proponent of sealing to articulate a "clear injury" that will result from public access to a document before a court restricts access. "[A] generalized allusion to confidential information is woefully inadequate to meet [a movant's] 'heavy burden'" to restrict access of a document from the public. *JetAway Aviation*, 754 F.3d at 826 (citing *Helm*, 656 F.3d at 1292). Identification of vague confidential material, such as "data or derivatives of data" and vague injuries is insufficient under Local Rule 7.2. *Suncor Energy*, 970 F. Supp. 2d at 1192.

Here, it is unclear the parties would suffer a "clear injury" if the public has access to the now-expired Agreement, notwithstanding the positions DISH took in its unopposed motion to restrict.[1] While DISH notes that the "pay-television industry is highly competitive, and a service provider <u>can</u> quickly lose its advantage in the market if the confidential terms and conditions of its agreements with its programmers are revealed to the public," DISH does not state that such loss of a competitive advantage <u>will</u> occur if this Agreement is made public. [ECF No. 21 at 4 (emphasis added)].

---

[1] Defendants did not oppose DISH's Motion to Restrict. However, contrary to DISH's Motion [ECF No. 21 at 2, 5], Defendants did not state that they would be substantially harmed by allowing the public its presumptive access to Court records.

5

## III. Defendants Cannot Argue That the Public Should Be Denied Access to the Entirety of the Agreement.

Courts frequently criticize attempts to restrict entire documents when redactions are feasible. *Suncor Energy*, 970 F. Supp. 2d at 1191–92; *Enow v. Nat'l Ass'n of Bds. Of Pharm.*, No. 17-cv-01645-MSK-SKC, 2020 WL 2507715, at *3 (D. Colo. May 15, 2020) (criticizing attempts at "wholesale restriction of the highly-relevant incident reports"); *Reg'l Local Union Nos. 846 & 847 v. Mile High Rodbusters, Inc.*, No. 1:20-cv-00673-SKC, 2020 WL 1865168, at *1 (D. Colo. Apr. 14, 2020) ("Moreover, this Court is loath to redact wholesale pleadings; the Motion does not explain why it's not feasible to merely redact protected material rather than the entire Complaint.").

Here, DISH takes the position that the entirety of the Agreement, including the dates contained referenced in the Agreement, should be sealed. Ex. A. Defendants cannot argue, pursuant to Local Rule 7.2, that every single term of the Agreement—including its undisputed expiration date—must be sealed.

## CONCLUSION

Defendants file this Motion to Restrict in compliance with its contractual requirements but cannot argue, consistent with Local Rule 7.2, that there is sufficient justification for the Court to restrict the entirety of the Agreement and reference to its terms.

6

Dated: August 26, 2020

Respectfully submitted,


*s/ Gregory P. Szewczyk*
Gregory P. Szewczyk
BALLARD SPAHR LLP
1225 17th Street, Suite 2300
Denver, CO 80202-5596
Telephone: (303) 292-2400
Facsimile: (303) 296-3956
szewczykg@ballardspahr.com

David L. Axelrod
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 665-8500
Facsimile: (215) 864-8999
axelrodd@ballardspahr.com

Mitchell L. Turbenson
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004
Telephone: (602) 798-5400
Facsimile: (602) 798-5595
turbensonm@ballardspahr.com

***Attorneys for Defendants Multicultural Network Corporation and MBC FX, L.L.C.***

7

# CERTIFICATE OF SERVICE

       I hereby certify that on this 26th day of August, 2020, a true and correct copy of the foregoing **MOTION TO RESTRICT PUBLIC ACCESS TO RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION AND ACCOMPANYING EXHIBITS** was electronically filed with the Clerk of this Court using the CM/ECF system, which will electronically mail notice to the following attorneys of record:

       Hugh Q. Gottschalk
       Chuan "CiCi" Cheng
       WHEELER TRIGG O'DONNELL LLP
       370 17th Street, Suite 4500
       Denver, CO 802022

       ***Attorneys for Plaintiff***

                                        *s/    Cynthia Henning*

8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-01429-RM-STV

YOUTH SEEN, a Colorado non-profit corporation,
and TARA J. SMELT, an individual,

   Plaintiffs,

v.

TYES INC., a Colorado non-profit corporation,
and ALISHA D. BLACKBURN, an individual,

   Defendants.

## DEFENDANTS' MOTION TO RESTRICT PUBLIC ACCESS TO DOCUMENTS AND PROCEEDINGS

  Pursuant to D.C.COLO.LCivR 7.2, TYES, Inc. ("TYES") and Alisha D. Blackburn (together, "Defendants"), through their undersigned counsel, move the Court for an Order to restrict public access to pleadings and other documents filed with the Court in this action that contain individuals' personal and private information that could cause irreparable harm as described below.

