**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation,

      Defendant.

---

**PLAINTIFFS' RULE 37(b) MOTION #1 TO COMPEL COMPLIANCE WITH
SPECIAL MASTER'S ORDERS RELATED TO HOWARD HEAD FINANCIALS**

---

## <u>INTRODUCTION</u>

Discovery has clearly not gone well in this case.  At issue here are problems that have arisen for two overriding reasons: *First*, Vail Health's counsels' misleading statements to the Special Master regarding their investigation, or lack thereof, into the existence of Howard Head financial information.  *Second*, counsels' deceptive statements regarding the financial data actually available in Vail Health's financial systems compared to what was produced to Plaintiffs.  As a result, Vail Health has failed to produce relevant financial information and has made legally insupportable arguments about its ability and obligation to do so.  Vail Health's and its counsels' evasiveness was a deliberate attempt to build a stone wall to conceal relevant evidence.  Given the Special Master's past experience with similar tactics by Vail Health and its counsel in the state court action, he "order[ed] Vail Health to submit an affidavit by someone who can confirm such [Howard

Head financial] information cannot be identified or isolated, within 14 days."[1]   If the information does not exist, the affidavit would put the issue to rest.   But if it does exist, the parties and the Court or Special Master can proceed with appropriate remedies.   Caught in their deception, Vail Health's stonewalling and failure to comply with the order is revealing.   This Court or the Special Master has an obligation to right the wrong of defiance of a court order by using the tools available under Fed. R. Civ. P. 37(b)(2). [2]

## CERTIFICATE OF COMPLIANCE

Under Fed. R. Civ. P. 37(d)(1)(B) and D.C.Colo.LR 7.1(a), Plaintiffs conferred with Vail Health about the issues here,[3] sending numerous emails[4] seeking conferral.[5]   It took the Magistrate Judge's conferral instructions (again)[6] before Vail Health would participate in a conferral on November 11, 2022.   Before that conferral, Plaintiffs again summarized the disputes in a November 8 Notice of Outstanding Discovery Issues.[7]   Specifically, the parties discussed the affidavit ordered by the Special Master and Vail Health's failure to produce Howard Head financial information.[8]   Importantly, Vail Health attorneys Daniel Richards and Shannon Stevenson refused five times to even say whether the Howard Head financial data exists.[9]   On November 18, Daniel Richards confirmed that Vail Health would do nothing more related to the Howard Head financial information.[10]

---

[1]      ECF No. 362 ¶¶ 21, 23-24.
[2]      *Brown v. Tellermate Holdings Ltd.,* Case No. 2:11-cv-1122, 2014 WL 2987051, at *1 (S.D. Ohio July 1, 2014).
[3]      Declaration of Alan L. Kildow ¶¶ 2-9.
[4]      Ex. 1 at 1; Ex. 2 at 2-3; Ex. 3 at 1-2; Ex. 4 at 1-4.
[5]      Ex. 4 at 2; Exs. 5-6.
[6]      Ex. 7.
[7]      Ex. 8 § II at 6-11.
[8]      Kildow Decl. ¶¶ 2-8.
[9]      *Id.* ¶¶ 4-8.
[10]      Ex. 9 at 2.

2

**FACTUAL BACKGROUND**

I.  **PLAINTIFFS REQUESTED HOWARD HEAD FINANCIAL INFORMATION OVER THREE YEARS AGO; NO ORIGINAL SOURCE DATA WAS PRODUCED.**

On October 9, 2019, Plaintiffs served Vail Health with RFP Nos. 2 and 4 seeking the production of financial statements, analyses, and projections for Howard Head, including information relating to costs incurred (salary, benefits, administrative and overhead costs, etc.) and profits realized.[11]  Vail Health's only relevancy objection was to the time period, which the Court ordered was November 1, 2012 to the present.[12]  Even with that clarification, and after months of prodding, Vail Health *selectively* produced a handful of documents containing some financial analyses.  That information falls into three categories, none of which is original source data.

