

# Exhibit 23

 Neutral

As of: December 19, 2022 4:34 PM Z

# *Crocs, Inc. v. Effervescent, Inc.*

United States District Court for the District of Colorado

February 8, 2017, Decided; February 8, 2017, Filed

Civil Action No. 06-cv-00605-PAB-KMT; 16-cv-02004-PAB-KMT; 12-cv-02096-PAB-BNB

**Reporter**
2017 U.S. Dist. LEXIS 184498 *

CROCS, INC., Plaintiff, v. EFFERVESCENT, INC., HOLEY SOLES HOLDINGS, LTD., DOUBLEDIAMONDDISTRIBUTION,LTD., and U.S.A. DAWGS, INC., Defendants.

**Prior History:** *Crocs, Inc. v. Acme EX-IM, Inc., 2006 U.S. Dist. LEXIS 41543 (D. Colo., June 21, 2006)*

## Core Terms

database, deposition, documents, discovery, parties, customers, dynamic, records, sales, magistrate judge, queried, stored

**Counsel:** **[\*1]** For U.S.A. Dawgs, Inc., Defendant (1:16mc255): David Joseph Kaplan, U.S.A. Dawgs, Inc., Las Vegas, NV USA; Mitchell Craig Shapiro, USA Dawgs, Inc., Las Vegas, NV USA.

For Double Diamond Distribution, Ltd., Defendant (1:16mc255): David Joseph Kaplan, U.S.A. Dawgs, Inc., Las Vegas, NV USA; Mitchell Craig Shapiro, USA Dawgs, Inc., Las Vegas, NV USA.

For Walgreen Company, Defendant (1:16mc255): Brian John Elliott, Brian J. Elliott, Attorney at Law, Austin, TX USA; Christopher W. Hellmich, Hellmich Law Group P.C., Anaheim Hills, CA USA.

For U.S.A. Dawgs, Inc., Double Diamond Distribution, Ltd., Plaintiffs (1:16cv2004): Brian John Elliott, Brian J. Elliott, Attorney at Law, Austin, TX USA; Christopher W. Hellmich, Hellmich Law Group P.C., Anaheim Hills, CA USA; Mitchell Craig Shapiro, MC Shapiro Law PC, Great Neck, NY USA; David Joseph Kaplan, U.S.A. Dawgs, Inc., Las Vegas, NV USA.

For Ronald Snyder, Defendant (1:16cv2004): Michael Anthony Berta, Arnold & Porter Kaye Scholer LLP-San Francisco, San Francisco, CA USA.

For Daniel Hart, Thomas J. Smach, Andrew Rees, Gregg Rebich, Lyndon Hanson, Donald Lococo, Raymond Croghan, Ronald Frasch, Michael Margolis,

Jeffrey Lasher, Michael E. Marks, Prakash **[\*2]** Melwani, John Mccarvel, Erik Rebich, Sara Hoverstock, Defendants (1:16cv2004): Julie Kent, Lara Palanjian, Michael Anthony Berta, Sean Michael Callagy, Arnold & Porter Kaye Scholer LLP-San Francisco, San Francisco, CA USA.

For Ribatt Gregg, Consol Defendant (1:06-cv-00605-PAB-KMT): George F. Langendorf, Julie Kent, Lara Palanjian, Michael Anthony Berta, Sean Michael Callagy, Arnold & Porter Kaye Scholer LLP-San Francisco, San Francisco, CA.

For Andrew Reddyhoff, Consol Defendant (1:06-cv-00605-PAB-KMT): George F. Langendorf, Michael Anthony Berta, Arnold & Porter Kaye Scholer LLP-San Francisco, San Francisco, CA.

For Raymond Croghan, Consol Defendant: George F. Langendorf, Michael Anthony Berta, Sean Michael Callagy, Arnold & Porter Kaye Scholer LLP-San Francisco, San Francisco, CA.

