IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

    Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation,

    Defendant.

**PLAINTIFFS' OPPOSITION TO VAIL HEALTH'S MOTION TO MAINTAIN FILING RESTRICTIONS ON EXHIBITS 2-4, 8-17, AND 20 TO PLAINTIFFS' RULE 37(b) MOTION #1 TO COMPEL COMPLIANCE WITH SPECIAL MASTER'S ORDERS**

## INTRODUCTION

Vail Health's motion to restrict informs the Court that Plaintiffs opposed restricting Exhibits 2-4, 8-11, 14-16, and 20.[1] Vail Health omitted, however, the reasons that Plaintiffs provided to Vail Health for opposing its request to restrict, which stated: "Plaintiffs oppose the motion on the grounds that Vail Health's wholesale restriction of these exhibits is improper and unnecessary, fails to meet the local rule for restriction, attempts to seal information already a matter of public record, and that the information at issue in the exhibits does not trump the public's right of access to court records."

Despite knowing about Plaintiffs' reasons for opposing the relief sought by Vail Health, Vail Health has not explained how each exhibit would harm its competitive interests if it was not sealed. Nor does Vail Health identify a clearly defined and serious

---

[1]     ECF No. 429 at 1.

injury if each exhibit is not restricted or how Vail Health's interest outweighs the presumption of openness of court records. Nor did Vail Health provide Plaintiffs (or now the Court) any substantive reasons why limited redactions would not be appropriate. Instead, Vail Health's conclusory excuse is that it is "not practical " because the exhibits purportedly reference Vail Health's "confidential financial information throughout."[2] Finally, Vail Health does not mention that some of the information is already in the public domain while others do not fall within the type of information deemed confidential, even under the parties' Stipulated Protective Order. And that certain documents may have been designated confidential under that Order is insufficient to justify restricted access.[3]

Vail Health also contends that because the Court previously ordered certain exhibits to be presumptively entitled to Level 1 restriction[4] that apparently means they are restricted here. But the Court issued that Order to set a procedure for filing motions to restrict and has not yet ruled on whether those exhibits should be maintained as restricted under D.C.COLO.LCivR 7.2(c) and applicable law. Moreover, courts often modify restriction orders after concluding the party seeking to restrict did not meet the high standard to restrict or when the seal was improvidently granted.[5]

---

[2] *Id.* ¶ 20.

[3] *See* D.C.COLO.LCivR 7.2(c)(2) ("stipulations between the parties or stipulated protective orders with regard to discovery, alone, are insufficient to justify restriction").

[4] ECF No. 429 ¶ 2.

[5] *See, e.g., Lobato v. Ford*, Civil Action No. 05-cv-01437-LTB-CBS, 2007 U.S. Dist. LEXIS 98121, at *36 (D. Colo. Nov. 9, 2007) (lifting interim restriction because protecting reputation was insufficient basis); *Mitchell v. Tennessee*, No. 3:17-cv-00973, 2020 U.S. Dist. LEXIS 213688, at *2 (M.D. Tenn. Nov. 16, 2020) (vacating prior order because rigorous standards for sealing not met); *S. New Eng. Tel. Co. v. Glob. NAPS, Inc.*, No. 3:04-cv-2075 (JCH), 2008 U.S. Dist. LEXIS 139849, at *8 (D. Conn. June 19, 2008) (vacating prior order when court improvidently granted motion). *See also Goldstein v. Forbes (In re Cendant Corp.)*, 260 F.3d 183, 196 (3d Cir. 2001) (stating that sealing order "must be lifted at the earliest possible moment" when sealing no longer justified).

## ARGUMENT

**I.   THERE IS A PRESUMPTION OF PUBLIC ACCESS TO COURT RECORDS.**

The public right of access is embedded in our country's history,[6] with some circuit courts also finding a constitutionally protected right under the First Amendment.[7] Regardless, courts have long "recognize[d] a general right to inspect and copy public records and documents, including judicial records and documents."[8]  That is because, as the Kansas federal district court aptly explains, "[w]hen exercising its discretion, the court minds that taxpayers fund court operations.  Our citizens hold a substantial stake in what happens in our courtrooms and the decisions judges make there.  That is doubly important here, where a community non-profit hospital is alleged to be overcharging its patients (many of them local), by tens of millions of dollars.   Public access to court decisions and the reasoning behind them, especially in a case like this, inspires confidence in the fairness of the law and judicial proceedings."[9]  But that does not mean the presumption is absolute.

