# Exhibit 2

Transcript of the Deposition Testimony of:

# Charles Crevling
July 22, 2021

Sports Rehab Consulting LLC

v.

Vail Clinic, Inc. d/b/a Vail Health

Civil No. 1:19-cv-02075-WJM-GPG



Mile High Court Reporting & Video, Inc.

14143 Denver West Parkway, Suite 100 • Golden, Colorado 80401
(303) 202-0210 • contact@milehighreporting.com
www.milehighreporting.com

**Deposition of: Charles Crevling - July 22, 2021**
**Sports Rehab Consulting LLC v. Vail Clinic, Inc. d/b/a Vail Health**

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil No. 1:19-CV-02075-WJM-GPG

_____

VIDEOCONFERENCE DEPOSITION OF CHARLES CREVLING
July 22, 2021

_____

SPORTS REHAB CONSULTING LLC, a Colorado limited
liability company, and LINDSAY WINNINGER, an
individual,

  Plaintiffs,

V.

VAIL CLINIC, INC. D/B/A VAIL HEALTH, a Colorado
nonprofit corporation,

  Defendant.

_____

  PURSUANT TO NOTICE, the videoconference deposition of CHARLES CREVLING, called for examination by the Plaintiffs herein, was taken with all parties appearing via videoconference, commencing at 9:33 a.m., on Thursday, July 22, 2021, taken before Jennifer Bajwa Melius, a Verbatim Stenographic Reporter and Registered Professional Reporter.

**Deposition of: Charles Crevling - July 22, 2021**
**Sports Rehab Consulting LLC v. Vail Clinic, Inc. d/b/a Vail Health**

```
                                                              2

 1    APPEARANCES:
 2            SONYA BRAUNSCHWEIG, ESQ.
              5501 Irving Avenue South
 3            Minneapolis, Minnesota 55419
              612-819-2304
 4            sonya.braunschweig@gmail.com

 5                and

 6            ALAN L. KILDOW, ESQ.
              15204 Wildwood Road
 7            Burnsville, MN 55306
              970-390-6675
 8            akildow@aol.com

 9                For the Plaintiff Sports Rehab
                     Consulting and Lindsay Winninger
10
11            DANIEL A. RICHARDS, ESQ.
              Davis Graham & Stubbs LLP
12            1550 Seventeenth Street, Suite 500
              Denver, Colorado 80202
13            303-892-9400
              daniel.richards@dgslaw.com
14
                  For the Defendant Vail Clinic d/b/a
15                   Vail Health

16
              ERIN M. EISELEIN  ESQ.
17            Brownstein Hyatt Farber Schreck
              410 Seventeenth Street
18            Denver, Colorado 80202
              303-223-1251
19            eeiselein@bhfs.com

20                For the Deponent

21

22

23

24

25
```

**Deposition of:  Charles Crevling - July 22, 2021**
**Sports Rehab Consulting LLC v. Vail Clinic, Inc. d/b/a Vail Health**

---

**Page 4**

1    PROCEEDINGS
2    **THE STENOGRAPHER:** My name is Jenny
3    Melius. I'm a nationally certified stenographic
4    reporter. Today's date is July 22, 2021, and the time
5    is approximately 9:33 a.m.
6    This is the deposition of Charles
7    Crevling in the matter of Sports Rehab Consulting, LLC
8    and Lindsay Winninger versus Vail Clinic, Inc., venued
9    in the United States District Court for the District
10   of Colorado. The case number is
11   1:19-cv-02075-WJM-GPG.
12   At this time I will ask counsel to
13   identify themselves, state whom you represent, and
14   agree on the record that there is no objection to this
15   deposition officer administering a binding oath to the
16   witness remotely.
17   **MR. KILDOW:** My name is Alan Kildow,
18   spelled K-i-l-d-o-w. I am the attorney of -- one of
19   the attorneys of record for the plaintiffs in this
20   action, and I have no objection -- the plaintiffs have
21   no objection to your acting as the -- serving, I
22   should say, as the court reporter in this action.
23   **MR. RICHARDS:** Dan Richards,
24   R-i-c-h-a-r-d-s. I represent defendant Vail Health,
25   and we have no objection to the remote swearing of the

