# EXHIBIT I

# EXHIBIT 8

# RESTRICTED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation,

      Defendant.

---

**PLAINTIFFS' NOTICE OF OUTSTANDING DISCOVERY ISSUES**

---

## INTRODUCTION

This memorandum sets out a majority, but not necessarily all, of the discovery issues presented from the Special Master Reports and the Court's Orders relating to discovery issues as of November 8, 2022. Any additional issues will be raised in a supplemental memorandum, but to get this conferral process moving, Plaintiffs have identified issues that have previously been raised over the past several weeks, as well as some new issues.

Plaintiffs have not included issues that are the subject of an appeal by Vail Health, such as discovery outside the Vail Valley. Additionally, Plaintiffs have not cataloged any issue with respect to the Special Master's most recent Report on motion to compel #5, as the time for Vail Health to appeal is Friday, November 18.

At the end of each item at issue, much of which has already been presented to Vail Health three weeks ago, Plaintiffs expressly state their request to resolve the issue.

1

I.    **MARCH 30, 2022 ORDER ADOPTING IN PART THE SPECIAL MASTER'S REPORT [ECF NO. 307] AND SPECIAL MASTER REPORT ON #1 [ECF NO. 362] RELATED TO PRODUCTION OF PATIENT DATA.**

**<u>PLAINTIFFS' POSITION</u>:**

In its appeal of the Special Master's Jan 18, 2022 Order [ECF No. 274], Vail Health

stated: ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████[1]  Vail Health

provided no evidentiary support for those statements; it was just conclusory legal

argument by counsel.  The March 30 Order recognized the lack of evidentiary proof and

ordered Vail Health to submit an affidavit of a Vail Health employee to confirm its

counsel's statements.[2]

On February 14, Vail Health submitted a declaration of Christine Clark, who stated:

"Vail Health sometimes receives from payers (*e.g.,* an insurance company) and loads to

Cerner, data regarding the amount the *payer* paid for an individual physical therapy

procedure…."[3] ████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████

---

[1]    ECF No. 278 at 13.
[2]    ECF No. 307 at 7.
[3]    Apr. 14, 2022 Decl. of Christine Clark ¶ 6.

On March 30, the Court also ordered that Vail Health supplement the patient in billable units, not minutes, and include the amount charged by Vail Health for those procedures.[4]   Additionally, in the Special Master's July 6, 2022 Report on Motion to Compel #1, Vail Health was ordered to produce all the categories of data identified in response to Motion to Compel #1 within 14 days.  Vail Health did not object to that portion of the Report, and despite representing in that response that it would produce, among other things, "unique encounter identification number," "reimbursement to Vail Health for each encounter (or other unit on which reimbursement is tracked," and "primary or referring physician," Vail Health has still not produced this information.  For example, Vail Health's encounter number changes each month, and yet only one encounter number has been produced with an aggregate amount across *ALL* encounter numbers.  Vail Health's employee stated that Vail Health maintains procedure data by certain insurers, but it has produced none of that data.  Finally, Exhibit 25 to Plaintiffs' Motion to Compel #1 shows that Vail Health tracks the rendering physician.

On July 14, Plaintiffs sent an email seeking an explanation as to why the supplemental data ordered by the Court [ECF No. 307] did not match the original production from December 3, 2021.  On July 15, Plaintiffs identified that "[o]f the 49,108 accounts, only 37,962 match up by account number, service date, FIN, and service type.  The remainder either does not have a match or only a partial match.  And of the 37,962 that 'matched,' approximately only half are a match by total billed charges."  Given that Vail Health produced the data, Plaintiffs believed that this should have been a relatively easy task for Vail Health to explain the discrepancies.

---

4       ECF No. 307 at 5-6.

Instead, Vail Health stated it could not respond until Plaintiffs provided it with the account numbers that did not match, which Plaintiffs provided on August 8. Despite stating Vail Health would get back to Plaintiffs about the discrepancies, it did not do so until over two months later, and again, only after Plaintiffs had to raise the issue again. An hour or so before the conferral on October 14, Vail Health provided a letter that did not explain much—most of the letter focused on what had been produced, not the discrepancies. Because the letter was virtually incomprehensible, Plaintiffs requested a more fulsome explanation during the conferral. During the conferral, Mr. Richards confirmed—for the first time—that there had been no need for Vail Health to obtain data from TherapySource—all the data Plaintiffs requested existed in the Paragon and Cerner system. With that disclosure—which again was made for the first time—Plaintiffs revisited the many representations throughout the course of the action that Vail Health made about the patient data.

