Filed pursuant to Opinion and Order Granting in Part and Denying in Part Motions to Restrict Access and Denying Motions to Strike and for Sanctions (Dkt. 445)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation.

      Defendant.

---

**PLAINTIFFS' RESPONSE TO VAIL HEALTH'S PARTIAL APPEAL OF
SPECIAL MASTER'S JANUARY 18, 2022 REPORT TO THE COURT**

---

**INTRODUCTION**

Plaintiffs' response is confined to specific issues from which Vail Health appeals the Special Master's Report and Recommendations. It does not address inaccurate and irrelevant factual representations or discovery issues still pending before the Special Master. Vail Health's appeals the Special Master's Recommendation to produce certain data because "the data requested either (1) has already been provided, (2) was not requested by Plaintiffs during discovery, or (3) does not exist."[1] Those assertions are not correct, and it is those Plaintiffs address here, although in a slightly different order.

As to issue #2, the precise data that is at issue here—"prices charged"—has been requested by Plaintiffs dozens of times going back to October 7, 2019. As to issue #3, Plaintiffs showed, using Vail Health's own documents (Exhibit 25), that the prices charged exists within Vail Health data bases. Vail Health's counsel admitted she did not "disagree

---

[1]    ECF No. 278 at 1.

that it is possible to generate" the data on Exhibit 25.[2]  As to issue #1, Vail Health would not have fought so long if it had already produced the data.  Instead, it would have identified the data by bates number or reproduced it, which it did not do.

Finally, Vail Health has never provided Plaintiffs, let alone the Special Master, with the sworn testimony of any Vail Health officer or employee that the "amount charged" or "amounts paid" do not exist.  Nor has Vail Health disclosed the identity of anyone who could testify that such data did not or does not exist.  The sole source of information comes second hand from Vail Health's counsel, Daniel Richards, in emails, letters, and argument.  But Mr. Richards' statements are not evidence.[3]  At this point in the long history of these discovery disputes, this Court should ask why Vail Health has not submitted such sworn testimony.  Without any witness who has the personal knowledge to affirm under oath that the data does not exist, Mr. Richards' statements in a letter, email, or brief provides no foundation to overrule the Special Master.[4]

## PROCEDURAL BACKGROUND

The discovery history is too complicated to fully chronicle in the pages permitted, but Plaintiffs will attempt to summarize the essential facts.  On October 7, 2019, Plaintiffs served their First Set Of Requests For Production, wherein RFP # 3 requested, in relevant part: "All documents relating to the *prices charged and* revenues realized.…"[5]  A year later, Vail Health responded, objecting to RFP # 3 as, among other things, being irrelevant.[6]  On March 1, 2021, Plaintiffs served their Second Set Of Requests For

---

[2]    ECF No. 217, at 17:6-10.
[3]    *United States v. Velarde-Gomez*, 224 F.3d 1062, 1073 (9th Cir. 2000).
[4]    *Gilda Indus. Inc. v. United States,* 446 F.3d 1271, 1281 (Fed. Cir. 2006).
[5]    ECF No. 129-13 (emphasis added).
[6]    ECF No. 129-10.

Production, including RFP # 17 that seeks in relevant part, "data identifying amounts paid for any services billed...."[7]  On April 30, 2022, Vail Health responded and again interposed numerous objections.   Plaintiffs repeatedly requested responses to RFP # 3 and 17, which resulted in Plaintiffs filing motions to compel on August 5, 10, 12, September 7, and October 17, 2021.[8] Vail Health opposed each motion, and on October 21-22, 2021, two four-hour hearings were held.  At the October 21 hearing, the Special Master read the Colorado Fifth Circuit conferral guidelines and stated that "I do want to have a structured process and it must ultimately end in an actual conversation between counsel,"[9] which Vail Health ignored to a significant extent.[10]

