**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Magistrate Judge Gordon P. Gallagher**

Civil Action No. 19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING, LLC, and
LINDSAY WINNINGER,

      Plaintiffs,

v.

VAIL CLINIC, INC., d/b/a Vail Health,

      Defendant.

---

**OPINION AND ORDER OVERRULING OBJECTIONS TO SPECIAL MASTER'S
REPORTS AND ADOPTING REPORTS**

---

      **THIS MATTER** is before this Court to address the Reports issued by the Special Master

(D. 362, 381, 382, 383, 398)[1] addressing five pending motions to compel by the Plaintiffs.[2]  The

parties have filed Objections (D. 367, 386, 387, 408) to this Court to certain aspects of those

reports.  The Court has considered the responses and replies to those Objections and the entire

record of this case.

**FACTS**

---

[1] Citations in the form of (D. __) refer to the cited document number in the Court's electronic
docket records.

[2] This Court has converted those motions into informal discovery disputes according to the
undersigned's Discovery Dispute Procedures, *see*
http://www.cod.uscourts.gov/Portals/0/Documents/Judges/MAG/Discovery_Dispute_Procedures
.pdf; D. 307, 363.  That conversion is for administrative purposes only and does not change the
procedural and substantive analysis of the issues presented.  This Order, issued pursuant to 28
U.S.C. §636(b)(1)(A) and Fed. R. Civ. P. 72(a), resolves the issues presented regardless of
whether they are conceived of as a formal motion or informal discovery dispute.

1

Only a cursory recitation of the facts is necessary for sufficient context.  The Vail Valley is a geographic area along Interstate 70 in Colorado, bounded roughly by Vail Pass to the east and Glenwood Canyon to the west, encompassing the towns of Vail, Avon, and Eagle, along with several smaller municipalities.  Defendant Vail Clinic, Inc. (hereafter "Vail Health") is the predominant provider of medical services in the Vail Valley, operating numerous hospitals and clinics and associating with numerous individual medical providers in the valley.  Vail Health provides physical therapy services ("PT" or "PT services") particularly through its Howard Head Sports Medicine clinic.

The Plaintiffs in this action are Sports Rehab Consulting, an independent PT practice, and Ms. Winninger, its principal.  The Plaintiffs allege that Vail Health has obtained and retains monopoly power to control the pricing and availability of PT services in the Vail Valley and have undertaken various anti-competitive acts in order to discourage competition from other PT providers, including the Plaintiffs.  The Plaintiffs' Complaint (D. 1) alleges a single antitrust claim under the Sherman Act, 15 U.S.C. §2 and a corresponding claim under Colorado's state antitrust law, C.R.S. § 6-4-105.

The primary issue before this Court concerns five motions to compel discovery that the Plaintiffs served on Vail Health.  Those motions were grouped thematically and for convenience purposes, referred to by the parties and the court by number.  Thus, "Motion to Compel #1" sought discovery relating to the appropriate geographic scope of the relevant market for antitrust purposes, "Motion to Compel #2" sought information relating to Vail Health's monopoly power, particularly its process for setting prices for PT services, and so on.  This Court referred the motions to a Special Master, the Hon. William T. Ruckriegle, who was extensively familiar with related litigation between the parties.  Between July and October 2022, the Special Master issued

a series of Reports, discussing and ruling upon each of the Plaintiffs' motions to compel.  The

parties have filed certain Objections to the Special Masters' Reports, and both the Reports and

Objections are now before this Court for consideration.

## ANALYSIS

### A.  Scope of Review of Special Masters' Reports

Fed. R. Civ. P. 53 governs the appointment and determinations of special masters.

Pursuant to Rule 53(f)(1), the Court has granted the parties an opportunity to be heard in the

form of written Objections to the Special Master's Reports.  Vail Health attached certain exhibits

to its Objections, D. 414-1 to D. 414-7, although the tendered exhibits are primarily copies of

materials already in the record and do not comprise new evidence tendered under Rule 53(f)(1).

Pursuant to Rule 53(f)(3) and (4), this Court considers the objected-to findings of fact or

conclusions of law by the Special Master *de novo*.

### B.  Motion To Compel #1

The Court will limit its discussion of the Special Master's Reports to those areas in which

a party filed a timely Objection.  Vail Health filed Objections (D. 367) to the Special Master's

Report on Motion To Compel #1, raising two general objections that the Special Master erred in

directing that Vail Health produce: (i) "detailed patient treatment data for Howard Head

locations outside of the Vail Valley market" and (ii) documents relating to contemplated

consolidation between Vail Health and PT providers "outside of the alleged Vail Valley market."

A small amount of context assists in assessing the Special Master's Report (D. 362) on

these issues. The Special Master made the following findings:

> 1. Plaintiffs SRC and Winninger have alleged that the relevant
> geographical market in this antitrust case is the Vail Valley and
> defined that as running from East Vail to Gypsum, Colorado.

3

Plaintiffs' Expert, Dr. Leslie Schafer, stated in her Report "… it is certainly no larger than the Vail Valley."

2. Defendant [Vail Health] fairly argues that it is not required to identify what it believes to be the relevant geographic market and has no burden to prove any alleged geographic market.

3. Defendant has correctly noted that it is generally established that discovery outside of a plaintiff's alleged geographic market is irrelevant.

4. Defendant's expert Monica Noether, Ph.D., observed that her analysis of "the residence of Howard Head's Vail Clinic patients confirms . . . travel patterns . . . outside Colorado accounting for 37% of patients visits and patients from outside Eagle County accounting for 54% of patient visits; and just focusing on patients living in Colorado, the service area from which Howard Head (HH) draws patients who live in Colorado extends east through Denver and west past Rifle (110 miles from Vail)." Dr. Noether's report appears to reflect data and information from Summit and Garfield counties, which are outside the Vail Valley (Eagle County). Therefore, Defendant shall produce any data, documents, or information provided to or reviewed by Dr. Noether.

5. As a result of her opinions, Dr. Noether intimates that data and documents for Summit and Garfield counties as well as Basalt are relevant here for discovery purposes of her analysis. The Special Master so finds it relevant, in part for purposes of determining the relevant geographic area and in part to disclose the bases for her opinions challenging Dr. Schafer's Report.

