## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation,

      Defendant.

---

## PLAINTIFFS' RULE 72 PARTIAL OBJECTION TO MARCH 13, 2023 ORDER OVERRULING OBJECTIONS AND ADOPTING SPECIAL MASTER'S REPORTS

---

## INTRODUCTION

Plaintiffs allege two antitrust claims against Vail Health under Sherman Act § 2, which makes it illegal to "monopolize, attempt to monopolize [or], or combine or conspire to monopolize."[1]  Plaintiffs appeal the March 13 Order summarily adopting Special Master Order #4[2] that barred discovery of documents going directly to restrictive combinations valued at $173 million.[3]  The contracts are between Vail Health, the alleged monopolist, and The Steadman Clinic, a potential horizontal competitor that was excluded from competition by the contracts and combination.[4]  Order #4 deems discovery about this combination to be "speculative"[5] but provides no factual or legal basis for its conclusion.

---

[1]    15 U.S.C. § 2.  Plaintiffs' claims are monopolization and attempt to monopolize. ECF No. 26 ¶¶ 242-73.  *But see* ECF No. 457 at 2 (mistakenly citing initial Complaint).

[2]    ECF No. 457 at 1, 29.

[3]    ECF No. 383 at 4.

[4]    *Bright v. Moss Ambulance Serv., Inc.,* 824 F.2d 819, 824 (10th Cir.1987); *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1123 (10th Cir. 2014).

[5]    ECF No. 383 at 4.

Likewise, the March 13 Order adopting Order #4 is contrary to Sherman Act § 2 and Rule 53(f)(3)-(4) that requires *de novo review*.  Both Orders conflate trial admissibility with discoverability.[6]   To correct these clear errors, the Court should Order Vail Health to produce the executed agreements and reproduce documents without redaction.[7]

## PROCEDURAL BACKGROUND

Plaintiffs' filed Motion to Compel #4,[8] which was referred to the Special Master.[9] Plaintiffs sought documents between Vail Health and its orthopedic partners,[10] including "charitable contributions."[11]  Vail Health's objection on relevancy grounds was sustained in Order #4.[12]  Plaintiffs objected,[13] which the March 13 Order overruled without comment.[14]

## FACTUAL BACKGROUND

Vail Health is a 56-bed community hospital that is wildly profitable, with a balance sheet of $1 billion.  It recently made over $200 million in improvements to its Vail facilities, and along with its orthopedic partners and Howard Head, opened a $70 million facility in Dillon[15] and a 65,000 square foot facility in Basalt.[16]   As Vail Health's former CFO

---

[6]      *See Rowell v. Nw. Mut. Life Ins. Co.*, Civil Action No. 21-cv-00098-PAB-NYW, 2021 U.S. Dist. LEXIS 213968, at *18-19 (D. Colo. Aug. 23, 2021) ("court does not pass on admissibility of any discovered information at this juncture"); *Consumer Fin. Prot. Bureau v. Navient Corp.*, No. 3:17-CV-101, 2018 U.S. Dist. LEXIS 76155, at *4-5 (M.D. Pa. May 5, 2018) ("Court will not sustain a relevancy objection [during discovery] unless …materials sought cannot, as a matter of law have any possible relevance").
[7]      *See Callahan v. A.E.V. Inc.*, 947 F. Supp. 175, 179 (W.D. Pa. 1996) (concluding antitrust discovery is broad because it involves improper business conduct).
[8]      ECF No. 157.
[9]      ECF No. 161.
[10]      ECF No. 157-12 at RFP #7-8.
[11]      ECF No. 158-14 at RFP #24.
[12]      *See* ECF No. 176 at 10; ECF No. 383 at 4.
[13]      ECF No. 387.
[14]      ECF No. 457 at 1, 29 (referencing Plaintiffs' objection only twice as "D…387").
[15]      ECF No. 157-17 at 1.
[16]      ECF No. 157-16 at 1.

explained, orthopedic surgeries drive Vail Health's profitability—fees from surgeries and the resulting physical therapy referrals to Howard Head.[17]   In FY2015, the contribution margin for orthopedics was over $65 million,[18] far surpassing any other hospital service line.[19]   Vail Health's success is thus critically dependent on its orthopedic partners: (1) The Steadman Clinic and its foundation Steadman Philippon Research Institute ("Steadman/SPRI"); and (2) Vail-Summit Orthopaedics and its foundation ("VSO/VSOF"). Without them, there would be no Howard Head.   In FY2015 alone, Steadman generated 54% of Howard Head's referrals,[20] and VSO generated 15%,[21] meaning, 70% of Howard Head's $16 million in revenues.[22]   And since 2015, that relationship has only expanded.[23]

