IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02075-WJM-SKC

SPORTS REHAB CONSULTING LLC & LINDSAY WINNINGER,

    Plaintiffs,

v.

VAIL CLINIC, INC., d/b/a VAIL HEALTH, a Colorado nonprofit corporation,

    Defendant.

## VAIL HEALTH'S RESPONSE TO PLAINTIFFS' RULE 72 PARTIAL OBJECTION TO MARCH 13, 2023 ORDER OVERRULING OBJECTIONS AND ADOPTING SPECIAL MASTER'S REPORTS

Pursuant to WJM Revised Practice Standard I(1), Vail Health respectfully submits this response to Plaintiffs' Rule 72 Partial Objection to March 13, 2023 Order ("March 13 Order") Overruling Objections and Adopting Special Master's Reports (Doc. 459) ("Partial Objection").

The March 13 Order adopted the Special Master's recommendation that Vail Health need not produce documents concerning its donations to two 501(c)(3) nonprofit orthopedic surgery research foundations. The Special Master's recommendation stemmed from his conclusion that Plaintiffs' theory of relevance for such a request was speculative, lacked factual support, and thus did not justify production. In their Partial Objection, Plaintiffs ask the Court to overrule both the Special Master's recommendation and the Magistrate Judge's adoption of that recommendation for two primary reasons: (i) the information is relevant, they claim, to exclusion of a potential competitor, and (ii) "there is no burden." The Court should reject both arguments. Plaintiffs' only theory of relevance—that Vail Health donated to the research foundations to further incentivize their associated business organizations to consummate a physical therapy-related joint venture that never happened—is pure speculation. This is the same specious and unsupported theory the

Special Master and Magistrate Judge rejected. (Doc. 459 at 1). Plaintiffs' suggestion that there is "no burden" in producing the requested documents is equally speculative, baseless, and flawed.

In short, the Magistrate Judge, in adopting the Special Master's order, correctly determined that documents concerning Vail Health's donations to charitable research foundations are irrelevant because they are unrelated to Vail Health's physical therapy practice—the sole focus of this antitrust case—and any potential relevance is so minimal that the burden of producing the information outweighs any possible benefit. Accordingly, the Court should overrule Plaintiffs' objections to the March 13 Order.

## BACKGROUND

### Plaintiffs' Allegations

Plaintiff Lindsay Winninger is a physical therapist who co-owns Plaintiff Sports Rehab Consulting LLC ("SRC"), a physical therapy practice. (Doc. 26 ¶¶ 10-11, 16.) SRC opened a physical therapy location in Vail, Colorado, in December 2015. (*Id.* ¶ 24.) Plaintiffs claim that Vail Health drove SRC out of the alleged Vail Valley physical therapy market by falsely accusing Ms. Winninger of stealing patient files from Vail Health. (*E.g.*, *id.* ¶¶ 119, 158, 166, 207.) Plaintiffs initially brought their claims in Eagle County District Court in 2017. (Doc. 228 at 2-3.) In November 2021, the Eagle County District Court granted summary judgment for Vail Health on all of Plaintiffs' claims, concluding that Vail Health's alleged statements were substantially true because Ms. Winninger downloaded from Vail Health's servers nearly 10,000 documents containing the protected health information of more than 700 patients. (Doc. 228-3.)

### Steadman, VSO, SPRI, and VSOF

The Steadman Clinic ("Steadman") is an orthopedic surgery practice with offices in Aspen, Basalt, Edwards, Frisco, and Vail, Colorado. (*See* The Steadman Clinic, *available at*

https://www.thesteadmanclinic.com/.)  Vail-Summit Orthopaedics & Neurosurgery ("VSO") is also an orthopedic surgery practice, with offices in Vail, Frisco, Edwards, Crested Butte, Gunnison, Telluride, and Granby, Colorado.  (*See* Vail-Summit Orthopaedics & Neurosurgery, About, *available at* https://www.vsortho.com/about-vail-summit-orthopaedics.)  Both Steadman and VSO perform surgeries in Vail Health's surgical facilities.  As such, Vail Health has working relationships with Steadman and VSO for reasons unrelated to physical therapy.

