**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02075-WJM-SKC

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation,

      Defendant.

---

**PLAINTIFFS' BRIEF REGARDING SCOPE OF MARCH 13, 2023
MAGISTRATE JUDGE ORDER AND SPECIAL MASTER ORDERS #1-4**

---

**INTRODUCTION**

Plaintiffs requested judicial guidance on Vail Health's production of custodial files to obviate disputes and delays before the production proved to be inadequate under the discovery orders of Magistrate Judge Gallaher and the Special Master. Two years have come and gone and hundreds of thousands of dollars in attorney fees have already likely been spent on discovery disputes and motions. The time has come to end this cycle, and Plaintiffs hope this is a beginning. As for the discovery issues presented here, it would be far better to have an understanding as to the custodians whose files must be searched, and the ESI and documents to be produced *before* production to avoid further motions and delays.[1] Plaintiffs are optimistic this will be the beginning of the end of this logjam, and they will soon move to amend the Scheduling Order to identify a finish line. Hopefully, that will be with Vail Health's agreement.

---

[1] *DeGeer v. Gillis*, 755 F. Supp. 2d 909, 929 (N.D. Ill. 2010).

## ARGUMENT

**I.**   **AS THE MARCH 13, 2023 ORDER CONFIRMS, BROAD DISCOVERY UNDER FED. R. CIV. P. 26 IS PARTICULARLY APPROPRIATE IN ANTITRUST CASES.**

Fed. R. Civ. P. 26(b)(1) provides, in relevant part, "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense…." "The scope of discovery 'is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues."[2]   Generally, "a request for discovery should be considered [relevant] if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."[3]   This broad interpretation of relevance advances Rule 26's liberal purpose of permitting the parties to develop the facts, theories, and defenses[4] and is particularly appropriate in antitrust cases.[5]

Although the framework for alleging a *prima facie* § 2 Sherman Act case rests on defining a geographic market and showing undue concentration in that market, that definition may change as facts are developed in discovery.[6]   A plaintiff may have

---

[2]   *Rose Banks v. Jackson*, Civil Action No. 20-cv-02074-KMT, 2021 U.S. Dist. LEXIS 163420, at *8-9 (D. Colo. Aug. 27, 2021) (quoting *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir.1995)).

[3]   *Id.* (quoting *Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co.*, 300 F.R.D. 678, 683 (D. Colo. 2014)).

[4]   *Hickman v. Taylor*, 329 U.S. 495, 501 (1947) (discovery allows plaintiff to develop facts supporting claims, allows defendant to develop facts supporting defenses, allows plaintiff to pin down defendant's defenses, and defendant to pin down plaintiff's theories of liability); *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978).

[5]   *Health Alliance Plan of Mich. v. Blue Cross Blue Shield of Mich. Mut. Ins. Co.*, Civil Action No. 14-13788, 2018 U.S. Dist. LEXIS 233332, at *7 (E.D. Mich. Jan. 2, 2018); *In re Plastics Additives Antitrust Litig.*, No. Civ. A. 03-2038, 2004 U.S. Dist. LEXIS 23989, 2004 WL 2743591, at *14 (E.D. Pa. Nov. 29, 2004) ("It is well-settled that courts presiding over antitrust cases generally take a liberal view of relevance in determining scope of discovery."); *In re Intel Corp. Microprocessor Antitrust Litig.*, No. 05-1717-JJF, 2007 U.S. Dist. LEXIS 3407, 2007 WL 137152, at *5 (D. Del. Jan. 12, 2007) (same).

[6]   *Whole Foods*, 548 F.3d at 1036-37.

alternative theories of the anticompetitive harm caused by a defendant, depending on inconsistent market definitions.  While on the merits, the plaintiff would have to proceed with only one of those theories, and until the facts are fully developed, the market definition is not static.[7]  Thus, "the relevant market's boundaries are not determined by allegations, but by evidence regarding market realities….[Because] market definition is a highly fact-based inquiry…the definition is dependent on facts revealed during discovery. This non-controversial proposition is black-letter law for antitrust cases."[8]  This explains why antitrust discovery on important issues like geographic market entails broad discovery.[9]  Courts are not reversed for granting too much discovery, but they may be reversed for precluding a party from relevant discovery that goes directly to a material issue in dispute,[10] like the discovery ordered in the March 13, 2023 Magistrate Judge Order and Special Master Orders #1-4.

