```
 1                    UNITED STATES DISTRICT COURT
                         DISTRICT OF COLORADO
 2

 3   SPORTS REHAB CONSULTING,     .  Case No. 19-cv-02075-WJM-SKC
     LLC, and LINDSAY WINNINGER, .
 4   an individual,               .
                                  .
 5              Plaintiffs,        .
                                  .
 6   vs.                          .  Byron G. Rogers US Courthouse
                                  .  1929 Stout Street
 7   VAIL CLINIC, INC. a Colorado.  Denver, CO  80294
     nonprofit corporation doing .
 8   business as VAIL HEALTH,     .
                                  .
 9              Defendant.         .
                                  .  April 26, 2023
10   . . . . . . . . . . . . . . .  9:32 a.m.

11

12        TRANSCRIPT OF PROCEEDINGS HELD BEFORE THE HONORABLE
             S. KATO CREWS, UNITED STATES MAGISTRATE JUDGE
13

14   APPEARANCES:

15   For the Plaintiff:           Alan L. Kildow, Attorney at Law
                                  By:  Alan L. Kildow
16                                790 Potato Patch Drive
                                  Vail, CO  81657
17                                (970) 390-6675

18                                Sonya R. Braunschweig*
                                  5501 Irving Avenue South
19                                Minneapolis, MN  55419
                                  (612) 819-2304

20   For the Defendant:           Davis Graham & Stubbs
                                    LLP-Denver
21                                By:  Daniel A. Richards
                                  By:  Jacqueline V. Roeder
22                                1550 17th Street
                                  Suite 500
23                                Denver, CO  80202
                                  (303) 892-9400
24

25
```

1   Appearances continued:

2   Special Master:              The Hon. William T. Ruckriegle*
                                 P. O. Box 3305
3                                Breckenridge, CO  80424
                                 (970) 390-9865
4
    Court Recorder:              Clerk's Office
5                                U.S. District Court
                                 1929 Stout Street
6                                Denver, CO  80294

7   Transcription Service:       AB Litigation Services
                                 216 16th Street, Suite 600
8                                Denver, CO  80202
                                 (303) 296-0017
9
    *Appearing by telephone.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.

1          (Time noted:  9:32 a.m.)

2          THE COURT:  All right.  Good morning.  This is

3  Magistrate Judge Crews.  We'll go on the record in 19-cv-

4  2075, Sports Rehab Consulting, LLC, et al. versus Vail

5  Clinic, Inc.

6          I'll take appearances of counsel, please, starting

7  with the Plaintiff.

8          MR. KILDOW:  Good morning, Your Honor.  Alan

9  Kildow, K-i-l-d-o-w, for the Plaintiffs.  And on the phone is

10  Sonya Braunschweig, B-r-a-u-n-s-c-h-w-e-i-g.

11          THE COURT:  Okay.  All right.  Good morning.

12          MR. RICHARDS:  Good morning, Your Honor.  Dan

13  Richards on behalf of the Defendant, Vail Clinic, Inc., as

14  well as Jackie Roeder.

15          MS. ROEDER:  Good morning, Your Honor.

16          THE COURT:  All right.  Good morning.  And I

17  understand we have Judge Ruckriegle on the line, as well, the

18  Special Master appointed.  Is that correct?

19          JUDGE RUCKRIEGLE:  That is correct.  Good morning,

20  Your Honor.

21          THE COURT:  All right.  Good morning.

22          JUDGE RUCKRIEGLE:  Terry Ruckriegle, Special

23  Master.

24          THE COURT:  Okay.  Good morning.  All right, so

25  we're here on a discovery dispute.  I have -- let me get this

4

1    pulled up.  I have reviewed the parties' respective briefs.

2    I did not review the exhibits that were attached, but I

3    reviewed the briefs and I did review Judge Gallagher's order

4    that is at issue.

5            Mr. Kildow, I'm not quite clear on what it is that

6    is in dispute.  Is the contention here that the Defendants

7    have violated Judge Gallagher's order?

8            MR. KILDOW:  With respect -- good morning, Your

9    Honor.  With respect to -- would you rather have us at the

10   podium?

11           THE COURT:  Wherever you're comfortable.  I'm

12   fine.  You can remain seated if you'd like.

13           MR. KILDOW:  With respect to the issues that are

14   before us, the orders have not been violated because the date

15   for the production of documents has not yet occurred, but it

16   will occur soon.

17           In meet and confer sessions that we have held over

18   the past two or three weeks it became apparent that there was

19   a significant disagreement about the scope of Judge

20   Ruckriegle's orders one through four, and Judge Gallagher's

21   March 13 order adopting orders one through four.

22           There is case law that says that the parties

23   should attempt to reach consensus before the date of

24   production for the purposes of avoiding disagreements after

25   the production.

1    And so we anticipated that we would get to a point

2  probably a month or so down the road when we discovered that

3  the scope of the production of documents that would be

4  pursuant to the orders that I referred to was not complete

5  because of the significant disagreements.

6    So in talking with Jennifer collectively, we were

7  hoping that we could discuss the custodians that should be

8  produced.  Their custodial files searched, the location for

9  the information to be searched, and then the search terms

10  that would be used to search those custodial files.  In doing

11  so, Your Honor, we were hoping to obviate a disagreement

12  later on.

13    I cited a case on page one of our submission to

14  you, *Degeer v, Gillis,* and in that case the judge recommended

15  trying to work things out in advance.  So taking the guidance

16  of that case, we were hoping that we could meet with you and

17  see if we could come to some consensus.  So this is not a

18  Rule 37(b)(2) motion to compel because of a violation of the

19  Court -- any court order as of yet.

20    THE COURT:  And so I heard you mention the search

21  term.  So beyond a dispute over the search terms I'm not

22  clear from your brief -- I understand from your brief -- you

23  talk a lot, and you cite a lot.  The case law regarding

24  discovery is broad and so forth.

25    But I'm not quite clear on how you are

 1   extrapolating those principles to suggest that there is

 2   something more or different that needs to be done with regard

 3   to the Defendant's compliance with Judge Gallagher's order

 4   and the Special Master's orders.

 5        You've mentioned search terms specifically a

 6   moment ago.  Are we really just focused on the search terms,

 7   or what else is in dispute with regard to the scope of what

 8   you are expecting to see from the Defendant?

 9        MR. KILDOW:  With respect to the search, the first

10   issue is the custodians to be searched.  On that score, Your

11   Honor, we -- the Defendant, Vail Health, identified four

12   custodians whose files would be searched with respect to the

13   March 13 order and the orders of Special Master Ruckriegle.

14   We identified 17 that included the 4.

15        Now, after discussing the matters pursuant to Rule

16   7.1 we have reduced the number of custodians that we wish to

17   have searched to two additional ones.  The four who have been

18   named -- and I can give you the names of them if you choose

19   -- and two additional custodians.

20        One is Michael Shannon, the former Chairman of the

21   Board of Vail Health.  He was Chairman of the Board and a

22   member of the Board during times very relevant to much of the

23   conduct that is at issue in this case.  He was deposed in the

24   State case.  His documents and texts were apparently searched

25   in the State case, but they have not been searched in this

1   case.  We were informed that Vail Health doesn't even have

2   custody or control over his files.

3           The second person is the former Chief -- or one of

4   several former Chief Financial Officers, and that person is

5   Harold Dupper, D-u-p-p-e-r.  As of our last meet and confer,

6   Vail Health told us that they were considering those two

7   additional custodians.  We haven't heard back from them, so

8   we would like to put them on the table.

