# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02075-WJM-SKC

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

    Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation,

    Defendant.

## DECLARATION OF ALAN L. KILDOW

I declare under penalty of perjury under the law of Colorado that the foregoing is true and correct:

1. I am one of the attorneys representing Plaintiffs in this matter and have personal knowledge of the facts stated herein.

2. Dating back even before autumn 2022, Plaintiffs conferred (or attempted to confer) innumerable times with Vail Health's counsel of record, first Davis, Graham, & Stubbs ("DGS"), and more recently, with Vail Health's new counsel Arnold & Porter ("A&P"), regarding what Plaintiffs contend has been Vail Health's noncompliance with its discovery obligations, including its failure to produce text messages. These conferrals occurred by way of emails, letters, memoranda, telephone, and video conferences.

3. As to the texts, the communications resulted in partial resolution relating to the production of the texts of Nicholas Brown, who was formerly the Senior Vice President of Vail Health's physical therapy clinic, and he remains a Vail Health executive. Unfortunately, the parties have been unable to entirely resolve this dispute with respect

to former Vail Health Board Chair Michael Shannon; former Vail Health President, CEO, and Director Doris Kirchner; and current President, CEO, and Director Will Cook. The culmination of these discussions occurred on July 28, 2023, with a letter from Evan Rothstein, the A&P partner, who is the current lead counsel representing Vail Health.

4. Plaintiffs have diligently followed a rigorous conferral process with Vail Health's counsel, first with DGS and now with A&P (more recently following the protocols set out by the Special Master in his discovery Orders adopted by the Magistrate Judge on March 13, 2023). The disputed issues include, but are not limited to, the production of documents relating the relevant geographic market for physical therapy services, physical therapy patient data, Howard Health financial information, attorney-client privilege logs and document production, and text messages, among others. With respect to conferrals with DGS, none proved successful, which resulted in the filing of the five motions to compel, as well as Rule 37(b) motions. And even the conferrals about compliance with the orders of the Special Master and the Magistrate Judge were abysmally unsuccessful. Many examples help to provide context for the conferrals related to the text messages, and the pattern and practice of Vail Health at every turn.

5. One such example is the discovery issues regarding Howard Head financial data. Plaintiffs' RFP No. 1 requested Howard Head financial information. Vail Health's response to RFP No. 1 states: "Vail Health's financial statements, however, show aggregate information across all of Vail Health's business units and do not segregate information specific to Howard Head Sports Medicine. Based on these objections, and the General Objections, Vail Health states that it will not produce the requested documents." (Ex. 10.) (It should also be noted that in its responses to Plaintiffs' RFPs,

2

Vail Health never stated that under Rule 34 it was objecting to the production of text messages or that it was withholding texts based on any grounds whatsoever.)  Vail Health's objections and responses to the first set of RFPs were certified under Fed. R. Civ. P. 26(g) over the signature of then-lead DGS attorney for Vail Health, Shannon Wells Stephenson of DGS.  She signed them on October 9, 2020, almost precisely one year after the RFPs were served.  (*Compare* Ex. 9 at *with* Ex. 10 at 10.)

6. Because Vail Health would not produce the Howard Head financial information that Plaintiffs believed should exist, they filed Motion to Compel # 2. (ECF No. 129).  As the result of that motion, "the Special Master order[ed] Vail Health to submit an affidavit by someone who can confirm such [Howard Head financial] information cannot be identified or isolated, within 14 days."  (ECF No. 362 ¶¶ 21, 23-24.)  Vail Health did not object to or appeal that portion of Order #2, yet it refused to submit the affidavit ordered.  Even after Magistrate Judge Gallagher adopted the Special Master's Orders on March 13, 2023, Vail Health did not submit an affidavit.

7. To find a solution to the affidavit and the Howard Head financial information, I participated in a meet-and-confer telephone call with Sonya Braunschweig, my co-counsel, and Vail Health's DGS attorneys Shannon Stevenson and Daniel Richards on November 11, 2022.  The purpose of the call was to discuss Vail Health's noncompliance with Order #2 and other orders of the Special Master.  To facilitate the conference, on November 8, Plaintiffs provided DGS a 27-page notice of noncompliance.  (Ex. 11.)

