

# Exhibit 21

DISTRICT COURT, EAGLE COUNTY
STATE OF COLORADO

885 Chambers Avenue
Eagle, CO 81631

DATE FILED: January 21, 2019 5:10 PM
FILING ID: 5FD0477985127
CASE NUMBER: 2017CV30102

**Plaintiffs:**  LINDSAY WINNINGER, an individual, and
SPORTS REHAB CONSULTING LLC, a Colorado limited
liability company,

v.

**Defendants:**  DORIS KIRCHNER, an individual, and VAIL
CLINIC, INC. d/b/a VAIL VALLEY MEDICAL CENTER,
a Colorado nonprofit corporation.

---

**Counter-Plaintiff:**  VAIL CLINIC, INC., D/B/A VAIL VALLEY
MEDICAL CENTER, a Colorado corporation,

v.

**Counter-Defendants:**  LINDSAY WINNINGER, an individual,
and SPORTS REHAB CONSULTING LLC, a Colorado limited
liability company,

---

**Third-Party Plaintiff:**  VAIL CLINIC, INC., D/B/A VAIL
VALLEY MEDICAL CENTER, a Colorado nonprofit
corporation,

v.

**Third-Party Defendant:**  DAVID J. CIMINO, an individual.

---

Jesse Wiens, Colo. #33903
Fahrenholtz & Wiens LLC
100 West Beaver Creek Boulevard, Suite 236
Avon, CO 81620
Telephone:  (970) 949-6500
E-mail:  fwlawyers@gmail.com

Attorneys for Plaintiffs/Counter-Defendants LINDSAY
WINNINGER and SPORTS REHAB CONSULTING LLC

▲   COURT USE ONLY   ▲

Case No:  2017CV030102

Div.: 4     Ctrm: 4

---

**PLAINTIFFS' MOTION FOR LEAVE TO AMEND THEIR COMPLAINT TO: (1)
ASSERT A CLAIM FOR EXEMPLARY DAMAGES PURSUANT TO C.R.S. § 13-21-
102; ADD TWO ADDITIONAL DEFENDANTS; AND (3) ASSERT A CLAIM FOR
VIOLATION OF THE COLORADO ANTITRUST ACT OF 1992, C.R.S. § 6-4-105**

1

**CONFERRAL**

Plaintiffs conferred with Defendants by telephone in early October 2018, regarding the motion to compel attorney-client and work product materials.  Defendants stated that they would get back to Plaintiffs about their position as to the motion, which they never did so the motion was filed.  After the case was reassigned, the Court dismissed the motion without prejudice and ordered mediation prior to any subsequent filing.  The parties thereafter conferred and Defendants stated that they still objected to the motion so the parties engaged in a mediation on December 19, 2018, which was unsuccessful, thereby triggering the refiling of the motion.  Plaintiffs now refile their motion their motion for leave to amend their First Amended Complaint pursuant to the Order of the Court.

**INTRODUCTION**

Plaintiffs Lindsay Winninger and Sports Rehab Consulting LLC move the Court, the Hon. Russell Granger presiding, for an Order pursuant to C.R.C.P. 15(a) granting them leave to assert a claim for exemplary damages pursuant to C.R.S. § 13-21-102 against Defendants Michael Shannon, Doris Kirchner, Nicholas Brown and Vail Health.  The motion also requests leave to add Vail Health Chairman of the Board Michael Shannon and Howard Head Medical Center Vice President Nicholas Brown as defendants in this action.  And finally the motion seeks to add a claim against Vail Health for violation of the Colorado Antitrust Act of 1992, C.R.S. § 6-4-105, for maintaining a monopoly in the physical therapy market in the Vail Valley.  In support of this motion, Plaintiffs have filed a Proposed Second Amended Complaint (the "Amended Complaint") along with affidavits and exhibits establishing *per se* monopolization claim and a *prima facie* case of willful and wanton conduct that Defendants have engaged in against Plaintiffs.

2

Plaintiffs motion should be granted because they have made a *prima facie* showing of each element of their claims of defamation *per se* and tortious interference with contract.  *First*, Plaintiffs pleaded in their Amended Complaint and made a *prima pacie* showing through deposition testimony submitted with this motion that Defendants committed defamation *per se* by making "accusations of criminal activity"[1] to management of The Steadman Clinic.  *Second,* Plaintiffs have made a *prima facie* showing through the affidavits and deposition testimony of Lindsay Winninger and David Cimino that Defendants' accusations were false.   This conclusion is further buttressed by the statements made to Judge Gannett by independent forensic expert Michael Horwith that no Vail Health files were found on the computers of Winninger or Sports Rehab.  *Third*, Plaintiffs have pleaded a *prima facie* case that the false statements made by Defendants were made with actual malice," which is "with actual knowledge that the statement is false or [was made] with reckless disregard for whether the statement is true."[2]   *Finally*, Plaintiffs have made a *prima facie* showing of actual damages though the affidavit of Winninger.

Plaintiffs have introduced the deposition testimony of management of The Steadman Clinic where they testified that proposed Defendants Shannon and Brown made statements that Winninger and Sports Rehab were engaged in criminal behavior.  Shannon published a written "draft" complaint stating that Winninger and Sports Rehab engaged in criminal conduct.  Both Shannon and Brown have therefore engaged in the

---

[1]      *Burns v. McGraw-Hill Broadcasting Co.* (quoting *Rinaldi v. Holt, Rinehart & Winston, Inc.,* 366 N.E. 2d 1299, 1307, *cert. denied* 434 U.S. 969 (1977)).
[2]      *McIntyre v. Jones,* 194 P.3d 519, 523-24 (Colo. Ct. App. 2008).

tortious conduct of defamation and tortious interference with contract and are therefore liable for their conduct.

Plaintiffs have also made a *prima facie* showing of the element for an award of exemplary damage pursuant to C.R.S. § 13-21-102, which damages may be awarded in "circumstances of fraud, malice, or willful and wanton conduct."  Defendants made their false and defamatory statements without any investigation into the facts underlying their defamatory statements that Winninger or Sports rehab engaged in criminal conduct. Defendants made their false statements for the purpose of destroying the reputations of Winninger and Sports Rehab and causing a termination of their business relationships with The Steadman Clinic.  They made their false statements for the purpose of maintaining their monopoly over physical therapy services in the Vail Valley. These are all facts from which a jury could find malice, or wanton and willful conduct by Defendants.

Plaintiffs have also pleaded the elements of *per se* violations of the Colorado Antitrust Act of 1992, C.R.S. § 6-4-105.  Vail Health's Howard Head physical therapy clinic maintains a market share in excess of 70% in the relevant geographic market of the Vail Valley, which provides Vail Health with market power to raise and maintain prices for physical therapy services beyond what would otherwise be market prices in a competitive market.  Vail Health has entered into illegal contracts with physical therapists in the Vail Valley that constitute restraints of trade that negatively affect competition in trade and commerce.  Plaintiffs have made a *prima facie* showing that Plaintiffs were damaged as the result of Defendants' monopoly and that this anticompetitive activity has damaged competition within the Vail Valley.

## **FACTUAL BACKGROUND**

The factual background upon which this motion is based are set for the Proposed Second Amended Complaint submitted with this motion.  In addition, in support of the motion Plaintiffs have filed the transcripts of numerous depositions and declarations. Given the sheer length and volume of this factual record, it will not be set forth in this motion, but instead are incorporated herein by reference.

## **ARGUMENT**

### I.  **PLAINTIFFS' MOTION FOR LEAVE TO ASSERT A CLAIM FOR EXEMPLARY DAMAGES SHOULD BE GRANTED.**

Colorado Rule of Civil Procedure 15(a) permits a party to amend a pleading "only by leave of court or by written consent of the adverse party."  In *Super Valu Stores, Inc. v. District Court, Weld County*, the Court held:

> We have recognized that C.R.C.P. 15(a) reflects a liberal policy of amendment and encourages trial courts to look favorably on requests to amend.  *Varner v. District Court*, 618 P.2d 1388, 1390 (Colo. 1980).  Trial courts may permit amendment to pleadings at any stage of the litigation process so long as undue delay does not result and other parties are not prejudiced by such amendment.  *Eagle River Mobile Park, Ltd. V. District Court*, 647 P.2d 660, 663 (Colo 1982); *H.W. Houston Constr. Co.*, 632 P.2d at 565, 66.  This policy favoring amendments to pleadings recognizes that parties to the adversary process may discover significant information relevant to a case long after initial pleadings have been filed.

The question of whether a plaintiff should be granted leave to add a clam for exemplary damages lies within the sound discretion of the court and will may only be overturned if there has been an abuse of that discretion.[3]  "Absent an abuse of discretion, a trial court's treatment of a motion to amend will not be disturbed.  *Id.*  We will find an abuse of

---

[3]    *Ferrer v. Obamicael,* 390 P.3d 836, 849-50 (2017) (citing *Stamp v. Vail Corp*, 172 P.3d at 449).

discretion only where the lower court's decision was manifestly arbitrary, unreasonable, or unfair."[4]

Exemplary damages are available in Colorado only pursuant to statute.[5]  They are intended "to punish and penalize [the defendant] for certain wrongful and aggravated conduct and to serve as a warning to other possible offenders."[6]   Colorado Revised Statutes § 13-21-102 permits exemplary damages "[i]n all civil actions in which damages are assessed by a jury for a wrong done to the person or to personal or real property, and the injury complained of is "attended by circumstances of fraud, malice, or willful and wanton conduct."   Willful and wanton conduct is statutorily defined as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regards to consequences, or of the rights and safety of others, particularly the plaintiffs."

To assert exemplary damages, the plaintiff must "[establish] prima facie proof of a triable issue."[7]  In *Stamp v. Vail Corporation,* the Colorado Supreme Court held that:

> Prima facie proof of a triable issue of exemplary damages is established by "a showing of a reasonable likelihood that the issue will ultimately be submitted to a jury for resolution." *Leidholt,* 619 P.2d at 771 n.3.  Such proof may be established through discovery, by evidentiary means, or by an offer of proof.   *Id.* at 771.   Prima facie evidence is evidence that, unless rebutted, is sufficient to establish a fact."[8]

In the present case, the discovery in this action, although still incomplete, demonstrates that it is highly likely that the issue of exemplary damages will be submitted to the jury.

---

[4]      *Id.* (citing *Dunlap v. People,* 173 P.3d 1054, 1094 (Colo. 2007)).
[5]      *Stamp v. Vail Corp.,* 172 P.3d 437, 449 (Colo. 2007) (citing *Kaitz v. Dist. Court*, 650 P.2d 553, 556 (Colo. 1982)).
[6]      *Id.* (citing *Beebe v. Pierce*, 521 P.2d 1263, 1264 (Colo. 1982).
[7]      C.R.S. § 13-21-102 (1.5)(a).
[8]      *Stamp v. Vail Corp.* 172 P.3d at 449 (citing *Leidholt v. Dist. Ct. for the Dist. of Denver*, 619 P.2d 768., 771 n.3. (Colo. 1980)),

And of course, for a motion for leave to assert exemplary damages to be granted, there must be an underlying legal claim cognizable in law.[9]  In the present case, Plaintiffs have asserted tort claims of defamation, tortious interference with contract and prospective business relations. "Defamation is a communication that holds an individual up to contempt or ridicule thereby causing him to incur injury or damages."[10]  The Colorado Supreme Court has recognized:

> A cause of action for the tort of defamation exists today to protect individuals from those who would inflict invidious and careless harm: *"The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty."[11]*

Defamation in Colorado consists of: (1) a statement published or caused to be published by the defendant, (2) the statement caused plaintiff actual damages, (3) the statement was false at the time it was published, and (4) at the time of publication, the defendant knew that the statement was false, or the defendant made the statement with *reckless disregard as to whether it was false.[12]*  Statements recognized as defamatory as a matter of law include "a criminal offense… [and a] matter incompatible with his business, trade, profession, or office…"[13]

In the present case, the allegations made by Defendants of criminal conduct are not just imputed, they are affirmatively and directly stated: "Lindsay Winninger has been **actively involved**" in theft.  The crimes that Defendants asserted in the April 18 letter

---

[9]   *Ferrer v. Obamicael,* 390 P.3d. at 849.
[10]   *Keohane v. Stewart* ,882 P.2d 1293, 1297 (Colo. 1995), (citing W. Page Keeton, *et al.*, *Prosser and Keeton On The Law Of Torts* § 111, 771-85 (5th ed. 1985)).  *See also Burns v. McGraw-Hill Broad. Co.,* 659 P.2d 1351, 1357 (Colo. 1983).
[11]   *Id.* (citing *Rosenblatt v. Baer*, 383 U.S. 75, 92-92 (1966) (Stewart, J. concurring)).
[12]   Colo. Jury Instr., Civil 22.1.
[13]   Restatement (Second) of Torts §5 by 70 (1977).

were again published in their "draft" complaint: "Cimino, and his current employer, SRC have stolen confidential and trade secret information from * * * VVMC.  Most egregiously, they have stolen thousands of patient files in violation of Health Insurance Portability and Accountability Act of 1996 ('HIPAA')."   The statements were clearly directed to Plaintiffs business and profession.  The crimes Defendants accused Winninger of committing carry stiff penalties:

- 42 U.S.C. § 1320d-6(b)—the theft of patient files under HIPAA would be punishable by up to 10 years in prison and a $250,000 fine.

- 18 U.S.C. § 1832—theft of trade secrets[14] is a federal crime punishable by up to 10 years in prison.

- C.R.S. § 18-1.3-401—felony six theft of medical records is punishable by imprisonment from 12 to 18 months and a fine of from $1,000 to $100,000.

Here, the April 18 letter that attorney Savage sent to the Vail Police Department does not make generalized statements of implication in a crime, but rather, specifically accuses Winninger and Sports Rehab of the commission of several specific felonies that carry heavy criminal penalties.  No matter how one cuts it, if Defendants are unable to carry their burden of proving these allegations to be true, their publication constitutes defamation *per se*.  Plaintiffs established a *prima facie* case and the burden of proof has now shifted to Defendants to prove their affirmative defense of truth.

In defending against Plaintiffs' defamation claims, Defendants contend that even if their statements of criminal conduct were false, the statements are not actionable under common interest or qualified privilege.[15]  Plaintiffs acknowledge that Colorado recognizes

---

[15]     Defs.' Answer, Affirmative Defense ¶ 3.

the common interest privilege[16] and the qualified privilege (immunity)[17] and the precise contours of those privileges will likely be addressed later.  But for now, what is clear is that however characterized, Colorado courts have been uniform in holding that these privileges are not absolute.[18]  They may be lost upon a showing of abuse of the privilege that is actuated by malice[,]"[19] which is "with actual knowledge that the statement is false or with reckless disregard for whether the statement is true…."[20]

> There is an established body of common law authority in Colorado which generally defines abuse of privilege in the usual common law terms of ill will, spite, intent to injure, bad faith, hostility, express malice and similar terms based on improper motive or state of mind—all categorized by courts and scholars as common law malice, or simple malice.[21]

Once this defense is asserted, the plaintiff must prove "that the defendant made the communication with malice or in reckless disregard of the veracity of the communication."[22]  The "words complained of are such as must have been used honestly and in good faith by defendant."[23]

"The existence of malice, the question of good faith on the part of defendants, and their honest belief in the truth of the statements put forth by them, all are matters of fact to be determined exclusively by the jury."[24]  A "[p]laintiff's opportunity to show bad faith can only be through evidence of all the facts and circumstances."[25]  So here, Plaintiffs are

---

[16]     *Pittman v. Larson Dist. Ct.,* 724 P.2d 1379, 1388 (Colo. Ct. App.1986); *Patane v. Broadmore Hotel, Inc.*, 708 P.2d 473 (Colo. Ct. App. 1985).
[17]     *Ling v. Whitmore*, 343 P.2d 1048, 1049 (Colo. 1959).
[18]     *Abrahamsen v. Mountain States Tel. & Tel. Co.*, 494 P.2d 1287, 1289 (Colo. 1972).
[19]     *Pittman,* 724 P.2d at 1388 (citing *Melcher*, 110 P. 181).
[20]     *McIntyre*, 194 P.3d at 524 (citing *Diversified Mgt., v. Denver Post, Inc.*, 653 P.2d at 1105-60).
[21]     *Sunward Corp. v. Dunn & Bradstreet, Inc.*, 811 F.2d 511, 517-18 (10th Cir. 1987) (citing *Abrahamsen*, 494 P.2d 1287 at 1289).
[22]     *Dominguez v. Babcock*, 727 P.2d 362, 366 (Colo. 1986) (citing *Abrahamsen*, 494 P.2d at 1289).
[23]     *Ling,* 343 P.2d at 1050.
[24]     *Pittman,* 724 P.2d at 1389 (quoting *Abrahamsen,* 494 P.2d at 1289).
[25]     *Abrahamsen,* 494 P.2d at 1289.

entitled to prove that Defendants made the false statements with malice or reckless disregard of the truth, and they must be permitted to make that proof through "all the facts and circumstances."  What Defendants knew, the evidence they had to support their statements that Winninger and Sports Rehab committed a crime, are all facts that Plaintiffs are entitled to explore in discovery and prove at trial, but the precise contours of Defendants' knowledge are not a basis to deny Plaintiffs' motion to amend.

Here, Plaintiffs have made a *prima facie* showing that satisfies the requirements of § 13-21-102.  *First,* the affidavits, declarations, depositions transcripts, documentary evidence submitted with this motion demonstrate that numerous statements were made by Defendants that Winninger and Sports Rehab *committed felonious criminal acts* by stealing 3,116 patient files from Vail Health.  Defendants also made statements that Winninger and Sports Rehab stole trade secrets and solicited Vail Health patients.  These statements included both written statements and oral statements.  *Second*, Winninger and Sports Rehab suffered actual damages as the result of Defendants' statements.[26]  In a defamation *per se* case such as this one, however, it is not necessary for the plaintiff to show actual injury to reputation or that actual damages have been incurred.[27]  *Third*, the statements that were made were false.  For example, Defendants' statements that Winninger and Sports Rehab stole 3,116 patient files were false at the time they were made.  Defendants' statements that Winninger stole trade secrets were false. Defendants' statements that Winninger and Sports Rehab "solicited" Vail Health Patients were false at the time they were made.  *Finally,* the falsity of these statements was known to the

---

[26]     Declaration of Lindsay Winninger.
[27]     Colo. Jury Instr., Civil 22.1, n.9 (citing *Keohane v. Stewart*, 882 P.2d 1293 (Colo. 1992), *cert. denied*, 513 U.S. 1127 (1995)).

speakers at the time the statements were made, or at least were recklessly or heedlessly made because Defendants have offered no evidence proving that Plaintiffs stole any Vail Health files or patients.

Plaintiffs, therefore, have established a *prima facie* case of defamation against Defendants and a *prima facie* case of extraordinarily aggravated, malicious conduct that was intended to utterly destroy a person—Lindsay Winninger—personally and professionally, thus warranting a claim for exemplary damages.  The same holds true for her business—Sports Rehab.  Defendants' motivation for engaging in this conduct has been to perpetuate Vail Health's monopoly of the physical therapy market in the Vail Valley.  As Vail Health/Howard Head manager Luke O'Brien said to Winninger, "[c]ompetition is healthy, it gives you a chance to step back and evaluate things.  But technically, ***my job is to look at you as competition and my job would be to eliminate you***."  This is precisely the type of purposeful, malicious and willful conduct for which Colorado's exemplary damages statute was designed.

## II.  PLAINTIFFS SHOULD BE GRANTED LEAVE TO ADD SHANNON AND BROWN AS DEFENDANTS.

During discovery, Plaintiffs have obtained the deposition testimony of management of The Steadman Clinic—Dan Drawbaugh, Dr. Marc Philippon, Kelly Adair, as well as the testimony of Al Perkins of the Steadman, Philippon Research Institute.  As set forth in the proposed Amended Complaint (that cites to actual deposition testimony that is contained in transcripts that are filed with this motion), the false and defamatory statements alleged in the Amended Complaint were made by Shannon and Brown.

