# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02075-WJM-GPG

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company,
and LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC. d/b/a VAIL HEALTH, a Colorado nonprofit corporation,

      Defendant.

---

## DEFENDANT VAIL CLINIC INC.'S MOTION FOR SUMMARY JUDGMENT

---

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................... 3

II.  MOVANT'S STATEMENT OF MATERIAL FACTS ............................................ 4

    A.   Vail Health ........................................................................................................... 4

    B.   Orthopedic Surgery Practices ........................................................................... 5

    C.   Lindsay Winninger and Sports Rehab Consulting .......................................... 6

    D.   Vail Health's Reports to the Government Regarding David Cimino ............. 7

    E.   Vail Health's Reports to the Government Regarding Winninger .................. 8

    F.   Plaintiffs Sue Vail Health; Vail Health Wins Summary Judgment on Each of
    Plaintiffs' Claims ........................................................................................................ 8

    G.   Vail Health Files Counterclaims ....................................................................... 9

    H.   PT in the Vail Valley ........................................................................................ 11

III. LEGAL STANDARD ................................................................................................ 12

IV.  ARGUMENT .............................................................................................................. 12

    A.   Plaintiffs Suffered No Antitrust Injury .......................................................... 13

        1.   Plaintiffs Cannot Show that Vail Health's Litigation, Petitioning, and Related
        Statements Harmed Competition ............................................................................. 14

        2.   Plaintiffs Cannot Show that Other Exclusionary Conduct Harmed Them ................. 16

    B.   Plaintiffs Cannot Show Anticompetitive or Exclusionary Conduct .......................... 18

        1.   Vail Health's Litigation, Petitioning, and Statements Related Thereto Are Protected by
        *Noerr-Pennington* Immunity ................................................................................. 19

        2.   Vail Health's Purported Defamation and Disparagement Is Not Anticompetitive or
        Exclusionary Conduct ............................................................................................. 22

        3.   Plaintiffs Cannot Present Facts Showing that the Other Challenged Conduct Is
        Anticompetitive ...................................................................................................... 23

        4.   Plaintiffs' Claims Fail When Considered in the Aggregate .......................................... 25

    C.   Plaintiffs Cannot Show Monopoly Power ....................................................... 25

        1.   Plaintiffs Failed to Provide Circumstantial Evidence of Monopoly Power .................. 26

        2.   Plaintiffs Failed to Offer Direct Evidence of Monopoly Power ................................... 26

    D.   Plaintiffs Cannot Show Specific Intent to Monopolize ................................. 28

V.   CONCLUSION ........................................................................................................... 28

Pursuant to Federal Rule of Civil Procedure 56 Defendant Vail Clinic, Inc., d/b/a Vail Health ("Vail Health") files this Motion for Summary Judgment against Sports Rehab Consulting LLC ("SRC") and Lindsay Winninger's ("Winninger") (together "Plaintiffs") claims under Section 2 of the Sherman Act for monopolization and attempted monopolization.

## I.    INTRODUCTION

This purported antitrust lawsuit suffers from a fatal flaw: Plaintiffs have no antitrust claim. Plaintiffs' asserted injury arises from purportedly defamatory statements that should have been, and were, challenged in state court under state law.  In 2017, Plaintiffs filed defamation claims against Vail Health in the District Court of Eagle County (the "Eagle County Case") based on the same core conduct at issue in the instant case.  The District Court of Eagle County ("Eagle County Court") ultimately rejected those defamation claims in full at summary judgment, finding that Vail Health's alleged statements that Lindsay Winninger stole patient files were substantially true. Plaintiffs sought a second bite at the apple by alleging antitrust claims in this Court in 2019.  But Plaintiffs' allegations of defamation, defeated at summary judgment in state court, are not an antitrust violation. "[T]he antitrust laws were passed 'for the protection of competition, not competitors.'" *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224 (1993) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)).  Thus, "[e]ven an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws . . . ." *Id.* at 225.

Plaintiffs attempt to avoid this Supreme Court precedent by alleging a potpourri of purportedly anticompetitive actions that did not injure them.  Plaintiffs allege as anticompetitive an unconsummated joint venture, Vail Health's physical therapist offer letters, and a lease agreement with an orthopedic surgery physician group.  Plaintiffs, however, were not injured by this conduct.  No evidence in the record reflects such an injury, nor do Plaintiffs even attempt to recover for one.  Instead, Plaintiffs submitted the same damages report in both the state and federal

actions, confirming that these cases seek the same damages for the same conduct: lost profits purportedly resulting from Vail Health's defamation.  A federal antitrust plaintiff, however, must show that they were "adversely affected by an anticompetitive aspect of the defendant's conduct." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 339 (1990) (citation omitted).  But Plaintiffs identify no conduct that harmed both them and harmed competition: the rehashed defamation claims are not actionable under the antitrust laws and the other conduct at issue did not injure Plaintiffs.  As a result, Plaintiffs' attempt to cobble together an antitrust case by combining failed defamation claims with scattershot allegations of purportedly anticompetitive conduct that had no impact on them must fail.

Separately, even if Plaintiffs had alleged an antitrust injury, which they have not, their claims should be dismissed for several independent reasons: Plaintiffs have failed to offer facts sufficient to show actionable anticompetitive conduct (necessary for both their monopolization and attempted monopolization claims), monopoly power (necessary for their monopolization claim), or the specific intent to monopolize (necessary for their attempted monopolization claim).

For all these reasons this Court should grant summary judgment in favor of Vail Health.

## II.    MOVANT'S STATEMENT OF MATERIAL FACTS

### A.    Vail Health

1.  Defendant Vail Health is a Colorado nonprofit community health system that offers physical therapy ("PT") services through a department of Vail Health Hospital under the name Howard Head Sports Medicine.[1]  Am. Compl. (ECF No. 26) ¶¶ 12, 29.

---

[1] Although Howard Head Sports Medicine is the name for Vail Health's PT services department, for the purpose of this brief it will be referred to collectively as Vail Health.

2.   As Plaintiffs' economic expert Dr. Schafer notes, Vail Health provides PT services at ten locations: seven in Vail Valley within Eagle County and three in Summit County.  Declaration of Evan Rothstein attached hereto as **Exhibit A**[2]; Ex. 1 ¶ 50.

3.   As a condition of employment, Vail Health employees, including physical therapists, sign an offer letter, which contains a "Non-Solicitation" provision.  Am. Compl.¶ 78; Ex. 2 at 17:25-18:22; Ex. 3.

4.   As a healthcare provider, Vail Health is subject to the Health Insurance Portability and Accountability Act ("HIPAA").  45 C.F.R. § 164.104(a)(3).

5.   Under HIPAA, upon discovery of a breach of its patients' protected health information ("PHI"), Vail Health, as a covered entity, has an obligation to, under specified circumstances, notify the affected patients, the press, and the U.S. Department of Health and Human Services ("HHS"), Office of Civil Rights.  *See, e.g.*, 45 C.F.R. §§ 164.404, 164.406, 164.408.

### B.    Orthopedic Surgery Practices

6.   The Steadman Clinic ("Steadman") is a private orthopedic surgery physician practice with some locations in Plaintiffs' alleged Vail Valley market ("Vail Valley").  Am. Compl. ¶¶ 29, 56, 75.

