## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02075-WJM-SBP

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company, and
LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC., a Colorado nonprofit corporation d/b/a Vail Health,

      Defendant.

---

## ORDER REGARDING SPECIAL MASTER'S REPORT AND RECOMMENDATION

---

**Susan Prose, United States Magistrate Judge**

      Plaintiffs in this action are Sports Rehab Consulting LLC, an independent physical therapy practice that formerly operated in the Vail Valley, and Lindsay Winninger, its principal (collectively, "Plaintiffs"). They allege that Defendant Vail Clinic, Inc. ("Vail" or "Vail Health") has obtained and retains monopoly power to control the pricing and availability of physical therapy services in the Valley and has undertaken various anti-competitive acts in order to discourage competition from other physical therapy providers, including Plaintiffs. Plaintiffs bring an antitrust claim under the Sherman Act, 15 U.S.C. § 2, and an associated claim under Colorado's antitrust statute, Colorado Revised Statute § 6-4-105.

      The parties' numerous discovery disputes necessitated the appointment of a special master. *See* ECF No. 123. Now before the court is the "Special Master Report and Recommendation Based Upon Special Master Findings of Fact and Conclusions of Law Denying

Plaintiffs' Motion to Compel No. 6," ECF No. 559 ("Recommendation" or "Report and Recommendation"), and both sides' objections to the Recommendation. ECF No. 562 ("Plaintiffs' Objections"); ECF No. 563 ("Vail Health's Objections").[1] Between the two sets of Objections, the Recommendation is objected to in full, requiring this court to conduct a de novo review of the Recommendation in its entirety. *See* Fed. R. Civ. P. 53(f)(3)-(4).

In the Motion, which Plaintiffs filed after discovery had closed, Plaintiffs demand that Vail Health produce text messages from the personal devices of three individuals who are not parties to this action: Michael Shannon, who formerly served on the board of Vail Health; Doris Kirchner, a former CEO and Executive Director of Vail Health; and Will Cook, the current CEO of Vail Health. Upon a de novo review, the court first finds that the text messages on these personal devices of third parties are not within Vail Health's custody or control, and therefore Vail Health cannot be compelled to produce them. Consequently, the correct procedural mechanism for Plaintiffs to have obtained this information was by means of subpoenas issued pursuant to Federal Rule of Civil Procedure 45. Plaintiffs could have issued such subpoenas years ago, but the record makes evident that they deliberately elected not to avail themselves of that readily-available procedure for obtaining third-party discovery. Second, because Plaintiffs did not file the Sixth Motion to Compel until after the expiration of the discovery deadline, the court finds that the Motion should be denied for the additional reason that it was untimely. Finally, in light of these conclusions, good cause is lacking to reopen discovery to allow for service of the subpoenas now.

---

[1] The court refers to the motion to compel addressed in the Recommendation as the "Motion" or "Sixth Motion to Compel." ECF No. 485.

Accordingly, the court respectfully **OVERRULES** Plaintiffs' Objections, **SUSTAINS** Vail Health's Objections, **ADOPTS IN PART** the Special Master's Recommendation, and **DENIES** the Sixth Motion to Compel. In addition, because discovery in this matter is closed, the court further **ORDERS** that the responsible parties pay any outstanding invoices issued by the Special Master **on or before <u>May 19, 2025</u>**.

## I.    Timeline

In conducting its de novo review, the court finds it necessary to begin by summarizing the salient parts of the tortuous procedural history of this action.

### A.    Discovery Period: July 2019 to December 20, 2021

Plaintiffs filed this case on July 17, 2019. ECF No. 1. On October 7, 2019, Plaintiffs issued their First Set of Requests for Production of Documents, which do not reference the terms "text," "device," or "cell [or cellular] phone." ECF No. 485-7. However, Vail Health did not immediately respond to these requests because the court did not enter a scheduling order authorizing discovery for some months.

On January 30, 2020, Vail Health filed a motion to stay discovery pending resolution of its motion to dismiss. ECF No. 49. The court granted the motion to stay on April 21, 2020. ECF No. 53. On August 21, 2020, the court denied the motion to dismiss and lifted the stay of discovery. ECF No. 55. Afterwards, the parties were directed to confer and to agree on deadlines for discovery and dispositive motions. ECF No. 67. As with seemingly every single thing in this litigation, the parties could not agree, and so the court itself finally was obliged to pick the operative dates. In a scheduling order entered on October 9, 2020, Judge Gallagher set a fact discovery deadline of August 1, 2021, with affirmative and rebuttal expert deadlines following in

September 2021 and November 2021, and a deadline for filing dispositive motions of February 1, 2022. ECF No. 71 at 24-26; *see also* ECF No. 242 (November 28, 2021 order extending fact discovery deadline to December 20, 2021; expert disclosures deadlines to January 10 and February 14, 2022; and the dispositive motion deadline to March 7, 2022).

On October 9, 2020—the same day the court entered the scheduling order—Vail Health responded to the requests for production that Plaintiffs had submitted prior to the stay a year earlier. ECF No. 495-1 (October 9, 2020 responses). In those responses, Vail Health objected to producing "information that is not in Vail Health's possession, custody or control and which is more properly obtained from third persons." *Id.* at 2. After that, discovery appears to have fallen off the rails, degenerating into a plethora of disputes which Judge Gallagher took up at a discovery dispute conference on March 30, 2021. ECF No. 88. As Judge Gallagher described the situation he faced, "it became apparent during the hearing, after about ninety minutes, that the parties had not sufficiently conferred and disagreed on a large portion of the issues, areas of the law, and the issues that pertained to the State Court Action." ECF No. 105 at 4.[2] Ultimately, on June 6, 2021, Judge Gallagher granted Vail Health's motions for a protective order and to quash a subpoena issued to an individual named Michael Horwith, an independent forensic computer expert appointed in the related state court case. *See id.*

Judge Gallagher's handling of the disputed discovery issues in this case apparently garnered the disapprobation of Plaintiffs' counsel, who filed a "Motion Seeking the Intervention of Judge Martinez in Discovery Disputes Under Practice Standard II.C." ECF No. 97. In addition

---

[2] The "State Court Action" is the related case of *Winninger v. Vail Clinic, Inc.*, No. 2017CV30102 (Eagle Cnty. Dist. Ct.).

