**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-2075-WJM-SBP

SPORTS REHAB CONSULTING LLC, a Colorado limited liability company, and
LINDSAY WINNINGER, an individual,

      Plaintiffs,

v.

VAIL CLINIC, INC., a Colorado nonprofit corporation, d/b/a Vail Health,

      Defendant.

_____

**ORDER GRANTING IN PART AND DENYING IN PART
VAIL HEALTH'S MOTION FOR ATTORNEYS' FEES AND RELIEF
PURSUANT TO THE COURT'S INHERENT AUTHORITY AND 28 U.S.C. § 1927**

_____

This is a seven-year-old antitrust case involving only two plaintiffs and a single

defendant.  Antitrust cases are notoriously challenging in the best of circumstances, but

this one became increasingly and needlessly arduous for one primary reason: the

lawyers' inability to work collegially and collaboratively.

Defendant Vail Health, Inc. ("Vail Health") contends that this breakdown was the

fault of Plaintiffs Sports Rehab Consulting LLC and Lindsay Winninger (jointly,

"Plaintiffs") and, in particular, their counsel, Alan Kildow and Sonya Braunschweig.

Accordingly, it seeks $2,267,218.35 in attorneys' fees, to be recovered jointly and

severally from Plaintiffs and their counsel, and other equitable relief pursuant to the

Court's inherent authority and 28 U.S.C. § 1927 ("Motion").  (ECF No. 636.)

1

Plaintiffs, for their part, predictably blame Vail Health as being responsible for the breakdown, as has been the theme throughout this action.  (*See, e.g.,* ECF No. 648 at 2 ("Vail Health's motion rests on a false premise—that Plaintiffs and their counsel were the 'problem.'  The record shows differently.").)  As such, they request that the Motion be denied in its entirety.  (*Id.*)

After a thorough and very time-consuming review of the record, coupled with its close familiarity with all facets of this litigation, the Court broadly is of the view that attorneys Kildow and Braunschweig were the primary source of the acrimony throughout this action.  Over the course of several years, these two attorneys engaged in vexatious behavior that has been repeatedly documented orally and in writing by four judicial officers.  This behavior resulted in the multiplicity of judicial proceedings throughout the action.  As a result, Vail Health is entitled to recover from Plaintiffs' counsel—but not Plaintiffs themselves—some of the fees it needlessly spent defending this action, as outlined below.

In all, then, the Motion is granted in part and denied in part.

## I.    OPENING REMARKS

Before going any further, the Court must already pause to express its frustration with both parties, but particularly Vail Health—the movant in this matter—for failing to appropriately lay out in its Motion the pertinent factual and procedural background of the issues raised therein.  To be sure, Vail Health lays out an abundant number of facts in three of its counsels' affidavits in support of the Motion.  (ECF No. 636-1 (Rothstein Affidavit, 44 pages); ECF No. 636-23 (Cook Affidavit, 7 pages); ECF No. 636-27 (Rudolph Affidavit, 9 pages); ECF No. 651-1 (Rothstein's Reply Affidavit, 14 pages).)

2

Plaintiffs and their counsel include a plethora of facts in their counsels' declarations as well.  (ECF No. 648-1 (Kildow Declaration, **108 pages**); ECF No. 648-24 (Braunschweig Declaration, 39 pages); ECF No. 648-45 (Winninger Declaration, 20 pages).)

But the parties' recounting of the facts of this case throughout their *briefs* include mere abbreviated summaries of what the lengthy attorney affidavit/declarations lay out. (*See* ECF No. 648-1 (it bears repeating that Kildow's declaration is ***108 pages long***).) The undersigned's practice standards do not explicitly prescribe page limits on attorney declarations in support of an attorney fee motion.  Nor does Local Rule 54.3(a)–(b), which simply states that "a motion for attorney fees shall be supported by affidavit" and, as relevant here, "include the following for each person for whom fees are claimed:" "a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed."

In the Court's view, however, both parties' lawyers used their supporting affidavits/declarations to circumvent the undersigned's practice standards regarding page limits for attorney fee motions.  *See* Revised Practice Standard III.C.1 (limiting motions for attorney fees to 15 pages).  Accordingly, while the Court has reviewed the declarations at a high level to competently lay out the Pertinent Background and Analysis sections of this Order, it declines to scour the hundreds of pages of facts laid out in the declarations, and their corresponding responses, to try to understand what each legal claim specifically entails.  *See U.S. v. Mudekunye*, 646 F.3d 281, 298 (5th Cir. 2011) ("Judges are not like pigs, hunting for truffles.").  Vail Health should have

included those facts in its Motion and sought page extensions if it had more to include than permitted by the undersigned's practice standards.[1]

With all this said, the Court proceeds to lay out the pertinent background of this case.

## II.    PERTINENT BACKGROUND

This contentious antitrust case came to a close in September 2025 when the Court granted summary judgment in Vail Health's favor on all of Plaintiffs' claims. (ECF No. 628.) That summary judgment Order is currently on appeal before the Tenth Circuit Court of Appeals. (ECF No. 632.) The Court assumes the parties' familiarity with those general background facts by way of that summary judgment Order and incorporates those facts herein. (ECF No. 628.)

Regrettably, however, that dispositive order did not (at least temporarily) resolve the proceedings before this Court. Vail Health now moves to recover $2,267,218.35 (which constitutes about a fourth of the fees it has incurred thus far) because of Plaintiffs' and their counsel's behavior throughout this action. (ECF No. 636.) To give context to the Motion, the Court must go back in time and chronicle the pertinent parts of what one judicial officer has described to be the "tortuous procedural history of this action."[2] (ECF No. 610.)

---

[1] The Court recognizes that Plaintiffs sought an extension to file a longer response, and Vail Health a longer reply. (ECF No. 642.) But that does not justify smuggling over a hundred of pages of facts *into the declarations*.

[2] This quote belongs to United States Magistrate Judge Susan Prose. To avoid confusion regarding the several judicial officers who served throughout this action, however, where appropriate, the Court provides attribution only in footnotes.

Plaintiffs initiated this action in July 2019.  (ECF No. 1.)  At that time (and for approximately the next three and a half years), Vail Health was represented by Davis Graham & Stubbs LLP.  (ECF No. 470.)  In October 2019, Plaintiffs issued their First Set of Requests for Production of Documents.  (ECF No. 485-7.)  But Vail Health did not immediately respond to these production requests because the Court had not yet entered a scheduling order authorizing discovery.  Instead, in January 2020, Vail Health moved to stay discovery pending resolution of its motion to dismiss.  (ECF No. 49.)  The Court granted the motion to stay in April 2020.  (ECF No. 53.)

In August 2020, the Court denied the motion to dismiss and lifted the stay of discovery.  (ECF No. 55.)  Afterwards, the Court directed the parties to confer and agree on deadlines for discovery and dispositive motions.  (ECF No. 67.)  "As with seemingly every single thing in this litigation, the parties could not agree, and so the court itself finally was obliged to pick the operative dates."[3]  (ECF No. 610 at 3.)  In an October 2020 scheduling order, then-United States Magistrate Judge Gordon Gallagher, who presided over the discovery matters in this case from July 2019 through April 2023 (ECF No. 461), ordered that fact discovery would conclude in August 2021; affirmative and rebuttal expert deadlines would lapse in September 2021 and November 2021; and dispositive motions would be due in February 2022.  (ECF No. 71 at 24–26.)  Judge Gallagher extended these deadlines several times (ECF Nos. 117, 124, 126, 206), with

---

[3] Per Judge Prose.

the fact discovery deadline (which is particularly pertinent to the Motion) ultimately being

set for December 2021.[4]  (ECF No. 242.)

On October 9, 2020, the same day the Court entered the scheduling order, Vail

Health responded to the production request that Plaintiffs had originally tendered a year

earlier.  (ECF No. 495.)  At that point, however, discovery had "fallen off the rails,

degenerating into a plethora of disputes which Judge Gallagher took up at a discovery

dispute conference on March 30, 2021."[5]  (ECF No. 610 at 4.)  At that discovery

conference, Judge Gallager described the state of affairs as follows: "[I]t became

apparent during the hearing, after about ninety minutes, that the parties had not

sufficiently conferred and disagreed on a large portion of the issues, areas of the law,

and the issues that pertained to the State Court Action."  (ECF No. 105 at 4.)

Ultimately, in June 2021, Judge Gallager granted Vail Health's motions for a protective

---

[4] Notably, although Plaintiffs largely blame Vail Health throughout its papers for prolonging the length of this case, most of these extension requests were *jointly* filed by the parties, except for the last one, which was filed *by Plaintiffs* and *opposed by* Vail Health.  (ECF No. 242.)

Furthermore, Judge Gallagher noted that, contrary to Plaintiffs' allegations that "Defendant Vail Health has not fulfilled its discovery obligations, as previously noted by the District Judge, this Court does not discern any abusive discovery practices by Defendant Vail Health."  (ECF No. 242 at 4.)  He continued: "Rather, this Court finds that Plaintiffs have not been diligent in obtaining discovery within the guidelines of the Scheduling Order.  It is uncontroverted that Plaintiffs delayed progress in the case by four months, filed this motion to amend on the last business day before the deadline for fact discovery, and created the circumstances that now require this Court to expedite its decision to extend the deadline for expert disclosures over the Thanksgiving weekend."  (*Id.* at 4–5.)

While Plaintiffs stress that they prevailed in subsequent motions practice before the Special Master and Judge Gallagher himself, the Court credits the above quoted language as reflecting positively on Vail Health's counsel's discovery efforts, at least during the early stages of this action.

[5] Per Judge Prose.

order and to quash a subpoena issued to an individual related to the parties' related

state court action.  (*Id.*)

Displeased with Judge Gallagher's decision, Plaintiffs filed a "Motion Seeking the

Intervention of Judge Martinez in Discovery Disputes Under Practice Standard II.C."

(ECF No. 97.)  Therein, Plaintiffs averred that "discovery ha[d] gone wildly astray

through abusive discovery tactics of Defendant Vail Health." (*Id.* at 2.)  Plaintiffs also

blamed Judge Gallagher, complaining that his discovery procedures "prevented [them]

from filing any motions to compel because such motions are not authorized by the

Magistrate Judge's practices unless, and until, the Magistrate Judge authorizes such

motions, which is antithetical to the rules of civil procedure."  (*Id.* at 8.)  Plaintiffs' attack

on Judge Gallagher then turned personal: They said that "the intervention of this Court,

with its knowledge of antitrust law, is desperately needed in this case." (*Id.* at 3.)

Plaintiffs added that "it is necessary to have a referee grounded in basic antitrust law" to

move this case forward, and that "if the Magistrate Judge is not well grounded in at least

some of the basic principles of antitrust law," they will be unable to meet their discovery

deadline, and discovery "will drag on interminably."  (*Id.* at 10–11.)  For these reasons,

Plaintiffs essentially asked the undersigned to substitute himself for Judge Gallagher in

presiding over the discovery disputes in this case.  (*Id.*)

The undersigned rejected Plaintiffs' request to remove Judge Gallagher from

overseeing the discovery proceedings.  In doing so, the Court opened its Order by

"remind[ing] counsel for Plaintiffs of the undersigned's power under 28 U.S.C. § 1927,"

and even quoted the relevant language of that statute for their reference.  (ECF No. 113

at 4.)  As to the merits of Plaintiffs' request, the Court pointed out that, contrary to

Plaintiffs' complaint that they had "received virtually no discovery to date," Judge

Gallagher's scheduling order permitted the parties to access discovery from the related

state court action, which at that time was over four years' old.  (*Id.* at 5.)  Indeed, the

Court remarked, the docket sheet for the state action was over 350 pages long and

revealed that these parties "had produced more than 65,000 pages of documents,

conducted scores of depositions, and had approximately 80 motions adjudicated."  (*Id.*)

"Overall," the Court declared, it "discern[ed] no abusive discovery practices by Vail

Health."  (*Id.* at 6.)

The undersigned felt compelled, however, to once again address the "the highly

unprofessional disparagement of Judge Gallagher by Plaintiffs' counsel in the Motion."