## D.C.COLO.LCIVR 7.1(A) CERTIFICATION

  Pursuant to D.C.COLO.LCivR 7.1.A, Defendants' counsel certify that they have conferred with Plaintiffs' counsel in a teleconference and Plaintiffs oppose this motion. The parties are currently discussing the contents of a protective order that would protect confidential and sensitive information produced in discovery, and expect to finalize those terms soon.

However, Defendants do not believe that a protective order, standing alone, is sufficient protection of the issue identified herein.

## **MOTION**

By default, "the public shall have access to all documents filed with the court and all court proceedings." D.C.COLO.LCivR 7.2(a). However, the Court may restrict public access where "the interest to be protected . . . outweighs the presumption of public access" and where "a clearly defined and serious injury . . . would result if access is not restricted." D.C.COLO.LCivR 7.2(c)(2) and (3). D.C.COLO.LCivR 7.2(c) states in full:

> **(c) Motion to Restrict.** A motion to restrict public access shall be open to public inspection and shall:
>
> (1) identify the document or the proceeding for which restriction is sought;
>
> (2) address the interest to be protected and why such interest outweighs the presumption of public access (stipulations between the parties or stipulated protective orders with regard to discovery, alone, are insufficient to justify restriction);
>
> (3) identify a clearly defined and serious injury that would result if access is not restricted;
>
> (4) explain why no alternative to restriction is practicable or why only restriction will adequately protect the interest in question (e.g., redaction, summarization, restricted access to exhibits or portions of exhibits); and
>
> (5) identify the level of restriction sought.

For the reasons provided below, the requirements of D.C.COLO.LCivR 7.2(c) are met in this case. Defendants therefore respectfully ask that the Court restrict public access to all pleadings—including the Complaint and Jury Demand that Plaintiffs filed in this action on May 26, 2021, and the Amended Complaint and Jury Demand that Plaintiffs shall file in the coming

days or weeks—and any other documents, exhibits, or attachments filed with the Court in this action. Defendants request that the Court impose "Level 1" restriction under D.C.COLO.LCivR 7.2(b), limiting access to the parties and the Court.

I. **TYES'S INTEREST IN MAINTAINING THE PRIVACY OF ITS MEMBERS AND THEIR TRANSGENDER CHILDREN OUTWEIGHS ANY PUBLIC INTEREST IN ACCESSING COURT DOCUMENTS IN THIS CASE**

Personal privacy interests are a legitimate reason to restrict public access under D.C.COLO.LCivR 7.2. *See All Plastic, Inc. v. Samdan LLC*, No. 20-CV-01318-NYW, 2021 WL 2954769, at *1 – 2 (D. Colo. May 5, 2021) ("[A] party may overcome the presumption of public access where the records contain . . . private or personally identifiable information . . . or otherwise invade privacy interests. These principles are reflected in D.C.COLO.LCivR 7.2(a).") As the U.S. Supreme Court has recognized, "[e]very court has supervisory power over its own records and files, and [public] access has been denied where court files might have become a vehicle for improper purposes" including "to gratify private spite or promote public scandal through the publication of the painful and sometimes disgusting details of a divorce case." *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (internal citations and quotations omitted). The Court thus should not allow the public disclosure of "painful" and private information when it would "promote public scandal." While not directly analogous, the Tenth Circuit has also recognized that "the privacy interest inherent in personal medical information can overcome the presumption of public access." *United States v. Dillard*, 795 F.3d 1191, 1205–06 (10th Cir. 2015).

In this case, TYES is a largely parent-run, volunteer organization supporting transgender children and their parents. *See* TYES, Inc. Home Page (available at https://tyes-colorado.org/),

3

attached hereto as Exhibit A. As indicated on TYES's website, the organization's members are parents of transgender children. *Id.* at 3. Transgender children commonly choose to live without publicly disclosing their transgender identity, oftentimes out of fear of physical harm or emotional torment from peers or others. *See* Human Rights Campaign, Transgender Children & Youth: Understanding the Basics (available at https://www.hrc.org/resources/transgender-children-and-youth-understanding-the-basics), attached hereto as Exhibit B, at p. 5 ("Stigma, lack of knowledge and fear of rejection by family and peers often keep transgender people from coming out as children or teens."). Indeed, transgender individuals "consistently report dramatically elevated rates of anxiety, depression, and suicidality" that "are likely the result of years of prejudice, discrimination, and stigma; conflict between one's appearance and state identity; and general rejection by people in their social environments . . . ." Olson, Kristina R et al. "Mental Health of Transgender Children Who Are Supported in Their Identities." Pediatrics vol. 137,3 (2016): e20153223. doi:10.1542/peds.2015-3223 (available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4771131/), attached hereto as Exhibit C, at p. 2.

Documents/pleadings/motions filed in this case that do nothing more than identify the parents of these children as members of TYES automatically announce to the public the transgender identify of their children. In other words, if the public can identify the parents based on the information in Court documents, the public can easily identify transgender children who otherwise have not revealed, and do not want to reveal, that personal and private information.