*First*, Vail Health apparently provided independent appraisers with Howard Head financial source data,[13] which has not been produced.  Instead, summaries of that information are identified in appraiser-related documents.[14]  *Second, edited* "Income Statements" that the then-manager of Howard Head, SVP Nicholas Brown, modified for purposes of the physical therapy joint ventures with Steadman and VSO,[15] to inform the new CEO Cook about Howard Head's profitability,[16] and to provide a financial analysis about a physical therapy private equity transaction with Steadman.[17]  Brown testified he obtained Howard Head financial information from Karen Hannah of Vail Health's Decision

---

[11]    ECF No. 129-12 at RFP Nos. 2 and 4.
[12]    ECF No. 107 at 6.
[13]    Brown testified that he, accounting, finance, and decision support provided the appraisers with Howard Head data. Ex. 10 at 71:20-72:4, 169:5-12.
[14]    Ex. 11 at VH_Fed_002031, 2041; Ex. 12 at VH_Fed_001810, 1831-32.
[15]    Ex. 13.
[16]    Ex. 14.
[17]    Ex. 15.

Support group.[18]   (Curiously, no emails transmitting the original source data between Hannah and Brown were produced.)  *Finally,* in November 2020, the same Karen Hannah extracted a one-page summary of certain Howard Head "financials"[19] to purportedly respond to Plaintiffs' RFP Nos. 2 and 4, which Richards later attempted to pass off as a monthly "*income statement* that Vail Health produced for fiscal year 2015 through fiscal year 2020."[20]   But no other "income statement" in that tortured, incomplete format was ever produced, let alone on a monthly basis.  Richards also admitted that the summary was extracted from Vail Health's electronic financial system,[21] which Hannah most likely generated by selecting certain aggregate data fields from the Strata financial system—thereby creating a report not used in the ordinary course of business.  Vail Health refused to produce anything further, including original data,[22] resulting in Motion to Compel #2.[23]

At the October 21, 2021 hearing before the Special Master, Vail Health's counsel—Daniel Richards—admitted for the first time that Vail Health purportedly had "complication[s]" with its financial system so it was unable "to pull accurate data prior to FY2015 directly from the financial system"[24] due to a conversion in 2018.  If that is true, there may be a significant spoliation issue for the financial data for FY2013 and FY2014.  It should be noted, however, that no officer, employee, or consultant with first-hand knowledge of Vail Health's financial systems has testified by deposition or affidavit to

---

[18]   Ex. 10 at 41:5-11, 56:4-18.
[19]   Ex. 16 and "Info" page (metadata identifying Hannah as "author").
[20]   ECF No. 217 at 69:13-16 (emphasis added).
[21]   *Id.* at 69:15-16.
[22]   *See* ECF No. 129 at 3-4 (attaching exhibits showing Plaintiffs' many attempts).
[23]   ECF No. 129 at 2-3, 5-8, 12-13.
[24]   ECF No. 217 at 68:17-19.

substantiate Richards's statements (even despite the Special Master's Order).[25]  And, of course, an attorney's unsubstantiated arguments in memoranda or during a hearing are not evidence.[26]  Richards then made another remarkable admission: "for the period prior to 2015 we searched *the emails* of people who were involved at the time for financial statements that were prepared in the ordinary course of business at that time and we've produced those."[27]  That "search" included a document that Richards claimed was a financial statement for FY2013 and FY2014.  It is not original source data but was modified to analyze costs and management fees for the Steadman/VSO joint venture.[28]

Finally, as is evident from Richards's letters to the Special Master, only four Vail Health email accounts were searched—former CEO Kirchner, and former Howard Head SVP Brown, current CEO Will Cook, and current Howard Head Director Ellen Broersma. Only Kirchner and Brown would have had Howard Head financial data predating 2015. Vail Health's counsel did not search email accounts of anyone in Finance, Accounting, or Decision Support—departments that Brown confirmed he worked with, as the principal clinic manager, to obtain Howard Head financial data.[29]  But the search terms used in an attempt to locate financial statements were wholly inadequate to find the information sought.[30]  Vail Health's counsel did not even use basic search terms, such as "income,"