For Crocs, Inc., Plaintiff (1:06-cv-00605-PAB-KMT): Natalie Marie Hanlon-Leh, LEAD ATTORNEY, Wilmer Cutler Pickering Hale & Dorr, LLP-Denver, Denver, CO; George F. Langendorf, Julie Kent, Lara Palanjian, Michael Anthony Berta, Sean Michael Callagy, Arnold & Porter Kaye Scholer LLP-San Francisco, San Francisco, CA. Jared Barrett Briant, Faegre Baker Daniels LLP-Denver, Denver, CO; Paul Wayne Rodney, Arnold & **[\*3]** Porter Kaye Scholer LLP-Denver, Denver, CO.

For Effervescent, Inc., Defendant (1:06-cv-00605-PAB-KMT): Michael G. Martin, Michael Martin Law, Denver, CO.

For Double Diamond Distribution, Ltd., Defendant (1:06-cv-00605-PAB-KMT): Mitchell Craig Shapiro, LEAD ATTORNEY, MC Shapiro Law PC, Great Neck, NY; Alexander Christian Clayden, Stephen J. Horace, Lathrop & Gage, LLP-Denver, Denver, CO; Brian John Elliott, Brian J. Elliott, Attorney at Law, Austin, TX; Christopher W. Hellmich, Hellmich Law Group P.C., Anaheim Hills, CA; Dan Cleveland , Jr., Fennemore

2017 U.S. Dist. LEXIS 184498, *3

Craig, P.C.-Denver, Denver, CO; David Joseph Kaplan, U.S.A. Dawgs, Inc., Las Vegas, NV.

For U.S.A. Dawgs, Inc., Defendant (1:06-cv-00605-PAB-KMT): Mitchell Craig Shapiro, LEAD ATTORNEY, MC Shapiro Law PC, Great Neck, NY; Alexander Christian Clayden, Stephen J. Horace, Lathrop & Gage, LLP-Denver, Denver, CO; Brian J. Elliott, Attorney at Law, Austin, TX; Christopher W. Hellmich, Hellmich Law Group P.C., Anaheim Hills, CA; Dan Cleveland , Jr., Fennemore Craig, P.C.-Denver, Denver, CO; David Joseph Kaplan, U.S.A. Dawgs, Inc., Las Vegas, NV; Jeffery Kyle McClain, USA Dawgs, Inc., Las Vegas, NV.

For U.S.A. Dawgs, Inc., Counter Claimant (1:06-cv-00605-PAB-KMT): **[\*4]**  Mitchell Craig Shapiro, LEAD ATTORNEY, MC Shapiro Law PC, Great Neck, NY; Alexander Christian Clayden, Stephen J. Horace, Lathrop & Gage, LLP-Denver, Denver, CO; Brian J. Elliott, Attorney at Law, Austin, TX; Christopher W. Hellmich, Hellmich Law Group P.C., Anaheim Hills, CA; Dan Cleveland , Jr., Fennemore Craig, P.C.-Denver, Denver, CO; David Joseph Kaplan, U.S.A. Dawgs, Inc., Las Vegas, NV.

For Crocs, Inc., Counter Defendant (1:06-cv-00605-PAB-KMT): Natalie Marie Hanlon-Leh, LEAD ATTORNEY, Wilmer Cutler Pickering Hale & Dorr, LLP-Denver, Denver, CO; George F. Langendorf, Lara Palanjian, Michael Anthony Berta, Sean Michael Callagy, Arnold & Porter Kaye Scholer LLP-San Francisco, San Francisco, CA; Jared Barrett Briant, Faegre Baker Daniels LLP-Denver, Denver, CO.