It "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.  The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered."[10]   "So the court must be

---

[6]   *United States v. Erie Cnty.*, 763 F.3d 235, 239 (2d Cir. 2014).
[7]   *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1177 (6th Cir. 1983) ("First Amendment and the common law…limit judicial discretion" to seal court documents).  *But see United States v. McVeigh*, 119 F.3d 806, 812 (10th Cir. 1997) (relying on common-law right without deciding First Amendment issue).
[8]   *Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978).
[9]   *Painter v. Midwest Health*, No. 19-2336-DDC, 2021 U.S. Dist. LEXIS 17061, at *2-3 (D. Kan. Jan. 29, 2021).
[10]   *Press-Enter. Co. v. Superior Ct. of Cal.*, 478 U.S. 1, 13-14 (1986).

3

surgical when sealing. If parts of the record merit limits on public access, the court must seal only that which deserves protection,"[11] not more.

A court is the sentinel for the public, deciding whether the strong presumption favoring public access to judicial records[12] can be overcome by the movant showing "some significant interest that outweighs the presumption."[13] Here, has abjectly failed to carry that burden to demonstrate that Plaintiffs' motion and Exhibit 2 contain sources of confidential business information that might harm Vail Health's competitive standing.[14] It has not even attempted to do so, apparently expecting this Court to do the job for them.

To restrict access Vail Health must comply with D.C.COLO.CivR 7.2)(c) and (1) identify the information to be restricted, (2) address the interest to be protected and explain why it outweighs the presumption of openness of records, (3) identify a clearly defined and serious injury if it is not restricted, (4) explain why no alternative restriction is practicable, and (5) identify the restriction level sought. But it has failed to address those essential elements.

## II. VAIL HEALTH'S RELIANCE ON THE PROTECTIVE ORDER IS MISPLACED.

Vail Health devotes three paragraphs in its motion to discussing the terms of the parties' Stipulated Protective Order, with Vail Health apparently asserting that because documents may have been designated as protected means that they should be restricted

---

[11] *Painter*, 2021 U.S. Dist. LEXIS 17061, at *2-3 (citing *United States v. Walker*, 761 F. App'x 822, 835 (10th Cir. 2019)).
[12] *See Daines v. Harrison,* 838 F. Supp. 1406, 1408 (D. Colo. 1993) (noting interests of public "are presumptively paramount"); *ADT Holdings, Inc. v. Michael Harris & Ring Inc.*, No. 2017-0328-JTL, 2017 Del. Ch. LEXIS 719, at *3 (Ch. Sept. 28, 2017) ("real opposition is from the public;" court serves not only litigants but, importantly, public too).
[13] *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007) (citation omitted).
[14] *Nixon*, 435 U.S. at 598.

here. But as this Court explained in *A Major Difference, Inc. v. Erchonia Med., Inc.*,[15] "the parties' agreement that a particular document is confidential is irrelevant, as is the fact that a document was subject to a protective order during discovery. Documents subject to discovery are not customarily filed with the Court and thus are not available to the public. As to those documents which are filed with the Court, the parties are not in a position to finally determine whether the public has an interest in them. Documents filed with the Court are presumptively public, and absent a showing of compelling reasons, the Court will not seal them."[16] As the next section shows, Vail Health has not provided compelling reasons to restrict Exhibits 2-4, 8-11, 14-16, and 20 in their entirety.

### III. THE INFORMATION VAIL HEALTH SEEKS TO RESTRICT DOES NOT RISE TO THE LEVEL WARRANTING RESTRICTION FROM THE PUBLIC.

Because many of the exhibits that Vail Health seeks to restrict are based on the deposition of Nicholas Brown, Plaintiffs will start the analysis there.