---

**Page 5**

1    witness or conducting the deposition remotely.
2    **MS. EISELEIN:** And this is Erin
3    Eiselein, E-i-s-e-l-e-i-n. I'm the attorney for the
4    witness, Charles Crevling, and we also have no
5    objection to the remote swearing in of Mr. Crevling.
6    CHARLES CREVLING,
7    having been first duly sworn, was examined and
8    testified as follows:
9    EXAMINATION
10   BY MR. KILDOW:
11   Q.   Mr. Crevling, my name, as I have
12   announced, is Alan Kildow. I represent the plaintiffs
13   in this action, Sports Rehab Development -- or
14   Consulting and Lindsay Winninger.
15   I'm going to ask you questions today. I
16   will do my best to ask questions which are short and
17   succinct and hopefully easy to understand. I will do
18   my best to wait to ask a second question until you
19   have answered the question that was just posed.
20   Correspondingly, I would ask you to wait until I've
21   finished the question before you begin to answer.
22   We are doing something that is
23   technologically now somewhat common but until recently
24   was relatively unique, which is taking a deposition by
25   video -- by Zoom. And as Jenny has pointed out,

---

**Page 6**

1    sometimes there's just a little bit of a lag between
2    the time you stop speaking and the other hear -- the
3    other person hears that. And so we have to be even
4    more vigilant than we really usually are in waiting
5    for the question to be completed and waiting for the
6    answer to be completed because, as expert as Jenny is,
7    it's hard to take down what's being said when two
8    people are talking over each other. Is that fair
9    enough?
10       A.   Fair enough.
11       Q.   Okay. You live in Glenwood Springs; is
12   that correct?
13       A.   Correct.
14       Q.   And could you state your address again
15   for the record?
16       A.   345 Woodruff Road, Glenwood Springs,
17   81601.
18       Q.   Okay. Is there anyone else that lives
19   there with you?
20       A.   My wife.
21       Q.   What's her name?
22       A.   Karen.
23       Q.   Okay. Are you represented by counsel
24   today?
25       A.   I am.

---

**Page 7**

1        Q.   And that is Erin; is that correct?
2        A.   That is correct.
3        Q.   Is -- are you represented by anybody
4    else such as Mr. Richards?
5        A.   I am not.
6        Q.   Okay. Now, because you live in Glenwood
7    Springs, I can't be absolutely certain that I'm going
8    to be able to subpoena you for trial. I think I can,
9    but I can't be absolutely certain. And so today's
10   deposition plaintiffs intend to be a trial deposition
11   insofar as we will take this deposition as though you
12   are testifying in a court of law in Denver and there
13   was a judge and a jury there, okay?
14       A.   Yeah.
15       **MR. KILDOW:** And I will try to ask the
16   questions in a way that is -- that are
17   non-objectionable, but if Mr. Richards housed an
18   objection, not just to form but a trial objection, he
19   should state that objection on the record so that I
20   can add the foundation or rephrase the question in a
21   manner that is not objectionable.
22   Is that acceptable to everybody?
23       **MR. RICHARDS:** Mr. Kildow, I think we'll
24   proceed consistent with the Federal Rules of Civil
25   Procedure, and my objections will be consistent with

Deposition of:  Charles Crevling - July 22, 2021
Sports Rehab Consulting LLC v. Vail Clinic, Inc. d/b/a Vail Health

---

**16**

1   And when did you leave University of
2  Colorado?
3      A.  I left and came back.  So I left a
4  couple of years after I started, I believe, and like I
5  said, opened -- helped open Panorama Orthopedics.  And
6  University wanted me back, and I came back to
7  University in a director's role.
8      Q.  When you say the University of Colorado,
9  do you mean the University of Colorado medical system?
10     A.  It was University of Colorado Hospital
11 at the time.
12     Q.  Okay.  Did you work in Boulder then or
13 where?
14     A.   No, no.  It was out of Fitzsimons, so it
15 was right at the time that University was moving
16 campuses.
17     Q.  Okay.  And how long did you remain at
18 Panorama?
19     A.  I was there very short.  Less than a
20 year.
21     Q.  What did you do at Panorama?
22     A.  I was their CFO.
23     Q.  Then after you returned, then, to UC
24 Hospital, how long did you stay there?
25     A.  I was there until -- I guess it was the