Plaintiffs cataloged the misleading statements in an October 18 memorandum provided to Vail Health that day. As a result of the misrepresentations, Plaintiffs proposed that Vail Health reproduce the with all the field ordered to be produced, along with the encounter data by specific encounter number (which changes on a monthly basis), as well any data tracked by procedure, and that Vail Health agree to certain depositions of those involved in the production of the patient data. Vail Health had stated that it would get back to Plaintiffs on October 21 about the proposal, and yet, on October 21, Vail Health only stated it was reviewing the October 18 memorandum. On October 31, Plaintiffs requested another conferral. Vail Health has not substantively responded to Plaintiffs' October 18 proposal, or the October 31 conferral request, other than to say that

it would respond to Plaintiffs' multitude of discovery issues by November 9 (purportedly including the patient data issue), and if necessary, a subsequent telephone conferral could be held.

**Plaintiffs' Request To Resolve This Dispute**:   To move beyond and finally resolve these issues, Plaintiffs request that Vail Health agree to the following:

(1)     Produce the data from November 1, 2012 to October 31, 2013, or provide a witness who can sit for a four-hour deposition and explain why the data does not exist;

(2)     Reproduce the December 2021 and May 2022 data in one data set with all the fields requested and identified below, with the datasets coming from Paragon and Cerner and excluding occupational therapy;

(3)     Agree to identify the fields available on the payer side, including by unique encounter and procedure as disclosed in the Christine Clark affidavit;

(4)     Agree to the following fields in the reproduced data sets for physical therapy once Vail Health has provided a more fulsome explanation in how reimbursements are tracked at the encounter level and procedural level;

- Facility

- Date of Service

- Patient ID

- Full Encounter ID

- Billed CPT/HCPCS/ICF9 Codes

- Billed CPT/HCPCS/ICF9 Description

- Charge Code

- Charge Code Description

- Quantity by billable units

- Amount Charged for the billable units identified (if two units identified as quantity, the total amount charged for those two units);

- Patient Zip Code

- Chargemaster Number

- Chargemaster Description

- Provider information

- All payer information, for each unique encounter (that includes changes by month, i.e., "encounter number-x," with "x" by each month, 1, 2, 3 etc.), any amounts allocated by procedure, and any other category captured by Vail Health that may be explained by Vail Health, including the following:

  - Insurance 1

  - Insurance 2

  - Insurance 3

  - Pay_pat_at (patient payment)

  - Pat_adj_at (patient adjustment)

  - Ins_pay at (insurance payment)

  - Ins_adj_at (insurance adjustment)

(5)   Agree to confer with Plaintiffs and provide an exemplar of the data before it is fully produced so that no other issues result in the production of the patient data; and

(6)   Agree to Plaintiffs taking the depositions of Jeff Montgomery, Terry Bobolz, and Gretchen Ebbeson; each deposition not to exceed fours of deposition time.

## II.   SPECIAL MASTER'S REPORT REGARDING MOTION TO COMPEL #1-2 [ECF NOS. 362, 381] RELATED TO HOWARD HEAD FINANCIAL INFORMATION.

### **PLAINTIFFS' POSITION:**

At paragraph 24 of Special Master's Report on motion #1, Vail Health was ordered to produce "an affidavit by someone who can confirm" that Howard Head financial data "cannot be identified or isolated," and to do so by no later than July 20, 2022.  Vail Health did not submit any such affidavit because, as Nicholas Brown testified, the data does exist, as will be more fully explained below.  At page 5-6 of the Special Master's Report

6

on motion #2, the Special Master stated that "[i]f Vail Health represents that it has conducted a reasonable search for documents responsive to" RFP No. 2 for Howard Head financial data, Vail Health was "to further illuminate the steps that Vail Health has taken in responding to Plaintiffs' requests, the Special Master directs that Vail Health [] produce the SPI described above with regard to the searches it undertook in an effort to adequately respond to this request."

Vail Health responded by identifying the SPI searched for Howard Head financial data in purportedly no more than 4 email accounts: Nicholas Brown, Ellen Broersma, Will Cook, and Doris Kirchner. Notably, the search terms used would not locate the financial information requested, nor would the email accounts. Additionally, Vail Health referred to a summary one-page statement—not maintained in the ordinary course of business but generated for purposes of this litigation—to claim that is the extent of the data available for Howard Head. *See* Ex. 4 to October 17 letter to Special Master.