On October 20, 2021 at 5:08 p.m.—the evening before the first hearing—Vail Health emailed view-only spreadsheets containing what its attorneys represented to be 17.9 million data points supposedly in response to requests Plaintiffs served two years previously.[11]   During the October 21 hearing, there was lengthy argument about the spreadsheets, including a significant discussion about whether Vail Health could produce certain information not produced.  Plaintiffs demonstrated that much of the information at issue had previously been produced by Vail Health in one report (albeit for a limited period of time), which was attached as Exhibit 25 to Plaintiffs' Motion to Compel #1 and 2.[12]  In response, Ms. Stevenson admitted that "we don't disagree that it is possible to generate" the data in Exhibit 25.[13]  Despite this, Vail Health has refused to produce that data.

---

7        ECF No. 129-15.
8        *See* ECF Nos. 127, 129, 132, 157, 195.
9        ECF No. 217, at 4:9-24; 5:1-6:3.
10       ECF No. 274 ¶ 2.
11       ECF No. 217, at 26:5-28:14.
12       ECF No. 128-4; ECF No. 130-7.
13       ECF No. 217 at 17:7-10.

## ARGUMENT

### I.  PLAINTIFFS REQUESTED "THE AMOUNT CHARGED" MANY TIMES.

Plaintiffs' Motion to Compel # 2 explained why, in this Sherman Act § 2 case, they are entitled to know the prices that Vail Health charged physical therapy patients and how those prices were set.[14]  "Monopoly power is the **power to control prices**"[15] and "charge a price higher than the competitive price…."[16]  Price is the *sine qua non* of market power.[17] Vail Health now contends the Special Master erred when it ordered Vail Health to produce the "amount charged," stating that "Plaintiffs' requests for production did not request information regarding 'amounts *charged*, only *amounts paid*'…."[18]  But that is incorrect.

Plaintiffs' RFP # 3 seeks "[a]ll documents relating to **prices charged and revenues realized;**" "documents relating to **prices** for which medical insurers…have **agreed to indemnify** Vail Health;" and "documents relating to **prices charged**…to patients who do not have medical insurance…."[19]  RFP #17 seeks all **data identifying all physical therapy patients treated by Vail Health**, including insurance information and amounts paid **for services billed**.[20] The Joint Discovery Dispute Chart provided to the Court states: "The **prices charged** by Vail Health to healthcare payers all go into the calculus for pricing which…was done by a monopolist with power to raise prices beyond what they ordinarily would have been in a freely competitive market."[21]  Plaintiffs' Motion

---

[14]  *See* ECF No. 129.
[15]  *United States v. Grinnell Corp.,* 384 U.S. 563, 571 (1966).
[16]  *United States v. Dentsply Int'l Inc.,* 399 F.3d 181, 189 (3d Cir.2005) (emphasizing a monopolist's power "to *maintain* market share").
[17]  IIB Areeda, ¶ 501, at 111.
[18]  ECF No. 278 at 7.
[19]  ECF No. 129-12 at 6 (emphasis added).
[20]  ECF No. 129-14 at 8 (emphasis added).
[21]  ECF No. 102-11 at 15.

to Compel #2 states: "Plaintiffs are entitled to…reimbursement claims and billing records" and "electronic payment submissions to payors…."[22]  And at the October 21 hearing, Plaintiffs argued: "We're seeking price information charged to patient[s]…."[23]  Plaintiffs could identify many other times, so it is bewildering why Vail Health now asserts that.