The Special Master directed that Vail Health produce all materials that it provided to Dr. Noether to consider, regardless of geographic origin, and the Court understands that Vail Health does not object to that directive and has produced that material.  Vail Health's Objections relate to two additional directives by the Special Master:

REQUEST FOR PRODUCTION NO. 17:  *All data identifying all physical therapy patients treated by RPC-Vail or Vail Health from November 1, 2004 to the present, including demographic information for each patient [etc.]*

. . . In its Response to the Motion to Compel # 1, [Vail Health] committed to producing data regarding patient treatment and

locations. Those included [various data fields].  If that has not been done, it is so ordered to be done within 14 days. **In light of Dr. Noether's comments, opinions and report, such production shall include in other locations outside the Howard Head Vail Valley location including Basalt, Summit, and Garfield counties**.

REQUEST FOR PRODUCTION NO. 25:  *All documents referencing or relating in any way to competitors of Vail Health, Howard Head, or RPC-Vail related in any way to physical therapy services. . . This request includes, but is not limited to, the identification of any competitors and any plans or strategies related to those competitors.*

. . . Vail Health contends that it has agreed to produce and has produced a significant amount of information relating to Howard Head competitors, which the Special Master has confirmed in its responses. The Special Master sustains VH's objection to producing "every single competitor of Howard Head." **In light of Dr. Noether's comments, opinions, and report, such production shall include in other locations outside the Howard Head Vail Valley location including Basalt, Summit, and Garfield counties.**

(D. 362 at 14-15) (emphasis added).  Vail Health's Objections here are limited to the bolded findings and rulings by the Special Master.

In its Objections, Vail Health concedes that the Special Master correctly described Dr. Noether's report as opining that a substantial portion of Vail Health's PT clients live outside of the Vail Valley and travel into it to receive care.  (Although the Special Master does not state as much, the Court assumes that Dr. Noether similarly opines that PT patients residing within the Vail Valley travel outside of that area – to locations in Summit and Garfield Counties, among others – for treatment as well.)  But Vail Health denies that, in reaching that conclusion, Dr. Noether relied upon any data, documents, or other information that Vail Health has not already disclosed to the Plaintiffs.  Vail Health's Objections explain that Dr. Noether analyzed patient zip code data in existing discovery in order to discern where patients travelled from or to when

seeking care from Vail Health.  Vail Health also argues that Dr. Noether is simply a rebuttal expert, proffered to challenge Dr. Schafer's opinions about the relevant geographic market, not to proffer an alternative market definition for Vail Health, and thus, Vail Health should not be deemed to have "opened the door" to discovery about a broader geographic market.

Fed. R. Civ. P. 26(b)(1) provides that the two primary considerations in assessing the appropriateness of a discovery request are the information's relevance and proportionality to the needs of the case.  A court's consideration of those two pillars is then informed by several additional factors, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*  Vail Health's argument is essentially that its own conception of the appropriate geographic market is categorically irrelevant, and thus, no further inquiry into questions of proportionality or any of the other Rule 26(b) factors is necessary.

The Special Master reasoned that "it is generally established that discovery outside of [the] alleged geographic market is irrelevant," citing, *inter alia*, *Radio Music License Committee, Inc. v. Global Music Rights, LLC*, 2020 WL 7636281 (C.D.Ca. Jan. 2, 2020) and *Vident v. Dentsply Intl., Inc.,* 2008 WL 4374124 (C.D.Ca. Aug. 29, 2008).  Notably, nothing in these or other cases cited by the Special Master or Vail Health purports to assert that this is some rule of law unique to discovery in antitrust cases that supplants the ordinary Rule 26(b)(1) analysis. Rather, examination of these cases reveals that the purported "rule" prohibiting discovery outside the alleged geographic market was fact-driven, a consequence of the issue of geographic market having already been conclusively defined, either by agreement of the parties, *Radio Music*, *id.*

(denying request for discovery concerning "entities other than broadcast radio stations" because "[h]ere, both parties' complaints identify terrestrial radio licenses as the applicable market"); or by virtue of prior rulings in the case, *Vident, id.* (the court had previously "determined that the scope of the relevant market is the United States and does not include Canada," and thus, the Magistrate Judge did not err in denying a request for discovery about defendant's sales in Canada).[3] Thus, this Court agrees with the Special Master, in the sense that once the issue of the appropriate geographic market has been resolved, discovery of matters outside of that market will generally be irrelevant.

Here, however, the question of the appropriate geographic market remains hotly contested and thus, there is no particular rule that prevents each side from engaging in discovery to test the contours of the other side's position. *See e.g. Kellam Energy, Inc. v. Duncan*, 616 F.Supp. 215, 219 (D.Del. 1985) ("regardless of how Nehi's geographic market is eventually defined in this action, the boundaries of that market do not set the geographic limits of discovery—any more than the statute of limitations sets the temporal limit of discovery"). Vail

_____

[3]      The other case cited by Vail Health is inapposite. In *Heartland Surgical Specialty Hospital, LLC v. Midwest Division, Inc.*, 2007 WL 2668742 (D.Kan. Sep. 6, 2007), an antitrust case involving hospitals in the Kansas City area, the court analyzed disputed discovery requests under Rule 26(b), confirming that it, not some idiosyncratic test applicable only to antitrust law, controlled the analysis. The plaintiff sought certain patient data from the defendants, but the defendants objected on the grounds that the plaintiffs' request sought a pool of data that covered hospital admissions statewide, not just for the Kansas City market. As a result, the court held that the request was "overbroad" and "not relevant on its face." The decision in *Heartland* does not make clear whether the defendants disputed the plaintiffs' contention that the Kansas City area was the appropriate geographical market, although that is a reasonable inference given the court's discussion and would align the case with cases like *Radio Music* and *Vident* as well. To be sure, nothing in *Heartland* suggests that, as here, the defendants were arguing that something broader than the Kansas City area was the appropriate geographical market, but were nevertheless refusing to provide data that would support that assertion.