But to get where it is today, Vail Health had to "reset" its relationship with Steadman in 2015.  At that time, Steadman was threatening to move its offices, open its own surgical center, and start a competing physical therapy clinic,[24] which would have been financially catastrophic for Vail Health.  So it had to exclude Steadman as a competitor, particularly after learning Plaintiffs were entering the physical therapy market.[25]

So Vail Health sought to strike a deal.  It proposed a ten-year, comprehensive package to "reset" their relationship.  Vail Health's intent was to incentivize Steadman not to compete, giving Vail Health another decade to solidify and grow its orthopedic line,[26]

---

[17]   ECF No. 388 at 79:16-23, 112:6-13, 114:4-116:10 (Vail Health executives discussed material negative effect if Steadman left).  *See also* ECF No. 26 ¶¶ 4-5.
[18]   ECF No. 128-2 at VH_Fed00805.
[19]   *See id.* at VH_Fed00807-13.
[20]   ECF No. 158-24 at VH_Fed002009.
[21]   *Id*.
[22]   ECF No. 130-1 at VH_Fed002041.
[23]   *See, e.g.,* ECF Nos. 157-16, 157-17.
[24]   *See* ECF Nos. 26 ¶¶ 4, 61-7; ECF No. 388 at 112:6-13, 114:4-116:10.
[25]   ECF No. 26 ¶¶ 94-100, 161.
[26]   ECF No. 158-8 at VH_Fed004046; ECF No. 158-6 at VH_Fed002228.

including Howard Head,[27] while at the same time excluding a potential competitor.[28]  This realignment was so important that Vail Health Board Chair Mike Shannon pressed Steadman/SPRI to finalize all agreements, committing to "work 24/7 to get this done."[29] Two weeks before Plaintiffs officially entered the market, Vail Health sealed its ten-year deal with Steadman/SPRI, with the Vail Health Board approving five agreements.[30]

The deal provided Steadman/SPRI a whopping $173 million in cash and cash equivalents, substantially more than the $300,000/year Vail Health donated to SPRI the proceeding eight years.[31]  Some funding to "reset" the relationship came from $106 million in joint fundraising efforts, including $45 million to expand and improve Steadman/SPRI's offices[32] and $43 million to fund Steadman/SPRI research,[33] which specifically included Howard Head as one of its partners.[34]  The ten-year deal also included $20 million in below-market leasing rates and free administrative services.[35]  An integral component to the "reset" was the Howard Head physical therapy joint venture[36] that included a five-county noncompete,[37] as well as the development of a sports performance center.[38]  The

---

[27]    ECF No. 158-8 at VH_Fed004049; ECF No. 158-21 at VAILJV00149.
[28]    *See, e.g.,* ECF No. 158-8 at VH_Fed004047.
[29]    ECF No. 158-9 at VH_Fed003936.  *See also id.* ("We have both worked long and hard to get the reset done…we should sign all the agreements at the same time since both parties consider it a package strategic alignment….This is a ten year reset").
[30]    ECF No. 158-6 at VH_Fed002228.
[31]    *See* Vail Health's 990s at Grants and Other Assistance to Domestic Organizations, available at https://www.coloradosos.gov/ccsa/pages/public /form990s.xhtml.
[32]    ECF No. 158-8 at VH_Fed004072-74.
[33]    *Id.* at VH_Fed004067.
[34]    *Id.* at VH_00004079; SPRI Golf Sports Medicine Program includes a "collaboration with Howard Head…and leverages SPRI's symbiotic relationship with" Steadman, available at https://www.sprivail.org/departments/golf-sports-medicine.
[35]    ECF No. 158-8 at VH_Fed004075-78.
[36]    ECF No. 158-21 at VAILJV00149.
[37]    *See* ECF Nos. 158-21 at VAILJV00143; ECF No. 193-2 at VSO_Fed005.
[38]    ECF No. 158-8 at VH_Fed004077; ECF No. 158-21 at VAILJV00138.

parties also executed two, ten-year lease agreements, with the Steadman lease containing restrictions related to physical therapy; SPRI's agreement was not produced. The parties also amended an agreement for outpatient surgery centers (not produced), a joint venture between Vail Health and Steadman doctors in which Howard Head provides physical therapy.  At the same time, Vail Health also made overtures to VSO/VSOF to join the physical therapy joint venture, donate to VSO's foundation, and enter into leasing agreements.[39]  The latter two groups of contracts were not produced.