During the relevant time period, neither Steadman nor VSO provided any physical therapy services—*i.e.*, they were not competitors of Vail Health's physical therapy practice.[1]  While Vail Health explored the possibility of entering a joint venture with Steadman and/or VSO concerning the provision of physical therapy services in the alleged Vail Valley market, no joint venture ever came to fruition.  (Doc. 26 at 74.)

The Steadman Philippon Research Institute ("SPRI") is a 501(c)(3) nonprofit organization.  (*See* SPRI, About Us, *available at* https://www.sprivail.org/about-us.)  Among other missions, SPRI develops and validates novel techniques for orthopedic surgery; develops and evaluates noninvasive joint imaging techniques; conducts evidence- or outcomes-based research using clinical data; undertakes biological studies at the molecular and cellular level to investigate the causes and effects of aging, diseases, and injury; administers and coordinates physicians-in-residence fellowships and visiting scholars programs; and hosts conferences. (*See* SPRI, Institute Mission, *available at* https://www.sprivail.org/.) There is no evidence that SPRI uses its funds for any purpose other than its nonprofit mission.

---

[1] VSO did not provide physical therapy services in the Vail Valley until late 2022 and therefore was not a competitor of Vail Health's physical therapy practice during the time period relevant to this lawsuit.

3

The Vail-Summit Orthopaedics & Neurosurgery Research & Education Foundation (formerly the Vail-Summit Orthopaedic Foundation) ("VSOF") is a 501(c)(3) nonprofit organization. (*See* VSON Research & Education Foundation, *available at* https://www.vsonfoundation.org/.) Among other missions, VSOF conducts clinical research studies with the goal of understanding how to improve orthopedic surgery patient outcomes; offers live and virtual educational opportunities for orthopedic surgeons; and engages in community education and outreach activities. (*Id.*) There is no evidence that VSOF uses its funds for any purpose other than its nonprofit mission.

<u>Background Regarding Discovery Dispute</u>

Plaintiffs' Request for Production No. 24 ("RFP No. 24") sought:

> All documents related to any charitable contributions or pledges by Vail Health to SPRI, Steadman, or VSO from November 1, 2012 to the present, including, but not limited to, the amount of any contributions or pledges, the date the contribution or pledge was made, and whether the contribution or pledge was given for a specific purpose.

(Doc. 82-3 at 9.)  Plaintiffs' discovery requests did not define VSO to include VSOF.[2] (*Id.* at 7 ("'Vail Summit Orthopaedics and Neurosurgery' or 'VSO' means the orthopedic clinic and all its doctors and employees at any location in Vail, Edwards, and Frisco, Colorado during the relevant period.").)  Vail Health objected to RFP No. 24 as "overly broad, unduly burdensome, and disproportionate to the needs of the case," and further objected that RFP No. 24 sought "information not relevant to any party's claim or defense, as Plaintiffs' complaint contains no allegations regarding Vail Health's charitable contributions and such contributions are irrelevant to Plaintiffs' antitrust claims." (Doc. 262-1 at 48-49.)  The parties conferred regarding Vail

---

[2] As Vail Health argued in its Response to Plaintiffs' Appeal of the MTC 4 Order, Plaintiffs cannot obtain documents concerning donations to VSOF on appeal because they never sought that discovery in RFP No. 24.  (See Doc. 399 at 10.)

Health's objections to RFP No. 24 (among many other issues) but were unable to reach a resolution.

On September 7, 2021, Plaintiffs filed their Motion to Compel #4 Relating to Joint Ventures and Other Combinations ("MTC 4"). (Doc. 157.) In the section of MTC 4 concerning RFP No. 24, which consisted of just two paragraphs, Plaintiffs cited no legal authority supporting the discoverability of documents concerning Vail Health's charitable donations. (*Id.* at 11-12.)