---

[7]      *Id*. at 1036 (citing *United States v. Baker Hughes Inc.,* 908 F.2d 981, 982-83 (D.C. Cir. 1990)).

[8]      *Health Alliance Plan of Mich.*, 2018 U.S. Dist. LEXIS 233332, at *7.

[9]      *See* ECF No. 457 at 9 ("geographic market…is a highly relevant issue…and it is appropriate to allow…considerable latitude in discovery on that question").  *See also Found. For Interior Design Educ. Res. v. Savannah Coll. of Art & Design*, 244 F.3d 521, 531 (6th Cir. 2001) ("Market definition is a highly fact-based analysis that generally requires discovery."); *In re Loestrin 24 Fe Antitrust Litig.,* No. 1:13-MD-2472-S-PAS, 2017 WL 1491911, at *4 (D.R.I. Mar. 15, 2017) (ordering discovery beyond alleged market; court's should not conflate scope of discovery with market definition); *SmithKline Beecham Corp. v. Apotex Corp.,* Nos. 99-CV-4304, 2006 WL 279073, at *3 (E.D. Pa. Jan. 31, 2006) ("broad discovery" applies to geographic scope and justifies discovery outside alleged market); *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 574 (D. Kan. 2009) ("discovery…without geographic limits…is relevant").

[10]     *See, e.g., Weahkee v. Norton*, 621 F.2d 1080, 1083 (10th Cir. 1980) ("Erroneous denial of discovery is ordinarily prejudicial in the absence of circumstances showing it is harmless."); *Shaklee Corp. v. Gunnell*, 748 F.2d 548, 550 (10th Cir. 1984) (same); *Glad-A-Way Gardens v. Lynn Mayer's Great Lakes Glads*, No. 93-16667, 1995 U.S. App. LEXIS 7835, at *15-16 (9th Cir. Apr. 6, 1995) (denying relevant discovery in antitrust suit made it impossible to resist summary judgment and constituted reversible error).

II.     **THE MAGISTRATE JUDGE ORDERED BROAD ANTITRUST DISCOVERY AS SET OUT IN SPECIAL MASTER ORDERS #1-4.**

A.      **The Dispute About The Scope Of The Discovery Orders.**

During the parties' recent discovery conferrals, it became apparent that Vail Health is taking a restrictive view of the March 13 Order and Special Master Orders #1-4.  As described below, having lost five motions to compel, Vail Health is now attempting to cover up its exclusionary conduct by construing the Orders in a manner that conceals its illegal conduct.  Vail Health's construction would preclude further discovery of facts that led to the exclusion of Steadman—a potential horizontal competitor—from the physical therapy market.  It would eliminate discovery into the negotiations regarding the joint ventures and how and why they eventually resulted in consummated combinations that led to the exclusion of Steadman from the market.  Its argument is "follow the shiny object"—the Orders are only about the benign opening of satellite clinics in new locations. But the March 13 Order permits Plaintiffs "considerable latitude" to conduct discovery into Vail Health's alleged scheme to prevent a potential direct horizontal competitor— Steadman—from entering the physical therapy market.  The scheme was intended to expand and strengthen Vail Health's monopoly power in physical therapy, and as it worked out, that is what happened.  As discussed below, this was *per se* illegal conduct violating both §§ 1 and 2 of the Sherman Act, into which the Orders permit discovery.