9           Shannon is the most important person in this case

10  because he is the person who was the manager for Vail

11  Health's exclusionary conduct and the forerunner and

12  formulator of its plans of expansion west into -- towards

13  Pitkin, to Basalt, and to additional clinics in Summit

14  County.  And so he is an essential custodian that needs to be

15  searched.

16          Harold Dupper should be -- his files should be

17  searched because he was, shall we say, the numbers person for

18  the expansion of Vail Health into these additional geographic

19  areas, and he was part of the team.  He was the financial man

20  on the team of the current CEO, Will Cook, for the expansion.

21          So 2 out of 17 is a very reasonable number.  They

22  are important, they have important things to say, and their

23  files need to be searched.

24          There is an additional issue regarding location of

25  ESI -- electronically stored information -- and that is we

8

1   have indicated to Vail Health that all of the custodians who

2   are to be searched -- which in our view should be six all

3   together -- their text messages from mobile phones should be

4   searched, and relevant information on those phones produced.

5           The CEO of Vail Health during much of the time at

6   issue in this case, her name is Doris Kirchner, she indicated

7   on the record in her deposition that she had communicated by

8   telephone text, and that those telephonic text messages had

9   been -- screen shots had been taken and had been provided by

10  her to her legal counsel.  We have not seen any telephone

11  text messages from her on anything.

12          So those are the two major issues, custodians and

13  text messages, outside of, or in addition to, the actual

14  search terms.

15          THE COURT:  Okay.  So to be clear, what we're

16  talking about today, or the issues that you all have briefed,

17  are really distilled down to a dispute over the proper

18  custodians, the search terms, and text messages -- search of

19  text messages.  Is that right?

20          MR. KILDOW:  A search of text messages and the

21  emails.  I mean the actual search words, if you will.  The

22  search terms to be used to search all of their ESI.

23          THE COURT: Okay.  But those are the issues before

24  us today.

25          MR. KILDOW:  Yes, Your Honor.

9

1          THE COURT:  Okay.

2          MS. BRAUNSCHWEIG:  Could I interrupt, Your Honor?

3   This is Sonya Braunschweig.  I would normally write a note to

4   Alan, but because I'm on the phone I can't do that.

5          THE COURT:  Sure, go ahead.

6          MS. BRAUNSCHWEIG:  The issue that presented us to

7   the Court today is actually those issues on the texts and the

8   emails are at issue, but the driving force of what will be

9   searched, and the search terms to be used is based on the two

10  parties' interpretations of the scope of the March 13th order

11  adopting Special Master Ruckreigle's orders numbered one

12  through four.  And so the brief really focused on the scope

13  of what we believe the orders require to be produced outside

14  the Vail Valley.

15          And I think that our position is the Defendant,

16  Vail Health, is taking a much more restrictive view, although

17  it has changed somewhat because on August -- April 12th we

18  were given a search term list, which was Exhibit 1 to our

19  submission that was very narrow and did not search the

20  locations outside the geographic markets that are addressed

21  in Special Master Ruckriegle's orders one through four.

22          Additionally, on April 20th we received a revised

23  search term list which did go slightly broader, and the

24  parties were able to discuss those, although there are still

25  issues with the search terms.  Exhibit 2 to our submission

1  includes the search terms that they proposed -- that Vail

2  Health proposed -- on the 20th for the first time, and our

3  comments to those.

4          And so the question becomes, for example, outside

5  the Vail Valley market they claim that Basalt and Dillon are

6  the only two locations that need to be searched.

7          When you look at -- just by an example -- order

8  four of the Special Master in addressing their argument on

9  outside the Vail Valley, Special Master Ruckriegle at docket

10 entry 383 at page 3 says, "Vail Health maintains that certain

11 documents are not responsive to the Plaintiff's request

12 because they involve facilities outside of Plaintiff's

13 claimed monopolization market."  That is the Vail Valley.

14          Vail Health argues, "Information relating to Vail

15 Health's proposed expansion into Frisco, Dillon,

16 Silverthorne, Basalt, or Aspen is outside of Plaintiff's

17 geographic market, and therefore beyond the scope of this

18 matter."  The Special Master rejects that contention.  In the

19 March 13th order the Magistrate -- then Magistrate Judge

20 Gallagher -- also rejected that contention.

21          The Special Master goes on to say, "The Special

22 Master directs that Vail Health is obligated to produce such

23 responsive materials if they exist."

24          So we're having a dispute about the scope of

25 Magistrate Judge Gallagher's order and the Special Master's

 1  order as to what actually needs to be produced.

 2          THE COURT:  And so, Counsel, how does what you've

 3  just indicated square with -- as I understand it, both the

 4  Special Master and Judge Gallagher, in adopting in its

 5  entirety the orders of the Special Master -- for example,

 6  with regard to request for production number 17 it is

 7  specified that in light of Dr. Nother's comments, opinions,

 8  and reports, such production shall include other locations

 9  outside the Howard Head Vail Valley location, including

10  Basalt, Summit, and Garfield counties.

11          And so it looks like things have been expanded to

12  include Basalt, Summit, and Garfield counties.  One, do you

13  agree with that?  And two, is there -- are you suggesting

14  that the scope of what is produced should exceed the Vail

15  Valley and these three particular counties that are specified

16  by the Special Master and adopted by Judge Gallagher?

17          MR. KILDOW:  Your Honor, are you directing that --

18          THE COURT:  Well, either one of you --

19          MR. KILDOW:  Go ahead, Sonya.  You've taken over,

20  so --

21          THE COURT:  I think it gets to Ms. Braunschweig's

22  comments to the Court.

23          MS. BRAUNSCHWEIG:  Okay --

24          MR. KILDOW:  Well, the answer to this -- to that,

25  Your Honor, is as follows.  We can start with the Special

1  Master's order on geographic market.  The geographic market

2  issues are found at page 6 to 8 of motion number 1.  I'm

3  jumping ahead here.  The --

4           THE COURT:  Are you referring to ECF383?

5           MR. KILDOW:  Well, I'm --

6           THE COURT:  Which order are you referring to?

7           MR. KILDOW:  Order number 4.

8           THE COURT:  Okay.

9           MR. KILDOW:  The Special Master begins order

10  number 4 with reciting verbatim request for production number

11  7 and number 8.  Number 7 relates to the Steadman Clinic,

12  which is an orthopedic clinic principally headquartered in

13  Vail, but now expanded outside.

14           He states that, "Vail Health shall produce all

15  documents relating to the Steadman Clinic and Vail Health in

16  any way relating to providing physical therapy services."

17  And the Special Master says on page 3, "The Special Master

18  directs that Vail Health is obligated to produce such

19  responsive materials if they exist."

20           Now the March 13 order adopts the findings of

21  order number 4 and states that Vail Health's operations

22  outside of Vail Valley have been put in issue, and the

23  Magistrate Judge at the time, Judge Gallagher, adopts the

24  order number 4 from Special Master and instructs Vail Health

25  to produce.

1          Now if you read the brief that has been submitted

2   by Vail Health and the brief that has been submitted by the

3   Plaintiffs, it's like two ships passing in the night.  And

4   I'll tell you how that works.

5          There have been additional facilities created, and

6   facilities expanded in Summit County, improved in Summit

7   County, in Frisco.  A $60 million facility constructed in

8   Dillon in Summit County.  There is a new surgical center and

9   physical therapy center -- or clinic -- established in

10  Basalt.

11         And what Vail Health is intending to produce, as

12  we understand our conversations and their brief, is that if

13  there was no discussion after a certain point in time

14  relating to the Steadman Clinic providing physical therapy

15  services in those locations -- excuse me, if Steadman was not

16  going to provide physical therapy services in those locations

17  then they don't have to produce them.