8. Issue number two on the agenda for the November 11 conference was Howard Head income statements and financial data, as reflected in the notice.  During the conference, Ms. Braunschweig asked whether Vail Health was going to produce

3

anything further with respect to the financial data. Mr. Richards responded that Vail Health had conducted a reasonable search and that it had not received any requests from Plaintiffs to conduct further searches. With respect to Howard Head financial data in particular, Mr. Richards' statement was untrue. Plaintiffs had requested that Vail Health conduct searches for and production of Howard Head financial data countless times, not to mention in Motion to Compel #2. With respect to that data, Ms. Braunschweig then asked: "Is the data available—income statement information—does it exist?" Mr. Richards responded: "These are deposition questions," and he refused to answer.

9. Ms. Braunschweig then stated: "Vail Health is supposed to produce an affidavit confirming whether the data exists or not. The lack of an affidavit leads us to the question of spoliation. Does Vail Health financial data backing up Howard Head exist?" Mr. Richard responded that they had an "extensive conference with the client regarding financial data. [Your question] is an attempt at a 'gotcha moment.'" Ms. Braunschweig then asked: "Does it exist?" A long silence followed the question, but Mr. Richards did not answer and neither did Ms. Stevenson.

10. Following the silence, Ms. Stevenson asked: "What was your question?" Ms. Braunschweig responded: "Does it exist as we explained in the memo [meaning notice of noncompliance]?" Ms. Stevenson responded: "We can discuss it with our client." Ms. Braunschweig asked again: "Does it exist?" Ms. Stevenson or Mr. Richards then said: "If you had deposed someone, you would know." To which Ms. Braunschweig responded that Plaintiffs had deposed Nico Brown (the Howard Head Senior Vice President and principal manager of the physical therapy clinic virtually the entire time relevant to its action. He testified by deposition in the federal antitrust case that the

information did in fact exist in the Strata system). Neither Ms. Stevenson nor Mr. Richards disputed that statement. In the end, Mr. Richards said: "We will discuss it with our client."

11. At no time during the conferral did either Mr. Richards or Ms. Stevenson provide an answer or any information regarding the issue of whether the financial information regarding Howard Head existed or did not exist, or whether it could be isolated from Vail Health's financials or not, or whether it had been destroyed. They said they would discuss it with their client, but they never provided Plaintiffs any further information as to whether the Howard Head financial information exists or whether it was or could be isolated from the aggregate Vail Health financial data. Those fact issues were supposed to be addressed by way of an affidavit from a knowledgeable Vail Health representative as ordered by the Special Master and the Magistrate Judge.

12. During the motion to compel process, Vail Health's counsel also hedged as to whether the financial data existed or not. DGS claimed to have produced "income statement information that we were able to locate as maintained in the ordinary course of business from FY 2015 forward,"[1] which amounted to nothing more than a one-page summary of cobbled information from 2015 to 2020. Mr. Richards then made another remarkable admission: "for the period prior to 2015 we searched *the emails* of people who were involved at the time for financial statements that were prepared in the ordinary course of business at that time and we've produced those."[2] On behalf of Vail Health, DGS attempted to lead Plaintiffs and the Special Master to believe that is all that existed. Recent documents produced by Vail Health—this time, by way of A&P—indicate that

---

[1]    ECF No. 217 at 70:7-10.
[2]    *Id.* at 68:20-23.

those representations were untrue, and Vail Health's has agreed to a Rule 30(b)(6) deposition related to Howard Head financial data to resolve Plaintiffs' Rule 37(b)(2) motion as to the Howard Head financial data.

13. The Howard Head financial information is but one of many examples of the issues Plaintiffs faced during the discovery process even after the Special Master issued his orders on Plaintiffs' discovery motions. Plaintiffs also had similar issues with custodian files and text messages.

14. For example, Plaintiffs sought the addition of custodians beyond the four Vail Health reviewed. DGS refused to even discuss adding custodians, despite Plaintiffs addressing this issue from November 2022 through April 2023. In contrast, when A&P entered, it agreed to add emails for nine additional custodians, one of which included Michael Shannon. Plaintiffs later learned, however, that the emails related to Shannon and other outside Board members were not gathered from the custodians themselves, who had used outside email accounts to transact Board business. Instead, the emails were collected from Vail Health's internal email system that captured communications to or from Board members in which a Vail Health director, executive, or employee was also a recipient.