**III.    PLAINTIFFS SHOULD BE GRANTED LEAVE TO ASSERT AN ANTITRUST CLAIM PURSUANT TO C.R.S. § 6-4-105.**

Plaintiffs seek leave of the Court to assert a monopolization claim against Defendants pursuant to C.R.S. § 6-4-105.   Section 2 of the Sherman Act prohibits monopolies in interstate commerce.   Conduct violates this section where an entity acquires or maintains monopoly power in such a way as to preclude other entities from engaging in fair competition.[28]   The two elements required to maintain a section 2 monopoly claim are: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."[29]

The proposed Amended Complaint alleges that Vail Health maintains a 70% market share for physical therapy that gives them market power to raise prices to supra-competitive levels.  The relevant service market is physical therapy and Vail Valley as the relevant geographic market.   The Amended Complaint alleges that Vail Health has required that all physical therapists working in its Howard Head clinic sign a restrictive covenant in employment agreements that precludes them from joining competing physical therapy clinics, and by doing so Vail Health restricts the labor market.   As a result, the maintenance of this monopoly by Vail Health has injured Plaintiffs and competition in the relevant product and geographic markets.   The elements of a § 2 claim have therefore been satisfied and leave to amend should be granted.

---

[28]      *TV Communc's Network, Inc. v. Turner Network Tel., Inc.*, 964 F.2d 1022, 1024-25 (10th Cir. 1992) (citing *U.S. v. E.I. du Pont de Nemours & Co.* 351 U.S. 377, 389-90 (1956)).
[29]      *Id.* at 1025 (citing *U.S. v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)(.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for leave to amend their complaint should be granted.

Dated:  January 21, 2018

*s /Jesse Wiens*
Jesse Wiens, Colo. #33903
Fahrenholtz & Wiens LLC
100 West Beaver Creek Boulevard
Suite 236
Avon, CO 81620
Telephone: (970) 949-6500
E-mail:  fwlawyers@gmail.com

Sonya R. Braunschweig (admitted *pro hac vice*)
5501 Irving Avenue South
Minneapolis, MN  55419
Telephone:  (612) 819-2304
E-mail:  sonya.braunschweig@gmail.com

Alan L. Kildow (admitted *pro hac vice*)
15204 Wildwood Road
Burnsville, MN 55306
Telephone:  (970) 390-6675
E-mail:  alkildow@aol.com

Attorneys for Plaintiff and Counter-Defendants
Lindsay Winninger and Sports Rehab Consulting LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of January 2019, I served a true and correct copy of Plaintiffs' Motion for Leave to File Second Amended Complaint, including exhibits and declaration, through the Court's e-filing system on:

Janet A. Savage
Richard F. Lee
Michael Kotlarczyk
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO  80202
Counsel for Defendants/Counter-Plaintiff

John W. Madden, III
The Madden Law Firm
999 18th Street
Suite 1500 South
Denver, CO  80202
Counsel for Third-Party Defendant

*s/ Jesse Wiens*
Jesse Wiens

DATE FILED: January 21, 2019 5:10 PM
FILING ID: 5FD0477985127
CASE NUMBER: 2017CV30102

# Exhibit 1

**PROPOSED DRAFT COMPLAINT**

| | |
|---|---|
| DISTRICT COURT, EAGLE COUNTY<br>STATE OF COLORADO<br><br>885 Chambers Avenue<br>Eagle, CO 81631 | |
| **Plaintiffs:**  LINDSAY WINNINGER, an individual, and SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,<br><br>v.<br><br>**Defendants:**  DORIS KIRCHNER, an individual, and VAIL CLINIC, INC. d/b/a VAIL VALLEY MEDICAL CENTER, a Colorado nonprofit corporation, MICHAEL SHANNON, an individual, and NICHOLAS BROWN, an individual, | ▲   **COURT USE ONLY**   ▲<br>Case No:  2017CV030102<br><br>Div.: 4      Ctrm: 4 |
| **Counter-Plaintiff:**  VAIL CLINIC, INC., D/B/A VAIL VALLEY MEDICAL CENTER, a Colorado corporation,<br><br>v.<br><br>**Counter-Defendants:**  LINDSAY WINNINGER, an individual, and SPORTS REHAB CONSULTING LLC, a Colorado limited liability company, | |
| **Third-Party Plaintiff:**  VAIL CLINIC, INC., D/B/A VAIL VALLEY MEDICAL CENTER, a Colorado nonprofit corporation,<br><br>v.<br><br>**Third-Party Defendant:**  DAVID J. CIMINO, an individual. | |
| Jesse Wiens, Colo. #33903<br>Fahrenholtz & Wiens LLC<br>100 West Beaver Creek Boulevard<br>Suite 236<br>Avon, CO 81620<br>Telephone:  (970) 949-6500<br>E-mail:  fwlawyers@gmail.com<br><br>Attorneys for Plaintiffs/Counter-Defendants LINDSAY WINNINGER and SPORTS REHAB CONSULTING LLC | |
| **SECOND AMENDED COMPLAINT AND JURY DEMAND** | |

**PROPOSED DRAFT COMPLAINT**

Plaintiffs Lindsay Winninger and Sports Rehab Consulting LLC, for their Second Amended Complaint against Defendants Michael Shannon, Doris Kirchner, Nicholas Brown and Vail Clinic, Inc. d/b/a Vail Valley Medical Center n/k/a "Vail Health" (collectively "Defendants"), by and through their attorneys, state and allege as follows:

## NATURE OF ACTION

1.      This case is the story of Lindsay Winninger, a young woman who reached the apogee of the physical therapy profession by working with some of the world's greatest athletes at the highest level of Olympic and professional sport.  She was referred to by one of the world's finest orthopedic surgeons as "the best physical therapist in the United States, and perhaps the world."  After years of grueling travel serving athletes in training and competition throughout the world, in 2015, she returned to the Vail Valley to settle down and establish her own physical therapy practice.

2.      But what occurred when Winninger returned to the Vail Valley was beyond anything she could have imagined.  She was accused of engaging in criminal conduct for stealing thousands of patient records and trade secrets.  Her name and reputation were dragged through the mud to destroy her professional standing among orthopedic doctors, fellow physical therapists, members of the Vail Valley medical community, and her friends.

3.      The attacks on Winninger's professional and personal reputation were completely false, and those who made these allegations of criminal behavior knew they were false.  There were four principal players in what amounted to a conspiracy to annihilate Winninger personally and professionally.

2

**PROPOSED DRAFT COMPLAINT**

4.     The first is Defendant Michael Shannon, the Chairman of Defendant Vail Health.    A highly successful financier and philanthropist, Shannon made false statements accusing Winninger and Sports Rehab of felonious criminal behavior and did so in a manner that would have seemed curious and inexplicable at the time if the statements were not true.  But as will be proven, Shannon's publications were false and constituted unmitigated maliciousness, "yet there was method in 't."

5.     The second is Defendant Doris Kirchner, the President and Chief Executive Officer of Vail Health, which is the current owner of the Howard Head physical therapy facility in Vail, Colorado.  Kirchner herself published communications to members of the Vail Valley medical community that Winninger had violated federal and state criminal statutes by stealing Vail Health patient records.   As will be proven, Kirchner's statements were false and made with malicious intent to assassinate the character of Winninger and Sports Rehab, the purpose of which will be shortly revealed.

6.     The third conspirator who set out to destroy Winninger professionally and personally was Howard Head Medical Center Vice President and Manager Nicholas Brown.   He enlisted fellow Howard Head manager Luke O'Brien to carry out a complicated reconnaissance and disinformation scheme.  They were to first to lure Winninger into a deceitful meeting to lead her to believe that they would like to recruit her to join Howard Head, when in fact they were merely trying to find out what Winninger was up to in opening her own Vail physical therapy office.  They reported back to Kirchner that Winninger was intending to go into competition with Howard Health in the Vail Valley physical therapy business.

**PROPOSED DRAFT COMPLAINT**

7.      Brown also gained unauthorized and illegal access to Winninger's e-mail account from the time she worked at ProAxis, which employment ended in May of 2012. When Brown and O'Brien were sufficiently confident that Winninger and Sports Rehab may become competitors Howard Head, Brown made statements to an executive of The Steadman Clinic that Winninger had engaged in criminal behavior by stealing Vail Health patient files.  As will be proven, Brown's statements were false and made with malicious intent to destroy the character of Winninger and the business reputation of Sports Rehab, the purpose of which will be shortly revealed.

8.      As set forth in detail below, the activities of Shannon, Kirchner, and Brown, all acting on behalf of and with the authorization of Vail Health, were malicious in that they included:

- Publishing false written statements to the Vail medical community that Winninger and Sports Rehab engaged in the felonious criminal conduct of stealing thousands Vail Health patient files for the purpose of soliciting Vail Health patients and wrongfully appropriating its trade secrets.  The written statements were published knowing they were false, or recklessly published without any investigation or proof that the written statements were true.

- Making false oral statements to the Vail medical community that Winninger and Sports Rehab engaged in felonious criminal conduct. of stealing thousands Vail Health patient files for the purpose of soliciting Vail Health patients and wrongfully appropriating its trade secrets.  The oral statements were made knowing they were false, or recklessly made without any investigation or proof that the oral statements were true.

- Publishing false written statements to the Vail Police that Winninger and Sports Rehab engaged in the felonious criminal conduct of stealing thousands Vail Health patient files for the purpose of soliciting Vail Health patients and wrongfully appropriating its trade secrets, which false statements were in violation of federal and state law.

- Publishing false written statements to the Eagle County District Attorneys'

**PROPOSED DRAFT COMPLAINT**

Office that Winninger and Sports Rehab engaged in the felonious criminal conduct of stealing thousands Vail Health patient files for the purpose of soliciting Vail Health patients and wrongfully appropriating its trade secrets, which false statements were in violation of federal and state law.

- Publishing false statements to the Colorado Department Of Regulatory Agencies that Winninger and Sports Rehab engaged in the felonious criminal conduct of stealing thousands Vail Health patient files for the purpose of soliciting Vail Health patients and wrongfully appropriating its trade secrets, which false statements were in violation of federal and state law.

- Falsifying evidence that was submitted to the Vail Police Department that made it look as though David Cimino, and hence Lindsay Winninger, took Vail Health files that were never taken and made it look as though Cimino took files that were owned by Vail Health when they were actually the files of another entity.  The falsification of this evidence was in violation of Colorado law.

- Falsifying evidence that was submitted to the Eagle County District Attorney's office that made it look as though David Cimino, and hence Lindsay Winninger, took Vail Health files were never taken, and made it look as though Cimino took files that were owned by Vail Health when they were actually the files of another entity.  The falsification of this evidence was in violation of Colorado law.

- Defendants, through communications from Winninger to Shannon, were offered the opportunity to meet with Winninger so she could explain that she had not been involved in any purported theft of Vail Health files, but Shannon, through the admitted advice of legal counsel—ostensibly Janet Savage—refused to meet with her.  Shannon did not even do Winninger the courtesy of reading her e-mail.

- Defendants, though Janet Savage, were provided with the opportunity to `take the sworn deposition of Winninger so she could dispel the false and debilitating rumors that had been spread throughout the Vail Valley community that she had been involved in the theft of patient files and the solicitation of Vail Health patients.

- Defendants, though Janet Savage, were provided with the computer forensic report of David Penrod that correctly stated that Winninger's

5

**PROPOSED DRAFT COMPLAINT**

computer did not indicate that she had received the alleged Vail Health stolen patient files and documents, but neither Shannon nor Kirchner ever even read the Penrod report.

- Defendants acted with a high degree of malice toward Winninger and Sports Rehab, or at the very least a callous and reckless disregard for the truth that constitutes malicious toward Winninger and Sports Rehab, went they refused to retract their false statements concerning criminal and unethical conduct after being provided with proof that their statements were false.

- Defendants malice is illustrated by the Vail Health letters to its patients (purportedly all 3,116 of them) after the data breach, where it stated that the downloading of files was inadvertent and that it had recovered all of the downloaded files.

- Defendants malice is further illustrated by the Vail Health letters to the U.S. Department of Human Resources shortly after the data breach, where it stated that the downloading of files was inadvertent and that it had recovered all of the downloaded files.

- The purpose of this illegal conduct was the monopolization of the physical therapy market in the Vail Valley.  Defendants were attempting to quash competition so they could continue to charge prices for physical therapy services that were and are as much as 50 over what they would have been had the Vail Valley physical therapy market been competitive.

- The anticompetitive acts Defendants committed against Winninger and Sports Rehab were a continuation of its illegal monopolistic practice of requiring all Howard Head physical therapist to sign unenforceable restrictive covenants that ostensibly preclude them from performing physical therapy services other than through Howard Head anywhere in the Vail Valley for a period of one year following the termination of their employment with Vail Health.

- As part of this anticompetitive conduct, Vail Health submitted false invoices to insurers regarding services provided to Howard head patients. The false invoices were a continuation of their illegal monopoly to restrict competition in the Vail Valley physical therapy market

9.     The question to be answered is: Why would someone like Michael

Shannon engage in such malicious behavior?  The answer is money.  Money and more

**PROPOSED DRAFT COMPLAINT**

money for Vail Health.  And competition from Lindsay Winninger opening a competitive physical therapy clinic, particularly one who Defendants thought might be opened in a partnership with The Steadman Clinic—which provides 60-70% of the patient referrals to Howard Head.  Such a competitive clinic would threaten the Vail Health monopoly that provided millions of dollars in revenues through supra-competitive physical therapy fees. Howard Head maintained and still maintains a market share for physical therapy services in the Vail Valley in excess of 70 per cent.  Defendants did not want to see that market share diluted and were willing to do anything to see it sustained—even if it meant destroying Winninger's personal and professional reputation and life.

10.     Kirchner reported the findings of Brown and O'Brien to Shannon that Winninger was about to open a competing physical therapy clinic, perhaps in partnership with Vail Health's number one source of referrals—The Steadman Clinic. Such competition posed an existential threat to Vail Health's Howard Head physical therapy monopoly, so Shannon went to work to take Winninger out of the picture.

11.     Shannon's primary role was to use his position as Chairman of the Board of Vail Health and a respected, well-known philanthropist and Vail Valley resident to spread rumors about Winninger throughout Vail Valley that she was a thief who had stolen thousands of Vail Health patient records and violated criminal statutes.

12.     Shannon's statements were premeditated, purposeful, and malicious. They were, quite simply, intended to destroy Winninger personally and professionally. Shannon did nothing to investigate whether the statements he made were true or false. He instead maliciously conveyed them to multiple individuals as true and further

**PROPOSED DRAFT COMPLAINT**

conveyed that these individuals should have nothing to do with Winninger.

13.     In furtherance of the conspiracy to destroy Winninger's reputation and standing in the Vail Valley and its medical community, Kirchner and Shannon enlisted Denver attorney Janet Savage and Vail Health Director of Human Resources Tanya Rippeth.   Their assignments were to disseminate false and defamatory statements about Winninger to the Vail Police Department and Colorado Department of Regulatory Agencies respectively.

14.     In carrying out her role, Savage wrote letters to the Vail Police Department and communications to the Eagle County District Attorney's office alleging that Winninger had engaged in felonious criminal conduct by stealing thousands of Vail Health patient records and trade secrets.  Savage made these statements purposefully, but without ever having reviewed all the documents and without a shred of evidence that Winninger had been a recipient of any of the alleged records.

15.     In addition to the false and defamatory statements, Savage was the architect of presenting false and misleading "evidence" to the Vail Police Department and the Eagle County District Attorney's office.  Savage, on behalf of Vail Health and with the knowledge of and at the direction of Vail Health, presented a document to these law enforcement agencies that was identified as "Exhibit 8."   This document was published to these authorities as evidence of the criminal culpability of David Cimino in stealing patient records from Vail Health.  At the same time, Savage, again with the knowledge of and at the direction of Vail Health, asserted that Winninger was part and parcel of the criminal activity alleged against Cimino.

8

**PROPOSED DRAFT COMPLAINT**

16.     Exhibit 8 was prepared by Savage and/or members of her law firm at her direction.  Exhibit 8 was, in part, derived from investigative notes prepared by Cyopsis, yet Exhibit 8 omitted the description of critical pathways that would have alerted law enforcement officials that Cimino never intended to "steal" Vail Health documents.  The concealment of this important evidence meant that Savage, on behalf of and with the knowledge of Vail Health, was deliberately misleading the Vail Police Department and the Eagle County District Attorney's office as to the actual criminal culpability of Cimino and Winninger.

17.     Savage, Kirchner, Brown, and others, on behalf of and with the authority of Vail Health, engaged in numerous communications with the Vail Police Department and the Eagle County District Attorney's office requesting, and even demanding, that Cimino be criminally charged and prosecuted for "stealing" Vail Health documents and patient records.  Ultimately, Savage herself contended that the Eagle County District Attorney's office criminally charge Cimino with 3,000 felony counts of theft of patient records (although Savage herself had not reviewed all the documents that she represented to law enforcement had been "stolen").

18.     As time went on, Kirchner and Shannon continued Vail Health's assault on Winninger's reputation by telling managers and doctors of The Steadman Clinic that Winninger had stolen thousands of Vail Health patient files and that The Steadman Clinic should not be doing business with Winninger or her company, Sports Rehab. Kirchner and Shannon's statements that "patient files" were stolen led doctors, clinic administrators, and those in the Vail Valley to believe that secure electronic health

**PROPOSED DRAFT COMPLAINT**

records of patients had been stolen.   Upon information and belief, Kirchner and Shannon knew, or should have known, that no electronic medical records had been stolen but they never informed those they spoke to about this key fact.

19.     Kirchner and Shannon knew these statements were false when they published them because Vail Health had informed their patients and the Department of Human Resources that the files had been "inadvertently" downloaded and they had all been recovered b Vail Health.   And yet Defendants continued to make these false statements in an effort to dissuade The Steadman Clinic, its doctors, and its administrators from using Winninger and her company's physical therapy services.

20.     Defendants' published statements were made with the then present intent to drive Winninger and her company out of business to further Vail Health's monopoly of physical therapy services in the Vail Valley.   Defendants' statements were also made as cover—that is, to hide and conceal from regulators, relevant members of the Vail Health Board of Directors, and the Vail Valley community—the fact that Kirchner and Vail Health's management negligently failed to institute compliance systems to ensure patient information was protected in a manner required by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and other applicable laws.

21.     Due to Defendants' false and defamatory statements, the Vail Valley medical community has been led to believe that Winninger is a thief engaged in criminal misconduct in violation of HIPAA as well as other laws.

22.     Defendants also embarked upon a scheme and artifice involving false, deceptive, and defamatory statements to those who provided her with client referrals,

**PROPOSED DRAFT COMPLAINT**

her physical therapy colleagues, her friends, and those who were potential clients.

23.     Upon learning of the initial false and defamatory statements, Winninger requested that Vail Health provide any evidence supporting Defendants' false statements.  Despite Winninger's later and further requests that Vail Health provide such evidence, none was ever given.  When no such evidence was provided, Winninger asked Vail Health to retract the statements, which Vail Health refused to do.

24.     Because Vail Health refused to retract Defendants' false and defamatory statements, Winninger and her company were left with no other choice but to file this action in an attempt to clear her name, restore her personal and professional reputation and dignity, and recover the lost business and the damages she has suffered.

## PARTIES

25.     Plaintiff Lindsay Winninger is a licensed physical therapist residing in Eagle County, Colorado.

26.     Plaintiff Sports Rehab Consulting LLC is a Colorado limited liability company with an office at the Four Seasons Hotel located at 1 Vail Road, Vail, Colorado 81657.  Sports Rehab also maintains an office located at 3909 Fox Street, Denver, Colorado 802Defendant M16.  Winninger is a principal member of Sports Rehab.

27.     Defendant Michael Shannon is the Chairman of the Board of Vail Health, and upon information and belief resides in the greater Denver metropolitan area, and also has a home in Vail, Colorado.

**PROPOSED DRAFT COMPLAINT**

28.     Defendant Doris Kirchner is the President and Chief Executive Officer of Vail Health, and upon information and belief, resides at 34900 Colorado River Road, McCoy, Colorado 80463.

29.     Defendant Nicholas Brown is a Vice President of Howard Head Medical Center and is employed by Vail Health.  Upon information and belief, Brown resides in the Eagle County, Colorado.

30.     Defendant Vail Health is a Colorado nonprofit community hospital with its principal office located at 181 West Meadow Drive, Suite 100, Vail, Colorado 81657.

## JURISDICTION AND VENUE

31.     Jurisdiction is proper in this Court under Colo. Rev. Stat. § 13-1-124 because Vail Health has its principal office in Colorado, and upon information and belief, Kirchner resides in Colorado.   Further, Winninger and Sports Rehab's injuries, damages, and losses are as a result of Defendants' tortious and defamatory conduct, which occurred in Colorado.

32.     Venue is proper in the District Court for the County of Eagle under C.R.C.P. 98(c)(1) and (5) because Winninger and Sports Rehab are located in Eagle County, the events giving rise to this Complaint occurred within Eagle County, and upon information and belief, each Defendant resides and/or is located in Eagle County.