7.   Vail Summit Orthopedics ("VSO") is another private group of orthopedic surgeons practicing in Vail Valley.  Am. Compl. ¶ 64.

8.   Steadman leases clinical space in the Vail Health Hospital; the lease contains restrictions on Steadman's use of the leased space, including a prohibition on rendering PT services in that space. Am. Compl. ¶ 75; Ex. 4 at 16:15-21.

9.   Steadman's lease with Vail Health caused SRC no financial damages.  Ex. 5 at 83:23-84:10.

---

[2] All citations to exhibits hereinafter refer to those attached to the Declaration of Evan Rothstein, unless otherwise specified.

10. Beginning in approximately 2015, Vail Health evaluated a prospective joint venture with Steadman and/or VSO pursuant to which these entities would have an ownership interest in a joint venture that provided PT services in the alleged Vail Valley market; the joint venture was never consummated, with the last letter of intent expiring in 2016.  Am. Compl. ¶¶ 66, 74; Ex. 6 at 139:20-140:21; Ex. 4 at 127:5-16.

11. The unconsummated joint venture between Vail Health and Steadman and/or VSO caused SRC no damages.  Ex. 5 at 81:25-83:5.

### C.    Lindsay Winninger and Sports Rehab Consulting

12. From January 2008 to May 2012, Winninger provided PT services to patients at the Vail Health Hospital.  Am. Compl. ¶ 19.

13. Winninger founded Sports Rehab Consulting ("SRC") in Spring 2014 and opened a PT clinic in Vail Valley in December 2015.  Am. Compl. ¶¶ 16, 24, 94; Ex. 7 at 23:19-24:8.

14. SRC did not accept commercial insurance for its services.  Ex. 8 at 25.

15. SRC was designed to be a travel/concierge provider and offered to treat patients at any location requested by the patient.  Am. Compl. ¶ 16; Ex. 8 at 6, 21, 25.

16. SRC's patients came to SRC and Winninger through a variety of different ways.  Ex. 8 at 25, 38-46.

17. On August 17, 2016, Winninger signed consulting agreements with Steadman and the Steadman Philippon Research Institute ("SPRI") focused on developing a wellness program and assisting with research, including the development of studies and protocols.  Ex. 9 at 11:3-22, 21:1-11; Ex. 10; Ex. 7 at 72:16-74:1.

18. In early 2017, Steadman and SPRI put the consulting agreements on hold.  Am. Compl. ¶¶ 179, 180; Ex. 9 at 24:21-25:10.

19. In May 2017, Winninger signed amended consulting agreements with Steadman and SPRI.  Ex. 12; Ex. 11 at 133:9-134:11, 136:25-137:21.

20. Steadman surgeons referred patients to SRC in 2017 and 2018. Ex. 8 at 27, 31, 37, 48, 76, 79-81.

21. Plaintiffs have identified no instance in which it was unable to fill an open physical therapist position with a candidate. Ex. 5 at 74:23-75:1.

22. SRC closed the clinic in Vail in September 2018; SRC currently operates a clinic in Denver. Am. Compl. ¶ 24.

### D.    Vail Health's Reports to the Government Regarding David Cimino

23. Physical therapist David Cimino ("Cimino") was employed by Vail Health and worked for its PT department from fall 2012 until his departure at the end of 2015. Am. Compl. ¶¶ 102-103; Ex. 13 at 254:19-256:13.

24. By December 1, 2015, Cimino had accepted an offer of employment from SRC and he began treating patients for SRC while still employed by Vail Health and working for Vail Health. Am. Compl. ¶ 103; Ex. 13 at 75:4-9.

25. In December 2015, Cimino downloaded Vail Health's files, including documents that contained the PHI of Vail Health's patients, from his work computer onto at least one electronic storage device. Ex. 13 at 18:11-18; Ex. 14 ¶¶ 4-7; Ex. 15 ¶ 1.

26. Vail Health reported the incident to the HHS Office of Civil Rights on April 15, 2016, to the Vail Police Department on April 18, 2016, and to the Eagle County District Attorney. Am. Compl. ¶¶ 106, 119-120; Ex. 17; Ex. 18; Ex. 16 at 32:3-24, 74:15-75:16.

27. Plaintiffs' have alleged that on April 18, 2016, and April 27, 2016, anonymous complaints regarding the incident were sent to the Colorado Department of Regulatory Agencies ("DORA"). Am. Compl. ¶¶ 134, 137.

28. DORA, through the Colorado State Physical Therapy Board, subsequently requested information from Vail Health regarding the incident. Am. Compl. ¶ 138; Ex. 19 at 101:14-22.

29. On July 25, 2016, Vail Health responded to the subpoena, producing responsive documents along with a cover letter.  Ex. 20; Ex. 19 at 104:17-105:22, 121:4-17.

30. On January 31, 2017, DORA issued a Letter of Admonition to Cimino.  Ex. 13 at 234:19-235:3.

31. On June 15, 2017, the District Attorney of Eagle County filed ten counts of felony theft against Cimino.  Ex. 13 at 329:5-15.

32. The charges against Cimino were ultimately dismissed without prejudice upon Cimino's agreement to certain conditions.  Ex. 13 at 329:5-330:12.

### E.    Vail Health's Reports to the Government Regarding Winninger

33. In 2019 and 2020, Vail Health became aware from discovery in the Eagle County Case that Winninger had retained documents that included PHI of Vail Health patients following her departure from a prior position providing PT services at Vail Health Hospital.  Am. Compl. ¶ 19; Ex. 21 ¶¶ 1-8; Ex. 22 ¶¶ 89-90.

34. As required by HIPAA for a HIPAA breach, Vail Health reported Winninger's retention of these files to the HHS Office of Civil Rights, sent letters to affected patients, and (because the breach impacted more than 500 patients) sent media notices to Colorado news organizations.  Ex. 21 ¶¶ 5, 9.

35. In response to Vail Health's reports, the HHS Office of Civil Rights required certain activities and compliance actions of Vail Health to resolve the investigation.  Declaration of Kevin Rudolph attached hereto as **Exhibit B**, Ex. 1.

### F.    Plaintiffs Sue Vail Health; Vail Health Wins Summary Judgment on Each of Plaintiffs' Claims

36. In April 2017, Plaintiffs sued Vail Health in the Eagle County Case, ultimately amending their complaint and asserting numerous defamation and tortious interference claims against Vail Health.  Ex. 23; Ex. 24.

37. Plaintiffs alleged that Vail Health made defamatory statements to individuals at Steadman and SPRI, stating that Winninger was involved in the theft of patient files, including by showing a draft complaint that contained such allegations.  Am. Compl. ¶¶ 151-58, 163-178; Ex. 24.

38. On May 31, 2019, the Eagle County Court granted Vail Health summary judgment on many of Plaintiffs' defamation claims, holding that there was no genuine dispute that: several of the alleged defamatory statements were never made; Vail Health's draft complaint allegedly shown to Dr. Philippon of Steadman in January 2017 was contemplated in good faith; and Vail Health's statements in letters to the Vail Police Department and DORA that Winninger was involved in the theft of patient files were not knowingly false or made in reckless disregard of the truth.  Ex. 25.