to accusing Vail Health of engaging in "abusive discovery tactics," which allegedly caused "discovery [to go] wildly astray," *id.* at 2, Plaintiffs also "raise[d] a litany of complaints about the manner in which United States Magistrate Judge Gordon P. Gallagher [had] presided over the discovery process thus far." ECF No. 113 at 3. On June 18, 2021, Judge Martinez denied Plaintiffs' motion and resoundingly rejected both contentions. *Id.* Judge Martinez gave no credit to the assertion that Plaintiffs had "received virtually no discovery to date" in the instant case: "[g]iven Plaintiffs' access to discovery from the State Case for use in this litigation, this is a manifestly false and misleading statement by their counsel." *Id.* at 5. And Judge Martinez "took extreme umbrage at Plaintiffs' disparaging statements" about Judge Gallagher, whom Plaintiffs accused of being "not well grounded in the basic principles of antitrust law[.]" *Id.* at 6; *see also id.* (observing that "Judge Gallagher felt forced to end one discovery conference in this case early due to Plaintiffs' counsel's unprofessional conduct; specifically, Plaintiffs' counsel was not listening to Judge Gallagher, would not stay silent, and came perilously close to contempt of court").

On June 28, 2021, Judge Gallagher issued a Notice and Order Regarding Appointment of Special Master, ECF No. 119, in which he made the following observations:

> This Court has already documented the numerous hearings and discovery disputes that have already occurred and how the parties' inability to confer has hindered this case from progressing in a timely fashion. In a prior Order, this Court determined that Plaintiffs' counsel attempted to circumvent this Court's Scheduling Order and the state court's Forensic Protocol Order in addition to being non-responsive to Defendant's requests to confer. (D. 105). The District Court, in its most recent Order, highlighted how in a prior discovery conference, the undersigned was forced to end a discovery conference due to Plaintiffs' counsel's unprofessional conduct. (D. 113, p. 6).

*Id.* at 1-2. On July 20, 2021, the court appointed the Honorable W. Terry Ruckriegle as Special

Master pursuant to Federal Rule of Civil Procedure 53. ECF No. 123.

A barrage of discovery motions from Plaintiffs immediately followed Judge Ruckriegle's

appointment. Before fact discovery closed on December 20, 2021, Plaintiffs filed **five** motions to

compel. The first of these motions, titled "Plaintiffs' Rule 37 Motion to Compel #1 Relating to

Relevant Geographic Market," ECF No. 127, makes no mention of the non-party texts Plaintiffs

now seek (or, for that matter, any other person's texts, devices, or cell phones). Nor do any of the

other four motions to compel that the Plaintiffs filed before discovery closed. ECF No. 129

("Plaintiff's' Rule 37 Motion to Compel #2 Relating to Vail Health's Monopoly Power"); ECF

No. 132 ("Plaintiffs' Rule 37 Motion to Compel #3 Relating to RFP No. 15 (Board Documents),

Interrogatory Nos. 12-13, 20-21, and 23 (Identification of Potential Witnesses), Failure to

Produce Privilege Log, and Redacted Documents"); ECF No. 157 ("Plaintiffs' Rule 37 Motion to

Compel #4 Relating to Joint Ventures and Other Combinations"); ECF No. 195 ("Plaintiffs' Rule

37 Motion to Compel #5 to Produce Documents on Vail Health's Inadequate Privilege Log, or

Alternatively, *In Camera* Review at Vail Health's Cost").

There was mention of a text message sent to Ms. Kirchner during the October 22, 2021

oral argument on the motions to compel, *see* ECF No. 218 40:23-41:7,[3] and again on December

6, 2021, in Plaintiffs' proposed order submitted in connection with the first motion to compel.

---

[3] The excerpt reads: "And in 2016 in December the CEO of Steadman sent a text message to Ms. Kirchner, the CEO of Vail Health, and Ms. Kirchner typed that text into an email to Mike Shannon, the Chairman of the Board, and it basically said – and Mr. Brown testified and confirmed the email in his deposition on Tuesday. The message basically said just want to give a heads up we are considering going our own independent way when it comes to physical therapy. We are thinking of going to establish our own physical therapy facility."

ECF No. 255 at 21 ¶ 10 (referencing "[e]mails, mobile telephone text messages, letters,

memoranda, and notes to or among Vail Health board members, management, employees, or

agents relating to the relevant geographic market"); *see also* ECF No. 261 at 5 ¶ 21 (disputing

that the issue of text messages was properly before the Special Master because that issue was

"not presented in any of Plaintiffs' Motion to Compel #1-5").

On November 10, 2021, then-counsel for Vail Health submitted a detailed letter to

Plaintiffs' counsel which set forth "the measures [Vail Health] has taken to search for documents

responsive to Plaintiffs' discovery requests[.]" Discovery Letter from Daniel Richards to Alan

Kildow and Sonya Braunschweig, ECF No. 495-2 at 2. Counsel specifically represented that Vail

Health "had searched the *email files*" on Vail Health's system of four custodians: Nicholas

Brown,[4] MaryEllen Broersma, Mr. Cook, and Ms. Kirchner. *Id.* at 4 (listing 48 iterations of

search terms utilized in searching "the above four custodians' *email files*") (emphasis added). But

counsel for Vail Health did not represent that a search had been undertaken for any text messages

on the personal devices of Mr. Shannon, Ms. Kirchner, or Mr. Cook, or any other person

associated with Vail Health.

Thus, fact discovery closed on December 20, 2021, with no text messages having been

directly requested in any request for production, with no reference to text messages in any of the

five pending motions to compel, and with Vail Health having made clear that it had not searched

for text messages and did not consider that issue to be properly before the Special Master at the

time.

---

[4] Vail Health represents that Mr. Brown is its vice president of operations. *See* ECF No. 579 at 8.

**B.      Post-Discovery Period: January 2022 to September 2024**

During the first half of 2022, the parties continued to submit supplemental briefing on the first five motions to compel, while addressing other non-dispositive matters and awaiting recommendations from the Special Master on the pending motions. When those recommendations were issued, between July and October 2022, *see* ECF Nos. 362, 381, 382, 383, 398, the Special Master made no reference to text messages,[5] nor did Plaintiffs in their objections to the recommendations. *See* ECF Nos. 387, 408. Unsurprisingly, Judge Gallagher similarly did not mention text messages in his order addressing the Master's recommendations on the first five motions to compel on March 13, 2023. ECF No. 457.