(*Id.*)  The Court recounted "that Judge Gallagher felt forced to end one discovery

conference in this case early due to Plaintiffs' counsel's unprofessional conduct;

specifically, Plaintiffs' counsel was not listening to Judge Gallagher, would not stay

silent, and came perilously close to contempt of court."  (*Id.*)  The Court made clear to

the parties that it took "extreme umbrage at Plaintiffs' disparaging statements about a

fellow judicial officer."  (*Id.*)

Finally, the Court noted "Plaintiffs' statement that the antitrust legal issues in Vail

Health's objections to their discovery requests 'will undoubtedly need to be addressed

by the Court on appeal from any formal decision by the Magistrate Judge.'"  (*Id.* at 7.)

Even as early as June 2021, the Court gathered that "it appears as though Plaintiffs

have decided to appeal *any* ruling by Judge Gallagher."  (*Id.*)  After all, Plaintiffs had

already objected to two of Judge Gallagher's discovery orders.  (*Id.*)  The Court

stressed that it took "strong exception to what appears to be a preemptive, strategic

8

decision by Plaintiffs to reflexively appeal any and all discovery orders." (*Id.* at 7–8.)
The Court closed by again putting "Plaintiffs and their counsel [] on notice that if they file
meritless objections to Judge Gallagher's orders, the Court will seriously consider the
entire range of sanctions available to it under the authority cited above, including
without limitation the imposition of significant monetary sanctions directly on Plaintiffs
and/or their counsel." (*Id.* at 8.)  The Court also "separately mail[ed] a copy of this
Order on Plaintiffs individually." (*Id.*)

Unfortunately, the Court's repeated admonishments to Plaintiffs and their counsel
did not solve the problem.  Just 11 days after the Court entered this Order, the Court
entered an Order overruling Plaintiffs' objection to one of Judge Gallagher's discovery
orders, again having to address their counsel's bad behavior.  (ECF No. 118.)  In
particular, the Court observed that "Plaintiffs again disparage[d] Judge Gallager by all
but accusing him of outright bias in Vail Health's favor." (*Id.* at 5 (quoting ECF No. 108
at 11 ("The Magistrate Judge has been extraordinarily tolerant and generous to Vail
Health, giving them everything they ask for (and more), but Plaintiffs' subpoena to take
a 1-2 hour deposition to preserve the trial testimony of a retired, court-appointed expert
is another matter altogether.").))  As to this new attack on Judge Gallagher, the Court
said the following:

> The Court will not tolerate repeated meritless arguments and
> *ad hominem* attacks against a fellow judicial officer.  For the
> second time in one month, the Court reminds Plaintiffs'
> counsel of the expectations of professionalism in this District
> Court including, without limitation, avoiding altogether future
> meritless objections to or appeals from Judge Gallagher's
> discovery orders.  *For the second, and final, time, Plaintiffs'*
> *counsel is on notice that if he persists in this type of*
> *behavior, he will expose himself personally, and/or jointly*

> *and severally with his clients, to individual or joint liability for substantial economic sanctions.*

(*Id.* at 6 (emphasis added).)

In June 2021, Judge Gallagher issued a Notice and Order Regarding Appointment of Special Master, in which he made the following observations:

> This Court has already documented the numerous hearings and discovery disputes that have already occurred and how the parties' inability to confer has hindered this case from progressing in a timely fashion.  In a prior Order, this Court determined that Plaintiffs' counsel attempted to circumvent this Court's Scheduling Order and the state court's Forensic Protocol Order in addition to being non-responsive to Defendant's requests to confer.  (D. 105).  The District Court, in its most recent Order, highlighted how in a prior discovery conference, the undersigned was forced to end a discovery conference due to Plaintiffs' counsel's unprofessional conduct.

(ECF No. 113 at 6.)  Based on these events, the Court appointed the Honorable W. Terry Ruckriegle as Special Master pursuant to Federal Rule of Civil Procedure 53. (ECF No. 123.)

Still, the appointment of the Special Master did not slow Plaintiffs down.  Plaintiffs filed five motions to compel, which Judge Gallagher referred to the Special Master.  The first five motions to compel were titled as follows:

1. "Plaintiffs' Rule 37 Motion to Compel #1 Relating to Relevant Geographic Market" (ECF No. 127);

2. "Plaintiff's' Rule 37 Motion to Compel #2 Relating to Vail Health's Monopoly Power" (ECF No. 129):

3. "Plaintiffs' Rule 37 Motion to Compel #3 Relating to RFP No. 15 (Board Documents), Interrogatory Nos. 12-13, 20-21, and 23 (Identification of Potential

Witnesses), Failure to Produce Privilege Log, and Redacted Documents" (ECF No. 132);

4. "Plaintiffs' Rule 37 Motion to Compel #4 Relating to Joint Ventures and Other Combinations" (ECF No. 157); and

5. "Plaintiffs' Rule 37 Motion to Compel #5 to Produce Documents on Vail Health's Inadequate Privilege Log, or Alternatively, *In Camera* Review at Vail Health's Cost" (ECF No. 195).

These five motions to compel were filed between August 2021 and October 2021—*i.e.*, before the December 2021 fact discovery deadline had expired.  From there, "[d]uring the first half of 2022, the parties continued to submit supplemental briefing on the first five motions to compel, while addressing other non-dispositive matters and awaiting recommendations from the Special Master on the pending motions."  (ECF No. 610 at 8.)

Between July 2022 and October 2022, the Special Master issued Recommendations on the first five motions to compel.  (ECF Nos. 362, 381, 382, 383, 398.)  In his Recommendation as to the second motion to compel, the Special Master remarked: "It often seems that Vail Health should have more information on a given topic than it has produced, and there may even be indications in some documents that Vail Health actually had, at some point, additional responsive information that it now claims to lack."  (ECF No. ECF No. 381 at 3.)  The parties filed objections to each of the motions to compel.  (ECF Nos. 367, 386, 387, 408.)

In March 2023, Judge Gallagher entered a 30-page Order overruling the parties' objections and adopting the Special Masters Recommendations as to the first five

motions to compel.  (ECF No. 457 at 29.)  As such, he directed Vail Health to "produce

the items directed by the Special Master within 14 days of the date of this Order."  (*Id.*)

According to Plaintiffs, as a result of their success on the first five motions to compel,

Vail Health was required to produce more than 110,000 pages of documents in less

than six months—far exceeding what it produced during two years of discovery."  (ECF

No. 648 at 2.)

In April 2023, after Judge Gallagher was elevated to United States District Judge,

then-United States Magistrate Judge S. Kato Crews began overseeing discovery in this

case.  (ECF No. 461.)  During that same month, Vail Health substituted its counsel for

Arnold & Porter Kaye Scholer LLP ("Arnold & Porter").  (ECF No. 470.)  Vail Health

avers that it "retained new counsel midway through this case . . . with the hope it might

restore a professional relationship with Plaintiffs and their counsel following the tumult

and costs stemming from the breakdown in the relationship with prior counsel."  (ECF

No. 636 at 2.)  Also that same month, Judge Crews held a hearing wherein he clarified

certain aspects of the Special Master's recommendations on the first five motions to

compel, as well as the March 2023 Order by Judge Gallagher.  (ECF No. 468.)

Vail Health's new counsel "represented to Judge Crews that it intended to

aggressively meet—and go beyond—its discovery obligations arising out of the Special

Master's Recommendations and Judge Gallagher's Order regarding the same . . . ."

(ECF No. 362.)  Relatedly, Vail Health detailed its

> efforts in that regard included: the collection of emails from
> Vail Health's system for nine additional individuals requested
> by Plaintiffs, including supplemental collections for emails of
> Mr. Shannon on Vail Health's system; the use of search
> terms requested by Plaintiffs over the email files of 13

individuals including Mr. Shannon, Ms. Kirchner, and Mr. Cook, including on topics that the Special Master denied Plaintiffs' requested discovery; the rolling production of thousands of documents and the commitment to review of over 20,000 additional documents; the production of reams of additional patient data from outside the Vail Valley, including for a period after and beyond the Special Master's Recommendations on Motion to Compel 1 through 5; the targeted collection and production of specific records and reports identified by Plaintiffs; and the production of dozens of lease and research agreements, despite the Special Master's denial of Plaintiffs' request for this discovery. *See* ECF Nos. 484, 491.

*Id.* at 4–5 (cleaned up).

In July 2023—*i.e.*, over a year after fact discovery had closed under Judge Gallagher's October 2020 scheduling order—Plaintiffs filed a sixth motion to compel, this time seeking the production of text messages from the personal devices of three non-parties: Michael Shannon, who formerly served on the board of Vail Health; Doris Kirchner, a former CEO and Executive Director of Vail Health; and Will Cook, the current CEO of Vail Health. (ECF No. 485.) Extensive conferrals between the parties then ensued. Vail Health's counsel reminded Plaintiffs' counsel via e-mail that the text messages at issue had been "collected and produced . . . in the state court case," and that "[t]he state court production has been incorporated into" the instant case. (ECF No. 495-4 at 2.) Vail Health's counsel also made clear that Kirchner and Shannon were not their clients and had no "cooperation/indemnification agreements" with Vail Health, so it would be unable to produce their texts to Plaintiffs. (*Id.*) Vail Health's counsel specified:

We have addressed this issue. We do not speak for, nor represent, Mike Shannon or Doris Kirchner. They are represented by their own counsel, John McHugh. We

> previously advised you to reach out to him.  We previously
> offered as part of a global compromise not to object to a
> subpoena, except to the extent it implicated privileges or
> immunities.  You declined to even reach out to Mr. McHugh
> instead asking us to 'use our influence' with him.  When you
> shifted focus to Nico Brown, we offered to produce his text
> messages voluntarily to try to move forward.  Plaintiffs again
> declined to compromise.  As to the cooperation and
> indemnification query, we made clear that we do not think
> the existence or non-existence of any such agreements
> would change the analysis.  We are not aware of any
> agreements that would require Mr. Shannon or Ms. Kirchner
> to hand over their personal devices absent a subpoena.

(*Id.*)  Plaintiffs' motion to compel the text messages became ripe in September 2023.

(ECF No. 499.)  Judge Crews referred the motion to the Special Master.  (ECF No.

506.)

At this point in the case, fact discovery had long been closed and there was

undisputedly no operative scheduling order nor trial date set in place,[6] so Vail Health

sent Plaintiffs' counsel a proposed scheduling order.  (ECF No. 636-1 at 5.)  Over the

course of six weeks of conferral, Plaintiffs ultimately rejected Vail Health's proposed

scheduling order and instead returned its own "Statement Regarding Scheduling."  (*Id.*

at 6.)  This Statement contained several "Proposed Conditions for a Schedule,"

including requirements that Vail Health agree, as relevant here, to (1) not file any

summary judgment motions; (2) produce text messages of four Vail Health affiliates,

despite fact discovery having been closed since December 2021; (3) forego conducting

---

[6] The parties do not clearly explain why they did not (or were unable to) abide by the final iteration of the deadlines set by the October 2020 scheduling order.  It appears that Judge Gallagher amended the scheduling order for the final time in November 2022, setting the final deadline (the dispositive motion deadline) to expire in March 2022—*i.e.*, before the summer of 2023.  The Court assumes that this deadline was not honored because of the parties' numerous discovery disputes, including the five motions to compel.

14

expert depositions; and (4) forego filing *Daubert* motions.  (*Id.* (citing ECF No. 484-3).)

In other words, Plaintiffs refused to consent to a scheduling order unless Vail Health

acquiesced to these and other demands.

"Unwilling to sacrifice substantive rights in return for a case schedule," *id.*, Vail

Health was forced to ask Judge Crews to intervene and reissue a scheduling order.

(ECF No. 484.)  In October 2023, Judge Crews held a hearing on Vail Health's motion.

(ECF No. 521.)  Notably, he opened the hearing by admonishing the parties, in relevant

part, as follows:

> I need you all to work on distilling down your arguments, this
> includes I need you all to up your game.
>
> And when I say up your game, I'm talking about your
> professionalism.  Your pleadings are very vitriolic.  There's a
> lot of blame game that takes place, each side pointing the
> finger at the other.  It sounds quite a bit whiny at times.  You
> know, there's a way to make your arguments and make
> credible arguments as to why the other side is responsible
> for any form of delay in the case without resorting to attacks
> and snide remarks and so forth *vis a vis* your opposing
> counsel.  So I expect better from each side.  I expect you to
> up your game with your professionalism.  When you include
> all of those things, it's a distraction for me.
>
> . . .
>
> I'm saying this further in part because you have a special
> master assigned to this case.  In my debrief with Judge
> Gallagher before he was sworn in as an Article III judge, he
> forewarned me about this case, the parties in this case the,
> issues he's had with counsel on the case leading to the
> appointment of a special master.  You know, we have over,
> well over—I don't know, well over 500 docket entries in this
> case, and so it doesn't appear—and I've been involved in
> this case only about six months since I've been assigned to
> it.