With that information public, the children could be subject to discrimination, physical harm, and emotional abuse from those who do not understand or accept their identity. *See* Human Rights Campaign, Transgender Children & Youth: Understanding the Basics (available

at https://www.hrc.org/resources/transgender-children-and-youth-understanding-the-basics), attached hereto as Exhibit B, at p. 2 ("transgender youth are at greatest risk of suicide (compared to their non-transgender peers) as a result of rejection, bullying, and other victimization."); Lambda Legal, Know Your Rights, Bullying and TGNC Youth (available at https://www.lambdalegal.org/know-your-rights/article/youth-bullying-and-tgnc), attached hereto as Exhibit D, at p. 1 ("78% of respondents to the National Transgender Discrimination Survey (NTDS) reported being harassed, 35% attacked and 12% sexually assaulted."). Since 2008, Colorado's anti-discrimination law has identified transgender persons as a protected class, evidencing the legitimate risk of these harms. Moreover, the harm of public dissemination of a child's transgender identity is irreparable—once the information is in the public domain, it cannot be made private again. Of course, if this lawsuit remains public, the parents of these children would also face their own fear and emotional torment that their children might suffer based on the revelation that the parents have been involved in TYES, an organization seeking to help parents of transgender children.

While the safety and well-being of the children of TYES parents is paramount, public access would also restrict Defendants' ability to respond in this lawsuit. TYES is a Defendant in this case. It did not choose to bring this lawsuit. On the contrary, TYES has, at all times, sought to restrict public knowledge of this dispute precisely to avoid identification of the parents and children involved in the organization and putting those children at risk. TYES parents might have relevant information to this case. If their identity, including potential testimony, is subject to public scrutiny, those parents will be reluctant to provide their evidence and risk revealing their child's transgender identity. Parents should not have to choose between providing truthful

evidence in a court proceeding and protecting their children's safety. Restricting public access would remove this fear and prevent prejudice to Defendants' ability to litigate this case.

The public dissemination of private and personal information (the identities of transgender children) constitutes a legitimate interest to be protected under D.C.COLO.LCivR 7.2(c)(2). Transgender identity is "private or personally identifiable information" and public access would "invade privacy interests." *See All Plastic, Inc. v. Samdan LLC*, No. 20-CV-01318-NYW, 2021 WL 2954769, at *1 (D. Colo. May 5, 2021). The information is at least as private as personal medical information, and the Tenth Circuit has recognized the "inherent" privacy interest in such information. *See United States v. Dillard*, 795 F.3d 1191, 1205 – 06 (10th Cir. 2015). Furthermore, the likely physical and emotional harm that would result from the public dissemination of inherently private information constitutes a "clearly defined and serious injury that would result if access is not restricted." D.C.COLO.LCivR 7.2(c)(3).

Protection of this interest "outweighs the presumption of public access." D.C.COLO.LCivR 7.2(c)(2). Although the public has a general interest in the cases that come before the Court, the public has no legitimate interest in knowing the identities of TYES's parents or their children. Protecting the identity, safety, and health of transgender children must take priority.

## II.    NO ALTERNATIVE TO RESTRICTION IS PRACTICABLE

There is no practicable less-restrictive alternative to restricting public access to the documents filed in this case. *See* D.C.COLO.LCivR 7.2(c)(4). Redacting all information that might identity a TYES parent or their children would not adequately protect the privacy interests at issue here. Indeed the very caption of the case contains the name of a TYES parent whose

6

child is now at significant risk simply because of the public filing of this lawsuit in the first place.

As a result, the Court can only protect the identities, the privacy, and the physical and emotional health of the minor children whose parents may be identified in the documents filed in this case by restricting public access to pleadings, motions, exhibits, and other documents that may contain information identifying parents or their children. Given the magnitude and permanence of the risk of harm, this is the only option.

## **CONCLUSION**

Under D.C.COLO.LCivR 7.2, the Court may restrict public access where "the interest to be protected . . . outweighs the presumption of public access" and where "a clearly defined and serious injury . . . would result if access is not restricted." For the foregoing reasons, the requirements of D.C.COLO.LCivR 7.2 are met in this case. Defendants therefore respectfully ask that the Court enter an order to restrict public access to all filings in this case and to impose on these documents "Level 1" restriction under D.C.COLO.LCivR 7.2(b), limiting access to the parties and the Court.

Dated: October 20, 2021. Respectfully submitted,

*s/ Tamera D. Westerberg*
Tamera D. Westerberg (#29859)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: 303.244.1800
Facsimile: 303.244.1879
Email: westerbert@wtotrial.com

Attorneys for Defendants, TYES Inc. and
Alisha D. Blackburn

8

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on October 20, 2021, I electronically filed the foregoing **DEFENDANTS' MOTION TO RESTRICT PUBLIC ACCESS TO DOCUMENTS AND PROCEEDINGS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Leah P. VanLandschoot**
  lvanlandschoot@thelitbot.com, christa@thelitbot.com

- **Amy M. Maestas**
  amaestas@thelitbot.com

*s/ Tamera D. Westerberg*