---

[25]     ECF No. 362 ¶ 24.
[26]     *Slovak Republic v. Loveridge (In re EuroGas, Inc.)*, 755 F. App'x 825, 833 (10th Cir. 2019) (citations omitted).
[27]     ECF No. 217 at 68:20-23 (emphasis added).
[28]     Ex. 17 at VH_Fed_002492; ECF No. 217 at 70:14-71:22.
[29]     Ex. 10 at 39:4-8, 41:4-11, 72:1-4, 169:9-12.
[30]     According to Richards, the search terms used were: • "physical therapy" w/30 cost* • "physical therapy" w/30 price* • "physical therapy" w/30 revenue* • "physical therapy" w/30 finance* • "physical therapy" w/30 projection* • "physical therapy" w/30 forecast* • "physical therapy" w/30 valuation*.  Ex. 18 at 4.

"income statement," "cost\*," "direct cost\*", "indirect cost\*," "direct expense\*," "indirect expense\*", "allocation\*", "gross patient revenue\*", or "operating revenue\*"—all terms found in the Howard Head financial statements modified by Brown.[31]   (Vail Health's inadequate searches for responsive documents will be addressed in a separate motion.)

Under the federal rules, parties have an obligation to conduct a "reasonable search of information known *to the company*," not simply information known to a particular person within the company.[32]   Searching four email accounts might uncover some financial information, but a reasonable search for original financial source information would include direct inquiry with senior management and personnel in Finance, Accounting, Decision Support, and Information Technology.   Those types of departments are typically responsible for managing financial systems and ensuring financial data is organized and maintained by using software systems stored on servers or the Cloud, where the data is then backed up.   Access to those systems is provided to management and relevant personnel to enable them to run the business.   Litigation attorneys responding to the types of discovery requests at issue here would be obligated to go to these types of departments and personnel to locate and produce the financial information and data that Plaintiffs requested in RFP Nos. 2 and 4.[33]

## II.   BROWN TESTIFIED THAT HOWARD HEAD FINANCIAL INFORMATION WAS ACCESSIBLE IN VAIL HEALTH'S FINANCIAL SYSTEMS.

But Vail Health's counsel apparently did not undertake the required (and basic) inquiry for the financial data requested.   If they had, they would have learned from the

---

[31]   *See* Ex. 13 (edited for joint venture); Ex. 15 at VH_Fed004602 (edited for private equity transaction).

[32]   *3M Innovative Props. Co. v. Tomar Elecs.*, Civil No. 05-756 (MJD/AJB), 2006 WL 2670038, at \*6-7 (D. Minn. Sept. 18, 2006).

[33]   *Id*. at \*7.

most senior Howard Head manager—SVP Brown—that Howard Head indeed had electronic financial systems that could provide the requested information. Brown testified that Vail Health's "Strata" financial system[34] contained detailed information about Howard Head's revenues, expenses, financial performance metrics, operational ratios, trends over time, and revenues generated by physical therapists, etc.[35] And when asked whether financial statements were prepared for Howard Head, Brown testified: "Yes. There were a variety of different financial reports that could have been produced through Strata,"[36] a system Vail Health has used for approximately the past six years[37] that provides "any level of detail that you wanted in your business."[38] Strata's website confirms Brown's testimony, showing that among many other things, the Strata system maintains information by department and can generate routine financial statements, including income statements, balance sheets, cash flow, and expense reports.[39] Brown also testified that it was Karen Hannah of the Decision Support group who provided him Howard Head financial data.[40]

One can only guess why Richards and his colleague, Jackie Roeder, the attorney who signed the response to Motion to Compel #2, were (apparently) unable or unwilling to ask the right people the right questions before making representations to Plaintiffs and the Special Master that former Howard Head SVP Brown's testimony, if credited, directly