For Double Diamond Distribution, Ltd., Counter Claimant (1:06-cv-00605-PAB-KMT): Mitchell Craig Shapiro, LEAD ATTORNEY, MC Shapiro Law PC, Great Neck, NY; Alexander Christian Clayden, Stephen J. Horace, Lathrop & Gage, LLP-Denver, Denver, CO; Brian John Elliott, Brian J. Elliott, Attorney at Law, Austin, TX. Christopher W. Hellmich, Hellmich Law Group P.C., Anaheim Hills, CA USA. Dan Cleveland, Jr., Fennemore Craig, P.C.-Denver, **[\*5]**  Denver, CO; David Joseph Kaplan, U.S.A. Dawgs, Inc., Las Vegas, NV; Jeffery Kyle McClain, USA Dawgs, Inc., Las Vegas, NV.

For Scott A Seamans, Counter Defendant (1:06-cv-00605-PAB-KMT): Michael Anthony Berta, Sean Michael Callagy, Arnold & Porter Kaye Scholer LLP-San Francisco, San Francisco, CA.

For Ronald Frasch, Lyndon Hanson, Daniel Hart, Sara Hoverstock, Jeffrey Lasher, Donald Lococo, Michael Margolis, Michael E. Marks, John McCarvel, Prakash Melwani, Erik Rebich, Andrew Rees, Thomas J. Smach,

Consol Defendant (1:06-cv-00605-PAB-KMT): George F. Langendorf, Julie Kent, Lara Palanjian, Michael Anthony Berta, Sean Michael Callagy, Arnold & Porter Kaye Scholer LLP-San Francisco, San Francisco, CA.

For Ronald Snyder, Consol Defendant (1:06-cv-00605-PAB-KMT): George F. Langendorf, Michael Anthony Berta, Sean Michael Callagy, Arnold & Porter Kaye Scholer LLP-San Francisco, San Francisco, CA.

For Walgreen Co., ThirdParty Defendant (1:06-cv-00605-PAB-KMT): Brian John Elliott, Brian J. Elliott, Attorney at Law, Austin, TX.

**Judges:** Kathleen M. Tafoya, United States Magistrate Judge.

**Opinion by:** Kathleen M. Tafoya

# Opinion

### ORDER

This matter is before the court on "Counterclaim Plaintiffs' (Dawgs') Motion for Protective Order **[\*6]**  or in the Alternative for Clarification or Modification of a Previous Court Order Regarding Crocs' Right to Take an 'Extra' Deposition" ("Mot.") [Doc. No. 397]. "Crocs, Inc.'s Opposition to Dawg's Motion for Protective Order; Cross-Motion to Enforce Magistrate Judge Tafoya's Prior Order Granting Crocs a Special Deposition" ("Resp.") [Doc. No. 418] was filed on January 17, 2017. "Counterclaim Plaintiffs' (Dawgs') Reply in Further Support of Its Motion for Protective Order or in the Alternative for Clarification of a Previous Court Order [Doc. No. 397]" ("Reply") [Doc. No. 424] was filed on January 24, 2017.

During a December 5, 2016, telephonic informal discovery conference with the Court ("Trans.") [Doc. No. 356], Crocs complained that Dawgs did not produce information or summary information from a database responsive to its Requests for Production of Documents Nos. 4 and 5. Crocs alleged

> On June 8, 2016, Crocs served its First Set of Requests for Production on Dawgs, seeking summary sales records and costs records. Before November 1, Dawgs had only produced a handful of purchase orders from a few customers but no summary sales records in any time frame. Then, between November 1 and **[\*7]**  10, Dawgs

2017 U.S. Dist. LEXIS 184498, *7

produced approximately 53 nonsearchable records of sales to customers and two non-searchable "COGS summaries" dated "as of October 31, 2016." All were in .tiff format; none had been produced before. The documents spanned over 100,000 pages. Dawgs gave no explanation why these documents were not provided before, or not in existence before.

(Resp., Declaration of Sean M. Callagy, [Doc. No. 414-1] ("Callagy Decl.") at ¶ 2.)