As to Exhibit 10 [ECF No. 426-6], at paragraph 11, Vail Health asserts that Brown's transcript was designated as "Confidential,"[17] apparently under the Stipulated Protective Order. Vail Health does not cite any statement on the record that designated the entire transcript as "Confidential" because it was not so designated. Nor would such a designation be allowed by § 5(c) of the Stipulated Protective Order.,[18] For it allows "only those portions containing protected information" to be designated on the record during the deposition or within 14 days after the deposition that identifies by page and line number the information sought to be protected. But Vail Health did neither.

---

[15]   Civil Action No. 04-cv-01769-MSK-CBS, 2006 U.S. Dist. LEXIS 108654 (D. Colo. Apr. 28, 2006).
[16]   *Id.* at *5-6.
[17]   ECF No. 429 ¶ 11. The court reporter placed the "confidential" stamp.
[18]   ECF No. 76 § 5(c).

As to the designation by Brown's counsel—Brown was not employed by Vail Health at the time of his deposition and was represented by separate outside counsel—that certain documents reviewed were designated "Attorneys' Eyes Only" that designation occurred, in part, because a Sports Rehab principal attended the deposition and Brown's counsel wanted to ensure Sports Rehab did not see the published document.[19]  The testimony about the documents at issue in Plaintiffs' motion have little to do with specific Vail Health financial information,[20] but rather the documents were used to identify generic information about the *source*, *location,* and *availability* of Howard Head financial information that Vail Health refused to produce.

That Vail Health has not supported its motion with specific references to the deposition is telling.  Pages 6-14 focus on Brown's background with Vail Health, RPC-Vail, has termination from Vail Health and his new employer at the time, and what he did to prepare for his deposition.  How does any of that information need to be restricted?  Pages 15-21 relate to the types of Howard Head financial information Brown received, where that information came from, and the number of discussions he had with the then CEO about Howard Head.  Pages 38-61 relate to a generic discussions of Howard Head's costs and expenses, the identification of any financial reports or information, the persons involved in generating Howard Head reports, and a discussion of the financial systems used.  And at pages 71-73 and 166-69, relate to the types of financial information provided independent consultants.  Other than offering vague conclusory statements, Vail Health has not

---

19   ECF No. 426-6 at 41:23-42:4.
20   *But see id.* at 58:20, 59:19-22, 60:9 (vaguely identifying specific numbers but without much discussion).

identified any specific references in the deposition that warrant sealing, particularly when it has already been made public.

For example, that Karen Hannah is, or was at relevant times, the Director of Vail Health's Decision Support team is no secret—Hannah put that information out in the public realm when she publicly commented on actions taken by the Town of Vail in an email signed by her as the "Director of Decision Support."[21]  Hannah apparently had no issue informing the Town of Vail that she was "trying to grow [her] department at the hospital" and that hiring people was difficult because of housing issues.  She also disclosed that she had a "small staff, one works remotely and commutes from Denver, one commutes from Leadville each day and the other one just resigned…."[22]  So even the "structure" of Decision Support was not kept a "secret."  And even if it were, Vail Health has not provided any basis that the disclosure of that information puts Vail Health at any competitive disadvantage.[23]  Nor is it any "secret" that Vail Health uses Strata systems.  That information was publicly disclosed in a 2020 Strata presentation available on the internet,[24] and Vail Health admits as much in its publicly-filed motion to restrict.[25]  And the types of financial information and reports available using Strata is also publicly available on Strata's website.[26]  Given this, Vail Health has provided no basis to restrict the portions of Brown's

---

[21]     See Ex. 1 (excerpting Hannah's public comments submitted to the Town of Vail's Planning and Environmental Commission (June 24, 2019),publicly available at https://vailgovrecords.com/WebLink/DocView.aspx?id=558302&dbid=0&repo=TownofVailLaserfiche&searchid=79839096-32a6-4087-b918-c8f785bfa6b1 at 469.
[22]     Id.
[23]     Id.
[24]     See Ex. 2 at 6, publicly available at https://s3.amazonaws.com/bizzabo.file.upload/tadfgiiCTVSD5DcSBhy5_2020%20Summit%20-%20Cost%20Accounting%20-%20Time%20Driven%20Costing%E2%84%A2.pdf.
[25]     ECF No. 429 ¶ 14 ("Strata Decision, Vail Health's accounting software provider").
[26]     ECF No. 425-6.

deposition, let alone provided any basis that the public disclosure would put Vail Health at any competitive disadvantage.