---

**17**

1  end of 2007.
2      Q.  What was your next stop?
3      A.  Dartmouth.
4      Q.  Wow.  What did you do at Dartmouth?
5      A.  I was vice president of finance.
6      Q.  For the hospital system?
7      A.  For the --
8      Q.  Or for the university?
9      A.  It was the hospital, but they combined
10 both the school of medicine and the hospital together,
11 so you essentially are vice president for both sides.
12     Q.  Well, it's a lot colder up there in
13 New Hampshire.  So how long did you remain with
14 Dartmouth?
15     A.  I was only at Dartmouth six months or
16 something like that.
17     Q.  And after that you went where?
18     A.  I went to Vail.
19     Q.  And did you work for Vail Valley Medical
20 Center then?
21     A.  I did.
22     Q.  And that was about 2007, 2008, someplace
23 around in there?
24     A.  August of 2008.
25     Q.  Okay.  What was your position at Vail

---

**18**

1  Valley Medical Center when you joined in 2008?
2      A.  Chief financial officer.
3      Q.  Who was the chief executive officer at
4  the time?
5      A.  John Cassin.
6      Q.  Could you spell the last name?
7      A.  C-a-s-s-i-n.
8      Q.  **And when did you depart Vail Valley**
9  **Medical Center?**
10     A.  **It was July of -- I left the CFO**
11 **position in July of 2015.**
12     Q.  Do you have a particular date in July of
13 2015 that you ceased to be chief financial officer?
14     A.  I think it was the 6th of July.
15     Q.  Did you have an employment agreement
16 when you left -- or excuse me -- when you joined Vail
17 Valley Medical Center?
18     A.  I did.
19     Q.  And did that agreement include a
20 noncompete?
21     A.  It did.
22     Q.  Would you characterize it as a
23 noncompete or was it characterized as a
24 non-solicitation or do you know the difference?
25         MR. RICHARDS:  Objection.  Form.  Calls

---

**19**

1  for a legal conclusion.
2          MS. EISELEIN:  Same objection.
3          THE DEPONENT:  I'm sorry.  I need
4  guidance here, guys.
5      Q.  (By Mr. Kildow)  You can answer.  I'm
6  just -- do you know what it was called in the
7  agreement?  Did it say non-solicitation or did it say
8  noncompete?
9          MR. RICHARDS:  Objection to form.
10     Q.  (By Mr. Kildow)  If you recall.
11         MS. EISELEIN:  Same objection.
12     Q.  (By Mr. Kildow)  If you recall.
13     A.  I'm not sure.  I think it was a -- said
14 noncompete, but I -- who knows.
15     Q.  That's good enough.  That's good enough.
16 Now, during the course of this deposition, if you
17 don't remember something, just let us know.
18         When you left the Vail Valley Medical
19 Center, did you continue on providing services to
20 VVMC --
21     A.  I did.
22     Q.  -- in any other capacity?
23         MR. RICHARDS:  Objection to form.
24         MR. KILDOW:  What's the objection?
25         MR. RICHARDS:  My objection is that did

---

Deposition of: Charles Crevling - July 22, 2021
Sports Rehab Consulting LLC v. Vail Clinic, Inc. d/b/a Vail Health

---

**140**

1  MR. RICHARDS: Same objection as this
2  being relevant only to the state case and an improper
3  effort to obtain state court discovery. And form.
4  MR. KILDOW: I'll disagree. I just want
5  to find out if there is --
6  A. Well, it was --
7  MR. KILDOW: -- this is part of the sham
8  litigation allegation in the complaint.
9  THE DEPONENT: My turn, guys?
10  MR. KILDOW: Yeah, your turn.
11  A. Okay. While I was there, there was no
12  known attempt to buy protocols or protected
13  information from RPC.
14  MR. KILDOW: Very good. No further
15  questions.
16  MR. RICHARDS: Mr. Crevling, I just have
17  a couple of quick questions. It shouldn't take very
18  long.
19  THE DEPONENT: Sure, Dan.
20  EXAMINATION
21  BY MR. RICHARDS:
22  Q. Mr. Crevling, you're not a lawyer?
23  A. Nope.
24  Q. Okay. I bet you're grateful for that
25  today, I would imagine?