On October 31, Plaintiffs sent Vail Health an email outlining the deficiencies in Vail Health's compliance. Plaintiffs reforwarded the email sent on August 14 related to Howard Head financial data, along with additional attachments. Specifically, Plaintiffs explained that in the October 17 letter to the Special Master, Vail Health provided the purported search terms used to identify responsive financial information, apparently limited to financial analyses prepared in the ordinary course of business and only found in the email accounts of Brown, Broesma, Cook, and Kirchner. It is curious that Vail Health would not identify anyone in the financial department of Vail Health that supported Howard Head to search for or confer with those individuals as to where the relevant

7

documents and information is available.  This is significant given what Mr. Brown testified to a year ago.

For example, Mr. Brown stated in a sworn deposition that when he sought financial information for Howard Head, he contacted Karen Hannah  in Vail Health's Decision Support Department.  Despite being Brown's go-to person whenever he needed Howard Head specific financial information, which apparently is available in the Strata System, Vail Health did not search her documents, or apparently contact the Decision Support Department to produce the relevant information from the Strata System.  Additionally, we have emails in which Mr. Brown routinely conferred with Vail Health's present and former CFOs, as well as others in the financial department, and yet, none of those email accounts were searched either.

Specifically, Brown testified that at pages 45, and 56-58 of his 2021 deposition that





So Plaintiffs know the information we seek exists, or at least existed at one point in time—Mr. Brown admitted that. Additionally, Plaintiffs attached a Vail Health produced document showing certain information available through the Strata system. See VH_Fed_00002460.

Further, the search terms that Vail Health used to search for financial information using "physical therapy" would not capture the financial analyses because that term is not found in the financial statements and reports. The documents instead refer to "income statement," "roll up" and "HH" or "Howard Head" or "HHSM." The statements include

such terms as "gross revenues," "revenue deductions," "net patient revenue,"" other miscellaneous revenue," "net operating revenue," "net patient revenue less provision for bad debt," "operating expenses" by each category ("salaries and wages" by productive and nonproductive), "employee benefits", "supplies" and materials by medical supplies pharmaceuticals, and other supplies, "contracted services", "professional fees," "consulting fees," "advertising" and "marketing", "utilities", rental "lease" costs, "other operating expenses", "purchased department functions", "repairs and maintenance", "depreciation", "insurance services," "other indirect allocations," etc. but none of those terms were searched according to your October 17 letter unless they encompassed "physical therapy" within 30 words of those terms.

Although Vail Health appears to contest that it has any obligation to produce Howard Head financial data stored in Vail Health's financial system, that is exactly what Exhibit 5 to the October 17 letter is—a one-page statement prepared by Vail Health's accounting department for purposes of this action. Vail Health's refusal to produce the financial data for Howard Head was outright rejected by the Colorado District Court in *Crocs, Inc. v. Effervescent*, Civil Action No. 06-cv-00605-PAB-KMT, 2017 U.S. Dist. LEXIS 184498 (D. Colo. Feb. 8, 2017), when the defendant claimed it could not produce sales reports kept in the normal course of business. "With respect to database storage of information, the law does not support [defendant's] verbal sleight of hand. In fact, the court finds that this argument comes alarmingly close to deceit. Courts considering the issues of dynamic database data have held that if information is stored in a database, requiring reports be run from the database is not the creation of new evidence or discovery." Id. at *10-12 (citing *Apple Inc. v. Samsung Elecs. Co.*, Case No.: 12-CV-

0630-LHK (PSG), 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013); *In re eBay Seller Antitrust Litig.*, Case No. C 07-1882 JF(RS), 2009 WL 3613511, at *1 (N.D. Cal. Oct. 28, 2009); *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 683 (N.D. Cal. 2006)).

Finally, Plaintiffs sought to confer about this issue multiple times. Vail Health would not schedule a conferral, nor did it respond to Plaintiffs' October 31 email.

**Plaintiffs' Request To Resolve This Dispute**: To move beyond and finally resolve these issues, Plaintiffs request that Vail Health agree to the following:

(1) Agree to additional search terms and locations that could lead to the production of this information;

(2) Deposition of Karen Hannah regarding the existence, format, storage, maintenance, and possible destruction (spoliation) of Howard Head financial information. The deposition would also cover the availability and production of such data to Mr. Brown or others in Howard Head, and the fields of data available, general financial accounting related to Howard Head;

(3) Produce the financial data for Howard Head from November 1, 2012 to the present, which provides the financial information substantially in the form of or otherwise reflecting the financial data Brown used for the joint venture, private equity analysis, and provided to consultants, including Haverford. This includes all categories of direct and indirect costs or expenses (however characterized by Howard Head) that are maintained by Vail Health for Howard Head; and

(4) If the data at issue is no longer available, Hannah or a Vail Health officer or employee with first-hand knowledge, would testify by deposition regarding: (a) the point in time when the data was destroyed or otherwise rendered unavailable, (b) how the destruction or unavailability occurred, (c) whether the data can be recovered, and (d) the individual(s) who directed or ordered that the data be destroyed or rendered unavailable.