## II.  THE COURT SHOULD AFFIRM THE SPECIAL MASTER.

### A.  Vail Health Agreed To Produce Certain Data Fields But Did Not.

On September 2, 2021, in response to Plaintiffs' Motion to Compel #1, Vail Health stated—for the first time since the October 7, 2019 RFPs were served—that it was working to pull certain patient data, which was limited to private payer physical therapy for Vail Valley locations.[24]  Vail Health identified thirteen fields it would produce, three of which are now the subject of Vail Health's appeal: (1) "quantity of procedure," (2) "charge for procedure," and (3) "reimbursement for each encounter."[25]  Because Vail Health did not produce the three fields, the Special Master ordered Vail Health to do so.  In appealing that Order, Vail Health essentially asserts that it should not be required to produce data fields that it internally uses, submits to payers (*i.e.,* insurers) for reimbursement, or receives from payers in the form of remittance advice.  A small portion of the data Vail Health produced on December 3 is excerpted here,[26] with the columns at issue in yellow:

---

[22]   ECF No. 129 at 2.
[23]   ECF No. 217, at 49:18-20.
[24]   ECF No. 152 at 10.
[25]   *Id*. Vail Health did not define "encounter," although generally that means for each date of service (even for Vail Health).  *See, e.g.,* "Customer Service Center" ("each time you receive care…a new account will be opened….[that] generally ties to a date of service"), available at https://www.vailhealth.org/patients-and-visitors/billing.  An "encounter" for physical therapy is apparently given a new encounter number on a monthly basis. *See id.* at "Why do I have several encounter numbers?" But Vail Health's patient data shows the same encounter number over many months, which Vail Health has not explained. *See, e.g.,* Ex. 1 (example of encounter number not changing).
[26]   *See* ECF No. 278-1 (excerpted from Vail Health's Exhibit 1).



In reviewing the first three and sixth lines of data in the chart above, it is evident there are many issues with the data.  *First*, for the first three lines, the date of service is identified as ▮▮▮▮▮▮▮, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮  *Second*, the amount Vail Health charged for the three procedures is not included in the production.  *Third*, the amounts paid by the patient and insurers is ▮▮▮▮▮—the same amount for three lines of procedures.  Finally, as to the sixth line, the quantity is identified as "1," with an insurer payment of ▮▮▮▮.  By producing the data this way, Vail Health has not properly identified, at the claim level, the "units" of physical therapy billed, the amount charged, or the amount reimbursed.[27] Plaintiffs therefore cannot compare this aggregate or missing data with competitors' claim level data.  A Sherman Act § 2 claim is by its nature an analysis of the amount a monopolist charges compared with what would be charged in a competitive market.[28]

**B.      Vail Health Must Submit "Units" And "Charge Amounts" To Payers.**

At page 11, Vail Health says it provided two different types of information related to procedures billed—some designated by "units" but most by "minutes."  Vail Health claims it provided minutes "for procedures for which the billable unit is minutes on Vail Health's chargemaster," but out of the 1,235 items listed on the 2017 chargemaster for

---

[27]      *See* Ex. 2 at 46-48 (Plaintiffs' expert explaining issues with Vail Health's data).
[28]      *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1121-22 (10th Cir. 2014).

Howard Head, only 15 identify "15 minutes" as the amount of time associated with a particular billing code.[29]   Regardless, Vail Health does not bill payers—insurers, governmental entities like Medicare, or patients—using minutes.  To bill providers, Vail Health uses the industry-standard X12 837 file, which is used to electronically submit healthcare claims.  The 837 file contains information at the claim level, including the date of service, patient's condition, treatment by code, and number of *units* and amount charged for each code billed,[30] which is in accordance with Medicare.

The Medicare Claims Processing Manual instructs that for physical therapy procedures defined in minutes, a provider must bill for the number of 15 minute ***units of service***:   "**EXAMPLE:** A beneficiary received a total of 60 minutes of occupational therapy, e.g., HCPCS "timed" code 97530 which is defined in 15 minute units, on a given date of service. The provider would then report **4 units** of 97530"[31] on the 837, along with the amount charged for those 4 units.  Private payers also use the 837 electronic claim submission with the same data fields.[32]  Thus, Vail Health reports units, not minutes, and the total amount charged for each treatment code.  Vail Health thus has the information ordered by the Special Master as to the (1) "quantity of procedure" in units and (2) the "charge for procedure" for the billed units.  And *unit* is the comparative measure for determining whether Vail Health's charges are supracompetitive for purposes of § 2.