Health relies on *Bal Seal Engineering, Inc. v. Nelson Products, Inc.,* 2017 WL 10311212 (C.D.Ca. Oct. 19, 2017), in which the court stated that "Bal Seal is correct that the definition of the 'relevant market' defines the scope of relevant discovery." By all appearances, this appears to be a forward-looking statement, suggesting, much like *Radio Music* and *Vident*, that once the market was conclusively established, discovery outside that market would be irrelevant. But at the time, there was a dispute in *Bal Seal* between the parties as what the correct geographic market was, as Bal Seal had argued that Nelson's market definition was "incomprehensible" and overly broad. Bal Seal "declined to respond to discovery" at all on that basis. The court held that this position was "[in]consistent with the parties' discovery obligations," and that Bal Seal should respond to queries relating to "at least" the narrower of the parties' competing market definitions while disputes about a broader market were resolved separately.

An argument could be made that *Bal Seal* stands for the proposition that so long as the scope of the geographic market is disputed, a party need only respond to discovery requests based on the narrower of the competing market definitions. But that would be a very broad reading of *Bal Seal*'s very brief discussion. Regardless, *Bal Seal* does not suggest that there were <u>competing</u> market definitions in that case. Rather, the case seems to suggest that Bal Seal had not proffered its own market definition at all, and was content to simply challenge the facial sufficiency of the defendant's claimed market. Here, although Vail Health may contend that Dr. Noether has not purported to offer a <u>conclusive</u> definition of Vail Health's purported geographic market, Dr. Noether's contention that the appropriate market extends at least to Garfield and Summit Counties offers enough of a competing market definition to be testable. Thus, the Plaintiffs are entitled to discovery that is reasonably calculated to allow them to test the contours of the market that Dr. Noether has identified.

Under the ordinary Rule 26(b) rubric, the Court agrees with the Special Master that by proffering the opinions of Dr. Noether that the appropriate geographic market is somewhat broader than the Vail Valley, Vail Health has placed the facts and reasoning supporting Dr. Noether's opinions at issue.  The question of whether the appropriate geographic market extends beyond the Vail Valley is a highly relevant issue in the litigation – perhaps even a dispositive one – and it is appropriate to allow both sides considerable latitude in discovery on that question. Vail Health does not contend that the Special Master misunderstood Dr. Noether's report or that the scope of the Special Master's ruling extends beyond even the geographic region Dr. Noether examined.  Nor does Vail Health meaningfully contend that the discovery directed by the Special Master is overly burdensome or otherwise disproportionate to the importance of the question of the appropriate geographic market.  Accordingly, this Court agrees with the Special Master that Vail Health must produce the material directed by the Special Master.

Vail Health argues that Dr. Noether did not possess or consider the material ordered by the Special Master and that any discovery relating to her opinions should be limited to only those materials she possessed.  The Court rejects that argument.  To hold that discovery must be limited to only that specific material that an expert considered would encourage experts to cherry-pick sources and data to produce a desired result, certain that the other side would be unable to marshal the evidence necessary to refute it.   It may be that by examining all pertinent data, even beyond that which Dr. Noether herself considered, the Plaintiffs may be able to demonstrate that Dr. Noether's conclusions are erroneous.  It is not unusual for parties to seek information in discovery that is beyond what a particular witness purports to have considered, nor is it uncommon for cross-examination to focus on whether a witness' decisionmaking would have been different had they been aware of additional facts that they did not previously know.

Here, the Court cannot conclude that the materials ordered produced by the Special Master are unrelated to Dr. Noether's opinions.  To the contrary, empirical examination of patient data from Vail Health locations outside the Vail Valley would provide a powerful test of Dr. Noether's opinion that Vail Valley residents regularly travel to locations outside of the Valley to obtain PT services.

The fact that the Plaintiffs bear the burden of proving the appropriate geographic market, *see e.g. Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1071 (10th Cir. 2013), or the fact that Dr. Noether is proffered as a rebuttal expert does not change the analysis.  The discovery paradigm of Rule 26 is not driven strictly by which party has the burden of proof.  Were it so, defendants would propound nearly all discovery requests and answer few.  The plaintiff in a breach of contract case bears the burden of proving the existence of the contract and its terms, but the defendant may not leverage that fact to avoid answering discovery that inquires about the reasons why the defendant disputes the plaintiff's ability to carry its burden of proving that a contract was formed.  Vail Health has disputed that the Plaintiffs can carry their burden of establishing the Vail Valley as the correct geographic market, and the Plaintiffs are entitled to explore the reasons why Vail Health believes that a different market is the more correct one, even if Vail Health will not ultimately bear the burden of proof on that issue.

Accordingly, the Court overrules Vail Health's Objections and adopts the Special Master's Report on Motion to Compel #1 in its entirety, including adopting the Special Master's instructions that Vail Health produce the items identified above.

**C.  Motions to Compel #2-4**

On September 15, 2022, the Special Master issued Reports regarding Motions To Compel #2, 3, and 4 (D. 381, 382, 383).  Vail Health filed timely Objections (D. 386) to limited aspects

of the Report with regard to Motions #3 and 4, specifically "to the extent [the Special Master] require[s] disclosure of documents or information regarding joint ventures, collaborations, or strategic partnerships concerning the provision of physical therapy services **outside the alleged Vail Valley market**."  (Emphasis added).  Vail Health supported these Objections by referring back to the same briefing and argument that it proffered with regard to the Special Master's Report regarding Motion to Compel #1, "which explains why documents and information regarding events outside the alleged Vail Valley market are irrelevant and not discoverable."

For the reasons previously stated, the Court finds that Vail Health's proffer of Dr. Noether's opinions about the appropriate geographic market has put at issue questions about Vail Health's operations in areas outside the Vail Valley.  Accordingly, the Court overrules Vail Health's Objections to the Special Master's Reports and adopts those reports in their entirety, including adopting the Special Master's instructions that Vail Health produce the identified items.

### D.  Motion to Compel #5

On October 21, 2022, the Special Master issued his Report regarding Motion to Compel #5 (D. 398).  Both the Plaintiffs (D. 408) and Vail Health (D. 414) filed Objections to aspects of the Report.

Motion to Compel #5 focused on Vail Health's invocation of the attorney-client privilege as to a wide range of documents requested by the Plaintiffs and the Plaintiffs' challenge to the sufficiency of Vail Health's showing of privilege as to documents it withheld.  In broad terms, the Special Master found that: (i) that the Plaintiffs had the burden of identifying the particular documents they sought to compel production of and the Special Master identified the specific locations in the Plaintiffs' briefing that enumerated those documents, to the exclusion of any

non-enumerated entries (which the Special Master declined to consider or compel); (ii) Vail Health had the burden of demonstrating that the requested documents were covered by the attorney-client privilege; and (iii) that Vail Health's showings with regard to most of the challenged categories were insufficiently conclusory and categorical to demonstrate each individual entry's privileged status.