## ARGUMENT

## I.     THE STANDARD OF REVIEW SHOULD BE *DE NOVO*.

The Special Master was appointed under Rule 53[40] with the Magistrate ruling on any objections.[41]  Plaintiffs objected to Order #4, thus triggering Rule 53(f)(3)-(4)'s *de novo* review of both facts and law.  But the March 13 Order mentions Plaintiffs' objection only in passing, referring to it twice by its docket number, "D…387,"[42] which does not comply with Rule 53(f)(3)-(4).   Remand to conduct the *de novo* review would be appropriate,[43] but if not, this Court could conduct that review now.[44]   Even under a Rule 72(a) standard, the Order overruling Plaintiffs' objection is "clearly erroneous"[45] and "contrary to [antitrust] law,"[46] which the Court has "plenary review" to decide.[47]

---

[39]     ECF No. 193-3 at VH_Fed003686, 3689.
[40]     ECF No. 123 at 1.
[41]     *Id.* ¶ 4.
[42]     ECF No. 457 at 1 (introductory paragraph), 29 (conclusion).
[43]     *See Polin v. Dun & Bradstreet, Inc.,* 63*4* F.2d 1319, 1321 (10th Cir. 1980) (remanding to conduct required Rule 53 de novo review).  *See also Ma v. Am. Elec. Power Co.*, 697 F. App'x 448, 450 (6th Cir. 2017) (remanding when de novo review not done).
[44]     *Sierra Club v. Cargill*, 11 F.3d 1545, 1548 (10th Cir. 1993).
[45]     Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).
[46]     *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988).
[47]     *Reyes v. Snowcap Creamery, Inc.*, 898 F. Supp. 2d 1233, 1234 (D. Colo. 2012),

## II.   IT WAS ERROR TO BAR DISCOVERY OF EVIDENCE RELEVANT TO CAUSATION, INTENT, AND EXCLUSION OF A POTENTIAL COMPETITOR.

Order #4 and the March 13 Order do not mention Sherman Act § 2 or cite to any antitrust cases.  This was error because a contract to consolidate or attempt to consolidate to exclude competition with the intent to monopolize is illegal.  Plaintiffs allege an attempt to monopolize,[48] meaning the conduct to monopolize "has not yet succeeded."[49]  *United States v. American Airlines, Inc.* holds that a party "need not allege or prove an agreement to monopolize in order to establish an attempted joint monopolization under section 2"—that is, "an agreement is not an absolute prerequisite for the offense for the attempted joint monopolization…."[50]  The facts support attempted monopolization, but Plaintiffs also allege actual monopolization.[51]  Under both, Plaintiffs are entitled to discovery of the contracts because they are relevant to intent to monopolize, to exclude competitors, and to show causation of adverse impacts on competition.

Order #4 and the March 13 Order effectively exclude the contracts without seeing the final agreements, let alone knowledgeably analyzing whether they unreasonably restrict competition and had a probability of creating or strengthening a monopoly.  An initial issue involves intent to restrain trade.  Order #4 states: "The Plaintiffs appear to be asserting that Vail Health used charitable contributions to entities like Steadman to 'sweeten the pot' on proposed joint ventures…."[52]  It then rules that whether Vail Health

---

[48]     ECF No. 26 ¶¶ 256-73.
[49]     *Taylor Publ'g Co. v. Jostens Inc.*, 216 F.3d 465, 474-75 (5th Cir. 2000); *Multiflex, Inc. v. Samuel Moore & Co.*, 709 F.2d 980, 990 (5th Cir. 1983).
[50]     743 F.2d 1114, 1117, 1122 (5th Cir. 1984); *Colo. Interstate Gas Co. v. Natural Gas Pipeline Co. of Am.*, 885 F.683, 695-96, n.21 (10th Cir. 1989) (adopting *American Airlines*: "it is no defense…that…attempt to monopolize proved to be unsuccessful").
[51]     ECF No. 26 ¶¶ 242-55.
[52]     ECF No. 383 at 4.

dangled $173 million to induce Steadman to sign contracts forming an illegal combination was "too speculative and conclusory" to be relevant.   In effect, the ruling excludes evidence from which a jury could reasonably infer that the proposed and executed contracts and the $173 million in inducements caused or raised a dangerous probability[53] of causing the relevant market to be monopolized.[54]