In its September 28, 2021 response, Vail Health demonstrated that documents concerning Vail Health's charitable donations were irrelevant and that "Plaintiffs provide[d] no support" for the relevance of such documents. (Doc. 176 at 10.) Vail Health's December 6, 2021 Proposed Findings of Fact and Conclusions of Law further demonstrated that "Plaintiffs are not entitled to broad information relating to any and all charitable donations made by the Vail Health Hospital that are unrelated to physical therapy services" and that production of such information would not be "reasonably proportional to the needs of the case." (Doc. 261 at 24-25.)

In September 2022, the Special Master issued his Report and Recommendation Regarding MTC 4 ("MTC 4 Order"). (Doc. 383). With respect to RFP No. 24, the MTC 4 Order held:

> The Plaintiffs appear to be asserting that Vail Health used charitable contributions to entities like Steadman and VSO to "sweeten the pot" on proposed joint ventures or mergers with these entities, in the hopes that the contributions would further encourage the entities to agree to Vail Health's request. The Plaintiffs' concept of relevance is too speculative and conclusory to warrant the burden on Vail Health to respond to a request for production, particularly one this broad. . . . [T]he suggestion that Vail Health offered hidden inducements to those entities to consummate those joint ventures adds little probative value to the fact that the joint venture was proposed in the first instance. . . . Because the relevance of this inquiry is minimal, without any particular factual support, and the burden on Vail Health to respond is significant, the Special Master determines that the requested information is not relevant and will not require Vail Health the obligation of responding to it.

(Doc. 383 at 3-4).

5

On September 29, 2022, Plaintiffs filed their Partial Appeal of Special Master's Recommendation Regarding Plaintiffs' Rule 37 Motion to Compel #4 Relating to Joint Ventures and Other Combinations ("Appeal of the MTC 4 Order"). (Doc. 387). In their Appeal of the MTC 4 Order, Plaintiffs conceded the Special Master's characterization (Doc. 387 at 11 (quoting Doc. 383 at 4)) but argued that the relevance of Vail Health's charitable donations is "a factual dispute that . . . should not be resolved on a discovery motion by the Special Master, but only by the District Court on summary judgment or at trial." (Doc. 387-1 at 12.)

The Magistrate Judge then issued the March 13 Order, addressing "the Reports issued by the Special Master (D. 362, 381, 382, 383, 398)" on Plaintiffs' "five pending motions to compel." (Doc. 457 at 1.) The Magistrate Judge adopted all of the Special Master's Reports, overruling the Objections to those reports filed by the parties, including Documents "367, 386, 387, and 408." (Doc. 457 at 29.)

## ARGUMENT

### I. The Court Should Review the March 13 Order for Clear Error.

"[I]f a magistrate judge's ruling is nondispositive, the Court must affirm the ruling unless it finds that the ruling is 'clearly erroneous or contrary to law.'" *Residences at Olde Town Square Ass'n v. Travelers Cas. Ins. Co. of Am.*, 413 F. Supp. 3d 1070, 1072 (D. Colo. 2019); Fed. R. Civ. P. 72(a). Plaintiffs argue that the Court must either consider *de novo*, or remand to the Magistrate Judge to consider *de novo*, whether the documents requested are relevant because the Magistrate Judge did not conduct a *de novo* review of the MTC 4 Order (Doc. 383). Plaintiffs are incorrect. "[A] brief order expressly stating the court conducted *de novo* review is sufficient." *Northington v. Marin*, 102 F.3d 1564, 1570 (10th Cir. 1996). The Magistrate Judge was not required to "make any specific findings." *Garcia v. City of Albuquerque*, 232 F.3d 760, 766 (10th Cir. 2000).