Vail Health's construction of the Orders would also preclude further discovery of information related to the definition of the relevant geographic market.  For example, emails and other documents discussing whether physical therapy patients required clinical presence in Basalt, Dillon, and other Summit locations for their convenience would be an important factor in defining the relevant geographic market.  Communications

discussing whether the Vail Pass and Glenwood Canyon present insurmountable geophysical barriers to patients travelling from Summit of Garfield counties to Eagle County for physical therapy are also relevant to that analysis. So too are communications addressing why new or expanded facilities were required in other markets when Vail Health had just spent over $200 million in the Vail Valley to expand its services there. Discovery into these geographic market issues are important holdings of the Orders.

Before going there, however, a bit of procedural background may provide context for this discovery dispute. The discovery Orders at issue address motions to compel filed by Plaintiffs in summer 2021 and decided by the Special Master a year later. Plaintiffs grouped their motions thematically and for convenience purposes,[11] although there was some overlap in legal authorities between them and the discovery sought to be produced. Plaintiffs' motion to compel #1 focused on the relevant geographic market,[12] motion to compel #2 focused on monopoly power,[13] and motion to compel #4 focused on combinations.[14] To a certain extent, there are both economic and legal antitrust principles that are common to the elements of a § 2 claim.

Vail Health opposed the motions, in relevant part here, arguing that Plaintiffs were not entitled to *any* discovery outside the Vail Valley that Plaintiffs pled and identified as the relevant geographic market. Both the Special Master and Magistrate Judge rejected that argument, but Vail Health continues to hew to a narrow slice of what must be produced to comply with the March 13 Order and Special Master Orders #1-4.

---

[11]   ECF No. 457 at 2.
[12]   ECF No. 127.
[13]   ECF No. 129.
[14]   ECF No. 157.

For example, its counsel seems to assert that Vail Health is only required to produce proposed and consummated joint ventures, mergers, and combinations concerning physical therapy services but only for the new facilities in Dillon and Basalt. Its proposed construction completely ignores discovery going directly to the violative exclusionary conduct at issue.  Vail Health's counsel made it clear that they are not going to produce any custodial files that go to the whole; that is, discovery that explains the evolution of the joint ventures that ultimately led to the combinations that involve orthopedic surgery, physician treatment, and resulting physical therapy.  They have also made it clear that they are not going to produce anything that goes to the definition of the relevant geographic market.

Plaintiffs contend that the information the Orders require to be produced will be directly relevant to an explanation of the anticompetitive conduct that led to the exclusion of Steadman as a competitor from the physical therapy product/service market.  "Plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components…."[15]   Exclusionary conduct should "not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole."[16] Plaintiffs further contend that the information to be produced is relevant to the definition of the relevant geographic market—that is, the convenience of the patients.

Under Vail Health's rather vague and elliptical explanation, it has taken the position that the discovery Orders are limited to three categories of information: (1) if Vail Health

---

[15]   *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) (quoting *United States v. Patten*, 226 U.S. 525, 544 (1913) (noting jury needed to look at whole picture; not merely individual figures in it)).
[16]   *Id.*

considered acquiring a physical therapy competitor in Dillon or Basalt, then those documents would be produced; (2) if Vail Health entered into a lease agreement in Dillon or Basalt for Howard Head physical therapy, then those documents would be produced; and (3) if Vail Health entered into an agreement to provide physical therapy services to the Basalt or Dillon surgery center, then those documents would be produced.[17]

Apparently recognizing that the discovery Orders do not support Vail Health's restrictive view, Vail Health modified its approach on April 20, 2023—fifteen minutes before a Rule 7.1(a) conferral call.  Vail Health provided Plaintiffs a revised search term list, which recognized, but only as to competitors, that the Orders required more than just discovery related to Dillon and Basalt.[18]  But as to other issues, Vail Health maintains that it is only required to search for limited and specific documents for Dillon and Basalt—the two newly constructed facilities.[19]  The Orders at issue, however, are not so limited.