18         And they're going to produce information relating

19  to the fact that hey, Vail Health is going to have -- provide

20  ambulatory orthopedic surgery services in those locations for

21  Steadman, or perhaps other surgeons as well.  They're going

22  to produce that information, but they're not going to produce

23  anything that relates to Steadman, because there was no

24  agreement that they provide those services in those

25  locations.

 1          Now this is a case, Your Honor, about exclusionary

 2    conduct.   It is the fact that there is a horizontal agreement

 3    between Vail Health and the Steadman Clinic precluding them

 4    from competing in those locations.

 5          That -- what we want -- what we're looking for is

 6    the production of documents, beginning with the negotiation

 7    of -- actually the conceptualization of physical therapy and

 8    orthopedic surgical services being provided outside of Vail

 9    Health.

10          It started at the very beginning with Mike

11    Shannon, the Chief Executive Officer, and Mark Philippon, the

12    Managing Partner of the Steadman Clinic, and Dan Drawbaugh,

13    the CEO of the Steadman Clinic.

14          And at that time when this started back in 2014,

15    2015, the Steadman Clinic, like so many other orthopedic

16    clinics, was going to start its own physical therapy clinic.

17    It was going to stop referring everything to Howard Head,

18    which is the physical therapy clinic under that name that is

19    owned by Vail Health.

20          That put the Steadman Clinic in a direct position,

21    horizontal position, at the same level of commerce as Howard

22    Head.   They were going to compete, and the evidence in the

23    record is that it would have had an existential -- a dramatic

24    existential -- impact on Howard Head's physical therapy

25    clinic.   So Vail Health decided that it was going to enter in

1    to a joint venture, and that joint venture with Steadman was

2    that Steadman would not compete on a physical therapy basis.

3              So it would -- the joint venture would exclude

4    Steadman from competition.  That is precisely what section 2

5    is all about.  The horizontal agreement is also a violation

6    of section 1.

7              So it is the exclusion, the communications of

8    emails, and consultants such as the Hams Group and Percival

9    that are relevant to demonstrate the intent to exclude a

10   potential competitor from the market.  That's what has to be

11   produced.

12             So when we get to the point, after probably the

13   end of 2017, that decision that Vail Health would provide

14   orthopedic surgical facilities and Steadman would confine

15   itself to orthopedic surgery, that is an allocation of the

16   product or service market, which is directly contrary to

17   Sherman 1 and Sherman 2 as we have pled it.  It's Steadman,

18   you do the orthopedic surgery.  You don't do the physical

19   therapy.  We'll do the physical therapy.  It's the intent

20   that that service market be divided into two parts.

21             The second thing is that the geographic market

22   would be off limits to Steadman in Eagle County, in Garfield

23   County, in Pitkin County, in Routt County, and in Summit

24   County.  They would not be able to compete.  I could go on

25   and talk in great detail about the economic and anti-trust

1   implications of that division of market.

2          So that's what we want, and if you read their

3   brief, they're not mentioning that.  And we want to make sure

4   that the search terms that are used cover the kinds of

5   communications, the kinds of consultant studies, projections,

6   financial documents that events this division of markets,

7   both from a product or service market, and geographic market.

8          So yes, these are expansions of what we understand

9   Vail Health to be willing to produce after four meet and

10  confer sessions.  They're very different than what we

11  expected.

12         If we talk about geographic markets, Your Honor,

13  here are the things that the circuit case law in every

14  circuit -- the Third Circuit, the Seventh Circuit, the Second

15  Circuit, the D.C. Circuit, the Ninth Circuit, and the Tenth

16  Circuit -- and I would say that we cited to Judge Ruckriegle

17  the Lanta case.  I've got the cite here some place.  And the

18  Tenth Circuit.  But here are the kinds of things that we

19  expect to see.

20         THE COURT:  Well, and Counsel, before we go there

21  let me get response and reaction from the Defendants.  You've

22  laid out quite a bit, which I appreciate, but let me start

23  getting some reaction --

24         MR. KILDOW:  Sure.

25         THE COURT:  -- from the Defendant --

 1          MR. KILDOW:  Certainly.

 2          THE COURT:  -- before we dig into the case law and

 3   such.  So Mr. Richards, I'll hear from you.

 4          MR. RICHARDS:  Thank you, Your Honor.  Vail Health

 5   has tried to lay out in the brief in very clear terms the

 6   categories of documents that we view Special Master

 7   Ruckriegle as ordering to have to be produced in his orders,

 8   and Judge Gallagher affirming.  Our view is that those fall

 9   into a couple of discrete categories of documents.

10          Just backing up for a moment, I think it's

11   important to note that the Special Master issued those orders

12   last year.  We complied with those orders in nearly all

13   respects.  The only respect that we didn't comply with those

14   orders was with respect to the narrow issues that we

15   appealed.  Those issues mostly related to requests for

16   discovery outside of the alleged Vail Valley market.  That's

17   what we appealed, that's what the appeal that Judge Gallagher

18   overruled.  And that's the kind of narrow set of issues that

19   we're here about today.

20          So the first order of the Special Master requiring

21   production of documents outside of the Vail Valley relates

22   specifically to the production of patient treatment data.  So

23   data about what physical therapy services were provided to

24   patients, what charges Vail Health -- what Vail Health

25   charged for those physical therapy services, what Vail Health

 1   was paid for those physical therapy services.  That's request

 2   for production number 17, and the Special Master ordered that

 3   that data be produced for Vail Valley locations including

 4   Basalt, Summit, and Garfield Counties.  Vail Health intends

 5   to produce that data today, per the Court's deadline.  So we

 6   believe that that issue is not really in dispute here.

 7            Moving on to the next item, we think the next

 8   specific category of documents that the Special Master

 9   ordered to be produced was in response to request for

10   production number 25.  And this is docket 362 at 15.  The

11   Special Master ordered Vail Health to produce documents

12   related to whether Vail Health considered purchasing a

13   physical therapy competitor outside of the alleged Vail

14   Valley market.

15            Vail Health has proposed search terms specifically

16   targeted at potential acquisitions or transactions with

17   competitors.

18            The next category of documents that Vail Health

19   views the Special Master as ordering to be produced relate to

20   request for production number 7 and 8.  Request for

21   production 7 and 8 --

22            THE COURT:  I'm sorry, let me interrupt you.  So

23   what is the status of RFP 25?  The response to that.

24            MR. RICHARDS:  So the status of the RFP 25, that

25   is one of the categories of documents where Vail Health has

 1   proposed search terms.

 2          THE COURT:  Okay.

 3          MR. RICHARDS:  We -- Vail Health's initial

 4   proposal was we'll comply with the order and we'll apply

 5   reasonable search terms, and we'll produce the documents in

 6   compliance with the order.  Plaintiffs requested to have

 7   visibility into the search terms that we were using, and

 8   we've engaged in a number of conferrals over the last several

 9   weeks to discuss those search terms.  And so we have proposed

10   a set of search terms to -- in response to request for

11   production number 25.

12          THE COURT:  Okay, so that response is bogged down

13   on the dispute over the search terms.

14          MR. RICHARDS:  Correct, Your Honor.

15          THE COURT:  Okay.  All right, so go on.  You were

16   moving on to another one.

17          MR. RICHARDS:  Yes.  And then the third category

18   of documents that we believe the Special Master ordered the

19   parties to produce is in response to request for production

20   number 7 and 8, which seeks documents related to proposed

21   joint ventures, mergers, or combinations with the Steadman

22   Clinic or VSO, which are orthopedic surgery practices related

23   to physical therapy services.  Vail Health has also proposed

24   search terms to look for documents responsive to request for

25   production number 7 and 8.