15. Likewise, after Vail Health confirmed on October 17, 2022, in response to the Special Master's Orders, that it only reviewed email accounts, Plaintiffs immediately sought Vail Health to produce relevant text messages, including for the four custodians whose email accounts documents were produced, along with other relevant custodians that were recently identified in supplemental answers to interrogatories ordered by the Special Master. (Ex. 11 at 25-27.)

16.     During the November 11, 2022 conferral, Vail Health by way of DGS stated that it had complied with the Special Master's Orders and that it would not search for additional documents, including texts.  According to Vail Health, nothing more needed to be done because discovery was closed.

17.     Over the course of the next several months, Plaintiffs continued to press Vail Health to comply with the Special Master's Orders, which included, for example, the simple task of producing attachments to emails that had not been produced.  It took countless emails and conferrals over six months to get even a portion of the attachments.  When A&P entered the case, this issue remained open; the attachments that DGS refused to produce were resolved by A&P in their first production.

18.     On March 8, 2023, Plaintiffs again attempted to seek Vail Health's cooperation regarding various discovery issues, including texts and custodians that included the addition of Shannon.  Plaintiffs hoped to resolve the issues without the need for further motions to compel.  (Ex. 12.)  A conferral with DGS was scheduled for March 15, 2023.

19.     On March 13, 2023, the Magistrate Judge issued an order adopting the five Special Master Orders.  Immediately thereafter, Plaintiffs updated their list of discovery issues to encompass the open discovery items that would need to be addressed given the March 13 Order.  (Ex. 27.)

20.     On March 15, 2023, the parties held a conferral to address the issues raised by Plaintiffs in their March 13 memorandum.  Jackie Roeder, Daniel Richards, Ms. Braunschweig, and I participated in that call.  Again, custodians and texts were discussed.  Vail Health would not agree to add any custodians, discuss Plaintiffs'

proposed searches, and refused to add texts to the list of locations to be searched. Ms. Braunschweig asked about the litigation hold, including when it was issued, who received it, and the scope of documents preserved. Ms. Braunschweig also asked whether texts had been collected and reviewed. She specifically raised the testimony of Doris Kirchner, in which she had stated her counsel (including DGS) had obtained or reviewed certain snapshots of her texts.

21. Other than to say a litigation hold was implemented, DGS also would not say whether texts had ever been collected or reviewed, nor why texts had not been produced. Instead, Vail Health stated that it would not respond any further because Plaintiffs were seeking discovery about discovery. In the end, DGS took the position that it thoroughly searched for and produced the relevant documents and would not do anything more. As to the discovery ordered in the March 13 Order, Vail Health stated it was premature to discuss it, given that Vail Health had not yet made any decisions about whether and what portions it would appeal. And when Plaintiffs asked whether Vail Health would share its proposed search terms and locations, Ms. Roeder indicated that she thought the information was "privileged" but left the issue open.

22. Plaintiffs refused to give up trying to get Vail Health's cooperation. Given that Vail Health represented that it was "open to further discussion" related to the searches to be conducted related to the March 13 Order, Plaintiffs sought another conferral to move things forward.

23. On April 4, 2023, Plaintiffs held another conferral, in which Jackie Roeder, Daniel Richard, Ms. Braunschweig, and I participated. During the conferral, Ms. Roeder took the position that Vail Health had no obligation to cooperate with Plaintiffs regarding

8

documents ordered to be produced under the Magistrate Judge's March 13, 2023 Order that adopted Special Master Orders #1-5. Mr. Daniels stated that they had already started to search for responsive documents. Ms. Roeder stated that it would not be productive or necessary for Vail Health to confer or cooperate with Plaintiffs about the custodians and locations to be searched or the search terms to be used. Plaintiffs asked DGS to identify its legal authority for its position, and in turn, Plaintiffs agreed to provide their authority, which they did the same day. (Ex. 13.) DGS never provided any legal authority supporting DGS's position.

24. During the April 4 conferral, the parties agreed to contact Magistrate Judge Crews to seek his assistance with the impasse. On April 10, 2023, a call was held with the Court's clerk, who conferred with Magistrate Judge Crews about the parties' discovery issues. The Court instructed the parties to exchange information and confer about the file custodians, ESI locations, and ESI search terms. The Court instructed the parties to contact the Court later that week as to the progress of those discussions and whether further discussions with Magistrate Judge Crews were necessary.