## GENERAL ALLEGATIONS

I.      **WINNINGER AND SPORTS REHAB.**

33.     Winninger founded Sports Rehab in spring 2014, to assist athletes in reaching maximal potential after injury.   Sports Rehab provides a concierge-type

**PROPOSED DRAFT COMPLAINT**

physical therapy service that is not generally offered in Vail Valley.  Sports Rehab's physical therapists generally treat a patient for 1-2 hours and at any location requested by the patient.  Additionally, Sports Rehab does not use protocols but offers an individualized rehabilitation program suited to each patient's needs.

34.    Winninger has been a practicing physical therapist for ten years.  She earned her Bachelor's Degree in Exercise Science and completed her Master's Degree in Physical Therapy at St. Louis University in St. Louis, Missouri.

35.    She is recognized as a leading sports physical therapist in the evaluation and treatment of hip and knee injuries.

36.    From January 2008 to May 2012, Winninger worked as a physical therapist for a company called ProAxis, which was owned and managed by John Atkins and Topper Hagerman.  ProAxis was engaged in a physical therapy practice and conducted its services under the name of Howard Head Sports Medicine, which was located in the Vail Health medical center building in Vail, Colorado.

37.    Until Winninger departed for the U.S. Ski Team, Winninger was an employee of ProAxis and was never a Vail Health employee.  ProAxis operated the Howard Head Sports Medicine facilities under various agreements with Vail Health.

38.    For example, on or about November 1, 2004, Vail Clinic, Inc., d/b/a Vail Valley Medical Center ("VVMC") and Rehabilitation & Performance Center at Vail, LLC, (RPC-Vail) entered into a Physical Therapy Services Agreement (the "PT Services Agreement"). The term of the PT Services Agreement was for one year and could be renewed a year-to-year basis.

**PROPOSED DRAFT COMPLAINT**

39.     The PT Services Agreement may be summarized as a contract whereby RPC-Vail would provide physical therapy services to Vail Health patients under the name of "Howard Head Sports Medicine Center" ("Howard Head").  Vail Health, in turn, would provide RPC-Vail with facilities to perform those services, along with operational services and facilities such as medical equipment, access to Vail Health's computer network, telephone, and certain non-physical therapy staff.  The computer system was on a shared basis with Vail Health, although all data, documents, and intellectual property remained the exclusive property of RPC-Vail.

40.     Under the PT Services Agreement, RPC-Vail hired its own physical therapists, paid those therapists, and maintained supervisory control over those therapists.  Article 4 of the agreement specifically states:

> [RPC-Vail] and any Therapist and PT Staff member, if directly employed by [RPC-Vail], providing Service[s] under this Agreement shall not be employees of [Vail Health]."  The services of [RPC-Vail] any such Therapists and PT Staff Member shall be those of independent contractors exercising their independent professional medical judgment.

41.     The PT Services Agreement was a licensing agreement whereby RPC-Vail could use the Howard Head name and could utilize certain facilities services of Vail Health.  Other than that, RPC-Vail was a separate company operating independently from Vail Health.

42.     Any intellectual property created by RPC-Vail management, physical therapists, or physical therapy staff was the property of RPC-Vail, not Vail Health.  That would include, but not be limited to, any physical therapy protocols, articles, papers, PowerPoint presentations, etc. that a person might assert constitute trade secrets.

**PROPOSED DRAFT COMPLAINT**

There is nothing in PT Services Agreement where Vail Health purchased, received an assignment of, or received in licensing rights to intellectual property owned or created by RPC-Vail.

43.     On or about January 1, 2012, Vail Valley Surgery Center, LLC ("VVSC") entered into a Physical Therapy Service Agreement with ProAxis Vail, LLC ("ProAxis", which is a related entity of RPC-Vail), for physical therapy services at Vail Health's ambulatory surgery center located in Vail, Colorado.  The terms and conditions for providing those services were essentially the same as under the 2004 Agreement.

44.     On or about April 2, 2012, VVSC entered into a Physical Therapy Services Agreement with ProAxis for physical therapy services at Vail Health's ambulatory surgery center located in Edwards, Colorado.  The terms and conditions for providing those services were essentially the same as under the 2004 Agreement.

45.     On or about June 24, 2008, Vail Clinic, Inc., d/b/a Vail Valley Medical Center ("Vail Health") and RPC Denver, LLC, ("RPC-Denver") entered into a License and Use Agreement (the "License Agreement").  The Licensing Agreement is a contract whereby RPC Denver would obtain a license from Vail Health to use the name "Howard Head Sports Medicine Center" at RPC-Denver's location in Denver, Colorado.  The term of the License Agreement was for one year and could be renewed on a year-to-year basis.  The Licensing Agreement was different from the PT Services Agreement in that under the latter, Vail Health did not provide RPC-Denver any facilities or services.  The Licensing Agreement was limited to granting RPC-Denver the use of the Howard Head name.  As with the PT Services Agreement, however, under Article 14(a) "Licensor [Vail

**PROPOSED DRAFT COMPLAINT**

Health] and Licensee [RPC-Denver] shall at all times be independent contractor with respect to each other, and this Agreement shall not constitute either as the agent, partner, or legal representative of the other for any purposes whatsoever."

46.    And under the Licensing Agreement, any intellectual property created by RPC-Denver management, physical therapists, or physical therapy staff was the property of RPC-Denver and ProAxis, not Vail Health.  That would include, but not be limited to, any physical therapy protocols, therapy binders, exercise programs, articles, PowerPoint presentations, papers, etc. that a person might contend are trade secrets. There is nothing in the Licensing of Servicing Agreements where Vail Health purchased, received an assignment of, or received any licensing rights to intellectual property owned or created by RPC-Denver or ProAxis.

47.    Vail Health terminated its agreements with RPC-Denver and ProAxis in summer 2012 by sending a nonrenewal letter.  In November 2012, Vail Health took over the operations of Howard Head.

48.    So Winninger was never an employee of Vail Health.  She actually left ProAxis's employment in spring 2012, over six months before Vail Health took over Howard Head.  And two years after leaving ProAxis, Winninger formed Sports Rehab.

49.    While working at ProAxis, Winninger was very fortunate to team up with some of the most well-known and well-respected orthopedic doctors at The Steadman Clinic, including Dr. Richard Steadman, Dr. Marc Philippon, and other orthopedic physicians who were partners in The Steadman Clinic, as well as physical therapists such as Atkins and Hagerman.

16

**PROPOSED DRAFT COMPLAINT**

50.     While working at ProAxis, Winninger was very fortunate to team up with some of the most well-known and well-respected orthopedic doctors at The Steadman Clinic, including Dr. Richard Steadman, Dr. Marc Philippon, and other orthopedic physicians who were partners in The Steadman Clinic.

51.     In spring 2012, Winninger resigned from her position at ProAxis to become the head physical therapist for the U.S. Women's Ski Team.  She maintained that position from May 2012 to April 2014, during which time she was the Women's Alpine Team physical therapist for the 2014 Winter Olympic Games in Sochi.

52.     After the 2014 Olympics, Winninger became alpine skiing champion Lindsey Vonn's private, full-time physical therapist.  Vonn has credited Winninger with helping her come back after multiple injuries over the past six years.

53.     Winninger has treated and rehabbed athletes in the NFL, NHL, NBA, MLB, PGA, WTA, USSA, as well as collegiate and Olympic athletes in various sports.  She has treated many of her patients for well over five years.

54.     Winninger and Sports Rehab have also collaborated with a number of physical therapists from Howard Head, co-treated patients with Howard Head physical therapists, and provided physical therapy services to two members of Vail Health Service's Board of Directors.

55.     Winninger is located in Vail and Sports Rehab presently has four physical therapists located in Denver.  Each has a strong educational background, holding either Master's or Doctorate degrees.  Each also has a strong professional background working with prominent athletes, including the U.S. Olympic Sports Medicine team, the

**PROPOSED DRAFT COMPLAINT**

International Triathlon Union's Sports Development team, NBA, NFL, NHL, PGA, USSA, MLB, and multiple professional ballet companies.

56.    Sports Rehab's services go beyond just physical therapy and include a holistic approach that involves customizing treatment plans tailored to each individual's injury and sport, which includes a patient-specific program of training, rehabilitation, nutrition, and injury prevention.  Sports Rehab is also unique in that it provides physical therapist services not only in a clinic setting (like at its Vail office in the Four Seasons Hotel), but also on location—that is, in homes, offices, gyms, hotels, or wherever (and whenever) a client requests.  Sports Rehab also works on a fee for service system and does not directly contract with insurance companies.

57.    For many years, Winninger and other physical therapists of Sports Rehab routinely worked with The Steadman Clinic and other orthopedic clinics in the Vail Valley.  When Winninger returned to the Vail Valley on a full-time basis, it was anticipated that The Steadman Clinic would constitute a significant portion of Winninger's and Sports Rehab's physical therapy referrals.  That dramatically changed, however, because of the defamatory statements and tortious conduct of Defendants.

58.    Winninger had the highest reputation for excellence in physical therapy services for significant athletic and sport-related injuries.  She has been called "the best sports physical therapist in the country, if not the world," by a leading orthopedic surgeon in Vail.  Winninger has earned the respect and admiration of some of the country's other renown orthopedic surgeons and developed the highest of reputations among world-renown athletes.  Through their false and defamatory statements, and

**PROPOSED DRAFT COMPLAINT**

tortious conduct, Defendants have intentionally and purposefully endeavored to destroy that reputation, as well Winninger's livelihood and her personal life.

59.    In 2016, The Steadman Clinic and the Steadman Philippon Research Institute approached Winninger, seeking to engage her services to provide advice and consulting services specific to developing patient-centered and patient-specific programs for musculoskeletal health and sports injury prevention programs. Winninger was retained to revise Dr. Philippon's hip protocol and establish a rehabilitation outcomes data base through the Steadman Philippon Research Institute.

60.    By August 2016, The Steadman Clinic and the Steadman Philippon Research Institute both entered into separate consulting services agreements with Winninger for these consulting services. As alleged in this Second Amended Complaint, Defendants tortuously interfered with those agreements.

## II.    VAIL HEALTH AND HOWARD HEAD SPORTS MEDICINE.

61.    Based on the statements and conduct of Defendants, it is clear that Vail Health and its management, including Kirchner and Shannon, consider Winninger and Sports Rehab as a direct threat and competitor for physical therapy services in the Vail Valley.

62.    Vail Health is an independent nonprofit hospital, which is home to Howard Head. The internationally-renowned The Steadman Clinic and the Steadman Philippon Research Institute are separately owned and operated entities that share some operational facilities with Vail Health.

**PROPOSED DRAFT COMPLAINT**

63. From the 1990s until 2012, ProAxis was closely aligned with The Steadman Clinic, which was previously known as the Steadman Hawkins Clinic. At some point, the ProAxis rehabilitation clinic began doing business under the name "Howard Head Sports Medicine." ProAxis, through John Atkins and Topper Hagerman, as well as through the work of Dr. Richard Steadman, assembled one of the first sports medicine teams, integrating orthopedic medicine, exercise physiology, athletic training, and sports psychology. While Dr. Steadman pioneered revolutionary surgical techniques, Atkins and Hagerman, through ProAxis, helped Dr. Steadman's patients by devising cutting-edge rehabilitation concepts. Winninger was part of Dr. Steadman's and Dr. Philippon's rehabilitation teams.

64. In 2012, Vail Health terminated the lease of ProAxis for the space in which they operated their physical therapy services in the Vail Health medical center and also terminated a service contract that was part of Vail Health's relationship with ProAxis. At or about the same time, Vail Health solicited all or virtually all of the physical therapists working for ProAxis to become physical therapists for Vail Health under the same Howard Head name.

65. Vail Health offered the physical therapists additional compensation and a bonus, but they were required to sign a nonsolicitation agreement if they were to continue working at the Howard Head facility that would now be run by Vail Health. Most of the physical therapists accepted the offer. Through these actions, Vail Health eviscerated the physical therapy business of ProAxis and captured it for itself.

**PROPOSED DRAFT COMPLAINT**

66.     Today, Vail Health, through Howard Head, employs over 60 physical therapists who provide physical therapy sessions at Howard Head's ten clinic locations. Howard Head does not provide the personalized, at any location, and patient-specific programs like Winninger and Sports Rehab.   For example, Howard Head physical therapists are scheduled to see patients about every 40 minutes at one of the ten clinic locations and generally do not devote the same amount of time, or provide the same personalized, at-home services that Winninger and Sports Rehab offer.

## III.    SPORTS REHAB HIRES PHYSICAL THERAPIST CIMINO.

67.     In late fall 2015, Sports Rehab made an offer of employment to David Cimino to begin employment as a physical therapist, which he accepted.  Before joining Sports Rehab, Cimino had been employed by ProAxis as a clinic aid from July 2007 through December 2007.   He then left for physical therapy school and returned to ProAxis in July 2011, where he worked until Vail Heath took over Howard Head in November 2012.   From November 2012, Cimino worked continuously with Vail Health/Howard Head until he joined Sports Rehab.

68.     On or about November 25, 2015, Cimino provided notice to his supervisor that he was resigning from Howard Head.  Upon information and belief, Cimino provided a five-week notice as a courtesy to allow Howard Head adequate time to find his replacement.

69.     On or about January 1, 2016, Cimino began his full-time employment with Sports Rehab.

70.     On or about April 15, 2016, Vail Health initially reported to the U.S.

21

**PROPOSED DRAFT COMPLAINT**

Department of Health & Human Services ("HHS") that there was a purported breach of patient health information.  In reporting the reported breach to HHS, Vail Health was required to identify the type of breach—that is, whether the breach was because of:

- ▪ Hacking/IT Incident;
- ▪ Improper Disposal;
- ▪ Loss;
- ▪ Theft; or
- ▪ Unauthorized Access/Disclosure

71.     Vail     Health     identified     the     breach     as     an     "Unauthorized Access/Disclosure"—*not a* "**theft**":

| Breach Report Results | | | | | | | |
|---|---|---|---|---|---|---|---|
| Expand All | Name of Covered Entity ⬍ | State ⬍ | Covered Entity Type ⬍ | Individuals Affected ⬍ | Breach Submission Date ⬍ | Type of Breach | Location of Breached Information |
| ⊕ | Vail Clinic, Inc. dba Vail Valley Medical Center, and dba Howard Head Sports Medicine | CO | Healthcare Provider | 3118 | 04/15/2016 | Unauthorized Access/Disclosure | Laptop, Network Server |

72.     Moreover, in making the submission to the HHS, Vail Health attested under federal law that the information provided to the HHS in the initial breach report was accurate.

73.     Similarly, the notice that Vail Health provided to its patients, the press, and on its website on April 15, 2016, did not state that the data was "stolen" or that there was a "theft" of any information.  Rather, Vail Valley Medical told its patients "about a potential disclosure of personal health information."  Vail Health stated that a former physical therapist had "improperly acquired protected health information," had "copied numerous physical therapy and occupational therapy records" on two USB electronic storage devices and took those devices with him when he departed.  Vail Health also stated that it "obtained the return of both electronic storage devices along with a signed

**PROPOSED DRAFT COMPLAINT**

certification from the former employee that he has not retained copies or otherwise provided any of the data to any other person or company."  The April 15, 2016 "Notice to Vail Valley Medical Center patients regarding Privacy Incident" was posted to Vail Health's website and is attached as **Exhibit 1**.

74.     In the Notice, Vail Health stated that on February 16, 2016, it discovered that a former Howard Head physical therapist—presumably Cimino—improperly copied physical therapy and occupational therapy records containing patient personal health information onto two USB electronic storage devices and "took those devices with him at the time he was starting with his new employer."  The data apparently "did NOT include social security numbers, dates of birth, credit card or bank account information, or addresses."

75.     Importantly, the Notice also states that "[t]o date, VVMC has demanded and obtained the return of both electronic storage devices along with a signed certification from the former employee that he has not retained copies or otherwise provided any of the data to any other person or company."

76.     The Notice further states that on or about April 15, 2016, Vail Health mailed separate letters to each of the patients whose personal health information was purportedly compromised.  Upon information and belief, the letters made the same, or substantially the same, statements as those made in the Notice and were sent to 3,116 Vail Health patients.

77.     Accordingly, on April 15, 2016, Vail Health reported to the federal government, the public, and its patients that it had demanded and obtained the return of

**PROPOSED DRAFT COMPLAINT**

the electronic storage devices from its former employee—Cimino—and that it had obtained a certification from Cimino in which he expressly stated that he had "not retained copies or otherwise provided any of the data to any other person or company."

78.     As admitted by Defendants, Cimino returned the two USB devices to Vail Health on February 5, 2016, by sending the devices by overnight mail to his attorney on February 4, 2016.   Cimino's attorney then delivered the USB devices to Cyopsis, Defendants' forensic expert.   In the package delivered to Cyopsis, Cimino also returned two hard copy documents that were in his possession.   Cimino also tried his best to identify documents that had been copied to his personal computer over many years (including while he was at ProAxis).   Cimino created a folder entitled "Attn VVMC docs from personal computer" and copied those files to the USB external hard drive—the GoFlex device.   Most of the documents contained in that file dated from Cimino's employment with ProAxis, not Vail Health.   So as of February 2015, Cimino voluntarily returned documents and information to Vail Health.   Cimino also informed Vail Health that he would delete any files on his personal computer once Vail Health gave him instruction to do so.   Vail Health never provided Cimino any instructions to delete any documents from his personal computer.

79.     Even though Vail Health assured the federal government, the public and its patients that the personal health information had been returned by its former employee and that no other person or company had the patient data, the Vail Police Department, Eagle County District Attorney's Office, and the doctors and clinics using Winninger's physical therapy services were told something much different.

24

**PROPOSED DRAFT COMPLAINT**

80.    ***Just three days after reporting the breach to the HHS***, on April 18, 2015, Vail Health—through its attorney Janet Savage—informed the Vail Police Department and Eagle County District Attorney's Office that Cimino was involved in the "***theft of Protected Health Information***" from Vail Health, **"*[h]e stole*** documents and patient information from the VVMC shared drive," and that Winninger "***has been actively involved in these behaviors.***"   Notably, "to steal" means to take personal property illegally with the intent to keep it unlawfully.  Likewise, "theft" is defined as the felonious taking and removing of another's property with the intent to deprive the true owner of the property.

81.    Nothing new occurred between the three days Defendants reported the breach to the HHS, Vail Health patients, and the public and Defendants' statements to the Vail Police Department and the Eagle County District Attorney's Office.  Instead, Vail Health President Doris Kirchner and Chairman of the Board Michael Shannon, and Howard Head Vice President Nicholas Brown, chose to publish numerous false statements that Cimino and Winninger "stole over 3,000 patient files" from Vail Health which, if true, would be a serious criminal offense under HIPAA.  So Vail Health either made false statements to HHS, its patients and the public, or it made false statements to the Vail Police Department and the Eagle County District Attorney's Office.

82.    Importantly, Defendants did not inform the Vail Police Department and the Eagle County District Attorney's Office that many or even most of the files and documents allegedly "stolen" were in fact owned by Proaxis and had been since on or before November 30, 2012.  So Defendants were accusing Cimino, Winninger and

25

**PROPOSED DRAFT COMPLAINT**

Sports Rehab of stealing Vail Health files that they did not even own!  They made the allegations concerning files they did not own for the purpose of embellishing the evidence and misleading the Vail Police and the Eagle County District Attorney into believing that the "theft" related to a great number of files and documents.  Proof of their intent is demonstrated by the request of Savage to the Eagle County Deputy District Attorney that Cimino should be prosecuted for 3,000 felonies.  In short, Kirchner, Brown and Vail Health, usually through Vail Health attorney Janet Savage, made false and misleading statements to law enforcement about purported felonies, all in violation of the laws of Colorado.

83.     Winninger's livelihood depends on her reputation for good character, integrity, and trustworthiness.  She works with prominent orthopedic doctors and clinics on a daily basis, preparing physical therapy programs to serve the doctors' patients.  She must abide by HIPAA, as well as other confidentiality requirements.   Any accusation that Winninger or her company stole patient records and violated HIPAA would be devastating to her and her business.

84.     After Winninger was repeatedly questioned about the truth of Defendants' statements, and the effect it was having on her personal and professional reputation in the community, Sports Rehab decided to terminate Cimino in October 2016.

85.     This decision, however, did not stop Defendants from continuing to make false and defamatory statements about Winninger, as the following section shows.  In fact, the defamatory statements continued and actually increased.