39. On November 4, 2021, the Eagle County Court granted Vail Health summary judgment on Plaintiffs' remaining defamation and tortious interference claims, holding that there was no genuine dispute that the remaining allegedly defamatory statements by Vail Health were substantially true.  *Winninger v. Kirchner*, No. 2017CV30102, 2021 WL 11087739 (Colo. Dist. Ct. Eagle Cnty., Nov. 4, 2021).   The Court specifically found that alleged statements that Winninger had stolen patient files from Vail Health were substantially true, calling it "indisputable that Winninger knew about and participated in downloading Vail Health patient files and was involved in stealing patient files from Health."  *Id*. at 17.

G.    **Vail Health Files Counterclaims**

40. Vail Health filed counterclaims against Plaintiffs and Cimino in July 2017, and it later amended them to include seven counterclaims in total: conversion, breach of contract, breach of the duty of loyalty, tortious interference, misappropriation of trade secrets, civil theft, and conspiracy (a claim derivative of the other six counterclaims).  Ex. 26; Ex. 27.

41. Vail Health's breach of contract, breach of the duty of loyalty, and tortious interference claims were based on allegations that Cimino had breached his signed offer letter, which included

a non-solicitation provision, and that Plaintiffs knew of Vail Health's contractual relationship with Cimino and interfered with it.  Ex. 27.

42. On June 27, 2020, the Eagle County Court denied Plaintiffs and Cimino's motion for partial summary judgment on these claims, finding that disputed issues of material fact exist, including as to whether Plaintiffs and Cimino "used Vail Health confidential and HIPAA-protected information to solicit Vail Health patients and business partners."  *Winninger v. Kirchner*, No. 2017CV30102, 2020 WL 13725571 (Colo. Dist. Ct. Eagle Cnty., June 27, 2020).

43. Vail Health's civil theft claims were based on allegations that Plaintiffs and Cimino had knowingly obtained or exercised control over Vail Health's property.  Ex. 27.

44. On January 20, 2021, the Eagle County Court denied Plaintiffs' motion to dismiss Vail Health's civil theft claim, but the Colorado Supreme Court reversed in a 19-page opinion on a legal question "of first impression" under Colorado law: whether violating the theft of medical records statute could support a civil theft claim.  Ex. 28; *Winninger v. Kirchner*, No. 2017CV30102, 2021 WL 11087737 (Colo. Dist. Ct. Eagle Cnty., Jan. 21, 2021).

45. Vail Health's conversion and misappropriation of trade secrets claims were also based on allegations that Plaintiffs and Cimino engaged in unlawful taking, use, and disclosure of Vail Health's confidential, proprietary, and trade secret information, including patient files.  Ex. 27.

46. On December 2, 2021, the Eagle County Court denied in part Plaintiffs' motion for summary judgment on Vail Health's claims for misappropriation of trade secrets, conversion, and conspiracy. *Winninger v. Kirchner*, No. 2017CV30102, 2021 WL 11087738 (Colo. Dist. Ct. Eagle Cnty., Dec. 2, 2021).   Because Vail Health stated that it did not intend to pursue its misappropriation of trade secrets claim with respect to documents downloaded in 2012 or earlier, the Court dismissed the misappropriation claim in part as to those documents, and dismissed the derivative conspiracy claim in part as to those documents.  *Id*. at *2–3.  The Court denied summary judgment as to the conversion claim and the remaining misappropriation of trade secrets and

conspiracy claims, finding that genuine issues of material fact existed. *Id*. at *3. The Court dismissed Vail Health's civil theft claim based on the Colorado Supreme Court's decision, despite Vail Health suggesting an alternate statutory basis for the claim. *Id*. at *2.

47. On December 10, 2021, the Eagle County Court dismissed Vail Health's civil theft claim, and its conspiracy claim insofar as it was derivative of the civil theft claim, against Cimino for the same reason. *Winninger v. Kirchner*, No. 2017CV30102, 2021 WL 11087736 (Colo. Dist. Ct. Eagle Cnty., Dec. 10, 2021). The Court denied Cimino's motion for summary judgment on Vail Health's claims for conversion and conspiracy as a derivative cause of action of conversion, finding that triable issues of fact remained. *Id*.

48. On May 3, 2023, after Vail Health and Cimino reached a settlement, the court dismissed Vail Health's remaining claims against Cimino. Ex. 30.

49. On December 18, 2023, and January 11, 2024, the Eagle County Court denied Plaintiffs' two Rule 12(b)(1) motions to dismiss Vail Health's counterclaims. Ex. 29; Ex. 34.

### H.    PT in the Vail Valley

50. Plaintiffs allege that the relevant market for antitrust purposes is Eagle County, which lies in the somewhat narrow Vail Valley stretching from East Vail to Gypsum, Colorado; Plaintiffs refer to this as the "Vail Valley" market. Am. Compl. ¶ 35.

51. In 2018, as compared to 2015, there was "much more competition" in the provision of travel PT services and two additional local competitors in the Vail Valley. Ex. 8 at 22.

52. In September 2019, companies providing PT services in Vail Valley included Axis Sports Medicine, Altius Physical Therapy, Joint Worx, Navig8, Concierge Physical Therapy Colorado, Thrive PT, Competitive Edge Physical Therapy, Vail Integrative Medicine Clinic, Movement Physical Therapy, Vail Sports Medicine Physical Therapy, and Vail Health. Ex. 31 at 8-11.

53. According to Plaintiffs' damages expert, Mr. Cobb, Axis Sports Medicine, established in 2012, has grown in Eagle County. Ex. 32 ¶ 68 n.30.

## III.    LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists "if a rational jury could find in favor of the non-moving party based on the evidence presented."  *Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1216 (10th Cir. 2000) (citation omitted).  Under this standard, a court "views the evidence and draws reasonable inferences . . . in a light most favorable to the non-moving party."  *Id.*

Plaintiffs assert claims for monopolization and attempted monopolization under Section 2 of the Sherman Act.  In any private action asserting claims under the Sherman Act, the plaintiff must make a threshold showing that it suffered an antitrust injury, meaning that it was "adversely affected by an anticompetitive aspect of the defendant's conduct."  *Atl. Richfield Co.*, 495 U.S. at 339; *see Tal v. Hogan*, 453 F.3d 1244, 1253 (10th Cir. 2006).  Monopolization has two elements: "possession of monopoly power in the relevant market" and "the willful acquisition or maintenance of that power."  *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009) (citation omitted).  "The second element is often called the 'exclusionary conduct' element.  To survive summary judgment, the plaintiff must present a triable issue of both (1) monopoly power and (2) exclusionary conduct."  *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 44 F.4th 959, 981 (10th Cir. 2022) (citation omitted), *cert. denied sub nom. Sanofi-Aventis U.S., LLC v. Mylan, Inc.*, 143 S. Ct. 1748 (2023).  Attempted monopolization has three elements: "(1) [ ] the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power."  *Christy Sports, LLC*, 555 F.3d at 1192 (citation omitted).