On April 26, 2023, Judge Crews conducted a hearing in which the court clarified certain aspects of the Special Master's recommendations on the first five Motions to Compel, along with Judge Gallagher's March 13, 2023 order. ECF No. 468 at 1. Two days later, Vail Health's then-counsel collectively withdrew, and Vail Health's current counsel, attorneys from the law firm of Arnold & Porter Kaye Scholer LLP, entered their appearances. ECF No. 470. Vail Health avers that it "represented to Judge Crews that it intended to aggressively meet—and go beyond—its discovery obligations arising out of the Special Master's Recommendations and Judge Gallagher's Order regarding the same[.]" Vail Health's Objections at 4. Specifically, per Vail Health, its

> efforts in that regard included: the collection of emails from Vail Health's system
> for nine additional individuals requested by Plaintiffs, including supplemental

---

[5] Notably, when the parties prepared an updated discovery dispute chart dated August 8, 2022, which the Special Master appended to his Recommendation on the second motion to compel, ECF No. 381 at 9-18, Plaintiffs did not reference the text messages they seek in the Sixth Motion to Compel.

collections for emails of Mr. Shannon on Vail Health's system; the use of search terms requested by Plaintiffs over the email files of 13 individuals including Mr. Shannon, Ms. Kirchner, and Mr. Cook, including on topics that the Special Master denied Plaintiffs' requested discovery; the rolling production of thousands of documents and the commitment to review of over 20,000 additional documents; the production of reams of additional patient data from outside the Vail Valley, including for a period after and beyond the Special Master's Recommendations on Motion to Compel 1 through 5; the targeted collection and production of specific records and reports identified by Plaintiffs; and the production of dozens of lease and research agreements, despite the Special Master's denial of Plaintiffs' request for this discovery. *See* ECF Nos. 484, 491.

*Id.* at 4-5 (cleaned up).

The record before the court shows that the first explicit articulation of Plaintiffs' demand for the text messages of Mr. Shannon, Ms. Kirchner, and Mr. Cook emerged sometime between late April 2023 and June 21, 2023, during counsels' communications about Vail Health's efforts to provide additional discovery and to comply with the court's order on the first five motions to compel. On May 2, 2023, Plaintiffs' counsel asked Vail Health to confirm that it would produce emails and texts for Mr. Shannon, Ms. Kirchner, Mr. Cook, and Nicholas Brown, among others. ECF No. 485-13 at 3. By June 21, 2023, counsel for Vail Health had "agree[d] to produce responsive and non-privileged text messages" for Mr. Brown—"notwithstanding Vail Health's objections and position that text messages are not subject to production"—and Vail Health further had agreed "**not to oppose any third-party subpoenas Plaintiffs may issue to Mike Shannon or other of the proposed individuals**, except for purposes of protecting attorney-client privilege, work-product, or other protections/immunities." June 21, 2023 email from Colin M. O'Brien to Sonya Braunschweig, ECF No. 495-3 at 2 (emphasis added).

It is apparent from the record that counsel for Plaintiffs never issued subpoenas for the

personal devices of any individual, including Mr. Shannon, Ms. Kirchner, or Mr. Cook. Plaintiffs

instead proceeded to file the Sixth Motion to Compel on July 30, 2023, which prompted further

conferrals among counsel for the parties. On August 16, 2023, Evan Rothstein, an attorney for

Vail Health, informed counsel for Plaintiffs that text messages had been "collected and produced

. . . in the state court case," and that "[t]he state court production has been incorporated into" the

instant case.[6] August 16, 2023 email from Rothstein to Braunschweig, Kildow, and others, ECF

No. 495-4 at 2. Mr. Rothstein also confirmed that Ms. Kirchner and Mr. Shannon had no

"cooperation/indemnification agreements" with Vail Health, and in response to counsels' query

why these individuals would not "produce their texts to Vail Health," Mr. Rothstein responded:

> We have addressed this issue. We do not speak for, nor represent, Mike Shannon or
> Doris Kirchner. **They are represented by their own counsel, John McHugh. We
> previously advised you to reach out to him. We previously offered as part of a
> global compromise not to object to a subpoena**, except to the extent it implicated
> privileges or immunities. You declined to even reach out to Mr. McHugh instead
> asking us to "use our influence" with him. When you shifted focus to Nico Brown,
> we offered to produce his text messages voluntarily to try to move forward.
> Plaintiffs again declined to compromise. As to the cooperation and indemnification
> query, we made clear that we do not think the existence or non-existence of any
> such agreements would change the analysis. **We are not aware of any agreements
> that would require Mr. Shannon or Ms. Kirchner to hand over their personal
> devices absent a subpoena**.

*Id.* (emphasis added).

---

[6] It is unclear what text messages were produced in the related state court case, but Mr. Shannon
and Ms. Kirchner were parties to that action and so were obliged to fully participate in discovery.
*See* ECF No. 579 at 4 (representation by Vail Health that "[i]n the state court action, Ms.
Kirchner and Mr. Shannon were both parties to the case and represented by separate counsel.
Any text messages produced in connection with the state court case were done with their
cooperation.").

With Plaintiffs' decision not to pursue the texts of the third parties by means of subpoenas, briefing on the Sixth Motion to Compel proceeded. Vail Health responded to the Motion on August 21, 2023, ECF No. 495, and Plaintiffs filed a reply on September 5, 2023. ECF No. 499. On September 27, 2023, Judge Crews referred the Motion to the Special Master. ECF No. 506. On October 11, 2023, while the Motion was pending before the Special Master, Judge Crews extended deadlines for the completion of certain depositions and dispositive motions, but permitted no additional discovery "without leave of Court because the discovery cut-off passed long ago." ECF No. 512 at 2 (stating that "[t]he only discovery production that should be occurring at this point is (1) discovery that is anticipated by the above deadlines, (2) discovery that may be ordered or allowed by the Special Master or this Court, and (3) discovery that the parties have already voluntarily agreed to produce to date"). Judge Crews made no mention of discovery concerning text messages.