15

So I just, I need people to breathe. I need people to calm down. I need counsel to be professional, and I need you to see if you can change your decorum with each other as you work to resolve disputes. But more particularly with your filings. I need you to up your decorum with your filings. That will assist me in making rulings that will assist Judge Ruckriegel, to the extent things are referred to him, and that will assist the Article III judge, to the extent that we have objections that are made. And those objections go all the way up the line.

(*Id.* at 4–6.)

After extensive discussion with the parties, Judge Crews clarified the reach of the Special Master's rulings on the first five motions to compel. (ECF Nos. 512, 521.) The parties then turned to the scheduling order dispute. On this issue, attorney Kildow remarked:

Now, one of the things I want to point out. [Defense counsel] talks about, we have to have some guidelines on this and he's never been in a case where there have been no deadlines. I've been, in my brief career, Your Honor, never been in a case where we have had more discovery disputes. *And we will be filing a Rule 37 motion for sanctions for the delay and the cost of all of this.* The attorney's fees issues have all been left open by the Special Master. *I believe that this case is and will go down as the single greatest abuse of discovery in the reported cases in this judicial district.*

We have had roughly 6,000 pages of documents produced up until the date of the termination of the Davis Graham Law Firm, and since then, Vail Health has produced 109,000 pages. Now, [defense counsel] wants us to chop-chop. We're going to review 109,000 pages in a couple of months. And I have to say, Your Honor, the documents that are being produced are the nuggets, they are the documents that reveal what Vail Health has been about and what it has done over the course since 2015.

And I wasn't going to raise this, but in light of this issue of deadlines for the motions, *I had a discussion with [defense counsel] yesterday and I provided them with an email this*

16

> *morning saying we will be filing a motion to compel based on
> the crime [sic] fraud exception with Vail Health, and that will
> be filed shortly thereafter.*

(*Id.* at 44–46 (emphases added).)

Judge Crews then weighed in:

> All right.  So in the normal course I would—so first of all, no
> discovery, no new discovery should be occurring by either
> side.  In the normal course, yes, I wouldn't set a deadline for
> motions to compel, but in the normal course, what I would do
> is I would set deadlines along the lines of what [defense
> counsel] has requested.  It appeared to the Court based on
> your filings, which again, this is where kind of the vitriol and
> the fluff can get in the way of what it is you're actually hoping
> the Court, or trying to get the Court to understand.  It
> appeared that you each proposed competing schedules, so
> it looks like to the Court that there's some sort of agreement
> here on things like supplemental experts.
>
> Mr. Kildow, you propose—you end up in your chart putting
> September 29, which is what the defendants had proposed.
> So it looked to the Court as if you all had some semblance of
> conferring and everybody agreed that the things reflected in
> these charts that the Court needs to set those deadlines.
> And now that's not so clear as to whether or not—what
> you've agreed to or not.  And maybe that doesn't matter at
> this point.
>
> So what I will do is, I will order that no discovery should take
> place unless leave of court is granted.

(*Id.* at 46–47.)

Judge Crews closed the hearing by reiterating to the parties that they must "do
better in your shots you take at each other in your written pleadings.  And try to keep it
all focused—I mean, you all know the difference between presenting a case to a jury
and presenting a case to a judge, and these things you're putting in your written filings
are not persuasive at all to the Court."  (*Id.* at 55.)

The next day, Judge Crews entered a minute order reissuing the scheduling order and setting deadlines on any further motions to compel or motions for sanctions, "including Plaintiffs' potential motion to compel or for sanctions concerning (a) physical therapy documents and/or (b) the crime fraud exception." (ECF No. 512 at 1–2.) Judge Crews also set deadlines on a Rule 30(b)(6) deposition, completion of expert depositions, dispositive motions, and the final pretrial conference. (*Id.* at 2.) Yet again, Judge Crews reminded the parties, this time in writing, that "the Court expects them to confer in good faith and with professionalism, and to raise the standards and decorum of their conferrals." (*Id.* at 2.) In the end, Plaintiffs never filed a motion for sanctions, with respect to the crime-fraud exception or otherwise, despite asking the Court to extend the deadline to file such a motion (which the Court granted in part). (ECF Nos. 518, 523.)

In January 2024, after Judge Crews was elevated to United States District Judge, United States Magistrate Judge Susan Prose began overseeing discovery in this case. (ECF No. 527.) That same month, Vail Health moved for summary judgment. (ECF No. 528.) In April 2024, the Special Master issued his Recommendation finding that Plaintiffs' sixth motion to compel was legally flawed because it was untimely; Plaintiffs could have subpoenaed the texts of the nonparties while discovery was open; and Vail Health did not possess or control the personal devices of the nonparties at issue in the sixth motion to compel. (ECF No. 559.) Nevertheless, the Special Master went on to find that discovery of the text messages is "necessary and proportionate to the needs of the case," and therefore recommended "that Plaintiffs be allowed a very limited opportunity such as seven (7) days to pursue the remedy of Rule 45 subpoenas upon

18

Michael Shannon and Doris Kirchner to turn over their cell phones or specific text messages in this case." (*Id.* at 10–11.)

Both sides filed objections to various aspects of the Recommendation. (ECF Nos. 562, 563.) In a thorough 29-page June 2025 Order, Judge Prose sustained Vail Health's objection to the Special Master's Recommendation. (ECF No. 610.) In doing so, Judge Prose agreed with the Recommendation's conclusions that Plaintiffs' motion to compel was 18 months late and sought evidence to which it was not entitled to receive, at least not from Vail Health. (*Id.* at 7.) But Judge Prose overruled the Special Master's bottom line finding that discovery should be reopened so that Vail Health would be forced to procure and turn over the text messages anyway. (ECF No. 610 at 11.) On this point, Judge Prose found no good cause to do so because, among other reasons, the Court's docket could not accommodate yet another "time-consuming fight," which Judge Prose "ha[d] no doubt there w[ould] be." (*Id.* at 25; *see also id.* at 27 ("This record does not compel a finding of good cause. Nor does it prompt this court to invite the negative consequences certain to flow from reviving a complex discovery issue in this notoriously contentious case—including an inevitable fight about the forensic analysis and imaging of personal devices, that, *but for Plaintiffs' recalcitrance*, could have been addressed long ago.") (emphasis added).)

In May 2024, the parties attended a settlement conference before Judge Prose, which the undersigned had scheduled *sua sponte.* (ECF Nos. 539, 560.) But that conference was not successful and no settlement was reached. (ECF No. 560.)

In July 2024, after Judge Prose entered the Final Pretrial Order, the undersigned entered an Order stating as follows:

> This extraordinarily contentious dual-plaintiff, single-defendant piece of litigation has consumed vast amounts of toil and effort on the part of three U.S. Magistrate Judges, a Special Master, and one District Judge.  To date the docket of this case is comprised of an astonishing 584 filings by the parties, as well as substantive and minute orders of the four assigned judicial officers.
>
> *Of singular note in this regard, and the source of significant concern for the Court, are communications it has had with the Magistrate Judges in this case regarding the role Plaintiffs' lead attorney, Alan Kildow, has played in this case. The picture painted for the undersigned by the Magistrate Judges is one of a doggedly obstructionist attorney whose litigation tactics have unnecessarily and vexatiously multiplied the scope, duration, and costs of this action.*

(ECF No. 587 at 1–2 (emphasis added).)

In light of these circumstances, the Court put the parties on notice that it would "not set this matter for trial, undertake any further proceedings, or otherwise take any further judicial action in this case unless and until it is fully satisfied that they have earnestly and vigorously engaged in **good faith** efforts to successfully mediate a global resolution of all of their extant disputes."  (*Id.* at 2 (emphasis in original).)  The Court emphasized: "Given the abrupt and unprofessional manner in which the May 2024 settlement conference before Judge Prose was concluded, *this notice is brought to the particular attention of Attorney Kildow*."  (*Id.* (emphasis added).)  For these reasons, the Court ordered the parties to attend a three-day mediation and administratively closed the case.  (*Id.*)

In February 2025, the parties notified the Court that the mediation had failed.  (ECF No. 591.)  In March 2025, the Court lifted the administrative stay, reopened the

20

case, and set a status conference to discuss the Final Trial Preparation Conference and

Jury Trial.  (ECF No. 597.)

The Court held that status conference in April 2025, where it explored the length

of trial and related matters with the parties.  (April 10, 2025 Status Conference at 1–

20.)[7]  At the end of the hearing, the Court stated:

> For nearly 6 years now and from a distance, I have
> been made aware of the unduly, in my mind, to my mind,
> unduly combative, uncivil and at times frankly unprofessional
> manner in which counsel have done battle in this case.
> Well, folks, all of that comes to an end now.  You are no
> longer going to be throwing mud before each other before a
> Special Master, before a great guy, nice guy, then
> Magistrate Judge Gallagher, and great guy, nice guy, then
> Magistrate Judge Crews or before brand new Magistrate
> Judge Prose anymore.  You are now in front of me.  I am the
> presiding judge, and until this goes across the street, if it
> goes across the street, I and I alone, I have been on the
> bench now for over 14 years and my patience [*sic*] over the
> lack of civility on the part of counsel has been worn very,
> very thin.  I will not tolerate snarky opportunities in filings,
> written or oral, or any uncivil comportment towards each
> other in this courtroom or in any ancillary location, you may
> find yourselves from here on out.

(*Id.* at 20–21.)

The Court informed the parties that, in February 2024, the District of Colorado

had "adopted as a policy a code of civility of the American college of trial lawyers at this

time."  (*Id*. at 21.)  The Court then directed all lawyers participating in this case to

prepare "a written certification confirming that he or she has reviewed the code of civility

---

[7] The transcript of this hearing is unofficial and not filed on the Court's docket.  The Court quotes from the unofficial transcript that the Court Reporter provided the Court. The parties may seek an official transcript of this hearing for appeal purposes should they choose to do so.

of the American college of trial lawyers and agrees to be bound by the provisions of that code." (*Id.* at 21.)

Moreover, the Court again observed that "it has become almost a reflexive approach by both sides in this case to not accept an initial ruling from a magistrate judge or the special master and to interpose an objection to those rulings." (*Id.* at 22.) The Court warned the parties that, if a motion challenging a ruling or seeking reconsideration was filed, it must be "astoundingly superior," or the Court "will very seriously consider making a full award of attorneys' fees and costs to the other side in recompense for having to address your ill-advised reconsideration motion." (*Id.* at 22–23.) In accordance with the Court's directive at the status conference, the lawyers in this case, including Kildow and Braunschweig, filed certificates confirming their review of the Code of Pretrial and Trial Conduct. (ECF Nos. 611–18.)

As mentioned earlier, in September 2025, the Court granted summary judgment in Vail Health's favor on all of Plaintiffs' claims. (ECF No. 628.) At that point, given the storied history of this lawsuit, Vail Health attempted to broker a global resolution of this dispute with Plaintiffs: If Plaintiffs would forego appealing the summary judgment Order, initiating any further claims against Vail Health, and ceasing contact with representatives of Vail Health, Vail Health offered to forego the costs to which it was entitled under the summary judgment Order, as well as seeking attorneys' fees. (ECF No. 636-1 at 21.) "Vail Health also contacted the mediator who had handled the mediation ordered by the Court to ask for her assistance in bringing the case to conclusion." (*Id.* at 39.)