---

[34]   Ex. 10 at 57:14-58:9 (Brown confirmed that the data goes back to at least FY2016).
[35]   *Id.* at 20:10-18, 38:6-39:3, 41:9-10, 50:12-52:20.
[36]   *Id.* at 45:6-12.
[37]   *Id.* at 43:1-6, 45:25-46:5.
[38]   *Id.* at 45:16-18.
[39]   Ex. 19 at 2-3, available at https://www.stratadecision.com/solutions/financial planning/; Ex. 20 (email to Brown with excerpt of Strata cost report).
[40]   Ex. 10 at 41:4-11, 55:24-56:18.

contradicts.   Given the number of conferrals, memoranda, hearings, and Brown's testimony, Richards and Roeder could **not** have misunderstood that they needed to investigate further to locate the relevant information.   Perhaps they knew the truth all along but knew that the information would help Plaintiffs prove at least two essential elements of this Sherman Act § 2 case—monopoly power and relevant geographic market.  Regardless, the result is the same.  Vail Health has defied orders, Plaintiffs have not received this relevant discovery and have been forced, unnecessarily, to spend time trying to resolve the matter informally, with the Court, and, eventually, by way of multiple motions.  And it is still unknown whether Vail Health has failed to preserve evidence, and the consequences if it did not.

What is now known, however, is that further motion practice is required to dig to the bottom of Vail Health's recalcitrance to comply with discovery orders.   In opposing Plaintiffs' motions to compel, Vail Health took the position, which it still maintains, that it adequately searched emails and located no other regularly generated financial reports to produce.  It also took the untenable position, which it still maintains, that it is not required to produce Howard Head financial electronic data because a party "cannot be compelled to create, or cause to be prepared, new documents solely for their production."[41]

And finally of special note, during the November 11 conferral, Plaintiffs asked Richards a simple question: Does the Howard Head financial data exist?  Despite asking this five times, Richards would not say.[42]  Richards's refusal to answer raises the serious question why he (and his colleagues) have been, and continue to be, so evasive.  A logical

---

[41]     ECF No. 261 ¶¶ 27, 34.  *See also* ECF No. 156 at 5, 9 n.2.
[42]     Kildow Decl. ¶¶ 4-8.

conclusion is that they are attempting to conceal relevant evidence, a road that we have traveled down before.

The lack of candor of Vail Health—or perhaps more correctly, its legal counsel—is reminiscent of misconduct in the state court action. Plaintiffs repeatedly requested Vail Health produce physical therapy claim submissions (predating the relevant time period here) including the CMS 1500 claim submission form. Vail Health's lawyer, Jackie Roeder, claimed that the hardcopy forms were stored in an inaccessible warehouse. Later, Vail Health had its now compliance officer "search" for the hardcopy forms in various locations, including the once "inaccessible" warehouse, swearing under oath that the forms could not be located. Plaintiffs and the Special Master later found out that the "search" was a futile ruse—Vail Health never used the CMS 1500 form, and the "forms" that it did use were never in hardcopy form—they were always submitted and maintained electronically in the 837I electronic format. So Vail Health "searched" for something that Vail Health and its attorneys knew never existed. Special Master Ruckriegle sanctioned Vail Health for its misconduct, noting that Vail Health, "at best, played a game of semantics, and at worst, a game of cat and mouse."[43] It took two years, four orders,[44] two depositions, and sanctions before the truth about the pre-November 1, 2012 claim submissions was revealed. Special Master Ruckriegle referenced that issue multiple times during the October 21 and 22, 2022 hearings[45] but appeared to not know that Richards[46] was also Vail Health's counsel of record in the state court action at the time.

---

[43]   *See* Ex. 21 at 5.
[44]   *See* Exs. 21-22 (two of the Special Masters orders).
[45]   ECF No. 217 at 72:20-73:9; 81:13-82:1; 85:23-86:3; ECF No. 218 at 76:15-77:6.
[46]   ECF No. 217 at 4:12-15.