At the hearing, Mr. Shapiro, on behalf of Dawgs, represented to the court,

> At the same time now, Crocs had asked Dawgs to produce additional information that is not easily attainable in the usual course of business or from Dawgs' financial and sales computing systems, and has complained that Dawgs is not ready, willing or able to do that. With respect to the particular customers, Dawgs' computer systems does not provide the breakdown of the sales or data in the manner in which Crocs has requested it in its interrogatories.

(Trans., 5:23-6:7.) The court understood this to mean that Dawgs did not have a database for its sales information which could produce a spreadsheet or other reports responsive to a request for sales data, including sales, revenues, direct **[*8]** and indirect costs and margins by either product or customer. Later Mr. Shapiro reiterated, "now they're asking for particular products broken down by particular customers. We don't have that data. It's not the way our system maintains it . . . ." (Trans., 11: 9-13.) The court expressed its incredulity about this, however accepted the representations of counsel at face value. However, the court noted that finding out what Dawgs' record keeping system could or could not do would be imperative going forward. (Trans. 37:2-10.) The court stated, I think, just logically, there should be some way that you could ask the question and a database search could be run to give you the answers you need. For instance, I don't know why you couldn't possibly do a database search that showed all products sold to a certain company during a certain time. I -- that seems to me to be so elementary that I don't understand why you couldn't do it.

(Trans. 37:22-38:1.) In holding that Crocs would not be allowed to simply go to Dawgs place of business and inspect the document and data retention system, the court stated

> Here's — here's a suggestion that I have, and that

would be that — that you do take a deposition **[*9]** of someone and make it broad enough to include the way that they produced the documents. You know, what kind of a system do you have now? How do you get things off of it? What -- you know, what is the process? Whatever you can think of so that you can figure out -- whatever you would ask if you went to inspect their various databases.

(Trans. 37:2-10.) When the parties equivocated, the court said,

> If you -- if you make the Court order it, I'm going to give Crocs an extra deposition to do it. And if they shouldn't have had to do it, when all is said and done, if this is an Excel-type system that easily could have been manipulated to do what they asked you to do, and you just decided you wouldn't do it, then I'm going to award the costs of the deposition against Dawgs and for Crocs.

(Trans., 38:4-12.) When Dawgs' counsel persisted in his usual denigrating diatribe against Crocs rather than focusing on the issues confronting the court at the hearing, the court eventually ordered that Crocs would be allowed one extra deposition to inquire of Dawgs through a *Rule 30(b)(6)* witness about the document retention and retrieval system utilized by Dawgs. (Trans. 40:4-9.)

It came as no surprise to this court that **[*10]** Dawgs managed to produce, just four days after the December 5th hearing, "spreadsheets in MS-Excel format." The reports, which had not been previously produced, are represented to be exports from Dawgs' sales databases, according to counsel for Dawgs. (Callagy Decl. ¶ 3; Mot. Ex. 8.) Dawgs also provided what appears to be summary information for two customers — CVS and Walgreens. *Id.* Also, Dawgs provided Excel spreadsheets that are marked as showing COGS (Cost of Goods Sold) data "as of Oct. 31, 2016," although only one year was produced. *Id.*

In spite of this production, Dawgs does not concede that its initial production of documents in response to Crocs' RFPs 4 and 5 was either insufficient or unreasonable, arguing that while a party responding to a request for production must produce documents in its possession, custody, or control pursuant to *Fed. R. Civ. P. 34(a)(1)*, a party is required to produce only those documents already in existence, and is not required to prepare or have someone else prepare new documents for the sole purpose of production. (Mot at 8, n.7, [citing *Alexander v. FBI, 194 F.R.D. 305, 310 (D.D.C. 2000)*; *Rockwell Int'l v. H. Wolfe Iron & Metal Co., 576 F. Supp. 511, 513*

2017 U.S. Dist. LEXIS 184498, *10

*(W.D. Pa. 1983)]*.) Dawgs now argues, "Dawgs never said that it did not have raw sales data; it merely explained that it did not maintain it in the form sought by **[*11]** Crocs." (Reply at 2, directing the court to Mot. Ex. 2 at 3 ["Dawgs was unable to locate existing documents that can readily show (the data Crocs sought)]".)[1]

With respect to database storage of information, the law does not support Dawgs' verbal sleight of hand. In fact, the court finds that this argument comes alarmingly close to deceit.