Now turning to the Exhibits 2, 4, 8, [ECF Nos. 426-1, 426-3, 426-4], which quote limited excerpts from the Brown deposition, these documents involve emails between Plaintiffs' counsel and Vail Health's counsel in which Plaintiffs attempt to resolve the discovery dispute without the Court's intervention. Plaintiffs generically identify financial information Brown testified was available, where it was stored, and who assisted him (Hannah), with obtaining the data. Plaintiffs also cited this Court's findings that financial data stored in computer systems is required to be produced. Vail Health's blanket assertion that the emails need to be restricted from public view appear to be based on reputational concerns, rather than confidentiality concerns, which is insufficient to warrant sealing. For example, without identifying specific pages, Vail Health seeks to restrict the entirety of Plaintiffs' twenty-seven page Notice of Outstanding Discover Issues. Plaintiffs have not identified a case supporting the blanket restriction of discovery dispute communications.

As to Exhibit 3 [ECF No. 426-2], Vail Health provides no basis for seeking restrictions related to a discovery dispute email exchanged between Plaintiffs' counsel and Vail Health's counsel. Vail Health could have easily proposed to segregate the email from the attachments. It did not. Vail Health's blanket approach to restrict the entire email exchange goes beyond what is allowed by D.C.COLO.LCivR 7.2(c). It has not provided any justification that the disclosure of an email between counsel could possibly cause a serious injury to Vail Health if it is not restricted. Moreover, the discussion in the discovery dispute email is generic in that it discusses many of the relationships already publicly

disclosed in Plaintiffs' Amended Complaint. The email does not arise to the level of warranting a blanket restriction.

As to Exhibit 9 [ECF No. 426-5], Vail Health seeks to restrict an email from counsel that discusses discovery disputes in generic terms and a letter sent regarding production of patient data. At best, the attached letter could be redacted as to specific patient references at page 2, but the data fields identified by Vail Health are nothing more than those fields required for insurance claims submitted to the government and insurers for payment.[27] For example, under Colorado law, if a medical provider does not submit the claim in industry standard form, a payor can decline reimbursement.[28] Vail Health has not explained how disclosing that it maintains its patient data consistent with industry standards puts Vail Health at any competitive disadvantage.

As to Exhibit 11 [ECF No. 426-7], the email and engagement letter issued over eight years ago related to a physical therapy joint venture between Steadman, Vail-Summit Orthopaedics, and Vail Health. Vail Health does not identify how disclosure would put Vail Health at a competitive disadvantage, when it is publicly discussed in Plaintiffs' Amended Compliant, and when Vail Health itself has claimed that the joint venture was never consummated. At best, Vail Health could have sought to redact the last page of the exhibit, the 2015 Howard Head financial statement, but even then, Vail Health has made no

---

[27]   ECF No. 296-2 (identifying all data fields for submitting claim information).
[28]   See Colo. Rev. Stat. § 10-16-106.3 ("CMS-1450, otherwise known as form UB-04 [837]…is the uniform health care claim form[] for use by all other health care providers"); 3 Colo. Code Regs. § 702-4-2-24-5 ("Clean claims shall be submitted in the appropriate format (electronic or paper) as required, must utilize the appropriate form (…the CMS 1450 (UB-04) Form) or electronic equivalent [837]").

specific showing that historical financial data eight years old—that is, stale data—could somehow be damaging if disclosed today.  Vail Health has made no such showing.[29]

Exhibit 14 [ECF No. 426-10], Vail Health does not explain why the entire email and attachment needs to be restricted from the public.  It has offered no explanation that generic internal statements about financial information three years ago places it any competitive disadvantage if it is disclosed to the public.  At best, the financial information in the attachment could be redacted or remain under seal, and yet Vail Health does not address as why that would not sufficiently protect its interests while at the same time promote the public's interest in openness of court records.