**141**

1  A. Yes.
2  Q. You don't have any legal training; is
3  that right?
4  A. I have no formal legal training.
5  Q. Okay. And you haven't done any research
6  as to, you know, what is or is not a trade secret?
7  A. I have not.
8  Q. Okay. And you were not, during your
9  time at Vail Health, a physical therapist for Howard
10  Head?
11  A. No, I was not.
12  Q. Okay. You never provided physical
13  therapy services to patients on behalf of Howard Head?
14  A. No, I certainly did not.
15  Q. Okay. And is it fair to say that
16  dealing with issues related to physical therapy
17  services was a small percentage of your position as
18  CFO of the hospital?
19  A. A small fraction.
20  MR. KILDOW: Objection. Leading. This
21  witness is not hostile to you. The objection is
22  leading.
23  Q. (By Mr. Richards) Mr. Crevling, what,
24  if any -- what percentage of your duties as CFO of
25  Vail Valley Medical Center was devoted to dealing with

**142**

1  issues related to physical therapy or Howard Head?
2  A. You know, Dan, I have no way of
3  answering that except for that it would be, you know,
4  1 percent. I don't know. It would be very, very
5  small.
6  Q. Okay. And what, if any, knowledge do
7  you have about what Howard Head personnel considered
8  to be trade secrets?
9  A. Very little. I don't know what they
10  consider trade secrets. The only thing that would
11  come to mind would be those protocols we talked about.
12  Q. Okay.
13  A. But I -- you know, the legal status of
14  those is not my expertise.
15  Q. Okay.
16  MR. RICHARDS: No further questions.
17  MR. KILDOW: No further questions.
18  Mr. Crevling, on behalf of the
19  plaintiffs, I want to thank you for your time in
20  bearing with this painful exercise.
21  THE DEPONENT: You're welcome.
22  MR. RICHARDS: Thank you, Mr. Crevling.
23  THE DEPONENT: Thanks, Dan, Jenny.
24  THE STENOGRAPHER: Could I get
25  transcript orders on the record, or are there already

**143**

1  standing orders in the case?
2  MR. KILDOW: The usual for us. Aimee
3  knows what those are, so whatever we usually get.
4  MR. RICHARDS: The usual for us as well.
5  Thank you.
6  MS. EISELEIN: We'll take a mini for
7  review. Thank you.
8  THE STENOGRAPHER: And just to clarify,
9  that's only for review? You do not want to purchase a
10  copy? Or you also want to purchase a copy?
11  MS. EISELEIN: We want to purchase a
12  mini.
13  (The deposition concluded at 2:36 p.m.
14  after 3 hours and 38 minutes on the record.)

**Deposition of: Charles Crevling - July 22, 2021**
**Sports Rehab Consulting LLC v. Vail Clinic, Inc. d/b/a Vail Health**

```
                                                      144
 1                    AFFIDAVIT
 2           I have read my deposition and it is true
 3   and accurate, except for any changes or corrections
 4   now indicated by me on the Amendment sheet.
 5           Amendment sheet attached   ( )
 6           No changes to testimony    ( )
 7
             _____
 8           DEPONENT
 9           SUBSCRIBED AND SWORN to before me this
10   date, _____.
11           My commission expires _____
12           _____
             NOTARY PUBLIC
13
             _____
14           STREET ADDRESS
15           _____
             CITY, STATE, ZIP
16
17
18
     Return to: MILE HIGH COURT REPORTING & VIDEO, INC.
19          14143 Denver West Parkway
            Suite 100
20          Golden, Colorado 80401
21
22
23
24
25
```

1      REPORTER'S CERTIFICATE

3              I, Jennifer Bajwa Melius, Verbatim
4      Stenographic Reporter and Registered Professional
5      Reporter, do hereby certify that prior to the
6      commencement of the examination of CHARLES CREVLING,
7      said witness was remotely sworn via videoconference to
8      testify to the truth in relation to the matters in
9      controversy between the parties hereto; that identity
10     of the witness was verified via satisfactory evidence
11     per the Rules; that said examination was taken in
12     machine shorthand by me and was thereafter reduced to
13     typewritten form; and that the foregoing is a true and
14     accurate transcript of the questions asked, testimony
15     given, and proceedings had.
16              I further certify that I am not related
17     to any party herein, nor their counsel, and have no
18     interest in the result of this litigation.
19              IN WITNESS WHEREOF, I have affixed my
20     signature this 3rd day of August, 2021.

                    _____
                    Jennifer Bajwa Melius
                    Registered Professional Reporter