III. **SPECIAL MASTER'S REPORT REGARDING MOTION TO COMPEL #1 [ECF NO. 362] RELATED TO DATA, DOCUMENTS, AND INFORMATION PROVIDED TO, REVIEWED, OR REFERENCED BY DR. NOETHER.**

**PLAINTIFFS' POSITION:**

Dr. Noether's February 28, 2022 report does not attach any statement regarding her compensation for her work and analysis on behalf of Vail Health relating to this case. Rule (a)(2)(B)(vi), Fed. R. Civ. P., provides that the expert disclosures must include "a statement of the compensation to be paid for the study and testimony in the case." **Please provide Plaintiffs with a statement regarding her compensation**.

At ¶ 22 of the July 6 Report [ECF No. 363], the Special Master directs that "financial data, documents, or information [that Dr. Noether reviewed, relied on, or was provided] must be produced." The Special Master directs that this includes "comparisons of [profitability margins] between the profit margins between Howard Head and other hospital-based physical therapy practices, or by comparing aggregate Vail Health margins to hospital-wide averages…."

The Special Master's Report repeatedly stated that Noether is to identify and produce documents should "reviewed," not just relied upon. **Please confirm that all documents that she *reviewed* have been identified in the Noether Report.**

The Noether report cites at page 32, footnote 115, an article entitled: "Comparison of Hospital Outpatient Departments and Independent Physicians Offices." April 2021. The Noether report states that the articles is found within the American Hospital Association ("AHA") database, although the article is not available to the public. **Please provide that article**.

The Noether report cites at page 32, footnote 115, an article entitled: "Policy Options for Addressing Medicare Payment Differentials Across Ambulatory Settings," by

Rand Health 2011. Although the Noether's report cites this article to an http web address, the article is either no longer available or not available to the public without a Rand subscription. **Please provide that article.**

The Noether report at page 35, ¶ 72 states:



Dr. Noether does not provide any citation to data, documents, or information that supports those conclusions. We therefore do not have a list of the rural hospitals to which she is referring to, nor do we have the data, documents, or information that she reviewed or relied upon that support her conclusion. **Please produce the data, documents, and information for both the prices/rates of the "competitors" and the "rural hospitals" to which Dr. Noether refers in ¶ 71 of her report.**

The Special Master's Report at ¶ 22 directs that data, documents, and information provided to, reviewed, or referenced by Dr. Noether regarding her opinion that "Vail Health's financial condition 'is considerably worse than the average hospital'" must be produced. The Noether report at page 44, ¶ 86 states:

The AHD data is restricted to AHD subscribers, and therefore Plaintiffs request that Vail Health produce this information immediately, particularly in light of the fact that the Special Master has ordered production over four months ago.

Without having the opportunity to review the AHD information, it appears quite clear that Dr. Noether is referring to aggregate Vail Health, hospital wide financial margins that Vail Health has consistently asserted are irrelevant to this case. The Special Master

came to the same conclusion ("Dr. Noether's rebuttal opinions reference that the margins of the entire Vail health hospital system (as opposed to its HH physical therapy unit) are relevant to this dispute. Therefore, the Special finds only that any of the information provided to, reviewed by, or relied upon by Dr. Noether shall be produced." **Plaintiffs therefore request that Vail Health produce all data, documents, and information from the AHD, as referenced in footnotes 147 and 148.**

The Special Master's Report at ¶ 23 also states: "Because Dr. Noether has rendered opinions regarding Vail Health's financial viability and profit margins, Plaintiffs should be entitled to any financial documents produced to or reviewed by Noether, including audited and unaudited financial statements, Medicare cost reports, source material documents Vail Health's profitability, prices charged, and indirect and direct costs. *See* FRE 703 and 705." The use of the AHD data is a mere surrogate for actual Vail Health data, documents, and information that were transmitted to AHD from Vail Health. **Vail Health, therefore, is obligated to produce the financial data, documents, and information that it transmitted to AHD for its reports from 2012 to the present. Plaintiffs request this information immediately.**

## IV. SPECIAL MASTER'S REPORT REGARDING MOTION TO COMPEL #2 [ECF No. 381].

### A. RFP No. 9 Related To Howard Head Employment Records.

At page 6 of Order #2, Vail Health was required to provide to produce information including the start and end dates of employment for Howard Head physical therapists. An Excel spreadsheet of this information was produced, but it is unclear whether it includes all physical therapists.