---

[29]     *See* Ex. 3.
[30]     Ex. 4 at Fields 44-46.
[31]     *See* CMS Manual, Pub 100-04, Medicare Claims Processing, Transmittal 2121 at 4 (Dec. 17, 2010), available at https://www.cms.gov/Regulations-and-Guidance/ Guidance/Transmittals/downloads/R2121CP.pdf.
[32]     Vail Health insurers, such as UnitedHealthcare and Anthem, require X12 837. *See* https://*www.uhcprovider.com/en/resource-library/edi/edi-837-claims.html*; https://www.anthem.com/docs/public/inline/EDI_CO_NV_00004.pdf.

### C.    Howard Head Management Uses Units And Charge Amounts.

Vail Health's production of the data is inconsistent with the way Howard Head management internally uses this information.  For example, Vail Health produced several reports—albeit for limited time periods—that identify the CPT Code procedures in billable units, not minutes, and the corresponding amount charged.  In Motions to Compel Nos. 1-2, Plaintiffs attached Exhibit 25,[33] which is a report run by Gretchen Ebbeson for Howard Head management in 2019 from the Cerner system that shows this:[34]



The report specifically identifies the quantity of procedures by "unit," regardless of whether the procedure was for 15 minutes or not, and includes the amount charged for each treatment performed.  Another management report[35] similarly identifies the total quantity by units and the corresponding amount charged for those units:

Of the 68 data fields available,[36] none identify the "quantity" in "minutes."  And it took less than a week to create the report, and only because the person was busy with other things.

---

[33]    *See* ECF No. 128-4; ECF No. 130-7.
[34]    *See* Ex. 5 (cover email for Exhibit 25).
[35]    Ex. 6.
[36]    *See* Ex. 7 (listing the data fields available and used to generate that report).

8

In seeking to produce its data in minutes for this litigation and without the corresponding amount charged for each CPT code, Vail Health renders the data unusable and worthless—that is, that there cannot be an easy comparison with payer data, which is reimbursed in terms of units and the amount charged by Vail Health at the claim level. To use the data "as is," Plaintiffs' expert would have to convert hundreds of thousands of lines of data to identify the amount that Vail Health could have charged for each procedure billed. Plaintiffs' expert would have to assume that the amount charged is the same as the chargemaster, converting minutes to units without knowing whether that amount was actually billed or not, and then compare the chargemaster numbers to multiple chargemaster lists for each year to calculate the amount charged each patient for each procedure. This time-consuming and costly process would invite errors that could be attacked by Vail Health. All of this is obviated by the Special Master's Order that Vail Health produce the data in the manner it maintains and tracks the "units" and amounts charged in readily available reports used by Howard Head's management.

To avoid producing the data that Vail Health clearly maintains, Vail Health argues that Plaintiffs did not request the amounts charged.[37] Plaintiffs made innumerable requests for production of the amounts charged and reimbursed for physical therapy services. Vail Health actually argued that it provided information about the amounts charged by producing the chargemasters,[38] which is a list of procedures and costs for the entire hospital. And in an attempt to avoid the motion to compel, Vail Health further stated that it would produce patient treatment information, including the "charge for procedure."[39]

---

[37]    ECF No. 278 at 12.
[38]    ECF No. 152 at 9.
[39]    ECF No. 152 at 10.