### 1. The Plaintiffs' Objections

The Special Master found that as many of 180 of the privileged documents were e-mails (presumably involving attorney-client communications) that the Plaintiffs argued lost any privileged status because they "were sent or received by [Vail Health's] board members through those members' 'business email accounts' at other entities."[4]  (D. 398 at 17).  The Plaintiffs argued that "communications that are sent through third parties' email servers fail to preserve the confidentiality that is essential in order for these communications to be attorney-client privileged."  *Id.*  The Special Master found that "[o]ne of the most widely-cited cases on this point is *In re Asia Global Crossing, Ltd.*, 322 B.R. 247, 256 (S.D.N.Y. Bankr. 2005)," which "posited four factors that courts should examine in evaluating whether the sender of an email has an objectively reasonable expectation of privacy in their communications over the employer's email system: (i) whether the corporation maintains policies banning the use of corporate email for personal purposes; (ii) whether the company monitors the employees' use of email; (iii) whether third parties have a right of access to the emails; and (iv) whether the corporation notified the employee of the company's monitoring policies."  *Id.* at 18.  The Special Master found that the Plaintiffs relied upon *Asia Global* in their reply brief, but that in their initial brief,

---

[4] For example, Vail Health's outside directors received those communications via email domains belonging to KSL Capital, The Kelton Group, and Vail Resorts.

they "relied solely on a different case [ ] that is both factually and legally inapposite to the situation presented here." *Id.* The Special Master found that "the Plaintiffs' failure to specifically identify *Asia Global* as the controlling law in their initial motion operates to waive any argument that Vail Health did not satisfy the *Asia Global* inquiry," as "[i]t is axiomatic that a party who fails to raise an issue in their initial moving papers waives that issue and cannot assert that issue for the first time in a reply brief." *Id.* Thus, even though the Special Master found that Vail Health had not carried its burden of making the factual showing under *Asia Global* to demonstrate that privileged emails sent to outside directors' non-Vail Health email addresses retained their privileged status, he deemed the Plaintiffs to have waived the argument and denied the motion as to those emails.

The Plaintiffs argue that this portion of the Special Master's Report was error and that it "shifted the burden to prove the absence of waiver to the Plaintiffs," rather than requiring Vail Health to bear the burden of proof. The Plaintiffs assert this was erroneous in two respects. First, they contend that their motion adequately informed Vail Health of the basis for its argument that the board member emails lost any privileged status and put Vail Health "on notice of what was needed to prevail." Second, the Plaintiffs argue that the Special Master erred in holding that they were obligated to "scour federal case law for the best and most persuasive cases" and that their failure to cite a case that is <u>not</u> "controlling" cannot operate to relieve Vail Health of the consequences of failing to demonstrate that its communications retained their privilege.

This Court agrees with the Plaintiffs that *Asia Global* is not "controlling" law, but rather, simply persuasive. As the Plaintiffs correctly note, the 10th Circuit has yet to address the issue of whether a corporation waives attorney-client privilege by sending otherwise-privileged

documents to its outside directors' third-party email accounts.  But the fact that there is no controlling authority on the issue in this circuit only highlights the Plaintiffs' obligation to fully develop and support their argument in their initial motion.  Where no controlling law exists, the court may be in a position of choosing an approach to the issue from among several options, and it is incumbent upon the movant to identify the approach they are urging the court to adopt. *See e.g. U.S. v. Gray*, 780 F.3d 458, 464 (1st Cir. 2015) ("We require parties to spell out their issues clearly, highlighting the relevant facts <u>and analyzing on-point authority</u>," including persuasive authority the party relies upon, to avoid waiver; parties "must give us the 'raw materials' ... so that we can do our work") (emphasis added).  It is not sufficient to simply identify only the broad issue in the initial motion, or to rely on one strand of persuasive authority in the initial motion and urge a different, more persuasive strand of authority in reply.

Here, the Plaintiffs' initial motion offered only the most skeletal argument on this issue. After reciting generic principles regarding the element of confidentiality and the burden of proof, the Plaintiffs' substantive argument on this issue consists of only half of a paragraph:

> As to the 180 emails sent by or received from Vail Health Board members, Vail Health has the burden to prove there has not been any waiver of the attorney-client privilege. From limited emails produced, Vail Health did not communicate with Board members through Vail Health's email system, personal emails, or through a Board portal. Instead, Vail Health communicated with certain Board members using their business email accounts. As this Court explained in *L-3 Commc'ns Corp. v. Jaxon Engineering & Maintenance, Inc*., [2014 WL 3732943 (D. Colo. Jul. 29, 2014)], a party can waive privilege by using business emails to transmit confidential and privileged communications.

D. 195 at 13.  This Court agrees with the Special Master that the *L-3* case the Plaintiffs relied upon is indeed "factually and legally inapposite."  That case stands for the unremarkable proposition that "when a client voluntarily discloses privileged communications to a third-party,

the privilege is waived," and involved a factual situation in which an employee of an organization purposefully sent the organization's attorney-client privileged communications to a non-employee. *Id.* at *4. The case has nothing whatsoever to do with an organization communicating its privileged information to its own officials, albeit through the official's email address at a different organization. To the extent that the Plaintiffs were urging the Special Master to adopt the searching, heavily-fact intensive *Asia Global* approach to this situation, their motion gave Vail Health no notice of their intention to invoke that approach or an opportunity to address the complex factual showing necessary to satisfy it. This Court agrees with the Special Master that, in such circumstances, the Plaintiffs' initial briefing did not give the Special Master or Vail Health "the raw materials" to do the work of addressing the *Asia Global* framework.