Moreover, both Orders did not address that a § 2 attempted monopolization claim requires proof of specific intent to monopolize,[55] and a § 2 monopolization claim requires that the defendant engaged in "willful" acts directed at establishing or retaining its monopoly.[56]   The conclusion that a connection between the $173 million and the proposed joint ventures is "speculative" is devoid of any consideration that a jury could reasonably infer that the $173 million "sweetener" is evidence of specific intent or willfulness to monopolize.   Order #4 acknowledges that Vail Health's attempts to enter joint ventures with Steadman and VSO is relevant to § 2 liability, but then it carves out the contracts relating to the $173 million of financial inducements entered into at the exact same time.   Order #4 treats the financial inducements as unrelated to restrictive contracts. But "[p]laintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components...."[57]   Exclusionary conduct should

---

[53]    *Christy Sports, L.L.C. v. Deer Valley Resort Co.,* 555 F.3d 1188, 1192 (10th Cir. 2009) (citing *Spectrum Sports v. McQuillan,* 506 U.S. 447, 456 (1993)).
[54]    *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 698, 709-10 (1962).
[55]    *Christy Sports,* 555 F.3d at 1192 (citing *Spectrum Sports,* 506 U.S. at 456).
[56]    *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.,* 738 F.2d 1509, 1519 n.12 (10th Cir.1984), *aff'd,* 472 U.S. 585 (1985); *United States v. E.I. Du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956) (monopolization requires that the defendant is shown to have engaged in willful acts directed at establishing or retaining its monopoly).
[57]    *Cont'l Ore*, 370 U.S. at 699 (quoting *United States v. Patten*, 226 U.S. 525, 544 (1913) (noting jury needed to look at whole picture; not merely individual figures in it)).

"not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole."[58] This explains why discovery in an "antitrust case is necessarily broad because allegations involve improper business conduct....Such conduct is generally covert and must be gleaned from records, conduct, and business relationships."[59]

In concluding the discovery is irrelevant, Order #4 fails to address whether any of the executed and proposed contracts—some of which only Vail Health has seen—include restrictions on trade, individually or in tandem—that violate the Sherman Act.  That examination would require a rigorous factual and legal analysis[60] that was not performed. It would require an analysis of whether the contracts (executed and proposed) were "unnecessarily restrictive of competition"[61] and relevant to Sherman Act scrutiny.  Both Orders neglect any consideration of the overriding admonition that "[t]he central message of the Sherman Act is that a business entity must find new customers and higher profits through internal expansion—that is, by competing successfully rather than arranging treaties with its competitors."[62]  A monopolist's attempted illegal "treaties" intended to exclude actual or potential horizontal competitors is what this case is all about.

Nevertheless, Order #4 declares that potential and executed contracts, some of which it has never seen, are irrelevant for discovery purposes, immunizing them from antitrust scrutiny.  The Supreme Court, however, has held that a much more detailed legal analysis is required for such a ruling: "We cannot agree that [the contract] should be

---

58    *Id.*
59    *Callahan*, 947 F. Supp. at 179; *United States v. Int'l Bus. Machs. Corp.*, 66 F.R.D. 186, 189 (S.D.N.Y. 1974).
60    *NCAA v. Alston*, 141 S. Ct. 2141, 2155 (2021) (citation omitted).
61    *E.I. Du Pont*, 351 U.S. at 391; *Aspen Skiing*, 472 U.S. at 604.
62    *Aspen Skiing*, 472 U.S. at 600 (citation omitted).

automatically declared illegal…. Rather, when attacked it should be subjected to a more discriminating examination under the rule of reason."[63]  So whether the contract is illegal or legal, it cannot be summarily expelled from a case without such an examination.

Here, both Orders barring discovery effectively presuppose the contracts to be legal and thus beyond antitrust scrutiny.  This was clear error.  In analyzing a joint venture contract of a monopolist (the NCAA), the Supreme Court confirmed that "[m]ost restraints challenged under the Sherman Act—including most joint venture restrictions—are subject to the rule of reason, which (again) we have described as 'a fact-specific assessment of market power and market structure' aimed at assessing the challenged restraint's 'actual effect on competition'—especially its capacity to reduce output and increase price."[64]

The required analysis was not performed but should have been—*with* the benefit of all of the contracts—which would show Vail Health's Sherman violations and the resulting adverse impact on competition that include attempted and successful allocation of relevant markets,[65] exclusion of competitors,[66] maintenance and strengthening of monopoly power,[67] maintenance of supra-competitive prices[68] and proposed price-fixing.