6

The Magistrate Judge satisfied its obligations. The March 13 Order states that the Magistrate Judge considered the "objected-to findings of fact or conclusions of law by the Special Master *de novo*." (Doc. 457 at 3.) "[E]xpress references to *de novo* review in [an] order must be taken to mean [the court] properly considered the pertinent portions of the record, absent some clear indication otherwise." *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 724 (10th Cir. 1993). The cases Plaintiffs cite on this point are inapposite. In *Polin v. Dun & Bradstreet, Inc.*, 634 F.2d 1319, 1321 (10th Cir. 1980), the Court remanded to the district court to conduct de novo review of a dispositive summary judgment motion where it was "apparent that the [district court] did not review the special master's report." Here, by contrast, it is clear from the March 13 Order that the Magistrate Judge reviewed the Special Master's report. (Doc. 457 at 10-11 (analyzing Vail Health's objections to the MTC 4 Order and then adopting that report).) The other case Plaintiffs cite—*Ma v. Am. Elec. Power Co.*, 697 F. App'x 448, 450 (6th Cir. 2017)—holds that motions for sanctions, fees and costs are not to be determined by a magistrate judge because they are dispositive of a claim. This case says nothing about the standard under which the Court should review a magistrate judge's order concerning discovery issues. Under Rule 72(a), a magistrate judge's order will be deemed "clearly erroneous or contrary to law" only if the reviewing court, on the entire evidence, is left with the "definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quotation omitted). The "contrary to law" standard permits "plenary review as to matters of law," but the Court will set aside a magistrate judge's order only if it applied the wrong legal standard or applied the appropriate legal standard incorrectly. *Residences at Olde Town Square Ass'n*, 413 F. Supp. 3d at 1072. In short, "[b]ecause a magistrate judge is afforded broad discretion in the resolution of non-dispositive . . . disputes, the court will overrule the magistrate judge's

determination only if his discretion is abused." *Id.* (citation omitted).

Because the Magistrate Judge conducted the review required by Rule 53(f), this Court should review the March 31 Order under the clear error / contrary to law standard. However, even if the standard of review is *de novo*, as Plaintiffs argue, the Court should reach the same conclusion as the Special Master and the Magistrate Judge and disallow the discovery sought by RFP No. 24.

## II.     It Was Not Clearly Erroneous to Conclude Vail Health's Charitable Donations Are Irrelevant to Plaintiffs' Claims Concerning Vail Health's Physical Therapy Clinic.

In adopting the MTC 4 Order concerning RFP No. 24, the Magistrate Judge correctly applied the *de novo* legal standard and did not abuse its discretion by disallowing discovery of Vail Health's charitable donations. Courts commonly reject broad discovery requests based on speculative theories of relevance. *See, e.g.*, *Pipeline Prods. v. Madison Cos., LLC*, No. 15-4890-KHV, 2019 U.S. Dist. LEXIS 41046, at *17-18 (D. Kan. Mar. 14, 2019) (defendants were not required to produce personnel files because plaintiff's only theory of relevance of the documents was their "speculation," unsupported by fact, that deponents in the case had been forced to sign confidentiality agreements); *Church v. Dana Kepner Co.*, No. 11-cv-02632-CMA-MEH, 2013 U.S. Dist. LEXIS 341, at *20 (D. Colo. Jan. 2, 2013) (finding defendant was not entitled to discover settlement agreement because "Defendant's assertion that these agreements *may* reflect a release of claims or Plaintiffs' knowledge of Defendant's potential liability is pure speculation").

In their Partial Objection, Plaintiffs again suggest—as they did in briefing before the Special Master and Magistrate Judge—that donations to organizations affiliated with Steadman and VSO could support an intent by Vail Health to induce Steadman and VSO to increase referrals to Howard Head and refrain from opening up their own physical therapy practices. (Doc. 459 at 3-4.) But Plaintiffs again fail to support this speculative conspiracy theory with any facts. After five years of discovery, 70,000 pages of documents, more than 40 depositions and 40 third party

8

subpoenas, including of Steadman and VSO, Plaintiffs have not adduced any evidence suggesting that Vail Health's charitable donations were "sham" donations or in any way connected to its physical therapy practice. (Doc. 228 at 3-4.)