**B.    The Magistrate Judge And Special Master Both Addressed And Rejected Vail Health's Narrow Interpretation.**

In the March 13 Order, the Magistrate Judge addressed the scope of discovery outside the Vail Valley in relation to positions taken by Vail Health's antitrust expert, Dr. Noether.   The March 13 Order quotes Special Master Order #1: "In light of Dr. Noether's comments, opinion, and report, such production *shall include* other locations outside the Howard Head Vail Valley locations, including Basalt, Summit, and Garfield Counties."[20]  The March 13 Order then states that "the appropriate geographic

---

[17]    Ex. 1 [April 12, 2023 Vail Health search terms].
[18]    *See, e.g.,* Ex. 2 at "Howard Head Competitors in Basalt, and Summit and Garfield Counties" [April 20, 2023 Vail Health revised search terms with Plaintiffs' comments].
[19]    *Id.* at "Physical Therapy Aspects of Basalt [and Dillon] Surgery Center."
[20]    ECF No. 457 at 5 (emphasis added).  The Special Master also referenced Denver to Rifle, Glenwood Springs, Frisco, Dillon, Silverthorne, Breckenridge, and Aspen.  ECF Nos. 362 at 3-4, 19; 383 at 3.

market remains hotly contested and thus, there is no particular rule that prevents each side from engaging in discovery to test the contours of the other side's position."[21]   The March 13 Order relies on an oft-cited case, *Kellam Energy, Inc. v. Duncan,*[22] in which the Delaware district court held that regardless of how the "geographic market is eventually defined in this action, the boundaries of that market do not set the geographic limits of discovery—any more than the statute of limitations sets the temporal limit of discovery."[23]

Accordingly, the Magistrate Judge held that "Dr. Noether's contention that the appropriate market extends at least to Garfield and Summit Counties offers enough of a competing market definition to be testable.  Thus, the Plaintiffs are entitled to discovery that is reasonably calculated to allow them to test the contours of the market that Dr. Noether has identified."[24]  And because the geographic-market question "is a highly relevant issue," the Magistrate Judge made it clear that "it is appropriate to allow both sides ***considerable latitude in discovery*** on that question."[25]  The Magistrate Judge also rejected Vail Health's contention (just as the Special Master had) that the production was burdensome or disproportionate, particularly when weighed against "the importance of the question of the appropriate geographic market."[26]  The Magistrate Judge then "agreed with the Special Master that Vail Health must produce the material directed by the Special Master"[27] when he adopted Order #1 "in its entirety…."[28]

---

21      ECF No. 457 at 7.
22      *Id.*
23      *Id.*
24      *Id.* at 8.
25      *Id.* at 9 (emphasis added).
26      *Id.*
27      *Id.*
28      *Id.*

As to Special Master Orders #2-4, the Magistrate Judge specifically addressed Vail Health's objection to Order #4 related to RFP #7 and 8, which seek documents related "to any joint venture, merger, or other combination between" Vail Health and two orthopedic clinics, Steadman and VSO, that relate "*in any way* to providing physical therapy services."[29]   Certainly, the language "***in any way providing physical therapy services***" includes discovery of *per se* exclusionary conduct such as product and territorial market allocation.   Under the guise of "expansion" plans, there was an express intent to prevent (in antitrust terms, "exclude") Steadman and VSO from competing with Howard Head for physical therapy business.

That Howard Head was part of the expansion plans from the get-go is evident by various documents,[30] including a Vail Health Steering Committee market analyses that Steadman (not Vail Health) produced to Plaintiffs.[31]   Until yesterday (April 20), Vail Health steadfastly and repeatedly refused to include a search for these market analyses that were conducted by third-party consultants, Hammes Company, Percival Health Advisors, and its parent company, Remedy.[32]   And when asked during a recent conferral whether Vail Health would produce the Hammes documents, including the compilation found in ECF No. 128-1, Vail Health would not agree that those documents are responsive or