1           I think, Your Honor, that one of the main issues

2   in dispute between the Plaintiffs and Vail Health relates to

3   request for production number 7 and 8 insofar as they relate

4   to new orthopedic surgery centers that have been opened

5   outside of the Vail Valley.  There's a facility in Dillon,

6   which is outside of Plaintiff's alleged geographic market.

7   There is also a facility in Basalt.

8           Those are orthopedic surgery centers.  So when a

9   patient gets a -- tears their ACL, needs surgery, has --

10  needs spine surgery, whatever it might be, it's a facility

11  that has surgical facilities for that kind of outpatient

12  surgery.

13          A small portion of those facilities is physical

14  therapy services.  Specifically Vail Health provides physical

15  therapy services at those facilities to inpatient patients

16  pursuant to a therapy services agreement.  Vail Health also

17  leases space in those facilities pursuant to which it

18  provides outpatient physical therapy services.

19          And so our proposal is to search for documents

20  that specifically relate to the physical therapy aspects of

21  those surgery centers.

22          We don't believe that the Special Master ordered,

23  and we don't believe that it's reasonable, relevant, or

24  proportional to the needs of this case, for Vail Health to

25  produce any documents related to the Basalt surgery center or

1  the Dillon surgery center.  These are essentially hospitals

2  that provide a broad range of services that are unrelated to

3  physical therapy services.

4          And so I think that a good portion of the dispute

5  relates to that issue, whether Vail Health is required to

6  produce all documents related to those surgery centers, or

7  just documents related to the physical therapy aspects.  We'd

8  propose the latter.

9          THE COURT:  To make sure I understand what you

10  just said correctly, these are surgery centers, but you did

11  say there's a small portion of services provided there that

12  are physical therapy, and your proposal, at a minimum, is to

13  produce documents for those particular centers, but only

14  limited to the physical therapy services.

15          MR. RICHARDS:  That's correct, Your Honor.

16          THE COURT:  Okay.

17          MR. RICHARDS:  And then the last category of

18  documents that we have -- that the Special Master ordered

19  Vail Health to produce that was the subject of our appeal

20  related to Vail Health's physical therapy competitors in

21  Summit and Garfield Counties and Basalt.  Vail Health has

22  also proposed search terms to search for those documents.

23  And what we've done in proposing those search terms, we know

24  who those competitors are, and the search terms that we've

25  proposed are looking at the names of those competitors.

1            So if Vail Health is discussing a physical therapy

2    competitor outside the alleged Vail Valley, we've proposed

3    search terms to identify those documents and produce them.

4            THE COURT:  Okay.  What of what Mr. Kildow drew

5    the Court's attention to with respect to the Special Master's

6    report and recommendation on motion to compel number 4, page

7    3, this reference to, "Vail Health argues information

8    relating to Vail Health's proposed expansion into Frisco,

9    Dillon, Silverthorne, Basalt, or Aspen is outside of

10   Plaintiff's geographic market, and therefore beyond the scope

11   of this matter.  The Special Master rejects that contention."

12           Do you dispute that certain information related to

13   expansions in these particular town or counties is -- do you

14   dispute that that is within the scope of what needs to be

15   produced?

16           MR. RICHARDS:  Your Honor, as it relates to

17   physical therapy services specifically, we don't dispute that

18   the Special Master ordered -- I believe the expansions the

19   Special Master is referring to is the Basalt surgery center

20   and the Dillon surgery center.  I believe -- that's how we

21   understand the Special Master's order.

22           And so we don't dispute that the Special Master

23   ordered Vail Health to produce physical therapy related

24   documents related to the Basalt surgery center and the Dillon

25   surgery center.

1      We did not read that portion of the Special

2  Master's order, when read with the rest of the order, to

3  require the production of any document related to the Dillon

4  surgery center or the Basalt surgery center.

5      And I think they are -- it's important for us all

6  to keep in mind Ms. Wininger and Sports Rehab Consulting, the

7  Plaintiffs, are physical therapists.  They're not surgeons.

8  And so the scope of discovery here needs to be limited based

9  on the claims that the Plaintiffs have.  I think, Your Honor,

10 it's also important to keep in mind, Ms. Wininger closed her

11 physical therapy practice in 2018, and as far as we're aware,

12 has made no efforts to re-enter the market or open any kind

13 of physical therapy practice.

14     So based on those facts we believe that the

15 relevance of anything that happened in 2022, 2023 is very

16 tangential to Ms. Wininger and Sports Rehab Consulting's

17 claims.  But we intend to comply with the Special Master

18 order, and we've tried to lay out in as clear terms as

19 possible how we view that order.

20     THE COURT:  Okay.  And so for the Defense, the

21 Defense does not really dispute the geography that has been

22 referenced in either the Special Master's orders and/or Judge

23 Gallagher's order adopting those.  You're not disputing

24 geography.  Your dispute is about whether -- well, you'll

25 produce related to that geography for physical therapy

 1  records -- services related to physical therapy.

 2         Your dispute is over whether these orders

 3  encompass orthopedic surgery services or anything that's not

 4  physical therapy services.

 5         MR. RICHARDS:  Your Honor, I think our position is

 6  that anything that is not tied to the specific request for

 7  production that the Special Master issued an order on, the

 8  Special Master did not order to be produced.  So we don't

 9  view the Special Master's order as requiring a re-opening of

10  production with respect to all interrogatories, for any

11  discovery outside of the alleged Vail Valley market.

12         We believe that the Special Master ordered

13  documents to be produced in response to specific requests for

14  production, specifically 17, 25, 7 and 8.

15         THE COURT:  And so does the Plaintiff agree -- so

16  I don't know -- I'm not sure if we're on the same page -- or

17  you all are on the same page in terms of which discovery

18  requests are actually in dispute here.  I mean we're talking

19  about search terms.  I know those are in dispute.  Custodians

20  are in dispute.  But as related to which specific discovery

21  requests, the Defendants did lay out the ones that they

22  believe are at issue here in their brief.

23         I'm not clear on whether the -- if the Plaintiffs

24  agree that those are what are in dispute, or if Plaintiff has

25  other discovery requests in mind.

1           MR. KILDOW:  There are numerous discovery requests

2  that are in dispute, and they are laid out, each one of them,

3  in Exhibit 3 to the brief that was submitted.

4           But the first one that is in major dispute that

5  I'd like to address right now if I could, Your Honor -- and I

6  can go through everything that's in Exhibit 3 -- or Sonya

7  can.  But here is -- if I may, Your Honor.  Can I proceed?

8           THE COURT:  Yeah, go ahead.

9           MR. KILDOW:  Okay.  If we look at order number 4,

10  which is document 383, Judge Ruckriegle -- I call him judge,

11  even though he's a Special Master here -- at page 2, as I

12  said earlier, he quotes verbatim request for production

13  number 7 and number 8, and those are essentially the same,

14  and I'll explain the small difference, but important

15  difference between the two of them.

16           Here's how it reads, Your Honor.  It says, "All

17  documents relating to any proposed joint venture, merger, or

18  other combination between the Steadman Clinic and Vail Health

19  relating in any way to providing physical therapy services."

20  Then it goes on and talks about the time frame.

21           Here's the way this was intended.  Who is going to

22  provide the physical therapy services first in Eagle County,

23  what we characterize as the relevant geographic market?  But

24  as that discussion about expansion plans moved outside of

25  Eagle County over to Basalt towards Aspen, and to Dillon and

1    the other locations in Summit County, how did that joint

2    venture evolve regarding who would provide surgical services

3    and who would provide physical therapy services.  There was a

4    dialog that went back and forth.