25. On April 12, 14, 17, and 20, the parties held subsequent conferrals about the discovery issues. Jackie Roeder, Daniel Richards, Ms. Braunschweig, and I participated in those three calls. During the initial calls, Ms. Braunschweig asked, among other issues, whether Vail Health would produce texts and if so, for what custodians. Ms. Braunschweig again asked whether DGS had collected and reviewed any texts. Ms. Braunschweig also discussed limiting the texts to four individuals: Shannon, Kirchner, Brown, and Cook. Ms. Roeder said they would get back to us, but they never did.

26. During the conferral on April 12, 2023, Ms. Roeder asserted that there was no reason for the parties to discuss anything; they could just exchange information in writing about the discovery issues. Before the April 14, 2023, Plaintiffs attempted to ensure DGS's cooperation by again following up in writing about Vail Health's obligations to engage in a dialogue about the discovery issues. (Ex. 28.) The memorandum summarizes the discussions the parties had during the April 12 conferral. Despite noting that Vail Health had not yet responded to Plaintiffs as to whether texts would be searched and produced, Vail Health still did not have an answer to that question on April 14.

27. On April 17, 2023, the parties held another conferral before contacting the Magistrate Judge for his assistance. I opened the discussion about the texts and other documents raised at the two recent conferrals. Specifically, I noted that DGS had stated that it would get back to us about the texts but had not done so. I explained that now is the time to let us know. Ms. Roeder had no definitive answer. Instead, she stated that we are still considering Plaintiffs' request. She again stalled for more time, stating that Vail Health would give us its answer in the next couple of days. I again asked, "did you search Shannon's emails and texts?" Rather than respond to that question directly, Ms. Roeder stated that Vail Health's searches are detailed in the October 2022 letter to the Special Master. But the letter makes no mention of any searches for texts.

28. It also became clear that the parties could not resolve the scope of the Special Master's Orders and the March 13, 2023 Order of the Magistrate Judge, so the parties contacted Magistrate Judge Crews for assistance.

29. On April 20, 2023, the parties held a final conferral before they made their submissions to the Court. Plaintiffs again asked about the status of Shannon's emails

and texts. For the first time, Mr. Richards informed Plaintiffs Vail Health did not have "custody or control of Mr. Shannon's emails and texts." That discussion is summarized in the April 21, 2023 submission to Magistrate Judge Crews. (Ex. 29 at 4.) Vail Health again stated that it would get back to Plaintiffs about Vail Health's position regarding the production of texts after it had another meeting with Vail Health that week.

30. On April 25, 2023, after hearing nothing from Ms. Roeder or Mr. Richards, Plaintiffs sought information about the outcome of their meeting with Vail Health and whether Vail Health would be producing texts. (Ex. 30.) If Vail Health refused to do so, Plaintiffs asked for the explanation why. Given the lack of information provided thus far, Plaintiffs also informed Ms. Roeder and Mr. Richards that it did "not appear that Vail Health or its counsel placed a litigation hold on these documents or obtain or review the texts." Despite requesting that Ms. Roeder or Mr. Richards get back to us that day, they never responded.

31. On April 26, 2023, a hearing was held before Magistrate Judge Crews. We pointed out that they had repeatedly requested the files of Shannon, but Vail Health had refused those requests. Plaintiffs' request included a search for texts. The Special Master participated in that hearing and explained that his Orders related to outside the Vail Valley were not as limited as Vail Health asserted.

32. A couple of days after the hearing, Vail Health substituted DGS with A&P.

33. Plaintiffs immediately followed up with the A&P lawyers about the outstanding discovery issues, including texts. (Ex. 15.) I also sent a separate email in which I identified the texts as being a priority. (Ex. 16.) Over the course of the next

11

several weeks, we asked about the status of the texts and were informed that A&P was working on Shannon's and Kirchner's texts before turning to Brown and Cook's. (Ex. 17.)

34. On June 14, 2023, Sonya Braunschweig and Colin O'Brien had a conferral about discovery issues. She sent me a summary of their discussions shortly after the call. Ms. Braunschweig stated that she had asked about the status of the texts, and he responded that they were "still working on an agreement." Mr. O'Brien also indicated in the next week or so, Vail Health would be sending a "global resolution" about certain discovery issues, including the texts.