**PROPOSED DRAFT COMPLAINT**

86.     Although this was not the first or only time Vail Health had encountered an improper access to Vail Health patient information, upon information and belief, it has been the only time that Vail Health has sought the filing of criminal charges against an employee for violation of data practices.  For well over a year-and-a-half from reporting the incident, Vail Health, including Kirchner, Brown, and Savage, made constant requests and multiple visits to the Eagle County District Attorney's office in an attempt to persuade the Eagle County Deputy District Attorney to throw the book at CImino. Although Vail Health has had a number of instances in which employees have improperly accessed patient files, including the electronic medical records of a prominent professional athlete, upon information and belief, Defendants never reported anyone to the authorities for criminal charges.

87.     Upon information and belief, this is the only instance in which Vail Health has asserted that a former employee has "stolen" patient information from Vail Health even though Howard Head employees routinely copied information from the Howard Heard shared drive to USB devices without Vail Health taking any action.  One employee routinely saved Vail Health materials on multiple USB flash drives, which he publicly carried on his key chain.  Further, Vail Health employees were allowed to take their work computers home and access the Vail Health system outside the office.

**PROPOSED DRAFT COMPLAINT**

## IV.    DEFENDANTS FALSELY ACCUSED WINNINGER OF THEFT.

88.    After joining Sports Rehab in January 2016, all appeared to be going well until Winninger learned that Cimino was alleged to have copied certain information from Vail Health.

89.    At no time prior to his employment with Sports Rehab did Winninger discuss taking Vail Health patient files or data, and Winninger was not aware any patient files or data had been taken when Cimino started working at Sports Rehab.

90.    After Winninger learned that Vail Health was alleging that Cimino took patient files, Winninger asked Cimino whether he had downloaded the Vail Health patient files and what information he had taken.

91.    Cimino told Winninger that he had downloaded to a USB drive, but he said he never intended to download any Vail Health patient files.

92.    He further stated that if he had done so, he did so by mistake, and in any event, he had returned the USB drives to Vail Health.

93.    Cimino further informed Winninger that he had signed a sworn certificate stating that he did not transfer any of the alleged Vail Health patient files to Winninger.

94.    In fact, Cimino never transferred any patient files that he may have obtained from Vail Health to Winninger or any Sports Rehab employees or associates.

95.    Based on the facts above, Winninger thought the collection of patient information was inadvertent and was not disclosed to anyone by Cimino but returned to Vail Health and therefore Cimino could continue his relationship with Sports Rehab.

**PROPOSED DRAFT COMPLAINT**

96.     But on or about April 18, 2016, Janet Savage, as attorney for Vail Health, made defamatory statements about Lindsay Winninger in a letter sent to Detective Eric Bonta at the Vail Police Department.   Plaintiffs were unaware of the letter or the defamatory statements until January 16, 2018, when they first received the letter as part of Defendants' initial disclosures.

97.     The April 18 letter refers to Winninger and Sports Rehab close to two dozen times.   For example, after accusing Cimino of stealing Vail Health medical records, Savage's letter states that Winninger "admits that she was aware of Cimino's activities…."   Savage's letter also states that Vail Health "knows" that "Lindsay Winninger has been actively involved in these behaviors."

98.     The letter signed by Savage also states that Cimino "accessed the information on those devices on February 5, 2016," even though the devices were actually in the possession of Savage and Cyopsis on February 5, 2016.

99.     These statements were false and defamatory and made with the then present intent to induce the Eagle County District Attorney to file criminal charges against Cimino and Winninger.   Defendants made these statements in furtherance to destroy Winninger's professional and personal reputation and drive her from the Vail Valley physical therapy market.

100.     The April 18 letter attaches and relies upon a number of exhibits.   One of them is identified as Exhibit 8, which is described as a spreadsheet of "evidence" of stolen files prepared by "Cyopsis," the forensic computer expert retained by Vail Health.

**PROPOSED DRAFT COMPLAINT**

Craig Bernard, the principal of Cyopsis, has now testified under oath that Cyopsis did not prepare Exhibit 8.

101.   Bernard of Cyopsis has also testified that Exhibit 8 did not contain significant explanatory information when it was submitted to the Vail Police Department and the Eagle County District Attorney's Office.

102.   Exhibit 8 was actually created by the Davis Graham law firm and intentionally included false and misleading statements, and concealed material evidence from the Vail Police Department and Eagle County District Attorney to make it appear that Cimino "stole" information that he did not.   The creation of Exhibit 8 constituted the deliberate modification and falsification of material evidence to law enforcement in violation of Colorado law.

103.   Defendants' modification and concealment of material evidence was done to facilitate Defendants' argument that the Eagle County District Attorney should charge Cimino with 3,000 felony counts, apparently to force Cimino to plead to a crime he did not commit.

104.   Any plea that Cimino would have entered into would not only have destroyed Cimino but was intended to destroy Winninger right along with him.

105.   Vail Health retained Cyopsis in January 2016—one year and three months before this case was ever filed.   Cyopsis performed an analysis of the Cimino work computer to determine whether any devices had been plugged into the computer. Cyopsis also later examined the two USB devices—the Go-Flex and Flash Drive—to identify documents that Defendants suspected Cimino had "stolen."

30

**PROPOSED DRAFT COMPLAINT**

106.   At the instruction of Defendants' counsel, on February 5, 2016, Cyopsis took physical possession of the Go-Flex and Flash Drive from Cimino's attorney at the time, Mark Lacis.   Cyopsis was therefore placed by Defendants in the direct chain of custody of this important evidence.

107.   From January 2015 until May 2018, Cyopsis retained custody of Cimino's work computer.   Vail Health apparently never provided the Vail Police Department with Cimino's work computer and that computer apparently remained with Cyopsis until it was turned over to the independent forensic expert as part of this case in May 2018, which was ordered to be done by this Court in the February 6, 2018 Forensic Protocol Order.   Although Cyopsis had custody of the work computer, it never examined the computer for any information except as to whether any devices had been attached to the computer.   Defendants never asked Cyopsis to review the work computer for any other information.

108.   From February 5, 2016, until August 19, 2016, Cyopsis retained custody of the Go-Flex and Flash Drive, when Defendants finally agreed to turn over the devices (after repeated requests) to the Vail Police Department and Eagle County District Attorney's Office.   And although the Vail Police Department and Eagle County District Attorney's Office requested copies of the actual documents multiple times, Defendants initially produced that information in an encrypted electronic form that the police could not access.   Bernard, on behalf of Cyopsis, testified it would have taken Cyopsis just three days to produce the files and documents in a readily readable form.   Defendants apparently never asked Cyopsis to do so.

**PROPOSED DRAFT COMPLAINT**

109.   Cyopsis thus maintained physical custody of the Go-Flex and Flash Drive **for over six months** despite an on-going criminal investigation.

110.   This important evidence was not provided to the Vail Police Department earlier because of Defendants' desire to themselves frame a criminal case against Cimino rather than have the Eagle County District Attorney do so.

111.   Defendants represented that after Cyopsis analyzed the Cimino Go-Flex and Flash Drive, Cyopsis created the spreadsheet that Defendants marked as Exhibit 8 and Vail Health's attorney presented to the Vail Police Department on April 18, 2016.   In fact, this statement was false because Cyopsis did not prepare Exhibit 8—that was done by the Davis Graham law firm, a fact that was concealed from the Vail Police Department and the Eagle County District Attorney's Office, as well as Plaintiffs in this case.

112.   Significantly, Defendants transmitted Exhibit 8 to the Vail Police Department with Savage's April 18, 2016 four-page letter, which was written with the knowledge and authorization of Defendants, laying out Defendants' factual allegations that they contended supported the criminal prosecution of Cimino.

113.   In this letter, Defendants represented Exhibit 8 as evidence of Cimino's criminal activity, and also that of Winninger and Sports Rehab:  "Cyopsis's spreadsheet also demonstrated that the USB devices contain a significant amount of Protected Health Information ("PHI").  VVMC has now confirmed that there is information on more than 3,000 patients on those USB devices."

**PROPOSED DRAFT COMPLAINT**

114.    Defendants asserted to the Vail Police Department that Cimino "plugged the first device in on December 1, 2015 at 7:57 am and downloaded hundreds of files from the VVMC shared drive.   He thereafter connected a second USB device on December 30, 2015 at 6:00 am."

115.    Vail Health never informed the Vail Police Department whether the "first device" was the Go-Flex or the Flash Drive, and neither did it indicate whether the "second device" was the Go-Flex or Flash Drive.   Defendants have continued to make the same allegation in this case.   The failure to identify the relevant devices was a material omission intended to mislead and misdirect the Vail Police Department and the Eagle County District Attorney's Office.

116.    Moreover, the assertion that the devices were plugged in on December 1 and 30 is curious because the documents recently produced from the Flash Drive portion of Exhibit 8 do not reflect a December 1 or December 30 create date, thereby demonstrating the falsity of the source and authenticity of Exhibit 8 (or the authenticity of the documents produced—that is, they did not come from the Flash Drive).

117.    In addition, in the April 18 letter to the Vail Police Department, Vail Health asserted that "[t]he expert discovered that the USB devices show that he accessed the information on those devices on February 5, 2016."   This statement was known to be false at the time it was made because Cimino did not even have the Go-Flex or Flash Drive in his possession on February 5, 2018.  Further, Bernard of Cyopsis testified that this statement was false because Cyopsis had no way to know whether Cimino or any other computer had accessed the information on February 5, 2016.

**PROPOSED DRAFT COMPLAINT**

118.   The statement was also demonstrably false because Cimino had sent the Go-Flex and Flash Drive to his attorney in Denver on February 4, 2016, by overnight delivery.  So Cimino could not have accessed the devices on February 5, 2016.

119.   That neither device was accessed by Cimino on February 5, 2016, was known by Defendants at the time they made the assertion in their April 18, 2016 letter. Defendants' counsel, Janet Savage, was informed of this by Cimino's attorney that the devices were being sent to him and that he then received them on February 5, 2016. Additionally, Cyopsis confirmed to Defendants that the two USB devices were sent by Cimino on February 4, 2016, because Cyopsis received the devices in the same overnight package sent by Cimino on February 4, 2016.  Cyopsis photographed the overnight package and has maintained the original package since February 5, 2016.

120.   Defendants intentionally and falsely represented that Cimino had "accessed" the Go-Flex and Flash Drive on February 5, 2016, to embellish and exaggerate their allegations that Cimino had been engaged in criminal activity.

121.   Defendants further misrepresented Cimino's alleged criminal activity by representing to the Vail Police Department that Exhibit 8 was "evidence" that the documents were "created" on December 1 and 30, 2015, the date that they supposedly hit the Flash Drive and were purportedly "accessed" by Cimino on February 3 and 5, 2015.

122.   For example, if Cimino copied a physical therapy protocol on June 1, 2012, to treat a patient when he was working for ProAxis, that is the date that the Go-Flex would reflect was the "created" date.  The "created" date constitutes a material

34

**PROPOSED DRAFT COMPLAINT**

misrepresentation by Defendants because if Cimino later downloaded the same physical therapy protocol on December 1, 2015, Exhibit 8 would signal to law enforcement that Cimino "created" (that is copied) the document on December 1, 2015 rather than on June 1, 2012.

123.    Exhibit 8 was intended by Defendants to give the Vail Police Department and the Eagle County District Attorney's Office the false impression as to the actual created date and Cimino's purported criminal intent for copying Vail Health documents.

124.    Additionally, the latter part of Exhibit 8 related to the Go-Flex failed to provide a "path" name.  A path name is a technical forensic computer term for the "path" that identifies the folder where a document is located on the computer or the computer device, as well as the name of the document.

125.    In this instance, Defendants intentionally hid and concealed from the Vail Police Department and the Eagle County District Attorney's Office the path name for the Go-Flex portion of Exhibit 8.  The path name was actually identified by Cyopsis as "Dave Drive/Attn VVMC docs from personal computer."  If this designation had been included on Exhibit 8, it would have alerted law enforcement that Cimino gathered documents from his personal computer and placed them in a folder that he specifically intended to turn over to Vail Health, as Savage had instructed him to do.

126.    Cimino named the folder "Attn VVMC docs from personal computer" (the "Folder"), which he then voluntarily placed on the Go-Flex before giving it to Defendants.  In doing so, the Go-Flex became "layered" with documents that he had for years—most of which originated from his days as a ProAxis employee.

**PROPOSED DRAFT COMPLAINT**

127.   When the old ProAxis documents that Cimino dragged into the folder and put on the Go-Flex were placed by Defendants on Exhibit 8, it gave the Vail Police Department (and a fact finder) the impression that he "stole" Vail Health documents in 2015, when in fact he was actually being overly honest by providing Vail Health with documents that he accumulated over years from his days at ProAxis.

128.   This would show Cimino's lack of intent to "steal" documents—he was returning documents that he thought Defendants' legal counsel had asked him to return, even though as a legal matter most of the documents returned were never Vail Health documents to begin with.  The documents were instead the property of ProAxis to which Vail Health had no legal right.

129.   The statement to law enforcement in Defendants' April 18, 2016 letter was that "Lindsay Winninger has been actively involved in these behaviors."   This was Defendants way of saying that Winninger was involved in felonious criminal conduct, as depicted on Exhibit 8.  Defendants made these statements without ever reviewing all the documents and information that they alleged were "evidence" of the felonious criminal conduct of Winninger.  (In fact, Cyopsis testified that it never was asked to produce all the documents to Defendants that were identified on Exhibit 8, although it could have done so in three short days.)

130.   Defendants made these statements to the Vail Police Department and the Eagle County District Attorney's office with the knowledge that the statements were false.  Defendants made the statements with the then present malicious and purposeful intent to ruin the reputations of Winninger and Sports rehab and thereby drive them

**PROPOSED DRAFT COMPLAINT**

from the Vail Valley physical therapy market to further the Vail Health monopoly on the physical therapy services in the Vail Valley.

131.    Many of Defendants statements were made without any investigation or due diligence as to the truth or falsity of the statements.  For example, Defendants accused Winninger of illegally soliciting Howard Head clientele without determining whether that assertion was true or false.  Another example is Defendants' allegation in their April 18, 2016 letter that Winninger and Sports Rehab were involved with Cimino in the theft of trade secrets.  Those statements were made without any review of the documents purporting to support such a malicious, destructive, and baseless claim.

132.    Therefore, in addition to making statements that were knowingly and intentionally false, and made with malicious intent, Defendants also made reckless statements with negligent disregard for the truth or falsity of the statements.

133.    But Defendants' defamatory statements did not stop with the April 18, 2016 letter and Exhibit 8.  No, they continued on.

134.    On July 25, 2016, Vail Health (through Tanya Rippeth) published the same defamatory statements from the April 18, 2016 letter to Andrew Schwab at the Colorado Department of Regulatory Agencies ("DORA").

135.    The July 25, 2016 letter was sent in response to an investigative inquiry by DORA related to Cimino that was, upon information and belief, prompted by two "anonymous" complaints that came from Vail Health employees, agents, or proxies. Both "anonymous" complaints contain information known only to Vail Health and its agents—that is, "tens of thousands of protected health information documents" were

**PROPOSED DRAFT COMPLAINT**

purportedly stolen and that Cimino "downloaded confidential patient information…on an external hard drive for personal gain."  This information was not publicly known when the "anonymous" complaints were filed.

136.   In the July 25, 2016 letter to DORA, Vail Health again implicated Winninger and Sports Rehab in conduct violating criminal and licensure laws.  The letter makes the same false and defamatory statements that are found in Savage's April 18, 2016 letter, so they will not be set forth again here.

137.   What is clear, however, is that the letter that was sent by Rippeth, at the direction of Kirchner and/or Nico Brown, were false and defamatory and made with the then present intent to induce a regulatory investigation into Winninger's purported misconduct.  The letter maliciously intended to subject Winninger to professional and criminal vilification for conduct in which she was never engaged.  This was intended to taint Winninger's physical therapy license for years to come.

138.   At about the same time, others within Vail Health campaigned to ruin Winninger and Sports Rehab's reputation and standing in the Vail Valley community by repeatedly making false and defamatory statements about Winninger and Sports Rehab's involvement in the theft of patient files from Vail Health.

139.   In about March and April 2016, Vail Health informed Howard Head physical therapists and staff about the theft of patient files and told them that Winninger was involved in the theft.  Upon information and belief, Winninger and Sports Rehab assert that Luke O'Brien and Nicholas Brown, as officers of Vail Health, made these statements to Howard Head employees and did so with the knowledge of and at the

**PROPOSED DRAFT COMPLAINT**

direction of Kirchner. Vail Health knew that by making these statements to its employees that the defamatory statements would spread quickly throughout the Vail Valley community, which they did.

140. The statements to Howard Head physical therapists and employees were devastating. Howard Head physical therapists and staff who had been sources of referrals shunned and ceased sending physical therapy clients to Winninger and Sports Rehab. Winninger and Sports Rehab were vilified and humiliated in their profession.

141. Perhaps even more devastating was that Defendants' publication of these vicious and spiteful statements caused Winninger to be vilified and humiliated before her many physical therapy friends from Howard Head. Many of these individuals had been friends for many years but thereafter shunned and rejected her.

142. The loss of longtime, close friends has had a devastating psychological impact on Winninger. It has caused situational depression that has caused Winninger to seek treatment by a psychologist, as well as suffering loneliness from the loss of friendships. Winninger also suffered stress induced high blood pressure and was under the care of a cardiology team.

143. That Defendants sought, quite explicitly, to destroy Winninger's social standing in Vail Valley is no better illustrated than by the inexplicable behavior of Vail Health Chairman Michael Shannon. An apparently successful financier and philanthropist, one would have thought that a person with such status would have been far beyond waging a hate crusade to destroy a young female physical therapist living in Vail, Colorado, whom he did not even know.

**PROPOSED DRAFT COMPLAINT**

144.   But that is just what Shannon did.  For example, at a high-society Vail cocktail party Shannon told a prominent guest that Winninger had been engaged in criminal conduct by stealing thousands of Vail Health patient files so she could better launch Sports Rehab.  He also apparently told a client of Winninger's at another social event that a warrant was out for Cimino's arrest, apparently in an attempt to further implicate Winninger and Sports Rehab in criminal conduct.

145.   The statements and implication that Winninger and Sports Rehab was involved in criminal conduct was clearly false and strategically made with the intention to trash the physical therapy relationships that Winninger had with numerous Vail residents.  In other words, Shannon sought to wreck Winninger's reputation within Vail social circles so that her physical therapy clientele would evaporate.  That was part of the Vail Health's all-embracing plan to obliterate Winninger.

146.   Defendants' false and defamatory statements to Howard Head physical therapists and employees and Vail residents was maliciously intended to cause Winninger pain and suffering.  Defendants were successful in their endeavor.

147.   In addition to the overt acts of defamation alleged herein, Nico Brown invaded Winninger's privacy by gaining access to her e-mails and computer from the time she was employed by ProAxis.  Brown, as a member of Vail Health's management, had absolutely no legal right to those computer files.

148.   In spring 2016, Vail Health Chief Executive Officer Doris Kirchner met with The Steadman Clinic Chief Executive Officer Dan Drawbaugh and told him that

**PROPOSED DRAFT COMPLAINT**

Winninger had known about and participated in the downloading of Vail Health patient files.  Drawbaugh later told Winninger that Kirchner had made this statement.

149.   During about this same time, Drawbaugh had discussions with a number of doctors in The Steadman Clinic, including Dr. Clanton, Dr. LaPrade, and Dr. Philippon, that expressed concern about the breach.   Specifically, "there were implications that [Winninger] could have been involved in" the theft.  (Drawbaugh Dep. at 17-18)  Doctors, such as Dr Philippon, Dr. LaPrade, and Dr. Clanton, also voiced concerns that Winninger had taken patients from Howard Head.  (*Id.* at 21-26)  In fact, Drawbaugh testified that "everyone knew" about Winninger, and there was a perception that Winninger was involved in Cimino's purported theft of patient files.  (*Id.* at 26)

150.   Similarly, Dr. Provencher spoke to Drawbaugh about Winninger's potential involvement in a HIPAA breach and theft of patient files.  (*Id.* at 27)

151.   Dr. Hackett also told Drawbaugh that he had heard about Winninger being behind in or in some way involved with the theft of Vail Health patient files (*Id.* at 28-29)

152.   Dr. Viola also expressed his concerns to Drawbaugh about Winninger being involved in Cimino's purported theft of Vail Health patient files.  (*Id*. at 29)

153.   Individuals within the Steadman Philippon Research Institute also expressed concerns about working with Winninger because she had been implicated in in Cimino's theft of Vail Health patient files.  Those individuals included Karen Briggs, Dr. Johnny Huard, Al Perkins, and Gary Rosenbach.  (*Id.* at 37-38)  Briggs apparently made the point to tell Drawbaugh that "if somebody had stolen patient records, you're not going to trust them in the organization."  (*Id.* at 40)

41

**PROPOSED DRAFT COMPLAINT**

154.   During his deposition, Drawbaugh explained that the statements about Winninger being involved in Cimino's theft of Vail Health patient files essentially spread like wildfire throughout The Steadman Clinic.   All it took was a suggestion that Winninger was involved in very, very serious criminal activity, which spread throughout the Clinic, which then resulted with her being shut out of The Steadman Clinic.   (*Id.* at 41-43)  This was the exact affect that Defendants hoped for.