## IV.    ARGUMENT

Plaintiffs' claims fail for four independent reasons.  First, Plaintiffs fail to show antitrust injury because their alleged injury is fundamentally a business tort that Plaintiffs brought and lost

in the Eagle County Case. Second, Plaintiffs have shown no actionable anticompetitive conduct. Third, Plaintiffs have failed to offer sufficient facts to show monopoly power for their monopolization claim. Finally, Plaintiffs have failed to offer sufficient facts to show the specific intent to monopolize the market for their attempted monopolization claim. Each of these flaws is independently sufficient to merit dismissal of Plaintiffs' claims.

### A.    Plaintiffs Suffered No Antitrust Injury

Antitrust standing is an essential element of any claim under the Sherman Act and the plaintiff bears the burden of proof on that requirement. *See Atl. Richfield Co.*, 495 U.S. at 334. Antitrust standing requires both "(1) an antitrust injury; and (2) a direct causal connection between that injury and a defendant's violation of the antitrust laws." *Tal*, 453 F.3d at 1253 (citation and quotation marks omitted). Even drawing all reasonable inferences in their favor, Plaintiffs fail to show antitrust injury.

Injury in fact is necessary but not sufficient to show antitrust injury. To establish antitrust injury, Plaintiffs must show that they were "adversely affected by an anticompetitive aspect of the defendant's conduct." *Atl. Richfield Co.*, 495 U.S. at 339. Whether an act was anticompetitive "must be analyzed from the consumer's viewpoint. Thus, [the plaintiff] needs to show the [defendant's] conduct affected the prices, quantity or quality of goods or services, not just his own welfare." *Vesom v. Atchison Hosp. Ass'n*, 279 F. App'x 624, 638 (10th Cir. 2008) (citations and quotation marks omitted). This is no mere technicality. "[T]he antitrust injury requirement . . . ensures that the harm claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust laws in the first place." *Atl. Richfield Co.*, 495 U.S. at 342.

Plaintiffs fail to show antitrust injury because the undisputed material facts show that there is no conduct that harmed *both* Plaintiffs *and* competition. Plaintiffs identify one set of conduct that purportedly harmed them and a separate set of conduct that purportedly restricted competition. But because Plaintiffs must show that their "loss stems from a competition-*reducing* aspect or

effect of the defendant's behavior," this is insufficient for antitrust standing.  *Atl. Richfield Co.*, 495 U.S. at 344; *see Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1110 (N.D. Cal. 2022) (a "[p]laintiff cannot demonstrate antitrust injury sufficient to sustain his claims through references to alleged anticompetitive acts that have no relation to Plaintiff or the harm that he experienced").  For example, a court in this District recently acknowledged that a plaintiff had alleged harm to competition in the form of the defendant's supra-competitive prices and injuries to itself in the form of "lost revenues, lost business value, and potentially the destruction of its entire business." *GDHI Mktg. LLC v. Antsel Mktg. LLC*, 416 F. Supp. 3d 1189, 1203 (D. Colo. 2019).  But the court found that the plaintiff had failed to allege antitrust injury because the plaintiff's "[c]omplaint makes clear that the real injury it seeks to vindicate is one suffered by a competitor, not competition." *Id.*  So too here.

       1.     Plaintiffs Cannot Show that Vail Health's Litigation, Petitioning, and Related Statements Harmed Competition

Harm to a competitor is "of no moment to the antitrust laws if competition is not injured." *Brooke Grp. Ltd.*, 509 U.S. at 224 (1993) (citation omitted).  "The Sherman Act is not concerned with overly aggressive business practices, or even conduct that is otherwise illegal, so as long as it does not unfairly harm competition." *Vincent v. Utah Plastic Surgery Soc.*, 621 F. App'x 546, 548 (10th Cir. 2015) (citation omitted).  To show harm to competition, Plaintiffs must show that the challenged conduct has impacted "[m]arket wide prices, quantity or quality." *Cohlmia v. St. John Med. Ctr.*, 693 F.3d 1269, 1281 (10th Cir. 2012); *Reilly*, 578 F. Supp. 3d at 1109–10 ("[t]o allege antitrust injury, a plaintiff must allege injury to competition in the market as a whole—such as marketwide reduction in output or increase in prices—not merely injury to itself as a competitor") (quotation marks omitted).  Plaintiffs' alleged injury is based on the same conduct at issue in the state defamation claims: purported harm to Plaintiffs' business resulting from Vail Health accusing Plaintiffs of stealing patient files in litigation, petitions to government agencies,

and related statements to individuals and the public. Am. Compl. ¶¶ 190-193, 239. But Plaintiffs have offered no facts suggesting that Vail Health's litigation, petitioning, or related statements regarding Plaintiffs' theft of patient health information had any impact on market-wide prices, quality, or output.

Plaintiffs' expert, Dr. Schafer, fails to show any impact of the challenged conduct on market-wide prices, quality, or quantity. As an initial matter, Dr. Schafer's analysis on this point is deeply flawed and should be excluded. *See* Def.'s Mot. to Exclude Expert Test. of Dr. Leslie Schafer (hereinafter Def.'s Mot. to Exclude Schafer). But even accepting, *arguendo*, Dr. Schafer's report as methodologically valid, an analysis purporting to show that Vail Health increased its own prices is insufficient to show a "market wide" change to prices, quantity, or quality. *See Cohlmia*, 693 F.3d at 1281 (10th Cir. 2012); *Sell It Soc., LLC v. Acumen Brands, Inc.*, No. 14 Civ. 3491(RMB), 2015 WL 1345927, at \*4 (S.D.N.Y. Mar. 20, 2015) ("[e]ven assuming, arguendo, that Defendant's conduct may result in price increases, Plaintiff would still have failed plausibly to allege 'an adverse effect on competition market-wide'").

Nor can Plaintiffs rely on their allegation that they were eliminated as a competitor by the alleged conduct. In limited circumstances, the elimination of one competitor can lead to competitive harm. For instance, in *Full Draw*, the Tenth Circuit held that plaintiffs had alleged harm to competition where they alleged that one of two competitors in the market was eliminated, leaving a total monopoly, i.e., a single firm in the market, and that this had resulted in reduced output. *Full Draw Prods. v. Easton Sports, Inc.*, 182 F.3d 745, 754 (10th Cir. 1999).

However, as this Court has explained, *Full Draw* does not represent a bright-line rule that the elimination of one competitor necessarily harms competition. *Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.*, 171 F. Supp. 3d 1092, 1106 (D. Colo. 2016) (Martinez, J.). Instead, the law requires "a case-specific analysis of whether the alleged injury stems from the anticompetitive effects of the challenged conduct." *Id*. At summary judgment, Plaintiffs must provide evidence

that harm to their business also caused harm to competition. *Compare Kissing Camels Surgery Ctr., LLC v. Centura Health Corp.*, No. 12-cv-3012-WJM-NYW, 2015 WL 5081608, at *7 (D. Colo. Aug. 28, 2015) (Martinez, J.) (plaintiffs met summary judgment burden with evidence that elimination of plaintiffs as competitors also "would have a substantial negative impact on competition") *with Arapahoe Surgery Ctr.*, 171 F. Supp. 3d at 1106–07 (plaintiffs presented "no such market analysis or any similar evidence" and thus had failed to meet their burden at summary judgment).