On April 30, 2024, the Special Master issued the Recommendation on the Sixth Motion to Compel. *See* Recommendation. The Special Master recommended that the Motion be denied, finding that it was untimely, *id.* at 4; that Plaintiffs could have subpoenaed the texts while discovery was open in this matter, *id.* at 4-6; and that Vail Health does not have possession, custody, or control of the personal devices of the non-parties on which the text messages are located, *id.* at 6-8. Notwithstanding these conclusions, the Special Master went on to find that discovery of the text messages is "necessary and proportionate to the needs of the case," *id.* at 8-9, and recommended "that Plaintiffs be allowed a very limited opportunity such as seven (7) days to pursue the remedy of Rule 45 subpoenas upon Michael Shannon and Doris Kirchner to turn over their cell phones or specific text messages in this case." *Id.* at 10-11.

II.    **The Special Master's Recommendation and the Parties' Objections**

Between the two sides, the parties have mounted objections to all aspects of the

Recommendation. The crux of the matter is whether this court has the authority, in the first

instance, to compel Vail Health to produce the personal devices of its employees and board

members. The court thus begins by addressing that dispositive question.

A.    **Vail has no legal right to obtain texts on the personal devices of third parties.**

The Special Master found that, as required by Federal Rules of Civil Procedure 34(a)(1),

Vail Health never had "possession, custody or control" of the personal devices of its employees

and the text messages contained on those personal devices and, therefore—as a matter of law—

Vail Health had no obligation to produce those devices or texts. Recommendation at 6-8. Having

conducted a de novo review of the relevant facts and applicable law, this court finds no reason to

disagree with the Special Master's conclusion that Vail Health has neither a legal right nor a

practical ability to obtain these third-party materials.

Under Rule 34(a)(1), "parties have a right to request documents within the opposing

party's possession, custody, or control. Documents are deemed to be within the possession,

custody, or control if the party has actual possession, custody, or control or has the legal right to

obtain them on demand." Recommendation at 6 (citing *Cotton v. Costco Wholesale Corp.*,

No. 12-2731-JW, 2013 WL 3819974, at *6 (D. Kan. July 24, 2013) (denying a motion to compel

because employer did not have actual possession, custody, or control of employee's personal cell

phones)); *accord, e.g.*, *Geiger v. Z-Ultimate Self Def. Studios, LLC*, No. 14-cv-00240-REB-

NYW, 2016 WL 11697106, at *7 (D. Colo. June 7, 2016) ("Generally, control under Rule 34

includes the circumstance in which a party has the legal right to obtain the documents on

demand. That legal right must also be coupled with a practical ability to obtain the documents

from the third party.") (cleaned up) (citing *Klesch & Co. v. Liberty Media Corp.*, 217 F.R.D.

517, 520 (D. Colo. 2003)).[7] "The party seeking production bears the burden of proving that the

opposing party has the control which rule 34 requires." *XTO Energy, Inc. v. ATD, LLC*, No. CIV

14-1021 JB/SCY, 2016 WL 1730171, at *23 (D.N.M. Apr. 1, 2016) (citing *Norman v. Young*,

422 F.2d 470, 472 (10th Cir. 1970)) (other citation omitted); *Herron v. Progressive Car Fin.,

LLC*, No. CIV-22-638-SLP, 2024 WL 2710853, at *3 (W.D. Okla. Jan. 10, 2024) ("Importantly

for purposes of the present dispute, the party seeking production of documents bears the burden

of proving that the opposing party has 'control' under Rule 34(a).") (citing *Pipeline Prods., Inc.

v. Madison Cos., LLC*, No. 15-4890-KHV, 2019 WL 1940282, at *6 (D. Kan. May 1, 2019);

*Boyd v. Hi Country Chevrolet*, No. CIV 10-602 RB/KBM, 2012 WL 13081437, at *1 (D.N.M.

Feb. 28, 2012)). The court finds that Plaintiffs have failed to meet their burden to establish that

Vail Health has the requisite control over the personal cellular devices of Mr. Shannon, Ms.

Kirchner, or Mr. Cook.

"In determining whether an employer [or the entity of which an individual is a board

member] has 'control' of its employees' communications on their personal devices, the Court

must consider several factors, including whether the employer issued the devices whether the

devices were used for business purposes, and whether the employer had a legal right to obtain

communications from the devices." *Krishnan v. Cambia Health Sols.*, No. 2:20-cv-574-RAJ,

---

[7] This court has not located an opinion issued by the Tenth Circuit Court of Appeals that
specifically addresses the standard for assessing what level of control is required before a litigant
can be compelled to produce documents not in its actual possession.

2021 WL 3129940, at *2 (W.D. Wash. July 23, 2021) (citing *Goolsby v. Cnty. of San Diego*, No. 3:17-cv-564-WQH-NLS, 2019 WL 3891128, at *4 (S.D. Cal. Aug. 19, 2019); *Stinson v. City of New York*, No. 10 CIV. 4228 (RWS), 2016 WL 54684, at *5 (S.D.N.Y. Jan. 5, 2016); and *Cotton*, 2013 WL 3819974, at *6)). Here, Plaintiffs do not contend that Vail Health issued the cell phones to these employees, which appear to be personally owned, or that any of the three—Mr. Shannon, Ms. Kirchner, or Mr. Cook—use their cell phones exclusively (or even primarily) for business purposes. Neither have Plaintiffs shown that Vail Health "otherwise has any legal right to obtain employee text messages on demand." *See Cotton*, 2013 WL 3819974, at *6. In fact, the information in the record before the court precludes such a finding.