According to Vail Health, during "the initial meet and conferral wherein Vail Health proposed the walk-away resolution, Plaintiffs counsel was indignant in response" and "consistently cast aspersions and blame on Vail Health's prior counsel." (*Id.*) Following this initial meeting, Kildow e-mailed Vail Health's counsel an 8-page memorandum outlining what he viewed as the pertinent procedural history of the case and arguments for why he did not believe relief was available under 28 U.S.C. § 1927. (*See generally* ECF No. 636-12.)  Vail Health further avers that "Plaintiff Lindsey Winninger herself began repeatedly contacting Vail Health's CEO Will Cook, and the Managing Physician of its business partner The Steadman Clinic, demanding a meeting without lawyers so that she could air some unknown facts about the situation and that without that she would never resolve the case." (ECF No. 636-1 at 40.)

Kildow then e-mailed Vail Health's counsel challenging certain statements Arnold & Porter had made in a press release following the issuance of the Court's summary judgment order—specifically, that Arnold & Porter had "achieved a significant litigation success for Vail Health" in a case "seeking more than $25 million in damages"; that Plaintiffs had sought "steep damages subject to automatic trebling and attorneys' fees"; that the Court had awarded Vail Health "complete relief and substantial costs"; and that the Court's order "helps bring closure to years of litigation." (ECF No. 648-17 at 352.) In his e-mail, Kildow claimed that Arnold & Porter's claims constituted "misstatement[s]" "that require it be taken down from the Arnold and Porter website." (ECF No. 636-14 at 2.)  He specified that the "$25 million in damages" statement, and others, "constitute predation under Sherman Act § 2." (*Id.* at 3.)  Days later, Winninger e-mailed Cook similarly alleging that the press release "contains false and misleading statements about

23

me and my company . . . ."  (ECF No. 636-15 at 2.)  And in another e-mail from Kildow

to Vail Health's counsel, Kildow represented the following: "We also want to apprise Vail

Health that Plaintiffs will file a 28 U.S.C. sec. 1927."  (ECF No. 836-16 at 3.)

Ultimately, Plaintiffs rejected Vail Health's settlement offer.  The Court's summary

judgment order is currently on appeal before the Tenth Circuit Court of Appeals. (ECF

No. 241.)

In October 2025, Vail Health moved to recover the attorneys' fees it spent

beginning in April 2023 (when Arnold & Porter appeared in this case) and sought

equitable relief pursuant to the Court's inherent authority and 28 U.S.C. § 1927.  (ECF

No. 636.)  In support, Vail Health argues that Plaintiffs and their counsel's

unprofessional conduct warrant an award of sanctions.  (*Id.* at 7.)  Given this, Vail

Health seeks to recover its attorneys' fees in the amount of $2,267,218.35 from

Plaintiffs and their counsel, jointly and severally.  (*See generally id.*)  Vail Health also

asks the Court to prohibit "Plaintiffs' counsel and Plaintiff Winninger from email, text, or

in-person communications directly with Vail Health employees."  (*Id.* at 2.)

Relatedly, Vail Health sought leave to submit its counsel's billing records *ex parte*

for *in camera* review.  (ECF No. 637.)  In April 2026, the Court granted in part and

denied in part Vail Health's motion for *in camera* review.  (ECF No. 652.)  While the

Court opined that it had discretion to grant a motion for *in camera* review in these

circumstances, "given the extraordinary amount of fees Vail Health seeks, as well as the

fact that the Court would likely benefit from adversarial input as to the reasonableness

of Vail Health's billing records," the Court elected "to give Plaintiffs access to *some* of

Vail Health's billing records on a redacted basis."  (*Id.* at 4 (emphasis in original).)

24

Specifically, the Court directed Vail Health to "file unredacted copies of its counsel's detailed time records *ex parte* for the Court's *in camera* review as to all fees it seeks—including the categories listed below (ECF No. 636-1 at 27–34)—by no later than April 13, 2026." (*Id.* (emphasis omitted).)  The Court further directed Vail Health to file "redacted copies of its counsel's detailed billing records as to" its fees pertaining to the scheduling order dispute; the sixth motion to compel; and the threats of sanctions pertaining to allegations of criminal and fraudulent conduct." (*Id.* at 4–5 (emphasis omitted).)  The Court then ordered the parties to file supplemental briefs addressing "the issues raised by the billing records ordered produced above . . . ." (*Id.* at 5.)  The parties complied with the Court's directives.  (ECF Nos. 654, 655, 656, 657, 658.)

Hence, the Motion is fully ripe for the Court's resolution.

### III.    ANALYSIS

Pursuant to the Court's inherent authority and section 1927, Vail Health seeks $2,267,218.35 in attorneys' fees, which it contends it incurred as a result of Plaintiffs' and their counsels' vexatious conduct throughout this action.  (ECF No. 636.)  The Court agrees that Vail Health is entitled to recover attorneys' fees from Plaintiffs' counsel under these authorities, but will substantially reduce that amount as outlined below.

### A.  AUTHORITY TO SANCTION

Courts have certain indefeasible powers, including the "ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1255 (10th Cir. 2015) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)).  This power is implied, rather than explicit, because it

is necessary, "from the nature of [a court's] institution," in order to exercise all other powers. *Chambers*, 501 U.S. at 43. The Tenth Circuit has confirmed a district court's power "to impose attorney-fee sanctions upon a party for bad-faith misconduct," reasoning that this authority is based "on how the parties conduct themselves during the litigation . . . ." *Farmer*, 791 F.3d at 1255; *see also Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 766 (10th Cir.1997) ("[B]ad faith occurring during the course of litigation that is abusive of the judicial process undisputably*,* at the discretion of the court, warrants sanction through the charging of fees."). In assessing fees under inherent authority, a court "may take account of the court's inconvenience and the waste of judicial resources." *Mellott v. MSN Commc'ns, Inc.*, 492 Fed. App'x 887, 889 (10th Cir. 2012). A party ultimately controls whether sanctions will be imposed because they control their own conduct in litigation. *Farmer*, 791 F.3d at 1255. Still, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. 32, 44 (1991).

Courts have a "more limited power to assess fees and costs against an attorney" under 28 U.S.C. § 1927. *Id.* at 1257. Unlike a court's inherent authority to sanction, which "reaches beyond the multiplication of court proceedings and authorizes sanctions for wide-ranging conduct constituting an abuse of process," *id.*, section 1927 permits a court to assess fees only if it finds that "(a) the actions of the attorney multiply the proceedings, and (b) the attorney's actions are vexatious and unreasonable," *Shackelford v. Courtesy Ford, Inc.*, 96 F. Supp. 2d 1140, 1144 (D. Colo. 2000) (citation omitted).

26

Moreover, unlike the broader inherent authority to sanction, which authorizes a court to assess fees on both parties and lawyers, section 1927 only authorizes a court to assess fees on lawyers, not parties. § 1927. The Tenth Circuit has described section 1927 as involving an "extreme standard" that should be "strictly construed" to guard against "dampen[ing] the legitimate zeal of an attorney in representing his client." *Baca v. Berry*, 806 F.3d 1262, 1268 (10th Cir. 2015) (cleaned up) (citations omitted). A lawyer's objectionable conduct must have been the cause of the needless proceedings, "such that the conduct 'result[ed] in proceedings that would not have been conducted otherwise.'" *Id.* (quoting *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir.1997)).

Vail Health undisputedly seeks only compensatory sanctions, not punitive sanctions, so Plaintiffs and their counsel are entitled to "notice that such sanctions are being considered by the court and a subsequent opportunity to respond." *Dominion Video Satellite, Inc. v. Echostar Satellite, L.L.C.*, 430 F.3d 1269, 1279 (10th Cir. 2005) (quoting *Braley v. Campbell*, 832 F.2d 1504, 1514 (10th Cir. 1987)). In the context of a compensatory sanction, the sanction should go "no further than to redress the wronged party for losses sustained," rather than "impose an additional amount as punishment for the sanctioned party's misbehavior." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017).

Where a court imposes a sanction based on its factual finding that a litigant acted in bad faith, the Tenth Circuit requires that finding be supported by clear and convincing evidence. *Becker v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 2023 WL 5051167, at *6 (10th Cir. Aug. 8, 2023). The clear-and-convincing-evidence standard requires that

27

"evidence places in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable." *United States v. Valenzuela-Puentes*, 479 F.3d 1220, 1228 (10th Cir. 2007) (internal quotation marks omitted).

## B. PROCEDURAL ARGUMENTS

As an initial matter, the Court observes that Plaintiffs raise a number of procedural arguments in opposition to the Motion. Accordingly, before turning to the merits, Court addresses (and largely rejects) those procedural arguments.

### 1. FAILURE TO IDENTIFY THE PERPETRATOR OF OFFENDING CONDUCT

First, Plaintiffs argue that Vail Health fails to specifically identify the individual attorneys and parties who committed the offending conduct that is the subject of the Motion. (ECF No. 648 at 5.) This is fatal to the Motion, Plaintiffs assert, because due process requires that Vail Health "show the precise conduct as to each attorney and party and to quantify damages caused by each instance." (*Id.* (citing *United States v. Shaygan*, 652 F.3d 1297, 1319 (11th Cir. 2011).)

In its Motion, Vail Health acknowledges that "it is difficult to ascertain whether the conduct was driven by Plaintiffs' counsel or by Plaintiffs" but maintains that it "sought reasonably to delineate between conduct of Plaintiffs and counsel." (ECF No. 636 at 3, 4 n.2.) Similarly, in its Reply, Vail Health confirms again that, "[e]ven now, it is difficult to understand Plaintiffs' position on their involvement." (ECF No. 651 at 6.) Perhaps realizing that this lack of knowledge is problematic to its fee request, Vail Health submits that "counsel and Plaintiffs are subject at minimum to sanctions related to the settlement conference and mediation, and counsel is subject to sanctions as to the remainder of the conduct in which Plaintiffs apparently played no part." (*Id.* at 6–7.)

28

The Court agrees with Plaintiffs that Vail Health fails to sufficiently identify what sanctionable conduct they allegedly engaged in. Vail Health essentially concedes that it is unable to know exactly what role Plaintiffs played with respect to the sanctionable conduct in this case. And even if the Court were convinced that sufficient evidence showed that Plaintiffs played a meaningful role in the settlement conference and mediation, the Court is not convinced that the record sufficiently demonstrates, by clear and convincing evidence, that Plaintiffs or their counsel acted in bad faith during those proceedings, as the Court will later explain. Thus, even on Vail Health's own theory— that Plaintiffs can at least be held accountable for their participation in the settlement conference and mediation—its claim against them fails.

The Court rejects, however, Plaintiffs' argument that Vail Health has failed to sufficiently identify the vexatious conduct Kildow and Braunschweig engaged in. Preliminarily, the Court expresses doubt that the Tenth Circuit requires a district court to break down exactly which sanctionable conduct co-counsel individually engaged in when imposing fees against them under section 1927. In *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 886 F.3d 863, 871–74 (10th Cir. 2018), the Tenth Circuit affirmed a single section 1927 sanction figure against two attorneys without requiring the type of precision Plaintiffs urge here.

Even if that sort of analysis is required here, however, the record amply demonstrates each attorney's participation in the pertinent portions of the issues discussed in this Order. As for the scheduling order issue, for example, Braunschweig says in her declaration: "On July 17, 2023, the parties conferred about Vail Health's proposed schedule. *Mr. Kildow and I participated for Plaintiffs*." (ECF No. 648-24 at 13

29

(emphasis added).)  Both attorneys are listed on the signature block of the sixth motion to compel.  (ECF No. 485 at 15.)  Both attorneys argued at the scheduling conference held by Judge Crews, at which Kildow originally stated on the record his intention to file a motion asserting the crime-fraud exception.  (*See generally* ECF No. 521.)  And both attorneys participated at the mediation (if not also the settlement conference).  (*See* ECF No. 594 at 5 (confirming that "Alan Kildow, Sonya Braunschweig, Lindsay Winninger, and Brad Schoenthaler participated on behalf of Plaintiffs" at the mediation).)  Frankly, the Court has not identified anything in the record that would suggest that Kildow and Braunschweig weren't working in concert together throughout this action.  Tellingly, Plaintiffs' counsel do not even try to disaggregate their conduct in their papers either.[8]

Hence, the Court finds the record does not sufficiently support a conclusion that Plaintiffs themselves engaged in wrongdoing.  In contrast, however, the Court finds the record does confirm that attorneys Kildow and Braunschweig engaged in such sanctionable conduct.  As such, the fee awards outlined below shall be levied, on a proportionate basis, against Kildow and Braunschweig, and not Plaintiffs.