9

## **ARGUMENT**

**I.     PLAINTIFFS SHOULD BE GRANTED LEAVE TO DEPOSE KAREN HANNAH REGARDING THE EXISTENCE OF HOWARD HEAD FINANCIAL DATA.**

This motion is dictated by Vail Health's open defiance of the Special Master's order for Vail Health "to submit an affidavit by someone who can confirm [that] such [Howard Head financial] information cannot be identified or isolated…."[47]   Vail Health took the position that its "financial statements...show aggregate information across all of Vail Health's business units and do not segregate information specific to Howard Head Sports Medicine…."[48]   As a result, Vail Health argued that information was irrelevant.   Howard Head SVP Brown, on the other hand, testified that from Vail Health's Strata system, "you could go and get any level of detail that you wanted in [Howard Head's] business."[49]   So who is to be believed—Vail Health's counsel?   Or Brown?   Vail Health's unwavering refusal to provide an affidavit raises the question: Why?   If the attorneys' representations were true, the affidavit should be no problem.   The Special Master evidently recognized this irreconcilable contradiction and ordered the affidavit to finally get a straight answer.

But Vail Health does not want to give a straight answer because the alternatives would likely have unpleasant consequences.   One is that it has deliberately concealed important evidence that goes directly to Plaintiffs' proof of monopoly and geographic market.   Another is that it failed to conduct a reasonable search for the financial data.   Yet another is that there has been spoliation.   Richards has repeatedly said such a search was conducted and all Howard Head financial information from the four email accounts was produced, but the Special Master's Reports suggest he is not so sure about that.

---

47     ECF No. 362 ¶¶ 23-24.
48     *Id.* ¶ 21.
49     Ex. 10 at 45:16-18.

Any doubt would be justified by the inconsistent statements of Brown and Vail Health's attorneys.   Whatever his reasons, Special Master Report #2 required Vail Health to identify with respect to RFP Nos. 2 and 4: (i) the locations searched, (ii) the search criteria used, and (iii) any locations and search terms to be used for any additional searches.[50] Finally, in Report #4, the Special Master avowed that it may be appropriate to inquire by deposition as to why documents that likely should exist do not, "and in appropriate circumstances, the Plaintiffs can seek sanctions if Vail Health engaged in acts of concealment or spoliation."[51]

In considering this motion, the obligations of parties and their legal counsel with respect to discovery are particularly relevant.[52]   Moreover, "[t]he underlying principles governing discovery do not change just because ESI [electronically-stored information] is involved.  Counsel still have a duty (perhaps even a heightened duty) to cooperate in the discovery process; *to be transparent about what information exists, how it is maintained, and whether and how it can be retrieved;* and, *above all, to exercise sufficient diligence…to ensure that all representations made to opposing parties and to the Court are truthful and are based upon a reasonable investigation of the facts*."[53]  Refusing to obey a court order is not "cooperation" or fulfilling one's obligations under the federal rules.  And here the record is devoid of any evidence that Vail Health conducted an inquiry of knowledgeable Vail Health personnel to determine whether the Howard Head financial information exists and how it could be accessed if it does.  And we clearly do not have transparency.  Vail Health and its counsel have refused to even

---

[50]    ECF No. 381 at 3-4.
[51]    ECF No. 383 at 2.
[52]    *3M Innovative*, 2006 WL 2670038, at *6-7 (emphasis added).

11

say whether the data exists or not.  The only way to find out answers to these issues is through sworn testimony of a knowledgeable Vail Health representative.

In opposing this motion, Vail Health may again attempt to argue that it is not required to produce reports from its financial databases because that information is not a "document" maintained in the "ordinary course of business."[54]   As the ESI discovery principles in *Brown* would predict,[55] that argument has been rejected by this Court[56] and other courts addressing the issue.[57]   For example, in *Crocs, Inc. v. Effervescent, Inc.*, the plaintiff sought financial information that included sales, revenue, direct and indirect costs, and margins.[58]   The defendant led Magistrate Judge Tafoya to believe that the company's databases could not produce a spreadsheet or other reports with the requested financial information.[59]   The Magistrate Judge expressed her incredulity about the defendant's representations and permitted the plaintiff to confirm, by way of deposition, what the defendant's record keeping system could or could not do.[60]   Just four days after ordering

---

[54]   ECF No. 156 at 5, 9 n.2; ECF No. 261 ¶¶ 27, 34.