Courts considering the issues of dynamic database data have held that if information is stored in a database, requiring that reports be run from the database is not the creation of new evidence or discovery. *See Apple Inc. v. Samsung Elecs. Co., No. 12-CV-0630-LHK (PSG), 2013 U.S. Dist. LEXIS 116493, 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013)*. The court in Apple stated

> While this court has held that a party should not [be] required to create completely new documents, that is not the same as requiring a party to query an existing dynamic database for relevant information. Courts regularly require parties to produce reports from dynamic databases, holding that "the technical burden . . . of creating a new dataset for the instant litigation does not excuse production."

*Id. citing In re eBay Seller Antitrust Litigation, Case No. C 07-1882 JF(RS), 2009 U.S. Dist. LEXIS 132817, 2009 WL 3613511, at * 1 (N.D. Cal. Oct. 28, 2009)* (requiring, under *Rule 34* ESI production guidelines, that the

---

[1] The same obfuscating responses have been repeatedly reiterated by Dawgs and their counsel, to wit: "Dawgs and [Double Diamond] do not maintain information reflecting annual sales or costs on a product-by-product basis." (Callagy Decl. Ex. 1.); On July 26, 2016 Mr. Kaplan said, "Dawgs doesn't maintain records by product, channel, etc. in the ordinary course of business. Dawgs doesn't break everything out to these discrete levels. But if we have reports that show the things you request, we will produce." *Id.;* On October 25, 2016 Dawgs counsel Brian Elliott wrote that "after a diligent search, Dawgs was unable to locate existing documents that can readily show 'on an annual basis and by specific product, Defendants' sales to third parties, as well as direct and indirect costs and margins' as requested in RFP Nos. 4 and 5" and "[t]o the extent any documents exist that relate to the subject matter of the request, or parts of this request, they have been produced." *Id.;* On October 27, 2016, Mr. Kaplan represented that "Dawgs doesn't keep documents that have information you seek in the ordinary course of business." *Id.*

defendant produce records regarding certain **[*12]** transactional data from its dynamic database). *See also Gonzales v. Google, Inc., 234 F.R.D. 674, 683 (N.D. Cal. 2006)*(notwithstanding general rule that parties "are not required to create documents that do not exist," compelling Google to produce requested information by using a new code to "format and extract query and URL data from many computer banks" is reasonable).

The Federal Rules of Civil Procedure clearly contemplate the production of information from dynamic databases. *Rule 34(a)(1)(A)* allows a party to request "any designated documents or electronically stored information . . . stored in any medium from which information can be obtained." *Fed. R. Civ. P. 34(a)(1)(A)*. "Electronically stored information may exist in dynamic databases . . . [D]iscovery of electronically stored information stands on equal footing with discovery of paper documents." *Fed. R. Civ. P. 34* advisory committee's note (2006 Amendment).

As the D.C. District Court so artfully said in 2012,

> The Court understands that the parties may try to gain a competitive advantage through gaming the discovery process. Such strategic maneuvers can cause headaches for courts, as they trudge through multiple discovery motions with no real issues in dispute. The parties drag their feet until prodded, hoping to gain an upper hand through delay. **[*13]**

*Barnes v. D.C., 289 F.R.D. 1, 10 (D.D.C. 2012)*. This "hide the ball" attitude, however, is inconsistent with Dawgs' frequently voiced moral outrage at its opponent for any and every perceived discovery *faux pas.*

At this juncture, finally, it is clear that Dawgs stores data in one or more dynamic databases and that those databases can be queried to obtain requested information. In light of that, the court is left to consider whether continuing with the additional deposition is appropriate, especially in light of Dawgs misleading the court to believe that, as a small company, Dawgs simply had no way to comply with certain of Crocs' reasonable discovery requests. Crocs claims that in spite of now knowing that Dawgs does indeed have the capability of producing sales and other reports from a database when it appeared to be claiming it did not, it still needs the extra deposition ordered by the court to determine exactly what kind of system Dawgs has and whether it could be digitally queried concerning discovery production.