As to Exhibit 15 [ECF No. 426-11], Exhibit 17 [ECF No. 426-13], and Exhibit 20 [ECF No. 462-14], Vail Health could easily sought to redact the attachments to the email rather than moving to restrict the entire document, which would have been the least restrictive means.  Vail Health had no issues redacting many pages of documents claiming that they were protected by attorney-client privilege.  And as to Exhibit 20, Vail Health again has not articulated how an excerpted cost report from Strata from 2016—stale data—could possibly have an adverse impact on Vail Health's competitive advantage in 2023.  At the very least, redacting these exhibits rather than their wholesale sealing would have adequately protected Vail Health, and yet, Vail Health did not seek that relief.

## IV.  PUBLIC INTEREST HERE TRUMPS ANY PURPORTED PRIVACY INTEREST.

Vail Health does not even mention the public's interest in accessing court records, other than to generally assert that its interests are more important.  Vail Health does not

---

[29]  *See, e.g., In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 250 (S.D.N.Y. 2009) (finding seven-year old financial data did not support sealing); *Saint-Jean v. Emigrant Mortg. Co.*, No. 11-CV-2122 (SJ), 2016 U.S. Dist. LEXIS 203193, at *21 (E.D.N.Y. May 24, 2016) (holding that information from eight years earlier did not support sealing).

address, however, that it is a community hospital that is alleged to have engaged in anticompetitive conduct that resulted in overbilling the community it is supposed to serve. One of the most vital public interests is public health,[30] including its accessibility and ever-rising cost. Vail Health does not address that: (1) it is a community hospital that is there to serve the medical needs of Eagle County residents, (2) it claims to be a "cornerstone" of the Vail Valley community for over 50 years, (3) it is proud of its financial contributions to the community, (4) it obtained $100 million in public bond financing, and (5) it raised another $100-200 million from the public and community for its building projects. Given this, Vail Health has not explained why its unsubstantiated privacy interest trumps the public's right to access court records, as a *Denver Post* article points out.

Among other hospitals, the *Denver Post* singled out Vail Health, contrasting how in 2007, Vail Health lost money; "[n]ow the hospital is a profit-making juggernaut with operations spread among eight locations in the Vail Valley. The 58-bed hospital made a profit of $100 million last year [2017], with net revenues coming in 20 times higher than the loss reported in 2007. Vail Health last year generated a 36 percent profit margin, among the highest for a hospital in the state and the nation."[31] The *Denver Post* further reported that Vail Health had nearly $411 million in investments (excluding property), in contrast to $55 million in 2000. One Anthem executive was reported as saying: "'They've expanded, …And I would argue that has happened at the expense of the community. Instead of lowering the cost as they bring in more profits, the dollars they take keep getting bigger and

---

[30]   *In re Gee*, No. 19-30953, 2019 U.S. App. LEXIS 40309, at *6 (5th Cir. Nov. 27, 2019); *Does v. Mills*, 16 F.4th 20, 37 (1st Cir. 2021); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir. 2021); *Electra-Med Corp. v. United States*, 140 Fed. Cl. 94, 107 (2018).
[31]   ECF No. 395-5.

11

bigger and bigger and they keep expanding and expanding.'"[32] Today, Vail Health's balance sheet sits at approximately $1 billion.[33]

That is precisely what Plaintiffs' antitrust action seeks to address. The inequities resulting from monopolistic conduct that harms the community Vail Health claims to serve. "America's democracy—and America's economy—should work for everyone, not just the privileged few.  This is an economy that works extremely well for the wealthy but leaves so many American families and working people behind...."[34] "America's antitrust laws, as originally designed, were intended to decrease such inequality....Indeed, if the antitrust laws are vigorously enforced, Americans will once again be in a better to confront the challenges of wealth and income inequality."[35] Thus, antitrust is an important policy tool to address this inequality, making it undoubtedly a matter of public concern.[36]

And as the Colorado Supreme Court has explained, "[a] hospital,…whose doors are open to those needing medical and surgical treatment…which depends for its support and maintenance upon the fees of patients and gifts and donations…is conducted in the interests of the general public…."[37] As a nonprofit charitable organization, which presents itself as providing valuable services to the general public and Eagle County community,