**Plaintiffs' Request To Resolve This Dispute:** To move beyond and finally resolve these issues, Plaintiffs request that Vail Health agree to the following:

(1)     Confirm whether the Excel spreadsheet includes all physical therapists, and does not exclude those with some managerial function, for the time period November 1, 2012 to the present.

(2)     If not, Plaintiffs request that the Excel spreadsheet be reproduced to identify all physical therapists from November 1, 2012 to the present.

## B.     RFP. No. 10 Related To Howard Head Employment Agreements.

### PLAINTIFFS' POSITION:

In Order #2 at page 7, Vail Health was ordered to produce "copies of any employment agreements that Vail Health entered into with physical therapists, before, during, or at the conclusion of their employment with Vail Health, to the extent those agreements imposed post-employment non-competitive, non-solicitation, or trade secret confidentiality obligations on those individuals. This request covers all such agreements Vail Health imposed between 2012 to the present." Vail Health did not appeal that portion of Order #2.

Instead of complying with the Special Master's Order, Vail Health reproduced the exemplars that had already been produced and were the subject of Plaintiffs' motion to compel. Even if the agreements in certain years do not differ, as Mr. Richards first represented in his letter to the Special Master, Plaintiffs are entitled to those documents to review that for themselves. This means producing an exemplar from 2013, 2014, 2021, and 2022, as Vail Health was ordered to do.

Additionally, the Special Master ordered production of any agreements during employment or post-employment that include a nonsolicitation, noncompete, or nondisclosure related to trade secrets. We know that those documents exist, which Vail

Health refuses to produce (it was the subject of Plaintiffs' motion to compel).  Both Nico



Vail Health has not produced an exemplar of any noncompete agreement during employment or post-employment.

On October 18, Plaintiffs requested that Vail Health produce the documents ordered by the Special Master.  It also requested a conferral.  Having received no response, on October 31, Plaintiffs requested another conferral.

**Plaintiffs' Request To Resolve This Dispute:**  To move beyond and finally resolve these issues, Plaintiffs request that Vail Health agree to the following:

(1)    Produce exemplar of employment agreements 2013, 2014, 2021, and 2022;

(2)    Produce any agreements during employment or post-employment that include a nonsolicitation, noncompete, or nondisclosure related to <u>trade secrets</u>, which would include, but not necessarily limited to, █████████ ██████████████████████.

## V. SPECIAL MASTER'S REPORT REGARDING MOTION TO COMPEL #1 [ECF No. 362].

### A. Interrogatory No. 9.

**PLAINTIFFS' POSITION:**

At pages 11-12 on Order #1, Vail Health was ordered within 14 days of the Report "to identify and describe all documents regarding the relevant geographic market, by bates number or otherwise, that support their contention(s), or that were provided to, submitted, shared, or referenced by Dr. Noether relating to her opinions or Report." Vail Health did not appeal this portion of the Report.

On October 31, Plaintiffs identified that Vail Health had not complied with the Special Master' July 6 Report by identifying the specific documents supporting its contention(s). Instead, Vail Health identified every single footnote of the Noether Report and every document referenced in Appendix B to the Report regardless of whether the documents relate to geographic market or not. This is not compliance with the Special Master's Order.

Plaintiffs requested whether Vail Health (1) will comply with the Special Master's Order; and (2) if so, when we will receive the revised answer. To the extent Vail Health intended to rely on the answer as is, Plaintiffs asked that Vail Health confirm that as well. Plaintiffs requested that the parties discuss this issue in the next conferral, which Plaintiffs had made multiple requests to hold. Vail Health did not respond to this email.

**Plaintiffs' Request To Resolve This Dispute:** To move beyond and finally resolve these issues, Plaintiffs request that Vail Health agree to the following:

(1)     Specifically identify by bates number, or other method that clearly identifies the documents supporting Vail Health's contention(s) of relevant geographic market.

**B.** **Documents Ordered To Be Produced.** **[ALK]**

**VI.** **SPECIAL MASTER'S REPORT REGARDING MOTION TO COMPEL #2 [ECF No. 381].**

**A.** **Email Attachments.**

**PLAINTIFFS' POSITION**:

In Order #4 at page 3, the Special Master ordered with respect to email attachments to produce "in every circumstance where a responsive non-privileged email contained a non-privileged attachment, Vail Health shall produce that attachment."  On October 18, Plaintiffs sent an email noting that Vail Health had failed to appeal that portion of the Order and had not produced all the attachments that it was ordered to be produced. On October 24, Vail Health stated that it "is not withholding nonprivileged attachments to nonprivileged, responsive emails it produced."