Vail Health made that concession *after* Plaintiffs filed a motion to compel and admitted that most of the information Plaintiffs sought was already in Exhibit 25, which is a report generated from Cerner.[40]  Rather than produce those types of reports for the relevant years here, Vail Health instead claims it took over 60 hours to produce the files at issue here.  Why would a party undertake such a time-consuming effort when most of the information requested could be generated with a click of a button?  Answer: Vail Health sought to prevent Plaintiffs from obtaining relevant and material information so that their antitrust expert could not conduct any analysis using Vail Health's data.[41]

Vail Health also asserts that it was willing to "meet and confer with Plaintiffs to determine whether it can produce data responsive to a narrowed version of Request for Production No. 17 that protects patient privacy by providing de-identified and/or aggregate information, does not impose an undue burden, and relates to Plaintiffs' claims in this litigation.'"[42]  Vail Health omits, however, that Plaintiffs' made repeated requests for a conferral[43] that Vail Health refused to participate in[44] even after the Special Master ordered it to do so.[45]  Vail Health should not be allowed to assert now that the amount charged should not be produced when a meet and confer could have resolved any issue.

Vail Health then claims that it has produced extensive documents regarding the amount it charged patients for physical therapy services, citing to two exhibits that purportedly summarize the depositions in the Eagle County action and the discovery

---

[40]   *See* Ex. 5 (email attachments identifying report came from Cerner).
[41]   *See* Ex. 2 at 46-48 (excerpt from Plaintiffs' expert report about Vail Health's data).
[42]   ECF No. 278 at 12 n.3.  *See also* ECF No. 152 at 9 (same).
[43]   *See* ECF No. 127 at2; 127-1 to 9, 11 (emails requesting conferral).
[44]   ECF No. 127 at 3; ECF No. 127-11.
[45]   ECF No. 274 at 2.

produced in state and federal actions.[46]  But if Vail Health had actually produced the
amount charged each patient for each procedure, or that information was the subject of
discovery in the state court action, Vail Health could easily identify that information by
bates number or by providing excerpts to the relevant depositions.  The reason that Vail
Health has not is because the amount charged each patient for each treatment was never
at issue in the state court action, and none of the depositions there are remotely relevant
here.  Thus, Vail Health's assertion that requiring Vail Health to provide data as to the
amount actually charged each patient for each procedure is unreasonably cumulative or
duplicative is nothing more than attorney argument unsupported by any evidence.[47]

Because it is undisputed that Vail Health maintains the "quantity of procedure" in
units and that the "charge for procedure" is tracked and easily generated in one report,
the Special Master's Order as to these two issues should be affirmed.

### D.      Payers Provide Reimbursement Information At The Claim Level.

The final issue on appeal is Vail Health's contention that it does not maintain claim-
level data about the amount paid on each claim.  The Special Master apparently did not
credit Vail Health's contention, likely because Vail Health provided no sworn testimony of
any Vail Health witness, including from Vail Health's billing department, which confirms
that Vail Health receives no information from payers at the individual claim level.  Vail
Health did not even make any attempt to identify any witness in Vail Health's billing
department that was involved in the production of the patient claims data.[48]  Instead, Vail

---

[46]     ECF No. 278 at 12-13 (citing ECF No. 228 at Exhibits 5-6).
[47]     *See, e.g., United States v. Ramos-Caballero*, No. 21-2098, 2021 U.S. App. LEXIS 33131,
at *9 n.1 (10th Cir. Nov. 8, 2021) (noting party provided no evidentiary support for its contention,
"and of course 'attorneys' arguments [are] not evidence").
[48]     Ex. 8 at 1 (identifying three witnesses, none from Vail Health's billing with personal
knowledge of physical therapy claims and reimbursements).

Health carefully states that Vail Health does not maintain "the amount collected for the units of physical therapy rendered to each patient,"[49] while at the same time representing there are "hundreds of thousands" of data fields in Cerner and Paragon alone.[50] Vail Health also omits mention of how payers reimburse Vail Health for physical therapy claims.

As noted previously, Vail Health submits claims to payers using industry standard files, such as the X12 837I,[51] which contains information at the claim level. Correspondingly, payers use X12 835, commonly known as the electronic remittance advice. In the 835 text file, payers inform the provider, among other things, as to what charges were paid, reduced, or denied and the reasons why. The 835 contains fields in which this information is broken down at the individual claim level—that is, the payer identifies the amounts billed, paid, and any adjustments for each patient and each procedure.[52] Vail Health must process the 835 text files, so that payments are properly posted to individual patient accounts, otherwise there would be no way for Vail Health to provide billing information to patients or other departments. Nor would it be able to correct billing errors or resubmit unpaid, or improperly denied claims because it would have no

---

[49]    ECF No. 278 at 13.