This is not a circumstance where, as the Plaintiffs argue, the Special Master required them to "scour federal case law for the best and most persuasive cases." If anything, the Special Master can be criticized for giving the Plaintiffs' arguments <u>too much</u> credit. Based on the Plaintiffs' initial motion, the Special Master could have, and perhaps should have, simply rejected the Plaintiffs' citation to *L-3* as inapposite and held that the Plaintiffs had not come forward with any authority that established that the confidentiality essential to a claim of privilege could be lost where a proper recipient receives the privileged communication at an "improper" address. In such circumstances, the Special Master would not even need to review or address arguments and caselaw raised by Vail Health in response, much less the new arguments and authority that the Plaintiffs raised in their reply brief. The Special Master's decision to go beyond the facially-insufficient argument in the Plaintiffs' motion and address the more meritorious *Asia Global* argument raised for the first time in the Plaintiffs' reply brief should thus be viewed as mere *dicta*. Perhaps the Special Master's discussion is a useful one for the

**15**

parties to keep in mind when advising clients in the future, but even where it may be erroneous in part or whole, *dicta* does not require analysis or reversal by reviewing courts.  *See Smith v. Florida Dept. of Corrections*, 696 Fed.Appx. 944, 953 (11th Cir. 2017) ("We need not review a judge's statements made in dicta, because appeals to this court are from the judge's final judgment and not the opinion").   The Special Master's conclusion that the Plaintiffs' initial motion did not adequately present the facts and on-point authority that supported the Plaintiffs' theory was correct.

As to the Plaintiffs' second argument, that the Special Master shifted the burden of proof to the Plaintiffs to show "non-waiver" of Vail Health's privilege, the Court rejects that reading of the Special Master's report.  The burden of proof dictates which party must establish the necessary facts <u>once an issue is properly placed before the court</u>.  But as *Gray* and other cases note, the movant must first present a facially-sufficient argument that identifies the issue, the pertinent facts, and the authority that makes the issue a colorable one.  Imagine, hypothetically, that the Plaintiffs' motion to compel argued, without citation to any supporting authority, simply that "as a matter of law, health care facilities can never invoke attorney-client privilege."  If Vail Health chose not to respond to this assertion at all, the court would not deem the Plaintiffs to be entitled to obtain the records because Vail Health did not muster evidence to carry its own burden of proof of establishing the privilege.  Rather, the Plaintiffs have an initial burden of <u>production</u> to identify a fully-formed and supported argument.  Only once that burden is satisfied does Vail Health have to shoulder its burden of proof.  Here, because the Plaintiffs' sole authority supporting their initial argument was entirely inapposite to the issue they intended to raise, the matter never proceeded to the point where Vail Health was even required to respond. The Special Master did not erroneously shift the burden of <u>proof</u> to Plaintiffs, but he did

correctly hold the Plaintiffs to their own initial burden of <u>production</u> – to identify the issue, pertinent facts, and supporting law, and correctly found that they failed to meet that burden.

Accordingly, the Court overrules the Plaintiffs' Objections to the Special Master's Report on Motion to Compel #5.

### 2. <u>Vail Health's Objections</u>

Summarized, the Special Master's Report concluded that although Vail Health bore the burden of demonstrating that the documents requested by the Plaintiffs were protected by attorney-client privilege, Vail Health failed to carry that burden because it offered only generalized and categorical arguments about the protected character of certain groups of documents and did not offer meaningful, individualized arguments regarding each document.  As the Special Master explained, "the party claiming privilege is required to demonstrate its applicability 'as to specific questions or documents, not by making a blanket claim.'"  (D. 398 at 3), *quoting In re Grand Jury Proceedings,* 616 F.3d 1172, 1183 (10th Cir. 2010).

Vail Health's objections encompass both broad challenges (that the Special Master erred in requiring them to make document-by-document arguments, that a detailed privilege log plus *in camera* review should be sufficient) and specific ones relating to the Special Master's findings relating to particular categories of documents.  This Court addresses those objections by working its way outwards from the specific to the more general.

### a. <u>Communications with third parties</u>

One major issue of dispute between the parties concerned the privileged status of communications between Vail Health's attorneys and third-party appraisers Vail Health had hired to assess the fair market valuation of the product of a contemplated business merger.  The

affidavit of Nicholas Brown,[5] D. 213-3, is the only evidence in the record that describes this

reasons for these communications:

> 7. At the direction of Vail Health's attorneys at Duane Morris, I, on behalf of Vail Health, worked with several appraisal firms to conduct fair market value analyses regarding [Howard Head Sports Medicine clinic]. These included Haverford Healthcare Advisors, Deloitte, and Healthcare Transaction Advisors.
>
> 8. These fair market value analyses were necessary for Duane Morris to provide legal advice because the Stark Law and Anti-Kickback Statute prohibit certain transactions between a healthcare facility and physician practice unless such transactions are conducted at fair market value. Thus, determining whether a transaction between a healthcare facility and physician practice is lawful often requires an analysis of the fair market value of the asset or services that are the subject of the transaction.
>
> 9. When I received draft fair market value analyses from the appraisal firms, I, or the appraisal firm, provided this information to attorneys at Duane Morris so they could assess any legal compliance issues, including those under the Stark Law and Anti-Kickback Statute, after reviewing the fair market value analyses.
>
> 10. The purpose of these fair market value analyses was to provide information to the attorneys at Duane Morris so they could advise Vail Health regarding regulatory issues, including compliance with the Stark Act and Anti-Kickback Statute.

Vail Health argued that, because its attorneys believed that the appraisers' work was necessary in

order for the attorney to give legal advice to Vail Health about the merger, the communications

---

[5]     As best the Court can determine, Mr. Brown is not an attorney.  It may very well be that his explanation of why Vail Health's attorneys wanted appraisals (*e.g.* paragraphs 8 and 10 of the quoted text, and perhaps portions of other paragraphs as well) is impermissible hearsay, repeating facts that were told to him by the attorneys themselves.  The Plaintiffs have not challenged Mr. Brown's affidavit on these grounds and the Court declines to address that issue *sua sponte*.

between the attorneys and the appraisers (with or without Vail Health's officials acting as a go-between at the attorneys' instruction) were protected by the attorney-client privilege.

The Special Master discussed at length the prevailing authority on the question of "under what circumstances, if any, the attorney-client privilege may include a communication to a nonlawyer by the lawyer's client." D. 398 at 12, *citing U.S. v. Kovel*, 296 F.2d 918 (2d Cir. 1961). This Court incorporates by reference the Special Master's extensive discussion of *Kovel* and its progeny, and summarizes that analysis by explaining that the Special Master concluded that *KovelI* stands for the proposition that communications with a third party retain privileged status <u>only</u> where the third party is retained by the attorney to effectively "translate" the client's own information into a language or format the attorney can understand; if the third party is retained to perform their own specialized skills or to contribute facts or data not already in the client's possession, communications with the third party are not protected by privilege. (D. 398 at 13-14).