## III.   THERE IS NO BURDEN TO PRODUCE A HANDFUL OF DOCUMENTS.

It took Vail Health a click of a button, literally, to produce a number of documents responsive to RFP #24, which included a PowerPoint slide deck presented to Vail

---

[63]    *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 24 (1979).
[64]    *NCAA*, 141 S.Ct. at 2155 (citations omitted).
[65]    *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 50 (1990); *United States v. Topco Assocs.*, 405 U.S. 596, 608 (1972); *United States v. Griffith,* 334 U.S. 100, 104-05 (1948); *New York v. St. Francis Hosp.*, 94 F. Supp. 2d 399, 415 (S.D.N.Y. 2000); *Blue Cross & Blue Shield United of Wisc., Inc. v. Marshfield Clinic*, 65 F.3d 1406, 1415 (7th Cir. 1995).
[66]    *United States v. Falstaff Brewing Corp.*, 410 U.S. 526, 532-33 (1973).
[67]    *Lenox,* 762 F.3d at 1119; *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 477, 498 (N.D. Ill. 2019).
[68]    *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223 (1940).

Health's Board,[69] a draft of the research agreement,[70] and related communications (albeit redacted on the basis of relevancy).[71]   Plaintiffs seek a finite number of *executed* agreements,[72] along with unredacted emails discussing the parties' strategic alliance.[73] Vail Health never argued,[74] or provided any proof, that responding to RFP #24 was burdensome or overbroad.[75]   Its only objection was relevancy.[76]   The Special Master's conclusion that the burden "is significant"[77] was unsupported and erroneous, particularly when neither Order found any burden to produce documents on multiple transactions from Summit County to Basalt.[78]

## CONCLUSION

Plaintiffs respectfully request that the Court sustain Plaintiffs' objection and order Vail Health to produce the documents requested in RFP #24 that relate to Vail Health's contributions to Vail Health's orthopedic partners (Steadman/SPRI and VSO/VSOF), which include executed research affiliation agreements, executed leasing agreements, and related (unredacted) communications about their partnerships.

---

[69]     *See, e.g.,* ECF Nos. 158-6, 158-8 at VH_Fed004054-57, 4067, 4072, 4075-79.
[70]     ECF Nos. 158-20, 387-2.
[71]     ECF No. 158-21 at VAILJV0086-107, 136-61, 176-77.
[72]     *See, e.g., United States v. Grinnell Corp.,* 30 F.R.D. 358, 360 (D.R.I. 1962) (ordering 10-years of communications and 50 years of agreements); *United States v. Grinnell Corp.*, 384 U.S. 563, 568-76 (1966) (detailing agreements from 1906-1954).
[73]     *See, e.g.,* ECF No. 158-21 at VAILJV0086-107, 136-61, 176-77 (redactions).
[74]     *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, Case No. 05-cv-2192-JWL-DJW, 2008 U.S. Dist. LEXIS 44751, at *19-21 (D. Kan. June 4, 2008) (finding objection abandoned when not raised in opposition to motion to compel).
[75]     *MedCorp, Inc. v. Pinpoint Techs., Inc.*, Civil Action No. 08-cv-00867-MSK-KLM, 2009 U.S. Dist. LEXIS 38022, at *7 (D. Colo. Apr. 20, 2009) ("It is the objecting party's burden to show why a discovery request is objectionable").
[76]     ECF No. 176 at 10; ECF No. 157-14, RFP at 3 ("all" means reasonable search).
[77]     ECF No. 383 at 4; ECF No. 457 at 29 (adopting ECF No. 383, Order #4).
[78]     *See* ECF No. 383 at 3 (conclusory statements of burden insufficient); ECF No. 457 at 9 ("nor does Vail Health meaningfully contend…discovery…is 'overly burdensome'").

Dated:  March 27, 2023

*s/Alan L. Kildow*
Alan L. Kildow, MN# 0143133
790 Potato Patch Drive
Vail, CO 81657
Telephone: (970) 390-6675
E-mail: alkildow@aol.com

Jesse Wiens, Colo. #33903
Jesse Wiens Law
0069 Edwards Access Road, Suite 8
Edwards, Colorado 81632
Telephone: (970) 855-0078
E-mail: jesse@jessewienslaw.com

Sonya R. Braunschweig, MN# 0290292
5501 Irving Avenue South
Minneapolis, MN 55419
Telephone: (612) 819-2304
E-mail: sonya.braunschweig@gmail.com

Attorneys for Plaintiffs Lindsay Winninger and
Sports Rehab Consulting LLC

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 27, 2023, I served a true and correct copy of Plaintiffs' Partial Objection To March 13, 2023 Order Overruling Objections And Adopting Special Master's Reports via the Court's ECF system on:

Jackie Roeder
Daniel Richards
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO  80202

Counsel for Defendant


_____*s/ Alan L. Kildow*_____
Alan L. Kildow