The evidence Plaintiffs cite does not link Vail Health's charitable donations with Vail Health's Howard Head physical therapy practice in any way. The two presentations Plaintiffs reference barely mention Howard Head and do not connect it at all to Vail Health's donations to SPRI and VSOF. (Doc. 459 at 3-4 (citing Doc. 158-8).) While Plaintiffs suggest the presentations identify Howard Head as one of SPRI's "partners," in fact, Howard Head is only identified as one of several "Scientific Collaborators" of SPRI, along with the University of Texas Health Center, Mayo Clinic, University of Wisconsin, and Northwestern University. (*See* (Doc. 459 at 4 (citing 158-8 at VH_00004079)); Doc. 158-8 at VH_Fed_00004079.). None of the other documents Plaintiffs cite that suggest a relationship between Howard Head and Steadman (Doc. 459 at 4-5)—which is not surprising given Steadman is an orthopedic surgery practice and Howard Head provides post-surgical physical therapy—connect Howard Head to donations to SPRI and VSOF.

Perhaps recognizing that they have no evidence for their speculative theory, Plaintiffs argue for the first time that the Special Master and Magistrate Judge committed legal error by not compelling production of agreements related to Vail Health's charitable contributions. Plaintiffs contend these are necessary to determine whether the agreements contain any restrictions on trade, and that the Special Master and Magistrate Judge were required to conduct a rigorous factual and legal analysis of the agreements before deciding MTC 4. (Doc. 459 at 8.) First, Plaintiffs waived this argument by failing to raise it with either the Special Master or Magistrate Judge. *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."); *Gilbert v. United States Olympic*

*Comm.*, 423 F. Supp. 3d 1112, 1125 (D. Colo. 2019) (same). Furthermore, Plaintiffs cite no authority requiring the rigorous "factual and legal analysis" they describe to decide that an RFP is overly broad, unduly burdensome, or not proportional to the case needs.[3] (Doc. 459 at 8.)

### III. The Finding That the Burden or Expense of Obtaining the Requested Discovery Outweighed Its Likely Benefit Was Not Clearly Erroneous.

Plaintiffs challenge the Special Master's finding that the burden of producing documents responsive to RFP No. 24 would be "significant" when compared with the information's "minimal" relevance. Plaintiffs state—with zero support whatsoever—that Vail Health could produce documents "with the click of a button" and that the Special Master should not have considered burden because Vail Health objected on relevance. (Doc. 459 at 9-10.) Both arguments are wrong. Vail Health objected to RFP No. 24 as irrelevant and "unduly burdensome." (Doc. 262-1 at 48-49). And, under Rule 26(b)(1), the Special Master was *required* to balance the burdens of searching for additional responsive documents against the likely benefits. Fed. R. Civ. P. 26(b)(1). The Special Master correctly understood that electronic collection and review of *any* information requires more than the "click of a button." Moreover, RFP No. 24 seeks a broad swatch of documents (not merely a "few" as Plaintiffs improperly suggest): indeed, it asks for *"[a]ll* documents related to *any* charitable contributions or pledges by Vail Health to SPRI, Steadman, or VSO." (Emphasis added.) Thus, the Special Master correctly concluded that the burden outweighed any benefit of producing irrelevant charitable donation information.

### CONCLUSION

Vail Health respectfully requests that the Court overrule Plaintiffs' objections to the March 13 Order.

---

[3] For example, Plaintiffs cite *NCAA v. Alston*, 141 S. Ct. 2141, 2156 (2021), which affirms a district court's application of a rule of reason analysis in its 50-page decision resolving a 10-day bench trial, and thus has no application to this appeal of discovery rulings.

Respectfully submitted this 10th day of April, 2023.

   *s/ Jacqueline V. Roeder*
Jacqueline V. Roeder
Daniel A. Richards
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, Colorado, 80202
Telephone: 303.892.9400
Facsimile: 303.893.1379
Email: jackie.roeder@dgslaw.com
       daniel.richards@dgslaw.com

*Attorneys for Defendant VAIL CLINIC, INC., d/b/a VAIL HEALTH, a Colorado nonprofit corporation*