---

[29]   ECF No. 383 at 2 (emphasis added).
[30]   ECF Nos. 127-19; 127-20; 128-2 at VH_Fed00804-06, 826-27; 128-5 at VH_Fed001523; 128-6 at VH_Fed001434, 1439-40 ("evaluate potential expansions in Summit, Pitkin, Garfield" and "align expansion with other medical groups," like Steadman and VSO, Howard Head's primary referral sources for physical therapy).
[31]   *See, e.g.,* ECF No. 128-1 at STEADMAN-002703, 2706, 2708-16, 2718, 2721-24, 2728, 2733, 2754, 2760, 2775, 2779.
[32]   *Compare* Ex. 1 *with* Ex. 2.   Since at least June 2021, Plaintiffs have sought Hammes documents, and despite Order #3 requiring the production of the Steering Committee documents, Vail Health still has not produced them.   *See* ECF No. 382 at 2.

would be produced.  And when Plaintiffs asked how the Hammes market analyses—which repeatedly refers to Howard Head, former Howard Head SVP Nicholas Brown, and physical therapy—could not be responsive to the March 13 Order, Vail Health's counsel had no answer, likely because Vail Health's position is not support by the March 13 Order.

Based on the Magistrate Judge's analysis of the geographic market related to Special Master Order #1, the Magistrate Judge overruled Vail Health's objections to RFP #7-8, as well as all other objections to Orders #2-4 requiring discovery outside the Vail Valley.  In doing so, the Magistrate Judge concluded that Vail Health's proffer of its expert's opinions about the geographic market also "put at issue questions about **Vail Health's operations in areas outside the Vail Valley**."[33]  In the end, the Magistrate Judge adopted the Special Master Orders #2-4 "in their entirety," and ordered Vail Health to produce the items specified in Special Master Orders #2-4,[34] which includes documents related to any expansion analyses and plans involving Vail Health's orthopedic partners (Steadman and VSO) and Howard Head physical therapy.

### C. Despite The March 13 Order, Vail Health Refuses To Supplement Certain Discovery On The Grounds That Discovery Is Closed.

The Magistrate Judge's March 13 Order and Special Master Orders #1-4 require Vail Health to disclose information related to its purported search for responsive documents, confirms that "Plaintiffs may inquire via depositions or other remaining discovery devices as to why documents that seem like they should still exist no longer do, and in appropriate circumstances, the Plaintiffs can seek sanctions if Vail Health engaged

---

[33]  ECF No. 457 at 11 (emphasis added).
[34]  *Id.*

in acts of concealment or spoliation."[35]  The Orders, either directly or by implication, also require Vail Health to produce documents and supplement answers to interrogatories, which Plaintiffs have identified multiple times in various discovery memoranda.[36]

Vail Health has not responded to Plaintiffs' memoranda identifying the open discovery items, other than to state that certain patient data and (unidentified) answers to interrogatories will be produced.  To date, they have not.  Additionally, during the April 20 conferral, Vail Health stated that it had no obligation to supplement any prior discovery responses, apparently even if they are incomplete and inaccurate.

For example, in RFP #2 and 4,[37] Plaintiffs seek financial statements, projections, and financial analyses related to Howard Head.  In its response to those requests, Vail Health stated that it "will produce financial statements, projections, and financial analyses for Howard Head…created after December 2015 to the extent they exist."[38]  But Vail Health now claims it has no duty to supplement, even for the new Dillon and Basalt facilities, because discovery closed before the March 13, 2023 Order was issued.  But Vail Health's position is contrary to Rule 26(e) and *Rodriguez v. IBP, Inc.,*[39] in which the Tenth Circuit noted a party has a continuing duty to disclose even after discovery is closed.[40]

---

[35]    ECF NO. 383 at 2.  Plaintiffs will be conferring with Vail Health shortly about amending the Scheduling Order to accommodate the open discovery items ordered and implicated by the March 13, 2023 Order and Special Master Orders #1-4.

[36]    *See, e.g.,* Ex. 3 [Pls.' April 13, 2023 Memorandum].

[37]    ECF No. 381 at 5.

[38]    ECF No. 127-12 at RFP #2.  *See also id.* at RFP #4.

[39]    243 F.3d 1221 (10th Cir. 2001).

[40]    *Id.* at 1230.