5            In many ways, Your Honor, this is just like --

6    there are elements of a corporate merger or acquisition that

7    provide analog for this kind of analysis.  Okay, who is going

8    to do what?  And where?  Who is going to contribute what?

9    And who is going to get what?  All of those communications --

10   and we believe there are many.

11           And from what we have heard from the Steadman

12   Clinic, this was a hotly, hotly disputed, and bickered, and

13   negotiated transaction.

14           And Your Honor, we're not talking about a couple

15   of people in a physical therapy office, and a couple of

16   people doing a little meniscus surgery for knees.  We are

17   talking about a geographic area that probably includes 80 or

18   85 percent of all skier days in Colorado and produces an

19   enormous amount of orthopedic work.

20           This is huge business, and the allocation of that

21   huge amount of medical healthcare business is central to how

22   much people pay and who reaps the profits.

23           So it is those negotiations, those communications

24   that we want.  There were significant outside third party

25   consultants involved.  Deloitte was involved early on, and

1    that's an issue we're going to have to deal with because

2    guess what, the Deloitte report they can't find, all right?

3    They have refused to produce the 189 page Hamm's report that

4    analyzes the way physical therapy and orthopedic surgery

5    would go together, and how Vail fit into it, and Steadman fit

6    into it.  We're --

7                 THE COURT:  All right, let --

8                 MR. KILDOW:  And so that's what Mr. Richards has

9    not talked about.  It is those communications, those

10   consultancy reports that we want.

11                THE COURT:  All right.  Let me -- Judge

12   Ruckriegle, do we still have you?

13                JUDGE RUCKRIEGLE:  Yes, you do.

14                THE COURT:  Okay.  Can you tell us, with your

15   orders what was the scope of your orders?  Did it include --

16   I mean the request for production -- Mr. Kildow has

17   indicated; it appears to have a limiter though at the end to

18   providing physical therapy services.  But in your analysis of

19   this, or the scope of your orders, did you intend that your

20   orders would include the production of information related to

21   orthopedic surgery services as well?

22                JUDGE RUCKRIEGLE:  It's a little bit difficult to

23   limit it to that.  There's been an accurate description of

24   the relationship between orthopedic services and the physical

25   therapy services as it exists, both within the Vail Valley

1   and within the expanded area that I had included.

2           It is almost impossible to say that it -- my

3   intention was to absolutely not include anything related to

4   orthopedic because of that absolutely symbiotic relationship

5   that exists between orthopedic and the referrals to physical

6   therapy.  So I did not intend that it would be a bright line

7   to not include anything that might be related to orthopedic

8   that would have a relationship to physical therapy.

9           As was mentioned earlier, when you go to an

10  orthopedic the physical therapy begins before the surgery.

11  And it may be any number of times.  It may be six months

12  before, let's try this, and so forth.  But it does relate to

13  the physical therapy.

14          Then when it comes down to the couple of weeks

15  before a surgery you have a physical therapy regimen that is

16  important for trying to -- I apologize if, Judge, you

17  understand some of this, but I'm trying to answer your

18  question in terms of from my perspective of analyzing this,

19  both from my work in the State court Special Master aspect,

20  and now.

21          And so it's important to have people then prepare

22  for, and be ready for, and toned up, if you would, before the

23  surgery, and then the physical therapy would follow

24  afterwards.  So that's why it's hard for me to say that it --

25  there was a bright line, because there wasn't.  It wasn't

 1  intended.  It was intended to cover anything that related to

 2  physical therapy that would clearly be part of the orthopedic

 3  consultation and regimen as well.

 4         So that's -- I hoped to shed a little bit of light

 5  on that particular part.

 6              THE COURT:  Yeah, that's fine.

 7              JUDGE RUCKRIEGLE:  I don't --

 8              THE COURT:  Go ahead.

 9              JUDGE RUCKRIEGLE:  Well, I don't know if you want

10  me to address in terms of the other parts of the order that

11  relate to the area, you know, because that seems to be --

12  there's a difference of the way that's presented.

13         It was clear -- I will, first of all, take full

14  responsibility for not including in the orders including, but

15  not limited to, when -- you know, the identified areas

16  outside of the Vail Valley.  But it was clear that it was an

17  ongoing process, whether that's Dillon, Frisco, Basalt, or

18  any other potential area.

19         But the way it was framed and presented to me,

20  those were the only ones that were discussed, in part because

21  it was unknown since there wasn't discovery, as to whether

22  there were any others.

23         Now it is clear -- as all counsel have pointed

24  out, this has been ongoing for a long time, but during that

25  time there have been developed these facilities that clearly

1   have orthopedic surgery as a focus, as well as what's

2   referred to a small portion of physical therapy.  It may be a

3   small area in those, but as I earlier answered your question,

4   it is absolutely integral to the success of the orthopedic

5   surgery that there be a facility -- whether or not it's

6   intended -- I don't want to get into the Section 2 issues,

7   but they have to have that physical therapy or the surgery

8   fails.

9         And so it's not just a minor adjunct, a small

10  area.  It is something that's important.  Now I will stand to

11  be corrected if any orthopedic surgeons would say otherwise,

12  but I know a dozen or more that would stand by that

13  particular position.

14        So when I identified any it was because that was

15  what was presented.  Those were the names that were presented

16  -- the locations that were identified.

17        As far as Dillon and Basalt not being included, I

18  can't fathom that, based upon what I've just said, that's not

19  important.  It is ongoing and it -- there is a need to

20  understand -- again, this is discovery -- to understand what

21  the development of those facilities -- how that related to

22  including physical therapy.

23        So I was approaching it from the discovery

24  standpoint, and that I believed clearly -- and Judge

25  Gallagher affirmed that -- that it was relevant for discovery

1   purposes the outside of the "identified area" of the Vail

2   Valley.  And I will stop.

3           THE COURT:  Okay, thank you.  That's really

4   helpful.  So to make sure I'm understanding what you've

5   described correctly, the scope of your -- and I'm generally

6   referring to just the orders -- but the scope of your orders,

7   the intent was not to limit any production by the Defendants

8   to simply documents related to physical therapy services, but

9   because of this symbiotic relationship you've described

10  between orthopedic services as they relate to physical

11  therapy services, the scope of your order would be to include

12  production of information that includes or relates to the

13  orthopedic services being provided at any facility, which

14  also provides these physical therapy services.  Is that

15  accurate?

16          JUDGE RUCKRIEGLE:  Yes.  And it would refer back

17  to the request for production which Mr. Kildow quoted, but

18  it's in any way to providing physical therapy services.  So

19  that's what I was talking about with a symbiotic

20  relationship.  I mean there are parts of those records and

21  visits with the orthopedics that wouldn't necessarily relate

22  to physical therapy services.  And so I think by definition

23  of the request that should not be included.

24          THE COURT:  Okay.  Thank you.

25          MR. RICHARDS:  Your Honor, may I be heard for a

1   moment?

2           THE COURT:  Yeah, I'll let you be heard.  Let me

3   say this though.  You might want to react to it as well.

4   What I would intend to do here is construe the briefs that

5   you all have submitted regarding this discovery dispute as a

6   motion to clarify the order that Judge Gallagher issued with

7   the parties seeking clarification on the scope of Judge

8   Gallagher's order insofar as it adopted and affirmed the

9   orders of the Special Master on these particular issues

10  regarding the production of information related to which

11  services -- and perhaps the geographic scope, although that

12  doesn't appear to be in dispute.

13          So I would intend to construe the briefs and this

14  dispute as a motion to -- a joint motion really for

15  clarification and having received that clarification from the

16  Special Master directly, I would intend to -- I mean that

17  would really be the Court's response as to the clarification

18  of the scope of those orders.