35. On June 21, 2023, Colin O'Brien sent an email with the proposed "global resolution," which stated with respect to text messages: "Vail Health will agree to produce responsive and non-privileged text messages for Nico Brown, notwithstanding Vail Health's objections and position that text messages are not subject to production. Vail Health also will agree not to oppose any third-party subpoenas Plaintiffs may issue to Mike Shannon or other of the proposed individuals, except for purposes of protecting attorney-client privilege, work-product, or other protections/immunities." (Ex. 18.) Ms. Braunschweig informed Mr. O'Brien that Ms. Kirchner had testified in her deposition that she had a cooperation agreement with Vail Heath regarding this case, but he did not appear to know anything about that. She asked that Vail Health produce the cooperation agreement, but it never did.

36. On June 26, 2023, Sonya Braunschweig and I had another conferral with A&P lawyers Evan Rothstein and Colin O'Brien. The conferral addressed a number of outstanding discovery issues, including the texts of certain directors and officers.

Ms. Braunschweig informed Messrs. Rothstein and O'Brien that Plaintiffs would reduce the number of text custodians from nine to four: Shannon, Kirchner, Brown, and Cook.

37. Mr. O'Brien responded that there needed to be a "global" agreement with respect to the texts. Vail Health would agree to produce the texts of Brown, but the global agreement would mean that Plaintiffs would be required to forego seeking the texts of the other three from Vail Health. Plaintiffs declined to accept that offer.

38. Ms. Braunschweig asked if the texts had been collected and reviewed and Mr. O'Brien said that some had been produced. Ms. Braunschweig corrected him and said that a few of Brown's had been produced in the Eagle County state court action, but none had been produced in the federal action. She asked if there were any texts in the files that DGS had transferred to A&P, and Mr. O'Brien responded that whatever had been collected had been produced. The text messages produced in the state court action were limited to those referencing Lindsay Winninger. And the only two custodians producing a handful of texts in the state court action were Nico Brown and Luke O'Brien. Vail Health produced no texts in this action, let alone regarding the antitrust discovery issues raised in Plaintiffs' RFPs and the motions to compel.

39. Here, both DGS and A&P said that a litigation hold was imposed on certain individuals. Ms. Roeder and Mr. Richards were opaque as to whether Shannon was provided a litigation hold notice, but Mr. Rothstein from A&P said he was, as were the other subjects of this motion. Vail Health (by way of DGS and A&P) refused to provide any details, including when it was sent, who it was sent to, and whether there were periodic reminders. Other than telling us to contact their attorney John McHugh, none of Vail Health's attorneys would provide any further details.

13

40. On July 6, 2023, I spoke with Mr. Rothstein again by telephone regarding the texts of Shannon and Kirchner. I asked him who had them, and he said that I would need to speak with John McHugh, their lawyer. I asked him if the DGS lawyers had collected and reviewed the texts, and he declined to answer that question. I said that the reasonable inference from his declination to answer was that the answer was "no." He said I should not draw any inferences but should instead contact John McHugh for that information. I asked him if A&P possessed the texts of Shannon and Kirchner and he said, no—contact McHugh. I asked him if A&P had reviewed the texts, and he said no. A couple of the comments that Mr. Rothstein made suggested that Vail Health considered texts to be in a different category of ESI than emails. Given those responses, I said it was Vail Health's obligation to collect them, and he disagreed. I said that I would consider the conversation to be a Rule 7.1 meet and confer for a motion, and he did not disagree.

41. During conferrals it became clear that Vail Health and its attorneys do not have (and probably never had) possession of the texts of Shannon or Kirchner. But Kirchner testified in her deposition that she signed an agreement with Vail Health that she would continue to cooperate with it regarding this litigation and that she was indemnified by Vail Health. A&P did not seem aware of this agreement, did not seem to have followed up with Vail Health to obtain a copy, and have not produced it, despite Plaintiffs' requests that it do so. And as to Shannon, Plaintiffs asked whether he had any similar type of agreements with Vail Health, given that Shannon had cooperated with discovery in the state court action without requiring any subpoena.

Executed on the 30th day of July, in Cape Ferret, France.

<u>    s/Alan L. Kildow    </u><br>
Alan L. Kildow