155.   In summer 2016, Kirchner continued to make statements to Drawbaugh, which Drawbaugh then relayed to Winninger.  Drawbaugh told Winninger that Kirchner had said that Winninger had stolen Vail Health patient files.  Kirchner told Drawbaugh that The Steadman Clinic should not be professionally associated with Winninger as the result of theft of the purported patient files.   Drawbaugh specifically recalled a conversation with Kirchner—before Winninger signed agreements with The Steadman Clinic and SPRI—that Kirchner had indicated that Winninger was involved in Cimino's purported theft of patient files.  (Drawbaugh Dep. at 89)  Although Drawbaugh could not recall the number of times Kirchner had made such statements to him, but from the beginning, the implication by Kirchner was that Winninger was involved.  (*Id.* at 90)

156.   In fall 2016, Kirchner accelerated her campaign of false and defamatory statements about Winninger and the purported theft of Vail Health patient files when she again stated to Drawbaugh that Winninger had stolen patient files from Vail Health. Drawbaugh told Winninger about this conversation.

**PROPOSED DRAFT COMPLAINT**

157.   Kirchner led Drawbaugh to believe that there was an ongoing process in Vail Health and that they were developing proof that Winninger was involved in Cimino's purported theft of patient files.  (Drawbaugh Dep. at 95)

158.   Kirchner also made false and defamatory statements to Kelly Adair of The Steadman Clinic and the clinic's managing partner, Dr. Marc Philippon.   In both communications, Kirchner made a point of telling Adair and Dr. Philippon that Winninger was involved in the stealing of patient files.   Winninger was told by Adair that the statements had been made.

159.   At one point, The Steadman Clinic asked Kirchner to provide proof of this alleged theft of patient files, and Drawbaugh informed Winninger about this request. Neither Kirchner nor Vail Health provided The Steadman Clinic with any proof or support for their statements.   In fact, Kirchner told Drawbaugh Vail Health could not provide him that information.  Kirchner made the statement in such a manner so as to leave Drawbaugh with the impression that she and Vail Health did indeed have evidence supporting the allegation of criminal conduct by Winninger and/or Sports Rehab.  Drawbaugh told Winninger about this conversation.

160.   At the time Kirchner made the statement to Drawbaugh, neither Kirchner, Shannon, Brown, O'Brien, nor anyone else at Vail Health—including their legal counsel—had any proof that either Winninger or Sports Rehab were in any way involved in the "theft" of Vail Health files, whether that be medical files, patient files, files containing PHI, trade secrets, or confidential or proprietary documents or information. Kircher made the statement to Drawbaugh knowing full-well that she did not have any

**PROPOSED DRAFT COMPLAINT**

supporting evidence. Kirchner made the statement to give Drawbaugh the false impression that Vail Health had such information and that the criminal violations were significant.

161. In January 2017, Drawbaugh met Kirchner at her office, Kirchner showed Drawbaugh a "draft" complaint that Kirchner had instructed her attorney, Janet Savage, to prepare. The "draft" complain was sitting on Kirchner's desk, and she told Drawbaugh that he could look at it but not take a copy. Drawbaugh reviewed the "draft" complaint, which he understood to be a criminal complaint against Winninger and her company. Kirchner informed Drawbaugh that forensics had been run, and based on Kirchner's statements, Drawbaugh understood that the forensics had traced the stolen files to Winninger. Drawbaugh asked to see the forensics, but Kirchner would not show it to him, claiming instead that it was "confidential" to Vail Health. (Drawbaugh Dep. at 52-68, 73) Kirchner led Drawbaugh to believe Vail Health had proof that Winninger was involved in the theft, but Kirchner just could not show it to him. But the real reason Kirchner could not show Drawbaugh the forensics is because it proved nothing about Winninger's involvement in Cimino's purported theft of Vail Health patient files, as Defendants' own forensic expert confirmed during his deposition.

162. Based on the "draft" complaint, Drawbaugh understood that Vail Health was saying that Winninger and Sports Rehab had stolen or been involved in the theft of thousands of patient files and that the patient files were being used for Winninger and Sports Rehab's own economic advantage. Based on the allegations, Drawbaugh thought that Vail Health had the facts to back up the allegations. (*Id.*)

44

**PROPOSED DRAFT COMPLAINT**

163.   The "draft" complaint, however, was chocked full of false and defamatory statements.

164.   Encapsulated in Defendants' "draft" complaint was that Winninger and Sports Rehab "stole[] confidential and trade secret information" from Vail Health. Winninger and Sports Rehab also "stole[] thousands of patient files in violation of the Health Insurance Portability and Accountability Act of 1996…." That is, Winninger and Sports Rehab have committed a crime under federal law.

165.   The "draft" complaint goes on to assert that Winninger and Sports Rehab's "purpose for stealing patient health information was to solicit VVMC's [now Vail Health's] patients and gain an unfair economic advantage."   Defendants contended that these purported acts were "prohibited by state and federal statutory law…."

166.   The "draft" complaint further alleges that "Cimino stole confidential and proprietary information, including VVMC [now Vail Health] protocols and other confidential materials."   It then stated that "Winninger and Sports Rehab "knew about, and actively participated in Cimino's theft of confidential and proprietary information."

167.   The "draft" complaint further alleges that Winninger and Sports Rehab "solicited, and/or were, at all relevant times, aware of, complicit in and actively involved in, Cimino's theft of VVMC's [now Vail Health's] patient files, including protected health information, as well as, the theft of VVMC's [now Vail Health's] confidential, proprietary and trade secret business information and copyright protected business records."

168.   The purpose, according to the "draft" complaint, for stealing the patient files and confidential information was for "economic gain."   The "draft" complaint then

**PROPOSED DRAFT COMPLAINT**

states that Winninger, Sports Rehab, and Cimino "intended to use and, on information and believe, did use these patient files and confidential information to solicit patients and to compete against VVMC [now Vail Health] and Howard Head."

169.    The "draft" complaint is referred to herein in quotes because there was never any intent on the part of Defendants to file the complaint.  In fact, they never did.  They only filed it as a Counterclaim after Winninger and Sports Rehab filed the instant action.  Kirchner and her co-conspirators used the "draft" complaint as a substitute for providing Drawbaugh with evidence of the alleged theft.  It was intended to give Drawbaugh (and Dr. Philippon, as alleged below) with the false impression that Defendants were serious about the allegations against Winninger and Sports Rehab and that they actually had supporting evidence—when they did not.

170.    The statements made by Defendants in the "draft" complaint were false and known to be false at the time they were published to Drawbaugh by Kirchner.  The false and defamatory statements in the "draft" complaint were made with Defendants' then present malicious intent to destroy Winninger's professional and personal reputation, as well as the professional reputation of Sports Rehab, with The Steadman Clinic and the orthopedic surgeons who were its members.  It was, in fact, a concerted character assassination by Kirchner and her co-conspirators.

171.    During the meeting with Drawbaugh, when she provided him with the "draft" complaint, Kirchner also told Drawbaugh that The Steadman Clinic should not be professionally associated with Winninger or Sports Rehab.  This statement was made by Kirchner with the then present intent to disrupt, interfere with, and terminate the

**PROPOSED DRAFT COMPLAINT**

professional relationship between The Steadman Clinic/SPRI on the one hand and Winninger/Sports Rehab on the other.  And it worked.

172.   Michael Shannon, as Board Chairman, was riding shotgun if not in the driver's seat in Defendants' concerted efforts to decapitate and destroy Winninger and Sports Rehab's relationship with The Steadman Clinic.  Shannon told Dr. Philippon, Dan Drawbaugh, and others that patient files were stolen from Vail Health and that Winninger was involved.  Shannon had no factual basis to base this false statement.

173.   Drawbaugh informed Winninger that Shannon also sent text messages to Dr. Philippon in which Shannon again implicated Winninger in stealing Vail Health's files.   Shannon also stated to Dr. Philippon that he did not understand why The Steadman Clinic was associating itself with Winninger when she stole patient files from Vail Health.

174.   In summer 2016, Shannon told Dan Drawbaugh of The Steadman Clinic that Winninger was involved in the theft of Vail Health patient files.   Drawbaugh informed Winninger about the statement made by Shannon.   Based on his conversations with Shannon, Drawbaugh was led to believe that Winninger was involved in criminal activity through the theft of Vail Health patient files.   But neither Shannon, nor Kirchner provided any specifics about the evidence they had to support such egregious allegations.  (Drawbaugh Dep. at 92-93)

175.   During summer 2016, Shannon also told Kelly Adair of The Steadman Clinic that Winninger had stolen thousands of patient files from Vail Health.   Adair told Winninger about the statement made by Shannon.

**PROPOSED DRAFT COMPLAINT**

176.    In December 2016, Shannon again told Dan Drawbaugh of The Steadman Clinic that Winninger had stolen thousands of patient files from Vail Health.  Drawbaugh informed Winninger about the statement made by Shannon.

177.    And in December 2016, Shannon again told Kelly Adair of The Steadman Clinic that Winninger had stolen thousands of patient files from Vail Health.  Adair told Winninger about the statement made by Shannon.

178.    In addition to making false and defamatory statements about Winninger and Sports Rehab to Howard Head employees, Nicholas Brown also made defamatory statements to Kelly Adair of The Steadman Clinic.

179.    In spring 2016, Brown told Kelly Adair of The Steadman Clinic that Winninger was involved in stealing patient files from Vail Health.  Adair told Winninger, who he met with on almost a monthly basis, that Brown had made the statement.

180.    In fall 2016, Brown again told Kelly Adair of The Steadman Clinic that Winninger was involved in stealing patient files from Vail Health.  Adair told Winninger that Brown had made the statement.

181.    By late 2016 and into early winter 2017, the false and defamatory statements made by Kirchner, Shannon, Brown, and O'Brien were circulating throughout the Vail Valley medical community among physicians, physical therapists, staff members of The Steadman Clinic, the Steadman Philippon Research Institute, and upon information and belief, other orthopedic clinics.

182.    In 2016 and 2017, Shannon had several conversations with Dr. Philippon about Winninger.   Shannon told Dr. Philippon that Vail Health was investigating

48

**PROPOSED DRAFT COMPLAINT**

Cimino's purported theft of patient files and that there was an implication that Winninger was involved in the theft.

183.   On or about December 30 or 31, 2016, Shannon met with the managing partner of The Steadman Clinic, Dr. Marc Philippon, for breakfast.   At the breakfast meeting, Shannon showed Dr. Philippon the "draft" complaint drafted by Savage—just as Kirchner had done with Drawbaugh.   Shannon told Dr. Philippon that the complaint was going to be filed against Winninger the next day because of her involvement in stealing files from Vail Health.   Dr. Philippon understood that the "draft" complaint was criminal in nature and recalls hearing the word "criminal" being used.   Dr. Philippon knows he did not use the word "criminal," and the only other person at the meeting was Shannon.   (Philippon Dep. at 78-80)

184.   The "draft" complaint made the same false and malicious statements against Winninger and Sports Rehab as previously alleged when Kirchner published the "draft" complaint to Drawbaugh.   Shannon told Dr. Philippon that Defendants were going to file the "draft" complaint the next day (or soon thereafter) despite the fact that Defendants had absolutely no intention to serve or file the complaint against Winninger or Sports Rehab.   Once again, the "draft" complaint was nothing more than a ruse to convince The Steadman Clinic that Winninger and Sports Rehab were bad actors—criminals—with whom the Steadman Clinic should not be associated.   And it worked because soon thereafter Dr. Philippon told his staff and multiple members of The Steadman Clinic that they should not talk to or associate with Winninger in any way because she had legal problems.

49

**PROPOSED DRAFT COMPLAINT**

185.   In January 2017, Shannon continued his depredations against Winninger and Sports Rehab when he too spoke to Adair and Drawbaugh of The Steadman Clinic. Shannon told both of them that Winninger was involved in the stealing of thousands of patient files from Vail Health.  Shannon knew at the time this statement was made that it was false.  But he could not stop himself.  He seems to have been obsessed with his objective and that of Kirchner to destroy Winninger and Sports Rehab.

186.   On January 25, 2017, Winninger was called in for a meeting with Dr. Philippon and others from The Steadman Clinic.   Winninger was specifically questioned about the statements being made by those associated with Vail Health, and in particular, whether she stole patient files from Vail Health

187.   Winninger informed Dr. Philippon and those present that she was not involved in any theft of patient files and informed them of the steps she had taken to clear her name and reputation.   As it later worked out, those protestations were to no avail.

188.   At about the same time, Winninger provided Dan Drawbaugh and Dr. Philippon a signed copy of the sworn certification provided by Cimino to Vail Health, which stated that Winninger did not obtain or have access to the patient files purportedly taken by Cimino.  Although Winninger had asked Vail Health to provide a copy of the certification, it refused to provide her with the sworn statement.

189.   During the week of February 6, 2017, Shannon had a telephone conversation with Al Perkins, a Board member of the Steadman Philippon Research Institute, during which the Shannon told the Steadman Philippon Board member that "he

**PROPOSED DRAFT COMPLAINT**

did not know why Dan Drawbaugh was hanging around [Winninger] because she wasn't a good person and she had stolen records from Vail Health to start her own business." Shannon told him that the theft involved 2,500 to 3,000 patient records.  (Perkins Dep.)

190.    Immediately after the call, Perkins contacted Drawbaugh and told him what Shannon had said.  Perkins's recollection is very clear.  He says he repeated what Shannon had said, that is, "he didn't know why [Drawbaugh] was hanging around Lindsay Winninger because she had stolen records from Vail Health."  (*Id.*) Although Drawbaugh could not recall Perkins exact words, Drawbaugh confirms that Shannon said Winninger was implicated in the theft of Vail Health files.  (Drawbaugh Dep. at 43-46)  Perkins eventually told Dr. Philippon about his conversation with Shannon.

191.    Shannon later had another call with Perkins.   Again, the topic of conversation turned to Winninger.   Perkins told Shannon that he did not know Winninger very well and that during their last conversation, Shannon had said that Winninger stole records from Vail Health.  In apparent attempt to deny his involvement in making such false statements, Shannon denied the conversation took place.  Perkins did not know what to say, given he knew what Shannon had said.  (Perkins Dep.)

192.    Upon information and belief, since the filing of this action and within the last several months, Shannon has continued to make false and defamatory statements that Winninger stole or was involved in the theft of Vail Health patient files and that Winninger admitted to doing so.  Upon information and belief, Shannon made these defamatory statements to his colleagues, those associated with Vail Health, and others.

**PROPOSED DRAFT COMPLAINT**

193.   In February 2017, a partnership meeting was held at the offices of The Steadman Clinic.  Winninger presented the wellness program she had created for The Steadman Clinic under the consulting agreement she had with the Clinic.  The wellness program presentation was well received, and Winninger was told that she did a terrific job in developing the program.  Unbeknownst to her, immediately after she left the meeting, The Steadman Clinic had a closed door session to discuss Winninger and her contracts.  During the closed door meeting, there were questions and discussions about Winninger's involvement in the allegations made against Cimino—specifically, her involvement in the theft of Vail Health patient files.  Various doctors made comments about the situation and questioned whether the wellness program and the agreement with Winninger should be put on hold.  The doctors wanted information as to whether WInninger was involved in Cimino's purported theft of Vail Health patient files.  The doctors viewed the statements "as a very serious matter" and ultimately put the wellness program and Winninger's contracts on hold.  (Adair Dep. at 167-82)

194.   Given that Defendants had baseline knowledge and no evidence that Winninger had done anything improper—and actually were in possession of a sworn statement that stated otherwise—Defendants' made their statements with the then present intent to destroy Winninger's personal and professional reputation and ultimately force Winninger and Sports Rehab out of business.

195.   To quash the false and defamatory statements being made about her, Winninger voluntarily had her computer forensically reviewed, at her own expense, by a certified forensic computer examiner, David Penrod.  His forensic review found no

evidence of Vail Health patient files or electronic healthcare records on her computer. Nor was there any evidence that USB thumb drives had ever been attached to Winninger's computer during the relevant time period.  On March 2, 2017, Winninger voluntarily provided Penrod's report to Savage, as Vail Health's attorney.

196.   At the same time, Winninger also provided Savage and Vail Health with a sworn affidavit stating she and Sports Rehab were not involved in any theft of Vail Health patient files, nor did she ever see or use that information.  Winninger also offered to sit for a deposition, but Vail Health refused to accept Winninger's invitation.

197.   In contrast, Winninger requested that Vail Health provide any evidence that it had demonstrating that Winninger or Sports Rehab accessed Vail Health patient files.  Vail Health never provided any evidence and still has not done so.

198.   In early 2017, Winninger requested that Vail Health retract the statements made by Defendants and inform all Vail Health Board members, as well as the doctors at The Steadman Clinic and Vail Summit Orthopaedics, that Winninger and Sports Rehab did not take any Vail Health patient files.  Vail Health never responded to this request and have never retracted their false and defamatory statements.

199.   Despite these efforts, Winninger was unable to undo or mitigate the damage to her professional reputation caused by the false, malicious and defamatory statements published by Kirchner, Shannon, Brown, or O'Brien.  By late fall 2016, physicians at The Steadman Clinic, who formerly referred their patients to her and Sports Rehab, ceased referring patients to Winninger and Sports Rehab.

200.   Although Winninger took measures to clear her name by providing the

**PROPOSED DRAFT COMPLAINT**

results of the forensic review, Cimino's certification, and Winninger's affidavit to The Steadman Clinic, the damage was done.   Because of Defendants' and O'Brien's defamatory statements, Dr. Philippon, as managing partner of The Steadman Clinic, terminated the Clinic's and SPRI's relationship with Winninger in March 2017.

201.   In March 2017, Dr. Philippon held a meeting with Winninger, Talena Williams, and Kelly Adair.   At that meeting, Dr. Philippon discussed the allegations against Winninger that she had been involved in the theft of Vail Health patient files.   Dr. Philippon questioned Winninger about her involvement in the theft, which he took to be a serious allegation.   Winninger was very upset and cried during the meeting.   (Adair Dep. at 152-61)   Winninger informed Dr. Philippon and those in attendance that she had nothing to do with the alleged theft of Vail Health patient files by Cimino.   It made no difference.   Winninger's contractual and referral relationship with The Steadman Clinic and SPRI were put on hold until she cleared her name.

202.   Some physicians also told Winninger that they needed to end their professional relationship until the alleged theft of patient files was "cleared up."   In other words, the physical therapy work would cease until Winninger cleared her name.

203.   Indeed, that is what happened.   The Steadman Clinic doctors have ceased sending Winninger and Sports Rehab orthopedic  physical therapy referrals. Referrals from other clinics, such as Vail Summit Orthopaedics, have also ceased.   As a result of Kirchner's, Shannon's, O'Brien's, and Brown's false and defamatory statements, Winninger and Sports Rehab have lost substantial business.

204.   With the loss of referrals and business, as well as the reputational damage

**PROPOSED DRAFT COMPLAINT**

that Defendants caused to Winninger, Sports Rehab and Cimino, Sports Rehab had no choice but to terminate Cimino in fall 2016.  The termination of Cimino is the result of Defendants' defamatory and tortious conduct, which constitutes tortious interference with contractual relations between Sports Rehab and Cimino.

## V.   VAIL HEALTH MADE DEFAMATORY STATEMENTS TO MAINTAIN ITS MARKET DOMINANCE AND DRIVE WINNINGER AND SPORTS REHAB OUT OF BUSINESS.

205.   Defendants' predatory conduct is discernible and explicable against the background of their monopoly over the physical therapy service market in the Vail Valley.  During the time period relevant to this case, The Steadman Clinic was considering starting their own physical therapy offering.  Given that The Steadman Clinic, and Dr. Philippon in particular, provided such an overwhelming number of referrals to Vail Health's Howard Head physical therapists, Defendants were extremely alarmed that The Steadman Clinic might start its own physical therapy operation with Winninger at its helm.