Courts routinely reject claims for lack of antitrust standing when the plaintiff fails to provide evidence that the competitor's elimination also harmed competition, despite the fact that a competitor may have been eliminated. *See Belnap v. Steward Health Care Sys. LLC*, No. 2:19-cv-00330-DAK, 2020 WL 619402, at *4–5 (D. Utah Feb. 10, 2020) (claim dismissed for failure to allege antitrust injury because the elimination of a surgeon as a competitor would not harm the market); *In re Baseball Bat Antitrust Litig.*, 75 F. Supp. 2d 1189, 1198 (D. Kan. 1999) (no antitrust injury where a competitor was excluded, but other competitors remained).

Here, Plaintiffs cannot show that the alleged harm to their business harmed competition. While Plaintiffs allege that their business was damaged and ultimately driven out of Vail Valley, Plaintiffs have failed to adduce facts that harm to themselves as a competitor "affected the prices, quantity or quality of goods or services" and "not just [their] own welfare." *Vesom*, 279 F. App'x at 638 (citation and quotation marks omitted). Unlike in *Full Draw*, where the purported harm eliminated one of two competitors in the market, leaving a total monopoly, Plaintiffs concede that there were at least *ten* competitors in the market apart from Vail Health and themselves. Statement of Material Facts ("SOF"), ¶ 52; *Full Draw*, 182 F.3d at 754.

    2.    Plaintiffs Cannot Show that Other Exclusionary Conduct Harmed Them

Plaintiffs allege three other types of purported exclusionary conduct. *See* Am. Compl. ¶¶ 60-93; 227-238. But despite full discovery, Plaintiffs cannot show an antitrust injury from this

alleged conduct because the undisputed facts shows that it did not injure them at all.  This is not surprising.  Since the beginning, Plaintiffs' alleged injury was the same as in their state case, i.e., purported damage to their business resulting from Vail Health's litigation, petitioning, and statements regarding the theft of patient data. Am. Compl. ¶ 193.  Plaintiffs alleged three other forms of purported anticompetitive conduct here: consideration of a never-consummated joint venture (Am. Compl. ¶¶ 61-74); physical therapist offer letters (Am. Compl. ¶¶ 77-93); and a lease (Am. Compl. ¶¶ 75-76).  But Plaintiffs do not seek to recover damages for any of this alleged conduct.  Plaintiffs submitted the same expert damages report in the state and federal cases, seeking the same damages from the same purported harm: lost profits and agreement revenue allegedly caused by Vail Health's litigation, petitioning, and related statements.  *See* Ex. 32, 33.

First, Plaintiffs assert that Vail Health attempted to entrench its referral relationships with Steadman and VSO and to limit the ability of Steadman and VSO to compete in the PT market through a joint venture, which was not ultimately consummated.  Am. Compl. ¶¶ 61-67.  However, Plaintiffs admit that their business suffered no financial damages due to the considered, but unconsummated, joint venture with Steadman and VSO.  SOF ¶ 11.  Nor could it; contemplated-but-unconsummated agreements cannot injure Plaintiffs or form the basis for antitrust liability. *Edwards Vacuum, LLC v. Hoffman Instrumentation Supply, Inc.*, 556 F. Supp. 3d 1156, 1172 (D. Or. 2021) ("[I]t is difficult to see how an unaccepted offer . . . can cause antitrust injury to [the defendant].").

Second, Plaintiffs assert that Vail Health used non-solicitation provisions in its physical therapist offer letters to lock up the supply of PT labor.  Am. Compl. ¶¶ 77-93.  Even assuming those non-solicitation provisions were anticompetitive—which they were not, as discussed in Section B(3), *supra*—there are no facts to support the conclusion that Plaintiffs were harmed or even affected at all by Vail Health's physical therapist offer letters.  Plaintiffs have not identified

a single instance in which they were unable to hire a physical therapist, SOF ¶ 21, or were otherwise harmed by the agreements.

Third, Plaintiffs allege that Vail Health entered a lease with Steadman that restricted its ability to compete in PT by preventing it from performing PT services in the leased property. Am. Compl. ¶¶ 75-76. But Plaintiffs admit that their business suffered no financial damages due to that lease. SOF ¶ 9. More broadly, as to Plaintiffs assertions regarding both the lease and the joint venture negotiations, Plaintiffs entirely fail to explain how adding one or two purported competitors to the market would have helped, rather than hurt, them.

Plaintiffs' complete lack of injury from this other alleged exclusionary conduct is reflected in their claim for damages. In May 2020, Plaintiffs submitted the same damages report in both this case and the Eagle County Case. Ex. 33. This report calculated the same amount of damages as a result of the same conduct: lost profits (or diminution of value based on lost profits) and lost agreement revenue purportedly resulting from defamatory statements.[3] *Id.* at 4-5. Plaintiffs were uninjured by, and thus do not even bother to calculate damages for, the additional purportedly anticompetitive conduct in the federal case.

### B. Plaintiffs Cannot Show Anticompetitive or Exclusionary Conduct

To pursue a monopolization or attempted monopolization claim, a plaintiff must establish that the defendant engaged in anticompetitive or exclusionary conduct. *Christy Sports, LLC*, 555 F.3d at 1192; *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1231 (10th Cir. 2017). Summary judgment is warranted here because Plaintiffs cannot show that Vail Health's conduct, whether taken individually or in the aggregate, constitutes anticompetitive or exclusionary behavior.

---

[3] Mr. Cobb has since submitted a supplemental damages report in this case adjusting those lost profits for the impact of the COVID pandemic, but the methodology is otherwise unchanged so the basis for the damages, i.e., the same purported defamation as in the state case, remains the same. Ex. 32.

First, Vail Health's litigation, petitioning, and statements related thereto are immune from antitrust liability under the *Noerr-Pennington* doctrine.   Second, even if this conduct was not immune from liability, it would not be actionable under the Sherman Act because the alleged statements are not clearly false—the Eagle County Court found that statements about Winninger's theft of Vail Health files were substantially true.  SOF ¶ 39.   Third, Plaintiffs cannot present any facts that the other alleged conduct—the unconsummated joint venture, offer letters, and lease agreement—is anticompetitive.   Finally, analyzing the conduct in the aggregate adds nothing to this analysis; whether the conduct is taken separately or as a whole, the undisputed facts are such that Plaintiffs cannot show any anticompetitive conduct.

> 1.    Vail Health's Litigation, Petitioning, and Statements Related Thereto Are Protected by *Noerr-Pennington* Immunity

Petitions to the government are immune from antitrust liability under the *Noerr-Pennington* doctrine.  *See Pro. Real Estate Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993). Litigation and statements about the claims and allegations at issue in the litigation are protected. *See LDE Corp. v. Dyno Nobel, Inc.*, No. 04-CV-0137-J, 2005 WL 8155435, at *10–11 (D. Wyo. Sept. 13, 2005) (efforts to discourage present and potential clients from doing business with the defendant in light of alleged patent infringement were protected by Noerr-Pennington); *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983); *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1561–62 (11th Cir. 1992).   The petitioning of government agencies, including contact with law enforcement, is also protected.   *King v. Idaho Funeral Serv. Ass'n*, 862 F.2d 744, 745–46 (9th Cir. 1988); *Forro Precision v. IBM*, 673 F.2d 1045, 1059–60 (9th Cir. 1982).   Courts commonly decide *Noerr-Pennington* immunity at summary judgment.   *See, e.g.*, *Pro. Real Estate Invs., Inc.*, 508 U.S. at 62; *Shire LLC v. Sandoz, Inc.*, No. 1:07-cv-00197-EWN-CBS, 2008 WL 4402251, at *13 (D. Colo. Sept. 24, 2008).