The Director of Risk Management and Patient Safety for Vail Health averred in a sworn declaration that she has "no knowledge of any agreements or policies that give Vail Health the legal right to require Doris Kirchner, Mike Shannon, or Will Cook to turn over their personal cellular devices for inspection or collection of text messages," nor is she "aware of any instance in which Vail Health has ever had possession, custody, or control over the personal electronic devices" of those three individuals. Declaration of Katie Lawlor, ECF No. 495-5 ¶ 5. Plaintiffs have come forward with no evidence controverting these statements, and they inaccurately describe the Recommendation as recognizing that Vail Health had the right to possess the text messages under Vail Health's Code of Conduct, the indemnification agreements with Shannon and Kirchner, and its D&O insurance policy, *see* ECF No. Plaintiffs' Objections at 5; in fact, the Special Master said precisely the opposite. Recommendation at 7-8 ("Plaintiffs cite Vail Health's Code of Conduct, indemnification agreements for Mr. Shannon and Ms. Kirchner, and Vail Health's D&O Insurance Policy as purported evidence of Vail Health's control over these

individuals['] text messages, **but none of these agreements cover personal devices or provide Vail Health the enforceable right to collect and produce these individual's personal devices and text messages for use in this case**.") (emphasis added).

Both Mr. Shannon and Ms. Kirchner had obtained their own counsel—emphasizing, in an explicit way, their separation from Vail Health for purposes of both the state case and the instant federal action—and counsel for Vail Health made clear to Plaintiffs' counsel that Arnold & Porter does "not speak for, nor represent, Mike Shannon or Doris Kirchner." ECF No. 495-4 at 2. Vail Health's counsel further advised that Plaintiffs' attorneys needed to reach out directly to Mr. McHugh, counsel for Mr. Shannon and Ms. Kirchner, to discuss their personal text messages. *Id.* The attorneys additionally made clear that a subpoena was the means by which Plaintiffs could seek access to the personal texts of these non-parties. *See id.* (noting that Vail Health had "previously offered as part of a global compromise not to object to a subpoena, except to the extent it implicated privileges or immunities"). And counsel further confirmed that they were "not aware of any agreements [with Vail Health] that would require Mr. Shannon or Ms. Kirchner to hand over their personal devices absent a subpoena." *Id.* In spite of this unequivocal information demonstrating that Vail Health understood itself to have no legal right to compel third parties to produce their personal devices or text messages "on demand," *see Cotton*, 2013 WL 3819974, at *6, Plaintiffs' counsel did not reach out to Mr. McHugh; instead, they persisted in pressing counsel for Vail Health to "use [their] influence" with him. *Id.* But on this record, Plaintiffs have failed to demonstrate that Vail Health had the capacity to exert "influence" over these non-parties or their attorneys with respect to persuading them to turn over their personal devices to Vail Health. Neither is there any evidence in the record showing that Vail

15

Health could compel Mr. Cook, as its employee, to turn over his personal cell phone.

Indeed, the idea that Vail Health could exert such authority, absent some formal contractual obligation not found here, is wholly inconsistent with the commonly-accepted understanding that an employer (or former employer) does *not* control the devices that its employees personally own. Surely, a typical employee does not expect to be compelled to turn over their personal cell phone simply because their employer has become embroiled in litigation and has received a document request for those texts. And such an employer-directed document request plainly implicates both the privacy and property rights of the targeted employee:

> Requiring an employer to produce an employee's phone for inspection or retrieval of documents, without further indicia of control, could well jeopardize the employee's privacy. If the phone is searched by the employer, the opposing party, or even an independent reviewer, all of the messages—including those that have nothing to do with the case—will be exposed. Even if the employee is the sole canvasser of the phone, privacy interests may be implicated, as even business-related messages may contain personal information. Employees might well feel comfortable sending such hybrid messages to their fellow employees or even outside customers and clients, yet shudder to think that they would be shared with total strangers, now in litigation with their company.
>
> The employer-directed document request also implicates the employee's property rights. Devices and the information they contain are reasonably understood to constitute the property of those who purchased the devices and operated them. Allowing opposing litigants to invade and compromise this domain through a document request directed to the employer erodes that sense of ownership. *See In re Sun Coast Res., Inc.*, 562 S.W.3d 138, 158 (Tex. App. 2018) (vacating order to produce employees' text messages from personal devices, because "nothing about the at-will employment relationship alters an employer's or an employee's traditional rights to possess their respective property to the exclusion of the other").

*Halabu Holdings, LLC v. Old Nat'l Bancorp*, No. 20-10427, 2020 WL 12676263, at *2 (E.D. Mich. June 9, 2020); *see also Rattie v. Balfour Beatty Infrastructure, Inc.*, No. 22-cv-05061-RS

16

(LJC), 2023 WL 5507174, at *4 (N.D. Cal. Aug. 25, 2023) (in denying a motion to compel an employer to search for and produce text messages on the personal devices of its employees, observing that if plaintiff "believed that the management witnesses had relevant text messages on their personal devices, over which Balfour did not have 'possession, custody, or control,' then he had the option to issue a third-party subpoena for the production of those messages. Evidently, he did not do so.").

Of course, this conclusion does not mean that the personal devices of third-party employees, former employees, or board members are "immune" from discovery, as Plaintiffs assert. *See* Plaintiffs' Objections at 5. Far from it. As the court in *Halabu* aptly put it, "they can be reached by way of a subpoena under Rule 45 of the Federal Rules of Civil Procedure," and "that route better addresses the privacy and property concerns raised by a document request to an employer." 2020 WL 12676263, at *3 (recognizing that the subpoena recipient "can interpose her objection to production in a relatively straightforward fashion with a simple written communication to the party serving the subpoena," while "the Rule 34 document request process puts the onus on the employee to act to preserve her interests, and necessitates a motion for a protective order, with attendant legal cost"). Just so here. Counsel for Plaintiffs had ample opportunity to issue Rule 45 subpoenas on Mr. Shannon, Ms. Kirchner, and Mr. Cook—the standard course for obtaining information during the discovery process from a non-party—and, in fact, they were explicitly informed by counsel for Vail Health that it would be necessary for them to do so. The decision by counsel not to take that action two years ago does not entitle Plaintiffs to third-party texts now, two years after they were informed that Vail Health could not produce them.

17

At bottom, Plaintiffs point to no law supporting the proposition that information on the personally-owned devices of employees, former employees, or board members "may be compelled by way of a document request directed to the employer without any further indicia of control over the device." *See Halabu*, 2020 WL 12676263, at *2. Nor has this court found any such case, which, for the reasons set forth above, likely would have consequential implications with respect to an employee's privacy and property rights.