### 2.  TIMELINESS OF INHERENT SANCTIONS REQUEST

Second, Plaintiffs argue, in a single paragraph, that "[t]he conduct at issue arose long before judgment, so any request for sanctions under inherent authority is untimely because it was made after entry of judgment."  (ECF No. 648 at 5.)  Plaintiffs cite

---

[8] More broadly, Braunschweig attests in her declaration that she "work[ed] . . . on the discovery issues," including as to the first give motions to compel, during which the parties' professional relationship further deteriorated.  (ECF No. 684-24 at 10.)

*Prosser v. Prosser*, 186 F.3d 403, 405–06 (3d. Cir. 1999) in support of this argument.

(*Id.* at 5 n.20.)

But Plaintiffs' reliance on *Prosser* is undermined by subsequent Tenth Circuit

caselaw which strongly suggests[9] that it is not "improper for the court to be presented

with the issue of inherent-power sanctions after dismissing the plaintiff's case." *Mellott*,

492 Fed. App'x at 890, 890 n.1; *accord Trendsettah USA Inc. v. Swisher Int'l Inc.*, 2023

WL 6370927 (C.D. Cal. Aug. 24, 2023) (rejecting application of *Prosser* to inherent

sanctions motion post-judgment). In reaching this conclusion, the *Mellott* court

specifically relied on *Chambers* itself, which "affirmed an inherent-powers sanction that

was sought and awarded after remand from the appeals court." *Mellott*, 492 Fed. App'x

887 at 890 (citing *Chambers*, 501 U.S. at 40, 56). And as to *Prosser*, *Mellott*

distinguished that case, in a footnote, as follows:

> In *Steinert* we noted that "the Third Circuit has adopted a
> 'supervisory rule' that sanction issues under Rule 11 and the
> inherent power of the court must be decided before or
> concurrent to the final judgment." 440 F.3d at 1223. But
> *Steinert* involved § 1927, not an inherent-powers sanction,
> and it did not adopt the Third Circuit's supervisory rule.
> Moreover, it appears that the Third Circuit's rule is grounded
> in concerns about prompt district-court action and "[t]he
> interests of judicial efficiency, timeliness, and notice," as well
> as effective disciplinary guidance. *Prosser*, 186 F.3d at
> 405–06. Here, the district court acted promptly in requiring
> the defendant to file a renewed motion for sanctions after
> granting the plaintiff's motion to dismiss, and various
> sanctions issues continued to be presented while and even
> after the court considered the sanction at issue in this
> appeal. In the circumstances of this case, we believe it is
> not improper to allow the district court to reevaluate this
> sanction.

---

[9] The Court says "strongly suggests" because the Tenth Circuit merely said that "*it does not appear* improper for the court to be presented with the issue of inherent-power sanctions after dismissing the plaintiffs' case . . . ." *Id.* (emphasis added).

31

*Id.* at 890 n.1.  In the end, on appeal the *Mellott* court advised the district court that it could consider imposing inherent authority sanctions on remand—even though final judgment had long been entered.  *Id.*  Extending this logic, the Court fails to see any impediment to the imposition of inherent authority sanctions while the merits appeal remains pending.

Hence, in the absence of binding authority holding otherwise, the Court rejects Plaintiffs' timeliness challenge to the assessment of inherent authority sanctions.

### 3.  CLAYTON ACT AND INHERENT AUTHOIRTY

Third, and finally as to their procedural objections, Plaintiffs argue that courts lack inherent authority to sanction in antitrust cases.  (ECF No. 648 at 5.)  In Plaintiffs' view, section 4(a) of the Clayton Act, which provides a mechanism for prevailing plaintiffs to recover attorneys' fees, displaces a court's inherent authority to impose fees as a sanction.  (*Id.*)  Citing *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247–63 (1975), Plaintiffs say that "[t]he Supreme Court has confirmed this reading."  (*Id.* at 6.)

The Court does not read *Alyeska* as confirming Plaintiffs' view that inherent authority sanctions are unavailable in antitrust cases.  For one, Plaintiffs' reliance on that decision is merely for the unremarkable proposition that the American Rule—which provides that parties ordinarily pay their own attorney's fees, prevailing party or not—governs unless Congress provides otherwise.  But Vail Health does not seek fees on the theory that it is a prevailing party in this action.  Its theory instead hinges on the argument that Plaintiffs' and their counsels' bad faith behavior caused them

32

unnecessary and significantly expanded legal costs. (*See generally* ECF No. 636.) So the purpose for which Plaintiffs cite *Alyeska* does not advance their cause here.

Second, and more generally, *Alyeska* was not an antitrust case, let alone an antitrust case in which the defendant was seeking attorney's fees pursuant to the district court's inherent authority. *See generally id.* The Supreme Court in that case merely rejected the D.C. Circuit's decision to fashion an award of attorney's fees under its inherent authority because the Circuit thought it was a good policy idea to do— specifically, because the respondents in that case "were performing the services of a 'private attorney general.'" *Id.* at 241. The Court would be reading the *Alyeska* decision very broadly were it to hold that inherent authority sanctions are unavailable in antitrust cases pursuant to that decision.

Nor is the Court persuaded by Plaintiffs' reliance on *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978). In that case, the Supreme Court mused in a footnote that, "[h]ad Congress provided for attorney's fee awards only to successful plaintiffs, an argument could have been made that the congressional action had pre-empted the common-law rule, and that, therefore, a successful defendant could not recover attorney's fees even against a plaintiff who had proceeded in bad faith." *Id.* at 419 n.13. But the Supreme Court, of course, then went on a decade or so later to conclude that courts may retain their inherent authority to sanction bad faith conduct even if that authority overlaps with statutory authority to sanction. *Chambers*, 501 U.S. at 50–51. Notably, other courts have awarded inherent authority sanctions in more recent antitrust cases. *See, e.g., Christou v. Beatport, LLC*, 2014 WL 1293296, at *10 (D. Colo. Mar. 31, 2014) (awarding inherent authority attorneys' fee sanction in antitrust case). Given

33

this subsequent authority, the Court declines to interpret the *Christiansburg* footnote as extinguishing a lower federal court's inherent authority to impose sanctions in antitrust cases.

For these reasons, the Court rejects Plaintiffs' procedural challenges to the Motion.

## C. MERITS

Vail Health moves to recover a portion of the attorneys' fees it paid Arnold & Porter starting in 2023 and that were incurred because of Plaintiffs' and their counsel's bad conduct throughout this case.  (ECF No. 636.)  As discussed above, Vail Health seeks fees pursuant to both the Court's inherent authority and section 1927.

As to the vexatious conduct, Vail Health points to (1) Plaintiffs' counsel's repeated threats of criminal prosecution against and accusations of criminal activity by Vail Health; (2) Plaintiffs' counsel's belittling comments made to defense counsel, such as accusing them of using "weasel-words," being "nasty," having a "weak psyche," being "shitty," and referring to female counsel as "my dear"; and (3) Plaintiffs' and their counsels' allegedly improper communications with Vail Health's employees and board members.  (*Id.* at 6–9.)  Somewhat relatedly, as to the multiplicity of proceedings, Vail Health points to Plaintiffs' (1) "refus[al] to enter a scheduling order"; (2) demanding untimely discovery; (3) filing of the sixth motion to compel; and (4) failure to act in good faith at the settlement conference and mediation.  (*Id.* at 9–13.)

The Motion's organizational structure is somewhat difficult to follow.  For example, Vail Health at times assigns a dollar figure to certain of these categories (*e.g.*, threat of criminal prosecution), while at other times not doing so (*e.g.*, unprofessional

and belittling comments).  Thus, the Court groups and reorders these categories as it

deems appropriate.

### 1.  THREATS OF CRIMINAL PROSECUTION AND THE CRIME-FRAUD MOTION

Vail Health contends that, "[t]hroughout Arnold & Porter's involvement in this

case, Plaintiffs' consistent refrain has been that Vail Health was engaging in 'criminal

activity' which would serve as the basis for reports to state and federal authorities and

additional lawsuits unless Vail Health agreed to Plaintiffs' demands."  (ECF No. 636 at

6.)  Specifically, Vail Health continues, "Plaintiffs emphasized that they would report Vail

Health to the Department of Justice ('DOJ')[10] and threatened 'Qui Tam' actions and

Federal Trade Commission ('FTC') referrals."  (*Id.*)

In its lead counsel's declaration in support of the Motion, Vail Health avers that

these accusations largely took place during conferrals in October 2023.  (ECF No. 636-

1 at 11.)   For example, in an e-mail expressing her displeasure with one of Vail Health's

supplemental discovery disclosures, attorney Braunschweig said to defense counsel:

"You can further contribute to and be implicated in the very serious issues facing Vail

Health or be the solution."  (ECF No. 636-2 at 5.)  In a follow-up e-mail, Braunschweig

added: "We understand why Vail Health and its prior counsel concealed this evidence

for six years—it demonstrates criminal activity."  (*Id.* at 2.)  And again: "Through these

productions, it has become apparent that there has been a knowing, deliberate, and

systematic concealment of documents in both the federal and state cases."  (*Id.*)  And

one more time: "There is ample evidence that crimes and fraud have been committed

---

[10] In his declaration, Kildow does not deny telling Vail Health that he might refer it to the FTC
(instead justifying the threat), but he does deny ever threatening to refer Vail Health to the DOJ.
(*See, e.g.*, ECF No. 648-1 at 40.)

by Vail Health." (*Id.* at 3.) A few days later, Kildow echoed this rhetoric in his own e-mail: "If we do not reach some type of agreement on this, Vail Health's concealment of evidence and abuse of the discovery process (issues that Plaintiffs will address shortly), will be the subject of a motion seeking sanctions . . . ." (ECF No. 636-3 at 3.)

Vail Health contends that this "chorus of accusations of alleged criminal or sanctionable conduct resulted in the needless spend of judicial and legal resources." (ECF No. 636 at 6.) In particular, Vail Health asserts that it spent "at least $70,761.54 directly because of this conduct . . . exclusive of the hundreds of thousands more spent in related discovery efforts to disabuse these allegations." (*Id.* at 7.) It appears that this amount was largely expended in "preparing to respond" to the crime-fraud motion that Plaintiffs had represented to Judge Crews they planned to file at the October 2023 status conference. (*Id.* at 6.) Separate from the amount Vail Health spent preparing to respond to the ostensibly forthcoming crime-fraud motion, however, it maintains that the threats of criminal activity "alone suffice[] for sanctions, without even considering the time wasted by Vail Health preparing its defense." (*Id.* at 7.)

Plaintiffs respond that they "cannot be sanctioned for not filing a crime-fraud motion." (ECF No. 648 at 8.) According to Plaintiffs, "[t]he Scheduling Order did not mandate a crime-fraud motion be filed; it just established a deadline to do so." (*Id.*) Moreover, say Plaintiffs, even though they did not file a crime fraud motion, they had a "good-faith basis" to do so. (*Id.*) As told by Plaintiffs, the legitimacy of the potential crime-fraud motion is evidenced by the fact that Judge Crews set a briefing scheduling on the motion in the first place. (*Id.*)

As an initial matter, the Court feels compelled to yet again admonish Plaintiffs' counsel for repeatedly accusing Vail Health of committing crimes—and insinuating that their counsel facilitated or provided cover for these crimes—when Plaintiffs appeared to have had no good faith basis make those accusations.  Kildow explains in his declaration that these criminal accusations were well-founded because committing an antitrust violation is technically a felony under the Sherman Act.  (ECF No. 648-1 at 39.)

But Kildow then acknowledges that civil defendants are rarely if ever criminally prosecuted for antitrust violations and, as such, he basically concedes that there was no good faith basis to believe that Vail Health could realistically be held culpable for committing a crime.  (*Id.*)  He specifically admits this: "I would never have given a passing thought to refer Vail Health for criminal prosecution."  (ECF No. 648-1 at 39.)  Given this candid admission, the Court does not understand why Kildow and Braunschweig would have repeatedly wasted time and raised the temperature in this case by accusing Vial Health of having committed crimes.  The Court can only conclude that they did so in bad faith and with the intention of gaining an unfair litigation advantage in this action by placing undue pressure on their opponent.