[55]   *Brown*, 2014 WL 2987051, at *15-16.

[56]   *Crocs, Inc. v. Effervescent, Inc.*, Civil Action No. 06-cv-00605-PAB-KMT, 2017 U.S. Dist. LEXIS 184498, at *7-8 (D. Colo. Feb. 8, 2017), attached as Ex. 23.

[57]   *McGlone v. Centrus Energy Corp.*, Case No. 2:19-cv-2196, 2020 WL 4462305, at *3 (S.D. Ohio Aug. 4, 2020) ("courts also have held that a requested search 'requiring a party to query an existing database to produce reports for opposing parties' does not equate to requiring the creation of a new document") (quoting *Mervyn v. Atlas Van Lines, Inc.*, Case No. 13C3587, 2015 WL 12826474, at *5 (N.D. Ill. Oct. 23, 2015)); *Conn. Fair Housing Center v. Corelogic Rental Prop. Solutions, LLC*, No. 3:18-CV-705 (VLB), 2020 WL 401776, at *8 (D. Conn. Jan. 24, 2020); *N. Shore-Long Island Jewish Health Sys., Inc. v. Multiplan, Inc.*, 325 F.R.D. 36, 51-52 (E.D.N.Y. 2018); *Apple Inc. v. Samsung Electronics Co.,* Case No.: 12-CV-0630-LHK (PSG), 2013 WL 4426512, at *3 (N.D. Cal. August 14, 2013); *In re EBAY Seller Antitrust Litig.*, No. C07-1882 JF (RS), 2009 WL 3613511, at *1 (N.D. Cal. Oct. 28, 2009); *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 683 (N.D. Cal. 2006).

[58]   *Crocs*, 2017 U.S. Dist. LEXIS 184498, at *7-8, attached as Ex. 23.

[59]   *Id.*

[60]   *Id.* *8-9.

the deposition, the defendant miraculously produced the reports from its databases[61] but refused to produce a witness for the court-ordered deposition, resulting in a motion.

In response, the defendant attempted to recharacterize its earlier statements by representing that it "never said that it did not have raw sales data; it merely explained that it did not maintain it in the form sought by Crocs,"[62] pointing specifically to its counsel's statement that the defendant "was unable to *locate existing documents* that can readily show (the data Crocs sought)."[63]  The defendant, like Vail Health has here, argued that "a party is required to produce only those documents already in existence, and is not required to prepare or have someone else prepare new documents for the sole purpose of production."[64]

This Court flatly rejected that argument: "With respect to database storage of information, the law does not support [defendant's] *verbal sleight of hand*.  In fact, ***the court finds that this argument comes alarmingly close to deceit.***  Courts considering the issues of dynamic database data have held that if information is stored in a database, requiring that reports be run from the database is not the creation of new evidence or discovery."[65]  The Court also relied on Fed. R. Civ. P. 34(a)(1)(A), which allows a party to request "any designated documents or electronically stored information…stored in any medium from which information can be obtained."  And as the 2006 advisory committee's comment makes clear, "[e]lectronically stored information may exist in dynamic databases….[and] discovery of electronically stored information stands on equal footing

---

[61]     *Id.* at *9-10.
[62]     *Id.* at *10-11.
[63]     *Id.* at *11 (emphasis added).
[64]     *Id.* at *10.
[65]     *Id.* at *11 (emphasis added).

with discovery of paper documents,"[66] meaning that "different forms of production may be appropriate for different types of electronically stored information," including "material from databases."[67]  So any attempt by Vail Health to claim that it does not have to produce financial data stored in an electronic system is not supported by the rules of civil procedure or the case law interpreting those rules.