In insisting that the deposition is still warranted, Crocs

2017 U.S. Dist. LEXIS 184498, *13

states, "[f]or months, Dawgs represented that it had undertaken 'diligent' efforts to determine whether summary records even existed at Dawgs, and certified **[\*14]** that they did not" and "Dawgs provided no explanation why these records were not produced before . . . ." These arguments miss the mark, however. Dawgs apparently claims that because the companies in their normal course of business did not run reports from their database configured the way Crocs was requesting the information, that it was not required to run new reports. This position is erroneous; however, the harm to which the deposition was directed, *i.e.* learning what kind of record system utilized by Dawgs would be incapable of producing sales data from a database, is no longer in issue. Dawgs does indeed have a capable system; it simply chose not to run the requested data reports on the misperceived legal basis that running such reports constituted creation of new evidence.

However, Crocs further argues Dawgs has not provided all of the information sought in Crocs' requests in that it "has not produced, for example, cost information for any year other than 2016." (Resp. at 9.) Additionally, the court notes that Dawgs' lawyers, acting on behalf of CVS and Walgreens, are likewise still attempting to block information from Dawgs' customers subpoenaed under *Fed. R. Civ. P. 45*, claiming that the information **[\*15]** should have been obtained from Dawgs instead, all the while actively claiming they did not have the ability to retrieve information from their own databases. (*See, e.g.*, 16-mc-00254 and 00255, Order [Doc. No. 428].)

Since it appears that Dawgs is still resisting producing readily available database information relevant to the case, the court finds that the deposition it ordered on December 5, 2016, is still a reasonable way for Crocs to obtain information about the documents and data storage systems utilized by Dawgs so that it can ascertain whether or not the information sought is readily available from Dawgs' data sources.

Therefore, it is **ORDERED**

1. "Counterclaim Plaintiffs' (Dawgs') Motion for Protective Order or in the Alternative for Clarification or Modification of a Previous Court Order Regarding Crocs' Right to Take an "Extra" Deposition" [Doc. No. 397] is **DENIED**. The court's December 5, 2016 Order [Doc. No. 324] remains in full force and effect.

It is further **ORDERED**

Because Dawgs unilaterally refused to comply with the

court's December 5, 2016, Order and produce a witness in Las Vegas, Nevada, Dawgs will produce the required witness for deposition in Denver, Colorado. That witness **[\*16]** will be fully prepared to respond to queries as discussed at the December 5, 2016, hearing and in accordance with a duly served notice from Crocs to appear for deposition on a date agreed to by all parties but in no event later than **February 28, 2017**.

The parties are further **ADVISED**:

> *D.C.COLO.LCivR 30.2(b)* provides
>
> **(b) Objection to Discovery Order by Magistrate Judge**. An objection under *Fed. R. Civ. P. 72(a)* to an order by a magistrate judge concerning discovery does **not** stay the discovery to which the order is directed. A stay of the order shall be obtained by motion filed with the magistrate judge, and if denied, then with the assigned district judge.

*Id.* (emphasis added). The parties **shall** timely comply with discovery orders issued by this court unless a stay is granted by either this court or the District Court.

Dated February 8, 2017.

**BY THE COURT**:

/s/ Kathleen M. Tafoya

Kathleen M. Tafoya

United States Magistrate Judge

---

**End of Document**