---

[32]   *Id.* at 16.
[33]   *See* Vail Health Audited Consolidated Financial Statements for 2021 and 2020, publicly available at https://emma.msrb.org/P21549524-P21197526-P21616943.pdf.
[34]   AMY KLOBUCHAR, ANTITRUST: TAKING ON MONOPOLY POWER FROM THE GILDED AGE TO THE DIGITAL AGE 187 (First Vintage Books ed. 2022).
[35]   *Id.* at 229.
[36]   *See Georgia v. Pa. R.R.*, 324 U.S. 439, 450-51 (1945) (conspiracy in violation of antitrust laws is a wrong "of grave public concern"); *Pearl Brewing Co. v. Jos. Schlitz Brewing Co.*, 415 F. Supp. 1122, 1130 (S.D. Tex. 1976) ("important public concern in combatting an antitrust violation in the courts is the damage that such a violation wreaks upon the competitive market system. Private enforcement is thus premised…on a theory of protecting the desired market status and thereby vindicating the public interest").
[37]   *St. Luke's Hosp. v. Indus. Comm'n of Colo.*, 349 P.2d 995, 998 (Colo. 1960).

it is unclear how Vail Health can dispute that the public has a right to know how Vail Health has used the hundreds of millions it receives from patient fees and public donations. In *E.E.O.C. v. National Children's Center,*[38] the U.S. Court of Appeals for D.C. refused to seal documents involving a nonprofit organization that treated and cared for disabled children. The nonprofit argued that if they were not sealed, it could impact the nonprofit's public support and funding. But that argument cutss against, rather than for, sealing the record: "The public should be able to learn how the money it has contributed to a charitable organization is being spent,"[39] which Vail Health itself acknowledges.

In the 2015 bond offering, Vail Health reported that, as a 501(c)(3), it must provide detailed public disclosure about "compensation practices, corporate governance, loans to management and others, joint ventures and other types of transactions….community benefit information…[and] tax exempt bonds…."[40] This enhanced transparency is important because, as Vail Health itself represents, it "can result in enhanced enforcement from the IRS and other stakeholders, including state attorneys general, unions, plaintiff's class action attorneys, public watchdog groups and others."[41] In sum, the public interest far outweighs any privacy interest of Vail Health.

## CONCLUSION

Plaintiffs respectfully request that Vail Health's motion be denied as to Exhibits 2-4, 8-11, 14-16, and 20.

---

[38]  98 F.3d 1406 (D.C. Cir. 1996).
[39]  *Id.* at 410.
[40]  ECF No. 395-2 at 33.
[41]  *Id.*

13

| | |
|---|---|
| Dated: January 17, 2023 | *s/Alan L. Kildow*<br>Alan L. Kildow, MN# 0143133<br>790 Potato Patch Drive<br>Vail, CO 81657<br>Telephone: (970) 390-6675<br>E-mail: alkildow@aol.com<br><br>Jesse Wiens, Colo. #33903<br>Jesse Wiens Law<br>0069 Edwards Access Road, Suite 8<br>Edwards, Colorado 81632<br>Telephone: (970) 855-0078<br>E-mail: jesse@jessewienslaw.com<br><br>Sonya R. Braunschweig (MN# 0290282)<br>5501 Irving Avenue South<br>Minneapolis, MN 55419<br>Telephone: (612) 819-2304<br>E-mail: sonya.braunschweig@gmail.com<br><br>Attorneys for Plaintiffs Lindsay Winninger and Sports Rehab Consulting LLC |

14

## CERTIFICATE OF SERVICE

      I hereby certify that on January 17, 2023, I served a true and correct copy of Plaintiffs' Opposition to Vail Health's Motion to Maintain Filing Restrictions On Exhibits 2-4, 8-17, and 20 to Plaintiffs' Rule 37(b) Motion #1 To Compel Compliance With Special Master's Orders, including exhibits, via the Court's ECF system on:

    Shannon Stevenson
    Janet A. Savage
    Jackie Roeder
    Daniel Richards
    Davis Graham & Stubbs LLP
    1550 17th Street, Suite 500
    Denver, CO  80202

    Counsel for Defendant

                              *s/ Alan L. Kildow*
                              Alan L. Kildow