On October 25, Plaintiffs responded, disputing Vail Health's representation. Plaintiffs noted that Vail Health's response was ambiguous "as to whether after receiving Order #4, Vail Health (or its agents) reviewed the emails to ensure that all such attachments were produced.  If that has been done, is it Vail Health's position that attachments referenced in emails that have not been produced no longer exist and were destroyed?  If so, please confirm.  Or, is it Vail Health's position that it did not have to review the emails after the Order was issued to ensure attachments were produced?  If that is the case, then please explain in detail how that complies with the Special Master's Order."  Plaintiffs also requested a conferral about this issue, and ultimately scheduled one for October 27.

The request for conferral also included the circumstances surrounding the production of VH_Fed03902, which was apparently produced in piecemeal fashion, with the email and the first two attachments produced in July 2021. In September 2021, Vail Health represented it produced two additional attachments that did not include the full email and all attachments. Plaintiffs asked why Vail Health had not produced the email and attachments at the same time, Vail Health provided no explanation. Plaintiffs also requested that Vail Health reproduce the full email and all attachments to avoid any authentication issues, which Vail Health has not done, nor has Vail Health responded to Plaintiffs' request.

A few hours before the October 27 conferral, Vail Health sent an email stating that it was not available. Vail Health requested Plaintiffs availability to confer the following Monday, October 31, and Plaintiffs immediately responded they were available at 2 pm. Shortly before the conferral on October 31, Vail Health emailed Plaintiffs stating Vail Health would not be participating in the conferral because it was not available at the time proposed by Plaintiffs. Plaintiffs asked for times Vail Health was available and followed up again later that day after receiving an email from Mr. Richards, stating that Plaintiffs were available then. Plaintiffs received no response. On November 1, Plaintiffs again requested a conferral. On November 2, Vail Health finally responded that it was "looking into the issues Plaintiffs raised," but it refused to hold a conferral until Vail Health provided "a chart on November 9" of the issues raised by Plaintiffs in emails from since October 18 and that had been ordered by the Special Master, for the most part, since September 19.

**Plaintiffs' Request To Resolve This Dispute:** To move beyond and finally resolve these issues, Plaintiffs request that Vail Health agree to the following:

(1) Produce all unproduced attachments to the emails that have been produced, which includes producing the email first and all attachments following immediately thereafter.

(2) Produce VH_Fed03902 in full, including all attachments to the email.

**B.  Interrogatory No. 18 And RFP No. 18.**

At pages 2-4 of Order #2, Vail Health was ordered to describe how charge master's are set, Vail Health was ordered to the locations it searched and the search criteria used in responding to Interrogatory No. 18, and to the extent that it intends to conduct further searches in an effort to respond to this request, the search terms it intends to use in the future.



Other than Mr. Brown and Ms. Broersma, Vail Health admits that did not search for documents related to this issue with any of the other individuals identified above. Additionally, RFP No. 18 requested "documents discussing, supporting, or identifying any factors, costs or expenses associated with any physical therapy services."  So if documents were searched using the identified custodians and documents were located, they were to be produced under RFP No. 18.

As to RFP No. 18 and the chargemaster production at Exhibit 3 to the October 17 letter to the Special Master, the date on the first chargemaster is unreadable.  There are

also no emails that were produced attaching the two chargemasters in Exhibit 3 so there is no way to know for authenticating purposes who created them or any other information surrounding their production.  The two documents in Exhibit 3 bear no resemblance to any other chargemaster that Vail Health has produced or is posted on its website, as required by law.

**Plaintiffs' Request To Resolve This Dispute**:  To move beyond and finally resolve these issues, Plaintiffs request that Vail Health agree to the following:

(1)   Search the following custodians for information related to the setting of prices for physical therapy from November 1, 2012 to the present:  Angela Parham, Cindy Lansdowne, Becky Puhl, Charles Crevling and Ted Sirotta, Ashley Yeo, Lisa Herota, John Higgins, and Katie Lawlor.

(2)   Agree to work with Plaintiffs to identify relevant search terms to identify responsive documents.

(3)   Produce any documents resulting from this additional search and supplement interrogatories if additional information is discovered.

**VII.    SPECIAL MASTER'S REPORT REGARDING MOTION TO COMPEL #3 [ECF NO. 382].**

**A.     RFP No. 15—Steering Committee And Other Combinations With Steadman/SPRI and VSO/VSOF.**

**PLAINTIFFS' POSITION**:

In Order #3, the Special Master Ordered Vail Health to search for and produce documents "the Board, Finance Committee, and Steering Committee related to physical therapy or Howard Head, as well as combinations with Steadman/SPRI and VSO/VSOF."  Vail Health did not appeal that portion of Order #3.