[50]    Ex. 9 at 1 (refusing to identify any fields, even those relevant to Plaintiffs' discovery requests, despite the Special Master's December 10 instructions).

[51]    *See* Colo. Rev. Stat. § 10-16-106.3 ("CMS-1450, otherwise known as form UB-04 [837]…is the uniform health care claim form[] for use by all other health care providers"); 3 Colo. Code Regs. § 702-4-2-24-5 ("Clean claims shall be submitted in the appropriate format (electronic or paper) as required, must utilize the appropriate form (…the CMS 1450 (UB-04) Form) or electronic equivalent [837]").

[52]    *See, e.g.,* Ex. 10 at 5-6 (identifying the 835 fields that include "Claim Level Data"), available at https://www.cms.gov/Medicare/Billing/ElectronicBillingEDITrans/Downloads/835-Flatfile.pdf.

way to know whether a claim was paid or not.  At times relevant to this action, the 835s have been stored in Vail Health's HBF system, which Vail Health does not mention.

Importantly, therefore, Vail Health cannot—and does not—represent that the claim level data does not exist at Vail Health.  Instead, it asserts that it "cannot be compelled to create documents that it does not maintain *in the ordinary course of business*."[53] It cites *Moore's* for the proposition that "[a] party cannot be compelled to create, or cause to be prepared, new documents solely for their production.  Rule 34 only requires a party to produce documents that are already in existence."[54]  Vail Health has not, however, mentioned that the 835s are stored in the HBF system, or explained how payment information is extrapolated from those files and posted to individual patient accounts.  Moreover, if a patient has a billing dispute, or seeks additional information about individual charges and payments, Vail Health's position appears to be that it would not be able to provide a patient with specific information about each claim, or invoice patients for unpaid portions of claims for which a patient may be liable.  That position is contrary to that on what Vail Health states on its website: "At any time, you may request additional information about itemized charges by calling our Customer Service."[55]

Vail Health's argument is similar to the defendant's in *Crocs, Inc. v. Effervescent*,[56] in which the defendant claimed to not have certain reports in the ordinary course of business. This Court noted: "[w]ith respect to database storage of information, the law

---

[53]     ECF No. 278 at 13 (emphasis added).
[54]     *Id.*
[55]     *See* "Customer Service Center," available at https://www.vailhealth.org/patients-and-visitors/billing.
[56]     Civil Action No. 06-cv-00605-PAB-KMT, 2017 U.S. Dist. LEXIS 184498 (D. Colo. Feb. 8, 2017).

does not support [defendant's] verbal sleight of hand. In fact, the court finds that this argument comes alarmingly close to deceit. Courts considering the issues of dynamic database data have held that if information is stored in a database, requiring reports be run from the database is not the creation of new evidence or discovery."[57]

Finally, it bears noting that in the Eagle County action, Vail Health claimed certain insurance claims predating November 1, 2012 (outside the relevant time period here) did not exist. Plaintiffs repeatedly requested Vail Health produce physical therapy claim submissions identifying the rendering provider, which is identified in the 1500 claim form. Vail Health's lawyer first represented that the hardcopy forms were stored in an inaccessible warehouse. To comply with a court order, Vail Health then had an employee "search" for hardcopy documents in various locations, only for Plaintiffs and the Special Master to later find out that the "search" was futile—Vail Health never used 1500 claim submissions, and the "forms" that it did use were never in hardcopy form—they were always submitted and maintained electronically in the 837I format. Special Master Ruckriegle sanctioned Vail Health and ordered, over Vail Health's objection, that a Vail Health billing person be deposed.[58] Special Master specifically noted that Vail Health, "at best, played a game of semantics, and at worst, a game of cat and mouse."[59] It took four orders,[60] two depositions, and sanctions before the truth about the pre-November 1, 2012 claim submissions was revealed in February 2021, over two years after the Special