Vail Health argues in its Objections that the Special Master "interpreted *Kovel* in an overly narrow manner," and that the correct standard is that communications with third-parties are privileged where the third party "assists a lawyer in giving legal advice and where the third party's participation was required to enable the attorney to render legal advice." D. 414 at 12-13, *citing Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.*, 2016 WL 11033846 (N.D.In. Nov. 4, 2016). But in doing so, Vail Health misreads *Valley Forge* and the cases cited therein. *Valley Forge* itself is of little analytical value, as the court rejected the claim of privilege due to the party's failure to submit an adequate privilege log. But looking to the cases *Valley Forge* relies upon, it is clear that the quoted language is consistent with the Special Master's reading of *Kovel* here.

In *In re Grand Jury Matter*, 147 F.R.D. 82, 84 (E.D.Pa. 1992), the court considered a situation in which a company being investigated by the state for improper waste disposal practices. The company "hired a law firm to provide it with legal advice in connection with [regulatory] proceedings, which law firm, in turn, retained the expert consultant to provide the law firm with expert environmental consulting services in order for the law firm to render legal advice to the company." *Id.* at 84. When the grand jury subpoenaed documents concerning communications between the firm and the environmental consultants, the firm sought to quash the subpoena on privilege grounds. Applying *Kovel*, the court rejected that argument. It explained that, under *Kovel*, "communications between a client and an expert consultant for business purposes, as opposed to legal purposes, are not protected." *Id.* at 85. In other words, as in *Kovel,* when an attorney consults with an accountant in the course of the attorney's representation "[i]f what is sought is not legal advice but only accounting service, or if the advice sought is the accountant's rather than the lawyer's, no privilege exists." *Id.* Applying that rule to the facts, the court found that the communications between the firm and the consultant were "made solely in the course of the expert consultant's preparation of a waste management plan that would achieve regulatory compliance for the company's waste disposal practices. That is, the documents were made in the course of the expert consultant's provision of environmental services to the company, and not for the purpose of assisting the law firm in providing legal advice to the company." *Id.* As in *Kovel*, the mere fact that an attorney requested information from a third-party consultant in order to assist the attorney in the giving of legal advice – there, to "achieve regulatory compliance" -- was not enough to render the communications privileged. Because the attorney retained the third party to perform the third party's <u>own specialized work</u> --

be it environmental consulting, accounting, or appraising – the communications were not "for the purpose of assisting the law firm in providing legal advice."

Likewise, *Valley Forge* cites to *Occidental Chemical Corp. v. OHM Remediation Serv's. Corp.*, 175 F.R.D. 431, 436-37 (W.D.N.Y. 1997). There, the plaintiff had been sued by the state for environmental contamination and retained a consultant, Rust, to design the cleanup of the site that would satisfy the state regulatory agency. The plaintiff sought to shield communications with Rust from discovery, but applying *Kovel*, the court rejected that argument. It explained that

> Rust cannot be characterized as an 'administrative practitioner'[6] since it was not employed by plaintiff's attorneys specifically to assist them in rendering legal advice. In fact, the available information suggests that, like the environmental consultants in *Phelps Dodge*, Rust was hired by plaintiff's former counsel to formulate a remediation plan for the Durez site acceptable to the [state]. Rust's function was not to put information gained from [plaintiff] into usable form for [its] attorneys to render legal advice, but rather, to collect information not obtainable directly from [plaintiff].

175 F.R.D. at 437.

To be sure, there are analytical approaches to the question of whether communications with third parties enjoy attorney-client privilege that are less exacting than *Kovel*. *See e.g. Stafford Trading, Inc. v. Lovely*, 2007 WL 611252 (N.D.Il. Feb. 22, 2007) (discussing several such approaches). But even the various alternative approaches described in *Stafford Trading*, involve extensive factfinding regarding the nature of the third-parties' association with the attorneys and client are necessary to the analysis. 2007 WL 611252 at *4 (discussing cases where facts demonstrated that third party "often acted as the client's sole representative on a

---

6 In a prior case, the court explained that the "administrative practitioners" being referred to are here are generally patent agents employed by patent attorneys. *U.S. Postal Service v. Phelps Dodge Refining Corp.*, 852 F.Supp 156, 162 n. 3 (E.D.N.Y. 1994).

project that appeared to be the *sine qua non* of the client's existence" and where the third party was "essentially incorporated into [the client's] staff to perform a corporate function [and] had the authority to make decisions on the client's behalf").  Even if the Court were to adopt a broader analytical approach to the privilege, Vail Heath's meager factual showing would still preclude a finding of privilege in Vail Health's communications with the third-party appraisers. As stated above, Mr. Brown's affidavit is the only evidence in the record that describes why Vail Health's attorneys sought out the appraisers' services, and that evidence consists of the simple assertions that Vail Health's attorneys thought it was "necessary" to obtain "an analysis of the fair market value of the subject transaction" in order to "assess any legal compliance issues" and "provide legal advice."  Mr. Brown's affidavit does not describe how the appraisers were selected and retained, what the terms of their retention were (including any agreements they signed regarding confidentiality), what specific services they performed and how Vail Health's attorneys were involved in directing their activities, what facts and data they considered, and how Vail Health made use of their assessments.  In short, Vail Health's record consists of nothing more than a statement "the attorneys requested an appraisal of the proposed business venture's value in order to give legal advice."  That slender showing cannot support a wholesale finding of privilege applicable to hundreds of documents.[7]

---

[7]     If the only requirement is the attorney needed to feel that a third-party's services were necessary in order to obtain information so the attorney could render legal advice, nearly any third-party communication with or directed by an attorney would fall within the privilege, and the exception would swallow the rule.  Attorneys consult with all manner of third parties in the course of their representation of clients – from investigators and forensic accountants to jury consultants.  In each instance, it is fair to assume that the attorney does so because she or he believes the third party's assistance is "necessary" in order for the attorney to provide accurate and robust legal advice to the client.  After all, why would the client incur the third party's fees if the services the third party provides are not necessary to the attorney?  The rule proposed by Vail Health would place every communication with every third party behind the wall of privilege,