III.  **THE DISCOVERY ORDERED GOES TO THE MONOPOLIZATION OF RELEVANT PRODUCT AND GEOGRAPHIC MARKETS THROUGH THE EXCLUSION OF STEADMAN—A POTENTIAL COMPETITOR.**

A contract or combination to monopolize[41] or attempt to monopolize[42] is illegal under Sherman Act § 2.[43]  Plaintiffs first allege that Vail Health attempted to monopolize the Vail Valley (the relevant geographic market) for physical therapy (the relevant product/service market).[44]  For purposes of the discovery at issue here, that means the period when Vail Health was attempting to put together possible joint ventures and combinations—contractually or otherwise—with Steadman that had a possibility of monopolizing, maintaining, or solidifying a monopoly in the Vail Valley, even though the monopolization "ha[d] not yet succeeded."[45]

*United States v. American Airlines, Inc.* holds that a party "need not allege or prove an agreement to monopolize in order to establish an attempted joint monopolization under section 2"—that is, "an agreement is not an absolute prerequisite for the offense for the attempted joint monopolization…."[46]  That an absolute agreement is not required has been adopted by the Tenth Circuit,[47] although here the attempt ultimately proved successful by excluding Steadman from relevant markets.  Although the precise form of

---

[41]  *United States v. Grinnell*, 384 U.S. 563, 570-71 (1966); *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1027 (10th Cir. 2002) (citation omitted).
[42]  *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456 (1993); *Christy Sports, LLC. v, Deer Valley Resorts Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009).
[43]  *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 605 (1985).
[44]  ECF No. 26 ¶¶ 256-73.
[45]  *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 474-75 (5th Cir. 2000) (emphasis added). Plaintiffs allege and their expert opined that Vail Health had achieved monopoly power before it began negotiating the joint ventures and combinations with Steadman.
[46]  743 F.2d 1114, 1117, 1122 (5th Cir. 1984).
[47]  *Colo. Interstate Gas Co. v. Natural Gas Pipeline Co. of Am.,* 885 F.683, 695-96, n.21 (10th Cir. 1989) ("it is no defense…that…[an] attempt to monopolize proved to be unsuccessful").

the initially proposed joint venture evolved into a much more expansive and, Plaintiffs contend, perniciously anticompetitive and harmful combination, contracts and a combination(s) were ultimately formed between Vail Health and Steadman.  It is the facts underpinning the formation of those anticompetitive relationships, as well as the deleterious effect of the restrictive contracts to allocate geographic territory and product/service markets, that are the basis for the discovery at issue here.

Certain discovery produced to date demonstrates that Vail Health induced Steadman to agree: (1) to exclude itself as a potential horizontal competitor of Vail Health in the physical therapy product/service market, and (2) to extend that physical therapy restriction to other Colorado counties beyond Eagle, including Summit, Garfield and Basalt (which lies in Eagle County).  The allocation of relevant product/service and/or geographic markets constitute *per se* violations of both Sherman Act §§ 1 and 2.[48]  In *United States v. Topco Associates, Inc.*, the U.S. Supreme Court held that agreements between competitors to allocate territories to minimize competition are illegal: "One of the classic examples of a *per se* violation of § 1 is an agreement between competitors at the same level of the market structure to allocate territories in order to minimize competition....This Court has reiterated time and time again that '[h]orizontal territorial limitations...are naked restraints of trade with no purpose except stifling of competition.' Such limitations are *per se* violations of the Sherman Act."[49]

Steadman was a serous potential horizontal competitor for the physical therapy market—an existential threat to Howard Head—during the period beginning sometime

---

[48]    *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 50 (1990).
[49]    405 U.S. 596, 608 (1972) (citations omitted).

after 2014 and going up until about 2019.  There can be no dispute that through the combination with Steadman, Vail Health gained the exclusive right to provide physical therapy services in the restricted counties of Eagle (including Basalt), Summit, Garfield, Pitkin, and Routt.  By contract, Steadman and its physicians were precluded from competing for physical therapy business in those territories under a noncompete provision in Steadman's Vail real estate lease.  There was, therefore, not only a contract, but a combination with Steadman by which Vail Health allocated orthopedic medicine services to Steadman, and Vail Health retained the exclusive right (between those parties) to provide physical therapy services, all in violation of the Sherman Act.[50]