19          So that's most likely what I'll do here, but Mr.

20  Richards, I will hear from you.

21          MR. RICHARDS:  Thank you, Your Honor.  I just -- I

22  think it's important to stress for a moment that the volume

23  of documents that we're talking about, if it's any documents

24  related to the Basalt surgery center, any documents related

25  to the Dillon surgery center, is a substantial volume.  Even

1   with the search terms that we have proposed, which are

2   focused on physical therapy services, we've returned tens of

3   thousands of documents.  It is possible that we're talking

4   about hundreds of thousands of documents if we're talking

5   about the surgery centers as a whole.

6           I think Mr. Kildow has brought up issues about --

7   well, backing up for a moment, I think it's important to note

8   that Plaintiff's complaint alleges only a claim under Section

9   2, a monopolization claim.

10          There's been some discussion today of a horizontal

11  allocation agreement under Section 1.  I think it's important

12  to be clear that that is not pleaded in Plaintiff's

13  complaint, and we don't believe that that's an appropriate

14  basis for discovery because it hasn't been pleaded.

15          But I think more importantly than that, the search

16  terms that we've proposed are Basalt and Howard Head, or

17  Basalt and physical therapy, Dillon and Howard Head, Dillon

18  and physical therapy.  So if indeed there were some kind of

19  agreement where the parties entered into some kind of

20  allocation about physical therapy -- we don't believe that

21  there is any such agreement, to be clear -- but our search

22  terms would return documents along those lines.

23          So we don't dispute that there is some

24  relationship between physical therapy and orthopedic

25  services.  I mean that is certainly true.  But that doesn't

1   mean that a search that brought back all documents related to

2   the Basalt surgery center and physical therapy, which is what

3   we're proposing here, that is a set of documents that has a

4   relationship to this case, and it's a set of documents that

5   we believe were ordered by the Special Master.

6            THE COURT:  Okay.  And so Mr. Kildow, with that

7   explanation, I think maybe we can turn to the search terms.

8            MS. BRAUNSCHWEIG:  Your Honor, this is Sonya

9   Braunschweig.  May I interject?

10           THE COURT:  Yeah, go ahead.

11           MS. BRAUNSCHWEIG:  About -- which goes to the

12  search terms.  I think it dovetails with what just -- Mr.

13  Richards said and the search terms.

14           He says -- in the email to the Court he says that

15  there were 20,000 hits based on their search terms used, and

16  it's unclear whether he actually just means hits for the

17  search terms or those were actual documents.  Given this

18  nature of the search terms has been changing throughout the

19  times that we've had these discussions, which is good because

20  we're reaching a point where we're closer on things -- on

21  certain searches than we were before, but the one -- there's

22  two things that Mr. Richards talked about.  He's limiting his

23  search to Dillon and Basalt.

24           Those are the two geographic markets he's limiting

25  to, versus our search terms which we know from the Hamm

1   market study, which is a consultant that was hired in about

2   2016 to start an analysis of where Vail Health, Steadman, and

3   Howard Head's physical therapy, amongst some other ancillary

4   services, could expand their services because they had

5   exhausted the market in Eagle County in terms of reaching

6   capacity.

7          And in that report they talk about they did an

8   analysis of 17 different locations.  Now we don't know what

9   those 17 locations are because, as Judge Ruckriegle

10  indicated, we're working from a limited set of documents.

11         What we do know from the Hamm's is that they

12  looked at Frisco, Dillon, Silverthorne, Basalt, Aspen,

13  Steamboat, and potentially a few others.  We do know that,

14  and that is included in Judge Ruckriegle's order number 4 at

15  document 383 at page 3.

16         So limiting it to Dillon and Basalt does not get

17  into the proposed expansion plan.  It simply limits it to the

18  actual resulting facility, not the discussions about how they

19  ended up at Dillon and Basalt.  And we know that they also

20  had expansion plans with Steadman related to base camp, which

21  they refer as base camp, in Frisco.  There's discussions

22  about exclusions in the Steadman lease for base camp, which I

23  understand is a facility that Vail Health owns.

24         So by limiting it to Dillon and Basalt, they are

25  excluding the proposed expansions into the other places and

 1    narrowing what is actually responsive to 7 and 8.

 2           The second part of that is Mr. Richards said we're

 3    searching for Steadman.  Well, Steadman and VSO is the other

 4    orthopedic clinic, Vail Summit Orthopedics.  Between the two

 5    of them, in about 2016 they had -- between the two of them

 6    they provided 70 percent of Howard Head -- the physical

 7    therapy department at Vail Health -- physical therapy.  70

 8    percent.  Top ten doctors providing physical therapy for

 9    Howard Head, I think it's seven or eight of the top ten

10    doctors come from Steadman and VSO.

11           So when they say -- Mr. Richards said we're

12    searching for VSO, we've had this discussion about search

13    terms, and none of their search terms in the two that were

14    proposed April 12th and April 20th, there is not one search

15    terms that includes Steadman or Vail Summit.  So that is an

16    issue for us as well, because it is not including the terms

17    that they actually used in the first go around in production.

18           THE COURT:  Okay.  Hold on, I'm looking at -- I

19    think this is one of Plaintiff's exhibits regarding the

20    search terms.

21           MS. BRAUNSCHWEIG:  Right, Exhibit 1 was the

22    initial search term list, and then Exhibit 2 is the one we

23    received on April 20th, and our highlights -- our comments

24    and our highlights and changes are in red.

25           THE COURT:  So Counsel, I think what I would

1   prefer to do with respect to the search terms and the

2   custodians is refer that issue to the Special Master.  Having

3   clarified the scope of his orders, and he can continue to do

4   so if he needs to as you all are trying to reach an agreement

5   on search terms and custodians.

6          But with his knowledge of this dispute, this

7   regions -- or these regions that are in dispute, and

8   certainly he knows what he intended by his orders.  I think

9   it would be more efficient for you all to work directly with

10  the Special Master.

11         To the extent you can't -- I mean you may want to

12  start by conferring amongst yourselves in light of the

13  clarification now on the scope of these orders to see if you

14  can make any further progress on search terms and custodians,

15  but where you continue to -- or where you reach an impasse,

16  or continue to have an impasse, I think it would be more

17  efficient to have you work directly with Judge Ruckriegle

18  with respect to hashing out these search terms.

19         MR. KILDOW:  Your Honor, can I respond, Your

20  Honor?

21         THE COURT:  Go ahead.

22         MR. KILDOW:  We would be delighted to pursue these

23  -- what I would characterize -- narrow disagreements with

24  Judge Ruckriegle.  I only point out something that he already

25  knows, and that is we represent a couple of -- a few physical

1  therapists, and we had Judge Ruckriegle in the State court

2  action, we've had him in this action, and as reasonable as

3  his fees are, they're mounting up, and so I have to say that

4  I don't know how we're going to pay for him, but if we can,

5  you know, keep things to a minimum we'll try to find a way.

6  I mean it's an anti-trust case, and so we have experts also

7  that are very expensive.

8          THE COURT:  I understand that, and whatever has

9  been transpiring between the parties, you know, when a

10 Special Master is assigned, it's a sign that the Magistrate

11 Judge felt there was much going on among the parties that was

12 not constructive requiring the assistance of a Special

13 Master.

14         I am -- to the extent it's not clear, I think you

15 all called my chambers when this matter was reassigned to me,

16 but I am following the order Judge Gallagher issued

17 appointing the Special Master, and where he indicates the

18 parties were not to follow his practice standards with

19 discovery disputes, but instead file motions and so forth,

20 I'm following that same order.  So you need not comply with

21 my practice standards on how discovery disputes are to be

22 resolved.  Just continue to follow the order that Judge

23 Gallagher issued appointing the Special Master.

24         I understand the sensitivity to the cost, so I

25 would suggest that you all first confer, in light of the

1    Court's clarification, before you reach out to Judge

2    Ruckriegle, to make further progress on your agreement on

3    search terms and custodians so that you can narrow that down.