206.   In September 2015, Winninger met with the Four Seasons Hotel to discuss possible rental space for opening a new Sports Rehab location in Vail.  Almost immediately thereafter, Luke O'Brien, a Vice President at Howard Head, informed Kirchner about the meeting.  O'Brien told Kirchner that the manager at the Four Seasons said that he "was working with Philippon and a PT named Lindsay on opening a small clinic in the Four Seasons."  Although O'Brien said he did not initially take the Sports Rehab/Four Seasons idea seriously, he informed Kirchner that Winninger had met with Dr. Philippon "multiple times in the last month" and "that she has the

**PROPOSED DRAFT COMPLAINT**

relationship with MJP [Dr. Philippon] to pull this off."   O'Brien also informed Kirchner about the situation and raised the idea that Vail Health should consider the Four Seasons as a possible Howard Head clinic site—that is, move in and take away the site from Winninger and Sports Rehab.

207.   Less than an hour later, Kirchner responded: "This is perplexing.   What are your thoughts on doing work at FS [the Four Seasons]? Why is Marc [Philippon] doing this?  What does Mark Herron [the manager of the Four Seasons] suggest?"  She then forwarded O'Brien's email to Shannon to get his input.

208.   Apparently, O'Brien's and Kirchner's concerns about Winninger opening a small clinic in the Four Seasons continued to be the talk at Howard Head.  Winninger quickly learned that Vail Health and Howard Head were very concerned that Winninger might be returning to Vail to open her own physical therapy business, which they viewed as competition.  Winninger was told that O'Brien was very interested in learning more about Winninger's plans in Vail.  Winninger reached out to O'Brien and set up a meeting at Yeti's on October 13, 2016, to discuss the situation.

209.   At the meeting, Winninger told O'Brien that she was looking for space but had not yet signed a lease.  Winninger also explained that she was interested in living in Vail (after traveling for two years) but did not want to work for a traditional physical therapy clinic.  Rather, she wanted to still travel for some for her business but also wanted her own small space in Vail to treat patients.

210.   O'Brien stated, "I'm in a different position than what I used to be.  If I was in your position, I'd love to do it that way.  But I'm not in the same position that I used to

**PROPOSED DRAFT COMPLAINT**

be when we worked together.  I'm in charge now, and I have different responsibilities."
Although O'Brien said that he was not concerned about Winninger as a competitor in her first year of business, he said he "would be worried in years 3, 4, and 5."

211.   Winninger and O'Brien also discussed whether it would be possible for Howard Head and Winninger to collaborate, but O'Brien appeared to think that was probably not possible.  O'Brien then said, "Competition is healthy, it gives you a chance to step back and evaluate things.   But technically, *my job is to look at you as competition and my job would be to eliminate you*."

212.   O'Brien then explained that "the hospital looks at things differently in terms of numbers and staff," and he again alluded that his responsibilities were different. When Winninger questioned whether he was kidding about the statements he made, O'Brien responded, "No, the hospital does things differently."  The conversation ended with Winninger and O'Brien considering possible ways of working together, but O'Brien said, "I just don't know how this would work."  In the end, Winninger agreed with O'Brien to "take some time and get back together in a couple of weeks" to discuss things. Winninger and O'Brien did not meet again.

213.   Upon information and belief, O'Brien continued his quest to find as much information as he could about Winninger's business.  About the time Cimino was set to leave Vail Health, O'Brien met with Cimino.  O'Brien inquired as to why Cimino was leaving Howard Head.  The conversation as to that issue was brief.  O'Brien then turned his attention to Winninger and Sports Rehab, pumping Cimino for information about Winninger and Sports Rehab and their business model.

**PROPOSED DRAFT COMPLAINT**

214.   Vail Health's attempt to gain as much information about Winninger and Sports Rehab is also reflected in the January 8, 2016 meeting that Winninger had with Nico Brown, another Howard Head Vice President.  Winninger attended the meeting at the request of Dan Drawbaugh and Kelly Adair of The Steadman Clinic.  At the time of the meeting, Brown was fully aware of Winninger's relationship with The Steadman Clinic and the Steadman Philippon Research Institute.  They specifically discussed those relationships at the meeting and Brown specifically questioned Winninger about the discussions she was having with The Steadman Clinic and the Steadman Philippon Research Institute.

215.   The purported objective of their meeting was to discuss how Howard Head could collaborate with Winninger as to the needs of The Steadman Clinic and the Steadman Philippon Research Institute.  Winninger questioned how this plan could work, given that Winninger and Sports Rehab's business model is different than Howard Head's—that is, Sports Rehab is cash pay only and Howard Head is primarily insurance.  She also mentioned that she had just hired David Cimino and that it was important that there be a place for him in any plan moving forward.

216.   Brown was very interested in how Winninger's physical therapy travel service worked and the amount she charged for that service.  He also (inexplicably and repeatedly) pressed Winninger to review her service contracts.   Brown also acknowledged that Winninger and Sports Rehab's business model was different from Howard Head's, especially in the concierge and niche area, which Brown apparently saw as "a nice compliment" to Howard Head's business.   Brown saw Winninger's

business as "that missing piece that we've always looked at in this big picture thing."

217.    Part way through the meeting, Brad Schoenthaler of Sports Rehab participated by way of a conference call.  Brown told Winninger and Schoenthaler, "I've got great respect for you guys.  I think you guys are doing some great stuff and how do we collaborate and make the pie bigger for everybody in terms of we're going to create a preferred provider network that would directly help things for you guys…it's align or die, and so I'd like to see what sort of things could play out and what scenarios have you thought about and that sort of thing.  Because I know you guys have been thinking about it."  The parties then discussed possible ways they could collaborate.

218.    Brown raised the possibility that Winninger and Sports Rehab's employees would become Howard Head employees.  That was news to Winninger, who had never heard that proposed before.  Brown also questioned Winninger about her physical therapy travel service—again, pressing her to disclose her agreements. Schoenthaler responded that he did not have a problem providing those agreements once it was decided how the parties would collaborate.  Brown continued to press that Sports Rehab's patient service contracts should be provided to Howard Head, but Winninger and Schoenthaler declined that request.

219.    At one point, the conversation shifted to Cimino.  Winninger explained that Cimino had left Howard Head because he wanted to do something a bit different—that is, he wanted more freedom in treating patients based on their individual needs.  In response, Brown stated, "In the future, I would say if employees come to you with that sort of thing, come talk to me….I would appreciate that because those are the sorts of

**PROPOSED DRAFT COMPLAINT**

things we can collaborate on proactively.  I would say I'm going to have to do some damage control here….there's some relationships in the Vail clinic that were hurt a little bit by all of this"—that is, Cimino wanting to join Sports Rehab.  Brown also expressed that "Dave is one of my favorite people.  I will take care of him.  I wouldn't be here without Dave."

220.   Throughout the conversation, Brown led Winninger to believe that he wanted to collaborate and work with Winninger and Sports Rehab.  He said things like, "I want to help you."  "I'd like you to be part of this journey."  I am "committed to working with you guys."  He even confirmed that there would be a place for Cimino in the plan.  But none of that turned out to be actually true.

221.   In the end, Brown said that he needed to consult with Vail Health's CEO, Doris Kirchner, and Board Chair, Mike Shannon.  Brown stated that he hoped to meet again with Winninger the following week, but she never heard from Brown again.

222.   Shortly after the January 8, 2016 meeting, Brown apparently told people at Vail Health and Howard Head that he had no intention of collaborating with Winninger and Sports Rehab.  He had obtained the information that he needed from the meeting and concluded that if Howard Head wanted to provide the services offered by Winninger and Sports Rehab, Howard Head could do it on its own.  In sum, the January 8 meeting was nothing more than a ruse to obtain information from Winninger and Sports Rehab about the services they provide, the cost of those services, their business model, and Cimino.

**PROPOSED DRAFT COMPLAINT**

223.    Unbeknownst to Winninger, the day before the meeting with Winninger, Brown had begun investigating Cimino.   He obtained Cimino's employment file in an apparent attempt to find some way to stop Cimino from working with Winninger and Sports Rehab.  When that did not work, he then used the January 8, 2016 meeting as an apparent ruse to review Cimino's work e-mail and work computer.

224.    Brown also reviewed the files of another former Howard Head employee, Kristin Stangle had joined Sports Rehab's Denver clinic in summer 2015.   Brown apparently reviewed Stangle's e-mails in an attempt to find evidence of wrongdoing on the part of Winninger and Sports Rehab.   Brown, however, did not find "anything alarming" and Brown stated Stangel's situation "was a bit different as she was moving to Denver and therefore not a direct competitor" of Howard Head.

225.    Exactly one week after the January 8, 2016 meeting, Vail Health sent separate cease-and-desist letters to Cimino and Winninger.   Both Kirchner and Brown were copied on both letters.

226.    On November 5, 2016, almost a year after Cimino had resigned from Howard Head to join Sports Rehab, Brown illegally sought to review Winninger's e-mail account with ProAxis.   The IT department at Vail Health—which had access to the ProAxis e-mail accounts—improperly gave Brown access to Winninger's ProAxis e-mails.  Vail Health had no right to access Winninger's ProAxis e-mail account and was an invasion of Winninger's privacy.   The only reason to review -emails that were over four years old (and more) was to obtain "dirt" on Winninger and shut her down.

227.    Vail Health's obsession with Winninger and Sports Rehab stems from her

**PROPOSED DRAFT COMPLAINT**

relationship with The Steadman Clinic and Dr. Philippon.  The Steadman Clinic provides a majority of Howard Head's physical therapy referral business.

228.    Further, Vail Health, through its Howard Head physical therapy services unit, monopolizes physical therapy services in the Vail area geographic market.  Vail Health, through Howard Head, now provides at least 70% of the physical therapy services in the relevant geographic and product markets and possesses dominant market penetration and power in these relevant markets.

229.    Given Vail Health's and Howard Head's dominant market penetration, it must be presumed, and Winninger and Sports Rehab affirmatively allege, that Vail Health and Howard Head have sufficient market power to affect competition and cause antitrust injury in the relevant geographic and product markets.

230.    To gain this market power and realize its goal to monopolize physical therapy services in the relevant market, Vail Health and Howard Head have used nonsolicitation agreements (and now noncompete agreements) that they require their physical therapists, such as Cimino, to sign.  Kirchner and Vail Health implemented these agreements with the then present intent to monopolize the relevant market in violation of C.R.S. § 6-4-105.

**PROPOSED DRAFT COMPLAINT**

231.    To further this illegal monopolization scheme, Kirchner, Shannon, O'Brien, Brown, and other agents of Vail Health and Howard Head engaged in tortious, unfair, and deceptive trade practices, and in particular made innumerable false and defamatory statements about Winninger and Sports Rehab.

232.    Kirchner, Shannon, O'Brien, and Brown told executives and physicians of The Steadman Clinic that Winninger had stolen approximately 3,000 Vail Health patient files and that they should no longer be working with her.  Put differently, Kirchner, Shannon, O'Brien, and Brown spread statements throughout the Vail Valley that Winninger and Sports Rehab had committed felonies under both state and federal criminal law.  This, of course, constitutes defamation *per se*.

233.    Kirchner, Shannon, O'Brien, and Brown and other Vail Health agents and employees made these false and defamatory statements with the then present intent to drive Winninger and Sports Rehab from the Vail area physical therapy services market to further consolidate its monopoly.  Vail Health and Howard Head Vice President Luke O'Brien made that objective crystal clear: **"[*M*]y job is to look at you as competition, and my job would be to eliminate you**," which is what Defendants set out to do.

234.    There is no doubt that Vail Health viewed Winninger and Sports Rehab as direct competitors.  Brown identified Sports Rehab as a competitor in September 2016.  Further, as of October 2016, Vail Health apparently had "a plan" in place to combat any more referrals from The  Steadman Clinic to Winninger and Sports Rehab.

235.    Further evidence of O'Brien's and Brown's anticompetitive behavior is reflected in an exchange of text messages on October 13, 2016.  After discussing that

**PROPOSED DRAFT COMPLAINT**

"[t]he thief [Cimino] has been let go from SRC [Sports Rehab]," Brown responded by stating, "[w]e need the [sic] make sure LW [Winninger] doesn't steal away any of our therapists (not kidding)."  O'Brien agreed that they needed to secure their team, and Brown suggested they "discuss a strategy" to ensure their "long term security…."

236.   The monopoly power of Vail Health and Howard Head and the tortious, unfair, and anticompetitive conduct alleged have had an actual, deleterious, and anticompetitive effect on competition for physical therapy services in the Vail area. Patients are being deprived of specialized and higher quality physical therapy services offered by Winninger and Sports Rehab.  Patients are being deprived of special services such as in-home care, more time-intensive and experienced care that Winninger and Sports Rehab offer and that Vail Health and Howard Head cannot, or do not, offer.  If Vail Health's and Howard Head's monopoly power and unfair and anticompetitive conduct as alleged are permitted to continue, competition in the relevant geographic and product market will continue to be injured.

237.   As the direct and proximate result of the false and defamatory statements of Defendants alleged above, Winninger and Sports Rehab have been damaged in an amount to be proven at trial.

**PROPOSED DRAFT COMPLAINT**

238.   On December 6, 2017, Defendants asserted that Plaintiffs did not adequately plead the allegedly defamatory statements as separate causes of action. Since then, Plaintiffs have identified the defamatory statements in answers to interrogatories (at least as they are known to date).  To avoid any further issue, Plaintiffs have set out each defamatory statement as a separate claim as Defendants requested.

<u>**CAUSES OF ACTION**</u>

**COUNT I—DEFAMATION *PER SE***
**(Against Vail Health and Kirchner)**

239.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 238 as if set forth fully herein.

240.   In spring 2016, Kirchner told Dan Drawbaugh of The Steadman Clinic that Winninger had known about and participated in downloading Vail Health patient files.

241.   The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

242.   Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

243.   Defendants' false and defamatory statement about Winninger was broadcasted to Drawbaugh and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

244.   The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's

reputation within the Vail community.

245.   Defendants' false and defamatory statement is not privileged.

246.   At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

247.   Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

248.   Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

249.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

250.   Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

### COUNT II—DEFAMATION PER SE
### (Against Vail Health and Kirchner)

251.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 250 as if set forth fully herein.

**PROPOSED DRAFT COMPLAINT**

252.   In summer 2016, Kirchner continued to make statements to Drawbaugh, which Drawbaugh then relayed to Winninger.  Drawbaugh told Winninger that Kirchner had said that Winninger had stolen Vail Health patient files.  Kirchner told Drawbaugh that The Steadman Clinic should not be professionally associated with Winninger as the result of theft of the purported patient files.   Drawbaugh specifically recalled a conversation with Kirchner—before Winninger signed agreements with The Steadman Clinic and SPRI—that Kirchner had indicated that Winninger was involved in Cimino's purported theft of patient files.  Although Drawbaugh could not recall the number of times Kirchner had made such statements to him, but from the beginning, the implication by Kirchner was that Winninger was involved.

253.   The false and defamatory statements were precisely and intentionally directed to Winninger in her trade or profession.

254.   Defendants' false and defamatory statements about Winninger involve a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

255.   Defendants' false and defamatory statements about Winninger were broadcasted to Drawbaugh and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

256.   The false and defamatory statements made by Defendants about Winninger and her professional integrity have ruined Winninger and her company's reputation within the Vail community.

**PROPOSED DRAFT COMPLAINT**

257.   Defendants' false and defamatory statements are not privileged.

258.   At the time Defendants made the false and defamatory statements, they knew the statement were false or acted with reckless and wanton disregard as to the truth or falsity of the statements.

259.   Defendants' false and defamatory statements were made in bad faith and were made with actual malice and reckless disregard as to the truth of the statements. Further, the statements were not made for a legitimate business purpose but were made to destroy Winninger and Sports Rehab and eliminate them as competitors.

260.   Defendants have failed to issue a retraction of the false and defamatory statements and have rejected Plaintiffs' request to do so.

261.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

262.   Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

**COUNT III—DEFAMATION *PER SE***
**(Against Vail Health and Kirchner)**

263.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 262 as if set forth fully herein.

264.   In fall 2016, Kirchner told Dan Drawbaugh of The Steadman Clinic that Winninger had stolen patient files from Vail Health.

**PROPOSED DRAFT COMPLAINT**

265.   The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

266.   Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

267.   Defendants' false and defamatory statement about Winninger was broadcasted to Drawbaugh and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

268.   The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

269.   Defendants' false and defamatory statement is not privileged.

270.   At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

271.   Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

272.   Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

**PROPOSED DRAFT COMPLAINT**

273.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

274.    Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

### COUNT IV—DEFAMATION *PER SE*
### (Against Vail Health and Kirchner)

275.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 274 as if set forth fully herein.

276.    Kirchner discussed with Kelly Adair of The Steadman Clinic that patient files were stolen from Vail Health and stated that Winninger was involved.

277.    The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

278.    Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

279.    Defendants' false and defamatory statement about Winninger was broadcasted to Adair and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

**PROPOSED DRAFT COMPLAINT**

280.    The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

281.    Defendants' false and defamatory statement is not privileged.

282.    At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

283.    Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

284.    Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

285.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

286.    Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

**PROPOSED DRAFT COMPLAINT**

## COUNT V—DEFAMATION *PER SE*
### (Against Vail Health and Kirchner)

287.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 286 as if set forth fully herein.

288.    Kirchner discussed with Dr. Philippon of The Steadman Clinic that patient files were stolen from Vail Health and stated that Winninger was involved.

289.    The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

290.    Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

291.    Defendants' false and defamatory statement about Winninger was broadcasted to Dr. Philippon and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

292.    The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

293.    Defendants' false and defamatory statement is not privileged.

294.    At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

**PROPOSED DRAFT COMPLAINT**

295.   Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

296.   Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

297.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

298.   Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

### COUNT VI—DEFAMATION *PER SE*
### (Against Vail Health and Kirchner)

299.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 298 as if set forth fully herein.

300.   In March 2016, Michael Shannon told Dr. Marc Philippon of The Steadman Clinic that patient files had been stolen from Vail Health and that Winninger was involved.  Winninger learned of this conversation later.

301.   The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

**PROPOSED DRAFT COMPLAINT**

302.  Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

303.  Defendants' false and defamatory statement about Winninger was broadcasted to Dr. Philippon and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

304.  The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

305.  Defendants' false and defamatory statement is not privileged.

306.  At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

307.  Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

308.  Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

309.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business

**PROPOSED DRAFT COMPLAINT**

reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

310.    Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

### COUNT VII—DEFAMATION *PER SE*
### (Against Vail Health and Kirchner)

311.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 312  as if set forth fully herein.

312.    Upon information and belief, Michael Shannon sent text messages to Dr. Marc Philippon of The Steadman Clinic again implicating Winninger in the stealing of Vail Health patient files.  Winninger and Sports Rehab do not have the dates of these texts because Defendants have not produced them.

313.    The false and defamatory statements were precisely and intentionally directed to Winninger in her trade or profession.

314.    Defendants' false and defamatory statements about Winninger involve a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

315.    Defendants' false and defamatory statements about Winninger were broadcasted to Dr. Philippon and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

**PROPOSED DRAFT COMPLAINT**

316.   The false and defamatory statements made by Defendants about Winninger and her professional integrity have ruined Winninger and her company's reputation within the Vail community.

317.   Defendants' false and defamatory statements are not privileged.

318.   At the time Defendants made the false and defamatory statement, they knew the statements were false or acted with reckless and wanton disregard as to the truth or falsity of the statements.

319.   Defendants' false and defamatory statements were made in bad faith and were made with actual malice and reckless disregard as to the truth of the statements. Further, the statements were not made for a legitimate business purpose but were made to destroy Winninger and Sports Rehab and eliminate them as competitors.

320.   Defendants have failed to issue a retraction of the false and defamatory statements and have rejected Plaintiffs' request to do so.

321.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

322.   Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

**PROPOSED DRAFT COMPLAINT**

### COUNT VIII—DEFAMATION *PER SE*
### (Against Vail Health and Kirchner)

323.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 322 as if set forth fully herein.

324.   Michael Shannon stated to Dr. Marc Philippon of The Steadman Clinic that he did not understand why The Steadman Clinic was associating with Winninger when she had stolen patient files from Vail Health.

325.   The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

326.   Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

327.   Defendants' false and defamatory statement about Winninger was broadcasted to Dr. Philippon and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

328.   The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

329.   Defendants' false and defamatory statement is not privileged.

330.   At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

**PROPOSED DRAFT COMPLAINT**

331.    Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

332.    Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

333.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

334.    Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

### COUNT IX—DEFAMATION *PER SE*
### (Against Vail Health and Kirchner)

335.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 334 as if set forth fully herein.