Conduct protected by *Noerr-Pennington* immunity can be the basis for liability only under the "sham" exception, which applies if such petitions are *both* objectively baseless *and* an "attempt to interfere *directly* with the business relationships of a competitor. . . ."  *Pro. Real Estate Invs., Inc.*, 508 U.S. at 60–61 (emphasis in original) (citation omitted).  "Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Id.* at 60.  Victory or partial victory on summary judgment is sufficient to show that litigation is not objectively baseless.  *Shire LLC*, 2008 WL 4402251, at *13; *Limon v. Carpenters Loc. Union 721*, No. 2:18-cv-08470-DSF-MRW, 2021 WL 4925444, at *5 (C.D. Cal. Jan. 11, 2021).  Even a loss can show that litigation is not objectively baseless where courts issue "lengthy opinions containing in-depth analysis, treating [plaintiff's] arguments as time-worthy"—*even where* courts also "criticize[] some of [plaintiff's] legal arguments as making little sense."  *CSMN Invs., LLC v. Cordillera Metro. Dist.*, 956 F.3d 1276, 1288 (10th Cir. 2020) (quotation marks omitted).

Where litigation is not objectively baseless, courts find that government petitioning based on the same underlying allegations is also not objectively baseless.  *See Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 959 n.16 (S.D. Cal. 1996); *Puerto Rico Tel. Co., Inc. v. San Juan Cable Co. LLC*, 196 F.Supp.3d 248, 334–35 (D. Puerto Rico 2016), *aff'd*, 874 F.3d 767 (1st Cir. 2017).  Similarly, where the underlying litigation or petitioning is not objectively baseless, threats of litigation and statements about the claims and allegations at issue are protected under the *Noerr-Pennington* doctrine and not subject to the sham exception.  *See LDE Corp.*, 2005 WL 8155435 at *11; *Coastal States Mktg., Inc.*, 694 F.2d at 1369 ("It would be anomalous to hold that, while the litigation was in good faith, the publicity and warnings preceding it were not.").

The Eagle County Case is not actionable because it is not "objectively baseless."  Unlike Plaintiffs, Vail Health prevailed at summary judgment in state court.  Vail Health defeated Plaintiffs' motions for summary judgment on its claims for breach of contract, breach of the duty of loyalty, conversion, and tortious interference, which survived in full.  SOF ¶¶ 42, 46-47.  Vail

Health abandoned in part its misappropriation of trade secrets claim, with respect to documents taken before 2012, but Vail Health defeated Plaintiffs' motion for summary judgment on the remaining misappropriation claim. SOF ¶ 46-47. The only claim dismissed in full was civil theft: after an initial victory at the trial level, the Colorado Supreme Court granted interlocutory review and issued a detailed, 19-page opinion on a legal issue of first impression, dismissing the claim. SOF ¶ 44. Vail Health's conspiracy claim survived summary judgment except to the extent it was derivative of the dismissed civil theft claim and the abandoned part of the misappropriation claim. SOF ¶ 46-47. Thus, the undisputed material facts show that Vail Health's litigation was not baseless, as Vail Health not only prevailed at summary judgment as to most of its claims, but even the claim on which it lost was treated as reasonable and time-worthy by the Colorado Supreme Court. *See Shire LLC*, 2008 WL 4402251, at *13; *CSMN Invs., LLC*, 956 F.3d at 1288.

Because the litigation was not objectively baseless, Vail Health's purported pre-lawsuit statements about the litigation and the claims and allegations at issue, such as Vail Health showing the complaint to other market participants and discussing the subject matter of the complaint, are also protected. *See LDE Corp.*, 2005 WL 8155435, at *10–11; *Coastal States Mktg., Inc.*, 694 F.2d at 1367, -69 (publishing notices related to the subject of the litigation in the newspaper and sending similar notices to other market participants entitled to *Noerr-Pennington* immunity); *Racetech, LLC v. Kentucky Downs, LLC*, 169 F. Supp. 3d 709, 715–17 (W.D. Ky. 2016) (contact with third-party data providers regarding the plaintiff's alleged misuse of data was entitled to *Noerr-Pennington* immunity).

Vail Health's other alleged petitions to law enforcement and regulatory agencies are also protected by *Noerr-Pennington* immunity. The petitions were based on the same underlying facts as the litigation: that Cimino and Winninger took files containing Vail Health patients' PHI, SOF ¶¶ 23-35, and as such, are also not objectively baseless. *See Gen-Probe, Inc.*, 926 F. Supp. at 959 n.16; *Puerto Rico Tel. Co., Inc.*, 196 F. Supp. 3d at 334–35 (petitions and communications to the

U.S. Attorney's Office and state and federal regulators were not objectively baseless, as "all were based on federal or state court filings that this Court found to be objectively reasonable").

> 2.  Vail Health's Purported Defamation and Disparagement Is Not Anticompetitive or Exclusionary Conduct

Independently, Plaintiffs have failed to adduce any facts permitting a reasonable jury to conclude that any of the alleged defamation or disparagement qualifies as anticompetitive or exclusionary conduct.  As a result, summary judgment is appropriate.  Even assuming, *arguendo*, that the statements were not immune from liability, Plaintiffs would have to overcome a rebuttable presumption that statements about a competitor have a *de minimis* effect on competition.  *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1127 (10th Cir. 2014); *GDHI Mktg. LLC*, 416 F. Supp. 3d at 1202; *Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal and Pro. Publ'n, Inc.*, 108 F.3d 1147, 1152 (9th Cir. 1997); *Mercatus Grp. v. Lake Forest Hosp.*, 641 F.3d 834, 851 (7th Cir. 2011).  To rebut that presumption, Plaintiffs must satisfy a six-factor test.  *Lenox MacLaren Surgical Corp.*, 762 F.3d at 1127.  Plaintiffs cannot rebut the presumption on the factual record here.

The Tenth Circuit has not yet determined whether the plaintiff must satisfy all six factors to overcome the presumption.  *Lenox MacLaren Surgical Corp.*, 762 F.3d at 1128 n.9.  While Vail Health believes that the Court should apply the full six-factor test, even circuits that do not require plaintiffs to satisfy all factors require a showing of clear falsity.  *See Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 323 F.3d 366, 371 (6th Cir. 2003); *Duty Free Am., Inc. v. Estee Lauder Co., Inc.*, 797 F.3d 1248, 1269 (11th Cir. 2015).  Where another court determines that the factual basis of a statement is true, that statement is not clearly false.  *Applera Corp. v. MJ Rsch., Inc.*, 349 F. Supp. 2d 338, 345 (D. Conn. 2004).