The court is not persuaded that such concerns would be ameliorated because Plaintiffs claim not to "seek personal information on cell phones, but rather 'Vail Health business records electronically stored in cellphones.'" Plaintiffs' Objections at 6. This distinction is one of mere semantics; to retrieve the "business" information Plaintiffs seek, this court must compel production of these personally-owned devices. And to obtain any "Vail Health business records" on these cell phones, the devices must not only be retrieved, but also forensically imaged. Then, some protocol must be established for segregating possible "business records" on the phones from the vast amount of purely personal information contained on them, likely with the assistance of a third-party vendor. Lastly, someone—either a Special Master or this United States Magistrate Judge—would be obliged to review any extracted information before production to Plaintiffs, to ensure both a full production of "business" information and the proper exclusion of personal information. In short, however Plaintiffs purport to cabin the information they want from these personal devices, the fact remains that they demand access to personal devices that they have not shown Vail Health has a legal right or the practical ability to obtain.

Finally, the court finds no evidence in the record to support Plaintiffs' contention that Vail Health somehow violated "its duty to preserve relevant evidence, including text messages."

Plaintiffs' Objections at 10. As the Special Master found—correctly, in this court's view—"[t]he record shows that Vail Health fulfilled its obligation to preserve documents by issuing litigation hold notices to potential custodians in both the state and federal court cases, including to Ms. Kirchner, Mr. Shannon, and Mr. Cook, the individuals whose text messages are at issue in" the Sixth Motion to Compel. Recommendation at 9 (citing Lawlor Declaration, ECF No. 495-5 ¶¶ 3-4) (stating that Kirchner, Shannon, and Cook received litigation hold letters that directed them to preserve "employee personal email accounts, and even cell phone or I-Pads if used for text or instant messaging for business purposes"). The point isn't that evidence was "spoliated," as Plaintiffs claim, but that the personal devices of these individuals are legally outside the reach of Vail Health for purposes of a request issued pursuant to Rule 34. Even so, Plaintiffs were not without recourse when it came to requesting these text messages on personal devices: they had only to pursue them by means of the subpoena process set forth in the Federal Rules of Civil Procedure. The court cannot divine the reasons for Plaintiffs' recalcitrance in refusing to avail themselves of the readily-available Rule 45 procedures, but refuse they did, and the court now must address the unnecessary procedural quagmire that has ensued.

In sum, for the reasons articulated above, the court respectfully finds that Plaintiffs have failed to meet their obligation to show that Vail Health had the legal right—coupled with the practical ability—to obtain and produce text messages on the personal devices of either current or former board members or employees of Vail Health. Because the requisite possession, custody, or control of the communications on the personal devices of Mr. Shannon, Ms. Kirchner, and Mr. Cook has not been established, Plaintiffs' Sixth Motion to Compel is respectfully **DENIED**.

The Motion is resolved for this reason alone, but in light of Plaintiffs' objection to the Special Master's additional finding that the Motion was not timely filed and that Plaintiffs could have served Rule 45 subpoenas during the discovery period, *see* Recommendation at 4-6, the court also undertakes a de novo review of the timeliness question. On this point, too, the court finds no reason to disagree with the Special Master's finding that the Sixth Motion to Compel is untimely.

B.    **The Sixth Motion to Compel is untimely.**

The record indisputably shows that, by the close of discovery in December 2021, Plaintiffs had failed to take affirmative steps to obtain the texts of Mr. Shannon, Ms. Kirchner, or Mr. Cook. They had not issued a request for production expressly seeking the text messages; had not raised the issue of text messages in any of *five* pending motions to compel; and had information plainly demonstrating that Vail Health had not undertaken a search for text messages on the personal devices of Mr. Shannon, Ms. Kirchner, or Mr. Cook. "While the Federal Rules of Civil Procedure do not provide a deadline for filing a motion to compel, courts look to the discovery deadline when determining whether a motion to compel is timely." *Carbajal v. St. Anthony Cent. Hosp.*, No. 12-cv-02257-REB-KLM, 2014 WL 7146185, at *1 (D. Colo. Dec. 15, 2014) (citing *Nw. Territory Ltd. P'ship v. Omni Props., Inc.,* No. 05-cv-02407–MJW-PAC, 2006 WL 3618215, at *1 (D. Colo. Dec. 11, 2006)). Factors the court may consider include: "(1) the length of time since the discovery deadline expired; (2) the length of time that the moving party has known about the discovery; (3) whether the discovery deadline has been extended; (4) the explanation for the tardiness or delay in filing the motion to compel; (5) whether dispositive motions have been scheduled or filed; (6) the age of the case; (7) any

prejudice to the party from whom the discovery is being sought; and (8) any disruption of the

court's schedule." *Id.* (quoting *Nw. Territory Ltd.*, 2006 WL 3618215, at *1) (internal quotation

marks omitted).

The court is not obliged to undertake a factor-by-factor analysis, but observes that

Plaintiffs did not file the Sixth Motion to Compel until July 30, 2023—more than a year and a

half after the close of discovery. While certain deadlines were extended on October 11, 2023,

those extensions did not encompass additional time for the production of text messages. ECF

No. 512 at 2 (noting that "the discovery cut-off passed long ago"). And the record reveals no

plausible explanation for Plaintiffs' delay in waiting until 2023 to pursue the text messages—

particularly given that they had long known of the possible existence of such texts, a subgroup of

which had been produced in the state case. *See* ECF No. 495-4 at 2. The documents that

purportedly emphasize the critical importance of the texts, which Plaintiffs analyze in the Motion

to Compel in July 2023, long pre-date the close of discovery in December 2021. *See* Motion at

9-10; *see also* Recommendation at 6 (in discussing these documents, finding that "the documents

show that "Plaintiffs did have opportunities to broach this issue [of text messages] although they

did not pursue motions or subpoenas prior to the close of discovery"). The existence of these

documents does not negate the conclusion that Plaintiffs could have filed the Sixth Motion to

Compel before the close of discovery.