Relatedly, the Court does not see a good faith basis for Plaintiffs' counsel to have repeatedly threatened Vail Health that Plaintiffs intended to file a crime-fraud motion. Kildow explains in his declaration that he suspected that such a motion might have been successful because Vail Health did not disclose documents "for seven months after they were ordered to be produced" by the Special Master and Judge Gallagher.  (*Id.* at 41.) He tries to back up this suspicion by pointing to allegedly concerning e-mails Vail Health

37

representatives had exchanged over the 2015 holiday season pertaining to their alleged

efforts to shut Plaintiffs out of the physical therapy market during that same period.  (*Id.*)

But the Court again does not see how this delay or these e-mails could have

plausibly suggested that any criminal activity by Vail Health or its defense counsel was

afoot.  The crime-fraud exception allows a party to vitiate the attorney-client privilege

where "communications between a client and an attorney . . . are for the purpose of

furthering a crime or fraud . . . ."  *Plaza Ins. Co. v. Lester*, 2015 WL 3528336, at *7 (D.

Colo. June 4, 2015).  Yet Plaintiffs identified nothing in 2023—and identify nothing

now—suggesting that Vail Health or its attorneys engaged in communications for the

purpose of furthering a crime or fraud.  All Kildow supplies in support of this theory

throughout his declaration is speculation and innuendo—certainly nothing close to a

"foundation in fact," as is required to assert a plausible crime-fraud motion.  *Id.*  (*Id.* at

41–50.)

Thus, the Court concludes that Plaintiffs' counsels' persistent barrage of

accusations that Vail Health committed crimes and used its counsel to conceal those

crimes was vexatious and unreasonable.  Plaintiffs' counsels' statements of intent to file

a crime-fraud motion were also a waste of time: both Vail Health's and the Court's.

Indeed, Judge Crews had to entertain argument on this issue at the October 2023

status conference, set a deadline for Plaintiffs to file the motion, and consider Plaintiffs'

motion for extension of time to file that motion.  (ECF Nos. 518, 521, 523.)

Furthermore, in partially granting Plaintiffs' motion to extend the deadline to file a crime-

fraud motion, Judge Crews seemed to rely on Plaintiffs' representations at the October

2023 status conference that a crime-fraud motion was indeed forthcoming.  Judge

Crews reasoned: "[B]ecause Plaintiffs previously represented they planned to file a motion based upon the crime-fraud exception, *the Court must assume Plaintiffs already had a good-faith basis to so advise*."  (ECF No. 523 at 2 (emphasis added).)

In other words, Plaintiffs' conduct constituted an abuse of the judicial process that needlessly multiplied the proceedings in this case.  Clear and convincing evidence demonstrates that this conduct was committed in bad faith.  Therefore, sanctions under the Court's inherent authority and section 1927 are appropriate here.  *See, e.g., In re 60 E. 80th St. Equities, Inc. v. Sapir*, 218 F.3d 109, 116–17 (2d Cir. 2000) (accusations of civil and criminal misconduct "cross the line from passionate advocacy and disagreement with a court's decision into sanctionable conduct evincing bad faith."); *Fodor v. E. Shipbuilding Grp.*, 2013 WL 12174647, at *3 (N.D. Fla. Dec. 19, 2013) ("[T]hreatening defendant or defendant's counsel with criminal charges or injury . . . is improper and is sanctionable.").

The amount Vail Health seeks to recover for this issue, however, is simply not reasonable.  Vail Health asks for $70,761.54 on this score, representing approximately 80 billed hours, of which approximately 55 hours are sought after reductions.  (ECF No. 654-4.)  Most of these hours reflect research defense counsel conducted on the crime-fraud exception and meetings defense counsel had regarding strategy for opposing that motion.  (*See generally id.*)  But to reiterate: The crime-fraud motion *was never filed*. While it is understandable that Vail Health had to take seriously the repeated threats that the motion was forthcoming, the Court does not believe that prudent counsel would have spent $70,761.54 largely researching caselaw and formulating strategy before the motion was actually before them.

39

Given this, the Court will reduce this amount as outlined more fully below.

## 2. UNPROFESSIONAL COMMENTS AND CONTACTS WITH VAIL HEALTH

Vail Health contends that it is entitled to attorneys' fees based on the unprofessional and belittling comments Kildow made towards defense counsel and Vail Health employees and board members. (ECF No. 636 at 7.) As a sample, Vail Health avers that Kildow accused defense counsel of using "weasel-words," being "nasty," having a "weak psyche," and being "shitty." (*Id.*) Vail Health also accuses Kildow of using misogynistic language, such as telling female defense counsel during a deposition: "[Y]ou don't have to lecture me, my dear," and "I wish you would stop your pedantic instructionals . . . I'm not coaching the witness. I'm coaching you, . . . you do need a little instruction. You should take a J-Course." (*Id.* at 8.)

As to communications with Vail Health employees and board members, Vail Health alleges that Kildow approached counsel and Vail Health's CLO, Kevin Rudolph, in a courthouse "in a menacing manner in front of courtroom staff and with fervor told them that he was going to 'bury them.'" (*Id.*) Vail Health further alleges that, following the pretrial conference in July 2025, Kildow began personally serving trial subpoenas on Vail Health's board members at their workplace. (*Id.*) Vail Health says that this behavior, in addition to the disparaging comments Kildow made about Judge Gallagher, "is a basis for fees under § 1927." (*Id.* at 9.) For some reason, however, Vail Health does not assign a dollar figure to these actions.

Plaintiffs largely excuse their counsel's behavior, chalking it up to "discourteous" language and alleging that defense counsel also acted unprofessionally at times. (ECF No. 648 at 8–11.) Plaintiffs also maintain that Rule 45(b)(1) does not preclude counsel

from serving subpoenas on third parties, and that parties can communicate directly with one another. (*Id.* at 11.)

The Court again finds the language and general tenor used by Kildow to be inappropriate and lacking in civility. The Court, in particular, finds Kildow's personal attacks on Judge Gallagher reprehensible, attacks which included statements that Judge Gallagher didn't understand antitrust law and was biased in Vail Health's favor. The Court also finds Kildow's use of the words, "my dear," with respect to female opposing counsel, to be sexist and wholly unacceptable. Kildow insists in the Response that his comments were not gender-based, but that begs the obvious question: Would he refer to male counsel as "my dear?"

In any event, Vail Health ultimately does not ask the Court to impose sanctions in a dollar amount for this unprofessional conduct. Thus, while the Court believes Kildow's conduct and treatment of others at several times in this action was disgraceful, the Court does not sanction him with a specific monetary amount for this misconduct. The Court instead considers this behavior as a whole in determining whether Plaintiffs' counsels' behavior was in bad faith and vexatious.

### 3. THE SCHEDULING ORDER

Vail Health contends that Plaintiffs and their counsel engaged in sanctionable conduct by failing to engage in good faith negotiations regarding the entering of a new scheduling order after the deadlines under Judge Gallagher's original October 2020 scheduling order had long expired. (ECF No. 636 at 9.) Specifically, Vail Health submits that it was unreasonable for Plaintiffs and their counsel to agree to a scheduling order only if Vail Health "acquiesce[d] to unreasonable demands and conditions as a

quid pro quo." (*Id.* at 10 (quoting ECF No. 484 at 1).)  For this misconduct, Vail Health

seeks $39,289.54.  (*Id.*)

Plaintiffs respond that "it is not sanctionable to advocate for a particular

schedule."  (ECF No. 648 at 13.)  In Plaintiffs' view, they "engaged in good-faith

conferrals to establish a workable new schedule," which became necessary after Vail

Health's delay in producing discovery documents caused the original scheduling order's

deadlines to lapse.  (*Id.*)  Plaintiffs continue that their "refusal to accept scheduling

proposals that would have imposed unaffordable expert costs or prolonged discovery

was a legitimate litigation position, not 'multiplication' of proceedings."  (*Id.*)

The Court agrees with Vail Health that Plaintiffs' counsel failed to confer in good

faith regarding the scheduling order.  As discussed above, long after the deadlines

prescribed by Judge Gallagher's original October 2020 scheduling order had lapsed,

Vail Health's new counsel, Arnold & Porter, reached out to Plaintiffs' counsel to propose

entering a new scheduling order via the consent of the parties.  Instead of submitting

realistic counterproposals as to scheduling dates, however, Plaintiffs' counsel returned

a "Statement Regarding Scheduling," which contained several "Proposed Conditions for

a Schedule," including such unreasonable requirements as Vail Health agreeing not file

any summary judgment motions, forego conducting expert depositions, and forego filing

*Daubert* motions.  (ECF No. 484-3.)  Plaintiffs offered no explanation as to why the

scheduling order had to be tethered to expert depositions:

6.    No Expert Depositions.  Each party must agree to forego the deposition(s)
of the other's expert(s).

42

And Plaintiffs gave nonsensical reasons why they would only agree to a scheduling order if Vail Health agreed not to file a summary judgment motion:

> 8.   **No Summary Judgment Motions.**  Vail Health would agree that it will forego filing a motion for summary judgment.  That should be no loss.  It has had four years to file a dispositive motion, but it has not done so.  For two years, we asked Davis Graham to identify the Sherman Act element it intended to challenge in a summary judgment motion and it could not identify a single one.  They just would not say anything.  Plaintiffs again raised that issue during multiple recent conferrals and in writing but have had no response.  Any Rule 56 motion that did not implicate disputed facts could have been filed if Vail Health had one, which it obviously does not have.  Again, Judge Martínez has stated that he does not look favorably on summary judgment motions.  So the parties should just put this needless and costly work aside and get this case to trial.  If Vail Health truly desires to get this case to trial in its proposed time frame, it will have to give up what it almost certainly cannot keep.
>
> In sum, the parties would, by agreement, streamline the federal case by jettisoning futile motions and discovery.  If cost is a factor, which it should be for a community non-profit hospital, then the following schedule should be attractive in that it proposes the most cost-effective way to get the case to trial very close to the proposed end date.

Vail Health understandably did not acquiesce to these "proposed conditions." After all, at this stage of the action, the parties were simply negotiating dates and deadlines—not substantive issues *that would impact the outcome of the case*. *See Doyle v. Camelot Care Centers*, Inc., 305 F.3d 603, 623 (7th Cir. 2002) ("Scheduling determinations ordinarily are a relatively routine task.").  Even Kildow himself acknowledges that "motion practice relating to a scheduling order *is a straightforward drafting exercise* . . . ."  (ECF No. 656 at 9 (emphasis added).)  Or at least it should be.

Plaintiffs' counsels' behavior made it so that the scheduling order issue was anything but "straightforward."  (*Id.*)

The Court is strongly of the view that requiring a party to sacrifice its right to file a summary judgment motion (which ultimately here was granted in Vail Health's favor), in exchange for an agreement by the adverse party to set a deadline to file such a motion, cannot in any way be justified as a legitimate, good faith litigation tactic.  Contrary to Plaintiffs assertion, good faith conferral did not require that they *accept* Vail Health's original scheduling proposal.[11]  Instead, good faith conferral required that Plaintiffs negotiate the particular scheduling details in good faith, such as by counteroffering a schedule that contained reasonable terms and dates.  Indeed, nothing about Plaintiffs' counteroffer was "workable," as they suggest.  (ECF No. 648 at 13.)  Rather, the Court finds that Plaintiff tried to leverage negotiations about discovery deadlines into obtaining unfair substantive advantages in the case.  That is not zealous advocacy—that is vexatious conduct.

And this conduct came at a cost to Vail Health and the Court.  As a direct consequence of Plaintiffs' counsels' unreasonable demands, Vail Health was forced to seek judicial intervention, which ultimately culminated in a lengthy October 2023 hearing.  (ECF No. 521.)  Notably, Judge Crews opened the hearing by admonishing

---

[11] To be clear: It is not in all circumstances bad faith for parties to negotiate by trying to leverage waiving the right to file a dispositive motion in exchange for something of value.  In this case, however, Plaintiffs' condition that Vail Health do so *was* bad faith because Vail Health had already clearly signaled (via former counsel) its intention to file a summary judgment motion and was simply seeking agreement from Plaintiffs on a deadline to do so.  In other words, since Plaintiffs were clearly aware that Vail Health intended to file a summary judgment motion, why on earth would they have thought Vail Health would agree to a term whereby its right to file such a motion would be extinguished?

the parties that they needed to "up [their] game" in terms of "professionalism." (*Id.* at 4.)