## II.   SANCTIONS SHOULD BE IMPOSED AGAINST VAIL HEALTH FOR ITS WILLFULL VIOLATION OF THE SPECIAL MASTER'S ORDER.

Rule 37(a)(3) states that "an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond."  Plaintiffs contend that Vail Health's responses to RFP Nos. 2 and 4, and its counsel's representations to the Special Master, were incomplete, willfully false, and evasive.  The Special Master issued an order requiring Vail Health to provide an affidavit by someone who can confirm that Howard Head financial information cannot be identified or isolated[68]—essentially, whether the information existed and could be produced.  Vail Health refused, willfully disobeying the court order.  "In order to impose sanctions under Rule 37(b)(2), there must be an order compelling discovery, a willful violation of that order, and prejudice to the other party."[69]  Each element exists here.  Rule 37(b)(2)(A) provides that when a party fails to obey a court's order it "may issue further just orders" and it provides a menu of sanctions in subsections (i) through (vii).  Plaintiffs contend that the following order would

---

[66]     *Id.* at *12.
[67]     Fed. R. Civ. P. 34, 2006 cmt., subd. (b).
[68]     ECF No. 362 ¶ 24.
[69]     *3M Innovative*, 2006 WL 2670038, at *11 (quoting *Chrysler Corp. v. Carey,* 186 F.3d 1016, 1019 (8th Cir.1999)).

be ''just'' and "related to the particular 'claim' which was at issue in the order to provide discovery."[70]  It would also "deter the errant party from further misconduct."[71]

Plaintiffs therefore request an order: (1) Granting Plaintiffs leave to take a Rule 30(b)(6) deposition of Vail Health, through Karen Hannah, within 14 days of the date of the order, as set out in a proposed Rule 30(b)(6) notice attached as Exhibit 24.  (2) In light of the unexplained of Vail Health's failure to produce an affidavit as ordered by the Special Master, and the misleading representations of Richards and Roeder regarding Howard Head's financial systems, Plaintiffs also request that the Special Master attend the deposition and Vail Health be ordered to pay his fees for doing so.  (3) Vail Health be ordered to pay for the court reporting costs of the deposition.  (4) Vail Health be ordered to pay the Special Master's fees if this motion is referred to him for decision.  (5) And Vail Health be ordered to pay the reasonable attorneys' fees of Plaintiffs' counsel for having to bring this motion, and "*to discourage future inappropriate conduct*"[72] by Vail Health.

## CONCLUSION

Plaintiffs respectfully request that their motion be granted in its entirety and all the relief requested in the preceding paragraph be ordered by the Court.

---

[70]     *Swan Global Invs., LLC v. Young*, Civil Action No. 18-cv-03124-CMA-NRN, 2020 WL 5204293, at *5 (D. Colo. June 5, 2020) (quoting *Ins. Corp. of Ireland,* 456 U.S. 694, 707 (1982)).
[71]     *Id.*
[72]     *Id.* (emphasis added).

Dated:  December 19, 2022        *s/Alan L. Kildow*

Alan L. Kildow, MN# 0143133
790 Potato Patch Drive
Vail, CO 81657
Telephone: (970) 390-6675
E-mail: alkildow@aol.com

Jesse Wiens, Colo. #33903
Jesse Wiens Law
0069 Edwards Access Road, Suite 8
Edwards, Colorado 81632
Telephone: (970) 855-0078
E-mail: jesse@jessewienslaw.com

Sonya R. Braunschweig, MN# 0290292
5501 Irving Avenue South
Minneapolis, MN 55419
Telephone: (612) 819-2304
E-mail: sonya.braunschweig@gmail.com

Attorneys for Plaintiffs Lindsay Winninger and
Sports Rehab Consulting LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2022, I served a true and correct copy of Plaintiffs' Rule 37(b) Motion #1 To Compel Compliance With Special Master's Orders Related To Howard Head Financials, including exhibits, some of which are filed as restricted, via the Court's ECF system on:

Shannon Stevenson
Janet A. Savage
Jackie Roeder
Daniel Richards
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO  80202

Counsel for Defendant

*s/ Alan L. Kildow*
Alan L. Kildow