On October 18, Plaintiffs pointed out that in its letter to the Special Master, Vail Health states that it limited its search to the Board and Finance Committee related to physical therapy and Howard Head.   Vail Health did not mention any search for Steering

Committee documents, nor did it state that it searched for any combinations involving Steadman/SPRI and VSO/VSOF. Plaintiffs requested a conferral that week to address the issue. Having received no response, on October 31, Plaintiffs again requested a conferral.

On November 2, Vail Health claimed to have complied with the Special Master's Order. For the first time in a year-and-a-half, Vail Health's counsel represented that Vail Health's Board "does not have a Steering Committee and did not have such a committee during the relevant period." Within an hour of Vail Health's email, Plaintiffs sent a follow-up email, requesting that Vail Health explain the Steering Committee in more detail, as it was the first time that Plaintiffs heard this even though it was the subject of motions to compel #3-4, and the Special Master ordered Vail Health to review and produce responsive documents, (which notably, Vail Health did not appeal).

It appears that Vail Health appears to be saying that the Committee never existed, and yet, from the document that The Steadman Clinic produced, it clearly did exist--as we have the fifth report that was issued from that Committee. In case there was any confusion, Plaintiffs attached that report to its email response, which was Exhibit 35 to Plaintiffs' motion to compel #4. The party featured on the front page of this report is "Vail Valley Medical Center," including its logo. Because Vail Health's purported disclosure raised more issues then it resolved, Plaintiffs again requested a conferral on this issue. Vail Health has not responded to Plaintiffs' questions or responded to Plaintiffs' conferral request until on November 7, after the Court ordered the parties to confer.

**Plaintiffs' Request To Resolve This Dispute**: To move beyond and finally resolve these issues, Plaintiffs request that Vail Health agree to the following:

(1)     Identify who was on the Steering Committee and explain who formed it, when, its purposes, and whether any Steering Committee information was passed onto, reviewed, or acted upon by the Vail Health Board or any other committees of the Board.

(2)     Identify where Steering Committee documents are, or were, stored.

(3)     Confirm whether Vail Health obtained and reviewed any emails of the Vail Health representatives that participated in the Steering Committee.

(4)     Explain whether it is Vail Health's position that Vail Health has no Steering Committee documents

(5)     If Vail Health does not have any Steering Committee documents , please identify the person most knowledgeable about why those documents were not maintained and the destruction of those documents.

(6)     Agree that Plaintiffs may depose the person most knowledgeable about the maintenance/destruction of Steering Committee documents.

(7)     Explain if it is Vail Health's position that Vail Health did not participate in the Steering Committee.  If so, then please explain how Hammes was able to access Vail Health data and information.

(8)     Explain if Vail Health did not authorize Hammes to conduct this study and set up a Steering Committee, then how is there a fifth report.

(9)     Explain why Vail Health did not search for and produce information related to any other combinations, collaborations, or strategic partnerships with Steadman/SPRI, as well as VSO/VSOF.

**VIII.    SPECIAL MASTER'S REPORT REGARDING MOTION TO COMPEL #3-4 [ECF Nos. 382-83].**

**<u>PLAINTIFFS' POSITION</u>:**

**A.     RFP Nos. 7-8.**

At pages 2-3 of Order #4, Vail Health was required to produce joint venture documents that were produced in the state court action.  In responding to discovery, Vail Health identified specific documents produced in the state court action that it claimed were responsive, including JV0001-198.  Those documents, however, were heavily redacted.  In light of Vail Health's representations in the October 17 letter that it would

23

work cooperatively to resolve this issue, Plaintiffs sought the production of the relevant state court documents as ordered by the Special Master. And because they were heavily redacted based on Vail Health's representation to Judge Gannett that they contained irrelevant confidential business information, Plaintiffs requested the documents be produced without redactions. If Vail Health maintained those redactions, Plaintiffs requested that a redaction log be produced, including for Vail0001489-93.

On November 3, Vail Health claimed it was unclear how Plaintiffs were raising this issue, claiming that Plaintiffs had to raise the issue in the state court, admitting that it only produced two documents to the Special Master in the state court action for *in camera* review. In response, Plaintiffs explained that they had raised the issue in the November 16, 2019 agenda submitted to Special Master Ruckriegle in the state court action. The parties were later asked to submit statements regarding the issue; Plaintiffs filed a statement on December 30, 2019; Vail Health did not file a statement. Plaintiffs again addressed Plaintiffs' December 30 statement regarding the Steadman documents in the January 14, 2020 agenda submitted.