---

[57]　*Id.* at \*10-12 (citing *Apple Inc. v. Samsung Elecs. Co.,* Case No.: 12-CV-0630-LHK (PSG), 2013 WL 4426512, at \*3 (N.D. Cal. Aug. 14, 2013); *In re eBay Seller Antitrust Litig.* Case No. C 07-1882 JF(RS), 2009 WL 3613511, at \*1 (N.D. Cal. Oct. 28, 2009); *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 683 (N.D. Cal. 2006)).

[58]　*See* Ex. 11 at 5.

[59]　*Id.*

[60]　*See* Exs. 11-12 (two of the Special Masters orders).

Master's first order. Special Master Ruckriegle referenced that problem several times during the hearings[61] but apparently did not know that Mr. Richards was also counsel of record for Vail Health in the Eagle County action when all that occurred.[62]

Because Vail Health does not dispute—and has provided no evidentiary support otherwise—that payers provide Vail Health payment information at the claim level, the Special Master's Order to produce this information should be affirmed.

## III. VAIL HEALTH'S APPEAL AS TO THE PENDING MOTION FOR A PROTECTIVE ORDER AND FURTHER DISCOVERY SHOULD BE DENIED.

Vail Health's appeal relating to extensions of discovery to handle the pending discovery disputes should be denied. Plaintiffs may file a motion relating to one or more depositions of Vail Health's billing and financial department personnel in the near future. As pointed out above, statements by Daniel Richards do not support the contention that patient data does not exist. The Special Master was appointed to decide that issue and any remedies under Rule 37 and other procedural rules. The disputes here have been pending for well over a year and are yet to be resolved, so the Court should allow the Special Master to complete his assignment, and if necessary, allow Plaintiffs time to resolve any discovery issues that may result from any of the Special Master's orders.

As to Vail Health's appeal relating to its motion for a protective order, it should be denied. As stated in Plaintiffs' opposition to that motion, it would annul the authority of the Special Master previously granted by the Court, and result in a waste of the extensive work performed by the parties and the Special Master over the past 6½ months.

---

[61]  ECF No. 217 at 72:20-73:9; 81:13-82:1; 85:23-86:3; ECF No. 218 at 76:14-77:6.
[62]  *See* ECF No. 281:1-2. On December 5, 2019, Mr. Richards entered his appearance in the state action and is counsel of record here. Ms. Roeder and Ms. Savage were also counsel of record in the state action at the time and here too.

15

Dated:  March 8, 2022

*s/Alan L. Kildow*
Alan L. Kildow, MN# 0143133
790 Potato Patch Drive
Vail, CO 81657
Telephone: (970) 390-6675
E-mail:  alkildow@aol.com

Jesse Wiens, Colo. #33903
Jesse Wiens Law
0069 Edwards Access Road, Suite 8
Edwards, Colorado 81632
Telephone: (970) 855-0078
E-mail:  jesse@jessewienslaw.com

Sonya R. Braunschweig, MN# 0290292
5501 Irving Avenue South
Minneapolis, MN 55419
Telephone: (612) 819-2304
E-mail:  sonya.braunschweig@gmail.com

Attorneys for Plaintiffs Sports Rehab
Consulting LLC and Lindsay Winninger

**CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2022, I served a true and correct copy of Plaintiffs' Response to Vail Health's Partial Appeal of Special Master's January 18, 2022 Report To The Court, including exhibits, through the ECF system on the following:

Shannon Stevenson|
Janet A. Savage
Jackie Roeder
Daniel Richards
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO  80202

Counsel for Defendant Vail Health

_s/Alan L. Kidow_
Alan L. Kildow