In sum, this Court agrees with the Special Master that application of the *Kovel* rule is appropriate to effectuate the notion that privileges are to be construed narrowly. There can be little argument that Vail Health failed to make the exacting factual showing required by *Kovel* as it relates to communications with the third-party appraisers. Even under a broader application of the *Kovel* rule -- say, one that inquires whether the appraisals were sought by Vail for <u>business</u> purposes or <u>legal</u> purposes -- Vail Health has failed to carry its burden of showing the third-party communications are privileged. The mere assertion that the appraisals had some bearing on legal issues being considered by Vail Health's counsel does not refute the obvious fact that such appraisals had substantial business value to Vail Health as well. Ultimately, because Vail Health bears the burden of proving that the communications should be found to fall within the narrow confines of attorney-client privilege, insufficiencies or ambiguities in the record work to Vail Health's detriment. Thus, this Court adopts the Special Master's Report as it relates to communications with the third-party appraisers.

b. <u>Communications copied to Ms. Faires</u>

The Special Master directed Vail Health to produce all communications on which Vail Health outside director Michael Shannon copied his administrative assistant, Christine Faires. Ms. Faires is not an employee of Vail Health, and the record is silent as to what functions she performs and for whom. The Plaintiffs contend that because Ms. Faires is not associated with Vail Health, her inclusion in any communications, even those involving Vail Health's counsel, destroyed the confidentiality necessary to maintain Vail Health's attorney-client privilege in those communications. The Special Master recognized the possibility that a client could share

_____

even information as innocuous as the rates charged by the third party and the terms of the third party's engagement.

privileged communications with "their own assistants and agents."  D. 398 at 20.  But he concluded that "some factual showing by the party claiming privilege is necessary to demonstrate how the alleged agent relates to the client's business operations and how that agent's receipt of the communication was necessary to facilitate the client's processing of the privileged communication."  *Id.*  The Special Master found that Vail Health's record on this point was deficient, insofar as it "does not offer any factual development on this situation at all except to describe Ms. Faires as Mr. Shannon's 'administrative assistant.'"  *Id.*  Thus, the Special Master found that Vail Health failed to carry its burden of proof to show that communications involving Ms. Faires as a recipient were privileged.

In its Objections, Vail Health argues that the "'agency exception' permits a person within the scope of the privilege to share privileged communication with his or her agent without waiving privilege."  Vail Health cites to *In re Murphy*, 2018 WL 11205932 (Bankr. M.D.Fl. Jan. 10, 2018).[8]  In *Murphy*, the court found that attorney-client communications were privileged and that to the extent those communications involved the client's administrative assistant, they retained their privileged status because the assistant acts as the agent of the client.  This Court would have no hesitation in accepting Vail Health's argument on this point if Ms. Faires had been an employee of Vail Health.  But the Special Master found, and Vail Health does not dispute, that Ms. Faires is <u>not</u> an employee of Vail Health.  If instead Vail Health demonstrated

---

[8]     *Murphy*, in turn, cites *Young v. Taylor*, 466 F.2d 1329, 1331 (10th Cir. 1979), in which the court considered an objection to the trial court's admission of testimony by an attorney's secretary about discussions she overheard between the attorney and client.  In *dicta*, the 10th Circuit acknowledged the proposition that privileged attorney-client communications include "communications heard by a secretary or clerk of the attorney," but ultimately found the trial court correctly deemed any privilege had been waived by the client for unrelated reasons.

that she was an independent employee hired and controlled by Mr. Shannon himself, the analysis of *Murphy* might still be appropriate.

But to illustrate the limits of Vail Health's argument, consider the possibility that Ms. Faires is employed by, and therefore owes loyalty to and takes direction from, an entity enttirely unrelated to Vail Health. The Special Master used the fictitious Acme Corporation as Ms. Faires' hypothetical employer, and this Court will adopt that notion for purposes of illustration. Assume that Mr. Shannon is a high-ranking executive of Acme Corporation and Ms. Faires is the Acme Corporation employee assigned to assist Mr. Shannon. Now assume that Acme's other executives have become concerned about the amount of time and attention Mr. Shannon is devoting to his work as an outside director of Vail Health, possibly to the detriment of his work as an employee of Acme. To explore that concern, the Acme executives ask their employee, Ms. Faires, to provide them with all of correspondence that she has in her possession involving Mr. Shannon and Vail Health. As an employee of  Acme, Ms. Faires is hardly expected to defy those orders in order to protect the confidentiality of Vail Health's correspondence with Mr. Shannon. In such circumstances, there would be no doubt that Ms. Faires' status as Mr. Shannon's administrative assistant at Acme acted to destroy the confidentiality of attorney-client privileged communications between Vail Health and Mr. Shannon in which she was included.

This hypothetical illustrates that it is not sufficient to simply say that "Ms. Faires is Mr. Shannon's administrative assistant" and end the inquiry. More facts are necessary to demonstrate who has the ability to control Ms. Faires' activities and, in turn, inquire into Mr. Shannon's communications with Vail Health and its counsel. The Special Master found that, because Vail Health was obligated to "com[e] forward with a detailed factual explanation for why Mr. Shannon is disclosing Vail Health's privileged information to a non-Vail Health

assistant" and did not, Vail Health had not carried its burden of proving that the communications involving Ms. Faires were privileged.  This Court agrees.  It is certainly <u>possible</u> that Ms. Faires' status relative to Mr. Shannon and Vail Health is sufficiently similar to cases like *Murphy* that the rule there – that an administrative assistant to the client may be involved in attorney-client communications without destroying confidentiality and thus the privilege – would be equally applicable here.  But Vail Health did not demonstrate the facts of that status sufficiently, and as the party with the burden of proof to affirmatively establish the confidentiality element of its claim of privilege, that failure results in a finding that the communications are <u>not</u> privileged and that Vail Health must disclose them.

c. <u>Sufficiency of Vail Health's privilege log</u>

The minimal factual showing made by Vail Health in support of its claims of privilege discussed above highlight the deficiencies in Vail Health's broader objections as well.  As the Special Master noted, Vail Health bears the burden of demonstrating the necessary elements of the privilege – confidential communications, with an attorney, for the purpose of obtaining legal advice – and Vail Health must do so on a "document-by-document" basis, not categorically.  *See e.g. Stafford Trading*, 2007 WL 611252 at *7.  But Vail Health's Objections, its response to the Motion To Compel, and even its privilege log offer nothing more than general categorical and conclusory arguments encompassing broad swaths of documents.