An important element of the arrangement was that the parties agreed to allocate geographically where the physical therapy services would be provided by Vail Health through its Howard Head clinic and geographically where Steadman could not provide physical therapy services.  In other words, the parties agreed to desist from competing for physical therapy services in the mountain territories of Colorado (read, where the overwhelming majority of orthopedic ski and snowboard injuries occur).  Even though the express noncompete agreement between the parties did not include an explicit agreement on prices to be charged for the patient referrals Steadman sent to Howard Head for physical therapy, "[u]nder the Sherman Act a combination formed for the purpose and with the effect of raising…or stabilizing the price…is illegal *per se*."[51]

---

[50]    *United States v. Griffith,* 334 U.S. 100, 104-05 (1946); *New York ex rel. Spitzer v. St. Francis Hosp.*, 94 F. Supp.2d 399, 415 (S.D.N.Y. 2000); *Blue Cross & Blue Shield United of Wisc., Inc. v. Marshfield Clinic & Sec. Health Plan of Wisc., Inc.*, 65 F.3d 1406, 1415 (7th Cir. 1995).

[51]    *Palmer*, 498 U.S. at 48 (citing *United States* v. *Socony-Vacuum Oil Co.*, 310 U.S. 150, 223 (1940); *Catalano, Inc. v. Target Sales, Inc.,* 446 U.S. 643 (1980) (*per curiam* ); *Nat'l Society of Professional Engineers v. United States,* 435 U.S. 679 (1978)).

14

Given this analysis, examples of the documents and information required under the March 13, 2023 Order and Special Master Order #1-4 include such things as:

- Emails and documents related to any market analyses, including those involving Hammes, Percival, and Remedy

- Emails regarding patient data, patient travel distances, patient location preferences, travel impediments for patients to obtain physical therapy

- Emails, texts, and any other documents related to expansion plans and the process of selecting and deselecting particular markets

- Emails, texts, and agreements with Steadman and VSO related in any to physical therapy, including communicated about partnering, aligning, or collaborating; joint ventures or other contractual relationships; patient referrals; leasing arrangements and other surgery center agreements

- Identification of witnesses with knowledge about the expansion plans

- Howard Head financials, projections, pricing, costs, doctor referral data

- Emails and documents related to physical therapy competitors, including any plans or strategies related to those competitors

- Board documents and communications related to expansion plans

### CONCLUSION

Plaintiffs respectfully request that the Court issue an Order consist with the March 13, 2023 Order and Special Master Order #1-4, identify the custodians and locations that Vail Health must search, and the search terms that it must use to identify responsive ESI and documents.  Plaintiffs further request that the Court's order establish a time of 21 days following the filing of the order for production.

Dated: April 21, 2023

*s/Alan L. Kildow*
Alan L. Kildow, MN# 0143133
790 Potato Patch Drive
Vail, CO 81657
Telephone: (970) 390-6675
E-mail: alkildow@aol.com

Jesse Wiens, Colo. #33903
Jesse Wiens Law
0069 Edwards Access Road, Suite 8
Edwards, Colorado 81632
Telephone: (970) 855-0078
E-mail: jesse@jessewienslaw.com

Sonya R. Braunschweig, MN# 0290292
5501 Irving Avenue South
Minneapolis, MN 55419
Telephone: (612) 819-2304
E-mail: sonya.braunschweig@gmail.com

Attorneys for Plaintiffs Lindsay Winninger and
Sports Rehab Consulting LLC

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2023, I served a true and correct copy of Plaintiffs' Brief Regarding Scope of March 13, 2023 Magistrate Judge Order And Special Master Orders #1-4, including exhibits, via the Court's ECF system on:

Jackie Roeder
Daniel Richards
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO  80202

Counsel for Defendant Vail Health

*s/ Alan L. Kildow*
Alan L. Kildow