4    If you can reach full agreement, great.  If not, you -- I

5    will order that you contact Judge Ruckriegle and work with

6    him and seek his guidance to reach an agreement on a final

7    set of search terms and custodians.

8              Are there any questions about that order, Mr.

9    Kildow?

10             MR. KILDOW:  There are.  One, we have been at this

11   discovery issue for over two years now.  And this is taking a

12   long time to resolve.  I would ask the Court to put a time

13   frame on that of -- that we should -- we have to talk with

14   Judge Ruckriegle, find out what his schedule is, what

15   parties' schedules are, but -- Judge Ruckriegle, are you

16   still on the phone?

17             JUDGE RUCKRIEGLE:  Oh yes.

18             MR. KILDOW:  Oh yes.  If we could get -- what's

19   the date?  Today's Tuesday, the 25th.  If we could reach out

20   and try to get something going within the next seven days, if

21   the Court could see it's way clear to order that we would be

22   grateful.

23             I go back to the case that we cited -- it's out of

24   the Northern District of Illinois or Michigan -- try to

25   resolve this before the production occurs, because after it's

1   all done it's just harder to put the genie back in the tube

2   with motions and everything.  If we could work with the

3   Special Master to frame something before there's a

4   production, that's the best way.

5           THE COURT:  Yeah, I'll set a deadline for that to

6   occur.  Mr. Richards, do you have any questions?

7           MR. RICHARDS:  Your Honor, my understanding is

8   that Your Honor will be issuing a written order identifying -

9   - clarifying the scope of Judge Gallagher's orders and the

10  Special Master's orders?  Am I understanding that --

11          THE COURT:  I don't intend to issue a written

12  order.  It's in the record here between what I've indicated,

13  and more particularly, what Judge Ruckriegle has indicated.

14          MR. RICHARDS:  Understood.  And our understanding

15  is that that's -- that Judge Ruckriegle's comments are within

16  the context of request for production 7, 8, 17, and 25?  So

17  this isn't -- my understanding is we're not reopening

18  discovery as to all requests, but just -- Judge Ruckriegle's

19  comments are applying only to those specific requests that

20  are the subject of his orders.

21          THE COURT:  As I am interpreting this dispute, you

22  all asked for clarification on Judge Gallagher's order, which

23  adopted specific orders by Judge Ruckriegle, which all

24  addressed specific discovery -- written discovery that was in

25  dispute.  So the clarification concerns the discovery that

1  was in dispute that was before Judge Ruckriegle that was

2  later then before Judge Gallagher and adopted by Judge

3  Gallagher.

4           MR. RICHARDS:  Understood.  Thank you, Your Honor.

5           THE COURT:  Okay.  All right, so I will order that

6  the parties first confer --

7           JUDGE RUCKRIEGLE:  Judge --

8           THE COURT:  Yes, go ahead.

9           JUDGE RUCKRIEGLE:  I apologize.  I am not quite

10  clear -- although I'm clear on the seven days that Mr. Kildow

11  requested, but I'm uncertain as to whether he's saying that's

12  the amount of time to resolve it with me, or that's the

13  amount of time for them to confer and then to try to schedule

14  to resolve it with me.

15           I apologize, but I have a senior judge commitment

16  on this Thursday and Friday -- and this is Wednesday the

17  26th, just for clarification of the record.  And so that

18  would make it extremely difficult if it were --

19           THE COURT:  Understood.

20           JUDGE RUCKRIEGLE:  -- for me to have accomplished

21  that within that amount of time.  But if they can confer,

22  that would be a good limitation.

23           THE COURT:  Sure, understood.  Here's what I will

24  order, and you can let me know, Judge Ruckriegle, if this

25  works with your timing.  But I will set an outside deadline

1   of May 17.   So I will first order that the parties confer

2   amongst themselves regarding search terms and custodians in

3   light of the clarification the parties received today on the

4   scope of the orders that were at issue.

5             That ultimately if you need to enlist the

6   assistance of Judge Ruckriegle, you time this all in a way

7   that you have an agreement on search terms and custodians by

8   no later than May 17th.

9             Once you have that agreement on search terms, the

10  Defendant is ordered to conduct the searches pursuant to

11  those terms and produce the information resulting from those

12  searches -- I'll say by June 7, 2023.

13            And I hear you -- I've heard you talk about burden

14  generally.   We don't know the volume.   There may be a

15  significant volume, so I recognize the deadline -- well,

16  that's something for you to be sensitive to.   If in light of

17  the volume June 7th doesn't work out, obviously confer.   If

18  you need to, seek an extension to extend that deadline.   Of

19  course, that is your right to seek that extension.   But

20  that's the deadline I'll set for production of the

21  information related to the searches that are conducted by the

22  Defendant.

23            MR. RICHARDS:   Thank you, Your Honor.

24            MR. KILDOW:   May I offer one suggestion, Your

25  Honor?

1              THE COURT:  Sure.

2              MR. KILDOW:  I mean, I'd rather have -- I don't

3    like the June 7th date, but that's the date that you've

4    identified.  But rather than have, you know, kind of a drop

5    dead date of June 7th, it seems to me that if we could begin

6    the production of documents on a rolling basis at least by

7    June 7th so that something is -- if they come back and say we

8    can't get it all done, you can get some of it done by June

9    7th.  What you've completed as far as your searches and your

10   review and can be produced should be produced then, and that

11   should continue on a rolling basis.

12             THE COURT:  Yeah, I won't order that.  You all can

13   confer over that, maybe can reach an agreement with respect

14   to particular custodians as you get it done with those

15   custodians you'll produce that information in that rolling

16   fashion.  I won't order that it be done in that fashion.  I

17   will strongly suggest it should be, but I'm not going to

18   issue that as an order.  They can do their searches, they can

19   get their documents, they can produce it by that ultimate

20   deadline.

21             All right, that's all --

22             MS. BRAUNSCHWEIG:  Your Honor --

23             THE COURT:  Go ahead.

24             MS. BRAUNSCHWEIG:  -- one additional issue that we

25   raised with your law clerk, and that is the production of

1   non-privileged documents from the privilege log, which would

2   have been order number 5.  We identified that there are

3   probably over 300 to 400 entries that Plaintiff claims should

4   be produced pursuant to that order.  Vail Health's position

5   is that there are 70.

6           I wasn't sure from your discussion today about

7   continuing with Special Master Ruckriegle whether that issue

8   should be addressed with him and we should file a motion --

9   because we kind of spread it up as a potential discovery

10  dispute issue when we raised the issue with your law clerk.

11          THE COURT:  And I'm only vaguely informed on that

12  issue, so explain to me how is it that -- I mean presumably

13  Judge Ruckriegle and/or Judge Gallagher issued an order

14  saying produce these particular documents that -- for which a

15  privilege had been claimed.  Right?  How is there a dispute

16  over which documents pertain to that order?

17          MS. BRAUNSCHWEIG:  Well, they're taking a

18  restrictive view in terms of certain documents referencing

19  footnotes where it appears to me that the principles that

20  were applied by Special Master Ruckriegle apply to a broad

21  block of documents, and order number 5 addressed a section of

22  those to show examples of their failure to produce a log that

23  was compliant with the law, or provide proof of

24  attorney/client privilege generally, and then the order

25  specifically addressed certain specific entries in that

1   order.  It's not a document by document analysis.  It's more

2   like a category by category analysis.