336.    In summer 2016, Michael Shannon told Dan Drawbaugh of The Steadman Clinic that Winninger was involved in the theft of Vail Health patient files.  Based on his conversations with Shannon, Drawbaugh was led to believe that Winninger was involved in criminal activity through the theft of Vail Health patient files.

337.    The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

78

**PROPOSED DRAFT COMPLAINT**

338.   Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

339.   Defendants' false and defamatory statement about Winninger was broadcasted to Drawbaugh and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

340.   The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

341.   Defendants' false and defamatory statement is not privileged.

342.   At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

343.   Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

344.   Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

345.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business

**PROPOSED DRAFT COMPLAINT**

reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

346.   Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

**COUNT X—DEFAMATION *PER SE***
**(Against Vail Health and Kirchner)**

347.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 346 as if set forth fully herein.

348.   In summer 2016, Michael Shannon told Kelly Adair of The Steadman Clinic that Winninger had stolen thousands of patient files from Vail Health.

349.   The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

350.   Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

351.   Defendants' false and defamatory statement about Winninger was broadcasted to Adair and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

352.   The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

**PROPOSED DRAFT COMPLAINT**

353.   Defendants' false and defamatory statement is not privileged.

354.   At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

355.   Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

356.   Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

357.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

358.   Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

### COUNT XI—DEFAMATION *PER SE*
### (Against Vail Health and Kirchner)

359.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 358 as if set forth fully herein.

360.   In December 2016, Michael Shannon told Dan Drawbaugh of The Steadman Clinic that Winninger had stolen thousands of patient files from Vail Health.

**PROPOSED DRAFT COMPLAINT**

361.   The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

362.   Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

363.   Defendants' false and defamatory statement about Winninger was broadcasted to Drawbaugh and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

364.   The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

365.   Defendants' false and defamatory statement is not privileged.

366.   At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

367.   Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

368.   Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

**PROPOSED DRAFT COMPLAINT**

369. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

370. Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

## COUNT XII—DEFAMATION *PER SE*
### (Against Vail Health and Kirchner)

371. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 370 as if set forth fully herein.

372. In December 2016, Michael Shannon told Kelly Adair of The Steadman Clinic that Winninger had stolen thousands of patient files from Vail Health.

373. The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

374. Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

375. Defendants' false and defamatory statement about Winninger was broadcasted to Adair and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

**PROPOSED DRAFT COMPLAINT**

376.   The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

377.   Defendants' false and defamatory statement is not privileged.

378.   At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

379.   Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

380.   Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

381.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

382.   Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

**PROPOSED DRAFT COMPLAINT**

### COUNT XIII—DEFAMATION *PER SE*
### (Against Vail Health and Kirchner)

383.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 382 as if set forth fully herein.

384.    In about March 2016, Vail Health (upon information and belief Nicholas Brown and Luke O'Brien) told Howard Head employees about the theft of Vail Health patient files and that Winninger was involved in the theft.  Winninger learned of these communications later.

385.    The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

386.    Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

387.    Defendants' false and defamatory statement about Winninger was broadcasted to Howard Head employees to destroy Winninger and Sports Rehab's relationship with Howard Head physical therapists, to end any further patient referrals to Winninger and Sports Rehab, and to ensure the statement was repeated to others.

388.    The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

389.    Defendants' false and defamatory statement is not privileged.

**PROPOSED DRAFT COMPLAINT**

390.   At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

391.   Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

392.   Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

393.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

394.   Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

**COUNT XIV—DEFAMATION *PER SE***
**(Against Vail Health and Kirchner)**

395.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 394 as if set forth fully herein.

396.   In about April 2016, Vail Health (upon information and belief Nicholas Brown and Luke O'Brien) told Howard Head employees about the theft of Vail Health

**PROPOSED DRAFT COMPLAINT**

patient files and that Winninger was involved in the theft.  Winninger learned of these communications later.

397.   The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

398.   Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

399.   Defendants' false and defamatory statement about Winninger was broadcasted to Howard Head employees to destroy Winninger and Sports Rehab's relationship with Howard Head physical therapists, to end any further patient referrals to Winninger and Sports Rehab, and to ensure the statement was repeated to others.

400.   The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

401.   Defendants' false and defamatory statement is not privileged.

402.   At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

403.   Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

**PROPOSED DRAFT COMPLAINT**

404.    Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

405.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

406.    Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

## COUNT XV—DEFAMATION *PER SE*
## (Against Vail Health and Kirchner)

407.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 406 as if set forth fully herein.

408.    In spring 2016, Nicholas Brown told Kelly Adair of The Steadman Clinic that Winninger was involved in stealing patient files from Vail Health.

409.    The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

410.    Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

411.    Defendants' false and defamatory statement about Winninger was broadcasted to Adair and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient

**PROPOSED DRAFT COMPLAINT**

referrals to Winninger and Sports Rehab.

412.   The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

413.   Defendants' false and defamatory statement is not privileged.

414.   At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

415.   Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

416.   Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

417.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

418.   Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

**PROPOSED DRAFT COMPLAINT**

## COUNT XVI—DEFAMATION *PER SE*
### (Against Vail Health and Kirchner)

419.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 418 as if set forth fully herein.

420.   In fall 2016, Nicholas Brown told Kelly Adair of The Steadman Clinic that Winninger was involved in stealing patient files from Vail Health.

421.   The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

422.   Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

423.   Defendants' false and defamatory statement about Winninger was broadcasted to Adair and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

424.   The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

425.   Defendants' false and defamatory statement is not privileged.

426.   At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

**PROPOSED DRAFT COMPLAINT**

427.    Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

428.    Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

429.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

430.    Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

## COUNT XVII—DEFAMATION *PER SE*
### (Against Vail Health and Kirchner)

431.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 430 as if set forth fully herein.

432.    In January 2017, Drawbaugh met Kirchner at her office, Kirchner showed Drawbaugh a "draft" complaint that Kirchner had instructed her attorney, Janet Savage, to prepare.  Drawbaugh reviewed the "draft" complaint, which he understood to be a criminal complaint against Winninger and her company.  Kirchner informed Drawbaugh that forensics had been run, and based on Kirchner's statements, Drawbaugh understood that the forensics had traced the stolen files to Winninger.  Drawbaugh

**PROPOSED DRAFT COMPLAINT**

asked to see the forensics, but Kirchner would not show it to him, claiming instead that it was "confidential" to Vail Health.  Kirchner led Drawbaugh to believe Vail Health had proof that Winninger was involved in the theft, but Kirchner just could not show it to him. But the real reason Kirchner could not show Drawbaugh the forensics is because it proved nothing about Winninger's involvement in Cimino's purported theft of Vail Health patient files, as Defendants' own forensic expert confirmed during his deposition.

433.   The false and defamatory statements were precisely and intentionally directed to Winninger in her trade or profession.

434.   Defendants' false and defamatory statements about Winninger involve a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

435.   Defendants' false and defamatory statements about Winninger were broadcasted to Drawbaugh and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

436.   The false and defamatory statements made by Defendants about Winninger and her professional integrity have ruined Winninger and her company's reputation within the Vail community.

437.   Defendants' false and defamatory statements are not privileged.

438.   At the time Defendants made the false and defamatory statements, they knew the statements were false or acted with reckless and wanton disregard as to the truth or falsity of the statements.

**PROPOSED DRAFT COMPLAINT**

439.   Defendants' false and defamatory statement were made in bad faith and were made with actual malice and reckless disregard as to the truth of the statements. Further, the statements were not made for a legitimate business purpose but were made to destroy Winninger and Sports Rehab and eliminate them as competitors.

440.   Defendants have failed to issue a retraction of the false and defamatory statements and have rejected Plaintiffs' request to do so.

441.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

442.   Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

### COUNT XVIII—DEFAMATION *PER SE*
### (Against Vail Health and Kirchner)

443.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 442 as if set forth fully herein.

444.   On December 30 or 31, 2016, Michael Shannon showed Dr. Marc Philippon of The Steadman Clinic a draft complaint that included countless statements that Winninger and Sports Rehab had "stolen thousands of patient files" from Vail Health.  Shannon told Dr. Philippon that the complaint was going to be filed the next day because of Winninger's involvement in stealing files from Vail Health.   Shannon led Dr. Philippon to believe that the "draft" complaint was criminal in nature.

**PROPOSED DRAFT COMPLAINT**

445.    The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

446.    Defendants' false and defamatory statements about Winninger involve a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

447.    Defendants' false and defamatory statements about Winninger were broadcasted to Dr. Philippon and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

448.    The false and defamatory statements made by Defendants about Winninger and her professional integrity have ruined Winninger and her company's reputation within the Vail community.

449.    Defendants' false and defamatory statements are not privileged.

450.    At the time Defendants made the false and defamatory statements, they knew the statements were false or acted with reckless and wanton disregard as to the truth or falsity of the statements.

451.    Defendants' false and defamatory statement were made in bad faith and were made with actual malice and reckless disregard as to the truth of the statements. Further, the statements were not made for a legitimate business purpose but were made to destroy Winninger and Sports Rehab and eliminate them as competitors.

452.    Defendants have failed to issue a retraction of the false and defamatory statements and have rejected Plaintiffs' request to do so.

**PROPOSED DRAFT COMPLAINT**

453. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

454. Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

**PROPOSED DRAFT COMPLAINT**

### COUNT XIX—DEFAMATION *PER SE*
### (Against Vail Health and Kirchner)

455.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 454 as if set forth fully herein.

456.    In January 2017, Michael Shannon spoke to Dan Drawbaugh of The Steadman Clinic and told Drawbaugh that Winninger had stolen thousands of patient files from Vail Health.

457.    The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

458.    Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

459.    Defendants' false and defamatory statement about Winninger were broadcasted to Drawbaugh and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

460.    The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

461.    Defendants' false and defamatory statement is not privileged.

462.    At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

**PROPOSED DRAFT COMPLAINT**

463.    Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

464.    Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

465.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

466.    Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

### COUNT XX—DEFAMATION *PER SE*
### (Against Vail Health and Kirchner)

467.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 466 as if set forth fully herein.

468.    In January 2017, Michael Shannon spoke to Kelly Adair of The Steadman Clinic and told Adair that Winninger had stolen thousands of patient files from Vail Health.

469.    The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

**PROPOSED DRAFT COMPLAINT**

470.   Defendants' false and defamatory statement about Winninger involves a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

471.   Defendants' false and defamatory statement about Winninger were broadcasted to Adair and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the clinic and its doctors and to end any further patient referrals to Winninger and Sports Rehab.

472.   The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

473.   Defendants' false and defamatory statement is not privileged.

474.   At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

475.   Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

476.   Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

477.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business

**PROPOSED DRAFT COMPLAINT**

reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

478.   Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

## COUNT XXI—DEFAMATION *PER SE*
### (Against Vail Health and Kirchner)

479.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 478 as if set forth fully herein.

480.   During the week of February 6, 2017, Shannon had a telephone conversation with Al Perkins, a Board member of the Steadman Philippon Research Institute, during which Shannon told Perkins that "he did not know why Dan Drawbaugh was hanging around [Winninger] because she wasn't a good person and she had stolen records from Vail Health to start her own business."   Shannon also told Perkins that the theft involved 2,500 to 3,000 patient records.

481.   The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

482.   Defendants' false and defamatory statement about Winninger involve a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

483.   Defendants' false and defamatory statement about Winninger was broadcasted to Perkins and the Institute to destroy Winninger and Sports Rehab's

**PROPOSED DRAFT COMPLAINT**

relationship with the Institute and to end any further relationship with Winninger and
Sports Rehab.

484.    The false and defamatory statement made by Defendants about
Winninger and her professional integrity has ruined Winninger and her company's
reputation within the Vail community.

485.    Defendants' false and defamatory statement is not privileged.

486.    At the time Defendants made the false and defamatory statement, they
knew the statement was false or acted with reckless and wanton disregard as to the
truth or falsity of the statement.

487.    Defendants' false and defamatory statement was made in bad faith and
was made with actual malice and reckless disregard as to the truth of the statement.
Further, the statement was not made for a legitimate business purpose but was made to
destroy Winninger and Sports Rehab and eliminate them as competitors.

488.    Defendants have failed to issue a retraction of the false and defamatory
statement and have rejected Plaintiffs' request to do so.

489.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs
have suffered substantial economic injury, loss of goodwill, harm to their business
reputation, loss of esteem and standing in the medical community, and loss of business
opportunities, which includes a loss of referrals and referral sources, as well as
psychological pain and suffering.

490.    Plaintiffs are entitled to an award of damages for Defendants' wrongful
conduct in an amount to be proven at trial.

**PROPOSED DRAFT COMPLAINT**

### COUNT XXII—DEFAMATION *PER SE*
### (Against Vail Health and Kirchner)

491.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 490 as if set forth fully herein.

492.   In about January or February 2017, Nicholas Brown spoke to Kelly Adair of The Steadman Clinic and stated that Winninger was involved in stealing patient files from Vail Health.

493.   The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

494.   Defendants' false and defamatory statement about Winninger involve a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

495.   Defendants' false and defamatory statement about Winninger was broadcasted to Adair and The Steadman Clinic to destroy Winninger and Sports Rehab's relationship with the Institute and to end any further relationship with Winninger and Sports Rehab.

496.   The false and defamatory statement made by Defendants about Winninger and her professional integrity has ruined Winninger and her company's reputation within the Vail community.

497.   Defendants' false and defamatory statement is not privileged.

498.   At the time Defendants made the false and defamatory statement, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statement.

**PROPOSED DRAFT COMPLAINT**

499.   Defendants' false and defamatory statement was made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statement was not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

500.   Defendants have failed to issue a retraction of the false and defamatory statement and have rejected Plaintiffs' request to do so.

501.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

502.   Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

## COUNT XXIII—DEFAMATION *PER SE*
### (Against Vail Health and Kirchner)

503.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 502 as if set forth fully herein.

504.   On or about April 18, 2016, Janet Savage, as attorney for Vail Health, made defamatory statements about Winninger in a letter sent to Detective Eric Bonta at the Vail Police Department.  (Plaintiffs were unaware of the letter or the defamatory statements until January 16, 2018.)  The letter refers to Winninger and Sports Rehab close to two dozen times and makes false and defamatory statements about Winninger

**PROPOSED DRAFT COMPLAINT**

when Savage asserts—that is, Vail Health "knows"—that Winninger was involved with the purported criminal act of stealing Vail Health documents and patient files.

505.    The false and defamatory statements were precisely and intentionally directed to Winninger in her trade or profession.

506.    Defendants' false and defamatory statements about Winninger involve a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws.

507.    Defendants' false and defamatory statements about Winninger were broadcasted to the Vail Police Department so that criminal charges would be brought against Winninger.

508.    The false and defamatory statements made by Defendants about Winninger and her professional integrity have ruined Winninger and her company's reputation within the Vail community.

509.    Defendants' false and defamatory statements are not privileged.

510.    At the time Defendants made the false and defamatory statements, they knew the statement was false or acted with reckless and wanton disregard as to the truth or falsity of the statements.

511.    Defendants' false and defamatory statements were made in bad faith and was made with actual malice and reckless disregard as to the truth of the statement. Further, the statements were not made for a legitimate business purpose but was made to destroy Winninger and Sports Rehab and eliminate them as competitors.

**PROPOSED DRAFT COMPLAINT**

512.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

513.   Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

### COUNT XXIV—DEFAMATION *PER SE*
### (Against Vail Health and Kirchner)

514.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 513 as if set forth fully herein.

515.   On July 25, 2016, Tanya Rippeth, Vail Health's Director of Human Resources, published the defamatory statements from the April 18, 2016 letter to Andrew Schwab at the Colorado Department of Regulatory Agencies ("DORA").  In that letter, Vail Health implicated Winninger and Sports Rehab in conduct violating criminal and licensure laws.  The letter makes false and defamatory statements about Winninger when Rippeth asserts—that is, Vail Health "knows"—that Winninger was involved in the purported criminal act of stealing Vail Health documents and patient files.

516.   The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

517.   Defendants' false and defamatory statements about Winninger involve a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws, as well as her fitness to hold a physical therapy license.

**PROPOSED DRAFT COMPLAINT**

518.   Defendants' false and defamatory statements about Winninger were broadcasted to DORA to induce a regulatory investigation into Winninger's purported misconduct and the revocation of physical therapy license.

519.    The false and defamatory statements made by Defendants about Winninger and her professional integrity have ruined Winninger and her company's reputation within the Vail community.

520.   Defendants' false and defamatory statement is not privileged.

521.   At the time Defendants made the false and defamatory statement, they knew the statements were false or acted with reckless and wanton disregard as to the truth or falsity of the statements.

522.   Defendants' false and defamatory statements were made in bad faith and were made with actual malice and reckless disregard as to the truth of the statements. Further, the statements were not made for a legitimate business purpose but were made to destroy Winninger and Sports Rehab and eliminate them as competitors.

523.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

524.   Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

**PROPOSED DRAFT COMPLAINT**

<b>COUNT XXIV—DEFAMATION <i>PER SE</i></b><br><b>(Against Vail Health and Kirchner)</b>

525.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 524 as if set forth fully herein.

526.    On July 25, 2016, Tanya Rippeth, Vail Health's Director of Human Resources, published the defamatory statements from the April 18, 2016 letter to Andrew Schwab at the Colorado Department of Regulatory Agencies ("DORA").  In that letter, Vail Health implicated Winninger and Sports Rehab in conduct violating criminal and licensure laws.  The letter makes false and defamatory statements about Winninger when Rippeth asserts—that is, Vail Health "knows"—that Winninger was involved in the purported criminal act of stealing Vail Health documents and patient files.

527.    The false and defamatory statement was precisely and intentionally directed to Winninger in her trade or profession.

528.    Defendants' false and defamatory statements about Winninger involve a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws, as well as her fitness to hold a physical therapy license.

529.    Defendants' false and defamatory statements about Winninger were broadcasted to DORA to induce a regulatory investigation into Winninger's purported misconduct and the revocation of physical therapy license.

530.    The false and defamatory statements made by Defendants about Winninger and her professional integrity have ruined Winninger and her company's reputation within the Vail community.

531.    Defendants' false and defamatory statement is not privileged.

**PROPOSED DRAFT COMPLAINT**

532.   At the time Defendants made the false and defamatory statement, they knew the statements were false or acted with reckless and wanton disregard as to the truth or falsity of the statements.

533.   Defendants' false and defamatory statements were made in bad faith and were made with actual malice and reckless disregard as to the truth of the statements. Further, the statements were not made for a legitimate business purpose but were made to destroy Winninger and Sports Rehab and eliminate them as competitors.

534.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

535.   Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

## COUNT XXV—DEFAMATION *PER SE*
### (Against Vail Health and Kirchner)

536.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 535 as if set forth fully herein.

537.   On April 18, 2016, Janet Savage, as legal counsel for Vail Health, published the defamatory statements from the April 18, 2016 letter together with the enclosed Exhibit 8 to Eric Bonta at the Vail Police Department.  In that letter, Vail Health implicated Winninger and Sports Rehab in conduct violating criminal and licensure laws. The letter makes false and defamatory statements itself as hereinbefore alleged.

**PROPOSED DRAFT COMPLAINT**

538.   Exhibit 8 makes false and defamatory statements by concealing information that would otherwise reveal the true nature and intent of the data found on Exhibit 8.   The omission and concealment of the folder description "Attn VVMC docs from personal computer" renders Exhibit 8 misleading.   Exhibit 8 also employs a date "filter" and contains other false and misleading information.

539.   In presenting Exhibit 8 to the Vail Police Department Defendants concealment, modified and/or altered material evidence in violation of Colorado law.

540.   Although Exhibit 8 was represented to depict what Cimino had "stolen" from Vail Health, the statement in the April 18, 2016 letter was that "Lindsay Winninger has been actively involved in these behaviors" thereby making Exhibit 8 an evidentiary statement against Winninger and Sports Rehab as well as Cimino.

541.   The false and defamatory statements in Exhibit 8 were precisely and intentionally directed to Winninger in her trade or profession.

542.   Defendants' false and defamatory statements about Winninger involve a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws, as well as her fitness to hold a physical therapy license.

543.   Defendants' false and defamatory statements about Winninger were broadcasted to the Vail Police Department and Eagle County District Attorney's office to induce a criminal investigation into Winninger's "theft" of Vail Health patient files.

544.   The false and defamatory statements made by Defendants about Winninger and her professional integrity have ruined Winninger and her company's reputation within the Vail community.

**PROPOSED DRAFT COMPLAINT**

545.    Defendants' false and defamatory statement is not privileged.

546.    At the time Defendants made the false and defamatory statement, they knew the statements were false or acted with reckless and wanton disregard as to the truth or falsity of the statements.