Plaintiffs cannot show that the statements at the heart of Plaintiffs' allegations are clearly false.  In Plaintiffs' Eagle County Court defamation case, the Eagle County Court found that "the

alleged statements that Winninger had stolen patient files from Vail Health and had stolen Vail Health patient files are substantially true."  SOF ¶ 39.  Moreover, the court *denied* Plaintiffs' motion for summary judgment on Vail Health's counterclaims based on the subject matter of the allegedly defamatory statements, as a factfinder could reasonably conclude that Plaintiffs agreed to engage in the unlawful conversion, use, and disclosure of Vail Health's files containing PHI. SOF ¶ 46-47.  In light of such decisions, Plaintiffs cannot offer sufficient facts to allow a reasonable jury to determine the statements were clearly false.[4]  Notably, this factual situation is the opposite of the situation confronted by the District Court in *Lenox*, where the court assumed that statements were false "[b]ased on the findings of the arbitration panel."  *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, No. 10-CV-02139-RPM-BNB, 2013 WL 3179204, at *6 (D. Colo. June 21, 2013), *rev'd on other grounds*, 762 F.3d 1114, 1127 (10th Cir. 2014) (finding "no reason to disturb that portion of the district court's conclusion").  Vail Health is entitled to summary judgment that the purported disparagement was not actionable because Plaintiffs cannot present facts sufficient to show that such statements were clearly false.

> 3.    Plaintiffs Cannot Present Facts Showing that the Other Challenged Conduct Is Anticompetitive

Summary judgment is appropriate as to the other challenged conduct, Am. Compl. ¶¶ 61-93, 227-238, because Plaintiffs cannot present facts that would allow a reasonable jury to determine that Vail Health's consideration of an unconsummated joint venture, physical therapist offer letters, and/or property lease were anticompetitive or exclusionary.

Unconsummated Joint Venture (Am. Compl. ¶¶ 61-74): Plaintiffs cannot show that the consideration and negotiation of an unconsummated joint venture constituted anticompetitive

---

[4] As the Plaintiffs still have the ability to appeal, these decisions in Eagle County are not final judgments and do not have preclusive effect on the claims in the instant litigation.  But even if these decisions are appealed and overturned, based on the fact that a neutral finder of fact already determined that the statements were "substantially true," a reasonable jury could not now determine that the statements were clearly false.  SOF ¶ 39.

behavior. A proposed business combination or collaboration that does not occur is not unlawful under the Sherman Act. *Springfield Terminal Ry. Co. v. Canadian Pac. Ltd.*, 133 F.3d 103, 105, 109 (1st Cir. 1997) ("We must dismiss the several allegations of conduct that resulted in no action"); *Edwards Vacuum, LLC*, 556 F. Supp. 3d at 1172 (rejecting claims premised on an unaccepted agreement containing a non-compete clause).

Offer Letters (Am. Compl. ¶¶ 77-93): Plaintiffs cannot present facts to support that the non-solicitation provision in Vail Health's physical therapist offer letters are anticompetitive. Plaintiffs' claims arise solely under Section 2 of the Sherman Act. Restrictions in employee agreements, such as non-solicitation and non-compete clauses, are typically challenged under Section 1 of the Sherman Act, which deals with agreements in restraint of trade, not Section 2, which deals with monopoly power. *See* Non-Compete Clause Rule, 88 Fed. Reg. 3482 (proposed Jan. 19, 2023) (to be codified at 16 C.F.R. § 910) (noting that the FTC "is not aware of a case in which a Section 2 claim relating to an employer's use of a non-compete clause has been successful."). As a general matter, conduct is anticompetitive under Section 2 only where "based on the evidence and experience derived from past cases, the conduct at issue . . . has little or no value beyond the capacity to protect the monopolist's market power." *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1072 (10th Cir. 2013). Courts recognize that employee non-solicitation and non-competition agreements have many legitimate business justifications. *See Retiree, Inc. v. Anspach*, 660 F. App'x. 582, 587 (10th Cir. 2016) ("[M]any jurisdictions hold that businesses possess a legitimate interest in protecting the special training of employees, trade secrets, confidential business information, loss of clients, good will, reputation, seeing that contracts with clients continue, and referral sources.") (citation and quotation marks omitted). Plaintiffs provide no basis to depart from this analysis.

Steadman Lease (Am. Compl. ¶¶ 75-76): Plaintiffs cannot show that Vail Health's lease to Steadman was anticompetitive. The lease restricts Steadman's ability to offer PT services only in

the leased property itself; it does not restrict Steadman's ability to compete with Vail Health outside the leased property, including anywhere else in Eagle County. SOF ¶ 8. This provision is not anticompetitive because "[e]ven a monopolist generally has no duty to share . . . physical property with a rival." *Novell, Inc.*, 731 F.3d at 1074. Courts thus routinely uphold restrictions that, as with the lease here, limit or prohibit competitors' use of their lessor's property. *See id*. at 1074, 1080; *Christy Sports, LLC*, 555 F.3d at 1193–96; *see also Registered Physical Therapists, Inc. v. Intermountain Health Care, Inc.*, No. 86-C-0076J, 1988 WL 125788, at *6 (D. Utah Sept. 6, 1988).

### 4.    Plaintiffs' Claims Fail When Considered in the Aggregate

Plaintiffs cannot show that the challenged conduct, in the aggregate, had any sort of "synergistic effect." The Court must "disaggregate the exclusionary conduct into its component parts before applying the relevant law." *In re EpiPen Mktg., Sales Pracs. & Antitrust Litig*., 44 F.4th at 982. Only then may courts consider the challenged conduct in totality to analyze any "synergistic effect." *Id*. But any such synergistic analysis has no effect where, as here, Plaintiffs cannot show any actionable conduct whatsoever—Plaintiffs cannot aggregate their unsuccessful claims "into a new form of antitrust liability." *Pac. Bell Tel. Co. v. LinkLine Commc'ns, Inc.*, 555 U.S. 438, 457 (2009) ("Two wrong claims do not make one that is right."); *see also In re Indep. Serv. Organizations Antitrust Litig.*, 85 F. Supp. 2d 1130, 1158 (D. Kan. 2000); *Ne. Tel. Co. v. Am. Tel. & Tel. Co.*, 651 F.2d 76, 94–95 (2d Cir. 1981).

### C.    Plaintiffs Cannot Show Monopoly Power

Monopoly power is the power to "raise prices substantially above a competitive level without losing so much business that the gambit becomes unprofitable." *In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*, 44 F.4th at 981 (citation omitted). Plaintiffs can prove market

power in two ways: circumstantially or through direct evidence. *Novell, Inc.*, 731 F.3d at 1071. Plaintiffs cannot offer sufficient facts on either point for the claims to survive summary judgment.