Nor can the court discern any justification for the additional delay Plaintiffs caused in

resisting the use of the Rule 45 subpoena process when it was made clear to them there would be

no voluntary compliance from the third-party owners of the devices. *See* ECF No. 495-3 at 2

(stating that Vail Health would not "oppose any third-party subpoenas Plaintiffs may issue to

Mike Shannon or other of the proposed individuals"); *see also* ECF No. 495-4 at 2 (reiterating to

Plaintiffs' counsel that Vail Health had agreed not to object to subpoenas, but stating that it

would be up to the court to resolve the issue because "Plaintiffs have [instead] opted to proceed

with a motion to compel against Vail Health"). Now, at this late stage in this six-year-old case,

with a motion for summary judgment awaiting a decision and a trial date set, *see* ECF Nos. 528,

605, reopening discovery to permit Plaintiffs to issue subpoenas for the personal devices of third

parties—the very thing Plaintiffs refused to do two years ago when they were squarely

confronted with the issue—stands to cause significant disruption to the court's schedule and

further delays in this long-running case, thus prejudicing Vail Health and also the third parties

who would be targets of Rule 45 subpoenas.

Had Plaintiffs chosen to go the Rule 45 subpoena route two years ago, rather than

insisting that Vail Health exercises control over the third-party devices (which Plaintiffs have

failed to establish), there would have been sufficient time for the court to work through the likely

objections to those subpoenas and to issue informed rulings balancing the rights of all concerned.

The court suspects that Mr. Shannon, Ms. Kirchner, and Mr. Cook would have interposed

objections, and that the court would have been called on to resolve disputes, say, about the

production of their personal devices to a third party for forensic imaging. Two years ago would

have been the time to address those sensitive and complex matters. While necessarily time-

consuming, that process would have comported with the interests of justice and efficiency. *See*

*Zawadzki v. Cmty. Hosp. Ass'n*, No. 09-cv-01682-LTB-MEH, 2010 WL 3085719, at *5 (D.

Colo. Aug. 6, 2010) (finding that, "in the interests of justice and efficiency, the Plaintiff should

attempt to obtain the file from the entity claiming sole possession of it in accordance with Rule

45," thus ensuring "proper process through federal law and rules"). At this late stage of the case,

however, the court respectfully finds that a request that these individuals produce their personal

devices to a third party for an unspecified amount of time—the only reasonable means by which

relevant texts, if any, might be retrieved—is both overly burdensome and calculated to trigger

additional disputes that will extend this litigation into the foreseeable future and beyond.

Based on this record, the court deems it appropriate to exercise its discretion to find that

the Sixth Motion to Compel—filed eighteen months after a discovery deadline which expired

more than four years ago—was untimely. *Norton v. City of Marietta, Okla.*, 432 F.3d 1145, 1156

(10th Cir. 2005) ("It is clear from the district court docket sheet that plaintiff filed his motion to

compel well after the close of discovery and only two days before the pre-trial conference. Under

these circumstances, we cannot conclude that the district court abused its discretion in denying

plaintiff's late motion."); *Mollinger-Wilson v. Quizno's Franchise Co.*, 122 F. App'x 917, 923

(10th Cir. 2004) (holding that trial court had discretion to decide that motion to compel seeking

additional depositions was untimely because the deadline for discovery had expired)[8]; *see also*

---

[8] *Accord, e.g., King v. IC Grp., Inc.*, 743 F. Supp. 3d 1346, 1356 (D. Utah 2024) (denying a
motion to compel as untimely where "[t]he operative scheduling order closed fact discovery on
May 1, 2023, but King filed this motion almost seven months later on November 29, 2023—after
the court entered its summary judgment order," and recognizing that "courts retain discretion to
determine whether a motion 'is too tardy to be considered'") (footnotes and citations omitted)
(quoting *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 681 (10th Cir. 2012);
*Cash Today, LLC v. MTE LLC*, No. 21-2360-EFM-RES, 2023 WL 2498922, at *6 (D. Kan. Mar.
14, 2023) (denying motion to compel as untimely because parties waited until day discovery
closed to schedule a discovery conference for a discovery dispute that arose a year before);
*Nelson v. Beuchler*, No. 2:18-cv-00189, 2020 WL 9809993, at *2 (D. Utah June 16, 2020)
(finding motions to compel untimely where the motions were filed "slightly less than a year after
Defendants provided discovery responses and over three months after the close of fact

*Kenno v. Colo. Governor's Office of Info. Tech.*, Nos. 21-1353, 21-1434, 2023 WL 2967692,

at *7 (10th Cir. Apr. 17, 2023) ("'[D]iscovery rulings are within the broad discretion of the trial

court,' and [the Tenth Circuit Court of Appeals] will not disturb them absent 'a definite and firm

conviction that the lower court made a clear error of judgment or exceeded the bounds of

permissible choice in the circumstances.'") (quoting *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373,

1386 (10th Cir. 1994)), *cert. denied*, 144 S. Ct. 696 (2024).

Accordingly, the Sixth Motion to Compel is respectfully **DENIED** for this additional

reason.

### C.    Good cause is lacking to reopen discovery now.

While the Special Master found that Vail Health lacked custody or control over the texts

of third parties, and that the Sixth Motion to Compel was untimely because "Plaintiffs could

have served Rule 45 subpoena[s] during the discovery period," Recommendation at 4-6, the

Master nevertheless proceeded to recommend that Plaintiffs be allowed to serve Rule 45

subpoenas on Mr. Shannon, Ms. Kirchner, and Mr. Cook. *Id.* at 10-11 (finding such discovery

"proportionate to the needs of this case"). This court respectfully declines to adopt that holding,

which is inconsistent with the Master's overarching analysis of a record that does not support the

reopening of discovery for the purpose of issuing subpoenas that Plaintiffs could have pursued

two years ago.

---

discovery"); *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB-ADM, 2020 WL
5057482, at *1 (D. Kan. Sept. 2, 2020) (finding no basis to compel further production of
contracts "because they were not subject to any pending discovery request during the discovery
period," and plaintiff waited until months after the discovery deadline and in the midst of
multiple rounds of revisions to the pretrial order to request the documents).

The court may modify a scheduling order upon a showing of good cause. Fed. R. Civ. P. 16(b)(4). Whether to modify a scheduling order "to extend or reopen discovery is committed to the sound discretion" of this court. *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987) (citations omitted). When exercising its discretion, the court considers the following factors: (1) whether trial is imminent; (2) whether the request to reopen or extend discovery is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the Court; (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the Court; and (6) the likelihood that the discovery will lead to relevant evidence. *Id.* (citations omitted). No factors support reopening discovery at this late stage of the litigation.