He also noted that their filings were unnecessarily lengthy (a view with which the

undersigned can most readily agree). (*See generally id.*)  In the end, Judge Crews

entered a scheduling order that largely tracked with Vail Health's original proposal to

Plaintiffs.  Thus, it is clear to the Court that Plaintiffs' nonstarter counterproposal was

absurd and prompted unnecessary and lengthy motions practice and a hearing.

As a result of Plaintiffs' counsels' bad faith and vexatious conduct, the

undersigned concludes that sanctions under the Court's inherent authority and section

1927 are appropriate, as outlined below.

## 4.  SIXTH MOTION TO COMPEL

Vail Health contends that Plaintiffs and their counsel engaged in sanctionable

conduct by filing the sixth motion to compel, which sought the production of text

messages from the three nonparties named above: Michael Shannon; Doris Kirchner;

and Will Cook.  (ECF No. 636 at 11.)  In Vail Health's view, this motion unreasonably

multiplied the proceedings because it was untimely and meritless.  (*Id.*)  It was untimely,

says Vail Health, because it was filed in July 2023, *i.e.*, long after the fact discovery

deadline had lapsed in December 2021.  And Plaintiffs' sixth motion to compel was

meritless, Vail Health continues, because Vail Health lacked the authority to produce

the text messages of nonparties its counsel did not represent.  For this, Vail Health

seeks $278,902.64 in fees.  (*Id.* at 12.)

Plaintiffs respond that they brought the sixth motion to compel in good faith

because, in their view, the text messages properly constituted "documents," which they

had originally sought in their October 2019 production request.  (ECF No. 648-1 at 53.)

45

Plaintiffs add that Judge Crews "agreed to permit the filing of the motions to compel for about five weeks—up to November 17, 2023." (*Id.* at 55–56.)  Accordingly, Plaintiffs insist, the sixth motion to compel was timely filed.

The Special Master's Recommendation on the sixth motion to compel capably explained why the motion was legally deficient.  On its face, the motion was about a year and a half tardy under Judge Gallagher's original scheduling order.  The Special Master reasoned as follows:

> Fact discovery in this matter closed on December 20, 2021. Plaintiffs have known since at least November 2021 that Vail Health did not produce the requested text messages in response to Plaintiffs' discovery requests, pursuant to Vail Health's objections and letters outlining its search process information.  Despite filing five motions to compel while discovery was ongoing, Plaintiffs failed to include the text messages at issue here from Vail Health through a more timely motion to compel and chose not to serve any Rule 45 subpoenas on the affected third party individuals. Accordingly, the Special Master finds that Plaintiffs' Motion is untimely.

(ECF No. 559 at 4.)

Contrary to Plaintiffs' assertion, the motion was not timely because it was filed within the deadline Judge Crews had set on motions to compel at the October 2023 scheduling hearing.  Judge Crews explained at that hearing that, while no new fact discovery would be permitted in this case, motions to compel evidence that should have already been disclosed by the December 2021 deadline were fair game.  That is, under Judge Crews's orders, the opportunity to file a motion to compel did not give the parties license to seek *new* discovery beyond what had been appropriately sought by the original December 2021 fact discovery deadline.  Rather, under Judge Crews's

46

directives, the parties could file motions to compel only that evidence which should have been (but was not) disclosed by December 2021.  (*See* ECF No. 521 at 46 (explaining that the new scheduling order "will include that there is no additional discovery to occur other than what the defendant has already agreed to produce in your conferrals or conversations to date").)

The Special Master explained why the sixth motion to compel did not seek evidence that related back to fact discovery before December 2021.  (*Id.* at 4–6.)  And on the merits, the motion had no way of prevailing, the Special Master explained, because Vail Health obviously did not have the responsibility (or the authority) to produce text messages from the personal devices of individuals who were not parties to this case, nor clients of Arnold & Porter.  (*See id.* at 6 ("Vail Health is Not in Possession, Custody, or Control of the Personal Devices and Text Messages of the Non-Parties.".)  True, the Special Master failed to follow his legal analysis to its logical conclusion: He ultimately concluded that Vail Health should be required to produce the nonparty text messages, essentially in the interests of justice.  (*See id.* at 8 ("Discovery of These Third-Party Text Messages Are Necessary and Proportionate to the Needs of the Case.").)

But Judge Prose corrected that error upon the objection of Vail Health.  In a thorough 29-page Order, Judge Prose concurred with the Special Master's reasoning that the sixth motion to compel was legally infirm but rejected his bottom-line conclusion that discovery should be reopened anyway so that Vail Health would be forced to procure and turn over the text messages.  (*See* ECF No. 610 at 2 (explaining that "Plaintiffs could have issued such subpoenas years ago, but the record makes evident

that they deliberately elected not to avail themselves of that readily-available

procedure").)[12]  Specifically, Judge Prose discerned no good cause to reopen discovery

in this case because, among other reasons, the Court's docket could not accommodate

yet another "time-consuming fight," which Judge Prose "ha[d] no doubt there w[ould]

be."  (ECF No. 610 at 25.)  Judge Prose emphasized that finding otherwise would "invite

the negative consequences certain to flow from reviving a complex discovery issue in

this notoriously contentious case—including an inevitable fight about the forensic

analysis and imaging of personal devices, that, *but for Plaintiffs' recalcitrance*, could

have been addressed long ago."  (*Id.* at 27 (emphasis added).)

Plaintiffs once again second-guess the legal analysis outlined above, insisting

that they had a good faith basis to have filed the sixth motion to compel.  The Court

disagrees.  First, Plaintiffs did not appeal Judge Prose's Order, so her ruling and

conclusion stand.  Second, two judicial officers have already rejected the bases of that

motion (ECF Nos. 559, 610), and the undersigned concurs with their reasoning.  It was

surely unreasonably and vexatious for Plaintiffs to have filed the motion, prompting

months of briefing and two judicial decisions addressing its merit (or lack thereof).  *See*

*Goode v. Wild Wing Cafe*, 588 Fed. App'x 870, 875 (11th Cir. 2014) (awarding

sanctions under section 1927 where party filed an untimely motion to compel).

This is especially clear in light of the fact that Vail Health tried to cooperate with

Plaintiffs to avoid more needless and expensive motion practice.  Indeed, Vail Health

told Plaintiffs that it would not oppose their motion to subpoena the nonparties to search

---

[12] Judge Prose specifically rejected Plaintiffs' argument that the text messages constituted
"documents" under prior production requests.

their phones.  It even *encouraged* Plaintiffs to reach out to the counsel of those

nonparties, John McHugh, to obtain the texts of his clients.  The following e-mail excerpt

from defense counsel confirms his efforts to move the case along in streamlined

fashion:

> 4. Does Kirchner and Shannon have cooperation/indemnification agreements with Vail Health? Why won't they produce their texts to Vail Health? **We have addressed this issue. We do not speak for, nor represent, Mike Shannon or Doris Kirchner. They are represented by their own counsel, John McHugh. We previously advised you to reach out to him.  We previously offered as part of a global compromise not to object to a subpoena, except to the extent it implicated privileges or immunities. You declined to even reach out to Mr. McHugh instead asking us to "use our influence" with him.  When you shifted focus to Nico Brown, we offered to produce his text messages voluntarily to try to move forward.  Plaintiffs again declined to compromise. As to**

(ECF No. 495-4 at 2.)

But like with virtually all other matters in this case, Plaintiffs' counsel evidently

had no interest in resolving the issue amicably.

Consequently, the Court concludes, with respect to Plaintiffs' filing of their sixth

motion to compel, that sanctions under the Court's inherent authority and section 1927

are appropriate, as outlined below.

### 5.  MEDIATION AND SETTLEMENT CONFERENCE

Vail Health contends that Plaintiffs and their counsel engaged in sanctionable

conduct by failing to "conduct[] themselves in good faith . . ., despite that this Court

ordered the parties to 'engage in **good faith** efforts'" during the settlement conference

and mediation.  (ECF No. 636 at 13 (emphasis in original).)  After enumerating the

exhaustive steps it took towards preparing for those proceedings, Vail Health sums up

that it needlessly spent $362,489.20 as a result of Plaintiffs' alleged bad faith conduct.

(*Id.*)

Plaintiffs counter that Vail Health's claim "rests on speculation, not evidence." (ECF No. 648 at 15.)  They attest that "[t]hey participated in the settlement conference and mediation with full settlement authority and negotiated in good faith—reducing their demands and, at times, bidding against themselves."  (*Id.* at 16.)  Plaintiffs also cite their motion to reopen the administratively closed case, in which they asserted that, at the conclusion of the mediation, the mediator "confirmed that Plaintiffs could represent to the Court that the parties met and mediated in goth faith all three days."  (*Id.* (citing ECF No. 594 at 5.)

The Court can fully appreciate why Vail Health seeks its fees for the settlement conference and mediation.  Given his conduct throughout this action, which has been extensively documented in writing by several judicial officers (as outlined above), the Court has every reason to doubt that Kildow, in particular, comported himself with professionalism during those proceedings.

But this strong suspicion is not enough to base a finding of bad faith or vexatiousness under the applicable sanction standards.  Vail Health supplies the Court with too little evidence supporting its claim that Plaintiffs and their counsel acted in bad faith during the mediation and settlement conference.  As for evidence, Vail Health essentially asks the Court to rely on (1) the undersigned's statement that the May 2024 settlement conference before Judge Prose concluded in an "abrupt and unprofessional manner" (which the undersigned learned from conferring with Judge Prose) and (2) its counsel's say so.  (*See* ECF No. 636 at 13 ("Vail Health *does not believe* that Plaintiffs or counsel conducted themselves in good faith during either the settlement conference or the subsequent mediation . . . .") (emphasis added).)  Simply put, this is insufficient

50

evidence, under the clear and convincing evidence standard, to establish bad faith or vexatiousness on behalf of Plaintiffs and their counsel in regards to their conduct at the mediation and court settlement conference, particularly given the mediator's statement to the contrary.[13]

Hence, given Vail Health's inadequate and insufficient evidence on the matter, the Court must reject its request for sanction fees stemming from the failed settlement conference and mediation.

### 6. PLAINTIFFS' "UNTIMELY DISCOVERY" REQUESTS

As to the final category for which Vail Health seeks monetary sanctions, Vail Health vaguely contends that Plaintiffs and their counsel engaged in sanctionable conduct by "demand[ing] new and broader discovery than required" under the Special Master's Recommendations, which were later adopted by Judge Gallagher.  (ECF No. 636 at 10.)  Vail Health explains that Plaintiffs' allegedly untimely discovery requests unnecessarily prompted the following efforts by its counsel:

> the collection of emails from nine new custodians at Plaintiffs' request, dozens of conferrals over numerous new demands and iterations of search terms, addressing multiple-pages long demands of Plaintiffs, the review and production of tens of thousands of additional documents and reams of data, the provision of a 30(b)(6) witness, and supplementation of interrogatories beyond what was required.

---

[13] Vail Health offers "to submit the parties' respective settlement conference and mediation statements, or other materials, for the Court's consideration . . . ."  (ECF No. 636 at 13.)  But the Court does not believe it would be appropriate to consider those documents to speculate about which offers would constitute as being reasonable in ultimately finding whether sanctionable conduct occurred.  In the Court's view, such an inquiry is a circumstance-intensive inquiry that would require review by a jurist who was more familiar with what actually happened behind the closed doors of the settlement conference and mediation.

(*Id.* at 11.)  For these efforts, Vail Health represents that it "spent at least

$1,389,429.31."  (*Id.*)  Yet despite asking for such an exorbitant amount, Vail Health's

argument section on this category in the Motion is not only less than clear, it is

shockingly brief—especially given the seven-figure sum requested: only two paragraphs

long.  (*Id.* at 10–11.)

Plaintiffs resist this request by arguing that Vail Health is seeking fees for

discovery it "was either ordered by the Court" to produce or that Vail Health "voluntarily

produced . . . itself."  (ECF No. 648 at 14.)  By this statement, the Court understands

Plaintiffs to interpret Vail Health's request for nearly $1.4 million as including the time it

spent defending against Plaintiffs' first five motions to compel and complying with the

orders stemming from that motions practice.  This interpretation seems to be reasonably

plausible, as Vail Health expressly disclaims seeking this nearly $1.4 million based on

"Plaintiffs' text message demands," *i.e.*, the subject of Plaintiffs' sixth motion to compel.