In about March 2020, Special Master Ruckriegle reviewed the Steadman documents in camera and ordered that they be produced in unredacted form. Unbeknownst to us (until November 2021), Vail Health did not provide the Special Master with all the Steadman documents that Vail Health stated had been withheld on the basis of confidential business information.

In the federal action, Plaintiffs raised this issue as part of their Motion to Compel #4 because, in part, Vail Health expressly referenced the Steadman state court documents in response to Plaintiffs' Interrogatory No. 11 and specifically VAILJV00001-

198—the joint venture related documents. As part of the motion to compel #4, Plaintiffs attached as exhibits the December 30 statement (Federal Exhibit 40), as well as the redacted Steadman-related documents (Federal Exhibit 39). When Plaintiffs raised this issue on November 8, 2021 in response to a discussion at the hearing on the motions to compel, we learned shortly thereafter from an email sent by Mr. Richards that only two Steadman-related documents were provided to the Special Master for in camera review in the state court action.

We thus noted to the Special Master and Vail Health that the issue was not resolved. In the October 17 letter to Special Master Ruckriegle, Mr. Daniels indicated his willingness to work with Plaintiffs to resolve issues with respect to these documents. The Special Master's Order required them to be reproduced in this action.

**Plaintiffs' Request To Resolve This Dispute:** To move beyond and finally resolve these issues, Plaintiffs request that Vail Health agree to the following:

(1) Produce the joint venture documents produced in the state court action that Vail Health has identified are responsive to the federal discovery requests without any redactions for confidential business information.

(2) To the extent Vail Health produces the state court joint venture documents in this action that includes redactions, Plaintiffs request a redaction log, and reserve the right to move to compel those documents in unredacted form to the extent the redactions are based on confidential business information.

(3) Vail Health's redaction log should also include Vail0001489-93.

**B. Answer To Interrogatory Nos. 11-13, 20(e)-(f), and 21(d)-(e) And Failure To Search For Relevant Documents.**

At page 3-4 of Order #3, the Special Master ordered Vail Health to identify the "Vail Health directors, officers, employees, or consultant that were involved in determining Vail Health's pricing or reimbursement rates for such physical therapy services" involving

"each joint venture, collaboration, or strategic partnership, whether completed or merely proposed…." At page 4-5 of Order #3, Vail Health was similarly ordered to identify those involved in discussing antitrust, anti-kickback, or prohibited physician referral issues" with respect to each physical therapy joint venture, collaboration, or strategic partnership, whether completed or not. At page 5 of Order #4, the Special Master ordered Vail Health to "identify each joint venture, collaboration, or strategic partnership, whether completed or merely proposed, that involved providing physical therapy services and identify the Vail Health directors, officers, employees, or consultants that were involved in the discussion of such venture or collaboration…." And at pages 5-7 of Order #4, Vail Health was ordered to identify each attorney and accountant (both inside and outside) that was involved in the planning, discussions, negotiations, or agreements for the joint venture, collaboration, or strategic partnership, including legal, regulatory, and compliance issues.



Additionally, for those individuals whose documents were identified and searched, Vail Health limited the search to only email accounts for Doris Kirchner, Nicholas Brown, and Will Cook. Although Ms. Kirchner testified she gave Davis Graham text messages in

the state court action, no text messages were produced.  In fact, Vail Health represented to the Special Master in the state court action it had no text messages for either Ms. Kirchner nor Mr. Shannon.  The documents produced in the federal action show that Ms. Kirchner and Mr. Shannon both had text messages with each other and with, at the very least, Dan Drawbaugh of The Steadman Clinic.

Vail Health's disclosure thus shows that it did not conduct a reasonable search for relevant documents.

**Plaintiffs' Request To Resolve This Dispute**:  To move beyond and finally resolve these issues, Plaintiffs request that Vail Health agree to the following:

(1) Search and produce documents, including emails and text messages, responsive to the joint venture, other collaborations, and strategic relationships for the following custodians:



(2) Search and produce text messages of Doris Kirchner and Nicholas Brown.

(3)

(4) Agree to search terms for the additional search, including those that may be identified by Plaintiffs.

(5) If any documents, emails, or texts have been destroyed by any of the custodians or their agents listed above, Plaintiffs request that Vail Health identify the person most knowledgeable about the destruction for each of the custodians.

(6) If any documents, emails, or texts have been destroyed, Plaintiffs seek a deposition of each of the individuals identified about the destructions of such documents, not to exceed four hours for each person identified.