Vail Health asserts that "submission of a detailed privilege log and submission of the documents for *in camera* review [ ] is sufficient to demonstrate privilege," and that it should not be required to make any more detailed factual showing about individual documents or categories of documents.  *Citing High Point SARL v. Sprint Nextel Crop,* 2012 WL 234024 (D.Ks. Jan. 25, 2012).  The court in *High Point* found that the respondent's privilege log "asserts for each

document withheld that it was created for the purpose of legal advice . . . The Court finds this is sufficient to support its claims that the documents were prepared for its attorneys to provide legal advice, rather than just business advice." But that is a finding of a <u>factual</u> nature – that the particular privilege log in that case was sufficiently detailed – not an articulation of a <u>legal</u> rule that all that any party need do to support a claim of privilege is to tender a privilege log and the documents for *in camera* review. It may very well be that a party's privilege log in a case may be sufficiently detailed to permit a full evaluation the party's privilege claim simply from the facts contained therein. But a log that simply identifies a document with conclusory assertions about what it reflects may not provide the kind of detailed information necessary to establish a claim of privilege.

This is especially true where, as here, the claim of privilege is a complex one that requires numerous layers of factual showings. As discussed above, when Vail Health includes third parties (be they appraisers or Ms. Faires or anyone else) in its privileged communications, it bears the obligation to offer an adequate explanation as to why the privilege should nevertheless survive. The adequacy of that explanation may often require a detailed discussion of who is being included in the communication and why and how that communication furthers Vail Health's securing of legal advice from its counsel. Those facts will often not be found in a short entry in a privilege log, and they may not even be obvious from the face of the document itself. In such circumstances, Vail Health must supplement that showing with a more detailed (and likely document-by-document) explanation.

That situation is clearly depicted in the the Special Master's Report, which painstakingly explores Vail Health's privilege claims in a series of documents that are part of the public record. D. 398 at 5-6, 9-10, 15, *discussing* D. 196-5. This Court will not reiterate and summarize that

discussion, but it is sufficient to demonstrate that even an *in camera* review of a document and comparison of that document to its description in the privilege log may not suffice to illustrate all of the facts necessary to permit a complete privilege analysis.  When one looks at a friend's Hawaiian vacation photos, the significance of some images – say, a photo of Diamond Head or the friend sitting in a beach chair holding a tropical drink and smiling --- will be obvious without any need for narration.  Other images – say, a non-descript pile of stones or a seemingly ordinary street scene – may require a considerable amount of context and explanation before its importance becomes clear.  The Special Master found that many of Vail Health's allegedly-privileged documents fell into that second category, and from this Court's review of the example provided by D. 196-5, it agrees.   Like the Special Master, this Court has had the opportunity to review D. 196-5 and correlate its contents with Vail Health's privilege log.  And like the Special Master, this Court is left unable to ascertain how, for example, discussions among Vail Health officials communicating and evaluating an appraiser's draft report somehow constitute communications "seeking legal advice."[9]  *See* D. 398 at 9.  It may very well be that Vail Health

---

[9]     Vail Health's Objections cite to *General Electric Co. v. Johnson*, 2007 WL 433095 (D.D.C. Feb. 7, 2007).  The portion of that opinion that Vail Health quotes is germane here. Discussing a "broad category" containing 160 documents over which the defendant claimed privilege, the court observed that the defendant supported those claims by "two paragraphs in [an affidavit that] speak in broad, general terms" of the factual grounds for the privilege.  The court agreed that the defendant:

> has continued to justify some of its privilege claims in this category on the basis of broad generalizations. Most troubling is EPA's failure in some instances to identify the particular decisionmaking process to which a document contributed. These inadequacies, however, are an inevitable byproduct of the categorical approach followed by the parties in their submissions, with the Court's approval. EPA simply cannot, via relatively succinct sworn declarations, convey precisely how every document

<u>could have</u> gone document-by-document, offering context and interpretation and analysis, and that by doing so, it could have adequately supported its claims of privilege. But on simply the face of the privilege log and the documents themselves, without further explanation, this Court agrees that Vail Health has not carried its burden of proof to show that each identified document satisfies each of the requirement elements to enjoy the attorney-client privilege.

Accordingly, the Court adopts the Special Master's Report regarding Motion to Compel #5 in its entirety.

### CONCLUSION

For the foregoing reasons, the Court **OVERRULES** the parties' Objections (D. 367, 386, 387, 408), and **ADOPTS** the Special Master's Reports (D. 362, 381, 382, 383, 398) as to each of the Motions To Compel. Vail Health shall produce the items directed by the Special Master within 14 days of the date of this Order. Pursuant to Fed. R. Civ. P. 72(a) and 28 U.S.C.

---

in this category satisfies the [ ] prerequisites for invocation of the [ ] privilege.

Ultimately, however, the court upheld the claims of privilege, apparently based not only on the privilege log, but also on "longer, document-specific descriptions" of eight specific documents materials and on the court's "own *in camera* review of a sample document." *Id.* at *14.

Here, Vail Health's submissions suffer from the same general defects identified in *General Electric*: a large number of documents over which Vail Health claims privilege are supported only by very generalized statements in Mr. Brown's affidavit and a very generalized and conclusory privilege log. As did the court in *General Electric*, the Special Master reviewed certain sample documents, namely D. 196-5, and extensively explained why Vail Health's submissions failed to demonstrate the necessary facts supporting the invocation of privilege in those documents. In its Objections, Vail Health makes no effort to explain why the Special Master's discussion of the sample documents is in any way erroneous. Indeed, Vail Health's Objections do not address the Special Master's analysis and findings regarding those particular documents at all. In that sense, Vail Health sits in a far worse position that the defendant in *General Electric* who presented a detailed "document-specific description" here demonstrating how its privilege claims should be analyzed in a sample context.

§636(b)(1)(A), any party may file Objections to this Order within 14 days, and the failure to file

Objections as to any issue may operate as a waiver of further review as to that issue.

**Dated at Grand Junction, Colorado this March 10, 2023.**

**Gordon P. Gallagher**
United States Magistrate Judge