3           THE COURT:  Okay.  And so Mr. Richards, what's

4   your disagreement there on which documents need to be

5   produced?

6           MR. RICHARDS:  Your Honor, the Special Master

7   referenced specific footnotes as the documents referenced in

8   these footnotes are the documents that need to be produced.

9   And those are the documents that we are going to produce

10  today, actually.

11          So we think the Special Master's order is clear,

12  and we're a little bit at a loss for where this broader set

13  of documents is coming from.  There are references to other

14  documents in the order, but in terms of what was actually

15  ordered to be produced, we think that the order is clear.

16          THE COURT: Okay.  So Judge Ruckriegle -- and by

17  the way, let me digress for a second.  I didn't ask you when

18  I said that May 17th date as the outside date, does that work

19  for you?

20          JUDGE RUCKRIEGLE:  Those deadlines work for me.

21          THE COURT:  Okay, great.  Thank you.  And so on

22  this issue of attorney/client privilege.  If you recall the

23  order you issued on that, and you've heard counsel.  Did the

24  scope of that order include categories of documents beyond

25  what you might have specifically identified in the footnotes?

1      JUDGE RUCKRIEGLE:  I'll apologize because I don't

2   have that brought up.  I think I used those as examples, but

3   there were a number of rows that -- I only used them as

4   examples.  There were a number of the objections that fell

5   into that category.  And so I think it was broader than just

6   the ones that were narrowly identified.  But I say that, not

7   having it right in front of me.

8      I had 4 up.  If you want me to go look at it, but

9   I don't want to take your time.  I think counsel and I can

10  work on that.  I would just say that -- to remind counsel --

11  that when they do file anything that is related to me for the

12  benefit of the clerks and for everyone else, that they

13  identify that as a Special Master motion or response.

14      THE COURT:  Okay.  All right, thank you.  And so

15  I'll just order that you all -- as you're working with Judge

16  Ruckriegle regarding the search terms, have conversation with

17  him about the scope of that attorney/client privilege piece

18  and whether it included any documents beyond those footnotes.

19  The Court would enforce whatever Judge Ruckriegle indicates

20  is what he intended in terms of the scope of that order.

21      MR. RICHARDS:  Thank you, Your Honor.  We would

22  just ask if the Special Master -- if the results of that

23  process is that the Special Master determines that he

24  intended to order a broader list of documents to be produced

25  than were referenced in the specific footnotes, we would just

1  ask that we have an opportunity to evaluate those specific

2  documents and determine whether there are any that we need to

3  appeal to the District Court judge, because these are

4  important issues of attorney/client privilege.

5         We interpreted the order to reference specific

6  footnotes.  To the extent the Special Master determines

7  there's a broader set we would just ask for an opportunity to

8  appeal those, if necessary.  If they implicate important

9  issues of attorney/client privilege.

10        THE COURT:  All right, that's fine.  Yeah, you can

11 preserve your appeal rights with respect to that issue.  And

12 perhaps -- I think Judge Gallagher had it set up that you

13 would -- you could make objections to the Magistrate Judge.

14        MR. KILDOW:  Yes, he did.  But they -- and the

15 time for them to appeal was extended significantly, and they

16 did not appeal that.  There was nothing that was appealed.

17        THE COURT:  I think this is a different issue

18 though.  I think this is with the clarification that is going

19 to be provided, appealing that based on the clarification.

20        MR. KILDOW:  Well --

21        THE COURT:  At least that would be -- or that

22 would at least be the argument.  What I'm trying to figure

23 out is whether -- and perhaps I spoke out of turn by saying

24 whatever Judge Ruckriegle indicates is his clarification on

25 that piece that I would simply adopt that.  That may be the

1   case, but maybe on that issue, if this is postured by Judge

2   Gallagher, that there's an objection to the Magistrate Judge

3   first, I should probably preserve that structure.  So you can

4   reserve your appellate right --

5               MS. BRAUNSCHWEIG:  And --

6               THE COURT:  Go ahead.

7               MS. BRAUNSCHWEIG:  Additionally, I mean, I'm not

8   trying to interject, but that process would be improper, but

9   the order -- or the objection that was filed to the Special

10  Master order number 5 up to Gallagher, which Judge Gallagher

11  affirmed in the March 13th order, did go beyond 70 entries

12  that --

13              THE COURT:  We lost you for a minute, I think.

14  Did go beyond what?

15              MS. BRAUNSCHWEIG:  I said that the appeal from

16  Special Master Ruckriegle's order number 5 to Magistrate

17  Judge Gallagher appealed more than just 70 entries that

18  they're producing.  And the March 13th order affirmed all of

19  the Special Master's decision as it relates to the

20  inadequacies of the privilege log in establishing privilege

21  for each one of the documents.

22              So the issue was already presented to the

23  Magistrate Judge and affirmed by him.

24              THE COURT:  Okay.

25              MR. KILDOW:  One additional issue, Your Honor --

1          THE COURT:  Hold on.  Hold on, one second.  So --

2   and Mr. Richards, you agree at least procedurally that -- the

3   posture that Ms. Braunschweig has described is accurate

4   procedurally?

5          MR. RICHARDS:  Your Honor, we agree that the

6   Special Master issued motion to compel order number 5.  We

7   appealed that order in its entirety to Judge Gallagher, and

8   we did not appeal Judge Gallagher's order to Judge Martinez

9   because we understood it to only order the specific documents

10  that were identified in the Special Master's order.

11          If there are additional documents that the Special

12  Master clarifies need to be produced, what we're asking for

13  is an opportunity to appeal that, because we did not

14  understand the order to require the production of additional

15  documents.

16          THE COURT:  Okay.

17          MR. RICHARDS:  I think given that these are

18  important issues of attorney/client privilege, I think that

19  that is critical.

20          THE COURT:  Okay.  So in keeping with what I've

21  indicated previously, the Court is interpreting this

22  discovery dispute as a motion -- a joint motion by the

23  parties seeking clarification of Judge Gallagher's order, and

24  in providing that clarification, the Court is deferring to

25  Judge Ruckriegle, the Special Master, who is on the line, who

1  can speak to the scope that he intended on the orders that

2  are in dispute.

3          So when you all go back to work with Judge

4  Ruckriegle, whatever he tells you was the intended scope, or

5  is the scope of that order with regard to the attorney/client

6  privilege documents, that is the scope.  That is the answer

7  of this Court in terms of the clarification of that order.

8          Therefore, I think that means, to the extent that

9  the Defendants want to appeal that order or this Court's

10  order adopting Judge Ruckriegle's clarification, they would

11  have the right to make that appeal.  The Plaintiff can make

12  their arguments if they feel that that is still somehow time

13  barred by what was raised previously already.

14          All right, Counsel.  I need to wrap this hearing

15  up.

16          MR. KILDOW:  It will just take a second.

17          THE COURT:  All right, one second.

18          MR. KILDOW:  Is the issue of the number of

19  custodians to be searched also then to be referred to the

20  Special Master?

21          THE COURT: Correct.

22          MR. KILDOW:  Thank you.

23          THE COURT:  All right, Counsel and Judge

24  Ruckriegle, I appreciate everyone's time, and I appreciate

25  your patience.  We will be in recess.  Thank you.

1          MR. KILDOW:  Thank you, Your Honor.

2               (Time noted:  11:00 a.m.)

3                    * * * * *

4                  CERTIFICATE

5      I, RANDEL RAISON, certify that the foregoing is a

6  correct transcript from the official electronic sound

7  recording of the proceedings in the above-entitled matter, to

8  the best of my ability.

9

10

11  _____         May 8, 2023

12  Randel Raison