547.    Defendants' false and defamatory statements were made in bad faith and were made with actual malice and reckless disregard as to the truth of the statements. Further, the statements were not made for a legitimate business purpose but were made to destroy Winninger and Sports Rehab and eliminate them as competitors.

548.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

549.    Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

### COUNT XXVI—DEFAMATION *PER SE*
### (Against Vail Health and Kirchner)

550.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 549 as if set forth fully herein.

551.    Upon information and belief, in spring 2016, Defendants made false and defamatory statements about Winninger and Sports Rehab to multiple doctors in The Steadman Clinic, including Dr. Clanton, Dr. LaPrade, Dr. Philippon, Dr. Viola, Dr. Provencher, and Dr. Hackett.  Based on the statements made by Defendants, these

**PROPOSED DRAFT COMPLAINT**

doctors had conversations with Drawbaugh about Winninger due to the implications and statements being made about Winninger and Sports Rehab being involved in Cimino's purported theft of Vail Health patient files.  In his deposition, Drawbaugh testified that "everyone knew" about Winninger and that there was a perception that Winninger was involved in Cimino's purported theft of patient files.  The only way there could be any "perception" is by Defendants spreading the statement to the doctors and throughout the Vail community.

552.   The false and defamatory statements to The Steadman Clinic doctors were precisely and intentionally directed to Winninger in her trade or profession.

553.   Defendants' false and defamatory statements about Winninger involve a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws, as well as her fitness to hold a physical therapy license.

554.   Defendants' false and defamatory statements about Winninger were broadcasted to The Steadman Clinic doctors to destroy Winninger and Sports Rehab's relationship with The Steadman Clinic and to end any further relationship with Winninger and Sports Rehab..

555.   The false and defamatory statements made by Defendants about Winninger and her professional integrity have ruined Winninger and her company's reputation within the Vail community.

556.   Defendants' false and defamatory statement is not privileged.

**PROPOSED DRAFT COMPLAINT**

557.    At the time Defendants made the false and defamatory statement, they knew the statements were false or acted with reckless and wanton disregard as to the truth or falsity of the statements.

558.    Defendants' false and defamatory statements were made in bad faith and were made with actual malice and reckless disregard as to the truth of the statements. Further, the statements were not made for a legitimate business purpose but were made to destroy Winninger and Sports Rehab and eliminate them as competitors.

559.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

560.    Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

### COUNT XXVII—DEFAMATION *PER SE*
### (Against Vail Health and Kirchner)

561.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 560 as if set forth fully herein.

562.    Upon information and belief, in summer and fall 2016, Defendants made false and defamatory statements about Winninger and Sports Rehab to multiple individuals associated with the Steadman Philippon Research Institute, including Dr. Huard, Karen Briggs, and Gary Rosenbach.  Based on the statements made by Defendants, these individuals had conversations with Drawbaugh about Winninger due

**PROPOSED DRAFT COMPLAINT**

to the implications and statements being made about Winninger and Sports Rehab being involved in Cimino's purported theft of Vail Health patient files.

563. The false and defamatory statements to those associated with the Steadman Philippon Research Institute were precisely and intentionally directed to Winninger in her trade or profession.

564. Defendants' false and defamatory statements about Winninger involve a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws, as well as her fitness to hold a physical therapy license.

565. Defendants' false and defamatory statements about Winninger were broadcasted to the individuals at the Steadman Philippon Research Institute to destroy Winninger and Sports Rehab's relationship with the Institute and to end any further relationship with Winninger and Sports Rehab..

566. The false and defamatory statements made by Defendants about Winninger and her professional integrity have ruined Winninger and her company's reputation within the Vail community.

567. Defendants' false and defamatory statement is not privileged.

568. At the time Defendants made the false and defamatory statement, they knew the statements were false or acted with reckless and wanton disregard as to the truth or falsity of the statements.

569. Defendants' false and defamatory statements were made in bad faith and were made with actual malice and reckless disregard as to the truth of the statements.

**PROPOSED DRAFT COMPLAINT**

Further, the statements were not made for a legitimate business purpose but were made to destroy Winninger and Sports Rehab and eliminate them as competitors.

570.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

571.   Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

**COUNT XXVIII—DEFAMATION *PER SE***
**(Against Vail Health and Kirchner)**

572.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 570 as if set forth fully herein.

573.   In 2016 and 2017, Shannon had multiple conversations with Dr. Philippon about Winninger.   Shannon told Dr. Philippon that Vail Health was investigating Cimino's purported theft of patient files and led Dr. Philippon to believe that Winninger was somehow involved in the theft.

574.   The false and defamatory statements to Dr. Philippon were precisely and intentionally directed to Winninger in her trade or profession.

575.   Defendants' false and defamatory statements about Winninger involve a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws, as well as her fitness to hold a physical therapy license.

576.   Defendants' false and defamatory statements about Winninger were

**PROPOSED DRAFT COMPLAINT**

broadcasted to Dr. Philippon to destroy Winninger and Sports Rehab's relationship with him and to end any further relationship with Winninger and Sports Rehab..

577.    The false and defamatory statements made by Defendants about Winninger and her professional integrity have ruined Winninger and her company's reputation within the Vail community.

578.    Defendants' false and defamatory statement is not privileged.

579.    At the time Defendants made the false and defamatory statement, they knew the statements were false or acted with reckless and wanton disregard as to the truth or falsity of the statements.

580.    Defendants' false and defamatory statements were made in bad faith and were made with actual malice and reckless disregard as to the truth of the statements. Further, the statements were not made for a legitimate business purpose but were made to destroy Winninger and Sports Rehab and eliminate them as competitors.

581.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

582.    Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

**PROPOSED DRAFT COMPLAINT**

### COUNT XXIX—DEFAMATION *PER SE*
#### (Against Vail Health, Kirchner, and Shannon)

583.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 582 as if set forth fully herein.

584.    Upon information and belief, since the filing of this action and within at least the last several months, Shannon has continued to make false and defamatory statements that Winninger stole or was involved in the theft of Vail Health patient files and that Winninger admitted to doing so.  Upon information and belief, Shannon made these defamatory statements to his colleagues, those associated with Vail Health, and others.

585.    The false and defamatory statements to Shannon's colleagues, those associated with Vail Health, and others were precisely and intentionally directed to Winninger in her trade or profession.

586.    Defendants' false and defamatory statements about Winninger involve a criminal accusation that Winninger is a "thief" and stole patient records in violation of HIPAA and other laws, as well as her fitness to hold a physical therapy license.

587.    Defendants' false and defamatory statements about Winninger were broadcasted to further and completely destroy Winninger and Sports Rehab's reputation and standing.

588.    The false and defamatory statements made by Defendants about Winninger and her professional integrity have ruined Winninger and her company's reputation within the Vail community.

589.    Defendants' false and defamatory statement is not privileged.

**PROPOSED DRAFT COMPLAINT**

590.    At the time Defendants made the false and defamatory statement, they knew the statements were false or acted with reckless and wanton disregard as to the truth or falsity of the statements.

591.    Defendants' false and defamatory statements were made in bad faith and were made with actual malice and reckless disregard as to the truth of the statements. Further, the statements were not made for a legitimate business purpose but were made to destroy Winninger and Sports Rehab and eliminate them as competitors.

592.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, which includes a loss of referrals and referral sources, as well as psychological pain and suffering.

593.    Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

### COUNT XXX—TORTIOUS INTERFERENCE WITH CONTRACT
### (Against All Defendants)

594.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 593 as if set forth fully herein.

595.    Winninger has valid contracts with The Steadman Clinic and the Steadman Philippon Research Institute relating to physical therapy services and research services.

596.    Defendants had knowledge of these valid contracts, as is evident by the fact that they made repeated defamatory statements to administrators, staff, and

**PROPOSED DRAFT COMPLAINT**

doctors with The Steadman Clinic and the Steadman Philippon Research Institute.

597.   Defendants, acting without authorization or privilege, and with knowledge of these contracts, have, as a result of the actions described above, wrongfully interfered with these contracts.

598.   As a result of Defendants' interference and defamatory statements, The Steadman Clinic and the Steadman Philippon Research Institute have suspended or terminated their contracts with Winninger.

599.   Defendants' intentional and unjustified conduct was motivated by ill will and malice and interfered with and caused breaches of Winninger's contracts.

600.   As a direct and proximate result of Defendants' intentional and improper interference, Sports Rehab has suffered substantial economic injury, loss of goodwill, harm to their personal and business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, including loss of referrals and referral sources.

601.   Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

### COUNT XXXI—TORTIOUS INTERFERENCE WITH CURRENT BUSINESS RELATIONSHIP
### (Against All Defendants)

602.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 601 as if set forth fully herein.

603.   Plaintiffs have had valid business relationships with orthopedic clinics, research institutes, and doctors, including The Steadman Clinic, Vail-Summit

**PROPOSED DRAFT COMPLAINT**

Orthopaedics, and Howard Head.

604.   Defendants had knowledge of these business relationships, as is evident by which orthopedic  clinics, research institutes, doctors, and Howard Head employees that Defendants spoke with about Winninger.

605.   Through the use of repeated defamatory statements made about Winninger and Sports Rehab, orthopedic clinics stopped referring physical therapy patients to Winninger and Sports Rehab.  Additionally, Howard Head employees were told to no longer refer any physical therapy patients to Winninger or Sports Rehab, including its Denver location.

606.   Defendants, acting without authorization or privilege, and with knowledge of these business relationships, have, as a result of the actions set forth above, wrongfully interfered with these business relationships.

607.   Defendants' intentional and unjustified conduct was motivated by ill will and malice and interfered with and caused breaches of Plaintiffs' business relationships.

608.   As a direct and proximate result of Defendants' intentional and improper interference, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their personal and business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, including loss of referrals and referral sources.

609.   Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

**PROPOSED DRAFT COMPLAINT**

### COUNT XXXII—TORTIOUS INTERFERENCE WITH
### PROSPECTIVE BUSINESS RELATIONSHIP
### (Against All Defendants)

610.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 609 as if set forth fully herein.

611.    Plaintiffs have valid expectations of prospective business relationships with other orthopedic clinics and doctors in Vail Valley.

612.    Defendants had knowledge of these valid expectations of prospective business relationships.

613.    Defendants, acting without authorization or privilege, and with knowledge of these prospective business relationships, have, as a result of the actions described above, wrongfully interfered with these prospective business relationships.

614.    Defendants' intentional and unjustified conduct was motivated by ill will and malice and interfered with and caused breaches of Plaintiffs' prospective business relationships.

615.    As a direct and proximate result of Defendants' intentional and improper interference, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to their personal and business reputation, loss of esteem and standing in the medical community, and loss of business opportunities, including loss of referrals and referral sources.

616.    Plaintiffs are entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

**PROPOSED DRAFT COMPLAINT**

## COUNT XXXIII—TORTIOUS INTERFERENCE WITH CURRENT BUSINESS RELATIONSHIP
### (Against All Defendants)

617.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 616 as if set forth fully herein.

618.   Sports Rehab had a valid employment relationship with Cimino.

619.   Defendants had knowledge of this employment relationship.

620.   Through the use of repeated defamatory statements made about Cimino, Winninger and Sports Rehab to orthopedics, clinics stopped referring physical therapy patients to Winninger, Sports Rehab, and Cimino.

621.   Defendants, acting without authorization or privilege, and with knowledge of this employment relationship, have, as a result of the actions set forth above, wrongfully interfered with this employment relationship.

622.   Defendants' intentional and unjustified conduct was motivated by ill will and malice and interfered with and caused breaches of Sports Rehab's employment relationship with Cimino.

623.   As a direct and proximate result of Defendants' intentional and improper interference, Sports Rehab has suffered substantial economic injury.

624.   Sports Rehab is entitled to an award of damages for Defendants' wrongful conduct in an amount to be proven at trial.

## COUNT XXXIV—VIOLATION OF THE COLORADO ANTITRUST ACT OF 1992
### (Against Vail Health)

625.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 624 as if set forth fully herein.

120

**PROPOSED DRAFT COMPLAINT**

626.   Defendants have owned, maintained and operated the physical therapy clinic doing business as Howard Head since December 1, 2012, in Vail Colorado.  Upon information and belief, Vail Health has at all times relevant to this action employed approximately 70-75 licensed physical therapists as part of the Howard Head clinic.

627.   Vail Health maintained a market share in the physical therapy market for the Vail Valley geographic market of 70% or more during the period of December 1, 2012, through the present.

628.   The physical therapy market includes therapy for the preservation, enhancement, or restoration of movement and physical function impaired or threatened by disease, injury, or disability that utilizes therapeutic exercise, physical modalities (such as massage and electrotherapy), assistive devices, and patient education and training. The relevant geographic market are the Colorado counties from Glenwood Springs Eastward to Vail Colorado, all of Eagle County and Summit County from Silverthorne to Vail.

629.   As a result, from and after December 1, 2012 though the present, Vail Health has exercised market power to raise and maintain supra-competitive prices for physical therapy services in the Vail Valley geographic market.

630.   Vail Health has been able to create and maintain its dominant position for physical therapy services in the Vail Valley geographic market by monopolizing the labor market for physical therapists in the Vail Valley geographic market.  Vail Health has monopolized the market by requiring all physical therapist who become employed by Vail Health to sign an anticompetitive and illegal employment agreement that

**PROPOSED DRAFT COMPLAINT**

contains a restrictive covenant that precludes the physical therapist from competing against Vail Health for a period extending for more than one year after the termination of their employment.

631. As a result of these restrictive covenants, Vail Health has established and maintained a stranglehold—a monopoly—on the pool of physical therapists in the Vail Valley physical therapy market.  By requiring physical therapists to sign an illegal contract for the purpose of maintaining an illegal monopoly is a *per se* violation of C.R.S. § 6-4-105 of the Colorado Antitrust Act of 1992.

632. When Plaintiff Sports Rehab hired physical therapist Cimino from the Howard Head clinic, Defendants engaged in the anticompetitive conduct of enforcing the restrictive covenant despite the fact that it was and is an illegal restraint of trade.

633. Defendants have held and continue to hold illegal restrictive covenants over the heads of all of the Howard Head physical therapists to ensure that they do not leave Vail Health to join competitive physical therapy clinics.  This conduct has restricted the availability of physical therapists to work for competitors of Howard Head in the Vail Valley geographic market.

634. Upon information and belief, Vail Health has engaged in a pricing strategy for Howard Health "self-pay" patients whereby Vail Health departs from the pricing schedules required by certain of health care insurers reimbursing patients for Howard Head physical therapy services when the patient's health insurance limits are exhausted.

**PROPOSED DRAFT COMPLAINT**

635.    Upon information and belief, upon exhaustion of the patient's limits Vail Health reduces the patient's fees in violation of the insurer's reimbursement contracts for the purpose of keeping the patient from switching to other price-competitive physical therapy providers.  Vail Health engages in this pricing strategy to maintain its monopoly.

636.    By maintaining its monopoly Vail Health is able to exercise market power over the availability of physical therapists in the Vail Valley and ultimately raise prices by as much as 50% over a competitive market rate.

637.    Vail Health has also engaged in anticompetitive acts and conduct by defaming competitor Winninger and Sports Rehab, disparaging Sports Rehab's business reputation in the Vail Valley medical community, and by tortiously interfering with Winninger's consulting contracts, all in an attempt to maintain Vail Health's monopoly over physical therapy services in the Vail Valley geographic market.

638.    The acts and conduct of Defendants, as hereinbefore alleged, constitute violations of the Colorado Antitrust Act of 1992, C.R.S. § 6-4-105, which provides: "It is illegal for any person to monopolize, attempt to monopolize, or combine or conspire with any other person to monopolize any part of trade or commerce."

639.    As the direct and proximate cause of Vail Health's violations of the Colorado Antitrust Act of 1992, Winninger and Sports Rehab have been damaged in their profession and business.

640.    As the direct and proximate cause of Vail Health's violations of the Colorado Antitrust Act of 1992, competition in the physical therapy market in the Vail Valley has been injured.

**PROPOSED DRAFT COMPLAINT**

641.    Plaintiffs Winninger and Sports Rehab are therefore entitled to an award of damages they have sustained as the result of Defendants' anticompetitive conduct, the exact amount of which shall be proven at trial.

642.    Pursuant to C.R.S. § 6-4-114(1), Plaintiffs are entitled to an award of treble the amount of actual damages sustained as the result of Defendants anticompetitive conduct, together with their attorneys' fees and costs.

**COUNT XXXV—CLAIM FOR EXEMPLARY DAMAGES**
**(Against All Defendants)**

643.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 642 as if set forth fully herein.

644.    The acts and conduct of Defendants, as alleged in the preceding paragraphs of this Second Amended Complaint, constitute grounds for the assessment of exemplary damages against Defendants pursuant to C.R.S. § 13-21-102.

645.    Plaintiffs have alleged each and every element of the torts of defamation *per se*, tortious interference with contract, tortious interference with current business relationship, and tortious interference with prospective economic advantage.

646.    Defendants, each of whom was at all times relevant to this action a director, officer, and/or employee of Vail Health acting with the full authority of Vail Health as a corporate entity, made repeated false statements to third parties concerning purported criminal actions of Winninger and Sports Rehab in their profession of physical therapy.

647.    The statements hereinbefore alleged were known by Defendants to be false at the time they were spoken and published to third parties.

**PROPOSED DRAFT COMPLAINT**

648.    The false statements made to third parties by Defendants, as hereinbefore alleged, constitute a concerted willful, wanton, malicious, and purposeful character assassination of Lindsay Winninger and Sports Rehab intended to destroy her personal and professional reputation, as well as the reputation of Sports Rehab.

649.    At the time that Defendants, as hereinbefore alleged, engaged in their character assassination of Winninger and Sports Rehab, each of them knew and understood that their false statements of criminal conduct would cause dangerous and irreparable damage to the professional and personal reputation of Winninger, and the professional reputation and standing of Sports Rehab.

650.    Despite their realization and knowledge, Defendants made the hereinbefore alleged false statements maliciously, heedlessly, recklessly, and without regard to the rights of Winninger and Sports Rehab.

651.    Defendants' false and defamatory statements, as well as their tortious conduct, has caused actual damage to Winninger and Sports Rehab as hereinbefore alleged.

652.    As a direct and proximate result of Defendants' hereinbefore alleged actions and conduct, Winninger and Sports Rehab are entitled to an award of exemplary damages under Colorado law in an amount to be determined by a jury in the trial of this cause.

**PROPOSED DRAFT COMPLAINT**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Lindsay Winninger and Sports Rehab Consulting LLC

request the following relief:

(a)   Judgment in favor of Plaintiffs and against Defendants on all of Plaintiffs' claims for relief;

(b)   Award of compensatory, non-compensatory, exemplary, and all other allowable damages to Plaintiffs and against Defendants in an amount to be determined at trial plus interest;

(c)   Costs and reasonable attorneys' fees incurred in this matter, including expert witness fees; and

(d)   All other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues so triable.


Dated:  _____, 2019

                      _____

Jesse Wiens, Colo. #33903
Fahrenholtz & Wiens LLC
100 West Beaver Creek Boulevard
Suite 236
Avon, CO 81620
Telephone: (970) 949-6500
E-mail:  fwlawyers@gmail.com

Sonya R. Braunschweig (admitted *pro hac vice*)
5501 Irving Avenue South
Minneapolis, MN  55419
Telephone:  (612) 819-2304
E-mail:  sonya.braunschweig@gmail.com

Alan L. Kildow (admitted *pro hac vice*)
15204 Wildwood Road
Burnsville, MN 55306
Telephone:  (970) 390-6675
E-mail:  alkildow@aol.com

Attorneys for Plaintiff and Counter-Defendants
Lindsay Winninger and Sports Rehab Consulting LLC

**PROPOSED DRAFT COMPLAINT**

**Address of Plaintiffs:**
Lindsay Winninger
Sports Rehab Consulting LLC
3909 Fox Street
Denver, Colorado  80216

**PROPOSED DRAFT COMPLAINT**

## CERTIFICATE OF SERVICE

I hereby certify that on this __ day _____, 2019, I served a true and correct copy of Plaintiffs Lindsay Winninger and Sport Rehab Consulting LLC's Second Amended Complaint and Jury Demand through the Court's e-filing system on:

> Janet A. Savage
> Richard F. Lee
> Michael Kotlarczyk
> Davis Graham & Stubbs LLP
> 1550 17th Street, Suite 500
> Denver, CO  80202
> Counsel for Defendants/Counter-Plaintiff

> John W. Madden, III
> The Madden Law Firm
> 999 18th Street
> Suite 1500 South
> Denver, CO  80202
> Counsel for Third-Party Defendant David J. Cimino

_____
Jesse Wiens

10860260v2