### 1.    Plaintiffs Failed to Provide Circumstantial Evidence of Monopoly Power

Circumstantial proof consists of "defining a relevant product and geographic market, pointing to the defendant's share of that market and perhaps barriers to entry . . . and then asking [the factfinder] to infer from this evidence the power to raise price." *Novell, Inc.*, 731 F.3d at 1071. Plaintiffs bear the burden to make an affirmative showing as to the relevant market. *Buccaneer Energy (USA) Inc. v. Gunnison Energy Corp.*, 846 F.3d 1297, 1314 (10th Cir. 2017). Not only have Plaintiffs failed to properly define a relevant market,[5] but there are no facts in the record which show that Vail Health's share of that market, even if properly defined, is sufficient to prove monopoly power.[6]

### 2.    Plaintiffs Failed to Offer Direct Evidence of Monopoly Power

---

[5] Plaintiffs failed to present sufficient facts to define a geographic market because they failed to present admissible evidence of reasonable interchangeability and cross-elasticity of demand. *Campfield v. State Farm Mut. Auto. Ins.*, 532 F.3d 1111, 1118 (10th Cir. 2008) (finding as "legally insufficient" "where the plaintiff fail[ed] to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand" (citation omitted)). As described in detail in Def.'s Mot. to Exclude Schafer at 5–6, Dr. Schafer's opinion and analyses as to reasonably interchangeability and cross-price elasticity of demand should be excluded as inadmissible, rendering Plaintiffs' geographic market definition legally insufficient.

[6] Dr. Schafer's calculation of market share should be excluded as inadmissible. Def.'s Mot. to Exclude Schafer at 6–7. Even assuming Dr. Schafer's share calculations were correct, they are insufficient to show monopoly power, especially in light of evidence that other firms were able to successfully enter and grow. SOF ¶ 53. Courts commonly reject indirect evidence of market power where shares are in the 65 percent to 75 percent range, depending on other available evidence. *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 109 (2d Cir. 2002) (64 percent market share insufficient); *United States v. Syufy Enterprises*, 712 F. Supp. 1386, 1402 (N.D. Cal. 1989), *aff'd*, 903 F.2d 659 (9th Cir. 1990) (76 percent share insufficient); *see also Colorado Interstate Gas Co. v. Nat. Gas Pipeline Co. of Am.*, 885 F.2d 683, 694 n.18 (10th Cir. 1989) (to show monopoly power, "lower courts generally require a minimum market share of between 70% and 80%").

Case No. 1:19-cv-02075-WJM-SBP    Document 528    filed 01/29/24    USDC Colorado
pg 27 of 30

Direct evidence requires a showing that the "defendant has actually raised prices substantially above a competitive level without sacrificing business." *Novell, Inc.*, 731 F.3d at 1071 (citation omitted). "[D]irect evidence of monopoly power to prove one's claims is only rarely available." *Mylan Pharms. Inc. v. Warner Chilcott Pub. Ltd. Co.*, 838 F.3d 421, 434 (3d Cir. 2016) (citation and quotation marks omitted). Courts routinely reject that higher prices alone are sufficient to show market power, as "a firm's comparatively high price may simply reflect a superior product." *Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 381 (3d Cir. 2005) (citation omitted); *see Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 65 F.3d 1406, 1411–12 (7th Cir. 1995), *as amended on denial of reh'g* (Oct. 13, 1995) (noting that when dealing with products such as "the full range of medical care, a reasonable finder of fact cannot infer monopoly power just from higher prices—the difference may reflect a higher quality more costly to provide . . . ." ). Direct evidence must allow a "reasonable juror . . . [to] find the evidence conclusive as to why Defendants' prices were higher." *In re Remeron Direct Purchaser Antitrust Litig.*, 367 F. Supp. 2d 675, 683 (D.N.J. 2005) (citation omitted); *Carpenter Tech. Corp. v. Allegheny Techs. Inc.*, No. 08-2907, 2011 WL 4528303, at *11–12 (E.D. Pa. Sept. 30, 2011) (50 percent higher price insufficient to show market power without more).

Here again, Plaintiffs have no facts to support their assertions. To the extent Plaintiffs point to Dr. Schafer's report, her analysis should be excluded as inadmissible. Def.'s Mot. to Exclude Schafer at 7–10. But even accepting, *arguendo*, Dr. Schafer's report as methodologically valid, an analysis purporting to show that Vail Health's prices were higher than those of its competitors is insufficient to show that they were "above a competitive level." *Novell, Inc.*, 731 F.3d at 1071; *see Harrison Aire, Inc.*, 423 F.3d at 381; *Blue Cross & Blue Shield United of Wis.*, 65 F.3d at 1411–12; *Remeron Direct Purchaser Antitrust Litig.*, 367 F. Supp. 2d at 683.

Nor can Plaintiffs argue that they have adduced facts that Vail Health has the power to exclude competitors. Plaintiffs would have to show that Vail Health "had the power to exclude

*competition* from the relevant market generally, not just to exclude a particular *competitor*." *Los Angeles Land Co. v. Brunswick Corp.*, 6 F.3d 1422, 1426–27 (9th Cir. 1993) (emphasis in original). As Plaintiffs have stated, there are many other companies providing PT services in Vail Valley, SOF ¶ 52, and other competitors grew in the market during the relevant time period, SOF ¶ 53.

**D.    Plaintiffs Cannot Show Specific Intent to Monopolize**

To prevail on their attempted monopolization claim, Plaintiffs must show Vail Health had the specific intent to monopolize. *Christy Sports, LLC*, 555 F.3d at 1192. The mere intent to drive a specific competitor out of business is insufficient. *GDHI Mktg. LLC*, 416 F. Supp. 3d at 1205 (finding that plaintiffs may have alleged sufficient facts to show that "Defendants harbored an intent to drive a specific competitor out of business, but such intent is not the equivalent of an intent to obtain monopoly power"). Plaintiffs cannot point to any facts to support the position that Vail Health took any of the alleged actions with the specific intent to monopolize the market.

**V.    CONCLUSION**

In light of the foregoing arguments, Vail Health respectfully requests that the Court grant summary judgment in its favor because Plaintiffs have failed to show any dispute of material fact and Vail Health is therefore entitled to judgment as a matter of law on Plaintiffs' claims.

Dated:  January 29, 2024.                    Respectfully submitted,

                                             */s/ Evan M. Rothstein*
                                             Evan M. Rothstein (Bar No. 35990)
                                             Colin O'Brien (Bar No. 41402)
                                             David S. Jelsma (Bar No. 53916)
                                             ARNOLD & PORTER KAYE
                                             SCHOLER LLP
                                             1144 Fifteenth Street, Suite 3100
                                             Denver, Colorado 80202
                                             Tel: (303) 863-1000
                                             Evan.Rothstein@arnoldporter.com
                                             Colin.Obrien@arnoldporter.com

David.Jelsma@arnoldporter.com

James L. Cooper
Francesca Pisano
Andrew Ellingsen
ARNOLD & PORTER KAYE
SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Tel: (202) 942-5000
James.Cooper@arnoldporter.com
Francesca.Pisano@arnoldporter.com
Andrew.Ellingsen@arnoldporter.com

Leah Schultz
ARNOLD & PORTER KAYE
SCHOLER LLP
700 Louisiana Street | Suite 4000
Houston, TX 77002-2755
Tel: (713) 576-2400
Leah.Schultz@arnoldporter.com

Charles Scott Lent
Sam Sullivan
ARNOLD & PORTER KAYE
SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Tel: (212) 836-8000
Scott.Lent@arnoldporter.com
Sam.Sullivan@arnoldporter.com

*Counsel for Defendant Vail Health*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 29, 2024, I served via CM/ECF the foregoing

**DEFENDANT VAIL CLINIC INC.'S MOTION FOR SUMMARY JUDGMENT** on all

counsel of record.


 /s/ *Evan M. Rothstein*