First, an eight-day trial is set in February 2026, and given the busy docket of this United States District Court, a time-consuming fight involving subpoenas seeking access to the personal cell phones of third parties—and this court has no doubt there will be a fight—likely will result in the loss of this trial date and the probable postponement of the trial for a significant period of time. With regard to the second and third factors, Vail Health opposes the reopening of discovery, and the court finds that Vail is prejudiced by further prolonging this six-year-old case by deferring resolution of Vail's fully-briefed motion for summary judgment and further delaying the trial.

Fourth, and critically, Plaintiffs have not shown that they have been diligent in attempting to meet discovery deadlines. Even in 2023, when discovery had been closed for more than a year, Plaintiffs had an opportunity to pursue the subpoenas at that time with the support of Vail's newly-retained counsel. *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009) ("Demonstrating

good cause under [Rule 16(b)(4)] 'requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay.'") (quoting *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994)). The record here is devoid of any adequate explanation from Plaintiffs as to why they did not avail themselves of the opportunity to pursue the subpoenas two years ago. Fifth, the record makes evident that Plaintiffs knew of the existence of the texts in advance of the close of discovery in December 2021 and, certainly, by the time they were discussing procurement of the texts with Vail Health.

Finally, this court is unable to conclude that the potential relevance of the third-party texts is of such magnitude as to warrant opening the door to a discovery dispute that will derail the progress of this case, and Plaintiffs' decision not to timely pursue the texts by means of the appropriate legal process bolsters that conclusion. Moreover, the record shows that Plaintiffs have received other forms of communications from these individuals, indicating that the texts may be of minimal incremental evidentiary value. Plaintiffs do not dispute that Vail Health has searched its systems and produced "the emails of all three individuals at issue in the motion," or that Vail collected and searched emails for other custodians. *See* Vail Health's Objections at 4 (statement by Vail Health that it collected "emails from [its] system for nine additional individuals requested by Plaintiffs, including supplemental collections for emails of Mr. Shannon on Vail Health's system; the use of search terms requested by Plaintiffs over the email files of 13 individuals including Mr. Shannon, Ms. Kirchner, and Mr. Cook, including on topics that the Special Master denied Plaintiffs' requested discovery"). Neither have Plaintiffs argued that access to texts on the personal devices of Mr. Shannon, Ms. Kirchner, or Mr. Cook was necessary for them to make a complete response to Vail Health's motion for summary judgment.

*See* ECF No. 543 (Plaintiffs' response to the motion for summary judgment); ECF No. 604 (Plaintiffs' surreply); *cf. Carbajal*, 2015 WL 7450269, at *7 (concluding that "[d]iscovery should not be reopened prior to Plaintiff filing Responses to the Motions for Summary Judgment simply to give him an opportunity to fill late-detected holes in discovery").

This record does not compel a finding of good cause. Nor does it prompt this court to invite the negative consequences certain to flow from reviving a complex discovery issue in this notoriously contentious case—including an inevitable fight about the forensic analysis and imaging of personal devices, that, but for Plaintiffs' recalcitrance, could have been addressed long ago. *See* Fed. R. Civ. P. 16(b)(4) (permitting modification of a scheduling order "only for good cause and with the judge's consent"); *see also* ECF No. 512 at 2 (October 10, 2023 order by Judge Crews stating that "[t]he Court will entertain motions to amend the above schedule, only upon a showing of good cause").

The court additionally finds that this late-stage discovery is not proportional to the needs of the case. *Cf.* Recommendation at 8-9 (concluding that discovery of the texts is "necessary and proportionate to the needs of the case). The Special Master's finding of proportionality rests, in significant part, on the premise that Vail Health affirmatively obstructed Plaintiffs' access to the texts. *See id.* at 8 ("Hint-that is why this issue has been so hard-fought by Vail Health and its counsel for years."). This court is compelled to reach a different conclusion based on the factual record underlying the dispute about the texts.

As that record demonstrates, when the issue of the texts explicitly came to the fore in 2023, Vail Health did not resist the production of the texts based on their content or whether the texts helped or harmed Vail's position in this lawsuit. Rather, counsel for Vail Health told

27

Plaintiffs' counsel (and argued in response to the Sixth Motion to Compel) that Vail did not have the *legal ability* under Rule 34 to force third parties to turn over texts located on their personal devices. It is also apparent from the record that, at the time of the discussions about the texts, Vail sought to facilitate Plaintiffs' ability to obtain the texts by emphasizing that counsel must either work with another attorney to obtain the voluntary production of the texts, or failing that, invoke the Rule 45 subpoena process—notably, without objection from Vail Health. Plaintiffs refused to take either path, thus rebuffing the standard procedure for obtaining discovery from third parties in a timely fashion. This record does not plausibly indicate that Vail Health thwarted Plaintiffs' access to the texts, or that Vail Health's actions in 2023 somehow justify the extremely late-stage issuance of subpoenas Plaintiffs demand now.

For these reasons, the court respectfully rejects the Special Master's findings regarding relevance and proportionality with regard to the text messages and declines to permit service of subpoenas on Mr. Shannon, Ms. Kirchner, and Mr. Cook at this advanced stage of the case—years after the discovery period expired and after Plaintiffs expressly ignored Vail's urging to utilize the Rule 45 procedures.

## CONCLUSION

Consistent with the foregoing, it is respectfully **ORDERED** as follows:

Plaintiffs' Partial Appeal of Special Master's Report on Plaintiffs' Motion to Compel #6 to Produce Text Messages, ECF No. 562, is **OVERRULED**;

Defendant Vail Clinic Inc.'s Partial Appeal of the Special Master's Report and Recommendation Regarding Motion to Compel No. 6, ECF No. 563, is **SUSTAINED**;

The Special Master's Report and Recommendation Regarding Motion to Compel No. 6,

ECF No. 559, is **ADOPTED IN PART**; and

      Plaintiffs' Rule 37 Motion to Compel #6 Relating to Text Messages, ECF No. 485, is

**DENIED**.

      The court further **ORDERS** that the responsible parties pay, in full, any outstanding

invoices issued by the Special Master **on or before <u>May 19, 2025</u>**.[9]

DATED: April 18, 2025            BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

[9] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").