(ECF No. 636 at 11.))

In its Reply, Vail Health clarifies that it "does not seek fees for general

compliance with the Motion to Compel Orders" but instead focuses on "fees related only

to new or broader discovery that Plaintiffs untimely and improperly demanded."  (ECF

No. 651 at 11.)  Vail Health then goes on to briefly discuss facts that are fleshed out in

its lead attorney's declaration in support of the Motion, but only briefly touched on in the

Motion itself.  (*See id.* at 12 (discussing a discovery issue pertaining to the taking of a

Rule 30(b)(6) deposition and related financial information of Howard Head).)

The Court rejects Vail Health's request for $1,389,429.31 based on Plaintiffs'

allegedly "ultimately discovery" requests.  Vail Health bears the burden of proving by

clear and convincing evidence that Plaintiffs and their counsel acted in bad faith, such that they should be sanctioned for seeking the evidence alluded to above.  But one would never guess that Vail Health bore this heavy burden by reading this portion of its Motion.  As mentioned above, the argument section for this category is but an anemic two paragraphs in length, and the facts in support of the claim are not fleshed out elsewhere in the Motion.[14]  (ECF No. 636 at 10–11.)

True, far more facts are developed in the declaration of Vail Health's lead counsel, but as the Court explained in the Opening Remarks section of this Order, the Court is not obliged to scour the 44 pages of facts included therein to grasp what facts correspond to this portion of the Motion.  (*See generally* ECF No. 636-1.)  Nor is the Court required to scour Kildow's 108-page declaration on the same issue either.  (*See generally* ECF No. 648-1.)  The same goes for the declaration in reply, which is 14 pages.  (*See generally* ECF No. 651-1.)  The Court reminds Vail Health that the page limit for a motion for attorney's fees *is 15 pages*.  *See* Revised Practice Standard III.C.1 (limiting motions for fees to 15 pages).

At any rate, as mentioned above, Vail Health makes clear that its fee request under this category of alleged misconduct does not stem from the text message issue that was the subject of the sixth motion to compel.  (ECF No. 636 at 11.)  Again, that statement leads the Court to deduce that this category of alleged misconduct concerns discovery pertaining to Plaintiffs' first five motions to compel, which recall *were largely granted* by the Special Master's Recommendation and adopted by Judge Gallagher's

---

[14] Compare the effort Vail Health expended fleshing out this argument for nearly $1.4 million with other argument sections of the motion that seek far less money, yet are much more robust and fully developed.

30-page Order.  (ECF Nos. 362, 381, 382, 383, 398, 381; *see also* ECF No. 559

(concluding that the first five motions to compel "raised legitimate disputes about the

scope of Vail Health's collection and searched").)

Thus, as best the Court can tell, outside of the scheduling order issue and the

sixth motion to compel, Plaintiffs and their counsel did not engage in vexatious or bad

faith conduct related to the "untimely discovery" category of the Motion.  If they did, Vail

Health has not done its part in convincing the Court that this is the case.

For these reasons, the Court rejects Vail Health's request for sanctions with

respect to the cursory "untimely discovery" section of its Motion.

### 7.  VAIL'S REQUEST FOR NON-MONETARY RELIEF

Finally, Vail Health appears to ask for equitable relief, ostensibly in the form of a

sanction: It asks the Court to order that "Plaintiffs' counsel and Plaintiff Winninger cease

any direct email, text, in-person or other communications with Vail Health and its

employees about anything other than medical issues."  (ECF No. 636 at 15.)  In support

of this request, Vail Health points to the dispute the parties had regarding the accuracy

of Arnold & Porter's press release, which recall claimed a public victory after the Court

issued its summary judgment order in Vail Health's favor.  (*Id.* at 13.)  Vail Health also

points to e-mails from Kildow, in which he intimated that he would file another antitrust

action and his own section 1927 motion against Vail Health based on the press release.

(*Id.* at 15.)

The problem with Vail Health's request, however, is that it is unsupported by any

authority cited in the Motion.  (*Id.* at 13–15.)  Nor can such legal support be found in its

Reply, which ignores the issue altogether.  (*See generally* ECF No. 651.)  In the

absence of such authority, the Court rejects what effectively is a request for injunctive relief to be imposed on Plaintiffs by way of a sanction order.

### D.  AMOUNT AND APPORTIONMENT OF ATTORNEYS' FEES AWARD

Finally, the Court addresses the amount of attorneys' fees, and the apportionment thereof, Vail Health shall be awarded as a sanction pursuant to the Court's inherent authority and section 1927.  As discussed, Vail Health seeks a whopping $2,267,218.35 in attorneys' fees for Plaintiffs' and their counsel's conduct throughout Arnold & Porter's participation in the case.

A request for attorney fees must be reasonable.  *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997).  When assessing reasonableness, courts calculate the lodestar and adjust it upward or downward based on the particularities of the suit.  *Id.* The lodestar is calculated by multiplying the number of attorney hours "reasonably expended" by the "reasonable hourly rate."  *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983)).  Courts employ the lodestar method in inherent authority and section 1927 cases.  *Farmer*, 791 F.3d at 1259.  The determination of attorney's fees is discretionary, especially given the district court's close understanding of the litigation and desire to avoid frequent appellate review of factual matters.  *Rocky Mountain Wild v. Vilsack*, 2013 WL 3233573 at *4 (D. Colo. 2013).

For the foregoing reasons, the Court has rejected Vail Health's fee request based on the resources it expended on the settlement conference and mediation—for which Vail Health seeks $362,489.20—and in responding to Plaintiffs' "untimely discovery" requests—for which Vail Health seeks $1,389,429.31.  Thus, without these categories, Vail Health is left seeking $515,299.84.

55

This amount is based on the following three categories under which the Court has found in Vail Health's favor with regard to the relief it seeks in the Motion: the criminal accusations and crime-fraud dispute (ECF No. 654-4); the scheduling order dispute (ECF No. 654-1); and the sixth motion to compel (ECF No. 654-3).

As Plaintiffs point out, however, there are several problems with Vail Health's billing records on these remaining topics.  (*See generally* ECF No. 656.)  Most notably, in the Court's judgment Vail Health's billing records often reveal unreasonable staffing decisions and hourly rates.

As to the sixth motion to compel, for example, Arnold & Porter staffed *twelve* lawyers and paralegals to work on that single, discrete project, who together billed a total of 318.2 hours on the issue.  (*See generally* ECF No. 654-3.)  While Plaintiffs' sixth motion to compel reasonably prompted Vail Health to take it seriously, in the Court's view staffing this project with a dozen legal professionals was plainly overkill, especially when the motion was facially unreasonable because it was untimely, among other reasons.  *See Shaw v. Smith*, 2024 WL 1604627, at *5 (D. Kan. Apr. 12, 2024) (reducing fee award where party staffed six attorneys and one paralegal on a relatively straightforward task); *see also Kan. Penn Gaming, LLC v. HV Props. of Kan., LLC*, 790 F. Supp. 2d 1307, 1317 (D. Kan. 2011) (reducing fee award by 25% where parts of the case "were overlawyered").  (*Id.*)

Similarly, as to the scheduling order dispute, Arnold & Porter staffed eight attorneys and one paralegal, who together billed a total of 49.8 hours.  *Id.*  (*See generally* ECF No. 654-1.)  And as to the crime-fraud motion, Arnold & Porter staffed ten lawyers and paralegals, who together billed a total of 87.4 hours.  (*See generally*

56

ECF No. 654-4.)  As discussed above, the Court believes that the overstaffing on the

crime-fraud matter was especially excessive, as Plaintiffs never did file such a motion.

In the Court's judgment, Arnold & Porter's decision to spend nearly 90 hours on

"preparing to respond" to such an inchoate motion does not reflect proper billing

judgment.

Compounding the overstaffing problem is the fact that these attorneys and

paralegals billed at staggeringly high hourly rates—among the highest the undersigned

has ever seen in the Denver legal market in his decades of trial experience, both as a

litigator and sitting District Judge:

### Figure 1

| Timekeeper | Rate Range |
|---|---|
| Partners | $1,037 to $1,235 |
| Senior Associates | $789 to $930 |
| Associates | $789 to $930 |
| Professionals/Paralegals | $421 to $495 |

(ECF No. 636-1 at 22.)

For a point of reference, it appears that these rates (and in particular the eye-

watering paralegal hourly rate of nearly $500), in this 2019 case, are nearly double what

attorneys of similar levels have charged over the past decade or so.  *See, e.g., Biax*

*Corp. v. NVIDIA,* 2013 WL 4051908, at *5–6 (D. Colo. Aug. 12, 2023) (approving 2010

to 2012 hourly rates ranging from $510 to $748 for partners, $429 to $531.25 for

associates, and $148.75 to $212.50 for paralegals), *rev'd on other grounds* 626 F. App'x

968 (Fed. Cir. 2015); *Dig. Satellite Connections, LLC v. Dish Network Corp.,* 2018 WL

4620337, at *4 (D. Colo. Sept. 26, 2018) ("During [2013 to 2016], the prevailing Denver market rate for high level attorneys in complex business disputes was in the range of $500 to $580 per hour."); *L-3 Comm'ns Corp. v. Jaxon Eng'g & Maint., Inc.,* 2015 WL 1218067, at *2–6 (D. Colo. Mar. 12, 2015) (noting that Colorado courts have approved legal rates as high as $700 per hour and approving $695 hourly rate for lead counsel).

The Court will not, however, perform a detailed accounting of which specific hours crossed the line of reasonableness and what exact billing rate would have been more proper. Rather, the Court opts to exercise its judgment and experience to do rough justice and reduce the remaining $515,299.84 Vail Health seeks by 25%.[15] *See Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."); *see also Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996) ("[T]he district court need not identify and justify every hour allowed or disallowed, as doing so would run counter to the Supreme Court's warning that a request for attorney's fees should not result in a second major litigation.") (citation and internal quotation marks omitted).

Lastly, the Court addresses Vail Health's request that its attorneys' fee award be imposed jointly and severally against Plaintiffs and their counsel. For the reasons discussed above, the Court does not award attorneys' fees against Plaintiffs

---

[15] To the extent Plaintiffs complain that Vail Health's requested hours capture time they would have spent regardless of their counsels' vexatious and bad faith behavior, the Court concludes that this 25% reduction suffices to remedy any over-inclusion of hours.

themselves.  The fee award shall only be levied upon their attorneys: Kildow and Braunschweig.

Moreover, the Court is not of the view that joint and several liability for the sanction award is appropriate against these two lawyers.  To be sure, both lawyers played a meaningful role in the sanctionable conduct identified above.  But as lead counsel Kildow was primarily responsible for the vast majority of the vexatious and bad faith conduct undertaken in this case, as more fully detailed above. Accordingly, the Court finds that an equitable apportionment of counsel's individual culpability is the more appropriate approach here.

With this in mind, the Court finds, in the interests of justice, that Kildow should be required to pay 80% of the sanction fee award, and Braunschweig should be required to pay 20% of the award.  In the Court's judgment, these percentages roughly represent each lawyer's individual participation in the sanctionable conduct identified in this Order.

## IV.    CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1.      The Motion is GRANTED IN PART AND DENIED IN PART, as set forth above (ECF No. 636);

2.      Pursuant to both the Court's inherent authority and 28 U.S.C. § 1927, Vail Health is AWARDED as sanctions its attorneys' fees in the total amount of **$386,474.88**, ($515,299.84 less 25%) to be paid by Plaintiffs' counsel, Alan Kildow and Sonya Braunschweig, on a proportional basis;

59

3.      Of this total fee award amount, Alan Kildow shall be required to pay Vail

Health **$309,179.90** (which is 80% of the fee award), and Sonya Braunschweig shall be

required to pay Vail Health **$77,294.98** (which is 20% of the fee award); and

4.      Alan Kildow and Sonya Braunschweig are ORDERED to make such

payments in full to Vail Health by no later than **July 31, 2026**.


Dated this 11th day of June, 2026.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge